**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

**HONORABLE PERCY ANDERSON, U.S. DISTRICT JUDGE**

UNITED STATES OF AMERICA,           )
                                    )
                Plaintiff,          )
                                    )
        vs.                         )   CASE NO. CR 16-66-PA
                                    )
LEROY BACA,                         )
                                    )
                Defendant.          )
_____)

**REPORTER'S TRANSCRIPT OF**
**PLEA AND TRIAL SETTING**
**WEDNESDAY, FEBRUARY 10, 2016**
**2:33 P.M.**
**LOS ANGELES, CALIFORNIA**

_____

**SHAYNA MONTGOMERY, CSR, RPR, CRR**
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 410
LOS ANGELES, CALIFORNIA 90012
(213) 894-2665

**UNITED STATES DISTRICT COURT**

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

        EILEEN DECKER
        United States Attorney
        BY:  BRANDON D. FOX
                Assistant United States Attorney
        United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012


**FOR THE DEFENDANT:**

        ARENT FOX
        BY:  MICHAEL ZWEIBACK
             ERIN C. COLEMAN
             Attorneys at Law
        555 West Fifth Street, 48th Floor
        Los Angeles, California 90013
        (213) 629-7400

**UNITED STATES DISTRICT COURT**

**LOS ANGELES, CALIFORNIA; WEDNESDAY, FEBRUARY 10, 2016**

**2:33 P.M.**

**--oOo--**

THE DEPUTY CLERK:  Calling item number two, CR 16-66-PA, United States of America v. Leroy Baca.

Counsel, please state your appearances.

MR. FOX:  Good afternoon, Your Honor.  Brandon Fox and Lizabeth Rhodes on behalf of the United States.

THE COURT:  Good afternoon.

MR. ZWEIBACK:  Good afternoon, Your Honor.  Michael Zweiback and Erin Coleman on behalf of defendant, Leroy Baca.

THE COURT:  Good afternoon.  Could you ask your client to join you at the lectern, please.

MR. ZWEIBACK:  Yes.

THE COURT:  I understand the defendant wishes to enter a plea of guilty to a one-count information?

MR. ZWEIBACK:  That's correct, Your Honor.

THE COURT:  And this plea is being entered pursuant to a plea agreement, a copy of which has been filed with the court?

MR. ZWEIBACK:  Yes, Your Honor.

THE COURT:  And it's a binding plea agreement?

MR. ZWEIBACK:  Correct, Your Honor.

THE COURT:  Sir, before I accept your plea of guilty, I want to satisfy myself that you've been fully

informed of your rights, that you fully understand both your rights and the nature of this proceeding.  In order to do so, I'm going to ask you a series of questions and advise you of certain rights.  If at any point you don't understand a question that I've asked or a statement that I've made, please tell me and I'll try and make it clearer for you.  Also, you have the right to consult with your attorney at any point during these proceedings, so please let me know if you'd like to do so.

All right.  I'm going to ask the clerk to place you under oath.

THE DEPUTY CLERK:  Please raise your right hand.

(The defendant, LEROY DAVID BACA, was sworn.)

THE COURT:  Do you understand that you're now under oath and if you answer any of my questions falsely, your answer may be used against you later in another prosecution for perjury or for the making of a false statement?

THE DEFENDANT:  Yes.

THE COURT:  And what is your true and correct full name?

THE DEFENDANT:  My true and correct full name is Leroy, L-E-R-O-Y, David Baca, B-A-C-A.

THE COURT:  And how old are you?

THE DEFENDANT:  I am 73 years old.

THE COURT:  And how many years of schooling have you

completed?

THE DEFENDANT:  I have a doctorate degree from the University of Southern California.

THE COURT:  Have you recently been treated for any form of mental illness or addiction to narcotics?

THE DEFENDANT:  No.

THE COURT:  Have you taken any medication, drugs or alcohol within the last 72 hours?

THE DEFENDANT:  No.

