Michael Zweiback (State Bar No. 143549)
michael.zweiback@alston.com
Rachel L. Fiset (State Bar No. 240828)
rachel.fiset@alston.com
Erin C. Coleman (State Bar No. 281092)
erin.coleman@alston.com

**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA  90071-1410
Telephone:  213-576-1000

Attorneys for Defendant Leroy Baca

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: CR16-0066-PA |
|---|---|
| Plaintiff, | **DEFENDANT LEROY BACA'S REPLY TO GOVERNMENT'S RESPONSE** |
| v. | |
| LEROY BACA, | Date: July 18, 2016 |
| Defendant. | Time: 8:30 AM |
| | Ctrm: No. 15 |

## I.    Probation Is Sufficient Even Though Sheriff Baca Was An "Elected Official"

All factors support that Sheriff Baca receive a probationary sentence.  Sheriff Baca's life has been unquestionably dedicated to his community and the "expressions of gratitude" submitted to this Court as a result, only serve to substantiate his personal dedication to the community.  Response at pg. 2:5-9.  Letters from inmates to international leaders alike should not be discounted.  They tell the story of Sheriff Baca's life.[1]  Unfortunately, the doctor's records also tell the story of Sheriff Baca's

---

[1] The letters submitted in support of Sheriff Baca discuss his life and good deeds, at various stages, as well as the effects that Sheriff Baca had on the writers.  The letters

1

Defendant Leroy Baca's Reply To Government's Response

current life, and his future.  These documents are of equal import.  Doctor's records, and letters of support, are all before the Court to present the full picture of the man to be sentenced.

A sentence of imprisonment would not -- and should not -- simply "provide for general deterrence."  Response at pg. 2:17-18.  In this case, imprisonment would unfairly punish a sick and vulnerable seventy-four year old man just to send a message.  Response at pg. 2:15-20 (he should go to prison because "high-ranking public officials are paying attention to the case, as is the community in general").  The government concedes it does not have evidence to prosecute Sheriff Baca for any "misdeeds" other than making a false statement, yet it seeks to make an example of him even where others have been fully prosecuted, and sentenced, for crimes that were supported by the evidence.  The Court should not be swayed by these arguments.  Sheriff Baca has been punished, he has suffered, and he will not offend again.  A probationary sentence is sufficient to hold "elected officials and heads of agencies" -- as well as any other defendant under these circumstances -- "accountable" for this crime. Response at pg. 2:18-20.

## II.  Dr. Pelton's Declaration Makes Unfounded Assumptions Regarding Sheriff Baca's Potential Incarceration

The declaration of Dr. Pelton submitted by the government, provides an uncertain, and incomplete, portrayal of what Sheriff Baca's treatment by the BOP would be if he were incarcerated.  Dr. Pelton states that he would decide whether or not Sheriff Baca would receive his (admittedly) non-formulary medication.  Response at pg. 3:7-19.  In the first instance, Dr. Pelton makes the unfounded assumption that

were not submitted for the purpose of discussing his "declining cognitive condition." Response at fn.1.  The government's suggestion that the letters undermine the effects Sheriff Baca is suffering, and will suffer, as a result of Alzheimer's disease (because he is reportedly eating lunch and having conversations outside the home) is not only meritless, it is insulting and without compassion for him and the thousands of others suffering from Alzheimer's disease.

Defendant Leroy Baca's Reply To Government's Response

Sheriff Baca would be placed in a facility in the Western Region BOP. "However, based on Mr. Baca's very public role in law enforcement in Los Angeles County, it is very likely that a facility outside the region will be designated in an effort to reduce his vulnerability in an inmate population." Supplemental Declaration of Phillip Wise at ¶2, attached hereto as Exhibit A ("Ex. A"). In that scenario, "another physician would be the approving official." *Id.* (as Dr. Pelton concedes "it is uncertain which facility or level of care will be designated").

Dr. Pelton's certainty that Sheriff Baca would receive non-formulary medications because 25 people in the entire Western Region of the BOP receive similar medication, is also unwarranted. *Id.* (Dr. Pelton himself says there are approximately 300 inmates suffering from cognitive impairment and only 25 of them are on the medication). Likewise, Dr. Pelton does not address how long the inmates "waited for that medication or the level of impairment when the medication was begun or any other salient information regarding the prescribing practices related to non-formulary medications." *Id.* There is also "no data" supporting that the BOP's "improved oversight and monitoring of BOP inmates in Chronic Care Clinics" have actually improved the level of care inmates receive. *Id.*; Response at Ex. 1, ¶18.

Dr. Pelton's opinion that there are "rarely any serious assaults" at low or minimum security facilities undervalues the risk that Sheriff Baca faces in prison. *Id.* at ¶27. Both serious and less serious assaults occur in minimum and low security level facilities at a steady rate. Ex. A at ¶3 (1-2 serious assaults a year and 6-10 less serious assaults a month in minimum security prison, and 3 serious assaults per month and 35-40 less serious assaults per month in low-level security prison). The "risk does not approach zero, particularly for inmates with increased vulnerability like Mr. Baca." *Id.*

Finally, "the current antagonism toward law enforcement officers expressed in some communities and widely reported through the media" may cause a greater risk to

3

Sheriff Baca if he is incarcerated. *Id.* Sheriff Baca would be one of the most high-profile and highest ranking law enforcement officers to ever be incarcerated by the BOP. Sheriff Baca's multiple vulnerabilities in a prison setting cannot be underestimated. These vulnerabilities are only enhanced, and perhaps exponentially so, as a result of the current divisive environment between law enforcement and the public. *See United States v. Lara,* 905 F.2d 599, 605 (reducing sentence because prison life would be "particularly dangerous" due to defendant's "particular vulnerability" for victimization).

Sheriff Baca should not go to prison.

DATED: July 12, 2016

ALSTON & BIRD LLP

By: *Michael Zweiback*
Michael Zweiback
Rachel L. Fiset
Erin Coleman

Attorneys for Defendant,
LEROY BACA

Defendant Leroy Baca's Reply To Government's Response

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2016, I caused a copy of **DEFENDANT LEROY BACA'S REPLY TO GOVERNMENT'S RESPONSE** to be served upon the following counsel in the manner described below:

Via the Court's CM/ECF system:
Michael Zweiback
michael.zweiback@alston.com


*/s/  Michael Zweiback*
Attorney for Defendant Leroy Baca

Defendant Leroy Baca's Reply To Government's Response