ORIGINAL



UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2016 GRAND JURY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. 16-0066(A)-PA |
| Plaintiff, | ) ) | F I R S T |
| v. | ) ) | S U P E R S E D I N G |
| | ) | I N D I C T M E N T |
| LEROY BACA, | ) ) | [18 U.S.C. § 371: Conspiracy; |
| Defendant. | ) ) | 18 U.S.C. § 1503(a): Obstruction of Justice; 18 |
| | ) ) | U.S.C. § 1001(a)(2): Making False Statements] |
| | ) | |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1. Defendant LEROY BACA ("BACA") was the Sheriff of Los Angeles County and was the highest ranking officer of the Los Angeles County Sheriff's Department ("LASD"), which was a local law enforcement agency within the Central District of California.

2. Among other things, the LASD was responsible for managing the Los Angeles County jails, including the Men's

Central Jail ("MCJ") and the Twin Towers Correctional Facility ("TTCF").

3.   Paul Tanaka ("Tanaka") was an executive with the LASD. Defendant BACA selected Tanaka to become second-in-command of the LASD by making him Undersheriff in approximately 2011.

4.   William Thomas Carey ("Carey"), also known as "Tom Carey," was a captain assigned to the LASD's Internal Criminal Investigations Bureau ("ICIB"), which was tasked with investigating allegations of state crimes committed by LASD personnel.

5.   Stephen Leavins ("Leavins") was a lieutenant assigned to ICIB.  Scott Craig ("Craig") and Maricela Long ("Long") were sergeants assigned to ICIB.

6.   Greg Thompson ("Thompson") was a lieutenant who oversaw the LASD's Operation Safe Jails Program and its Jail Investigations Unit, which were tasked with conducting investigations of inmates' activities within the Los Angeles County jails.  Gerard Smith ("Smith"), Mickey Manzo ("Manzo"), and James Sexton ("Sexton") were LASD deputies assigned to the Operation Safe Jails Program.

Allegations of Abuse at MCJ and TTCF

7.   Defendant BACA was well aware of allegations of rampant abuse of inmates at MCJ and TTCF.  By no later than September 2011, the following had occurred:

a.   Between at least sometime in 2009 and September 2011, the American Civil Liberties Union (the "ACLU") informed defendant BACA of and published reports about allegations of pervasive physical abuse, violence, and retaliation by LASD

2

deputies against inmates. Defendant BACA and the LASD generally responded to these allegations with denials and internal investigations that almost always concluded that the allegations were "unfounded."

b. From no later than December 2010 and continuing to at least July 2011, allegations surfaced that LASD deputies working on the 3000 floor of MCJ, who called themselves the "3000 Boys," exhibited gang-like and violent behavior, used excessive force against inmates, and falsified reports to cover up wrongdoing;

c. By no later than on or about July 26, 2011, defendant BACA was told that a chaplain witnessed deputy abuse of an inmate at MCJ.

Federal Agencies and Federal Grand Juries

8. The United States Department of Justice ("DOJ") was a department within the Executive Branch of the United States government that was responsible for enforcing federal law. The DOJ had several components to assist it in enforcing federal criminal law, including the FBI, which investigated allegations of federal crimes through its various field offices, and the U.S. Attorney's Office for the Central District of California (the "USAO"), which prosecuted allegations of federal crimes committed in Los Angeles County and elsewhere.

9. Investigations involving the DOJ, FBI, and USAO often included the use of federal grand juries, which investigated allegations of violations of federal criminal law in secret proceedings. Federal grand juries issued grand jury subpoenas to obtain documents and testimony from witnesses. The FBI often

3

acted as an arm of federal grand juries by, among other things, serving grand jury subpoenas, obtaining evidence to be presented to the grand jury, and interviewing witnesses to alleged crimes being investigated by the grand jury.

10. Some of the criminal investigations conducted by the DOJ, FBI, USAO, and federal grand juries included allegations of: (a) civil rights abuses, such as deputies using excessive force on inmates in jails; and (b) public corruption offenses, such as deputies smuggling contraband into jails in exchange for bribes.

The Federal Investigation of the LASD

11. Inmate AB was an inmate in the custody of the LASD at MCJ who was a cooperating witness in a federal investigation of alleged federal civil rights and public corruption violations committed by employees of the LASD working at the Los Angeles County jails (the "Federal Investigation"). The Federal Investigation concerned the alleged use of excessive force by LASD deputies against inmates within MCJ and TTCF and the alleged smuggling of contraband by LASD deputies into MCJ and TTCF in exchange for bribes. Specifically, Inmate AB was assisting in a covert public corruption investigation of LASD Deputy Gilbert Michel ("Deputy Michel"), who worked at MCJ. Additionally, Inmate AB was providing information about alleged federal civil rights offenses being committed by employees of the LASD working at MCJ who were allegedly abusing inmates.

12. Special Agent LM was a Special Agent with the FBI. Special Agent LM was among the FBI agents participating in the Federal Investigation.

