EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No. 290409)
Chief, Public Corruption & Civil Rights Section
LIZABETH A. RHODES (Cal. Bar No. 155299)
Chief, General Crimes Section
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
General Crimes Section
Assistant United States Attorneys
     1500/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0284/3541/4849
     Facsimile: (213) 894-7631
     E-mail:    Brandon.Fox@usdoj.gov
               Lizabeth.Rhodes@usdoj.gov
               Eddie.Jauregui@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>            v.<br><br>LEROY BACA,<br><br>        Defendant. | No. CR 16-66(A)-PA<br><br>JOINT MOTIONS IN LIMINE<br><br>**Motions Hearing Date:**<br>October 31, 2016, 3:00 p.m. |

Plaintiff, United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, and Assistant United States Attorneys Brandon D. Fox, Lizabeth A. Rhodes, and Eddie A. Jauregui, and defendant Leroy Baca ("defendant"), by and through his counsel of record Nathan Hochman and Brianna Abrams, hereby jointly file the attached motions in limine, per the Court's standing order.

The government's motions in limine are based upon the attached memorandum of points and authorities, the files and records in this case, and such other evidence and argument as may be presented.

DATED: September 26, 2016          Respectfully Submitted,

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

/s/ Brandon D. Fox
_____
BRANDON D. FOX
LIZABETH A. RHODES
EDDIE A. JAUREGUI
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA


/s/ Nathan Hochman (authorized
via e-mail 9/26/2016)
_____
NATHAN HOCHMAN
BRIANNA ABRAMS

Attorneys for Defendant
LEROY BACA

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                              <u>PAGE</u>

TABLE OF AUTHORITIES............................................................ii

I.   INTRODUCTION...............................................................1

II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.................................1

III. GOVERNMENT'S MOTIONS IN LIMINE............................................2

     A.    Government's MIL 1:  Motion to Exclude Government's
           Prior Statements....................................................2

     B.    Government's MIL 2:  Motion to Exclude the Procedural
           History of the Case.................................................6

     C.    Government MIL 3:  Motion to Exclude Evidence of
           Defendant's "Good Works" and Remedial Measures and
           Subsequent "Cooperation"............................................6

IV.  CONCLUSION................................................................15

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                    <u>PAGE</u>

<u>CASES</u>

<u>Berger v. United States</u>,
        295 U.S. 78 (1935)..........................................2

<u>Kohatsu v. United States</u>,
        351 F.2d 898 (9th Cir. 1965)..............................8, 14

<u>Michelson v. United States</u>,
        335 U.S. 469 (1948).........................................9

<u>Pinkerton v. United States</u>,
        328 U.S. 640 (1946).........................................3

<u>United States v. Bakshinian</u>,
        65 F. Supp. 2d 1104 (C.D. Cal. 1999)........................2

<u>United States v. Bingham</u>,
        653 F.3d 983 (9th Cir. 2011)................................2

<u>United States v. DeLoach</u>,
        34 F.3d 1001 (11th Cir. 1994)...............................2

<u>United States v. Ford</u>,
        435 F.3d 204 (2d Cir. 2006).................................2

<u>United States v. Gonzalez-Flores</u>,
        418 F.3d 1093 (9th Cir. 2005)..............................14

<u>United States v. Hedgcorth</u>,
        873 F.2d 1307 (9th Cir. 1989)...............................9

<u>United States v. Keiser</u>,
        57 F.3d 847 (9th 1995)....................................8-9

<u>United States v. Radtke</u>,
        415 F.3d 826 (8th Cir. 2005)..............................8, 14

<u>United States v. Santana-Camacho</u>,
        931 F.2d 966 (1st Cir. 1991)................................9

<u>United States v. Scholl</u>,
        166 F.3d 964 (9th Cir. 1999)................................9

<u>United States v. Sua</u>,
        307 F.3d 1150 (9th Cir. 2002)...............................2

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                                                    PAGE

<u>STATUTES</u>

18 U.S.C. § 1001(a)(2).........................................1, 14

18 U.S.C. § 1503(a)..............................................1

18 U.S.C. § 371.................................................1

<u>RULES</u>

Fed. R. Evid. 401.............................................7, 9

Fed. R. Evid. 403.......................................2, 3, 7, 12

Fed. R. Evid. 404..............................................15

Fed. R. Evid. 405(a)..........................................8, 9

Fed. R. Evid. 405(b)............................................8

Fed. R. Evid. 410..............................................3

**GOVERNMENT'S MOTIONS IN LIMINE AND DEFENDANT'S RESPONSES**

**I.    INTRODUCTION**

Pursuant to the Court's order, the parties have met and conferred regarding potential motions in limine in an effort to find agreement where possible and limit the number of disputed issues. The government initially presented five potential motions in limine to the defense.  Some of those motions have become moot or will be addressed later per the Court's scheduling order for expert motions. As discussed below, the parties have reached agreement on two government motions, leaving only one government motion in limine in dispute.  At this time, the defense has not offered any potential motions in limine.

