protections, he cannot get rid of proven liars he inherited from the **BACA** era. In the landmark Brady vs. Maryland case, the U.S. Supreme Court ruled that prosecutors must turn over exculpatory evidence to the defense. Local prosecutors keep a so-called Brady list of officers with credibility issues, which defense attorneys can use to undermine the officers' testimony, potentially derailing criminal cases. At the Los Angeles Police Department, where McDonnell spent much of his career, lying under oath or on an official report almost always costs an officer his or her job if the lie is material to the case, said Cmdr. Stuart Maislin, who is in charge of internal affairs. See the most-read stories this hour >> An LAPD officer who is fired by the chief for lying but reinstated through the appeals process is typically placed on long-term desk duty. "Once we prove something is a false statement, it's almost a kiss of death" for the officer's career, Maislin said. Under **BACA,** a cornerstone of the Sheriff's Department's discipline system was the use of remedial classes instead of suspensions. If deputies learned why the behaviors were wrong, **BACA** reasoned, they would be less likely to re-offend. In a 2013 report, a department watchdog said classroom time was not adequate punishment for some deputies who made false statements, including lying on official records. "There are far too many instances of the department being lenient toward members who withheld or obscured the truth," Special Counsel Merrick Bobb wrote in the report. The Civil Service Commission voted to return Genao to duty with a 30-day suspension. The Sheriff's Department has put him on leave, with pay, while it appeals. In a third case being challenged by McDonnell, Deputy Mark Montez said he did not see or hear another deputy punch an inmate seven times at Men's Central **JAIL** on Sept. 27, 2010, according to a civil service hearing officer's report filed in court. Video showed Montez was standing nearby when the beating occurred, according to the report.

**View▶**

Unique Visitors:  2,802

1578.   **Burbank Leader**  Online Only   Market: Los Angeles, CA

L.A. County sheriff's deputies who made false statements continue to draw payche                                                           Mar 8 2016 12:00PM PT

He has tightened the penalties for lying on the job, fired deputies who made false statements and is reviewing the assignments of those found to have lied in the past. Some could be required to work under special conditions, such as recording all their interactions with the public. McDonnell's tough approach contrasts with that of former **SHERIFF LEE BACA** who let some proven liars off with remedial classes. **BACA** himself pleaded **GUILTY** in federal court last month to lying to federal authorities and faces up to six months in prison as part of his **PLEA** agreement with prosecutors. Establishing clear ethical boundaries is especially important as the department emerges from a period of scandal, with more than a dozen former employees convicted of crimes including lying and beating a **JAIL** visitor, McDonnell said in interviews with The Times. He said there is no place in his department for the most egregious liars. Assigning them to desk jobs is not a solution because every deputy should be ready to testify on the witness stand, he said. "My question is, for someone who is proven to be untruthful or lacks integrity or committed acts of theft, insubordination, those kinds of things, where can I put someone like this?" McDonnell said. "Where can I comfortably deploy people where we don't have that level of trust?" But to fully implement his strict regime, McDonnell must contend with the Civil Service Commission, a five-member body appointed by the L.A. County Board of Supervisors that adjudicates discipline cases of county employees. In the last year, the commission has reinstated Genao as well as a deputy who lied about whether he had tried to take a photo under a woman's skirt and another deputy found to have falsely asserted that he had not witnessed a colleague beat up a **JAIL** inmate. McDonnell's efforts to challenge those

decisions and two others involving false statements mark a significant change from the past. In the previous five years, the Sheriff's Department did not appeal any civil service decisions of any type, according to department officials. The number of deputies with documented histories of dishonesty could be in the dozens or hundreds and possibly includes some high-ranking supervisors, said Executive Officer Neal Tyler, McDonnell's top aide. Even if he wins the court appeals, McDonnell cannot completely clean house. Because of contractual protections, he cannot get rid of proven liars he inherited from the **BACA** era. In the landmark Brady vs. Maryland case, the U.S. Supreme Court ruled that prosecutors must turn over exculpatory evidence to the defense. Local prosecutors keep a so-called Brady list of officers with credibility issues, which defense attorneys can use to undermine the officers' testimony, potentially derailing criminal cases. At the Los Angeles Police Department, where McDonnell spent much of his career, lying under oath or on an official report almost always costs an officer his or her job if the lie is material to the case, said Cmdr. Stuart Maislin, who is in charge of internal affairs. See the most-read stories this hour >> An LAPD officer who is fired by the chief for lying but reinstated through the appeals process is typically placed on long-term desk duty. "Once we prove something is a false statement, it's almost a kiss of death" for the officer's career, Maislin said. Under **BACA,** a cornerstone of the Sheriff's Department's discipline system was the use of remedial classes instead of suspensions. If deputies learned why the behaviors were wrong, **BACA** reasoned, they would be less likely to re-offend. In a 2013 report, a department watchdog said classroom time was not adequate punishment for some deputies who made false statements, including lying on official records. "There are far too many instances of the department being lenient toward members who withheld or obscured the truth," Special Counsel Merrick Bobb wrote in the report. The Civil Service Commission voted to return Genao to duty with a 30-day suspension. The Sheriff's Department has put him on leave, with pay, while it appeals. In a third case being challenged by McDonnell, Deputy Mark Montez said he did not see or hear another deputy punch an inmate seven times at Men's Central **JAIL** on Sept. 27, 2010, according to a civil service hearing officer's report filed in court. Video showed Montez was standing nearby when the beating occurred, according to the report.

