part of the past. **BACA** said he was leaving on his own terms but added hed been battered by the criticism of his department. I dont see myself as the future, he said. By then, the department has been stained by federal corruption charges, allegations of mismanagement and claims of special treatment for individuals over the years. **BACA** was accused of denying those issues or minimizing their significance, blaming bad behavior on just a few bad apples. Years good and bad During Bacas 15-year tenure, the department also was accused of harassing minorities in Lancaster and Palmdale. A federal jury held **BACA** liable for $100,000 after deputies broke an inmates bones in a **JAIL** beating. **BACA** was blamed in a 2007 audit for the mismanagement of a project to relocate the headquarters of a special forces bureau. **BACA** and his department also came under criticism when actor Mel Gibson went on an anti-Semitic tirade during an arrest on suspicion of drunken driving in 2006. **BACA** reportedly ordered details of the outburst eliminated from a deputys report. **BACA,** however, was praised for keeping the countys crime rate low and was lauded for reaching out to community religious groups. A mistake By Wednesday, more than a dozen deputies had been convicted of federal corruption charges, including obstructing justice by attempting to impede an FBI investigation into the jails. Former Undersheriff **PAUL TANAKA,** who served as Bacas second-in-command and ran much of the departments daily operations, is awaiting trial in connection with the probe. And former Capt. William Tom Carey, has pleaded **GUILTY** to lying on the stand during an obstruction-of-justice trial. On Wednesday, **BACA** pleaded **GUILTY** to lying to the FBI in April 2013 about deputies plans to intimidate an FBI agent and to shut down a federal investigation. After the **GUILTY PLEA,** Bacas attorney read a statement from the former sheriff. I made a mistake and accept being held accountable, the statement said. I will always love the men and women of the Sheriffs Department.

**View▶**

Unique Visitors: 559,454

---

1904.  **Pasadena Star-News** Newspaper   Market: Los Angeles, CA

Feb 10 2016 08:01AM PT

Former L.A. County Sheriff Lee Baca: A rocky tenure explained

It was a long road to this weeks federal court appearance by former L.A. County **SHERIFF LEE BACA,** who pleaded **GUILTY** on Wednesday to making a false statement to federal investigators in a **JAIL** corruption case. Here are some landmarks on that road: Allegations In July 2013, the same year **LEE BACA** was chosen Sheriff of the Year, the U.S. Department of Justice threatened to place his department under a federal consent decree for alleged discrimination and harassment of Latinos and blacks in Antelope Valley. The American Civil Liberties Union had earlier accused **BACA** of condoning savage beatings of **JAIL** inmates, and a blue-ribbon Citizens Commission on **JAIL** Violence concurred there had been a failure of leadership over the jails. Deputies arrested In December 2013, the FBI arrested 18 of Bacas deputies, sergeants and lieutenants for alleged civil rights abuses, corruption and obstruction of justice, including threatening an FBI agent at her home and hiding an FBI **JAIL** informant. In January 2014, five months before his possible election for a fifth term as sheriff and as he approached his 72nd birthday, **BACA** announced he would retire at the end of that month. He said he saw himself as part of the past. **BACA** said he was leaving on his own terms but added hed been battered by the criticism of his department. I dont see myself as the future, he said. By then, the department has been stained by federal corruption charges, allegations of mismanagement and claims of special treatment for individuals over the years. **BACA** was accused of denying those issues or minimizing their significance, blaming bad behavior on just a few bad apples. Years good and bad During Bacas 15-year tenure, the department also was accused of harassing minorities in Lancaster and Palmdale. A federal jury held **BACA** liable for $100,000

after deputies broke an inmates bones in a **JAIL** beating. **BACA** was blamed in a 2007 audit for the mismanagement of a project to relocate the headquarters of a special forces bureau. **BACA** and his department also came under criticism when actor Mel Gibson went on an anti-Semitic tirade during an arrest on suspicion of drunken driving in 2006. **BACA** reportedly ordered details of the outburst eliminated from a deputys report. **BACA,** however, was praised for keeping the countys crime rate low and was lauded for reaching out to community religious groups. A mistake By Wednesday, more than a dozen deputies had been convicted of federal corruption charges, including obstructing justice by attempting to impede an FBI investigation into the jails. Former Undersheriff **PAUL TANAKA,** who served as Bacas second-in-command and ran much of the departments daily operations, is awaiting trial in connection with the probe. And former Capt. William Tom Carey, has pleaded **GUILTY** to lying on the stand during an obstruction-of-justice trial. On Wednesday, **BACA** pleaded **GUILTY** to lying to the FBI in April 2013 about deputies plans to intimidate an FBI agent and to shut down a federal investigation. After the **GUILTY PLEA,** Bacas attorney read a statement from the former sheriff. I made a mistake and accept being held accountable, the statement said. I will always love the men and women of the Sheriffs Department.

