watchdog signed off on the department's findings. A second inquiry by a special **SHERIFF'S** Department task force launched in 2011 to review accusations of brutality in the jailssubmitted its investigation to the district attorney's office nearly a year after the legal deadline for filing criminal charges in state court, according to the district attorney's memo. Aguiar and Ramirez were not disciplined by the department in connection with the incident, a **SHERIFF'S** spokesman said. Last year, federal prosecutors won **GUILTY** verdicts or pleas from five deputies in another **JAIL** abuse case. Other deputies are awaiting trial in a third case alleging **JAIL** brutality. The FBI's wide-ranging probe into claims of misconduct and abuse in the county's jails upendedthe career of longtime **SHERIFF LEE BACA,** who stepped down in 2014, and led to the indictment of his former top aide on obstruction of justice charges. The investigation has so far resulted in the conviction of more than a dozen former **SHERIFF'S** officials on charges of obstruction and other crimes. The new **SHERIFF,** Jim McDonnell, spent his first year in office working to reorganize the large agency and to put in place reforms meant to increase accountability. joel.rubin@latimes.com Find me on Twitter: @joelrubin

View▶

Unique Visitors: 2,074

1944. **Los Angeles Times** Newspaper   Market: Los Angeles, CA
In latest case of L.A. jail abuse, trial will focus on alleged beating of handcu     Jan 19 2016 01:00PM PT

The trial of two Los Angeles County sheriffs deputies accused of assaulting a handcuffed inmate is scheduled to begin Tuesday, the latest in a series of prosecutions focused on allegations of misconduct and abuseinside the nation's largest **JAIL** system. Joey Aguiar and MarianoRamirez are accused of violating the civil rights of the inmate, Bret Phillips, by beating him in February 2009. Phillips had his hands shackled to a chain around his waist during the attack, according to an indictment handed upby a grand jury nearly two years ago. The indictment accuses thedeputiesof kicking Phillips in the head and upper body, while Ramirez allegedly also struck him with a flashlight and pepper-sprayed him in the face. Aguiar and Ramirez also face charges of lying in reports they wrote about the incident to justify the force they used. The deputies allegedly claimed Phillips had to be forcefully restrained after he attempted to head-butt and kick Aguiar. **JAIL** records show Phillips suffered bruising and a cut on his forehead but no fractures, according to a memoby an attorney in the L.A. County district attorneys office who reviewed the beating. A nurse noted scrapes to both of Phillips wrists and his left eyebrow, the attorney wrote. The memo , a copy of which was obtained by the Times, provided additional details about the incident, which occurred in a unit of Men's Central **JAIL** that houses inmates thought to be particularly combative and dangerous. Aguiar and Ramirez punched Phillips as many as eight times in the rib area, and Ramirez struck the inmate two to three times in the leg and elbow with a flashlight, the memo said. It also named other deputies and a sergeant who allegedly were involved in the incident or wrote reports bolstering the idea that Phillips had been the aggressor. Neither has been paid as they awaited trial. The case was one of several that critics of the Sheriffs Department said exemplified the failure of top officials to adequately look into allegations of abuse and hold deputies accountable. **SHERIFF'S** officials initially rejected claims the deputiesused excessive force on Phillips. The departments internal watchdog signed off on the department's findings. A second inquiry by a special **SHERIFF'S** Department task force launched in 2011 to review accusations of brutality in the jailssubmitted its investigation to the district attorney's office nearly a year after the legal deadline for filing criminal charges in state court, according to the district attorney's memo. Aguiar and Ramirez were not disciplined by the department in connection with the incident, a **SHERIFF'S** spokesman said. Last year, federal prosecutors won **GUILTY** verdicts or pleas from five deputies

