# Exhibit 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

HONORABLE PERCY ANDERSON, JUDGE PRESIDING

---

| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | )No. CR **16-0066**PA |
| VS | ) |
| | ) |
| **LEROY BACA,** | ) |
| | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Reporter's Transcript of Proceedings
**SENTENCING HEARING**
Los Angeles, California
**MONDAY, JULY 18, 2016**
**8:30 A.M.**

ANNE KIELWASSER, CRR, RPR, CSR
Federal Official Court Reporter
312 North Spring Street, Room 432
Los Angeles, California 90012
Telephone: (213) 894-2969
anne.kielwasser@gmail.com
AKtranscripts.com

Ex. 1, Pg. 6

2

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:

**Brandon D Fox**
AUSA - Office of the US Attorney
312 North Spring Street, 12th Floor
Los Angeles, CA 90012
Tel:  213-894-0284
Fax:  213-894-0141
E-mail:  Brandon.fox@usdoj.gov

**Lizabeth A Rhodes**
AUSA - Office of US Attorney
Public Corruption and Civil Rights Section
312 North Spring Street, 13th Floor
Los Angeles, CA 90012
Tel:  213-894-3541
Fax:  213-894-6436
E-mail:  Lizabeth.rhodes@usdoj.gov

**Eddie A Jauregui**
AUSA - Office of the US Attorney
General Crimes Section
312 North Spring Street 12th Floor
Los Angeles, CA 90012
Tel:  213-894-4849
Fax:  213-894-0141
E-mail:  Eddie.jauregui@usdoj.gov


ON BEHALF OF THE DEFENDANT:

**Michael Zweiback**
**Rachel L Fiset**
**Erin Coleman**
Alston and Bird LLP
333 South Hope Street 16th Floor
Los Angeles, CA 90071
Tel:  213-576-1000
Fax:  213-576-1100
E-mail:  Michael.zweiback@alston.com

UNITED STATES DISTRICT COURT

Ex. 1, Pg. 7

MONDAY, JULY 18, 2016                                    8:30 A.M.

~ ~ ~

P R O C E E D I N G S

~ ~ ~

COURT CLERK:  Calling Item No. 1 on the calendar. CR 16-0066.  United States of America versus Leroy Baca.

Counsel, state your appearances for the record.

**MR. FOX:**  Good morning, Your Honor.

Brandon Fox, Lizabeth Rhodes and Eddie Juaregui on behalf of the United States.

**THE COURT:**  Good morning.

**MR. ZWEIBACK:**  Good morning, Your Honor.

Mike Zweiback, Rachel Fiset and Erin Coleman on behalf of Mr. Baca who is present.

**THE COURT:**  Good morning.

Would you and your client approach the lectern, please?

**MR. ZWEIBACK:**  Yes, Your Honor.

And, Your Honor, before we proceed, there is one matter that we would like to address at sidebar.

**THE COURT:**  All right.

(Sidebar conference.)

**MR. ZWEIBACK:**  Your Honor, I apologize for this coming in so late.  Late Friday afternoon we received a

Ex. 1, Pg. 8

4

letter from his doctor at USC who indicated that she

performed a neuropsychological test late Thursday afternoon

at a visit, and that during that exam and in the aftermath of

evaluating the results, she found that his condition had

declined, and I felt it was important to advise the Court

about something that's a recent health evaluation, just so

that the Court has the information.

I immediately notified counsel for the

government about the fact that we had received this, and they

were able to interview the doctor on Sunday afternoon by

telephone.

I believe that they have some objections to

the specific information, but we merely submit it to indicate

that this is a progressive neurological disease, and his

disease has in fact progressed.

**MR. FOX:**  Your Honor, to give you some perspective

on this, this was an assessment done of Mr. Baca on Thursday.

We learned about this Friday at 4:00 p.m.  And talking to the

doctor on Sunday, I believe she said that Wednesday counsel

for Mr. Baca reached out to her and said --

**MR. ZWEIBACK:**  It was actually his wife.

**MR. FOX:**  Oh, she said that the doctor said that

it was counsel for Mr. Baca.

Anyway, it was --

**MS. FISET:**  Last Friday.  Last Friday.  I'm sorry.

UNITED STATES DISTRICT COURT

Ex. 1, Pg. 9

5

**MR. FOX:**  I'm sorry?

Okay, anyway, doesn't matter.  What matters is she performed it.  There was one person who performed testing on Mr. Baca, and the test that he did not perform well on was his ability to recall the words that had been spoken to him.  That was the primary impairment that he had.

They didn't ask anything about how his daily functioning in life was, which is very important, she admitted was a critical component to this testing.  They didn't ask anything about this.

They didn't consider any -- whether his sentencing had any effect on his ability to recall words.  And, you know, that's a significant factor; the person who was testing him was not even aware that he was going to be sentenced today.

So, I'm not saying that this --

You know, we've always been aware that this is a disease that he has and that it will progress.

So, I'm just saying that this information, I don't think it would be a hundred percent counted on as being completely accurate.

I think that there are other steps that would have to be taken, but I think the parties are all in agreement that we should go forward today.  And this is just showing that this is a prerogative disease, and he may be

Ex. 1, Pg. 10

progressing in the disease.

**MR. ZWEIBACK:**  That's correct.

**THE COURT:**  Okay.  Well, I'd like the opportunity to review this.

I want to take a break.  I'm just going to go ahead and take about a five-minute recess, and I'll take a minute to review this.

**MR. FOX:**  Just to mention, Your Honor, they didn't attest to -- that he's malingering --

**MR. ZWEIBACK:**  Your Honor, the doctor did say that there were indicators that he's not malingering, because when he was prompted, some of his responses included -- which to her indicated that he was not malingering.

We understand the argument, but we believe based upon the concurrence of the experts that he has the disease, it's not a surprise that it has progressed.

**THE COURT:**  All right.

(In open court.)

**THE COURT:**  All right, the Court has received some additional materials from the defense this morning, and I'm going to take probably about a five-minute recess so that I'll have an opportunity to review these materials.

We'll be back in about five minutes.

(Recess taken.)

**THE COURT:**  All right, the Court has had an

opportunity to review the defense's latest submission.

Do you wish to have this filed?

**MR. ZWEIBACK:**  Yes, Your Honor.  We can file it later this afternoon, and we request that it would be filed under seal.

**THE COURT:**  All right, that's fine.

All right, this matter is before the Court for the pronouncement of judgment and imposition of sentence.

Is there any reason why judgment and sentence should not be imposed at this time?

**MR. ZWEIBACK:**  No, Your Honor.

**THE COURT:**  The Court is contemplating imposing several conditions of supervised release.  I want to give you notice of those conditions so that if you have any objections, we can discuss them now, or I'll put the matter over to allow you to file written objections.

And those conditions are as follows:  The defendant shall comply with the Rules and Regulations of the United States Probation Office, General Order 05-02, and General Order 01-05, including the three special conditions delineated in General Order 01-05.

During the period of community supervision the defendant shall pay the special assessment and any Court ordered financial obligations in accordance with the judgment's orders pertaining to such pavement.

The defendant shall cooperate in the collection of a DNA sample.

And the defendant shall apply all moneys received from income tax refunds to any outstanding Court ordered financial obligation.  In addition, the defendant shall apply all moneys received from lottery winnings, inheritance, judgments, and any anticipated or unexpected financial gains to any outstanding Court ordered financial obligation.

Do you wish to confer with your client?

**MR. ZWEIBACK:**  Yes, Your Honor, just briefly.

(Discussion off the record.)

**MR. ZWEIBACK:**  We're ready to proceed, Your Honor.

**THE COURT:**  Do you have any objections to any of those conditions?

**MR. ZWEIBACK:**  No, Your Honor.

**THE COURT:**  Was the Presentence Report timely disclosed to both parties?

**MR. ZWEIBACK:**  Yes, Your Honor.

**MR. FOX:**  Yes, Your Honor.

**THE COURT:**  The Court has received, read and considered the Presentence Report, an addendum to the Presentence Report, the parties' sentencing memoranda, and numerous letters received on behalf of the defendant.

Apart from any issues raised in your

9

sentencing memoranda, which we'll review shortly, is the Presentence Report factually accurate?  Do you have any objections, corrections or additions?

             **MR. ZWEIBACK:**  None, Your Honor, other than the objection we noted which was addressed in the addendum to the PSR which we'll submit on.

             **THE COURT:**  All right.  Does the government wish to be heard on the defense's objection to a two-level enhancements for an abuse of a position of trust?

             **MR. FOX:**  No, Your Honor.  We agree with the defense, and it doesn't matter to the ultimate Guideline range.  So we don't think that it is important.  But I -- I --

                        If you want more argument, I'll explain that.

                        I think he did not abuse his position of trust in lying to us because it didn't help him facilitate his offense.  His position did not help him do that.

                        I think the only argument for how it possibly could have is if Mr. Baca did not believe people under him would explain that he was evolved in a corrupt scheme, and he felt by lying to us that it was something that he could further conceal.

                        But I -- again, I don't think that -- while it's aggravating that he had a position he was in, I don't think that it should be applied in this case.

Ex. 1, Pg. 14

10

THE COURT:  The Ninth Circuit held that the public, including fellow law enforcement officials, expect that police officers will not violate the law that they're charged with enforcing; and that at least for purposes of that interview, the defendant took advantage of that trust to attempt to adversely influence the government's investigation.

MR. FOX:  Your Honor, my point is, I don't think it's a per se application.  I think it needs to be:  Did his position as a law enforcement officer help conceal the scheme or facilitate his scheme, and I -- I don't think it did with the *false statement*.  That's my point.

And, again, it does not matter ultimately to the results in this case, in my opinion, because you can consider his position as a 3553(a) factor, which you will, I know; but it is something that under the Guidelines -- his Guideline range is going to be zero to six, regardless.

THE COURT:  All right.

All right, the Court is going to decline to apply the enhancement in this case, and I agree with the parties.  Ultimately it's not going to make a difference after the calculation of the Guidelines.

Has the defendant and both counsel read the Presentence Report and the addendum to the Presentence Report?

UNITED STATES DISTRICT COURT

Ex. 1, Pg. 15

11

MR. ZWEIBACK:  Yes, Your Honor.

MR. FOX:  Yes, Your Honor.

THE COURT:  And has the probation office correctly analyzed and applied the Guidelines in this case?

MR. ZWEIBACK:  We believe they have, Your Honor.

MR. FOX:  Yes, Your Honor.

THE COURT:  Does the defense wish to be heard?

MR. ZWEIBACK:  Yes, Your Honor.

Your Honor, 239 members of the community filed letters in this case, and we wanted to highlight a couple aspects of those letters because we believe that with respect to the issue of the history and characteristics of this my client, that those individuals who have seen my client through various years through his four -- four and a half decades of law enforcement commitment to this community as well as six years of commitment to the United States Marine Corps, that they have a very unique picture into what my client is all about as an individual.

3553 allows the Court to consider history and characteristics in order to get a complete assessment of an individual as they stand before this Court and as they are sentenced before this Court in order to give a complete understanding as to what the individual has been with respect to his community relationships and his ties to the community and what type of person he's been.

UNITED STATES DISTRICT COURT

Ex. 1, Pg. 16

12

It's not just about the offense conduct as the Court knows and as the government knows, it's also about what he's done outside of the particular offense that he is convicted of and also outside of this courthouse.

People like Eden Stein spoke to you and talked about the fact that:  *Lee worked thousands of volunteer hours to inspire people to come together.*

*His community work has inspired at risk youth to change their lives and stop taking drugs.*

And this was from Eden Stein, a community organizer.

Mr. Baca -- a quote from a letter from a retired sergeant:  *"Mr. Baca"* -- *"Because of Mr. Baca, I would still be living a productive life"* -- [sic] -- *"but unfulfilled, looking for my purpose for being on the planet."*

This was a retired Sergeant Clark Terry who talked about the inspiration that he found through the Education Based Incarceration program which inspired him to go out and to create his own program which was known as the Emerging Leader Academy in June of 2009.

Now, the government has tried to say that many of these letters are simply individuals who benefitted from my client's position as a politician, but they're much much more than that.  They're individuals who have had unique experiences with my client, who have seen some of the very

UNITED STATES DISTRICT COURT

Ex. 1, Pg. 17

good things that he has done and are trying to come before this Court and speak to you about very specific personal moments in their lives where they have seen my client do tremendous good and try to live a life that benefits the community.

Others have spoken to you, and I just want to highlight a couple of those letters as well, which I think are important.

For example, John Sullivan and Cameron Saul, both former inmates, individuals who thought that their lives couldn't change, but then once they were part of the Education Based Incarceration program while they were in prison and through the mentorship with my client felt that now that they had an opportunity to go out into the community and to become successful.

In Mr. Sullivan's case, he was released from prison, went to school, and now runs a successful business.

In Mr. Saul's case, after spending seven and a half years in prison, he went out into the community and now works as an EBI facilitator.

And then there are things that are outside the spotlight, which I think are extremely important that shows very much the character of the individual who stands here today, people like Robert Hernandez who met my client while he was working in the Community Resources Division, as

my client was working there.

Mr. Hernandez was a young man, a teenager who lived in the Maravilla Projects and was on a path to destruction. He was someone who didn't think he was going to live past 19. And he indicated in his letter to you that through my client's mentorship and guidance not only did he survive past 19, but he went to high school, he went to college, and he now runs a very successful business at the age of 40.

