# Exhibit 2

Ex. 2, Pg. 54

# REPORT

## OF THE

## INDEPENDENT

## COMMISSION

## ON THE

## LOS ANGELES

## POLICE

## DEPARTMENT

Ex. 2, Pg. 55

Copyright © 1991

By

Independent Commission on the Los Angeles Police Department

All Rights Reserved

Ex. 2, Pg. 56

# Table Of Contents



Letter of Transmittal

Commission and Staff

Foreword ................................................................................. (i)

Summary of Report ................................................................ (vii)

Chapter 1.    The Rodney King Beating and
              the Questions It Has Raised ............................................. 1

Chapter 2.    Los Angeles and Its Police Department ............................... 19

Chapter 3.    The Problem of Excessive Force in the LAPD ...................... 29

Chapter 4.    Racism and Bias Affecting the Use of
              Excessive Force ................................................................. 67

Chapter 5.    LAPD Culture, Community Relations,
              and "Community Policing" .................................................. 95

Chapter 6.    Recruitment, Selection and
              Psychological Testing ........................................................ 107

Chapter 7.    Training ................................................................................. 119

Chapter 8.    Promotion, Assignment and Other Personnel Issues ........... 137

Chapter 9.    Complaints and Discipline ................................................... 151

Chapter 10.   Structural Issues -- The Police Commission
              and the Chief of Police ...................................................... 181

Chapter 11.   Implementation ................................................................... 225

Appendix I    Mayor's Charge to the Independent Commission on the
              Los Angeles Police Department

              Joint Statement of Warren Christopher
              and Justice John Arguelles -- April 4, 1991

              The Ten-Point Plan Announced by Chief of Police
              Daryl Gates

Appendix II   Commission and Staff Activities

Ex. 2, Pg. 57

# Foreword

The Rodney King beating stands as a landmark in the recent history of law enforcement, comparable to the Scottsboro case in 1931 and the Serpico case in 1967. Rightly called "sickening" by President Bush, and condemned by all segments of society, the King incident provides an opportunity for evaluation and reform of police procedures. Many saw the incident as particularly tragic because it happened in Los Angeles, whose police officers are among the most efficient and innovative in the nation.

Police violence is not a local problem. Recognizing its national character, police chiefs from 10 major cities convened soon after the King incident and emphasized that "the problem of excessive force in American policing is real." The same theme was stressed by Hubert Williams, President of the Police Foundation and former Chief of Police for Newark, New Jersey: "Police use of excessive force is a significant problem in this country, particularly in our inner cities." With the Knapp Commission on police corruption as a precedent, the most fundamental challenge for the Independent Commission is to recommend

Ex. 2, Pg. 58

reforms that will help insure that such an incident is not repeated in Los Angeles or elsewhere in the nation.

Our Commission owes its existence to the George Holliday videotape of the Rodney King incident. Whether there even would have been a Los Angeles Police Department investigation without the video is doubtful, since the efforts of King's brother, Paul, to file a complaint were frustrated, and the report of the involved officers was falsified. Even if there had been an investigation, our case-by-case review of the handling of over 700 complaints indicates that without the Holliday videotape the complaint might have been adjudged to be "not sustained," because the officers' version conflicted with the account by King and his two passengers, who typically would have been viewed as not "independent."

In the wake of the King incident and the public outcry, the Independent Commission was created by Mayor Tom Bradley on April 1, 1991, and soon merged with the Commission created by Los Angeles Chief of Police Daryl Gates. (See Appendix I for foundational documents.) Our efforts were endorsed by City Council President John Ferraro, District Attorney Ira Reiner, City Attorney James Hahn, and many other public officials.

Our Report concentrates on excessive force under color of law. We have sought to examine any aspect of the law enforcement structure in Los Angeles that might cause or contribute to the problem of excessive force, and this has led us to consider almost every aspect of the LAPD. We have tried, however, to avoid being drawn into issues that are only peripheral to our central inquiry.

Our Commission has conducted an unprecedented inquiry into the use of excessive force by a police department. More than 50 expert witnesses have been heard in 26 executive sessions. More than 150 representatives of community organizations and private citizens have been heard in five public hearings held by the full Commission in different sections of the City. Members of the Commission have taken many individual initiatives ranging from night time "ride-alongs" in patrol cars to meetings with groups of ministers and priests. More than 500 current and retired Los Angeles police officers have been interviewed. A staff of more than 60 lawyers, supported by three accounting and data analysis firms, has been at work for 100 days and many nights.

