EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No. 290409)
Chief, Public Corruption & Civil Rights Section
LIZABETH A. RHODES (Cal. Bar No. 155299)
Chief, General Crimes Section
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
General Crimes Section
Assistant United States Attorneys
     1500/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0284/3541/4849
     Facsimile: (213) 894-7631
     E-mail:    Brandon.Fox@usdoj.gov
                Lizabeth.Rhodes@usdoj.gov
                Eddie.Jauregui@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 16-66(A)-PA |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY DISTRICT JUDGE PERCY ANDERSON; EXHIBIT |
| v. | |
| LEROY BACA, | Hearing Date: Undetermined |
| Defendant. | Hearing Time: Undetermined |
| | Location:    Courtroom of the Hon. Otis D. Wright |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Brandon D. Fox, Lizabeth A. Rhodes, and Eddie A. Jauregui, hereby files its opposition to defendant's motion to disqualify the Hon. Percy Anderson from presiding in his case.

Defendant's motion is meritless.  Defendant seeks disqualification of Judge Anderson solely on the basis of Judge Anderson's statements at defendant's initial sentencing hearing on July 18, 2016.  Defendant argues that those statements were based primarily on information gleaned from prior, related proceedings and not defendant's case.  That is incorrect; but even if true, Judge Anderson's statements at the initial sentencing hearing did not display a deep-seated antagonism against defendant that would make fair judgment impossible.  Moreover, his statements would not lead a reasonable person with knowledge of the facts to reasonably conclude that Judge Anderson's impartiality could be questioned.  Defendant's motion should be denied.

Dated: October 10, 2016            Respectfully submitted,

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


*/s/ Brandon D. Fox*
BRANDON D. FOX
LIZABETH A. RHODES
EDDIE A. JAUREGUI
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.   INTRODUCTION**

Defendant moves for disqualification of District Judge Percy Anderson on the ground that Judge Anderson's impartiality "might reasonably be questioned."  Defendant's motion is based solely on statements made by Judge Anderson at a July 18, 2016 hearing, during which the Court rejected the parties' binding Rule 11(c)(1)(C) plea agreement.  Defendant's arguments are foreclosed by law and unsupported by facts, and his motion should be denied.

**II.   STATEMENT OF FACTS**

On February 10, 2016, defendant, the former Sheriff of the Los Angeles County Sheriff's Department ("LASD"), pleaded guilty, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), to a single-count Information charging him with making false statements to the federal government, in violation of 18 U.S.C. § 1001.  Judge Anderson was assigned defendant's case because they were related to other cases on Judge Anderson's docket that involved the same set of facts – specifically, the obstruction of a grand jury investigation into abuse and corruption at the County jails.  After continuances, defendant's sentencing hearing was set for July 18, 2016.  By that date, Judge Anderson presided had presided over:

- <u>United States v. Thompson, et al.</u>, CR No. 13-819-PA.  The case, charged in December 2013, resulted in three trials of seven LASD officials from May to September 2014.  The trials lasted approximately seven weeks in total.  Judge Anderson was the sentencing judge for all seven defendants.

- <u>United States v. Tanaka and Carey</u>, CR No. 15-255-PA.  The case was charged in May 2015.  In August 2015, former Captain William "Tom" Carey pled guilty.  In April 2016, after a two-week trial, a jury convicted Paul Tanaka, who was defendant's second-in-command.  Judge Anderson presided over the trial and Tanaka's June 2016 sentencing.

On July 18, 2016, defendant appeared for his sentencing hearing. The Court heard arguments from both sides, and listened to defendant's allocution.  The Court adopted the factual findings in the Presentence Report, but ultimately rejected the parties' binding plea agreement.  The Court explained that, in its judgment, the agreement was not "reasonable and fair," nor did it meet the statutory goals of sentencing "given the nature and circumstances of the defendant's conduct."  (See Def. Ex. 1, July 18, 2016 Tr. at 37:12-16.)  The Court emphasized, among other things, that the Guidelines did not account for the "nonmonetary harm" caused by defendant's role in "a broad ranging conspiracy to obstruct justice . . . ."  (Id. at 34:2-10; see also Application Note 20(A)(ii) to U.S.S.G. § 2B1.1 (providing for upward departure where offense caused or risked substantial non-monetary harm)).  The Court also stated during that the evidence showed defendant was "involved in a wide-ranging conspiracy to cover up abuse and corruption occurring in the Men's Central Jail."  (Def. Ex. 1, Tr. at 36:11-15.)

