# United States District Court
## For The Central District of California

UNITED STATES OF AMERICA,

    Plaintiff,

        v.

LEROY BACA,

    Defendant.

_____

)
)
)
)
)
)
)
)
)
)
)
)

**CR 16-00066 - PA**

**ORDER DENYING DEFENDANT'S MOTION FOR RECUSAL OF CURRENT JUDGE AND REASSIGNMENT TO A DIFFERENT JUDGE [107]**

## I.   BACKGROUND

Defendant Leroy Baca was the Sheriff of Los Angeles County from approximately December 1998 to January 2014. The Los Angeles County Sheriff's Department ("LASD") is the largest sheriff's department in the country and was responsible for, among other things, managing the Los Angeles County jails, including the Los Angeles County Men's Central Jail (MCJ) and the Los Angeles County Twin Towers Correctional Facility (TTCF).

In July 2010, the FBI began investigating allegations of civil rights abuses committed by LASD employees on inmates within the Los Angeles County jails. One of several FBI agents participating in the investigation was Special Agent ("SA") L. Marx. The investigation involved FBI agents interviewing inmates, including Inmate Brown. As part of the investigation, in July 2011, the FBI arranged for a LASD deputy

to smuggle a cell phone into the MCJ and provide it to Inmate Brown. Members of the LASD found the phone in Inmate Brown's possession on August 8, 2011, and subsequently determined that Inmate Brown was an informant working with the FBI.

After discovering the cell phone, members of the LASD conspired to obstruct justice by preventing Inmate Brown from working with the FBI. Among other things, the conspirators kept Inmate Brown from meeting with FBI agents; "hid" Inmate Brown by booking him under an alias and altering records to conceal his whereabouts; and attempted to discourage Inmate Brown from cooperating with the federal government. In addition, they conducted surveillance on federal agents investigating the offense and threatened SA Marx with arrest.

Inmate Brown subsequently reported that he believed the FBI had abandoned him and "left him for dead."

On August 18, 2011, Baca learned from the Assistant Director in Charge (ADIC) that the FBI had conducted an undercover operation that resulted in Inmate Brown receiving a cell phone from a deputy sheriff at the MCJ.  Baca later learned that the FBI, the U.S. Attorney's Office ("USAO"), and a federal grand jury were conducting a civil rights and public corruption investigation involving LASD deputies working at the MCJ and TTCF.

On August 19 and 20, 2011, Baca met with several LASD officials, including Undersheriff Paul Tanaka, Captain William "Tom" Carey, Lieutenant Greg Thompson, and Deputies Gerard Smith and Mickey Manzo about the federal probe. Baca ordered Inmate Brown to be isolated and for LASD officials to investigate how the phone ended up in an inmate's hands. Baca then put Undersheriff Tanaka in charge of how these items would be carried out.

On August 23, 2011, Baca was informed by Lieutenant Thompson that the FBI had interviewed Inmate Brown at the MCJ and that the LASD had terminated the

interview. Thompson apologized to Baca for allowing the FBI to interview Inmate Brown and stated that he would take measures to ensure that it would not happen again.

On August 29, 2011, Baca, Tanaka, Carey and others met with the United States Attorney and other members of the USAO. Baca stated that he wanted the USAO to work with LASD, instead of the FBI, to investigate the allegations of civil rights and corruption violations committed by deputies working in the jails.

On September 25, 2011, Baca had a meeting with Tanaka, Carey and Lieutenant Steve Leavins. During this meeting, they discussed approaching SA Marx. Baca stated during the meeting that LASD's Internal Criminal Investigations Bureau (ICIB) should approach SA Marx and do everything but put handcuffs on her.

On September 26, 2011, two ICIB sergeants (Scott Craig and Maricela Long) approached SA Marx outside of her home and threatened her with arrest.

