Nathan J. Hochman, Bar No. 139137
Brianna Leigh Abrams, SBN 239474
MORGAN, LEWIS & BOCKIUS LLP
The Water Garden
Suite 2050 North
1601 Cloverfield Boulevard
Santa Monica, CA  90404-4082
Tel:    +1.310.907.1000
Fax:    +1.310.907.1001
e-mail:  nathan.hochman@morganlewis.com
e-mail: brianna.abrams@morganlewis.com

Attorneys for Defendant
LEROY BACA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        v.<br><br>LEROY BACA,<br><br>                Defendant. | Case No. CR 16-66(A) - PA<br><br>DEFENDANT LEROY BACA'S REPLY IN SUPPORT OF HIS MOTION TO CHANGE VENUE<br><br><br>Hearing Date: October 31, 2016<br>Hearing Time: 3:00 p.m.<br>Courtroom:  15 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB1/ 88941045.2

CR 16-66(A) - PA

This is Defendant Leroy Baca's REPLY in support of his MOTION TO CHANGE VENUE, or, alternatively, to transfer the case to the courts located in Orange County or Riverside County. Mr. Baca filed his motion (ECF No. 104) on September 26, 2016. The government filed its reply (ECF No. 115) on October 10, 2016. A hearing on this motion is scheduled for October 31, 2016.

The original motion is made pursuant to Federal Rule of Criminal Procedure 21(a). Based on the constant, inflammatory, and far-reaching media coverage surrounding this matter, a trial within the Central District of Califronia, particularly within Los Angeles County, will violate Mr. Baca's due process rights.

This reply is based on the Memorandum of Points and Authorities attached hereto, any exhibits, the files and records of the case and such further and additional evidence and argument as may be presented at the hearing on the motion.

Respectfully submitted,

Dated:         October 17, 2016        MORGAN, LEWIS & BOCKIUS LLP


By: /s/ Nathan J. Hochman
        Nathan J. Hochman
        Attorneys for Defendant
        LEROY BACA

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

1

DB1/ 88941045.2

CR 16-66(A) - PA

# TABLE OF CONTENTS

Notice of Reply ............................................................................................................. 1

Table of Contents .......................................................................................................... i

Table of Authorities ..................................................................................................... ii

I.   ARGUMENT .................................................................................................... 2

    A.   Los Angeles County Has Been Barraged With Prejudicial Media Coverage To An Extent That Overcomes The County's Size ............. 3

    B.   The Media Coverage Has Been Extremely Prejudicial, Widespread, And Constant, Highlighting Mr. Baca's Confession of Guilt ............. 4

    C.   The Standard For Presumed Prejudice Is Whether The Community Was Saturated With Coverage, Not Whether There Is Proof That Everyone Read It ............................................................................... 5

    D.   *Voir dire* Cannot Cure Presumed Prejudice ......................................... 8

II.   CONCLUSION ................................................................................................ 8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB1/ 88941045.2

i

CR 16-66(A) - PA

# TABLE OF AUTHORITIES

## CASES

*Ainsworth v. Calderon*, 138 F.3d 787 (9th Cir. 1998)..............................................7

*Daniels v. Woodford*, 428 F.3d 1181 (9th Cir. 2005)..............................................8

*Parker v. Randolph*, 442 U.S. 62 (1979) ..............................................6

*Powell v. Superior Court for Los Angeles County,*

276 Cal.App.3d 785 (1991) ..............................................4

*Rideau v. Louisiana*, 373 U.S. 723 (1963)  ..............................................3, 9

*Skilling v. United States*, 561 U.S. 358 (2010)..............................................6, 8

*United States v. Chagra*, 669 F.2d 241 (5th Cir. 1982) ..............................................6

*United States v. Croft*, 124 F.3d 1109 (9th Cir. 1997) ..............................................3, 9

## RULES

Fed.R.Crim.P 21(a)..............................................1

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

ii

CR 16-66(A) - PA

DB1/ 88941045.2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    ARGUMENT

This case is, without a doubt, one of the most high-profile federal prosecutions in Los Angeles County for some time. Clearly, the government wants to prosecute Mr. Baca in Los Angeles County. But, its attempt to ensure Mr. Baca is tried here is fatally flawed for three reasons. First, the government suggests that no media coverage is ever too big for a trial in Los Angeles County, in lieu of the actual analysis required when prejudice might be presumed. Second, the government mischaracterizes the media report as some sort of subterfuge by the defense and invents its own impossible standard for media saturation. Third, the government conflates the required showings for presumed and actual prejudice. Overall, the government fails to address the most compelling point of the analysis, namely, the enormous prejudice stemming from the repeated and continual broadcasts in print, TV, radio, and social media—thousands of stories to millions of people in Los Angeles County—of **Mr. Baca's prior confession of guilt** that will be inadmissible in his upcoming trial.

