Nathan J. Hochman, SBN 139137
Brianna Leigh Abrams, SBN 239474
MORGAN, LEWIS & BOCKIUS LLP
The Water Garden
Suite 2050 North
1601 Cloverfield Boulevard
Santa Monica, CA  90404-4082
Tel:   +1.310.255.9025
Fax:   +1.310.907.2025
e-mail:  nathan.hochman@morganlewis.com
e-mail:  brianna.abrams@morganlewis.com

Attorneys for Defendant
LEROY BACA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br><br>          v.<br><br>LEROY BACA,<br><br>                   Defendant. | Case No. CR 16-66(A) - PA<br><br>**REPLY OF DEFENDANT LEROY BACA TO GOVERNMENT'S RESPONSE TO RECUSE  AUSA BRANDON FOX FROM SERVING AS A PROSECUTOR AND A WITNESS AT TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF NATHAN J. HOCHMAN**<br><br>Hearing date: October 31, 2016<br>Time: 3:00 P.M.<br>Courtroom:  15 |

Defendant Leroy Baca, by and through his attorneys of record, hereby submits his reply to the Government's response to recuse the Government's lead prosecutor, Brandon Fox, from serving as both a prosecutor and a witness at Mr. Baca's upcoming trial set for December 6, 2016.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30721331.1

This reply is based on the files and records of the case, the attached Memorandum of Points and Authorities and Declaration of Nathan J. Hochman, the initial motion and government opposition, and any such argument as the Court may heard on the motion.

Respectfully submitted,

Dated:          October 17, 2016          MORGAN, LEWIS & BOCKIUS LLP


By//s// Nathan J. Hochman
          Nathan J. Hochman
          Brianna L. Abrams
          Attorneys for Defendant Leroy Baca

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30721331.1

CR 16-66(A) - PA

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   INTRODUCTION

The Court is faced with two choices in addressing Mr. Baca's motion to recuse AUSA Brandon Fox from being both the prosecutor and a witness at the trial in this case:

**GRANT THE MOTION** -- By granting the motion, the Court will affirm Mr. Baca's Sixth Amendment right to call witnesses he believes have information that is material to defending himself against the charges that he knowingly and willfully lied when he answered 5 of AUSA Fox's questions during an over 4.5 hour interview of Mr. Baca on April 12, 2013 involving more than 250 related questions.  The Court will acknowledge that Mr. Baca has met the legal standard of showing a compelling need for AUSA Fox's testimony since AUSA Fox will be able to provide relevant, material, admissible and key percipient witness testimony to all aspects of the Baca interview. The Court may note that the government caused this situation itself (i) by choosing to charge as false statements the answers to 5 questions that only AUSA Fox asked which placed AUSA Fox in the best position to observe Mr. Baca's physical responses to the questions that the audiotape of the interview could not capture, (ii) by choosing to have AUSA Fox negotiate the ground rules for the interview and make key decisions during the interview that determined the context of the questions asked and answers received, and then (iii) by choosing AUSA Fox to be the lead prosecutor on the Baca case. The government has two other seasoned and experienced prosecutors on the trial team -- AUSA Elizabeth Rhodes who has tried the underlying cases against other defendants and has been involved in the case since July 2011, even longer than AUSA Fox,[1] and AUSA Eddie Juaregui, who tried the Tanaka case -- so any

---

[1] While Mr. Baca has an equal Sixth Amendment right to call every witness who was in the room during the April 12, 2013 interview, and AUSA Rhodes was in the room during that time, AUSA Rhodes was not the question-asker of the 5 key

argument that the government will be prejudiced by not having AUSA Fox on the trial team is baseless.  The Court will further acknowledge that Mr. Baca has exhausted all other available sources of evidence since all other witnesses, singly or collectively, cannot provide the complete testimony that AUSA Fox can and/or are not subject to governemnt cross-examination on bias.  For instance, Mr. Baca's attorneys will easily be subjected to impeachment for their bias on behalf of Mr. Baca should they testify to anything helpful to Mr. Baca's case.  The FBI agents have refused to be interviewd by Mr. Baca's counsel and are not percipient witnesses to many of the topics regarding the Baca interview.  And the former AUSA now-turned-defense-attorney similarly has refuses to speak to his counsel before trial and suffers from potential bias attack by the government based on her current role as a white collar criminal defense counsel.[2]

