Nathan J. Hochman, SBN 139137
Brianna Leigh Abrams, SBN 239474
MORGAN, LEWIS & BOCKIUS LLP
The Water Garden
Suite 2050 North
1601 Cloverfield Boulevard
Santa Monica, CA  90404-4082
Tel:    +1.310.907.1000
Fax:    +1.310.907.1001
e-mail: nathan.hochman@morganlewis.com
e-mail: brianna.abrams@morganlewis.com

Attorneys for Defendant
LEROY BACA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. CR 16-66(A) - PA |
|---|---|
| Plaintiff, | REPLY IN SUPPORT OF MOTION OF DEFENDANT LEROY BACA TO STRIKE SURPLUSAGE FROM FIRST SUPERSEDING INDICTMENT |
| v. | |
| LEROY BACA, | |
| Defendant. | Hearing Date:   October 31, 2016 |
| | Time:             3:00 p.m. |
| | Courtroom:     15 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

1

CR 16-66(A) - PA

DB2/ 30721505.1

This is Defendant Leroy Baca's REPLY in support of his MOTION TO STRIKE SURPLUSAGE FROM FIRST SUPERSEDING INDICTMENT. Mr. Baca filed his motion (ECF No. 102) on September 26, 2016. The Government filed its opposition (ECF No. 113) on October 10, 2016. A hearing on this motion is scheduled for October 31, 2016.

The original motion is made pursuant to Federal Rule of Criminal Procedure 12(b) and Federal Rule of Criminal Procedure 7(d) and on the grounds that the assertion is surplusage because it goes beyond alleging the elements of the offenses charged, is irrelevant and is extremely prejudicial.

This reply is based on the Memorandum of Points and Authorities attached hereto, the files and records of the case and such further and additional evidence and argument as may be presented at the hearing on the motion.

Respectfully submitted,

Dated:    October 17, 2016            MORGAN, LEWIS & BOCKIUS LLP


By */s/ Nathan J. Hochman*
      Nathan J. Hochman
      Attorneys for Defendant
      LEROY BACA

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30721505.1

2

CR 16-66(A) - PA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Paragraph 7(b) of the First Superseding Indictment[1] contains prejudicial, inflammatory, and irrelevant allegations pertaining to alleged prisoner abuse and gang-like and violent behavior by deputies at Los Angeles County's Men's Central Jail ("MCJ").  Unlike paragraphs 7(a) and 7(c), paragraph 7(b) fails to show any connection between the alleged abuse and knowledge of such abuse by then Sheriff defendant Leroy Baca.  Nor does paragraph 7(b) provide any nexus between the alleged salacious gang-like and violent behavior and the FBI's investigation of such allegations.  Without such a connection to Mr. Baca or the FBI's investigation, the allegations in paragraph 7(b) serve no other relevant purpose than simply highly prejudicing the jury.  Accordingly, paragraph 7(b) should be struck under Federal Rules of Criminal Procedure 7(d).

## II.     THE COURT SHOULD GRANT MR. BACA'S MOTION TO STRIKE PARAGRAPH 7(B) IN ITS ENTIRETY

Inflammatory or prejudicial language that is irrelevant or immaterial to the charges brought has no place in an indictment, and courts should strike such language as surplusage under Federal Rule of Criminal Procedure 7(d).  *See United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988).  As argued in detail in Mr. Baca's Motion to Strike, paragraph 7(b) of the First Superseding Indictment constitutes such surplusage.  It is both irrelevant to the charges alleged and highly prejudicial.

While the topic of alleged prisoner abuse at the jails may have some contextual relevance to the charges against Mr. Baca, this trial is not about prisoner abuse, but rather about Mr. Baca's alleged obstruction of and alleged conspiracy to

---

[1] Paragraph 7(b) provides as follows: "From no later than December 2010 and continuing to at least July 2011, allegations surfaced that LASD deputies working on the 3000 floor of the MCJ, who called themselves the "3000 Boys," exhibited gang-like and violent behavior, used excessive force against inmates, and falsified reports to cover up wrongdoing."

obstruct an FBI investigation into alleged abuse.  Thus, allegations pertaining to prisoner abuse are only relevant to the extent they bear a nexus to the FBI investigation.  Further, a nexus only exists if Mr. Baca had direct knowledge of such abuse.  It is not enough for the Government to vaguely allege that "allegations surfaced" of alleged abuses by the "3000 Boys" without any temporal reference for when such **underlying actions** took place. To be relevant, these allegations of abuse must be connected to the FBI investigation.  Paragraph 7(b) fails entirely to provide a basis for such a connection and is thus irrelevant.

