EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No. 290409)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
LIZABETH A. RHODES (Cal. Bar No. 155299)
Assistant United States Attorney
Chief, General Crimes Section
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
Assistant United States Attorney
Major Frauds Section
    1500/1200/1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0284/3541/4849
    Facsimile: (213) 894-0141
    E-mail:    Brandon.Fox@usdoj.gov
            Lizabeth.Rhodes@usdoj.gov
            Eddie.Jauregui@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 16-66(A)-PA |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION TO BAR TESTIMONY OF DEFENDANT'S PROPOSED EXPERT JAMES SPAR PURSUANT TO FEDERAL RULES OF EVIDENCE 401, 403, AND 702 AND *DAUBERT*; DECLARATION OF BRANDON D. FOX; EXHIBITS |
| v. | |
| LEROY BACA, | |
| Defendant. | |
| | Hearing Date: November 21, 2016 |
| | Hearing Time: 3:00 p.m. |
| | Location:    Courtroom of the Hon. Percy Anderson |

Defendant seeks to introduce expert testimony to link his actions charged in the indictment to a diagnosis of mild cognitive impairment that he received years later.  Because defendant's proffered testimony is not based on reliable methodology and sufficient facts, but instead would be confusing and prejudicial to

the jury, Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brandon D. Fox, Lizabeth A. Rhodes, and Eddie A. Jauregui, files this motion to bar the testimony of defendant's proposed expert, Dr. James Spar.

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 7, 2016                Respectfully submitted,

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


*/s/ Brandon D. Fox*
Brandon D. Fox
Lizabeth A. Rhodes
Eddie A. Jauregui
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES...............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.    INTRODUCTION.................................................1

II.   STATEMENT OF FACTS..........................................1

III.  ARGUMENT....................................................5

      A.    Rules Governing Expert Testimony......................5

      B.    Testimony of Defendant's Diagnoses from 2014 to 2016
            Inadmissible Without Proper Link to the Charged Crimes....6

      C.    Testimony Linking Defendant's Current Diagnosis to the
            Charges is Entirely Speculative and Inadmissible..........7

IV.   CONCLUSION.................................................12

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

**CASES**

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579
        (1993)...............................................1, 6, 7

Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999)........6

Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th
        Cir. 1996).................................................6

United States v. Amaral, 488 F.2d 1148, 1152 (9th Cir. 1973)....6, 11

United States v. Byers, 730 F.2d 568, 571 (9th Cir. 1984) ..........6

United States v. Cruz-Ramirez, 2011 WL 2446278, at *6 (N.D. Cal.
        June 17, 2011).........................................10, 11

United States v. Harmanek, 289 F.3d 1076, 1093 (9th Cir. 2002)6, 7, 8


**RULES**

Fed. R. Evid. 401 . . . . . . . . . . . . . . . . . . . . . . . . . 1

fed. R. Evid. 403 . . . . . . . . . . . . . . . . . . . . . . . 1, 12

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Defendant Leroy Baca seeks to introduce opinions from a psychiatrist, Dr. James Spar, regarding defendant's mental state in 2011 and 2013.  Dr. Spar's proposed testimony, however, fails to meet each requirement necessary to admit expert testimony: it is irrelevant and not helpful to the jury, it is inaccurate and not medically or scientifically based, and it is based on insufficient facts and data.  Dr. Spar's proposed testimony would result in juror confusion and unfair prejudice to the government.  The Court should preclude defendant from offering this testimony at trial pursuant to Federal Rules of Evidence 401, 403, and 702, and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).

**II.    STATEMENT OF FACTS**

The indictment alleges that defendant: (1) conspired to commit and committed obstruction of justice from August to September 2011; and (2) lied to the federal government in April 2013.  At the time of his offenses, defendant was the Sheriff of the Los Angeles County Sheriff's Department.  During his 16-year tenure as Sheriff, he never reported any concerns about memory loss or cognitive impairment to any doctor.  (<u>See</u> Fox Decl., Ex. 1 at 30 ¶ I.)  Indeed, the opposite is true.  Defendant repeatedly went to the doctor and reported no issues related to cognitive functioning.  (<u>Id.</u> at 12-13.)  Doctors who saw him from 2010 to 2013 observed and reported that he was alert and oriented to person, place, and time, that there were no significant neurological findings, and that psychiatric affect was always normal.  (<u>Id.</u>)  All the while, defendant continued to oversee the Sheriff's Department, the nation's largest, and perform his

executive tasks, including regularly testifying before the Los Angeles County Board of Supervisors.  In addition, defendant planned to run for re-election in 2014.  (See Fox Decl., Ex. 2.)

