# Exhibit 4

to Government's Motion to Preclude
Testimony By Dr. James Spar

# Morgan Lewis

**Nathan J. Hochman**
Partner
+1.310.255.9025
nathan.hochman@morganlewis.com

September 23, 2016

**VIA E-MAIL: BRANDON.FOX@USDOJ.GOV**

Brandon D. Fox
Assistant U.S. Attorney
U.S. Attorney's Office for the Central District of California
312 N. Spring Street
Los Angeles, CA 90012

Re:    *U.S. v. Baca*:  Summary of Expert Opinion Pursuant to Rules 16(b)(1)(C) and 12.2(b)(1) of
       the Federal Rules of Criminal Procedure

Dear Brandon:

Pursuant to Rules 16(b)(1)(C) and 12.2(b)(1) of the Federal Rules of Criminal Procedure, the
following is a summary of expert testimony Defendant Leroy Baca intends to use as evidence at
trial as it relates to Mr. Baca's mental disease, defect and condition during the time of the offenses.

## Dr. James Spar's Opinions

Mr. Baca expects Dr. James Spar to testify that the neuropathology of Alzheimer's disease is
present for years to decades before the earliest symptoms of cognitive deterioration appear, and
that the transition from the pre-clinical to the early clinical phase is subtle and often only identified
in retrospect, after clear symptoms appear.  Dr. Spar will opine that Mr. Baca was properly
diagnosed with Alzheimer's disease in May 2014, and is currently in the early stages of the disease,
suffering from mildly impaired cognitive function (as was identified in the testing reviewed by Dr.
Helena Chang Chui, and confirmed in Dr. Spar's evaluation of September 19, 2016).
Dr. Spar will opine that the cognitive deficits Mr. Baca currently demonstrates typically progress
over a period of years before a formal diagnosis is made, and he will summarize the evidence that
such deficits were present in Mr. Baca as far back as 2011. Dr. Spar will describe the personal and
interpersonal compensatory mechanisms that individuals suffering from declining cognitive function
typically employ, and will opine that during the alleged offense conduct and relevant time period,
Mr. Baca employed these mechanisms in order to continue to function in the highly demanding role
of Sheriff.  Due to the lack of insight that is often part of the disease process, and the
psychological mechanism of denial, Dr. Spar will opine that Mr. Baca was not aware of his declining
cognitive function during the period 2011-2013. Interpersonally, Mr. Baca,  like many other high
functioning executives, during the time period of the alleged offense conduct, leaned heavily on
those around him to remind him of key facts and information he needed in order to meet the

**Morgan, Lewis & Bockius** LLP

The Water Garden
Suite 2050 North
1601 Cloverfield Boulevard
Santa Monica, CA  90404-4082       📞 +1.310.907.1000
United States                      📠 +1.310.907.1001

DB2/ 30645420.1

Brandon D. Fox
September 22, 2016
Page 2

demands of his job, and to intervene when he was about to exercise poor judgment or impulse control. Given this support network, many around Mr. Baca may not have seen the cognitive deficits he was experiencing.  Unfortunately, as Mr. Baca's disease progressed, those people were less and less able to prevent every error, and Dr. Spar will cite specific instances of impaired recall, judgment, and impulse control, likely due to Alzheimer's disease, that contributed to Mr. Baca's charged conduct at issue.

Dr. Spar will describe some of the accepted tests for identifying the cognitive deficits that appear in the early phases of Alzheimer's disease. These include tests of orientation (to person, place, time, and situation), ability to store and recall new information and to recall previously learned information and events, to employ receptive and expressive language skills, to perform mathematical calculations, and tests of the broad range of frontal executive functions, including word list generation, abstract thinking, and the ability to organize behavior over time in service of a goal (for example the clock-drawing test).  He will also describe the typical clinical manifestations of Alzheimer's disease (i.e., signs and symptoms) that are seen in people suffering from the disease, including impaired new learning and recall, impaired language function, and impaired problem-solving, judgment and impulse control.

## Bases and Reasons for Opinions

Dr. Spar was provided the following materials: all documents provided to Mr. Baca by the Government in the matter *U.S. v. Baca*; Mr. Baca's medical records from Kaiser Permanente; Mr. Baca's medical records from Dr. Chui; and Mr. Baca's resume.  In addition, Dr. Spar interviewed Mr. Baca and Mrs. Baca, and administered a brief battery of tests to Mr. Baca, a copy of which is attached.

Dr. Spar has extensive experience diagnosing and treating patients with Alzheimer's disease, is familiar with the basic science and clinical literature on Alzheimer's disease, and has published articles, books, and chapters dealing with the clinical and forensic aspects of Alzheimer's disease and other dementing conditions.

## Reasons for Opinion

Dr. Spar believes that the diagnosis of Alzheimer's disease was properly made by Dr. Helena Chang Chui in May, 2014, on the basis of:

- A history and evidence of slowly progressive cognitive decline during the period of consecutive medical evaluations, with normal motor and sensory examination;
- Neuropsychological testing that shows predominant impairment in the domain of episodic memory, with secondary impairment in executive function;
- MRI scans showing loss of hippocampal and brain volume;
- A PET scan that shows glucose hypometabolism in both temporal lobes; and
- CSF studies that show markedly elevated levels of tau and ptau, and low levels of beta-amyloid, consistent with Alzheimer's disease.

The findings of Dr. Spar's evaluation of Mr. Baca on September 19, 2016 are consistent with this diagnosis.

DB2/ 30645420.1

Brandon D. Fox
September 22, 2016
Page 3

His opinions regarding the effects of pre-clinical and early clinical Alzheimer's disease on Mr. Baca's recall, judgment and impulse control during the period 2011–2013 are based upon all of his training, his medical experience, the discovery provided by the government in *U.S. v. Baca*, and the materials relating to this case.

## Qualifications

James E. Spar, M.D. is a physician and psychiatrist licensed to practice medicine in the State of California and is Board Certified in Psychiatry and in Geriatric Psychiatry.  He received his M.D. degree from the UCLA School of Medicine in 1972, completed residency training in Psychiatry at UCLA in 1977, and completed a Fellowship in Geriatric Psychiatry at UCLA in 1978. He is presently Professor of Clinical Psychiatry in the Department of Psychiatry and Biobehavioral Sciences at the David Geffen School of Medicine at UCLA.  He was the founder and first Director of the Division of Geriatric Psychiatry between 1998 and 2004.  During his thirty-eight-year academic career he has devoted the great majority of his time to clinical and training program administration (particularly hospital-based inpatient care, and residency education), teaching, and research in the evaluation and treatment of elderly patients with mental illness. In this work he is very frequently called upon to evaluate the mental competency of patients to consent to hospitalization, psychotropic medication administration, and electroconvulsive therapy.  He is also regularly engaged in evaluation (contemporaneous and retrospective) of individuals' competencies for various legal purposes, such as the execution of wills, trusts, gifts and contracts.  He has been consulted in about 1500 cases in which competency and/or undue influence were at issue, and has testified in deposition and in trial, each over 100 times.  He has published scholarly articles and chapters on aspects of clinical geriatric psychiatry, including Alzheimer's disease and other dementing illnesses, and on competency and susceptibility to undue influence. He has lectured to various medical and legal audiences on these topics, and was a major contributor in the drafting of several California statutes (codified as Calif. Probate Code sections 6100.5 re: persons not competent to make a will; sections 810 – 813 re: legal mental capacity; and Civil Code Sec. 39b re: contractual capacity) related to competency determination.

His experience and qualifications are also identified on the attached CV

Sincerely,

Nathan J. Hochman

NJH/rb
Enclosures