# GOVERNMENT EXHIBIT B

11

| # | Baca Statement Introduced by the Government that defendant allegedly seeks to complete | Government's Understanding of Defense's Desired Inclusion | Government's understanding of Defense Rationale | Government's Rebuttal |
|---|---|---|---|---|
| 1 | False Statement #1 "-- **I had no clue that this is a civil rights investigation.** *p. 44:1-22* (emphasis added). | Q. So at that Saturday meeting, you knew that Anthony Brown was providing information about civil rights violations in the jails to the FBI -- A. No, I didn't say that. I didn't make a connection to the Saturday meeting. I'm saying that, as this investigation -- you know, in answer to your point, as this investigation proceeded we were able to get more information from Mr. Brown, and then that information alluded to what his purpose was. Q. But at the Saturday meeting, you were concerned about his safety. You stated that; correct? A. That's correct. Q. And the reason you were concerned about his safety was because he -- you knew he was providing information to the FBI about deputies who may have engaged in excessive force; correct? A. The nature of my concern was that no one harm him, and I don't care who. It could be a deputy; it could be another inmate. The nature of what his engagement was with the FBI was not known entirely as it was in the ensuing following weeks. Q. But it was known at that time that there was a potential safety issue for Brown because -- A. From my perspective, I believed there was. Q. And that's because he was providing information to the FBI about deputies who were engaged in excessive force; correct? A. That he was the subject, as an informant, about deputies, and that I didn't want him to be in a general population setting. He can't be compromised by other inmates or deputies or anybody else. That no one should be going around him and intervening with whatever his particular security rights are. *p. 48:15- 50:3* | The desired inclusion comes soon after the false statement and clarifies defendant's answer by stating that he did not make the connection by the Saturday meeting. To leave in only the false statement will mislead the jury and distort the evidence regarding Mr. Baca's memory of when the FBI was conducting the civil rights investigation. | The part of the recording that defendant seeks to introduce in no way "clarifies" defendant's false statement that, by Saturday, August 20, 2011, he had "no clue" the FBI was conducting a civil rights investigation. If anything, the proposed additional statement reiterates defendant's false statement #1 ("No, I didn't say that. I didn't make a connection to the Saturday meeting."), and then goes on to discuss wholly unrelated matters (e.g., the Department's purported concern for Brown's safety, etc.). Including these proposed additional statements would not correct any misimpressions and fairness does not require that they be included. Indeed, the statements constitute inadmissible hearsay and should be excluded under the Rules of Evidence. |

1

| # | Baca Statement Introduced by the Government that defendant allegedly seeks to complete | Government's Understanding of Defense's Desired Inclusion | Government's understanding of Defense Rationale | Government's Rebuttal |
|---|---|---|---|---|
| 2 & 3 | False Statement #2 "-- Whether Saturday or ensuing days, or however timeframe you'd want to reference, I am not aware of any direct involvement with any conversation about keeping the FBI and Mr. Brown away from one another. (68: 7-9) | Q. . . . At that meeting, that Saturday meeting, did -- were there discussions about whether the FBI or any federal law enforcement agency should have access to Anthony Brown? A. I don't recall that. Q. Do you recall anyone instructing Lieutenant Thompson to ensure that no federal law enforcement or outside law enforcement speaks to Anthony Brown? A. Well, like I mentioned, I didn't get into operational talk. If that kind of talk were to occur, I would hope, as Mr. Martinez did, that he would call me and that he would say, you know, "We need to communicate about the process that we should agree to to facilitate our investigation." You know -- *p. 56:16- 56:7*<br><br>Q    Was there any conversation about preventing Anthony Brown from speaking to outside law enforcement at the Saturday meeting? A    I don't know. If there was, you know, I came in at a point when it was going on, and I left at a point when it continued. *p. 59:22- 60:5* | Here, Mr. Baca is explicitly asked the same question as he was in false statement #2 and gives different answers -- "I don't recall that," "I didn't get into operational talk," and "I don't know." To only include his statement to the hypothetical and not include his answers on pages 56-57 and 59-60 to essentially the same question will completely distort the evidence and mislead the jury. | In the false statement, defendant was asked if he was present for a discussion on how to keep Brown away from the FBI. Instead of answering it narrowly, he expounds and says that whether at the Saturday meeting or any other time, he was not aware of any direct involvement in a conversation about keeping Brown away from the FBI. Excluding defendant's proposed additional statements does not distort defendant's false statement, which is clear on its face, nor does it mislead the jury. The statements that defendant seeks to include are, in part, his theory that communication was all that was needed. The additional statements are inadmissible hearsay. |

