EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No. 290409)
Chief, Public Corruption & Civil Rights Section
LIZABETH A. RHODES (Cal. Bar No. 155299)
Chief, General Crimes Section
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
General Crimes Section
Assistant United States Attorneys
    1500/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0284/3541/4849
    Facsimile: (213) 894-7631
    E-mail:    Brandon.Fox@usdoj.gov
               Lizabeth.Rhodes@usdoj.gov
               Eddie.Jauregui@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 16-66(A) |
|---|---|
| Plaintiff, | GOVERNMENT'S REPLY BRIEF IN SUPPORT OF MOTION TO PRECLUDE TESTIMONY OF DEFENDANT'S PROPOSED EXPERT JAMES SPAR |
| v. | |
| LEROY BACA, | Hearing Date: November 22, 2016 |
| Defendant. | Hearing Time: 3:00 p.m. |
| | Location:    Courtroom of the Hon. Percy Anderson |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brandon D. Fox, Lizabeth A. Rhodes, and Eddie A. Jauregui, hereby files its reply brief in support of its motion to preclude the testimony of defendant's proposed expert, Dr. James Spar. As explained herein, defendant has failed to show that Dr. Spar's testimony is supported

by sufficient facts or data and is the product of reliable principles and methods.

This reply is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 18, 2016          Respectfully submitted,

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


 /s/ Brandon D. Fox
_____
BRANDON D. FOX
LIZABETH A. RHODES
EDDIE A. JAUREGUI
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

**Contents**

TABLE OF AUTHORITIES.............................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES..............................................1

I.    INTRODUCTION................................................................1

II.   ARGUMENT....................................................................2

      A.    As the Gatekeeper, the Court Must Keep Out Irrelevant,
            Unreliable, and Misleading Expert Testimony...............2

      B.    Dr. Spar's Testimony Is the Product of Unreliable
            Methodology, Artificially Limited Facts, and Bare
            Speculation...............................................3

            1.    No Reliable Methodology Supports Dr. Spar's Post-
                  Hoc Alzheimer's Diagnosis...........................4

            2.    Dr. Spar's Probabilistic Conclusion is
                  Speculative and Unsupported.........................7

            3.    Dr. Spar Ignores Everything Else....................10

      C.    Dr. Spar's Generalized Testimony Regarding Alzheimer's
            Disease is Irrelevant.....................................11

      D.    Even if Admissible, Dr. Spar's Testimony Should Be
            Excluded Under Federal Rule of Evidence 403..............11

III.  CONCLUSION..................................................................12

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

**CASES**

Claar v. Burlington Northern R.R. Co., 29 F.3d 499, 501 (9th
     Cir. 1994)...............................................2, 7

Domingo ex rel. Domingo v. T.K., 289 F.3d 600, 607 (9th Cir.
     2002).......................................................9

Keller v. Feasterville Family Health Ctr., 557 F. Supp. 2d 671
     (E.D. Pa. 2008)..........................................9, 10

Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 138 (1999)........2

Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th
     Cir. 1996)..................................................1

Mukhtar v. Calif. State Univ., Hayward, 299 F.3d 1053, 1063 (9th
     Cir. 2002)..................................................2

Newell Rubbermaid, Inc. v. Raymond Corp., 676 F.3d 521, 527 (6th
     Cir. 2012)..................................................3

United States v. Byers, 730 F.2d 568, 571 (9th Cir. 1984)...........8

United States v. Cordoba, 104 F.3d 225, 228 (9th Cir. 1997).........2

United States v. Cruz-Ramirez, No. CR 08-730-WHA, 2011 WL
     2446278, at *6 (N.D. Cal. June 17, 2011)..................5, 11

**RULES**

Fed. R. Evid. 403..................................................11

Fed. R. Evid. 702, Advisory Comm. Notes, 2000 Amendments......3, 4, 7

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Defendant's response confirms what the government wrote in its motion: Dr. Spar's opinions about defendant's cognitive abilities in 2013 are not based on reliable methodology or sufficient facts.[1] Instead, it proves the government was right in claiming that Dr. Spar's testimony on this issue would provide extreme confusion and prejudice because he will cherry-pick instances of defendant's purported forgetfulness and "confusion" to claim that defendant had cognitive impairment when he made false statements to the government in 2013. Despite bearing the burden of establishing the relevance and reliability of Dr. Spar's testimony, see Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th Cir. 1996), neither defendant nor Dr. Spar has explained his methodology, shown that the methodology was reliable, or explained how Dr. Spar relied on sufficient facts or data in reaching his conclusions. Moreover, Dr. Spar's opinions, as proffered in his sworn statement, are either irrelevant, or too vague, ambiguous, and qualified to help the jury understand the evidence or determine facts in issue. Accordingly, the proposed testimony fails to meet the requirements for expert testimony under Federal Rule of Evidence 702 and, in any event, should be excluded under Rule 403.

