**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

KELLI L. SAGER (State Bar No. 120162)
 kellisager@dwt.com
ROCHELLE L. WILCOX (State Bar No. 197790)
 rochellewilcox@dwt.com
DAN LAIDMAN (State Bar No. 274482)
 danlaidman@dwt.com

Attorneys for Non-Party Journalist
Robert Faturechi



FILED
CLERK, U.S. DISTRICT COURT

NOV 2 3 2016

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> LEROY BACA, <br><br> Defendant. | Case No. **16-66(A)-PA** <br><br> **NOTICE OF MOTION AND MOTION OF NON-PARTY JOURNALIST ROBERT FATURECHI TO QUASH THE GOVERNMENT'S SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Hearing Date:   December 2, 2016 <br> Hearing Time:   TBD <br> Courtroom:      Courtroom 9A <br>                 Hon. Percy Anderson <br><br> (Declaration Of Robert Faturechi With Exhibits A-B Concurrently Filed.) |



RECEIVED BUT NOT FILED
CLERK, U.S. DISTRICT COURT

NOV 2 3 2016

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

ORIGINAL

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on December 2, 2016, at a time to be determined, or as soon thereafter as counsel may be heard before the Honorable Percy Anderson in Courtroom 9A of the above-referenced Court, located at 350 West 1st Street, Los Angeles, California, non-party journalist Robert Faturechi will, and hereby does, move this Court for an order quashing the Subpoena in a Criminal Case (the "Subpoena") issued by the United States of America on November 9, 2016, and served on Mr. Faturechi on November 16, 2016, which seeks his testimony at trial in this matter.  See concurrently-filed Declaration of Robert Faturechi and Exhibit A.

As set forth in more detail in the attached Memorandum of Points and Authorities, the government's Subpoena should be quashed on two independent grounds.

1.      The government cannot meet the standard under Federal Rule of Criminal Procedure 17, because there is no testimony Mr. Faturechi can offer in this matter that is relevant, and the Subpoena lacks specificity.  See Memorandum, Section II.

2.      Independently, the qualified federal reporter's privilege under the First Amendment to the United States Constitution protects Mr. Faturechi against the compelled disclosure of information acquired in connection with his newsgathering activities.  See Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993) ("Shoen I").  The government cannot meet the strict standards for overcoming this constitutional privilege, which requires (1) the exhaustion of alternative sources; (2) a showing that the information sought would not be cumulative; and (3) a showing that the information sought is clearly relevant to an important issue.  See Memorandum, Section III.A.[1]  In considering the important First Amendment interests at stake, this

_____

[1] Although U.S. Attorneys' Office representatives have indicated that the government only intends to seek "published" information, as discussed below, both the strong public policy against forcing reporters to be witnesses for the government

Court also should consider the language and interpretation of the California Shield Law, which provides an absolute protection for non-party journalists against being compelled by the prosecution to testify about unpublished information in a criminal case. See Memorandum, Section III.B.

In the alternative, if this Court declines to quash the Subpoena in its entirety, Mr. Faturechi requests an order prohibiting counsel for the parties from questioning him about any unpublished information, and limiting any testimony to the contents of the September 29, 2011 article published in The Los Angeles Times titled, "L.A. County Sheriff Lee Baca gives details of FBI sting," a copy of which is attached to the concurrently-filed Faturechi Declaration as Exhibit B ("the Article").[2]

This motion is based upon the attached Memorandum of Points and Authorities; the complete files and records in this action, and such oral argument and other documents as may be received by this Court at any hearing on this motion.

DATED: November 22, 2016

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
ROCHELLE L. WILCOX
DAN LAIDMAN

By: _Kelli Sager_____

Kelli L. Sager
Attorneys for Non-Party Journalist
Robert Faturechi

---

in a criminal case, and the strong likelihood that foundational questions and cross-examination of Mr. Faturechi inevitably would delve into "unpublished" information, strongly support quashing the subpoena.

[2] The Article was referenced in the interrogation of defendant Leroy Baca that is the subject of the pending criminal proceedings. See Dkt. # 146-1 (Transcript at 189-190). Representatives from the U.S. Attorneys' office have indicated that they also want to question Mr. Faturechi about an interview he gave to radio station KCRW on February 11, 2016; however, that interview was not mentioned during the Baca interrogation, and nothing in it purports to quote directly from Mr. Baca, making its relevance even more attenuated. Memorandum, Section II.

# TABLE OF CONTENTS

Page

I.      SUMMARY OF ARGUMENT ....................................................................... 1

II.     THE SUBPOENA DOES NOT MEET THE REQUIREMENTS OF FEDERAL RULE OF CRIMINAL PROCEDURE 17 ................................. 4

III.    THE GOVERNMENT CANNOT OVERCOME THE FEDERAL CONSTITUTIONAL REPORTER'S PRVILEGE ..................................... 11

        A.      The Government Cannot Meet Its Burden of Overcoming The Constitutional Reporter's Privilege. ..................................... 13

        B.      Special Factors Weigh Heavily In Favor Of The Reporter In This Case. ...................................................................................... 17

IV.     IF THE SUBPOENA IS NOT QUASHED IN ITS ENTIRETY,  MR. FATURECHI'S TESTIMONY SHOULD BE  LIMITED TO PUBLISHED INFORMATION ................................................................. 20

V.      CONCLUSION ............................................................................................ 21

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page(s)

CASES

Bruno & Stillman, Inc. v. Globe Newspaper Co.,
    633 F.2d 583 (1st Cir. 1980).................................................................17

Carushka, Inc. v. Premiere Products, Inc.,
    1989 U.S. Dist. LEXIS 17487 (C.D. Cal. Sept. 1, 1989) ........................14

Damiano v. Sony Music Entertainment, Inc.,
    168 F.R.D. 485 (D.N.J. 1996)...............................................................16

Farr v. Pitchess,
    522 F.2d 464 (9th Cir. 1975)..................................................12, 17, 19

Fost v. Marin County Superior Court,
    80 Cal. App. 4th 724 (2000)..................................................................18

Gonzales v. NBC,
    194 F.3d 29 (2d Cir. 1999)....................................................................11

Harbert v. Priebe,
    466 F. Supp. 2d 1214 (N.D. Cal. 2006) .................................................17

