**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
ROCHELLE L. WILCOX (State Bar No. 197790)
  rochellewilcox@dwt.com
DAN LAIDMAN (State Bar No. 274482)
  danlaidman@dwt.com

Attorneys for Non-Party Journalist
Robert Faturechi

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    vs.<br><br>LEROY BACA,<br><br>            Defendant. | Case No. **16-66(A)-PA**<br><br>**REPLY OF NON-PARTY JOURNALIST ROBERT FATURECHI IN SUPPORT OF MOTION TO QUASH THE GOVERNMENT'S SUBPOENA**<br><br>Hearing Date:  December 2, 2016<br>Hearing Time:  TBD<br>Courtroom:     Courtroom 9A<br>               Hon. Percy Anderson |

Non-Party Journalist Robert Faturechi respectfully submits this Reply in support of his Motion To Quash the government's Subpoena (the "Motion").

REPLY IN SUPPORT OF MOTION TO QUASH
DWT 30821417v5 0026175-000505

# TABLE OF CONTENTS

Page

I.   SUMMARY OF ARGUMENT ...................................................................... 1

II.  THE SUBPOENA DOES NOT SATISFY RULE 17 ................................... 1

III. THE GOVERNMENT CANNOT OVERCOME THE FEDERAL CONSTITUTIONAL REPORTER'S PRIVILEGE ........................................ 6

  A.  This Circuit Recognizes A Qualified Constitutional Journalists' Privilege. ................................................................................................ 6

  B.  The Government Has Not Met Its Burden Of Overcoming The Privilege. ................................................................................................ 9

IV. CALIFORNIA'S SHIELD LAW ESTABLISHES A STRONG PUBLIC POLICY IN CALIFORNIA, THAT SHOULD BE CONSIDERED HERE ..................................................................................................... 11

REPLY IN SUPPORT OF MOTION TO QUASH
DWT 30821417v5 0026175-000505

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Branzburg v. Hayes,
408 U.S. 665 (1972)........................................................................... 1, 7, 8, 9

Cohen v. Cowles Media Co.,
501 U.S. 663 (1991) ..................................................................................... 8

Farr v. Pitchess,
522 F.2d 464 (9th Cir. 1975) ................................................................ 7, 8, 9

Fost v. Superior Court,
80 Cal. App. 4th 724 (2000) ....................................................................... 12

In re Grand Jury Proceedings,
5 F.3d 397 (9th Cir. 1993) ........................................................................ 8, 9

In re Grand Jury Subpoena: Subpoena Duces Tecum,
829 F.2d 1291 (4th Cir. 1987) .................................................................. 5, 9

In re Howard,
136 Cal. App. 2d 816 (1955) ...................................................................... 12

In re Lewis,
517 F.2d 236 (9th Cir. 1975) ........................................................................ 9

Los Angeles Memorial Coliseum Comm'n v. NFL,
89 F.R.D. 489 (C.D. Cal. 1981) ................................................................. 11

Shoen v. Shoen,
48 F.3d 412 (9th Cir. 1995) ........................................................ 7, 8, 10, 11

Shoen v. Shoen,
5 F.3d 1289 (9th Cir. 1993) ................................................................. 6, 7, 8

United States ex rel. Vuitton Et Fils S.A. v. Karen Bags, Inc.,
600 F. Supp. 667 (S.D.N.Y. 1985)............................................................. 11

United States v. Ahn,
231 F.3d 26 (D.C. Cir. 2000) ....................................................................... 8

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

United States v. Arditti,
   955 F.2d 331 (5th Cir. 1992) .................................................................... 4

United States v. Bergeson,
   425 F.3d 1221 (9th Cir. 2005) ......................................................... 1, 2, 6

United States v. Blanton,
   534 F. Supp. 295 (S.D. Fla. 1982) ......................................................... 8

United States v. Capers,
   708 F.3d 1286 (11th Cir. 2013) .............................................................. 8

United States v. Caporale,
   806 F.2d 1487 (11th Cir. 1986) ......................................................... 8, 10

United States v. Cuthbertson,
   630 F.2d 139 (3d Cir. 1980).................................................................... 8

