EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No. 290409)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
Assistant United States Attorney
Major Frauds Section
        1500/1100 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-0284/4849
        Facsimile: (213) 894-0141
        E-mail:    Brandon.Fox@usdoj.gov
                   Eddie.Jauregui@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 16-66(A)-PA |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION TO ADMIT DEFENDANT'S STATEMENTS, TO EXCLUDE TESTIMONY OF DR. JAMES SPAR, AND TO LIMIT EVIDENCE AND ARGUMENT REGARDING ALZHEIMER'S DISEASE AND COGNITIVE IMPAIRMENT; DECLARATION OF BRANDON D. FOX |
| v. | |
| LEROY BACA, | |
| Defendant. | |
| | [Proposed] Hearing Date: TBD |
| | [Proposed] Hearing Time: TBD |
| | Location:  Courtroom of the Hon. Percy Anderson |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brandon D. Fox and Eddie A. Jauregui, hereby moves (1) to admit defendant Leroy Baca's prior statements, (2) to exclude the testimony of Dr. James Spar, and (3) to limit other evidence and argument regarding Alzheimer's

disease and cognitive impairment in defendant's trial for obstruction of justice and conspiracy (Counts 1 and 2).

The government's motion is based on the attached memorandum of points and authorities, the files and records in this case, the attached declaration and exhibits, and such further evidence and argument as the Court may permit.

Dated: December 4, 2016          Respectfully submitted,

                                 EILEEN M. DECKER
                                 United States Attorney

                                 LAWRENCE S. MIDDLETON
                                 Assistant United States Attorney
                                 Chief, Criminal Division

                                 /s/ Brandon D. Fox
                                 _____
                                 BRANDON D. FOX
                                 EDDIE A. JAUREGUI
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

TABLE OF CONTENTS...............................................i

TABLE OF AUTHORITIES...........................................ii

MEMORANDUM OF POINTS AND AUTHORITIES............................1

I.    FACTUAL BACKGROUND........................................2

      A.    Defendant's 2013 and 2015 Statements...............2

      B.    Prior Litigation Regarding Defendant's Claim of
            Cognitive Impairment...............................4

      C.    Severance..........................................7

II.   ARGUMENT.................................................7

      A.    Defendant's Statements Are Admissible..............9

      B.    Dr. Spar's Testimony Is Not Admissible.............9

            1.    Dr. Spar's Testimony Is Irrelevant...........9

            2.    Dr. Spar's Opinion Is Inadmissible Under Rule 702...12

            3.    Even If Admissible, Dr. Spar's Testimony Should
                  Be Excluded Under Rule 403..................15

      C.    The Court Should Limit Other Evidence and Argument
            Regarding Defendant's Cognitive Impairment.......16

DECLARATION OF BRANDON D. FOX..................................18

**TABLE OF AUTHORITIES**

**CASES**

Crane v. Kentucky,
      476 U.S. 683 (1986).........................................8, 17

Daubert v. Merrell Dow Pharmaceuticals,
      509 U.S. 579 (1993).......................................12, 13

Lust v. Merrell Dow Pharmaceuticals, Inc.,
      89 F.3d 594 (9th Cir. 1996)...................................12

Newell Rubbermaid, Inc. v. Raymond Corp.,
      676 F.3d 521 (6th Cir. 2012)..................................13

United States v. Aguilar,
      515 U.S. 593 (1995)............................................9

United States v. Ajoku,
      584 Fed. Appx. 824 (9th Cir. 2014)............................10

United States v. Bennally,
      541 F.3d 990 (10th Cir. 2008).................................15

United States v. Byers,
      730 F.2d 568 (9th Cir. 1984)..................................14

United States v. Finley,
      301 F.3d 1000 (9th Cir. 2002).................................11

United States v. Harmanek,
      289 F.3d 1076 (9th Cir. 2002).................................12

United States v. Hayes,
      389 Fed. Appx. 736 (9th Cir. 2010)............................10

United States v. Mamah,
      332 F.3d 475 (7th Cir. 2003)..................................13

United States v. Rasheed,
      663 F.2d 843 (9th Cir. 1981)..................................15

United States v. Redlightning,
      624 F.3d 1090 (9th Cir. 2010).................................13

