Nathan J. Hochman, SBN 139137
Brianna Leigh Abrams, SBN 239474
MORGAN, LEWIS & BOCKIUS LLP
The Water Garden
Suite 2050 North
1601 Cloverfield Boulevard
Santa Monica, CA  90404-4082
Tel:   +1.310.255.9025
Fax:   +1.310.907.2025
e-mail: nathan.hochman@morganlewis.com
e-mail: brianna.abrams@morganlewis.com

Tinos Diamantatos, *Pro Hac Vice*
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601
Tel.: (312) 324-1000
Fax: +1.312.324.1001
e-mail: tinos.diamantatos@morganlewis.com


Attorneys for Defendant
LEROY BACA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LEROY BACA,<br><br>Defendant. | Case No. CR 16-66 (A) - PA<br><br>**DEFENDANT LEROY BACA'S RESPONSE TO MINUTE ORDER (DOCKET NO. 131)**<br><br>Trial date:     December 5, 2016<br>Courtroom:    9A |

Defendant Leroy Baca, individually and by and through his counsel of record, Nathan Hochman, Tinos Diamantatos, and Briana Leigh Abrams, hereby responds to the Court's Minute Order, dated October 31, 2016, (Docket No. 131) in which the Court tentatively granted the government's motion (Docket No. 103) to exclude the defendant's "good works" to the extent they involve the Education Based Incarceration Program and deferred ruling on the balance of that motion.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30905386.1

DEFENDANT LEROY BACA'S RESPONSE
TO MINUTE ORDER
CASE NO. CR 16-66 (A) - PA

This response is based on the files and records of the case and the testimony and exhibits that have been admitted at trial, the attached Memorandum of Points and Authorities, and any such argument as may be heard by the Court.

Dated:   December 12, 2016                   MORGAN, LEWIS & BOCKIUS LLP


By  */s/ NATHAN J. HOCHMAN /s/*
    Nathan J. Hochman
    Tinos Diamantatos
    Brianna Abrams

    Attorneys for Defendant
    LEROY BACA

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30905386.1

2

DEFENDANT LEROY BACA'S RESPONSE
TO MINUTE ORDER
CASE NO. CR 16-66 (A) - PA

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Leroy Baca has been charged in Count One of the Indictment with a conspiracy to obstruct justice and in Count Two with obstruction of justice.  The time period for each is alleged to have occurred from "on or about August 18, 2011 to on or about September 26, 2011."

On October 31, 2016, the Court issued a Minute Order in which it addressed the government's motion *in limine* to preclude evidence of "good works" and "remedial measures" occurring after the end of the charged conspiracy.  The Court stated that it "tentatively grants the motion to exclude the defendant's good works to the extent it involves the Education Based Incarceration Program and defers ruling on the balance of the motion." (CR 131).

As elaborated below, under Federal Rules of Evidence 401 and 403, the Court should permit the defense to introduce post-conspiracy evidence of the Commander Management Task Force ("CMTF").  The CMTF was a contemporaneous, direct response in October 2011 to the ACLU's and Chaplain Juarez Ramirez's allegations of excessive force and inmate abuse from 2009 through September 2011 and directly bears on Sheriff Baca's lack of motivation and intent to obstruct the FBI investigation into these allegations. In addition, the Court should permit the defense to enter evidence between 2009 and September 2011 relating to the Education Based Incarceration Program ("EBI").  EBI programs are not being offered as "good works" but as the direct response by Sheriff Baca to the ACLU's allegations of excessive force and inmate abuse.  The evidence will show that the educational programs EBI offered to inmates significantly reduced inmate and deputy violence where offered, including at Men's Central Jail, and demonstrate Sheriff Baca's lack of motivation and intent to obstruct the FBI investigation.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30905386.1

1

DEFENDANT LEROY BACA'S RESPONSE
TO MINUTE ORDER
CASE NO. CR 16-66 (A) - PA

**I    SINCE THE GOVERNMENT HAS OFFERED AND THE COURT HAS ADMITTED POST-CONSPIRACY EVIDENCE AND  SINCE THE DEFENSE POST-CONSPIRACY CMTF EVIDENCE IS CONTEMPORANEOUS AND HIGHLY PROBATIVE OF DEFENDANT'S INTENT AND MOTIVE, THE COURT SHOULD PERMIT SUCH EVIDENCE AT TRIAL**

At trial so far, the government has introduced and the Court has admitted over defense objection a significant amount of evidence of acts that occurred after September 26, 2011.  In overruling the defense objections, the Court has effectively ruled that **post-conspiracy evidence** is relevant under Rule 401 to prove the elements of the charged conspiracy and that its probative value is not substantially outweighed by its unfair prejudice, confusion of the evidence, or misleading the jury under Rule 403.  This ruling is consistent with the U.S. Supreme Court's holding in <u>Lutwak v. United States</u>, 344 U.S. 604, 617 (1953), that acts taking place after the end of the conspiracy may be relevant to prove the defendant's intent and other elements of the conspiracy.

