**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

**THE HON. JUDGE PERCY ANDERSON, JUDGE PRESIDING**

UNITED STATES OF AMERICA,     )
                              )
                  Plaintiff,  )
                              )
      vs.                     ) NO. 16-CR-66(A)-PA
                              )
LEROY D. BACA,                )
                              )
                  Defendant.  )
_____)

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**Telephonic Status Conference**

**Los Angeles, California**

**Friday, December 2, 2016**

LISA M. GONZALEZ, CSR No. 5920, CCRR
U.S. District Courthouse
312 North Spring Street – Room 438
Los Angeles, California 90012
213.894.2979
**www.lisamariecsr.com**

*Lisa M. Gonzalez, Official Reporter*

APPEARANCES:

FOR THE GOVERNMENT:    OFFICE OF UNITED STATES ATTORNEY
                       BY:   BRANDON D. FOX
                             EDDIE JAUREQUI
                       ASSISTANT UNITED STATES ATTORNEYS
                       312 North Spring Street
                       Suite 1200
                       Los Angeles, California   90012
                       (213) 894-0284/4849


FOR THE DEFENDANT:     MORGAN, LEWIS & BOCKIUS LLP
                       BY:   NATHAN HOCHMAN, ESQ.
                       The Water Garden
                       1601 Cloverfield Boulevard
                       Suite 2050 North
                       Santa Monica, California   90404
                       (310) 255-9025

                       MORGAN, LEWIS & BOCKIUS LLP
                       BY:   TINOS DIAMANTATOS, ESQ.
                       77 West Wacker Drive
                       Chicago, Illinois
                       (312) 324-1000

                       MORGAN LEWIS
                       BY:   BRIANNA L. ABRAMS
                       The Water Garden
                       1601 Cloverfield Boulevard
                       Suite 2050 North
                       Santa Monica, California   90404-4082
                       (310) 255-9068

**I N D E X**

**PROCEEDINGS:**

**Testimony deemed confidential and bound separately    Page 14**

*Los Angeles, California; Friday, December 2, 2016*

*1:48 p.m.*

THE CLERK:  Calling Item Number 2, CR 16-66(A), *USA v. Leroy D. Baca.*

Counsel, state your appearances, please.

MR. FOX:  Good afternoon, Your Honor.  Brandon Fox and Eddie Jaurequi on behalf of the United States.

THE COURT:  Good afternoon.

MR. HOCHMAN:  Good afternoon, Your Honor.  Nathan Hochman, Tinos Diamantatos, and Briana Abrams on behalf of Defendant Leroy Baca, who is on this telephone call, Your Honor, and is prepared to acknowledge to the court that he is prepared to go forward with this telephonic conference.

THE COURT:  All right.  Good afternoon.

I've received a stipulation by the parties consenting to having a telephonic conference this afternoon.

Mr. Baca, have you authorized your lawyer to sign that stipulation on your behalf?

MR. HOCHMAN:  Your Honor, you're coming in somewhat faint.  We can bearly hear you.

THE COURT:  All right.  Let me try to see if we can cure that.

MR. HOCHMAN:  Perhaps the problem is -- I don't

4

know if Mr. Fox is on a cell phone and there's a wind noise that's going through the conference line, Your Honor.

MR. FOX:  No, that's not the case.  I was actually on mute that entire time.  So that's not --

MR. HOCHMAN:  Just can't hear on this end, Your Honor.

THE COURT:  All right.  Is that better?

MR. HOCHMAN:  Yes, I heard that very clearly.

THE COURT:  Mr. Baca, did you --

THE DEFENDANT:  Yes, I can hear you.  Thank you.

THE COURT:  All right.  Can you hear me now? Mr. Baca?

THE DEFENDANT:  Yes, I can hear you now.

THE COURT:  All right.  Did you authorize your lawyer to sign a stipulation agreeing to have a telephonic conference today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you waive your right to make a personal appearance today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  I've also received a document, which appears to be a motion for a severance, and also combined in that motion is an opposition by the defense.  I've reviewed that motion.  Do the parties wish to be heard on this issue?

