EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No. 290409)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
Assistant United States Attorney
Major Frauds Section
       1500/1100 United States Courthouse
       312 North Spring Street
       Los Angeles, California 90012
       Telephone: (213) 894-0284/4849
       Facsimile: (213) 894-0141
       E-mail:    Brandon.Fox@usdoj.gov
                  Eddie.Jauregui@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>                    v.<br><br>LEROY BACA,<br><br>          Defendant. | No. CR 16-66(A)-PA<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO ADMIT EVIDENCE REGARDING EBI AND CMTF; DECLARATION OF EDDIE A. JAUREGUI<br><br>[Proposed] Hearing Date: TBD<br>[Proposed] Hearing Time: TBD<br>Location:  Courtroom of the Hon.<br>          Percy Anderson |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brandon D. Fox and Eddie A. Jauregui, hereby opposes defendant's motion to admit evidence regarding the Education Based Incarceration Program ("EBI") and Commander Management Task Force ("CMTF"), styled as "Defendant Leroy Baca's Response to Minute Order (Docket No. 131)" (CR 197).

i

The government's opposition is based on the attached memorandum of points and authorities, the files and records in this case, the attached declaration and exhibits, and such further evidence and argument as the Court may permit.

Dated: December 13, 2016              Respectfully submitted,

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


___*/s/ Brandon D. Fox*___
BRANDON D. FOX
EDDIE A. JAUREGUI
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

ii

### MEMORANDUM OF POINTS AND AUTHORITIES

Prior to trial, the government filed a timely motion in limine to exclude evidence of defendant's good works and subsequent remedial measures on the basis that such evidence was irrelevant, unfairly prejudicial, and improper character evidence.  (CR 103 at 6-15.) Included in that motion were the LASD's "Education Based Incarceration Program" ("EBI"), as well as "any post-offense acts . . . pertaining to defendant's good works or remedial measures after the duration of the conspiracy[.]"  (Id. at 7.)  The Court tentatively granted the motion with respect to EBI, while deferring ruling on the balance of the motion. (CR 131.)

Defendant now renews his effort to admit evidence about EBI and one specific category of post-criminal remedial action: his formation of the Commander Management Task Force ("CMTF").  (CR 197, "Mot.") Contrary to defendant's assertions, the admissibility of this evidence does not depend upon a hyperprocedural assessment of whether the "government has opened the door to post-conspiracy evidence" (Mot. 1-3) or whether a single witness mentioned the years 2006 and 2007 (Mot. 6).[1]  It depends upon the relevance of defendant's proffered evidence and whether that evidence's probative value is substantially outweighed by risk of confusion, unfair prejudice, and waste of time.  See Fed. R. Evid. 401, 403, 404(b).

Absent any detailed proffer, it is impossible to understand the scope of defendant's motion and the admissibility of actual evidence

---

[1] The government notes that none of defendant's examples of "post-conspiracy evidence" relates to anything defendant did.  (Mot. 2-3.)  That defendant's lead example is Exhibit 110--the grand-jury subpoenas served on the LASD, including several from October and November 2011--signals the weakness of his arguments.

1

to be offered at trial.  From what little defendant has proffered, the Court cannot find general evidence regarding EBT or CMTF admissible.  Defendant's motion must be denied.

**I.    FACTS**

Defendant has provided extremely limited information regarding the evidence he seeks to admit and has provided no proffer identifying a witness through whom such evidence would be admitted. (See Mot. 4-8.)  Nor has defendant provided the government with any witness statements about these or any issues.  (Declaration of Eddie A. Jauregui ("Jauregui Decl.") ¶ 2.)  From defendant's motion and public sources, the government understands the following:

**A.    EBI**

EBI's connection to deputy-on-inmate violence in the jails appears distant at best--or else limited to defendant's own thoughts. (See generally Mot. 6-8.)  The purpose of EBI (and its predecessor, "MERIT") was to educate inmates, and to reduce recidivism and "inmate on inmate and inmate on staff violence."  (Jauregui Decl. ¶ 3, Ex. A at 1.)  According to defendant's motion, in 2006-07, defendant implemented MERIT to "educate inmates and provide them with life skills[.]" (Mot. 6-7.)  Through the program, inmates attended classes taught by university educators and could also attend "vocational courses, parenting classes, anger management classes, drug rehabilitation classes, and classes that promoted tolerance and leadership."  (Mot. 7.)

