EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No. 290409)
Chief, Public Corruption & Civil Rights Section
LIZABETH A. RHODES (Cal. Bar No. 155299)
Chief, General Crimes Section
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
Assistant United States Attorney
Major Frauds Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0284/3541/4849
     Facsimile: (213) 894-6436
     E-mail:    Brandon.Fox@usdoj.gov
                Lizabeth.Rhodes@usdoj.gov
                Eddie.Jauregui@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 16-66(A)-PA |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTIONS IN LIMINE TO PRECLUDE DEFENDANT FROM EFFECTIVELY TESTIFYING BY WEARING SHERIFF'S "STAR" LAPEL PIN AND TO EXCLUDE EVIDENCE OF GOOD ACTS |
| v. | |
| LEROY BACA, | |
| Defendant. | Hearing Date: TBD |
| | Hearing Time: TBD |
| | Location:    Courtroom of the Hon. Percy Anderson |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brandon D. Fox, Lizabeth A. Rhodes, and Eddie A. Jauregui, hereby files its motions in limine to preclude defendant from wearing his sheriff's "star" lapel pin during trial and thereby testifying throughout trial from

his seat at counsel table, and to exclude evidence of "good acts" under Federal Rules of Evidence 403, 404, and 608.

The government's motions are based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 18, 2017              Respectfully submitted,

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


        /s/ *Brandon D. Fox*
BRANDON D. FOX
LIZABETH A. RHODES
EDDIE A. JAUREGUI
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                      PAGE

TABLE OF AUTHORITIES...............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.     INTRODUCTION................................................1

II.    STATEMENT OF FACTS..........................................2

       A.    The Charges..........................................3

       B.    The Original Severance...............................3

       C.    The First Trial......................................4

             1.   Defendant's "Testimony".........................4

             2.   Defendant's Improper Good Acts Defense..........5

       D.    The Mistrial.........................................6

       E.    The Court Re-Joins the Counts and Sets Trial Date....6

III.   ARGUMENT....................................................6

       A.    Defendant Should Be Precluded from Wearing His
             Sheriff's Pin and Other Insignia at Trial............6

       B.    The Court Should Exclude Evidence and Argument
             Concerning Defendant's or LASD's "Good Works,"
             "Remedial Measures," and "Cooperation" with Federal
             Grand Jury Requests.................................10

IV.    CONCLUSION.................................................14

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                 PAGE

FEDERAL CASES

Kohatsu v. United States,
        351 F.2d 898 (9th Cir. 1965)...................................13

Michelson v. United States,
        335 U.S. 469 (1948)...........................................14

Norris v. Risley,
        878 F.2d 1178 (9th Cir. 1989)...............................6, 7

United States v. Aguiar,
        472 F.2d 553 (9th Cir. 1972)...................................6

United States v. Damti,
        109 F. App'x 454 (2d Cir. 2004)..............................12

United States v. Dimora,
        750 F.3d 619 (6th Cir. 2014).................................12

United States v. Dobbs,
        506 F.2d 445 (5th Cir. 1975).................................11

United States v. Dowie,
        411 F. App'x 21 (9th Cir. 2010)..............................13

United States v. Hedgcorth,
        873 F.2d 1307 (9th Cir. 1989)................................11

United States v. Pintado-Isiordia,
        448 F.3d 1155 (9th Cir. 2006).................................8

United States v. Radtke,
        415 F.3d 826 (8th Cir. 2005).................................13

United States v. Reese,
        666 F.3d 1007 (7th Cir. 2012)................................12

United States v. Santana-Camacho,
        931 F.2d 966 (1st Cir. 1991).................................14

United States v. Santos,
        201 F.3d 953 (7th Cir. 2000).................................12

United States v. Scarpa,
        913 F.2d 993 (2d Cir. 1990)..............................12, 13

United States v. Sepulveda,
        15 F.3d 1161 (1st Cir. 1993)..................................1

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

STATE CASES

Martin v. State,
     857 N.E.2d 1051 (Table), 2006 WL 3437653 (Ind. App. Nov.
     30, 2006)..................................................9

