Nathan J. Hochman, SBN 139137
Brianna Leigh Abrams, SBN 239474
MORGAN, LEWIS & BOCKIUS LLP
The Water Garden
Suite 2050 North
1601 Cloverfield Boulevard
Santa Monica, CA 90404-4082
Tel:    +1.310.255.9025
Fax:   +1.310.907.2025
e-mail: nathan.hochman@morganlewis.com
e-mail: brianna.abrams@morganlewis.com

Tinos Diamantatos, *Pro Hac Vice*
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601
Tel.: (312) 324-1000
Fax: +1.312.324.1001
e-mail: tinos.diamantatos@morganlewis.com

Attorneys for Defendant
LEROY BACA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LEROY BACA,<br><br>Defendant. | Case No. CR 16-66(A) - PA<br><br>DEFENDANT LEROY BACA'S OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE TO PRECLUDE DEFENDANT FROM WEARING HIS SHERIFF'S "STAR" LAPEL PIN AND TO EXCLUDE EVIDENCE OF "GOOD ACTS"<br><br>Hearing Date: TBD<br>Hearing Time: TBD<br>Location:    Courtroom of the Hon. Percy Anderson |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

CR 16-66(A) - PA

DB2/ 31039961.3

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................................... 1

II.  ARGUMENT ..................................................................................................... 5

  A.   Defendant Should Not Be Precluded from Wearing His Sheriff's Pin and Other Insignia at Trial ................................................................. 5

  B.   The Court Should Not Exclude The Evidence Characterized by the Government As "Good Works," "Remedial Measures," And "Cooperation" With Federal Grand Jury Requests ........................................................ 9

III. CONCLUSION ................................................................................................ 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brown v. Borg*,
    951 F.2d 1011 (9th Cir. 1991)................................................................................11

*Carey v. Musladin*,
    549 U.S. 70 (2006)................................................................................................6

*Edwards v. Domingo*,
    No. 1:11-CV-00689-JLT, 2014 WL 108530 (E.D. Cal. Jan. 9, 2014)....................12

*Holbrook v. Flynn*,
    475 U.S. 560 (1986)..............................................................................................6

*Martin v. State*,
    857 N.E.2d 1051, 2006 WL 3437653 (Ind. App. Nov. 30, 2006) (unpublished) ...................8, 9

*Montgomery v. Muller*,
    580 N.Y.S.2d 110 (App. Div. 1992) ........................................................................8

*Norris v. Risley*,
    878 F.2d 1178 (9th Cir. 1989)..........................................................................7, 8

*Norris v. Risley*,
    918 F.2d 828 (9th Cir. 1990)..................................................................................8

*Ruckman v. State*,
    109 S.W.3d 524 (Tex. App. Tyler 2000) .................................................................7

*State v. Graham*,
    132 Wash. App. 1022, 2006 WL 855812 (Div. 2 April 4, 2006) (unpublished) .......................8

*State v. Lord*,
    161 Wn.2d 276 (Wash. 2007) ................................................................................8

*United States v. Aguiar*,
    472 F.2d 553 (9th Cir. 1972). (Motion ) ..................................................................7

*United States v. Bradshaw*,
    690 F.2d 704 (9th Cir. 1982).................................................................................11

*United States v. Crenshaw*,
    698 F.2d 1060 (9th Cir. 1983)...............................................................................12

*United States v. Whitman*,
    771 F.2d 1348 (9th Cir. 1985)..........................................................................12, 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 31039961.3

*Wirsing v. Krzeminski,*
  213 N.W.2d 37 (Wis. 1973) ....................................................................................................7

**STATUTES**

425 U.S.C. 501 (1976) ..............................................................................................................6

**OTHER AUTHORITIES**

Federal Rule of Evidence 403 ............................................................................................12, 16

Federal Rule of Evidence 404(b) ..............................................................................................11

Federal Rules of Evidence 405 ...........................................................................................11, 12

Federal Rules of Evidence 608 ...........................................................................................11, 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 31039961.3

CR 16-66(A) - PA

Defendant LEROY BACA, by and through his attorneys of record, hereby submits his Opposition to the Government's Motions in Limine to Preclude Defendant From Effectively Testifying By Wearing Sheriff's "Star" Lapel Pin and To Exclude Evidence of Good Acts ("Motion").

