EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No. 290409)
Chief, Public Corruption & Civil Rights Section
LIZABETH A. RHODES (Cal. Bar No. 155299)
Chief, General Crimes Section
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
Assistant United States Attorney
Major Frauds Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0284/3541/4849
    Facsimile: (213) 894-6436
    E-mail:    Brandon.Fox@usdoj.gov
              Lizabeth.Rhodes@usdoj.gov
              Eddie.Jauregui@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>             v.<br><br>LEROY BACA,<br><br>        Defendant. | No. CR 16-66(A)-PA<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO OF THE FIRST SUPERSEDING INDICTMENT (REDACTED); EXHIBITS; [PROPOSED] ORDER DENYING DEFENDANT'S MOTION AND CERTIFYING CLAIMS AS FRIVOLOUS<br><br>Hearing Date: TBD<br>Hearing Time: TBD<br>Location:    Courtroom of the<br>                Hon. Percy Anderson |
|---|---|

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brandon D. Fox, Lizabeth A. Rhodes, and Eddie A. Jauregui, hereby files its

opposition to defendant's motion to dismiss counts one and two of the first superseding indictment.

Defendant's motion is meritless and should be denied and deemed frivolous.  This opposition is based upon the attached memorandum of points and authorities, the exhibits, the separately filed under seal documents, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 25, 2017                 Respectfully submitted,

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


            /s/
BRANDON D. FOX
LIZABETH A. RHODES
EDDIE A. JAUREGUI
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                           PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   STATEMENT OF FACTS.............................................1

III.  ARGUMENT......................................................7

      A.    Court's Declaration of a Mistrial Supported by
            Manifest Necessity......................................7

      B.    Court Not Required to Exercise Any of Defense's
            "Options," Nor Was There Reason to Do So...............11

IV.   CONCLUSION...................................................12

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

**FEDERAL CASES**

Arizona v. Washington,
        434 U.S. 497 (1978)...........................................7

Blueford v. Arkansas,
        132 S. Ct. 2044 (2012).......................................11

Chuman v. Wright,
        960 F.2d 104 (9th Cir. 1992).................................13

Harrison v. Gillespie,
        640 F.3d 888 (9th Cir. 2011)........................1, 8, 9, 11

Renico v. Lett,
        559 U.S. 766 (2010)..............................7, 8, 11, 12

Renteria v. Adams,
        526 F. App'x 724 (9th Cir. 2013)..........................9, 12

Rogers v. United States,
        609 F.2d 1315 (9th Cir. 1979)................................8

United States v. Evanston,
        651 F.3d 1080 (9th Cir. 2011)................................8

United States v. Perez,
        22 U.S.  (1824).............................................1, 7

United States v. Razmilovic,
        507 F.3d 130 (2d Cir. 2007)...............................9, 10

United States v. See,
        505 F.2d 845 (9th Cir. 1974).................................8

United States v. Wills,
        88 F.3d 704 (9th Cir. 1996)..................................11

United States v. Young,
        585 F. App'x 932, 933 (9th Cir. 2014)........................12

ii

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   INTRODUCTION**

Defendant has filed a frivolous motion to dismiss Counts One and Two of the first superseding indictment on Double Jeopardy grounds. As defendant knows, having cited some of the controlling Supreme Court and Ninth Circuit cases (while ignoring others), it is beyond dispute that a "a retrial following a hung jury does not violate the Double Jeopardy Clause" of the Constitution and that "a trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial."  <u>Harrison v. Gillespie</u>, 640 F.3d 888, 901 (9th Cir. 2011) (internal quotations and citations omitted). Nevertheless, defendant contends that he cannot be retried on Counts One and Two because the Court's prior mistrial order was not "manifestly necessary."  (Def.'s Mot. at 6.)  As explained below, defendant's argument is foreclosed by the weight of legal precedent that goes back 200 years, see <u>United States v. Perez</u>, 22 U.S. 479 (1824), and continues to be controlling law.  The Court should deny defendant's motion and deem it frivolous.

**II.  STATEMENT OF FACTS**

On August 8, 2016, a grand jury charged defendant in a superseding indictment with conspiring to obstruct justice, in violation of 18 U.S.C. § 371 (Count One); obstruction of justice, in violation of 18 U.S.C. § 1503(a) (Count Two); and making false statements, in violation of 18 U.S.C. § 1001(a)(2) (Count Three). Shortly before the commencement of trial on December 5, 2016, the Court severed the counts and defendant proceeded to trial solely on Counts One and Two.

A jury was empaneled and sworn on December 7, 2016, and the government called its first witness that day.  On December 15, 2016, after six days of presentation, the government rested.[1]  The defense began its case the same day and rested on December 16.  Closing arguments were delivered on December 19, and the jury then began deliberating.

