Nathan J. Hochman, SBN 139137
Brianna Leigh Abrams, SBN 239474
MORGAN, LEWIS & BOCKIUS LLP
The Water Garden
Suite 2050 North
1601 Cloverfield Boulevard
Santa Monica, CA  90404-4082
Tel:    +1.310.255.9025
Fax:    +1.310.907.2025
e-mail: nathan.hochman@morganlewis.com
e-mail: brianna.abrams@morganlewis.com

Tinos Diamantatos, *Pro Hac Vice*
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601
Tel.: (312) 324-1000
Fax: +1.312.324.1001
e-mail: tinos.diamantatos@morganlewis.com


Attorneys for Defendant
LEROY BACA

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>LEROY BACA,<br><br>                    Defendant. | Case No. CR 16-66(A) - PA<br><br>REPLY IN SUPPORT OF DEFENDANT LEROY BACA'S MOTION TO DISMISS COUNTS ONE AND TWO OF THE FIRST SUPERSEDING INDICTMENT ON DOUBLE JEOPARDY GROUNDS<br><br>[UNDER SEAL]<br><br>Hearing Date: February 6 or 13, 2017<br>Hearing Time: TBD<br>Courtroom:  9A |

This is Defendant Leroy Baca's REPLY in support of his motion to dismiss Counts One and Two of the First Superseding Indictment on double jeopardy grounds. Mr. Baca filed his motion on January 18, 2017 ("Def. Mot."). ECF No.

237.  The Government filed its opposition to this motion on January 25, 2017 ("Gov. Resp."). ECF No. 246.

This REPLY is based on the Memorandum of Points and Authorities attached hereto, the files and records of the case and such further and additional evidence and argument as may be presented at the hearing on the motion.

Respectfully submitted,

Dated:   February 1, 2017                    MORGAN, LEWIS & BOCKIUS LLP


By */s/ Nathan J. Hochman*
    Nathan J. Hochman
    Tinos Diamantatos
    Brianna L. Abrams
    Attorneys for Defendant
    LEROY BACA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In its opposition to Mr. Baca's double jeopardy motion, the Government dismisses Mr. Baca's arguments by contending that the original jury was genuinely deadlocked; a genuinely deadlocked jury always creates manifest necessity to declare a mistrial; the Court declared a mistrial based on manifest necessity caused by that genuinely deadlocked jury; and therefore Mr. Baca's motion should be denied. The Government goes even further, imploring the Court to not just deny Mr. Baca's motion but also deem it "frivolous," meaning that its arguments are "indisputably meritless," "fantastic or delusional," and "totally devoid of merit."

It is the Government's arguments, however, not Mr. Baca's, that fall into the category of meritless.  The Government does not dispute that:

\* Mr. Baca had a constitutional right to have the original jury decide one or both of the counts before it.

\* The Court had not taken all available non-coercive steps to preserve this constitutional right before declaring a mistrial based on manifest necessity.

\* The Court did not take steps previously recognized by case law as available to it including determining whether the jury could reach a partial verdict on one of the counts, giving a revised *Allen* charge, re-reading an instruction over which juror confusion had been indicated, or polling the jury to determine whether they could reach a unanimous verdict on one count even if it could not reach it on the other.

The substantive -- not frivolous -- issues raised in Mr. Baca's motion are whether the steps the Court did take demonstrated that the jury was **"genuinely deadlocked" on each count** sufficient to overcome Mr. Baca's constitutional right to have that original jury reach a verdict on one or both counts.  As elaborated in the original motion and below, Mr. Baca respectfully submits that the Court's failure to take the additional requested steps by Mr. Baca resulted in an evidentiary

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

1

record insufficient to determine that the jury was "genuinely deadlocked" on each count.  Accordingly, the Court's finding of manifest necessity was improper; without such a proper finding, jeopardy attached from the first trial; and Mr. Baca cannot be retried on Counts One and Two.  Therefore, Mr. Baca moves for these counts to be dismissed on double jeopardy grounds.

## II    ARGUMENT

### A.    There Is No Rigid Test To Determine "Manifest Necessity"

Mr. Baca and the Government agree that a deadlocked jury is the "classic case" for declaring a mistrial. *See* Gov. Resp. at 7:7, *see also Arizona v. Washington*, 434 U.S. 497, 509 (1978). The Government, however, ignores the key qualifier that the jury must be "*genuinely* deadlocked." *Id.* (emphasis added). The Government maintains that a roadblock in deliberations is sufficient. But a roadblock, even a serious one, simply will not suffice to deny a defendant his constitutional right to have an original jury decide his case if there is any chance of legitimately moving past it. A trial judge is duty-bound to preserve a defendant's right to a particular tribunal's fact-finding by employing all non-coercive options before dismissing a jury. *See, e.g.*, *United States v. Evanston*, 651 F.2d 1080, 1091 (9th Cir. 2011). Indeed, the "clear and long-standing case law" mandates that a mistrial due to a deadlocked jury should be a trial court's last resort, used only with "the greatest caution, under urgent circumstances, and for very plain and obvious causes." *United States v. Perez*, 22 U.S. 579, 580 (1824).

