# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 16-66 PA | | Date | February 13, 2017 |
|---|---|---|---|---|

Present: The Honorable    PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

Interpreter    None

| V.R. Vallery | Not Reported | Brandon Fox (Not present) Lizabeth Rhodes (Not present) Eddie Jauregui (Not present) |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| | | | | Nathan Hochman | Not | | X |
| | | | | Tinos Diamantatos | Not | | X |
| Leroy Baca | Not | | X | Brianna Abrams | Not | | X |

**Proceedings:**    IN CHAMBERS - ORDER

Before the Court is defendant Leroy Baca's ("Defendant") Motion to Dismiss Counts One and Two of the First Superceding Indictment (Docket No. 237). In his Motion, Defendant challenges the Court's determination that there was a "manifest necessity" to declare a mistrial when the jury in his first trial was unable to reach a unanimous verdict. Defendant asserts that a retrial on those counts would violate the Double Jeopardy Clause.

"[W]hen a judge discharges a jury on the grounds that the jury cannot reach a verdict, the Double Jeopardy Clause does not bar a new trial for the defendant before a new jury." Renico v. Lett, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862-63 (2010); see also Blueford v. Arkansas, 566 U.S. 599, 132 S. Ct. 2044, 2052 (2012) ("[A] trial can be discontinued without barring a subsequent one for the same offense when 'particular circumstances manifest a necessity' to declare a mistrial.") (quoting Wade v. Hunter, 336 U.S. 684, 690, 69 S. Ct. 834, 838 (1949)); Arizona v. Washington, 434 U.S. 497, 509, 98 S. Ct. 824, 832 (1978) ("[A] trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial.").

"[T]rial judges may declare a mistrial 'whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity' for doing so." Renico, 559 U.S. at 773-74, 130 S. Ct. at 1863 (quoting United States v. Perez, 9 Wheat. 579, 579-80, 6 L. Ed. 165 (1824)). The "manifest necessity" standard does "not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge." Washington, 434 U.S. at 506, 98 S. Ct. at 830-31. Instead, "it is manifest that the key word 'necessity' cannot be interpreted literally; instead, . . . we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." Id., 98 S. Ct. at 831. A jury that is unable to reach a verdict "has long been considered the 'classic basis' establishing such necessity." Blueford, 566 U.S. 599, 132 S. Ct. at 2053 (quoting Washington, 434 U.S. at 509, 98 S. Ct. at 832; see also Rogers v. United States, 609 F.2d 1315, 1317 (9th Cir. 1979) ("Jury deadlock is a classic example of manifest necessity for a mistrial.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

"The decision whether to grant a mistrial is reserved to the 'broad discretion' of the trial judge . . . ." Renico, 559 U.S. at 774, 130 S. Ct. at 1863; see also Washington, 434 U.S. at 510, 98 S. Ct. at 832 ("The trial judge's decision to declare a mistrial when he considers the jury deadlocked is . . . accorded great deference by a reviewing court."). The Supreme Court has "expressly declined to require the 'mechanical application' of any 'rigid formula' when trial judges decide whether jury deadlock warrants a mistrial." Id. at 774, 130 S. Ct. at 1863; see also Harrison v. Gillespie, 640 F.3d 888, 902 (9th Cir. 2011). In the Ninth Circuit, "the factors to be considered by the judge include the jury's collective opinion that it cannot agree, the length of the trial and complexity of the issues, the length of time the jury has deliberated, whether the defendant has made a timely objection to the mistrial, and the effects of exhaustion or coercion on the jury." Rogers, 609 F.2d at 1317.

Defendant asserts that there was no "manifest necessity" to declare a mistrial because, prior to declaring a mistrial, the Court should have taken additional steps to either break the jurors' impasse or to obtain additional information concerning the deadlock. Specifically, Defendant contends that the Court should have: (1) re-read the reasonable doubt instruction based on the note from and discussion with Juror Number 12; (2) given an Allen charge; (3) polled the jury as to their ability to reach a unanimous verdict; and (4) asked the jury if it was deadlocked as to both counts.

