EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No. 290409)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
LIZABETH A. RHODES (Cal. Bar No. 155299)
Assistant United States Attorney
Chief, General Crimes Section
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
Assistant United States Attorney
Major Frauds Section
     1500/1200/1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0284/3541/4849
     Facsimile: (213) 894-0141
     E-mail:    Brandon.Fox@usdoj.gov
                Lizabeth.Rhodes@usdoj.gov
                Eddie.Jauregui@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 16-66(A)-PA |
|---|---|
| Plaintiff, | MOTION TO EXCLUDE EVIDENCE AND ARGUMENT PERTAINING TO DEFENDANT'S CONDITION AFTER 2014; EXHIBITS; DECLARATION OF EDDIE A. JAUREGUI |
| v. | |
| LEROY BACA, | [Public Redacted Version] |
| Defendant. | Hearing Date: TBD |
| | Hearing Time: TBD |
| | Location:    Courtroom of the Hon. Percy Anderson |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brandon D. Fox,

Lizabeth A. Rhodes, and Eddie A. Jauregui, hereby files its Motion to Preclude Evidence and Argument Pertaining to Defendant's Condition After 2014.  Notwithstanding this Court's recent order excluding such evidence and argument (CR 267), defense counsel has indicated that such evidence is relevant and admissible if the government introduces defendant's deposition testimony from 2015, as planned.  As explained in the attached Memorandum of Points and Authorities, evidence of defendant's "mild cognitive impairment" has no place in the upcoming trial.  None of defendant's treating physicians, nor his proposed expert, nor defendant himself, has ever claimed that defendant had a long-term memory issue that prevented him from correctly answering the types of questions put to him in the two depositions that are at issue here.  Thus, defendant's condition at the time is wholly irrelevant.

Even if defendant's condition were marginally relevant to any count, which it is not, its probative value would be substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, and waste of time.

Dated: February 22, 2017            Respectfully submitted,

                                    EILEEN M. DECKER
                                    United States Attorney

                                    LAWRENCE S. MIDDLETON
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                        */s/ Brandon D. Fox*
                                    BRANDON D. FOX
                                    LIZABETH A. RHODES
                                    EDDIE A. JAUREGUI
                                    Assistant United States Attorneys

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Less than one week ago, this Court excluded evidence and argument regarding defendant's cognitive impairment from the upcoming trial.  The Court's written order stated, among other things, that the "[e]vidence linking defendant's current diagnosis to the charges is entirely speculative and inadmissible" and is "the product of unreliable methodology, artificially limited facts, and bare speculation."  (CR 267.)  Nevertheless, defendant has informed the government that if, in the upcoming trial, the government offers statements made by defendant in 2015, he will seek to introduce evidence showing that his memory was impaired at the time.  Such evidence continues to be speculative, unreliable, irrelevant, and prejudicial, and the government requests that it and any related argument be excluded under Federal Rules of Evidence 401 and 403.

**II.    STATEMENT OF FACTS**

**A.    Defendant's Statements in January and April 2015**

The government intends to introduce statements made by defendant after May 2014 in its case-in-chief.  Specifically, the government seeks to introduce limited testimony from two depositions taken in January and April 2015 in a civil case.[1]  During those depositions, defendant was asked questions related to his time as Sheriff of Los Angeles County, a position he left in January 2014.  After being sworn, defendant: (i) acknowledged that he understood his testimony was under oath and affirmed that there was no reason, including any

_____

[1] The depositions, which were video recorded, were taken in connection with Antuna v. County of Los Angeles, CV No. 15-5600-MWF (C.D. Cal.).

"medication" or "health issue," precluding him from providing his "best testimony"; (ii) characterized his relationship with his co-conspirator and former undersheriff Paul Tanaka as extremely close (like "father and son"); (iii) stated that former undersheriff Tanaka had a "unique talent of doing exactly what I wanted done"; and (iv) made statements about promotions and evaluations of Sheriff's Department members.

