Nathan J. Hochman, SBN 139137
Brianna Leigh Abrams, SBN 239474
MORGAN, LEWIS & BOCKIUS LLP
The Water Garden
Suite 2050 North
1601 Cloverfield Boulevard
Santa Monica, CA  90404-4082
Tel:    +1.310.255.9025
Fax:   +1.310.907.2025
e-mail: nathan.hochman@morganlewis.com
e-mail: brianna.abrams@morganlewis.com

Attorneys for Defendant
LEROY BACA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>LEROY BACA,<br><br>                    Defendant. | Case No. CR 16-66 (A) - PA<br><br>**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION TO EXCLUDE EVIDENCE AND ARGUMENT PERTAINING TO DEFENDANT'S CONDITION AFTER 2014**<br><br>Hearing date:  February 24, 2017<br>Time:              8:30 a.m.<br>Courtroom:      9A |

Defendant LEROY BACA, by and through his attorneys of record, hereby submits his Opposition to the Government's Motion to Exclude Evidence and Argument Pertaining to Defendant's Condition After 2014.

This opposition is based on the files and records of the case, the attached Memorandum of Points and Authorities, Declaration of Dr. Helena Chui and Exhibit, Declaration of Nathan J. Hochman and Exhibits, and any such argument and evidence as may be heard by the Court.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

Respectfully submitted,

Dated:   February 24, 2017                MORGAN, LEWIS & BOCKIUS LLP


By  */s/ NATHAN J. HOCHMAN /s/*
       Nathan J. Hochman
       Brianna L. Abrams
       Tinos Diamantatos
       Attorneys for Defendant
       LEROY BACA

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

2

DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTION TO EXCLUDE
CASE NO. CR 16-66 (A) - PA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Through its Motion, the Government states that it plans to introduce a number of statements made by Defendant during two depositions that were taken in 2015 in the unrelated civil matter of *Antuna v. County of Los Angeles*, CV. No. 15-5600-MWF (C.D. Cal.) ("Antuna").  Specifically, the Government seeks to play video clips for the jury where Mr. Baca allegedly: "(i) acknowledged that he understood his testimony was under oath and affirmed that there was no reason, including any 'medication' or 'health issue,' precluding him from providing his 'best testimony'; (ii) characterized his relationship with his co-conspirator and former undersheriff Paul Tanaka as extremely close (like 'father and son'); (iii) stated that former undersheriff Tanaka had a 'unique talent of doing exactly what I wanted done'; and (iv) made statements about promotions and evaluations of Sheriff's Department members."  Government's Motion at 3-4.

The introduction of these 2015 statements, **made almost four years after the relevant time period of August-September 2011**, and made in a civil deposition concerning allegations of retaliatory transfers of LASD employees **completely unrelated to the Anthony Brown investigation**, is cumulative of other evidence the Government intends to present that bears directly on the relevant time frame and Anthony Brown investigation, and presents a substantial risk of prejudice, misleading the jury, and wasting the jury's time.  Thus, the Court should exclude such evidence under Rule 403.

In the alternative, if the Court allows the 2015 deposition testimony to be presented to the jury, Mr. Baca should be allowed to present evidence bearing on his mental health condition, memory and state of mind at the time of the deposition – including his 2014 diagnosis of mild cognitive impairment as part of Alzheimer's disease.  Evidence of Mr. Baca's mild cognitive impairment at the time of the 2015 depositions undermines the reliability and credibility of the statements.  Although

the Government fails to explain on what basis Mr. Baca's deposition testimony is admissible, assuming arguendo a colorable argument could be made that the testimony is a party-opponent admission, such testimony is subject to an attack on its credibility. Moreover, it is well-established that introduction of otherwise inadmissible or irrelevant evidence by one party "opens the door" to introduction of evidence by the other party to rebut any false impression that might result from the earlier admission. *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir. Cal. 1988).

Accordingly, since the introduction of the cumulative deposition statements mandate that evidence attacking their credibility be similarly admitted, either the Court should exclude the statements and the impeachment evidence entirely or permit both to be presented for the jury to consider the totality of the circumstances behind the statements.

## II.    **PROCEDURAL HISTORY**

On November 22, 2016, the Court held a hearing on the Government's motion *in limine* to preclude the testimony of Dr. James Spar. This testimony related to the impact of Mr. Baca's Alzheimer's disease on his memory regarding the alleged false statements he made during an April 12, 2013 interview with the Government. These alleged false statements each dealt with his memory of events 20 months before. The Court took the matter under submission at that time.

