Nathan J. Hochman, SBN 139137
Brianna Leigh Abrams, SBN 239474
MORGAN, LEWIS & BOCKIUS LLP
The Water Garden
Suite 2050 North
1601 Cloverfield Boulevard
Santa Monica, CA 90404-4082
Tel: +1.310.907.1000
Fax: +1.310.907.1001
e-mail: nathan.hochman@morganlewis.com
e-mail: brianna.abrams@morganlewis.com

Attorneys for Defendant
LEROY BACA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. CR 16-66 (A) - PA |
|---|---|
| Plaintiff, | **DECLARATION OF NATHAN J. HOCHMAN IN SUPPORT OF DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION TO EXCLUDE EVIDENCE AND ARGUMENT PERTAINING TO DEFENDANT'S CONDITION AFTER 2014** |
| vs. | |
| LEROY BACA, | |
| Defendant. | |

## DECLARATION OF NATHAN J. HOCHMAN

I, Nathan J. Hochman, declare and state as follows:

1. I am attorney licensed to practice law in the State of California and before this court. I am a partner in the law firm in the law firm Morgan, Lewis, Bockius, LLP, and counsel of record for Defendant Leroy Baca ("Mr. Baca") in the above-captioned matter. I make this declaration in support of Mr. Baca's Opposition to the Government's Motion to Exclude Evidence and Argument Pertaining to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

1

Defendant's Condition After 2014.

2.      I have personal knowledge of the matters stated herein, except where stated otherwise, and could and would competently testify thereto if called upon to do so.

3.      On or about December 3, 2016, I met and conferred in person with counsel for the Government and the Government agreed that it would not introduce Mr. Baca's statements made in the Antuna deposition after the defense argued that such statements would open the door to evidence regarding Mr. Baca's cognitive impairment.

4.      Attached as **Exhibit 1** is a true and correct copy of Excerpt of Videotaped Deposition of L. Baca in *Antuna v. County of Los Angeles*, No. CV14-05600-MWF, Jan. 29, 2015.

5.      Attached as **Exhibit 2** is a true and correct copy of Excerpt of Testimony of Cecil Rhambo in *U.S. v. Baca*, No. 16-CR-66 (A)-PA, Dec. 9, 2016.

6.      Attached as **Exhibit 3** is a true and correct copy of Excerpt of Testimony of Robert Olmsted in *U.S. v. Baca*, No. 16-CR-66 (A)-PA, Dec. 7, 2016.

7.      Attached as **Exhibit 4** is a true and correct copy of Summary Chart of Leroy Baca "I Don't Recall/Remember" Answers to Antuna Deposition Questions.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

2

DECL. OF NATHAN J. HOCHMAN ISO
DEFENDANT'S OPPOSITION TO THE
GOVT'S MOTION TO EXCLUDE
EVIDENCE
CASE NO. CR 16-66 (A) - PA

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 24, 2017, at Santa Monica, California.

/s/     Nathan J. Hochman
NATHAN J. HOCHMAN

DECL. OF NATHAN J. HOCHMAN ISO
DEFENDANT'S OPPOSITION TO THE
GOVT'S MOTION TO EXCLUDE
EVIDENCE
CASE NO. CR 16-66 (A) - PA

# Exhibit 1

# In the Matter of:

## Charles Antuna vs. County of Los Angeles

**Videotaped Deposition of Leroy David Baca, Volume I**

01/29/2015

Job #: 47566



**COURT REPORTERS, INC.**

(818)988-1900

A133949

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHARLES ANTUNA, ROCIO MARTINEZ, DAVID WATERS, KEVIN HEBERT, ROBERT TUBBS, LOUIS DURAN, ROBERT WHEAT, CASEY DOWLING, )
)
)
)
)
)

    PLAINTIFFS, )
)  No. CV14-05600-MWF
  VS. )        (PLAx)
)
COUNTY OF LOS ANGELES; )  (VOLUME I
SHERIFF LEROY BACA; AND DOES 1 )  PAGES 1 - 233)
THROUGH 10, INCLUSIVE, )
)
    DEFENDANTS. )
)

VIDEOTAPED DEPOSITION OF LEROY DAVID BACA

THURSDAY, JANUARY 29, 2015

FILE NO. 47566

REPORTED BY:  D'ANNE MOUNGEY, CSR 7872

Exhibit 1, Page 6

A133950

## Page 2

VIDEOTAPED DEPOSITION OF LEROY DAVID BACA, TAKEN ON BEHALF OF PLAINTIFFS AT 23002 VICTORY BOULEVARD, CALIFORNIA, COMMENCING AT 10:45 A.M. ON THURSDAY, JANUARY 29, 2015, BEFORE D'ANNE MOUNGEY, CSR 7872.

