EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No. 290409)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
LIZABETH A. RHODES (Cal. Bar No. 155299)
Assistant United States Attorney
Chief, General Crimes Section
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
Assistant United States Attorney
Major Frauds Section
     1500/1200/1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0284/3541/4849
     Facsimile: (213) 894-0141
     E-mail:     Brandon.Fox@usdoj.gov
                 Lizabeth.Rhodes@usdoj.gov
                 Eddie.Jauregui@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

             FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 16-66(A)-PA |
|---|---|
| Plaintiff, | MOTION TO EXCLUDE EVIDENCE, ARGUMENT, AND CROSS_EXAMINATION REGARDING ATTORNEY QUESTIONS AND PURPORTED RECANTATION DURING DEFENDANT'S 2013 INTERVIEW; EXHIBIT |
| v. | |
| LEROY BACA, | |
| Defendant. | Hearing Date: TBD Hearing Time: TBD Location:     Courtroom of the                Hon. Percy Anderson |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brandon D. Fox, Lizabeth A. Rhodes, and Eddie A. Jauregui, hereby files its Motion to

Preclude Evidence, Argument, and Cross-Examination Regarding Attorney Questions and Purported Recantation During Defendant's 2013 Interview with the federal government.

The government's motion is based on the attached memorandum of points and authorities, the files and records in this case, the attached exhibit, and such further evidence and argument as the Court may permit.

Dated: February 26, 2017        Respectfully submitted,

                                EILEEN M. DECKER
                                United States Attorney

                                LAWRENCE S. MIDDLETON
                                Assistant United States Attorney
                                Chief, Criminal Division


                                      /s/ Brandon D. Fox
                                BRANDON D. FOX
                                LIZABETH A. RHODES
                                EDDIE A. JAUREGUI
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

On February 13, 2017, after briefing and argument, this Court granted the government's motion in limine to preclude defendant Leroy Baca ("defendant") from introducing his own hearsay statements made during his interview with federal agents and prosecutors on April 12, 2013.  (CR 268; see also CR 146 [joint briefing].)  The Court correctly ruled that the government may use inculpatory excerpts of the recording of defendant's 2013 interview, but defendant may not introduce portions of that interview under Federal Rule of Evidence 106.

Defendant has now indicated that he intends to cross-examine at least one government witness, FBI Special Agent ("SA") Jason Dalton -- who was present at the 2013 interview -- about questions that were asked by attorneys during that interview that are not part of the excerpts the jury will hear from the recorded interview. Specifically, defendant has suggested he will introduce: (a) questions posed to him by the government that purportedly show the interviewers were confused about defendant's statements that the government will introduce; and (b) questions posed to him by his own attorney to attempt to demonstrate that, at the end of the interview, he recanted his lies.  This is a transparent attempt to circumvent this Court's ruling by either eliciting or insinuating his precluded hearsay.  Introduction of the questions that prompted those answers is inconsistent with both the letter and spirit of this Court's ruling.  Defendant should be flatly barred from employing any such strategy, and the government should not have to waste valuable time objecting to such questions and argument while the jury is seated.

1

Furthermore, questions posed to defendant by attorneys during an investigative interview are not evidence and are wholly irrelevant. Instead, they would be introduced exclusively for the purpose of confusing and misleading the jury.  To the extent defendant hopes to introduce attorney questions from the 2013 interview in order to insinuate that he recanted the lies he told during that interview, any belated recantation argument is both precluded by the law of the case doctrine, because it was never previously raised, and erroneous because defendant did not recant.  In any event, defendant could not have cured his false statements by recanting.  Defendant should not be permitted to inaccurately suggest that he recanted the false statements he made during the 2013 interview, nor should he be allowed to argue recantation as a defense.  Finally, and similarly, defendant should not be allowed to argue, as he did in opening, that he should have been provided a copy of the transcript after the interview so he could have corrected his statements.

