# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

### HONORABLE PERCY ANDERSON, U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )   Case No.
                                   )
       vs.                         )   CR 16-00066(A)-PA
                                   )
LEROY D. BACA,                     )   PAGES (1 to 18)
                                   )
            Defendant.             )
_____)

REPORTER'S PARTIAL TRANSCRIPT OF
TESTIMONY OF CECIL RHAMBO
THURSDAY, DECEMBER 15, 2016
1:15 P.M.
LOS ANGELES, CALIFORNIA

MIRANDA ALGORRI, CSR 12743, CRR
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 435
LOS ANGELES, CALIFORNIA 90012
MIRANDAALGORRI@GMAIL.COM

UNITED STATES DISTRICT COURT

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

        EILEEN M. DECKER
        United States Attorney
        BY:  BRANDON FOX
        BY:  EDDIE A. JAUREGUI
        Assistant United States Attorneys
        United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012

**FOR THE DEFENDANT:**

        MORGAN LEWIS AND BOCKIUS LLP
        BY:  NATHAN J. HOCHMAN
        BY:  BRIANNA ABRAMS
        The Water Garden
        1601 Cloverfield Boulevard
        Suite 2050 North
        Santa Monica, California 90404


        MORGAN LEWIS AND BOCKIUS LLP
        BY:  TINOS DIAMANTATOS
        77 West Wacker Drive
        Chicago, Illinois 60601

**UNITED STATES DISTRICT COURT**

3

**I N D E X**

**THURSDAY, DECEMBER 15, 2016**

**Chronological Index of Witnesses**

Witnesses:_____    Page

RHAMBO, Cecil

    Direct examination by Mr. Hochman                      6

**UNITED STATES DISTRICT COURT**

**EXHIBITS**


**THURSDAY, DECEMBER 15, 2016**


| Exhibit | For ID | In EVD |
|---------|--------|--------|
| 744 | 6 | 7 |
| 745 | 8 | |

**UNITED STATES DISTRICT COURT**

**LOS ANGELES, CALIFORNIA; THURSDAY, DECEMBER 15, 2016**

**1:15 P.M.**

**---**

(Prior proceedings were held and reported but not included herein:)

(The following proceedings were held in open court in the presence of the jury:)

MR. HOCHMAN:  Your Honor, at this time we have a motion I'd like to argue to the Court.

THE COURT:  We'll do that later.  Call your first witness.

MR. HOCHMAN:  Thank you.  The defense calls Cecil Rhambo to the stand, Your Honor.

THE CLERK:  Stand here for me.  Raise your right hand.

Do you solemnly state that the testimony you may give in the cause now pending before this court shall be the truth, the whole truth, and nothing but the truth, so help you God?

THE WITNESS:  Yes.

THE CLERK:  Please be seated.

Would you please state your full name and spell your last name for the record.

THE WITNESS:  Cecil Rhambo, R-h-a-m-b-o.

**UNITED STATES DISTRICT COURT**

THE CLERK:  Thank you.

**CECIL RHAMBO,**

**DEFENDANT'S WITNESS, SWORN:**

**DIRECT EXAMINATION**

BY MR. HOCHMAN:

Q     Mr. Rhambo, I'd like to focus your attention in the summer of 2011.  Do you have that in mind?

A     Yes.

Q     Now, in the, sort of, May, June time period, did you get a promotion at that time period?

A     Yes.

Q     What were you promoted to?

A     The rank of assistant sheriff.

Q     And the rank of -- from the rank of assistant sheriff, you understood the entire organizational structure of the sheriff's department; correct?

A     Yes.

MR. HOCHMAN:  Your Honor, I'd like to place before the witness what has been -- it's a chart.  It will be marked as Defense Exhibit 744.  Your Honor, I need the easel, if I could, because it's a large chart.  If I may approach the court clerk or the witness to set up the easel.

THE COURT:  That's fine.

(Marked for identification Exhibit No. 744.)

MR. HOCHMAN:  Can we have the chart put on the

UNITED STATES DISTRICT COURT

easel, Your Honor?  Or I can -- I'm sorry.

If you could just show the chart to the witness, please, and not show it to the jury.

Q    Mr. Rhambo, exhibit -- Defense Exhibit 744 marked for identification is now being held in front of you.

Is Exhibit 744 a true and accurate organizational chart of the sheriff's department as it was in August, September of 2011?

A    Yes.

MR. HOCHMAN:  I'd seek the admission of Defense Exhibit 744, Your Honor.

MR. FOX:  No objection.

THE COURT:  It will be received.

(Received into evidence Exhibit No. 744.)

MR. HOCHMAN:  If we can put it on the easel, please.

