SANDRA R. BROWN
Acting United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No. 290409)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
LIZABETH A. RHODES (Cal. Bar No. 155299)
Assistant United States Attorney
Chief, General Crimes Section
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
Assistant United States Attorney
Major Frauds Section
      1500/1200/1100 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-0284/3541/4849
      Facsimile: (213) 894-7631
      E-mail:     Brandon.Fox@usdoj.gov
                  Lizabeth.Rhodes@usdoj.gov
                  Eddie.Jauregui@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 16-66(A)-PA |
|---|---|
| Plaintiff, | GOVERNMENT'S POSITION RE: SENTENCING OF DEFENDANT LEROY BACA |
| v. | |
| LEROY BACA, | Hearing Date: May 12, 2017 Hearing Time: 8:30 a.m. Location:     Courtroom of the |
| Defendant. | Hon. Percy Anderson |

Defendant Leroy Baca, as Los Angeles County Sheriff, conspired to obstruct a federal grand jury investigation into civil rights abuses and corruption within the county jails.  In doing so, defendant abused the great power the citizens of Los Angeles County had given him.  Later, when questioned by the U.S. Attorney's Office and the Federal Bureau of Investigation, defendant lied about his

knowledge of and role in the conspiracy.  His lies were defendant's deliberate attempt to deflect blame and place it entirely on the shoulders of others within his Department.

Based on these offenses alone, the government would recommend a sentence within or above the Guidelines range of 41-51 months.  But defendant's age and cognitive condition call for a below-Guideline sentence because the interests of justice will not be served by defendant spending many years behind bars in a severely impaired state.  Accordingly, the government recommends the Court sentence defendant to 24-months of imprisonment, which takes into account the seriousness of defendant's conduct and his mitigating circumstances.

In support of this recommendation, plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brandon D. Fox, Lizabeth A. Rhodes and Eddie A. Jauregui, hereby files its sentencing position.

**I.    INTRODUCTION**

As the government wrote last year, defendant is a study in contrasts.  He championed certain reforms in the criminal justice system, yet ignored warnings that his deputies were committing serious abuses in the Los Angeles County jails.  He touted his close relationship with federal officials, yet was angry that the federal government was investigating his department.  He recited the LASD's "Core Values," which emphasize honor and integrity, during the same interview in which he lied to the federal government.  Defendant continues to be a physically fit 74-year-old who is able to function in his daily life, yet he faces an uncertain prognosis for how quickly his mild cognitive impairment will advance.

The contrasts have only grown greater over time.  In February 2016, defendant admitted some of his criminal conduct, but denied the rest of it.  Defendant publicly declared he was not afraid of prison, yet withdrew his guilty plea when the Court indicated that a six-month sentence was too lenient.

Balancing all of these issues, the government believes a sentence of 24-months takes into account the seriousness of defendant's offenses, provides adequate general deterrence, and factors defendant's history and characteristics.

**II.   PROCEDURAL HISTORY**

On February 10, 2016, defendant pled guilty to an information charging him with lying to the federal government, in violation of 18 U.S.C. § 1001.  The plea was part of an agreement that bound the Court to sentence defendant within the offense's Guidelines range of zero-to-six months' imprisonment.  On August 1, 2016, defendant withdrew his plea after the Court rejected the agreement.

On August 5, 2016, the grand jury returned a superseding indictment that charged defendant with: (a) conspiracy to obstruct justice, in violation of 18 U.S.C. § 371 (Count One); (b) obstruction of justice, in violation of 18 U.S.C. § 1503 (Count Two); and making false statements, in violation of 18 U.S.C. § 1001 (Count Three).  Defendant pled not guilty to all three counts.

The Court set a trial date of December 6, 2016.  At the government's request, the Court severed Counts One and Two from Count Three, based on concerns of spillover prejudice.  The jury could not reach a verdict, and the Court declared a mistrial.

