EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
LIZABETH A. RHODES (Cal. Bar No. 155299)
Assistant United States Attorney
Chief, General Crimes Section
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
Assistant United States Attorney
Major Frauds Section
    1200/1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3541/4849
    Facsimile: (213) 894-0141
    E-mail:    Lizabeth.Rhodes@usdoj.gov
               Eddie.Jauregui@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 16-66(A)-PA |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR BAIL PENDING APPEAL |
| v. | |
| LEROY BACA, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Lizabeth Rhodes and Eddie Jauregui, hereby files its opposition to defendant's motion for bail pending appeal.

The government's opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

1

Dated: June 2, 2017          Respectfully submitted,

SANDRA R. BROWN
Acting United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


          /s/
LIZABETH RHODES
EDDIE A. JAUREGUI
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION..................................................1

II.   LEGAL STANDARDS..............................................2

      A.   Bail Pending Appeal.....................................2

      B.   Standards of Review.....................................3

III.  ISSUES RAISED BY DEFENDANT...................................4

      A.   The Court Did Not Err in Excluding Evidence of
           Defendant's "Cooperation" With an Unrelated DOJ Civil
           Rights Investigation....................................5

      B.   The Court Did Not Err in Excluding Evidence Pertaining
           to OIR..................................................8

      C.   The Court Did Not Err in Excluding Evidence of
           Defendant's Responses to Use of Force in Jails..........10

      D.   The Court Did Not Err in Excluding Defendant's Own
           Hearsay Statements......................................12

      E.   The Court Did Not Err in Precluding Testimony of Dr.
           James Spar..............................................13

      F.   Defendant Fails to Raise a Substantial Question As to
           the Legal Sufficiency of the Government's Evidence as
           to Count Three..........................................18

IV.   CONCLUSION...................................................20

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

Alcala v. Woodford,
  334 F.3d 862 (9th Cir. 2003)...................................... 4

Kohler v. Presidio Int'l, Inc.,
  782 F.3d 1064 (9th Cir. 2015)................................... 3

United States v. Alatorre,
  222 F.3d 1098 (9th Cir. 2000).................................. 15

United States v. Barry,
  814 F.2d 1400 (9th Cir. 1987).................................. 7

United States v. Gallenardo,
  579 F.3d 1076 (9th Cir. 2009).................................. 3

United States v. Haischer,
  780 F.3d 1277 (9th Cir. 2015)............................... 4, 12

United States v. Handy,
  761 F.2d 1279 (9th Cir. 1985).............................. 2, 3

United States v. Hinkson,
  585 F.3d 1247 (9th Cir. 2009).............................. 3, 16

United States v. Kincaid-Chauncey,
  556 F.3d 923 (9th Cir. 2009).................................. 4

United States v. King,
  735 F.3d 1098 (9th Cir. 2013)............................. 18, 20

United States v. Lopez-Alvarez,
  970 F.2d 583 (9th  Cir. 1992)................................. 16

United States v. Lynch,
  437 F.3d 902 (9th Cir. 2006).................................. 3

United States v. Maull,
  773 F.2d 1479 (8th Cir. 1985)................................. 3

United States v. McCahill,
  765 F.2d 849 (9th Cir. 1985).................................. 3

**TABLE OF AUTHORITIES (cont'd.)**

**PAGE(S)**

**CASES**

United States v. Miller,
  753 F.2d 19 (3d Cir. 1985)........................................ 2

United States v. Montoya,
  908 F.2d 450 (9th Cir. 1990)................................... 6, 13

United States v. Murillo,
  255 F.3d 1169 (9th Cir. 2001).................................... 8

United States v. Ortega,
  203 F.3d 675 (9th Cir. 2000)..................................... 12

United States v. Rodriguez-Rodriguez,
  840 F.2d 697 (9th Cir. 1988)..................................... 20

United States v. Stever,
  603 F.3d 747 (9th Cir. 2010).................................. 4, 7

United States v. Thomas,
  134 F.3d 975 (9th Cir. 1998)................................. 7, 8

United States v. Torres,
  794 F.3d 1053 (9th Cir. 2015)................................... 17

United States v. Townsend,
  897 F.2d 989 (9th Cir. 1990)..................................... 3

United States v. Vallejos,
  742 F.3d 902 (9th Cir. 2014).................................... 12