THE COURT:  Are you currently suffering from any mental condition that would prevent you from understanding fully the charge against you or the consequences of any guilty plea you might enter to that charge?

THE DEFENDANT:  No.

THE COURT:  Is there any reason at all why we cannot go forward at this time?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Counsel, have you had an opportunity to talk with your client immediately prior to this proceeding?

MR. ZWEIBACK:  Yes, Your Honor.

THE COURT:  Do you have any reason to believe that your client is not competent to enter his guilty plea at this time?

MR. ZWEIBACK:  I do not.

THE COURT:  Any reason at all why we cannot go

forward?

MR. ZWEIBACK:  I don't.

THE COURT:  Is it your opinion that your client is in full possession of his faculties?

MR. ZWEIBACK:  Yes.

THE COURT:  All right.  The Court finds that the defendant is in full possession of his faculties.

Sir, have you been furnished with a copy of the charge pending against you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand you're being charged with the commission of a felony, specifically a violation of Title 18 United States Code Section 1001(a)(2), making false statements?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I'm going to ask the assistant United States attorney to state the elements of this offense on the record.

MR. FOX:  In order for the defendant to be found guilty of a violation of Section 1001(a)(2), the following must be true:  First, the defendant made a false statement in a matter within the jurisdiction of the United States Attorney's Office and/or the Federal Bureau of Investigation; second, the statement had to have been material to the activities or decisions of those agencies, that is, it had to have a natural

7

tendency to influence or was capable of influencing the United States Attorney's Office and the FBI's decisions or activities; and third, the defendant acted willfully, that is, deliberately and with knowledge that both the statement was untrue and that his conduct in making the statement was unlawful.

THE COURT:  Have you discussed the elements of this charge with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand the charge against you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any questions about the charge against you?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Would you like to have the charge read to you in open court?

THE DEFENDANT:  No, Your Honor.

THE COURT:  You have a constitutional right to be charged by an indictment of the grand jury, but you can waive this right and consent to being charged by an information of the United States attorney.  Instead of an indictment, the felony charge against you has been brought by the United States attorney by the filing of an information.  Unless you waive indictment, you cannot be charged with a felony unless a grand jury finds by the return of an indictment that there's probable

cause to believe a crime has been committed and that you committed it.

If you do not waive indictment, the government may present the case to the grand jury and ask it to indict you.  A grand jury's composed of at least 16 and not more than 23 persons. At least 12 of the grand jurors must find that there's probable cause to believe you committed the crime with which you are charged before you could be indicted.

If this case were presented to a grand jury, it might or might not indict you.  If you waive indictment, this case will proceed against you on the United States attorney's information just as it would had you been indicted.

Have you discussed waiving your right to indictment by a grand jury with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand your right to indictment by a grand jury?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Has anyone made any threats or used any force against you, your family or anyone near and dear to you to get you to waive your right to indictment by a grand jury?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And do you wish to waive your right to indictment by a grand jury?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Counsel, is there any reason why the defendant should not waive his right to indictment by a grand jury?

MR. ZWEIBACK:  No, Your Honor.

THE COURT:  And has the defendant signed a written waiver of indictment?

MR. ZWEIBACK:  He did, Your Honor.  He executed it this morning before Magistrate Judge Walsh.

THE COURT:  And has that been filed?

MR. ZWEIBACK:  I believe it has, yes.

MR. FOX:  Your Honor, I think I've seen it come through ECF.  I believe I have, but I'm not positive.

THE COURT:  All right.  Why don't we just make sure.

All right.  It has apparently been filed.

The Court finds that the defendant's waiver of indictment by a grand jury is knowingly and voluntarily made, and it is accepted.

Sir, you have a number of constitutional rights you're going to be giving up if you plead guilty this afternoon.  You have the right to a speedy and public trial.  You have the right to be tried by a jury.  Alternatively, you can waive your right to a jury trial and consent to being tried by the Court.  In either case, you have the right to persist in your plea of not guilty.