4

13. Beginning on or about July 13, 2011, the LASD began receiving federal grand jury subpoenas for documents related to the Federal Investigation.

14. As part of the Federal Investigation, the FBI conducted an undercover operation to determine whether Deputy Michel would accept a bribe to provide Inmate AB with a cellular phone. In approximately late July 2011, Deputy Michel accepted a bribe and provided Inmate AB with a cellular phone by smuggling it into MCJ. On or about August 8, 2011, the LASD discovered that Inmate AB had in Inmate AB's possession the cellular phone that Deputy Michel had smuggled into MCJ in return for a bribe.

Defendant BACA's Knowledge of the Federal Investigation

15. By no later than in or about August 2011, defendant BACA was aware that the USAO, FBI, and a federal grand jury were conducting an investigation of abuse and corruption by LASD's employees working within the Los Angeles County jails.

16. On or about August 18, 2011, defendant BACA learned that the LASD had seized from an inmate a phone that belonged to the FBI.

17. By no later than August 20, 2011, defendant BACA was aware that this phone was part of a federal civil rights investigation.

18. These Introductory Allegations are hereby incorporated into each count of this Indictment as though set forth fully therein.

5

COUNT ONE

[18 U.S.C. § 371]

A.    OBJECT OF THE CONSPIRACY

Beginning no later than on or about August 19, 2011, and continuing through on or about September 26, 2011, in Los Angeles County, within the Central District of California, defendant LEROY BACA, together with co-conspirators Paul Tanaka, William Thomas Carey, also known as "Tom Carey," Stephen Leavins, Scott Craig, Maricela Long, Greg Thompson, Gerard Smith, Mickey Manzo, James Sexton, and others known and unknown to the Grand Jury, knowingly conspired to corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due administration of justice and a federal grand jury investigation, in violation of Title 18, United States Code, Section 1503(a).

B.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
      ACCOMPLISHED

The object of the conspiracy was to be accomplished in substance as follows:

1.    Defendant BACA and his co-conspirators would attempt to prevent the FBI and a federal grand jury from conducting an investigation of deputy abuse of inmates and corruption within MCJ and TTCF.

2.    Defendant BACA would create an environment where LASD employees viewed the FBI as adversaries, did not cooperate with the Federal Investigation, and attempted to thwart the federal government's efforts to pursue the Federal Investigation.

6

3.    Defendant BACA would place co-conspirator Tanaka, his undersheriff, in charge of carrying out their efforts to obstruct the Federal Investigation.

4.    Defendant BACA and his co-conspirators would attempt to prevent the federal government and federal grand jury from interviewing or contacting Inmate AB, someone they knew was an informant assisting the Federal Investigation.

5.    Defendant BACA would cause overtime to be provided to LASD deputies standing guard over Inmate AB to prevent the federal government from having access to him.

6.    Defendant BACA and his co-conspirators would attempt to learn the details and scope of the Federal Investigation.

7.    Defendant BACA would cause the LASD to begin investigating those incidents encompassed by the Federal Investigation.

8.    Defendant BACA would threaten to investigate and would cause the LASD to investigate the FBI agents assigned to the civil rights and public corruption probe in retaliation for the Federal Investigation of deputy abuse and corruption within MCJ and TTCF.

9.    Defendant BACA would ask the United States Attorney's Office to withdraw the federal grand jury subpoenas issued to the LASD.

10.    Defendant BACA would otherwise attempt to convince the United States Attorney's Office and the FBI to end the Federal Investigation of the LASD, including by threatening to stop the LASD's participation in federal task forces.

7

C.     OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, defendant BACA, along with co-conspirators Tanaka, Carey, Leavins, Craig, Long, Thompson, Smith, Manzo, and Sexton, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, including but not limited to the following:

1.     On or about August 20, 2011, defendant BACA met with co-conspirators Tanaka, Carey, Thompson, Smith, Manzo and others, and discussed that the cell phone found in the possession of Inmate AB belonged to the FBI.  Defendant BACA ordered that Inmate AB be kept in LASD custody, isolated, and interviewed.  Defendant BACA further ordered that ICIB investigate how Inmate AB obtained the cellular phone.

2.     On or about August 20, 2011, defendant BACA placed co-conspirator Tanaka in charge of the efforts to obstruct the Federal Investigation.

3.     On or about August 23, 2011, defendant BACA met with co-conspirators Thompson and Carey and learned that the FBI had interviewed Inmate AB at MCJ that day.

4.     By no later than August 26, 2011, defendant BACA approved overtime for LASD deputies to guard Inmate AB to prevent the federal government from having access to him.

5.     On or about August 26, 2011, co-conspirators Tanaka, Carey, Leavins, Thompson, Smith, and Manzo caused Inmate AB to be moved from MCJ to the LASD's San Dimas station.

6.    On or about August 26, 2011, at approximately 5:45 p.m., defendant BACA and co-conspirator Tanaka spoke on the phone.