**II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On August 5, 2016, a federal grand jury returned a three-count First Superseding Indictment charging defendant with conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371; obstruction of justice, in violation 18 U.S.C. § 1503(a); and willfully making a false statement, in violation of 18 U.S.C. § 1001(a)(2).

This Court, having presided over the trials of numerous Los Angeles County Sheriff's Department ("LASD") deputies, sergeants, and lieutenants, and, most recently, Undersheriff Paul Tanaka, is familiar with the factual background to this case generally.  The government will not recite it at length here.  For purposes of this brief, the government incorporates the factual allegations in the First Superseding Indictment and the factual basis in the prior plea agreement.  (CR 5, ¶¶ 9-10, CR 70.)

**III. GOVERNMENT'S MOTIONS <u>IN</u> <u>LIMINE</u>**

    **A.    Government's MIL 1:  Motion to Exclude Government's Prior Statements**

    The government moves to preclude defendant from introducing at trial statements made by the prosecution in its sentencing position in this case, or elsewhere (including related LASD trials), as party admissions.  These irrelevant statements are plainly inadmissible under Federal Rule of Evidence 401.  Even if the statements were marginally relevant, they would be inadmissible under Rule 403, as such statements would mislead and confuse the jury and waste significant time and unfairly prejudice the government.  <u>See</u> Fed. R. Evid. 403; <u>cf.</u> <u>United States v. Bingham</u>, 653 F.3d 983 (9th Cir. 2011) (indictment in related case not admitted; admission of such evidence would waste time and confuse jury and would be of little or no probative value); <u>United States v. Sua</u>, 307 F.3d 1150, 1153 (9th Cir. 2002) (co-defendant's plea agreement not admitted; agreement's low probative value substantially out-weighed by confusion of issues, misleading of jury and undue delay); <u>United States v. Bakshinian</u>, 65 F. Supp. 2d 1104 (C.D. Cal. 1999) (prosecutor's statements during closing arguments in co-defendant's severed trial excluded under Fed. R. Evid. 401 and 403); <u>see also</u> <u>Berger v. United States</u>, 295 U.S. 78, 88-89 (1935) (prosecutor's belief in defendant's culpability not relevant); <u>United States v. DeLoach</u>, 34 F.3d 1001, 1005-06 (11th Cir. 1994) (prosecutor's closing argument at trial of defendant on another indictment not admissible because statements were not statements of fact and not clearly inconsistent) (adopting test from <u>United States v. Ford</u>, 435 F.3d 204, 215 (2d Cir. 2006)).  Finally, admitting government statements pertaining to defendant's then-pending

sentencing would be inconsistent with Fed. R. Evid. 410 and would require rebuttal from the government, further confusing the issues at trial and wasting time.

**Defense Response:**

Defendant disagrees with the government's contentions that the prior statements by the government do not constitute party opponent admissions and should otherwise be excluded under FRE 403.  However, defendant agrees not to seek to introduce any prior statements by the government unless the government opens the door by taking positions inconsistent with those statements at trial.  Defendant acknowledges and agrees that neither the introduction of evidence based on Pinkerton v. United States, 328 U.S. 640 (1946), nor arguments based on Pinkerton, will be considered by the defense as opening of the door.  Moreover, defendant acknowledges and agrees that the government may take a position inconsistent with a prior statement if the position is based on evidence obtained after the prior statement was made.

Defense counsel has now provided the government with a list of the following statements it believes could be used as admissions if the government opens the door at trial:

**From the Government's Sentencing Position (Dkt. 32):**

- Under "The FBI Interviews Brown" (pg 3), the government writes: "After Tanaka said that Thompson needed to brief the Sheriff, Thompson entered defendant Baca's office and explained what happened.  According to Thompson, defendant Baca showed understanding and was not upset.  Baca's measured tone was in sharp contrast to Tanaka's reaction to learning the same news just minutes earlier."