**View**▶

Unique Visitors:  2,802

1579.   **Glendale News Press** Newspaper   Market: Los Angeles, CA

   L.A. County sheriff's deputies who made false statements continue to draw payche                                                Mar 8 2016 12:00PM PT

He has tightened the penalties for lying on the job, fired deputies who made false statements and is reviewing the assignments of those found to have lied in the past. Some could be required to work under special conditions, such as recording all their interactions with the public. McDonnell's tough approach contrasts with that of former **SHERIFF LEE BACA** who let some proven liars off with remedial classes. **BACA** himself pleaded **GUILTY** in federal court last month to lying to federal authorities and faces up to six months in prison as part of his **PLEA** agreement with prosecutors. Establishing clear ethical boundaries is especially important as the department emerges from a period of scandal, with more than a dozen former employees convicted of crimes including lying and beating a **JAIL** visitor, McDonnell said in interviews with The Times. He said there is no place in his department for the most egregious liars. Assigning them to desk jobs is not a solution because every deputy should be ready to testify on the witness stand, he said. "My question is, for someone who is proven to be untruthful or lacks integrity or committed acts of theft, insubordination, those kinds of things, where can I put someone like this?" McDonnell said. "Where can I comfortably deploy people where we don't have that level of trust?" But to fully implement his strict regime, McDonnell must contend

with the Civil Service Commission, a five-member body appointed by the L.A. County Board of Supervisors that adjudicates discipline cases of county employees. In the last year, the commission has reinstated Genao as well as a deputy who lied about whether he had tried to take a photo under a woman's skirt and another deputy found to have falsely asserted that he had not witnessed a colleague beat up a **JAIL** inmate. McDonnell's efforts to challenge those decisions and two others involving false statements mark a significant change from the past. In the previous five years, the Sheriff's Department did not appeal any civil service decisions of any type, according to department officials. The number of deputies with documented histories of dishonesty could be in the dozens or hundreds and possibly includes some high-ranking supervisors, said Executive Officer Neal Tyler, McDonnell's top aide. Even if he wins the court appeals, McDonnell cannot completely clean house. Because of contractual protections, he cannot get rid of proven liars he inherited from the **BACA** era. In the landmark Brady vs. Maryland case, the U.S. Supreme Court ruled that prosecutors must turn over exculpatory evidence to the defense. Local prosecutors keep a so-called Brady list of officers with credibility issues, which defense attorneys can use to undermine the officers' testimony, potentially derailing criminal cases. At the Los Angeles Police Department, where McDonnell spent much of his career, lying under oath or on an official report almost always costs an officer his or her job if the lie is material to the case, said Cmdr. Stuart Maislin, who is in charge of internal affairs. See the most-read stories this hour >> An LAPD officer who is fired by the chief for lying but reinstated through the appeals process is typically placed on long-term desk duty. "Once we prove something is a false statement, it's almost a kiss of death" for the officer's career, Maislin said. Under **BACA,** a cornerstone of the Sheriff's Department's discipline system was the use of remedial classes instead of suspensions. If deputies learned why the behaviors were wrong, **BACA** reasoned, they would be less likely to re-offend. In a 2013 report, a department watchdog said classroom time was not adequate punishment for some deputies who made false statements, including lying on official records. "There are far too many instances of the department being lenient toward members who withheld or obscured the truth," Special Counsel Merrick Bobb wrote in the report. The Civil Service Commission voted to return Genao to duty with a 30-day suspension. The Sheriff's Department has put him on leave, with pay, while it appeals. In a third case being challenged by McDonnell, Deputy Mark Montez said he did not see or hear another deputy punch an inmate seven times at Men's Central **JAIL** on Sept. 27, 2010, according to a civil service hearing officer's report filed in court. Video showed Montez was standing nearby when the beating occurred, according to the report.

View▶

Unique Visitors:  11,410

1580.  **Glendale News Press** Newspaper  Market: Los Angeles, CA

L.A. County sheriff's deputies who lied continue to draw paychecks

Mar 8 2016 12:00PM PT

He has tightened the penalties for lying on the job, fired deputies who made false statements and is reviewing the assignments of those found to have lied in the past. Some could be required to work under special conditions, such as recording all their interactions with the public. McDonnell's tough approach contrasts with that of former **SHERIFF LEE BACA** who let some proven liars off with remedial classes. **BACA** himself pleaded **GUILTY** in federal court last month to lying to federal authorities and faces up to six months in prison as part of his **PLEA** agreement with prosecutors. Establishing clear ethical boundaries is especially important as the department emerges from a period of scandal, with more than a dozen former employees convicted of crimes including lying and beating a **JAIL** visitor, McDonnell said in interviews with The Times. He said there is no place in his department for the most egregious liars. Assigning