**View▶**

Unique Visitors:　93,369

1905.　　**San Gabriel Valley Tribune**　*Newspaper*　Market: Los Angeles, CA

Former L.A. County Sheriff Lee Baca: A rocky tenure explained

Feb 10 2016 08:01AM PT

It was a long road to this weeks federal court appearance by former L.A. County **SHERIFF LEE BACA,** who pleaded **GUILTY** on Wednesday to making a false statement to federal investigators in a **JAIL** corruption case. Here are some landmarks on that road: Allegations In July 2013, the same year **LEE BACA** was chosen Sheriff of the Year, the U.S. Department of Justice threatened to place his department under a federal consent decree for alleged discrimination and harassment of Latinos and blacks in Antelope Valley. The American Civil Liberties Union had earlier accused **BACA** of condoning savage beatings of **JAIL** inmates, and a blue-ribbon Citizens Commission on **JAIL** Violence concurred there had been a failure of leadership over the jails. Deputies arrested In December 2013, the FBI arrested 18 of Bacas deputies, sergeants and lieutenants for alleged civil rights abuses, corruption and obstruction of justice, including threatening an FBI agent at her home and hiding an FBI **JAIL** informant. In January 2014, five months before his possible election for a fifth term as sheriff and as he approached his 72nd birthday, **BACA** announced he would retire at the end of that month. He said he saw himself as part of the past. **BACA** said he was leaving on his own terms but added hed been battered by the criticism of his department. I dont see myself as the future, he said. By then, the department has been stained by federal corruption charges, allegations of mismanagement and claims of special treatment for individuals over the years. **BACA** was accused of denying those issues or minimizing their significance, blaming bad behavior on just a few bad apples. Years good and bad During Bacas 15-year tenure, the department also was accused of harassing minorities in Lancaster and Palmdale. A federal jury held **BACA** liable for $100,000 after deputies broke an inmates bones in a **JAIL** beating. **BACA** was blamed in a 2007 audit for the mismanagement of a project to relocate the headquarters of a special forces bureau. **BACA** and his department also came under criticism when actor Mel Gibson went on an anti-Semitic tirade during an arrest on suspicion of drunken driving in 2006. **BACA** reportedly ordered details of the outburst eliminated from a deputys report. **BACA,** however, was praised for keeping the countys crime rate low and was lauded for reaching out to community religious groups. A mistake By Wednesday, more than a dozen deputies had been convicted of federal

corruption charges, including obstructing justice by attempting to impede an FBI investigation into the jails. Former Undersheriff **PAUL TANAKA,** who served as Bacas second-in-command and ran much of the departments daily operations, is awaiting trial in connection with the probe. And former Capt. William Tom Carey, has pleaded **GUILTY** to lying on the stand during an obstruction-of-justice trial. On Wednesday, **BACA** pleaded **GUILTY** to lying to the FBI in April 2013 about deputies plans to intimidate an FBI agent and to shut down a federal investigation. After the **GUILTY PLEA,** Bacas attorney read a statement from the former sheriff. I made a mistake and accept being held accountable, the statement said. I will always love the men and women of the Sheriffs Department.

View▶

Unique Visitors:  152,173

1906.    **Laguna Beach Coastline Pilot** Newspaper   Market: Los Angeles, CA
         In jail abuse case, jury is hung on excessive force but convicts deputies of    Feb 3 2016 01:05AM
         fal                                                                              PT

A federal jury onTuesday found two Los Angeles County sheriffs deputies **GUILTY** of falsifying records about the beating of a **JAIL** inmate but was deadlocked on whether the deputies used excessive force. The deputies were also acquitted of conspiring to violate the inmates civil rights. The verdict was a mixed bag for federal authorities after a string of victories in cases that have focused on allegations of misconduct and abuse inside the nation's largest **JAIL** system. Joey Aguiar and Mariano Ramirez were charged in U.S. District Court with violating the civil rights of inmate Bret Phillips by beating him and then lying about the February 2009 incident to cover it up. Prosecutors argued during the eight-day trial that Phillips had done nothing to justify the assault. Phillips, who testified that he suffers from paranoid schizophrenia and bipolar disorder, was in custody after being arrested on a charge of domestic violence. He was housed in the high-security unit because he had been an informant while serving a previous prison sentence and was at risk of retaliation. Phillips testified he grew agitated after Aguiar handcuffed him tightly to a waist chain and then left him in his cell instead of escorting him to an appointment elsewhere in the **JAIL.** Phillips said he threw small milk cartons through the cell bars, hitting Aguiars shoe with one. Shortly afterward, Phillips said, Aguiar removed him from the cell and made him stand facing a wall in a hallway. And the chaplain made repeated claims of seeing blood on the floor beneath Phillips head. In one statement to authorities shortly after the incident, he described a pool of blood about 2 feet wide. Podberesky and Jenness zeroed in on medical records, a nurses testimony and a video taken by **JAIL** staff shortly after the beating, which indicated Phillips had not suffered serious injuries and had not bled significantly from a small cut on his forehead. Jenness dismissed the chaplains account as an "emotional, exaggerated story" in her closing statement. "If they had wanted to use great force, they could have and the injuries would have been significant and severe. The U.S. attorneys case against Aguiar and Ramirez was more tenuous than the one prosecutors built against another group of deputies accused of beating an inmate. In that trial last year, two accused deputies struck deals with prosecutors and testified against three of their former partners, who were convicted. Other deputies are awaiting trial in a third case alleging **JAIL** brutality. In all, federal officials have won convictions against more than a dozen former sheriffs officials in cases stemming from the FBI's investigation into claims of misconduct and abuse in the county's jails. The probe also upended the career of longtime **SHERIFF LEE BACA,** who stepped down in 2014, and led to obstruction-of-justice charges against his former top aide, who is awaiting trial. The new sheriff, Jim McDonnell, spent his first year in office working to reorganize the agency and to put in place reforms meant to increase accountability. joel.rubin@latimes.com Find me on Twitter: @joelrubin

View▶

Unique Visitors: 845

1907. **Los Angeles Times** Newspaper  Market: Los Angeles, CA

In jail abuse case, jury is hung on excessive force but convicts deputies of fal    Feb 3 2016 01:05AM PT