in another **JAIL** abuse case. Other deputies are awaiting trial in a third case alleging **JAIL** brutality. The FBI's wide-ranging probe into claims of misconduct and abuse in the county's jails upendedthe career of longtime **SHERIFF LEE BACA,** who stepped down in 2014, and led to the indictment of his former top aide on obstruction of justice charges. The investigation has so far resulted in the conviction of more than a dozen former **SHERIFF'S** officials on charges of obstruction and other crimes. The new **SHERIFF,** Jim McDonnell, spent his first year in office working to reorganize the large agency and to put in place reforms meant to increase accountability. joel.rubin@latimes.com Find me on Twitter: @joelrubin system. Joey Aguiar and MarianoRamirez are accused of violating the civil rights of the inmate, Bret Phillips, by beating him in February 2009. Phillips had his hands shackled to a chain around his waist during the attack, according to an indictment handed upby a grand jury nearly two years ago. The indictment accuses thedeputiesof kicking Phillips in the head and upper body, while Ramirez allegedly also struck him with a flashlight and pepper-sprayed him in the face. Aguiar and Ramirez also face charges of lying in reports they wrote about the incident to justify the force they used. The deputies allegedly claimed Phillips had to be forcefully restrained after he attempted to head-butt and kick Aguiar. records show Phillips suffered bruising and a cut on his forehead but no fractures, according to a memoby an attorney in the L.A. County district attorneys office who reviewed the beating. A nurse noted scrapes to both of Phillips wrists and his left eyebrow, the attorney wrote. Feds did what the L.A. prosecutors didn't do: bring deputies in visitor's beating to justice Joel Rubin The Los Angeles County **SHERIFF'S** Department already was engulfed in a **JAIL** brutality scandal when a prosecutor in the district attorney's office examined the beating of Gabriel Carrillo. During a visit to the county's main **JAIL** in February 2011, Carrillo had been left badly bloodied and bruised. The Los Angeles County **SHERIFF'S** Department already was engulfed in a **JAIL** brutality scandal when a prosecutor in the district attorney's office examined the beating of Gabriel Carrillo. During a visit to the county's main **JAIL** in February 2011, Carrillo had been left badly bloodied and bruised.(Joel Rubin) The memo, a copy of which was obtained by the Times, provided additional details about the incident, which occurred in a unit of Men's Central **JAIL** that houses inmates thought to be particularly combative and dangerous. Aguiar and Ramirez punched Phillips as many as eight times in the rib area, and Ramirez struck the inmate two to three times in the leg and elbow with a flashlight, the memo said. It also named other deputies and a sergeant who allegedly were involved in the incident or wrote reports bolstering the idea that Phillips had been the aggressor. Ex-L.A. County **SHERIFF'S** sergeant sentenced to 8 years in prison in **JAIL** visitor beating Joel Rubin Former Los Angeles County Sheriffs Sgt. Eric Gonzalez made a final, defiant stand Monday as a judge prepared to sentence him in the beating of a handcuffed man and a scheme to cover it up.In making his case for leniency, Gonzalez said his job in the Los Angeles County **JAIL** was filled with danger. Former Los Angeles County Sheriffs Sgt. Eric Gonzalez made a final, defiant stand Monday as a judge prepared to sentence him in the beating of a handcuffed man and a scheme to cover it up.In making his case for leniency, Gonzalez said his job in the Los Angeles County **JAIL** was filled with danger.(Joel Rubin) One of those deputies, Mario Pinedo, is expected to testify on behalf of Aguiar and Ramirez, lawyers for the men said at a recent court hearing. Prosecutors from the U.S. attorneys office indicated in court filings that, along with Phillips, other former inmates, and sheriffs officials, they plan to call to the stand a chaplain who said he witnessed the alleged attack. Neither has been paid as they awaited trial. The case was one of several that critics of the Sheriffs Department said exemplified the failure of top officials to adequately look into allegations of abuse and hold deputies accountable. **SHERIFF'S** officials initially rejected claims the deputiesused excessive force on Phillips. The departments internal watchdog signed off on the department's findings. A second inquiry by a special **SHERIFF'S** Department task force launched in 2011 to review