Again, people who are ordinary members of the community.

Rita Hall, a retired sergeant who recalls wanting to bring 150 students from Compton, many of them had never been outside of the community to the Alvin Ailey Dance concert, but she had no way to get them there. So my client arranged for and paid for school buses to get them to the concert and back from the concert.

Barbara Simmons at the age of 87 felt it was important enough to write about her experiences on the -- on the clergy council to handwrite a letter to express her gratitude to the Court and to my client for the experience of participating in this council which tried to bridge the gap between law enforcement, the FAPE community, and then ultimately to the community at large.

The letters speak to you on so many different

levels. Retired teachers, people who are ordinary individuals who run businesses, people who -- who are -- you know, who have been homeless, who were homeless advocates, people who are in churches throughout the county, who are in the First AME Church, some of the -- some of the Muslims community churches, some of the Christian churches. All of them describe this individual as tireless in terms of his outreach to them to try to bridge the gap so that the community has a better understanding as to their role not only with respect to policing but the fact that they wanted to help when it came to trying to deal with issues such as homelessness and homeless inmates.

So, my client has done a lot with respect to -- through his entire career in law enforcement, not just the time when he was sheriff but also from the very beginning when he was just simply a patrolman, all the way through the process of him going up the ranks of the sheriff's department.

The government has tried to characterize my client as sharp -- as someone who has sharp contrast in terms of behavior; but the fact is, this is -- the letters demonstrate -- that there really is no sharp contrast, that this is a man who, but for the mistake that we're talking about today and for which he is ultimately going to be sentenced -- and he will talk to you later on and express his

extreme remorse for that -- that he has tried to do the best that he can in terms of trying to become someone who at least reaches out to various different members of the community in all different aspects of the community to try to make the place that we live much better.

Now, let me address sort of an unfortunate point in another factor that the Court has to consider which is the issue of his medical condition, and I must say that it's really sort of gut-wrenching to be up here to talk about this, especially with this man standing right next to me, in terms of discussing the future and where he is and what the future will be.

The government, and I -- I don't use this word lightly because I think that it's very, very important to emphasis this point. I -- I think that there is almost a cruelness in the argument about my client in terms of demanding jail time from this individual, and I -- based upon the history characteristics alone but talking now about the situation with respect to his health.

The fact of the matter is, that two significant experts, Dr. Helena Cui and Dr. Kranick at Northwestern -- Dr. Cui at USC, Dr. Kranick in Northwestern -- all agree, they all agree that he has it, and they agree, based upon the fact that he has had CAT scans, that he has had MRIs, that he has had neurological testing

done by a neurological psychologists; but those tests are just part of a whole history of tests that also include lumbar punctures, things that the government had wanted to be done and retested in order to confirm his status.  We cooperated with them, and we cooperated with them at every turn with respect to the diagnosis of his illness.

During that process each one of the experts agreed that not only does he have it, but they also agree on what is self-evident, which is, it's neurological, it's progressive, it affects people in much much different ways, not all people are affected the same; and that when they talk about the years left, they talk about averages.  Some people have more than five years, other people have less than five years.

Now, when I talk about these things, sometimes my client gets upset at me because he looks at this as a challenge.  This is all a challenge to him.  It's something that he really very much believes that he can continue in some ways to lead some form of normal life, but he understands that that normalcy is going to change.

Now, the government has said in its papers and emphasized in its papers that while he leads his daily life -- I mean, it's -- he goes to lunch, he puts on his suit, and he comes to court, and he drives.  But what they don't see and what they ignore, really, is what is present in

Ex. 1, Pg. 22

18

Ms. Baca's letter, which I think is really a very important letter, to this Court.

Because what Ms. Baca's letter says, and what most people who have been around this disease like I have, where I have it in my own family, with a mother-in-law, understand, is that, it's the people who are closest to us who see the effects of a disease like this.

And what did she say to this Court and to the government?  Which the government wants to ignore that letter.  She says that there are all kinds of lost keys, and there have been lost keys for a variety of months now; that he loses his ATM cards, that he forgets his appointments, that he becomes frustrated when he can't remember his friends' names, that there are certain very basic things of recall that we're talking about in recent past that he is unable to recall.

If you asked him about last week, he may have a very great difficulty in giving you an answer.  If you ask him about six years from now -- or before, he may be able to give you an answer in great detail.  And the reason is, as the experts will tell you, is because six years ago when he was fine, the recorder that was in his brain -- to make a very simple -- simplified version of the argument -- well, that was fine.  And so when the information came in fine, it was processed fine.  That's still there.

Ex. 1, Pg. 23

19

But now that the neurological disease has progressed, it's now a situation where sometimes his ability to recall very simple facts that occurred in a very short period of time are negatively affected and cannot be recalled because the recorder is now broken.

Now, the government is going to stand up and say:  Well, he gave a speech at the temple, and he also gave a speech a couple of days ago; and that shows that his daily life is fine.

But let me explain that.  No. 1, it doesn't mean that he can't give a speech.  It also doesn't means that the speech necessarily, if you've looked at it, for the length of time that he spoke, it depends on the content.  If it's something that he knew about for a long period of time, he can wax on about it; but if it's something very recent in his past, very -- very much significant about how he prepares for the day, he's not going to have that same degree of recollection.

So, that is really not a factor; and if they knew anything about the disease, they would know that this is something that is very typically in these types of case.

So, while we've talked about the disease, and the fact that this is something that is progressive and degenerative, let's talk about the issue of incarceration, because I think that that's where that issue really firmly

Ex. 1, Pg. 24

20

sort of sits in terms of evaluating whether or not it's

appropriate to put him into a federal prison facility.

They submitted on Thursday of last week a

declaration from an individual by the name a Dr. Pelton, and

Dr. Pelton is a doctor with a Bureau of Prisons; and it was

in response to our declaration from Mr. Wise who had spent

time as a Bureau of Prisons medical facility doctor.

Their declaration from Dr. Pelton said,

essentially, these few things.  It said:  We think it's

likely that he will get Donepezil, which is a medication for

Alzheimer's, that it doesn't diminish the progression of the

disease, but it gives sort of enhanced functionality to those

people who take it in the very early stages, but it's an

important medication.  They said "very likely."

When they were talking about the specific

facts and statistics, they acknowledged, number one, it's

non-formulary, which means it needs to be specially ordered

or specially prescribed.  And they said that there are 300

inmates in the entire Bureau of Prisons that have cognitive

impairments worse than my client.

They said 25 of those individuals do, in

fact, get Donepezil.  Well, those statistics on their face,

while interesting, really don't tell the whole story, because

the fact of the matter is that Dr. Pelton is simply a doctor

in the western region.  There are five other regions in the

Ex. 1, Pg. 25

21

Bureau of Prisons.  We don't know how those doctors will react if in fact he ends up in another region of the Bureau of Prisons, and we don't know if he'll get it.

We also don't know if he would get that medication prescribed in the time period within which he would be a prisoner of the Bureau of Prisons.

And so we really know very little about the quality of the information that is provided.  We don't have anything from any number one chain-of-command doctor that says:  Oh, yeah, he's going to get the type of care that he needs to get.

There's another factor about incarcerating someone at his level, and that is, number one, as Mr. Wise said, it is a rule-based system.  We know that his condition has declined.  Rules are going to be difficult at times for him to follow.

Secondly, we also know that because rules will be difficult to follow at times, that that makes him vulnerable, vulnerable to staff because they get angry, or he gets frustrated, or other inmates who may get frustrated with him if in fact he can't follow the rules outside of the Bureau of Prisons but just the normal rules of etiquette within a prison environment.  So he becomes vulnerable in that way as a result of this disease.

And another factor that can't be ignored,

Ex. 1, Pg. 26

which is, my client is one of the highest ranking members of any law enforcement department to ever be incarcerated within the Bureau of Prisons.

Now, the government says:  Oh, well, we had Martha Stewart, we had this person, we had, you know, the Judi Chase, or whatever, from Real Housewives, and we're able to handle that; but the fact of the matter is, that those are celebrities, okay?

My client is a law enforcement officer, and this particular environment of law enforcement officers facing danger every single day, it would put him at a significantly increased vulnerability in any prison population.  So, this is not someone, based upon his medical situation or his current status, that should be placed in, in incarcerated position.

I just want to conclude by talking about a couple of other factors that I think are important for the Court's consideration, and then I'll hand this over to my client and Mr. Fox.

I don't really think it's important for me to address, unless the Court believes it's important to address the issue of disparity.  I think it's been well briefed within the various different briefings that have gone on by both the defense and the government.

I will say this, though, which I think is

23

important to just point out.  The defense's view is that this
case really does stand alone.  It's not a case that needs to
be balanced against other cases in terms of figuring where in
the matrix of sentencing with respect to the other LA
sheriffs' cases this should fit.

I think that the factors in this case are
unique.  I think the factors are unique not only from the
standpoint of the medical condition, not only from the
standpoint of the community support but also because of the
fact that my client accepted responsibility early.  He came
in, he pled to an Information, he didn't put the government
to its burden.

I think he's the only one with the exception,
maybe, of Mr. Carey who didn't, you know, decided to go the
route -- everyone else went to trial.  I noticed that Mr.
Tanaka didn't even want to make a statement when he was
before you a couple of weeks ago, and that's not my client.
My client is accepting responsibility, and he's going to
accept responsibility here.

So, I think that when you look at the nature
of the conduct, when you look at the nature of the history
and characteristics, and when you look at the medical
information, it indicates that this is an individual who,
number one, is different fundamentally from all of the other
people who have come before you.

Ex. 1, Pg. 28

24

Now, others will say:  Well, he's the head organization.  Yes.  But when it comes down to it, he's here because of false statements.  The government has conceded, the defense has argued, this is not the obstruction case.  So, we don't believe that disparity should be a factor in arguing for some six-month sentence.

And then, finally, I think that it's important to just point out that this is not an individual you're going to see before this Court again, and his statement that he will read to you shortly I think demonstrates his level of remorse, and we would urge this Court not to incarcerate Mr. Baca.

So much more can be done for him, so much more can be done by him for this community that we think he should receive a sentence of probation.

**THE COURT:**  All right, thank you.

Does the government wish to be heard?

**MR. FOX:**  Yes, Your Honor.  Thank you.

No matter what Your Honor does, both you and we will either be criticized for being too harsh or too lenient.  That's very clear.  There are many people out there that feel that the zero to six-month range is too harsh, there are -- because of Mr. Baca's condition and who he was.

There are many people out there who think that it was way too lenient because of all the other people

Ex. 1, Pg. 29

who were sentenced.

And despite Mr. Zweiback's comments, this is not entirely all about Mr. Baca.  This is about justice entirely.  That's really what it's about.  Mr. Baca and what happens with this sentence.

There is going to be an impact on deterrence; there is going to be an impact on --

And when I say deterrence, I'm talking about general deterrence, not specific deterrence, of all the people who are paying attention to this case, all the people who might find themselves in a situation like Mr. Baca was in, where things beneath him occurred that were certainly corrupt, and whether they are going to be held accountable for telling the truth or not when asked about that conduct.

And there is also an issue with unwarranted disparity of course.  And Mr. Baca, while I agree with Mr. Zweiback, he does stand on his own with respect to disparity, his lies did not occur in a vacuum.

He lied about his role, his involvement, his knowledge of things that happened from August to September of 2011 that many juries have found to be corrupt, obstructive. And he did so in order to either hide his involvement in that conspiracy from a criminal standpoint or to save political face so that when it became public what happened, it didn't fall on Mr. Baca.

Ex. 1, Pg. 30

26

That is not what a leader does; that's what a coward does. And that's what Mr. Baca did when he lied to us during the interview.

In doing so, in lying to us, he hindered the ability for justice for the U.S. Attorney's Office, for the Court system, for the FBI, to determine the truth of what occurred, the entire truth of what occurred.

And we've been very clear throughout, we think that Mr. Tanaka was the person who was most responsible for this conduct, that Mr. Baca's lies did not occur in a vacuum.

Mr. Baca also -- he's got all these letters of support, but it's very clear too that he put people in charge of the sheriff's department, various areas of responsibility that led to a culture of unfortunate corruption in aspects during his tenure as sheriff. So those are the aggravating circumstances.

There are some mitigating circumstances as well. You know, we believe that the other participants, their obstruction of justice was clear, their intent was clear. It's not as clear with respect to Mr. Baca.

As I mentioned in the papers, the quality and quantity of evidence is very different with respect to Mr. Baca compared to everybody else with respect to obstruction of justice.

Ex. 1, Pg. 31

He pled guilty to the most readily provable offense, which was the 1001 charge against him, and the Guideline Range was zero to six months, which is very different than the other people.

I do think it's significant that he has accepted responsibility.  He is somebody who is the only person who's agreed to an Information, waived his constitutional rights to indictment; and as Mr. Zweiback points out, he's one of two people who have pled guilty to an offense in this general matter.  So, I think that that is significant.

Mr. Zweiback hinted that Mr. Baca is going to allocute.  No other defendant before you has allocated.  No one else has accepted responsibility in court.  They remained defiant through the entire process.

And I do think -- and we were aware of those during our pre-indictment discussions, pre-information discussions, his diagnosis and prognosis is very significant, and we would not be in a position we were in in recommending this -- this agreement to Your Honor if it wasn't for that. That's -- that's all accounted for in this agreement.