(ii)    Foreword

Our work has been informed by nine major computer-aided studies of documents and statistics that yield their own truths independent of after-the-fact opinions or reconstruction. For example, we have conducted computerized studies of the Department's use of force reports from 1987 to 1991 and of all complaints filed by members of the public between 1986 and 1990. Our staff has reviewed the Mobile Digital Terminal communications (MDTs) of the Department's patrol cars for six sample months drawn from a 16 month period. We have examined with special care the files in the 83 civil damage cases involving excessive force claims that were settled by the City Attorney, with the approval of the City Council, for more than $15,000. In all, more than one million pages of documents have been reviewed.

Police work is dangerous. A routine arrest may suddenly turn into a violent confrontation, sometimes triggered by drugs, alcohol, or mental illness. Neighborhood gangs often directly challenge an officer's authority. To cope, police officers are given the unique right to use force, even deadly force, against others. The right to use force carries with it a heavy responsibility not to abuse it. The principal purpose of this Report is to present the results of our efforts to understand why and how often this authority has been abused, and to offer some down-to-earth recommendations for avoiding a repetition of incidents like that involving Rodney King.

This is a blunt report. We have received impressive cooperation from the LAPD as well as other agencies in the Los Angeles and national law enforcement communities. We seek to respond to this cooperation by being plainspoken.

The Commission found that there is a significant number of officers in the LAPD who repetitively use excessive force against the public and persistently ignore the written guidelines of the Department regarding force. This finding is documented and confirmed, from several perspectives, by the detailed analyses of documents and statistics performed by the Commission. Our computerized study of the complaints filed in recent years shows a strong concentration of allegations against a problem group of officers. A comparable study of the use of force reports reveals a similar concentration. Graphic confirmation of improper attitudes and practices is provided by the brazen and extensive references to beatings and other excessive uses of force in the MDTs.

Foreword    (iii)

Ex. 2, Pg. 60

The Commission also found that the problem of excessive force is aggravated by racism and bias, again strikingly revealed in the MDTs.

The failure to control these officers is a management issue that is at the heart of the problem. The documents and data that we have analyzed have all been available to the Department; indeed, most of this information came from that source. The LAPD's failure to analyze and act upon these revealing data evidences a significant breakdown in the management and leadership of the Department. The Police Commission, lacking investigators or other resources, failed in its duty to monitor the Department in this sensitive use of force area. The Department not only failed to deal with the problem group of officers but it often rewarded them with positive evaluations and promotions.

Our findings drive our principal recommendations. We urge that the leadership of the LAPD go beyond rhetoric in carrying out its existing policies against excessive force. From the Chief of Police on down to the sergeants, this means taking a firm stand against the "bad guys" on the force and employing all the instruments available -- training, discipline, assignments, and promotion. It also means monitoring and auditing all available data -- patrol car transmissions, use of force reports, and citizen complaints -- and then acting on the data. We urge a comparable effort to monitor and root out the manifestations of racism and bias.

We recommend a new standard of accountability. Los Angeles should have a Police Department whose Chief is accountable to civilian officials for the Department's performance, and where ranking officers are responsible for the conduct of those they lead. The Police Commission needs new personnel, more resources, and an enhanced commitment to carrying out its duties under the Charter. Ugly incidents will not diminish until ranking officers know they will be held responsible for what happens in their sector, whether or not they personally participate.

It will be said, and rightly so, that this Report does not devote enough attention to the good work done by the men and women of the LAPD. We have tried to recognize the enormous contribution to public safety made by police officers. Certainly we do not wish to cast a shadow on the multitude of police officers who perform their arduous duties in exemplary fashion. Our principal responsibility, however, was to assess the question of excessive force. Having

**(iv)**   Foreword

found the problem to be serious, we have been obliged to concentrate on causes and cures.

It will also be said that excessive use of force by police officers is only a reflection of the violence of our society. Television and motion pictures have not only excused excessive force but have sometimes portrayed it in positive hues. The vast majority of Los Angeles police officers, members of a Department with nationally recognized strengths, aspire to a higher standard and deserve a nobler image. We hope this Report will help achieve both.

Foreword    (v)

Ex. 2, Pg. 62