The Court continued the hearing to August 1, 2016, to allow defendant time to consider his options.  On August 1, 2016, defendant withdrew from his guilty plea and the Court set a trial date.  On August 5, 2016, defendant was charged in a superseding indictment with conspiracy, obstruction of justice, and making false statements. At defendant's arraignment, the Court set a trial date of December 6, 2016, ordered the parties to file motions by September 26, 2016, and set an October 31, 2016 hearing on those motions.

On September 26, 2016, defendant filed four motions, including the instant motion to disqualify Judge Anderson, as well as motions to recuse the lead prosecutor and transfer venue.

2

**III.  ARGUMENT**

Defendant argues that Judge Anderson should be disqualified under both 28 U.S.C. § 144 and 28 U.S.C. § 455, because "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." United States v. Hernandez, 109 F.3d 1450, 1453-54 (9th Cir. 1997).  Defendant claims that Judge Anderson's statements created the appearance of partiality because the they reflected that he had "predetermined" the facts of his case and were without support in the record.  (Def.'s Br. at 9-11.)  Defendant ignores key information available to the court that allowed Judge Anderson to make these findings.

> **A.    Judge Anderson's Impartiality Cannot Reasonably Be Questioned Based on Comments Supported by the Record**

Defendant only cites to comments made at sentencing hearing. However, "opinions formed . . . on the basis of facts introduced or events occurring in . . . the current proceedings, or of prior proceedings, do <u>not</u> constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994) (emphasis added).  Indeed, "judicial rulings or information acquired by the court in its judicial capacity will rarely support recusal." United States v. Johnson, 610 F.3d 1138, 1147 (9th Cir. 2010); United States v. Holland, 519 F.3d 909, 913-14 (9th Cir. 2008).[1]  Accordingly, the alleged bias ordinarily must stem from an "extrajudicial source." Liteky, 510 U.S. at 554-56.

---

[1] Defendant's citation to United States v. Wolff, 263 Fed. App'x 612 (9th Cir. 2008), is curious in that it addresses disqualification under Section 455(b)(4) based on a "financial interest in the subject

3

### 1.   The Record Supports Judge Anderson's Comments

Defendant asserts that the record in this case is "bereft of facts showing [that] Mr. Baca participated and was involved in a 'wide-ranging' or 'broad-ranging' conspiracy to obstruct justice." (Def.'s Br. at 4.)  This is false.  The evidence that led the Court to find defendant's role in such a conspiracy to obstruct justice was laid out in plain terms in the plea agreement.  (See Dkt. 5.)  Not only did defendant acknowledge that he lied to the FBI about knowing that deputies would approach FBI Special Agent Leah Marx on September 26, 2011 (a pivotal act in the conspiracy), but he also agreed that:

1.   On August 18, 2011, defendant learned the FBI had conducted an undercover operation that resulted in Inmate AB receiving a cellular phone from a deputy sheriff.  Defendant later learned the federal government and a grand jury were conducting a civil rights and public corruption investigation of deputies in the county jails;

2.   On August 19 and 20, 2011, defendant met with LASD officials, including Tanaka, Carey, Lieutenant Greg Thompson, and Deputies Gerard Smith and Mickey Manzo (all of whom were convicted in related trials).  Defendant put Tanaka in charge of the effort to isolate Inmate AB and investigate how Inmate AB obtained the phone.

3.   On August 23, 2011, defendant was informed by Thompson that the FBI had been able to interview AB at Men's Central Jail. Thompson apologized to defendant for that fact.

---

matter in controversy."  Similarly, defendant makes no effort to analogize Adkins et al. v. USDC-CAC, No. 06-74094 (9th Cir.) to this case or to discuss its facts.  It seems the only reason defendant included these cases in his brief was to taint the presiding judge.

4

4. On September 25, 2011, defendant held a meeting with Tanaka, Carey, and Lieutenant Stephen Leavins (another defendant convicted in a related trial), and discussed approaching SA Marx. Defendant stated that the LASD should approach SA Marx and do "everything but put handcuffs on her." On or about September 26, 2011, two sergeants approached SA Marx and threatened to arrest her.

5. On April 12, 2013, defendant told the lie outlined above, and two other falsities: (i) he was not involved in a conversation about keeping the FBI and Inmate AB away from each other; and (ii) he was unaware and not informed that the Sheriff's Department had terminated the FBI interview of Inmate AB on August 23, 2011. (See Factual Basis to Plea Agreement, Dkt. 5, at ¶¶ 9-10.)