On April 12, 2013, Baca was interviewed by members of the USAO and FBI about his involvement in the above-described matters. During the interview, Baca made the following false statements: (1) that he was not involved in any conversation about keeping the FBI and Inmate Brown away from each other; (2) that he was unaware and was not informed that the LASD had terminated an FBI interview of Inmate Brown at the MCJ on August 23, 2011; and (3) that he was not aware that LASD officials were going to approach SA Marx until he received a phone call from the ADIC after LASD officials had threatened her with arrest on September 26, 2011.

## II. PROCEDURAL POSTURE OF THE CASE

On February 10, 2016 two things of importance occurred: The U.S. Attorney, apparently with a waiver from defendant, filed an Information against Baca as well as a so-called binding plea agreement between Baca and the government. The single count information charged Baca with making a false statement in violation of 18

U.S.C. §1001(a)(2). The plea agreement entered into between the parties stipulated to a sentence of between 0 - 6 months.  In declining to accept the plea agreement, which would have bound the trial judge to impose a sentence consistent with the parties agreement, (Fed Rules of Crim. Proc. 11(c)(1)(C), the trial judge stated in detail his reasons for concluding that a sentence of no more than six months was neither fair, just nor reasonable.  He made a detailed recitation of the facts, as he understood them, as justification for concluding that the stipulated sentence did not meet the goals of sentencing.  He stated, for example: " The nature and circumstances of the criminal conduct reveal that this conspiracy, an authorized federal grand jury investigation into the corruption and the physical abuse of inmates was derailed.  Steps were taken by the defendant's subordinates to hide an FBI informant from the grand jury, records were destroyed and altered, including a federal grand jury subpoena, deputies were taught how to cover up abuses committed by their fellow deputies, how to look the other way, how to shield the department from embarrassment, all of which led to fostering an us-versus-them mentality, an unwritten code that taught deputies that when an inmate dared to attempt to harm a deputy, the deputies were taught to respond with enough violence to send that inmate to the hospital."  "It's one thing to lie to an AUSA; it's another thing entirely, as the evidence has shown, where the chief law enforcement officer of the County of Los Angeles is involved in a wide-ranging conspiracy to cover up abuse and corruption occurring in the Men's Central Jail."   (Transcript of sentencing hearing of July 18, 2016, DE 107, pp 35-36)

On September 9, 2021 Baca filed a Motion for Disqualification of Judge Percy Anderson pursuant to 28 U.S.C. §§ 144 and 455.  That motion has been randomly assigned to this Court for determination. There is no affidavit accompanying the motion therefore it fails to qualify as a motion under §144 and will therefore be analyzed under §455(a).  For the reasons discussed below, that motion is DENIED.

## III.  LEGAL STANDARD

Motions for disqualification are governed by 28 U.S.C. § 144 and 28 U.S.C. § 455. *See Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008).  Under 28 U.S.C. section 144, if a party demonstrates that "the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein . . . ."  28 U.S.C. § 144.  Under 28 U.S.C. section 455, a judge should disqualify himself from "any proceeding in which his impartiality might reasonably be questioned." *Id.* § 455(a).  Moreover, section 144 requires that a motion made thereunder be determined by a judge other than "the judge before whom the matter is pending." *Id.* § 144.  Section 455 makes no such requirement, but as is customary in this District, all motions for disqualification are referred to another district judge in the same division.  C.D. Cal. General Order 14-03 at 16.

Under both recusal statutes, the substantive standard is whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. *Pesnell*, 543 F.3d at 1043.  To require recusal, a judge's partiality must usually be based on information obtained outside the judicial process, or based upon a predisposition developed outside the judicial process. *Liteky v. United States*, 510 U.S. 540, 553–54 (1994).