This motion is not about whether Los Angeles County has been saturated with publicity on this case. That much the government cannot credibly dispute, although it tries. The only question for this Court is whether this saturating media coverage up to this point will continue, and everything indicates that it will and, in fact, may intensify as the trial approaches. When media coverage reaches this level, the Supreme Court and the Ninth Circuit have stated that *voir dire* cannot be trusted to produce a fair and impartial jury and prejudice to Mr. Baca's due process rights must be presumed. *See, e.g., Rideau v. Louisiana*, 373 U.S. 723, 727 (1963) (court ignored *voir dire* transcripts when determining whether widespread media coverage prejudiced the jury pool); *United States v. Croft*, 124 F.3d 1109, 1115 (9th Cir. 1997) (once media saturation attains a certain level, potential jurors "cannot be believed when they assert that they can be impartial"). Mr. Baca's trial must be

moved for if not, he will be convicted in the media and in the minds of potential Los Angeles County jurors before one witness testifies or one exhibit is admitted. The concept of presumed prejudice exists for a reason. This case is that reason.

### A. Los Angeles County Has Been Barraged With Prejudicial Media Coverage To An Extent That Overcomes The County's Size

The government suggests that Los Angeles County is just too big to justify moving a trial. *See, e.g.* Gov.'s Resp., ECF No. 115 at 3:2-3 ("…the largest federal judicial district in the nation…"); *id.* at 7:2 ("…the most populous in the nation…"). This depiction of Los Angeles County has been presented to and rejected by other California courts. The California Supreme Court has held that a prosecutor's reliance on Los Angeles County's population to keep a trial there, "if valid, would require that all motions for a change of venue in Los Angeles county must be denied…regardless of the amount of pretrial publicity[.]" *Powell v. Superior Court for Los Angeles County*, 276 Cal.App.3d 785, 795 (1991). This case has been covered thousands of times in Los Angeles County in just the last nine months, day after day, in publications accessed by millions upon millions of people. A story here and there would not overcome the County's population; what surely does is an average of eight stories every single day for months on end, highlighting **Mr. Baca's confession of guilt** (inadmissible at his upcoming trial). These stories have appeared in the County's most prominent publications and broadcasts, with the prospect of a signficant increase in stories as the trial draws closer.

The government gives much misplaced attention to the other much smaller counties within this District, which are remote from the current trial location. Math and geography simply do not support the government's position. Los Angeles County comprises **86%** of the Western Division's potential jurors, and **over half** of the entire District's potential jurors. *See* Def.'s Mot., ECF No. 104 at Exh. 2. Los Angeles County residents will dominate Mr. Baca's potential jury pool numerically. Furthermore, trial in this matter will start each morning in a downtown Los Angeles

courtroom at 8:00 a.m. Practical travel considerations will eliminate wide swaths of potential jurors from outside Los Angeles County, increasing the saturation of potential jurors who have been exposed to the prejudicial media.

Furthermore, although media coverage in the District's other six counties was not similarly presented, it defies reason to suggest that thousands upon thousands of stories detailing the criminal confession of a prominent long-serving Los Angeles County Sheriff did not bleed into neighboring areas. Nevertheless, Mr. Baca acknowledges that there may be a remedy to the due process violations that would accompany a Los Angeles County trial besides changing venue to another federal district in California. Specifically, Mr. Baca proposed in the alternative that his trial be transferred to one of the other counties in this District that have federal courthouses—Riverside or Orange. Such a move would create a jury pool that is not dominated by the most affected county, in which prejudice must be presumed.