**DENY THE MOTION** -- In denying the motion, not only will the Court be denying Mr. Baca his Sixth Amendment rights, but the Court will create a serious potential for reversible error during the trial.  AUSA Fox will effectively get to testify without being cross-examined by being able to argue at closing argument about the clarity of the questions **he asked**, about the context of the interview that **he created**, and about Mr. Baca's physical responses during the interview

questions unlike AUSA Fox; AUSA Rhodes did not set up the ground rules and control the context of the interview unlike AUSA Fox; and AUSA Rhodes was not in the best position to observe Mr. Baca's physical manifestations of memory impairment and confusion unlike AUSA Fox.  Thus, Mr. Baca has not sought at this time to call AUSA Rhodes as a witness but reserves the right to do so depending on the evidence adduced at trial.

[2] Counsel for Mr. Baca has contacted all five witnesses in the room -- AUSA Brandon Fox, AUSA Elizabeth Rhodes, FBI Agent David Dahle, FBI Agent Jason Dalton, and former AUSA now-turned-defense-counsel Margaret Carter -- requesting an interview with them prior to trial to determine what they observed during the April 12, 2013 interview.  All five have turned down counsel's request for an interview.  *See* Declaration of Nathan J. Hochman ("Hochman Decl.") at paragraphs 2-4.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30721331.1

CR 16-66(A) - PA

indicative of whether he had memory problems that **AUSA Fox was in the best position to observe**.  Since the only governemnt witness testifying to the Baca interview will be FBI Agent David Dahle -- a passive observer in the room who did not ask any of the 5 questions at issue and was not involved in any of decisions before, during or after the Baca interview -- Mr. Fox will necessarily be vouching for his own actions without Mr. Baca having had the right to confront him as a witness.  Indeed, his closing argument must include statements like: "Mr. Baca responded to the first question **I asked** . . .  Then Mr. Baca responded to the second question **I asked** . . . etc."  This is the precise situation that the Ninth Circuit has admonished courts to not allow in a criminal prosecution.  *See, e.g., United States v. Prantil*, 764 F.2d 548 (9th Cir. 1985) (noting the very real risk of jury confusion, at its height during final argument, when a jury may accord "testimonial credit to the prosecutor's closing argument").

Accordingly, Mr. Baca respectfully contends that the only conclusion the Court should reach that affirms Mr. Baca's Sixth Amendment rights and avoids the potential for jury confusion and reversible error during trial, is granting the motion to recuse AUSA Fox from participating on the trial team of this case.

If the Court denies the motion and prohibits Mr. Baca from calling Mr. Fox to the stand in the defense case, then Mr. Baca requests that the Court prohibit AUSA Fox from giving the government's closing statement or rebuttal to prevent jury confusion by according his (non-evidentiary) closing argument testimonial weight.  In addition, Mr. Baca intends to argue during his closing argument that the government failed to meet its burden of proof, in part, by failing to call Mr. Fox (among others) to testify about the alleged false statements during the interview. The government typically responds in rebuttal that the defense has the right to call any witnesses it wants at trial but does not have the burden to do so, in order to blunt the defense's argument.  Mr. Baca would further request that the Court

preclude the government from making such an argument should the Court prohibit the defense from calling Mr. Fox as a witness.

## II    ARGUMENT

In its Response, the government makes a number of meritless arguments. First, the government argues that Mr. Baca does not intend to call AUSA Fox as a witness but is engaging in gamesmanship to remove an experienced and successful trial attorney from the government's trial team.  To be clear, the defense intends to call AUSA Fox for all the reasons stated, namely that he asked the 5 questions at issue, he was directly involved in setting up the ground rules and the context of the interview in which the five questions and answers were given, and he was in the best position to observe Mr. Baca's physical manifestations of memory impairment or confusion, particularly since AUSA Fox chose not to have the interview videotaped.  While AUSA Fox may believe that his trial prowess is so exceptional that the government cannot win the case without him, Mr. Baca does not share that inflated view of him.  Mr. Baca recognizes that without AUSA Fox on the trial team, Mr. Baca will be facing two very experienced prosecutors who have actually tried to a jury most of this case (the conspiracy and obstruction of justice charges) before.  In most cases, the prosecution and the defense start on an equal footing, neither having presented the testimony or exhibits that will be used at the current trial or presented closing arguments before a jury on the central issues.  Here, the government will start instead with an enormous advantage with two seasoned and successful prosecutors, AUSA Rhodes and AUSA Jauregui, having put on the same evidence in prior trials that will be used in the current trial.  Whatever marginal benefit the government obtains by having AUSA Fox as its third prosecutor with prior trial experience is greatly outweighed by Mr. Baca's constitutional right to call a material and important witness to his defense.  *United States v. Nixon*, 418 U.S. 683, 709 (1974) ("To ensure that justice is done, it is imperative to the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30721331.1