### A. Paragraph 7(b) Is Irrelevant Because it Fails To Provide Any Time Period for the Alleged Abuses That Demonstrates That They Were Within The Scope of The FBI Investigation

While the Government argues that that the allegations in paragraph 7(b) are relevant to show Mr. Baca's knowledge of corruption and abuse inside the Los Angeles County jails, as well as his motive and intent to obstruct a grand jury investigation into those issues, it completely ignores the time period for such alleged abuses.  Paragraph 7(b) specifies only that from December 2010 to at least July 2011, a period that predates the relevant time period for any of the charges relating to the alleged obstruction, "allegations surfaced" regarding purported abuses by deputies on the 3000 floor of MCJ.  As written, one has no idea whether the alleged abuses in paragraph 7(b) were within the scope of the FBI investigation at issue.  By using the vague phrase "allegations surfaced," Paragraph 7(b) did not provide any information as "to whom" the allegations surfaced, "where" the allegations surfaced, "how" the allegations surfaced, or even "who" made the allegations that surfaced. The time period of the alleged underlying abuses is also critical to determining whether they are of any relevance whatsoever to the charges alleged.  For example, if these allegations took place years or even decades prior to August 2011, there would be no doubt that the allegations as written would be irrelevant.

The claims contained within the Government's opposition illuminate the

need for such temporal constraints.  For example, the Government claims that the allegations in paragraph 7(b) are necessary because they "show defendant's knowledge of a culture of abuse and corruption within the jails and provide a motive to obstruct the federal investigation."  Opp. at 4:1-3.  The Government argues that evidence of such knowledge is necessary to prove that Mr. Baca knew the object of the alleged conspiracy—"obtruct[ing] a federal grand jury's investigation of inmate abuse and corruption within the jails"—and that he intended to accomplish the alleged conspiracy.  *Id.* at 1:19-21.  However, in order for Mr. Baca's purported knowledge of this alleged abuse to have any bearing on this charge, the alleged abuse must have actually been the subject of the FBI investigation.  Without temporal constraints, there is no way the Government can demonstrate the allegation is relevant to the FBI investigation.

Similarly, the Government claims that paragraph 7(b) is necessary to prove that Mr. Baca "acted corruptly" in allegedly obstructing the investigation.  *Id.* at 1:23.  Specifically, the Government argues that the fact that "defendant had known of and had not stopped inmate abuse by members of the 3000 Boys tends to show . . . an intent to protect deputies and to stop the government from learning the truth."  *Id.* at 4:16-19.  This claim, however, is in direct conflict with the relevant dates and exemplifies why such dates are necessary to determine whether the allegations in paragraph 7(b) are relevant to the charges.

Ultimately, the relevance of any allegation concerning prisoner abuse at the jails is dependent upon whether the abuse was part of the FBI's investigation.  Because paragraph 7(b) lacks such crucial details, the allegations must be deemed irrelevant to the charges against Mr. Baca and stricken.

B.    **Paragraph 7(b) Is Irrelevant Because It Does Not Allege That Mr. Baca Had Any Direct Knowledge of The Allegations Contained Therein**

Paragraph 7(b) also fails entirely to connect Mr. Baca with any direct knowledge of the allegations at issue.  As the Government acknowledges, it is

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30721505.1

3

CR 16-66(A) - PA

charged with proving that Mr. Baca knew the object of the conspiracy to obstruct the FBI investigation into the alleged abuse at the jail.  However, paragraph 7(b) does not allege such knowledge.  Unlike paragraph 7 (a) and (c),[2] paragraph 7(b) does not even allege that Mr. Baca was told or otherwise informed of the alleged abuses contained therein.  Paragraph 7(b) merely states that "allegations surfaced" regarding the alleged abuses by the deputies on the 3000 floor.  While the Government argues that the introductory sentence of paragraph 7 that, "[d]efendant BACA was well aware of the allegations of rampant abuse of inmates at [Men's Central Jail] and [Twin Towers Correctional Facility]," "clearly implie[s]" that Mr. Baca knew about the allegations in subpart (b), the paragraph provides no basis for how Mr. Baca acquired such knowledge.  Opp. at 2:1-11, 4:25-28.  Each other subpart of paragraph 7 at least alleges some link of Mr. Baca to the knowledge of the allegations.[3]  Without such linkage, paragraph 7(b)'s highly prejudicial allegations are not relevant to proving Mr. Baca's knowledge or motivation to obstruct an FBI investigation into abuse in the jails and therefore must be stricken as surplusage. *See, e.g.*, *United States v. Martin*, No. CR 07-1205(B)CBM, 2009 WL 667299, at *5 (C.D. Cal. Mar. 10, 2009); *United States v. Miller*, 26 F. Supp. 2d 415, 420-21 (N.D.N.Y. 1998).  Inclusion of such unnecessary and inflammatory language in the indictment and evidence related thereto at trial risks biasing the jury and wasting the jury's time with a mini-trial for prisoner abuse, a crime with which

[2] Mr. Baca's comparison of paragraphs 7(a) and (c) to paragraph 7(b) does not concede the relevancy or admissibility at trial of allegations contained with paragraphs 7(a) and (c).