Approximately 20 months after his alleged false statements to the government and 40 months after his alleged obstruction of justice, defendant decided to retire as Sheriff and not seek reelection.[1]  In his press conference, defendant offered no medical reason for his resignation. (See Fox Decl. at ¶ 2.)

It was only in March 2014 that defendant sought medical advice based on concerns about his cognitive functioning.  (Fox Decl., Ex. 1 at 30 ¶ I.)  Medical records from that period indicate that defendant's chief complaint was sleep disturbance, although defendant also complained of anxiety, depression and memory difficulties.[2] (Id.)  Objective assessments of defendant's memory and general cognitive functioning were deemed normal on several occasions from March to April 2014: (a) March 10, 2014; (b) March 27, 2014, when he was seen at Kaiser Permanente's Geriatric Memory Clinic and given a more comprehensive screening; (c) April 12, 2014; and (d) April 29, 2014.  (Id.)  It was not until May 13, 2014, when defendant was seen by a neuropsychologist – and same day the Sexton trial began – that cognitive impairments were first noted by a clinician.  (Id.)

On September 12, 2016, defendant filed a notice of intent to present expert evidence "relating to a mental disease or defect or mental condition bearing on the issue of guilt at his trial." (Dkt. 99.)  On September 23, 2016, defendant summarized the proposed

---

[1] His announcement came just one month after several federal indictments of LASD deputies became public.

[2] Defendant's medical records reflect that both he and his wife pegged the onset of memory loss to post-retirement.

testimony of Dr. James Spar, defendant's designated medical expert. Defendant specifically stated that Dr. Spar's testimony would "relate[] to [defendant's] mental disease, defect and condition during the time of the offenses."  (See Fox Decl., Ex. 4.) Defendant's letter states that Dr. Spar will:

Methodology

1.    Explain the "accepted tests for identifying the cognitive deficits that appear in the early phases of Alzheimer's disease."

Present Condition

2.    Opine that defendant was properly diagnosed with Alzheimer's disease in May 2014.

3.    Testify that defendant is currently in the early stages of Alzheimer's disease, suffering from mildly impaired cognitive function.

4.    Describe the "typical clinical manifestations of Alzheimer's disease . . . that are seen in people suffering from the disease."

Attempt to Relate Diagnosis Back to 2011-13

5.    Explain that the neuropathology of Alzheimer's disease is present for "years to decades before the earliest symptoms of cognitive deterioration appear."

6.    Testify that the cognitive deficits defendant currently demonstrates typically progress over a period of years before a formal diagnosis is made.

7.    Opine that the transition from the pre-clinical to the early clinical phase of Alzheimer's disease is subtle and

3

often only identified in retrospect, after clear symptoms occur.

8.     "[S]ummarize the evidence that such deficits were present in [defendant] as far back as 2011."

9.     Conclude that "during the alleged offense conduct and relevant time period, [defendant] employed [interpersonal and compensatory mechanisms] in order to continue to function in the highly demanding role of Sheriff."

Defendant's Lack of Awareness of his Mental Condition

10.    Theorize that defendant was "not aware of his declining cognitive function during the period 2011-2013" due to a lack of insight that is often part of the disease process and the psychological mechanism of denial.

11.    Hypothesize that defendant, "like many other high functioning executives, during the time period of the alleged offense conduct, leaned heavily on those around him to remind him of key facts and information he needed in order to meet the demands of his job, and to intervene when he was about to exercise poor judgment and impulse control."

12.    Claim that defendant's support network might be the reason that defendant was unaware of his purported cognitive deficit.

Relating Diagnosis to his Actions

13.    Blame "the people around [defendant]," who were unable to "prevent every error" that may have been caused by defendant's cognitive impairment.

4

14.   Describe "specific instances of impaired recall, judgment, and impulse control, likely due to Alzheimer's disease, that contributed to [defendant's] charged conduct at issue."

(See Fox Decl., Ex. 4.)