| # | Baca Statement Introduced by the Government that defendant allegedly seeks to complete | Government's Understanding of Defense's Desired Inclusion | Government's understanding of Defense Rationale | Government's Rebuttal |
|---|---|---|---|---|
| 4 | False Statement #2 "-- Whether Saturday or ensuing days, or however timeframe you'd want to reference, I am not aware of any direct involvement with any conversation about keeping the FBI and Mr. Brown away from one another. *p. 68: 7-9.* | Q.  And in your opinion, that would have been the wrong thing to do, because you believe that it's important for LASD and the FBI to be partners; is that correct? A.  Well, definitely, if it were -- see, I felt this way, that Mr. Martinez had no hesitation to tell me about the phone.  Mr. Martinez had no hesitation to tell me about the concern regarding Agent Marx.  Had Mr. Martinez called me about the issue of what you are describing now in the question, I would have had a clear understanding of what was going on in the minds of the FBI, and I would have honored the request.    You see, and I know that we are trying to deal with things that are important to the Civil Rights Unit and the FBI.  I get it.  But what is important is that I needed more communication. *p. 68:12- 69:5* | The subsequent questions and answers that clarify Mr. Baca's initial response. Without those clarifications, Mr. Baca's initial response is distorted into making it seem that he had no involvement with keeping the FBI away from Mr. Brown when the intent of his initial response was to emphasize his cooperation with the FBI. | Defendant's proposed additional statements, made after-the-fact and with knowledge that the government was now investigating obstruction of justice, are completely irrelevant to false statement #2.  Defendant's purported wish for "more communication" with the FBI in no way clarifies his claim that he was not aware ever of any "direct involvement with any conversation about keeping the FBI and Mr. Brown away from one another."  The proposed additional statements serve only to advance the defense's theory that this was all a miscommunication (the same theory advanced by other defendants/co-conspirators). The statements constitute inadmissible hearsay and fairness does not require that they be introduced. |

3

| # | Baca Statement Introduced by the Government that defendant allegedly seeks to complete | Government's Understanding of Defense's Desired Inclusion | Government's understanding of Defense Rationale | Government's Rebuttal |
|---|---|---|---|---|
| 5 | Q.  Is it fair to say that you were pretty animated at this meeting or were you talking -- A.  No. I was animated, yeah.  *p. 116:16-18* | Q      And what at that point in time had you learned other than just the fact that a phone was introduced to the jail that made you animated, or was it just the fact that a phone was introduced to the jail that made you animated? A      I think the concern that I had was predicated on the fact that my high regard for the FBI, my trust for the FBI, and my trust, particularly for all the directors, who I most have contact with, that I don't believe that it had to go the way it did.  That had they called me and I said it was -- if you called me and told me "We've got an issue.  We need to deal with it," I would have kept it to myself.  *p. 116:19- 117:9* | The next question is what defendant meant by "animated."  To leave the jury with the statement that he was "animated" and to not tell them what Mr. Baca meant by "animated" will distort the evidence and mislead the jury. | The government's follow-up question was what made defendant animated -- not what he meant by "animated." Excising this follow-up question and answer neither distorts the previous answer, nor misleads the jury.  Defendant's subsequent answer is defendant's defense theory – that the FBI should have communicated with him. Statements in support of this theory are inadmissible hearsay. |