---

[1] Defendant's filing and Dr. Spar's declaration nowhere dispute that Dr. Spar cannot link defendant's cognitive abilities to his 2011 conduct. Indeed, it appears that defendant has abandoned this opinion. The Court should preclude any testimony attempting to link the obstruction of justice and conspiracy allegations to any diagnoses regarding defendant's cognitive abilities.

**II.   ARGUMENT**

    **A.    As the Gatekeeper, the Court Must Keep Out Irrelevant, Unreliable, and Misleading Expert Testimony**

    The reliability and foundation of Dr. Spar's expert testimony are not simply matters for cross-examination. The Court must "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Mukhtar v. Calif. State Univ., Hayward, 299 F.3d 1053, 1063 (9th Cir. 2002) (internal quotations and citation omitted) (overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457 (9th Cir. 2014)). This concern is heightened, not diminished, by Dr. Spar's impressive resumé. (Def.'s Br. at 3-4.) Before allowing such a gilded "expert" to opine about "medical certaint[ies]" (Def's Br. at 1), the Court must ensure that the witness's testimony is reliable. Mukhtar, 299 F.3d at 1063. This inquiry is "vital to ensure accurate and unbiased decision-making by the trier of fact," id.--that is, decision-making based on "reliable, helpful" science, not "misleading or confusing" opinion (or, worse, bare prestige). United States v. Cordoba, 104 F.3d 225, 228 (9th Cir. 1997) (internal quotations and citation omitted).

    Accordingly, in light of the "facts of a particular case," Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 138 (1999), the Court must scrutinize (1) the factual foundation of Dr. Spar's expert's testimony, as well as (2) the reliability of his methodology and application of that methodology to the facts. See Claar v. Burlington Northern R.R. Co., 29 F.3d 499, 501 (9th Cir. 1994); see also David E. Bernstein and Eric G. Lasker, Defending Daubert: It's Time to Amend Federal Rule of Evidence 702, 57 Wm. & Mary L. Rev. 1, 7

(2015). So doing, the court must consider whether Dr. Spar has "unjustifiably extrapolated from an accepted premise to an unfounded conclusion"; whether he has accounted for obvious alternative explanations; and whether he exercised the same degree of care he would exercise outside of his role as a paid litigation consultant. See Fed. R. Evid. 702, Advisory Comm. Notes, 2000 Amendments.

Reliance on "anecdotal evidence, improper extrapolation, [and] failure to consider other possible causes" all are "[r]ed flags" cautioning against admission of an expert's testimony. Newell Rubbermaid, Inc. v. Raymond Corp., 676 F.3d 521, 527 (6th Cir. 2012).

In such instances--and, more generally, where an expert fails adequately to explain the bases for his conclusions, or to explain his methodology and how he applied that methodology--the Court may exclude the expert's testimony. See, e.g., id.; Claar, 29 F.3d at 502.

**B.   Dr. Spar's Testimony Is the Product of Unreliable Methodology, Artificially Limited Facts, and Bare Speculation**

Dr. Spar's testimony fails these tests. Without any contemporary medical records supporting his conclusion, Dr. Spar concludes that (1) defendant was either in the pre-clinical stage or the mild cognitive impairment ("MCI") stage of Alzheimer's disease in April 2013, "as he may have been demonstrating clinical symptoms of MCI which were not formally diagnosed until May 2014"; and (2) defendant's "Alzheimer's increased the probability" that "memory impairment affected his answers" during the April 2013 interview by the government, regardless of which stage he was in. (Def.'s Br. at 1, 2, 9, 10, 12, 15, 18, 23; Def.'s Ex. 1, Spar Decl. at ¶ 9, 11 (emphasis added)). To reach these conclusions, Dr. Spar relied on his

review of the transcript of the 2013 interview; his professional background; his training and experience with Alzheimer's disease; his review of "pertinent" literature; and his review of defendant's medical records. (See Def.'s Br. at 9, 10; Def.'s Ex. 1 at ¶ 10.) The first of Dr. Spar's conclusions has no reliable medical basis; the latter is inherently speculative. Neither is properly admitted under Daubert.