In re Behar,
    779 F. Supp. 273 (S.D.N.Y. and C.D. Cal. 1991).............................15, 19

In re Grand Jury Subpoena: Subpoena Duces Tecum,
    829 F.2d 1291 (4th Cir. 1987)...............................................................17

In re Shuman,
    552 A.2d 602 (N.J. 1989)......................................................................13

In re Slack,
    768 F. Supp. 2d 189 (D.D.C. 2011).......................................................13

Krase v. Graco Children Prod., Inc.,
    79 F.3d 346 (2d Cir. 1996)....................................................................16

Leigh v. Salazar,
    677 F.3d 892 (9th Cir. 2012).................................................................11

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

MOTION TO QUASH
DWT 30783158v7 0050033-000508

Los Angeles Memorial Coliseum Comm'n v. National Football League,
    89 F.R.D. 489 (C.D. Cal. 1981) ...................................................................... 19

McGarry v. University of San Diego,
    154 Cal. App. 4th 97 (2007) .......................................................................... 19

McMenamin v. Tartaglione,
    590 A.2d 802 (Pa. Commw.), aff'd without op., 590 A.2d 753 (Pa.
    1991) ............................................................................................................... 13

Michael v. Estate of Kovarbasich,
    2015 U.S. Dist. LEXIS 168901 (C.D. Cal. Dec. 11, 2015) .......................... 14

Miller v. Superior Court,
    21 Cal. 4th 883 (1999) ............................................................................... 3, 18

People v. Vasco,
    131 Cal. App. 4th 137 (2005) ....................................................................... 18

Playboy Enterprises, Inc. v. Superior Court,
    154 Cal. App. 3d 14 (1984) ..................................................................... 18, 20

Riley v. City of Chester,
    612 F.2d 708 (3d Cir. 1979) .......................................................................... 14

Shoen v. Shoen,
    48 F.3d 412 (9th Cir. 1995) ..................................................................... passim

Shoen v. Shoen,
    5 F.3d 1289 (9th Cir. 1993) ..................................................................... passim

United States v. Aguilar,
    2008 WL 3182029 (N.D. Cal. Aug. 4, 2008) ............................................... 10

United States v. Bergeson,
    425 F.3d 1221 (9th Cir. 2005) ......................................................................... 5

United States v. Blanton,
    534 F. Supp. 295 (S.D. Fla. 1982) ............................................................... 13

United States v. Burke,
    700 F.2d 70 (2d Cir. 1983) ............................................................................ 15

United States v. Caporale,
    806 F.2d 1487 (11th Cir. 1986) .................................................................... 16

iii

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

United States v. Cuthbertson,
    630 F.2d 139 (3d Cir. 1980)................................................................12

United States v. Cuthbertson,
    651 F.2d 189 (3d Cir. 1981)................................................................16

United States v. Eden,
    659 F.2d 1376 (9th Cir. 1981).............................................................9

United States v. George,
    883 F.2d 1407 (9th Cir. 1989)........................................................4, 10

United States v. LaRouche Campaign,
    841 F.2d 1176 (1st Cir. 1988).............................................................13

United States v. MacKey,
    647 F.2d 898 (9th Cir. 1981)...............................................................4

United States v. Marcos,
    1990 WL 74521, 17 Media L. Rptr. 2005 (S.D.N.Y. 1990)..................13

United States v. Nixon,
    418 U.S. 683 (1974)..........................................................................3, 4

United States v. Noriega,
    764 F. Supp. 1480 (S.D. Fla. 1991) ...................................................10

United States v. Pretzinger,
    542 F.2d 517 (9th Cir. 1976)..............................................................12

United States v. R. Enterprises, Inc.,
    498 U.S. 292 (1991)..........................................................................17

United States v. Reed,
    726 F.2d 570 (9th Cir. 1984).....................................................3, 4, 9, 10

United States v. Shay,
    1993 WL 128728 (D. Mass. Apr. 2, 1993) ........................................17

United States v. W.R. Grace,
    434 F. Supp. 2d 869 (D. Mont. 2006)..................................................5

Zerilli v. Smith,
    656 F.2d 705 (D.C. Cir. 1981)......................................................14, 16

iv

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**STATUTES**

18 U.S.C. § 1001(a)(2) ..................................................................................................5

California Evidence Code § 1070 ...........................................................................3, 18

California Government Code § 8557(b) ........................................................................20

**RULES**

Federal Rule of Criminal Procedure
   17 ......................................................................................................................passim

**CONSTITUTIONAL PROVISIONS**

California Constituton, Article I § 2(b) ...........................................................3, 18, 19, 20

United States Constitution, First Amendment ........................................................passim

**OTHER AUTHORITIES**

28 C.F.R.
   § 50.10(a)(1) ........................................................................................................12
   § 50.10(c) .............................................................................................................12

MOTION TO QUASH
DWT 30783158v7 0050033-000508

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. SUMMARY OF ARGUMENT

In this case of significant public interest, the former elected sheriff of Los Angeles County stands accused of abusing his office. Non-party journalist Robert Faturechi reported on the Los Angeles County Sheriff's Department during his tenure as a journalist with The Los Angeles Times ("The Times"),[3] and his dogged reporting helped to illuminate the problems that ultimately led to Defendant Lee Baca's resignation, and to the government's investigation and subsequent prosecution of several individuals in the Sheriff's Department.

Unfortunately, the government now seeks to compromise Mr. Faturechi's work as a journalist by converting him into a witness for the prosecution. This kind of subversion of the editorial process would make it impossible for Mr. Faturechi to report on the trial. Using journalists as witnesses also makes it more difficult for them to perform the critical function of serving as independent sources of information about government conduct – including the kind of conduct at issue in this criminal trial.

The trial subpoena served by the government on Mr. Faturechi[4] does not identify the subject of the testimony; in discussions with Mr. Faturechi's counsel, the government has indicated that Mr. Faturechi's testimony is being sought in connection with the September 29, 2011 Article in The Times, published under Mr. Faturechi's byline, which reported on comments attributed to Defendant during a conversation that took place after a press conference about the Department scandal.

---

[3] Mr. Faturechi left The Times in 2014 and currently works as a reporter at the nonprofit news organization ProPublica. See Faturechi Decl. ¶ 2.

[4] A copy of the Subpoena is attached to the concurrently-filed Faturechi Declaration as Exhibit A. It was issued on November 9, 2016, and served on Mr. Faturechi on November 16, 2016. See Faturechi Decl. ¶ 3.