United States v. Cuthbertson,
   651 F.2d 189 (3d Cir. 1981)................................................................. 10

United States v. Gambino,
   741 F. Supp. 412 (S.D.N.Y. 1990)........................................................ 8

United States v. Hendron,
   820 F. Supp. 715 (E.D.N.Y. 1993) ..................................................... 11

United States v. Nixon,
   418 U.S. 683 (1974).......................................................................... 1, 2

United States v. Onyenso,
   2013 WL 5322651 (D.N.J. Sept. 20, 2014) .......................................... 5

United States v. Pretzinger,
   542 F.2d 517 (9th Cir. 1976) ................................................................. 7

United States v. Smith,
   135 F.3d 963 (5th Cir. 1998) ................................................................. 8

United States v. Sterling,
   724 F.3d 482 (4th Cir. 2013) ................................................................. 8

United States v. Weissman,
   2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002) .................................... 5

iii

REPLY IN SUPPORT OF MOTION TO QUASH
DWT 30821417v5 0026175-000505

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

University of Pennsylvania v. EEOC,
    493 U.S. 182 (1990) ................................................................................................... 8

**Rules**

Federal Rule of Criminal Procedure
    17 .................................................................................................................. passim
    17(c) ............................................................................................................... 1, 11
    17(c)(2) .................................................................................................................. 1

**Regulations**

28 C.F.R. § 50.10(4)(ii)(A) ....................................................................................... 11

**Constitutional Provisions**

United States Constitution, First Amendment ................................................... passim

iv

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## I.   SUMMARY OF ARGUMENT

The government's Opposition ignores controlling Ninth Circuit authority. First, contrary to the government's claim (Opp. at 11 n.2), Federal Rule of Criminal Procedure 17(c) applies to testimony-only subpoenas. United States v. Bergeson, 425 F.3d 1221 (9th Cir. 2005). The government's cursory response evidences its inability to demonstrate the basic requirements of Federal Rule 17: "(1) relevancy; (2) admissibility; [and] (3) specificity" of the requested materials. United States v. Nixon, 418 U.S. 683, 700 (1974). Section II, infra.

Second, the First Amendment protects against compelled disclosure of Mr. Faturechi's testimony. The government's primary claim – that reporters have no constitutional protections in criminal cases, citing Branzburg v. Hayes, 408 U.S. 665 (1972) – overstates the holding of that case, and ignores controlling Ninth Circuit authority to the contrary. Section III, infra. Because the government cannot justify an infringement of Mr. Faturechi's rights – particularly in light of strong California state constitutional policy favoring such protections over the rights of prosecutors (Section IV, infra) – the Subpoena should be quashed.

## II.   THE SUBPOENA DOES NOT SATISFY RULE 17

The government brushes aside the requirements of Rule 17, claiming that the limits of Rule 17(c) do not apply to testimonial subpoenas. Compare Mot. at 4-11 with Opp. at 11 n.2. But this ignores the Ninth Circuit's controlling decision in Bergeson, 425 F.3d 1221, which affirmed an order quashing a testimonial subpoena by applying the "unreasonable and oppressive" standard under Rule 17(c)(2). Id. at 1223-24; Mot. at 5 n.5. The Supreme Court interpreted this same "unreasonable or oppressive" language from Rule 17(c)(2) in holding that a party serving a Rule 17 subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." United States v. Nixon, 418 U.S. 683, 700 (1974). Thus, Rule 17's reasonableness requirement demands that subpoenas seek only information – whether through testimony or documents – that is relevant, admissible and specific. Bergeson, 425

1

REPLY IN SUPPORT OF MOTION TO QUASH
DWT 30821417v5 0026175-000505

F.3d at 1225.  The government failed to meet this basic requirement.[1]