United States v. Scholl,
      166 F.3d 964 (9th Cir. 1999).......................10, 11, 15, 16

United States v. Shay,
      57 F.3d 126 (9th Cir. 1995)...................................11

United States v. Vallejo,
      237 F.3d 1008 (9th Cir. 2001)..................................8

ii

**FEDERAL STATUTES**

18 U.S.C. § 1001..........................................1, 2, 6, 10

18 U.S.C. § 1503................................................1

18 U.S.C. § 371.................................................1

**FEDERAL RULES**

Fed. R. Evid. 401........................................8, 9, 14

Fed. R. Evid. 403...........................................passim

Fed. R. Evid. 607..............................................16

Fed. R. Evid. 702...........................................passim

Fed. R. Evid. 801(d)(2)......................................8, 9

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

The facts underlying the charges against defendant are set forth in the government's Trial Memorandum, which the government incorporates herein.  (CR 174 ("Trial Memo.") 6-21.)  On December 2, 2016, the Court ruled that the obstruction and conspiracy charges (Counts 1 and 2, 18 U.S.C. §§ 371, 1503) would be severed from the false statement charge (Count 3, 18 U.S.C. § 1001) for trial.  The obstruction trial will proceed on December 5, 2016.

In the obstruction trial, the government intends to admit several excerpts of defendant's prior recorded statements from (1) defendant's April 12, 2013, interview with federal agents, and (2) his deposition testimony in January and April 2015.  (Declaration of Brandon D. Fox ("Fox Decl.") ¶¶ 2(b)-4 & Trial Exhibits 3, 5, 7 ("Exs. 3, 5, 7").)  These excerpts contain, among other facts, affirmative representations about defendant's role during the events relevant to the obstruction and conspiracy charges: what he did, what he knew, what he intended, and whom he worked with.

Defendant, who previously agreed that "[a]ny testimony about a cognitive impairment defendant may have had" could not be "consider[ed] in deciding whether defendant conspired to obstruct justice or obstructed justice" (CR 175 at 45), now claims that exactly such testimony--specifically, the expert opinion of Dr. James Spar--must be admitted in his obstruction trial, to explain defendant's prior statements.  Defendant is incorrect.  Dr. Spar's testimony remains irrelevant, improper, and unfairly prejudicial.

**I.    FACTUAL BACKGROUND**

  **A.    Defendant's 2013 and 2015 Statements**

  The obstruction trial focuses on a conspiracy to impede a federal grand jury investigation that took place in August-September 2011.  (See Trial Memo. 6-21.)  In April 2013, federal agents interviewed defendant about what had taken place during that period.  (Id. at 21.)  Some of defendant's statements were willfully false: false denials of knowledge, false denials of participation, and false claims of unawareness.  (See generally CR 70 at 14-15; Ex. 3 at 20-22, 25, 31, 33-35, 54 (Excerpts 8, 11, 16, 18, 31).)  These statements will be the subject of defendant's severed trial on Count 3 (18 U.S.C. § 1001(a)).  As defendant noted in a prior motion, these false statements constitute instances in which defendant claimed not to know or remember certain information.  (CR 143 at 3 ("These five alleged false statements . . . all relate to Mr. Baca's memory of events[.]").)  The government does not seek to admit these false denials in its case-in-chief during the obstruction trial.  (See Fox. Decl. ¶ 2(a).)

  During the same interview, however, defendant made numerous inculpatory statements relevant to his obstruction charges.  In these statements, generally defendant did not claim ignorance or forgetfulness.  Instead, he made affirmative admissions--true representations, many corroborated by independent evidence--about what he did know and did do: when he learned that "an FBI phone had been compromised inside the jail;" to whom he spoke after learning that information; and when co-conspirators met to discuss how to proceed.  (See, e.g., Ex. 3 at 10, 12, 16-19, 23, 24-28 (Excerpts 3, 4, 7, 9-14).)  Defendant stated that he was aware of federal