The government's post-conspiracy evidence admitted by the Court thus far, which was minimally probative and cumulative of other evidence, includes the following (bolded to show evidence occurring after the conspiracy):

1.    Exhibit 110 includes federal grand jury subpoenas issued to the Los Angeles County Sheriff's Department dated as follows:  two subpoenas dated June 24, 2011 (return date July 13, 2011); one subpoena dated July 21, 2011 (return date August 11, 2011); one subpoena dated August 5, 2011 (return date August 23, 2011); three subpoenas dated August 24, 2011 (return dates September 14, September 21, and **September 28, 2011; and four subpoenas dated October 19, 2011 (return dates November 2, 2011 and November 9, 2011).** The defense objection to the federal grand jury subpoenas dated after the conspiracy was overruled.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30905386.1

2

DEFENDANT LEROY BACA'S RESPONSE TO MINUTE ORDER
CASE NO. CR 16-66 (A) - PA

2.      Exhibits 142-145 are LASD Special Operations Group ("SOG") Surveillance Logs referencing target "Leah Marx" for September 13, 2011 (Exhibit 142); September 14, 2011 (Exhibit 143); September 26, 2011 (Exhibit 144); and **September 28, 2011 (Exhibit 145)**.  The defense objection to Exhibit 145 as outside the timeframe of the conspiracy was overruled.

3.      Exhibits 146-150 are SOG Weekly reports for September 1, 2011 (Exhibit 146); September 5-6, 2011 (Exhibit 147); September 13-16, 2011 (Exhibit 148); September 19-20, 2011 (Exhibit 149) **with projected activities for September 26-30, 2011**; and **September** 26, **28, 29, and 30, 2011 (Exhibit 150) with projected activities for October 3-7, 2011.**  The defense objection to the SOG weekly reports dated after the conspiracy was overruled.

3.      **Exhibits 151-152 relate to the LASD SOG Surveillance Log for FBI Agent "David Lam" for September 28, 2011** (no other SOG Surveillance Logs were offered by the government prior to September 28, 2011).  The defense objections to the SOG Surveillance Log and related exhibit whose dates were after the conspiracy were overruled.

4.      The testimony of LASD records employee Michelle Miller who stated that she did not even start responding to grand jury subpoenas issued in connection with this case until **January 2012** and is still responding to them.

5.      The testimony of LASD records employee Judy Gerhardt who testified about receiving federal grand jury subpoenas in **October 2011**.

Since the government has opened the door to post-conspiracy evidence with its, at most, minimally probative and cumulative post-conspiracy evidence admitted by the Court under Rules 401 and 403, the defense respectfully requests similar treatment of its own post-conspiracy evidence, which is highly probative of Sheriff Baca's mindset and intent during the conspiracy.  The post-conspiracy evidence the defense seeks to admit concerns the efforts that Sheriff Baca engaged in to address the ACLU allegations of excessive force, inmate abuse and retaliation (2009

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30905386.1

3

DEFENDANT LEROY BACA'S RESPONSE
TO MINUTE ORDER
CASE NO. CR 16-66 (A) - PA

through September 2011) and Chaplain Juarez Ramirez' complaint of excessive force (July 26, 2011). Those efforts, which started before September 26, 2011 and continued into October 2011 and bear directly on whether Sheriff Baca intended during the charged dates of the conspiracy since they show that Sheriff Baca did not intend to obstruct the FBI but work with them. the ACLU, and the Chaplain to address inmate abuse issues.

The jury has heard through the testimony of ACLU lawyers Peter Eliasberg and Mark Rosenbaum that they brought issues of excessive force and inmate abuse to Sheriff Baca's attention starting in 2009 through September 2011. Mr. Rosenbaum testified about his meeting with Sheriff Baca where Sheriff Baca said that Assistant Sheriff Marvin Cavanaugh would follow up with Mr. Rosenbaum. Mr. Rosenbaum said that there were follow-up meetings with Assistant Sheriff Cavanaugh where agendas were discussed as well as action items addressed coming out of those meetings. But Mr. Rosenbaum added that he did not think that Assistant Sheriff Cavanaugh's response was effective or substantial enough. This testimony was also supplemented by the highly emotional testimony of Chaplain Paulino Juarez Ramirez, who said that he had a meeting with Sheriff Baca, Assistant Sheriff Cecil Rhambo and others on July 26, 2011, told them of the beating he had personally witnessed, and was assured by Sheriff Baca that Assistant Sheriff Rhambo would looked into it.