MR. FOX:  The government does not need to be heard, Your Honor.  We're very familiar with all the issues, so we do not need to be heard, unless you have questions.

MR. HOCHMAN:  Yes, Your Honor, on behalf of Mr. Baca.

THE COURT:  All right.  Go ahead.

MR. HOCHMAN:  Your Honor, I tried to relay -- I was writing very quickly this morning, and so I just want to speak, in addition to what I presented to the court, because the government indicated this morning to me they're going to file a Rule 14 motion, and I told them I wanted to at least get something down on paper.

And what I tried to relay to the court was that I understood the court's two concerns in connection with having one trial, with Dr. Spar's testimony being mostly that the jury would not be able to follow a limiting instruction.

And what I wanted to make sure that the court had was -- we had filed actually that morning of our hearing, on Thursday, yesterday, we filed our joint proposed instructions.  And we submitted those to the court's indication a limiting instruction that we jointly agreed to, but we were offering it only at the end of the trial, Your Honor.

And when I was reviewing some of the testimony

from prior trials, particularly, as it pertained to the civil rights' violations, the beatings, the savage beatings that the court had referenced, I saw that the court gave limiting instructions, not just at the end of the trial, but before or during that testimony to make it clear that the jury should only use that testimony -- not because any crimes were charged in connection with it, but presumably for motivation or some other aspect of the elements.

So in reading that, Your Honor, I thought to myself that the court obviously believes, and I share the belief, that when it came to those savage beatings -- and that testimony that I read from prior trials was quite graphic as to what these deputies were doing in connection with these inmates, the court used the word "savage" probably very appropriately -- that the court made the determination that a limiting instruction would be able to be followed by the jury and they wouldn't convict the defendants on crimes that weren't charged, with participating, condoning, even knowing about savage beatings that were going on in the very jails they were working, but would be able to put that information into the right context when evaluating the law and follow the court's orders.

So I looked at that, and the court had the confidence to believe that the jury could view that in connection with savage beatings -- which obviously is as

extremely prejudicial testimony as you can probably get -- that the jury also would be able to compartmentalize and follow the court's order, particularly, if the court were to give limiting instructions before and even after Dr. Spar's testimony and could do it in connection with the government's experts as well.

So I thought if the court had faith in them at the various trials to follow its limiting instructions on the savage beatings, then the court should share, hopefully, the same type of faith that the jury would be able to only use that evidence in connection with Count 3.

And, then, I also pointed out with respect to Count 3, it's not like Count 3 exists at the same exact time as Counts 1 and 2, and it would be very hard to compartmentalize that evidence.  Count 3 exists in a completely separate time zone, you know, 20 months later in April of 2013, as opposed to August and September of 2011, and it exists in a completely different framework in the sense of it's not following even people's actions, so to speak, as much as it is confined to an interview that occurs during that day in the four-and-a-half hours, the audiotape of which will be played to the jury.

So to the extent that the court can truly focus and compartmentalize the jury, to say that Dr. Spar's testimony and whatever government expert's rebut is on

focusing on one interview on April 12th, 2013, that occurred over four-and-a-half hours and, in particular, five statements from that interview that the government alleges to be false, I believe that a limiting instruction, or the proper limiting instruction, would -- the jury would be able to have that information focused and would follow those instructions.

The other aspect of the court -- the court was discussing this yesterday, or the thing that the court mentioned, was that this testimony would prolong the trial. And to the extent that what we're talking about is this testimony, I believe, Dr. Spar's testimony -- I can't speak for the cross-examination, but I would imagine the direct testimony is no more than an hour.  I can't imagine the testimony responsive to that to be more than an hour or two.

So we're talking about probably two to three hours of testimony, Your Honor, that would be added to one trial, as opposed to having a completely separate trial where the government would have to re-present at least some or most of the evidence in the first trial in order to prove Count 3. We'd have new openings, new closings, new voir dire, and that certainly is going to last more than the two to three hours of introducing this testimony in this trial will last.

So when we tried to put it together, Your Honor, that would be the basis in which we were opposing the

government's motion for severance, because we think the jury will follow the court's limiting instruction as often as the court wants to do it during the trial, and then certainly at the end of the trial.