These classes--offered to inmates, not deputies--could not directly have decreased the rate of deputies' corruption and civil-rights violations in the jails.  Nevertheless, as an apparently statistical matter, "violence among inmates and deputies who

2

participated in these educational programs decreased dramatically."
(Id.)  This was because "inmates were motivated and had programs to
occupy their time and improve themselves rather than just sitting
around their cells idle and inactive"; also, "the time for any
potential violent actions with deputies was greatly minimized."
(Id.)  According to defendant's brief, unsupported by a declaration
or any other evidence, defendant thus "expanded the EBI programs,
including expanding them at [MCJ]" in "direct response to the ACLU's
2009 and 2010 allegations of excessive force and inmate abuse by
deputies."  (Id.)

**B.    CMTF**

CMTF's connection to deputy-inmate violence appears, by
comparison, more direct; but its bearing on defendant's intent to
obstruct justice is profoundly ambiguous.  Per defendant, he founded
CMTF on approximately October 1, 2011--"days after the end of the
conspiracy."  (Mot. 4.)  Composed of several high-level LASD
officers, the CMTF "revised policies regarding the use of force in
the jail and retaliating against inmates who ma[d]e complaints,
implemented force-specific staff training programs, conducted town
hall meetings where commanders at the jails met with inmates . . . ,
worked with outside agencies like the ACLU to address their
complaints and implement their recommendations, and ensured that all
the jails had educational programs that were proven to reduce
violence between inmates and deputies."  (Mot. 4-5.)

Defendant's role--after CMTF's creation--was apparently more
limited.  Defendant claims to have been "personally involved" only in
developing the revised use-of-force policy, "promoting people who
advocated respect and rehabilitation for inmates," promoting

education programs in the jails, and attending town-hall meetings "with inmates to hear and respond to their grievances." (Id.)

As defendant admits, he formed CMTF after the events at issue in this case and after the end of the alleged conspiracy. What he fails to disclose, however, is that he likewise formed CMTF after a high-profile ACLU report was issued on September 28, 2011--a report attaching 78 declarations regarding jail violence, and in which the organization openly called for defendant to resign as Sheriff. (Jauregui Decl. ¶ 4, Ex. B.) When defendant subsequently announced the formation of CMTF on approximately October 9, 2011, he specifically and repeatedly tied that decision to the ACLU's report. (Jauregui Decl. ¶ 5, Ex. C.) The report has not, to date, been admitted at trial.

## II.  ARGUMENT

Defendant's motion should be denied. Although prior or subsequent acts can be offered to prove defendant's intent, defendant fails to establish the relevance and probative weight of the specific evidence he seeks to admit. See generally Fed. R. Evid. 401, 403, 404(b). With respect to EBI, defendant fails to establish any (or any meaningful) connection to his intent to obstruct the federal grand jury investigation; absent a detailed proffer, the Court cannot find this evidence admissible under Rules 401 and 404(b), much less assess its relative probative value under Rule 403. With respect to the CMTF, any minimal probative value of the evidence is far outweighed by risk of confusion and waste of time. Defendant's motion must be denied.

4

**A.     Relevant Legal Standards**

Defendant is charged with obstruction of justice and conspiracy to obstruct justice, in violation of 18 U.S.C. §§ 371, 1503.  Section 1503 requires intent to obstruct justice: "the word 'corruptly,' as used in the statute and applied here, means that the act must be done with the purpose of obstructing" the federal grand jury investigation.  United States v. Rasheed, 663 F.2d 843, 852 (9th Cir. 1981); accord United States v. Laurins, 857 F.2d 529, 536-37 (9th Cir. 1988); United States v. Lester, 749 F.2d 1288, 1294 n.4 (9th Cir. 1984).  Thus, the government must prove that defendant intended to obstruct the federal grand jury investigation.  Rasheed, 663 F.2d at 853; United States v. Montgomery, 384 F.3d 1050, 1062 (9th Cir. 2004).

In general, under Federal Rule of Evidence 404(b), both the government and a defendant may offer evidence of other acts--either good acts or bad acts--to prove the defendant's motive or intent. United States v. Thomas, 134 F.3d 975, 979 (9th Cir. 1998).  Either prior or subsequent acts may be admitted under this rule.  United States v. Bibo-Rodriguez, 922 F.2d 1398, 1400 (9th Cir. 1991).