Montgomery v. Muller,
     580 N.Y.S.2d 110, 112 (App. Div. 1992).........................9

State v. Graham,
     132 Wash. App. 1022, 2006 WL 855812 (Div. 2 April 4, 2006).....9

State v. Marquez,
     145 N.M. 31 (2008).......................................8-9

FEDERAL STATUTES

18 U.S.C. § 1001(a)(2)........................................3

18 U.S.C. § 1503(a)..........................................3

18 U.S.C. § 371..............................................3

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Throughout his initial trial, defendant attempted to portray himself as a law-abiding reformer using impermissible means.  This was nothing more than an improper "attempt[] to serenade [the] jury with the siren song of nullification."  United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993).  Defendant did this in at least two ways:

First, defendant essentially testified, despite never taking the witness stand and never being subjected to cross examination, by wearing a lapel pin bearing the Los Angeles County Sheriff's star during each day of trial.  In doing so, defendant attempted to cloak himself with the credibility, authority and support of the Sheriff's Department, despite stepping down from that position years ago.  The potential prejudice was exacerbated by defendant calling a witness wearing the same pin to testify about defendant's law-abiding character, by his supporters wearing similar pins while seated in the gallery, and by defense counsel objecting to the government's plan to display and comment on the pin during its rebuttal argument (claiming it would amount to prosecutorial misconduct).  The Court should use its wide discretion to bar defendant from wearing the lapel pin in his February trial because it has no probative value and is being used solely for an impermissible and prejudicial purpose.

Second, the defendant introduced and attempted to introduce evidence that that he neither conspired nor endeavored to obstruct the federal grand jury investigation from August to September 2011 because he: (a) had an associate teach "wrestling moves" to deputies in 2009 and 2010; (b) implemented an Office of Independent Review

more than a decade before the federal investigation; (c) created a task force to review force incidents after the conspiracy to obstruct justice ended; (d) began a program, Education Based Incarceration, designed to provide schooling to inmates; (e) cooperated with other federal investigations, including a Department of Justice investigation into the Sheriff's Department violating the civil rights of Section 8 housing occupants; and (f) did not instruct anyone to obstruct the investigation once the County hired an outside law firm to respond to federal grand jury subpoenas.  None of these items can be introduced for a proper purpose and each is inadmissible under Federal Rules of Evidence 403, 404, and 608.  The government therefore renews and expands its original motion to exclude evidence of defendant's "good works," remedial measures, and "cooperation" with the government's federal grand jury investigation post-dating the life of the conspiracy (see Joint Motions in Limine, Dkt. 103, at 6-9, 13-15).[1]

## II.   STATEMENT OF FACTS

On January 7, 2014, defendant announced he was resigning as Los Angeles County Sheriff.  Although he had not yet completed his term, and had previously indicated that he would run again for Sheriff in June 2014, defendant announced that he would retire within a month's time.  Federal indictments against more than a dozen LASD deputies, sergeants, and lieutenants had become public just one month earlier, in December 2013.  At the time of his announcement, defendant and the Sheriff's Department were facing mounting criticism regarding deputy

---

[1] The government incorporates by reference here and renews its prior Motion in Limine No. 3, in Dkt. 103.

abuse of inmates and their handling of the federal investigation into that abuse.

### A.    The Charges

On August 8, 2016, a grand jury charged defendant in a superseding indictment with conspiring to obstruct justice, in violation of 18 U.S.C. § 371 (Count One); obstruction of justice, in violation of 18 U.S.C. § 1503(a) (Count Two); and making false statements, in violation of 18 U.S.C. § 1001(a)(2) (Count Three). The basic facts are that defendant and other members of the Sheriff's Department conspired to hide an inmate-informant from the federal government, tampered with witnesses, and threatened to arrest the lead FBI case agent.  As charged in the indictment, when questioned about his conduct in April 2013, defendant falsely denied having any knowledge of any of the obstructive acts.