## I.    **INTRODUCTION**

In the first trial, the Government presented two weeks of evidence, over 15 witnesses, and over 150 exhibits, and 11 out of 12 jurors found that it failed to meet its burden of proof.  Rather than acknowledge that such a failure was based on the insufficient evidence it introduced to prove Mr. Baca's guilt, the Government ascribes its failure to the almost mystical and talismanic power that a one-inch Sheriff's star lapel pin worn by Mr. Baca had over the jury and to a small slice of the evidence Mr. Baca presented that directly rebutted the Government's evidence on Mr. Baca's intent and motivation to obstruct an FBI investigation into civil rights violations in the county jails.

As it tries a second time to convict Mr. Baca on the same counts of conspiracy and obstruction of justice and adds the third count of false statement, expanding the time frame of the charges from August 18, 2011 to April 12, 2013, the Government seeks to have the Court order that Mr. Baca not be allowed to wear the one-inch lapel pin.  It believes -- without any evidence or law to support that belief -- that this one-inch lapel pin sends to the jury powerful smoke signals of "credibility" and "respectability" and unity with the current Sheriff's Department and can "inflame[] prejudices or sympathies of the jury."  Neither the law nor the evidence justifies these paranoid allegations or an order precluding Mr. Baca from wearing this one-inch lapel pin that he has regularly worn both before and after he retired from the Sheriff's Department in January 2014.

With regard to its other basis for evidence preclusion, the Government has notified the Court that it has changed its theory on how it intends to prove Mr. Baca's intent and motivation to obstruct the FBI investigation.  While at the first

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

DB2/ 31039961.3

CR 16-66(A) - PA

trial, the Government presented evidence that Mr. Baca was put on "notice" by the ACLU, Chaplain Ramirez, and Robert Olmsted about civil rights violations occurring in the jails, at this second trial it will not present this evidence. Instead, its theory of intent and motivation will center on Mr. Baca's not wanting to partner with the FBI in its investigation because of Mr. Baca's belief that the "police should police themselves." However, the Government still intends to introduce the highly prejudicial and inflammatory evidence of inmate beatings and abuse through the testimony of FBI agents Tanner and Dahle and former Deputy Sheriffs Michel and Courson, showing that such abuse occurred since approximately 2009 through 2011.

In its Motion in Limine, the Government seeks to distort and mislead the jury into believing that Mr. Baca essentially took no action at any point prior to August 18, 2011 (the start date of the conspiracy), September 26, 2011 (the end date of the conspiracy), or even prior to April 12, 2013 (the Government interview) to deal with these horrific instances of inmate beatings. The Government groups Mr. Baca's responses, which are highly relevant to Mr. Baca's intent and motivation NOT to obstruct an FBI investigation looking into deputy abuse and corruption, into a straw-man category of "good works" or "good acts" and hopes that by doing so the Court will then deem them all as impermissible character evidence. In particular, the Government seeks to preclude Mr. Baca from introducing the following evidence:

* The training provided by Commander Paul Pietrantoni in 2009-2011 to deputies at Men's Central Jail at Mr. Baca's request in response to allegations of excessive deputy force against inmates, aimed at reducing and minimizing force when dealing with inmates, and then expanded when Commander Pietrantoni became the Commander of Men's Central Jail in April 2012. Such evidence establishes Mr. Baca's lack of intent and motivation to obstruct the FBI (or any other agency like the ACLU) from looking at the problems in the jail that he was in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 31039961.3

2

CR 16-66(A) - PA

the process of directly addressing.  Moreover, if the Government's theory is that Mr. Baca believed that the Sheriff's Department should police itself, part of policing itself was implementing training programs, such as Commander Pietrantoni's, that internally addressed alleged deputy excessive force against inmates;

* Mr. Baca's involvement with establishing the Office of Independent Review ("OIR") in order to create an independent monitor run by a highly experienced former federal civil rights prosecutor to help police the Sheriff's Department; detect, address and report on any civil rights violations it found; and issue public reports about its efforts.  Such evidence is highly probative to rebutting the Government's charge that Mr. Baca believed that the Sheriff's Department should be the only one to police itself; Mr. Baca's involvement with the establishment and operation of OIR as an independent monitor of the Sheriff's Department directly contradicts this Government theory.