Over the course of the next four days, the jury deliberated for approximately 24 hours.  In that time period, the jury sent multiple notes to the Court.  On December 20, 2016, the jury requested that twelve copies of the trial indictment be sent to the jury room; asked to see the video footage of Sgt. Scott Craig and Sgt. Maricela Long's approach of FBI Special Agent Leah Marx; and requested a read-back of the testimony of three trial witnesses.  (Dkt. 218, 224.)  Later the same day, the jury sought clarification on the Court's instruction regarding the Sheriff's Department's ability to investigate federal agents.  (Dkt. 226.)  After receiving the first of three read-backs, the jury withdrew its request for further read-backs and resumed deliberations.  (Dkt. 228.)

On December 21, 2016, the jury sent another note, indicating that it changed its mind and asked to receive a read-back of the testimony of former Assistant Sheriff Cecil Rhambo.  (Dkt. 214.)  The jury expressly asked to receive Mr. Rhambo's testimony in both the prosecution and defense cases (as Mr. Rhambo was called in both).  That read-back was provided.

_____

[1] The Court was "dark" on Monday, December 12, 2016.



be

Later that afternoon, the Court reconvened the parties and reported that it had received another note, this time from the foreperson.

4

Addressing the full panel of jurors, the Court acknowledged that it had received a note indicating that the jury believed "at this point that it is unable to reach a unanimous verdict on Counts 1 and 2." (See Ex. B, Tr. of Proceedings in Open Court on Dec. 22, 2016, at 18:15-18.)  The Court then identified the foreperson and asked: "In your opinion, is the jury unable to reach a verdict as to one or more counts?"  The foreperson responded, "Yes." (Id. at 19:1-3.)  The Court then asked the remainder of the jurors if any juror disagreed with the foreperson's assessment; not one juror raised a hand. (Id. at 19:4-10.)  The Court followed by asking the foreperson: "Sir, is there a reasonable probability that the jury could reach a unanimous verdict if sent back into the jury room for further deliberations?" (Id. at 19:10-13.)  The foreperson answered, "No, Your Honor." (Id. at 19:14.)  When the jury as a whole was asked this same question ("Do any of you believe there is a reasonable probability that the jury can reach a unanimous verdict if sent back into the jury room for further deliberations?"), not one juror raised a hand. (Id. at 16-23.)

5

████████████████████████████████████████████████████
████████████████████████████   ████████████████   ██████
████████████████████████████████████████████████████
████████████████████████████   The Court then found the jury to be hopelessly deadlocked and discharged the jury.  (Ex. B, Tr. of Proceedings in Open Court on Dec. 22, 2016 at 22:7-10.)

The Court explained that its mistrial order was based on the following facts: (1) the length of the trial, (2) the length of jury deliberations, (3) the notes that were received from the individual jurors, as well as the foreperson, (4) the jurors' responses to the Court's questions; (5) the arguments of counsel; (6) the effects of exhaustion; (6) the potentially coercive effects of continuing deliberations; and (7) the relative simplicity of the case ("just a question of determining the intent").  (Id. at 25:7-26:8; see also Ex. A, Tr. of Proceedings Under Seal on Dec. 22, 2016 at 49:16-21.) The Court found that "taking all those factors into account" there was a "manifest necessity for a mistrial in this case."  (Tr. of Open Proceedings at 26:2-4.)  The Court then set a status conference for January 10, 2017.

On January 10, 2017, on the government's motion, the Court rejoined all three counts in the indictment, and set a trial date of February 21, 2017 on all counts.  On January 18, 2017, defendant moved to dismiss Counts One and Two on the ground that the Court's mistrial order was "not manifestly necessary" and that subjecting him to retrial on those counts would violate his constitutional rights. (Def.'s Mot. at 6.)

**III. ARGUMENT**

There is no double jeopardy bar to retrying defendant on Counts One and Two.  Because defendant "has not been convicted or acquitted," he "may again be put upon his defence."  <u>Perez</u>, 22 U.S. at 580.

Defendant's argument to the contrary is meritless.  A jury deadlock has long been considered the "classic basis" for establishing manifest necessity for a mistrial.  <u>Arizona v. Washington</u>, 434 U.S. 497, 509 (1978); <u>Perez</u>, 22 U.S. at 580.  Moreover, the Supreme Court has consistently affirmed that the decision whether to grant a mistrial is reserved to the "broad discretion of the trial judge," and that decision is entitled to "great deference" when a mistrial is declared on the basis of a jury deadlock.  <u>Renico v. Lett</u>, 559 U.S. 766, 774 (2010) (internal quotations and citation omitted).  Here, the Court considered all of the relevant facts before finding a manifest necessity for a mistrial and it properly exercised its discretion.  Defendant's motion should be denied.