The Government also agrees—at least initially—that there is no rigid formula for determining whether a jury is genuinely deadlocked. *See* Gov. Resp. at 7. The Government lists some factors the Ninth Circuit has suggested for trial courts, such as the jury's collective opinion that it cannot agree, the length and complexity of the trial, whether the defendant objects to the mistrial, and the jury's exhaustion or susceptibility to coercion. *See* Gov. Resp. at 8 (citing *Harrison v. Gillespie*, 640 F.3d 888, 905 (9th Cir. 2011)). But, the Government treats this list as both

MORGAN, LEWIS &
BACCHIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 31053720.1

2

CR 16-66(A) - PA

exhaustive and a precise formula. After arguing that this Court addressed the factors suggested in *Harrison*, the Government concludes that the Court followed the Ninth Circuit "to the letter." Gov. Resp. at 9:5. There is, of course, no "letter" when it comes to finding manifest necessity.

The Government ignores the guiding principles of *Perez, supra,* which "forbid the mechanical application of an abstract formula." *United States v. See*, 505 F.2d 845, 852 (9th Cir. 1974). In other words, if the trial court can take any actions to facilitate a verdict by the original tribunal without coercing any jurors to change their minds, it should take them. *See Evanston*, 651 F.2d at 1091. By insisting that *Harrison* provides an exhaustive and definitive list of factors, the Government fails to address the Ninth Circuit's past consideration of whether a trial judge, before declaring a mistrial, polled the jury, gave an *Allen* charge, or asked the jury for a partial verdict. *See, e.g.*, *United States v. Salvador*, 740 F.2d 752, 755 (9th Cir. 1984) (considered whether the trial judge had given an *Allen* charge); *see also United States v. See*, 505 F.2d at 852 (considered whether the trial judge polled the jury); *United States v. Ross*, 626 F.2d 77, 81 (9th Cir. 1980) (considered whether the trial judge informed the jury it could return a verdict on just one count). These are all avenues, ratified by the Ninth Circuit, that may have helped the jury overcome its impasse in this case and which the Court should have considered and implemented before determining that the jury was "genuinely deadlocked" and declaring a mistrial on that basis.

## B.    The Court Should Have Asked The Jury If It Was Unanimous On Each Count

A trial court may receive a verdict on one count even if the jury is deadlocked on another. *See, e.g.*, *United States v. Armstrong*, 654 F.3d 1328, 1333 (9th Cir. 1980). Again, such a partial verdict protects a defendant's "valued right" to have criminal charges decided "by a particular tribunal." *Washington*, 434 U.S. at 504.

What the Ggovernment does not dispute on this point is telling. The Government does not dispute that questioning the jury about unanimity on a single count, or at least informing the jury of that option, was well within the Court's power. *See* Gov. Resp. at 12. Neither does the Government dispute the legitimacy of a partial verdict. *See id.* The Government also tacitly agrees that, if the jury reached a verdict on one count but not the other, it would have served Mr. Baca's constitutional right to fact-finding by a particular tribunal. Instead, the Government glibly posits that the jury's note, coupled with the Court's questions, unambiguously showed that the jury was deadlocked on each count.

Contrary to the Government's assertions, neither the jury's note nor its statements nor the Court's questions demonstrated that the jury was genuinely deadlocked on each count and could not reach a unanimous partial verdict on one of the counts. The jury's note informed the Court that the jury was "Redacted

" *See* Def.'s Mot., Ex. A at 35:7-8. The use of the conjunctive instead of the disjunctive denotes the jury's inability to agree on both counts together. Had the jury instead stated that it was "unable to reach a unanimous verdict on Count 1 **or** 2" or "unable to reach a unanimous verdict **on each of** Counts 1 **and** 2," the Government could correctly assert that the jury was unambiguously hung on each of the counts. An equally plausible explanation for the jury's note, however, was that the jury believed that it had to reach a unanimous verdict on both counts as opposed to understanding that it could reach a unanimous verdict on one count while still being deadlocked on the other. The Court's questions elicited equally inconclusive responses. The Court first inquired whether the jury was "unable to reach a verdict as to one or more counts." Def.'s Mot., Ex. B at 19:1-2. This question did not assess the possibility of whether the jurors could reach a partial verdict on one of the counts. Instead, the jurors would answer "yes" to this question whether they could reach a verdict on one count but not the other count or whether they could not reach a verdict on both counts. The Court then

MORGAN, LEWIS &
BACCHIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 31053720.1

4

CR 16-66(A) - PA

asked whether "the jury could reach a unanimous verdict" if sent back into the deliberation room. *Id.* at 19:4-9. Since this question did not specify that the jury could reach a unanimous verdict for one count even if it did not reach such a verdict for the other, this question reinforced the idea that the unanimous verdict had to be for both counts or none at all.