On the afternoon of the fourth day of the jury's deliberations, the Court received a note from Juror Number 12 asking to speak to the Court "in private regarding an issue in the deliberation room." Despite the Court's efforts to prevent Juror Number 12 from disclosing, numerically or otherwise, how the jury was divided, efforts both parties supported, Juror Number 12 in fact indicated that there was one juror with whom the other jurors disagreed. Moreover, based on how Juror Number 12 explained the disagreement, it was not difficult to discern how the jury was split. Specifically, Juror Number 12 expressed her concerns that "one specific juror" was not following the reasonable doubt instruction because "he admits that there's doubt and yet is deciding one way" and that although he was participating in the jury's discussions, "he has made it very clear that his decision will not change."

Under these circumstances, the Court rejected Defendant's request to re-read the reasonable doubt instruction and deferred consideration of Defendant's suggestion that the Court give the Ninth Circuit's version of the Allen charge. See 9th Circuit Model Criminal Instruction 7.7. The Court instructed Juror Number 12 that it is not unusual for jurors to have differing views of a case and that "so long as the jury is willing to deliberate and discuss the issues . . . there is nothing for the Court to do." The Court then instructed Juror Number 12 to return to the jury room and continue deliberations.

Approximately 10 minutes after the Court instructed Juror Number 12 to return to the jury room, the jury sent another note, signed by the foreperson, indicating that the jury "is unable to reach a unanimous verdict on Count 1 and Count 2." Defendant again requested that the Court give the Ninth Circuit's Allen charge. The Government objected, noting that Juror Number 12 had identified the numerical division in the jury and argued that giving the charge under such circumstances would be coercive and constitute error. After rejecting Defendant's request that the Court give an Allen charge, the Court then discussed with the parties questioning the foreperson and jury about the stated deadlock. The Court indicated that it would ask the foreperson: "Is it your opinion the jury is hopelessly deadlocked or unable to agree on a verdict as to one or more of the counts? And if he says 'no,' then that's one. And if he says 'yes,' I'll ask the jury is there any of you that disagree with the statement?" Defendant did not object to that phrasing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

The Court then identified the foreperson and asked: "In your opinion, is the jury unable to reach a verdict as to one or more counts?"  The foreperson responded:  "Yes."  The Court then asked the remainder of the jurors to raise their hand if any juror disagreed with the foreperson's opinion.  No juror raised a hand.  The Court then asked the foreperson if there was "a reasonable probability that the jury could reach a unanimous verdict if sent back into the jury room for further deliberations?"  The foreperson responded, "No, Your Honor."  The Court then asked all of the jurors to raise their hand if any of them "believe there is a reasonable probability that the jury can reach a unanimous verdict if sent back into the jury room for further deliberations?"  No juror raised their hand.

Defendant asked that the jury be polled, but did not propose any particular question other than what the Court had already asked.  The Court declined to poll the jurors and excused the jury.  The Court then declared a mistrial over Defendant's objection and identified on the record the reasons why it was manifestly necessary to declare a mistrial.  These reasons included both the foreperson's and the jury's collective view that no further deliberations would be fruitful in arriving at a unanimous verdict, the length of the trial, which included approximately eight days of testimony and evidence, the relative lack of complexity of the issues, which boiled down to a question of determining Defendant's intent, the length of the deliberations, which had continued for approximately 24 hours over four days, and the possibility of exhaustion and coercion the jury would experience from further deliberations or instructions.