At present the government expects to introduce in its case-in-chief seven video clips from these two depositions, totaling approximately six minutes.  The government summarizes that testimony in the table below:

**Table 1**

**Deposition of Defendant on January 29, 2015**

| Clip Number | Description |
|---|---|
| Ex. 5-2 | 1 min., 11 seconds<br><br>Defendant admonished by attorney regarding the nature of deposition testimony; defendant states no reason he cannot give his "best testimony . . . today." Transcript attached in Exhibit 1. |
| Ex. 5-3 | 18 seconds<br><br>Defendant notes date of retirement and corrects attorney ("I retired that day," not resigned.). Transcript attached in Exhibit 1. |
| Ex. 5-6 | 2 mins., 27 seconds<br><br>Defendant answers questions regarding the nature of his relationship with Paul Tanaka and states that Tanaka had a "unique talent of doing exactly what I wanted done."  Transcript attached in Exhibit 1. |

**Deposition of Defendant on April 6, 2015**

| Clip Number | Description |
|---|---|
| Ex. 7-1 | 5 seconds<br><br>Defendant sworn. Transcript attached in Exhibit 2. |
| Ex. 7-2 | 39 seconds |

|  | Defendant admonished by attorney regarding nature of deposition testimony; defendant states no reason he cannot give his "best testimony . . . today." Transcript attached in Exhibit 2. |
|---|---|
| Ex. 7-3 | 1 min., 9 seconds<br><br>Defendant answers question regarding evaluations in Sheriff's Department; does not indicate any failure to recall.  Transcript attached in Exhibit 2. |
| Ex. 7-4 | 10 seconds<br><br>Stating: "Any executive that would sign a report or an evaluation that they didn't believe was completely accurate should never sign the evaluation." Transcript attached in Exhibit 2. |

This evidence, while discrete, is highly relevant because defendant acknowledges Mr. Tanaka's ability to understand and carry out his orders and also the extremely close relationship between the two men.  Moreover, the statements rebut the argument that Mr. Tanaka corrupted defendant's orders in relation to the Anthony Brown matter or had a different and separate "agenda," as defendant argued in the last trial.  The statements also show that defendant condoned and approved of his co-conspirators' acts by rewarding them with positive evaluations for the time period of the conspiracy.

**B.    Evidence of Defendant's Medical Condition**





On January 29, 2015, defendant was deposed in the Atuna matter and was asked under oath by an attorney whether there was "any reason," be it "drugs, medication, health issues, [or] lack of sleep" that would prevent him from giving his best testimony.  Defendant answered that there was not.  Defendant was further deposed on April 6, 2015 and was again asked whether there was any reason he could not give his "best testimony," including for any health reason. Defendant answered "No."



## III. ARGUMENT

### A. Evidence pertaining to defendant's mild cognitive impairment in 2015 is irrelevant

Defendant's diagnosis of mild cognitive impairment is irrelevant in this trial, even if the government offers defendant's January and April 2015 statements in its case-in-chief. By and large, the questions put to defendant in the 2015 depositions do not relate to his memory of discrete events or to any events occurring in the recent past.

Although the defense has characterized defendant's testimony regarding Paul Tanaka as his "memory of [the] relationship," it clearly is not that at all. When asked by the attorney deposing him how long a relationship he had with Mr. Tanaka, defendant answered, "Long." When asked, in a follow-up question, to explain the <u>nature</u> of his relationship with Mr. Tanaka, defendant responded, "Kind of like father and son." Defendant then agreed with the attorney questioning him that the relationship between the two men was "extremely close." It is unclear how defendant's mild cognitive impairment would or could have impacted defendant's answers to these questions and defendant has offered no evidence indicating that it

impacted him in any relevant way at all.  To the contrary, the
evidence shows that defendant understood the questions posed to him
in January 2015 and was able to recall key facts during the course of
this deposition.  For example, defendant affirmed under oath that
there was nothing preventing him from providing accurate and truthful
testimony.  (Ex. 2, Clip 5-2.)  And in the same deposition, he
recalled without any difficulty the day he retired from the Sheriff's
Department and even corrected the attorney questioning him when the
attorney characterized his departure from the Sheriff's Department as
a "resignation," rather than a retirement.  (Ex. 2, Clip 5-3.)