On December 1, 2016, considering the admissibility of the testimony of Dr. James Spar regarding Mr. Baca's Alzheimer's disease, the Court expressed its tentative view that "at least some of Dr. Spar's opinions concerning the conduct that took place in 2013 may be admissible and that the government's objections go more to the weight then the admissibility of those opinions." *See* Transcript of Proceedings, *U.S. v. Baca*, No. 16-CR-66(A) – PA, Dec. 1, 2016 at 29:12-15. However, the Court held that such evidence was irrelevant for the first two counts and unduly prejudicial as to those counts. To remedy this situation, the Court

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

2

DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTION TO EXCLUDE
CASE NO. CR 16-66 (A) - PA

suggested that Counts 1 and 2 be severed from Count 3.

On December 2, 2016, during a telephonic status conference on the Government's Motion for a Separate Trial on the Counts, the Court ordered that the case be severed to avoid any prejudice that may result from the introduction of evidence relating to Mr. Baca's Alzheimer's disease as to the first two counts.

On or about December 3, 2016, the parties met and conferred in person and the Government agreed that it would not introduce Mr. Baca's statements made in the Antuna deposition after the defense argued that such statements would open the door to evidence regarding Mr. Baca's cognitive impairment. *See* Hochman Decl., ¶ 3.

In the following weeks, a trial was held on Counts 1 and 2 where the Government honored its agreement not to introduce the Antuna deposition statements. That trial resulted in a mistrial after the jury was found to be hopelessly deadlocked by the Court.

On January 10, 2017, a hearing was held on which counts the next trial was going to involve. The Government represented to the Court that it wanted to try all three counts together and was willing to accept any prejudice that may possibly result from the introduction of testimony relating to Mr. Baca's Alzheimer's disease relevant to Count 3. The Court agreed to de-sever and rejoin the three counts given the Government's representation that it would no longer be arguing prejudice from the joint trial of all counts.

On February 17, 2017, the Court ruled in favor of the Government's motion to exclude the testimony of Dr. James Spar that it had under submission since November 2016. The Court held that there was not sufficient scientific evidence to link the defendant's current diagnosis to the charge in Count 3. The Court largely based this ruling on its view that such evidence was speculative as it pertained to events that occurred or statements that were made prior to defendant's diagnosis. The Court's order was silent as to the admissibility of such evidence as it relates to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

3

DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTION TO EXCLUDE
CASE NO. CR 16-66 (A) - PA

events or statements that post-dated Mr. Baca's May 2014 diagnosis of mild cognitive impairment, the second stage of the Alzheimer's disease, which Mr. Baca's and the Government's experts all concurred he suffered from starting on that date.

On February 22, 2016, the Government through the instant motion *in limine* acknowledges that it no longer wants to abide by its prior agreement and seeks to introduce the cumulative Antuna deposition statements without allowing Mr. Baca to attack the credibility of such statements.

## III.    STATEMENT OF FACTS

Mr. Baca was diagnosed with mild cognitive impairment by Dr. David Fox on May 13, 2014.  Gov't Motion, pg. 5; *see also* Ex. 3 to Gov't Motion, Fox Neurological Report ("Fox Report"), filed under seal.  In his report, Dr. Fox made a number of medical determinations that the Government omitted from its motion.

For instance, Dr. Fox determined, "[a]lthough stress-related anxiety is a major factor in his cognitive symptoms, it does not fully account for the pattern of results in my opinion. ***A neurological contribution seems likely*** although the etiology is unclear."  Fox Report, pg. 7.  Dr. Fox also made clear that "[p]recise etiology is unclear at this point and ***early dementia cannot be ruled out***."  *Id*. at 6.  Furthermore, Dr. Fox determined, "***[s]hort-term verbal/auditory recall is impaired*** and inferior to visual memory, which is intact.  This is true for list learning and ***logical memory (story recall) as well***."  *Id*. at 5.