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFFS:

LAW OFFICES OF GOLDBERG & GAGE
BY: BRADLEY C. GAGE, ESQ.
23002 VICTORY BOULEVARD
WOODLAND HILLS, CALIFORNIA 91367
(818) 340-9252
BGAGE@GOLDBERGANDGAGE.COM

FOR THE DEFENDANTS:

PETERSON, BRADFORD & BURKWITZ
BY: GEORGE E. PETERSON, ESQ.
100 NORTH FIRST STREET
SUITE 300
BURBANK, CALIFORNIA 91502
(818) 562-5800
GPETERSON@PB-LLP.COM

## Page 3

I N D E X (CONTINUED):

ALSO PRESENT:

BRIAN HERSHMAN, ESQ.

ESROM JAYASINGHE, VIDEOGRAPHER

KEVIN HEBERT

DAVID WATERS

CHARLES ANTUNA

CASEY DOWLING

ROBERT WHEAT

LOUIS DURAN

## Page 4

I N D E X (CONTINUED):

| WITNESS | EXAMINATION | PAGE |
|---|---|---|
| LEROY DAVID BACA | | |
| | BY MR. GAGE | 8 |

E X H I B I T S

| NO. | PAGE | DESCRIPTION |
|---|---|---|
| 52 | 107 | EMAIL CHAIN, 12-5-13 |
| 53 | 168 | PARTIAL TRANSCRIPT OF BACA, LEROY, VOL. 1, JULY 19, 2013 IN THE MATTER OF PATRICK MAXWELL V. COUNTY OF LOS ANGELES |
| 54 | 224 | "LOS ANGELES TIMES" ARTICLE |

## Page 5

I N D E X (CONTINUED):

QUESTIONS INSTRUCTED TO BE MARKED OR NOT ANSWERED:

| PAGE | LINE |
|---|---|
| 37 | 13 |
| 48 | 5 |
| 48 | 24 |
| 49 | 5 |
| 49 | 14 |
| 50 | 24 |
| 68 | 24 |
| 70 | 3 |
| 181 | 5 |

INFORMATION REQUESTED

(NONE)

Personal Court Reporters, Inc.

Page 62

Do you see that is a document indicating the partial transcript of witness testimony from the CCJV meeting on July 27th, 2012? First page. Right up here, sir (indicating).

A    Okay.

Q    So does this refresh your recollection that you gave testimony to the CCJV on approximately July 27, 2012?

A    It appears to be.

Q    And as of that date, did you have any change in your relationship with Paul Tanaka?

A    As of this date?

Q    Correct.

A    I don't believe so.

Q    Did you ever meet with Todd Rogers to discuss your campaign for sheriff?

A    My campaign?

Q    Yes. Running for sheriff in 2014.

A    I don't consult with my staff about what I do in a political campaign. The only person I've ever spoken to is Paul.

Q    Did you ever discuss running for sheriff with James Hellmold?

A    Me running for sheriff with James Hellmold?

Q    Yes, yes.

Page 63

A    Like I mentioned, I don't discuss my political activities in running for the sheriff's position with the idea in mind that individuals are going to be solicited to support me.

Q    The Administrative Services Division that we saw on Exhibit 30 that the undersheriff was over the commander in charge of the --

MR. PETERSON: Hold on. Let him find the document.

MR. GAGE: Sorry.

BY MR. GAGE:

Q    The commander in charge of the Administrative Services Division at that time in 2012 was Dave Waters; correct?

A    I believe so, yes.

Q    You talked about the gray area that you had a conversation with Paul Tanaka about it. What did you and he discuss?

A    I'm not going to discuss a personnel conversation.

Q    So you're refusing to answer that question; correct?

A    I think it's inappropriate.

Q    I just need to make sure it's clear on the record that you're refusing to answer it.

Page 64

MR. PETERSON: No. He feels precluded from answering it I think is what he's telling you.

BY MR. GAGE:

Q    I'm asking the question: Are you going to tell me what was said between you and Paul Tanaka?

MR. PETERSON: Do you feel you can answer that question or do you feel there's some rule that precludes you?

THE WITNESS: I think I can answer it, but it would be a short answer.

MR. PETERSON: Then answer it.

BY MR. GAGE:

Q    What did you and Paul Tanaka discuss regarding the gray area?

A    I can only say what I said. And I said, "I can't defend it."

Q    What did he tell you?

A    I'm not going to comment on what Mr. Tanaka's view is on this. He understood what I said.

Q    So you're not -- you're refusing to tell us today what Mr. Tanaka said to you about the gray area; is that correct?

A    I can't remember what he said about the gray areas is more appropriate.

Q    Okay. So all that you can recall about your

Page 65

conversation with Paul Tanaka about the gray area is "I cannot defend it"; is that true?

A    That's correct.

Q    And how long did you and Mr. Tanaka talk about the gray area for?

A    Not long.

Q    More than 20 minutes or less than 20 minutes?

A    I can't recall.

Q    Do you know if it was more or less than 40 minutes that you --

A    I can't recall.

Q    Let me finish my question, please.

Do you know if you spoke with Mr. Tanaka about the gray area for more than an hour or less than an hour?