**II.   STATEMENT OF FACTS**

**A.    Defendant's April 12, 2013 Interview**

The indictment alleges that defendant made four false statements in his interview with the federal government on April 12, 2013: (1) by August 20, 2011, he had "no clue" that the federal government was conducting a civil rights investigation (Ex. A, 43:17-44:4); (2) he had no "direct involvement with any conversation about keeping the FBI and [inmate Anthony] Brown away from one another" (Ex. A, 67:4-12); (3) he was never made aware that his subordinates had inadvertently allowed the FBI to meet with inmate Brown before abruptly terminating the interview (Ex. A, 77:12-21); and (4) he was not aware that his deputies were going to approach SA Leah Marx until

he later heard about the encounter from the Assistant Director of the FBI (Ex. A, 28:7-29:4).  Well after defendant made these false statements, his counsel, asked for a break in the proceedings, and a 28-minute recess was taken.  (Ex. A, 215:9-16.)

Following the break, defendant's attorney attempted to rehabilitate his client through leading questions.  Recognizing that defendant had made potentially provably false statements, Mr. Hershman first asked whether defendant's statement about his lack of knowledge about the threatened arrest of SA Marx before it occurred was merely "to the best of [his] recollection."  (Ex. A, 219:12-17.) At his counsel's prompting, defendant responded, "Yes.  To the best of my recollection.  It's not something that registered in my memory, today."  (Ex. A, 219:18-19.)  Mr. Hershman next asked whether defendant's claim that Mr. Thompson did not apologize to him for allowing the FBI to interview Anthony Brown was merely "to the best of [his] recollection."  (Ex. A, 220:5-13.)  Again, at his counsel's prompting, defendant replied, "That is correct.  I don't recall Lieutenant Thompson saying those words to me."  (Ex. A, 220:14-15.)

**B.    The Court Grants the Government's Motion in Limine**

The government moved in limine to prevent defendant from introducing his own self-serving statements made during the 2013 interview, including those statements that were prompted by his counsel after an off-the-record consultation with defendant.  (CR 146.)  As the government pointed out in its motion, a defendant has no right to present his self-serving hearsay at trial, Fed. R. Evid. 801(d)(1); United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000); may not attempt to elicit his own hearsay during cross-examination of government witnesses, Ortega, 203 F.3d at 681-82;

3

United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988) (per curiam); and is not entitled, under the rule of completeness, to introduce exculpatory portions of an interview merely because the government is introducing inculpatory portions, United States v. Vallejos, 742 F.3d 902, 905 (9th Cir. 2014); United States v. Castro-Cabrera, 534 F. Supp. 2d 1156, 1159-60 (C.D. Cal. 2008).  (CR 146 at 5-7.)  This Court granted the government's motion on February 13, 2017.  (CR 268.)  As a result, defendant may not use direct examination, cross-examination, or any other method to attempt to introduce his self-serving hearsay from the 2013 interview.

**C.    Defendant's Proposal to Circumvent The Court's Ruling**

After both parties gave their opening statements and the government began its case-in-chief, defense counsel told the government that defendant intends to cross-examine one of the government's witnesses, SA Dalton, about questions that attorneys posed to defendant at the 2013 interview.  Defendant believes the questions posed by the government that are not in evidence show that the government was confused by portions of defendant's false statements.  The government further understands that defendant seeks to insinuate or claim that after defendant made false statements to federal agents and prosecutors, and after he then consulted with his counsel off the record, he recanted his false statements by agreeing to his counsel's suggestion that he may have simply failed to recall the facts that he had affirmatively misrepresented.

**III. ARGUMENT**

**A.    Defendant May Not Circumvent The Court's Ruling**

Defendant's proposed cross-examination regarding the questions he was asked by attorneys at the 2013 interview is nothing more than

4

an attempt to circumvent this Court's exclusion of the answers defendant gave in response to those questions.  Cross-examining government witnesses about what defendant was asked would be solely to suggest the inadmissible responses that defendant gave.  If defendant wants to attempt to explain away the lies he told the government in 2013, he must do so by testifying and subjecting himself to cross-examination at trial.  See Fernandez, 839 F.2d at 640 ("It seems obvious defense counsel wished to place [defendant's] statement . . . before the jury without subjecting [him] to cross-examination, precisely what the hearsay rule forbids.")  He may not simply disregard this Court's order.