Your Honor, I will publish a smaller version for the jury if that's okay.

Q    Now, starting at the head of this organizational chart, that is Sheriff Leroy Baca at the top of the chart; correct?

A    Yes.

Q    And then the undersheriff Paul Tanaka is right below him; correct?

A    Correct.

Q        And the sheriff and the undersheriff now have responsibility for everything below them; is that correct?

A        Yes.

Q        And at the time there were two assistant sheriffs; is that right?

A        Yes.

Q        Yourself, you're listed on the right hand, Assistant Sheriff Cecil Rhambo, Jr.; correct?

A        Yes.

Q        And the other assistant sheriff was Marvin Cavanaugh; is that correct?

A        Yes.

Q        And below you amongst the various divisions included the Custody Operations Division; correct?

A        Yes.

Q        And within the Custody Operations Division was the Men's Central Jail; correct?

A        Correct.

Q        And the Twin Towers as well.

A        Yes.

MR. HOCHMAN:  Now, if we can have the other chart shown to the witness without to the jury which is defense exhibit marked for identification 745.

(Marked for identification Exhibit No. 745.)

Q        BY MR. HOCHMAN:  Is Exhibit 745 a true and

**UNITED STATES DISTRICT COURT**

accurate rendering of the organizational chain of command in the Men's Central Jail in August, September 2011?

A       Yes.

MR. HOCHMAN:  I'd seek the admission then, Your Honor, of Defense Exhibit 745.

MR. FOX:  Your Honor, we will agree for demonstrative purposes, but we object to this being substantive evidence.

MR. HOCHMAN:  Your Honor, we can use it for demonstrative purposes at this point.  We can seek its admission at a later point.

THE COURT:  All right.

MR. HOCHMAN:  May I publish it for demonstrative purposes, Your Honor.

THE COURT:  Okay.

Q       BY MR. HOCHMAN:  So Defense Exhibit 745 is a pyramid sort of formation that describes the chain of command of the Men's Central Jail in August, September of 2011; correct?

A       Yes.

Q       Just going, again, the top to the bottom, Sheriff Leroy Baca is at the top; correct?

A       Yes.

Q       And Undersheriff Paul Tanaka is below him.

A       Yes.

Q        And then comes you, the assistant, Mr. Rhambo?

A        Correct.

Q        And underneath yourself is the chief of Custody Operations Division; correct?

A        Yes.

Q        And, again, Custody Operations Division is a little bit more than just Men's Central Jail.  It includes Twin Towers and some other facilities; correct?

A        Correct.

Q        And then below the chief is the commander of Men's Central Jail and Twin Towers; correct?

A        Yes.

Q        So that commander actually has two different facilities, Men's Central Jail and Twin Towers; correct?

A        Yes.

Q        Then there's the captain of Men's Central Jail below the commander; correct?

A        Yes.

Q        Then, for lieutenants, there were approximately five to seven lieutenants at Men's Central Jail at that time; correct?

MR. FOX:  Object to the leading nature of these questions.

THE COURT:  You can answer this one.

THE WITNESS:  Approximately, yes.

**UNITED STATES DISTRICT COURT**

Q      BY MR. HOCHMAN:  And how many, approximately, were there of sergeants at Men's Central Jail in August and September of 2011?

A      This chart is depicting 30 to 40.

THE COURT:  Excuse me.  Without looking at the chart, do you know the answer?

THE WITNESS:  I would say 30 to 40.

THE COURT:  Next question.

Q      BY MR. HOCHMAN:  And approximately how many deputies were at Men's Central Jail in the August to September 2011 time frame?

A      About 500.

Q      When you came in as assistant sheriff in that sort of May 2011 time frame, I believe you stated in your prior earlier testimony that you were aware of the ACLU's complaints of deputy abuse; is that correct?

A      Yes.

Q      And those complaints, looking at Defense Exhibit 745, they were complaining about what was happening at the deputy level on the chart; correct?

A      Yes.

Q      Were they also complaining about what was happening at the sergeant level?

A      I don't have a vivid recollection of that, but I believe so, yes.

Q        And were there complaints about what was happening at the lieutenant level or all the way up to the top?

MR. FOX:  Objection.  Relevance, Your Honor.

THE COURT:  Sustained.

Q        BY MR. HOCHMAN:  In looking at -- well, in talking about the ACLU's complaints, you actually also joined Sheriff Baca at a meeting in July of 2011 with the complaints being made by a Chaplain Juarez; correct?

A        Yes.

Q        Also at that meeting was Fr. George Horan and St. Patty, if I recall.

A        I believe so.