The Court set a new trial for February 21, 2017.  The Court rejoined the counts after the government stated it was willing to

take the risk of spillover prejudice.  On March 15, 2017, the jury convicted defendant of all three counts.

**III. STATEMENT OF FACTS**

> **A.   Defendant's Tenure as Sheriff**

Defendant was the elected Sheriff of Los Angeles County for more than 15 years.  He became Sheriff in December 1998 and won re-election on several occasions.  He was poised to run again in 2014, but federal indictments unsealed in December 2013, related to excessive force in the jails and obstruction of that investigation, led Baca to retire in January 2014.

> **B.   Defendant Learns of Federal Investigation**

In 2010, the federal government began investigating allegations of widespread deputy abuse of inmates in the county jails.  In August 2011, the LASD recovered a phone from Anthony Brown, an inmate at Men's Central Jail.  The phone was part of the FBI's attempt to covertly gather in its investigation.  On August 18, 2011, defendant spoke to Steve Martinez, the Assistant Director in Charge of the Federal Bureau of Investigation.  ADIC Martinez told Baca that the LASD had recovered a phone that was part of the FBI's civil rights investigation and that he wanted the phone back.  Defendant told members of the LASD that he was not going to give it back.

On August 19 and 20, 2011, defendant met with Undersheriff Paul Tanaka, Captain William "Tom" Carey, Lieutenant Greg Thompson, Deputy Gerard Smith, Deputy Mickey Manzo, and others.  During these two meetings, Baca was told that Brown was an informant in a federal investigation concerning deputy abuse and corruption within the jails.  Baca stated that he wanted the LASD to investigate how the phone was brought into the jail and to isolate the inmate.

During the August 20 meeting, defendant walked out of the room with Tanaka.  Tanaka came back into the room and announced that Baca put him in charge of the operation, that he had never seen the Sheriff so angry, and that the FBI was not to have access to Brown.

**C.    The FBI Interviews Brown**

On August 23, 2011, the FBI visited MCJ to interview Brown.  A deputy, who was unaware of the order to keep the FBI away from Brown, allowed the agents to interview him.  Later, Thompson, Carey, Smith and Manzo reported to Tanaka's office, where Tanaka berated them for letting the FBI meet with Brown.

Tanaka sent Thompson to report to defendant personally that defendant's order had been violated.  Thompson entered defendant's office and explained what happened.  Defendant showed understanding and was not upset, instead calling it a "chess game."

### 1.    Further Concealment of Brown after Writ is Issued

On August 25, 2011, the District Court issued a writ for Brown's testimony before the federal grand jury on September 7, 2011.  After the LASD received the writ, a lieutenant and three deputies approached employees at the Inmate Reception Center and asked to have Brown "released" from the jail's computer system.  The deputy and head records clerk assigned to IRC informed the deputies that they needed a court order to do so.  The lieutenant informed the clerk that the chain of command up to Tanaka all knew what was happening.  Another deputy ominously asked, "Are you going to say no to Tanaka?"  Ultimately, the head clerk signed out Brown's records jacket and made the computer system reflect that Brown was released.  Over the next several days, the LASD changed Brown's name on a regular basis, input

false information in the LASD's records, and claimed that that Brown refused to provide his fingerprints and social security number.

On August 26, Thompson communicated with Carey about what to do if the FBI showed up at MCJ with a "possible Court Order" demanding Brown's production to the federal government.  Thompson and Carey decided that they would accept the court order "if forced," but would not release the inmate.  Thompson agreed to put a note on Brown's cell door to that effect.  The captain at MCJ emailed his staff:

> If any federal law enforcement agency comes to MCJ with an inmate removal order, visitation order, or ANY OTHER order of the court you shall:
>
> - Receive the order and advise the federal officer that before you can proceed, you have to submit the order to the Department's legal advisor for review.  DO NOT RELEASE THE INMATE OR ALLOW CONTACT.

(emphasis in original).  On August 26, 2011, Thompson, Carey and others informed Tanaka and Baca that they were going to move Brown out of MCJ and take him to a station jail.