**STATUTES**

18 U.S.C. § 1001.................................................. 18

18 U.S.C. § 3143.................................................. 2

18 U.S.C. § 3143(b)(1)............................................ 3

**RULES**

Fed. R. Evid. 404(b).............................................. 7

Fed. R. Evid. 405(b).............................................. 7

Fed. R. Evid. 702(a)-(d).......................................... 13

Fed. R. Evid. 801................................................. 6

**TABLE OF AUTHORITIES (cont'd.)**

**PAGE(S)**

**RULES**

Fed. R. Evid. 801(c)............................................ 12

Fed. R. Evid. 801(d)(2)........................................ 12

iv

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

In March 2016, defendant Leroy Baca, the former sheriff of Los Angeles County, was convicted of conspiring to obstruct justice, obstruction of justice, and knowingly and willfully making false statements to the United States Attorney's Office and the FBI.  The evidence at trial showed that upon learning that the federal government was investigating deputies for alleged civil rights abuses and corruption, defendant conspired with his undersheriff Paul Tanaka, and other members of the Sheriff's Department, to obstruct the investigation.  With defendant's knowledge, consent, and approval, members of the Sheriff's Department hid inmate Anthony Brown, a federal informant, from the FBI, the U.S. Marshal's Service, and a federal grand jury, and threatened to arrest the lead FBI agent investigating the Sheriff's Department outside her home.  When interviewed by the government about these events, defendant lied and shifted the blame for the obstruction to his subordinates.

At trial, defendant continued to disclaim responsibility, blaming others, including, specifically, Paul Tanaka, for going beyond his "agenda" and arguing that he did not authorize, condone, agree with, or approve "any of those wrongful actions."  He also claimed he had "no problem" with the FBI and welcomed the federal government's involvement in monitoring the jails.  These, too, were lies.  Former members of the Sheriff's Department, including high ranking officials, testified that defendant indeed authorized, condoned, agreed with, approved, and even "laughed" at his co-conspirators' obstructive conduct.  Defendant did so even after

1

receiving a "frank" warning from Assistant Sheriff Cecil Rhambo that if he interfered with the federal investigation, he would be obstructing justice.  As to the false statements, defendant argued that he did not intentionally lie to the FBI, but rather he misremembered or misunderstood.

The jury rejected defendant's arguments and on March 15, 2017, convicted him on all counts.  On May 12, 2017, the Court sentenced defendant to 36 months' imprisonment and ordered him to surrender on July 25, 2017.  Defendant is appealing his conviction and seeks bail pending appeal.  As explained below, however, defendant fails to raise any substantial questions of law or fact that are likely to result in a new trial or reversal.  Defendant's appeal will only serve to delay the resolution of this case and his motion should be denied.

## II.   LEGAL STANDARDS

### A.   Bail Pending Appeal

"Once a person has been convicted and sentenced to jail, there is absolutely no reason for the law to favor release pending appeal or even permit it in the absence of exceptional circumstances."  H. Rep. No. 907, 91st Cong., 2d Sess. 186-87 (1970) (regarding model for 18 U.S.C. § 3143); see United States v. Miller, 753 F.2d 19, 22 (3d Cir. 1985) (Congress enacted § 3143 "to reverse the presumption in favor of bail"); United States v. Handy, 761 F.2d 1279, 1283 (9th Cir. 1985) (adopting the "interpretation of the 1984 Bail Act first set forth by the Third Circuit in Miller").  With that principle in mind, Congress enacted the Bail Reform Act ("the Act") to "tighten[] the standard" and "make[] it more difficult for a defendant to obtain

bail pending appeal." United States v. McCahill, 765 F.2d 849, 850 (9th Cir. 1985).

In this case, defendant is ineligible for bail pending appeal unless he raises "a substantial question of law or fact likely to result in" reversal or a new trial. 18 U.S.C. § 3143(b)(1).[1] "[A] 'substantial question' is one that is 'fairly debatable' or 'fairly doubtful.'" Handy, 761 F.2d at 1283 (citations omitted). It is not enough for defendant to merely show an "absence of frivolity." Id. at 1281-82.

Factual findings underlying the denial of bail are reviewed for clear error, United States v. Townsend, 897 F.2d 989, 994 (9th Cir. 1990), and the decision to deny bail is entitled to "great deference," United States v. Maull, 773 F.2d 1479, 1486-87 (8th Cir. 1985) (en banc). Findings cannot be disturbed absent a "definite and firm conviction that a mistake has been committed." Kohler v. Presidio Int'l, Inc., 782 F.3d 1064, 1068 (9th Cir. 2015).