You're entitled to the presumption of innocence, and you

have the right to have the government prove your guilt beyond a reasonable doubt.  You have the right to be represented by an attorney throughout these proceedings, and if you cannot afford a lawyer, one will be appointed free of charge.

You have the right to confront and to cross-examine all witnesses called to testify against you.  You also have a right to present witnesses on your own behalf and to have those witnesses subpoenaed to testify.  You also have a privilege against self-incrimination.  However, by entering this plea of guilty, you're waiving that right because you are, in fact, incriminating yourself.  And while you have the right to testify on your own behalf, you cannot be compelled to testify or to incriminate yourself in any way.  And if you did not testify at trial, that fact could not be used against you.  In the event of a conviction after a trial, you'd have the right to appeal that conviction and any sentence.

Also, by pleading guilty, you're giving up any and all rights you have to pursue any affirmative defenses, any claims you might have under the Fourth or Fifth Amendments and any other pretrial motions that could have been filed in this case.

Have you discussed these rights with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you need any additional time to discuss any of these rights further with your lawyer?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Do you understand that you have these rights and that if you enter a plea of guilty and that plea is accepted by the Court, you'll be giving up your right to a trial and the other rights that I've just described to you?

THE DEFENDANT:  Yes, Your Honor, I understand.

THE COURT:  And do you wish to give up these rights?

THE DEFENDANT:  Yes, I do.

THE COURT:  Counsel, are you satisfied that each of these waivers are knowingly and voluntarily made?

MR. ZWEIBACK:  Yes, Your Honor.

THE COURT:  And do you join in and concur in each of the waivers made by the defendant?

MR. ZWEIBACK:  I do, Your Honor.

THE COURT:  Sir, have you been advised of the maximum penalty provided for by law for this offense?

THE DEFENDANT:  Yes, I have, Your Honor.

THE COURT:  All right.  I'm going to ask the assistant United States attorney to state on the record the maximum punishment for this offense, including any fines and special assessments.

MR. FOX:  Your Honor, the maximum possible term of imprisonment is five years.  The term of supervised release will be three years.  There is a $250,000 possible fine and a special assessment of $100.

THE COURT:  Sir, do you understand that absent a

finding by the Court --

THE DEFENDANT:  Go ahead, sir.

THE COURT:  That's fine.  Do you want to confer with your counsel?

MR. ZWEIBACK:  Can we just have a moment, Your Honor?

THE COURT:  Yes, that's fine.

(Counsel and the defendant conferred off the record.)

MR. ZWEIBACK:  We're fine, Your Honor.

THE COURT:  Sir, do you understand that absent a finding by the Court that you lack the ability to pay, that the Court must impose a fine in this case?

MR. ZWEIBACK:  May I have one moment, Your Honor?

THE COURT:  Yes.

(Counsel and the defendant conferred off the record.)

THE DEFENDANT:  Thank you, Your Honor.  I understand a fine can be imposed.

THE COURT:  Do you understand the maximum sentence you can receive in this case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that there is no parole and if you're sentenced to prison, you will not be released on parole?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, you may be subject to supervised

**UNITED STATES DISTRICT COURT**

release for a number of years after you're released from prison.  Do you understand that if you violate the terms and conditions of your supervised release, you can be given additional time in prison?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you're on probation, parole or supervised release for some other offense, your plea in this case could result in a violation of the terms of that probation, parole or supervised release and result in your serving more time than you otherwise would.  Do you understand this?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you thoroughly discussed this case with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And have your discussions with your lawyer included the possible punishment you're facing, the facts and any potential defenses you may have to this charge?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You're going to be sentenced under the Sentencing Reform Act of 1984.  Your sentence will be determined by a combination of the advisory sentencing guidelines, possible authorized departures from those guidelines and other statutory sentencing factors.  I also want to advise you that the United States Supreme Court has decided

that this court is no longer bound to impose a sentence by the United States Sentencing Commission guidelines, and while the Court must consider the guidelines, they are only advisory.