7.    On or about August 26, 2011, at approximately 5:49 p.m., co-conspirators Tanaka and Leavins spoke on the phone.

8.    On or about August 26, 2011, at approximately 5:57 p.m., defendant BACA and co-conspirator Leavins spoke on the phone.

9.    On or about August 29, 2011, defendant BACA met with members of the United States Attorney's Office, expressed his displeasure over the Federal Investigation, and asked the United States Attorney's Office to withdraw grand jury subpoenas issued to the LASD.

10.    On or about September 2, 2011, co-conspirator Leavins directed LASD personnel to conduct searches for listening devices in:

    a.    defendant BACA's office and conference room;

    b.    co-conspirator Tanaka's office and conference room; and

    c.    ICIB's Task Force office.

11.    On or about September 22, 2011, defendant BACA and co-conspirators Tanaka, Carey, and Leavins met to discuss approaching Special Agent LM outside of her residence.

12.    On or about September 26, 2011, defendant BACA wrote a letter to the United States Attorney's Office stating, among other things:

    a. The LASD would conduct an investigation into the FBI's conduct for purported violations of state law based on the federal undercover probe of Deputy Gilbert Michel;

    b. Defendant BACA demanded to know the details and scope of the Federal Investigation;

    c. Defendant BACA requested that the United States Attorney's Office withdraw the federal grand jury subpoenas served on the LASD;

    d. Defendant BACA requested that the United States Attorney's Office stop supporting the FBI's efforts in the Federal Investigation;

    e. Defendant BACA threatened to end the LASD's participation in federal task forces.

13. On or about September 26, 2011, defendant BACA appeared on television and stated that he believed the FBI had committed a crime.

14. On or about September 26, 2011, co-conspirators Craig and Long confronted Special Agent LM outside of her residence and informed her that:

    a. Special Agent LM was a named suspect in a felony complaint being pursued by the LASD; and

    b. Co-conspirator Craig was in the process of swearing out a declaration for a warrant for the arrest of Special Agent LM.

15. On or about September 26, 2011, co-conspirator Long informed Special Agent LM's supervisor at the FBI that there was going to be a warrant issued for Special Agent LM's arrest, the arrest warrant could be issued as soon as the next day,

defendant BACA was aware of the situation, and the supervisor would have to speak to co-conspirator Tanaka about the charges.

COUNT TWO

[18 U.S.C. § 1503(a)]

From on or about August 18, 2011, to on or about September 26, 2011, in Los Angeles County, within the Central District of California, defendant LEROY BACA corruptly endeavored to influence, obstruct, and impede the due administration of justice, namely, a federal grand jury investigation into abuse and corruption by LASD's employees working within the Los Angeles County jails.

COUNT THREE

[18 U.S.C. § 1001(a)(2)]

On or about April 12, 2013, in Los Angeles County, within the Central District of California, in a matter within the jurisdiction of the executive branch of the government of the United States, namely, the Federal Bureau of Investigation and the United States Attorney's Office for the Central District of California, defendant LEROY BACA ("BACA") knowingly and willfully made the following materially false and fictitious statements and representations:

1.    Defendant BACA falsely stated that he did not know as of, or during, a meeting held on or about August 20, 2011, that the federal government was conducting a civil rights investigation of the Los Angeles County Sheriff's Department. In fact, as defendant BACA knew at the time he made the statement, he was aware that the federal government was conducting a civil rights investigation of the LASD.

2.    Defendant BACA falsely stated he was not involved in a conversation about keeping the FBI and Inmate AB away from each other.  In fact, as defendant BACA knew at the time he made the statement, he had been a participant in conversations with other members of the LASD about keeping Inmate AB away from the FBI.

3.    Defendant BACA falsely stated that he was unaware and was not informed that FBI Special Agents were not allowed to continue an interview they were conducting of Inmate AB at Men's Central Jail on August 23, 2011.  In fact, as defendant BACA knew at the time he made the statement, he was told by then-LASD Lieutenant Greg Thompson on August 23, 2011 that the FBI had

13

interviewed Inmate AB and that the interview was terminated by the LASD.

4.     Defendant BACA falsely stated that he was not aware until he received a phone call from the Assistant Director in Charge of the FBI in Los Angeles on September 26, 2011, that LASD officials were going to approach Special Agent LM to try to talk to her, to threaten to charge her, or to threaten to arrest her.  In fact, as defendant BACA knew at the time he made the statement, he had been aware that LASD officials were going to approach FBI Special Agent LM before they did so.

5.    Defendant BACA falsely stated that he never said that he did not believe that the FBI should be investigating the LASD.  In fact, as defendant BACA knew at the time he made the statement, he had previously said that he did not believe that the FBI should be investigating the LASD.

A TRUE BILL

/S/

Foreperson

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

BRANDON D. FOX
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section

LIZABETH A. RHODES
Assistant United States Attorney
Chief, General Crimes Section

EDDIE A. JAUREGUI
Assistant United States Attorney
General Crimes Section