- Under "The Plan to Keep the FBI away from Men's Central Jail is Implemented" (pg 4), the government writes: "The investigation has revealed no documents or witnesses connecting this policy to defendant Baca."

- Under "Further Concealment of Brown after Writ is Issued" (pg 5), the government writes: "Despite the extensive investigation and multiple trials, the evidence has not revealed whether defendant Baca was aware of the Sheriff's Department movement of Brown, his name changes, or the federal writ."

- Under "The Sheriff's Department Tampers with Witnesses" (pg 6), the government writes: "The extensive investigation and multiple trials have revealed no evidence that suggests defendant Baca was ever aware of this witness tampering."

- Under "The Sheriff's Department Seeks a Superior Court Order to Obtain FBI Records and Information" (pg 7), the government writes: "The investigation has revealed no evidence that defendant Baca was aware of the failed attempt to obtain this court order.  Indeed, Baca was on his way out of the country when this occurred.  He would not return to work for two weeks."

- Under "The Nature and Circumstances of the Offense, the Seriousness of the Offence, and Just Punishment" (pg 11), the government writes: ". . . his crime is not as serious as the crimes by the members of the Sheriff's Department who were convicted of beating inmates and filing false reports in order to have people charged with offenses they

did not commit.  Further, while he was at the top of the organization, the evidence does not show that he was as involved in the hiding of Brown and tampering with witnesses as his subordinates were."

**From the July 18, 2016 Sentencing Hearing:**

- At the July 18th sentencing hearing, in addressing whether the abuse of position of trust enhancement should apply, AUSA Fox stated: "I think he [Baca] did not abuse his position of trust in lying to us because it didn't help him facilitate his offense.  His position did not help him do that." (RT 9).

**From the Government's Response to Defendant Paul Tanaka's Sentencing Brief (Dkt. 174 in U.S. v. Tanaka, CR No. 15-255):**

- In The Government's Response to Defendant Tanaka's Sentencing Brief and Objections to the PSR, at 2. "Although defendant makes much of the alleged unfair disparity between Baca's potential sentence and his own, he does not own up to the fact that he, not Baca, ran the day-to-day operations of the Sheriff's Department and the Department's efforts to keep the FBI out of the jails; that he chose the principal members of the conspiracy . . ." Document #174

**From the Government's Closing Argument in U.S. v. Paul Tanaka, CR No. 15-255:**

- On April 5, 2016, in the Government's closing argument, it argued "This was Mr. Tanaka's operation.  He was running the show.  We knew that from the beginning."  US v. Tanaka, April 5, 2016 trial transcript  at 62, line 9-10

5

Defendant agrees to raise the issue with the Court before seeking to introduce such statements

**B.   Government's MIL 2:   Motion to Exclude the Procedural History of the Case**

With the possible exception of the alleged party admissions referenced above (which are in dispute), the parties agree that the procedural history of the case should not be disclosed to the jury. Accordingly, the parties agree not to elicit testimony or seek to introduce evidence pertaining to the Information, defendant's prior guilty plea, the Court's decision to reject the binding Rule 11(c)(1)(C) plea agreement and the Court's reasons for doing so, and the potential penalties associated with the prior plea.  As argued above, the government believes that its statements in any sentencing brief or court proceedings relating to defendant's Rule 11(c)(1)(C) plea agreement should be excluded.  Should those statements be admitted at trial, the government would be entitled to respond, which could open the door to additional information pertaining to defendant's prior guilty plea and sentencing hearings.

**Defense Response:**

Defendant agrees that the procedural history of the case should not be disclosed to the jury.