them to desk jobs is not a solution because every deputy should be ready to testify on the witness stand, he said. "My question is, for someone who is proven to be untruthful or lacks integrity or committed acts of theft, insubordination, those kinds of things, where can I put someone like this?" McDonnell said. "Where can I comfortably deploy people where we don't have that level of trust?" My question is, for someone who is proven to be untruthful or lacks integrity or committed acts of theft, insubordination, those kinds of things, where can I put someone like this? Sheriff Jim McDonnell But to fully implement his strict regime, McDonnell must contend with the Civil Service Commission, a five-member body appointed by the L.A. County Board of Supervisors that adjudicates discipline cases of county employees. In the last year, the commission has reinstated Genao as well as a deputy who lied about whether he had tried to take a photo under a woman's skirt and another deputy found to have falsely asserted that he had not witnessed a colleague beat up a JAIL inmate. McDonnell's efforts to challenge those decisions and two others involving false statements mark a significant change from the past. In the previous five years, the Sheriff's Department did not appeal any civil service decisions of any type, according to department officials. The number of deputies with documented histories of dishonesty could be in the dozens or hundreds and possibly includes some high-ranking supervisors, said Executive Officer Neal Tyler, McDonnell's top aide. Even if he wins the court appeals, McDonnell cannot completely clean house. Because of contractual protections, he cannot get rid of proven liars he inherited from the BACA era. In the landmark Brady vs. Maryland case, the U.S. Supreme Court ruled that prosecutors must turn over exculpatory evidence to the defense. Local prosecutors keep a so-called Brady list of officers with credibility issues, which defense attorneys can use to undermine the officers' testimony, potentially derailing criminal cases. At the Los Angeles Police Department, where McDonnell spent much of his career, lying under oath or on an official report almost always costs an officer his or her job if the lie is material to the case, said Cmdr. Stuart Maislin, who is in charge of internal affairs. See the most-read stories this hour >> An LAPD officer who is fired by the chief for lying but reinstated through the appeals process is typically placed on long-term desk duty. "Once we prove something is a false statement, it's almost a kiss of death" for the officer's career, Maislin said. Under BACA, a cornerstone of the Sheriff's Department's discipline system was the use of remedial classes instead of suspensions. If deputies learned why the behaviors were wrong, BACA reasoned, they would be less likely to re-offend. In a 2013 report, a department watchdog said classroom time was not adequate punishment for some deputies who made false statements, including lying on official records. "There are far too many instances of the department being lenient toward members who withheld or obscured the truth," Special Counsel Merrick Bobb wrote in the report. The Civil Service Commission voted to return Genao to duty with a 30-day suspension. The Sheriff's Department has put him on leave, with pay, while it appeals. In a third case being challenged by McDonnell, Deputy Mark Montez said he did not see or hear another deputy punch an inmate seven times at Men's Central JAIL on Sept. 27, 2010, according to a civil service hearing officer's report filed in court. Video showed Montez was standing nearby when the beating occurred, according to the report.

View▶

Unique Visitors: 11,410

1581.  **La Canada Valley Sun** Newspaper  Market: Los Angeles, CA
L.A. County sheriff's deputies who made false statements continue to draw payche
Mar 8 2016 12:00PM PT

He has tightened the penalties for lying on the job, fired deputies who made false statements and is reviewing the assignments of those found to have lied in the past. Some could be

required to work under special conditions, such as recording all their interactions with the public. McDonnell's tough approach contrasts with that of former **SHERIFF LEE BACA** who let some proven liars off with remedial classes. **BACA** himself pleaded **GUILTY** in federal court last month to lying to federal authorities and faces up to six months in prison as part of his **PLEA** agreement with prosecutors. Establishing clear ethical boundaries is especially important as the department emerges from a period of scandal, with more than a dozen former employees convicted of crimes including lying and beating a **JAIL** visitor, McDonnell said in interviews with The Times. He said there is no place in his department for the most egregious liars. Assigning them to desk jobs is not a solution because every deputy should be ready to testify on the witness stand, he said. "My question is, for someone who is proven to be untruthful or lacks integrity or committed acts of theft, insubordination, those kinds of things, where can I put someone like this?" McDonnell said. "Where can I comfortably deploy people where we don't have that level of trust?" But to fully implement his strict regime, McDonnell must contend with the Civil Service Commission, a five-member body appointed by the L.A. County Board of Supervisors that adjudicates discipline cases of county employees. In the last year, the commission has reinstated Genao as well as a deputy who lied about whether he had tried to take a photo under a woman's skirt and another deputy found to have falsely asserted that he had not witnessed a colleague beat up a **JAIL** inmate. McDonnell's efforts to challenge those decisions and two others involving false statements mark a significant change from the past. In the previous five years, the Sheriff's Department did not appeal any civil service decisions of any type, according to department officials. The number of deputies with documented histories of dishonesty could be in the dozens or hundreds and possibly includes some high-ranking supervisors, said Executive Officer Neal Tyler, McDonnell's top aide. Even if he wins the court appeals, McDonnell cannot completely clean house. Because of contractual protections, he cannot get rid of proven liars he inherited from the **BACA** era. In the landmark Brady vs. Maryland case, the U.S. Supreme Court ruled that prosecutors must turn over exculpatory evidence to the defense. Local prosecutors keep a so-called Brady list of officers with credibility issues, which defense attorneys can use to undermine the officers' testimony, potentially derailing criminal cases. At the Los Angeles Police Department, where McDonnell spent much of his career, lying under oath or on an official report almost always costs an officer his or her job if the lie is material to the case, said Cmdr. Stuart Maislin, who is in charge of internal affairs. See the most-read stories this hour >> An LAPD officer who is fired by the chief for lying but reinstated through the appeals process is typically placed on long-term desk duty. "Once we prove something is a false statement, it's almost a kiss of death" for the officer's career, Maislin said. Under **BACA,** a cornerstone of the Sheriff's Department's discipline system was the use of remedial classes instead of suspensions. If deputies learned why the behaviors were wrong, **BACA** reasoned, they would be less likely to re-offend. In a 2013 report, a department watchdog said classroom time was not adequate punishment for some deputies who made false statements, including lying on official records. "There are far too many instances of the department being lenient toward members who withheld or obscured the truth," Special Counsel Merrick Bobb wrote in the report. The Civil Service Commission voted to return Genao to duty with a 30-day suspension. The Sheriff's Department has put him on leave, with pay, while it appeals. In a third case being challenged by McDonnell, Deputy Mark Montez said he did not see or hear another deputy punch an inmate seven times at Men's Central **JAIL** on Sept. 27, 2010, according to a civil service hearing officer's report filed in court. Video showed Montez was standing nearby when the beating occurred, according to the report.