A federal jury onTuesday found two Los Angeles County sheriffs deputies **GUILTY** of falsifying records about the beating of a **JAIL** inmate but was deadlocked on whether the deputies used excessive force. The deputies were also acquitted of conspiring to violate the inmates civil rights. The verdict was a mixed bag for federal authorities after a string of victories in cases that have focused on allegations of misconduct and abuse inside the nation's largest **JAIL** system. Joey Aguiar and Mariano Ramirez were charged in U.S. District Court with violating the civil rights of inmate Bret Phillips by beating him and then lying about the February 2009 incident to cover it up. Prosecutors argued during the eight-day trial that Phillips had done nothing to justify the assault. Phillips, who testified that he suffers from paranoid schizophrenia and bipolar disorder, was in custody after being arrested on a charge of domestic violence. He was housed in the high-security unit because he had been an informant while serving a previous prison sentence and was at risk of retaliation. Phillips testified he grew agitated after Aguiar handcuffed him tightly to a waist chain and then left him in his cell instead of escorting him to an appointment elsewhere in the **JAIL.** Phillips said he threw small milk cartons through the cell bars, hitting Aguiars shoe with one. Shortly afterward, Phillips said, Aguiar removed him from the cell and made him stand facing a wall in a hallway. And the chaplain made repeated claims of seeing blood on the floor beneath Phillips head. In one statement to authorities shortly after the incident, he described a pool of blood about 2 feet wide. Podberesky and Jenness zeroed in on medical records, a nurses testimony and a video taken by **JAIL** staff shortly after the beating, which indicated Phillips had not suffered serious injuries and had not bled significantly from a small cut on his forehead. Jenness dismissed the chaplains account as an "emotional, exaggerated story" in her closing statement. "If they had wanted to use great force, they could have and the injuries would have been significant and severe. The U.S. attorneys case against Aguiar and Ramirez was more tenuous than the one prosecutors built against another group of deputies accused of beating an inmate. In that trial last year, two accused deputies struck deals with prosecutors and testified against three of their former partners, who were convicted. Other deputies are awaiting trial in a third case alleging **JAIL** brutality. In all, federal officials have won convictions against more than a dozen former sheriffs officials in cases stemming from the FBI's investigation into claims of misconduct and abuse in the county's jails. The probe also upended the career of longtime **SHERIFF LEE BACA,** who stepped down in 2014, and led to obstruction-of-justice charges against his former top aide, who is awaiting trial. The new sheriff, Jim McDonnell, spent his first year in office working to reorganize the agency and to put in place reforms meant to increase accountability. joel.rubin@latimes.com Find me on Twitter: @joelrubin

View▶

Unique Visitors: 14,128,174

1908. **Los Angeles Downtown News Online** Online Only  Market: Los Angeles, CA

Pimps, Terrorism and the New Law Enforcement    Feb 2 2016 03:39PM PT

Then there was the state of the Sheriffs Department at the time. To put things simply, it was a mess. The department was dogged by allegations of corruption, racial profiling and prison

**INMATE ABUSE,** and in December 2013 the feds indicted 18 deputies and supervisors. Things were squishy at the top, too, with controversial Undersheriff **PAUL TANAKA** more or less running the joint while **SHERIFF LEE BACA** traveled frequently. When in town, **BACA** made questionable decisions, such as the time he appeared in a promotional video for a health supplements company called Yor Health and stated, Im going to live to be 100 years old and beyond. I swear this really happened. Then there were the sheriffs station cliques, groups of officers with names like the Vikings and the Banditos. Some went so far as to get clique tattoos and, as McDonnell stated at a May 2014 election debate in Downtown Los Angeles, there were accounts of deputies having to earn your ink by being brutal to an inmate in a custody environment. Holy Blake Griffin, these guys are supposed to protect us. When **BACA** chose not run for re-election, the conditions were perfect for McDonnell. He got every endorsement that mattered and cruised into office, crushing Tanaka and a handful of other candidates, including a couple department higher-ups. He became sheriff in late 2014. McDonnell ran down a laundry list of legislative and societal hurdles that have popped up in the last 15 years. They range from AB 109, a bill intended to reduce state prison overcrowding that instead swelled the population in county jails, to law enforcement cutbacks spurred by the Great Recession. Theres the need to replace Downtowns decaying Mens Central **JAIL.** Plans call for a $2 billion facility where the priority will be treating lawbreakers who have addiction and mental health issues. There are zero easy answers, and McDonnell expressed a desire for transparency and touted the departments move to share data, including on officer-involved shootings.

View▶

Unique Visitors:  28,681

1909.  **Los Angeles Daily News**  Newspaper   Market: Los Angeles, CA

How the sheriff's oversight will be different from LA's Police Commission          Jan 25 2016 05:30PM PT

But unlike the LosAngeles Police Departments Police Commission, the panel will be merely advisory. The Board of Supervisors is set to vote on the proposed ordinance that will govern the commission in the coming weeks. The main difference between the two oversight bodies will be that the **SHERIFF** is an elected official who has the sole responsibility to operate the department, while the police chief is appointed by the mayor, with the approval of the City Council and Police Commission. Under the City Charter, the Police Commission is the head of the LAPD. The Police Commission sets policies for the department. Although in reality the chief also has a lot of control, and he manages the day-to-day operations of the department. Attorney Dean Hansell, who chaired the working group formed last year to make recommendations to the Board of Supervisors about the role of the Sheriffs Department oversight commission, described how the Sheriffs Department oversight panel would be different from the Police Commission. The **SHERIFF** is independently elected, Hansell said. This commission, much of their powers and tools are really going to have to be power of persuasion and power to muster public opinion. The oversight commission wont be able to operate by edict or directive, he said. Hansell served as a police commissioner for more than four years. The Board of Supervisors pushed to create an oversight commission in response to widespread abuses by deputies in the countys jails under former **SHERIFF LEE BACA** who resigned in January 2014. The charges have reached the upper echelons of the department with the indictment of former Undersheriff **PAUL TANAKA** who is accused of obstruction of justice and conspiring to obstruct justice. A blue ribbon Commission on **JAIL** Violence launched in 2011 did not recommend that the board establish an independent civilian commission because it would not have any legal authority over the Sheriffs Department absent enabling legislation. That commission did recommend the creation of an Office of Inspector General , which the