accusations of brutality in the jailssubmitted its investigation to the district attorney's office nearly a year after the legal deadline for filing criminal charges in state court, according to the district attorney's memo. Aguiar and Ramirez were not disciplined by the department in connection with the incident, a **SHERIFF'S** spokesman said. Last year, federal prosecutors won **GUILTY** verdicts or pleas from five deputies in another **JAIL** abusecase. Other deputies are awaiting trial in a third case alleging **JAIL** brutality. The FBI's wide-ranging probe into claims of misconduct and abuse in the county's jails upendedthe career of longtime **SHERIFF LEE BACA,** who stepped down in 2014, and led to the indictment of his former top aide on obstruction of justice charges. The investigation has so far resulted in the conviction of more than a dozen former **SHERIFF'S** officials on charges of obstruction and other crimes. The new **SHERIFF,** Jim McDonnell, spent his first year in office working to reorganize the large agency and to put in place reforms meant to increase accountability. joel.rubin@latimes.com Find me on Twitter: @joelrubin

**View▶**

    Unique Visitors: 11,853,053

---

1945.   **KCAL-TV [IND 9]** Television   Market: Los Angeles, CA

Comment on Sheriff Baca Denies Catering To Friends, Family With Controversial Hi     Jan 18 2016 11:01AM PT

After not meeting with the press for months, **SHERIFF LEE BACA** has emerged from his bat cave to speak with reporters a number of times in the last week. On Wednesday he met with KCAL 9s Dave Lopez.

**View▶**

    Unique Visitors: 1,112,430

---

1946.   **Burbank Leader** Online Only   Market: Los Angeles, CA

Jim McDonnell has de-Tanakafied the L.A. Sheriff's Department. Will that be enou     Jan 10 2016 01:00PM PT

It's hard to think of someone more qualified to fix the L.A. County **SHERIFF'S** Department than Jim McDonnell , a former assistant chief of the Los Angeles Police Department and chief of police in Long Beach. During his tenure in Long Beach he served on a commission that delved into beatings of **JAIL** inmates by L.A. County **SHERIFF'S** deputies and made wide-ranging recommendations to revamp the **SHERIFF'S** Department's management, structure and oversight. He and his commission colleagues essentially, although obliquely, called for the ouster of **SHERIFF LEE BACA** but reserved particular opprobrium for former Undersheriff **PAUL TANAKA.** Then, after Baca stepped down, McDonnell ran for **SHERIFF** against Tanaka and won, taking office on Dec. 1, 2014. Now Tanaka is facing trial on obstruction of justice charges, and McDonnell has spent just over a year trying to consolidate post-Baca, post-Tanaka reforms. The department overhaul has been quiet but, at least on the organization chart, far-reaching: The top officials most closely associated with the former discredited regime are gone. The organization has a different tone, McDonnell said recently, and that new tone was exemplified last year by the resignation of Assistant **SHERIFF** Michael Rothans , following a Times report that he had purchased a stolen car that deputies had seized from a suspected gang member. Rothans had been a trusted part of McDonnell's effort to reboot the department, but he violated policy, and he was out. If the **SHERIFF'S** task were limited to undoing the Tanaka era, he'd be off to a good start. But he has weighty challenges that predate Baca, Tanaka, the beatings and the obstruction charges that have resulted in convictions of several deputies (and in Tanaka's trial, which is slated for next month)He has jails that are outdated, poorly designed