We think that justice -- I don't want to say "requires."  That's too strong of a word.  I think that six months -- a six-month sentence is appropriate for justice in this case, Your Honor.

28

And unless you have any questions, I will sit down.

Thank you.

THE COURT:  Is the government aware of whether there are any victims who wish to address the Court?

MR. FOX:  There are not, Your Honor.

THE COURT:  Does the defendant wish to be heard?

MR. ZWEIBACK:  He does, Your Honor.

THE DEFENDANT:  Good morning, Your Honor.

THE COURT:  Good morning.

THE DEFENDANT:  Your Honor, thank you for your time and consideration.

I appreciate this significant task you have in presiding over my case.  I am profoundly regretful you have had to give your attention to both my case and the other cases associated with the Sheriff's Department.

I stand here today humble and filled with remorse for my mistakes as the Sheriff of Los Angeles County.

I have had the great honor of serving the sheriff's department for close to 50 years and leading it for 16.  I was trusted by the people within the department and this county to provide leadership.  I valued and honored that trust beyond measure.  I took that task seriously.

My life was dedicated in total to the community of Los Angeles, our great nation, and law

Ex. 1, Pg. 33

enforcement community post 911.  It is my entire life's work.

I sought to improve the lives of the disenfranchised and disadvantaged.  I worked to serve the entire public, including inmates, in the jail system and sheriff deputies as well.

The Education Based Incarceration program that I started and guided many inmates to better lives after their jail sentences were complete, to me, I know that I improved their lives, and that makes me very happy.

But as we are here today, I know that I failed.  I have always prided myself in cooperation and leadership.  Yet, in the investigation into the sheriff's department I did not lead; instead, I delegated the responsibility for this important duty, and I should not have.  Moreover, I should have stood as the department's leader and taken control of the investigation.  If I could do this again, I know I would do so.

I have always sought to overcome any challenge to help the community be stronger.  Now with this diagnosis of Alzheimer's, I have an additional challenge ahead of me, perhaps the most difficult of my life.

I know that my family, friends and public are with me as I face this challenge.  I believe that I've always sought to overcome any challenge, Your Honor, to help the community become stronger.  And I also felt that my family

Ex. 1, Pg. 34

and friends and the public are going to help me with this, and I want to thank them.

Your Honor, you will sentence me today as the man I am now. I'm no longer the sheriff or a public official. I remain committed, however, to continue to get back to the community of Los Angeles for as long as I can despite my current challenges. I'm only hopeful that in sentencing, Your Honor, you will permit me to do so.

Thank you.

**THE COURT:** Thank you.

The Court adopts the factual findings and the Guideline applications set forth in the Presentence Report, finds that the Advisory Guidelines stops at total offense level of 4, a Criminal History Category of 1, which results in Advisory Sentencing Guideline range of zero to six months of incarceration.

The Court recognizes its discretion to depart in this case based on various factors cited by the defense either individually or in combination; however, the Court elects not to exercise this discretion and depart in this case.

This is a case in which the parties have entered into a binding plea agreement pursuant to Rule 11(c)(1)(C). The Court may accept the Agreement or reject it.

The Court is not obligated to accept a plea agreement and has discretion to reject those which are not reasonable, fair, and meet the other statutory goals of sentencing.

In this case if the Court accepts the agreement, the parties have agreed that the appropriate sentence would be in a range from probation up to six months of imprisonment.

Does either counsel wish to be heard on the mathematical calculation of the Guidelines?

**MR. FOX:**  No, Your Honor.

**MR. ZWEIBACK:**  No, Your Honor.

**THE COURT:**  I'll turn to the 3553 factors.

It's not the Court's job to rewrite the Plea Agreement or to renegotiate its terms.

Rule 11(c)(1)(C) permits the defendant and the government to agree that a specific sentence is appropriate, but that agreement does not discharge the Court's independent obligation to exercise its discretion which includes the Court's obligation to examine the sufficiency of the Agreement in light of the statutory goals of sentencing.

In other words, the Court has discretion to accept a Plea Agreement that is binding where it's reasonable, fair, and meets the statutory goals of

32

sentencing.  If the Court rejects the Agreement, the Court must give the defendant an opportunity to withdraw his guilty plea.

I have reviewed the Plea Agreement to determine whether it's reasonable, fair, and meets the other statutory goals of sentencing.  In making that determination, I have considered the facts, the sentences imposed in related cases, the terms of the Plea Agreement, the Guidelines, the memoranda submitted by the parties, the arguments of counsel, letters received on behalf of the defendant, and statutory sentencing factors.

In determining whether to accept the Rule 11(c)(1)(C) Plea Agreement, I must examine whether the agreed upon sentence, probation up to six months of imprisonment, is reasonable and fair.

The offense level for false statement, that is Section 2B1.1 drives the defendant's sentencing range. Under Section 2B1.1, the base offense level is 6.

In this case the defendant received a two-level reduction for Acceptance of Responsibility yielding a total offense level of 4.  Because the defendant's criminal history score is zero, his guideline range is zero to six months.

The defendant's Plea Agreement provides for a sentencing range between probation and six months and

therefore falls within the Guideline range.

But the *false statement* offense level or the Guideline range chosen by the parties, that is, one that is associated with theft or monetary offenses under Section 2B1.1 suffers from several problems.  First, is that it does not fairly measure this defendant's culpability at least when applied to defendants like this defendant's whose crime caused significant nonmonetary harm.

Under Section 2B1.1, a defendant's offense level is predominantly a function of the monetary loss caused by the defendant's theft or false statement; specifically, the schedule in Section 2B1.1B1 provides for offense level enhancements of up to 30 points, depending solely on the monetary loss caused by a defendant.

In a mine-run theft case, this monetary loss schedule will in all likelihood be the only significant metric for defendant's offense conduct.  Yet, monetary loss is often a poor proxy for *culpability*.

In a case like this one, Section 2B1.1 does not adequately account for a defendant's blameworthiness. The problem with pegging this defendant's offense level to monetary loss in a case like this one where there is substantial nonmonetary harm is that it misvalues the harm caused by the defendant's criminal conduct.  In other words, Section 2B1.1 reduces a sentencing range, in the Court's

34

judgment, that's too low.

In this case, Section 2B1.1 underappreciates this defendant's culpability.  Because there is no monetary loss evolved, this defendant received no dollar value related enhancement under Section 2B1.1B1; and as a result he received no enhancements related to the nonmonetary harm he caused by participating, in the Court's judgment, in a broad ranging conspiracy to obstruct justice that included hiding an inmate from the grand jury, altering records, witness tampering and threatening an FBI agent.

Thus, under the circumstances, a sentencing range of zero to six months is predicated on factors that do not incorporate the full extent of the harm caused in this case.

This observation is consistent with the Application Notes to Section 2B1.1 which acknowledge that there may be cases in which the offense level determined under this Guideline substantially understates the seriousness of the offense such as where, quote:  "*The offense caused a risk, substantial nonmonetary harm.*"

Indeed, the notes provided that in cases involving substantial nonmonetary harm, the *theft* guidelines contemplates an upward departure may be warranted.

But given that the defendant's Plea Agreement provides for a range between probation and six months of

imprisonment, the parties clearly did not factor in such an upward departure.

Because the parties did not factor in an upward adjustment and because the agreed upon offense level does not factor in the nonmonetary harm caused by this defendant's criminal conduct, I find that the Guideline agreed upon by the parties fails to fairly measure this defendant's culpability.

Section 3553(a) allows the Court to consider the nature and circumstances of the defendant's offense in this case, including the nonmonetary harm caused by his conduct.

One of the virtues of Section 3553 is that it can account for what the Guidelines ignore.  Turning to Section 3553, the Court must ensure that if a defendant's sentence is sufficient but not greater than necessary to comply with the purpose set forth in the statutory sentencing factors.

The nature and circumstances of the criminal conduct reveal that this conspiracy caused significant nonmonetary harm.  Because of this conspiracy, an authorized federal grand jury investigation into the corruption and the physical abuse of inmates was derailed.  Steps were taken by the defendant's subordinates to hide an FBI informant from the grand jury, records were destroyed and altered, including

a federal grand jury subpoena, deputies were taught how to cover up abuses committed by their fellow deputies, how to look the other way, how to shield the department from embarrassment, all of which led to fostering an us-versus-them mentality, an unwritten code that taught deputies that when an inmate dared to attempt to harm a deputy, the deputies were taught to respond with enough violence to send that inmate to the hospital.

While the Guidelines chosen by the parties places no value on this type of harm, I do.

It's one thing to lie to an AUSA; it's another thing entirely, as the evidence has shown, where the chief law enforcement officer of the County of Los Angeles is involved in a wide-ranging conspiracy to cover up abuse and corruption occurring in the Men's Central Jail.

While there is an argument that the need to provide the defendant with medical care in the most effective manner and the need to protect the public may favor the agreed upon sentence, and certainly his good deeds favor the agreed upon sentence, in the Court's judgment those factors are greatly outweighed by the other sentencing factors because there is nothing about a sentence of zero to six months that adequately accounts for that nonmonetary harm caused by this defendant.

Under the circumstances of this case, to

accept the parties' Plea Agreement would trivialize the seriousness of the offenses, the defendant's lack of respect for the rule of law, the need to promote respect for the law, the need for a just punishment, the need to deter others, to avoid unwarranted sentencing disparities, given the sentences that this Court has given to this defendant's subordinates, the Court also finds that to impose the parties' agreed upon sentence would not address the gross abuse of the public's trust or would be in public's interest, including the need to restore the public's confidence in law enforcement and the criminal justice system.

Thus, this Court concludes that the defendant's Rule 11(c)(1)(C) Plea Agreement is not reasonable, fair, nor does it meet the statutory goals of sentencing given the nature and circumstances of the defendant's conduct.

Thus the Court rejects the parties' Rule 11(c)(1)(C) Plea Agreement.

The Court has exercised this discretion and has declined to accept and be bound to the Plea Agreement. Therefore, because this Plea Agreement is a Rule 11(c)(1)(C) agreement, I will give the defendant an opportunity to withdraw his guilty plea; but if the defendant chooses not to withdraw his guilty plea, the Court may then impose a sentence that is more severe than that contemplated by the

parties' agreement.

The Court can continue this matter for counsel to confer with his client about the defendant's options; or if the defendant is prepared to go forward today, we can proceed.

**MR. ZWEIBACK:**  May I have a moment?

**THE COURT:**  Yes.

(Discussion off the record.)

**MR. ZWEIBACK:**  Your Honor, we would request that the matter be continued so that we may confer not only amongst ourselves but with the government.

**THE COURT:**  All right.  Is the government --

How much time would you like?

**MR. ZWEIBACK:**  I think there is travel issues and vacations.  So let me just talk to them.

(Discussion off the record.)

**MR. ZWEIBACK:**  Your Honor, we would request two weeks to reconvene.

**THE COURT:**  How is that date with the government?

**MR. FOX:**  That's fine, Your Honor.

**THE COURT:**  All right, we'll put this matter over until August 1st.

Let me see counsel at sidebar.

(Sidebar conference.)

**THE COURT:**  I'd like to go --

39

If you decide you're going to go forward with the sentencing, I'd like to know that in advance of --

**MR. ZWEIBACK:** Of the 1st.

**THE COURT:** Of the 1st.

**MR. ZWEIBACK:** Okay.

**THE COURT:** When do you think you can --

**MR. ZWEIBACK:** I don't know. I have to speak with Mr. Fox. I'm sure he's going to have to speak with his office. Then I've got to sit down with my client. I would think within a week. Yeah...

**THE COURT:** How is Wednesday or Thursday of the following week?

**MR. ZWEIBACK:** Yeah, that's fine.

**THE COURT:** All right.

(In open court.)

**THE COURT:** Is there anything else?

**MR. ZWEIBACK:** No, Your Honor.

**MR. FOX:** No, Your Honor.

**THE COURT:** All right. Thank you very much.

COURT CLERK: All rise.

(Proceedings concluded at 9:50 a.m.)

(Recess taken.)

40

C E R T I F I C A T E

I hereby certify that the foregoing is a true and correct transcript of the stenographically recorded proceedings in the above matter.

Fees charged for this transcript, less any circuit fee reduction and/or deposit, are in conformance with the regulations of the judicial conference of the United States.