These facts establish the key events of the criminal conspiracy, and defendant's role in it. They provide the facts necessary to form the basis for Judge Anderson's statements that defendant "participated" and was "involved" in a conspiracy to obstruct justice. On these facts alone, the Court's findings were reasonable and do not demonstrate a deep-seated antagonism against defendant.

But the facts before Judge Anderson were not limited to those in the plea agreement. The PSR also supported the Court's finding that defendant participated in a "wide-ranging" conspiracy. The PSR stated that after discovering the cell phone, "members of the LASD conspired to obstruct justice by preventing Inmate [AB] from working with the FBI." (PSR ¶ 13.) The PSR detailed the conspiracy's acts, including "conduct[ing] surveillance on federal agents investigating the offense and threaten[ing] SA Marx with arrest." (Id.)

5

Additionally, the government's sentencing position supported the Court's conclusion.  Defendant quotes (or misquotes[2]) various mitigating statements in the government's sentencing filing, but ignores several aggravating facts the government also detailed:

1.   Defendant "became angry when he learned" of the investigation and "issued orders that, taken literally, may not have been corrupt, but were carried out in an obstructive manner by his subordinates and without his objection." (Gov't Sent. Br., Dkt. 32, at 1.)

2.   After defendant walked out of an August 20 meeting with Tanaka, "[t]he Undersheriff came back into the room and announced that the Sheriff put him in charge of the operation.  Tanaka explained that he had never seen the Sheriff so angry.  Tanaka stated that the FBI was not to have access to Brown."  (Id. at 3.)

3.   Defendant "implored the U.S. Attorney's Office to stop working with the FBI and instead work with the Sheriff's Department to investigate any crimes by deputies."  (Id. at 5-6.)

4.   On September 26, 2011, the day the LASD threatened SA Marx's arrest, defendant appeared on television and "expressed his displeasure over the FBI's decision to investigate and its manner of investigating" the LASD.  (Id. at 7.)

---

[2] Defendant claims that the government wrote "the evidence does not show that he was involved in the hiding of Brown and tampering with witnesses as his subordinates were."  (Def.'s Br. at 5.)  Defendant left out a key word that changes the meaning of the statement.  What the government actually said in its sentencing brief is that the evidence "does not show that he was as involved in the hiding of Brown and tampering with witnesses as his subordinates were."  (Gov't Sentencing Br., Dkt. 32, at 11.)  While the government would like to believe this was a transcription error, this explanation is implausible given that on two occasions before this filing, the government pointed out defendant's error.

5.   After SA Marx was threatened with arrest, her supervisor spoke with Long about their approach of SA Marx.  When asked whether defendant knew there would be a warrant for SA Marx's arrest, Long responded, "The Sheriff knows this, sir."  (Id. at 8.)

In addition, the government outlined in detail the scope of the conspiracy and the acts taken in furtherance of it.  The government noted that "[d]efendant's lies showed that corruption went all the way to the top" of the LASD.  (Id. at 11.)  While defendant responded to the government's brief, he did not refute any of its facts.

Finally, the government argued at sentencing that defendant played a role in the conspiracy.  In explaining the import of defendant's lies, the government stated:

> He lied about his role, his involvement, his knowledge of things that happened from August to September of 2011 that many juries have found to be corrupt, obstructive.  And he did so in order to either hide his involvement in that conspiracy from a criminal standpoint or to save political face so that when it became public what happened, it didn't fall on Mr. Baca.

(See Def. Ex. 1, Tr. at 25:18-25.)

Based on this record, a jurist could have easily found that defendant participated in a "wide-ranging conspiracy to cover up abuse and corruption."  A reasonable person with knowledge of "all the facts," a "well-informed, thoughtful observer," see Holland, 519 F.3d at 913, would not "conclude that the judge's impartiality might reasonably be questioned."  Hernandez, 109 F.3d at 1453-54.  Judge Anderson cannot be disqualified for doing what was required of him: reviewing the record and making findings about the defendant's conduct.  United States v. Conforte, 624 F.2d 869, 882 (9th Cir. 1980) (must be "animus more active and deep-rooted than an attitude of disapproval" based on "known conduct").