### *1.  Basis For Disqualification Motion*

Baca objects to the recitation of any facts not contained in either the plea agreement, the PSR and its Addenda, the Information, and the parties sentencing position papers.  Baca argues none of this Information was developed in connection with the proceedings initiated by the filing of the Information in case number CR-16-

00066-PA. He states: "The only evidence before the Court at the sentencing hearing, however, was that which was referenced in the plea agreement, Information, the PSR and Addendum, and the parties' briefs in response to the PSR." (Ntc. Of Mtn and Mtn for Disqualification, DE 107, p. 2.) The thrust of the argument is that Judge Anderson has been exposed to information outside the confines of this case and therefore, his ability to be impartial might reasonably be questioned.

## IV. RELATED CASES

The Motion also mentions that the Probation Officer who prepared the PSR stated that he "had no information indicating the defendant impeded or obstructed justice." Id. That is true, however The Probation Officer was under an impediment of which the trial judge was not afflicted. The trial judge presided over a number of related trials which supplemented the information presented in the *Baca* case. For example:

### Related Case - 2:13CR00819-PA

Gregory Thompson: Found guilty after a jury trial on Counts 1 and 2 on July 1, 2014. Sentenced on September 26, 2014, to 37 months' prison and one year of supervised release

Lt. Stephen Leavins, ICIB: Found guilty after a jury trial on Counts 1 and 3 on July 1, 2014. Sentenced on September 26, 2014, to 41 months' prison and one year of supervised release.

Gerard Smith: Found guilty after a jury trial on Counts 1 and 2 on July 1, 2014. Sentenced on September 26, 2014, to 21 months' prison and one year of supervised release.

Mickey Manzo: Found guilty after a jury trial on Counts 1 and 2 on July 1, 2014. Sentenced on September 26, 2014, to 24 months' prison and one year of

supervised release.

James McAbee Sexton: Found guilty after a jury trial on Counts 1 and 2 on September 16, 2014. Sentenced on December 16, 2014, to 18 months' prison and one year of  supervised release.

Scott Craig, Sergeant in ICIB: Found guilty after a jury trial on Counts 1, 4 and 5 on  July 1, 2014. Sentenced on September 26, 2014, to 33 months' prison and one year of supervised release.

Maricela Long: Sergeant in ICIB Found guilty after a jury trial on Counts 1, 4 and 6 on  July 1, 2014. Sentenced on September 26, 2014, to 24 months' prison and one year of supervised release.

## Related Case – 2:12CR00039-PA

Gilbert Michel, Deputy at MCJ plead guilty of Bribery, in violation of 18 USC 666, having agreed to accept $20,000 to among other things, smuggle a cell phone into the jail and deliver it to an FBI informant.  Pleaded guilty on January 17, 2012,  to  a  Single-Count Information. Sentenced to 6 months for bribery.

## Related Case - 2:15CR00255-PA

Paul Tanaka: LASD Undersheriff, Convicted on April 6, 2016, of Conspiracy in violation of 18 U.S.C. § 371 as charged in Count One and Obstruction of Justice in violation of 18 U.S.C. § 1503(a) as charged in Count Two of the Two-Count Indictment.   He was sentenced to 5 years in prison.

Captain William Carey, commander of the Internal Criminal Investigation Bureau:   Pleaded guilty to Count 4 on August 19, 2015.  His sentencing is set for January 30, 2017.

Just a cursory review of the testimony of a few of the defendants makes it clear where Judge Anderson acquired much of his information regarding the conspiracy to obstruct the federal investigation into alleged wrongdoing at the Men's Central Jail.  As best as the Court can discern the concern by Baca is two-fold: (1) whether the information acquired by Judge Anderson can be considered information from an extrajudicial source and (2)  whether that information, so acquired, would cause a person informed of the facts to harbor the opinion that Judge Anderson's impartiality should be questioned.

### III.   JUDGE ANDERSON ACQUIRED NO INFORMATION FROM AN EXTRA-JUDICIAL SOURCE

As to the first question, the answer is No.  The information which Judge Anderson cited during the sentencing hearing was not acquired from any extra-judicial source, but from the papers and documents filed in the *Baca* case and from his exposure to the evidence presented in the "elated cases", over which he presided as the trial judge.