**B.      The Media Coverage Has Been Extremely Prejudicial, Widespread, And Constant, Highlightin Mr. Baca's Confession Of Guilt**

Almost 2,000 stories have come out on this case in Los Angeles County in the last nine months, most of them highlighting **Mr. Baca's confession of guilt**. *See generally* Def.'s Mot., ECF No. 104 at Exh. 3. Yet the government brazenly contends that the coverage in this case has "ebbed and flowed." Gov.'s Resp., ECF No. 115 at 4:14. In only a relative sense has the coverage "ebbed and flowed." But, the ebbing and flowing of the waves of coverage have manifestly saturated the beach of public opinion. On certain days, the coverage has "flowed" at a dizzying pace with hundreds of stories in a day, completely drenching Los Angeles County residents with highly prejudicial statesments of **Mr. Baca's confession of guilt**. Even in times where such saturating coverage "ebbed," the prejudicial stories occurred every few days. *See generally*, Def.'s Mot., ECF No. 104 at Exh. 3. In nine months, the longest break in coverage was seventeen days early on in the case. *See id.* That happened once. Typically, coverage hits a fevered pitch on the day of a

major court date, is followed by weeks of followup coverage on a daily basis, then weeks of followup coverage every couple days, then by the frenzy over the next court date, and so on. *See, e.g., id.* at ¶¶ 1588-1905.

Furthermore, as noted above, the content of the ongoing media onslaught has endlessly reiterated the most prejudicial information possible: Mr. Baca's inadmissible confession of guilt. *See, e.g., Skilling,* 561 U.S. at 383 (quoting *Parker v. Randolph*, 442 U.S. 62, 72 (1979)) ("[T]he defendant's own confession [is] probably the most probative and damaging evidence that can be admitted against him."). It's the kind of thing potential jurors simply cannot forget. *See id.; see also United States v. Chagra*, 669 F.2d 241, 251-52 n. 11 (5th Cir. 1982).

Of course, the government tries to gloss over Mr. Baca's confession of guilt by saying it received "some publicity." Gov.'s Resp., ECF No. 115 at 9:11. But after Mr. Baca's plea of guilty, with few exceptions, *hundreds* of subsequent stories continue to mention the confession. *See id.* at ¶¶ 1-1905. There is no way around it. Although it is inadmissible at his upcoming trial, Mr. Baca's confession was broadcast to millions of people hundreds of times over several months—which will only increase as the trial date grows closer. The confession will be "imprinted indelibly in the mind of anyone" who saw or heard it any one of those hundreds of times. *Skilling*, 561 U.S. at 383.

**C.   The Standard For Presumed Prejudice Is Whether The Community Was Saturated With Coverage, Not Whether There Is Proof That Everyone Read It**

The government agrees that, in terms of evaluating how much press a case has had, courts look to whether there was a "barrage" of publicity. *See* Gov.'s Resp., ECF No. 115 at 3:16 (citing *Ainsworth v. Calderon*, 138 F.3d 787, 795 (9th Cir. 1998)). But, shortly thereafter, the government reinvents the analysis in a way that makes it impossible to satisfy. Specifically, the government claims that "[Mr. Baca] does not provide any clear indication of how many people read those articles." *Id.* at 4:19-20. The media report establishes just what the Ninth Circuit

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

5

CR 16-66(A) - PA

DB1/ 88941045.2

requires—that the community was saturated with press coverage, not that everyone necessarily read every story circulated.

Nevertheless, Mr. Baca took the extra step of informing the Court of how many people were exposed to the prejudicial coverage as accurately as possible. Cutaway Media exceeded the media saturation standard by not just collecting every story published in Los Angeles County about Mr. Baca's involvement in this case, and by not just providing general circulation numbers, but by informing the Court of how many people accessed each publication within as short a timeframe as possible. Usually, the numbers reflect how many people accessed the publication the day a story was published.[1]

The government insists that Mr. Baca has failed to meet his burden by not providing exact readership data for each particular story. The government's standard is not supported by the law. A defendant need only show that the community was "saturated" with publicity about the alleged crime. *Ainsworth*, 138 F.3d at 795. The data the government wants are not available and impossible to get. Ratings systems can determine how many people tuned into a news broadcast; they obviously cannot determine who was actually watching. Access tracking databases can determine how many people accessed or purchased a publication; no one can know who actually read any one article. **This is why courts look to media saturation rather than actual readership/viewership.** Indeed, the concept of presumed prejudice predates sophisticated ratings and tracking systems. The Ninth Circuit has reversed convictions for refusal to change venue even with no hard media dissemination data at all. *See, e.g., Daniels v. Woodford*, 428 F.3d 1181, 1211 (9th Cir. 2005).