CR 16-66(A) - PA

function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.").

### A.   Compelling Reasons for AUSA Fox's Testimony

Second, the government argues the defense has not shown a "compelling need" for AUSA Fox's testimony.  The government contends that such testimony would not be relevant, material or admissible, that claims about the expected testimony are without support in the record, and that the defense has not exhausted all other available sources of evidence.  The government shrillingly casts the defense's justifications for AUSA Fox's testimony as "preposterous" and "frivolous."  The government's arguments are simply wrong.

To begin with, on the issues of relevancy, materiality, and admissibility, the government cannot contend with a straight face that obtaining testimony from the precise person who asked the 5 questions at issue and established the context of the interview that produced those 5 questions/answers is irrelevant or non-material.  In his moving papers, Mr. Baca set forth a long list of relevant and material topic areas that would be probed during AUSA Fox's testimony.  These issues that led up to the interview, the ground rules for the interview, and the conduct of the interview, include: (1) the location of the interview; (2) the length of the interview; (3) the time of day for the interview; (4) the topics to be covered in the interview; (5) the decision to conduct an unsworn interview, rather than have Mr. Baca make a sworn appearance in front of a grand jury; (6) the decision to have AUSA Fox ask the majority of questions during an interview labelled an "FBI" interview, including the questions that resulted in the allegedly 5 false statements at issue in this case.; (7) the decision to offer Mr. Baca a non-target letter, which Mr. Fox signed on behalf of the Government, and the terms contained therein, instead of an offer of full immunity, or limited-use "Queen for a Day" immunity or a proffer letter in connection with the interview; (8) the decision not to allow Mr. Baca to review a

transcript of his interview after the interview, check it for accuracy, and address any errors he may have found; (9) the decision to only audiotape the interview rather than videotape it; (10) the decision to why AUSA Fox failed at the beginning of the interview, in contrast to other interviews he conducted in the investigation, to admonish Mr. Baca that although Mr. Baca was not under oath, he could be prosecuted for any false statement to the FBI and U.S. Attorney's Office; and (11) the decision to not inform Mr. Baca about the manifest conflict of interest of his attorneys in representing him and other LASD members who provided statements directly against Mr. Baca's interests (e.g., the Tom Carey December 28, 2012 interview attended by Mr. Carey's Jones Day lawyer and Mr. Fox). In addition, given Mr. Baca's anticipated defense of memory impairment stemming from his Alzheimer's disease, Mr. Fox is in the best position as the question-asker to testify about Mr. Baca's physical manifestations of memory impairment or confusion during his testimony, particularly dealing with the 5 charged questions/answers.

To be relevant under Federal Rules of Evidence 401, "evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." With respect to materiality, Count 3 charges Mr. Baca with making "materially" false statements to the FBI **and the U.S. Attorney's Office for the Central District of California.** In order to assess whether the particular alleged false statements were material, namely that they had the "natural tendency to influence, or w[ere] capable of influencing" the [FBI's and U.S. Attorney's Office's decisions or activities, the context of the entire interview is relevant. For instance, had the government admonished Mr. Baca, like other witnesses, that any statement given during the interview, if false, could result in a federal criminal offense in violation of 18 U.S.C. Section 1001, surely the government would be seeking to introduce that statement to prove willfulness. Similarly, the defense should be allowed to probe why such admonition was not given and attack the bias of the person in control of

the interview, AUSA Fox, in deciding not to give such an admonition.  If the government had allowed Mr. Baca to review the transcript of his interview and he made no changes, surely the government would be seeking to introduce as evidence of willfulness that Mr. Baca made no changes after being given the chance to do so.  Similarly, the fact that AUSA Fox did not provide Mr. Baca with that opportunity is relevant to willfulness and the bias of the person, AUSA Fox, who decided not to allow this review to occur.  The same arguments can be made as well for not placing Mr. Baca under oath during the interview vs. placing him under oath and not calling him to testify before the grand jury vs. calling him to so testify.