[3] Paragraph 7(a) alleges: "Between at least sometime in 2009 and September 2011, the American Civil Liberties Union (the 'ACLU') informed defendant BACA of and published reports about allegations of pervasive physical abuse, violence, and retaliation by LASD deputies against inmates. Defendant BACA and the LASD generally responded to these allegations with denials and internal investigations that almost always concluded that the allegations were 'unfounded.'"  Paragraph 7(c) alleges: "By no later than on or about July 26, 2011, defendant BACA was told that a chaplain witnessed deputy abuse of an inmate at MCJ."  Dkt. No. 70 at 3.

Mr. Baca is not charged. Under Rule 403 of the Federal Rules of Evidence, whatever minimal probative value this evidence may have will be substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time. Thus, such language must be stricken.

## III.   IN THE ALTERNATIVE, THE COURT MUST STRIKE THE GOVERNMENT'S PREJUDICIAL AND INFLAMMATORY ALLEGATIONS FROM PARAGRAPH 7(B)

If, despite the arguments above, the Court is inclined to find that some of the allegations in paragraph 7(b) are relevant to the charges alleged against Mr. Baca and do not implicate Rule 403 concerns, the Court, at a minimum, should strike the words "who called themselves the 3000 Boys" and "exhibited gang-like and violent behavior" from the paragraph. There is simply no basis for the Government's inclusion of this additional inflammatory language other than to prejudice the jury. Courts routinely exclude such "colorful" or inflammatory language as surplusage where "less colorful and more accurate words would suffice." *United States v. Hubbard*, 474 F. Supp. 64, 83 (D.D.C. 1979); *see also, e.g.*, *United States v. Hsia*, 24 F. Supp. 2d 14, 26–27 (D.D.C. 1998) (excluding the phrases "secret, disguised and illegal" and "long standing pattern" because they were "unnecessarily inflammatory and their omission would not essentially alter the substance of the indictment" and holding that "[i]t is inappropriate to use potentially inflammatory language in an indictment when not absolutely necessary").

In *Hubbard*, the court struck as surplusage the words "infiltrate," "burglary," "cover up," "covertly," "bogus," "illegally," and "operatives" as used to describe allegations contained within an indictment that charged the defendants with conspiracy to collect, by covert means, certain data related to the Church of Scientology. *Hubbard*, 474 F. Supp. at 83. The court held that "use of such colorful words to describe the allegations in the indictment is improper where less colorful and more accurate words would suffice." *Id.* The Government contended that the defendants' arguments constituted "mere semantic quibbling" but the court

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30721505.1

5

CR 16-66(A) - PA

found that such words were "prejudicial and unnecessarily loaded." *Id.*

Here, the additional language included in paragraph 7(b) is exactly the type of "colorful" language that should be stricken. The nickname that the deputies supposedly called themselves is entirely irrelevant to proving that Mr. Baca was aware of alleged abuse at the jails or that the FBI was investigating such abuse. So too are the Government's characterizations of the deputies' alleged behavior as "gang-like" or "violent."

Additionally, this language is highly prejudicial to Mr. Baca as the jury may associate Mr. Baca with this "gang-like" or "violent" behavior. The Government cannot contend, on one hand, that as the "elected Sheriff, [Mr. Baca] would have . . . owned any scandal that occurred within his department" and then, on the other hand, argue that there is no risk that the jury will associate the Government's characterizations of the behaviors of deputies within his department with Mr. Baca himself. The Ninth Circuit has a long standing practice of excluding references to gang affiliation, precisely because of the risk that the jury may associate a defendant with such behavior. *See, e.g.*, *Kennedy v. Lockyer*, 379 F.3d 1041, 1055 (9th Cir. 2004). While the Government may be correct in pointing out that it has not charged Mr. Baca with being a member of a gang, the risk that the jury will associate Mr. Baca with the purported "gang-like" behaviors of deputies in his department remains.

Accordingly, although Mr. Baca believes that the entirety of paragraph 7(b) is irrelevant and prejudicial and should be excluded, if the Court finds that some of the allegations in paragraph 7(b) are relevant, the paragraph should be amended to the following to avoid the substantial risk of prejudice to Mr. Baca:

> From no later than December 2010 and continuing to at least July 2011, allegations surfaced that LASD deputies working on the 3000 floor of MCJ used excessive force against inmates and falsified reports to cover up

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Santa Monica

6

CR 16-66(A) - PA

DB2/ 30721505.1

wrongdoing.

## IV.   <u>CONCLUSION</u>

Mr. Baca respectfully requests that the Court grant its Motion to Strike paragraph 7(b) in its entirety as the entire paragraph is irrelevant to charges brought against Mr. Baca and is highly prejudicial.  Alternatively, if the Court is inclined to rule that some of the allegations contained in paragraph 7(b) serve a relevant purpose, Mr. Baca requests that the paragraph be amended as stated above to avoid the significant risk of prejudice to Mr. Baca.

Dated:   October 17, 2016                    MORGAN, LEWIS & BOCKIUS LLP


                                             By */s/ Nathan J. Hochman*
                                                Nathan J. Hochman
                                                Attorneys for Defendant
                                                LEROY BACA

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

7

CR 16-66(A) - PA

DB2/ 30721505.1