**III. ARGUMENT**

Dr. Spar's testimony falls into the following subject matters: (1) the methodology for determining when an individual has Alzheimer's disease; (2) defendant's present medical condition; (3) defendant's purported medical condition in 2011-2013; (4) an explanation of defendant's lack of awareness of his medical condition in 2011-2013; and (5) the correlation of his purported medical condition in 2011-2013 to the crimes charged.  As explained below, the Court should exclude Dr. Spar's testimony in its entirety.  His testimony concerning the first two categories (the methodology and defendant's current diagnosis) are immaterial to the charged crimes and would result in unfair prejudice and confusion.  With respect to the final three categories, Dr. Spar does not base his opinions and testimony on an application of valid methodology to impute defendant's current diagnosis to his cognitive ability in 2011-2013.  Instead, defendant simply seeks to have Dr. Spar summarize and catalogue inadmissible hearsay and prejudicial information.  The Court should exclude this testimony.

**A.   Rules Governing Expert Testimony**

The Court has an important gatekeeping role with respect to expert witnesses to ensure both sides receive a fair trial.  Specifically, the Court must pay particular attention to the admissibility of expert testimony because it carries the "aura of

5

special reliability and trustworthiness" and therefore raises a substantial danger of undue prejudice.  See United States v. Amaral, 488 F.2d 1148, 1152 (9th Cir. 1973).  This reasoning applies to all expert testimony, Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999).  The Court, therefore, has wide latitude to exclude expert testimony.  See, e.g., United States v. Byers, 730 F.2d 568, 571 (9th Cir. 1984).

Defendant must establish the relevance and reliability of his expert's testimony by a preponderance of the evidence.  See Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th Cir. 1996). Defendant can only meet his burden if the Court is assured that defendant's expert testimony "rests on a reliable foundation and is relevant to the task at hand."  United States v. Harmanek, 289 F.3d 1076, 1093 (9th Cir. 2002) (citing Daubert, 509 U.S. at 592-93). Accordingly, the Court's gatekeeping role requires it to make a preliminary assessment of: (a) the validity of "the reasoning or methodology underlying the testimony"; (b) "whether that reasoning or methodology properly can be applied to the facts in issue;" and (c) whether the "proposed expert testimony is relevant and will serve to aid the trier of fact."  Daubert, 509 U.S. at 592-93; Fed. R. Evid. 702(a).  Defendant has failed to meet his burden with respect to any of Dr. Spar's opinions.

**B.    Testimony of Defendant's Diagnoses from 2014 to 2016 Inadmissible Without Proper Link to the Charged Crimes**

Defendant's current condition is not in dispute, as both parties agree that he currently has mild cognitive impairment.  Nor is it an

issue at trial.[3]  Dr. Spar's testimony about defendant's diagnosis of mild cognitive impairment years <u>after</u> his offenses has no relation to the charges unless it can be shown that: (a) he had cognitive impairment at the time of the offenses; and (b) that cognitive impairment has a bearing on the issue of guilt.  On its own, the testimony about his current medical condition will not "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  Indeed, the testimony has no bearing on the "task at hand."  <u>Harmanek</u>, 289 F.3d at 1093.  Instead, his current diagnosis is likely to confuse the jury and cause undue prejudice to the government.

      **C.**    **Testimony Linking Defendant's Current Diagnosis to the Charges is Entirely Speculative and Inadmissible**

Defendant has not met his burden of showing that Dr. Spar's testimony about defendant's mental state from 2011 to 2013 is based on sufficient facts or data and is the product of reliable principles and methods that were reliably applied here.  <u>See</u> Fed. R. Evid. 702.  First, Dr. Spar's own discussion of methodology shows this testimony fails under Rule 702 and <u>Daubert</u>.  As Dr. Spar will explain, there are "accepted tests for identifying the cognitive deficits that appear in the early phases of Alzheimer's disease."  (Fox Decl., Ex. 4 at 2.)  While defendant has been subjected to these tests regularly since March 2014, not one of those tests was conducted before that time.  In other words, the accepted methodology for determining

---

[3] The government believes both parties agree that defendant is competent to stand trial, as he understands the nature of the charges against him and can assist in his defense.

7

whether defendant had cognitive impairment was not conducted during the time of the offenses.

Second, and tellingly, defendant does not explain what reasoning or methodology Dr. Spar has or would rely upon to reach his conclusions regarding defendant's medical condition in 2011 and 2013. Defendant states that Dr. Spar's "opinions regarding the effects of pre-clinical and early clinical Alzheimer's disease on Mr. Baca's recall, judgment and impulse control during the period 2011-2013 are based upon": (i) all of his training, (ii) his medical experience, (iii) the discovery in the case, and (iv) unspecified "materials relating to the case." (Fox Decl., Ex. 4 at 3.) This description is hopelessly vague. It says nothing about Dr. Spar's reasoning or methodology and there is no way the Court can exercise its gatekeeping function to ensure that Dr. Spar's testimony "rests on a reliable foundation" based on it. <u>Harmanek</u>, 289 F.3d at 1093.