| # | Baca Statement Introduced by the Government that defendant allegedly seeks to complete | Government's Understanding of Defense's Desired Inclusion | Government's understanding of Defense Rationale | Government's Rebuttal |
|---|---|---|---|---|
| 6 | Q  Have you ever stated, since learning that the FBI was investigating the jails, that you resented the FBI investigating the jails at LASD?<br>A.  Let me say this: "resentment" is not a word that I typically use on anything, including the FBI. Am I -- was I angry? Yes.  Did I feel that it caused more difficulty than it should have?  Yes. Do I believe that communication should have been a consideration with me? Yes.  And so these aren't things that need to be argued about at an investigative level. These are things that you argue about at my level.<br>*p. 120:3-14* | Q.  Do you --<br>A.  And I was doing that.  I was talking to the U.S. Attorney.  And then subsequently I talked to Steve.  And then I pressured Steve in the second meeting, and I said, "Steve, you and I have done a lot of things together. And I don't understand why you did this the way you did. It's not your agents that I'm angry with.  It's you." Okay?<br>    And so once he got that into his mind, he felt something for it, because we don't succeed -- in the criminal justice world of looking for rogue deputies or criminals at large, we don't succeed when we don't work together.  We might win one battle, but if you lose trust with each other, it doesn't help the future battles.<br>    And so his first line of business after we had settled our little top-level disputes over this was, "All right.  You do what you do.  I'll do what I do. We'll just give you all the copies of what we do. We've got this process with the District Attorney's office.  We've got this process with the U.S. Attorneys' office.  We're through.  There's no disagreement on anything."<br><br>*p. 120:15- 121: 15* | The government seeks to enter the initial question and answer dealing with Mr. Baca's alleged "resentment" of the FBI but then cuts off Mr. Baca's entire answer that provides the clarification for the initial part of his response.  To cut off that answer will mislead the jury and distort the evidence concerning Baca's alleged "resentment" of the FBI. | Again, this is not an answer to the question, but rather defendant espousing his view that better communication was all that was needed and this case would not exist.  This argument has been tried and has failed.  The grand jury was conducting an investigation. There was no requirement that the FBI keep the LASD or defendant apprised of what it was doing.  If defendant wishes to advance this defense at trial in his own words, then he may testify; but he may not introduce his own out-of-court statements under the guise that they are necessary to clarify an otherwise clear answer. |

| # | Baca Statement Introduced by the Government that defendant allegedly seeks to complete | Government's Understanding of Defense's Desired Inclusion | Government's understanding of Defense Rationale | Government's Rebuttal |
|---|---|---|---|---|
| 7 | The interview asked defendant Baca about a letter he had written to USA Birotte dated September 26, 2011.  The question quotes a portion of the letter about the LASD removing people from the task forces that the two organizations were part of.  Baca interjects the following that the government will admit:<br>A.  If we don't reach an understanding that there was a breach of trust with my office, as a leader of the organization, then I feel that there was no reciprocal respect for the difficulty of both agencies.<br>*p. 130:7 -11* | Defendant then seeks to admit the following: . . .<br><br>So this letter, to me, was fixed, based our meetings that we had.  And the one that cleared the air for me, was the one Mr. Martinez had explained himself to me, and I accepted that, and I said, "That's understandable."<br>*p. 130:11-15*<br>. . . .<br><br>Q.  Are you aware of any meetings that occurred within LASD, in which the executives within LASD told taskforce officers that they would be pulled off the taskforce because of this investigation?<br>A.  I'd never given such direction, and I would be surprised if that occurred at all.  This was private conversation.  See.<br>p. 130:21- 131: | The government again cuts off Mr. Baca's answer that is directly responsive to the question asked.  There is no basis to cut off the answer.  By cutting off the complete answer, the evidence will be distorted and the jury misled. | The government seeks to admit the responsive answers only.  Statements about meetings with Mr. Martinez that purportedly cleared the air have no bearing on the statement the government seeks to introduce; the same is true of statements concerning internal meetings at LASD. |

| # | Baca Statement Introduced by the Government that defendant allegedly seeks to complete | Government's Understanding of Defense's Desired Inclusion | Government's understanding of Defense Rationale | Government's Rebuttal |
|---|---|---|---|---|
| 8 | Mr. Baca continues his answer by stating "Let me explain this anger business.  I don't get really angry.  I get more tactical. All right?  And anger is a part of it, but it's not the overriding part of it." *p. 131:5-8.* | The idea that the Sheriff's Department cannot be trusted has some validation, if you know what it is.  If we work together in the past and somebody was acting like a knucklehead on the taskforce and wasn't going along with whatever the flow was, I could understand that.  But that was never brought to my attention, even when it occurred.  All of a sudden, there was an abrupt cessation of the investigation.  The FBI pulled out and the U.S. Attorney's Office pulled out, and no one called me, and said, "Let me tell you why we're not doing this anymore." *p. 131:9-20* | The answer is without a question and will distort the evidence and mislead the jury. | Again, defendant seeks to advance his theory that the obstruction efforts were essentially a misunderstanding and that what was needed was more communication.  This is irrelevant and self-serving hearsay; the government's proposed excerpt, standing alone, does not create a misleading impression and, thus, there is no need to include the remainder of the statement.<br><br>Moreover, defendant's statement that there was an "abrupt cessation" to the investigation is simply wrong.  This portion of the recording makes the evidence more confusing and misleading, not less. |