    1. No Reliable Methodology Supports Dr. Spar's Post-Hoc Alzheimer's Diagnosis

  There are numerous problems with Dr. Spar's proposed post-hoc Alzheimer's diagnosis.

  First, Dr. Spar does not explain precisely how he came to the conclusion that defendant was either in the pre-clinical stage of Alzheimer's disease or in the MCI stage. His sworn statement indicates that in the pre-clinical stage, "underlying brain changes have occurred but there are no symptoms." (Def.'s Ex. 1, Spar Dec. ¶ 3(B)). But Dr. Spar points to no tests or other evidence showing "underlying changes" in defendant's brain in April 2013. None exists. Instead, Dr. Spar relies on exceedingly broad generalities, pointing to literature stating that pre-clinical Alzheimer's might "extend[] ten years or more before on the onset of clinical symptoms." (Id.) Even if some individuals are in the pre-clinical stage for years before their diagnosis, there is no research that Dr. Spar points to that indicates this is the norm. Dr. Spar straightforwardly "extrapolate[s] from an accepted premise to an unfounded conclusion." Fed. R. Evid. 702, Advisory Comm. Notes, 2000 Amendments.

Second, by Dr. Spar's own admission, the essence of the "pre-clinical stage" is that there are "<u>no symptoms</u>." (Def's Br. at 5 (emphasis added)).

Indeed, the very definition of "pre-clinical" means defendant <u>had not been diagnosed</u> as having cognitive impairment at the time. Thus, even if Dr. Spar were correct that defendant had pre-clinical-stage brain changes in 2013--a guess impossible to confirm, absent any evidence--those changes were, by definition, immaterial. This is not the kind of "expert" testimony that is permitted under the Rules. <u>Cf</u>. <u>United States v. Cruz-Ramirez</u>, No. CR 08-730-WHA, 2011 WL 2446278, at *6 (N.D. Cal. June 17, 2011).

Third, Dr. Spar cannot say to any reasonable degree of medical certainty that defendant was in the MCI stage of Alzheimer's disease in April 2013. As Dr. Spar acknowledges, the MCI stage is typically diagnosed when patients or their families first notice symptoms of cognitive impairment, see a doctor, or are subject to formal testing. (Spar Decl. at ¶ 3(D)). None of those things happened in 2013. Indeed, defendant and his wife have consistently said that defendant had no memory impairment until January 2014.

Fourth, and as these deficiencies indicate, the factual foundation of Dr. Spar's diagnosis is not medicine--let alone medical tests or records--but anecdotal hearsay: individual instances of defendant's forgetfulness, carefully snipped from the voluminous discovery in this case. Notably, Dr. Spar relies upon statements of just a few individuals, none of whom he interviewed, to suggest

cognitive impairment in and before 2013.[2] (Spar Decl. ¶ 4.) These were not people dealing with defendant in his day-to-day life in 2013. Dr. Spar provides no methodology for his determination that these isolated statements show defendant had cognitive impairment-- much less for why these incidents trump the perceptions of people who were dealing with defendant closely around this time (e.g., his wife, his driver, and his aide), and who saw no issues with defendant's cognitive function. Defendant's own doctors--ones not retained for his criminal defense--noted no neurological problems when examining him during this time. (See Mental State Evaluation by Dr. Diana Goldstein at 12, showing notations from 2008-2013 reflecting that defendant was psychiatrically and neurologically sound.)

Casual hearsay is not neuroscience. Moreover, the flimsiness of Dr. Spar's examples demonstrates the unreliability of his methods. Dr. Spar emphasizes defendant's failure to remember Steven Leavins's first name during a 2013 interview, while omitting defendant's own contemporary explanation: he only knows officers by their last names. (See Ex. A to Gov. Motion to Preclude Hearsay Testimony, Dkt. 146-1, at 25-26 ("I only . . . know them by their last names")). Similarly, Dr. Spar cites defendant's failure to recall the name of his bladder medication in June 2011. (Spar Decl. ¶ 4.) Yet medical records show that defendant was able to remember names of other medications for years after 2011. (See Goldstein Eval. at 13, 16.) Meanwhile, the doctor who saw defendant on the day defendant forgot the name of his medication reported that defendant was neurologically alert and

---

[2] None of these individuals commented on defendant's forgetfulness or memory issues, but rather spoke of defendant being "goofy" or "confused" on a couple of occasions.

oriented to person, place and time, and that his psychiatric affect was normal. (Id. at 12.)