1

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Government attorneys also apparently seek to question Mr. Faturechi about comments he made five years later, during an interview broadcast on February 11, 2016, by radio station KCRW.  Given the allegations against Defendant Baca – which include a charge that he lied to government investigators during an interview conducted on April 12, 2013 – it appears that the government seeks to have Mr. Faturechi testify in an attempt to show an inconsistency between Defendant's statements to investigators and his statements to a news reporter, Mr. Faturechi.

The government's attempt to force Mr. Faturechi to appear at trial as a witness – and presumably to testify about information acquired in the course of his newsgathering – would be a serious infringement of his and the public's First Amendment rights.  As the Ninth Circuit has recognized, compelled disclosure of information from journalists "can constitute a significant intrusion into the newsgathering and editorial processes.  Like the compelled disclosure of confidential sources, it may substantially undercut the public policy favoring the free flow of information." Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993) ("Shoen I") (quotation omitted).

Mr. Faturechi is not a percipient witness in this matter; he has no firsthand knowledge of the conduct that is alleged to give rise to the charges in the indictment.  As underscored by the government's own filings, Mr. Faturechi is neither necessary nor even relevant to its case against the Defendant.  The Subpoena should be quashed on multiple grounds.

First, the government cannot meet the rigorous standard under Federal Rule of Criminal Procedure 17.  To the extent that the government wants to question Mr. Faturechi about his interview with Defendant, it must show how this exchange is relevant to the case – a standard that it cannot meet, given that none of the charges in the indictment hinge on the statements attributed to Defendant in the Article.  See Section II, infra.  To the extent that the government hopes that Mr. Faturechi might have other, unidentified information that could bolster its case, that kind of fishing

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

expedition is not a proper basis for a Rule 17 subpoena. See United States v. Reed, 726 F.2d 570, 577 (9th Cir. 1984).

In addition, Rule 17 requires subpoenas to specify the evidence that is sought, and that evidence must be relevant and admissible. See United States v. Nixon, 418 U.S. 683, 700 (1974). The open-ended Subpoena served on Mr. Faturechi fails to meet the specificity requirement. Id.

Second, the Subpoena independently is barred by the First Amendment-based federal qualified reporter's privilege, which the Ninth Circuit applies in criminal proceedings. See Shoen I, 5 F.3d at 1292. Before a non-party journalist can be compelled to produce information acquired in the course of his or her newsgathering activities, the party seeking the information must show that it is "(1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case." Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995) ("Shoen II"). Given that Mr. Faturechi's testimony does not even meet the lower relevance threshold under Rule 17, the government cannot make the heightened showing required by the constitutional privilege. See Section III.A, infra. Moreover, any information that the government seeks also is likely to be available from numerous other individuals associated with the Sheriff's Department and FBI (as well as from the Defendant, if he chooses to testify). Consequently, the prosecution cannot meet its burden of showing that it exhausted alternative sources, or demonstrate that Mr. Faturechi's testimony would not be cumulative. Id.

Third, because this is a prosecution of a California state official for abusing his local public office, the Court should consider the public policy underlying California's statutory and constitutional Shield Law. See Cal. Const. Art. I § 2(b); Cal. Evid. Code § 1070. The California Supreme Court has squarely held that California's Shield Law bars the prosecution in a criminal case from compelling the disclosure of unpublished information from a non-party journalist. See Miller v. Superior Court, 21 Cal. 4th 883, 901 (1999). Although this state constitutional

3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

protection does not automatically apply in federal criminal proceedings, the strong public policy rationale for protecting journalists from becoming witnesses for the prosecution is nonetheless instructive to this Court's consideration of the First Amendment interests at stake. See Section III.B, infra.

For all of these reasons, Mr. Faturechi respectfully requests that this Court quash the Subpoena served on him, and release him from any obligation to testify at the trial in this matter. In the alternative, if this Court declines to quash the Subpoena in its entirety, Mr. Faturechi requests that the Court order that counsel for the parties may not question him about any unpublished information or source information, and further order that his testimony shall be limited to information published in the September 29, 2011 Article and KCRW radio interview. See Section IV, infra.

## II. THE SUBPOENA DOES NOT MEET THE REQUIREMENTS OF FEDERAL RULE OF CRIMINAL PROCEDURE 17

The Subpoena should be quashed for the threshold reason that the government cannot establish its right to take Mr. Faturechi's testimony under Federal Rule of Criminal Procedure 17. As the Ninth Circuit has explained, "Rule 17(c) was not intended as a discovery device, or to 'allow a blind fishing expedition seeking unknown evidence.'" United States v. Reed, 726 F.2d 570, 577 (9th Cir. 1984) (quoting United States v. MacKey, 647 F.2d 898, 901 (9th Cir. 1981)).

In United States v. Nixon, 418 U.S. 683 (1974), the Supreme Court held that a party serving a Rule 17 subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." Id. at 700. This test ensures that any information sought under Rule 17 is actually "evidentiary and relevant," and that "the application is made in good faith and is not intended as a general 'fishing expedition.'" Id. at 699-700.[5]

_____

[5] These restrictions apply both to trial and pretrial subpoenas, and requests for testimony or the production of documents. See United States v. George, 883 F.2d 1407, 1418 (9th Cir. 1989) (applying Nixon test to affirm order quashing subpoena

4

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Under this standard, "where the party seeking the subpoena can describe the material sought only in broad terms or is unsure whether the material even exists, and where the claim of relevance is necessarily speculative, the request is likely to be denied." United States v. W.R. Grace, 434 F. Supp. 2d 869, 873 (D. Mont. 2006). Here, the government cannot meet its burden of showing that the subpoena seeks relevant and specific information.

First, Mr. Faturechi's testimony is not relevant to the prosecution. He is a non-party journalist whose sole connection to these proceedings is that he reported on the Sheriff's Department during his tenure as a journalist with The Times, gathering and disseminating information to the general public through his newspaper articles. Mr. Faturechi is not a percipient witness to any of the conduct at issue in this case; he is not mentioned in the indictment, and none of the charges refers to him or news reports published under his byline. See Dkt. # 70.