First, the claim that Defendant made probative "admissions" to Mr. Faturechi mischaracterizes his reporting and ignores the actual basis for the charges.  Opp. at 1.  The government acknowledges it seeks Mr. Faturechi's testimony primarily in connection with one of the allegedly false statements giving rise to Count Three:  Defendant's statement in the 4/12/13 Interview about his knowledge of the Sheriff's deputies' visit to the home of FBI Special Agent Leah Marx ("Marx").  See Opp. at 4; 12-13.  But this charge depends on the timing of Defendant's awareness.  Dkt. # 70 (First Superseding Indictment at 14).  Defendant told government investigators that an hour after the visit occurred, he received a call from FBI official Steven Martinez, which he said "was the first time that [he was] aware that somebody was going out to Leah Marx's house to threaten to charge and arrest her"; before that call, he said only that he "wasn't aware of any of the investigative particulars."  Dkt. # 146-1 (Ex. A to Mot. at 29:1-19) (emphasis added); Opp. at 4.  But the investigators failed to follow up:  they did not ask what Defendant meant by his ambiguous statement about "investigative particulars."  Id.  Nor did they ask him precisely what he did know before that call.  He denied knowing that deputies had gone to Marx's "house to threaten to charge and arrest her," id., but in the cited passage, Defendant did not deny knowing that the visit was going to occur.

More importantly, all of this – including the phone call that Defendant related to investigators – happened three days before Mr. Faturechi's September 29, 2011 Article.  If Defendant knew the details of the house visit at that point – which the Article does not discuss – it would not be inconsistent with his statement to investigators that he learned the details on September 26.  See Mot. at Ex. B.

The other statement in the Article also does not contradict Defendant's

---

[1] Mr. Faturechi did not claim that the specificity requirement is identical for testimonial and document subpoenas.  Mot. at 10.  As interpreted in Nixon and Bergeson, Rule 17 appears to require the subpoenaing party, when faced with a challenge, to specify the testimony that it seeks and explain its relevance.

REPLY IN SUPPORT OF MOTION TO QUASH
DWT 30821417v5 0026175-000505

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

interview comments. It says Defendant "dismissed any suggestion that the visit was intended to intimidate the agent. The FBI's home visit to his deputy wrapped up in the sting, Baca argued, involved 'substantially more intimidating tactics.'" Id. But here again, investigators failed to pin down Defendant's story about what he said to Mr. Faturechi. Mot. at 7-8; see Dkt. # 146-1 (Ex. A to Mot. at 192). Instead, apparently recognizing that Defendant's response was equivocal, the government makes the attenuated claim that the "substantially more intimidating tactics" comment is relevant to provide a "motive" for the home visit, and to show that Defendant "agreed with the deputies' actions." Opp. at 13. Neither is conveyed by the actual language in the Article, nor does this new theory require Mr. Faturechi's testimony. Defendant's statement in the 4/12/13 interview conveyed his feeling about which event was more "intimidating," making the comment in the Article redundant, at best. See Dkt. # 146.

Finally, Mr. Faturechi's comments in the radio interview do not establish that Defendant lied to investigators. In the excerpt cited by the government, Mr. Faturechi did not quote Defendant; he related that Defendant "acknowledged" that he "was aware and he sent these deputies" to the house. Opp. Ex. C. Mr. Faturechi did not say Defendant knew in advance or directed the deputies "to threaten to charge and arrest her," which is the pertinent point for the government's false statements charge. Id. Accordingly, even if Defendant conveyed "very clearly" to Mr. Faturechi that he knew the visit was going to happen, he did not deny that in the statements cited in the government's brief; and because his conversation with Mr. Faturechi happened three days after the incident occurred – and thus, after the phone call Defendant had with Mr. Martinez, where he learned of the threats – Mr. Faturechi's comment is hardly proof that Defendant lied to the investigators.

In a strained effort to make Defendant's interview with Mr. Faturechi appear relevant, the government claims Defendant denied making the comment attributed to him in the Article. Opp. at 13. But he did not deny saying it; he said he "did not know what it meant" when it was read to him. Dkt. # 146-1 (Ex. A to Mot. at 192).

3

REPLY IN SUPPORT OF MOTION TO QUASH
DWT 30821417v5 0026175-000505

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Nor does his dismissive comment about Mr. Faturechi directly deny the quoted comment; at best, it may have been misleading.  Id.  But as litigators know, it is critical to pin down equivocal witnesses, which the investigators failed to do.