2

enforcement of civil-rights and public-corruption laws; that is, that "brutality coming from police will be scrutinized by the federal government." (Ex. 3 at 14 (Excerpt 5); see also Ex. 3 at 15 (Excerpt 6).) He knew that Anthony Brown was working with the FBI--that Brown's "mission . . . was to try and find out who . . . rogue deputies are that are beating up inmates"--and that it would have been wrong to keep Brown from the FBI if he were an informant. (Ex. 3 at 42 (Excerpt 24).) Defendant likewise admitted that he knew, by August 29, 2011, that grand-jury subpoenas had been served on the LASD. (Ex. 3 at 65-66 (Excerpt 39).) Nevertheless, defendant stated, he was angry at the FBI for conducting its investigation: he "didn't start this fight," but he felt entitled to a "full and clear understanding that we can't afford to have a fight between two agencies." (Ex. 3 at 60 (Excerpt 36); see also Ex. 3 at 53 (Excerpt 30).)

Subsequently, in January and April 2015, defendant was deposed in connection with Charles Antuna v. County of Los Angeles, C.D. Cal. No. 14-56-MWF. (Exs. 5, 7.) In both depositions, defendant confirmed his understanding of the process and his oath to tell the truth, and he denied that there was any reason (including any "medical" or "health" reason) he could not give his best testimony. (Ex. 5 at 8:9-9:9; Ex. 7 at 241:23-242:18.) As relevant here, in the January 2015 deposition, defendant identified the date of his resignation from LASD. (Ex. 5 at 9:13-17.) He likewise stated that he knew, during his time as Sheriff, that "constitutional law" defined what was "legally required by our government, as well as the functionaries of government such as law enforcement," and that liability could result if members of law enforcement violate

3

constitutional rights.  (Ex. 5 at 12:17-13:7.)  He identified the date that he became aware of accusations of excessive force in the jails (Ex. 5 at 30:7-15), and discussed his close relationship with Undersheriff (and co-conspirator) Paul Tanaka (Ex. 5 at 67:2-68:23). In the April 2015 deposition, defendant discussed the chain-of-command and employee evaluations in LASD.  (Ex. 7 at 261:23-262:18, 263:9-12.)

Unlike the false denials relevant to Count 3--which are contradicted by independent evidence--these 2013 and 2015 statements are consistent with other evidence that will be admitted at defendant's trial.  Records and testimony reflect, for example, (a) the notoriety of abuse-of-force problems in the jails (and defendant's knowledge thereof), (b) the date that federal grand-jury subpoenas were first served on LASD, (c) when Steven Martinez, the Assistant Director in Charge of the FBI, called defendant, (d) when co-conspirators' first met regarding Brown, (d) what co-conspirators knew about Brown's work for the FBI, (e) defendant's significant anger regarding the federal investigation, and (f) defendant's relationship to Undersheriff Tanaka.  (See Trial Memo. 4-21.)

   **B.    Prior Litigation Regarding Defendant's Claim of Cognitive Impairment**

Before this court's severance order, defendant sought to admit the testimony of Dr. James Spar, a psychiatrist who never treated defendant and did not even evaluate his medical records until September 2016, that (1) defendant was in "the pre-clinical stage . . . or the MCI [mild cognitive impairment] phase of Alzheimer's during his April 12, 2013 government interview," and (2) that Alzheimer's "increased the probability that . . . memory impairment affected

[defendant's] answers to questions about events and conversations that occurred 20 months earlier in August-September 2011." (CR 143 at 10.) Defendant sought to admit this testimony to explain Alzheimer's "impact on [defendant's] memory in answering memory-related questions during the April 12, 2013 interview." (CR 134-2 at 2-4, 143 at 16.)

Setting aside the flaws in Dr. Spar's methodology and the corresponding lack of merit to his opinion (see CR 134), Dr. Spar's proposed testimony was limited in scope. He was asked to evaluate only "whether [defendant's] Alzheimer's increased the probability that he had memory impairment during his April 12, 2013 government interview relating to his five answers to questions" charged in Count 3. (CR 143 at 32 ¶ 8 (emphasis added).) Each of those answers, Dr. Spar noted, related to whether defendant remembered or was aware of particular facts. (CR 143 at 33 ¶ 8; see generally CR 70 at 13-15 (Indictment).) And, accordingly, the examples relied upon by Dr. Spar to form his opinion all relate to similar issues: incidents in which defendant explicitly stated that he could not recall facts (e.g., a bladder medication), was confused, or indicated that he "couldn't comprehend." (ER 143 at 30-31 ¶ 4.) Dr. Spar cited just one historical example of defendant giving an "objectively incorrect memory response": when he identified Steven Leavins as Jim Leavins.[1] (CR 143 at 31 ¶ 5.) Dr. Spar expressed no opinion regarding defendant's January and April 2015 deposition testimony, nor did he list any statements from 2015 in his expert disclosures.