In response to the ACLU's and Chaplain Juarez Ramirez's complaints of excessive force and inmate abuse, on approximately October 1, 2011 -- just days after the alleged end of the conspiracy -- Sheriff Baca created the Commander Management Task Force  or CMTF.  The CMTF was a continuation of Sheriff Baca's efforts to respond to these complaints over the years. The CMTF reported directly to Sheriff Baca and was compromised of five commanders, eight lieutenants and eight sergeants. The CMTF revised policies regarding the use of force in the jail and retaliating against inmates who make complaints, implemented

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30905386.1

4

DEFENDANT LEROY BACA'S RESPONSE
TO MINUTE ORDER
CASE NO. CR 16-66 (A) - PA

force-specific staff training programs, conducted town hall meetings where commanders at the jails met with inmates to hear their grievances directly, worked with outside agencies like the ACLU to address their complaints and implement their recommendations, and ensured that all the jails had educational programs that were proven to reduce violence between inmates and deputies.  Sheriff Baca was personally involved in, *inter alia,* developing the revised use of force policy, promoting people who advocated respect and rehabilitation for inmates, promoting education programs in the jails to reduce inmate and deputy violence, and attending the town hall meetings with inmates to hear and respond to their grievances

The government has contended that Sheriff Baca should be precluded from introducing evidence of his post-conspiracy efforts in October 2011 to address the concerns of the ACLU and Chaplain Juarez Ramirez brought to Sheriff Baca's attention from 2009 through September 2011.  (CR 103).  The government has argued that such post-conspiracy evidence would not be relevant to show Sheriff Baca's intent at the time of the alleged crimes or would confuse or mislead the jury.

Contrary to the government's argument, the jury would not be misled by hearing the evidence of Sheriff Baca's response to the ACLU's and Chaplain Ramirez's highly emotionally charged complaints of excessive force and inmate abuse; **the jury would, however, be very misled if it were left with the belief that Sheriff Baca never responded to these complaints when, in fact, he did within days or weeks of receiving them.**

This case is not analogous to the cases cited by the government in its motion *in limine* to preclude this highly relevant, contemporaneous post-conspiracy evidence.  For instance, in United States v. Radtke, 415 F.3d 826, 840-41 (9th Cir. 2005), cited by the government (CR 103, page 8), the court found that an amended tax return filed well after the original return was minimally probative of the defendant's state of mind to file the fraudulent original return.  Here, the post-conspiracy evidence Sheriff Baca seeks to introduce is a continuation of his efforts

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30905386.1

5

DEFENDANT LEROY BACA'S RESPONSE
TO MINUTE ORDER
CASE NO. CR 16-66 (A) - PA

to address the ACLU and Chaplain Juarez Ramirez's concerns and occurs contemporaneously with the end of the conspiracy, not years later.  The government also cites Kohatsu v. United States, 351 F.2d 898, 904 (9th Cir. 1965),  to support its position (CR 103, page 8), but that case is similarly distinguishable.  The issue in Kohatsu was whether the defendant, who was charged with tax offenses for the years 1957-1959, could introduce evidence that he cooperated with the IRS audit and investigation starting over a year later.  The court stated that such efforts had small probative value for the purpose of showing lack of evil intent.  Id.  Here, Sheriff Baca's contemporaneous continuation of his efforts to address the ACLU's and Chaplain Juarez Ramirez's complaints has highly significant probative value to prove his lack of intent to conspire or obstruct an FBI investigation into those complaints days before.  In addition, without such evidence, the jury will be manifestly misled into believing the Sheriff did not respond, and did not care, about these complaints when, in fact, he did care and promptly responded.  Accordingly, the defense respectfully requests that the Court permit such evidence at trial.

**II   EDUCATION BASED INCARCERATION PROGRAM EVIDENCE SHOULD BE ADMITTED AS IT OCCURRED BEFORE AND DURING THE CONSPIRACY IN RESPONSE TO THE ACLU'S AND CHAPLAIN'S 2009-2011 COMPLAINTS AND WAS EXPANDED CONTEMPORANEOUSLY WITH THE END OF THE CONSPIRACY**

Unlike his predecessors, Sheriff Baca was a big proponent of education programs for inmates not only to rehabilitate them and give them skills in jail to avoid recidivism **but also because of such programs' proven ability to reduce violence among inmates and deputies**.  The defense seeks to admit evidence that starting in approximately 2006-2007, the same years that government witness Robert Olmstead testified at trial about observing conditions of deputy excessive force against inmates, Sheriff Baca implemented the Maximizing Education