And then what we considered, Your Honor, in the alternative, if you still think that doing it that way makes the most sense, I would say, in the alternative, what we can do, rather than having two separate jury trials is that you can do -- the model I took was a model more from civil than criminal, not because it can't be done in criminal, it's just -- this issue rarely comes up in this way, but it comes up in civil quite often, which is where you have a situation where you bifurcate, for instance, liability and damages but have the same jury.  And they'll present the evidence first on liability; no evidence of damages gets presented in that phase.  And then if they find on behalf of liability, they go to the damage phase and damage evidence gets presented in that phase.

Here, you're basically -- you're having effectively the same jury that will need to hear most of the evidence for Count 3, and they'll hear it in connection first with Counts 1 and 2.  Dr. Spar and his related testimony will not be in part of that first phase of the trial, then the jury would be asked to deliberate and return a verdict.  And then when they were finished with that,

Your Honor, then we would turn to Count 3.  And then the government doesn't have to re-present all the evidence from Counts 1 and 2.  We go into the additional evidence of Count 3, which would be Dr. Spar, the government's experts, and whatever else the parties wants to put on for Count 3.  And then the jury would then go back and deliberate on Count 3.

So instead of having to pick brand-new juries each time, Your Honor, and re-present the Count 1 and 2 evidence in a Count 3 only trial, we view this as a more efficient way, if the court is still of the belief that the limiting instruction would work more efficiently then to segregate out Dr. Spar's testimony and deal with any prejudice that the government believes is the spillover effect that the government believes would happen if we have it all in one trial.

THE COURT:  All right.  I'm not aware, maybe you are, of some rule of criminal procedure that allows me to bifurcate a criminal trial much like a civil trial.

MR. HOCHMAN:  I'm not aware of any rule that says you can't, Your Honor.  We actually looked through the rules on that, and the court's given quite a degree of discretion -- the court obviously can order two trials, but we did not find any law that says the court couldn't bifurcate a criminal trial in this manner.

THE COURT:  My question was:  Are you aware of any

rule that allows me to do that?

MR. HOCHMAN:  Well, if I might, Your Honor, I'm just going to grab Rule 14 for a minute.  Hold on for a second, please.

THE COURT:  I've got Rule 14 in front of me.

MR. HOCHMAN:  I'm just grabbing Rule 14 as we speak, Your Honor.  It says -- the end of Rule 14 says: "Provide any other relief that justice requires."  I think the "any other relief that justice requires," Your Honor, could encompass this bifurcation.  I think that would be the sort of catch-all language.  And then there's no rule of which I'm aware of that prevents it.

MR. FOX:  Your Honor, may I just point out that one of the cases that we've cited was M-a-t-u-s L-e-v-a is the defendant's name, and the case cite is 311 F.3d 1214, 1217.  Your Honor, the Ninth Circuit says that "the district court has wide discretion in ruling on a severance or bifurcation motion."  This is the only case -- although this was very quick, this was the only case that we found that dealt with this issue, but we just did a very quick search.

THE COURT:  All right.  The court continues to be concerned about the prejudice that the admission of evidence concerning the defendant's Alzheimer's diagnosis is likely to cause.  The court's concern is particularly compelling for the obstruction and conspiracy counts for which that

12

evidence is not relevant or admissible. The court remains concerned the jury will be confused by the admission of evidence concerning the defendant's cognitive impairment and for which count they may consider that evidence.

The court is not convinced that a limiting instruction would fully cure that confusion or the emotional weight of such evidence.

Additionally, the admission of that evidence and the government's rebuttal evidence, the court continues to believe would significantly prolong the trial.

And it's not just the testimony of Dr. Spar, but also the false statements themselves. And the severance eliminates -- also eliminates the issue of, perhaps, a government lawyer or witness --

MR. HOCHMAN: Your Honor, may I stop you for one second. Mr. Baca unfortunately dropped off. If we could just have one moment, I'll bring him back on the line.

THE COURT: Okay. In fact, let me do this. Let me call -- let me have the clerk get numbers for you, and we'll call you back.

MR. HOCHMAN: Okay. I think you actually called us originally, but I conferenced in Mr. Baca. I can give the clerk Mr. Baca's number right now, and the clerk can call Mr. Baca while we stay on the line.