Good acts offered by defendant for such purpose, however, must "bear[] meaningfully" on the relevant intent; that is, they must be "relevant and not unduly prejudicial."  Thomas, 134 F.3d at 979; United States v. Barry, 814 F.2d 1400, 1403 (9th Cir. 1987).  When assessing evidence under Rule 404(b), the Ninth Circuit has likewise typically applied a four-part test, requiring that the proffered act be (1) supported by evidence sufficient to support a finding that defendant committed the act, (2) introduced to prove a material issue, (3) not too remote in time, and (4) if admitted to prove

intent, similar to the offense charged.  United States v. Murillo, 255 F.3d 1169, 1175 (9th Cir. 2001) (analyzing prior bad act proffered by the government).

Evidence of prior acts cannot--subject to exceptions not relevant here--be admitted to "prove the character of the person in order to show action in conformity therewith."  Fed. R. Evid. 404(b); see Fed. R. Evid 404(a).  Accordingly, evidence admitted under Rule 404(b) must be "relevant in such a way as to avoid being nothing more than character or propensity evidence."  United States v. Curtin, 489 F.3d 935, 944 (9th Cir. 2007) (en banc).

**B.    Evidence Regarding EBI, As Set Forth In Defendant's Motion, Is Inadmissible**

None of the facts about EBI identified by defendant in his brief is admissible under these standards.  The existence of educational programs for inmates--programs that, incidentally, reduced inmates' availability to be beaten by deputies (see Mot. 7)--has no meaningful bearing on defendant's intent to obstruct the federal grand jury investigation.  Thomas, 134 F.3d at 979.  (Id.)  At best, defendant's implementation of such programs in 2006 and 2007 (years before the grand jury investigation even began) demonstrates his general good character as a Sheriff--a character trait not relevant in this case. See Fed. R. Evid. 404(a), 404(b); Curtin, 489 F.3d at 944.  In turn, subsequent statistical decreases on certain categories of inmate violence have no bearing on defendant's intent to obstruct justice. Defendant's argument to the contrary rests on a conflation of correlation, causation, and purpose.  (See Mot. 7.)

Defendant has failed to show any link whatsoever between the EBI program and allegations of inmate abuse by the ACLU in 2009 and 2010.

6

(His self-serving claim that there is a link is unsupported by objective evidence or any declaration.)  More to the point, he has failed to show a link, or similarity, between his intent vis-à-vis EBI and the offenses charged.  See Murillo 255 F.3d at 1175 (if admitted to prove intent, evidence of prior act must be similar to the offense charged).  Because defendant's conduct pertaining to the EBI program and nature of the offenses charged here are dissimilar, the EBI evidence must be excluded.  This evidence should also be excluded under Fed. R. Evid. 403 because it has little, if any, probative value, which is substantially outweighed by the dangers of confusion of the issues, misleading the jury, undue delay, and waste of time.

> **C.  The Marginal Relevance of Evidence Regarding the CMTF is Outweighed by Risk of Confusion, Waste of Time, and Unfair Prejudice**

Evidence regarding the CMTF is likewise inadmissible under Rule 403.  The government does not dispute that post-conspiracy acts could be relevant to defendant's intent, and likewise could be admissible under Rule 404(b).  See generally Bibo-Rodriguez, 922 F.2d at 1400. The problem, however--particularly given the timeline in this case-- is the dubious weight of that evidence.  As the Ninth Circuit has previously recognized, post-hoc efforts to make amends have "but small probative value for the purpose of showing lack of evil intent[.]"  Kohatsu v. United States, 351 F.2d 898, 904 (9th Cir. 1965); accord United States v. Radtke, 415 F.3d 826, 840-41 (9th Cir. 2005) ("self-serving exculpatory acts performed substantially after a defendant's wrongdoing is discovered are of minimal probative value as to his state of mind at the time of the alleged crime").