### B.    The Original Severance

Leading up to trial, defendant claimed he suffered from mild cognitive impairment and initially raised a diminished capacity defense with respect to all three charges.  When pressed on the issue in pretrial litigation, defendant conceded that any mild cognitive impairment he suffered had been in the "preclinical" stage and did not affect his conduct in Counts One and Two.  He continued to assert, however, that his mild cognitive impairment affected his false statements about his conduct as charged in Count Three.

After the Court expressed concerns about the prejudice the government would suffer if the jury were to hear about defendant's diagnosis, the Court agreed to sever Counts One and Two from Count Three.

**C.    The First Trial**

On December 22, 2016, after a three-week trial on Counts One and Two, the Court declared a mistrial because the jury was unable to reach a unanimous verdict on either count.  Throughout trial, and without the inconvenience of the false statements evidence, defense counsel portrayed defendant as a law-abiding leader of the Sheriff's Department who was "open, direct, and transparent" in his dealings with the federal government.

### 1.    Defendant's "Testimony"

Each day, defendant presented himself to the Court, the jury, and the public wearing a six point "sheriff's star" lapel pin-- essentially a miniaturized version of the Sheriff's badge he wore on his uniform while he was the Sheriff.  In doing so, defendant reinforced, without testifying, his attorney's messaging throughout trial: that he was honorable and law-abiding and represented the "core values" of the Sheriff's Department, and that this case was simply a "clash" between the FBI and Sheriff's Department instead of being about the obstruction of a federal grand jury investigation into civil rights abuse.

Defendant's supporters amplified the issue by wearing the same or similar lapel pins while sitting in the gallery during trial. During defendant's case-in-chief, a character witness took the stand wearing a larger version of the pin.  Defendant himself never testified, and was therefore never cross-examined, despite effectively testifying through his lapel pin.

The government did not object to defendant's wearing of the lapel pin, not knowing that spectators and witnesses would exacerbate the problem and hoping that it could just address the issue during

4

its closing arguments.  But when the government informed the defense that it would use a similar pin as a demonstrative exhibit during closing, the defense balked, calling it prosecutorial misconduct that would result in reversible error.  The government ultimately did not use the pin as a demonstrative exhibit.  As a result, defendant's improper and silent messaging to the jury went uncontested, unquestioned, and unrebutted.

### 2.    Defendant's Improper Good Acts Defense

Defendant shored up his defense at trial by other improper means, as well.  Notwithstanding a government motion on the issue and repeated objections at trial (which were sustained), defendant cross-examined government witnesses on his non-obstruction or non-interference with federal grand jury subpoenas after the conspiracy ended in September 2011.[2]  The government previously argued that the Sheriff's Department's compliance with federal grand jury subpoenas after the commission of the crimes was irrelevant, and even if it were relevant, such evidence had minimal probative value and should have been excluded.  (See Government's Motion in Limine 3, Dkt. 103, at 7-8.)  In his case-in-chief, the defendant introduced and attempted to introduce evidence he: (a) had an associate teach "wrestling moves" to deputies years before he was aware of the federal grand jury investigation; (b) implemented an Office of Independent Review more than a decade before the federal

---

[2] For example, defendant cross-examined custodians of records to show that defendant did not interfere with their production of documents to the federal grand jury in 2012 and beyond.  Not only was this irrelevant to the charges, but it also failed to acknowledge that the County had retained outside counsel, Jones Day, in October 2011, and that firm assumed responsibility for responding to the subpoenas.

investigation; (c) created a task force to review force incidents after the conspiracy to obstruct justice ended; (d) cooperated in other federal investigations; and (e) began a program, Education Based Incarceration, designed to provide schooling to inmates.

### D.    The Mistrial

On December 22, 2011, the Court ordered a mistrial after the jury indicated that it was hopelessly deadlocked and could not reach a verdict on either count.

### E.    The Court Re-Joins the Counts and Sets Trial Date

On January 10, 2017, the Court granted the government's motion to re-join the counts, and scheduled a trial for all three counts on February 21, 2017.  The Court stated that it would begin jury selection sometime in the week prior to trial.