* Mr. Baca's creation of the Commanders Management Task Force in October 2011, which he staffed with senior level Sheriff's Department commanders with the assignment to improve the use of force policy, protocols and training to address inmate abuse issues.  Such evidence is highly probative to rebut the Government's allegations that Mr. Baca intended and was motivated to obstruct the FBI investigation into deputy abuse and corruption issues and then lied to minimize his role in the alleged obstruction.  If the Government is going to allege that Mr. Baca believed that the Sheriff's Department should police itself, then this task force, as well as the Jail Investigative Task Force established in September 2011, are relevant evidence to show how Mr. Baca intended the Sheriff's Department to police itself.

* Mr. Baca's involvement in creating education programs for inmates and deputies, starting in 2006 and expanded in the Men's Central Jail beginning in 2009-2010 through 2013.  These programs were designed, in part, to reduce deputy

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 31039961.3

3

CR 16-66(A) - PA

violence against inmates since providing inmates with something productive to do with their time and teaching deputies how to help inmates achieve these objectives significantly decreased situations where deputies needed to resort to violence against inmates. This evidence is similarly highly probative to rebut the Government's intent and motivation evidence that Mr. Baca wanted to obstruct an FBI investigation into deputy abuse issues; these issues were not hidden but were publicly discussed for years since 2009 and Mr. Baca continuously was taking action to address them, not bury them under the rug and hope that the FBI would not find out about them. Part of policing itself included establishing education programs to address inmate abuse issues.

   * Mr. Baca's cooperation with the U.S. Department of Justice's ("DOJ's") Civil Rights Division's investigation into civil rights violations of the Sheriff's Department against Section 8 housing occupants **occurring at the exact same time as the conspiracy**. Indeed, Mr. Baca's cooperation with the DOJ's Civil Rights Division was acknowledged on **August 19, 2011** at a Los Angeles press conference he attended with Michael Gennaco, the head of OIR, and the head of the Civil Rights Division, Assistant Attorney General Thomas Perez. At that conference, Assistant Attorney General Perez praised Mr. Baca for his cooperation with DOJ's civil rights investigation. *See* Ex. 1 (a true and correct copy of the *Los Angeles Times* article and photograph of Mr. Baca and Assistant Attorney General Perez at the August 19, 2011 press conference). This evidence is extremely relevant and probative to rebut the Government's argument that Mr. Baca did not want to partner with the DOJ (which the FBI and U.S. Attorney's Office are part of) in civil rights investigations involving the Sheriff's Department but wanted to just have the Sheriff's Department police itself.

   * Mr. Baca did not instruct anyone at the Sheriff's Department to obstruct production of Sheriff's Department evidence pursuant to federal grand jury subpoenas once the County hired an outside law firm to respond to the federal

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 31039961.3

4

CR 16-66(A) - PA

grand jury subpoenas. Since this case directly involves obstruction of a federal grand jury investigation looking into civil rights violations at the Sheriff's Department and since the federal grand jury issued subpoenas directly to the Sheriff's Department (not the County) for production of records in connection with that investigation, Mr. Baca's efforts in complying or not complying with those subpoenas starting on when they were received in June 2011 through October 2011 are highly relevant in determining whether he intended to or was motivated to obstruct the federal grand jury investigation involving those precise subpoenas.

Accordingly, since the Government has produced no evidence or law justifying the Court's precluding Mr. Baca from wearing a one-inch lapel pin at trial and since the evidence the Government seeks to exclude is highly probative and relevant to Mr. Baca's intent and motivation not to obstruct an FBI investigation into civil rights violations by the Sheriff's Department and then lie to cover up his role, the Government's Motion in Limine should be denied.