    **A.    Court's Declaration of a Mistrial Supported by Manifest Necessity**

The Court's decision to declare a mistrial was based on its belief that the jury was hopelessly deadlocked.  As defendant concedes, <u>see</u> Def. Mot. at 5, there is "no rigid formula" for deciding whether a jury deadlock warrants a mistrial.  <u>See</u> <u>Renico</u>, 559 U.S. at 775 (noting also that judges declaring a mistrial are not required to make explicit findings of "manifest necessity," nor "articulate on the record all the factors which informed the deliberate exercise of [their] discretion").  Judges are not required

to force a jury to deliberate for a mandatory period of time; question jurors individually; consult with the prosecutor or defense counsel; issue supplementary jury instructions; or consider any other means of breaking a jury impasse.  See id.; see also United States v. Evanston, 651 F.3d 1080, 1091 (9th Cir. 2011) ("[A] trial judge is not required to consider or employ any alternatives to declaring a mistrial when a jury reports it is at an impasse, because conceivable alternatives present a serious risk of coercing jurors.") (emphasis in original) (internal quotations and citation omitted).

Nevertheless, the Ninth Circuit has outlined certain factors that are potentially relevant in deciding whether a jury is hopelessly deadlocked.  See Harrison, 640 F.3d at 905.  Those factors include "the jury's collective opinion that it cannot agree, the length of the trial and the complexity of the issues, the length of time the jury has deliberated, whether the defendant has made a timely objection to the mistrial, and the effects of exhaustion or coercion on the jury."  Id.  "The crucial factor is the jury's statement that it cannot agree."  Rogers v. United States, 609 F.2d 1315, 1317 (9th Cir. 1979); see also United States v. See, 505 F.2d 845, 851 (9th Cir. 1974) ("The crucial factor in determining the probability of agreement is a statement from the jury that it is hopelessly deadlocked.") (internal quotations and citation omitted).

The Court here considered each of these potential factors.  The Court expressly stated that it had considered the juror's notes and statements; the jurors' responses to the Court's inquiries on the issue of the deadlock (and their unanimous agreement that they would not be able reach a verdict); the length of the trial; the length of time the jury deliberated; the arguments of counsel; the complexity

8

of the issues; and the potentially coercive effects of continuing deliberations, among other facts.  (See Tr. of Unsealed Proceedings at 25:7-26:8; see also Tr. of Sealed Proceedings at 39:14-24; 41:4-15; 43:7-15; 49:16-21.)[2]  In other words, the Court followed the Ninth Circuit's guidance to the letter, see Harrison, 640 F.3d at 905, and it matters not that the Court declined to exercise defendant's proposed "options."  See id., 640 F.3d at 902 ("The Supreme Court has never adopted a per se rule regarding trial judges' response to deadlocked juries.  Instead, the Court has emphasized the importance of deferring to the trial judge's discretion in cases involving deadlocked juries.")

In declaring a mistrial on the basis of a hopelessly deadlocked jury, the Court was on as solid legal footing as there is.  As the Ninth Circuit has recognized, the Supreme Court has never overturned a trial court's declaration of a mistrial on the ground that the manifest necessity standard has not been met, see Renteria v. Adams, 526 F. App'x 724, 725 (9th Cir. 2013), and defendant has not cited a single Ninth Circuit case so holding.  Even the Second Circuit case cited by defendant in which the court found a lack of "manifest necessity," United States v. Razmilovic, 507 F.3d 130 (2d Cir. 2007), recognized that trial judges should be given wide latitude in determining whether there is a manifest necessity for a mistrial due to a genuinely deadlocked jury.  Razmilovic, 507 F.3d at 137 ("We grant particularly broad discretion in reviewing the determination by

---

[2] The Court further found that the ends of justice would be served by declaring a mistrial and "otherwise, in the Court's view, the ends of public justice would otherwise be defeated."  (Tr. of Open Proceedings at 26:5-8.)

a trial judge that there is manifest necessity for a mistrial due to a genuinely deadlocked jury.").[3]

The Court here exercised its broad discretion soundly.  The jury expressly indicated that it was deadlocked as to both counts and that it did not believe it could reach a verdict by further deliberating. By the time the Court declared a mistrial, the jury had already deliberated for four days in a relatively simple trial that lasted only seven.  The indictment contained only two counts and the jury had deliberated for over twenty-four hours.  (Ex. B, 25:13-25).  In that time period, the jury received read-backs, watched video footage, and received a supplemental instruction from the Court.  The Court made direct inquiries of the foreperson and the jury as a whole, and took into account the potentially coercive effects of continuing the trial.  All of these facts indicated that the jury was genuinely and hopelessly deadlocked and, thus, there was a manifest necessity for declaring a mistrial.