The Government's attempt to parse the jury's note to prove it clearly understood that it had the power to render a partial verdict is wrong. The jury never reported that it could not reach a unanimous verdict on just one count if it did not reach a unanimous verdict on both counts nor was the jury ever questioned by the Court on whether it could reach a unaminous verdict on just one of the two counts. Based on sheer speculation, the Government contends that there was "no realistic probability" that the jury could reach a verdict on one count but not the other. Gov. Resp. at 12. As the Court and the Government are aware, however, in a case involving a conspiracy and substantive charges, it is realistically plausible that a jury can find that a defendant agreed to and conspired to commit a crime but did not substantively commit it. Here, there was no evidence from the jury in any note or in juror statements in open court to show that this realistic plausibility did not exist. Since the Court took no steps to determine if the jury could reach a unanimous partial verdict on just one of the counts nor offered any reasons to explain on the record why it did not inform the jury of its power to return a partial verdict, the Court's finding that a genuine deadlock existed as to each count lacks evidentiary support and is erroneous. Without this crucial information from the jury on whether it was genuinely deadlocked on reaching a unanimous verdict as to each count, there was no manifest necessity to declare a mistrial on both counts.

### C.    The Court Should Have Given An *Allen* Charge

An *Allen* charge is proper "in all cases except those where it's *clear from the record* that the charge [would have] an impermissibly coercive effect on the jury." *United States v. Ajiboye*, 961 F.2d 892, 893 (9th Cir. 1992) (emphasis added).

MORGAN, LEWIS &
BACCHIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 31053720.1

5

CR 16-66(A) - PA

Again, the Government does not dispute this point. *See* Gov. Resp. at 19. Instead, the Government relies on the Court's mistaken conclusion that Juror No. 12 revealed the numerical breakdown of the jury. *Id.* The Government does not respond to Mr. Baca's analysis regarding what, in fact, Juror No. 12 revealed. *Id.* The juror merely informed the Court that Redacted

*See* Def.'s Mot., Ex. A at 16:6-7. Juror No. 12 did not disclose Redacted

In short, the Court had no information regarding the breakdown. It was entirely possible, as far as the Court knew, that the jury was split six-to-six or even more in favor for conviction. It was not, therefore, "clear from the record" that an *Allen* charge would have a coercive effect, or that one juror would have felt targeted. The proposed Ninth Circuit "deadlocked jury" instruction was appropriate, and the Court should have given it before vitiating Mr. Baca's right to that particular jury's fact-finding on each count.

**D.    The Court Should Have Re-read The "Reasonable Doubt" Instruction And Polled The Jury As To Its Ability To Reach A Unanimous Verdict As To Each Count**

The Government fails to substantively address the Court's decisions not to re-read the "reasonable doubt" instruction or poll the jury. Rather, the Government relies on *Renico v. Lett*, 559 U.S. 766, 775 (2010), to argue that these concerns have no bearing on whether there is manifest necessity for a mistrial. *See* Gov. Resp. at 11. This is a contorted reading of *Renico*. The *Renico* court only emphasized that the Supreme Court has "expressly declined to require the mechanical application of any rigid formula when trial judges decide whether jury deadlock warrants a mistrial." *Renico*, 559 U.S. at 775 (internal quotations omitted). *Renico* continued, "This is not to say that we grant absolute deference to trial judges in this context." *Id.* The Government also misreads *Blueford v. Arkansas*, 132 S. Ct. 2044, 2052 (2012) in the same way. Gov. Resp. at 11. *Blueford* reiterates that there is no rigid

formula. The *Blueford* court did not say trial judges *never* have to take certain steps before declaring a mistrial, merely that they do not *always* have to take every step depending on the circumstances of a particular case.  For example, all courts are not *required* to re-read jury instructions before declaring a mistrial; neither are they forbidden from re-reading instructions, particularly in situations like the one here where there was juror confusion over the reasonable doubt instruction and where the Court had already re-read a different instruction when juror confusion had occurred over that instruction.[1]

While the law does not require a court to go through a precise list of steps to find manifest necessity, it does mandate that a trial court do what it can to honor a defendant's constitutional right and facilitate a verdict by the original tribunal. *See, e.g.*, *See*, 505 F.3d at 852. Here, the Court could have re-read the "reasonable doubt" instruction Redacted

The Court also could have polled the jury to further gauge the extent of the jurors' disagreement and to determine whether the jury was genuinely deadlocked on reaching a verdict as to one count even if it could not reach a verdict as to the other, as opposed to having to reach a verdict on both counts or none at all. The Government's reliance on *Renico* and *Blueford* to dismiss these safeguards is misplaced. Without re-reading the instruction or polling the jury, the Court's mistrial was premature since it could not know if the jury was, in fact, genuinely deadlocked.