The Court did not abuse its discretion by rejecting Defendant's suggestions that the Court re-read the reasonable doubt instruction or give the Ninth Circuit's version of the Allen charge.  At a minimum, based on what Juror Number 12 disclosed about the deliberations, the relative lack of complexity of the issues before the jury, the length of the trial, the other notes the jurors had issued, the reading back of the testimony of several witnesses as requested by the jury, and, importantly, the facts that the jury had already deliberated for nearly 24 hours spread over four days, and the approaching holiday vacation, the additional instructions requested by Defendant would have been impermissibly coercive.  See Rogers, 609 F.2d at 1317; see also Harrison, 640 F.3d at 905 ("An impasse is an impasse, and as we have explained . . . , the only conceivable 'alternatives' present a serious risk of coercing jurors . . . .").  Moreover, under these circumstances, Defendant's request that the Court give an Allen charge posed a particularly high risk of impermissible coercion.  See United States v. Evanston, 651 F.3d 1080, 1085 (9th Cir. 2011) ("Extraordinary caution must be exercised when acting to break jury deadlock.  This is particularly true with respect to the court's actions in giving an Allen charge, which we have recognized as already 'standing at the brink of impermissible coercion.'") (quoting United States v. Seawell, 550 F.2d 1159, 1163 (9th Cir. 1977)).

Nor did the Court abuse its discretion by declining to poll the jurors after questioning them collectively.  See Renico, 559 U.S. at 775, 130 S. Ct. at 1864 ("[W]e have never required a trial judge, before declaring a mistrial based on jury deadlock to force the jury to deliberate for a minimum period of time, to question the jurors individually, to consult with (or obtain the consent of) either the prosecutor or defense counsel, to issue a supplemental jury instruction, or to consider any other means of breaking the impasse."); see also Rogers, 609 F.2d at 1317 ("Under these circumstances there was no need for the judge to inquire further of the jurors about the possibility of a verdict.  They had been deliberating for three and a half days after a trial which took about the same amount of time.  This is a long time for a jury to deliberate, and there is a real danger that forcing further consideration could result in an unfair verdict."); United States v. See, 505 F.2d 845, 851 (9th Cir. 1974) ("Although a poll of jurors is the preferred method in some states, questioning the jury as a group on the possibility of a verdict is an acceptable alternative.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Finally, Defendant's belated effort to find fault with the phrasing of the Court's inquiries to the foreperson and other jurors falls far short of establishing that the Court abused its discretion when it concluded that it was manifestly necessary to declare a mistrial.  Based on the phrasing of the foreperson's note, that the jury is "unable to reach a unanimous verdict on Count 1 and Count 2," and both the foreperson's and jury's responses that there was no "reasonable probability that the jury could reach a unanimous verdict if sent back to the jury room for further deliberations," it was clear that the jury was deadlocked as to both counts. Additionally, given the nature of the two counts, there was no realistic probability that the jury would have returned a verdict on one count and not the other.  See Harrison, 640 F.3d at 902 ("[T]he Supreme Court has never adopted a per se rule regarding trial judges' responses to deadlocked juries.  Instead, the Court has emphasized the importance of deferring to the trial judge's discretion in cases involving deadlocked juries."); see also Renico, 559 U.S. at 775, 130 S. Ct. at 1864 (noting that the Supreme Court has never overturned a trial court's finding of manifest necessity to declare a mistrial after a jury was unable to reach a verdict).[1]

For all of the foregoing reasons, the Court denies Defendant's Motion to Dismiss Counts One and Two of the First Superceding Indictment.  The Court additionally finds that Defendant's Double Jeopardy Clause claims are meritless and frivolous.  See United States v. LaMere, 951 F.2d 1106, 1109 (9th Cir. 1991) ("We hold that the district court did not err in finding LaMerre's double jeopardy motion to be frivolous, and that court did not lose jurisdiction to proceed with LaMere's trial notwithstanding the filing of his notice of appeal from the denial of the double jeopardy motion.").  Accordingly, the Court certifies that any attempt by Defendant to obtain interlocutory review of such claims would be frivolous.  Id.

IT IS SO ORDERED.

---

[1] Defendant's reliance on United States v. Ramilovic, 507 F.3d 130 (2d Cir. 2007), is misplaced. The facts in that Second Circuit opinion are easily distinguishable from the circumstances in this case.