Similarly, there is no connection between defendant's diagnosis
and his deposition testimony in April 2015.  Even accepting as true
defendant's wife's complaints that defendant was suffering from
short-term memory loss in 2014, such impairment would not have
impacted defendant's ability to answer the types of questions posed
to him in this deposition.  By way of example, defendant was asked if
he, as Sheriff, made it clear that "nobody makes promotions in the
sheriff's department for the rank of captain and above other than
yourself?"  Defendant answered, without hesitation, "Yes. I am the
final approver of any recommended person for those particular
positions."  Similarly, defendant was asked if he believed that
evaluations in the Department, beginning in 2011 until the time he
left in January 2014, were "consistently accurate."  Defendant
responded, "I believe that is correct."  Seeing as this deposition
occurred in 15 months after defendant resigned from the Sheriff's
Department, the question did not call on defendant to exercise his
short-term memory.  ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████      ████████████

**B.    Even if marginally relevant, such evidence should be precluded under Rule 403**

Even if defendant's condition in January and April 2015 were marginally relevant, the Court should exclude such evidence because it is of minimal probative value, and any value it has is substantially outweighed by the dangers in Rule 403.  <u>First</u>, there is no objective evidence that defendant's diagnosis of "mild cognitive impairment" impacted, or could have impacted, his ability to answer the questions put to him in the 2015 depositions.  ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████.  <u>Second</u>, allowing defendant to offer evidence of his Alzheimer's disease is extremely prejudicial to the government's case, as most people will understand the significance of that diagnosis and may be unable to decide the question of defendant's guilt based on the evidence alone. (Relatedly, jurors may misapprehend defendant's diagnosis in 2015 and conclude that defendant was, or is, suffering from advanced Alzheimer's or dementia.)  And <u>third</u>, allowing defendant to inject the specter of Alzheimer's into this trial would lead to significant confusion and waste of time because the government would have to establish the parameters of defendant's cognitive impairment at the time of his deposition testimony and put on additional evidence, including possibly expert testimony, to rebut the suggestion that

defendant was suffering from Alzheimer's disease in 2015, and as far back as 2011.

Moreover, the defense has been in possession of this deposition testimony for over five months and the government made clear to defendant that it planned to introduce excerpts of these depositions long ago.  Yet defendant has never offered an expert opinion as to how his cognitive state might have had an effect on these statements. Dr. Spar's November 2016 opinion (CR 143) makes no reference to these statements and no other physician has been designated as an expert. Thus, any testimony concerning defendant's mental state in January and April 2015 would suffer from the same failures outlined in the Court's recent ruling -- it would be speculative, unreliable, and based on artificially limited facts.

**IV.   CONCLUSION**

Defendant's attempt to shoe-horn Alzheimer's disease into this trial is a direct and transparent attempt at jury nullification. Evidence of defendant's diagnosis is irrelevant and has no demonstrable connection to his 2015 deposition testimony.  Allowing such evidence and argument at trial would only serve to prejudice the government's case and would lead to confusion, undue delay, and waste of time.  Accordingly, such evidence and argument should be excluded from the upcoming trial under Rules 401 and 403 of the Federal Rules of Evidence.

## Declaration of Eddie A. Jauregui

I, Eddie A. Jauregui, declare as follows:

1.    I am an Assistant United States Attorney.  I am one of the prosecutors assigned to <u>United States v. Leroy Baca</u>, 16-66(A)-PA.

2.    Attached hereto as Exhibit 1 are transcripts of excerpts from a videotaped deposition of defendant Leroy Baca occurring on January 29, 2015.

3.    Attached hereto as Exhibit 2 are transcripts of excerpts from a videotaped deposition of defendant Leroy Baca occurring on April 6, 2015.

4.    I will be seeking to file Exhibit 3, a medical record pertaining to defendant, separately and under seal.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:    February 22, 2017

_____
Eddie A. Jauregui

# Exhibit 1

Antuna Deposition Ex. 5-2

LEROY DAVID BACA, having been first duly sworn by the reporter, was examined and testified as follows:

EXAMINATION BY MR. GAGE:

Q  Good morning.

A   Good morning.

Q  You've had your deposition taken many times in the past I know. Just briefly, a deposition is a statement under oath. Carries with it the same obligation to tell the truth as if you are testifying in a court of law.  Do you understand that?

A   Yes.

Q Everything you say today is being taken down by a court reporter. You are being audio taped and videotaped.  Do you understand that?

A   Yes.

Q If you give false testimony in a deposition, just like in a court of law, it could be potentially prosecuted for perjury, which is a felony. You understand that?