On June 13, 2016, Board Certified Neurologist and Chair of the Neurology Department at the Keck School of Medicine at USC, Dr. Helena C. Chui, rendered an expert opinion regarding what factors related to the diagnosis of early Alzheimer's disease should be considered in contemplation of sentencing for Mr. Baca.  *See* Dr. Helena Chui Decl. ("Dr. Chui Decl."), ¶ 4.  Dr. Chui's opinion was based on a battery of scientific medical tests that were administered to Mr. Baca

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

4

DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTION TO EXCLUDE
CASE NO. CR 16-66 (A) - PA

between April 2014 and May 2016. These tests included neuropsychological testing done on two occasions (5/15/2014, and 10/26/2015), a CT scan of Mr. Baca's head (4/12/2014), MRI scans of his brain (5/20/2014, 5/6/2016), FDG PET scan (8/4/2014) and levels of beta-amyloid, tau, and pTau in the cerebrospinal fluid (2/11/2016; 5/10/2016). *Id*. at ¶ 4. Dr. Chui noted, since 4/2014, scores on the Montreal Cognitive Assessment (MoCA) have gradually declined: 26/30 (4/2014), 24/30 (10/16/2015), and 22/30 (5/6/2016). *Id*.

Based on the test results conducted as early as April 2014, Dr. Chui determined that Mr. Baca was in the early symptomatic states of Alzheimer's disease. *Id*. at ¶ 4. In her professional opinion, the accuracy of her diagnosis was estimated to be 90-95% based on the totality of the evidence, including:

> 1) history and evidence of slowly progressive cognitive decline during the period of consecutive medical evaluations, with normal motor and sensory examination,
>
> 2) neuropsychological testing that shows predominant impairment in the domain of episodic memory, with secondary impairment in executive function,
>
> 3) MRI scans showing loss of hippocampal and brain volume,
>
> 4) PET scan that shows glucose hypometabolism in both temporal lobes, and
>
> 5) CSF studies that show markedly elevated levels of tau and ptau, and low levels of beta-amyloid, consistent with AD.

*Id*. at ¶ 4.

Dr. Chui was recently consulted with respect to the impact Mr. Baca's diagnosis of mild cognitive impairment (MCI) due to Alzheimer disease would have on his ability to respond to questioning during a lengthy deposition in 2015. *Id*. at ¶ 5. Dr. Chui indicated that patients, like Mr. Baca, would typically have difficulty remembering new information (anterograde amnesia ["short term"

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

5

DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTION TO EXCLUDE
CASE NO. CR 16-66 (A) - PA

memory impairment]), but also experience progressive loss of previously learned information (retrograde amnesia ["long term" memory impairment]), as well as words or prior conversations, maintaining temporal orientation, and difficulty with insight and solving problems. *Id.*

Dr. Chui explained that patients with mild cognitive impairment as part of Alzheimer's disease often manifest signs of anosognosia, a lack of awareness of their memory and cognitive deficits. It is well recognized in the scientific literature that persons with Alzheimer's disease are generally poor judges of when symptoms actually began or the severity of their impairments. Symptoms can also be masked to the outside world by administrative or other support staff. Patients often greatly underestimate their condition, which sometimes appears as a denial. However, the patient is not intentionally denying their condition; they simply lack the awareness as a result of the effects of the disease on their brain. Dr. Chui's cursory review of PubMed analyzing anosognosia and Alzheimer disease revealed 119 peer reviewed papers in the current medical literature. *Id.*

Dr. Chui explained that patients with mild cognitive impairment due to Alzheimer's disease are more susceptible to fatigue, which may occur during a long deposition. *Id.* at ¶ 6. The disease not only impacts one's short and long term memory, but also has a severe impact on a patient's executive functions and ability to reason. A patient's online processing in real time is not as efficient. The stress and fatigue that can occur as a result of a patient participating in a lengthy and emotionally intense deposition may impact the patient's ability to remember clearly their relationships with friends, family, acquaintances, and colleagues, especially if they had changed recently.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

6

DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTION TO EXCLUDE
CASE NO. CR 16-66 (A) - PA

## IV.    ARGUMENT

### A.    The Court Should Preclude The Government From Introducing Mr. Baca's 2015 Deposition Statements Under Rule 403.

The Government's introduction of Mr. Baca's statements, made in an unrelated civil deposition in 2015, presents a substantial risk of prejudice, misleading the jury, and wasting the jury's time.  Accordingly, the Court should preclude the Government's introduction of such statements under Rule 403.