MR. PETERSON: You can respond. If you got an estimate, you can make the estimate.

THE WITNESS: Less than two minutes.

BY MR. GAGE:

Q    So you spent less than two minutes on an issue that was so important to you that it changed a long-term relationship that you had with Paul Tanaka; is that a true statement?

MR. PETERSON: That's argumentative as phrased.

Exhibit 1, Page 8

A133966

**Page 66**

You can respond.

THE WITNESS: It definitely changed the relationship.

BY MR. GAGE:

Q    You spent less than two minutes on that issue that definitely changed your relationship with Paul Tanaka; true?

A    My testimony will confirm that.

Q    So when you say your testimony will confirm that --

A    You're saying what I'm saying and I'm saying what I've already said, and then I'm saying I agree with what you said.

Q    Okay. That's fine.

And from this issue that was so important to you that changed a long-term relationship that you had with Paul Tanaka, the only thing that you can recall said by either of you was, "I can't defend this"; correct?

MR. PETERSON: Do you understand the question?

THE WITNESS: I understand the question.

MR. PETERSON: Then you can respond.

THE WITNESS: Yes.

///

**Page 67**

BY MR. GAGE:

Q    And how long term of a relationship did you have with Paul Tanaka?

A    Long.

Q    And can you tell us the nature of that relationship?

A    Kind of like father and son.

Q    Extremely close then; correct?

A    Correct.

Q    You thought of yourself as a mentor grooming Paul Tanaka to rise through the ranks; is that accurate?

A    Not thought of. In fact did raise him through the ranks.

Q    You expected he would at some point take your place as the sheriff of LA County Sheriff's Department; correct?

A    That was very possible.

Q    Did you ever have discussions with Paul Tanaka about having him as your heir of parent, in other words, to become the next sheriff after you at some point?

MR. PETERSON: Excuse me. Ambiguous and argumentative as phrased.

BY MR. GAGE:

Q    Go ahead.

**Page 68**

A    That's possible.

Q    When do you believe you had conversations with Mr. Tanaka regarding him becoming the next sheriff after you?

A    I don't recall.

Q    What do you recall was said between you and Mr. Tanaka about him becoming the next sheriff after you?

A    I don't recall that either.

Q    Don't recall anything at all?

A    Well, you're asking for specific things that occurred over periods of time that to me were not in evidence as having to be acted upon at the time.

Q    I don't understand your answer. Not in evidence to be acted upon, what do you mean?

A    You don't talk about these things in some fashion that allows you to mull over these things. I felt that everything that Paul did was on a high level of great competence, and that's the best way I can express myself.

Q    Why did you feel that way?

A    Because he had a unique talent of doing exactly what I wanted done.

Q    Including in connection with the jails?

MR. PETERSON: Argumentative, lacks

**Page 69**

foundation and I think this intrudes again on the issue of the current investigations.

BY MR. GAGE:

Q    Just a "yes" or a "no."

MR. PETERSON: Brian --

Read the question back.

MR. HERSHMAN: Let's take a break. Let's talk about that.

MR. GAGE: No. We don't need a break. Just mark that and we'll do it after lunch.

MR. PETERSON: Let's read the question back so when we break you'll have in mind --

MR. GAGE: You'll get a chance to do it at lunch. I'll just go onto something else until then. We'll just mark that. Take a lunch break and just before we leave --

MR. PETERSON: I would like to hear it back.

MR. GAGE: At the lunch break --

MR. PETERSON: I would like to hear it back.

MR. GAGE: I'm withdrawing that.

MR. PETERSON: You don't get any say in this.

MR. GAGE: Sure I do. I'm withdrawing the question.

MR. PETERSON: It's too bad. I'm asking to read it back.

Exhibit 1, Page 9

A133967

**Page 70**

Read it back, Ms. Reporter.

MR. GAGE: I don't think you get to tell her.

MR. PETERSON: Come on. Read it back. Don't respond until we hear this back. I want to hear it back.

MR. GAGE: Mark that statement, please.

MR. PETERSON: Oh geez. What's with this marking stuff? What do you think she's doing? She's doing nothing but marking stuff nonstop.

Go ahead. Read it back.

(The record was read as follows:

Q    Including in connection with the jails?)

MR. PETERSON: Thank you for that.

Now, what's your next question?

BY MR. GAGE:

Q    Did you ever meet with Todd Rogers to discuss Paul Tanaka's campaign for sheriff?

A    No.

Q    Did you ever meet with Jimmy Hellmold to discuss Tanaka's campaign for sheriff?

A    No.

Q    Did you ever learn that there was a list composed of who your supporters were by members of the sheriff's department?

**Page 71**

MR. PETERSON: We're using the word "supporters" in contrast to "contributors"; right?

MR. GAGE: Sure.

THE WITNESS: I've never seen such a document.

BY MR. GAGE:

Q    Did you ever learn of any document indicating a list of sheriff's department employees that supported Paul Tanaka?

A    I've never seen such a list as well.