**B.    Questions Posed By Lawyers Are Not Evidence**

Even if defendant's intended cross-examination were not calculated to circumvent this Court's ruling, the interview questions he proposes to introduce are not themselves evidence and therefore should be precluded as irrelevant.  As the Court already instructed the jury, questions posed by attorneys are not evidence.  See Ninth Cir. Model Instr. 1.4.  The same principle ordinarily holds true in the pretrial interview setting: questions elicit evidence; they are not evidence themselves.  "[Q]uestions and comments" posed to a defendant by a law enforcement officer in a pretrial interview function "much like a prosecutor's questions at trial."  See Dubria v. Smith, 224 F.3d 995, 1001 (9th Cir. 2000).  Such questions are used to give context to a defendant's answers.  Id. at 1001-02.  Thus, a jury "should view the questions and answers" from a pretrial interview "in the same way" as "the question[s] and answers in the courtroom."  Id. at 1002 (quoting trial court's jury instruction with approval).  "In other words, the questions are only pertinent as they

may explain what the answers themselves are." Id. (same); see also Ramirez v. Montgomery, No. EDCV 12-1472-PA (JPR), 2014 WL 333556, at *24 (C.D. Cal. Jan. 29, 2014) ("[Q]uestions posed by detectives were not evidence and could not be considered for the truth[.]").

There is no legal or logical basis to distinguish between questions posed by attorneys at trial and those posed by attorneys or law enforcement officers in an investigative interview prior to trial. Defendant claims the questions are admissible because they suggest the government was confused about defendant's answers that the government will introduce at trial, but this is bare speculation and irrelevant to the jury. Accordingly, the questions that lawyers asked defendant during the 2013 interview have no evidentiary value whatsoever and should be excluded as irrelevant. See Fed. R. Evid. 401. In addition, any arguable relevance would be thoroughly outweighed by the unfair prejudice, confusion, misleading effect, and waste of time. See Fed. R. Evid. 403. What defendant really seeks to do is use the questions to argue to the jury that the government is hiding evidence from the jury (namely, his inadmissible answers to those questions). Indeed, this is what the defendant argued in his opening statement: that only portions of the transcript would be played, which insinuated something nefarious by such action rather than what is sanctioned by the Federal Rules of Evidence.

**C. Defendant's Former Counsel's Questions Are Hearsay**

Defendant should also be precluded from introducing the questions posed to him by his counsel at the April 2013 interview. Although questions may not ordinarily constitute "statements" for purposes of Rule 801(a), where inquiries are intended to communicate an implied assertion and offered for that intended message, they fall

6

within the scope of the Rule 801.  United States v. Torres, 794 F.3d 1053, 1056, 1061 (9th Cir. 2015).  In Torres, a defendant convicted of trafficking drugs in his car was not entitled to introduce evidence that, prior to his arrest, his friend repeatedly asked him to drive a third party in his car to a location near the U.S.-Mexico border.  Id. at 1057.  Defense counsel hoped to introduce the questions either "for the assumption of the truth" or to suggest an "implied message" that the defendant's friend exercised some level of control over defendant's car.  Id. at 1058, 1061.  The questions were hearsay because they "intended [an] implied assertion" and were offered at trial "for this intended implied message."  Id. at 1061.

Here, as in Torres, the questions that defendant's former counsel convey an intended implied assertion, namely, that defendant was misremembering rather than affirmatively lying.  And it is that very message that defendant seeks to inject into the trial by introducing the questions posed to him by his counsel.  As a result, those questions are inadmissible hearsay.  Id.

**D.    Any Argument that Defendant Recantated Is Meritless**

Defendant has never argued that he recanted his lies, and he may not make that argument now.  Once an issue has already been decided, the law of the case doctrine ordinarily precludes the same court from revisiting it in the same case.  United States v. Almazan-Becerra, 537 F.3d 1094, 1096-97 (9th Cir. 2008); United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997).  Here, the government's motion in limine to exclude defendant's self-serving statements was briefed more than three months ago (CR 146), and the Court granted the motion following a hearing nearly two weeks ago (CR 268).  Trial is now underway.  Defendant's desire to make a new argument that was

previously available to him is no exception to the law of the case doctrine.  Alexander, 106 F.3d at 876.  As a result, the Court should not even consider any claim that defendant's statements may be introduced as evidence that he recanted his lies to the government.