Q        And the meeting was set up by --

MR. FOX:  Objection to the leading nature of these questions, Your Honor.

THE COURT:  Sustained.

Q        BY MR. HOCHMAN:  At the meeting, did you hear Chaplain Juarez make any statements concerning deputy abuse he viewed in 2009?

A        Yes.

Q        Very generally, what do you recall of those statements?

A        If I can recall this meeting, he was complaining that there was some excessive force on an inmate that they witnessed or he witnessed.  I'm not sure how many people were

there in that.  He wanted the sheriff to either reopen that investigation or it was almost a plea to the sheriff that what they saw was disturbing to them.

Q      And did the sheriff turn to you at some point and give you an instruction?

A      At that time, yes.  He asked me to take another look at the case which, I believe, actually happened in 2009.

Q      I'm sorry.

The allegations of Chaplain Juarez were 2009 allegations?

A      I believe so, yes.

Q      This is now the end of July 2011; is that correct?

A      Correct.

Q      And he's asking you, the assistant sheriff, to take a look into those --

THE COURT:  Sustained.

Q      BY MR. HOCHMAN:  And did you look into those allegations?

A      I believe I did, yes.

Q      Now, in your personal background, did you have any tours of duty in Internal Affairs?

A      Yes.

Q      How many tours of duty?

A      Two.

Q        And what did they involve?

A        My first tour was as a sergeant, and this was shortly after the Rodman King incident.  So one of my responsibilities there was to actually head up and be part of what was to be the use of force response team, and I also investigated officer misconduct, allegations of misconduct.  I investigated officer-involved or deputy-involved shootings and also incidents that required hospitalization of a deputy and/or a suspect after contact with deputy personnel.  That was the first tour.  I was there for about three years.

Q        Was there a second tour?

A        Yes.

Q        What did that involve?

A        I was the -- one of three lieutenants assigned to Internal Affairs.  During that one area tour, I actually headed up the shooting enforcement team for a period of time and acted in the capacity of acting captain in absence of the captain periodically.

Q        I'd like to focus you on the undersheriff for a moment, Mr. Paul Tanaka, if I could.

I believe in your earlier testimony you said that you knew Mr. Tanaka going all the way back to the 1980s; is that correct?

A        Yes.

Q        When did you first meet him?

**UNITED STATES DISTRICT COURT**

A        I believe at patrol school in 1983.

Q        Did you actually work patrol with him in any particular station?

A        Yes.

Q        Which station?

A        Carson Station.

Q        And when you say "worked patrol," what does that mean?

A        Well, we were initially assigned to the same station as patrol trainees.  I was at Carson from '83 to '86.  He left a year, maybe a year and a half before I did.  So we actually worked a police car together for a cycle which I think at the time was maybe a month.

Q        I'm sorry.  When you say you worked a police car, does that mean you were both in the police car --

A        He was my partner, yes.

Q        He was your partner at that time?

A        Yes.

Q        Over the years did you develop a close personal relationship with him?

A        I would consider him a friend.

Q        Did you have another overlap with him in your duties in the sheriff's department?

MR. FOX:  Objection to relevance of this, Your Honor.

THE COURT:  Sustained.

Q    BY MR. HOCHMAN:  When you were assistant sheriff, did you run with Mr. Tanaka on an often basis?

MR. FOX:  Objection to relevance, Your Honor.

THE COURT:  Sustained.

Ladies and gentlemen, we're going to end the day. Again, I want to remind you not to discuss this case with anyone including your fellow jurors, members of your family, people involved in the trial, or anyone else.  Do not allow others to discuss the case with you.  This includes discussing the case on the Internet, through various forms of social media, by e-mails or text messages.  If anyone approaches you or tries to communicate with you about this case, please let me know about it immediately.

Do not read, watch, or listen to any news reports or other accounts about the trial or anyone associated with it. Do not do any research such as consulting dictionaries, searching the Internet, or using other reference materials, and do not make any investigation about the case on your own.

Finally, you're reminded to keep an open mind until all the evidence has been received, you've heard the arguments of counsel, the instructions of the Court, and the views of your fellow jurors.  If you need to speak with me, simply give a note to the clerk.

We'll see everybody tomorrow morning at

8:00 o'clock.

          (Further proceedings held and reported

          but not included herein.)

**UNITED STATES DISTRICT COURT**

CERTIFICATE OF OFFICIAL REPORTER

I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED THIS __27TH__ DAY OF FEBRUARY, 2017.

/S/ MIRANDA ALGORRI

MIRANDA ALGORRI, CSR NO. 12743, CRR
FEDERAL OFFICIAL COURT REPORTER

**UNITED STATES DISTRICT COURT**