**D.    Defendant Expresses Anger to the U.S. Attorney**

On August 29, 2011, defendant met with the U.S. Attorney's Office (at defendant's request, the FBI was not present).  Baca told the U.S. Attorney that he was angry because he was not told about the investigation and he disagreed with the FBI's decision to introduce a cellular phone into the jail and implored the U.S. Attorney's Office to stop working with the FBI and instead work with the LASD to investigate allegations of deputy misconduct in the jails.

**E.    The Sheriff's Department Threatens to Arrest FBI Agent**

Throughout the August to September 2011 time-period, defendant received warnings from Assistant Sheriff Cecil Rhambo, who was bold

6

in his warnings.  Rhambo told defendant not to "fuck with the Feds" and that the LASD's actions could be viewed as obstruction.

On September 26, 2011, defendant appeared on television and again expressed displeasure over the FBI's investigation of the LASD.  Defendant noted he had a meeting with the federal government the next day, but his non-conciliatory posture was evident.  For example, when asked, "who polices the police?" defendant replied that the LASD polices itself.  Baca said that inmates "lie" and that having a phone in jail was a crime and agreeing to do so was a conspiracy.

On or about September 26, 2011, defendant had a meeting with Tanaka, Carey, and Leavins.  During this meeting, they discussed approaching Special Agent Leah Marx outside of her home.  Defendant approved of the plan, only stating, "don't put handcuffs on her."

That evening, Craig and Long approached SA Marx outside of her home.  Craig informed SA Marx that she was a "named suspect in a felony complaint."  Craig then stated the he was "in the process of swearing out a declaration for an arrest warrant" for her.

Shortly thereafter, then-Supervisory Special Agent Carlos Narro and SA Teresa Tampubolon, called Long.  Long responded, "There's going to be" a warrant for SA Marx's arrest and that "the Sheriff knows this."  Long said the warrant could issue as soon as the next day.  After the call, the recording device captured laughter and Long telling Craig, "They're scared."  Craig informed Long, "You're still rolling."  Long then stopped the recording device.

That night, the U.S. Attorney called defendant, who did not express surprise at his deputies' actions but instead offered assurances that SA Marx would not be arrested that evening.

**F.    Defendant Watches Recording of Approach, Meets with Feds**

On or about September 27, 2011, defendant watched a recording of his sergeants confronting SA Marx.  Defendant reacted by stating it was the best laugh he had in some time.

Also on September 27, defendant met with the U.S. Attorney and ADIC Martinez.  Defendant again expressed anger at the federal government's investigation, stating, "I'm the goddamn Sheriff," these are my "goddamn jails," and he was prepared to "gun up" with the FBI.

**G.    False Statements**

During the investigation into the obstruction, the U.S. Attorney's Office and the FBI interviewed defendant on April 12, 2013.  Baca made the following false statements:

- By August 20, 2011, he had "no clue" the federal government was conducting a civil rights investigation.

- He was not involved in a conversation about keeping the FBI and Brown away from each other.

- He was not aware and was not informed that FBI agents were not allowed to continue an interview they were conducting of Brown at MCJ on August 23, 2011.

- He was not aware until he subsequently spoke to ADIC Martinez that LASD officials were going to approach Special Agent Marx to try to talk to her, to threaten to charge her, or to threaten to arrest her.

This interview occurred before any of Baca's subordinates were charged with obstruction of justice or civil rights violations.

**IV.    MEDICAL DIAGNOSIS**

Defendant began consulting with a physician about memory issues in May 2014, six months after the first indictments were unsealed.

8

He has had many consultations and tests since that time.  As the Court correctly found, the diagnosis was no defense to his charges. But his diagnosis and his prognosis impact the appropriate sentence. The government's experts issued opinions in 2016 finding that: (a) defendant is likely in the early stages of Alzheimer's disease; (b) his cognitive impairment is mild; (c) defendant is able to function in his everyday life; and (d) while Alzheimer's disease's progression is hard to predict, his long-term prognosis is bleak.