**B.    Standards of Review**

As discussed below, almost all of the issues identified by defendant in his motion pertain to the Court's evidentiary rulings. Generally, a district court's evidentiary rulings are reviewed for abuse of discretion, a "significantly deferential test that looks to whether the district court reach[ed] a result that [was] illogical, implausible, or without support in inferences that may be drawn from the record[.]" See United States v. Hinkson, 585 F.3d 1247, 1263 (9th Cir. 2009); United States v. Gallenardo, 579 F.3d 1076, 1081 (9th Cir. 2009); see also United States v. Lynch, 437 F.3d 902, 913

---

[1] The government does not contend here that defendant has failed to meet his burden under 18 U.S.C. § 3143(b)(1)(A).

(9th Cir. 2006) (district court's rulings precluding testimony reviewed for abuse of discretion).  Alleged violations of the Fifth Amendment's Due Process Clause or the Sixth Amendment's Confrontation Clause, however, are reviewed de novo.  United States v. Kincaid-Chauncey, 556-F.3d 923, 934 (9th Cir. 2009).

Where, as here, a defendant claims his right to present a defense was violated by the court's evidentiary rulings, the Ninth Circuit examines the following factors: "the probative value of the evidence on the central issue; its reliability; whether it is capable of evaluation by the trier of fact; whether it is the sole evidence or merely cumulative; and whether it constitutes a major part of the attempted defense."  See United States v. Stever, 603 F.3d 747, 752 (9th Cir. 2010) (quoting Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir. 2003)).  "[N]ot every evidentiary error amounts to a constitutional violation."  Stever, 603 F.3d at 755.  To make out such a claim, a defendant must show clearly that the excluded evidence was critical to his case.  See United States v. Haischer, 780 F.3d 1277, 1284 (9th Cir. 2015) (evidentiary error violates a defendant's due process rights when it excludes: "(1) the main piece of evidence, (2) for the defendant's main defense, to (3) a critical element of the government's case").  Even then, he must show prejudice.  Stever, 603 F.3d at 757.

**III. ISSUES RAISED BY DEFENDANT**

Defendant raises six issues he claims amount to substantial issues on appeal.  They are: (1) whether the court erred in excluding evidence that defendant "cooperated" with an investigation by the Department of Justice's Civil Rights Division in August 2011;

(2) whether the court erred in excluding evidence that Baca "established, supported and worked with" the Office of Independent Review ("OIR"); (3) whether the court erred in excluding extrinsic evidence of defendant's "responses to excessive force" within the jails; (4) whether the court erred in excluding defendant's own hearsay statements from April 2013; (5) whether the court erred in precluding evidence of defendant's Alzheimer's disease; and (6) whether the government presented sufficient evidence to sustain a conviction on the false statements count.

Because none of defendant's arguments has merit, he will be unable to establish that the Court committed error, let alone reversible error, on appeal.  Accordingly, defendant's motion for bail pending appeal should be denied.

**A.    The Court Did Not Err in Excluding Evidence of Defendant's "Cooperation" With an Unrelated DOJ Civil Rights Investigation**

Defendant's vaguely argues that the Court erred in excluding evidence of his "cooperation" with a separate DOJ Civil Rights investigation into the Sheriff's Department in August 2011.  This argument fails for several reasons.  First, defendant does not develop the argument.  Although he states repeatedly that the evidence of his "cooperation" was "compellingly probative" and even "crucial" (Def. Br. at 16), he does not explain <u>what</u> evidence (<u>i.e.</u>, what testimony or exhibits) he believes should have been admitted at trial or how its exclusion likely will result in reversal or a new trial.  He simply asserts that he cooperated with a civil rights investigation, that his cooperation was acknowledged by then Assistant Attorney General Thomas Perez, and that the Court precluded

this "highly relevant and probative evidence." (Id. at 15.)  These vague and unsupported assertions are insufficient to raise a "substantial question" of law or fact justifying release on bail pending appeal.  United States v. Montoya, 908 F.2d 450, 450-51 (9th Cir. 1990) (motion for bond pending appeal was inadequate because arguments were only addressed in vague and cursory fashion).

Second, assuming for the sake of argument that the evidence defendant sought to introduce was the statement by the former AAG Perez that defendant had "vow[ed]" to cooperate with the Justice Department's investigation into allegations that deputies harassed minorities in Section 8 housing in Antelope Valley,[2] the argument fails on the merits.  As the government noted during oral argument, that statement neither qualifies as an "act" under Rule 403(b) of the Rules of Evidence, nor is it admissible under the hearsay rules. Fed. R. Evid. 801, 802.