The advisory guideline range is only one of many factors that the Court must consider in determining an appropriate individualized sentence.  As a result, the Court is free to exercise its discretion and impose any sentence it deems appropriate up to the maximum sentence set by statute for this offense.  Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, any sentence imposed by the Court must reflect the congressional goals of sentencing, and any sentence imposed must be sufficient but not greater than necessary to comply with the statutory goals of sentencing.  In addition to the advisory guideline range, the Court must consider the nature and circumstances of the offense, your history and characteristics, as well as the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, provide for a just punishment, afford adequate deterrence, protect the public and to provide you with any needed rehabilitation.  In addition, the Court must consider any relevant Sentencing Commission policy statements and the need to avoid any unwarranted sentencing disparities.

Do you understand this is the process the Court will follow in setting your sentence?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you discussed sentencing with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Has he explained the various elements and factors that are going to be used to determine your sentence?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand the Court will not be able to determine the advisory guideline range for your case until after a presentence report has been prepared by the probation department and you and the government have had an opportunity to challenge the reported facts and the application of the guidelines as recommended by the probation officer, and that the sentence ultimately imposed may be different from any estimate that your attorney may have given you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you and your lawyer talked about how these advisory sentencing guidelines might apply to your case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand that after the guideline range has been determined and after the Court has considered the guidelines, the Court has authority in some circumstances to depart upward or downward from that range, and

will also examine other statutory sentencing factors and that that may result in the imposition of a sentence that is either greater or lesser than the advisory guideline range?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You understand that for all of these reasons, neither your attorney nor I can tell you today with certainty what your sentence will be?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  A plea agreement has been filed in this case.  Have you read that plea agreement and discussed all of its terms with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you sign the plea agreement?

THE DEFENDANT:  Yes, I did, Your Honor.

THE COURT:  Do you understand the plea agreement and all of its terms?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  Do you need any additional time to discuss any aspect of the plea agreement with your lawyer?

THE DEFENDANT:  No, Your Honor.

THE COURT:  You understand the Court is not a party to that agreement and is not bound by its terms?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, as part of that plea agreement, you and the government have agreed to a certain base offense level

and you've also agreed to certain specific offense characteristics, such as an acceptance of responsibility, all of which is going to be used in calculating the advisory guideline range. You understand that I'm not a party to that, I'm not bound by that agreement? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if I decide not to follow the terms of the plea agreement, that I will give you an opportunity to withdraw your guilty plea, but if you decide not to withdraw your guilty plea, I may then impose a sentence that is more severe than that contemplated by the plea agreement?

THE DEFENDANT: I know you have that authority, yes, Your Honor.

THE COURT: The plea agreement also contains a waiver of your right to appeal your conviction and a waiver of your right to appeal your sentence. I'm going to ask the assistant United States attorney to read those provisions into the record. I believe they begin on page 10.

MR. FOX: Yes, Your Honor. On paragraphs 16 and 17, defendant understands pursuant to the agreement that with the exception of an appeal based on a claim that his guilty plea was involuntary, by pleading guilty he is waiving and giving up any right to appeal his conviction on the offense to which he is pleading guilty. He also agrees that provided the Court

imposes the specific sentence that the parties have agreed to in this plea agreement, that he gives up the right to appeal any portion of the sentence.

THE COURT:  Would you also read into the record what appellate rights, if any, are being given up by the United States Attorney's Office.

MR. FOX:  Yes, Your Honor.  We have agreed that provided the Court imposes that same sentence that is agreed upon between the parties in the plea agreement, that we will give up our right to appeal any portion of that sentence.

THE COURT:  Do you understand that by entering into this plea agreement and pleading guilty, you've agreed to give up your right to appeal your conviction and sentence in accordance with the terms of the plea agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you discuss waiving your right to appeal your conviction and sentence with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And based on that conversation and having considered the matter, do you wish to give up your right to appeal your conviction and sentence on the terms and conditions set forth in the plea agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you're not a United States citizen, do you understand that a guilty plea may subject you to

immediate deportation proceedings, the denial of United States citizenship should you apply and the denial of permanent residence status should you apply?