**C.   Government MIL 3:   Motion to Exclude Evidence of Defendant's "Good Works" and Remedial Measures and Subsequent "Cooperation"**

In his sentencing position, defendant highlighted his work in the Sheriff's Department and the community generally and asked the Court to consider his "prior good works" in fashioning an appropriate sentence.  Def.'s Sentencing Br. at 5-6.  The government expects that the defense may seek to introduce such evidence at trial to negate

6

evidence of defendant's corrupt intent.  During the parties' meet-and-confer, and in written correspondence prior, the government expressed to defense counsel its view that such prior "good acts" and "remedial measures" are inadmissible at trial under the Federal Rules of Evidence.  By way of example, the government highlighted the LASD's "Education Based Incarceration Program" and noted that defendant's involvement in that program would be inadmissible under Federal Rule of Evidence ("FRE") 404.  Similarly, the government expressed its belief that other "remedial measures," i.e., measures occurring after the end of the conspiracy, would be inadmissible at trial, including, but not limited to: (1) any changes within the county jails that would help inmates or tamp down on inmate civil rights violations; (2) any meetings with the ACLU or other jail monitors; and (3) any "cooperation" by defendant or the Sheriff's Department, including responding to federal grand jury subpoenas.

As an initial matter, defendant would have to show that any evidence he seeks to introduce at trial is legally relevant.[1]  Fed. R. Evid. 401.  Even if relevant, such evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  Fed. R. Evid. 403.  Although the defense has not identified any specific post-offense acts that it may seek to admit, any evidence pertaining to defendant's good works or remedial measures after the duration of the conspiracy, or of any

---

[1] Defense counsel has not identified any post-offense acts he would seek to admit at trial but has left open that possibility.

later "cooperation" with the government, is irrelevant to defendant's intent at the time of the alleged crimes.  The fact that defendant instituted certain programs for inmates (like the Education-Based Incarceration Program) or that LASD later complied with federal grand jury subpoenas by producing documents is not a defense to the charges against defendant in the First Superseding Indictment.  The crimes were, by then, complete and the defendant knew that the government was investigating obstruction of justice.  Accordingly, these types of acts should be excluded from the trial.  See Kohatsu v. United States, 351 F.2d 898, 904 (9th Cir. 1965) (subsequent efforts to make amends "has but small probative value for the purpose of showing lack of evil intent"; trial courts are vested with "considerable discretion" in refusing to admit such evidence) (internal quotations omitted); United States v. Radtke, 415 F.3d 826, 840-41 (8th Cir. 2005) ("[T]here is no doubt that self-serving exculpatory acts performed substantially after a defendant's wrongdoing is discovered are of minimal probative value as to his state of mind at the time of the alleged crime.").

Defendant should also be foreclosed from seeking to introduce evidence of specific acts through character witnesses under Rules 404, 405, and 608 of the Rules of Evidence.  None of the charges in this case, and no plausible defense, has as an essential element defendant's character or any specific character trait.  See Fed. R. Evid. 405(b).  Therefore, should defendant call any character witnesses to testify at trial, those witnesses may testify about defendant's pertinent character traits in the form of reputation or opinion testimony only.  Fed. R. Evid. 405(a); United States v.

8

Keiser, 57 F.3d 847, 856 (9th 1995).[2]  Even if defendant himself testifies (potentially putting his character for truthfulness in issue), evidence of defendant's positive job performance or his being a "good officer" is irrelevant to this trial and is inadmissible under the Rules.  Fed. R. Evid. 401, 403, 404, 405, 608; see also Michelson v. United States, 335 U.S. 469, 477 (1948) ("The witness may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental and moral traits . . . ."); United States v. Hedgcorth, 873 F.2d 1307, 1313 (9th Cir. 1989) (evidence of defendant's role as government intelligence officer properly excluded where offered to show that defendant was "patriotic," "pro-government," and unlikely to engage in acts of terrorism); United States v. Santana-Camacho, 931 F.2d 966, 968 (1st Cir. 1991) ("evidence that appellant is kind or a good family man would not make any fact 'of consequence to the determination' of the case [significantly] more or less probable than it would be without evidence of the trait").

**Defense Response:**

The government MIL three requests four types of evidence be excluded: (1) defendant's "good works"; (2) remedial measures to address the jails; (3) subsequent cooperation with the government's investigation; and (4) specific acts through character witnesses.

With respect to defendant's "good works", the defense will only seek to admit legally relevant evidence.  If Mr. Baca did a "good

---

[2] On cross-examination, the government may inquire into relevant specific instances of the defendant's conduct.  Fed. R. Evid. 405(a); Michelson v. United States, 335 U.S. 469, 479 (1948); United States v. Scholl, 166 F.3d 964, 974 (9th Cir. 1999).

work" that relates to the any of the charged conduct or its defenses, then we will at that time seek the Court's permission to introduce it.  At this time, the defense has not determined what "good works" it would want to introduce, if any, and is unclear what the government even means by "good works."