View▶

Unique Visitors:  2,443

1582.  **La Canada Valley Sun**  Newspaper   Market: Los Angeles, CA

Mar 8 2016 12:00PM PT

L.A. County sheriff's deputies who lied continue to draw paychecks

He has tightened the penalties for lying on the job, fired deputies who made false statements and is reviewing the assignments of those found to have lied in the past. Some could be required to work under special conditions, such as recording all their interactions with the public. McDonnell's tough approach contrasts with that of former **SHERIFF LEE BACA** who let some proven liars off with remedial classes. **BACA** himself pleaded **GUILTY** in federal court last month to lying to federal authorities and faces up to six months in prison as part of his **PLEA** agreement with prosecutors. Establishing clear ethical boundaries is especially important as the department emerges from a period of scandal, with more than a dozen former employees convicted of crimes including lying and beating a **JAIL** visitor, McDonnell said in interviews with The Times. He said there is no place in his department for the most egregious liars. Assigning them to desk jobs is not a solution because every deputy should be ready to testify on the witness stand, he said. "My question is, for someone who is proven to be untruthful or lacks integrity or committed acts of theft, insubordination, those kinds of things, where can I put someone like this?" McDonnell said. "Where can I comfortably deploy people where we don't have that level of trust?" My question is, for someone who is proven to be untruthful or lacks integrity or committed acts of theft, insubordination, those kinds of things, where can I put someone like this? Sheriff Jim McDonnell But to fully implement his strict regime, McDonnell must contend with the Civil Service Commission, a five-member body appointed by the L.A. County Board of Supervisors that adjudicates discipline cases of county employees. In the last year, the commission has reinstated Genao as well as a deputy who lied about whether he had tried to take a photo under a woman's skirt and another deputy found to have falsely asserted that he had not witnessed a colleague beat up a **JAIL** inmate. McDonnell's efforts to challenge those decisions and two others involving false statements mark a significant change from the past. In the previous five years, the Sheriff's Department did not appeal any civil service decisions of any type, according to department officials. The number of deputies with documented histories of dishonesty could be in the dozens or hundreds and possibly includes some high-ranking supervisors, said Executive Officer Neal Tyler, McDonnell's top aide. Even if he wins the court appeals, McDonnell cannot completely clean house. Because of contractual protections, he cannot get rid of proven liars he inherited from the **BACA** era. In the landmark Brady vs. Maryland case, the U.S. Supreme Court ruled that prosecutors must turn over exculpatory evidence to the defense. Local prosecutors keep a so-called Brady list of officers with credibility issues, which defense attorneys can use to undermine the officers' testimony, potentially derailing criminal cases. At the Los Angeles Police Department, where McDonnell spent much of his career, lying under oath or on an official report almost always costs an officer his or her job if the lie is material to the case, said Cmdr. Stuart Maislin, who is in charge of internal affairs. See the most-read stories this hour >> An LAPD officer who is fired by the chief for lying but reinstated through the appeals process is typically placed on long-term desk duty. "Once we prove something is a false statement, it's almost a kiss of death" for the officer's career, Maislin said. Under **BACA,** a cornerstone of the Sheriff's Department's discipline system was the use of remedial classes instead of suspensions. If deputies learned why the behaviors were wrong, **BACA** reasoned, they would be less likely to re-offend. In a 2013 report, a department watchdog said classroom time was not adequate punishment for some deputies who made false statements, including lying on official records. "There are far too many instances of the department being lenient toward members who withheld or obscured the truth," Special Counsel Merrick Bobb wrote in the report. The Civil Service Commission voted to return Genao to duty with a 30-day suspension. The Sheriff's Department has put him on

leave, with pay, while it appeals. In a third case being challenged by McDonnell, Deputy Mark Montez said he did not see or hear another deputy punch an inmate seven times at Men's Central **JAIL** on Sept. 27, 2010, according to a civil service hearing officer's report filed in court. Video showed Montez was standing nearby when the beating occurred, according to the report.

View▶

Unique Visitors: 2,443

1583.   **Laguna Beach Coastline Pilot**   Newspaper   Market: Los Angeles, CA

L.A. County sheriff's deputies who made false statements continue to draw payche     Mar 8 2016 12:00PM PT

He has tightened the penalties for lying on the job, fired deputies who made false statements and is reviewing the assignments of those found to have lied in the past. Some could be required to work under special conditions, such as recording all their interactions with the public. McDonnell's tough approach contrasts with that of former **SHERIFF LEE BACA** who let some proven liars off with remedial classes. **BACA** himself pleaded **GUILTY** in federal court last month to lying to federal authorities and faces up to six months in prison as part of his **PLEA** agreement with prosecutors. Establishing clear ethical boundaries is especially important as the department emerges from a period of scandal, with more than a dozen former employees convicted of crimes including lying and beating a **JAIL** visitor, McDonnell said in interviews with The Times. He said there is no place in his department for the most egregious liars. Assigning them to desk jobs is not a solution because every deputy should be ready to testify on the witness stand, he said. "My question is, for someone who is proven to be untruthful or lacks integrity or committed acts of theft, insubordination, those kinds of things, where can I put someone like this?" McDonnell said. "Where can I comfortably deploy people where we don't have that level of trust?" But to fully implement his strict regime, McDonnell must contend with the Civil Service Commission, a five-member body appointed by the L.A. County Board of Supervisors that adjudicates discipline cases of county employees. In the last year, the commission has reinstated Genao as well as a deputy who lied about whether he had tried to take a photo under a woman's skirt and another deputy found to have falsely asserted that he had not witnessed a colleague beat up a **JAIL** inmate. McDonnell's efforts to challenge those decisions and two others involving false statements mark a significant change from the past. In the previous five years, the Sheriff's Department did not appeal any civil service decisions of any type, according to department officials. The number of deputies with documented histories of dishonesty could be in the dozens or hundreds and possibly includes some high-ranking supervisors, said Executive Officer Neal Tyler, McDonnell's top aide. Even if he wins the court appeals, McDonnell cannot completely clean house. Because of contractual protections, he cannot get rid of proven liars he inherited from the **BACA** era. In the landmark Brady vs. Maryland case, the U.S. Supreme Court ruled that prosecutors must turn over exculpatory evidence to the defense. Local prosecutors keep a so-called Brady list of officers with credibility issues, which defense attorneys can use to undermine the officers' testimony, potentially derailing criminal cases. At the Los Angeles Police Department, where McDonnell spent much of his career, lying under oath or on an official report almost always costs an officer his or her job if the lie is material to the case, said Cmdr. Stuart Maislin, who is in charge of internal affairs. See the most-read stories this hour >> An LAPD officer who is fired by the chief for lying but reinstated through the appeals process is typically placed on long-term desk duty. "Once we prove something is a false statement, it's almost a kiss of death" for the officer's career, Maislin said. Under **BACA,** a cornerstone of the Sheriff's Department's discipline system was the use of remedial classes instead of suspensions. If deputies learned why the behaviors were