supervisors established in 2013. The one area where the Board of Supervisors do have control over the Sheriffs Department is in budgetary matters. Chemerinsky said the oversight commission could make recommendations to the supervisors that would affect the departments budget. The working group said in its report that, Because the **SHERIFF** is independently elected and has operational autonomy, many of the proposed responsibilities are referral powers, only possible if the board, **SHERIFF** and inspector general find the commissions work to be appropriate, useful and credible. In the proposed ordinance, which will be considered by supervisors for adoption this week, a section under Duties describes the commission as advisory. Be advisory only to the Board of Supervisors and the **SHERIFF** without the authority to manage or operate the Sheriffs Department or direct activities of the Sheriffs Departments employees, including imposition of discipline, the ordinance says. The LAPDs Police Commission also does not have power to impose discipline. That rests with the police chief. The commission does rule whether an incident such as use of force was within the departments policy. The supervisors have not yet decided if the oversight commission will have subpoena powers, which some argue would give the panel a stronger ability to oversee operations. The supervisors are waiting to see how an agreement to share documents between the inspector general and **SHERIFF** works out. In SanDiego County, the Citizens Law Enforcement Review Board, which oversees an elected **SHERIFF** and the chief probation officer, does have subpoena powers.

View▶

Unique Visitors:  647,000

1910.    **The Daily Breeze**  Newspaper   Market: Los Angeles, CA
How the Sheriffs Department oversight body will be different from LAPDs   Jan 24 2016 02:02AM
Police C                                                                                                          PT

But unlike the Los Angeles Police Departments Police Commission, the panel will merely be advisory. The Board of Supervisors is set to vote on the proposed ordinance that will govern the commission in the coming weeks. The main difference between the two oversight bodies will be that the **SHERIFF** is an elected official and has the sole responsibility to operate the department, while the police chief is appointed by the mayor, with the approval of the City Council and Police Commission. Under the City Charter, the Police Commission is the head of the LAPD. The Police Commission sets policies for the department. Although in reality the chief also has a lot of control and he manages the day-to-day operations of the department. Attorney Dean Hansell, who chaired the working group formed last year to make recommendations to the Board of Supervisors about the role of the Sheriffs Department oversight commission, described how the Sheriffs Department oversight panel would be different from the Police Commission. The **SHERIFF** is independently elected, Hansell said. This commission, much of their powers and tools are really going to have to be power of persuasion and power to muster public opinion. The oversight commission wont be able to operate by edict or directive, he said. Hansell served as a police commissioner for more than four years. The Board of Supervisors pushed to create a oversight commission in response to widespread abuses by deputies in the countys jails under former **SHERIFF LEE BACA** who resigned last year. The charges have reached the upper echelons of the department with the indictment of former Undersheriff **PAUL TANAKA** who is accused of obstruction of justice and conspiring to obstruct justice. A blue ribbon Commission on **JAIL** Violence launched in 2011 did not recommend that the board establish an independent civilian commission because it would not have any legal authority over the Sheriffs Department absent enabling legislation. That commission did recommend the creation of an Office of Inspector General , which the supervisors established in 2013. The one area where the Board of Supervisors do have control

over the Sheriffs Department is in budgetary matters. Chemerinsky said the oversight commission could make recommendations to the supervisors that would impact the departments budget. The working group said in its report that, Because the **SHERIFF** is independently elected and has operational autonomy, many of the proposed responsibilities are referral powers, only possible if the board, **SHERIFF** and inspector general find commissions work to be appropriate, useful and credible. In the proposed ordinance, that will be considered by supervisors for adoption this week, a section under Duties describes the commission as advisory. Be advisory only to the Board of Supervisors and the **SHERIFF** without the authority to manage or operate the Sheriffs Department or direct activities of the sheriffs departments employees, including imposition of discipline, the ordinance says. The LAPDs Police Commission also does not have power to impose discipline. That rests with the police chief. The commission does rule whether an incident like use of force was within the departments policy. The supervisors have not yet decided if the oversight commission will have subpoena powers, which some argue would give the panel a stronger ability to oversee operations. The supervisors are waiting to see how an agreement to share documents between the inspector general and **SHERIFF** works out. In San Diego County, the Citizens Law Enforcement Review Board, which oversees an elected **SHERIFF** and the chief probation officer, does have subpoena powers.

View▶

Unique Visitors:  185,010

1911.    **Whittier Daily News**  Newspaper   Market: Los Angeles, CA
How the Sheriff's Department oversight body will be different from          Jan 24 2016 01:52AM
LAPD's Police                                                                PT

But unlike the Los Angeles Police Departments Police Commission, the panel will merely be advisory. The Board of Supervisors is set to vote on the proposed ordinance that will govern the commission in the coming weeks. The main difference between the two oversight bodies will be that the **SHERIFF** is an elected official and has the sole responsibility to operate the department, while the police chief is appointed by the mayor, with the approval of the City Council and Police Commission. Under the City Charter, the Police Commission is the head of the LAPD. The Police Commission sets policies for the department. Although in reality the chief also has a lot of control and he manages the day-to-day operations of the department. Attorney Dean Hansell, who chaired the working group formed last year to make recommendations to the Board of Supervisors about the role of the Sheriffs Department oversight commission, described how the Sheriffs Department oversight panel would be different from the Police Commission. The **SHERIFF** is independently elected, Hansell said. This commission, much of their powers and tools are really going to have to be power of persuasion and power to muster public opinion. The oversight commission wont be able to operate by edict or directive, he said. Hansell served as a police commissioner for more than four years. The Board of Supervisors pushed to create a oversight commission in response to widespread abuses by deputies in the countys jails under former **SHERIFF LEE BACA** who resigned last year. The charges have reached the upper echelons of the department with the indictment of former Undersheriff **PAUL TANAKA** who is accused of obstruction of justice and conspiring to obstruct justice. A blue ribbon Commission on **JAIL** Violence launched in 2011 did not recommend that the board establish an independent civilian commission because it would not have any legal authority over the Sheriffs Department absent enabling legislation. That commission did recommend the creation of an Office of Inspector General , which the supervisors established in 2013. The one area where the Board of Supervisors do have control over the Sheriffs Department is in budgetary matters. Chemerinsky said the oversight