and ill-suited to the task of properly treating thousands of inmates, many of whom are sick or addicted and might be more effectively housed and treated elsewhere. There are some discouraging signals on that front. We are dismayed at McDonnell's hostile reaction to Proposition 47, the landmark California ballot measure that decreases penalties for drug possession and other nonviolent crimes. The **SHERIFF** acknowledges that instead of arresting suspects on misdemeanor charges, his deputies are often not arresting them at all. Yet he blames an uptick in crime not on his department's practices, but on the ballot measure. Supervisor Sheila Kuehl did not mention McDonnell by name at a board hearing on Proposition 47 last fall, but it's hard to escape the conclusion that she was talking at least partly about him when she noted that there was no evidence to support claims that the measure is increasing crime. I would really encourage those spreading this disinformation to reconsider and be more responsible, Kuehl said. So far, any tension between McDonnell and the Board of Supervisors is mostly of the friendly variety. But given the competition between the **SHERIFF** and the supervisors over money and power, the relationship bears watching. More than once during her 2014 campaign for county supervisor, Kuehl argued that the board can and should exercise greater control over the **SHERIFF** by granting or withholding funds. Last year the board stripped the **SHERIFF** of his control over medical services in the jails. The supervisors also blocked McDonnell from hiring legal advisors who would be responsible to him and not to the county counsel, who is hired and fired by the board. Meanwhile, according to Supervisor Mark Ridley-Thomas , the counsel has begun making the case that the board has supervisory authority over the **SHERIFF** and his department, even though the **SHERIFF** is independently elected under the state Constitution. Some of this will be tested, Ridley-Thomas told an audience at the Los Angeles Current Affairs Forum, presumably in a court of law. This battle for authority is playing out in less-than-obvious ways. A series of public hearings last year on a still-unformed **SHERIFF'S** oversight commission focused on the degree to which independent panelists would be able to compel production of use-of-force data and pressure the department to impose discipline and alter policy. What the supervisors are actually considering on Tuesday , however, is a commission appointed by and responsible to them, aided by an inspector general who also serves at their pleasure, helping them to keep an eye on the independently elected **SHERIFF.** It is the latest iteration of a power struggle, still a mostly polite one, between the new **SHERIFF** and a partially new board. So which side do we root for? The question should instead be who, or what, will bring Los Angeles County a **SHERIFF'S** Department that protects safety on the streets and in the jails, constantly improves standards and performance and holds itself accountable for failures. It has been only a year, and McDonnell still deserves a bit of patience. For now.

**View▶**

Unique Visitors:  842

1947.  **Glendale News Press**  Newspaper  Market: Los Angeles, CA
Jim McDonnell has de-Tanakafied the L.A. Sheriff's Department. Will that be enou    Jan 10 2016 01:00PM PT

It's hard to think of someone more qualified to fix the L.A. County **SHERIFF'S** Department than Jim McDonnell , a former assistant chief of the Los Angeles Police Department and chief of police in Long Beach. During his tenure in Long Beach he served on a commission that delved into beatings of **JAIL** inmates by L.A. County **SHERIFF'S** deputies and made wide-ranging recommendations to revamp the **SHERIFF'S** Department's management, structure and oversight. He and his commission colleagues essentially, although obliquely, called for the ouster of **SHERIFF LEE BACA** but reserved particular opprobrium for former Undersheriff **PAUL TANAKA.** Then, after Baca stepped down, McDonnell ran for **SHERIFF** against Tanaka and won,