/S/Anne Kielwasser                    07/18/2016

_____        _____
Anne Kielwasser, CRR, RPR, CSR       Date
Official Court Reporter

UNITED STATES DISTRICT COURT        Ex. 1, Pg. 45

1

**/**

/S/Anne [1] - 40:10

**0**

01-05 [2] - 7:20, 7:21
05-02 [1] - 7:19
07/18/2016 [1] - 40:10

**1**

1 [3] - 3:5, 19:10, 30:14
1001 [1] - 27:2
11(c)(1)(C [5] - 31:16, 32:13, 37:13, 37:18, 37:21
11(c)(1)(C) [1] - 30:24
12th [2] - 2:5, 2:14
13th [1] - 2:9
150 [1] - 14:13
16 [1] - 28:21
16-0066 [1] - 3:6
16-0066PA [1] - 1:10
16th [1] - 2:21
18 [2] - 1:17, 3:1
19 [2] - 14:5, 14:7
1st [3] - 38:22, 39:3, 39:4

**2**

2009 [1] - 12:20
2011 [1] - 25:21
2016 [2] - 1:17, 3:1
213 [1] - 1:24
213-576-1000 [1] - 2:22
213-576-1100 [1] - 2:22
213-894-0141 [2] - 2:6, 2:15
213-894-0284 [1] - 2:6
213-894-3541 [1] - 2:10
213-894-4849 [1] - 2:15
213-894-6436 [1] - 2:11
239 [1] - 11:9
25 [1] - 20:21
2B1.1 [8] - 32:17, 32:18, 33:5, 33:9, 33:19, 33:25, 34:2, 34:16
2B1.1B1 [2] - 33:12,

34:5

**3**

30 [1] - 33:13
300 [1] - 20:18
312 [4] - 1:23, 2:5, 2:9, 2:14
333 [1] - 2:21
3553 [4] - 11:19, 31:13, 35:13, 35:15
3553(a [2] - 10:15, 35:9

**4**

4 [2] - 30:14, 32:21
40 [1] - 14:9
432 [1] - 1:23
4:00 [1] - 4:18

**5**

50 [1] - 28:20

**6**

6 [1] - 32:18

**8**

87 [1] - 14:18
894-2969 [1] - 1:24
8:30 [2] - 1:18, 3:1

**9**

90012 [4] - 1:24, 2:5, 2:10, 2:14
90071 [1] - 2:21
911 [1] - 29:1
9:50 [1] - 39:21

**A**

A.M [2] - 1:18, 3:1
a.m [1] - 39:21
ability [4] - 5:5, 5:12, 19:2, 26:5
able [3] - 4:10, 18:19, 22:6
abuse [5] - 9:9, 9:15, 35:23, 36:14, 37:8
abuses [1] - 36:2
Academy [1] - 12:20

accept [7] - 23:19, 30:24, 31:1, 31:24, 32:12, 37:1, 37:20
Acceptance [1] - 32:20
accepted [3] - 23:10, 27:6, 27:14
accepting [1] - 23:18
accepts [1] - 31:5
accordance [1] - 7:24
account [2] - 33:20, 35:14
accountable [1] - 25:13
accounted [1] - 27:21
accounts [1] - 36:23
accurate [2] - 5:21, 9:2
acknowledge [1] - 34:16
acknowledged [1] - 20:16
addendum [3] - 8:22, 9:5, 10:24
addition [1] - 8:5
additional [2] - 6:20, 29:20
additions [1] - 9:3
address [6] - 3:21, 16:6, 22:21, 28:5, 37:8
addressed [1] - 9:5
adequately [2] - 33:20, 36:23
adjustment [1] - 35:4
admitted [1] - 5:9
adopts [1] - 30:11
advance [1] - 39:2
advantage [1] - 10:5
adversely [1] - 10:6
advise [1] - 4:5
Advisory [2] - 30:13, 30:15
advocates [1] - 15:3
affected [2] - 17:11, 19:4
affects [1] - 17:10
aftermath [1] - 4:3
afternoon [4] - 3:25, 4:2, 4:10, 7:4
age [2] - 14:9, 14:18
agent [1] - 34:10
aggravating [2] - 9:24, 26:17
ago [3] - 18:21, 19:8, 23:17
agree [8] - 9:10, 10:20, 16:23, 16:24, 17:8, 25:16, 31:17
agreed [9] - 17:8,

27:7, 31:6, 32:14, 35:4, 35:7, 36:19, 36:20, 37:7
agreement [9] - 5:24, 27:20, 27:21, 30:23, 31:2, 31:6, 31:18, 37:22, 38:1
Agreement [15] - 30:24, 31:15, 31:21, 31:24, 32:1, 32:4, 32:8, 32:13, 32:24, 34:24, 37:1, 37:13, 37:18, 37:20, 37:21
ahead [2] - 6:6, 29:21
Ailey [1] - 14:14
aKtranscripts.com [1] - 1:25
allocated [1] - 27:13
allocute [1] - 27:13
allow [1] - 7:16
allows [2] - 11:19, 35:9
almost [1] - 16:15
alone [2] - 16:18, 23:2
Alston [1] - 2:20
altered [1] - 35:25
altering [1] - 34:9
Alvin [1] - 14:14
Alzheimer's [2] - 20:11, 29:20
AME [1] - 15:5
AMERICA [1] - 1:8
America [1] - 3:6
analyzed [1] - 11:4
ANDERSON [1] - 1:4
Angeles [10] - 1:17, 1:24, 2:5, 2:10, 2:14, 2:21, 28:18, 28:25, 30:6, 36:13
angry [1] - 21:19
Anne [1] - 40:11
ANNE [1] - 1:22
anne.kielwasser@ gmail.com [1] - 1:25
answer [2] - 18:18, 18:20
anticipated [1] - 8:7
anyway [2] - 4:24, 5:2
apart [1] - 8:25
apologize [1] - 3:24
appearances [1] - 3:7
application [1] - 10:9
Application [1] - 34:16
applications [1] - 30:12
applied [3] - 9:25, 11:4, 33:7
apply [3] - 8:3, 8:6, 10:20

appointments [1] - 18:12
appreciate [1] - 28:13
approach [1] - 3:17
appropriate [4] - 20:2, 27:24, 31:6, 31:18
areas [1] - 26:14
argued [1] - 24:4
arguing [1] - 24:6
argument [6] - 6:14, 9:14, 9:18, 16:16, 18:23, 36:16
arguments [1] - 32:9
arranged [1] - 14:16
aspects [3] - 11:11, 16:4, 26:16
assessment [3] - 4:17, 7:23, 11:20
associated [2] - 28:16, 33:4
ATM [1] - 18:12
attempt [2] - 10:6, 36:6
attention [2] - 25:10, 28:15
attest [1] - 6:9
Attorney [3] - 2:4, 2:8, 2:13
Attorney's [1] - 26:5
August [2] - 25:20, 38:22
AUSA [4] - 2:4, 2:8, 2:13, 36:11
authorized [1] - 35:21
averages [1] - 17:12
avoid [1] - 37:5
aware [4] - 5:14, 5:17, 27:16, 28:4

**B**

Baca [21] - 3:6, 3:15, 4:17, 4:20, 4:23, 5:4, 9:19, 12:12, 12:13, 24:12, 25:3, 25:4, 25:11, 25:16, 25:25, 26:2, 26:12, 26:21, 26:24, 27:12
BACA [1] - 1:12
Baca's [4] - 18:1, 18:3, 24:23, 26:10
balanced [1] - 23:3
Barbara [1] - 14:18
base [1] - 32:18
Based [3] - 12:18, 13:12, 29:6
based [6] - 6:15, 16:17, 16:24, 21:14, 22:13, 30:18

basic [1] - 18:14
became [1] - 25:24
become [3] - 13:15, 16:2, 29:25
becomes [2] - 18:13, 21:23
beginning [1] - 15:15
behalf [4] - 3:11, 3:15, 8:24, 32:10
BEHALF [2] - 2:3, 2:18
behavior [1] - 15:21
believes [2] - 17:18, 22:21
beneath [1] - 25:12
benefits [1] - 13:4
benefitted [1] - 12:22
best [1] - 16:1
better [3] - 15:9, 16:5, 29:7
between [3] - 14:23, 32:25, 34:25
beyond [1] - 28:23
binding [2] - 30:23, 31:24
Bird [1] - 2:20
blameworthiness [1] - 33:20
bound [1] - 37:20
brain [1] - 18:22
Brandon [2] - 2:4, 3:10
brandon.fox@usdoj. gov [1] - 2:7
break [1] - 6:5
bridge [2] - 14:22, 15:8
briefed [1] - 22:22
briefings [1] - 22:23
briefly [1] - 8:11
bring [1] - 14:13
broad [1] - 34:7
broken [1] - 19:5
burden [1] - 23:12
Bureau [8] - 20:5, 20:7, 20:19, 21:1, 21:2, 21:6, 21:22, 22:3
buses [1] - 14:16
business [2] - 13:17, 14:8
businesses [1] - 15:2

**C**

CA [4] - 2:5, 2:10, 2:14, 2:21
calculation [2] - 10:22, 31:10
calendar [1] - 3:5

CALIFORNIA [1] - 1:2
California [2] - 1:17, 1:24
Cameron [1] - 13:9
cannot [1] - 19:4
cards [1] - 18:12
care [2] - 21:10, 36:17
career [1] - 15:14
Carey [1] - 23:14
case [28] - 9:25, 10:14, 10:20, 11:4, 11:10, 13:16, 13:18, 19:21, 23:2, 23:6, 24:4, 25:10, 27:25, 28:14, 28:15, 30:18, 30:21, 30:22, 31:5, 32:19, 33:15, 33:19, 33:22, 34:2, 34:14, 35:11, 36:25
cases [6] - 23:3, 23:5, 28:16, 32:8, 34:17, 34:21
CAT [1] - 16:24
Category [1] - 30:14
caused [11] - 33:8, 33:10, 33:14, 33:24, 34:7, 34:13, 34:20, 35:5, 35:11, 35:20, 36:24
celebrities [1] - 22:8
CENTRAL [1] - 1:2
Central [1] - 36:15
certain [1] - 18:14
certainly [2] - 25:12, 36:19
certify [1] - 40:2
chain [1] - 21:9
chain-of-command [1] - 21:9
challenge [6] - 17:17, 29:19, 29:20, 29:23, 29:24
challenges [1] - 30:7
change [3] - 12:9, 13:11, 17:20
character [1] - 13:23
characteristics [4] - 11:12, 11:20, 16:18, 23:22
characterize [1] - 15:19
charge [2] - 26:14, 27:2
charged [2] - 10:4, 40:5
Chase [1] - 22:6
chief [1] - 36:13
chooses [1] - 37:23
chosen [2] - 33:3, 36:9

Christian [1] - 15:6
Church [1] - 15:5
churches [3] - 15:4, 15:6
circuit [1] - 40:5
Circuit [1] - 10:1
circumstances [7] - 26:17, 26:18, 34:11, 35:10, 35:19, 36:25, 37:15
cited [1] - 30:18
Civil [1] - 2:9
Clark [1] - 12:16
clear [6] - 24:21, 26:8, 26:13, 26:20, 26:21
clearly [1] - 35:1
clergy [1] - 14:20
CLERK [2] - 3:5, 39:20
client [25] - 3:17, 8:10, 11:13, 11:14, 11:18, 12:25, 13:3, 13:13, 13:24, 14:1, 14:15, 14:21, 15:13, 15:20, 16:16, 17:16, 20:20, 22:1, 22:9, 22:19, 23:10, 23:17, 23:18, 38:3, 39:9
client's [2] - 12:23, 14:6
close [1] - 28:20
closest [1] - 18:6
code [1] - 36:5
cognitive [1] - 20:19
Coleman [2] - 2:20, 3:14
collection [1] - 8:2
college [1] - 14:8
combination [1] - 30:19
coming [1] - 3:25
command [1] - 21:9
comments [1] - 25:2
commitment [2] - 11:15, 11:16
committed [2] - 30:5, 36:2
community [25] - 7:22, 11:9, 11:15, 11:24, 12:8, 12:10, 13:5, 13:14, 13:19, 14:11, 14:14, 14:23, 14:24, 15:6, 15:9, 16:3, 16:4, 23:9, 24:14, 28:25, 29:1, 29:19, 29:25, 30:6
Community [1] - 13:25
compared [1] - 26:24
complete [3] - 11:20, 11:22, 29:8

completely [1] - 5:21
comply [2] - 7:18, 35:17
component [1] - 5:9
Compton [1] - 14:13
conceal [2] - 9:22, 10:10
conceded [1] - 24:3
concert [3] - 14:15, 14:17
conclude [1] - 22:16
concluded [1] - 39:21
concludes [1] - 37:12
concurrence [1] - 6:15
condition [5] - 4:4, 16:8, 21:14, 23:8, 24:23
conditions [5] - 7:13, 7:14, 7:17, 7:20, 8:15
conduct [10] - 12:1, 23:21, 25:14, 26:10, 33:17, 33:24, 35:6, 35:12, 35:20, 37:16
confer [3] - 8:10, 38:3, 38:10
conference [3] - 3:23, 38:24, 40:7
confidence [1] - 37:10
confirm [1] - 17:4
conformance [1] - 40:6
consider [5] - 5:11, 10:15, 11:19, 16:7, 35:9
consideration [2] - 22:18, 28:12
considered [2] - 8:22, 32:7
consistent [1] - 34:15
conspiracy [5] - 25:23, 34:8, 35:20, 35:21, 36:14
constitutional [1] - 27:8
contemplated [1] - 37:25
contemplates [1] - 34:23
contemplating [1] - 7:12
content [1] - 19:13
continue [3] - 17:19, 30:5, 38:2
continued [1] - 38:10
contrast [2] - 15:20, 15:22
control [1] - 29:16
convicted [1] - 12:4
cooperate [1] - 8:1

cooperated [2] - 17:5
cooperation [1] - 29:11
Corps [1] - 11:17
correct [2] - 6:2, 40:2
corrections [1] - 9:3
correctly [1] - 11:3
corrupt [3] - 9:20, 25:13, 25:21
corruption [3] - 26:16, 35:22, 36:15
Corruption [1] - 2:9
council [2] - 14:20, 14:22
Counsel [1] - 3:7
counsel [8] - 4:8, 4:19, 4:23, 10:23, 31:9, 32:9, 38:3, 38:23
counted [1] - 5:20
County [2] - 28:18, 36:13
county [2] - 15:4, 28:22
couple [5] - 11:11, 13:7, 19:8, 22:17, 23:17
course [1] - 25:16
court [4] - 6:18, 17:24, 27:14, 39:15
COURT [37] - 1:1, 3:5, 3:12, 3:16, 3:22, 6:3, 6:17, 6:19, 6:25, 7:6, 7:12, 8:14, 8:17, 8:21, 9:7, 10:1, 10:18, 11:3, 11:7, 24:16, 28:4, 28:7, 28:10, 30:10, 31:13, 38:7, 38:12, 38:19, 38:21, 38:25, 39:4, 39:6, 39:11, 39:14, 39:16, 39:19, 39:20
Court [45] - 1:23, 4:5, 4:7, 6:19, 6:25, 7:7, 7:12, 7:23, 8:4, 8:8, 8:21, 10:19, 11:19, 11:21, 11:22, 12:2, 13:2, 14:21, 16:7, 18:2, 18:8, 22:21, 24:9, 24:12, 26:6, 28:5, 30:11, 30:17, 30:19, 30:24, 31:1, 31:5, 31:23, 32:1, 35:9, 35:15, 37:6, 37:7, 37:12, 37:17, 37:19, 37:24, 38:2, 40:11
Court's [7] - 22:18, 31:14, 31:19, 31:20, 33:25, 34:7, 36:20