7

## 2. Disqualification is Not Warranted Even if Judge Anderson Considered Facts from Related Cases

Defendant suggests that the Court improperly determined that he was involved in a conspiracy based on facts learned from related cases (Thompson and Tanaka).  Assuming, arguendo, that the Court did rely on facts it learned from prior proceedings, this alone would not warrant recusal.  See Litekey, 510 U.S. at 555 (including opinions formed during "prior proceedings" as generally not "constitute[ing] a basis for a bias or partiality motion"); see also Johnson, 610 F.3d at 1147.  Indeed, it would contradict the Local Rules and the District Court's General Order on Assignment of Cases to prohibit a judge from relying on knowledge of related cases when the purpose of the rule is to reduce "substantial duplication of labor" in the proceedings.  (See Gen. Order No. 14-03, Part II.I.1.a.)

As defendant acknowledges, the appearance of impartiality is what matters.  (Def.'s Br. at 9.)  Thus, to warrant recusal, the record must show that the district court's determinations reflected a "high degree of antagonism" towards defendant.  Defendant relies on Antar, but nothing in this record suggests that Judge Anderson pre-determined defendant's guilt "from day one."  (See Def.'s Br. at 9-10, citing United States v. Antar, 53 F.3d 568, 573 (3d Cir. 1995)).  In Antar, the district judge overseeing prosecutions of the Antars also oversaw the civil case against the Antars by the SEC.  Leading up to the Antars' indictment, the judge had issued a repatriation order against the Antars in the civil case.  After one was convicted at trial, and at sentencing, the court made this statement:

> My object in this case from day one has always been to get back to the public that which was taken from it as a result of the fraudulent activities of this defendant and others.

8

. . . [I]f we can get the 120 million back, we would have accomplished a great deal in this case.

(Id. at 573-74) (emphasis added).

The Third Circuit found this statement went too far.  The court recognized that there may be cases where the judge's previous experience with a case may leave him "disdainful of one party's position." (Id. at 578.)  The court stated, however, that the judge's "stark, plain and unambiguous language" conveyed that "his goal in the criminal case, from the beginning, was something other than what it should have been, and indeed, was improper." (Id. at 576.)  "It is difficult to imagine a starker example," the court stated, "of when opinions formed during the course of judicial proceedings display a high degree of antagonism against a criminal defendant." (Id.)  Moreover, there were other circumstances and judicial comments and decisions that "make a reasonable observer even more concerned that the judge had an improper goal."  This included the judge trying to use defendant's bail hearing in his criminal case to enforce the civil repatriation order. (Id. at 577-78.)

This case is not similar to Antar.  As explained above, Judge Anderson's comments were properly based on facts and issues before the Court in this matter at the time of sentencing.  But even if the comments were based the related criminal cases, disqualification would not be warranted because (i) the comments do not reveal an improper goal or purpose from the outset, and (ii) the comments betray no deep antagonism against defendant that would make fair judgment impossible in the future.  Instead, Judge Anderson indicated at the initial sentencing hearing that "certainly [defendant's] good deeds favor the agreed upon sentence." (Def. Ex. 1, Tr. at 36:19-

20.)  And at the hearing on August 1, 2016, Judge Anderson reiterated that he was "going to take into account all of the factors, and that includes [defendant's] health [and] good deeds he's done . . . ." (Gov. Ex. 1, August 1, 2016 Tr. at 5:18-23.)

### B. Judge Anderson's Judicial Determinations at Sentencing Do Not Preclude Him from Presiding Over Future Proceedings

Defendant claims Judge Anderson must be disqualified because there is no "cure" for the appearance of partiality.  There is, however, no demonstrable appearance of partiality here; there is simply a judicial determination from defendant's sentencing hearing. There is no reason to believe Judge Anderson cannot put aside his prior determinations and fairly preside over the defendant's trial. District court judges are commonly expected to do this upon reversal and remand from the Ninth Circuit.  Accord Liteky, 510 U.S. at 551 ("[i]t has long been regarded as normal and proper for a judge to sit in the same case upon its remand and to sit in successive trials involving the same defendant").

## IV.  CONCLUSION

Defendant's claim that the record is "bereft of facts showing" defendant's involvement in a conspiracy is untrue.  Although defendant previously pled guilty to a false statement count, the plea agreement between the parties laid out the conspiracy and discussed defendant's role in it.  The PSR did the same and the government's sentencing brief described the conspiracy in even greater detail.  At no point did defendant object to or refute these facts.  Defendant cannot now obtain disqualification on the ground that the Court took notice of these facts.  Nothing in the record demonstrates a deep-seated antagonism against defendant.  His motion should be denied.

10