In 1994 the Supreme Court addressed this issue in some detail.  That case was *United States v. Liteky*, 510 U.S.540 (1994).  There the Court said "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Id.* at 555. (Emphasis added.)

The "related cases" cited above involved individuals within the LASD who played some role in either smuggling the cell phone into MCJ and giving it to the FBI informant, for a price, or actively taking steps to disrupt and prevent further contact between the FBI and its informant, falsifying jail records to hide the location of the informant from the FBI and the federal grand jury, and intimidating the FBI special

agent assigned to the case to dissuade her from further investigation of the alleged civil rights violations occurring at the jail.  All of these matters could have been consolidated and tried together.  They are that closely related.  Consequently, information developed in the course of those trials, presided over by Judge Anderson can fairly be considered to be information introduced in the course of the "current proceeding or of prior proceedings."   (Bankruptcy judge's alleged predisposition developed in prior related proceeding was not extrajudicial, and moving party failed to show that the judge's rulings were the result of a deep-seated favoritism or antagonism. "The main thrust of Smith's arguments seems to be that Judge Jones made up his mind early and did not change it in the face of subsequent hearings and other proceedings. This is not ground for recusal. Even if Judge Jones clung to his opinion, a little stubbornness is not ordinarily grounds for disqualification." *In re Smith*, 317 F.3d 918, 933–934 (9th Cir. 2002), cert. denied, 538 U.S. 1032, 123 S. Ct. 2074, 155 L. Ed. 2d 1060 (2003).)

## IV.  NOTHING SAID BY JUDGE ANDERSON WOULD CAUSE A REASONABLE BELIEF THAT HIS IMPARTIALITY HAD BEEN COMPROMISED.

The next question is whether someone apprised of the facts would conclude that the judge's "impartiality might reasonably be questioned." "Section 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." In re Mason, 916 F.2d 384, 385 (7th Cir.1990). The "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather is a "well-informed, thoughtful observer." Id. at 386. The standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *United States v. Cooley*, 1 F.3d  985, 993 (10th Cir.1993).

Could anything said by Judge Anderson at the sentencing hearing be reasonably construed to evidence a deep-seated favoritism or antagonism that

would make fair judgment impossible? **No.** First, this is not *Antar I* (53 F. 3d 568 (3d Cir. 1995)) or *Antar II* (71 F.3d 97 (3d. Cir.1995)) where the trial judge announced the outcome he was seeking to achieve at the outset of the trial. Judge Anderson made no such pronouncements nor did he do anything more than explain his rationale for concluding that a sentence of no more than 6 months was not appropriate nor in furtherance of the sentencing goals of the Sentencing Reform Act of 1984. He discussed the sentences he had handed down to other members of the conspiracy, all of whom where subordinates of Baca and all of whom were acting either at his direction or with his knowledge in carrying out his directives. He also addressed, as he was required to do, the issue of unwarranted sentencing disparities among members of the conspiracy who had been found guilty of similar conduct. These were all proper. See 28 U.S.C.§3553(a)(2).

Liteky noted that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German–American defendants: 'One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty.' Id., at 28 (internal quotation marks omitted). Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered

judge's ordinary efforts at courtroom administration—remain immune. 510 U.S. at 555-56.

In order to prevail on a disqualification motion based on bias, the defendant must provide facts which "must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." [510 U.S. at 554]  Judge Anderson's remarks do not even approach the category of expressions of dissatisfaction or annoyance or anger directed at either the defendant or defense counsel which the Court has found permissible, much less an indication of a "bent of mind that may prevent or impede impartiality of judgment."

## V.   CONCLUSION

In the final analysis, Baca has failed to offer facts which would lend support for the claim that disqualification of Judge Anderson is warranted in this matter.  For all the reasons discussed above, the motion for disqualification is DENIED.

**IT IS SO ORDERED.**

DATED: October 13, 2016

_____

OTIS D. WRIGHT, II
DISTRICT JUDGE