---

[1] By extension, then, Cutaway Media's report does *not* include all the people who accessed the publication on a later date to read a previous day's story; thus, the numbers are conservatively low.

Still, it's valuable for the Court to know not only that thousands of stories were published in Los Angeles County implicating Mr. Baca and showcasing **his confession of guilt** in this case, but also that those publications were read by millions and millions of people. No one can dispute that stories published on the front page of the Los Angeles Times or in the first page of its website were read by millions of Los Angeles County residents. *See, e.g.,* Def.'s Mot., ECF No. 104 at Exh. 3, ¶ 1876. Neither can the government dispute that millions of people watched local Los Angeles County television broadcasts with prejudicial editorial. *See, e.g., id.* at ¶ 1945. Yes, the readership numbers for the "Patch" publications are month by month for all the "Patch" outlets together; these are the most accurate numbers available. When a big story runs in one Los Angeles County "Patch," it runs in all of them. *See, e.g., id.* at ¶¶ 1776-1841.

By focusing on the lack of exactitude in readership numbers, the government tries to rebut a factor that is not a part of the presumption of prejudice analysis. The government cannot credibly dispute that Los Angeles County has been inundated with nearly unceasing prejudicial press coverage about this case and, in particular, **Mr. Baca's confession of guilt**. One need only turn to Cutaway Media's report. The only question is whether the press will die down. *See Skilling*, 561 U.S. at 383. The media have covered each court date in this case with frenzied anticipation and have mentioned without fail that **Mr. Baca confessed**. *See, e.g.,* Def.'s Mot., ECF No. 104 at Exh. 3, ¶¶ 260-630. The press covered Paul Tanaka's trial almost daily, again consistently mentioning Mr. Baca's confession. *See id.* at 780-1547. There's no reason that the media won't cover the lead defendant with even more fervor. The media coverage has not and will not slow down in this case. Mr. Baca cannot both be tried in Los Angeles County and keep his due process rights intact.

///

///

///

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

7

CR 16-66(A) - PA

DB1/ 88941045.2

### D.     *Voir dire* Cannot Cure Presumed Prejudice

Finally, the government contends that the Court can mitigate any potential bias through *voir dire*. The government also argues that no prejudice can be presumed because no potential jurors have demonstrated prejudice. *See* Gov.'s Resp., ECF No. 115 at 11:1-7. This argument directly contradicts the Ninth Circuit, which has held that after media saturation like the kind in this case, potential jurors "cannot be believed when they assert that they can be impartial." *Croft*, 124 F.3d at 1115. That is why the Supreme Court has completely ignored *voir dire* transcripts when determining whether widespread media coverage prejudiced the jury pool. *See, e.g., Rideau*, 373 U.S. at 727. If prejudice can be presumed, as it can be here, there is no need to make a showing of actual prejudice of the potential jurors in the venire.

## II.     CONCLUSION

The unusual nature of this case cannot be emphasized enough. This is not a garden variety case that received some press coverage. Mr. Baca, one of the most prominent law enforcement leaders in Los Angeles County for over 15 years, has had his case broadcast in thousands of stories in print, radio, TV, and social media to millions of Los Angeles County residents. More importantly, he has had his **confession of guilt**, inadmissible at trial, trumpeted loudly and repeatedly for over nine months with the prospect of the media blowing even harder as his trial date approaches. This **confession of guilt** cannot be erased from jurors' minds nor can the avalanche of prejudical coverage of Mr. Baca's case be swept from their memories. The presumption of prejudice standard was developed to correct situations such as these, where the media saturation has exceeded the tipping point. That standard has been met and should result in the transfer of this case outside of Los Angeles County.

Accordingly, Mr. Baca respectfully requests that the Court transfer this case to another district in California.  Alternatively, Mr. Baca respectfully requests that

the case be transferred outside of Los Angeles County to either Orange or Riverside Counties. Finally, should the Court deny this motion, Mr. Baca respectfully requests leave to renew it at *voir dire*.

Dated:  October 17, 2016

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Nathan J. Hochman
Nathan J. Hochman
Attorneys for Defendant
LEROY BACA

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

9

CR 16-66(A) - PA

DB1/ 88941045.2