As importantly, Mr. Baca should be able to explore with the question-asker AUSA Fox his additional bias in not ensuring that Mr. Baca be informed and waive the manifest conflict of interest in having the Jones Day attorneys represent him as well as other adverse witnesses to Mr. Baca; and his bias in not having the interview videotaped which would have produced a more complete record, including the physical manifestations of any memory impairment or confusion.

With respect to the materiality of the alleged false statements, Count 3 refers to the governemnt agencies involved as both the FBI and the U.S. Attorney's Office for the Central District of California.  To determine the materiality of the alleged false statements on the U.S. Attorney's Office's decision-making and activities, it is highly relevant to cross-examine the main question-asker from the U.S. Attorney's Office, AUSA Fox, in the context of the entire interview as to what influence, if any, Mr. Baca's alleged false statements played in connection with his office's investigation. AUSA Fox is in a much superior position to testify (and be cross-examined) to this influence than FBI Agent Dahle.

In addition to relevance, materiality and admissibility of AUSA Fox's testimony, the government takes issue with the fact that there is no supposed support in the record that AUSA Fox will have the information the defense seeks. As AUSA Fox has refused to be interviewed by Mr. Baca's counsel prior to trial,

Hochman Decl. at paras. 2-3, the defense has not had the chance to obtain his answers to all the questions it will pose him.  However, like with other witnesses, the defense is allowed to call AUSA Fox as a witness based on its good faith belief that AUSA Fox has percipient, relevant, material and admissible testimony on all the areas identified above.  AUSA Fox was directly involved in all the negotiations leading up to the Baca interview; he was the lead prosecutor at that point in the investigation; and he conducted the majority of the Baca interview, including asking all the questions that led to the 5 charged Baca answers.  Interestingly, the government has not stated that AUSA Fox does not have this relevant, material testimony to offer, only that the defense is "guessing" that he does.  As stated above, the defense is not "guessing" that AUSA Fox has this testimony to give; he does and the defense wants to the jury to hear it.

B.      No Other Witness Possesses The Critical Information To Which AUSA Fox Can Testify

The government's last argument to keep AUSA Fox off the stand is to contend that the defense has not exhausted all available sources of evidence other than AUSA Fox to obtain the testimony it seeks. The government notes that there are 5 other witnesses excluding AUSA Rhodes that can offer at least some of the testimony.  Each of these witnesses, however, have certain key disadvantages that AUSA Fox does not.  With respect to Mr. Baca's two attorneys who were present at the interview, the government will most certainly attack the obvious bias of these attorneys, whose must zealously advocate on Mr. Baca's behalf, if they testify to anything helpful to the defense.  With respect to the two FBI agents, neither has agreed to speak with Mr. Baca's counsel prior to trial and neither was involved to counsel's knowledge in establishing the ground rules for the interview, in making the key decisions during the interview, and in asking any one of the 5 questions/answers at issue.  The fact that they may have been passive observers in

the room does not provide an equal or more compelling alternative to calling AUSA Fox who was actively involved in all aspects of the key questioning and all events that occurred before, during and after the interview. As for former AUSA now-turned-defense-attorney Margaret Carter, she too has refused to be interviewed by Mr. Baca's counsel and her current role and bias as a defense attorney can be easily exploited by the government, whereas AUSA Fox's bias provides no such attack from the government.

As noted above, the government chose the interviewer (AUSA Fox), chose the 5 false statements to charge, all asked by one person (AUSA Fox), and chose the lead prosecutor (AUSA Fox). The government now asks the Court to have these choices outweigh Mr. Baca's Sixth Amendment right to call the very person that the govenrment chose to put in the middle of the charged conduct. Since Mr. Baca has demonstrated a compelling need to call AUSA Fox to provide relevant, material and admissible testimony concerning the main elements of the false statement charges -- knowledge, willfulness, falsity and materiality, the governemnt should not be able to shield AUSA Fox from cross-examination on the witness stand . No other witness can provide, or is in the best position to provide, this key testimony, and the Sixth Amendment and the law does not require Mr. Baca to settle for second-rate and incomplete testimony in its place.