Indeed, the opposite is true. Dr. Spar cannot testify to a reasonable degree of medical or scientific certainty that defendant suffered cognitive deficits in 2011 and 2013 tied to his Alzheimer's disease and that such deficits impacted his conduct. As the government's expert, Dr. Dimitri Krainc, has explained, "there is a lack of objective evidence" in the medical record that defendant suffered "<u>any</u> cognitive deficits at the time of the alleged offenses in 2011 and 2013." (Fox Decl., Ex. 3 at 2) (emphasis added). To the extent Dr. Spar bases his opinion on tests and images of defendant's brain from 2014 (<u>i.e.</u>, the MRI or PET scans), this would be scientifically unsound. As Dr. Krainc states, "there is <u>no accepted way</u> within the medical or scientific community to determine based on any of these studies, when the symptoms of the disease first began to

8

manifest themselves . . . ." (Id.) (emphasis added).  Similarly, there is no way "based on the medical records, CSF values and imaging" to link defendant's conduct in 2011 and 2013 to his Alzheimer's disease.  (Id.)  "Any attempt to do so would be purely speculative."  (Id.)

There is no medical evidence of cognitive deficiencies in defendant's medical records during, or before, his alleged crimes.  The earliest that defendant's conditions manifested themselves was in 2014.  The records even show that, although defendant claimed in March 2014 that he had memory difficulties beginning in January 2014, "objective assessments of [defendant's] memory and general cognitive functioning were nonetheless normal" through March and April 2014.  (See Fox Decl., Ex. 1 at 30, ¶ I) (emphasis in original).  "It was not until [defendant] was seen for a more comprehensive examination by a neuropsychologist" in May 2014 that "cognitive impairments were first documented," and even then a majority of tests administered to defendant showed unimpaired cognition.  (Id.)  Defendant was diagnosed with mild cognitive impairment at that time and this remains true today.  The record says nothing about defendant's cognitive deficiencies "as far back as 2011," or even in 2013.

Defendant appears to be suggesting that because he began suffering mild cognitive impairment in 2014, it must have affected his conduct in 2011 and 2013, based on the "typical progression" of Alzheimer's disease.  But as noted by Dr. Krainc, it is impossible, "based on the medical records, CSF values and imaging" to "link" defendant's conduct in 2011 and 2013 to Alzheimer's disease, and "[a]ny attempt to do so would be purely speculative."  (Fox Decl., Ex. 3 at 2.)  Thus, allowing Dr. Spar to testify that defendant's

9

impaired recall, poor judgment and impulse control were "likely due to Alzheimer's disease," as defendant proposes, would have no valid basis, would be counterfactual, and would be unduly prejudicial.

Defendant's expert disclosure shows the danger of allowing this testimony and the resulting prejudice the government would suffer. Defendant states that Dr. Spar will "summarize the evidence" (which will not be based on any medical records) that cognitive "deficits" were "present in Mr. Baca as far back as 2011." He will further "cite specific instances of impaired recall, judgment, and impulse control, likely due to Alzheimer's disease, that contributed to [defendant's] charged conduct at issue." (Fox Decl., Ex. 4 at 1-2.) In other words, without any basis in science or medicine, Dr. Spar will cherry pick instances of defendant's purported forgetfulness that were related to him by either defendant or another person (likely, defendant's wife).[4] Dr. Spar will then go a step further and link specific instances of forgetfulness to Alzheimer's disease, when he cannot reliably diagnose defendant with cognitive impairment at the time of the charged crimes.

This is similar to United States v. Cruz-Ramirez, No. CR 08-0730-WHA, 2011 WL 2446278, at *6 (N.D. Cal. June 17, 2011), where the defendant attempted to have two expert witnesses discuss "symptoms" associated with mental diseases or conditions.[5] The court excluded the testimony:

> Every day, of course, perfectly healthy people "exhibit symptoms associated with" various diseases and conditions

---

[4] Notably, based on the Fifth Amendment and marital privilege, the government cannot call either of these individuals as witnesses to test the accuracy of their assertions to Dr. Spar.

[5] Similar to Cruz-Ramirez, the defense refused to have defendant speak to the government's expert about the crimes. (See Fox Decl., Ex. 1 at 7.)