| # | Baca Statement Introduced by the Government that defendant allegedly seeks to complete | Government's Understanding of Defense's Desired Inclusion | Government's understanding of Defense Rationale | Government's Rebuttal |
|---|---|---|---|---|
| 9 | Q. When you said, just there, "you didn't start this fight," who started the fight? A. Whoever decided to do all this, and say that you can't trust the Sheriff, even. *p. 134:14-17* | Q     Wait, I'm confused.  Are you talking about the FBI starting the fight? Or are you talking about the person who, before, breached the trust of the FBI? A     Whoever motivated Mr. Martinez to do it the way it was done, and then get the U.S. Attorney's Office involved, and not consider that there's other ways to do this, is what led to this whole breach. It wasn't done with maliciousness in mind, but it was done with high risk in mind.  Because the investigation was compromised. Q     Okay.  In your opinion, it was compromised? A     Am I the only one that feels this way, in the room? Q     I'm saying, it's your opinion that it was compromised.  It's not Mr. Birotte or Mr. Martinez ever said that the investigation, itself, is compromised. The phone was compromised. A     Well, that's part of it.  I'm using Mr. Martinez's words.  But, you know, the difficulty is simple.  The guys at the top have to deal with each other a certain way.  I don't fight with FBI agents.  I don't fight with supervising agents.  I don't fight with anybody, but I will fight with Congress, and I will fight any level of government that thinks that they can just do anything they want, and never even have to explain it. I'm not asking for a public anything.  I'm asking for a mere sense of fair play. And then, if I were told about this, I would be on your side.  You would have my green light to do whatever you want to do, as an agency.<br><br>*p.  134:18-136:3* | The government asks a question, receives an answer from Mr. Baca, and then acknowledges that the answer is confusing but seeks to redact Mr. Baca's follow-up answer that clarifies what he meant.  To allow this redaction would distort the evidence and mislead the jury. | As his co-conspirators have tried to do in previous trials, defendant seeks to advance the argument that there was a battle between the FBI and the LASD.  The grand jury conducted an investigation as it did.  The LASD and defendant were not allowed to obstruct it or attempt to obstruct it.  The only thing this answer does is allow for the defense to put forward their theory that this is nothing more than a turf-war.  Rule 106 does not compel its inclusion. |

| # | Baca Statement Introduced by the Government that defendant allegedly seeks to complete | Government's Understanding of Defense's Desired Inclusion | Government's understanding of Defense Rationale | Government's Rebuttal |
|---|---|---|---|---|
| 10 | Q  Have you ever stated, since learning that the FBI was investigating the jails, that you resented the FBI investigating the jails at LASD? A.  Let me say this: "resentment" is not a word that I typically use on anything, including the FBI. Am I -- was I angry? Yes.  Did I feel that it caused more difficulty than it should have? Yes.  Do I believe that communication should have been a consideration with me? Yes.  And so these aren't things that need to be argued about at an investigative level. (Cont.) | Q.  But what you're resentful of, though, is the FBI investigating LASD, without informing you of that?  Is that correct? A.  Only in the sense of the phone coming in. You know you can do it whatever way you need to.  But this phone somehow doesn't really give me any comfort at all. *p. 173:16-22* | The evidence the government intends to use to show that Mr. Baca is lying is the statements Mr. Baca made during a "Good Day LA" appearance in which he said he "resented" the FBI's intrusion.  The government asked Mr. Baca this question directly in the interview on page 173 and Mr. Baca's response should be permitted in order not to distort the evidence or mislead the jury on his alleged feelings of resentment of the FBI. | Defendant does not claim that his proposed additional statement is necessary to complete a prior question and answer, but rather just another question and answer on the same topic.  This is not within the ambit of FRE 106.  Moreover, contrary to defendant's assertion, the proposed additional question (and answer) is not the same. The government asks whether defendant "<u>stated</u> . . . that you resented the FBI" (emphasis added).  In the proposed additional question/answer, the government asks whether defendant was, in fact, "resentful of . . . the FBI." |

9

| # | Baca Statement Introduced by the Government that defendant allegedly seeks to complete | Government's Understanding of Defense's Desired Inclusion | Government's understanding of Defense Rationale | Government's Rebuttal |
|---|---|---|---|---|
| | These are things that you argue about at my level. *p. 120:3-14* | | | |