Dr. Spar's analysis of defendant's 2013 interview by the federal government is equally divorced from context and reliable methodology. As Dr. Spar notes, defendant said he did not remember the answer to approximately 25 questions during a four-and-a-half-hour interview-- in which, according to the defense, over 600 questions were asked. (Dkt. 146 at 12-13). If accurate, this means defendant could not recall answers to fewer than 5% of the government's questions. Is this statistically meaningful? Is there a reliable methodology for determining what percentage of failure-to-recall shows cognitive impairment? Dr. Spar does not say. Likewise, Dr. Spar fails to account for obvious alternative explanations that have nothing to do with cognitive impairment--and which, to the contrary, evidence only strategic amnesia. See Fed. R. Evid. 702, Advisory Comm. Notes, 2000 Amendments.

Finally, the very essence of Dr. Spar's diagnosis is vague and tortuously qualified. Dr. Spar does not conclude that defendant, in fact, demonstrated "clinical symptoms" of MCI in April 2013, but rather that he "may have been demonstrating clinical symptoms of MCI"." (Spar Decl. ¶ 9.) This is far from helpful to the jury. Defendant may have been demonstrating symptoms of cognitive impairment, or he may not have been demonstrating symptoms. Dr. Spar cannot and does not say to a reasonable degree of medical certainty.

2.    Dr. Spar's Probabilistic Conclusion is Speculative and Unsupported

Even assuming Dr. Spar's diagnoses rested on a sufficiently reliable methodology, the consequences of those diagnoses are totally

7

speculative. Dr. Spar would testify only that defendant's "Alzheimer's increased the probability that during his April 12, 2013 government interview, memory impairment affected his answers to questions about events and conversations that occurred 20 months earlier in August-September 2011." (Spar Decl. ¶ 9(ii)). This is neither scientifically reliable nor helpful to the jury.

Dr. Spar's claim of "increased . . . probability" is meaningless. The jury, presumably, will be left to speculate whether that probability was increased by .0001% or 1000%. Dr. Spar likewise provides no baseline from which his undefined "increase[]" begins. Indeed, given Dr. Spar's opinion that there are "no symptoms" in the pre-clinical stage, and that MCI "does not interfere with every day function," his conclusion that defendant's Alzheimer's increased the probability that memory impairment negatively affected defendant's answers is not even internally justifiable. Such "increased . . . probability" is either negligible or undefinable. (Compare Def.'s Br. at 5 to Def.'s Br. at 11-12.) This is unhelpful. United States v. Byers, 730 F.2d 568, 571 (9th Cir. 1984).

Once again, no reliable methodology underlies Dr. Spar's probabilistic claims. The government assumes that the basis for this opinion is literature showing that "memory impairment may occur during the pre-clinical stage." (Spar Decl. ¶ 3(C) (emphasis added)). Here, Dr. Spar relies principally on the works of Papp, et al., and Edmunds, et al. According to Dr. Spar, Papp concluded that "changes in semantic processing occur earlier in the [Alzheimer's] trajectory than previously hypothesized." (Id.) This conclusion was based on studies of individuals with "PET scan evidence of Alzheimer's (deposits of abnormal proteins in the brain)." (Id.) Edmunds

similarly "found that 'subtle cognitive decline' (based upon tests of language and memory) was found with increasing frequency as the number of biochemical markers of AD increased, and that 'subtle cognitive decline' could be used to predict the future development of MCI or dementia." (Id.)

Dr. Spar fails to connect these general propositions to his opinions, much less to defendant. Papp's study appears to have been conducted on "individuals with PET scan evidence of Alzheimer's" disease, while Edmunds' findings are tied to increasing "numbers of biochemical markers." (Id.) As to defendant, however, there is neither source of evidence from 2013: neither "PET scan evidence of Alzheimer's," nor records of "increased biochemical markers[.]" Thus, the literature cited by Dr. Spar does not support his ultimate conclusion that defendant's "Alzheimer's increased the probability that memory impairment negatively affected his ability to provide accurate and truthful answers." In other words, "[t]here is simply too great an analytical gap between the data and the opinion proffered" to warrant inclusion. Domingo ex rel. Domingo v. T.K., 289 F.3d 600, 607 (9th Cir. 2002) (quoting General Elec. Co. v. Joiner, 522 U.S. 136, 146 (2002)).