Although the government has declined to explain why Mr. Faturechi's testimony is relevant, it appears from the indictment and recent filings that his testimony is being sought in connection with only one of the three counts against Defendant: making false statements in violation of 18 U.S.C. § 1001(a)(2).

The false statements count is based on five statements Defendant made to investigators during an April 12, 2013 interview (the "4/12/13 Interview"). See Dkt. # 70 (First Superseding Indictment at 13-15). In its recent Motion in Limine To Preclude Defendant Baca From Introducing His Own Hearsay Statements, filed November 16, 2016, the government identified the portions of the 4/12/13 Interview

---

issued after trial began); United States v. Bergeson, 425 F.3d 1221, 1226-27 (9th Cir. 2005) (affirming order quashing a testimony-only subpoena under Rule 17).

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

that it intends to introduce as evidence of the five allegedly false statements. See Dkt. # 146 (Motion at 7-12).[6]

None of the portions of the 4/12/13 Interview identified by either party in the Motion involves Mr. Faturechi, or the Article published in The Times. Dkt. # 146 (Motion at 7-23). Nor is there anything in the Government's Motion suggesting that it needs Mr. Faturechi's testimony to prove that any of the statements at issue are false. Id. In contrast, the government specifically identifies other media coverage on which it apparently intends to rely for this purpose, citing statements that Defendant made about the FBI investigation during a television appearance on a "morning news show." Dkt. # 146 (Motion at 4).

The government's Motion argues that this news coverage is relevant to showing that Statement #5 was false, because Defendant's claim to investigators that he never said he did not believe the FBI should be investigating the Department contradicted his "[p]revious [a]dmissions on [t]elevision." Id. (Motion at 12). See also Dkt. # 146-1 (4/12/13 Interview Tr. at 38; 170-172; 183-187) (questioning Defendant about his television appearance). But the government's Motion does not identify any such allegedly contradictory evidence involving Mr. Faturechi, the Article in The Times, or Mr. Faturechi's abbreviated comments during an interview on KCRW. Id. (Motion at 7-12). The government asserts that Defendant's televised statements directly contradicted statements he made to investigators (id. at 12), but the government does not claim in its Motion that the "false statements" charge relies upon any "previous admissions" that Defendant allegedly made in a conversation with Mr. Faturechi. Id. This omission undermines any claim that the government may now make that Mr. Faturechi's testimony is relevant to proving this charge.

---

[6] The "Defendant's Argument" portion of that Motion requests that Defendant be permitted to introduce additional excerpts from the 4/12/13 Interview, to provide context for the passages cited by the government. Id. at 13-23.

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In fact, only one brief reference in the 4/12/13 Interview even concerns Mr. Faturechi's reporting – a few questions directed to Defendant about statements attributed to him in the September 29, 2011 Article. See Dkt. # 146-1 (Exhibit A to Motion at 189-202). The government's pending Motion in Limine excludes most of that discussion, indicating that it does not intend to use it at trial. Id.; Dkt. # 146 (Motion at 1 n.1). Only a small part of what remains even arguably relates to one of the allegedly false statements, but even this reference is indirect, and does not suggest any testimony that Mr. Faturechi could offer that would be admissible at trial:

> Q Got it. Okay. Then [the Article] says, 'He dismissed any suggestion that the visit was intended to intimidate the Agent. The FBI's home visit to his Deputy wrapped up in the sting, Baca argued, involved substantially more intimidating tactics.' That was probably the part, that to me, confused me the most.
>
> A Let me see where that fits in here. Where? Oh, I see. Okay. Baca argued the FBI home visit to the deputy wrapped up in the sting, Baca argued was substantially more intimidating... intimidating tactics . . . you know, first of all, Faturechi doesn't have a tape recorder, and I wish he would, because he tends to reconstruct his stories by memory, which is not a good idea.
>
> Q Okay. You don't remember making this comment to him, in other words?
>
> A I don't even know what it means. [END 21 1:17:56]

Dkt. # 146-1 (Exhibit A to Motion at 189-192).

Although this exchange relates generally to the visit to an FBI agent's home by Sheriff's Department officials, which was referenced in the Article, it does not address the salient point: whether Defendant made a false statement about when he learned about the visit and the intended purpose of the visit. See Dkt. # 70 (Indictment at 14); Dkt. # 146 (Motion at 11-12). The Article was published three

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

days after the visit took place;[7] the comments attributed to Defendant in The Times' Article therefore reveal nothing about when Defendant learned of the visit, and certainly is not evidence contradicting Defendant's statement to investigators that he learned of the visit only after it happened.

Moreover, as the transcript shows, Defendant did not <u>deny</u> making any of the statements attributed to him in The Times' Article. When a portion of the Article was read to him, Defendant said only that he did not "even know what it means." Dkt. # 146-1 (Exhibit A to Motion at 192). The investigators then asked Defendant about his comparison of the FBI's tactics with those of the Sheriff's Department, in a portion of the transcript that apparently is not being used at trial. <u>Id.</u> at 199-201.[8] But they never asked Defendant any follow-up questions to pin down what he said or did not say to Mr. Faturechi about the home visit. <u>Id.</u> at 189-202.[9] Consequently, any testimony by Mr. Faturechi on this point is tangential, at best, and certainly cannot be used to demonstrate that Defendant's Statement # 4 was false.

---

[7] According to the Indictment, the visit to the FBI agent's home took place on September 26. <u>See</u> Dkt. # 70 (First Superseding Indictment at p. 10, ¶ 14).

[8] Rather than contradict the statement attributed to him in The Times' 2011 Article, Defendant <u>confirmed</u> in his 2013 interview with the government that he made the statement that the FBI's home visit to a sheriff's deputy involved "substantially more intimidating tactics" than the visit by two Sheriff's deputies to the lead investigating FBI agent's home. <u>See</u> Dkt. # 146-1 (Exhibit A to Motion at 195-196; 200). Defendant then explained what he meant when he said made the comment: that Sheriff's associates told him the FBI approached the deputy with the fact that the phone had been compromised, then demanded the deputy work for the FBI. "That's fair game, but at the same time, it's pretty intimidating to be flipped like that," Defendant said in the 2013 interview. <u>Id.</u> at 196:19-20.

[9] Defendant was not asked during the interview with investigators about Mr. Faturechi's comments on KCRW, nor could he have been, given that the interview referenced by the U.S. Attorneys' Office in discussions with Mr. Faturechi's counsel did not air until February 2016 – almost three years after the interview took place.