The government's opposition also omits later portions of the 4/12/13 Interview, where Defendant effectively admitted making the statement; he merely, quibbled with how it was presented and what readers would understand was meant. Dkt. # 146-1 (Ex. A to Mot. at 199:7-16; 200-201).  In short, nothing the government wants to ask Mr. Faturechi is relevant to prove that Defendant lied to investigators.

Second, apparently realizing that the relevance of Mr. Faturechi's testimony is tenuous at best, the government has thrown out additional justifications about what it would show Defendant supposedly "knew" about the FBI investigation.  Opp. at 12-14.  But in addition to being amorphous, these additional claims ignore the timing of Defendant's comments to Mr. Faturechi.  The conspiracy and obstruction of justice charges accuse Defendant of working with co-conspirators to obstruct the FBI investigation between August 19, 2011, and September 26, 2011.  See Dkt. # 70 (First Superseding Indictment at 6, 12).  All of the charges are based on Defendant's alleged contemporaneous knowledge of the conspiracy and intent to obstruct the investigation.  Id. at 6-14.  But Mr. Faturechi's Article in The Times not only was published after all of those events allegedly occurred, on September 29, 2011, it notes that Defendant had met with the U.S. Attorney to discuss the dispute with the FBI, and held a press conference.  See Mot. Ex. B.  Thus, it was after details of the investigation and the FBI's conflict with the Department had been publicly disclosed.

Given the timeline, there is no inherent inconsistency between the information attributed to Defendant by Mr. Faturechi, and Defendant's claims to investigators. The government's newly-minted conjecture that other, unpublished portions of Defendant's interview with Mr. Faturechi might reveal such awareness is precisely the kind of speculation that is barred by Rule 17.  See, e.g., United States v. Arditti, 955 F.2d 331, 346 (5th Cir. 1992) (quashing subpoena where defendant

REPLY IN SUPPORT OF MOTION TO QUASH
DWT 30821417v5 0026175-000505

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"demonstrated why he wants to look into the material, but he has not set forth what the subpoena's materials contain, forcing the court to speculate as to the specific nature of their contents and its relevance").

Third, the government concedes in its Opposition that there are alternative, first-hand sources of information about Defendant's knowledge – as contrasted with second-hand testimony from a reporter with no personal knowledge of the events at issue. Opp. at 15. Its brief admits that Paul Tanaka and Steve Leavins would likely be first-hand sources of information, but states vaguely that they are not "cooperating" and will not be "government witnesses at trial." Id. Similarly, the government states that it is unknown if a third witness, William Carey, will testify, but, if he does, they want Mr. Faturechi to corroborate his testimony. Id. Such conjecture does not meet the standard under Rule 17. See United States v. Weissman, 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002) (quashing subpoena where "defense counsel merely speculates that the materials may constitute inconsistent statements of expected witnesses") (original emphasis); United States v. Onyenso, 2013 WL 5322651, at *2-3 (D.N.J. Sept. 20, 2014) (rejecting "speculative assertion that the subpoena may reveal potential impeachment material").

Finally, the government chooses to ignore authorities showing that the relevance standard under Rule 17 is heightened where, as here, a subpoena implicates First Amendment rights. See Mot. at 17 n.11. This distinct point does not require the Court to even adjudicate the application of a constitutional or state-based reporter's privilege. Instead, it arises from Rule 17, which recognizes that the determination of whether a subpoena is "unreasonable or oppressive" should take into account public policy, especially important constitutional and statutory policies that are implicated by the subpoena. See, e.g., In re Grand Jury Subpoena: Subpoena Duces Tecum, 829 F.2d 1291, 1296 (4th Cir. 1987) ("the first amendment context of these proceedings heightens the concern about burdensomeness" of Rule 17 subpoena). See also Bergeson, 425 F.3d at 1225 (quashing subpoena under Rule 17;

REPLY IN SUPPORT OF MOTION TO QUASH
DWT 30821417v5 0026175-000505

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

finding its effect on the attorney-client relationship would be "oppressive").

Here, forcing Mr. Faturechi to testify threatens to disrupt the flow of information on issues of public concern, while undermining the policy behind an important state constitutional right, in a prosecution meant to protect the citizens of this State. See Mot. at 11-12, 17-20; Sections III, IV, infra. This triggers a heightened standard that the government cannot meet.