---

[1] Dr. Spar omitted defendant's immediate explanation for that misstatement: he knew colleagues primarily by their last names. (Ex. 3 at 18-19 (Excerpt 7).)

Appropriately, given the scope of Dr. Spar's opinion, defendant's argument for admissibility focused exclusively on the false statements alleged in Count 3.  Proof of such statements requires "willfulness," including knowledge "both that the statement was untrue and that [the defendant's] conduct was unlawful."  (CR 143 at 15.)  Accordingly, defendant argued that Dr. Spar's testimony was "relevant to whether or not Mr. Baca had the specific intent to make the charged false statements, all of which related to his memory of events and conversations that occurred 20 months prior to the interview."  (Id.; accord id. at 3 (the "five alleged false statements . . . all relate to [defendant's] memory").)  Thus, defendant claimed, the jury should "be able to consider [defendant's] memory impairment to determine if [he] formed the specific intent necessary to commit" a violation of 18 U.S.C. § 1001(a).  (CR 143 at 15-16.)

The government sought to exclude Dr. Spar's testimony under Federal Rules of Evidence 403 and 702.  (See CR 134, 153.)  In addition to noting the methodological defects in Dr. Spar's opinion, the government noted that "the very essence of Dr. Spar's diagnosis is vague and tortuously qualified" (CR 153 at 7), and that Dr. Spar's ultimate conclusion--that Alzheimer's "increased the probability" that memory impairment "affected [defendant's answers]" to the questions alleged in Count 3--was meaningless and speculative (id. at 7-8).  Meanwhile, that testimony would be unfairly prejudicial to the government, giving faux-scientific blessing to arguments for jury nullification.  (Id. at 12.)

Throughout this briefing, defendant never claimed that Dr. Spar's testimony was relevant to the obstruction charges.  Indeed,

Dr. Spar was not even asked to opine about such charges: he was asked to evaluate the "five answers to questions" alleged in Count 3.  (CR 143 at 143 ¶ 8.)  Likewise, defendant jointly proposed a jury instruction that "[a]ny testimony about a cognitive impairment defendant may have had can only relate to the charge in Count 3 that defendant made false statements on April 12, 2003.  You should not consider this evidence in deciding whether defendant conspired to obstruct justice or obstructed justice." (CR 175 at 45 (Joint Instruction No. 37).)

### C.    Severance

After considering the parties' briefing regarding Dr. Spar's testimony, the court proposed a middle course: to sever the obstruction charges (Counts 1 and 2) from the false-statement charge (Count 3).  The Court reasoned that Dr. Spar's testimony, assuming its admissibility with respect to Count 3, was irrelevant and highly prejudicial to the government with respect to Counts 1 and 2.  (See CR 178 at 3-4.)  Moreover, the Court doubted that a limiting instruction (as proposed by the parties) could cure this problem, given the significant "emotional weight" of Dr. Spar's testimony regarding defendant's cognitive decline.  (CR 178 at 4.)

Defendant objected, urging that a limiting instruction would be sufficient to "mak[e] sure the jury only considers Dr. Spar's testimony for Count 3 and not for Counts 1 and 2."  (CR 178 at 4-5.)  The Court disagreed, and thus severed the counts for trial under Federal Rule of Criminal Procedure 14(a).

### II.   ARGUMENT

Dr. Spar's opinion is inadmissible in the obstruction trial, whether or not the government admits excerpts of defendant's April

7

2013 and January-April 2015 statements.  Although not central to the government's case, those statements are relevant and admissible, confirming defendant's involvement in and understanding of the LASD's obstructive conspiracy in August-September 2011.  See generally Fed. R. Evid. 801(d)(2).  Although the "manner in which" defendant's statements were secured may be "germane to [their] probative weight," expert testimony, such as Dr. Spar's, that defendant would now seek to introduce to attack the credibility of defendant's statements, still must be admissible under the rules of evidence to be admitted. Crane v. Kentucky, 476 U.S. 683, 688 (1986).  The Sixth Amendment offers defendant "no greater protection than the rules of evidence." United States v. Vallejo, 237 F.3d 1008, 1022 n.6 (9th Cir. 2001) (punctuation and citation omitted).