Morgan, Lewis & Bockius LLP
Attorneys at Law
Santa Monica

DB2/ 30905386.1

6

DEFENDANT LEROY BACA'S RESPONSE
TO MINUTE ORDER
CASE NO. CR 16-66 (A) - PA

Reaching Individual Transformation ("MERIT") programs which sought to educate inmates and provide them with life skills rather than just warehouse them.  Inmates were called "students" and attended classes for six hours a day with night classes available as well. These classes were taught by educators from USC, UCLA, Claremont McKenna College, and California State University Los Angeles, among other universities.  The MERIT program was subsequently expanded into a number of other educational programs that were placed under the umbrella designation Educational Based Incarceration or EBI.  EBI included academic programs like Adult Basic Education and GED Preparation Programs as well as vocational courses, parenting classes, anger management classes, drug rehabilitation classes, and classes that promoted tolerance and leadership.  The proffered testimony will show that the violence among inmates and deputies who participated in these educational programs decreased dramatically.  Evidence of these programs is not offered as "good works" but rather as **direct responses by Sheriff Baca to address the inmate and deputy violence in the jails**.

Based on the effectiveness of these educational programs in decreasing violence, the defense evidence will show that in direct response to the ACLU's 2009 and 2010 allegations of excessive force and inmate abuse by deputies, Sheriff Baca expanded the EBI programs, including expanding them at the Men's Central Jail -- the focus of the ACLU's concerns.  Though the funding for such programs was restricted based on the recession-imposed cuts on the Sheriff's Department, through the use of volunteers and others, these programs were able to expand from 2009 to 2011.  In the housing areas that the programs reached at Men's Central Jail as well as the other jails, the violence among inmates and deputies decreased significantly because the inmates were motivated and had programs to occupy their time and improve themselves rather than just sitting around their cells idle and inactive.  Since they spent their time in class or studying, the time for any potential violent interactions with deputies was greatly minimized.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30905386.1

7

DEFENDANT LEROY BACA'S RESPONSE TO MINUTE ORDER
CASE NO. CR 16-66 (A) - PA

Thus, given that **EBI directly responded to the ACLU's allegations about inmate abuse and excessive force both before and during the time period of the charged conspiracy**, it is not post-conspiracy evidence but direct evidence of Sheriff Baca's state of mind regarding the conspiracy.  Such evidence should be admitted as highly relevant to Sheriff's Baca's lack of motivation and intent to obstruct an FBI investigation into excessive force and inmate abuse.  The jury could reasonably find from such evidence that the FBI's investigation looking into such allegations was neither unknown, (since it had openly conducted dozens of interviews of inmates making allegations against the Sheriff's Department since 2010) nor unwelcomed (as Sheriff Baca's motivation was to treat the inmates not as the enemy but as people deserving of respect).

To the extent that EBI continued after the charged end of the conspiracy -- and, in particular, was emphasized by the Commander Management Task Force immediately after the end of the conspiracy -- the Court should permit such evidence under Rules 401 and 403 as highly relevant and probative of Sheriff's Baca intent and motivation during the conspiracy.  The evidence will show that as Sheriff Baca expanded EBI in Men's Central Jail, violence among deputies and inmates substantially decreased.  Admitting evidence of such a response to the ACLU's and Chaplain Juarez Ramirez's allegations of excessive force and inmate abuse is crucial to ensure that the jury will not be misled into believing that Sheriff Baca did not respond to their concerns.  He did.  The expansion of EBI, like the CMTF, contemporaneously with the end of the charged conspiracy constitutes highly probative evidence that Sheriff Baca's motivation and intent during the conspiracy were not to obstruct the FBI and hide excessive force and inmate abuse, but to work with the FBI, the ACLU and others to better the inmates' lives in the jail.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30905386.1

8

DEFENDANT LEROY BACA'S RESPONSE
TO MINUTE ORDER
CASE NO. CR 16-66 (A) - PA

## III    CONCLUSION

For the foregoing reasons, Sheriff Baca respectfully requests that the Court permit the defense to introduce post-conspiracy evidence of the Commander Management Task Force as one of Sheriff Baca's significant responses to the ACLU's and Chaplain's complaints of excessive force and inmate abuse. Additionally, the defense requests that the Court permit it to introduce evidence of education programs to show: (i) from 2009-September 2011, Sheriff Baca's direct response to the ACLU's and Chaplain's complaints, as such programs significantly lowered violence among deputies and inmates in Men's Central Jail; and (ii) from approximately October 1, 2011 on, the expansion of EBI in Men's Central Jail among other jails in further response to the ACLU's and Chaplain's complaints, continuing the reduction of violence among deputies and inmates who participated in EBI programs.

Respectfully submitted,

Dated:   December 12, 2016                   MORGAN, LEWIS & BOCKIUS LLP


                                          By  */s/ NATHAN J. HOCHMAN /s/*
                                               Nathan J. Hochman
                                               Tinos Diamantatos
                                               Brianna Abrams

                                               Attorneys for Defendant
                                               LEROY BACA

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30905386.1

9

DEFENDANT LEROY BACA'S RESPONSE
TO MINUTE ORDER
CASE NO. CR 16-66 (A) - PA