THE COURT: Okay. I'm going to hook you up to a

13

new system that I think will be better for everybody.

MR. HOCHMAN:  Okay.

THE COURT:  So why don't you guys -- if he has your numbers, that's fine.

Okay.  Why don't you give him Baca's number, and we'll call everybody right back.

MR. FOX:  And, Your Honor, we'll get off the phone so we don't hear Mr. Baca's number.  We don't need to hear that information.

THE COURT:  That's fine.

THE CLERK:  Mr. Hochman?

*(The following testimony is deemed confidential and is sealed and bound separately.)*

14

15

THE CLERK:  Okay.  I'll call everybody.

(Pause in the proceedings.)

THE COURT:  All right.  Let me just make sure.  Is everybody on now?  We have the government on?

MR. FOX:  Yes, we're on, Your Honor.

THE COURT:  Mr. Hochman, are you on?

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  And, Mr. Baca, are you on?

THE DEFENDANT:  Thank you.

THE COURT:  Mr. Baca, I understand that you dropped off the line at some point.  Had you -- were you still on the line when I began my remarks?

THE DEFENDANT:  When you began your remarks, Your Honor, and you were into that probably two or three minutes and then the phone cut off, but I do believe I got enough to understand what you were describing.

THE COURT:  All right.  I just want to make sure that you heard everything, and so what I'm going to do is just start again, just to make sure that you've heard as much as possible.

And if you have any questions, please ask your lawyer or ask me.

THE DEFENDANT:  All right, Your Honor.  Thank you.

THE COURT:  All right.  The court continues to be concerned about the prejudicial effect of the admission of

16

evidence concerning the defendant's Alzheimer's diagnosis and the effect that prejudice would have on a jury.

The court's concern is particularly compelling for the obstruction and conspiracy counts for which that evidence is neither relevant nor admissible. The court continues to be concerned that the jury will be confused by the admission of evidence concerning the defendant's cognitive impairment and for which count they may consider that evidence. A limiting instruction is unlikely to cure the confusion or the emotional weight of such evidence.

Additionally, the court continues to believe that the admission of that evidence and the government's rebuttal evidence will significantly prolong the trial.

And it's not just Dr. Spar's testimony that the court has evaluated, but the false statements, the evidence concerning the false statements themselves; and, in addition, the severance also eliminates the issue of a witness being called as to the false statements.

Therefore, the court finds that a severance under Rule 14 is appropriate in this case, and the court is going to utilize its discretion and order that Counts 1 and 2 are severed from Count 3. This, in the court's view, will allow the obstruction and conspiracy counts to be tried without any potential prejudice relating to the evidence of the defendant's cognitive impairment and would simplify the

issues for the jury and streamline the trial for those counts.  I'm not aware of bifurcating these issues, and I think the bifurcation would also tend to prolong the trial rather than streamline it, in my view.

So that is -- that's the court's ruling.

Is there anything else that we need to take up today?

MR. FOX:  Yes, Your Honor.  I'm not sure what I'm hearing in the background.  That may be Mr. Baca.

THE DEFENDANT:  I'm actually in the yard.  I'll move back over here.

MR. FOX:  So, Your Honor, I do have one question for the court, and we can file a motion on this if appropriate, but there are statements that Mr. Baca made in the interview that we would like to use affirmatively in our obstruction of justice and conspiracy case, and they come from the April 2013 interview.  My -- the issue that I think that Dr. Spar was going to testify on was his failure to recollect certain things and not that he was making things up in his head that we're wrong when he affirmatively stated something happened.

So I don't think that his testimony comes in as it relates to the affirmative statements, and I think the defense may even agree with that.  But I don't know what opinions that he has stated previously that would be

admissible as to affirmative representations he made in that interview.

And, again, we can file something by Monday morning with the court on that, if appropriate.

MR. HOCHMAN:  Your Honor, may I be heard?

THE COURT:  Yes.

MR. HOCHMAN:  Your Honor, the government wants everything.  They want to sever this out, and they want to use it, and it's a ploy to avoid Dr. Spar testifying.  And I can certainly -- I understand the court's concerns, obviously, we thought a different method of dealing with them was appropriate, but we certainly understand the court's concerns.