Any probative value of CMTF evidence is especially weak given the notable events that occurred between the end of the charged conspiracy and the founding of CMTF.  On September 27, 2011, defendant met with then-United States Attorney André Birotte, who informed the defendant that, despite defendant's wishes, the federal investigation would continue--and would continue without defendant's involvement.  (See CR 174 at 21.)  Defendant, indignant, was enraged: "I'm goddamned Sheriff," he insisted; these were "my goddamned jails"; and he suggested that the FBI and LASD "gun up" to settle the matter.  (Id.)  The very next day, the ACLU published a damning report calling for defendant's resignation.  (Jauregui Decl. ¶ 3, Ex. B.)  It was both after and in explicit reference to this report--and after figuratively challenging the FBI to a duel--that defendant announced the formation of CMTF.  (See Mot. 4.)

By that time, defendant's crime was complete.  See generally Rasheed, 663 F.2d at 853 (obstruction of justice offense as "complete" at the point that "documents were directed to be destroyed or concealed").  By that time, defendant knew--all too well--that the federal investigation was not going away.  (CR 174 at 21.)  See Bateman v. United States, 212 F.2d 61, 68-69 (9th Cir. 1954) (affirming exclusion of evidence as "having no probative value in establishing appellants' state of mind at the time of the alleged criminal acts" where evidence pertained to acts appellants performed "long after the Government had commenced its investigation and at a time appellants knew [they were being investigated]").  Indeed, by then the federal investigation was likewise public, with the media reporting a "flurry of FBI scrutiny of alleged jailhouse abuse and other deputy misconduct[.]"  (Jauregui Decl. ¶ 6, Ex. D.)

8

Accordingly, defendant's late-announced "remedial" action is of dubious relevance to his earlier, criminal intent.  <u>Kohatsu</u>, 351 F.2d at 904.  What little relevance this evidence has is substantially outweighed by risk of confusion and waste of time, and thus it should be excluded under Rule 403.

**DECLARATION OF EDDIE A. JAUREGUI**

I, Eddie A. Jauregui, declare as follows:

1.    I am an Assistant United States Attorney.  I am one of the prosecutors assigned to United States v. Leroy Baca, No. CR 16-66(A)-PA.

2.    The defense has not provided the government with any witness statements regarding the issues the defendant raises about the Education Based Incarceration Program or the Commander Management Task Force.

3.    Attached as Exhibit A is a true and correct copy of James Austin, et al., Evaluation of Education-Based Incarceration Programs, Los Angeles County Sheriff's Department Jail System (August 2013), available at http://www.jfa-associates.com/publications/jss/Evaluation%20of%20EBI_6-24-13.pdf (last accessed December 13, 2016).

4.    Attached as Exhibit B is a true and correct copy of an ACLU press release entitled ACLU Calls for Immediate Resignation of Los Angeles County Sheriff Lee Baca and Thorough Federal Investigation, dated September 28, 2011, available at https://www.aclu.org/news/aclu-report-documents-eyewitness-accounts-brutality-against-los-angeles-county-jail-inmates (also linking to ACLU report entitled Cruel and Unusual Punishment: How a Savage Gang of Deputies Controls LA County Jails (September 28, 2011)) (last accessed December 13, 2016).

5.    Attached as Exhibit C is a true and correct copy of Leroy D. Baca, Effecting Positive Change in the Los Angeles County Jails (undated), available at http://sheriff.lacounty.gov/wps/portal/lasd/!ut/p/c4/04_SB8K8xLLM9MSS

10

zPy8xBz9CP0os3hLAwMDd3-nYCN3M19LA0_nEDPvMJMAQ39jA_2CbEdFAFVdgp4!/?current=true&urile=wcm:path:/lasd+content/lasd+site/home/home+top+stories/effecting+positive+change+in+the+los+angeles+county+jails (last accessed December 13, 2016).  A similar statement was published by SCVNews.com, as a guest commentary by defendant.  See http://scvnews.com/2011/10/09/effecting-positive-change-in-los-angeles-countys-jails/ (last accessed December 13, 2016).

6.    Attached as Exhibit D is a true and correct copy of Robert Faturechi, "Sheriff Baca reopens cases of alleged inmate abuse by deputies [Update]," Los Angeles Times (October 9, 2011), available at http://latimesblogs.latimes.com/lanow/2011/10/baca-reopens-old-cases-amid-claims-of-deputy-brutality.html (last accessed December 13, 2016).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: December 13, 2016

_____
Eddie A. Jauregui