## III. ARGUMENT

### A.    Defendant Should Be Precluded from Wearing His Sheriff's Pin and Other Insignia at Trial

This Court should exercise its broad discretionary power to ensure a fair trial by barring defendant from wearing the Sheriff's "star" at trial.  Such action would promote fairness and "expeditious development of the facts unencumbered by irrelevancies." See United States v. Aguiar, 472 F.2d 553, 555 (9th Cir. 1972).  This Court has wide discretion in performing its duty to provide a fair trial for all parties.  Id.  By precluding defendant from wearing the pin, the Court will be ensuring that the evidence, as it must in a criminal trial, "come from the witness stand in a public courtroom." Norris v. Risley, 878 F.2d 1178, 1181 (9th Cir. 1989) (internal quotations and citation omitted).

There is nothing proper about defendant wearing his pin, which defendant donned every day during his initial trial, in full view of the jury.[3]  It is no secret that defendant is the former Sheriff, but in wearing the Sheriff's "star" every day of trial, defendant was cloaking himself in the aura of credibility and respectability that comes with holding that office.  Moreover, defendant's pin signaled to the jury that he and the Sheriff's Department are one and the same, even today, and that the County and the Sheriff's Department sanction his acts that are charged as obstruction (which they do not).  The message is improper and erroneous, yet clear: the charges are nothing more than a turf war between the FBI and the Sheriff's Department, and between the United States and Los Angeles County. This false impression was bolstered when the defendant's supporters-- both on the witness stand and in the gallery--wore similar Sheriff's Department insignia.  As this Court is aware, juries "are extremely likely to be impregnated by the environing atmosphere." Norris, 878 F.2d at 1181-82 (citations and internal quotations omitted).

Defendant took advantage of the improper atmosphere he created. The defense leaned heavily on the prestige of the Office of the Sheriff, noting for the jury the size of the Department and its vast territorial jurisdiction, and pointing out--where it could, before an objection could be made--that defendant participated in counter-terrorism efforts and even met with the President of the United States.  In his opening statement, defense counsel stressed the Sheriff's Department's "core values" and mission statement, and aligned defendant with both the Sheriff's Department and federal law

---

[3] Defendant also wore the pin to his change-of-plea and sentencing hearings.

enforcement, painting him as a "brother" to and "partner" of the FBI. Moreover, the defense contrasted defendant's years of experience with that of "rookie" FBI agents involved in this case, and characterized the Sheriff Department's obstruction of justice as nothing more than a turf war between two entities who were ordinarily "brothers-in-arms."

By wearing his Sheriff's pin at trial, defendant reinforced the defense's themes from counsel table, instead of testifying from the witness stand where he would have been cross-examined.  The pin also made defendant appear to be sympathetic.  This is improper.  United States v. Pintado-Isiordia, 448 F.3d 1155, 1158 (9th Cir. 2006) (agreeing with district court that "the only apparent purpose" for introducing a photograph of defendant in military uniform was "to elicit the jury's sympathy and patriotism, which runs afoul of Fed. R. Evid. 403").  Although the Court cannot know precisely the impact the pin had on the jury, "reason, principle, and common human experience" suggest both that defendant intended to influence the jury by wearing his pin and that his pin could have influenced the jury.  See Norris, 918 F.2d at 834 (noting, in case where spectators wore buttons during trial, that court "can never fully know the extent to which the buttons influenced any juror," but finding that "risk that the buttons had an impact on the jurors [was] unacceptably high").