## II. **ARGUMENT**

### A. **Defendant Should Not Be Precluded from Wearing His Sheriff's Pin and Other Insignia at Trial**

In its Motion, the Government argues that the Court should exercise its discretion to preclude Mr. Baca from wearing his one-inch Sheriff's "star" lapel pin at trial. The Government claims that doing so would "promote fairness and 'expeditious development of the facts unencumbered by irrelevancies'" and would ensure that evidence "come from the witness stand in a public courtroom." (Motion at 6.) The Government spins its story that by wearing this pin, Mr. Baca was "cloaking himself in the aura of credibility and respectability that comes with holding [the office of Sheriff]" and that by wearing the pin, Mr. Baca signaled to the jury that, "even today . . . the County and the Sheriff's Department sanction his acts that are charged as obstruction." (Motion at 7.) The Government stretches its claim further by contending that this "false impression" was bolstered by a few

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 31039961.3

5

CR 16-66(A) - PA

unnamed spectators in the gallery and one on the witness stand wearing similar lapel pins. (Motion at 7.) To support this notion, the Government relies on **no actual evidence** establishing any of its claims of prejudice on the jury. For its scant legal support, it looks primarily to a number of state court cases holding that the defendants, who were active military members, could not wear their full military uniforms (as opposed to a one-inch lapel pin) during their civilian criminal trials and to one state law case precluding a prosecutor from wearing an American flag lapel pin because of the potential prejudicial effect of such actions. (Motion at 8-9.) Ultimately, the Government argues that it will be similarly prejudiced if the Sheriff is allowed to wear his one-inch Sheriff's "star" lapel pin. Devoid of evidence and legal precedent, the Government's paranoid claim should be denied.

    1.  There Is No Legal Basis To Preclude Mr. Baca From Wearing The One-Inch Lapel Pin

The Government cites no authority for the proposition that a defendant in a criminal trial should not be permitted to wear a small one-inch lapel pin on the breast of his suit. There is no particular rule or case in the Ninth Circuit, or the United States Supreme Court, proscribing the donning of such a small pin during trial.

To the extent that courts have addressed this issue, their focus has been on the defendant's right to a fair trial as a matter of due process guaranteed by the Sixth and Fourteenth Amendments. Specifically, is a courtroom practice "inherently prejudicial" to a defendant's right to a fair public trial? *Carey v. Musladin*, 549 U.S. 70 (2006) (defendant not deprived of right to an impartial jury when courtroom spectators wear buttons showing a picture of the deceased); *Holbrook v. Flynn*, 475 U.S. 560 (1986) (the presence of four uniformed and armed state troopers, sitting directly behind defendants for duration of trial, did not deny defendants due process); *Estelle v. Williams*, 425 U.S.C. 501 (1976) (inherently prejudicial for state to force defendant to wear an orange prison jumpsuit in front of

the jury).

Remarkably, here, the Government is apparently arguing that by wearing a small one-inch lapel pin at trial, Mr. Baca is violating the Government's constitutional right to due process.  Such a right, of course, does not exist.

Courts in other jurisdictions have permitted defendants to wear police uniforms during trial. *See, e.g., Wirsing v. Krzeminski*, 213 N.W.2d 37, 44 (Wis. 1973) (defendant police officer permitted to testify wearing uniform with American flag patch).  Prosecutors have been permitted to wear lapel pins at trial. *See, e.g., Ruckman v. State*, 109 S.W.3d 524, 532 (Tex. App. Tyler 2000) (not error to allow district attorney and assistant district attorney to wear lapel pins in support of children at defendant's trial for the offense of aggravated sexual assault of a child); There is no legal reason to prohibit Mr. Baca from wearing a small one-inch lapel he had worn before and after he retired from the Sheriff's Department in January 2014.

The primary case cited by the Government for the proposition that barring Mr. Baca from wearing a lapel pin at trial would promote fairness and "expeditious development of the facts unencumbered by irrelevancies[]" is *United States v. Aguiar*, 472 F.2d 553, 555 (9th Cir. 1972).  (Motion at 6).  That quotation simply does <u>not exist</u> in *Aguiar*.  Moreover, in its short two-page opinion, the Court did <u>not</u> at all address the attire of the defendant at trial in the context of a court's discretion to provide an atmosphere for a fair trial.