---

[3] The facts in Razmilovic are distinguishable from those in this case.  In Razmilovic, there was only a "single piece of evidence in the record" supporting the district court's conclusion that the jury was genuinely deadlocked – a note from the jury that it was "at a deadlock" and had exhausted its options.  See 507 F.3d at 139.  The judge did not discuss the extent of the deadlock with the jury, nor did he ask the jury (as the Court did here) whether there was any chance that further deliberations might produce a verdict.  Id. Moreover, the Razmilovic trial lasted six weeks and was found by the court to be "complex." The defendant in that case was charged in twenty-one separate counts, while defendant here was charged with only two.  Id.  Additionally, the Razmilovic jury had only been deliberating for three days and there was "no evidence" in the record that further deliberations would have risked coercion.  Id.  Finally, the judge in that case did not elaborate on his reasons for finding a manifest necessity, leaving the Court of Appeals without any insight into the court's thinking.  Id.  That was not the case here, where the Court elaborated on its reasons for declaring a mistrial, which were numerous and supported by the record.

**B.    Court Not Required to Exercise Any of Defense's "Options," Nor Was There Reason to Do So**

Defendant nevertheless complains that the Court could have, but did not, exercise certain options to avoid declaring a mistrial, including: re-reading the "reasonable doubt" jury instruction, giving the <u>Allen</u> charge, and polling the jury.  The case law makes clear, however, that the Court was not required to do any of these things.  <u>Renico</u>, 559 U.S. at 775 ("[W]e have never required a trial judge, before declaring a mistrial based on jury deadlock, to force the jury to deliberate for a minimum period of time, <u>to question the jurors individually</u>, to consult with (or obtain the consent of) either the prosecutor or defense counsel, <u>to issue a supplemental jury instruction</u>, or to consider <u>any other means</u> of breaking the impasse.") (emphases added).  It does not matter that the Court could have, but did not, choose a path offered by the defendant and available to it by law.  <u>Blueford v. Arkansas</u>, 132 S. Ct. 2044, 2052 (2012) ("We have never required a trial court, before declaring a mistrial because of a hung jury, to consider any particular means of breaking the impasse . . . .").  As to the <u>Allen</u> charge, specifically, it is firmly established that the decision whether to give that charge is within the trial court's discretion.  <u>United States v. Wills</u>, 88 F.3d 704, 717 (9th Cir. 1996).  Here, the Court properly declined to give that charge after concluding that Juror No. 12 did disclose to the Court and the parties the numerical breakdown of the jury, and finding that such an instruction could be seen as coercive.  See <u>Harrison</u>, 640 F.3d at 903 ("[J]udicial coercion, even if it is subtle and unintentional, creates an impermissible risk of interference with the dynamics of the jury process . . . ."); <u>United</u>

11

States v. Young, 585 F. App'x 932, 933 (9th Cir. 2014) ("An *Allen* charge has the potential for improper coercion because individual jurors may feel pressured to abandon sincerely held beliefs in service of reaching a verdict.").

Defendant's final complaint -- that the Court asked the foreperson only whether the jury was unable to reach a verdict as to "one or more counts" "as opposed to both counts" -- is specious.  The foreperson's note clearly indicated that the jury was unable to reach a unanimous verdict as to <u>both</u> counts.  (See Tr. of Sealed Proceedings at 35:7-9 ("The jury is unable to reach a unanimous verdict on Counts 1 <u>and</u> 2.") (emphasis added)).  There is no ambiguity in this statement.  Moreover, the Court asked the entire jury whether "any of you believe there is a reasonable probability that the jury can reach a unanimous verdict if sent back into the jury room for further deliberations?"  (Tr. of Open Proceedings at 19:17-20.)  No hands went up.  Certainly if any juror believed the jury could reach a unanimous verdict on <u>either</u> count, this question by the Court would have elicited that response.  Finally, given the similarity of the two counts and identical facts proving each, there is no realistic probability that the jury would have returned a verdict on one count and not the other in light of the notes and statements by the jurors.

**IV.   CONCLUSION**

A "mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict [has been] long considered the classic basis for a proper mistrial."  <u>Renico</u>, 559 U.S. at 774.  Indeed, the Supreme Court has never overturned a trial court's declaration of a mistrial after a deadlock on the ground that the "manifest necessity"

standard has not been met.  Id.  Defendant has not given this Court any basis for going against the weight of this historical and still-binding precedent.  Renteria, 526 F. App'x at 725.  Defendant's motion should be denied and any interlocutory appeal certified as frivolous.  See generally Chuman v. Wright, 960 F.2d 104, 105 (9th Cir. 1992).  The government is attaching a proposed order to that effect.