---

[1] The Government relies on the same misreading of *Renico* and *Blueford* to disregard the lack of an *Allen* charge and inquiry into partial unanimity, too. But, the Government also addressed the substance of those arguments, unlike the jury instruction and jury polling arguments. Mr. Baca therefore addresses the Government's misuse of *Renico* and *Blueford* in this section, but the same analysis applies to the Government's misuse of the cases for the *Allen* charge and partial unanimity points. Namely, while the Supreme Court does not rigidly require an *Allen* charge or an inquiry into a partial verdict in *every* case, the circumstances of *this* case required both for a finding of manifest necessity.

**E.      Mr. Baca's Arguments Are Not Frivolous**

Not only has the Government asked the Court to deny Mr. Baca's double jeopardy motion, it also has gone so far as to deem the motion to be legally "frivolous."  This is a very serious accusation.  The Supreme Court has defined a "frivolous claim" as one that relies on an "indisputably meritless legal theory," or a "fantastic or delusional" factual scenario. *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989). Other courts have defined a "frivolous claim" in the double jeopardy context as one "totally devoid of merit." *United States v. Dunbar*, 611 F.2d 985, 987 (5th Cir. 1980). A common "frivolous" double jeopardy claim is one that ignores "clear and long-standing case law." *United States v. LaMere*, 951 F.2d 1106, 1109 (9th Cir. 1991). *LaMere* presents the regularly recurring paradigm of the frivolous double jeopardy claim: the defendant sought to dismiss federal charges after being tried for the same conduct under state laws -- a claim not made in this case. *Id.*

Mr. Baca's arguments, supported by the facts and long-standing case law about what the Court should have done to facilitate a unanimous verdict before declaring a mistrial over his timely objection, are not anywhere close to "indisputably meritless," "fantastic or delusional," or "totally devoid of merit." Mr. Baca had a constitutional right to have the Court take every non-coercive step possible under the circumstances to determine if the jury was genuinely deadlocked as to each count.  The Court did not take all of the steps mandated by the circumstances of this case, including conducting an inquiry as to whether the jury knew it could reach a partial verdict on one rather than both counts, giving a modified *Allen* charge, re-reading an instruction Redacted , and polling the jury as to whether it could reach a verdict as to each of the counts.  Neither the Supreme Court nor the Ninth Circuit – or any "clear and long-standing case law" – excludes these approaches from the relevant determination of whether there was manifest necessity for a mistrial. Rather, as

MORGAN, LEWIS &
BACCHIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 31053720.1

8

CR 16-66(A) - PA

explained above and in the original motion, the Ninth Circuit has considered all of them as valid steps in prior cases it has decided. Whether or not the Ninth Circuit would require that each, some or all of these steps had to be followed in this case prior to the Court declaring a mistrial raises a substantive issue, not a frivolous one. Since no precise formula under the case law exists to determine whether manifest necessity occurred at the end of the first trial in this case, since the Court as a factual matter did not take the steps outlined above regarding inquiring into a partial verdict, giving a modified *Allen* charge, re-reading an instruction or polling the jury, and since the case law has considered each of these steps as valid ones in deciding whether manifest necessity exists to declare a mistrial based on a genuinely deadlocked jury, Mr. Baca's motion is clearly not frivolous, "indisputably meritless," "fantastic or delusional," or "totally devoid of merit." Accordingly, even if the Court denies the motion, it should not deem such motion to be frivolous.

## III.   CONCLUSION

For the foregoing reasons, and as further explained in the original motion, Mr. Baca respectfully requests that the Court dismiss Counts One and Two on double jeopardy grounds. If the Court denies this motion, then the Court should not find the motion to be frivolous.

Dated:       February 1, 2017            MORGAN, LEWIS & BOCKIUS LLP


By  */s/ Nathan J. Hochman*
Nathan J. Hochman
Tinos Diamantatos
Brianna L. Abrams
Attorneys for Defendant Baca

MORGAN, LEWIS &
BACCHIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 31053720.1

CR 16-66(A) - PA