A   Yes.


Q Is there any reason why you cannot give us your best testimony here today, whether it be drugs medication, health issues, lack of sleep? Anything of that sort?  Low blood pressure -- low blood sugar? Go ahead.

A   No.

Q   If at any time I ask you a question today that you don't understand, don't answer. Just simply tell us you don't understand.  Will you do that for us?

A   Yes.

Antuna Deposition Ex. 5-3

A:  The last date that I worked was January 30th of 2014 for the Los Angeles County Sheriff's Department.


Q:  And then you resigned on that day as the Sheriff of the County of Los Angeles; correct?


A:  I retired that day.

Antuna Deposition Ex. 5-6

Q:  And how long term of a relationship did you have with Paul Tanaka?

A:  Long.

Q:  And can you tell us the nature of that relationship?

A:  Kind of like father and son.

Q:  Extremely close then; correct?

A:  Correct.

Q:  You thought of yourself as a mentor grooming Paul Tanaka to rise through the ranks; is that accurate?

A:  Not thought of. In fact did raise him through the ranks.

Q:  You expected he would at some point take your place as the sheriff of LA County Sheriff's Department; correct?

A:  That was very possible.

Q:  Did you ever have discussions with Paul Tanaka about having him as your heir of parent, in other words, to become the next sheriff after you at some point?

MR. PETERSON: Excuse me. Ambiguous and argumentative as phrased.

BY MR. GAGE:

Q:  Go ahead.

A:  That's possible.

Q:  When do you believe you had conversations with Mr. Tanaka regarding him becoming the next sheriff after you?

A:  I don't recall.

Q:  What do you recall was said between you and Mr. Tanaka about him becoming the next sheriff after you?

A:  I don't recall that either.

Q:  Don't recall anything at all?

A:   Well, you're asking for specific things that occurred over periods of time that to me were not in evidence as having to be acted upon at the time.

Q:   I don't understand your answer. Not in evidence to be acted upon, what do you mean?

A:   You don't talk about these things in some fashion that allows you to mull over these things. I felt that everything that Paul did was on a high level of great competence, and that's the best way I can express myself.

Q:   Why did you feel that way?

A:   Because he had a unique talent of doing exactly what I wanted done.

# Exhibit 2

Antuna Deposition Ex. 7-1

THE REPORTER:  Raise your right hand, please.

THE WITNESS:  (Witness complies.)

THE REPORTER: Do you solemnly swear that the testimony you are about to give in the case now pending will be the truth, the whole truth and nothing but the truth?

THE WITNESS:  I do.

## Antuna Deposition Ex. 7-2

Q: Okay. You understand that you are testifying today under oath, and that obligation carries with it the same obligation to be truthful as if testifying in a court of law; correct, sir?

A: Yes.

Q: And your testimony today is under penalty of perjury just like in a court of law. You understand that as well; correct?

A: Yes.

Q: Is there any reason why you cannot give us your best testimony today, either because of lack of sleep, drugs, alcohol, medication, low blood sugar, any other health issues?

A: No.

Q: Okay. If at any time I ask you a question today that you don't understand, don't answer. Simply tell us that you don't understand.
Will you do that for us?

A: Yes.

Q: Have you understood everything so far?

A: Yes.

<u>Antuna</u> Deposition Ex. 7-3

Q:  Did you as the sheriff make it clear that nobody makes promotions in the sheriff's department for the rank of captain and above other than signature was being affixed to that document, it indicated that you agreed with the contents of that evaluation; true?

A:  Yes. I am the final approver of any recommended person for those particular positions.


Q:  Did you believe that the evaluations in the sheriff's department all the way until the time that you left, starting in say 2011, were consistently accurate?


A:  I believe that's correct.


Q:  Okay. And you expected because they were sheriff's documents the evaluations would be truthful without any exaggeration in them; correct?


A:  Yes.


Q:  Did you ever learn of any types of exaggerations on being a problem in the evaluations of employees at the ranks of lieutenants and higher in the sheriff's department when you were the sheriff?


A:  No, I didn't detect any.

Antuna Deposition Ex. 7-4

THE WITNESS: Any executive that would sign a report or an evaluation that they didn't believe was completely accurate should never sign the evaluation.

.