First, allowing the Government to selectively play statements from a civil deposition that postdates the relevant time period by almost four years, without the added context of the circumstances surrounding the allegations made against Mr. Baca in the *Antuna* case, creates an extremely high risk of confusing or misleading the jury.  The statements were made in the context of a civil case in which Mr. Baca was accused of having had a role in retaliatory transfers of LASD employees for their support of Mr. Tanaka's campaign for Sheriff.  This context is crucial for assessing any statements that Mr. Baca made concerning Mr. Tanaka or any evaluations that Mr. Baca may have approved, yet is entirely lost by simply playing these video recordings of Mr. Baca's testimony.  Without these facts, it will be impossible for the jury to fully understand Mr. Baca's statements concerning his relationship with Mr. Tanaka since those statements were made in the context of that lawsuit and not in the context of Mr. Baca's relationship with Mr. Tanaka as it pertained to the Anthony Brown investigation.  Additionally, it is unclear to what extent such context could be elicited on cross-examination of whatever witness the Government chooses to use to play Mr. Baca's statements and thus, eliciting such necessary rebuttal testimony will result in significant time wasting and distraction from the issues at hand.

Second, the Government's selective inclusion of only part of the line of questioning for some of the statements would require additional evidence under Rule 106 to avoid misleading the jury.  In *United States v. Wilde*, the district court

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

7

DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTION TO EXCLUDE
CASE NO. CR 16-66 (A) - PA

held that "the Federal Rules of Evidence [Rule 106] will not allow the Government to admit misleading snippets of Defendant['s] ... out-of-court statements as party admissions, while excluding other out-of-court statements that provide context to the Government's evidence." *United States v. Wilde*, 2015 U.S. Dist. LEXIS 4594 (N.D. Cal. Jan. 13, 2015).

For example, the Government omits the fact that during the minutes directly preceding Mr. Baca's statements regarding his "long," "father and son" relationship with Mr. Tanaka and regarding Mr. Tanaka's ability to follow his orders, Mr. Baca testified that particular statements made by Mr. Tanaka in years prior "definitely changed [that] relationship." *See* Hochman Decl., Exhibit 1, Deposition of L. Baca in *Antuna v. County of Los Angeles* at 17. Indeed, it was only after Mr. Baca was pressed regarding his statement that his relationship with Mr. Tanaka had changed that Mr. Baca made the statements the Government seeks to admit. *Id.* Thus, without this additional context, there is a substantial risk that the jury will be misled into believing that this relationship with Mr. Tanaka continued to exist during and after all the relevant events transpired. This is simply not the case and additional context will need to be introduced should Mr. Baca's statements be allowed.

Third, the statements by Mr. Baca that the Government seeks to play are largely duplicative of testimony that was offered by witnesses in the previous trial and who presumably testify to the same matters in this trial. For example, Government witness Cecil Rhambo testified that Mr. Baca's relationship with Mr. Tanaka was a "father son" relationship. *See* Hochman Decl., Exhibit 2, Excerpt of Testimony of Cecil Rhambo in Baca Trial, Dec. 9, 2016 at 8. Further, Government witnesses such as Robert Olmsted testified to the fact that Mr. Baca was ultimately responsible for promotions. *See* Hochman Decl., Exhibit 3, Excerpt of Testimony of Robert Olmsted in Baca Trial, Dec. 7, 2016 at 7. Additionally, Mr. Baca does not contest that he was ultimately responsible for promotions of certain LASD employees or that his actual signature on an evaluation meant that he agreed with

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

8

DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTION TO EXCLUDE
CASE NO. CR 16-66 (A) - PA

the contents of that evaluation.  Thus, it is entirely unnecessary to elicit such duplicative statements by way of playing Mr. Baca's prior deposition testimony and the Government suffers little to no prejudice by having such statements excluded.

Fourth, as discussed below, by playing statements that Mr. Baca made in 2015 concerning his memory of his relationship with Mr. Tanaka and his practices concerning promotions and evaluations while he worked as the Sheriff (prior to 2013 when Mr. Tanaka retired or January 2014 when Mr. Baca retired), the Government directly puts Mr. Baca's mental state and memory at the time of those statements were made at issue.  The black letter law dictates that Mr. Baca has the right to attack the credibility of such statements by presenting evidence that calls into question his mental state at the time.  This includes the undisputed fact that he was suffering from mild cognitive impairment, as a result of his Alzheimer's disease, and other evidence that directly relates to Mr. Baca's ability to recall events during the depositions.  Indeed, Mr. Baca's impaired memory is seen during the two days of the deposition as he answered that he "did not remember" or "did not recall" over 100 times across the two depositions.  *See* Hochman Decl., Exhibit 4, Summary Chart of Leroy Baca "I Don't Recall/Remember" Answers to Antuna Deposition Questions.  This is particularly true, in light of the fact that the Government seeks to introduce affirmative statements by Mr. Baca that he had no "'medication' or 'health issue,' precluding him from providing his 'best testimony.'"  At a minimum, the Government playing such statements for the jury would be extremely misleading, and any further argument as to the truth of such statements by the Government, in light of Mr. Baca's medical diagnosis, would be entirely improper.