Q    Have you heard of one?

A    No.

Q    Did you ever hear there was a hit list comprised?

MR. PETERSON: Argumentative, ambiguous.

THE WITNESS: I heard that, but it's not true.

BY MR. GAGE:

Q    Where did you hear about it?

A    I heard about it -- I'm not sure who, but the allegation was that -- made by some source that Mr. Hellmold had a hit list.

Q    Did you ever investigate whether that was a true claim or not?

A    I asked Mr. Hellmold, "Do you have a hit

**Page 72**

list?"

Q    What did he say?

A    He said, "That's ridiculous." He doesn't have a hit list.

Q    Who told you about that allegation?

A    I don't recall. It was one of these gossip type pieces of information that worked its way into my office.

Q    Something that was listed first in "Witness LA"?

A    I don't know about "Witness LA" as well as some others do.

Q    Did you ever do a formal investigation of the accusation that James Hellmold had a hit list of Tanaka supporters?

A    I believe that James Hellmold tells the truth, and if he says he didn't have a hit list, he didn't have a hit list.

Q    Would creating a hit list of Tanaka's supporters within the department violate department policy, as you understood it?

MR. PETERSON: Ambiguous and argumentative.

THE WITNESS: There's no hit list.

BY MR. GAGE:

Q    If there was, would that be a violation of

**Page 73**

department policies, sir?

MR. PETERSON: Same objections; argumentative and ambiguous.

THE WITNESS: It's too broad. Anyone can write names on a piece of paper and send it around and say this is what is going to happen to these persons. And, to me, that's part of the side effects of political efforts by people who want to join sides.

BY MR. GAGE:

Q    Did the sheriff's department have a policy against creating a list of individuals to be retaliated against because of their First Amendment rights?

A    I have never seen a hit list and I've -- I don't think anybody else has ever seen a hit list, so I don't know why this is relevant.

Q    I'm asking about policy, sir.

Was there any policy that would prohibit retaliating against employees by listing those individuals that were political supporters of a rival of yours, that you were aware of?

A    I don't know the answer to that.

Q    Were you the policy maker for the sheriff's department?

A    Of course the department has staff that helps me with policy.

Page 230

because you supported Mr. Tanaka, in order for it to qualify as a retaliation.

MR. GAGE: I think this is a good stopping point for the night, and we'll figure a mutually convenient time for Volume II.

I would propose we relieve the court reporter of her duties under the Code with respect to maintaining the original;

Original can be sent to George. He'll see to it that the witness reads it, signs under penalty of perjury, notifies me of any changes or corrections thereto within 40 days of your receipt of the original;

If for any reason the original is not available or signed at the time of trial, or if we have not been notified of changes or corrections, then an unsigned certified copy can be used in lieu of an original for all purposes;

George will agree to file the original with the court on the first day of trial and upon reasonable notice for all other purposes.

So stipulated.

MR. PETERSON: So stipulated.

MR. HERSHMAN: I'm not a party to this case.

MR. GAGE: You're making objections, so I thought you should stipulate.

Page 231

MR. HERSHMAN: For convenience purposes alone, then I'll stipulate, so you don't have to deal with some claim that it wasn't properly handled.

MR. GAGE: That's all I even want.

MR. PETERSON: I want the number of minutes. Before we go off the record, I want the number of minutes.

THE VIDEOGRAPHER: We are at four hours and 55 minutes.

MR. GAGE: Okay.

MR. PETERSON: Two more hours.

MR. GAGE: We have two hours and five minutes to go.

Go off record.

MR. PETERSON: Off the record.

THE VIDEOGRAPHER: This is the conclusion of this session of the deposition, and media unit three. Off record at 1726.

(Whereupon the deposition proceedings were concluded at 5:26 p.m.)

-oOo-

Page 232

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF LOS ANGELES  )

I, LEROY DAVID BACA, declare under penalty of perjury that the foregoing testimony is true and correct to the best of my knowledge and belief.

Dated this ___ day of _____, 20__.

_____
(LEROY DAVID BACA)

Page 233

STATE OF CALIFORNIA    )
COUNTY OF LOS ANGELES ) ss.

I, D'Anne Moungey, C.S.R. No. 7872 in and for the State of California, do hereby certify:

That prior to being examined, the witness named in the foregoing deposition was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said deposition was taken down by me in shorthand at the time and place therein named and thereafter reduced to typewriting under my direction, and the same is a true, correct, and complete transcript of said proceedings;

That if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript { } was { } was not required.

I further certify that I am not interested in the event of the action.

Witness my hand this _____ day of _____, 20___.