Furthermore, there is no merit to defendant's claim that he should be permitted to introduce a recantation defense based on either questions posed to him or answers he gave at the 2013 interview.  The Ninth Circuit has never recognized recantation as a defense to making false statements, see United States v. Johnston, 617 F. App'x 706, 709 n.2 (9th Cir. 2015), and there are good reasons not to do so.  See, e.g., United States v. Beaver, 515 F.3d 730, 742 (7th Cir. 2008) (explaining that "§ 1001 contains no recantation defense"); United States v. Fondren, 417 F. App'x 327, 336 (4th Cir. 2011) (rejecting recantation defense to § 1001 conviction); United States v. Stewart, 433 F.3d 273, 318 (2d Cir. 2006) ("[T]here is no safe harbor for recantation or correction of a prior false statement that violates section 1001."); United States v. Sebaggala, 256 F.3d 59, 64 (1st Cir. 2001) ("[W]e see no basis for writing into [§] 1001 a recantation defense that Congress chose to omit.").

Moreover, in the 2013 interview, defendant never actually recanted his false statements.  Instead of forthrightly admitting and disavowing his lies, defendant and his attorney attempted to transform those lies into mere failures of recollection, which, if anything, was greater subterfuge.  Even if recantation were a defense to making false statements, it would not be viable unless the defendant immediately and fully recanted.  United States v. Salas-Camacho, 859 F.2d 788, 791-92 (9th Cir. 1988) (rejecting recantation defense to § 1001 charge where the defendant told the truth only when

8

he realized that his lie was about to be discovered); United States v. McKanry, 628 F.3d 1010, 1018 (8th Cir. 2011) (holding that even if a recantation defense is cognizable under § 1001, it could not apply where the defendant did not actually recant); United States v. Cowden, 677 F.2d 417, 420 (8th Cir. 1982) (reversing § 1001 conviction because the defendant "almost immediately corrected" his false statement).  Thus, even if a defendant might be permitted to introduce evidence of recantation in some hypothetical prosecution for obstruction of justice, no such evidence or argument should be allowed here.

**E.    Introduction of the Questions Will Prejudice the Government and Confuse the Jury**

The is no probative value to the questions posed by either the government or defendant's attorneys that defendant seeks to introduce.  The prejudice and confusion of issues, however, is likely if defendant is able to introduce these questions.  Accordingly, such cross examination and argument should be barred under Rule 403.  The jury will be forced to speculate as to why the government did not introduce the statements that answered the questions and wonder whether defendant recanted.  Because he neither recanted nor could do so in a way that would excuse him from making false statements, such speculation could only confuse the issues and prejudice the government.

**F.    Any Argument that the Government Should Have Allowed Defendant to Review his Transcript is Irrelevant and Should Be Barred Under Federal Rules of Evidence 401 and 403**

In his opening statement, defendant alluded to the government not providing defendant with an opportunity to look at the transcript of his statements.  This is both irrelevant and incorrect.  First,

9

defendant was not entitled to a copy of his transcript after his interview. The interview was not a deposition and there are no Federal Rules of Criminal Procedure that provide defendant with such an opportunity before he is charged with a crime. Second, as discussed above, defendant neither could, nor did, recant his testimony. Third, defendant was provided with a copy of his transcript after he was charged (indeed, he was provided with at least portions before he was charged). Even after being provided with a copy of his transcript, he has never claimed that there is a transcription error regarding his false statements. Any cross-examination or argument should therefore be barred under Rule 401 as irrelevant and Rule 403 because it will suggest to the jury that he should have received a copy of the transcript and that he could have recanted if given the opportunity to do so.

**IV. CONCLUSION**

For the foregoing reasons, defendant should be precluded from introducing, through evidence, argument, or questioning, (1) any statements or questions by counsel during defendant's April 12, 2013 interview with the government; (2) any claim that defendant did not make false statements because he purportedly retracted or recanted the material false statements he made at the April 12, 2013 interview; and (3) any suggestion that defendant should have received a copy of the transcript after his interview but before he was charged in this case.