**V.    ARGUMENT**

**A.    Sentencing Guidelines**

The Revised Presentence Investigation Report properly calculates defendant's Guidelines range to have an offense level of 22.  The Revised PSR accurately finds a base offense level of 14 (§ 2J1.2), a two-level increase for the falsification of substantial records and the obstruction being extensive in scope, another two-level increase for an abuse of a position of trust, and a four-level increase for defendant being a leader/organizer of the conspiracy.[1]

**B.    Section 3553 Factors**

1.    <u>The Nature and Circumstances of the Offense, the Seriousness of the Offense, and Just Punishment</u>

The obstruction of justice by defendant was serious given the context of the investigation into the LASD.  Further, defendant lied

---

[1] If the Court finds that defendant's lies constituted a "significant further obstruction," there would be an additional two-level increase under § 3C1.1.  The Court would have to find that the lies "significantly obstructed or impeded the official investigation or prosecution of the instant offense."  USSG § 3C1.1, Application Notes 4(G), 7; <u>but</u> <u>see</u> Application Note 5(B) (making false statements to law enforcement officers is not covered by § 3C1.1 unless Application Note 4(G) applies).  Because the government ultimately was able to successfully prosecute all culpable individuals, the government is not asking the Court to provide this enhancement.

in an attempt to escape criminal liability.  Instead of acting as a leader, Baca distanced himself from the actions of his subordinates, and lied about his own conduct.

Defendant's crimes showed that corruption went all the way to the top of the LASD.  But his crime is not as serious as the crimes by the members of the LASD who were convicted of beating inmates and filing false reports in order to have people charged with offenses they did not commit.  Further, while he was at the top of the conspiracy, the evidence does not show that he was as involved in the hiding of Brown and tampering with witnesses as his subordinates were.  Moreover, the government does not view defendant as culpable for the culture within the LASD as defendant Tanaka was.  The government views defendant as being negligent, but Tanaka as actively creating and fostering the corrupt culture within the jails.

> 2.    History and Characteristics of the Defendant

Defendant was the elected Sheriff from 1998 to 2014.  During that time, he won numerous awards from a variety of entities, and portrayed himself as a reformer.

According to experts, defendant's impairment will become severe within a few years.  A twenty-four month term of imprisonment balances the other § 3553 factors with this one.

> 3.    Promote Respect for the Law and Afford Adequate Deterrence

A sentence that provides for deterrence is necessary.  Baca's actions showed that he believed he was above the law.

> 4.    Avoiding Unwanted Disparity

The Court sentenced co-conspirators as follows:

- Deputy James Sexton – 5 months imprisonment

- Deputy Gerard Smith – 21 months
- Deputy Mickey Manzo – 24 months (Rule 35 pending)
- Sergeant Maricela Long – 24 months
- Sergeant Scott Craig – 33 months
- Lieutenant Gregory Thompson – 37 months
- Lieutenant Stephen Leavins – 41 months
- Captain William Thomas Carey – May 8, 2017 hearing
- Undersheriff Paul Tanaka – 60 months

Defendant's age, diagnosis and prognosis are very different from others who came before this Court in these related cases.

**VI.  CONCLUSION**

Taking all of the aggravating and mitigating circumstances into account, the Court should sentence defendant to twenty-four months in prison.

April 24, 2017                              Respectfully submitted,

                                           SANDRA R. BROWN
                                           Acting United States Attorney

                                           LAWRENCE S. MIDDLETON
                                           Assistant United States Attorney
                                           Chief, Criminal Division


                                            */s/ Brandon D. Fox*
                                           BRANDON D. FOX
                                           LIZABETH A. RHODES
                                           EDDIE A. JAUREGUI
                                           Assistant United States Attorneys

                                           Attorneys for Plaintiff
                                           UNITED STATES OF AMERICA

11