Third, even if all defendant sought to do was elicit the fact that he stood next to former AAG Perez at a press conference pertaining to a DOJ investigation, that fact would be irrelevant or of minimal probative value, and whatever value it had would have been substantially outweighed by the dangers in Rule 403, including confusion of the issues, misleading the jury, undue delay and waste

---

[2] The Los Angeles Times reported on August 19, 2011 that defendant joined former AAG Perez at a news conference, "vowing to open up his department to federal investigators."  See Robert Faturechi and Ann Simmons, Feds Vow to 'Peel Onion' On Bias Claims Against Sheriff's Deputies, Los Angeles Times, August 19, 2011, available at http://latimesblogs.latimes.com/lanow/2011/08/civil-rights-probe.html.  The report also notes that Perez told the media that defendant had been "fully cooperative thus far."

of time.  The Court was correct to exclude this purported "cooperation" evidence under Rules 401 and 403, as well as Rule 405.[3]

Even if the Court erred in excluding this evidence, which it did not, such error would be harmless and certainly would not rise to the level of a constitutional violation.  See Stever, 603 F.3d at 756. The evidence had little, if any, probative value to the question of whether defendant committed the crimes charged in the indictment. Nor did the evidence bear meaningfully on defendant's intent to obstruct the FBI's undercover investigation into the jails.  See United States v. Thomas, 134 F.3d 975, 980 (9th Cir. 1998); United States v. Barry, 814 F.2d 1400, 1403 (9th Cir. 1987).  As the Court noted during the motions hearing, the fact that defendant may have cooperated with a civil investigation of which he was informed and was invited to participate in "has little, if any relevance to rebut the government's theory that defendant viewed the FBI investigation as a personal affront and threat to his authority[.]" (Tr. of Feb. 13, 2017 hr'g at 34:17-22.)

None of the remaining factors outlined in Stever weigh in defendant's favor.  The evidence would be inherently unreliable because it is hearsay and the jury would be unable to evaluate the so-called "cooperation" evidence because it was never detailed.  (It is also unclear how this evidence would come in.)  Moreover, the evidence was not the sole evidence of defendant's intent, nor was it

---

[3] Federal Rule of Evidence 405(b) prohibits character evidence by specific instances of conduct. In its ruling from the bench, the Court noted that even if cooperation with the Antelope Valley investigation were minimally relevant, it was inadmissible under Rules 404(b) and 405 because it was "evidence of other acts used for the purposes of establishing defendant's good character."  (See Tr. of Feb. 13, 2017 hr'g at 34:23-35:1.)

a "major part of the attempted defense."  As the Court well knows, defendant's main defense was that he acted to secure the safety of the inmate and the jails, and that other individuals, including Paul Tanaka, corrupted his orders in service of their own agendas.

**B.    The Court Did Not Err in Excluding Evidence Pertaining to OIR**

The Court likewise did not err in excluding highly irrelevant evidence pertaining to OIR.  Evidence concerning the establishment of OIR a decade before the charged conspiracy was too remote in time to be relevant and did not rebut the government's theory that defendant wanted to police himself.  See United States v. Murillo, 255 F.3d 1169, 1175 (9th Cir. 2001) (outlining factors for assessing admissibility of 404(b) evidence).  Moreover, as the government pointed out in the first trial and in its briefing, OIR was independent in name only.  OIR was housed in the Sheriff's Department's offices in Commerce; its lead counsel was an attorney for both the Sheriff's Department and the defendant personally; it had no power to bring charges against deputies committing abuse; and its recommendations could be accepted or rejected by the Department at will.  The fact that OIR continued to exist and receive funding at the time of the conspiracy did not rebut the government's theory that defendant wanted the Sheriff's Department to police itself; it supports it.

Likewise, the fact that defendant granted OIR access to review and publicly critique the Sheriff's Department did not "bear meaningfully" on defendant's intent vis-à-vis the crimes charged. Thomas, 134 F.3d at 979.  Unlike the FBI, a criminal law enforcement

8

agency, OIR was powerless in policing the Sheriff's Department; it did not have the investigative mandate or ability of the FBI, nor could it bring charges against deputies. Thus, the fact that defendant granted certain privileges to OIR did not negate his intent to obstruct or lie to the FBI.[4]

Finally, the fact that Mr. Gennaco previously prosecuted civil rights cases and knew members of the U.S. Attorney's Office had no relevance whatsoever to the issues at trial. (See Def. Br. at 18.) But even so, the defense was not precluded from adducing these facts in either the first or second trials. At the second trial, Mr. Gennaco testified extensively about his civil rights background, including the fact that he worked for many years as a "federal prosecutor prosecuting civil rights violations," worked in the U.S. Attorney's Office in Los Angeles from 1994-2001, prosecuted "hundreds" of civil rights cases while serving in the office, and worked with the United States Attorney while he was an AUSA to create a civil rights section. (See R.T. 1381:21-22; 1383:7-1384:13.) He also testified that he knew the people in the room in the August 29, 2011 meeting because he "worked with them when [he] was in the U.S. Attorney's Office." (R.T. 1400:23-1401:4.)