MR. ZWEIBACK:  Your Honor, he is a citizen, so -- but he understands that.

THE DEFENDANT:  I understand that.

THE COURT:  Do you understand that, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that a guilty plea may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury and the right to possess any kind of firearm?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that a guilty plea or conviction in this case may result in the suspension or revocation of any professional licenses or permits that you may possess?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  There may be other unintended consequences of your entering a guilty plea that we've not identified or talked about.  Do you understand that if any of those unintended consequences actually materialize, that that fact alone will not give you an absolute right to withdraw your guilty plea?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have any promises been made to you in exchange for your guilty plea, other than those that appear in the plea agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Has anyone made any threats or used any force against you, your family or anyone near and dear to you to get you to plead guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you pleading guilty voluntarily and of your own free will?

THE DEFENDANT:  Yes, I am, Your Honor.

THE COURT:  Other than what's contained in the written plea agreement and other than a general discussion of sentencing with your lawyer, has anyone made you any other promises of leniency, a particular sentence, probation or any other inducement of any kind to get you to plead guilty?

THE DEFENDANT:  Your Honor, I've heard no promises.

THE COURT:  Have you been told by anyone what specific sentence this Court will impose in your case?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Have you had a chance to sit down and talk with your lawyer about the facts and circumstances surrounding any statements, confessions or other evidence that was obtained from you by anyone?

THE DEFENDANT:  Yes, Your Honor.

UNITED STATES DISTRICT COURT

THE COURT: All right. I'm going to ask the assistant United States attorney to state on the record what facts the government would prove if this case were to proceed to trial, and, sir, I want you to listen carefully to what he says because I'm going to ask you questions about what he says once he's finished.

MR. FOX: And, Your Honor, I'm going to read most of what is on pages 6 through 8 as the factual basis in the plea agreement, and if this were to proceed to trial, the government would prove the following: On April 12th, 2013 in Los Angeles County within the Central District of California, in a matter within the jurisdiction of the executive branch of the government of the United States; namely, the FBI and the U.S. Attorney's Office for the Central District of California, the defendant knowingly and willfully made a material false and fictitious statement and representation, specifically, he, who was sheriff of Los Angeles County at that time and all relevant times, falsely stated that he was not aware that LASD officials were going to approach FBI Special Agent L.M. until he received a phone call from the assistant director in charge of the FBI in Los Angeles after LASD officials had threatened her arrest on September 26, 2011. In fact, as he knew at the time he made the statement, Mr. Baca was aware that LASD officials were going to approach FBI Special Agent L.M. before they did so. More specifically, he had been the sheriff of Los Angeles

County from approximately December 1998 to January 2014.  The Sheriff's Department was responsible for, among other things, managing the Los Angeles County jails, including Men's Central Jail and Twin Towers.

On August 18th, 2011, the defendant learned from the FBI assistant director in charge of the Los Angeles field office that the FBI had conducted an undercover operation that resulted in inmate A.B. receiving a cellular phone from a deputy sheriff at Men's Central Jail.  He later learned that the FBI, the U.S. Attorney's Office and a federal grand jury were conducting a civil rights and public corruption investigation involving his deputies working at Men's Central Jail and Twin Towers Correctional Facility.

The next two days on August 19th and 20th, 2011, Mr. Baca met with several LASD officials, including Undersheriff Paul Tanaka, Captain William "Tom" Carey, Lieutenant Greg Thompson and Deputies Gerard Smith and Mickey Manzo about the situation. Mr. Baca ordered inmate A.B. to be isolated and for LASD officials to investigate how the phone ended up in an inmate's hands.  Mr. Baca then put Undersheriff Tanaka in charge of how these items would be carried out.