With respect to remedial measures to address the jails, the government believes that the time frame in which this can be considered ends in September 2011 with the end of the time period for the conspiracy and obstruction of justice charges.  The government states that the time period cannot include the time period involving the false statement charge which occurred in April 2013.  The defense submits that the appropriate time frame from which remedial measures should be considered should continue through April 12, 2013, the date on which the false statements allegedly occurred, for the following reasons.  First, the government has argued that Mr. Baca's motivation in 2011 to obstruct the government's investigation stemmed from his desire for the government not to uncover his role in the alleged prison abuse and culture that fostered abuse of inmates.  With respect to the false statement offense conduct in 2013, the Government argues that Mr. Baca was motivated to make false statements in his April 12, 2013 interview as a way to hide his direct role in the alleged obstruction of the 2011 investigation. Thus, the government's motivation evidence for the 2011 and 2013 charges is the same: Mr. Baca allegedly taking actions to ensure that the federal government not learn of his involvement or participation with a system and culture that promoted civil rights violations in the jails.

10

The defense intends to rebut that motivation evidence by showing that Mr. Baca's motivation was not to obstruct or otherwise facilitate a culture of abuse in the prison system in 2011 or 2013, but rather to change the culture starting with the prisoners and through a partnership with various law enforcement agencies. Evidence of programs and initiatives that seek to change the prison culture through the education of inmates and Sheriff Department employees that occurred up through April 12, 2013 is directly relevant to Mr. Baca's motive, and contrary to the motive the government intends to peddle to the jury.  For instance, the LASD Education Based Incarceration Program initiated in 2010 by Mr. Baca and occurring throughout the 2011-2013 time frame was Mr. Baca's attempt to help rectify part of the problems that were occurring in the jails. Moreover, this issue was discussed directly in Mr. Baca's interview on April 12, 2013, the interview at which he allegedly provided five false statements.  Such a motivation is the opposite of a motivation to hide inmate abuses from the federal government.  So too were the LASD's efforts at Mr. Baca's directions to adopt programs and policies from 2010-2013 addressing the ACLU's concerns.

With respect to subsequent cooperation with the government's investigation, Mr. Baca's and the LASD's cooperation and compliance with subpoenas and the federal investigation into prison abuse up through April 2013 are directly relevant to Mr. Baca's motivation to work with law enforcement toward the greater goal of changing the culture of abuse and stress within the prison system.  The defense is unclear how the compliance with grand jury subpoenas can be irrelevant in a case involving obstruction of a grand jury investigation in which the grand jury subpoenas are part of the

11

criminal activity charged.  If the subpoenas were complied with, such evidence is certainly relevant as would evidence that the subpoenas were not complied with.  The fact that the subpoenas may have been complied with outside of the time frame the government has selected for its charge does not make the fact that the subpoenas were or were not complied with and the timing of such irrelevant.  Indeed, Mr. Birotte's response to Mr. Baca following the meeting on September 27, 2011 regarding the subpoenas is extremely relevant given that you have charged the statements by Mr. Baca in that very meeting as one of the overt acts in the conspiracy and as part of the obstruction of justice.[3]  Moreover, to the extent that the government is arguing that Mr. Baca's intent was to obstruct the FBI/USAO investigation, then evidence showing that Mr. Baca did not intend to do so in 2011 and did not lie about it in 2013 is highly relevant to the charges. There are no FRE 403 issues as there is little prejudicial effect that substantially outweighs the highly probative evidence of grand jury subpoena compliance.

---

[3] While the conspiracy and obstruction charges technically end on September 26, 2011, it would be quite surprising if the government does not seek to introduce evidence following September 26, 2011 to prove these charges.  For instance, Mr. Baca met with then U.S. Attorney Andre Birotte and Assistant FBI Director Steven Martinez in Mr. Birotte's office on September 27, 2011 where he made certain statements to them about the investigation and provided the letter to Mr. Birotte that is referenced in Overt Act 12 of the Count 1 conspiracy charge.  Given that the government is going to introduce post-September 26, 2011 evidence at trial -- unless it affirms categorically it will not -- then the government's argument that all evidence relating to the conspiracy and obstruction of justice charges should be limited to on or before September 26, 2011 is disingenuous and should be rejected.  Since Mr. Baca will be introducing the same essential motivation evidence for why he did not knowingly and willfully provide false statements during the Count 3 April 12, 2013 interview as for why he did not corruptly obstruct justice or conspire to do so in the August-September 2011 time frame, the applicable time period should be through April 12, 2013, not September 26, 2011.