wrong, **BACA** reasoned, they would be less likely to re-offend. In a 2013 report, a department watchdog said classroom time was not adequate punishment for some deputies who made false statements, including lying on official records. "There are far too many instances of the department being lenient toward members who withheld or obscured the truth," Special Counsel Merrick Bobb wrote in the report. The Civil Service Commission voted to return Genao to duty with a 30-day suspension. The Sheriff's Department has put him on leave, with pay, while it appeals. In a third case being challenged by McDonnell, Deputy Mark Montez said he did not see or hear another deputy punch an inmate seven times at Men's Central **JAIL** on Sept. 27, 2010, according to a civil service hearing officer's report filed in court. Video showed Montez was standing nearby when the beating occurred, according to the report.

View▶

Unique Visitors:  857

1584.   **Laguna Beach Coastline Pilot** Newspaper   Market: Los Angeles, CA

L.A. County sheriff's deputies who lied continue to draw paychecks

Mar 8 2016 12:00PM
PT

He has tightened the penalties for lying on the job, fired deputies who made false statements and is reviewing the assignments of those found to have lied in the past. Some could be required to work under special conditions, such as recording all their interactions with the public. McDonnell's tough approach contrasts with that of former **SHERIFF LEE BACA** who let some proven liars off with remedial classes. **BACA** himself pleaded **GUILTY** in federal court last month to lying to federal authorities and faces up to six months in prison as part of his **PLEA** agreement with prosecutors. Establishing clear ethical boundaries is especially important as the department emerges from a period of scandal, with more than a dozen former employees convicted of crimes including lying and beating a **JAIL** visitor, McDonnell said in interviews with The Times. He said there is no place in his department for the most egregious liars. Assigning them to desk jobs is not a solution because every deputy should be ready to testify on the witness stand, he said. "My question is, for someone who is proven to be untruthful or lacks integrity or committed acts of theft, insubordination, those kinds of things, where can I put someone like this?" McDonnell said. "Where can I comfortably deploy people where we don't have that level of trust?" My question is, for someone who is proven to be untruthful or lacks integrity or committed acts of theft, insubordination, those kinds of things, where can I put someone like this? Sheriff Jim McDonnell But to fully implement his strict regime, McDonnell must contend with the Civil Service Commission, a five-member body appointed by the L.A. County Board of Supervisors that adjudicates discipline cases of county employees. In the last year, the commission has reinstated Genao as well as a deputy who lied about whether he had tried to take a photo under a woman's skirt and another deputy found to have falsely asserted that he had not witnessed a colleague beat up a **JAIL** inmate. McDonnell's efforts to challenge those decisions and two others involving false statements mark a significant change from the past. In the previous five years, the Sheriff's Department did not appeal any civil service decisions of any type, according to department officials. The number of deputies with documented histories of dishonesty could be in the dozens or hundreds and possibly includes some high-ranking supervisors, said Executive Officer Neal Tyler, McDonnell's top aide. Even if he wins the court appeals, McDonnell cannot completely clean house. Because of contractual protections, he cannot get rid of proven liars he inherited from the **BACA** era. In the landmark Brady vs. Maryland case, the U.S. Supreme Court ruled that prosecutors must turn over exculpatory evidence to the defense. Local prosecutors keep a so-called Brady list of officers with credibility issues, which defense attorneys can use to undermine the officers' testimony, potentially derailing criminal cases. At the Los Angeles Police Department, where McDonnell

spent much of his career, lying under oath or on an official report almost always costs an officer his or her job if the lie is material to the case, said Cmdr. Stuart Maislin, who is in charge of internal affairs. See the most-read stories this hour >> An LAPD officer who is fired by the chief for lying but reinstated through the appeals process is typically placed on long-term desk duty. "Once we prove something is a false statement, it's almost a kiss of death" for the officer's career, Maislin said. Under **BACA,** a cornerstone of the Sheriff's Department's discipline system was the use of remedial classes instead of suspensions. If deputies learned why the behaviors were wrong, **BACA** reasoned, they would be less likely to re-offend. In a 2013 report, a department watchdog said classroom time was not adequate punishment for some deputies who made false statements, including lying on official records. "There are far too many instances of the department being lenient toward members who withheld or obscured the truth," Special Counsel Merrick Bobb wrote in the report. The Civil Service Commission voted to return Genao to duty with a 30-day suspension. The Sheriff's Department has put him on leave, with pay, while it appeals. In a third case being challenged by McDonnell, Deputy Mark Montez said he did not see or hear another deputy punch an inmate seven times at Men's Central **JAIL** on Sept. 27, 2010, according to a civil service hearing officer's report filed in court. Video showed Montez was standing nearby when the beating occurred, according to the report.