commission could make recommendations to the supervisors that would impact the departments budget. The working group said in its report that, Because the **SHERIFF** is independently elected and has operational autonomy, many of the proposed responsibilities are referral powers, only possible if the board, **SHERIFF** and inspector general find commissions work to be appropriate, useful and credible. In the proposed ordinance, that will be considered by supervisors for adoption this week, a section under Duties describes the commission as advisory. Be advisory only to the Board of Supervisors and the **SHERIFF** without the authority to manage or operate the Sheriffs Department or direct activities of the sheriffs departments employees, including imposition of discipline, the ordinance says. The LAPDs Police Commission also does not have power to impose discipline. That rests with the police chief. The commission does rule whether an incident like use of force was within the departments policy. The supervisors have not yet decided if the oversight commission will have subpoena powers, which some argue would give the panel a stronger ability to oversee operations. The supervisors are waiting to see how an agreement to share documents between the inspector general and **SHERIFF** works out. In San Diego County, the Citizens Law Enforcement Review Board, which oversees an elected **SHERIFF** and the chief probation officer, does have subpoena powers.

View▶

Unique Visitors: 34,901

1912. **Pasadena Star-News** Newspaper   Market: Los Angeles, CA
How the Sheriff's Department oversight body will be different from LAPD's Police     Jan 24 2016 01:52AM PT

But unlike the Los Angeles Police Departments Police Commission, the panel will merely be advisory. The Board of Supervisors is set to vote on the proposed ordinance that will govern the commission in the coming weeks. The main difference between the two oversight bodies will be that the **SHERIFF** is an elected official and has the sole responsibility to operate the department, while the police chief is appointed by the mayor, with the approval of the City Council and Police Commission. Under the City Charter, the Police Commission is the head of the LAPD. The Police Commission sets policies for the department. Although in reality the chief also has a lot of control and he manages the day-to-day operations of the department. Attorney Dean Hansell, who chaired the working group formed last year to make recommendations to the Board of Supervisors about the role of the Sheriffs Department oversight commission, described how the Sheriffs Department oversight panel would be different from the Police Commission. The **SHERIFF** is independently elected, Hansell said. This commission, much of their powers and tools are really going to have to be power of persuasion and power to muster public opinion. The oversight commission wont be able to operate by edict or directive, he said. Hansell served as a police commissioner for more than four years. The Board of Supervisors pushed to create a oversight commission in response to widespread abuses by deputies in the countys jails under former **SHERIFF LEE BACA** who resigned last year. The charges have reached the upper echelons of the department with the indictment of former Undersheriff **PAUL TANAKA** who is accused of obstruction of justice and conspiring to obstruct justice. A blue ribbon Commission on **JAIL** Violence launched in 2011 did not recommend that the board establish an independent civilian commission because it would not have any legal authority over the Sheriffs Department absent enabling legislation. That commission did recommend the creation of an Office of Inspector General , which the supervisors established in 2013. The one area where the Board of Supervisors do have control over the Sheriffs Department is in budgetary matters. Chemerinsky said the oversight commission could make recommendations to the supervisors that would impact the

departments budget. The working group said in its report that, Because the **SHERIFF** is independently elected and has operational autonomy, many of the proposed responsibilities are referral powers, only possible if the board, **SHERIFF** and inspector general find commissions work to be appropriate, useful and credible. In the proposed ordinance, that will be considered by supervisors for adoption this week, a section under Duties describes the commission as advisory. Be advisory only to the Board of Supervisors and the **SHERIFF** without the authority to manage or operate the Sheriffs Department or direct activities of the sheriffs departments employees, including imposition of discipline, the ordinance says. The LAPDs Police Commission also does not have power to impose discipline. That rests with the police chief. The commission does rule whether an incident like use of force was within the departments policy. The supervisors have not yet decided if the oversight commission will have subpoena powers, which some argue would give the panel a stronger ability to oversee operations. The supervisors are waiting to see how an agreement to share documents between the inspector general and **SHERIFF** works out. In San Diego County, the Citizens Law Enforcement Review Board, which oversees an elected **SHERIFF** and the chief probation officer, does have subpoena powers.