taking office on Dec. 1, 2014. Now Tanaka is facing trial on obstruction of justice charges, and McDonnell has spent just over a year trying to consolidate post-Baca, post-Tanaka reforms. The department overhaul has been quiet but, at least on the organization chart, far-reaching: The top officials most closely associated with the former discredited regime are gone. The organization has a different tone, McDonnell said recently, and that new tone was exemplified last year by the resignation of Assistant **SHERIFF** Michael Rothans , following a Times report that he had purchased a stolen car that deputies had seized from a suspected gang member. Rothans had been a trusted part of McDonnell's effort to reboot the department, but he violated policy, and he was out. If the **SHERIFF'S** task were limited to undoing the Tanaka era, he'd be off to a good start. But he has weighty challenges that predate Baca, Tanaka, the beatings and the obstruction charges that have resulted in convictions of several deputies (and in Tanaka's trial, which is slated for next month)He has jails that are outdated, poorly designed and ill-suited to the task of properly treating thousands of inmates, many of whom are sick or addicted and might be more effectively housed and treated elsewhere. There are some discouraging signals on that front. We are dismayed at McDonnell's hostile reaction to Proposition 47, the landmark California ballot measure that decreases penalties for drug possession and other nonviolent crimes. The **SHERIFF** acknowledges that instead of arresting suspects on misdemeanor charges, his deputies are often not arresting them at all. Yet he blames an uptick in crime not on his department's practices, but on the ballot measure. Supervisor Sheila Kuehl did not mention McDonnell by name at a board hearing on Proposition 47 last fall, but it's hard to escape the conclusion that she was talking at least partly about him when she noted that there was no evidence to support claims that the measure is increasing crime. I would really encourage those spreading this disinformation to reconsider and be more responsible, Kuehl said. So far, any tension between McDonnell and the Board of Supervisors is mostly of the friendly variety. But given the competition between the **SHERIFF** and the supervisors over money and power, the relationship bears watching. More than once during her 2014 campaign for county supervisor, Kuehl argued that the board can and should exercise greater control over the **SHERIFF** by granting or withholding funds. Last year the board stripped the **SHERIFF** of his control over medical services in the jails. The supervisors also blocked McDonnell from hiring legal advisors who would be responsible to him and not to the county counsel, who is hired and fired by the board. Meanwhile, according to Supervisor Mark Ridley-Thomas , the counsel has begun making the case that the board has supervisory authority over the **SHERIFF** and his department, even though the **SHERIFF** is independently elected under the state Constitution. Some of this will be tested, Ridley-Thomas told an audience at the Los Angeles Current Affairs Forum, presumably in a court of law. This battle for authority is playing out in less-than-obvious ways. A series of public hearings last year on a still-unformed **SHERIFF'S** oversight commission focused on the degree to which independent panelists would be able to compel production of use-of-force data and pressure the department to impose discipline and alter policy. What the supervisors are actually considering on Tuesday , however, is a commission appointed by and responsible to them, aided by an inspector general who also serves at their pleasure, helping them to keep an eye on the independently elected **SHERIFF.** It is the latest iteration of a power struggle, still a mostly polite one, between the new **SHERIFF** and a partially new board. So which side do we root for? The question should instead be who, or what, will bring Los Angeles County a **SHERIFF'S** Department that protects safety on the streets and in the jails, constantly improves standards and performance and holds itself accountable for failures. It has been only a year, and McDonnell still deserves a bit of patience. For now.

View▶

Unique Visitors: 10,769

**1948.** **La Canada Valley Sun**  Newspaper  Market: Los Angeles, CA

Jim McDonnell has de-Tanakafied the L.A. Sheriff's Department. Will that be enou    Jan 10 2016 01:00PM PT

It's hard to think of someone more qualified to fix the L.A. County **SHERIFF'S** Department than Jim McDonnell , a former assistant chief of the Los Angeles Police Department and chief of police in Long Beach. During his tenure in Long Beach he served on a commission that delved into beatings of **JAIL** inmates by L.A. County **SHERIFF'S** deputies and made wide-ranging recommendations to revamp the **SHERIFF'S** Department's management, structure and oversight. He and his commission colleagues essentially, although obliquely, called for the ouster of **SHERIFF LEE BACA** but reserved particular opprobrium for former Undersheriff **PAUL TANAKA.** Then, after Baca stepped down, McDonnell ran for **SHERIFF** against Tanaka and won, taking office on Dec. 1, 2014. Now Tanaka is facing trial on obstruction of justice charges, and McDonnell has spent just over a year trying to consolidate post-Baca, post-Tanaka reforms. The department overhaul has been quiet but, at least on the organization chart, far-reaching: The top officials most closely associated with the former discredited regime are gone. The organization has a different tone, McDonnell said recently, and that new tone was exemplified last year by the resignation of Assistant **SHERIFF** Michael Rothans , following a Times report that he had purchased a stolen car that deputies had seized from a suspected gang member. Rothans had been a trusted part of McDonnell's effort to reboot the department, but he violated policy, and he was out. If the **SHERIFF'S** task were limited to undoing the Tanaka era, he'd be off to a good start. But he has weighty challenges that predate Baca, Tanaka, the beatings and the obstruction charges that have resulted in convictions of several deputies (and in Tanaka's trial, which is slated for next month)He has jails that are outdated, poorly designed and ill-suited to the task of properly treating thousands of inmates, many of whom are sick or addicted and might be more effectively housed and treated elsewhere. There are some discouraging signals on that front. We are dismayed at McDonnell's hostile reaction to Proposition 47, the landmark California ballot measure that decreases penalties for drug possession and other nonviolent crimes. The **SHERIFF** acknowledges that instead of arresting suspects on misdemeanor charges, his deputies are often not arresting them at all. Yet he blames an uptick in crime not on his department's practices, but on the ballot measure. Supervisor Sheila Kuehl did not mention McDonnell by name at a board hearing on Proposition 47 last fall, but it's hard to escape the conclusion that she was talking at least partly about him when she noted that there was no evidence to support claims that the measure is increasing crime. I would really encourage those spreading this disinformation to reconsider and be more responsible, Kuehl said. So far, any tension between McDonnell and the Board of Supervisors is mostly of the friendly variety. But given the competition between the **SHERIFF** and the supervisors over money and power, the relationship bears watching. More than once during her 2014 campaign for county supervisor, Kuehl argued that the board can and should exercise greater control over the **SHERIFF** by granting or withholding funds. Last year the board stripped the **SHERIFF** of his control over medical services in the jails. The supervisors also blocked McDonnell from hiring legal advisors who would be responsible to him and not to the county counsel, who is hired and fired by the board. Meanwhile, according to Supervisor Mark Ridley-Thomas , the counsel has begun making the case that the board has supervisory authority over the **SHERIFF** and his department, even though the **SHERIFF** is independently elected under the state Constitution. Some of this will be tested, Ridley-Thomas told an audience at the Los Angeles Current Affairs Forum, presumably in a court of law. This battle for authority is playing out in less-than-obvious ways. A series of public hearings last year on a still-unformed **SHERIFF'S** oversight commission focused on the degree to which independent panelists would