3

**courthouse** [1] - 12:4
**cover** [2] - 36:2, 36:14
**coward** [1] - 26:2
**CR** [2] - 1:10, 3:6
**create** [1] - 12:19
**crime** [1] - 33:7
**Crimes** [1] - 2:13
**criminal** [6] - 25:23, 32:21, 33:24, 35:6, 35:19, 37:11
**Criminal** [1] - 30:14
**critical** [1] - 5:9
**criticized** [1] - 24:20
**CRR** [2] - 1:22, 40:11
**cruelness** [1] - 16:16
**CSR** [2] - 1:22, 40:11
**Cui** [2] - 16:21, 16:22
**culpability** [4] - 33:6, 33:18, 34:3, 35:8
**culture** [1] - 26:15
**current** [2] - 22:14, 30:7

### D

**daily** [3] - 5:7, 17:22, 19:8
**Dance** [1] - 14:14
**danger** [1] - 22:11
**dared** [1] - 36:6
**Date** [1] - 40:11
**date** [1] - 38:19
**days** [1] - 19:8
**deal** [1] - 15:11
**decades** [1] - 11:15
**decide** [1] - 39:1
**decided** [1] - 23:14
**declaration** [3] - 20:4, 20:6, 20:8
**decline** [1] - 10:19
**declined** [3] - 4:5, 21:15, 37:20
**dedicated** [1] - 28:24
**deeds** [1] - 36:19
**DEFENDANT** [3] - 2:18, 28:9, 28:11
**defendant** [22] - 1:13, 7:18, 7:23, 8:1, 8:3, 8:5, 8:24, 10:5, 10:23, 27:13, 28:7, 31:16, 32:2, 32:10, 32:19, 33:14, 34:4, 36:17, 36:24, 37:22, 37:23, 38:4
**defendant's** [23] - 32:17, 32:21, 32:24, 33:6, 33:7, 33:9, 33:11, 33:17, 33:20, 33:21, 33:24, 34:3,

34:24, 35:6, 35:8, 35:10, 35:15, 35:24, 37:2, 37:6, 37:13, 37:16, 38:3
**defendants** [1] - 33:7
**defense** [6] - 6:20, 9:11, 11:7, 22:24, 24:4, 30:18
**defense's** [3] - 7:1, 9:8, 23:1
**defiant** [1] - 27:15
**degenerative** [1] - 19:24
**degree** [1] - 19:17
**delegated** [1] - 29:13
**delineated** [1] - 7:21
**demanding** [1] - 16:17
**demonstrate** [1] - 15:22
**demonstrates** [1] - 24:11
**depart** [2] - 30:17, 30:20
**department** [7] - 15:18, 22:2, 26:14, 28:20, 28:21, 29:13, 36:3
**Department** [1] - 28:16
**department's** [1] - 29:15
**departure** [2] - 34:23, 35:2
**deposit** [1] - 40:6
**deputies** [5] - 29:5, 36:1, 36:2, 36:6, 36:7
**deputy** [1] - 36:7
**derailed** [1] - 35:23
**describe** [1] - 15:7
**despite** [2] - 25:2, 30:7
**destroyed** [1] - 35:25
**destruction** [1] - 14:4
**detail** [1] - 18:20
**deter** [1] - 37:4
**determination** [1] - 32:6
**determine** [2] - 26:6, 32:5
**determined** [1] - 34:17
**determining** [1] - 32:12
**deterrence** [4] - 25:6, 25:8, 25:9
**diagnosis** [3] - 17:6, 27:18, 29:20
**difference** [1] - 10:21
**different** [8] - 14:25, 16:3, 16:4, 17:10,

22:23, 23:24, 26:23, 27:4
**difficult** [3] - 21:15, 21:18, 29:21
**difficulty** [1] - 18:18
**diminish** [1] - 20:11
**disadvantaged** [1] - 29:3
**discharge** [1] - 31:18
**disclosed** [1] - 8:18
**discretion** [6] - 30:17, 30:20, 31:2, 31:19, 31:23, 37:19
**discuss** [1] - 7:15
**discussing** [1] - 16:11
**Discussion** [3] - 8:12, 38:8, 38:16
**discussions** [2] - 27:17, 27:18
**disease** [13] - 4:14, 4:15, 5:18, 5:25, 6:1, 6:16, 18:4, 18:7, 19:1, 19:20, 19:22, 20:12, 21:24
**disenfranchised** [1] - 29:3
**disparities** [1] - 37:5
**disparity** [4] - 22:22, 24:5, 25:16, 25:17
**DISTRICT** [2] - 1:1, 1:2
**Division** [1] - 13:25
**DNA** [1] - 8:2
**doctor** [9] - 4:1, 4:10, 4:19, 4:22, 6:10, 20:5, 20:7, 20:24, 21:9
**doctors** [1] - 21:1
**dollar** [1] - 34:4
**done** [8] - 4:17, 12:3, 13:1, 15:13, 17:1, 17:4, 24:13, 24:14
**Donepezil** [2] - 20:10, 20:22
**down** [3] - 24:2, 28:2, 39:9
**Dr** [8] - 16:21, 16:22, 20:4, 20:5, 20:8, 20:24
**drives** [2] - 17:24, 32:17
**drugs** [1] - 12:9
**during** [6] - 4:3, 7:22, 17:7, 26:3, 26:16, 27:17
**duty** [1] - 29:14

### E

**e-mail** [4] - 2:7, 2:11,

2:16, 2:23
**early** [2] - 20:13, 23:10
**EBI** [1] - 13:20
**Eddie** [2] - 2:12, 3:10
**eddie.jauregui@ usdoj.gov** [1] - 2:16
**Eden** [2] - 12:5, 12:10
**Education** [3] - 12:18, 13:12, 29:6
**effect** [1] - 5:12
**effective** [1] - 36:17
**effects** [1] - 18:7
**either** [4] - 24:20, 25:22, 30:19, 31:9
**elects** [1] - 30:20
**embarrassment** [1] - 36:4
**Emerging** [1] - 12:20
**emphasis** [1] - 16:15
**emphasized** [1] - 17:22
**ends** [1] - 21:2
**enforcement** [11] - 10:2, 10:10, 11:15, 14:23, 15:14, 22:2, 22:9, 22:10, 29:1, 36:13, 37:10
**enforcing** [1] - 10:4
**enhanced** [1] - 20:12
**enhancement** [2] - 10:20, 34:5
**enhancements** [3] - 9:9, 33:13, 34:6
**ensure** [1] - 35:15
**entered** [1] - 30:23
**entire** [6] - 15:14, 20:19, 26:7, 27:15, 29:1, 29:4
**entirely** [3] - 25:3, 25:4, 36:12
**environment** [2] - 21:23, 22:10
**Erin** [2] - 2:20, 3:14
**especially** [1] - 16:10
**essentially** [1] - 20:9
**etiquette** [1] - 21:22
**evaluating** [2] - 4:4, 20:1
**evaluation** [1] - 4:6
**evidence** [2] - 26:23, 36:12
**evident** [1] - 17:9
**evolved** [2] - 9:20, 34:4
**exam** [1] - 4:3
**examine** [2] - 31:20, 32:13
**example** [1] - 13:9
**exception** [1] - 23:13

**exercise** [2] - 30:20, 31:19
**exercised** [1] - 37:19
**expect** [1] - 10:2
**experience** [1] - 14:21
**experiences** [2] - 12:25, 14:19
**experts** [4] - 6:15, 16:21, 17:7, 18:21
**explain** [3] - 9:14, 9:20, 19:10
**express** [2] - 14:20, 15:25
**extent** [1] - 34:13
**extreme** [1] - 16:1
**extremely** [1] - 13:22

### F

**face** [3] - 20:22, 25:24, 29:23
**facilitate** [2] - 9:16, 10:11
**facilitator** [1] - 13:20
**facility** [2] - 20:2, 20:7
**facing** [1] - 22:11
**fact** [14] - 4:9, 4:15, 12:6, 15:10, 15:21, 16:20, 16:24, 19:23, 20:22, 20:24, 21:2, 21:21, 22:7, 23:10
**factor** [10] - 5:13, 10:15, 16:7, 19:19, 21:12, 21:25, 24:5, 35:1, 35:3, 35:5
**factors** [10] - 22:17, 23:6, 23:7, 30:18, 31:13, 32:11, 34:12, 35:18, 36:20, 36:21
**facts** [3] - 19:3, 20:16, 32:7
**factual** [1] - 30:11
**factually** [1] - 9:2
**failed** [1] - 29:11
**fails** [1] - 35:7
**fair** [5] - 31:3, 31:25, 32:5, 32:15, 37:14
**fairly** [2] - 33:6, 35:7
**fall** [1] - 25:25
**falls** [1] - 33:1
**false** [5] - 10:12, 24:3, 32:16, 33:2, 33:11
**family** [3] - 18:5, 29:22, 29:25
**FAPE** [1] - 14:23
**favor** [2] - 36:18, 36:19
**Fax** [4] - 2:6, 2:11, 2:15, 2:22

**FBI** [3] - 26:6, 34:10, 35:24
**Federal** [1] - 1:23
**federal** [3] - 20:2, 35:22, 36:1
**fee** [1] - 40:5
**fees** [1] - 40:5
**fellow** [2] - 10:2, 36:2
**felt** [5] - 4:5, 9:21, 13:13, 14:18, 29:25
**few** [1] - 20:9
**figuring** [1] - 23:3
**file** [2] - 7:3, 7:16
**filed** [3] - 7:2, 7:4, 11:10
**filled** [1] - 28:17
**finally** [1] - 24:7
**financial** [4] - 7:24, 8:5, 8:8
**findings** [1] - 30:11
**fine** [8] - 7:6, 18:22, 18:24, 18:25, 19:9, 38:20, 39:13
**firmly** [1] - 19:25
**First** [1] - 15:5
**first** [1] - 33:5
**Fiset** [2] - 2:19, 3:14
**FISET** [1] - 4:25
**fit** [1] - 23:5
**five** [6] - 6:6, 6:21, 6:23, 17:13, 20:25
**five-minute** [2] - 6:6, 6:21
**Floor** [4] - 2:5, 2:9, 2:14, 2:21
**follow** [3] - 21:16, 21:18, 21:21
**following** [1] - 39:12
**follows** [1] - 7:17
**foregoing** [1] - 40:2
**forgets** [1] - 18:12
**form** [1] - 17:19
**former** [1] - 13:10
**formulary** [1] - 20:17
**forth** [2] - 30:12, 35:17
**forward** [3] - 5:24, 38:4, 39:1
**fostering** [1] - 36:4
**four** [2] - 11:14
**Fox** [4] - 2:4, 3:10, 22:19, 39:8
**FOX** [15] - 3:9, 4:16, 4:22, 5:1, 6:8, 8:20, 9:10, 10:8, 11:2, 11:6, 24:18, 28:6, 31:11, 38:20, 39:18
**Friday** [4] - 3:25, 4:18, 4:25
**friends** [2] - 29:22, 30:1
**friends'** [1] - 18:14
**frustrated** [3] - 18:13, 21:20
**full** [1] - 34:13
**function** [1] - 33:10
**functionality** [1] - 20:12
**functioning** [1] - 5:8
**fundamentally** [1] - 23:24
**future** [2] - 16:11, 16:12