## III    CONCLUSION

As elaborated above, Mr. Baca has met the legal standard to demonstrate why he has a compelling need to call AUSA Fox in his defense. It is not a ploy, gamesmanship, or a thinly veiled attempt to deprive the government from having a third experienced prosecutor. Instead, Mr. Baca's request is founded on his Sixth Amendment rights and in his good faith belief that AUSA Fox has relevant, material, and key testimony to deliver concerning the false statement charges that no other witness singly or collectively is in the best position to offer. If the Court grants Mr. Baca's motion to call AUSA Fox as a witness, then Mr. Baca requests

DB2/ 30721331.1

CR 16-66(A) - PA

that the Court preclude him under the advocate-witness rule from being part of the prosecution trial team. *Prantil*, 764 F.2d at 552-53. If the Court denies the motion, then Mr. Baca requests that the Court preclude AUSA Fox from giving the closing argument or rebuttal that necessarily has to address his personal actions during the Baca interview. Such a preclusion will prevent jury confusion and the jury giving testimonial weight to closing arguments. In addition, Mr. Baca seeks to have the government prevented from arguing during closing arguments that the defense could have called AUSA Fox should the Court prevent him from doing so.

Dated:       October 17, 2016                    MORGAN, LEWIS & BOCKIUS LLP


                                                 By*//s// Nathan J. Hochman*
                                                    Nathan J. Hochman
                                                    Brianna L. Abrams
                                                    Attorneys for Defendant Baca

## DECLARATION OF NATHAN J. HOCHMAN

I, NATHAN J. HOCHMAN, declare as follows:

1.      I am an attorney licensed to practice law in the State of California and before this court.  I am a partner in the law firm of Morgan, Lewis & Bockius, LLP, and counsel of record for Defendant Leroy Baca ("Mr. Baca") in the above-entitled matter.  I make this declaration in support of Mr. Baca's reply regarding his motion to recuse AUSA Brandon Fox as both a prosecutor and witness in this case.  I have personal knowledge of the matters set forth herein, except where stated otherwise, and could and would testify competently thereto if called upon to do so.

2.      In trying to determine the evidence available from the individuals who were representing the governemtn during Mr. Baca's April 12, 2013 interview, I had email correspondence during the week of October 10, 2016 with AUSA Brandon Fox, AUSA Elizabeth Rhodes, and AUSA Eddie Juaregui as well as with Chief, Trials, Integrity, and Professionalism AUSA Stephen Wolfe and the Chief of the Criminal Section AUSA Lawrence Middleton.  In that email correspondence, I asked to interview AUSAs Brandon Fox and Elizabeth Rhodes and FBI Agents Jason Dalton and David Dahle -- who were all present during the April 12, 2013 interview -- prior to trial and under oath.

3.      On October 13, 2016, AUSA Wolfe emailed me and stated in response to my request to interview AUSAs Fox and Rhodes: "I have spoken with AUSAs Fox and Rhodes, neither of whom wishes to be interviewed."  On October 14, 2016,

AUSA Middleton emailed me and stated in response to my request to interview FBI Agents Dalton and Dahle: "I have been advised that the agents [Dalton and Dahle] have now had an opportunity to consult with counsel and will not be interviewed."

4.      I also reached out to Margaret Carter, who was an AUSA in the room durnig the interview on April 12, 2013 with Mr. Baca, but left the U.S. Attorney's Office in 2015.  Ms. Carter joined at that time the law firm O'Melveny & Myers as a partner involved with white collar criminal defense for corporations and individuals. I emailed Ms. Carter a similar request for an interview to inquire into what she knew about the April 12, 2013 Baca interview.  On October 13, 2016, Ms. Carter responded in an email and stated: "I cannot agree to a voluntary interview on this topic."

I declare under penalty of perjury that the foregoing is true and correct to the best of my belief.

DATED:      October 17, 2016       *//ss//Nathan J. Hochman*_____
                                                        NATHAN J. HOCHMAN

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30721331.1

CR 16-66(A) - PA