> without having any disease or condition.  Forgetfulness is one example.  Irrationality is another.  Nowhere does [defendant's expert] conclude that defendant Cruz-Ramirez actually had any specific mental illness or mental condition.  Her vague opinions offer virtually no probative value.  Much time would be consumed in cross-examining these musings.  Much confusion would be generated.

Id. at *6.  While defendant may attempt to distinguish Cruz-Ramirez because the experts in that case did not diagnose the defendant with a mental condition or defect, Dr. Spar does not and cannot rely upon reliable methodology to determine that defendant had any cognitive impairment during the charged crimes.  Instead, just as in Cruz-Ramirez, if his testimony is allowed, Dr. Spar is "clearly poised to shoehorn in hearsay (and even hearsay-within-hearsay)."  Id.  As the court noted, "This would not be expert opinion.  It would be mere repetition of a self-serving say-so by a party on trial with no way to cross-examine.  It would be hearsay and fundamentally unfair to receive the evidence."  Id. at *6.  The Court should reject this effort by the defense to exploit the "aura of special reliability and trustworthiness" that attaches to expert witnesses.  Amaral, 488 F.2d at 1152.

Separately, it is unclear how defendant's mild cognitive impairment would relate to the obstruction and conspiracy counts at all.  Defendant suggests Dr. Spar will testify that defendant's poor judgment and lack of impulse control likely were due to Alzheimer's disease, but as Dr. Krainc notes, "failures of judgment and changes of personality" are not usually part of "incipient Alzheimer's disease."  (Fox Decl., Ex. 3 at 2.)  Even if these "failures" were due to mild cognitive impairment, defendant has not explained how they operate as a defense to Counts One and Two of the Indictment, or are otherwise relevant.

11

Finally, even if defendant were in the early stages of Alzheimer's disease in April 2013, it would not explain his failure to recall key events from August and September of 2011.  As noted by Dr. Goldstein, who conducted competency and mental state evaluations of defendant, memory loss due to Alzheimer's disease impacts short-term memories first, with "[l]ong-term memory remain[ing] intact," and remote memory possibly never diminishing.  (Fox Decl., Ex. 1 at 35.)  The pathology of Alzheimer's disease impacts the capacity to form new memories and "[l]ong-term memories, particularly *episodic memories* (unique memories for events that have emotional associations and context, such as those Mr. Baca claims to have forgotten) are simply not vulnerable to decay due to short-term memory loss as he implies."  (Id.) (emphasis in original.)  Accordingly, Dr. Spar's testimony would have little, if any, probative value to Count Three and should be excluded under Rules 403 and 702.

**IV.    CONCLUSION**

Dr. Spar should be precluded from testifying at trial.  As proffered by the defense, his testimony is irrelevant and unreliable because it is not based on medicine or science, but rather on inadmissible hearsay and unspecified "materials related to this case."  Rather than aiding the jury in its fact-finding function or in understanding the evidence, Dr. Spar's testimony would only confuse the issues and prejudice the government.  The Court should exercise its gatekeeping function and preclude Dr. Spar from testifying as an expert witness at trial.

**DECLARATION OF BRANDON D. FOX**

I, Brandon D. Fox, declare as follows:

1.   I am an Assistant United States Attorney.  I am one of the prosecutors assigned to <u>United States v. Leroy Baca</u>, No. CR 16-66(A)-PA.

2.   I have reviewed a recording of Mr. Baca's retirement press conference, available at https://www.youtube.com/watch?v=0eFlJA4Zsxc. At no point did Mr. Baca raise any issue regarding his health or cognitive abilities as a reason for his decision to retire and not seek reelection.

3.   Exhibit 1 is a copy of the mental state evaluation of defendant Leroy Baca by Diana S. Goldstein, Ph.D., ABPP, dated October 31, 2016.  This report will be filed under seal.

4.   Attached as Exhibit 2 is a copy of an article by Beatriz Valenzuela of the Long Beach Press Telegram dated August 7, 2013 and entitled, *After Speech to Long Beach Rotary, L.A. County Sheriff Lee Baca Vows to Seek Re-election*, available at http://www.presstelegram.com/article/zz/20130807/NEWS/130808963.

5.   Exhibit 3 is a copy of the opinion letter by Dimitri Krainc, M.D., Ph.D., regarding defendant's condition, dated October 31, 2016.  This letter will be filed under seal.

6.   Attached as Exhibit 4 is the defense's disclosure of the testimony of Dr. James Spar (without attachments).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated November 7, 2016

Brandon D. Fox

13