Absent this scientific literature, Dr. Spar is left only with the transcript of defendant's 2013 interview itself. For the reasons discussed above, this is far from sufficient to support his claims of "reasonable medical certainty," particularly given Dr. Spar's failure to compare defendant's 2013 interview with other recorded,

transcribed interviews of defendant that were publicly available and produced to the defense.[3]

### 3. Dr. Spar Ignores Everything Else

The facts absent from Dr. Spar's analyses, meanwhile, speak volumes. Dr. Spar did not interview the people closest to defendant during the relevant time period, with the exception of defendant's wife. Had he done so, he would have learned that defendant exhibited no symptoms of Alzheimer's disease or forgetfulness in the 2010-2013 time period. (See Decl. of Eddie A. Jauregui, Exs. A, B.)  Not only did Dr. Spar fail to take these steps, he failed even to consider these facts from the government's discovery and Dr. Goldstein's reporting.

Similarly, while relying on the few times defendant claimed he did not recall things in his April 2013 interview with the

---

[3] Keller v. Feasterville Family Health Ctr., 557 F. Supp. 2d 671 (E.D. Pa. 2008), a non-binding out-of-district case by Magistrate Judge Rice, lends no support to defendant's claim that Dr. Spar's "methodology" and reasoning passes muster under Daubert.  Unlike in this case, the expert in Keller provided an unambiguous opinion about the likely future trajectory of the decedent, based on his review of decedent's medical records, which showed that the decedent, in fact, had Alzheimer's disease when he died. Id. at n.1. The expert also reviewed medical literature, sworn statements of other individuals, and deposition testimony of the decedent. The expert took care to explain the medical literature and, importantly, drew "parallel[s] to Mr. Keller's situation" in his expert report. See Report or Affidavit of Barry W. Rovner, M.D. (Dkt. 35), 2008 WL 2482127. Put another way, the expert reliably applied the principles and methodology upon which he relied to draw his conclusions. Here, the medical records do not reflect that defendant had either pre-clinical Alzheimer's or MCI in 2013, and Dr. Spar ignored the very same kinds of evidence that the expert in Keller sought out (decedent's deposition testimony and the testimony of others who knew the decedent). Nor does Dr. Spar's conclusion "reliably follow[] from the facts . . . and the methodology used." Compare Keller, 557 F. Supp. 2d at 678. Finally, the Keller expert's conclusions were helpful because they were unambiguous and had a valid scientific connection. Id. at 676. That is not the case here.

government, Dr. Spar ignores other times defendant testified in depositions, County hearings, and Citizen Committee on Jail Violence hearings. He ignores defendant's public speeches. He also ignores medical doctors' evaluations of defendant in findings that his neurological function was normal.

### C.   Dr. Spar's Generalized Testimony Regarding Alzheimer's Disease is Irrelevant

Although Dr. Spar's key opinions focus on defendant's condition in April 2013 (see Def's Br. at 1), his proposed testimony is much more far-reaching: covering the stages and effects of Alzheimer's (Def.'s Br. at 4-6) as well as the course of defendant's health following his retirement, including his official diagnosis of Alzheimer's in 2016 (id. at 8). This testimony is irrelevant and inadmissible. Because Dr. Spar failed to tie the general propositions about Alzheimer's disease to the facts of this case, the testimony about the "stages and effects" of Alzheimer's is irrelevant and inadmissible under Rule 702(d). Similarly, defendant's diagnosis of Alzheimer's disease in 2016, and the correctness of that diagnosis, has no bearing on defendant's guilt for conduct occurring in 2013.