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Mr. Faturechi's February 2016 interview with KCRW radio similarly does not provide any basis for the government to subpoena him under Rule 17. The government's Motion alleges that Defendant falsely stated in the interview "that he was not aware that his deputies were going to approach Special Agent Marx until he later heard about the encounter from Steve Martinez, who was the Assistant Director of the FBI." Dkt. # 146 (Motion at 4). But what Defendant actually said in the interview with investigators was that the call from Mr. Martinez was the first time he was "aware that somebody was going out to Leah Marx's house to threaten to charge and arrest her," and he "wasn't aware of any of the investigative particulars." Dkt. # 146-1 (Exhibit A to Motion at 29:8-18 (emphasis added)). Mr. Faturechi's brief comment on KCRW does not contradict this statement. Faturechi Decl. ¶ 5. In that interview, which was broadcast roughly five years after The Times' Article was published, Mr. Faturechi stated his impression that Defendant "was aware and he sent these deputies to this FBI agent's home," but nothing was said about whether Defendant admitted knowing in advance about a plan to threaten Special Agent Marx with arrest, nor did Mr. Faturechi make any other comments that suggested that Defendant told him something different from what he told government investigators three years earlier. Furthermore, Mr. Faturechi's comments to KCRW did not purport to quote Defendant, making the "published" information of limited – if any – utility, given the absence of any foundation for his stated impression.

Under these circumstances, the government may be seeking to examine Mr. Faturechi in the hope that he will disclose other, unidentified information that may bolster the prosecution's case. But courts consistently have rejected such subpoenas under Rule 17. See, e.g., Reed, 726 F.2d at 577 (quashing defendants' subpoena to third party where they had "not sufficiently demonstrated the relevance of the documents sought" because they had "not pointed to any substantial foundation for believing that the" information would prove their defense); United States v. Eden, 659 F.2d 1376, 1381 (9th Cir. 1981) (party could not meet Rule 17 relevance

9

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

requirement with "mere conclusory statements"); United States v. George, 883 F.2d 1407, 1418 (9th Cir. 1989) (affirming order quashing "overly broad" subpoena that had the "earmarks of a wild goose chase").  Similarly here, because the 4/12/13 Interview is the sole basis of the false statements charge, and the veracity of the statements at issue does not hinge on Defendant's conversation with Mr. Faturechi, the government cannot meet its burden under Rule 17 to compel Mr. Faturechi to testify.

Second, the Subpoena fails under Rule 17 for the independent reason that the government has not established that the testimony it seeks to elicit from Mr. Faturechi will meet the specificity requirement.  "The requirement of 'specificity' under Rule 17 is not satisfied if a [subpoenaing party] does not know what the evidence consists of or what it will show." United States v. Aguilar, 2008 WL 3182029, at *7 (N.D. Cal. Aug. 4, 2008).  "The less specific a subpoena, the greater the likelihood defendant is engaged in a fishing expedition or using their subpoena for discovery purposes." Id.  In the analogous context of documentary subpoenas, courts have explained that "[i]f the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up," the subpoena should be quashed. United States v. Noriega, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991).  See also Reed, 726 F.2d at 577 (subpoena inadequate where it "did not request specific documents, but sought entire … investigation files").

Here, the government's ambiguous Subpoena seeks Mr. Faturechi's attendance at trial, but it does not identify any particular subjects for his testimony, or provide any limits for the examination. See Ex. A.  For the reasons discussed above, Mr. Faturechi's testimony presumably is being sought to authenticate statements published in the September 29, 2011 Article, or, statements that Mr. Faturechi made in the interview with KCRW.  But the government has not identified any particular statements or authenticating information that it expects from Mr. Faturechi, or

10

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

otherwise delineated the scope of his testimony. Because this kind of open-ended subpoena fails to meet the specificity requirement of Rule 17, the Subpoena served on Mr. Faturechi should be quashed on this additional ground.

### III.    THE GOVERNMENT CANNOT OVERCOME THE FEDERAL CONSTITUTIONAL REPORTER'S PRVILEGE

The Subpoena independently should be quashed on the grounds that its enforcement would violate the First Amendment-based federal reporter's privilege, which imposes an even more exacting burden on the government than Rule 17. Although the government has been vague about the purpose of the Subpoena, it is apparent that the prosecution seeks testimony from Mr. Faturechi about information he gathered during his work as a journalist for The Times, which was obtained in the course of his reporting about the operations of the Sheriff's Department. See Faturechi Decl. ¶¶ 2-5, Ex. B.

Courts have made clear that this kind of important First Amendment newsgathering activity occupies a distinct role from that of the government. "By reporting about the government, the media are surrogates for the public." Leigh v. Salazar, 677 F.3d 892, 900 (9th Cir. 2012). "The free press is the guardian of the public interest, and the independent judiciary is the guardian of the free press." Id.

Compelling a journalist to become a witness for the government disrupts this balance, and undermines core First Amendment interests. As the Second Circuit Court of Appeal explained, such compelled testimony "risk[s] the symbolic harm of making [the reporter] appear to be an investigative arm of the judicial system, the government, or private parties." Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999). This harm is not only symbolic; allowing litigants, including prosecutors, to compel journalists' testimony inevitably undermines their ability to investigate and to disseminate information to the public. See Faturechi Decl. ¶ 6.[10]

---

[10] Notably, the United States Department of Justice's own Guidelines, which apply to all members of the Department in civil and criminal cases, recognize these

11

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

To protect these vital interests, the Ninth Circuit has recognized a qualified constitutional privilege that "protects journalists against compelled disclosure in all judicial proceedings, civil and criminal alike." Shoen I, 5 F.3d at 1292 (emphasis added). See also Farr v. Pitchess, 522 F.2d 464, 467-68 (9th Cir. 1975) ("Farr") (recognizing qualified reporter's privilege applies in criminal and civil proceedings); United States v. Pretzinger, 542 F.2d 517, 520-521 (9th Cir. 1976) (affirming order refusing to compel disclosure of confidential source information; "[t]he district judge must balance the interest of confidentiality of news sources against the needs of the criminal justice system to know the identity of the source in determining whether or not to require disclosure" (citing Farr, 522 F.2d 464)).