### III. THE GOVERNMENT CANNOT OVERCOME THE FEDERAL CONSTITUTIONAL REPORTER'S PRIVILEGE

The Ninth Circuit has identified four key interests justifying a journalist's privilege for unpublished material: "'the threat of administrative and judicial intrusion into the newsgathering and editorial process; the disadvantage of a journalist appearing to be an investigative arm of the judicial system or a research tool of government or of a private party; the disincentive to compile and preserve non-broadcast material; and the burden on journalists' time and resources in responding to subpoenas.'" Shoen v. Shoen, 5 F.3d 1289, 1294-1295 (9th Cir. 1993) ("Shoen I") (citation omitted). As the Court explained, journalists' "independent status … often enables reporters to gain access, without a pledge of confidentiality, to meetings or places where a policeman or a politician would not be welcome," yet that access would be lost if journalists were viewed as an arm of government. Id. at 1295.

Discussing the extensive authority recognizing the privilege, the Court found "this body of circuit case law and scholarly authority so persuasive that we think it unnecessary to discuss the question further." Id. (emphasis added). These considerations strongly support Mr. Faturechi's motion to quash the Subpoena.

### A. This Circuit Recognizes A Qualified Constitutional Journalists' Privilege.

The government's primary argument in opposition to Mr. Faturechi's Motion – that no First Amendment qualified privilege exists in federal criminal cases – is simply wrong. The Ninth Circuit repeatedly has recognized that privilege, declaring

6

REPLY IN SUPPORT OF MOTION TO QUASH
DWT 30821417v5 0026175-000505

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

in Shoen I that "the journalist's privilege *recognized in Branzburg* [is] a partial First Amendment shield that protects journalists against compelled disclosure in all judicial proceedings, *civil and criminal alike*." 5 F.3d at 1292 (emphasis added).[2]

As the Court explained in Shoen I, "[i]n Farr v. Pitchess, 522 F.2d 464, 467-68 (9th Cir. 1975) … we interpreted [Branzburg] as establishing such a qualified privilege for journalists. Eight of the other nine circuits that have decided the question read Branzburg the same way." Id. (citations omitted). After recognizing the privilege in the criminal context (Farr); the Ninth Circuit extended the privilege to civil proceedings (Shoen I); and it then established a test for applying that privilege. Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995) ("Shoen II"). Thus, the government's argument is backwards: the existence of a constitutional qualified privilege was recognized first in criminal proceedings, then applied to civil cases.[3]

In any case, any doubt about the application of the privilege to criminal cases was eliminated one year after Farr, in United States v. Pretzinger, 542 F.2d 517, 520-521 (9th Cir. 1976). There, the Ninth Circuit refused to compel a journalist to identify his source regarding an upcoming drug arrest, explaining that "[t]he district judge must balance the interest of confidentiality of news sources against the needs of the criminal justice system to know the identity of the source in determining whether or not to require disclosure." Id. at 520-21 (citing Farr, 522 F.2d 464). Because the identity of the source would not support the theory advanced by defendant, the trial court properly refused to order disclosure. Id. at 521.

Other circuits agree. As the Third Circuit has held, "the interests of the press that form the foundation for the privilege are not diminished because the nature of

[2] In cherry-picking language from Branzburg, the government ignores the Supreme Court's recognition that "without some protection for seeking out the news, freedom of the press could be eviscerated" (408 U.S. at 681), and that "news gathering is not without its First Amendment protections" (id. at 707).

[3] In Farr, following the criminal trial of members of the Manson family, the trial court ordered a journalist covering the trial to disclose the names of confidential sources, who provided information to him about the proceedings, in violation of a court order. Id. at 466.