Dr. Spar's opinion should not be admitted in the obstruction trial because it is wholly inadmissible: it is irrelevant, unfairly prejudicial, and improper as expert testimony.  See Fed. R. Evid. 401, 403, 702.  Defendant acknowledged as much with respect to the obstruction charges in Counts 1 and 2 and therefore sought admission of Dr. Spar's opinion on the narrow basis that it related only to the false statement charges in Count 3; defendant chose not to seek admission on the broader basis that Dr. Spar's opinion related also to the obstruction charges and to the statements from 2013 and 2015 that would support those charges.  The Court should not permit defendant to reverse his position after the issuance of this Court's severance order.  To do so would directly undermine that order and expose the jury to exactly the irrelevant, emotionally charged, and unfairly prejudicial evidence the Court properly sought to exclude from the obstruction trial.

**A.    Defendant's Statements Are Admissible**

There should be no dispute that defendant's April 2013 and January-April 2015 statements are admissible in his obstruction trial, when offered by the government.  See Fed. R. Evid. 801(d)(2). Although defendant has now informed the government that he intends to object to the relevance of his 2015 statements, both his 2013 and 2015 statements are plainly relevant, because they demonstrate his role in the obstructive conspiracy (and the LASD more broadly); his interactions with his co-conspirators; and his knowledge of facts material to the charges, including Brown's role as an informant and the existence of a grand-jury investigation related to use-of-force incidents in the jails.  See United States v. Aguilar, 515 U.S. 593, 599 (1995).[2]

**B.    Dr. Spar's Testimony Is Not Admissible**

Dr. Spar's testimony, meanwhile, remains irrelevant to the obstruction trial--as, until recently, defendant recognized.  Federal Rules of Evidence 401, 403, and 702 bar Dr. Spar's testimony.

1.    Dr. Spar's Testimony Is Irrelevant

Dr. Spar's previously disclosed opinion--limited only to the "five answers" charged in Count 3, and based on other examples of defendant's explicit lack of knowledge or failure to recollect facts--has no relevance to the statements the government seeks to admit in the obstruction trial.  The government is not offering the "five answers" Dr. Spar analyzed.  (See CR 143 at 32 ¶ 8.)  Likewise, in

---

[2] Importantly, the government does not expect defendant to dispute the validity of many of the statements he made in 2013 and 2015.  Unless he contends that his representations were untrue, defendant has no reason to attempt to introduce expert testimony to impeach his own prior statements, unless he simply seeks jury nullification and confusion.

the obstruction trial, the government need not prove that defendant made any statement "willfully," or with any knowledge that "making the statement was unlawful." United States v. Ajoku, 584 Fed. Appx. 824, 824 (9th Cir. 2014) (analyzing 18 U.S.C. § 1001(a)).

And, more broadly, the government seeks to admit evidence of what defendant explicitly did know--not, as analyzed by Dr. Spar, instances in which defendant claimed ignorance. (See CR 143 at 30-31 ¶¶ 4-5 (citing prior examples in which defendant was "unable to recall" facts, acted "confused," and admitted he "could not recall or remember information").) Nothing in Dr. Spar's opinion supports that defendant's affirmative recollections were fabricated. Accordingly, any testimony regarding the statements offered in the obstruction trial is "not supported by the expert's report" and would not "assist the jury in determining whether" defendant's admissions of knowledge were true. United States v. Hayes, 389 Fed. Appx. 736 (9th Cir. 2010) (affirming exclusion of expert testimony regarding defendant's "cognitive disorder" and "impaired memory").