However, if the government wants to get into that statement then, Mr. Baca's cognitive abilities in uttering any of those statements from the April 12, 2013, interview, we believe would be very relevant and then admissible.

So the government would effectively be trying to sneak in, shall I say, the statement without having to deal with the testimony that explains the cognitive abilities of Mr. Baca.

So I think if the court is going to sever out Count 3, which are the false statements in the interview on April 12th, 2013, it should also not allow the government to introduce those statements, unless it then goes ahead and

let's us introduce the cognitive ability of Mr. Baca in making the statements, which would then undo the whole purpose of having the severance in the first place.

MR. FOX: Your Honor, just briefly. I just want to clarify one thing. We would not put in the false statements, we would only put in those affirmative representations that he made.

And just so it's clear, we would file a motion. And if the court would find that the statements should come in without Dr. Spar testifying, we will then not elicit those statements at all.

So we would rather have a severed case and not admit those statements than have a non-severed case with all of the statements coming in, and Dr. Spar's statements coming in.

THE COURT: All right. Well, you know, one issue at a time. So if the government wants to file a motion, that's fine. I can leave it to the parties to try to work out some briefing schedule so that motion can be filed and heard by the Court. If you don't think you'll be able to do that, I'll go ahead and set a briefing schedule.

MR. FOX: I think I could have this on file by Monday by the time of jury selection. We don't need this decided until jury selection is over. We can also share with the defense a draft of our motion over the weekend so

20

they might be able to respond potentially by Tuesday morning.

MR. HOCHMAN:  Your Honor, obviously, we'll be quite busy on Monday with jury selection that will take us all the way to 5:00 p.m.  And then we'll be, obviously, making sure everything that came up on Monday, we deal with for Tuesday, et cetera, et cetera.  You know, it's -- this is, obviously, an important decision, Your Honor, so we want to make sure we have adequate time to properly respond and brief on it, but the issue, obviously, is coming up when it's coming up.  But I can't say that if we get coming on Monday that we're going to have adequate time to think about it and brief in the midst of the trial.  And why the government is now thinking of this and didn't already outline the statements that they wanted to introduce, I'm at a loss to understand.  That said, we're in the middle of jury selection --

THE COURT:  Okay, Mr. Hochman.  I get your point.  You know, you're all trial lawyers.  Mr. Hochman, you got a very big firm over there.  You got lawyers.  So when does the government going to -- believe it will have a draft for them to look at?

MR. FOX:  We'll get a draft to them by Sunday at 5:00 p.m.

THE COURT:  Okay.  And why doesn't the defense get

21

me coming -- why don't you give me coming by the close of business on Tuesday.

MR. HOCHMAN:  Yes, Your Honor.  And, if for some reason, we're running jury selection until 5:00 p.m. on Tuesday -- I wouldn't have anything go out the door, Your Honor, that I didn't personally review.  No matter how big my firm is, I'm the lead attorney, and I need to personally review everything that goes out.  So we'll see how we do with jury selection.  And if it runs all the way to 5:00 o'clock on Tuesday, it might be the next morning that I'll have to give you coming, Your Honor.

THE COURT:  Well, we'll see where we are.

Okay.  Thank you very much.  We'll see everybody on Monday.

MR. HOCHMAN:  By the way, Your Honor, this sort of goes without saying.  I assume we're going with Counts 1 and 2 first, and then Count 3?

THE COURT:  That's correct.

MR. HOCHMAN:  All right.  I just wanted to confirm that, Your Honor.

THE COURT:  All right.  Thank you very much.

Oh, by the way, if there's any change in the status of this case, please file coming over the weekend.

MR. HOCHMAN:  We'll certainly do that, Your Honor.

THE COURT:  Thank you.

22

MR. FOX:   Thank you.

*(Thereupon, proceedings adjourned)*

*-oOo-*

23

**CERTIFICATE**

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  December 7, 2016

Lisa M. Gonzalez
/s/_____
Lisa M. Gonzalez, U.S. Court Reporter
CSR No. 5920