Similar to a service member's uniform, defendant's lapel pin is intended to convey honor, credibility, and law-abidingness, among other things.  But courts across the country have barred even active service members from wearing military uniforms in civilian criminal trials, finding such dress to be improper and prejudicial.  See State

v. Marquez, 145 N.M. 31, 34-35 (2008) (court acted within its discretion in determining that defendant's appearance in uniform could unfairly prejudice the jury), reversed on other grounds, 147 N.M. 386 (2009); State v. Graham, 132 Wash. App. 1022, 2006 WL 855812, at *4-5 (Div. 2 April 4, 2006) (unpublished) (affirming ruling precluding defendant from testifying in Navy uniform); Martin v. State, 857 N.E.2d 1051 (Table), 2006 WL 3437653, at *3 (Ind. App. Nov. 30, 2006) (unpublished) (upholding decision to order defendant to remove his military uniform and proceed in civilian dress); cf. Montgomery v. Muller, 580 N.Y.S.2d 110, 112 (App. Div. 1992) (requiring prosecutor to remove American flag lapel pin and finding that the wearing of the pin might cause some jurors "to view differently statements made by the wearer" and to ascribe, among other things, "a greater measure of veracity" to the wearer). Likewise, there is no reason to allow defendant, a former law enforcement officer, to wear his Sheriff's "star" at trial, as its only apparent purpose is an improper one: to play on the jury's biases and emotions.

While defendant may testify, he cannot do so silently from his seat at counsel table. Allowing defendant to continue to wear his sheriff's pin creates a risk that the jury will decide the question of his guilt on facts outside the record. It prejudices the government by allowing defendant to trade on the prestige and credibility of an office he no longer holds.[4]  As a former elected

---

[4] While it is possible that some jurors may view the Sheriff's pin with prejudice and not reverence, that is not grounds for allowing defendant to continue wearing it. To the contrary, such a possibility only reinforces the need to keep the pin outside the courtroom, so that defendant is judged solely on the evidence and not the inflamed prejudices or sympathies of the jury.

official, defendant surely understands the power of images and symbols, but the courtroom is not a political stage and defendant's prop has no place in trial.  The Court should use its wide discretion to ensure a fair trial to both sides by ordering defendant not to wear his lapel pin or any other insignia during trial.

**B.    The Court Should Exclude Evidence and Argument Concerning Defendant's or LASD's "Good Works," "Remedial Measures," and "Cooperation" with Federal Grand Jury Requests**

Before the last trial, the government filed a motion-in-limine to preclude the defendant from introducing evidence or argument regarding his "prior good works."  The government cited certain examples, but could not predict all of the evidence defendant would seek to introduce.  As a result, the Court deferred ruling on a majority of the government's motion until trial.  Now that the Court has had a chance to hear and see the evidence, it is in a better position to rule before the next trial.  Accordingly, the government renews and expands its motion to exclude evidence of defendant's "good works," remedial measures, and "cooperation" with the federal grand jury investigation post-dating the life of the conspiracy.

Defendant spent a majority of his case and much of his cross-examination on the very issues that the government attempted to preclude before trial as improper evidence.  Specifically, defendant elicited evidence that he: (a) had an associate teach "wrestling moves" to deputies in 2009 and 2010; (b) implemented an Office of Independent Review more than a decade before the federal investigation; (c) created a task force to review force incidents after the conspiracy to obstruct justice ended; (d) began a program, Education Based Incarceration, designed to provide schooling to inmates; (e) cooperated in other federal investigations; and (f) did

not instruct anyone to obstruct the federal investigation once the County hired an outside law firm to respond to federal grand jury subpoenas. Simply put, none of these items is probative of whether defendant intended to obstruct the federal grand jury investigation. Nor is the evidence relevant to rebut the government's theory that defendant obstructed the investigation because he felt the Sheriff's Department should police itself.

While defendant could have argued in the first trial that this evidence was admissible to rebut the "notice" evidence the government introduced in the original trial, the same is not true for the next trial. The government has informed defendant that it does not plan on introducing evidence that defendant had notice of the civil rights abuses in the jails in its case-in-chief. As a result, the government will not be calling Peter Eliasberg, Paulino Juarez-Ramirez, Mark Rosenbaum, or Robert Olmsted in its case-in-chief.[5]

The only reason for the evidence's introduction at the next trial is so that the defense can portray defendant as a good person and as a reformer, which has no relevance to this trial. "[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." United States v. Dobbs, 506 F.2d 445, 447 (5th Cir. 1975). See also United States v. Hedgcorth, 873 F.2d 1307, 1313 (9th Cir. 1989) (evidence of defendant's role as government intelligence officer properly excluded where offered to show that defendant was "patriotic," "pro-government," and unlikely to engage

---

[5] The government, however, will still call witnesses, such as Special Agent Leah Tanner, Special Agent David Dahle, Gilbert Michel, and William David Courson, who will testify about the abuse going on in the jail. This will not be for notice, but instead will be for other purposes, such as explaining the need for the federal investigation.