Next, the Government cites arbitrary philosophical quotations from *Norris v. Risley*, 878 F.2d 1178, 1181 (9th Cir. 1989), apparently for the proposition that the prior jury was "impregnated by the environing atmosphere," i.e., Mr. Baca's one-inch lapel pin was the foremost basis upon which 11 out of 12 jurors determined that Mr. Baca was not guilty of the charges against him.  (Motion at 6-7).  The Government, however, failed to apprise this Court that the issue in *Norris* was whether permitting twenty women to wear "Women Against Rape" buttons while

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 31039961.3

7

CR 16-66(A) - PA

sitting in the gallery of a sexual assault trial would pose an "unacceptable risk to a fair trial." 878 F.2d at 1182. Upon remand, the trial court interviewed some of the jurors from Mr. Norris's trial—three of whom acknowledged they were aware of the buttons—and ultimately determined that the large and boldly highlighted buttons tainted Mr. Norris's right to a fair trial. *Norris v. Risley*, 918 F.2d 828, 834 (9th Cir. 1990).[1] Mr. Baca's one-inch lapel pin that he wore while sitting some 20-25 feet away from the jury was barely visible to the jury, if at all. Any argument that the one-inch lapel pin had any impact on the jury is speculative and unfounded.

Other state cases cited by the Government similarly fail to provide any precedent for the Court to preclude Mr. Baca from wearing his one-inch lapel pin. In *Montgomery v. Muller*, 580 N.Y.S.2d 110 (App. Div. 1992), cited by the Government (Motion at 9), the state court ordered a prosecutor to refrain from wearing an American flag lapel pin due to the "sense of national pride heightened by the Persian Gulf conflict" ongoing at the time of the trial. The Government failed to direct the Court to this important factor upon which the court in *Montgomery* anchored its decision.

In *State v. Graham*, the court found that any perceived error by the trial court in refusing to allow the defendant to wear his military uniform at trial was harmless error. 132 Wash. App. 1022, 2006 WL 855812, at *4-5 (Div. 2 April 4, 2006) (unpublished). Thus, the court "decline[d] to hold . . . that a defendant has the right to wear his military uniform when he is criminally tried as a civilian." *Id.* Here, Mr. Baca is not seeking to wear his Sheriff's uniform but a one-inch lapel pin.

In *Martin v. State*, the state court ordered the defendant to remove his military uniform after the trial had already commenced and the jury had observed the defendant in his uniform. 857 N.E.2d 1051, 2006 WL 3437653, at *3 (Ind.

---

[1] In a recent case involving victim picture buttons worn by supporters of a victim, the Washington Supreme Court determined "there is no per se 'inherent prejudice [to] defendant's right to a fair trial from the wearing of buttons or other displays.'" *State v. Lord*, 161 Wn.2d 276, 290 (Wash. 2007) (internal citations omitted).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 31039961.3

8

CR 16-66(A) - PA

App. Nov. 30, 2006) (unpublished).  The court then instructed the jury not to consider the wearing of the uniform or the court's instruction not to wear the uniform as it determined the facts. *Id*.  This unpublished state court opinion has very little relation to the instant matter.

The Government's reliance on rank speculation instead of evidence for its argument is highlighted in its concession that "some jurors may view the Sheriff's pin with prejudice and not reverence. . ."  (Motion at 9)  Thus, the Government's allegation that a small one-inch lapel pin "inflamed [the] prejudices or sympathies of the jury" (Motion at 9, n.4) is supported by neither the evidence nor the law.  As such, the Government's request to preclude Mr. Baca from wearing his one-inch lapel pin at trial should be denied.

**B.** **The Court Should Not Exclude The Evidence Characterized by the Government As "Good Works," "Remedial Measures," And "Cooperation" With Federal Grand Jury Requests**

1. The Government Alleges a New Theory Of Mr. Baca's Alleged Motivation In An Attempt to Make Certain Evidence Irrelevant.

In its Motion, the Government offers a seemingly new theory as to what motivated Mr. Baca to allegedly obstruct the federal grand jury investigation into civil rights abuses in the jails and then lie about his role almost two years later.  The Government claims that Mr. Baca obstructed the investigation because "he felt the Sheriff's department should police itself."  (Motion at 11).  The Government alleges that this new theory of motive renders the rebuttal evidence that was properly admitted in the first trial (and now the Government seeks to exclude) irrelevant in light of its decision not to introduce evidence that Mr. Baca was on "notice" of the civil rights abuses in the jails, including not calling ACLU witnesses, Chaplain Ramirez, and Robert Olmsted.  (Motion at 11)[2].  Through its