Ultimately, Mr. Baca's statements that the Government seeks to introduce are marginally relevant at best given the entirely unrelated circumstances under which they were given.  Standing alone, such statements are also extremely misleading to the jury and will require significant rebuttal evidence that would otherwise be

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

9

DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTION TO EXCLUDE
CASE NO. CR 16-66 (A) - PA

unnecessary.  Thus, the minimal probative value of the cumulative statements is significantly outweighed by the risk of prejudice, misleading the jury, and wasting the jury's time, and the Court should preclude the statements under Rule 403.

### B.    If The Court Allows Mr. Baca's 2015 Statement's To Be Played, Mr. Baca Must Be Allowed To Present Evidence Of His Diagnosis of Mild Cognitive Impairment In Response

Should the Court allow the Government to play the statements made by Mr. Baca during his 2015 deposition, it must also allow Mr. Baca to introduce evidence that bears directly on his credibility at the time he made those statements.  This includes the undisputed fact that Mr. Baca was suffering from mild cognitive impairment, as a result of the Alzheimer's disease, at the time he made the statements in 2015.  Tellingly, the Government does not cite a single case in support of its attempt to introduce evidence regarding Mr. Baca's mental health while simultaneously preventing Mr. Baca from rebutting the same.  Indeed, the black letter law provides a clear right for Mr. Baca to introduce such evidence once the Government opens the door.

"[B]ecause the credibility of [a] party-opponent is always subject to an attack,"  once the statement of a party opponent has been admitted into evidence, the party opponent's "credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the [party opponent] had testified as a witness."  Fed. R. Evid. 806,  S. Rep. No. 1277, 93d Cong., 2d Sess. (1974), ("The committee considered it unnecessary to include statements contained in Rule 801(d)(2)(A) and (B)-the statement by the party-opponent himself . . . because the credibility of the party-opponent is always subject to an attack on his credibility.").

"The credibility of a witness can always be attacked by showing that his capacity to observe, remember, or narrate is impaired." *United States v. Kaplan*, 832 F. 2d 676, 684–85 (1st Cir. 1987) (citing J. Weinstein & M. Berger, 3

Weinstein's Evidence ¶ 607[04], at 607–55 (1987)); *United States v. Collicott*, 92 F.3d 973, 981, n. 5 (9th Cir. 1996), *as amended* (Oct. 21, 1996) (The methods of impeaching a witness include ". . . (4) attacking the perception or memory of the witness . . .").

While the Government is correct to point out that the Court ruled that evidence of Mr. Baca's mild cognitive impairment is not admissible as it pertains to statements made **prediagnosis**−a ruling with which Mr. Baca respectfully disagrees−the Court's ruling was predicated on the Court's view that there was not sufficient scientific evidence offered connecting Mr. Baca's diagnosis in 2014 to the statements made a year before.  However, should the Government open the door by introducing statements made by Mr. Baca in 2015, at a time where the undisputed scientific evidence clearly shows that Mr. Baca was suffering from mild cognitive impairment, the Court's ruling cannot be reasonably construed to preclude Mr. Baca from introducing evidence of his condition in response.

It is well-established in the Ninth Circuit that "[u]nder the rule of curative admissibility, or the "opening the door" doctrine, the introduction of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission. (Citations omitted)  The doctrine does not permit the introduction of evidence that is related to a different issue or is irrelevant to the evidence previously admitted." (Citation omitted)  *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir. Cal. 1988).

Here, the Government seeks to introduce testimony that Mr. Baca "understood his testimony was under oath and affirmed that there was no reason, including any 'medication' or 'health issue,' precluding him from providing his 'best testimony'", and other testimony that would give the jury the false impression that Mr. Baca did not have any health issues that would bear on his memory of events that occurred many years prior.  Gov't Motion, pps. 3-4.  It is indisputable

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

11

DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTION TO EXCLUDE
CASE NO. CR 16-66 (A) - PA

that such testimony bears directly on Mr. Baca's mental state at the time he made the statements and is directly relevant to Mr. Baca's right to contest the validity of the Government's assertions.