_____
Certified Shorthand Reporter
For the State of California

# Exhibit 2

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

HONORABLE PERCY ANDERSON, U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA,        )
                                 )
              Plaintiff,          )      Case No.
                                 )
        vs.                       )      CR 16-00066(A)-PA
                                 )
LEROY D. BACA,                    )      PAGES (1 to 23)
                                 )
              Defendant.          )
                                 )

REPORTER'S PARTIAL TRANSCRIPT OF
TESTIMONY OF CECIL RHAMBO
FRIDAY, DECEMBER 9, 2016
1:15 P.M.
LOS ANGELES, CALIFORNIA

MIRANDA ALGORRI, CSR 12743, CRR
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 435
LOS ANGELES, CALIFORNIA 90012
MIRANDAALGORRI@GMAIL.COM

UNITED STATES DISTRICT COURT

DX699

2

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

EILEEN M. DECKER
United States Attorney
BY:  BRANDON FOX
BY:  EDDIE A. JAUREGUI
Assistant United States Attorneys
United States Courthouse
312 North Spring Street
Los Angeles, California 90012

**FOR THE DEFENDANT:**

MORGAN LEWIS AND BOCKIUS LLP
BY:  NATHAN J. HOCHMAN
BY:  BRIANA ABRAMS
The Water Garden
1601 Cloverfield Boulevard
Suite 2050 North
Santa Monica, California 90404

MORGAN LEWIS AND BOCKIUS LLP
BY:  TINOS DIAMANTATOS
77 West Wacker Drive
Chicago, Illinois 60601

**UNITED STATES DISTRICT COURT**

8

A       Yes.

Q       Could you please describe their relationship as it existed up until September of 2011?

A       The sheriff's relationship with Mr. Tanaka was professional.  Probably a little closer -- almost personal.  I think the sheriff viewed Paul as kind of mentoring him.  Almost father son sort of.

Q       When you were in charge of custody as assistant sheriff, what were your duties?

A       I oversaw the division chief in custody.  As the assistant sheriff, custody was just one part but a very large part of that responsibility.  So, you know, the day-to-day management or administration of custody at that point went through the division chiefs.

Q       Who did you report to?

A       Directly to Mr. Tanaka.

Q       Where was your office located?

A       It was located on the fourth floor in the southwest portion of the building.

Q       When you first became assistant sheriff over custody, can you please describe the relationship between the ACLU and the sheriff's department?

A       It was -- if I'm recalling the time frame, the ACLU was bringing some things to the sheriff's attention, to our department's attention that they were very concerned about.

23

CERTIFICATE OF OFFICIAL REPORTER

I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED THIS _10TH_ DAY OF DECEMBER, 2016.

/S/ MIRANDA ALGORRI

MIRANDA ALGORRI, CSR NO. 12743, CRR
FEDERAL OFFICIAL COURT REPORTER

**UNITED STATES DISTRICT COURT**

# Exhibit 3

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

HONORABLE PERCY ANDERSON, U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA,           )
                                    )
                Plaintiff,          )    Case No.
                                    )
        vs.                         )    CR 16-00066(A)-PA
                                    )
LEROY D. BACA,                      )    PAGES (1 to 21)
                                    )
                Defendant.          )
_____)

REPORTER'S PARTIAL TRANSCRIPT OF
TRIAL TESTIMONY OF ROBERT OLMSTED
WEDNESDAY, DECEMBER 7, 2016
1:17 P.M.
LOS ANGELES, CALIFORNIA

MIRANDA ALGORRI, CSR 12743, CRR
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 435
LOS ANGELES, CALIFORNIA 90012
MIRANDAALGORRI@GMAIL.COM

UNITED STATES DISTRICT COURT

2

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

EILEEN M. DECKER
United States Attorney
BY:  BRANDON FOX
BY:  EDDIE A. JAUREGUI
Assistant United States Attorneys
United States Courthouse
312 North Spring Street
Los Angeles, California 90012

**FOR THE DEFENDANT:**

MORGAN LEWIS AND BOCKIUS LLP
BY:  NATHAN J. HOCHMAN
BY:  BRIANA ABRAMS
The Water Garden
1601 Cloverfield Boulevard
Suite 2050 North
Santa Monica, California 90404

MORGAN LEWIS AND BOCKIUS LLP
BY:  TINOS DIAMANTATOS
77 West Wacker Drive
Chicago, Illinois 60601

A        Commander.

Q        What is a commander?

A        Commander is one of the executive members of the sheriff's department.  I can give you the ranking structure if you'd like.

Q        Sure.  Why don't we do that.

So who's at the top?

A        At the top is the sheriff and then undersheriff, two assistant sheriffs.  You have 12, 13 chiefs depending on the time of year, time of day.  They have commanders, captains, lieutenants, sergeants, and deputies.

Q        And, generally, the promotion process, who decides who's promoted to undersheriff?

A        The sheriff himself.

Q        And what I'm referring to -- I just use the present tense, but I'm referring to the time when you were in the sheriff's department just to make that clear.

When you were in the sheriff's department, who decided who would be undersheriff?

A        The sheriff would.

Q        What about assistant sheriff?  Who had the ultimate decisionmaking authority?

A        The sheriff as well.

Q        And who had the ultimate decisionmaking authority to name chiefs?