---

[4] Contrary to his assertion, defendant was not precluded from presenting evidence that OIR issued quarterly and annual reports. Mr. Gennaco testified to this fact in the second trial, just as he did in the first. (See R.T. at 1394:2-24.) Similarly, notwithstanding the Court's pretrial ruling, defense counsel spoke at length about OIR in his opening statement, noting that OIR was a "unique" "watchdog organization" that had "realtime access to the [LASD's internal] investigations" (which was not accurate as to ICIB). (See R.T. 13:6-22.) Defense counsel also lauded Mr. Gennaco in his opening statement as a "nationally recognized federal civil rights prosecutor" who had worked in the Department of Justice. (R.T. 14:7-12.) These were not just quick, passing references. Mr. Hochman's discussion about OIR spans over three pages in the reporter's transcript.

As the Court correctly determined in its pretrial ruling, whatever probative value any of this evidence had was substantially outweighed by the risks of juror confusion, prejudice, and waste of time.  Had the Court admitted additional OIR evidence, the government would have had to rebut the evidence by exploring the structure and capabilities of OIR, its ineffectiveness in "policing" the Sheriff's Department, and the relationship between Mr. Gennaco and defendant, among other issues.[5]  Additionally, the government would been prejudiced by the admission of such evidence, as it would have improperly buttressed defendant's character.  Excluding this evidence was proper and not an abuse of discretion.  In any event, any alleged error would be harmless given the low probative value of the OIR evidence and the fact much of it came in despite the Court's ruling.

### C. The Court Did Not Err in Excluding Evidence of Defendant's Responses to Use of Force in Jails

Defendant next claims that the Court hampered his ability to rebut the government's "motive theory" by precluding evidence that he took "action to address widespread abuse" in the jails. (Def.'s Br. at 20.)  Here, again, defendant speaks largely in generalities (see id. at 19-20), but it appears he takes issue with the court's exclusion of the following: (i) evidence that Commander Paul Pietrantoni trained deputies on proper use of force; (ii) evidence that defendant implemented a Commander's Management Task Force; and (iii) evidence that defendant provided educational opportunities to inmates through the Education Based Incarceration Program.  (Def. Br.

---

[5] As the Court recalls, the government did some of this in the first trial on cross-examination of Mr. Gennaco.

at 12.)   Each of these issues was litigated in pretrial briefing (see Dkt. Nos. 197, 201, 238, 244, 248)[6] and the government will not painstakingly relitigate them here, particularly because defendant's argument rests on a falsehood--that the government advanced the same motive theory in the second trial as in the first.   It did not.

As the Court is aware, the government made significant changes in the second trial, specifically eliminating from its case-in-chief evidence that defendant was on notice of inmate abuses in the jails. While the initial trial featured a number of witnesses who testified about inmate abuse in the jails and about defendant's responses to such misconduct, none of those witnesses were called in the second trial.   And contrary to defendant's assertions, the government's evidence on jail beatings in the retrial was extremely limited and not "graphic," and was introduced for the purpose of explaining the investigation that defendant was alleged to have obstructed. Moreover, the government did not accuse defendant of sanctioning deputy abuse of inmates or participating in such conduct.   Thus, there was no basis for introducing extrinsic and irrelevant evidence of the "numerous programs, policies and personnel" in the jails that addressed deputy-on-inmate violence.   There was nothing to rebut.

The Court's decision to exclude this evidence, both under 401 and 403, was proper and not an abuse of discretion.   Such evidence was irrelevant to the charges and the government's motive theory, and defendant was not harmed by its exclusion.   Excluding this evidence did not deny defendant a main piece of evidence or his main defense,

---

[6] The government incorporates here its prior arguments for excluding this irrelevant and improper evidence.   (See Dkt. Nos. 103, 201, 238, 248.)

11

nor did the evidence go to a "critical element of the government's case."  Haischer, 780 F.3d at 1284.