On August 23rd, 2011, Mr. Baca was informed by Lieutenant Thompson that the FBI had interviewed inmate A.B. at Men's Central Jail and that the LASD had terminated the interview. Mr. Thompson apologized to defendant for allowing the FBI to

interview inmate A.B. and stated that he would take measures to ensure that it would not happen again.

Six days later on August 29th, 2011, Mr. Baca, Undersheriff Tanaka, Captain Carey and others met with the United States attorney and other members of the United States Attorney's Office. Defendant stated that he wanted the United States Attorney's Office to work with the LASD instead of the FBI to investigate the allegations of civil rights and corruption violations by deputies working in the jails.

On or about September 25th, 2011, defendant had a meeting with Undersheriff Tanaka, Captain Carey and Lieutenant Steve Leavins. During this meeting, they discussed approaching FBI Special Agent L.M., who was one of the case agents involved in the federal civil rights and public corruption investigation of deputies working in the Men's Central Jail and Twin Towers Correctional Facility. Defendant stated during the meeting that the LASD's Internal Criminal Investigations Bureau should approach Special Agent L.M. He further stated that the LASD should do everything but put handcuffs on Special Agent L.M.

The next day on September 26, 2011, two sergeants with the LASD's Internal Criminal Investigations Bureau approached Special Agent L.M. outside of her home and threatened her arrest. When interviewed about these facts on or about April 12th, 2013, Mr. Baca told members of the United States Attorney's Office and the FBI about his involvement in the

above-described matters, and during this interview he stated, one, he was not involved in any conversation about keeping the FBI and inmate A.B. away from each other; two, he was unaware and was not informed that the LASD had terminated an FBI interview of inmate A.B. at Men's Central Jail on August 23rd, 2011; and three, he was not aware that LASD officials were going to approach FBI Special Agent L.M. until he received a phone call from the assistant director in charge of the FBI in Los Angeles after LASD officials had threatened to arrest her on September 26, 2011.

THE COURT:  Do you need a moment?

MR. ZWEIBACK:  No, we're fine, Your Honor.

THE COURT:  Did you understand everything that he said?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is everything that he said about you and about your conduct and intent true and correct?

MR. ZWEIBACK:  Your Honor, just to make clear, my client will be admitting the conduct with respect to paragraph 9A.  With respect to paragraph 10 and beyond, we are merely not contesting those facts.

(Pause in proceedings.)

THE COURT:  Sir, do you admit that that statement was material to the activities or decisions of the United States Attorney's Office and the Federal Bureau of

Investigation and that it had a natural tendency to influence or was capable of influencing the United States Attorney's Office and the FBI's decisions or activities?

THE DEFENDANT:  As to 9A, Your Honor, yes.

THE COURT:  Did you do what he said regarding your criminal involvement?

THE DEFENDANT:  As to 9A, yes, Your Honor.

THE COURT:  Are you pleading guilty because you, in fact, did the acts charged in the information?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Are you pleading guilty because you are, in fact, guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is the government satisfied as to the factual basis for the plea?

MR. FOX:  Yes, Your Honor.

THE COURT:  Counsel, have you reviewed all of the facts of this case and all discovery that may have been provided to you by the government?

MR. ZWEIBACK:  Yes, Your Honor.

THE COURT:  Have you reviewed the facts of the case and the discovery with your client?

MR. ZWEIBACK:  Yes, Your Honor.

THE COURT:  Have you advised your client concerning the legality or admissibility of any statements, confessions or

other evidence the government has against him?

MR. ZWEIBACK:  I have, Your Honor.

THE COURT:  Is the defendant pleading guilty because of any illegally-obtained evidence in the possession of the government that you're aware of?

MR. ZWEIBACK:  Not that I'm aware of, no, Your Honor.

THE COURT:  Did you explore with your client any possible defenses he may have to this charge?

MR. ZWEIBACK:  I did, Your Honor.

THE COURT:  Do you believe there's a factual basis for the plea that he's entering?

MR. ZWEIBACK:  Yes, Your Honor.