12

Accordingly, the defense submits that the appropriate time frame for the consideration of evidence relating to remedial measures to address the jails and subsequent cooperation efforts with the government's investigation is through the April 12, 2013 interview, not just through the end of the 2011 conspiracy.  Moreover, if the defense intends to introduce evidence of "good works," the defense will see if they can reach a resolution with the government first and, if unsuccessful, bring such evidence to the Court's attention prior to seeking its introduction.

As for using specific acts of character witnesses, the character issues of law-abidingness and honesty are certainly relevant at a trial involving corrupt intent to obstruct justice and knowing false statements to a government agency. The defense intends to abide by the Federal Rules of Evidence to the extent it seeks to introduce any evidence concerning these two relevant character traits of Mr. Baca.

**Government Reply:**

The key issue in dispute appears to be what constitutes "post-offense" conduct.  The government has charged defendant with conspiring to obstruct justice and obstruction of justice from no later than August 19, 2011 to on or about September 26, 2011 (Counts One and Two).  Thus, as far as Counts One and Two are concerned, post-offense conduct must include anything after approximately September 26, 2011.[4]  As argued above, any evidence of remedial measures or compliance taken after that date would be irrelevant, confusing, and a waste of time.  The fact that the Sheriff's Department may have instituted reforms after the conspiracy ended and

---

[4] Contrary to the defense's contention, the government has not charged any overt acts occurring on September 27, 2011.

13

after the Department knew it was being investigated has little probative value, if any, for purposes of determining defendant's intent at the time the crimes were committed. See Kohatsu, 351 F.2d at 904; Radtke, 415 F.3d at 840-41. Defendant's state of mind after that time period is irrelevant to these charges.

In Count Three, the government charges defendant with a separate crime – making false statements to the FBI on or about a single date, April 12, 2013.[5] To convict a defendant for making false statements in violation of 18 U.S.C. § 1001(a)(2), the government must prove that the defendant willfully made a materially false statement to the FBI in a matter within the jurisdiction of the agency. See Ninth Circuit Model Jury Instruction No. 8.73 (2010 ed.) (approved 6/2014). Evidence of remedial measures taken to improve the jails or to comply with federal grand jury subpoenas after September 26, 2011, and before April 12, 2013, is simply irrelevant to any of the elements of this charge. See United States v. Gonzalez-Flores, 418 F.3d 1093, 1098 (9th Cir. 2005) (probative value low when evidence does not go to any element of the charges).

Defendant argues that his "cooperation and compliance with subpoenas and the federal investigation into prison abuse up through April 2013 are directly relevant to Mr. Baca's motivation to work with law enforcement toward the greater goal of changing the culture of abuse and stress within the prison system." But defendant's purported motivation to "chang[e] the culture of abuse and stress" within the jails has no bearing on whether he willfully lied to the

---

[5] Nowhere does the government allege a continuing offense from on or about September 26, 2011 through April 12, 2013.

14

FBI in 2013 about a material issue.  It does not go to the falsity of any of the statements, their materiality, or to defendant's state of mind when he made the false statements (i.e., whether he willfully lied).  Moreover, contrary to defendant's suggestion, such evidence does not undermine the government's theory about why defendant lied to the FBI in 2013.[6]  In fact, taking steps to improve the jails and to comply with the federal government's investigation after the conspiracy ended and during the pendency of the federal investigation would be consistent with wanting to hide one's role in the prior obstruction.

Finally, it appears the defense continues to believe that it may introduce evidence of specific acts of certain character witnesses and possibly defendant.  It may not.  Character is not an essential element of any of the charges or of any possible defense.  Accordingly, evidence of specific acts is not allowed, except for on cross-examination.  See Fed. R. Evid. 404, 405, 608.

**IV.    CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court grant its motions in limine.

---

[6] The defense is incorrect that the government's theories regarding defendant's motives to obstruct justice and lie to the FBI are the same.  The government has explained that it believes defendant sought to obstruct justice, and did in fact obstruct justice in 2011, to prevent disclosure of widespread and ongoing abuse and corruption within the jails.  By contrast, the government believes defendant lied to the FBI in 2013 to hide his role in the obstruction efforts of 2011.

15