View▶

Unique Visitors: 857

1585.  **Los Angeles Times** Newspaper   Market: Los Angeles, CA
       L.A. County sheriff's deputies who made false statements continue to     Mar 8 2016 12:00PM
       draw payche                                                                                PT

He has tightened the penalties for lying on the job, fired deputies who made false statements and is reviewing the assignments of those found to have lied in the past. Some could be required to work under special conditions, such as recording all their interactions with the public. McDonnell's tough approach contrasts with that of former **SHERIFF LEE BACA** who let some proven liars off with remedial classes. **BACA** himself pleaded **GUILTY** in federal court last month to lying to federal authorities and faces up to six months in prison as part of his **PLEA** agreement with prosecutors. Establishing clear ethical boundaries is especially important as the department emerges from a period of scandal, with more than a dozen former employees convicted of crimes including lying and beating a **JAIL** visitor, McDonnell said in interviews with The Times. He said there is no place in his department for the most egregious liars. Assigning them to desk jobs is not a solution because every deputy should be ready to testify on the witness stand, he said. "My question is, for someone who is proven to be untruthful or lacks integrity or committed acts of theft, insubordination, those kinds of things, where can I put someone like this?" McDonnell said. "Where can I comfortably deploy people where we don't have that level of trust?" But to fully implement his strict regime, McDonnell must contend with the Civil Service Commission, a five-member body appointed by the L.A. County Board of Supervisors that adjudicates discipline cases of county employees. In the last year, the commission has reinstated Genao as well as a deputy who lied about whether he had tried to take a photo under a woman's skirt and another deputy found to have falsely asserted that he had not witnessed a colleague beat up a **JAIL** inmate. McDonnell's efforts to challenge those decisions and two others involving false statements mark a significant change from the past. In the previous five years, the Sheriff's Department did not appeal any civil service decisions of any type, according to department officials. The number of deputies with documented histories of dishonesty could be in the dozens or hundreds and possibly includes some high-ranking supervisors, said Executive Officer Neal Tyler, McDonnell's top aide. Even if he wins the

court appeals, McDonnell cannot completely clean house. Because of contractual protections, he cannot get rid of proven liars he inherited from the **BACA** era. In the landmark Brady vs. Maryland case, the U.S. Supreme Court ruled that prosecutors must turn over exculpatory evidence to the defense. Local prosecutors keep a so-called Brady list of officers with credibility issues, which defense attorneys can use to undermine the officers' testimony, potentially derailing criminal cases. At the Los Angeles Police Department, where McDonnell spent much of his career, lying under oath or on an official report almost always costs an officer his or her job if the lie is material to the case, said Cmdr. Stuart Maislin, who is in charge of internal affairs. See the most-read stories this hour >> An LAPD officer who is fired by the chief for lying but reinstated through the appeals process is typically placed on long-term desk duty. "Once we prove something is a false statement, it's almost a kiss of death" for the officer's career, Maislin said. Under **BACA,** a cornerstone of the Sheriff's Department's discipline system was the use of remedial classes instead of suspensions. If deputies learned why the behaviors were wrong, **BACA** reasoned, they would be less likely to re-offend. In a 2013 report, a department watchdog said classroom time was not adequate punishment for some deputies who made false statements, including lying on official records. "There are far too many instances of the department being lenient toward members who withheld or obscured the truth," Special Counsel Merrick Bobb wrote in the report. The Civil Service Commission voted to return Genao to duty with a 30-day suspension. The Sheriff's Department has put him on leave, with pay, while it appeals. In a third case being challenged by McDonnell, Deputy Mark Montez said he did not see or hear another deputy punch an inmate seven times at Men's Central **JAIL** on Sept. 27, 2010, according to a civil service hearing officer's report filed in court. Video showed Montez was standing nearby when the beating occurred, according to the report.

**View**▶

Unique Visitors: 15,092,236

1586. **Los Angeles Times** Newspaper Market: Los Angeles, CA

L.A. County sheriff's deputies who lied continue to draw paychecks

Mar 8 2016 12:00PM PT

He has tightened the penalties for lying on the job, fired deputies who made false statements and is reviewing the assignments of those found to have lied in the past. Some could be required to work under special conditions, such as recording all their interactions with the public. McDonnell's tough approach contrasts with that of former **SHERIFF LEE BACA** who let some proven liars off with remedial classes. **BACA** himself pleaded **GUILTY** in federal court last month to lying to federal authorities and faces up to six months in prison as part of his **PLEA** agreement with prosecutors. Establishing clear ethical boundaries is especially important as the department emerges from a period of scandal, with more than a dozen former employees convicted of crimes including lying and beating a **JAIL** visitor, McDonnell said in interviews with The Times. He said there is no place in his department for the most egregious liars. Assigning them to desk jobs is not a solution because every deputy should be ready to testify on the witness stand, he said. "My question is, for someone who is proven to be untruthful or lacks integrity or committed acts of theft, insubordination, those kinds of things, where can I put someone like this?" McDonnell said. "Where can I comfortably deploy people where we don't have that level of trust?" My question is, for someone who is proven to be untruthful or lacks integrity or committed acts of theft, insubordination, those kinds of things, where can I put someone like this? Sheriff Jim McDonnell But to fully implement his strict regime, McDonnell must contend with the Civil Service Commission, a five-member body appointed by the L.A. County Board of Supervisors that adjudicates discipline cases of county employees. In the last year, the commission has reinstated Genao as well as a deputy who lied about whether he had