View▶

Unique Visitors:  142,061

1913.    **Inland Valley Daily Bulletin** Newspaper   Market: Los Angeles, CA

How the Sheriff's Department oversight body will be different from LAPD's Police

Jan 24 2016 01:51AM PT

But unlike the Los Angeles Police Departments Police Commission, the panel will merely be advisory. The Board of Supervisors is set to vote on the proposed ordinance that will govern the commission in the coming weeks. The main difference between the two oversight bodies will be that the **SHERIFF** is an elected official and has the sole responsibility to operate the department, while the police chief is appointed by the mayor, with the approval of the City Council and Police Commission. Under the City Charter, the Police Commission is the head of the LAPD. The Police Commission sets policies for the department. Although in reality the chief also has a lot of control and he manages the day-to-day operations of the department. Attorney Dean Hansell, who chaired the working group formed last year to make recommendations to the Board of Supervisors about the role of the Sheriffs Department oversight commission, described how the Sheriffs Department oversight panel would be different from the Police Commission. The **SHERIFF** is independently elected, Hansell said. This commission, much of their powers and tools are really going to have to be power of persuasion and power to muster public opinion. The oversight commission wont be able to operate by edict or directive, he said. Hansell served as a police commissioner for more than four years. The Board of Supervisors pushed to create a oversight commission in response to widespread abuses by deputies in the countys jails under former **SHERIFF LEE BACA** who resigned last year. The charges have reached the upper echelons of the department with the indictment of former Undersheriff **PAUL TANAKA** who is accused of obstruction of justice and conspiring to obstruct justice. A blue ribbon Commission on **JAIL** Violence launched in 2011 did not recommend that the board establish an independent civilian commission because it would not have any legal authority over the Sheriffs Department absent enabling legislation. That commission did recommend the creation of an Office of Inspector General , which the supervisors established in 2013. The one area where the Board of Supervisors do have control over the Sheriffs Department is in budgetary matters. Chemerinsky said the oversight commission could make recommendations to the supervisors that would impact the departments budget. The working group said in its report that, Because the **SHERIFF** is

independently elected and has operational autonomy, many of the proposed responsibilities are referral powers, only possible if the board, **SHERIFF** and inspector general find commissions work to be appropriate, useful and credible. In the proposed ordinance, that will be considered by supervisors for adoption this week, a section under Duties describes the commission as advisory. Be advisory only to the Board of Supervisors and the **SHERIFF** without the authority to manage or operate the Sheriffs Department or direct activities of the sheriffs departments employees, including imposition of discipline, the ordinance says. The LAPDs Police Commission also does not have power to impose discipline. That rests with the police chief. The commission does rule whether an incident like use of force was within the departments policy. The supervisors have not yet decided if the oversight commission will have subpoena powers, which some argue would give the panel a stronger ability to oversee operations. The supervisors are waiting to see how an agreement to share documents between the inspector general and **SHERIFF** works out. In San Diego County, the Citizens Law Enforcement Review Board, which oversees an elected **SHERIFF** and the chief probation officer, does have subpoena powers.

View▶

Unique Visitors:  87,036

1914.    **Long Beach Press-Telegram** Newspaper   Market: Los Angeles, CA
How the Sheriff's Department oversight body will be different from
LAPD's Police                                                              Jan 24 2016 01:51AM
                                                                                          PT

But unlike the Los Angeles Police Departments Police Commission, the panel will merely be advisory. The Board of Supervisors is set to vote on the proposed ordinance that will govern the commission in the coming weeks. The main difference between the two oversight bodies will be that the **SHERIFF** is an elected official and has the sole responsibility to operate the department, while the police chief is appointed by the mayor, with the approval of the City Council and Police Commission. Under the City Charter, the Police Commission is the head of the LAPD. The Police Commission sets policies for the department. Although in reality the chief also has a lot of control and he manages the day-to-day operations of the department. Attorney Dean Hansell, who chaired the working group formed last year to make recommendations to the Board of Supervisors about the role of the Sheriffs Department oversight commission, described how the Sheriffs Department oversight panel would be different from the Police Commission. The **SHERIFF** is independently elected, Hansell said. This commission, much of their powers and tools are really going to have to be power of persuasion and power to muster public opinion. The oversight commission wont be able to operate by edict or directive, he said. Hansell served as a police commissioner for more than four years. The Board of Supervisors pushed to create a oversight commission in response to widespread abuses by deputies in the countys jails under former **SHERIFF LEE BACA** who resigned last year. The charges have reached the upper echelons of the department with the indictment of former Undersheriff **PAUL TANAKA** who is accused of obstruction of justice and conspiring to obstruct justice. A blue ribbon Commission on **JAIL** Violence launched in 2011 did not recommend that the board establish an independent civilian commission because it would not have any legal authority over the Sheriffs Department absent enabling legislation. That commission did recommend the creation of an Office of Inspector General , which the supervisors established in 2013. The one area where the Board of Supervisors do have control over the Sheriffs Department is in budgetary matters. Chemerinsky said the oversight commission could make recommendations to the supervisors that would impact the departments budget. The working group said in its report that, Because the **SHERIFF** is independently elected and has operational autonomy, many of the proposed responsibilities

are referral powers, only possible if the board, **SHERIFF** and inspector general find commissions work to be appropriate, useful and credible. In the proposed ordinance, that will be considered by supervisors for adoption this week, a section under Duties describes the commission as advisory. Be advisory only to the Board of Supervisors and the **SHERIFF** without the authority to manage or operate the Sheriffs Department or direct activities of the sheriffs departments employees, including imposition of discipline, the ordinance says. The LAPDs Police Commission also does not have power to impose discipline. That rests with the police chief. The commission does rule whether an incident like use of force was within the departments policy. The supervisors have not yet decided if the oversight commission will have subpoena powers, which some argue would give the panel a stronger ability to oversee operations. The supervisors are waiting to see how an agreement to share documents between the inspector general and **SHERIFF** works out. In San Diego County, the Citizens Law Enforcement Review Board, which oversees an elected **SHERIFF** and the chief probation officer, does have subpoena powers.