be able to compel production of use-of-force data and pressure the department to impose discipline and alter policy. What the supervisors are actually considering on Tuesday , however, is a commission appointed by and responsible to them, aided by an inspector general who also serves at their pleasure, helping them to keep an eye on the independently elected **SHERIFF.** It is the latest iteration of a power struggle, still a mostly polite one, between the new **SHERIFF** and a partially new board. So which side do we root for? The question should instead be who, or what, will bring Los Angeles County a **SHERIFF'S** Department that protects safety on the streets and in the jails, constantly improves standards and performance and holds itself accountable for failures. It has been only a year, and McDonnell still deserves a bit of patience. For now.

View▶

Unique Visitors:  2,309

1949.    **Laguna Beach Coastline Pilot**  Newspaper   Market: Los Angeles, CA
Jim McDonnell has de-Tanakafied the L.A. Sheriff's Department. Will that    Jan 10 2016 01:00PM
be enou                                                                        PT

It's hard to think of someone more qualified to fix the L.A. County **SHERIFF'S** Department than Jim McDonnell , a former assistant chief of the Los Angeles Police Department and chief of police in Long Beach. During his tenure in Long Beach he served on a commission that delved into beatings of **JAIL** inmates by L.A. County **SHERIFF'S** deputies and made wide-ranging recommendations to revamp the **SHERIFF'S** Department's management, structure and oversight. He and his commission colleagues essentially, although obliquely, called for the ouster of **SHERIFF LEE BACA** but reserved particular opprobrium for former Undersheriff **PAUL TANAKA.** Then, after Baca stepped down, McDonnell ran for **SHERIFF** against Tanaka and won, taking office on Dec. 1, 2014. Now Tanaka is facing trial on obstruction of justice charges, and McDonnell has spent just over a year trying to consolidate post-Baca, post-Tanaka reforms. The department overhaul has been quiet but, at least on the organization chart, far-reaching: The top officials most closely associated with the former discredited regime are gone. The organization has a different tone, McDonnell said recently, and that new tone was exemplified last year by the resignation of Assistant **SHERIFF** Michael Rothans , following a Times report that he had purchased a stolen car that deputies had seized from a suspected gang member. Rothans had been a trusted part of McDonnell's effort to reboot the department, but he violated policy, and he was out. If the **SHERIFF'S** task were limited to undoing the Tanaka era, he'd be off to a good start. But he has weighty challenges that predate Baca, Tanaka, the beatings and the obstruction charges that have resulted in convictions of several deputies (and in Tanaka's trial, which is slated for next month)He has jails that are outdated, poorly designed and ill-suited to the task of properly treating thousands of inmates, many of whom are sick or addicted and might be more effectively housed and treated elsewhere. There are some discouraging signals on that front. We are dismayed at McDonnell's hostile reaction to Proposition 47, the landmark California ballot measure that decreases penalties for drug possession and other nonviolent crimes. The **SHERIFF** acknowledges that instead of arresting suspects on misdemeanor charges, his deputies are often not arresting them at all. Yet he blames an uptick in crime not on his department's practices, but on the ballot measure. Supervisor Sheila Kuehl did not mention McDonnell by name at a board hearing on Proposition 47 last fall, but it's hard to escape the conclusion that she was talking at least partly about him when she noted that there was no evidence to support claims that the measure is increasing crime. I would really encourage those spreading this disinformation to reconsider and be more responsible, Kuehl said. So far, any tension between McDonnell and the Board of Supervisors is mostly of the friendly variety. But given the competition between the **SHERIFF** and the