**G**

**gains** [1] - 8:8
**gap** [2] - 14:22, 15:8
**General** [4] - 2:13, 7:19, 7:20, 7:21
**general** [2] - 25:9, 27:10
**given** [4] - 34:24, 37:5, 37:6, 37:15
**goals** [5] - 31:3, 31:21, 31:25, 32:6, 37:14
**government** [21] - 4:9, 9:7, 12:2, 12:21, 15:19, 16:13, 17:3, 17:21, 18:9, 19:6, 22:4, 22:24, 23:11, 24:3, 24:17, 28:4, 31:17, 38:11, 38:12, 38:19
**government's** [1] - 10:6
**grand** [4] - 34:9, 35:22, 35:25, 36:1
**gratitude** [1] - 14:21
**great** [4] - 18:18, 18:20, 28:19, 28:25
**greater** [1] - 35:16
**greatly** [1] - 36:21
**gross** [1] - 37:8
**guidance** [1] - 14:6
**guided** [1] - 29:7
**guideline** [1] - 32:22
**Guideline** [9] - 9:11, 10:17, 27:3, 30:12, 30:15, 33:1, 33:3, 34:18, 35:6
**guidelines** [1] - 34:22
**Guidelines** [8] - 10:16, 10:22, 11:4, 30:13, 31:10, 32:8, 35:14, 36:9
**guilty** [5] - 27:1, 27:9, 32:2, 37:23, 37:24
**gut** [1] - 16:9

**gut-wrenching** [1] - 16:9

**H**

**half** [2] - 11:15, 13:19
**Hall** [1] - 14:12
**hand** [1] - 22:18
**handle** [1] - 22:7
**handwrite** [1] - 14:20
**happy** [1] - 29:9
**harm** [13] - 33:8, 33:23, 34:6, 34:13, 34:20, 34:22, 35:5, 35:11, 35:21, 36:6, 36:10, 36:23
**harsh** [2] - 24:20, 24:22
**head** [1] - 24:1
**health** [2] - 4:6, 16:19
**heard** [5] - 9:8, 11:7, 24:17, 28:7, 31:9
**HEARING** [1] - 1:16
**held** [2] - 10:1, 25:13
**Helena** [1] - 16:21
**help** [7] - 9:16, 9:17, 10:10, 15:11, 29:19, 29:24, 30:1
**hereby** [1] - 40:2
**Hernandez** [2] - 13:24, 14:2
**hide** [2] - 25:22, 35:24
**hiding** [1] - 34:8
**high** [1] - 14:7
**highest** [1] - 22:1
**highlight** [2] - 11:10, 13:7
**hindered** [1] - 26:4
**hinted** [1] - 27:12
**History** [1] - 30:14
**history** [6] - 11:12, 11:19, 16:18, 17:2, 23:21, 32:22
**homeless** [3] - 15:3, 15:12
**homelessness** [1] - 15:12
**Honor** [42] - 3:9, 3:13, 3:19, 3:20, 3:24, 4:16, 6:8, 6:10, 7:3, 7:11, 8:11, 8:13, 8:16, 8:19, 8:20, 9:4, 9:10, 10:8, 11:1, 11:2, 11:5, 11:6, 11:8, 11:9, 24:18, 24:19, 27:20, 27:25, 28:6, 28:8, 28:9, 28:11, 29:24, 30:3, 30:8, 31:11, 31:12,

30:8, 31:11, 31:12,
38:9, 38:17, 38:20, 39:17, 39:18
**honor** [1] - 28:19
**HONORABLE** [1] - 1:4
**honored** [1] - 28:22
**Hope** [1] - 2:21
**hopeful** [1] - 30:7
**hospital** [1] - 36:8
**hours** [1] - 12:7
**Housewives** [1] - 22:6
**humble** [1] - 28:17
**hundred** [1] - 5:20

**I**

**ignore** [3] - 17:25, 18:9, 35:14
**ignored** [1] - 21:25
**illness** [1] - 17:6
**immediately** [1] - 4:8
**impact** [2] - 25:6, 25:7
**impairment** [1] - 5:6
**impairments** [1] - 20:20
**important** [15] - 4:5, 5:8, 9:12, 13:8, 13:22, 14:19, 16:14, 18:1, 20:14, 22:17, 22:20, 22:21, 23:1, 24:8, 29:14
**impose** [2] - 37:7, 37:24
**imposed** [2] - 7:10, 32:7
**imposing** [1] - 7:12
**imposition** [1] - 7:8
**imprisonment** [3] - 31:8, 32:15, 35:1
**improve** [1] - 29:2
**improved** [1] - 29:9
**incarcerate** [1] - 24:12
**incarcerated** [2] - 22:2, 22:15
**incarcerating** [1] - 21:12
**Incarceration** [3] - 12:18, 13:12, 29:6
**incarceration** [2] - 19:24, 30:16
**include** [1] - 17:2
**included** [2] - 6:12, 34:8
**includes** [1] - 31:20
**including** [6] - 7:20, 10:2, 29:4, 35:11, 35:25, 37:9
**income** [1] - 8:4
**incorporate** [1] - 34:13

**increased** [1] - 22:12
**indeed** [1] - 34:21
**independent** [1] - 31:19
**indicate** [1] - 4:13
**indicated** [3] - 4:1, 6:13, 14:5
**indicates** [1] - 23:23
**indicators** [1] - 6:11
**indictment** [2] - 27:8, 27:17
**individual** [9] - 11:18, 11:21, 11:23, 13:23, 15:7, 16:17, 20:4, 23:23, 24:8
**individually** [1] - 30:19
**individuals** [6] - 11:13, 12:22, 12:24, 13:10, 15:2, 20:21
**influence** [1] - 10:6
**informant** [1] - 35:24
**Information** [2] - 23:11, 27:7
**information** [7] - 4:7, 4:13, 5:19, 18:24, 21:8, 23:23, 27:17
**inheritance** [1] - 8:7
**inmate** [3] - 34:9, 36:6, 36:8
**inmates** [7] - 13:10, 15:12, 20:19, 21:20, 29:4, 29:7, 35:23
**inspiration** [1] - 12:17
**inspire** [1] - 12:7
**inspired** [2] - 12:8, 12:18
**instead** [1] - 29:13
**intent** [1] - 26:20
**interest** [1] - 37:9
**interesting** [1] - 20:23
**interview** [3] - 4:10, 10:5, 26:3
**investigation** [4] - 10:7, 29:12, 29:16, 35:22
**involved** [1] - 36:14
**involvement** [2] - 25:19, 25:22
**involving** [1] - 34:22
**issue** [6] - 11:12, 16:8, 19:24, 19:25, 22:22, 25:15
**issues** [3] - 8:25, 15:11, 38:14
**Item** [1] - 3:5

## J

**Jail** [1] - 36:15
**jail** [3] - 16:17, 29:4, 29:8
**Jauregui** [1] - 2:12
**job** [1] - 31:14
**John** [1] - 13:9
**Juaregui** [1] - 3:11
**JUDGE** [1] - 1:4
**judgment** [5] - 7:8, 7:9, 34:1, 34:7, 36:20
**judgment's** [1] - 7:25
**judgments** [1] - 8:7
**Judi** [1] - 22:6
**judicial** [1] - 40:7
**JULY** [2] - 1:17, 3:1
**June** [1] - 12:20
**juries** [1] - 25:21
**jury** [4] - 34:9, 35:22, 35:25, 36:1
**justice** [8] - 25:3, 26:5, 26:20, 26:25, 27:22, 27:24, 34:8, 37:11

## K

**keys** [2] - 18:10, 18:11
**KIELWASSER** [1] - 1:22
**Kielwasser** [2] - 40:10, 40:11
**kinds** [1] - 18:10
**knowledge** [1] - 25:20
**known** [1] - 12:19
**knows** [2] - 12:2
**Kranick** [2] - 16:21, 16:22

## L

**LA** [1] - 23:4
**lack** [1] - 37:2
**large** [1] - 14:24
**Last** [2] - 4:25
**last** [2] - 18:17, 20:3
**late** [3] - 3:25, 4:2
**latest** [1] - 7:1
**law** [15] - 10:2, 10:3, 10:10, 11:15, 14:23, 15:14, 18:5, 22:2, 22:9, 22:10, 28:25, 36:13, 37:3, 37:10
**lead** [2] - 17:19, 29:13
**Leader** [1] - 12:20
**leader** [2] - 26:1,

29:16
**leadership** [2] - 28:22, 29:12
**leading** [1] - 28:20
**leads** [1] - 17:22
**learned** [1] - 4:18
**least** [3] - 10:4, 16:2, 33:6
**lectern** [1] - 3:18
**led** [2] - 26:15, 36:4
**Lee** [1] - 12:6
**left** [1] - 17:12
**length** [1] - 19:13
**lenient** [2] - 24:21, 24:25
**Leroy** [1] - 3:6
**LEROY** [1] - 1:12
**less** [2] - 17:13, 40:5
**letter** [8] - 4:1, 12:12, 14:5, 14:20, 18:1, 18:2, 18:3, 18:10
**letters** [9] - 8:24, 11:10, 11:11, 12:22, 13:7, 14:25, 15:21, 26:12, 32:10
**level** [14] - 9:8, 21:13, 24:11, 30:14, 32:16, 32:18, 32:20, 32:21, 33:2, 33:10, 33:12, 33:21, 34:17, 35:4
**levels** [1] - 15:1
**lie** [1] - 36:11
**lied** [2] - 25:19, 26:2
**lies** [2] - 25:18, 26:10
**life** [8] - 5:8, 12:14, 13:4, 17:19, 17:23, 19:9, 28:24, 29:21
**life's** [1] - 29:1
**light** [1] - 31:21
**lightly** [1] - 16:14
**likelihood** [1] - 33:16
**likely** [2] - 20:10, 20:14
**live** [3] - 13:4, 14:5, 16:5
**lived** [1] - 14:3
**lives** [6] - 12:9, 13:3, 13:10, 29:2, 29:7, 29:9
**living** [1] - 12:14
**Lizabeth** [2] - 2:8, 3:10
**lizabeth.rhodes@ usdoj.gov** [1] - 2:11
**LLP** [1] - 2:20
**look** [4] - 23:20, 23:21, 23:22, 36:3
**looked** [1] - 19:12
**looking** [1] - 12:15
**looks** [1] - 17:16

**Los** [10] - 1:17, 1:24, 2:5, 2:10, 2:14, 2:21, 28:18, 28:25, 30:6, 36:13
**loses** [1] - 18:12
**loss** [6] - 33:10, 33:14, 33:15, 33:17, 33:22, 34:4
**lost** [2] - 18:10, 18:11
**lottery** [1] - 8:6
**low** [1] - 34:1
**lumbar** [1] - 17:3
**lunch** [1] - 17:23
**lying** [3] - 9:16, 9:21, 26:4

## M

**mail** [4] - 2:7, 2:11, 2:16, 2:23
**malingering** [3] - 6:9, 6:11, 6:13
**man** [4] - 14:2, 15:23, 16:10, 30:4
**manner** [1] - 36:18
**Maravilla** [1] - 14:3
**Marine** [1] - 11:17
**Martha** [1] - 22:5
**materials** [2] - 6:20, 6:22
**mathematical** [1] - 31:10
**matrix** [1] - 23:4
**matter** [15] - 3:21, 5:2, 7:7, 7:15, 9:11, 10:13, 16:20, 20:24, 22:7, 24:19, 27:10, 38:2, 38:10, 38:21, 40:4
**matters** [1] - 5:2
**mean** [2] - 17:23, 19:11
**means** [2] - 19:11, 20:17
**measure** [3] - 28:23, 33:6, 35:7
**medical** [6] - 16:8, 20:7, 22:13, 23:8, 23:22, 36:17
**medication** [3] - 20:10, 20:14, 21:5
**meet** [2] - 31:3, 37:14
**meets** [2] - 31:25, 32:5
**members** [4] - 11:9, 14:10, 16:3, 22:1
**memoranda** [3] - 8:23, 9:1, 32:9
**Men's** [1] - 36:15
**mentality** [1] - 36:5

**mention** [1] - 6:8
**mentioned** [1] - 26:22
**mentorship** [2] - 13:13, 14:6
**merely** [1] - 4:13
**met** [1] - 13:24
**metric** [1] - 33:17
**Michael** [1] - 2:19
**michael.zweiback@ alston.com** [1] - 2:23
**might** [1] - 25:11
**Mike** [1] - 3:14
**mine** [1] - 33:15
**mine-run** [1] - 33:15
**minute** [3] - 6:6, 6:7, 6:21
**minutes** [1] - 6:23
**mistake** [1] - 15:23
**mistakes** [1] - 28:18
**misvalues** [1] - 33:23
**mitigating** [1] - 26:18
**moment** [1] - 38:6
**moments** [1] - 13:3
**MONDAY** [2] - 1:17, 3:1
**monetary** [7] - 33:4, 33:10, 33:14, 33:15, 33:17, 33:22, 34:3
**moneys** [2] - 8:3, 8:6
**month** [3] - 24:6, 24:22, 27:24
**months** [11] - 18:11, 27:3, 27:24, 30:15, 31:7, 32:14, 32:23, 32:25, 34:12, 34:25, 36:23
**moreover** [1] - 29:15
**morning** [7] - 3:9, 3:12, 3:13, 3:16, 6:20, 28:9, 28:10
**most** [5] - 18:4, 26:9, 27:1, 29:21, 36:17
**mother** [1] - 18:5
**mother-in-law** [1] - 18:5
**MR** [42] - 3:9, 3:13, 3:19, 3:24, 4:16, 4:21, 4:22, 5:1, 6:2, 6:8, 6:10, 7:3, 7:11, 8:11, 8:13, 8:16, 8:19, 8:20, 9:4, 9:10, 10:8, 11:1, 11:2, 11:5, 11:6, 11:8, 24:18, 28:6, 28:8, 31:11, 31:12, 38:6, 38:9, 38:14, 38:17, 38:20, 39:3, 39:5, 39:7, 39:13, 39:17, 39:18
**MRIs** [1] - 16:25