### D.   Even if Admissible, Dr. Spar's Testimony Should Be Excluded Under Federal Rule of Evidence 403

Finally, even if admissible under Rule 702, Dr. Spar's testimony should be excluded under Rule 403 because it is of low probative value, which is substantially outweighed by the dangers of unfair prejudice (including potentially sympathy for defendant or resentment towards the government due to defendant's present medical condition), confusion of the issues, misleading the jury, and waste of time. See Fed. R. Evid. 403. As offered, Dr. Spar's testimony would not help

11

determine whether defendant knowingly and willfully lied to the government. Even disregarding foundational defects, Dr. Spar's opinions are extraordinarily vague: defendant "may have demonstrated" symptoms of Alzheimer's, which in turn "increased the probability" that memory impairment "affected" defendant's answers. (Spar Decl. at ¶ 9, 11.) This has little, if any, probative value. Meanwhile, allowing Dr. Spar to testify about defendant's current diagnosis, the trajectory of Alzheimer's disease (leading ultimately to dementia), and the speculative possibility of defendant's cognitive impairment at the time of the crimes would only introduce confusion and unfair prejudice into the case. Cruz-Ramirez, 2011 WL 2446278, at *6. Such testimony will not aid fact-finding; it will give faux-scientific blessing to arguments for jury nullification.

**III. CONCLUSION**

Dr. Spar's testimony should be excluded. Not only does he fail to rely on sufficient facts and data in reaching his conclusions, but he also fails to show how his opinions are the product of reliable principles and methods. As defendant's brief evidences, Dr. Spar's testimony will be used as a conduit for hearsay and for irrelevant, sympathetic facts regarding defendant's present condition. Dr. Spar's testimony is not admissible.

12

### DECLARATION OF EDDIE A. JAUREGUI

I, Eddie A. Jauregui, declare as follows:

1.   I am an Assistant United States Attorney. I am one of the attorneys representing the United States of America in <u>United States v. Leroy Baca</u>, 16-66(A)-PA.

2.   Attached as Exhibit A to this Declaration is an excerpt of an FBI report summarizing an interview of Michael Hannemann.  Mr. Hannemann was employed by the Los Angeles County Sheriff's Department and was an aide to defendant Baca from approximately December 2010-May 2013.

3.   Attached as Exhibit B to this Declaration is an excerpt of an FBI report summarizing an interview of Jack Demello. Mr. Demello was employed by the Los Angeles County Sheriff's Department and was a driver for defendant Baca for approximately one year. Mr. Demello could not provide exact dates but believes this was from approximately February 2011 to March/April 2012.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and that this declaration is executed at Los Angeles, California, on November 18, 2016.

_____
EDDIE A. JAUREGUI

FD-302a (Rev. 05-08-10)

UNCLASSIFIED//FOUO

███████████████

Continuation of FD-302 of  (U//FOUO)  Michael Hannemann _____ , On  10/04/2016  , Page  5 of 5

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

### Baca's Mental State

HANNEMANN met BACA soon after BACA was elected as the Sheriff. Fifteen minutes after BACA introduced himself to HANNEMANN, BACA introduced himself again. At the time, HANNEMANN thought BACA was crazy. Twelve years later, when HANNEMANN became BACA's driver, they talked about the Marine Corps. During the conversation, BACA looked into space and quoted an article. It seemed to HANNEMANN like BACA had a photographic memory. HANNEMANN was impressed.

While HANNEMANN was BACA's aide, HANNEMANN watched BACA go from one meeting to another and thought, "This guy is amazing." HANNEMANN revised his initial thoughts about BACA being crazy. HANNEMANN does not believe BACA was crazy. HANNEMANN believes BACA just periodically got overwhelmed by information because of the many meetings he attended and people he met. HANNEMANN was amazed that BACA was able to keep up with his ungodly schedule.



UNCLASSIFIED//FOUO

EX. A to Jauregui Decl.                              A148045

FD-302a (Rev. 05-08-10)

**UNCLASSIFIED//FOUO**

Continuation of FD-302 of  (U//FOUO) Jack DeMello _____ , On  09/01/2016 , Page  4 of 4

It surprised DEMELLO that BACA claimed that he [BACA] could not remember anything about the FBI's investigation. The whole department knew what was going on.

DEMELLO heard BACA was going to claim BACA had Alzheimer's disease or dementia. DEMELLO cannot believe it. DEMELLO never noticed BACA having trouble with his memory in 2011 to 2012. DEMELLO is not happy BACA is letting others take the blame. DEMELLO is disapointed BACA has not stepped up.

BACA ran every morning.

BACA was intelligent. BACA always bragged about having a degree and would comment that there were no excuses for someone to not have a degree.

DEMELLO did not agree with some of BACA's ideas, but DEMELLO never saw a drop off in BACA's intelligence. It seemed to DEMELLO that BACA had all of his faculties.



**UNCLASSIFIED//FOUO**

Ex. B to Jauregui Decl.                                    A146542