This qualified privilege shields journalists against the compelled disclosure of both confidential and non-confidential information. See Shoen I, 5 F.3d at 1294. Such protection is necessary because the compelled production of even non-confidential information "'can constitute a significant intrusion into the newsgathering and editorial processes. Like the compelled disclosure of confidential sources, it may substantially undercut the public policy favoring the free flow of information that is the foundation for the privilege.'" Id. (quoting United States v. Cuthbertson, 630 F.2d 139, 147 (3d Cir. 1980)). The privilege is essential to protect "the vitality of the newsgathering process," given the "'lurking and subtle threat to journalists and their employers if disclosure of outtakes, notes, and other unused information, even if nonconfidential, becomes routine and casually, if not cavalierly,

vital interests. As the Guidelines explain, "[b]ecause freedom of the press can be no broader than the freedom of members of the news media to investigate and report the news, the Department's policy is intended to provide protection to members of the news media from certain law enforcement tools, whether criminal or civil, that might unreasonably impair newsgathering activities." 28 C.F.R. § 50.10(a)(1). To that end, the prosecution may only issue a subpoena to a journalist "when the information sought is essential to a successful investigation, prosecution, or litigation" and "after all reasonable alternative attempts have been made to obtain the information from alternative sources ..." See 28 C.F.R. § 50.10(c). Although the Department elected to pursue this subpoena, clearly Mr. Faturechi's testimony is not "essential" to the prosecution, nor have reasonable alternatives been exhausted.

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

compelled.'" Shoen II, 48 F.3d at 416 (quoting United States v. LaRouche Campaign, 841 F.2d 1176, 1182 (1st Cir. 1988)).

Accordingly, it is well established that the "reporter's privilege is implicated even when [the reporter] is sought only to authenticate or confirm otherwise nonconfidential or public information." In re Slack, 768 F. Supp. 2d 189, 194 (D.D.C. 2011). As the district court in that case explained, "[i]f a reporter's privilege did not apply to nonconfidential information, it would result 'in a wholesale exposure of press files to litigant scrutiny [and] would burden the press with heavy costs of subpoena compliance .... [P]ermitting litigants unrestricted, court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties." Id. (quotation omitted). See also United States v. Marcos, 1990 WL 74521, at *2, 17 Media L. Rptr. 2005 (S.D.N.Y. 1990) ("[m]any doors will be closed to reporters who are viewed as investigative resources for litigants"); McMenamin v. Tartaglione, 590 A.2d 802, 811 (Pa. Commw.), aff'd without op., 590 A.2d 753 (Pa. 1991) (applying First Amendment reporter's privilege to published information); In re Shuman, 552 A.2d 602, 610 n.11 (N.J. 1989) (recognizing that "the free flow of information from press to public is still encumbered when a reporter is compelled to testify about published information and sources") (emphasis added); United States v. Blanton, 534 F. Supp. 295, 296-297 (S.D. Fla. 1982) (quashing subpoena directed to reporter in criminal case that sought verification about published statements).

As set forth below, because the government cannot overcome the strict hurdles necessary to overcome the privilege, the Subpoena should be quashed.

A.    **The Government Cannot Meet Its Burden of Overcoming The Constitutional Reporter's Privilege.**

Under controlling Ninth Circuit law, a litigant may overcome the First Amendment reporter's privilege "only upon a showing that the requested material is (1) unavailable despite exhaustion of all reasonable alternative sources;

(2) noncumulative; and (3) clearly relevant to an important issue in the case." Shoen II, 48 F.3d at 416 (emphases added). Consistent with the policies underlying the privilege, courts apply this test strictly, to "ensure that compelled disclosure is the exception, not the rule." Id. See also Zerilli v. Smith, 656 F.2d 705, 712 (D.C. Cir. 1981) ("if the privilege does not prevail in all but the most exceptional cases, its value will be substantially diminished").

The government cannot satisfy any of the First Amendment requirements imposed by the Ninth Circuit in Shoen II, let alone all three of them.

First, the government has not met the exhaustion requirement. As the Ninth Circuit explained in Shoen I, "compelled disclosure from a journalist must be a last resort after pursuit of other opportunities has failed." 5 F.3d at 1297-98 (emphasis added). The subpoenaing party must make a "strong showing" that "there is no other source for the information requested." Riley v. City of Chester, 612 F.2d 708, 716 (3d Cir. 1979). Here, there is nothing to indicate that the government has exhausted alternative sources for the information it now seeks from Mr. Faturechi.

First, the most obvious alternative source of information about what Defendant said to Mr. Faturechi was Defendant himself. See Shoen I, 5 F.3d at 1297-98 (privilege barred subpoena to author where party had not deposed the interview subject who was the "most patently available other source"); Carushka, Inc. v. Premiere Products, Inc., 1989 U.S. Dist. LEXIS 17487, at *8 (C.D. Cal. Sept. 1, 1989) (refusing to compel production of unpublished materials from magazine publisher where the litigants could "elicit the relevant testimony from [the source] herself"); Michael v. Estate of Kovarbasich, 2015 U.S. Dist. LEXIS 168901, at *11 (C.D. Cal. Dec. 11, 2015) (same). As discussed above, the government had the opportunity to question Defendant extensively during the 4/12/13 Interview, and it plans to use the taped interview during the trial. See Section II, supra. Although Defendant briefly referenced his conversation with Mr. Faturechi during the 4/12/13 Interview, investigators made the choice not to follow up on this line of questioning.

14

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Id.; Dkt. # 146-1 (Exhibit A to Motion at 189-202). They did not ask Defendant what he did or did not say to Mr. Faturechi about the visit to the FBI agent's home, or otherwise make any effort to pin down his testimony. Id. Having made that strategic choice, the government cannot now seek to compel Mr. Faturechi's testimony to fill the gap, where it had the opportunity to exhaust "the most patently available other source" of the information. Shoen I, 5 F.3d at 1297-98.

Moreover, the Indictment accuses Defendant of working with numerous other individuals within the Sheriff's Department to obstruct the FBI investigation. See Dkt. # 70 (First Superseding Indictment at 6-12). With respect to the specific allegation about a false statement concerning Defendant's knowledge of the visit by Sheriff's Deputies to the FBI agent's home, the government claims that several individuals with the Sheriff's Department and the FBI discussed Defendant's awareness of the situation at the time. Id. at 10-11. Given the likelihood that the government knows of many people within the Sheriff's Department and FBI who possess information about Defendant's knowledge, they must make a strong showing that the information it seeks from Mr. Faturechi is unavailable from all of these alternative sources before it could proceed with the Subpoena. See Shoen I, 5 F.3d at 1297-98.