7

REPLY IN SUPPORT OF MOTION TO QUASH
DWT 30821417v5 0026175-000505

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the underlying proceedings out of which the request for the information arises is a criminal trial." United States v. Cuthbertson, 630 F.2d 139, 147 (3d Cir. 1980) ("Cuthbertson I"). For this reason, the D.C. Circuit held that the district court should quash a subpoena if the information sought is not "essential and crucial" to the defendant's case. United States v. Ahn, 231 F.3d 26, 37 (D.C. Cir. 2000).[4]

The government tries to downplay these cases, but it cannot overcome their fundamental holding that the privilege applies in criminal cases. Opp. at 10-11.[5] It relies heavily on grand jury cases, such as In re Grand Jury Proceedings, 5 F.3d 397 (9th Cir. 1993), in which the Ninth Circuit declined to find that a scholars' privilege protected a student from refusing to comply with a grand jury subpoena. As the Court explained in distinguishing Farr:

> We balanced the conflicting interests raised by that case where the societal interest was different in order to determine the existence of a privilege, but did so only because that case – unlike Branzburg or the present case – did not involve testimony before a grand jury.

In re Grand Jury Proceedings, 5 F.3d at 402 (citations omitted; emphasis added). The

_____

[4] Applying this settled law, courts in criminal cases regularly quash subpoenas aimed at journalists. See, e.g., United States v. Capers, 708 F.3d 1286, 1303 (11th Cir. 2013) (affirming order quashing subpoena; constitutional privilege "shields reporters in both criminal and civil proceedings"); United States v. Caporale, 806 F.2d 1487, 1504 (11th Cir. 1986) (same; quashing subpoena in RICO prosecution); United States v. Blanton, 534 F. Supp. 295, 296-297 (S.D. Fla. 1982) (quashing government subpoena); United States v. Gambino, 741 F. Supp. 412, 414-415 (S.D.N.Y. 1990) (reversing order for in camera inspection of notes about confidential informant).

[5] Its reliance on decisions from the Fourth and Fifth Circuits should be flatly rejected; those courts disagreed with the Ninth Circuit's interpretation of Branzburg and chose not to recognize the privilege that controls in this Circuit. Opp. at 7-9; see United States v. Sterling, 724 F.3d 482, 492-493 (4th Cir. 2013) (interpreting Branzburg as rejecting qualified privilege in criminal cases); United States v. Smith, 135 F.3d 963, 970 & n.2 (5th Cir. 1998) (citing Shoen I as among the decisions recognizing a qualified privilege, which the Fifth Circuit refused to recognize).

The U.S. Supreme Court cases cited by the government are even less relevant. Opp. at 7 (citing Cohen v. Cowles Media Co., 501 U.S. 663, 669 (1991); University of Pennsylvania v. EEOC, 493 U.S. 182, 201 (1990)). Neither involved application of the privilege; in both cases, the Court merely mentioned the Branzburg decision in dicta. In addition, the Ninth Circuit decided both Shoen I and Shoen II after these decisions. In any event, Cohen simply reiterates, as discussed below, that grand jury subpoenas are treated differently than other subpoenas. 501 U.S. at 669.

REPLY IN SUPPORT OF MOTION TO QUASH
DWT 30821417v5 0026175-000505

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

government did not and cannot cite a single Ninth Circuit case imposing a "bad faith" requirement outside of the grand jury context.

Different interests come into play when evidence is sought in a grand jury proceeding. As the Ninth Circuit has explained, "[t]he precise holding of Branzburg [had] subordinated the right of the newsmen to keep secret a source of information in [the] face of the more compelling requirement that a grand jury be able to secure factual data relating to its investigation of serious criminal conduct." 5 F.3d at 402 (citing 522 F.2d at 467-68); see also In re Lewis, 517 F.2d 236, 237-238 (9th Cir. 1975) (discussing Branzburg's application to grand jury subpoenas). In contrast, the Ninth Circuit has recognized that "[t]he application of the Branzburg holding to non-grand jury cases seems to require that the claimed First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts and a balance struck to determine where lies the paramount interest." Farr, 522 F.2d at 468 (emphasis added).

Finally, none of the government's cases involved the kind of tangential evidence at issue here – testimony by a reporter with no first-hand knowledge of the events, concerning an interview conducted years earlier. In Branzburg, the government sought evidence about the reporter's personal observation of defendants "synthesizing hashish from marihuana," accompanied by a photograph allegedly portraying the hashish. 408 U.S. at 667-668. Similarly, in Farr, the journalist "was sent to jail by a California State Court after being adjudged in contempt for refusing to name the allegedly confidential suppliers of certain information." 522 F.3d at 466. In both cases, the journalist had personal, direct knowledge of allegedly illegal acts. That is not the situation here.