The Ninth Circuit reached a similar conclusion in United States v. Scholl, 166 F.3d 964 (9th Cir. 1999), affirming the exclusion of expert testimony under Rules 402 and 403 because there was no "fit" between the expert's testimony and the relevant issue (there, willfulness). The defendant in Scholl, accused of filing false tax returns for his failure to declare gambling winnings and losses, sought to call an expert on compulsive gambling, who would testify that "pathological gamblers have distortions in thinking and 'denial,' which impact their ability and emotional wherewithal to keep records." Id. at 970. The district court excluded this evidence of "denial," noting that the expert had not opined that

10

"gamblers could not truthfully report on their income tax returns" or lacked "memory of what occurred when they prepare[d]" such returns. Id. at 970-71.  On appeal, the Circuit agreed, emphasizing the mismatch between the expert's testimony and the issue relevant to the case: the expert would have testified that "compulsive gambling disorder makes one believe that he has lost more money than he has won--not that the disorder renders one unable to remember what occurred, or unable to enter both winnings and losses on" tax forms. Id. at 971.  Accordingly, the testimony was irrelevant to defendant's tax charges.

A similar lack of "fit" is apparent here: Dr. Spar's opinion relates to five answers that are not being offered by the government in the obstruction trial (CR 143 at 32 ¶ 8), and is limited to supporting the credibility of defendant's denials of knowledge or recollection (CR 143 at 30-31 ¶¶ 4-5).  Offering that opinion in the obstruction trial--as somehow undermining the reliability of defendant's statements reflecting affirmative knowledge--turns Dr. Spar's opinion on its head.  Nothing in Dr. Spar's proffered testimony supports that defendant is "delusional," cf. United States v. Finley, 301 F.3d 1000, 1006 (9th Cir. 2002), or that he "suffered from a mental disorder that causes its victims to make false and grandiose statements without regard to the consequences," cf. United States v. Shay, 57 F.3d 126, 128 (9th Cir. 1995).  Such opinions might bear upon whether defendant's statements reflecting affirmative knowledge "were unreliable and should be disregarded."  Id.  But here, defendant was not delusional--as independent evidence, confirming his statements, indicates--and Dr. Spar offers no such opinion.  His testimony is irrelevant.

11

2.    Dr. Spar's Opinion Is Inadmissible Under Rule 702

Dr. Spar's opinion likewise remains inadmissible under Rule 702, for all the reasons previously identified in the government's motion to exclude his testimony (CR 134, 153) and more.  Indeed, in the context of the severed obstruction trial, the defects in Dr. Spar's proffered opinions become even clearer.

Defendant bears the burden to establish both the relevance and the reliability of expert testimony by a preponderance of the evidence.  Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th Cir. 1996); accord United States v. Harmanek, 289 F.3d 1076, 1093 (9th Cir. 2002).  As a result, the Court must assess, inter alia, (1) the validity of the "reasoning or methodology underlying the testimony," (2) "whether that reasoning or methodology properly can be applied to the facts in issue;" and (c) whether the "proposed expert testimony is relevant and will serve to aid the trier of fact."  Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 592–93 (1993).

As the government has previously argued, Dr. Spar's testimony fails these tests. (CR 153 at 3-10.)  No reliable methodology supports Dr. Spar's conclusion that defendant was "either in the pre-clinical stage . . . or the [mild cognitive impairment] stage of Alzheimer's during his April 12, 2013 government interview[.]"  (CR 143 at 33-34 ¶ 9(i)).  No medical records support that conclusion. (See CR 153 at 4-5.)  As the government pointed out during the hearing on November 22, 2016, Dr. Spar's own published research methods do not even support that conclusion.  Instead, the foundation of Dr. Spar's opinion is selective hearsay: individual instances of

12

defendant's forgetfulness, carefully selected from the voluminous discovery in this case. (See CR 143 at 30-31 ¶ 4.)

Notably here, only one of Dr. Spar's foundational examples relates to defendant giving an "objectively incorrect memory response[]": he misidentified Steven Leavins as Jim Leavins. (CR 143 at 31 ¶ 5.) This example undermines itself; immediately after this misidentification, defendant explained that he knows his colleagues primarily by their last names. (Ex. 3 at 18-19 (Excerpt 7).) Aside from this example, Dr. Spar relies exclusively on instances in which defendant was explicitly "unable to recall" facts, appeared obviously "confused," and "didn't understand what was going on." (CR 143 at 30-31.)