11

in acts of terrorism); <u>United States v. Reese</u>, 666 F.3d 1007, 1020 (7th Cir. 2012) ("Evidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment."); <u>United States v. Damti</u>, 109 F. App'x 454, 455 (2d Cir. 2004); <u>United States v. Santos</u>, 201 F.3d 953, 962 (7th Cir. 2000); <u>United States v. Scarpa</u>, 913 F.2d 993, 1010 (2d Cir. 1990). "For the same reason that prior 'bad acts' may not be used to show a predisposition to commit crimes, prior 'good acts' generally may not be used to show a predisposition not to commit crimes." <u>United States v. Dimora</u>, 750 F.3d 619, 630 (6th Cir. 2014).

Additionally, defendant should be precluded from seeking to elicit testimony regarding his non-obstruction or non-interference with the Sheriff's Department's responses to federal grand jury subpoenas after the conspiracy ended in September 2011. Defendant elicited such testimony during his trial in December 2016 and suggested that it showed a lack of intent to obstruct justice during the relevant time period of August-September 2011. As was established at trial, however, and as the defense is well aware, defendant was not in charge of compliance with the grand jury subpoenas. Instead, the Los Angeles County Board of Supervisors had retained outside counsel, Jones Day, to respond to the government's document requests. The law firm was overseeing the production to the grand jury, with the assistance of Sheriff's Department document custodians, who were several levels beneath defendant in the Department's hierarchy.

More to the point, defendant's inaction, in the form of a lack of interference with document production, is no defense to the conduct charged. "A defendant may not seek to establish his

12

innocence . . . through proof of absence of criminal acts on specific occasions." Scarpa, 913 F.2d at 1011 (internal quotation and citation omitted).  The indictment charges that defendant participated in a conspiracy to hide an inmate, tamper with witnesses, and intimidate an FBI agent.  Although the indictment lists as an overt act defendant's request to the U.S. Attorney's Office to withdraw the subpoenas, it does not charge defendant with failure to comply with the subpoenas.  Accordingly, the Sheriff's Department's later compliance with the subpoenas in 2012 and beyond has no bearing on whether defendant obstructed justice in August-September 2011.  Such evidence has little probative value, if any, and would do nothing but waste time and purposely mislead and confuse the jury.  Fed. R. Evid. 403.  Thus, such evidence, and any related argument, should be excluded from the upcoming trial.  See United States v. Dowie, 411 F. App'x 21, 27 (9th Cir. 2010) (trial court properly exercised discretion in excluding evidence of defendant's post-conspiracy cooperation because it was "of little probative value to his state of mind during the conspiracy"); Kohatsu v. United States, 351 F.2d 898, 904 (9th Cir. 1965); United States v. Radtke, 415 F.3d 826, 840-41 (8th Cir. 2005) ("[T]here is no doubt that self-serving exculpatory acts performed substantially after a defendant's wrongdoing is discovered are of minimal probative value as to his state of mind at the time of the alleged crime.").

Defendant only may (as he did last trial) call character witnesses to testify about defendant's pertinent character traits in the form of reputation or opinion testimony only.  He may not introduce evidence of specific acts under Rules 404, 405, and 608. See Michelson v. United States, 335 U.S. 469, 477 (1948); United

13

States v. Santana-Camacho, 931 F.2d 966, 968 (1st Cir. 1991). Any questions, evidence, or argument of defendant's specific "good acts" detailed above should be excluded.

**IV.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court:

1.  Bar defendant from wearing insignia, including the Sheriff's "star," at trial; and

2.  Preclude evidence and argument pertaining to defendant's "good acts" as detailed above.

14