---

[2] "The Government, however, will still call witnesses, such as Special Agent Leah Tanner, Special Agent David Dahle, Gilbert Michel, and William David Courson, who will testify about the abuse going on in the jail. This will not be for notice, but instead will be for other purposes, such as explaining the need for the federal investigation." (Motion at 11, n. 5). To the extent the Government uses these

broad sweeping Motion, the Government now seeks to exclude evidence of what it characterizes as Mr. Baca's "'good works,' remedial measures, and 'cooperation' with the federal grand jury investigation post-dating the life of the conspiracy." (Motion at 10).  Specifically, the Government seeks to exclude evidence that Mr. Baca:

> (a) had an associate teach "wrestling moves" to deputies in 2009 and 2010; (b) implemented an Office of Independent Review more than a decade before the federal investigation; (c) created a task force to review force incidents after the conspiracy to obstruct justice ended; (d) began a program, Education Based Incarceration, designed to provide schooling to inmates; (e) cooperated in other federal investigations; and (f) did not instruct anyone to obstruct the federal investigation once the County hired an outside law firm to respond to federal grand jury subpoenas.

(Motion at 10-11).

The Government argues that this evidence should be precluded because none of it "is probative of whether defendant intended to obstruct the federal grand jury investigation," nor is it "relevant to rebut the government's theory that defendant obstructed the investigation because he felt the Sheriff's Department should police itself."  (Motion at 11).  Instead, the Government argues that the "only reason" this evidence of other acts by Mr. Baca is being offered is to portray Mr. Baca as a "good person and a reformer," and accordingly, constitutes improper character evidence under Federal Rules of Evidence 404, 405, and 608.  (Motion at 11).  As elaborated below, the evidence the Government seeks to preclude is highly relevant and

---

witnesses to elicit testimony of deputy abuse in the Sheriff's Department jails, the Government opens the door for the measures that Mr. Baca put in place to address this abuse.

probative to rebut the Government's theory of intent and motivation to obstruct justice by showing how Mr. Baca did not feel that only the Sheriff's Department should police itself; by demonstrating how Mr. Baca sought to partner with the DOJ in DOJ civil rights investigations and federal grand jury investigations of the Sheriff's Department; and by establishing how Mr. Baca implemented measures to directly address civil rights violations occurring in Sheriff Department jails as part of policing itself.

> 2. The Evidence The Government Seeks to Exclude Is Relevant And Properly Offered for A Non-Character Purpose

The Government is simply incorrect in its characterization of the evidence pertaining to Mr. Baca's actions as improper character evidence.  Under Federal Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith" but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. of Evid. 404(b).  "Rule 404(b) is one of **inclusion** that admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove **only criminal disposition**."  *United States v. Bradshaw*, 690 F.2d 704, 708 (9th Cir. 1982) (citations and quotations omitted; emphasis added).  Here, evidence of the various acts by Mr. Baca that the Government seeks to exclude bears directly on his lack of intent or motive to commit the obstruction charged or to make false statements concerning such obstruction.

Motive is material evidence that a jury may properly consider in deciding whether the defendant committed the crime charged.  *Brown v. Borg*, 951 F.2d 1011, 1016 (9th Cir. 1991).  "Motive, or lack of motive, is always relevant in a criminal prosecution."  *Edwards v. Domingo*, No. 1:11-CV-00689-JLT, 2014 WL 108530, at *11 (E.D. Cal. Jan. 9, 2014).  Indeed, while courts have discretion to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 31039961.3

11

CR 16-66(A) - PA

admit or deny motive evidence, once the Government produces evidence of a defendant's intent or motive, the defendant has a constitutional right under both the due process and confrontation clauses to rebut such evidence, and to deny a defendant this right is reversible error. *United States v. Whitman*, 771 F.2d 1348, 1351 (9th Cir. 1985) (**reversing and remanding** for a new trial and holding that while "[t]he district court was free to exclude evidence of appellant's motive, . . . once the government produced evidence from which the jury could reasonably infer . . . motive, appellant had the right to rebut this evidence"); *United States v. Crenshaw*, 698 F.2d 1060, 1066 (9th Cir. 1983) (**reversing** lower court and holding that while evidence of the defendant planning a robbery offered as proof of defendant's motive to pilot a getaway plane may have been irrelevant at the start of trial, once the government raised the issue the defendant should have been permitted to rebut it).