First, each of Mr. Baca's statements that the Government seeks to elicit pertains to either past events or past relationships and directly implicates Mr. Baca's ability to recall such events. Thus, the undisputed fact that Mr. Baca's memory was impaired at the time he made the statements is essential for the jury to evaluate the credibility of the statements.

Dr. Chui should be permitted to testify as to her medical opinion to a reasonable medical certainty that Mr. Baca's Alzheimer's disease also affected his ability to remember procedures and processes, events and relationships he had several years before the 2015 depositions while he was still at the Sheriff's Department involving then Undersheriff Paul Tanaka and promotions and evaluations he was involved with during that past period. Dr. Chui Decl. ¶ 7. Consistent with Dr. Chui's opinion, Dr. Fox determined, "*[s]hort-term verbal/auditory recall is impaired* and inferior to visual memory, which is intact. This is true for list learning and *logical memory (story recall) as well*." Fox Report, pg. 5.

Dr. Chui's conclusions are based on Mr. Baca's objectively-supported neurological diagnosis of having mild cognitive impairment due to Alzheimer's disease in May 2014 (before the 2015 depositions) and on longitudinal, prospective studies in the scientific literature showing that persons diagnosed with MCI due to AD manifest decline in memory and executive function beginning 3-4 years prior to their diagnosis of MCI. MCI due to Alzheimer disease would certainly have affected Mr. Baca's ability to remember at the time of the 2015 depositions, and would have been consistent with the fact that the transcripts of the depositions showed that Mr. Baca said he could not remember, recall or recollect the answers to over 100 questions. *Id*. at ¶ 7; *see also* Hochman Decl., Exhibit 4, Summary Chart

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

12

DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTION TO EXCLUDE
CASE NO. CR 16-66 (A) - PA

of Leroy Baca "I Don't Recall/Remember" Answers to Antuna Deposition Questions.

Second, Mr. Baca's cognitive impairment not only affected his ability to recall certain events accurately, but it increased his likelihood that he would suffer from conditions such as fatigue that would impair his ability to accurately answer questions in a deposition that spanned the course of two days.

Dr. Chui should be permitted to testify that it is her medical opinion to a reasonable medical certainty as a result of his condition, Mr. Baca was more susceptible to fatigue, which may occur during a long deposition. Dr. Chui Decl., ¶ 6. This is because the disease not only impacts one's short and long term memory, but also has a severe impact on a patient's executive functions and ability to reason. *Id*. Moreover, a patient's online processing in real time is not as efficient and the stress and fatigue that can occur as a result of a patient, such as Mr. Baca, participating in a lengthy and emotionally intense deposition may impact the patient's ability to remember clearly their relationships with friends, family, acquaintances, and colleagues, especially if they had changed recently. *Id*.

Third, the Government has represented that it intends to introduce Mr. Baca's statement that he gave at the beginning of the deposition whereby he stated that there was no reason, be it "medication" or "health issues" that would prevent him from giving his best testimony. The fact that Mr. Baca did in fact have a health issue, namely Alzheimer's, that did in fact effect his ability to testify, a fact which is uncontested, directly contradicts Mr. Baca's statement and would be crucial for the jury in considering Mr. Baca's statement.

Dr. Chui should be permitted to testify that it is her medical opinion to a reasonable medical certainty that Mr. Baca's apparent denial of having any health issues that would prevent him from giving his best testimony in the January 29, 2015 and April 6, 2015 depositions were symptoms of anosognosia due to Alzheimer's disease. This is the precise type of lack of self-awareness that is

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

13

DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTION TO EXCLUDE
CASE NO. CR 16-66 (A) - PA

defined in the medical field as anosognosia.  Dr. Chui Decl. ¶ 5.

## V.    CONCLUSION

For the reasons set forth above, the Court should exclude the Antuna deposition statements entirely or deny the Government's Motion to Exclude Evidence and Argument Pertaining to Defendant's Condition After 2014.

Respectfully submitted,

Dated:   February 24, 2017          MORGAN, LEWIS & BOCKIUS LLP

By  /s/ NATHAN J. HOCHMAN /s/
   Nathan J. Hochman
   Brianna L. Abrams
   Tinos Diamantatos
   Attorneys for Defendant
   LEROY BACA

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

14

DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTION TO EXCLUDE
CASE NO. CR 16-66 (A) - PA