21

CERTIFICATE OF OFFICIAL REPORTER

I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED THIS  10TH  DAY OF DECEMBER, 2016.

/S/ MIRANDA ALGORRI
_____
MIRANDA ALGORRI, CSR NO. 12743, CRR
FEDERAL OFFICIAL COURT REPORTER

**UNITED STATES DISTRICT COURT**

# Exhibit 4

| Depo | Instance | Quote | Citation | Page # | Bates # |
|---|---|---|---|---|---|
| | | **January 29, 2015 Deposition** | | | |
| 1/29/2015 | 1 | I'm not sure…Could be either way | 11:18-14 | 4 | A133953 |
| 1/29/2015 | 2 | "No.  Not that I can recall." | 22:25 | 7 | A133956 |
| 1/29/2015 | 3 | Q: "…, remember?" A: "No." | 32:23-25 | 9 | A133958 |
| 1/29/2015 | 4 | Q: "Remember when…?" A: "I don't recall that." | 33:1-5 | 9 | A133958 |
| 1/29/2015 | 5 | Q: "Do you recall…?"  A: "I don't recall him ever saying that." | 33:6-10 | 9 | A133958 |
| 1/29/2015 | 6 | Q: "Do you recall…?"  A: "No." | 33:11-13 | 9 | A133958 |
| 1/29/2015 | 7 | "I don't remember" | 38:3 | 10 | A133690 |
| 1/29/2015 | 8 | "I can't recall." | 39:11 | 11 | A133960 |
| 1/29/2015 | 9 | Q: "How many months after?"  A: "I don't know." | 38:23-24 | 11 | A133960 |
| 1/29/2015 | 10 | Q: "Was it within six months…?"  A: "I'm not sure." | 38:25-39:3 | 11 | A133960 |
| 1/29/2015 | 11 | Q: "How did you learn…?" A: "I'm not sure about that either…" | 39:4-8 | 11 | A133960 |
| 1/29/2015 | 12 | "I can't recall when Mr. Tanaka did not do that…" | 46:15-17 | 13 | A133962 |
| 1/29/2015 | 13 | "Not that I can recall at the moment." | 53:20 | 14 | A133963 |
| 1/29/2015 | 14 | "I can't remember what he said about the gray areas is more appropriate" | 64:23-24 | 17 | A133966 |
| 1/29/2015 | 15 | "I can't recall." | 65:8 | 17 | A133966 |
| 1/29/2015 | 16 | "I can't recall." | 65:11 | 17 | A133966 |
| 1/29/2015 | 17 | "I don't recall." | 68:5 | 18 | A133967 |
| 1/29/2015 | 18 | "I don't recall that either." | 68:9 | 18 | A133967 |
| 1/29/2015 | 19 | "I don't recall…" | 72:6-8 | 19 | A133968 |
| 1/29/2015 | 20 | "I don't recall.  Not many." | 75:15 | 20 | A133969 |
| 1/29/2015 | 21 | "…Is he a sergeant or deputy?  I can't recall…" | 78:20-79:1 | 21 | A133970 |
| 1/29/2015 | 22 | "I can't recall." | 79:15 | 21 | A133970 |
| 1/29/2015 | 23 | "I said I can't recall." | 79:17 | 21 | A133970 |
| 1/29/2015 | 24 | "No, I can't recall." | 81:25 | 21 | A133970 |
| 1/29/2015 | 25 | "Not that I can recall, no." | 95:25 | 25 | A133974 |
| 1/29/2015 | 26 | "…I can't recall who else…" | 96:10-12 | 25 | A133974 |
| 1/29/2015 | 27 | "… I don't remember whether…" | 100:5-5 | 26 | A133975 |
| 1/29/2015 | 28 | "I don't recall that, but I'm just…." | 107:23-25 | 28 | A133977 |
| 1/29/2015 | 29 | "Not that I can recall." | 124:6 | 32 | A133981 |
| 1/29/2015 | 30 | Q: "…that you can recall?"  A: "I don't…I don't have any comparative anal\ | 125:9-18 | 32 | A133981 |
| 1/29/2015 | 31 | "I don't know.  I don't recall." | 138:21 | 36 | A133985 |
| 1/29/2015 | 32 | "I don't recall.  It's possible." | 139:17 | 36 | A133985 |
| 1/29/2015 | 33 | "The amount I don't remember, but I know there was a judgment." | 145:3-6 | 37 | A133986 |
| 1/29/2015 | 34 | Q: "…Do you remember that…?"  A: "No, that one I don't." | 145:7-13 | 37 | A133986 |
| 1/29/2015 | 35 | "I don't recall that, but tell me about more." | 155:20 | 40 | A133989 |
| 1/29/2015 | 36 | "…Let me answer it this way: I don't recall the need…" | 157:15-19 | 40 | A133989 |

Case 2:16-cr-00066-PA   Document 273-1   Filed 02/24/17   Page 23 of 26   Page ID #:5521