### D.   The Court Did Not Err in Excluding Defendant's Own Hearsay Statements

Without citing a single case, or even to the record, defendant argues that the court committed reversible error by precluding him from introducing "certain" of his own hearsay statements at trial. (Def. Br. at 20.)  As with the prior issues, this issue was litigated and argued extensively before the Court.  In his pre-trial pleading, defendant argued that he should be allowed to elicit his own statements for completeness or to provide "context" to his other statements.  He did not, as he now claims, argue that his statements were admissible as non-hearsay.

The law in this area is abundantly clear.  A defendant's prior, out-of-court statements are admissible only if offered against him. Fed. R. Evid. 801(d)(2).  If elicited by defendant, such statements are inadmissible hearsay.  Fed. R. Evid. 801(c).  A defendant does not have the right to present self-serving hearsay statements to the jury, United States v. Vallejos, 742 F.3d 902, 905 (9th Cir. 2014), and Rule 106 does not change hearsay statements into admissible testimony just because defendant prefers them or believes they provide "context" to the other statements.  See United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000).

Unlike the other issues presented, defendant does not contend that the Court's evidentiary ruling here rises to the level of a constitutional violation, because, of course, it does not.  The Court's ruling was correct as a matter of law, and, thus, not an

12

abuse of discretion.  Even if the Court did err, such error was harmless in light of the overwhelming evidence that defendant willfully lied to the FBI, including the testimony of defendant's co-conspirators.[7]

**E.    The Court Did Not Err in Precluding Testimony of Dr. James Spar**

Defendant next contends that the Court committed reversible error by excluding the testimony of his proposed expert, Dr. James Spar.[8]  Defendant's claim rests on his misapprehension of the Court's ruling.  Defendant believes the Court's ruling was "largely based" on its view that the scientific evidence linking defendant's "current diagnosis to Count 3" was insufficient.  (Def. Br. at 22.)  Thus, he argues, the Court improperly focused on the weight of the evidence, rather than its admissibility, and as a result exceeded its gatekeeping function.  This is incorrect.

The Court excluded Dr. Spar's testimony, not because the evidence linking defendant's diagnosis to Count Three was "insufficient," but because Dr. Spar's opinion was "speculative and inadmissible" and was "the product of unreliable methodology, artificially limited facts, and bare speculation."  (Dkt. 267).  The

---

[7] This argument is also woefully undeveloped.  Defendant claims that the court committed reversible error by excluding "certain of Mr. Baca's statements," but he does not say which statements those were, nor does he explain how excluding them is likely to result in a new trial or reversal.  Accordingly, it too is deficient under <u>Montoya</u>. 908 F.2d at 450-51.  The same is true of the claims stuffed in footnote 1 of defendant's memorandum.  (<u>See</u> Def. Br. at 2 n.1.)

[8] Defendant frames this argument as the erroneous exclusion of "evidence of Mr. Baca's Alzheimer's disease" (Def. Br. at 21), but the Court's ruling was not that broad.  Defendant was not precluded from introducing evidence of his Alzheimer's disease through his own testimony, for instance.

13

Court specifically found that Dr. Spar's opinion failed to meet the requirements of Federal Rule of Evidence 702, including the requirements that the proposed expert's testimony be based on sufficient data, be the product of reliable principles and methods, and be helpful to the trier of fact.  See Fed. R. Evid. 702(a)-(d).  If that was not clear enough, the Court also noted that it was granting the government's motion to exclude Dr. Spar's testimony "[f]or the reasons stated in the government's motions."  (See Dkt. 267; see also Dkt. Nos. 134 and 179, arguing, inter alia, that Dr. Spar's testimony should be excluded because it was unsupported by reliable methodology, medical records, and even Dr. Spar's own writings.)

    The Court also excluded Dr. Spar's proposed expert testimony on the ground that its low probative value was substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, and waste of time--issues defendant does not address.  As noted in the government's papers, and as observed by the Court, Dr. Spar's opinion was too speculative and undefined to be meaningful or helpful to the jury.  In a carefully worded but tortured declaration, Dr. Spar stated that he would testify that defendant's "Alzheimer's disease increased the probability" that, during defendant's April 2013 interview with the government, "memory impairment affected [defendant's] answers to questions about events and conversations" that occurred in August and September 2011.  But as the Court noted, this is a "meaningless phrase that applies just as easily to an increase from 0% to 1% as it does to an increase from 10% to 90%."  (Dkt. 267.)  Moreover, it was not based on any medical

facts.  This is why the Court excluded Dr. Spar's testimony under Rules 702 and 403.  None of this was error, constitutional or otherwise.