THE COURT:  And have you conferred with and advised your client regarding this guilty plea?

MR. ZWEIBACK:  I have.

THE COURT:  And do you believe the plea is being made freely and voluntarily with a full understanding of the charge and the consequences of the plea?

MR. ZWEIBACK:  I do, Your Honor.

THE COURT:  The written plea agreement indicates that it was signed by you and your client, is that correct?

MR. ZWEIBACK:  It was, Your Honor.

THE COURT:  And did your client sign the plea agreement in your presence?

MR. ZWEIBACK:  Yes.

THE COURT:  And did you discuss the contents of the plea agreement with him prior to his signing it?

MR. ZWEIBACK:  I did.

THE COURT:  Does the plea agreement represent the entire disposition of this case insofar as you, your client and the United States Attorney's Office is concerned?

MR. ZWEIBACK:  Yes, Your Honor.

THE COURT:  Have there been any promises, representations or guarantees made either to you or your client other than what's contained in the written plea agreement?

MR. ZWEIBACK:  No, Your Honor.

THE COURT:  And other than what's stated in the written plea agreement and other than a general discussion of sentencing with your client, have you made any indication to your client of what specific sentence the Court will impose or convey to him any promise of a particular sentence?

MR. ZWEIBACK:  No, Your Honor.

THE COURT:  In your judgment, is it in your client's best interest for the Court to accept his plea of guilty?

MR. ZWEIBACK:  It is.

THE COURT:  And do you know of any reason why this Court should not accept his plea?

MR. ZWEIBACK:  No.

THE COURT:  And do you join in the waiver of jury

trial and concur in the plea?

MR. ZWEIBACK:  I do.

THE COURT:  Let me ask the assistant United States attorney, other than what's expressly contained within the written plea agreement, has the government made any other promises, representations, guarantees either to the defendant or his counsel in order to get him to plead guilty?

MR. FOX:  Nothing, Your Honor.

THE COURT:  And is this intended guilty plea part of any joint agreement with any other defendant or potential defendant?

MR. FOX:  No, Your Honor.

THE COURT:  All right.  Thank you.

MR. FOX:  And, Your Honor, if I could just call something to the Court's attention.  On each page of the plea agreement, Mr. Baca and his counsel also initialled it, and we'd like that to be part of the record as well, Your Honor.

THE COURT:  All right.  Sir, are you satisfied with the representation your lawyer has provided in this matter?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you feel that he's fully considered any potential defenses you may have to this charge?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you believe that you've been fully advised concerning this matter?

**UNITED STATES DISTRICT COURT**

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you feel that you've had enough time to thoroughly discuss this matter with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you review the discovery that was provided to your lawyer?

MR. ZWEIBACK:  May I have a moment, Your Honor?

THE COURT:  Yes.

(Counsel and the defendant conferred off the record.)

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you feel that you understand everything that's transpiring here today?

THE DEFENDANT:  To the best of my ability, yes, Your Honor.

THE COURT:  Any doubt in your mind, is there anything you have a question about, anything that you don't understand?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Do you understand the potential consequences to you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you believe that you're competent to make the decision to plead guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you know of any reason why the Court

**UNITED STATES DISTRICT COURT**

should not accept your guilty plea?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And do you understand, then, that all that's left in your case, in the event that your guilty plea is accepted, is the imposition of sentence which may include imprisonment?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Having in mind all we've discussed regarding your plea of guilty, the rights that you'll be giving up, the maximum sentence that you might receive, is it still your desire to enter a plea of guilty to the single-count information?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Let me see counsel at sidebar for a moment.  Just come over here.

      (Discussion held at sidebar.)

THE COURT:  Okay.  I noticed this information doesn't contain this element --

MR. FOX:  Are you saying the factual basis, Your Honor?

THE COURT:  The factual basis didn't contain it, and the information itself doesn't contain it.

MR. FOX:  The element of materiality?

THE COURT:  Uh-huh.

MR. FOX:  May I see it?