tried to take a photo under a woman's skirt and another deputy found to have falsely asserted that he had not witnessed a colleague beat up a **JAIL** inmate. McDonnell's efforts to challenge those decisions and two others involving false statements mark a significant change from the past. In the previous five years, the Sheriff's Department did not appeal any civil service decisions of any type, according to department officials. The number of deputies with documented histories of dishonesty could be in the dozens or hundreds and possibly includes some high-ranking supervisors, said Executive Officer Neal Tyler, McDonnell's top aide. Even if he wins the court appeals, McDonnell cannot completely clean house. Because of contractual protections, he cannot get rid of proven liars he inherited from the **BACA** era. In the landmark Brady vs. Maryland case, the U.S. Supreme Court ruled that prosecutors must turn over exculpatory evidence to the defense. Local prosecutors keep a so-called Brady list of officers with credibility issues, which defense attorneys can use to undermine the officers' testimony, potentially derailing criminal cases. At the Los Angeles Police Department, where McDonnell spent much of his career, lying under oath or on an official report almost always costs an officer his or her job if the lie is material to the case, said Cmdr. Stuart Maislin, who is in charge of internal affairs. See the most-read stories this hour >> An LAPD officer who is fired by the chief for lying but reinstated through the appeals process is typically placed on long-term desk duty. "Once we prove something is a false statement, it's almost a kiss of death" for the officer's career, Maislin said. Under **BACA,** a cornerstone of the Sheriff's Department's discipline system was the use of remedial classes instead of suspensions. If deputies learned why the behaviors were wrong, **BACA** reasoned, they would be less likely to re-offend. In a 2013 report, a department watchdog said classroom time was not adequate punishment for some deputies who made false statements, including lying on official records. "There are far too many instances of the department being lenient toward members who withheld or obscured the truth," Special Counsel Merrick Bobb wrote in the report. The Civil Service Commission voted to return Genao to duty with a 30-day suspension. The Sheriff's Department has put him on leave, with pay, while it appeals. In a third case being challenged by McDonnell, Deputy Mark Montez said he did not see or hear another deputy punch an inmate seven times at Men's Central **JAIL** on Sept. 27, 2010, according to a civil service hearing officer's report filed in court. Video showed Montez was standing nearby when the beating occurred, according to the report.

View▶

Unique Visitors:  15,092,236

---

1587.    **Los Angeles Times**  Newspaper   Market: Los Angeles, CA

Today: Truth in Policing. Adieu to Email's Inventor.

Mar 8 2016 10:59AM PT

TOP STORIES Honestys (Now) Department Policy Telling the truth would seem to go hand-in-hand with wearinga badge.But in the Los Angeles County Sheriff s Department, it hasn't always been so. More than a dozen former employees have been convicted of crimes in a five-year-old FBI investigation , including making false reports and trying to obstruct justice. Last month, former **SHERIFF LEE BACA** pleaded **GUILTY** to lying to federal investigators. His successor, Jim McDonnell, has reemphasized honesty, firing deputies who dissemble and reviewing the assignments of those who have lied in the past. Still, he cant clean house completely.

View▶

Unique Visitors:  15,092,236

---

1588.   **KTTV-FOX**  Television   Market: Los Angeles, CA



Media Coverage Report

[5:14:23 PM] [0:24] You are into it over a year now. We invited you, quite some time ago. Over the past week, we saw your predecessor former **SHERIFF LEE BACA** there pleading **GUILTY** to lying to federal investigators with regard to the probe of the la county yale. It is seeing an image like that. The man we knew in charge of the la county sheriff's department.

[5:15:11 PM] [0:18]  That is what we're shooting for. Not so much the focus on other lessons learned on the past but to look forward to the future to realize the full capability and potential. As the situation at the **JAIL** different today? Dramatically different than in year's past. We had the opportunity to sit on the commission back in 2012.

Nielsen Audience:  40,029

Feb 19 2016 05:00PM PT

---

1589.  **The Malibu Times** Newspaper  Market: Los Angeles, CA

Attorney General to Review Mitrice Richardson Case

Feb 18 2016 03:00PM PT

I will notify you of the results when our review has concluded, the letter read. In December 2015, The Malibu Times inquired after the status of Richardsons case and received a statement from the Sheriffs Department regarding the investigation, which at that time had remained dormant. Questions and allegations had long swirled around the departments conduct, including when and how remains were moved and whether or not there is a videotape of Richardsons time in **JAIL.** Past leads have been exhausted. The case is open, and any new leads will be pursued when they are received by the Sheriffs Department, Cmndr. Rod Kusch said in an emailed statement. It is a death investigation at this time, as the coroners office has not ruled it a homicide. What has caused renewed interest in the case is unclear, though many have pointed to the recent **GUILTY PLEA** given by former L.A. County **SHERIFF LEE BACA** as possible justification for the attorney general to review the investigation. On Feb. 10, **BACA** pleaded **GUILTY** to charges that he intentionally blocked an FBI investigation into prisoner abuse at L.A. jails. On the evening of Sept. 16, 2009, Richardson was arrested at Geoffreys in Malibu after she was unable to pay her $89 bill.

View▶

Unique Visitors:  19,761

---

1590.  **The Malibu Times** Newspaper  Market: Los Angeles, CA

Lee Baca Pleads Guilty to Corruption Charges

Feb 17 2016 03:00PM PT

Former Los Angeles County **SHERIFF LEE BACA** pleaded **GUILTY** on Wednesday, Feb. 10, to lying to federal agents who were leading an investigation into the Sheriffs Department conduct surrounding corruption and prisoner abuse at LA County jails. **BACA** pleaded **GUILTY** to lying to federal investigators conducting a corruption and civil rights probe into the county **JAIL** system he once ran, a CNN report states. In other words, somewhat like Nixon during the Watergate scandal, **BACA** is pleading **GUILTY** to lying to officers conducting an investigation into conduct of deputies not pleading **GUILTY** to actual abuse. Bacas **PLEA** deal will limit the amount of **JAIL** time the 73-year-old retired sheriff will serve to no more than six months, according to U.S. Attorney Eileen Decker. The judge has yet to agree to the deal. The former sheriff ran the L.A. County Sheriffs Department, the largest such department in the world, from his election in 1998 through his retirement in 2014, being re-elected four times. I dont see myself as the future. I see myself as part of the past, **BACA** said during the announcement of his retirement in January of 2014. However, since that time, Bacas legacy has certainly overshadowed the