View▶

Unique Visitors:  116,633

1915.    **Los Angeles Daily News** Newspaper  Market: Los Angeles, CA
         How the Sheriff's Department oversight body will be different from        Jan 24 2016 01:36AM
         LAPD's Police                                                            PT

But unlike the Los Angeles Police Departments Police Commission, the panel will merely be advisory. The Board of Supervisors is set to vote on the proposed ordinance that will govern the commission in the coming weeks. The main difference between the two oversight bodies will be that the **SHERIFF** is an elected official and has the sole responsibility to operate the department, while the police chief is appointed by the mayor, with the approval of the City Council and Police Commission. Under the City Charter, the Police Commission is the head of the LAPD. The Police Commission sets policies for the department. Although in reality the chief also has a lot of control and he manages the day-to-day operations of the department. Attorney Dean Hansell, who chaired the working group formed last year to make recommendations to the Board of Supervisors about the role of the Sheriffs Department oversight commission, described how the Sheriffs Department oversight panel would be different from the Police Commission. The **SHERIFF** is independently elected, Hansell said. This commission, much of their powers and tools are really going to have to be power of persuasion and power to muster public opinion. The oversight commission wont be able to operate by edict or directive, he said. Hansell served as a police commissioner for more than four years. The Board of Supervisors pushed to create a oversight commission in response to widespread abuses by deputies in the countys jails under former **SHERIFF LEE BACA** who resigned last year. The charges have reached the upper echelons of the department with the indictment of former Undersheriff **PAUL TANAKA** who is accused of obstruction of justice and conspiring to obstruct justice. A blue ribbon Commission on **JAIL** Violence launched in 2011 did not recommend that the board establish an independent civilian commission because it would not have any legal authority over the Sheriffs Department absent enabling legislation. That commission did recommend the creation of an Office of Inspector General , which the supervisors established in 2013. The one area where the Board of Supervisors do have control over the Sheriffs Department is in budgetary matters. Chemerinsky said the oversight commission could make recommendations to the supervisors that would impact the departments budget. The working group said in its report that, Because the **SHERIFF** is independently elected and has operational autonomy, many of the proposed responsibilities are referral powers, only possible if the board, **SHERIFF** and inspector general find commissions

work to be appropriate, useful and credible. In the proposed ordinance, that will be considered by supervisors for adoption this week, a section under Duties describes the commission as advisory. Be advisory only to the Board of Supervisors and the **SHERIFF** without the authority to manage or operate the Sheriffs Department or direct activities of the sheriffs departments employees, including imposition of discipline, the ordinance says. The LAPDs Police Commission also does not have power to impose discipline. That rests with the police chief. The commission does rule whether an incident like use of force was within the departments policy. The supervisors have not yet decided if the oversight commission will have subpoena powers, which some argue would give the panel a stronger ability to oversee operations. The supervisors are waiting to see how an agreement to share documents between the inspector general and **SHERIFF** works out. In San Diego County, the Citizens Law Enforcement Review Board, which oversees an elected **SHERIFF** and the chief probation officer, does have subpoena powers.

View▶

Unique Visitors: 647,000

1916.    **San Gabriel Valley Tribune** Newspaper   Market: Los Angeles, CA

How the Sheriff's Department oversight body will be different from LAPD's Police                                                           Jan 24 2016 01:36AM PT

But unlike the Los Angeles Police Departments Police Commission, the panel will merely be advisory. The Board of Supervisors is set to vote on the proposed ordinance that will govern the commission in the coming weeks. The main difference between the two oversight bodies will be that the **SHERIFF** is an elected official and has the sole responsibility to operate the department, while the police chief is appointed by the mayor, with the approval of the City Council and Police Commission. Under the City Charter, the Police Commission is the head of the LAPD. The Police Commission sets policies for the department. Although in reality the chief also has a lot of control and he manages the day-to-day operations of the department. Attorney Dean Hansell, who chaired the working group formed last year to make recommendations to the Board of Supervisors about the role of the Sheriffs Department oversight commission, described how the Sheriffs Department oversight panel would be different from the Police Commission. The **SHERIFF** is independently elected, Hansell said. This commission, much of their powers and tools are really going to have to be power of persuasion and power to muster public opinion. The oversight commission wont be able to operate by edict or directive, he said. Hansell served as a police commissioner for more than four years. The Board of Supervisors pushed to create a oversight commission in response to widespread abuses by deputies in the countys jails under former **SHERIFF LEE BACA** who resigned last year. The charges have reached the upper echelons of the department with the indictment of former Undersheriff **PAUL TANAKA** who is accused of obstruction of justice and conspiring to obstruct justice. A blue ribbon Commission on **JAIL** Violence launched in 2011 did not recommend that the board establish an independent civilian commission because it would not have any legal authority over the Sheriffs Department absent enabling legislation. That commission did recommend the creation of an Office of Inspector General , which the supervisors established in 2013. The one area where the Board of Supervisors do have control over the Sheriffs Department is in budgetary matters. Chemerinsky said the oversight commission could make recommendations to the supervisors that would impact the departments budget. The working group said in its report that, Because the **SHERIFF** is independently elected and has operational autonomy, many of the proposed responsibilities are referral powers, only possible if the board, **SHERIFF** and inspector general find commissions work to be appropriate, useful and credible. In the proposed ordinance, that will be considered

by supervisors for adoption this week, a section under Duties describes the commission as advisory. Be advisory only to the Board of Supervisors and the **SHERIFF** without the authority to manage or operate the Sheriffs Department or direct activities of the sheriffs departments employees, including imposition of discipline, the ordinance says. The LAPDs Police Commission also does not have power to impose discipline. That rests with the police chief. The commission does rule whether an incident like use of force was within the departments policy. The supervisors have not yet decided if the oversight commission will have subpoena powers, which some argue would give the panel a stronger ability to oversee operations. The supervisors are waiting to see how an agreement to share documents between the inspector general and **SHERIFF** works out. In San Diego County, the Citizens Law Enforcement Review Board, which oversees an elected **SHERIFF** and the chief probation officer, does have subpoena powers.