Media Coverage Report

supervisors over money and power, the relationship bears watching. More than once during her 2014 campaign for county supervisor, Kuehl argued that the board can and should exercise greater control over the **SHERIFF** by granting or withholding funds. Last year the board stripped the **SHERIFF** of his control over medical services in the jails. The supervisors also blocked McDonnell from hiring legal advisors who would be responsible to him and not to the county counsel, who is hired and fired by the board. Meanwhile, according to Supervisor Mark Ridley-Thomas , the counsel has begun making the case that the board has supervisory authority over the **SHERIFF** and his department, even though the **SHERIFF** is independently elected under the state Constitution. Some of this will be tested, Ridley-Thomas told an audience at the Los Angeles Current Affairs Forum, presumably in a court of law. This battle for authority is playing out in less-than-obvious ways. A series of public hearings last year on a still-unformed **SHERIFF'S** oversight commission focused on the degree to which independent panelists would be able to compel production of use-of-force data and pressure the department to impose discipline and alter policy. What the supervisors are actually considering on Tuesday , however, is a commission appointed by and responsible to them, aided by an inspector general who also serves at their pleasure, helping them to keep an eye on the independently elected **SHERIFF.** It is the latest iteration of a power struggle, still a mostly polite one, between the new **SHERIFF** and a partially new board. So which side do we root for? The question should instead be who, or what, will bring Los Angeles County a **SHERIFF'S** Department that protects safety on the streets and in the jails, constantly improves standards and performance and holds itself accountable for failures. It has been only a year, and McDonnell still deserves a bit of patience. For now.

View▶

Unique Visitors: 2,074

1950.    **Los Angeles Times**   Newspaper    Market: Los Angeles, CA
     Jim McDonnell has de-Tanakafied the L.A. Sheriff's Department. Will that be enou    Jan 10 2016 01:00PM PT

It's hard to think of someone more qualified to fix the L.A. County **SHERIFF'S** Department than Jim McDonnell , a former assistant chief of the Los Angeles Police Department and chief of police in Long Beach. During his tenure in Long Beach he served on a commission that delved into beatings of **JAIL** inmates by L.A. County **SHERIFF'S** deputies and made wide-ranging recommendations to revamp the **SHERIFF'S** Department's management, structure and oversight. He and his commission colleagues essentially, although obliquely, called for the ouster of **SHERIFF LEE BACA** but reserved particular opprobrium for former Undersheriff **PAUL TANAKA.** Then, after Baca stepped down, McDonnell ran for **SHERIFF** against Tanaka and won, taking office on Dec. 1, 2014. Now Tanaka is facing trial on obstruction of justice charges, and McDonnell has spent just over a year trying to consolidate post-Baca, post-Tanaka reforms. The department overhaul has been quiet but, at least on the organization chart, far-reaching: The top officials most closely associated with the former discredited regime are gone. The organization has a different tone, McDonnell said recently, and that new tone was exemplified last year by the resignation of Assistant **SHERIFF** Michael Rothans , following a Times report that he had purchased a stolen car that deputies had seized from a suspected gang member. Rothans had been a trusted part of McDonnell's effort to reboot the department, but he violated policy, and he was out. If the **SHERIFF'S** task were limited to undoing the Tanaka era, he'd be off to a good start. But he has weighty challenges that predate Baca, Tanaka, the beatings and the obstruction charges that have resulted in convictions of several deputies (and in Tanaka's trial, which is slated for next month)He has jails that are outdated, poorly designed and ill-suited to the task of properly treating thousands of inmates, many of whom are sick or