**MS** [1] - 4:25
**Muslims** [1] - 15:5
**must** [4] - 16:8, 32:2, 32:13, 35:15

## N

**name** [1] - 20:4
**names** [1] - 18:14
**nation** [1] - 28:25
**nature** [5] - 23:20, 23:21, 35:10, 35:19, 37:15
**necessarily** [1] - 19:12
**necessary** [1] - 35:16
**need** [6] - 36:16, 36:18, 37:3, 37:4, 37:9
**needs** [4] - 10:9, 20:17, 21:11, 23:2
**negatively** [1] - 19:4
**neurological** [5] - 4:14, 16:25, 17:1, 17:9, 19:1
**neuropsychological** [1] - 4:2
**never** [1] - 14:14
**next** [1] - 16:10
**Ninth** [1] - 10:1
**non** [1] - 20:17
**non-formulary** [1] - 20:17
**none** [1] - 9:4
**nonmonetary** [9] - 33:8, 33:23, 34:6, 34:20, 34:22, 35:5, 35:11, 35:21, 36:23
**normal** [2] - 17:19, 21:22
**normalcy** [1] - 17:20
**North** [4] - 1:23, 2:5, 2:9, 2:14
**Northwestern** [2] - 16:22, 16:23
**noted** [1] - 9:5
**Notes** [1] - 34:16
**notes** [1] - 34:21
**nothing** [1] - 36:22
**notice** [1] - 7:14
**noticed** [1] - 23:15
**notified** [1] - 4:8
**number** [4] - 20:16, 21:9, 21:13, 23:24
**numerous** [1] - 8:24

## O

**objection** [2] - 9:5, 9:8

objections [5] - 4:12, 7:15, 7:16, 8:14, 9:3
obligated [1] - 31:1
obligation [4] - 8:5, 8:9, 31:19, 31:20
obligations [1] - 7:24
observation [1] - 34:15
obstruct [1] - 34:8
obstruction [3] - 24:4, 26:20, 26:24
obstructive [1] - 25:21
occur [2] - 25:18, 26:10
occurred [4] - 19:3, 25:12, 26:7
occurring [1] - 36:15
OF [4] - 1:2, 1:8, 2:3, 2:18
offense [19] - 9:17, 12:1, 12:3, 27:2, 27:10, 30:13, 32:16, 32:18, 32:21, 33:2, 33:9, 33:12, 33:17, 33:21, 34:17, 34:19, 34:20, 35:4, 35:10
offenses [2] - 33:4, 37:2
office [2] - 11:3, 39:9
Office [5] - 2:4, 2:8, 2:13, 7:19, 26:5
officer [3] - 10:10, 22:9, 36:13
officers [2] - 10:3, 22:10
Official [1] - 1:23
official [2] - 30:5, 40:11
officials [1] - 10:2
often [1] - 33:18
ON [2] - 2:3, 2:18
once [1] - 13:11
one [16] - 3:21, 5:3, 17:7, 20:16, 21:9, 21:13, 22:1, 23:13, 23:24, 27:9, 27:14, 33:3, 33:19, 33:22, 35:13, 36:11
open [2] - 6:18, 39:15
opinion [1] - 10:14
opportunity [6] - 6:3, 6:22, 7:1, 13:14, 32:2, 37:22
options [1] - 38:4
Order [3] - 7:19, 7:20, 7:21
order [4] - 11:20, 11:22, 17:4, 25:22
ordered [4] - 7:24, 8:5, 8:8, 20:17

orders [1] - 7:25
ordinary [2] - 14:10, 15:1
organization [1] - 24:2
organizer [1] - 12:11
ourselves [1] - 38:11
outreach [1] - 15:8
outside [5] - 12:3, 12:4, 13:21, 14:14, 21:21
outstanding [2] - 8:4, 8:8
outweighed [1] - 36:21
overcome [2] - 29:18, 29:24
own [3] - 12:19, 18:5, 25:17

**P**

p.m [1] - 4:18
paid [1] - 14:16
papers [3] - 17:21, 17:22, 26:22
part [2] - 13:11, 17:2
participants [1] - 26:19
participating [2] - 14:22, 34:7
particular [2] - 12:3, 22:10
parties [11] - 5:23, 8:18, 10:21, 30:22, 31:6, 32:9, 33:3, 35:1, 35:3, 35:7, 36:9
parties' [5] - 8:23, 37:1, 37:7, 37:17, 38:1
past [4] - 14:5, 14:7, 18:15, 19:16
path [1] - 14:3
patrolman [1] - 15:16
pavement [1] - 7:25
pay [1] - 7:23
paying [1] - 25:10
pegging [1] - 33:21
Pelton [4] - 20:4, 20:5, 20:8, 20:24
people [25] - 9:19, 12:5, 12:7, 13:24, 14:10, 15:1, 15:2, 15:4, 17:10, 17:11, 17:12, 17:13, 18:4, 18:6, 20:13, 23:25, 24:21, 24:24, 24:25, 25:10, 26:13, 27:4, 27:9, 28:21

per [1] - 10:9
percent [1] - 5:20
PERCY [1] - 1:4
perform [1] - 5:4
performed [3] - 4:2, 5:3
perhaps [1] - 29:21
period [4] - 7:22, 19:4, 19:14, 21:5
permit [1] - 30:8
permits [1] - 31:16
person [6] - 5:3, 5:13, 11:25, 22:5, 26:9, 27:7
personal [1] - 13:2
perspective [1] - 4:16
pertaining [1] - 7:25
physical [1] - 35:23
picture [1] - 11:17
place [1] - 16:5
placed [1] - 22:14
places [1] - 36:10
plaintiff [1] - 1:10
PLAINTIFF [1] - 2:3
planet [1] - 12:15
plea [5] - 30:23, 31:1, 32:3, 37:23, 37:24
Plea [12] - 31:14, 31:24, 32:4, 32:8, 32:13, 32:24, 34:24, 37:1, 37:13, 37:18, 37:20, 37:21
pled [3] - 23:11, 27:1, 27:9
point [6] - 10:8, 10:12, 16:7, 16:15, 23:1, 24:8
points [2] - 27:9, 33:13
police [1] - 10:3
policing [1] - 15:10
political [1] - 25:23
politician [1] - 12:23
poor [1] - 33:18
population [1] - 22:13
position [9] - 9:9, 9:15, 9:17, 9:24, 10:10, 10:15, 12:23, 22:15, 27:19
possibly [1] - 9:18
post [1] - 29:1
pre [2] - 27:17
pre-indictment [1] - 27:17
pre-information [1] - 27:17
predicated [1] - 34:12
predominantly [1] - 33:10

prepared [1] - 38:4
prepares [1] - 19:16
prerogative [1] - 5:25
prescribed [2] - 20:18, 21:5
present [2] - 3:15, 17:25
Presentence [7] - 8:17, 8:22, 8:23, 9:2, 10:24, 30:12
presiding [1] - 28:14
PRESIDING [1] - 1:4
prided [1] - 29:11
primary [1] - 5:6
prison [6] - 13:13, 13:17, 13:19, 20:2, 21:23, 22:12
prisoner [1] - 21:6
Prisons [8] - 20:5, 20:7, 20:19, 21:1, 21:3, 21:6, 21:22, 22:3
probation [6] - 11:3, 24:15, 31:7, 32:14, 32:25, 34:25
Probation [1] - 7:19
problem [1] - 33:21
problems [1] - 33:5
proceed [3] - 3:20, 8:13, 38:5
proceedings [1] - 40:3
Proceedings [2] - 1:16, 39:21
process [3] - 15:17, 17:7, 27:15
processed [1] - 18:25
productive [1] - 12:14
profoundly [1] - 28:14
prognosis [1] - 27:18
program [4] - 12:18, 12:19, 13:12, 29:6
progress [1] - 5:18
progressed [3] - 4:15, 6:16, 19:2
progressing [1] - 6:1
progression [1] - 20:11
progressive [3] - 4:14, 17:10, 19:23
Projects [1] - 14:3
promote [1] - 37:3
prompted [1] - 6:12
pronouncement [1] - 7:8
protect [1] - 36:18
provable [1] - 27:1
provide [2] - 28:22, 36:17
provided [2] - 21:8, 34:21

provides [3] - 32:24, 33:12, 34:25
proxy [1] - 33:18
PSR [1] - 9:6
psychologists [1] - 17:1
public [7] - 10:2, 25:24, 29:4, 29:22, 30:1, 30:4, 36:18
Public [1] - 2:9
public's [3] - 37:8, 37:9, 37:10
punctures [1] - 17:3
punishment [1] - 37:4
purpose [2] - 12:15, 35:17
purposes [1] - 10:4
pursuant [1] - 30:23
put [6] - 7:15, 20:2, 22:11, 23:11, 26:13, 38:21
puts [1] - 17:23

**Q**

quality [2] - 21:8, 26:22
quantity [1] - 26:23
questions [1] - 28:1
quote [2] - 12:12, 34:19

**R**

Rachel [2] - 2:19, 3:14
raised [1] - 8:25
Range [1] - 27:3
range [13] - 9:12, 10:17, 24:22, 30:15, 31:7, 32:17, 32:22, 32:25, 33:1, 33:3, 33:25, 34:12, 34:25
ranging [2] - 34:8, 36:14
ranking [1] - 22:1
ranks [1] - 15:17
reached [1] - 4:20
reaches [1] - 16:3
react [1] - 21:2
read [3] - 8:21, 10:23, 24:10
readily [1] - 27:1
ready [1] - 8:13
Real [1] - 22:6
really [12] - 15:22, 16:9, 17:18, 17:25, 18:1, 19:19, 19:25, 20:23, 21:7, 22:20,

23:2, 25:4
**reason** [2] - 7:9, 18:20
**reasonable** [5] - 31:3, 31:25, 32:5, 32:15, 37:14
**recalled** [1] - 19:4
**receive** [1] - 24:15
**received** [11] - 3:25, 4:9, 6:19, 8:4, 8:6, 8:21, 8:24, 32:10, 32:19, 34:4, 34:6
**recent** [3] - 4:6, 18:15, 19:15
**recess** [2] - 6:6, 6:21
**Recess** [2] - 6:24, 39:22
**recognizes** [1] - 30:17
**recollection** [1] - 19:18
**recommending** [1] - 27:19
**reconvene** [1] - 38:18
**record** [4] - 3:8, 8:12, 38:8, 38:16
**recorded** [1] - 40:3
**recorder** [2] - 18:22, 19:5
**records** [2] - 34:9, 35:25
**reduces** [1] - 33:25
**reduction** [2] - 32:20, 40:6
**refunds** [1] - 8:4
**regardless** [1] - 10:17
**region** [2] - 20:25, 21:2
**regions** [1] - 20:25
**regretful** [1] - 28:14
**Regulations** [1] - 7:18
**regulations** [1] - 40:7
**reject** [2] - 30:25, 31:2
**rejects** [2] - 32:1, 37:17
**related** [3] - 32:7, 34:4, 34:6
**relationships** [1] - 11:24
**release** [1] - 7:13
**released** [1] - 13:16
**remain** [1] - 30:5
**remained** [1] - 27:14
**remember** [1] - 18:13
**remorse** [3] - 16:1, 24:11, 28:18
**renegotiate** [1] - 31:15
**Report** [7] - 8:17, 8:22, 8:23, 9:2, 10:24, 10:25, 30:12
**Reporter** [2] - 1:23, 40:11

**Reporter's** [1] - 1:16
**request** [3] - 7:4, 38:9, 38:17
**requires** [1] - 27:23
**Resources** [1] - 13:25
**respect** [13] - 11:12, 11:23, 15:10, 15:13, 16:19, 17:6, 23:4, 25:17, 26:21, 26:23, 26:24, 37:2, 37:3
**respond** [1] - 36:7
**response** [1] - 20:6
**responses** [1] - 6:12
**Responsibility** [1] - 32:20
**responsibility** [7] - 23:10, 23:18, 23:19, 26:15, 27:6, 27:14, 29:14
**responsible** [1] - 26:9
**restore** [1] - 37:10
**result** [2] - 21:24, 34:5
**results** [3] - 4:4, 10:14, 30:14
**retested** [1] - 17:4
**retired** [4] - 12:13, 12:16, 14:12, 15:1
**reveal** [1] - 35:20
**review** [5] - 6:4, 6:7, 6:22, 7:1, 9:1
**reviewed** [1] - 32:4
**rewrite** [1] - 31:14
**Rhodes** [2] - 2:8, 3:10
**rights** [1] - 27:8
**Rights** [1] - 2:9
**rise** [1] - 39:20
**risk** [2] - 12:8, 34:20
**Rita** [1] - 14:12
**Robert** [1] - 13:24
**role** [2] - 15:9, 25:19
**Room** [1] - 1:23
**route** [1] - 23:15
**RPR** [2] - 1:22, 40:11
**Rule** [6] - 30:24, 31:16, 32:13, 37:13, 37:18, 37:21
**rule** [2] - 21:14, 37:3
**rule-based** [1] - 21:14
**Rules** [1] - 7:18
**rules** [4] - 21:15, 21:17, 21:21, 21:22
**run** [2] - 15:2, 33:15
**runs** [2] - 13:17, 14:8