Second, for similar reasons, the government cannot meet its burden of demonstrating that the information sought from Mr. Faturechi is not cumulative. "When testimony sought from a reporter would be cumulative of other evidence, it cannot be 'necessary or critical' to an action so as to override the First Amendment privilege." In re Behar, 779 F. Supp. 273, 275-276 (S.D.N.Y. and C.D. Cal. 1991). See also United States v. Burke, 700 F.2d 70, 77-78 (2d Cir. 1983) (quashing subpoena where information sought "would be merely cumulative and would not defeat [the reporters'] First Amendment privilege," and recognizing that "the important social interests in the free flow of information that are protected by the reporter's qualified privileged are particularly compelling in criminal cases"). Any

---

15

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

information Mr. Faturechi received from Defendant after-the-fact about his knowledge of the visit would be cumulative of the information available <u>directly</u> from the numerous other potential witnesses referenced above.

<u>Third</u>, the government cannot show that the information sought from Mr. Faturechi is relevant to a significant trial issue. As the Ninth Circuit has emphasized, the party seeking to overcome the journalist's privilege "must [make] a showing of <u>actual</u> relevance; a showing of <u>potential</u> relevance will not suffice." <u>Shoen II</u>, 48 F.3d at 416 (emphasis added). This constitutional standard is strictly applied. To demonstrate relevance, the subpoenaing party must show that the testimony at issue "go[es] to the 'heart of the matter'" and is "crucial to the case." <u>Zerilli</u>, 656 F.2d at 713. <u>See also</u> <u>Damiano v. Sony Music Entertainment, Inc.</u>, 168 F.R.D. 485, 497 (D.N.J. 1996) (information sought must relate to a "central element" of the case). It is not sufficient that the information simply would be "useful." <u>Krase v. Graco Children Prod., Inc.</u>, 79 F.3d 346, 351 (2d Cir. 1996) (applying New York shield law). Instead, there must be a finding that the claim for which the information is to be used "virtually rises or falls" on the admission of the materials. <u>Id.</u> Put another way, the party issuing the subpoena to the reporter must show that the information sought is "highly relevant" and is "necessary to the proper presentation of the case." <u>United States v. Caporale</u>, 806 F.2d 1487, 1504 (11th Cir. 1986). <u>See also</u> <u>United States v. Cuthbertson</u>, 651 F.2d 189, 196 (3d Cir. 1981) (party seeking information from journalist must show it is "crucial to the claim").

As discussed above, the government cannot meet the less exacting relevance test under Rule 17. <u>See</u> Section II, <u>supra</u>. Mr. Faturechi is not a percipient witness with any firsthand knowledge of the conduct alleged, and the transcript of the 4/12/2013 Interview and the government's Motion <u>in Limine</u> make clear that none of the charges hinge on any information he could provide. <u>Id.</u> His testimony apparently is sought in connection with only one of five statements at issue, in only one of the three counts against Defendant, and at best, is sought to impeach Defendant;

16

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

consequently, it does not go to the heart of the prosecution's case, and would not be crucial to obtaining a conviction.

To the extent that the government is hoping to obtain other unspecified information, that speculative desire does not come close to meeting the heightened relevance test required by the constitutional reporter's privilege. See Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583, 597 (1st Cir. 1980) (federal reporters' privilege does not permit "fishing expedition"); Harbert v. Priebe, 466 F. Supp. 2d 1214, 1216 (N.D. Cal. 2006) (subpoena barred where "mere belief" that information from newspaper might help case did not meet "clearly relevant" factor).

Because the government cannot meet any of the requirements for overcoming the privilege, let alone all of them, the Subpoena should be quashed.

**B.    Special Factors Weigh Heavily In Favor Of The Reporter In This Case.**

In addition to the specific requirements established in Shoen II, the Ninth Circuit has instructed that the "First Amendment privilege and the opposing need for disclosure [must] be judicially weighed in light of the surrounding facts and a balance struck to determine where lies the paramount interest." Farr, 522 F.2d at 468. In California, that judicial weighing should include consideration of the absolute protection that California's Constitution provides to journalists.[11]

As the California Supreme Court explained in describing both the federal and state protections for reporters:

---

[11] Courts considering whether to quash subpoenas under Rule 17 similarly have applied heightened scrutiny where First Amendment rights are implicated. United States v. R. Enterprises, Inc., 498 U.S. 292, 305 (1991) (Stevens, J. concurring; citing In re Grand Jury Subpoena: Subpoena Duces Tecum, 829 F.2d 1291, 1296 (4th Cir. 1987)). See also United States v. Shay, 1993 WL 128728, at *2 (D. Mass. Apr. 2, 1993) (denying government's request to compel production of video from TV station by conducting Rule 17 analysis "[a]gainst the backdrop of the First Amendment").

17

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

A comprehensive reporter's immunity ... has the effect of safeguarding 'the autonomy of the press.' [¶] The threat to press autonomy [from subpoenas] is particularly clear in light of the press' unique role in society. As the institution that gathers and disseminates information, journalists often serve as the eyes and ears of the public. Because journalists not only gather a great deal of information, but publicly identify themselves as possessing it, they are especially prone to be called upon by litigants seeking to minimize the costs of obtaining needed information.

Miller v. Superior Court, 21 Cal. 4th 883, 898 (1999) (citations omitted).

The decision in Miller is particularly instructive. There, the California Supreme Court held that the State's Shield Law, enshrined in Article I, Section 2(b) of the California Constitution as well as Section 1070 of the California Evidence Code, provides absolute protection against the compelled disclosure of a non-party journalist's unpublished information by the prosecution in a criminal case. Id. at 901. Consequently, if this action were in state court, there would not even be a "balancing" of interests, and no showing of relevance or necessity would justify the government's Subpoena to Mr. Faturechi. Id. See also People v. Vasco, 131 Cal. App. 4th 137, 158 (2005) ("[t]he prosecution has no due process right to overcome a newsperson's shield law immunity and force disclosure of unpublished information, even if the undisclosed information is crucial to the prosecution's case"); Fost v. Marin County Superior Court, 80 Cal. App. 4th 724, 731 (2000) ("the virtually absolute protection provided under the shield law need never yield to any superior constitutional right of the People") (quotation omitted).