### B. The Government Has Not Met Its Burden Of Overcoming The Privilege.

As set forth in the Motion, to compel Mr. Faturechi to comply with the Subpoena, the government must show that the information it seeks is "(1) unavailable

REPLY IN SUPPORT OF MOTION TO QUASH
DWT 30821417v5 0026175-000505

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

despite exhaustion of all reasonable alternative sources; (2) non-cumulative; and (3) clearly relevant to an important issue in the case." Shoen II, 48 F.3d at 416. Moreover, the government "must [make] a showing of actual relevance; a showing of potential relevance will not suffice." Id. The government failed to meet this burden.

First, the government plainly has not exhausted reasonable alternative sources. Contrary to the government's claim (Opp. at 14-15), the key issue is not what Defendant allegedly said to Mr. Faturechi; if relevance were drawn so narrowly, this factor would always be satisfied. As the Eleventh Circuit explained in rejecting the same argument made by the government here, if a government witness is available to testify, the notes regarding that witness's prior comments are not "unavailable from other sources." Caporale, 806 F.2d at 1504. Instead, the relevant facts are what Defendant knew, and whether Defendant lied about his knowledge during his interview with investigators. Here, at least three witnesses can provide direct evidence about Defendant's knowledge (Opp. at 14-15); moreover, the indictment identifies several other witnesses whom the government said have contemporaneous knowledge that "defendant BACA was aware of the situation." Dkt. # 70 at 10-11.

Second, the government cannot establish that information Mr. Faturechi may possess is non-cumulative. Although the government may prefer not to use other witnesses, that is a choice: it does not meet its burden as to Mr. Faturechi merely because it thinks a journalist is a more credible witness. The government has not identified anything it seeks from Mr. Faturechi that is not available elsewhere.

Third, as explained above, the government has not shown that the information is "clearly relevant to an important issue in the case." Section II, infra. Initially, the government's arguments make clear that it seeks Mr. Faturechi's testimony primarily for impeachment purposes. Opp. at 12-14. But courts have rejected subpoenas designed to elicit impeachment evidence, at least until the witness sought to be impeached has testified. See, e.g., United States v. Cuthbertson, 651 F.2d 189, 195 (3d Cir. 1981) ("Cuthbertson II"); United States v. Hendron, 820 F. Supp. 715, 717-

REPLY IN SUPPORT OF MOTION TO QUASH
DWT 30821417v5 0026175-000505

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

718 (E.D.N.Y. 1993). The parties cannot have a need for the information until trial commences, and they can evaluate the evidence and testimony actually received.

Similarly, the government cannot meet its burden by speculating that Mr. Faturechi might provide testimony that contradicts statements Defendant made to federal agents. Even assuming, arguendo, that Mr. Faturechi could recall precisely what Defendant said in an interview five years ago, nothing in the published material directly supports the government's claim that Defendant lied to federal officers. Section II, supra. If the government cannot meet the test under Rule 17(c) – and it cannot (id.) – it certainly cannot meet the heightened test established in Shoen II. See also United States ex rel. Vuitton Et Fils S.A. v. Karen Bags, Inc., 600 F. Supp. 667, 671 (S.D.N.Y. 1985) (citation omitted) (refusing to compel journalist's testimony "based on a hypothesis or 'hunch'"). [6]

Because the government has not met its burden on any element of the Shoen II test, let alone all of them, the Subpoena should be quashed.

## IV.  CALIFORNIA'S SHIELD LAW ESTABLISHES A STRONG PUBLIC POLICY IN CALIFORNIA, THAT SHOULD BE CONSIDERED HERE

The government is dismissive of California's Shield Law, but it undeniably establishes the strong public policy in California protecting journalists from subpoenas – including absolute protection to journalists subpoenaed by the government in a criminal case. Mot. at 18; compare Opp. at 16-17.[7] It also ignores

_____

[6] Notably, the government says nothing about the Department of Justice Guidelines, which impose strict limits on subpoenas issued to reporters. 28 C.F.R. § 50.10(4)(ii)(A) ("In criminal matters, there should be reasonable grounds to believe … that the information sought is essential to a successful investigation or prosecution. The subpoena should not be used to obtain peripheral, nonessential, or speculative information."). It seems clear that the government violated these Guidelines in seeking the second-hand information that it speculates Mr. Faturechi may have.