Thus, even assuming the reliability of Dr. Spar's hearsay-based methodology, it cannot be "properly . . . applied to the facts in issue" in the obstruction case. Daubert, 509 U.S. at 592-93; United States v. Redlightning, 624 F.3d 1090, 1111 (9th Cir. 2010). "It is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." United States v. Mamah, 332 F.3d 475, 478 (7th Cir. 2003). That link is missing. One isolated instance of an "objectively incorrect memory response[]"--the only instance identifiable after a presumably exhaustive review of defendant's history--is too thin a reed on which to build an "expert" opinion on the unreliability of all defendant's affirmative recollections. Dr. Spar "unjustifiably extrapolate[s]" from this single example to an "unfounded conclusion." Fed. R. Evid. 702, Advisory Comm. Notes, 2000 Amendments; accord Newell Rubbermaid, Inc. v. Raymond Corp., 676 F.3d 521, 527 (6th Cir. 2012) ("anecdotal

13

evidence" and "improper extrapolation" are "[r]ed flags" weighing against admission of expert testimony).

Moreover, Dr. Spar's conclusion is unhelpful to the jury. In the obstruction trial, Dr. Spar's analysis of defendant's April 2013 statements would be relevant, if at all, only to their own weight and reliability.[3] But Dr. Spar's conclusion are too vague and undefined to assist the jury in that analysis. Dr. Spar concludes that defendant "<u>may</u> have been demonstrating clinical symptoms" of mild cognitive impairment in April 2013 (CR 143 at 33-34 ¶ 9(i)), and this "increased the probability that . . . memory impairment affected his answers" during his government interview (CR 143 at 34 ¶ 9(ii)). These claims are meaningless. As the government has previously noted, the jury will be left to speculate whether the "probability" identified by Dr. Spar increased by .0001% or 1000%. Dr. Spar likewise provides no baseline from which his undefined "increase[]" begins. Indeed, given Dr. Spar's opinion that there may "no symptoms" in the pre-clinical stage, and that MCI "does not interfere with every day function," his conclusion that defendant's Alzheimer's increased the probability that memory impairment negatively affected defendant's answers is not even internally justifiable. Such "increased . . . probability" is either negligible or undefinable. This is unhelpful to assessing the reliability of defendant's

---

[3] Dr. Spar has offered no opinion about defendant's January and April 2015 deposition testimony. This means either he did not review defendant's deposition testimony, and therefore has no basis to opine on it, or he did review it and did not find a basis to conclude that defendant showed signs of cognitive impairment. Either way, defendant's 2015 statements should be admitted without Dr. Spar offering an opinion as to them.

statements.  United States v. Byers, 730 F.2d 568, 571 (9th Cir. 1984).

### 3.    Even If Admissible, Dr. Spar's Testimony Should Be Excluded Under Rule 403

Even if admissible under Rules 401 and 702, Dr. Spar's testimony should be excluded under Rule 403.  See Fed. R. Evid. 403.

As the above considerations reflect, Dr. Spar's testimony is not probative to the issues in defendant's obstruction trial and does not, as defendant has recognized, have any bearing on defendant's guilt as to counts one and two.  (CR 175 at 45 (Joint Instruction No. 37).)  There is no basis to believe that such a condition could have affected whether defendant intended to obstruct the federal grand-jury investigation.  See generally United States v. Rasheed, 663 F.2d 843, 852 (9th Cir. 1981).

Likewise, Dr. Spar's opinion has no bearing on the weight of defendant's affirmative statements during his April 2013 interview--particularly given independent evidence corroborating those statements' truth.  Dr. Spar may have a basis to testify that defendant's claims of ignorance were sincere; he has no basis to testify that defendant's statements of fact, although coincidentally true, were fabricated.  Accordingly, there is "no 'fit' between [Dr. Spar's] testimony" and the statements defendant wishes to impeach. Scholl, 166 F.3d at 972 (affirming exclusion of compulsive-gambling expert's testimony in tax-fraud case under Rules 402 and 403); see also United States v. Bennally, 541 F.3d 990, 996 (10th Cir. 2008) (affirming exclusion of "false confession" expert under Rule 403; unfair prejudice overwhelmed minimal probative value of opinion "that

15

prior confessions should essentially be disregarded because they are just as likely to be true as untrue[]").