Further, because Mr. Baca is not offering the evidence the Government seeks to exclude to prove character propensity, Rules 405 and 608, which concern the means by which character evidence may be offered, are not implicated. Nor is Rule 403 implicated since the highly probative nature of Mr. Baca's evidence is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Indeed, should Mr. Baca not be able to present this evidence, the jury will be unfairly prejudiced, confused and misled by the Government's one-sided presentation of the evidence on the key issues at trial.

a.    Evidence of Measures Implemented By Mr. Baca To Directly Address Improper Uses of Force Within The Jails Is Directly Relevant To Rebutting and Contextualizing The Government's Theory of Motive.

Under the Government's new theory, Mr. Baca obstructed the grand jury investigation into abuses in the jails because he believed that the Sheriff's Department should "police itself" regarding such abuses to the exclusion of other

policing organizations, particularly the FBI. Mr. Baca, however, should be allowed to offer evidence that explains what the concept of "police itself" meant to him and actions he took for the Sheriff's Department to police itself. Examples of actions taken by Mr. Baca that provide context for this supposed belief are integral to Mr. Baca's constitutional right to rebut the Government's theory of motive.

Further, evidence that Mr. Baca took affirmative steps to directly address the abuses in the jails and police itself by 1) having Commander Paul Pietrantoni train deputies in a series of techniques to reduce excessive force when interacting with inmates; 2) implementing programs such as Education Based Incarceration that had, in part, the purpose and effect of reducing force within the jails; and 3) implementing a Jail Investigative Task Force and a Commander's Management Task Force to review specific instances of allegedly excessive force by deputies and to reform use-of-force policies, offers insight for the jury in evaluating the statement that Mr. Baca believed "the Sheriff's department should police itself." To the extent Mr. Baca believed that the Department should police itself, it was through the above-mentioned policy reforms and measures that Mr. Baca believed he could deal with the force issues internally—not by obstructing a grand jury investigation into such abuses.

For example, beginning in early October 2011, days after the period when the Government argues the alleged obstruction ended, Mr. Baca created a task force, the Commanders Management Task Force ("CMTF"), whose main purpose was to work with third-party watchdog organizations, such as the ACLU, Merrick Bobb, and the Citizen's Commission on Jail Violence, to implement specific recommendations from those organizations pertaining to force in the jails. Two of these organizations, the ACLU and Merrick Bobb, had been serving as watchdogs of the jails for years before and during the period of the alleged obstruction, and many of the recommendations from these two organizations predated the alleged obstruction and were already being addressed by the Sheriff's department prior to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

CR 16-66(A) - PA

DB2/ 31039961.3

the alleged obstruction.

Mr. Baca should be permitted to present evidence in direct contrast to the Government's theory of intent and motive.  Such evidence includes the fact that Mr. Baca assigned high-ranking LASD members to work hand-in-hand with these organizations to implement and track their recommendations.  Mr. Baca's and the Sheriff's Department's working closely with these organizations for years before, during and after the alleged conspiracy time frame is directly relevant on Mr. Baca's lack of motive to obstruct the investigation and subsequently lie about such obstruction.  Without this information, the jury will be deprived of crucial facts integral to Mr. Baca's rebuttal of the Government's motive and intent evidence.

b.    Mr. Baca's Establishment of the Office of Independent Review Directly Rebuts The Government's Theory That Mr. Baca Obstructed Because He Believed The Sheriff's Department Should Police Itself.

With little explanation, the Government seeks to preclude Mr. Baca from offering evidence that he established OIR to provide independent oversight of the Sheriff's Department, apparently taking issue with the date upon which OIR was established.  Regardless of when OIR was established by Mr. Baca, Mr. Baca's granting an independent oversight body the necessary access to directly review in real time and publicly critique the Sheriff's Department's actions -- unique in the nation at the time -- is in direct contrast with the Government's theory that Mr. Baca believed the Sheriff's Department should police itself.  OIR was in existence during the time period of all the charged conduct and was working with the Sheriff's Department and other third parties like the ACLU and a federal judge to address the very issues that were the subject of the grand jury investigation.  Further, defense witness Michael Gennaco, the head of OIR, was present at many of the key meetings that form the basis of the Government's obstruction and conspiracy charges against Mr. Baca.  Given the Government's new theory, evidence regarding Mr. Baca's establishment of OIR, which was properly admitted

in the first trial, is inextricably intertwined with the Government's theory of motive and highly probative in rebutting this theory.  To preclude Mr. Baca from offering this evidence would deny Mr. Baca of his constitutional right to rebut the Government's motive evidence and would constitute reversible error.  *See Whitman*, 771 F.2d at 1351.