Exhibit 4, Page 23

# Summary Chart of Leroy Baca "I Don't Recall/Remember" Answers to Antuna Deposition Questions

Case 2:16-cr-00066-PA    Document 273-1    Filed 02/24/17    Page 24 of 26    Page ID #:5522

Exhibit 4, Page 24

| Depo | Instance | Quote | Citation | Page # | Bates # |
|---|---|---|---|---|---|
| 1/29/2015 | 37 | Q: "So do you know Rocky Martinez?..." A: "I don't recall ... I can't remem | 173:16-20 | 44 | A133993 |
| 1/29/2015 | 38 | "...I don't recall seeing this at all." | 172:22-23 | 44 | A133993 |
| 1/29/2015 | 39 | "I don't recall." | 173:25 | 44 | A133993 |
| 1/29/2015 | 40 | Q: "Do you recall having...?" A: "It's possible." | 184:22-25 | 47 | A133996 |
| 1/29/2015 | 41 | "I stated earlier, I don't recall that particular conversation. It's possible. So | 187:13-15 | 48 | A133997 |
| 1/29/2015 | 42 | "I don't recall." | 188:9 | 48 | A133997 |
| 1/29/2015 | 43 | "Not that I can recall." | 194:24 | 50 | A133999 |
| 1/29/2015 | 44 | "It's possible. I don't remember." | 218:4 | 56 | A134005 |
| April 6, 2015 Deposition | | | | | |
| 4/6/2015 | 45 | "I don't recall, but it's possible." | 258:6 | 7 | A134016 |
| 4/6/2015 | 46 | "I can't recall." | 271:8 | 11 | A134020 |
| 4/6/2015 | 47 | "I don't recall." | 271:12 | 11 | A134020 |
| 4/6/2015 | 48 | "I don't recall." | 272:7 | 11 | A134020 |
| 4/6/2015 | 49 | "Not that I can recall." | 290:4 | 15 | A134024 |
| 4/6/2015 | 50 | "Sometime in 2013. I don't recall the date." | 291:18-19 | 16 | A134025 |
| 4/6/2015 | 51 | "Not that I can recall." | 292:11 | 16 | A134025 |
| 4/6/2015 | 52 | "I can't recall that either." | 300:24 | 18 | A134027 |
| 4/6/2015 | 53 | "...And I indicated to you that I don't recall exactly what I said... But at the | 302:22-303:1 | 18-19 | A134027-28 |
| 4/6/2015 | 54 | Q: "...do you remember...?" A: "I don't recall that." | 304:9-12 | 19 | A134028 |
| 4/6/2015 | 55 | "I said I don't recall that" | 304:13-14 | 19 | A134028 |
| 4/6/2015 | 56 | Q: "...do you recall...?" A: "I don't recall that either." | 304:15-17 | 19 | A134028 |
| 4/6/2015 | 57 | "Like I said, I don't recall that." | 304:18-19 | 19 | A134028 |
| 4/6/2015 | 58 | Q: "...Do you recall saying that?" A: "I don't recall that." | 304:20-23 | 19 | A134028 |
| 4/6/2015 | 59 | "Like I said, I don't recall that." | 304:24-25 | 19 | A134028 |
| 4/6/2015 | 60 | Q: "Do you recall...?" A: "I don't recall that either." | 305:8-12 | 19 | A134028 |
| 4/6/2015 | 61 | "I don't recall if it was him or who – I'm just unable to recall him." | 303:22-23 | 19 | A134028 |
| 4/6/2015 | 62 | Q: "Were you aware...?" A: "I don't know." | 303:24-304:1 | 19 | A134028 |
| 4/6/2015 | 63 | Q: "Do you recall...?" A: It's possible." | 304:2-8 | 19 | A134028 |
| 4/6/2015 | 64 | "Well I don't recall making that statement." | 306:6-7 | 19 | A134028 |
| 4/6/2015 | 65 | "Like I said, I don't recall." | 306:10 | 19 | A134028 |
| 4/6/2015 | 66 | "I don't recall telling a reserve anything like that." | 306:16-17 | 19 | A134028 |
| 4/6/2015 | 67 | "I don't recall making it." | 306:19 | 19 | A134028 |
| 4/6/2015 | 68 | "Like I said, I don't recall making a statement like that." | 306:24-25 | 19 | A134028 |
| 4/6/2015 | 69 | "I don't recall." | 307:9 | 20 | A134029 |
| 4/6/2015 | 70 | "I don't recall that." | 307:20 | 20 | A134029 |
| 4/6/2015 | 71 | "Tyeah, I don't even recall that." | 308:4-5 | 20 | A134029 |
| 4/6/2015 | 72 | "I don't recall that either." | 308:22 | 20 | A134029 |

# Summary Chart of Leroy Baca "I Don't Recall/Remember" Answers to Antuna Deposition Questions

Case 2:16-cr-00066-PA   Document 273-1   Filed 02/24/17   Page 25 of 26   Page ID #:5523