The Ninth Circuit reviews a district court's decision to admit or exclude expert testimony for abuse of discretion.  United States v. Alatorre, 222 F.3d 1098, 1000 (9th Cir. 2000) (recognizing "broad discretion granted to trial courts in assessing the relevance and reliability of expert testimony").  This Court did not abuse its discretion in excluding Dr. Spar's testimony because his proposed expert opinion, and underlying methodology, were plainly unreliable and failed to meet the requirements of Rule 702 and Daubert.  If permitted, Dr. Spar would have testified that (1) defendant was either in the pre-clinical stage or the mild cognitive impairment stage of Alzheimer's disease in April 2013, "as he may have been demonstrating clinical symptoms of MCI which were not formally diagnosed until May 2014"; and (2) regardless of which stage he was in, defendant's "Alzheimer's increased the probability" that memory impairment affected his answers" during his April 2013 interview with the government.  (See Decl. of James Spar, Dkt. 143, at 7-8, ¶ 9.)  But as the government previously argued, Dr. Spar's testimony had no reliable medical basis and was largely speculative.  (See Dkt. No. 153 at 3-11.)  There were no tests in defendant's medical record indicating changes in his brain, or records indicating that he was suffering memory loss at all in 2013.  Dr. Spar's declaration indicated that he relied on the statements of just a few individuals who spoke of defendant being "goofy" or "like a confused old man" (none of whom Dr. Spar personally interviewed), but he ignored the

statements of those closest to defendant who saw no issues with his cognitive function.  Finally, Dr. Spar based his highly equivocal opinion on a few medical authorities, but did not connect the general propositions in those authorities to defendant's actual circumstances.  Given these facts, and the potentially significant prejudice and confusion that could have resulted from allowing Dr. Spar to testify, it cannot be said that the Court's decision to preclude his testimony was an abuse of discretion, i.e., "illogical, implausible, or without support in inferences that may be drawn from the record[.]"[9]  Hinkson, 585 F.3d at 1263.

There was no error here, let alone one that rose to the level of a constitutional violation.  Assuming everything in Dr. Spar's proposed opinion as true, the testimony would be of minimal probative value because, ultimately, Dr. Spar said nothing concrete or consequential.  Moreover, as outlined above, the testimony would be wholly unreliable and not helpful to the jury because Dr. Spar's conclusions were meaningless.  See United States v. Lopez-Alvarez, 970 F.2d 583, 588 (9th Cir. 1992) (exclusion of evidence did not amount to constitutional error because "testimony sought to be adduced would not have added substantially  to the knowledge the jury gained during the course of the trial").  Finally, while the proffered evidence arguably was a major part of the defense to Count Three (and Count Three only, as the defense conceded during the

---

[9] The risks of prejudice to the government, confusion of the issues, and misleading the jury were heightened here given Dr. Spar's impressive credentials and affiliations.  Notwithstanding his speculative and unsupported opinion regarding defendant, a juror could have been improperly swayed or influenced by the fact that someone with Dr. Spar's pedigree was testifying for the defense.  While an individual's background certainly is relevant, that alone does not make him qualified to testify as an expert in federal court.

November 22, 2016 hearing), the Court did not "preclud[e] defendant from presenting any defense" to that count at all.  See United States v. Torres, 794 F.3d 1053 (9th Cir. 2015).  In his opening statement and closing argument, defense counsel advanced several defenses to the false statements count, including that defendant may have forgotten or been confused about the facts given his age, the demands on his schedule, the other important work he is doing, the passage of time, and even the length of the interview.  Additionally, counsel suggested that some of the prosecutor's questions during the interview may have been confusing or poorly phrased.  And finally, counsel suggested in closing that at least some of the statements charged as false statements were literally true.  Thus, assuming arguendo that the Court erred in excluding Dr. Spar's testimony, there was no constitutional error here because defendant was still allowed to put on a defense.  For these same reasons, and in light of the other evidence at trial, any error would have been harmless.