THE COURT:  Uh-huh.

MR. FOX:  I think that it says the material is false, and that's the element itself.

THE COURT:  Are you satisfied that it's --

MR. ZWEIBACK:  Yeah, it's correct.

MR. FOX:  Thank you, Your Honor.

THE COURT:  Okay.

(End of sidebar discussions.)

THE COURT:  All right.  Sir, how then do you plead to the single-count information, guilty or not guilty?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  I'm going to make certain findings.  If you don't understand what I say, if you disagree with what I say or should you desire to consult with your attorney about anything that I've said, please interrupt me at once or ask your attorney to interrupt me.

The Court having questioned the defendant and counsel on his offered plea of guilty to the information, a felony, the defendant and counsel having advised the Court that they've conferred considering the offered plea of guilty, all aspects of the charge against the defendant, any potential defenses he may have; the Court having observed the defendant's intelligence and demeanor while answering questions and the Court having observed that the defendant does not appear to be under the influence of any medicine, drug or other substance or

factor which might affect his actions or judgment in any manner, the Court finds that there's a factual basis for the plea.

The Court finds that the defendant has entered his plea freely and voluntarily with a full understanding of the charge and the consequences of the plea. The Court finds that the defendant understands his constitutional and statutory rights and wishes to waive them. Accordingly, it's ordered that the plea is accepted and entered.

Does either counsel wish to have the Court make any further inquiries of the defendant?

MR. FOX: Not from the government, Your Honor.

MR. ZWEIBACK: None from the defense, Your Honor.

THE COURT: All right. I'm going to ask the clerk to give us a date for sentencing.

THE DEPUTY CLERK: May 2nd, 2016 at 11:00 a.m.

THE COURT: Is that date and time convenient to both counsel?

MR. FOX: It is for the government, Your Honor.

MR. ZWEIBACK: Yes, Your Honor.

THE COURT: And the defendant?

Sir, you're ordered to appear for sentencing on May 16th, 2016 at 8:30 a.m. in this courtroom without further notice or order from the court. In the interim, your case is going to be referred to the probation department for the preparation of a

presentence report.  You'll be asked to give information for the report.  You'll have an opportunity to read the report and to speak at the sentencing hearing.  I want to urge you to consult with your lawyer throughout this process so that he can answer any questions you may have.

MR. FOX:  Your Honor, the government wrote down -- the first time you said it May 2nd, and the second time you said it May 16th.  Which date was it that you picked?

THE COURT:  I believe it's May 16th.

MR. FOX:  Thank you, Your Honor.

THE COURT:  Okay.  You understand when you're to report for sentencing, sir?

THE DEFENDANT:  Yes, Your Honor, thank you.

THE COURT:  All right.  Anything else?

MR. FOX:  Not from the government, Your Honor.

MR. ZWEIBACK:  Not from the defense, Your Honor.

THE COURT:  All right.  Thank you very much.

MR. ZWEIBACK:  Thank you, Your Honor.

THE DEFENDANT:  Thank you.

THE DEPUTY CLERK:  All rise.  This court is adjourned.

(The proceedings concluded at 3:12 p.m.)

**UNITED STATES DISTRICT COURT**

**CERTIFICATE OF OFFICIAL REPORTER**


COUNTY OF LOS ANGELES    )
                         )
STATE OF CALIFORNIA      )


              I, SHAYNA MONTGOMERY, Federal Official Realtime

Court Reporter, in and for the United States District Court for

the Central District of California, do hereby certify that

pursuant to Section 753, Title 28, United States Code that the

foregoing is a true and correct transcript of the

stenographically reported proceedings held in the

above-entitled matter and that the transcript page format is in

conformance with the regulations of the judicial conference of

the United States.


Date:   *March 28, 2016*



                         /s/ SHAYNA MONTGOMERY
                         _____
                         SHAYNA MONTGOMERY, CSR, RPR, CRR
                         Federal Official Court Reporter


**UNITED STATES DISTRICT COURT**