present state of the Sheriffs Department. So far, eight deputies have been convicted and many more indicted for allegations of corruption and **INMATE ABUSE.** Todays charge and **PLEA** agreement demonstrate that illegal behavior within the Sheriffs Department went to the very top of the organization, Decker said in a statement. More importantly, this case illustrates that leaders who foster and then try to hide corrupt culture will be held accountable. In response to the statement, CNN reported, the Association for Los Angeles Deputy Sheriffs said **BACA** was a failed leader who is not above the law. The **PLEA** agreement sends a strong message that no one is above the law. There must be zero tolerance for this type of failed leadership. This by no means undermines the dedication and hard work of the more than 9,000 deputy sheriffs who put their lives on the line protecting LA County residents, the groups statement read. Former Undersheriff **PAUL TANAKA** is scheduled to go to trial next month. He was indicted last year for accusations including blocking the FBI investigation into prisoner abuse and condoning such treatment in LA County jails. In 2013, when Tanaka was running as a candidate for sheriff, he gave an extensive interview with The Malibu Times during which he not only advocated for a more hands-on approach when it came to prisoners in **JAIL,** but said that **BACA** had become a bad leader of the department, which. some estimates state has over 18,000 employees and volunteers. Tanaka was, at the time, Bacas number two. Theres a policy. thats very restrictive on their ability to handle situations that might require hands-on in a lawful manner, Tanaka said at the time. Deputies will tell you that their ability to maintain safety and security not only of themselves but of the inmates has been hindered. Tanaka in 2013 also claimed **BACA** had cut him out of his inner circle, a claim which may come in handy with his ongoing denial over knowledge of the FBI coverup. Over time he has become increasingly distrustful of basically everybody, Tanaka said.

View▶

Unique Visitors:  19,761

1591.   L.A. Weekly  Newspaper   Market: Los Angeles, CA
        She Went Missing From a Sheriff's Station. Now the State Wants          Feb 16 2016 03:01PM
        Answers.                                                                            PT

The Office of Independent Review, which oversees internal inquiries, forwarded a report to the sheriff's boss, the voter-installed Los Angeles County Board of Supervisors. No fault was found with the officers involved. Former **SHERIFF LEE BACA,** who resigned as a federal investigation clouded his department, and who last week pleaded **GUILTY** to lying to the FBI as it investigated abuse inside his jails, has said that "all applicable laws, policies, and procedures were followed" when it came to Richardson's case. A few months ago the Attorney General's office said no to her family's request for an investigation. But the office apparently reversed course recently and told her father, Michael Richardson, in a letter that it will "review the conduct of law enforcement in regards to your daughter." Harris' press office had no comment, but it did forward us the letter. She told the manager she was from Mars. "She sounds really crazy," a caller told authorities that day. But not long after midnight following her daytime arrest, Richardson was let out of **JAIL** with no cash, no phone (it was in her car) and nowhere to go. A neighbor apparently spotted Richardson near his canyon property and called deputies, who combed the area without finding her. Her mother, Latice, called deputies the day her daughter was released and asked how soon she could file a missing person's report.

View▶

Unique Visitors:  1,100,928

1592.        Burbank Leader  Online Only   Market: Los Angeles, CA



Feb 15 2016 01:00PM PT

Read on to see what else happened on the marathon scene , and while you're at it, check out our marathon simulator. OUR MUST-READS FROM THE WEEKEND- A recorded interview reveals former **SHERIFF LEE BACA** lying to a federal prosecutor. Steve Lopez : "Disgrace" isn't a strong enough word to describe the Coastal Commission meeting in which its executivedirector was fired. Scientists develop a new app that uses your cellphone to detect earthquakes.

View▶

Unique Visitors: 3,986

1593. **Glendale News Press** Newspaper Market: Los Angeles, CA

Feb 15 2016 01:00PM PT

Today: Disorder in the Court. Strongmen on Parade.

Read on to see what else happened on the marathon scene , and while you're at it, check out our marathon simulator. OUR MUST-READS FROM THE WEEKEND- A recorded interview reveals former **SHERIFF LEE BACA** lying to a federal prosecutor. Steve Lopez : "Disgrace" isn't a strong enough word to describe the Coastal Commission meeting in which its executivedirector was fired. Scientists develop a new app that uses your cellphone to detect earthquakes.

View▶

Unique Visitors: 7,329

1594. **La Canada Valley Sun** Newspaper Market: Los Angeles, CA

Feb 15 2016 01:00PM PT

Today: Disorder in the Court. Strongmen on Parade.

Read on to see what else happened on the marathon scene , and while you're at it, check out our marathon simulator. OUR MUST-READS FROM THE WEEKEND- A recorded interview reveals former **SHERIFF LEE BACA** lying to a federal prosecutor. Steve Lopez : "Disgrace" isn't a strong enough word to describe the Coastal Commission meeting in which its executivedirector was fired. Scientists develop a new app that uses your cellphone to detect earthquakes.

View▶

Unique Visitors: 1,605

1595. **Laguna Beach Coastline Pilot** Newspaper Market: Los Angeles, CA

Feb 15 2016 01:00PM PT

Today: Disorder in the Court. Strongmen on Parade.

Read on to see what else happened on the marathon scene , and while you're at it, check out our marathon simulator. OUR MUST-READS FROM THE WEEKEND- A recorded interview reveals former **SHERIFF LEE BACA** lying to a federal prosecutor. Steve Lopez : "Disgrace" isn't a strong enough word to describe the Coastal Commission meeting in which its executivedirector was fired. Scientists develop a new app that uses your cellphone to detect earthquakes.

View▶

Unique Visitors: 845

1596. **Los Angeles Times** Newspaper Market: Los Angeles, CA

Feb 15 2016 01:00PM PT

Today: Disorder in the Court. Strongmen on Parade.

Read on to see what else happened on the marathon scene , and while you're at it, check out