View▶

Unique Visitors:  273,213

1917.  **KABC-ABC** Television   Market: Los Angeles, CA

Eyewitness News 6 PM

Jan 21 2016 06:00PM PT

[6:02:22 PM] [0:19]  Still trembling in this ACLU interviewed two years later, recounting how **JAIL** deputies beat his inmate. Seven years after viewing the incident, emotions pour out again. He describes punches, kicks, the inmate's head smacked against the wall.

[6:03:59 PM] [0:30]  You either believe the chaplains account or you dismiss it. Miriam: they went to **SHERIFF LEE BACA** himself after a special investigation unit conducted its first interview two years after the beatings. The da passed on prosecutions. Whistleblowers paved the way for major reforms in the gel.

Nielsen Audience:  274,345

1918.  **Altadena Patch** Online Only   Market: Los Angeles, CA

As Number of Alternate Jurors Dwindles, Mistrial Looms in Deputies' Beating Case

Jan 21 2016 06:13AM PT

OConnell said a decision would be made Thursday morning as to how to proceed. The batch of several dozen potential jurors Tuesday expressed a wide range of issues that precluded them serving, including one woman who told the judge that as a practicing Buddhist, she could not pass judgment on others. Aguiar and Ramirez are the latest of nearly two-dozen current and former sheriffs employees to be tried by federal authorities in connection with a probe into brutality and other misconduct in the sheriffs department when **LEE BACA** was **SHERIFF.** The indictment allehes Aguiar and Ramirez violated the civil rights of a defenseless Bret Phillips by assaulting him inside Mens Central **JAIL** on the morning of Feb. 11, 2009. Assistant U.S. Attorney Jennifer Williams told the jury during her opening statement that the inmate was handcuffed to a waist chain when he was smashed against a concrete wall, kicked and punched in the head and upper body, struck with a flashlight and pepper-sprayed in the face.

View▶

Unique Visitors:  5,929,830

1919.  **Monrovia Patch** Online Only   Market: Los Angeles, CA

As Number of Alternate Jurors Dwindles, Mistrial Looms in Deputies' Beating Case

Jan 21 2016 06:13AM PT

OConnell said a decision would be made Thursday morning as to how to proceed. The batch of several dozen potential jurors Tuesday expressed a wide range of issues that precluded them serving, including one woman who told the judge that as a practicing Buddhist, she could not pass judgment on others. Aguiar and Ramirez are the latest of nearly two-dozen current and former sheriffs employees to be tried by federal authorities in connection with a probe into brutality and other misconduct in the sheriffs department when **LEE BACA** was **SHERIFF.** The indictment allehes Aguiar and Ramirez violated the civil rights of a defenseless Bret Phillips by assaulting him inside Mens Central **JAIL** on the morning of Feb. 11, 2009. Assistant U.S. Attorney Jennifer Williams told the jury during her opening statement that the inmate was handcuffed to a waist chain when he was smashed against a concrete wall, kicked and punched in the head and upper body, struck with a flashlight and pepper-sprayed in the face.

View▶

Unique Visitors:  5,929,830

1920.  **Montrose Patch**  Online Only   Market: Los Angeles, CA
As Number of Alternate Jurors Dwindles, Mistrial Looms in Deputies' Beating Case                    Jan 21 2016 06:12AM PT

OConnell said a decision would be made Thursday morning as to how to proceed. The batch of several dozen potential jurors Tuesday expressed a wide range of issues that precluded them serving, including one woman who told the judge that as a practicing Buddhist, she could not pass judgment on others. Aguiar and Ramirez are the latest of nearly two-dozen current and former sheriffs employees to be tried by federal authorities in connection with a probe into brutality and other misconduct in the sheriffs department when **LEE BACA** was **SHERIFF.** The indictment allehes Aguiar and Ramirez violated the civil rights of a defenseless Bret Phillips by assaulting him inside Mens Central **JAIL** on the morning of Feb. 11, 2009. Assistant U.S. Attorney Jennifer Williams told the jury during her opening statement that the inmate was handcuffed to a waist chain when he was smashed against a concrete wall, kicked and punched in the head and upper body, struck with a flashlight and pepper-sprayed in the face.

View▶

Unique Visitors:  5,929,830

1921.  **Glendora Patch**  Online Only   Market: Los Angeles, CA
As Number of Alternate Jurors Dwindles, Mistrial Looms in Deputies' Beating Case                    Jan 21 2016 06:12AM PT

OConnell said a decision would be made Thursday morning as to how to proceed. The batch of several dozen potential jurors Tuesday expressed a wide range of issues that precluded them serving, including one woman who told the judge that as a practicing Buddhist, she could not pass judgment on others. Aguiar and Ramirez are the latest of nearly two-dozen current and former sheriffs employees to be tried by federal authorities in connection with a probe into brutality and other misconduct in the sheriffs department when **LEE BACA** was **SHERIFF.** The indictment allehes Aguiar and Ramirez violated the civil rights of a defenseless Bret Phillips by assaulting him inside Mens Central **JAIL** on the morning of Feb. 11, 2009. Assistant U.S. Attorney Jennifer Williams told the jury during her opening statement that the inmate was handcuffed to a waist chain when he was smashed against a concrete wall, kicked and punched in the head and upper body, struck with a flashlight and pepper-sprayed in the face. More from Glendora Patch Walmart Closing 154 U.S. Stores In 2016: Full ListUSC Eye Study Finds Near-Sightedness GrowingComing to Theaters Near You: 'Dirty Grandpa,' 'The 5th Wave,' 'The Boy,' and MorePoor Air Quality Prompts Another No Burn Alert for Glendora The batch of several