addicted and might be more effectively housed and treated elsewhere. There are some discouraging signals on that front. We are dismayed at McDonnell's hostile reaction to Proposition 47, the landmark California ballot measure that decreases penalties for drug possession and other nonviolent crimes. The **SHERIFF** acknowledges that instead of arresting suspects on misdemeanor charges, his deputies are often not arresting them at all. Yet he blames an uptick in crime not on his department's practices, but on the ballot measure. Supervisor Sheila Kuehl did not mention McDonnell by name at a board hearing on Proposition 47 last fall, but it's hard to escape the conclusion that she was talking at least partly about him when she noted that there was no evidence to support claims that the measure is increasing crime. I would really encourage those spreading this disinformation to reconsider and be more responsible, Kuehl said. So far, any tension between McDonnell and the Board of Supervisors is mostly of the friendly variety. But given the competition between the **SHERIFF** and the supervisors over money and power, the relationship bears watching. More than once during her 2014 campaign for county supervisor, Kuehl argued that the board can and should exercise greater control over the **SHERIFF** by granting or withholding funds. Last year the board stripped the **SHERIFF** of his control over medical services in the jails. The supervisors also blocked McDonnell from hiring legal advisors who would be responsible to him and not to the county counsel, who is hired and fired by the board. Meanwhile, according to Supervisor Mark Ridley-Thomas , the counsel has begun making the case that the board has supervisory authority over the **SHERIFF** and his department, even though the **SHERIFF** is independently elected under the state Constitution. Some of this will be tested, Ridley-Thomas told an audience at the Los Angeles Current Affairs Forum, presumably in a court of law. This battle for authority is playing out in less-than-obvious ways. A series of public hearings last year on a still-unformed **SHERIFF'S** oversight commission focused on the degree to which independent panelists would be able to compel production of use-of-force data and pressure the department to impose discipline and alter policy. What the supervisors are actually considering on Tuesday , however, is a commission appointed by and responsible to them, aided by an inspector general who also serves at their pleasure, helping them to keep an eye on the independently elected **SHERIFF.** It is the latest iteration of a power struggle, still a mostly polite one, between the new **SHERIFF** and a partially new board. So which side do we root for? The question should instead be who, or what, will bring Los Angeles County a **SHERIFF'S** Department that protects safety on the streets and in the jails, constantly improves standards and performance and holds itself accountable for failures. It has been only a year, and McDonnell still deserves a bit of patience. For now.

View▶

Unique Visitors:  11,853,053

| | |
|---|---|
| **Report Generated:** | 09 Sep 2016 20:22:59 UTC |
| **Story Count:** | 1950 |
| **Audience:** | 5,577,276,651 |
| **Nielsen Audience:** | 35,603,758 |
| **Nielsen Radio Audience:** | 414,000 |
| **Unique Visitors:** | 5,541,258,893 |

This report contains copyrighted material and may be used for file and reference purposes only. Any reproduction, sale or distribution is prohibited.

Portions © 2016 Nielsen Media Research, Inc.

Applicable ratings data contained herein are the copyrighted property of Nielsen Media Research,

Inc.

All Rights Reserved.

Portions © 2016 Compete, Inc.

Applicable ratings data contained herein are for use pursuant to a license from Compete, Inc.

All Rights Reserved.