## S

**sample** [1] - 8:2
**Saul** [1] - 13:9
**Saul's** [1] - 13:18

**save** [1] - 25:23
**scans** [1] - 16:24
**schedule** [2] - 33:12, 33:16
**scheme** [3] - 9:20, 10:10, 10:11
**school** [3] - 13:17, 14:7, 14:16
**score** [1] - 32:22
**se** [1] - 10:9
**seal** [1] - 7:5
**secondly** [1] - 21:17
**Section** [15] - 2:9, 2:13, 32:17, 32:18, 33:4, 33:9, 33:12, 33:19, 33:25, 34:2, 34:5, 34:16, 35:9, 35:13, 35:15
**see** [4] - 17:25, 18:7, 24:9, 38:23
**self** [1] - 17:9
**self-evident** [1] - 17:9
**send** [1] - 36:8
**sentence** [16] - 7:8, 7:9, 24:6, 24:15, 25:5, 27:24, 30:3, 31:7, 31:17, 32:14, 35:16, 36:19, 36:20, 36:22, 37:8, 37:25
**sentenced** [4] - 5:15, 11:22, 15:25, 25:1
**sentences** [3] - 29:8, 32:7, 37:5
**Sentencing** [1] - 30:15
**sentencing** [19] - 5:12, 8:23, 9:1, 23:4, 30:8, 31:4, 31:22, 32:1, 32:6, 32:11, 32:17, 32:25, 33:25, 34:11, 35:17, 36:21, 37:5, 37:15, 39:2
**SENTENCING** [1] - 1:16
**September** [1] - 25:20
**sergeant** [2] - 12:13, 14:12
**Sergeant** [1] - 12:16
**seriously** [1] - 28:23
**seriousness** [2] - 34:19, 37:2
**serve** [1] - 29:3
**serving** [1] - 28:19
**set** [2] - 30:12, 35:17
**seven** [1] - 13:18
**several** [2] - 7:13, 33:5
**severe** [1] - 37:25
**shall** [5] - 7:18, 7:23, 8:1, 8:3, 8:6
**sharp** [3] - 15:20, 15:22

**Sheriff** [1] - 28:18
**sheriff** [4] - 15:15, 26:16, 29:5, 30:4
**sheriff's** [4] - 15:17, 26:14, 28:20, 29:12
**Sheriff's** [1] - 28:16
**sheriffs'** [1] - 23:5
**shield** [1] - 36:3
**short** [1] - 19:3
**shortly** [2] - 9:1, 24:10
**showing** [1] - 5:25
**shown** [1] - 36:12
**shows** [2] - 13:23, 19:8
**sic** [1] - 12:14
**sidebar** [2] - 3:21, 38:23
**Sidebar** [2] - 3:23, 38:24
**significant** [10] - 5:13, 16:21, 19:16, 27:5, 27:11, 27:18, 28:13, 33:8, 33:16, 35:20
**significantly** [1] - 22:12
**Simmons** [1] - 14:18
**simple** [2] - 18:23, 19:3
**simplified** [1] - 18:23
**simply** [3] - 12:22, 15:16, 20:24
**single** [1] - 22:11
**sit** [2] - 28:1, 39:9
**sits** [1] - 20:1
**situation** [4] - 16:19, 19:2, 22:14, 25:11
**six** [17] - 10:17, 11:16, 18:19, 18:21, 24:6, 24:22, 27:3, 27:23, 27:24, 30:15, 31:7, 32:14, 32:22, 32:25, 34:12, 34:25, 36:22
**six-month** [3] - 24:6, 24:22, 27:24
**solely** [1] - 33:13
**someone** [5] - 14:4, 15:20, 16:2, 21:13, 22:13
**sometimes** [2] - 17:16, 19:2
**sorry** [2] - 4:25, 5:1
**sort** [4] - 16:6, 16:9, 20:1, 20:12
**sought** [3] - 29:2, 29:18, 29:24
**South** [1] - 2:21
**special** [2] - 7:20, 7:23
**specially** [2] - 20:17, 20:18
**specific** [5] - 4:13,

13:2, 20:15, 25:9, 31:17
**specifically** [1] - 33:11
**speech** [4] - 19:7, 19:8, 19:11, 19:12
**spending** [1] - 13:18
**spent** [1] - 20:6
**spoken** [2] - 5:6, 13:6
**spotlight** [1] - 13:22
**Spring** [4] - 1:23, 2:5, 2:9, 2:14
**staff** [1] - 21:19
**stages** [1] - 20:13
**stand** [5] - 11:21, 19:6, 23:2, 25:17, 28:17
**standing** [1] - 16:10
**standpoint** [3] - 23:8, 23:9, 25:23
**stands** [1] - 13:23
**started** [1] - 29:7
**state** [1] - 3:7
**statement** [6] - 10:12, 23:16, 24:10, 32:16, 33:2, 33:11
**statements** [1] - 24:3
**STATES** [2] - 1:1, 1:8
**States** [5] - 3:6, 3:11, 7:19, 11:16, 40:7
**statistics** [2] - 20:16, 20:22
**status** [2] - 17:4, 22:14
**statutory** [7] - 31:3, 31:21, 31:25, 32:6, 32:10, 35:17, 37:14
**Stein** [2] - 12:5, 12:10
**stenographically** [1] - 40:3
**steps** [2] - 5:22, 35:23
**Stewart** [1] - 22:5
**still** [2] - 12:14, 18:25
**stood** [1] - 29:15
**stop** [1] - 12:9
**stops** [1] - 30:13
**story** [1] - 20:23
**Street** [5] - 1:23, 2:5, 2:9, 2:14, 2:21
**strong** [1] - 27:23
**stronger** [2] - 29:19, 29:25
**students** [1] - 14:13
**submission** [1] - 7:1
**submit** [2] - 4:13, 9:6
**submitted** [2] - 20:3, 32:9
**subordinates** [2] - 35:24, 37:6
**subpoena** [1] - 36:1

**substantial** [3] - 33:23, 34:20, 34:22
**substantially** [1] - 34:18
**successful** [3] - 13:15, 13:17, 14:8
**suffers** [1] - 33:5
**sufficiency** [1] - 31:21
**sufficient** [1] - 35:16
**suit** [1] - 17:24
**Sullivan** [1] - 13:9
**Sullivan's** [1] - 13:16
**Sunday** [2] - 4:10, 4:19
**supervised** [1] - 7:13
**supervision** [1] - 7:22
**support** [2] - 23:9, 26:13
**surprise** [1] - 6:16
**survive** [1] - 14:7
**system** [4] - 21:14, 26:6, 29:4, 37:11

**T**

**tampering** [1] - 34:10
**Tanaka** [2] - 23:16, 26:9
**task** [2] - 28:13, 28:23
**taught** [3] - 36:1, 36:5, 36:7
**tax** [1] - 8:4
**teachers** [1] - 15:1
**teenager** [1] - 14:2
**tel** [3] - 2:6, 2:15, 2:22
**Tel** [1] - 2:10
**telephone** [2] - 1:24, 4:11
**temple** [1] - 19:7
**tenure** [1] - 26:16
**terms** [9] - 15:7, 15:20, 16:2, 16:11, 16:16, 20:1, 23:3, 31:15, 32:8
**Terry** [1] - 12:16
**test** [2] - 4:2, 5:4
**testing** [4] - 5:4, 5:9, 5:14, 16:25
**tests** [2] - 17:1, 17:2
**THE** [38] - 2:3, 2:18, 3:12, 3:16, 3:22, 6:3, 6:17, 6:19, 6:25, 7:6, 7:12, 8:14, 8:17, 8:21, 9:7, 10:1, 10:18, 11:3, 11:7, 24:16, 28:4, 28:7, 28:9, 28:10, 28:11, 30:10, 31:13, 38:7, 38:12, 38:19, 38:21,

38:25, 39:4, 39:6, 39:11, 39:14, 39:16, 39:19
**theft** [4] - 33:4, 33:11, 33:15, 34:22
**themselves** [1] - 25:11
**therefore** [2] - 33:1, 37:21
**thousands** [1] - 12:6
**threatening** [1] - 34:10
**three** [1] - 7:20
**throughout** [2] - 15:4, 26:8
**Thursday** [4] - 4:2, 4:17, 20:3, 39:11
**ties** [1] - 11:24
**timely** [1] - 8:17
**tireless** [1] - 15:7
**today** [8] - 5:15, 5:24, 13:24, 15:24, 28:17, 29:10, 30:3, 38:4
**together** [1] - 12:7
**took** [2] - 10:5, 28:23
**total** [3] - 28:24, 30:13, 32:21
**Transcript** [1] - 1:16
**transcript** [2] - 40:3, 40:5
**travel** [1] - 38:14
**tremendous** [1] - 13:4
**trial** [1] - 23:15
**tried** [4] - 12:21, 14:22, 15:19, 16:1
**trivialize** [1] - 37:1
**true** [1] - 40:2
**trust** [5] - 9:9, 9:16, 10:5, 28:23, 37:9
**trusted** [1] - 28:21
**truth** [3] - 25:14, 26:6, 26:7
**try** [3] - 13:4, 15:8, 16:4
**trying** [3] - 13:1, 15:11, 16:2
**turn** [2] - 17:6, 31:13
**turning** [1] - 35:14
**two** [5] - 9:8, 16:20, 27:9, 32:20, 38:17
**two-level** [2] - 9:8, 32:20
**type** [3] - 11:25, 21:10, 36:10
**types** [1] - 19:21
**typically** [1] - 19:21

**U**

**U.S** [1] - 26:5

**ultimate** [1] - 9:11
**ultimately** [4] - 10:13, 10:21, 14:24, 15:24
**unable** [1] - 18:16
**under** [10] - 7:5, 9:19, 10:16, 32:18, 33:4, 33:9, 34:5, 34:11, 34:18, 36:25
**underappreciates** [1] - 34:2
**understates** [1] - 34:18
**unexpected** [1] - 8:7
**unfortunate** [2] - 16:6, 26:15
**unfulfilled** [1] - 12:15
**unique** [4] - 11:17, 12:24, 23:7
**UNITED** [2] - 1:1, 1:8
**United** [5] - 3:6, 3:11, 7:19, 11:16, 40:7
**unless** [2] - 22:21, 28:1
**unwarranted** [2] - 25:15, 37:5
**unwritten** [1] - 36:5
**up** [9] - 15:17, 16:9, 19:6, 21:2, 31:7, 32:14, 33:13, 36:2, 36:14
**upset** [1] - 17:16
**upward** [3] - 34:23, 35:2, 35:4
**urge** [1] - 24:11
**US** [3] - 2:4, 2:8, 2:13
**us-versus-them** [1] - 36:5
**USC** [2] - 4:1, 16:22

**V**

**vacations** [1] - 38:15
**vacuum** [2] - 25:18, 26:11
**value** [2] - 34:4, 36:10
**valued** [1] - 28:22
**variety** [1] - 18:11
**various** [5] - 11:14, 16:3, 22:23, 26:14, 30:18
**version** [1] - 18:23
**versus** [2] - 3:6, 36:5
**victims** [1] - 28:5
**view** [1] - 23:1
**violate** [1] - 10:3
**violence** [1] - 36:8
**virtues** [1] - 35:13
**visit** [1] - 4:3
**volunteer** [1] - 12:7

**vS** [1] - 1:11
**vulnerability** [1] - 22:12
**vulnerable** [3] - 21:19, 21:23

**W**

**waived** [1] - 27:7
**wants** [1] - 18:9
**warranted** [1] - 34:23
**wax** [1] - 19:15
**ways** [2] - 17:10, 17:19
**Wednesday** [2] - 4:19, 39:11
**week** [4] - 18:17, 20:3, 39:10, 39:12
**weeks** [2] - 23:17, 38:18
**western** [1] - 20:25
**whole** [2] - 17:2, 20:23
**wide** [1] - 36:14
**wide-ranging** [1] - 36:14
**wife** [1] - 4:21
**winnings** [1] - 8:6
**Wise** [2] - 20:6, 21:13
**wish** [8] - 7:2, 8:10, 9:7, 11:7, 24:17, 28:5, 28:7, 31:9
**withdraw** [3] - 32:2, 37:23, 37:24
**witness** [1] - 34:9
**word** [2] - 16:14, 27:23
**words** [4] - 5:5, 5:12, 31:23, 33:24
**works** [1] - 13:20
**worse** [1] - 20:20
**wrenching** [1] - 16:9
**write** [1] - 14:19
**written** [1] - 7:16

**Y**

**yeah..** [1] - 39:10
**years** [9] - 11:14, 11:16, 13:19, 17:12, 17:13, 17:14, 18:19, 18:21, 28:20
**yielding** [1] - 32:20
**young** [1] - 14:2
**youth** [1] - 12:8

**Z**

**zero** [8] - 10:17, 24:22,

27:3, 30:15, 32:22, 34:12, 36:22
**ZWEIBACK** [27] - 3:13, 3:19, 3:24, 4:21, 6:2, 6:10, 7:3, 7:11, 8:11, 8:13, 8:16, 8:19, 9:4, 11:1, 11:5, 11:8, 28:8, 31:12, 38:6, 38:9, 38:14, 38:17, 39:3, 39:5, 39:7, 39:13, 39:17
**Zweiback** [5] - 2:19, 3:14, 25:17, 27:8, 27:12
**Zweiback's** [1] - 25:2