There are no "published" statements from Mr. Faturechi that establish that Defendant's Statement # 4 in the 4/12/13 Interview was false, even assuming that a foundation could be laid for the Article and KCRW interview without delving beyond the four corners of those publications. And under state constitutional law, Mr. Faturechi could not be compelled to disclose unpublished information that would expand upon or explain any published information. See Playboy Enterprises, Inc. v.

18

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Superior Court, 154 Cal. App. 3d 14, 23-24 (1984) ("[n]either does article I, section 2 allow the construction that its protection is inapplicable whenever unpublished information or materials could or would confirm or amplify the published information derived therefrom because nothing new would be disclosed in the source materials"). See also McGarry v. University of San Diego, 154 Cal. App. 4th 97, 120-121 (2007) (same). Thus, California's Shield Law would absolutely bar the government from compelling testimony from Mr. Faturechi.

Although California's state constitution is not binding in a federal criminal action arising from federal law, authorities interpreting and applying this important state interest still have persuasive value, given the broad First Amendment-based balancing of interests. See Farr, 522 F.2d at 468. As this Court has recognized, "California law and federal common law appear to coincide" with respect to the principles underlying the state Shield Law and federal reporter's privilege. Los Angeles Memorial Coliseum Comm'n v. National Football League, 89 F.R.D. 489, 495 (C.D. Cal. 1981). The "broad scope of California's shield law and the fact that it has now been embodied in one of the first articles of the state's constitution reflect a paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment." Id. (quotation omitted). See In re Behar, 779 F. Supp. at 274 (considering policies underlying New York's "Shield Law" in evaluating subpoena to journalist because "[w]hile the federal law of privilege controls, courts have also considered the applicable state law in the jurisdiction where the reporter's deposition was noticed").

It is especially appropriate for the Court to consider the principles underlying the California Shield Law here given that this case involves the prosecution of a state public official concerning the performance of his duties while he was serving in local office. The charges arise from Defendant's conduct as the elected Sheriff of Los

19

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Angeles County, which is a political subdivision of the State of California. <u>See</u> Cal. Gov't Code § 8557(b). As this Court has recognized, this case raises serious allegations that Defendant abused the public's trust in its local law enforcement institutions and the criminal justice system. The prosecution ultimately is for the benefit of the citizens of California – the same citizens who voted to elevate the Shield Law to <u>constitutional</u> status, to ensure that they will continue to receive a free flow of information about government affairs. <u>See</u> <u>Playboy Enterprises</u>, 154 Cal. App. 3d at 27-28 (interpreting Shield Law broadly, recognizing that voters enshrined it in the "state Constitution [which] is the highest expression of the will of the people").

Through his reporting about the Sheriff's Department, Mr. Faturechi provided precisely the type of information that the California Shield Law is designed to protect. Enforcing the Subpoena and compelling him to become an arm of the prosecution would undermine his ability to function as a journalist, and deprive the public of vital information. <u>See</u> Faturechi Decl. ¶ 6. To avoid infringing the rights of Mr. Faturechi and the public under the First Amendment and the California Constitution, this Court should quash the government's Subpoena.

### IV.    IF THE SUBPOENA IS NOT QUASHED IN ITS ENTIRETY, MR. FATURECHI'S TESTIMONY SHOULD BE LIMITED TO PUBLISHED INFORMATION

If this Court declines to quash the Subpoena in its entirety, Mr. Faturechi respectfully requests in the alternative that the Court limit his testimony to information published in his September 29, 2011 article in The Times, titled, "L.A. County Sheriff Lee Baca gives details of FBI sting," and that the parties' counsel be prohibited from questioning Mr. Faturechi about any unpublished information. As the Ninth Circuit explained in <u>Shoen I</u>, compelled disclosure of a journalist's unpublished information "can constitute a significant intrusion into the newsgathering and editorial processes" and "may substantially undercut the public

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

policy favoring the free flow of information that is the foundation for the privilege." 5 F.3d at 1294 (quotation omitted).  Here, too, as established above, compelling Mr. Faturechi to testify about unpublished information would undermine the important policies underlying the First Amendment reporter's privilege and California's Shield Law.  The government cannot meet its heavy burden to overcome these privileges. Consequently, any questioning of Mr. Faturechi should, at minimum, be strictly limited in its scope to information that was actually published in The Times Article.

## V.  CONCLUSION

Because the government cannot satisfy the stringent test necessary to overcome the journalist's privilege, or even meet the basic requirements of Rule 17, Mr. Faturechi respectfully requests that this Court quash the Subpoena or, in the alternative, limit the scope of Mr. Faturechi's testimony to information that was published in The Times.

DATED: November 22, 2016

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
ROCHELLE L. WILCOX
DAN LAIDMAN

By: _____
Kelli L. Sager

Attorneys for Non-Party Journalist
Robert Faturechi

MOTION TO QUASH
DWT 30783158v7 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## PROOF OF SERVICE BY HAND DELIVERY

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Davis Wright Tremaine LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566.

On November 22, 2016, I caused to be hand-served the foregoing document[1] described as NOTICE OF MOTION AND MOTION OF NON-PARTY JOURNALIST ROBERT FATURECHI TO QUASH THE GOVERNMENT'S SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES on counsel appearing on this date in Courtroom 9A of the United States District Court for the Central District of California:

Nathan Hochman, Esq.
c/o Courtroom of The Honorable Percy Anderson
First Street Courthouse
350 W. 1st Street, Courtroom 9A
9th Floor, Los Angeles, California 90012
*Counsel for Defendant, Leroy Baca*

Brandon Fox, Esq.
c/o Courtroom of The Honorable Percy Anderson
First Street Courthouse
350 W. 1st Street, Courtroom 9A
9th Floor, Los Angeles, California 90012
*Counsel for Plaintiff, United States of America*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this proof of service was executed on November 22, 2016, at Los Angeles, California.

| Kelli Sager | | |
| --- | --- | --- |
| Print Name | | Signature |

---

[1] The service copy had e-signatures and handwritten hearing date and "TBD" on time.

PROOF OF SERVICE
DWT 30136066v1 0026175-000486