[7] The government also misrepresents the holding in Los Angeles Memorial Coliseum Comm'n v. NFL, 89 F.R.D. 489, 495 (C.D. Cal. 1981). Opp. at 16 n.5. The court applied the newly-enacted constitutional provision, explaining that "the broad scope of California's shield law and the fact that it has now been embodied in one of the first articles of the state's constitution 'reflect a paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of

11

REPLY IN SUPPORT OF MOTION TO QUASH
DWT 30821417v5 0026175-000505

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the broad interpretation of the Shield Law that has been adopted by California courts. For example, in In re Howard, 136 Cal. App. 2d 816 (1955), the court held that although a newspaper published under a reporter's byline an article that contained direct quotations attributed to a labor organizer, the reporter could refuse to testify about whether he ever had a conversation with that individual. Id. at 818-819. "[I]n the absence of any showing other than the published news story," the court reasoned, the reporter had not disclosed the source of the published information. Id. at 819. Because the article did not disclose anything other than the statement that appeared within its four corners, the reporter could not be compelled to answer foundational questions. Id.; see also Fost v. Superior Court, 80 Cal. App. 4th 724, 735-738 (2000) (testimony about published information stricken because reporter could not be compelled to disclose unpublished information necessary for cross-examination).

Here, too, although the government claims it wants only published information (Opp. at 1, 11, 17), it also seeks to ask "foundational questions" and "matters affecting Mr. Faturechi's credibility." Opp. at 18. It has not met its burden to obtain this unpublished information. Under California's Shield Law, the government would be absolutely prohibited from delving into Mr. Faturechi's unpublished information, and this Court is urged to consider that strong public policy here.

At minimum, the Court should strictly limit any testimony sought from Mr. Faturechi to information actually published in the Times article or the KCRW interview, and not permit the Government (or the Defendant) to go beyond the four corners of those publications.

DATED: November 29, 2016

By: /s/ Kelli L. Sager
    Kelli L. Sager

participating in robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment …." Id. (citation omitted). In addition, as discussed above, the same test for invoking the qualified privilege applies in civil and criminal cases. Section III.A, supra.

REPLY IN SUPPORT OF MOTION TO QUASH
DWT 30821417v5 0026175-000505

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine, LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566.

On November 29, 2016, I served the following document described as: **REPLY OF NON-PARTY JOURNALIST ROBERT FATURECHI IN SUPPORT OF MOTION TO QUASH THE GOVERNMENT'S SUBPOENA** on the parties listed below:

Brandon D. Fox, Esq.
AUSA - Office of the US Attorney
312 North Spring Street, 12th Floor
Los Angeles, CA 90012
Tel: 213-894-0284/ Fax: 213-894-0141
Email: brandon.fox@usdoj.gov
*Attorney for Plaintiff United States of America*

Nathan J Hochman, Esq.
Morgan Lewis and Bockius LLP
The Water Garden
1601 Cloverfield Blvd., Suite 2050 North
Santa Monica, CA 90404-4082
Tel: 310-255-9025 / Fax: 310-907-1001
Email: nathan.hochman@morganlewis.com
*Attorney for Defendant Leroy Baca*

**by the following means:**

☒ (ELECTRONIC CASE FILING) – I served a true and correct copy via the United States District Court, Central District of California's Electronic Case Management System (ECF) on the interested parties as indicated above.

☒ (FACSIMILE) – I served a true and correct copy by facsimile on the interested parties as indicated above.

☒ (ELECTRONIC MAIL) – A true and correct copy of said document was emailed on November 29, 2016 to the email addresses listed above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 29, 2016 at Los Angeles, California.

| Ellen Duncan | */s/ Ellen Duncan* |
|---|---|
| Print Name | Signature |

Proof of Service
DWT 30825741v1 0026175-000505