Meanwhile, as this Court has recognized, the unfair prejudice entailed by Dr. Spar's testimony--and the risk of nullification created thereby--is enormous.  Dr. Spar is an academic and doctor, through whom the defense will introduce an emotionally charged, irrelevant fact: that defendant currently has Alzheimer's, a "chronic neurodegenerative brain disorder with no known cure" which will result in "dementia."  (CR 143 at 28 ¶ 3(A)-(B).)  The gravity of this evidence, when communicated by a medical expert, will distract from the emptiness of Dr. Spar's actual opinion: that in April 2013, defendant was in (at most) a stage of "mild cognitive impairment"--perhaps with "no symptoms"--that "increased [by an undefinable amount] the [undefinable] probability that . . . memory impairment affected [in an undefinable way]" defendant's answers.  (CR 143 at 28 ¶ 3(B), 34 ¶ 9(ii).)  Inevitably, jurors will be confused and misled, tempted to base their verdict on sympathy rather than fact. Particularly given the "slight (if any) relevance" of Dr. Spar's "speculative and misleading" testimony, it must be excluded under Rule 403.  Scholl, 166 F.3d at 971.

### C.    The Court Should Limit Other Evidence and Argument Regarding Defendant's Cognitive Impairment

Finally, in addition to precluding the testimony of Dr. Spar, the Court should limit other evidence and argument regarding defendant's cognitive impairment or Alzheimer's disease.  Unless defendant testifies, his current diagnosis--post-dating all the criminal conduct in this case--is irrelevant and inadmissible under

16

Rule 403.[4]  But see Fed. R. Evid. 607 (impeachment).  (CR 143 at 31–32 ¶ 6.)  And while defendant may have the right to present evidence about the "manner in which" his prior statements "were secured," Crane, 476 U.S. at 688, he can do so through evidence of his condition at the time the statements were made, including through his own testimony or the testimony of witnesses to his statements (including FBI agents or defendant's prior counsel).  To allow more would risk confusion of the jury and unfair prejudice, while contradicting a principle that defendant himself has previously recognized: "Any testimony about a cognitive impairment defendant may have had" should not be considered "in deciding whether defendant conspired to obstruct justice or obstructed justice, as charged in Counts One and Two."  (CR 175 at 45 (Joint Instruction No. 37).)

---

[4] Even if he testifies, the Court should limit defendant's testimony to provide the minimal amount of unfair prejudice as possible.  One possibility is to order defendant not to use the words "Alzheimer's disease" or "dementia," but allow defendant to use the term "cognitive impairment.

17

**DECLARATION OF BRANDON D. FOX**

I, Brandon D. Fox, declare as follows:

1.    I am an Assistant United States Attorney.  I am one of the prosecutors assigned to United States v. Leroy Baca, No. CR 16-66(A)-PA.

2.    Attached hereto as Exhibit A (Trial Ex. 3), is a true and correct copy of a transcript of excerpts from the interview of defendant Leroy Baca on Friday, April 12, 2013.  Within that transcript, the audio recording of the underlying interview is referred to as "Exhibit 2."  Excerpts are serially numbered from 1 to 51.

    a.    Excerpts 8, 11, 16, 18, and 31 contain false statements charged in Count 3 of the indictment.  The government does not intend to admit these excerpts in its case-in-chief, in defendant's obstruction trial.

    b.    The government currently intends to admit Excerpts 1-7, 9, 12, 15, 17, 23-30, 35-37, 39, and 41-43 in defendant's obstruction trial.

3.    Attached hereto as Exhibit B is a true and correct copy of a transcript of a videotaped deposition of Leroy Baca, Volume I, on January 29, 2015.  This transcript is synched with the videotaped deposition as Trial Exhibit 5.  The government currently intends to admit only the highlighted excerpts of the deposition: 7:3-10, 8:1-9:8, 9:13-17, 12:17-13:7, 30:7-15, and 67:2-68:23.

18

4.    Attached hereto as C is a true and correct copy of a transcript of a videotaped deposition of Leroy David Baca, Volume II, on April 6, 2015.   This transcript is synched with the videotaped deposition as Trial Exhibit 7.   The government currently intends to admit only the highlighted excerpts of the deposition: 240:19-24, 241:23-18, 261:23-18, 263:9-12.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: December 4, 2016    _____

Brandon D. Fox

19