          c.       Evidence of Mr. Baca's Contemporaneous Compliance With Another DOJ Federal Civil Rights Investigation Of The Sheriff's Department During The Time Of The Alleged Obstruction Also Directly Rebuts The Government's New Theory

The fact that Mr. Baca was cooperating with a DOJ Civil Rights Division's federal civil rights investigation of the Sheriff's Department at the same exact time of the alleged obstruction directly rebuts the Government's theory that Mr. Baca believed that only the Sheriff's Department should police itself. In fact, evidence of that DOJ civil rights investigation, which held a press conference on one of the critical days at issue in the alleged conspiracy (August 19, 2011),  is manifestly probative of Mr. Baca's intent and motive to cooperate with, not obstruct, federal civil rights investigations of the Sheriff's Department. *See* Ex. 1.  Mr. Baca should be allowed to present evidence to the jury to rebut the Government's theory and present this counter perspective.

          d.       Mr. Baca's Compliance With Grand jury Subpoenas In This Investigation Bears Directly On His Lack Of Motive Or Intent To Obstruct The Grand Jury Investigation

The Government also seeks to exclude evidence that Mr. Baca did not take steps to preclude the Sheriff's Department from responding to the federal grand jury subpoenas, arguing that the Sheriff's Department's "compliance with the subpoenas in 2012 and beyond has no bearing on whether defendant obstructed justice in August-September 2011" and thus, the inclusion of such evidence is more prejudicial than probative under Rule 403.  (Motion at 13.)

First, the federal grand jury subpoenas that were served on the Sheriff's Department -- not the County -- relating to its investigation into civil rights

violations started in June 2011 and continued to at least October 2011. The earliest that the County hired counsel to assist the Sheriff's Department to comply with the subpoenas was approximately October 13, 2011. Before the hiring of counsel on October 13, 2011 (which includes the conspiracy time frame), Mr. Baca had the power as Sheriff to order anyone in the Sheriff's Department to comply or not comply with producing documents responsive to the subpoenas. Even after October 13, 2011, the outside counsel did not control the Sheriff's Department; it merely represented the Sheriff's Department in connection with its production of responsive documentation to the subpoenas. The power to command anyone in the Department to produce or not produce any document still rested with Mr. Baca at the time.

Second, had Mr. Baca given orders not to comply with the subpoenas, certainly the Government would be arguing that such orders were very relevant to the issue of obstruction of justice. Similarly, his not ordering anyone to in any way delete, modify, alter or destroy Sheriff Department records responsive to the grand jury subpoenas from June 2011 through the conspiracy period in August-September 2011, and through his interview in April 2013, is very relevant to rebutting the Government's claims that Mr. Baca intended to obstruct the federal grand jury investigation and then lie about his role in the obstruction.

## III. **CONCLUSION**

For the foregoing reasons, Mr. Baca respectfully requests that the Court deny the Government's motion to preclude Mr. Baca from wearing a one-inch Sheriff star lapel pin at trial as such motion is bereft of evidence or law in support of it. Similarly, Mr. Baca respectfully requests that the Court deny the Government's motion to preclude evidence of Mr. Baca's efforts to have the Sheriff Department police itself (e.g., training deputies to reduce excessive force, instituting task forces or education programs to address and reduce excessive use of force; establishing OIR as an independent monitor of the Sheriff's Department); to

partner with DOJ on civil rights investigations (e.g., with DOJ Civil Rights Division during the exact same time frame as the conspiracy); and to comply with federal grand jury subpoenas at issue in the case.  All of this evidence is highly relevant to rebut the Government's theories of intent and motive.


Dated:        January 25, 2017              MORGAN, LEWIS & BOCKIUS LLP



By /s/ *Nathan J. Hochman*
Nathan Hochman
Tinos Diamantatos
Brianna Abrams
Attorneys for Defendant
LEROY BACA

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

17                              CR 16-66(A) - PA

DB2/ 31039961.3