Exhibit 4, Page 25

| Depo | Instance | Quote | Citation | Page # | Bates # |
|---|---|---|---|---|---|
| 4/6/2015 | 73 | "I don't recall ever making an offensive comment like that." | 318:9-10 | 22 | A134031 |
| 4/6/2015 | 74 | "I don't recall who was in the room…" | 322:5-7 | 23 | A134032 |
| 4/6/2015 | 75 | "…that is a fabrication of what could have been said that I can't recall…" | 322:13-15 | 23 | A134032 |
| 4/6/2015 | 76 | "I can't recall, but it's possible." | 326:15 | 24 | A134033 |
| 4/6/2015 | 77 | "I don't recall Mr. Tanaka reciting…" | 327:4-6 | 25 | A134034 |
| 4/6/2015 | 78 | "I don't remember the exact month." | 335:21 | 27 | A134036 |
| 4/6/2015 | 79 | "I don't even recall when it surfaced." | 335:24 | 27 | A134036 |
| 4/6/2015 | 80 | "Not that I can recall…" | 336:19-21 | 27 | A134036 |
| 4/6/2015 | 81 | "That could be.  I don't recall." | 338:14 | 27 | A134036 |
| 4/6/2015 | 82 | "I don't recall that part." | 339:7 | 28 | A134037 |
| 4/6/2015 | 83 | "I don't recall." | 345:11 | 29 | A134038 |
| 4/6/2015 | 84 | "I don't recall." | 347:9 | 30 | A134039 |
| 4/6/2015 | 85 | "I don't recall what questions or that questions…" | 347:21-25 | 30 | A134039 |
| 4/6/2015 | 86 | "…I don't recall…" | 349:8-13 | 30 | A134039 |
| 4/6/2015 | 87 | "I don't recall." | 359:5 | 33 | A134042 |
| 4/6/2015 | 88 | "I don't recall ever having such a press conference." | 368:6-7 | 35 | A134044 |
| 4/6/2015 | 89 | "Well, I don't recall but…I just don't recall today…" | 370:25-371:6 | 35-36 | A134044-45 |
| 4/6/2015 | 90 | "To this day, I don't recall…" | 371:13-17 | 36 | A134045 |
| 4/6/2015 | 91 | "I don't recall the word -- I don't recall a new chart…" | 371:22-25 | 36 | A134045 |
| 4/6/2015 | 92 | "I don't recall making a statement like that." | 372:17-18 | 36 | A134045 |
| 4/6/2015 | 93 | "I don't recall, except that comment." | 374:2-3 | 36 | A134045 |
| 4/6/2015 | 94 | "No, I don't recall that." | 387:19 | 40 | A134049 |
| 4/6/2015 | 95 | "I don't recall when exactly it originated." | 389:15 | 40 | A134049 |
| 4/6/2015 | 96 | "I don't recall that we were suspended…" | 416:12-14 | 47 | A134056 |
| 4/6/2015 | 97 | "…I don't recall when his probation expired." | 425:2-4 | 49 | A134058 |
| 4/6/2015 | 98 | Q: "Do you recall that?" A: "I wouldn't say that…" | 430:3-7 | 50 | A134059 |
| 4/6/2015 | 99 | "I assume I saw it.  I don't remember seeing it." | 465:5-6 | 59 | A134068 |
| 4/6/2015 | 100 | "I don't recall Pat running in 2002.  But if you say so, I'll accept it." | 466:12-13 | 59 | A134068 |
| 4/6/2015 | 101 | "…I can't remember exact contact." | 479:9-12 | 63 | A134072 |
| 4/6/2015 | 102 | "Not too specifically that I can remember…" | 480:9-10 | 63 | A134072 |
| 4/6/2015 | 103 | "Like I said, I don't remember…" | 480:12-13 | 63 | A134072 |
| 4/6/2015 | 104 | "Not that I can recall." | 481:1 | 63 | A134072 |
| 4/6/2015 | 105 | "I don't recall." | 481:13 | 63 | A134072 |
| 4/6/2015 | 106 | "I don't recall such a conversation." | 48:16-17 | 63 | A134072 |
| 4/6/2015 | 107 | "I don't know anything about that." | 482:8 | 63 | A134072 |
| 4/6/2015 | 108 | "I can't recall that chief.  But assistant sheriff was Rhambo." | 486:17-18 | 64 | A134073 |
| 4/6/2015 | 109 | "I don't recall if he has or hasn't." | 486:24 | 64 | A134073 |

# Summary Chart of Leroy Baca "I Don't Recall/Remember" Answers to Antuna Deposition Questions

| Depo | Instance | Quote | Citation | Page # | Bates # |
|---|---|---|---|---|---|
| 4/6/2015 | 110 | "I don't remember, but it's possible." | 496:9 | 67 | A134076 |
| 4/6/2015 | 111 | "...I don't recall Goldman being a chief in Region 1." | 495:22-23 | 67 | A134076 |

Exhibit 4, Page 26