Defendant's follow-on argument that the Court erred in excluding "evidence of [his] Alzheimer's disease" after the government played a clip from a 2015 deposition in which defendant testified also fails to raise a substantial question of law or fact on appeal.  Presumably the evidence defendant sought to admit at that point was Dr. Spar's testimony, but as the government noted during trial, Dr. Spar did not provide an expert opinion on defendant's condition in 2015 (nor, to the government's knowledge, did he review the 2015 deposition transcript).  Moreover, Dr. Spar's testimony, if given as proffered, would have suffered from the same failings discussed at length above.  Finally, the questions put to defendant in the 2015 deposition clip

did not pertain to defendant's memory.  The questions related to the nature of defendant's relationship with Paul Tanaka, which defendant described as "extremely close" and "like father and son."  The Court did not abuse its discretion in continuing to exclude Dr. Spar's testimony.[10]

### F.  Defendant Fails to Raise a Substantial Question As to the Legal Sufficiency of the Government's Evidence as to Count Three

Finally, defendant argues that his appeal raises a substantial question of law or fact likely to result in reversal or a new trial as to Count Three.  Specifically, defendant contends that the government failed to present any evidence pertaining to the materiality of the false statements with which he was charged and, thus, failed to meet its burden of proof.  (See Def.'s Br. at 24-25).  Defendant is wrong, both as a matter of law and fact.

A false statement is material for purposes of 18 U.S.C. § 1001 if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed."  United States v. King, 735 F.3d 1098, 1107-08 (9th Cir. 2013) (internal quotations and citation omitted).  "A misstatement need not actually influence the agency decision in order to be material; propensity to influence is enough."  Id.  Accordingly, in assessing the materiality of a false statement, the courts' concern is not with the extent of the agency's reliance of the statement, but

---

[10] If the evidence defendant sought to introduce after the 2015 deposition testimony was played was something other than Dr. Spar's testimony, he has not specified what that evidence was or how the Court's exclusion of such evidence would likely would lead to reversal or a new trial.

18

rather with the "intrinsic capabilities of the false statement itself[.]"  Id. (internal quotations and citation omitted).

Here, defendant was charged with making false statements to the FBI and the U.S. Attorney's Office about his knowledge of the federal investigation into the jails and his role in the conspiracy to obstruct the investigation in an interview in 2013.

The evidence at trial established that the FBI was investigating the alleged obstruction at the time of the interview, and had been for some time, and that the FBI wanted to speak with defendant as part of its investigation.  (See R.T. 7:3-15 (noting that FBI began investigating obstruction in approximately summer of 2012, and specifically the Sheriff's Department's hiding of an informant and intimidation of witnesses); see also R.T. 12:2-20; 270:10-14; 272:23-273:4.)  Special Agent Jason Dalton testified that the government provided a letter to defendant advising him of the nature of the investigation and notifying him that while he was not a "target" of the obstruction investigation at the time, the government's assessment could change "in the event that new and different information regarding Mr. Baca comes to our attention."  (R.T. 12:2-20; see also Gov. Ex. 111.)  Special Agent Dalton further testified that it was possible defendant could become a target of the investigation and could even be charged.  (R.T. 12:21-13:8.)  Similarly, Special Agent David Dahle testified that by 2012, the FBI was investigating "what the Sheriff's Department had done in relation to Anthony Brown and our investigation," (RT 270:1-14), and had specifically subpoenaed documents pertaining to defendant.  (RT 271:2-14.)  Moreover, and significantly, Special Agent Dahle

testified that the FBI wished to speak with defendant in April 2013 "[b]ecause he had information that may have been relevant to the investigation."  (RT 272:23-273:4.)

Given these facts, there was more than enough evidence in the record to support a finding defendant's statements were material to both the FBI and U.S. Attorney's Office's decisions as a matter of law.  See King, 735 F.3d at 1107-08.  False statements by the defendant that he was not aware of the government's investigation and was not involved in various obstructive acts "obviously had the capacity" to affect the FBI and the U.S. Attorney's Office's investigation of the obstruction.  See United States v. Rodriguez-Rodriguez, 840 F.2d 697, 701 (9th Cir. 1988) (defendant's statement to Border Patrol that all occupants in vehicles were citizens "obviously had the capacity to affect the Border Patrol's decision to conduct an inspection and to determine whether occupants were U.S. citizens").  Thus, defendant fails to raise a substantial question of law or fact on this issue.

**IV.   CONCLUSION**

Defendant has failed to show that his appeal will raise any substantial issues of law or fact likely to result in reversal or a new trial.  The Court's evidentiary rulings were correct and supported by the Federal Rules of Evidence and established Ninth Circuit and Supreme Court case law.  The only non-evidentiary issue discussed in defendant's brief pertains to the sufficiency of the evidence as to Count Three, but that issue too is foreclosed by established law.  There are no exceptional circumstances here; defendant has been convicted and sentenced and he has not identified

any serious questions on appeal.  His motion for bail should be denied.