# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

| Case No. | CR 16-66 PA | | Date | July 19, 2017 |
|---|---|---|---|---|

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |
|---|---|

| Interpreter | None |
|---|---|

| Kamilla Sali-Suleyman | Not Reported | Lizabeth Rhodes (Not present) Eddie Jauregui (Not present) |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Leroy Baca | Not | | X | Nathan Hochman | Not | | X |

**Proceedings:**   IN CHAMBERS - ORDER

Before the Court is a Motion for Bond Pending Appeal filed by defendant Leroy Baca ("Defendant") (Docket No. 369).[1/]  The Court concludes that a hearing is unnecessary.

## I.      Factual Background

The First Superseding Indictment charged Defendant with: (1) conspiracy to obstruct justice in violation of 18 U.S.C. §§ 371 & 1503(a); (2) obstruction of justice in violation of 18 U.S.C. § 1503(a); and (3) making false statements in violation of 18 U.S.C. § 1001(a)(2).  Those charges arose out of efforts by members of the Los Angeles Sheriff's Department ("LASD") to obstruct a federal grand jury's investigation into excessive force committed by other LASD members at Los Angeles County's jails.  Defendant was the elected Sheriff of Los Angeles County at the time of both the abuse conducted by members of his department and of the efforts to obstruct the federal investigation into that abuse.

For trial, the Court initially severed the false statements count from the conspiracy and obstruction counts, and tried the conspiracy and obstruction counts first.  After the jury in that trial was unable to reach a unanimous verdict, and the Court declared a mistrial, the Court granted the Government's motion to re-join the three counts.  At a second trial in March 2017, the jury convicted Defendant on all three counts.  The Court subsequently sentenced Defendant to a below-guidelines sentence of 36 months of incarceration.

---

[1/]      The Court initially ordered Defendant's Motion stricken because it was filed as a "Supplement" to his Sentencing Position just two days prior to the purported hearing date that coincided with Defendant's sentencing hearing, and therefore deprived both the Government and the Court adequate time to respond to and review the Motion.  At the sentencing hearing, the parties agreed to a briefing schedule and have the Court consider the Motion without requiring Defendant to re-file it.  Defendant did not take advantage of his opportunity to file a Reply to the Government's Opposition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

## II.    Legal Standard

Defendant now seeks bond pending appeal.  For a defendant to obtain release on bond pending appeal, the Court must find:

(A)    by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . and

(B)    that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
   (i)    reversal,
   (ii)    an order for a new trial,
   (iii)    a sentence that does not include a term of imprisonment, or
   (iv)    a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1).  Here, the Government does not dispute that Defendant has, for purposes of 18 U.S.C. § 3143(b)(1)(A), established by clear and convincing evidence that he is not likely to flee or pose a danger to the community if released on bond pending the disposition of his appeal.

Section 3143(b)'s requirement that the appeal "is not for purpose of delay" is a separate requirement from the requirement that the appeal "raises a substantial question" likely to result in reversal or a new trial.  See United States v. Handy, 761 F.2d 1279, 1283 (9th Cir. 1985) ("[U]nder the 1984 Bail Act a court must find the following to grant bail pending appeal: (1) that the defendant is not likely to flee or pose a danger to the safety of any other person in the community if released; (2) that the appeal is not for purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.").  According to the Ninth Circuit, "the word 'substantial' defines the level of merit required in the question raised on appeal, while the phrase 'likely to result in reversal' defines the type of question that must be presented." Id. at 1281.  "[A] 'substantial question' is one that is 'fairly debatable,' or 'fairly doubtful.'  'In short, a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous.'" Id. at 1283 (quoting United States v. Giancola, 754 F.2d 898, 901 (9th Cir. 1985)).

In his Motion for Bond Pending Appeal, Defendant asserts that he has satisfied his burden to raise "substantial questions" involving evidentiary rulings made by the Court.  The Court's evidentiary rulings are generally reviewed for an abuse of discretion.  See United States v. Gallendardo, 579 F.3d 1076, 1081 (9th Cir. 2009); see also United States v. Haischer, 780 F.3d 1277, 1281 (9th Cir. 2015)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

("We review the exclusion of evidence under Rule 403 for an abuse of discretion."). According to Defendant, the Court's erroneous evidentiary rulings violated his constitutional right to present a defense. "Where an evidentiary error has occurred in a criminal prosecution, we then review de novo whether the error 'rises to the level of a constitutional violation.'" Haischer, 780 F.3d at 1281 (quoting United States v. Pineda-Doval, 614 F.3d 1019, 1032 (9th Cir. 2010)). In considering such constitutional arguments, the Ninth Circuit considers "the probative value of the evidence on the central issue; its reliability; whether it is capable of evaluation by the trier of fact; whether it is the sole evidence on the issue or merely cumulative; and whether it constitutes a major part of the attempted defense." United States v. Stever, 603 F.3d 747, 756 (9th Cir. 2010).

Defendant also challenges the sufficiency of the evidence to support his conviction on Count 3, for making false statements. In considering a challenge to the sufficiency of the evidence to support a conviction, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Del Toro-Barboza, 673 F.3d 1136, 1143 (9th Cir. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

## III.    Analysis

In support of his Motion for Bond Pending Appeal, Defendant asserts six grounds in his attempt to meet his burden to raise a substantial question likely to result in reversal or a new trial. Those six grounds are: (1) whether the Court erred in excluding evidence that Defendant cooperated with an unrelated investigation conducted by the Department of Justice's Civil Rights Division; (2) whether the Court erred in excluding evidence that Defendant established, supported, and worked with the Office of Independent Review ("OIR"); (3) whether the Court erred in excluding evidence relating to Defendant's responses to excessive force within Los Angeles County's jails; (4) whether the Court erred in excluding portions of Defendant's interview with federal investigators conducted in April 2013 that Defendant sought to introduce; (5) whether the Court erred in precluding evidence of Defendant's Alzheimer's disease; and (6) whether the Government presented sufficient evidence to sustain a conviction on the false statements count.

### A.    <u>Evidence of Defendant's Cooperation with Unrelated Civil Rights Investigation</u>

Defendant asserts that this Court's exclusion of his purported "cooperation" with an unrelated civil investigation being conducted by the Department of Justice's Civil Rights Division raises a substantial question that is likely to result in reversal or a new trial. The only evidence Defendant ever proffered of this cooperation was an inadmissible newspaper article and photo concerning an appearance Defendant made with Thomas Perez, who at the time was the Assistant Attorney General for the Civil Rights Division. As the Government correctly observes in its Opposition, Defendant never identifies what testimony or exhibits related to this category of evidence he believes should have been admitted at trial. Even assuming that Defendant did "vow" to cooperate with the Department of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Justice's investigation into allegations that deputies harassed minority residents of Section 8 housing in the Antelope Valley, such evidence was not relevant to the charges against Defendant under Federal Rule of Evidence 401.  See Herzog v. United States, 226 F.2d 561, 565 (9th Cir. 1955) ("A defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions.").  Nor do such statements and other similar evidence qualify as admissible "acts" under Rule 404(b).  That evidence is also inadmissible under Rule 405 and is hearsay to which no exception applies.  Additionally, even if such evidence was minimally relevant, the Court properly weighed the probative value of that evidence against the potential prejudice, juror confusion, and time-wasting of that evidence when it concluded, pursuant to Rule 403, that the evidence should be excluded.

> **B.** **Evidence Concerning Defendant's Establishment of and Working with OIR**

Defendant contends that the Court's exclusion of certain evidence relating to the creation of OIR a decade prior to the charged conduct, and Defendant's continued support and relationship with OIR in the intervening period, raises a substantial issue likely to result in reversal or a new trial.  The Court sustained the Government's objections to such evidence because it was not relevant under Rule 401.  There was no evidence that OIR was in fact "independent."  OIR was housed in an LASD facility, its lead counsel also served as an attorney for LASD and Defendant, it had no power to bring charges against deputies committing abuse, and its recommendations could be ignored by the Department.  As the Government notes in its Opposition to the Motion for Bond Pending Appeal, "[t]he fact that OIR continued to exist and receive funding at the time of the conspiracy did not rebut the government's theory that [D]efendant wanted the Sheriff's Department to police itself; it supports it."

Even if such evidence could be considered minimally relevant, its probative value was substantially outweighed by the risks of juror confusion, prejudice, and waste of time.  The admission of such evidence would have required the Government to rebut the evidence by exploring the structure of OIR, and its ineffectiveness in providing meaningful oversight of LASD.  Additionally, as with most of the evidentiary rulings Defendant challenges in this Motion, Defendant sought to present such evidence to introduce character evidence without satisfying the requirements of Rule 404(b).  See United States v. Murillo, 255 F.3d 1169, 1175 (9th Cir. 2001) ("Evidence of 'other acts' is admissible under Rule 404(b) when:  (1) sufficient evidence exists for the jury to find that the defendant committed the other acts; (2) the other acts are introduced to prove a material issue in the case; (3) the other acts are not too remote in time; and (4) if admitted to prove intent, the other acts are similar to the offense charged."), overruled on other grounds as recognized in United States v. Mendez, 476 F.2d 1077, 1080 (9th Cir. 2007).  The Court did not abuse its discretion by excluding this irrelevant, prejudicial, and otherwise inadmissible evidence.

> **C.** **Evidence Concerning Defendant's Responses to Excessive Force within the Jails**

Defendant challenges the Court's exclusion of evidence related to his "response" to excessive force occurring within the jails.  Although the Motion for Bond Pending Appeal does not specifically

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

describe this evidence, the Court granted the Government's Motion in Limine to exclude evidence related to training provided by Commander Paul Pietrantoni about the proper use of force and "wrestling moves" to deputies, the establishment of a Commander Management Task Force ("CMTF"), and the creation of the Education Based Incarceration Program ("EBI"). Unlike in the initial trial, when the Government presented evidence that Defendant received "notice" of the widespread violence committed by deputies within the jails, the Government made significant changes to its trial strategy in the second trial and eliminated the "notice" witnesses, evidence, and argument.[2/]

The Court correctly concluded that this evidence was not relevant because efforts to curtail excessive force resulting from deputies attempting to extricate uncooperative inmates from their cells, or to provide educational opportunities in the asserted but unproven hope that those opportunities might reduce confrontations between deputies and inmates, has nothing to do with the types of unprovoked and retaliatory violence committed by deputies that were the subject of the Grand Jury's investigation. Situations where deputies may have needed to use some force, but resorted to using excessive force, have little if anything to do with situations where no force was justified in the first instance. The Court therefore properly excluded the evidence under Rule 401, and even if it were minimally relevant, its probative value was substantially outweighed by the danger of prejudice, confusing of the issues, misleading the jury, undue delay, and wasting of time under Rule 403. Additionally, this evidence, as the Government repeatedly and correctly argued, and the Court held, was inadmissible "other act" evidence under Rule 404(b).

### D.    Exclusion of Defendant's Own Statements

Prior to trial, Defendant sought to require the admission of portions of his April 2013 interview with federal investigators to supplement the portions the Government intended to introduce for purposes of completeness or to provide context under Rule 106. In his Motion for Bond Pending Appeal, Defendant does not identify the particular statements he believes the Court erroneously excluded. The Court did not commit error by excluding the additional portions of the interview that Defendant sought to introduce. Rule 106 does not allow a defendant to introduce self-serving hearsay statements at trial. United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996). Even if Defendant belatedly contends that he has a non-hearsay purpose for introducing the statements, the statements Defendant sought to introduce did not clarify or add context to otherwise misleading statements introduced by the Government. The statements introduced by the Government were not misleading or

---

[2/]    The Government made a number of changes to its presentation of its case-in-chief. Despite Defendant's assertion throughout his Motion for Bond Pending Appeal that the Court's evidentiary rulings are the reason that the second trial resulted in his conviction while the first jury could not reach a verdict, it was these changes in the Government's trial strategy, including the addition of the testimony of William Carey, and emphasizing Defendant's participation in the conspiracy, as well as a different jury composition and Defendant's decision not to call character witnesses, rather than the Court's evidentiary rulings, that explain the different results in the two trials.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

taken out of context.  See United States v. Vallejos, 742 F.3d 902, 905 (9th Cir. 2014).  The Court therefore committed no error by excluding the portions of the statements Defendant sought to introduce and preventing Defendant from introducing self-serving hearsay.

### E.    **Evidence Relating to Defendant's Alzheimer's Disease Diagnosis**

Defendant challenges the Court's granting of the Government's Motion in Limine to exclude the testimony of Dr. James Spar.[3]  As an initial matter, neither Defendant nor Dr. Spar ever offered any opinion concerning a relationship between Defendant's Alzheimer's disease diagnosis and the obstructive conduct in 2011.  Accordingly, Dr. Spar's testimony could not be relevant under Rule 401 to Counts 1 and 2, and there can be no viable argument that the exclusion of that testimony raises a substantial question likely to result in reversal or a new trial on those charges.

Contrary to the argument contained in Defendant's Motion, the Court never impermissibly weighed the evidence when it concluded that Dr. Spar's testimony did not satisfy Rule 702's requirements for admissibility.[4]  Instead, and as argued in the Government's Motion in Limine, that testimony, even for Count 3, was entirely speculative and inadmissible under Rule 702 because it was the product of unreliable methodology, artificially limited facts, and bare speculation.  Indeed, undefined pronouncements including those in which Dr. Spar opines that Defendant's current diagnosis "may have been demonstrating clinical symptoms" and that there was an "increased probability" that defendant's condition "negatively affected his ability" in 2013 would not help the trier of fact to understand the evidence or determine a fact in issue and would only serve to confuse the jury.[5]  "Increased probability" is a meaningless phrase that applies just as easily to an increase from 0% to 1% as it does to an increase from 10% to 90%.  Dr. Spar's opinion therefore fails to satisfy the requirements of Rule 702.  Even if admissible, the Court properly concluded that this evidence and testimony should be excluded under Rule 403 because the low probative value of the evidence was substantially outweighed by the dangers of unfair prejudice, including the sympathy the evidence might create for the Defendant, confusion of issues, misleading the jury, and waste of time.

---

[3]    In his Motion for Bond Pending Appeal, Defendant characterizes the Court's perceived error as excluding a broader class of "evidence of Mr. Baca's Alzheimer's disease," but the Court never issued such a broad exclusionary ruling.  Instead, the Court only precluded the testimony contained in the proffer of Dr. Spar's testimony submitted by Defendant.

[4]    Dr. Spar sought to link Defendant's statements in 2013 to a diagnosis of mild cognitive impairment that he received years later.

[5]    To be relevant an expert's proffered testimony must "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed.R.Evid. 702.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

In his Motion for Bond Pending Appeal, Defendant additionally contends that the Government "opened the door" to evidence of Defendant's Alzheimer's disease by playing excerpts of a 2015 deposition in which Defendant testified about his relationship with his co-conspirator Paul Tanaka. But Dr. Spar never proffered an opinion concerning that deposition testimony. Additionally, although Defendant now nonsensically argues that he should have been allowed to attack his own credibility, erroneously referring to himself as a "party-opponent," through evidence he never sought to admit and has not identified or described, there has never been any evidence that Defendant's statements concerning his relationship with former Undersheriff Tanaka were untrue or the product of Defendant's Alzheimer's disease. Such arguments do not raise a substantial question likely to result in reversal or a new trial.

**F.      Sufficiency of the Evidence in Support of the False Statements Conviction**

Defendant asserts that the Government failed to elicit sufficient evidence that his false statements to federal investigators during the April 2013 interview were "material." "A misstatement is material for purposes of [18 U.S.C.] § 1001 if it has 'a natural tendency to influence or [is] capable of influencing the decision of the decisionmaking body to which it was addressed.'" United States v. King, 735 F.3d 1098, 1107-08 (9th Cir. 2013) (quoting United States v. Gaudin, 515 U.S. 506, 509, 115 S. Ct. 2310, 132 L. Ed. 3d 444 (1995)). "A misstatement need not actually influence the agency decision in order to be material; propensity to influence is enough. Accordingly, our concern is not with the extent of the agency's reliance, but rather with the 'intrinsic capabilities of the false statement itself.'" Id. at 1108 (quoting United States v. Serv. Deli Inc., 151 F.3d 938, 941 (9th Cir. 1998)).

Defendant was charged with making false statements to the FBI and the U.S. Attorney's Office about his knowledge of the federal investigation into the jails and his role in the conspiracy to obstruct the investigation in an interview in 2013. As explained in the Government's Opposition to Defendant's Motion for Bond Pending Appeal:

> The evidence at trial established that the FBI was investigating the alleged obstruction at the time of the interview, and had been for some time, and that the FBI wanted to speak with defendant as part of its investigation. (See Reporter's Transcript ("R.T.") 7:3-15 (noting that FBI began investigating obstruction in approximately summer of 2012, and specifically the Sheriff's Department's hiding of an informant and intimidation of witnesses); see also R.T. 12:2-20; 270:10-14; 272:23-273:4.) Special Agent Jason Dalton testified that the government provided a letter to defendant advising him of the nature of the investigation and notifying him that while he was not a "target" of the obstruction investigation at the time, the government's assessment could change "in the event that new and different information regarding Mr. Baca comes to our attention." (R.T. 12:2-20; see also Gov. Ex. 111.) Special Agent Dalton further testified that it was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

possible defendant could become a target of the investigation and could even be charged. (R.T. 12:21-13:8.) Similarly, Special Agent David Dahle testified that by 2012, the FBI was investigating "what the Sheriff's Department had done in relation to Anthony Brown and our investigation," (R.T. 270:1-14), and had specifically subpoenaed documents pertaining to defendant. (RT 271:2-14.) Moreover, and significantly, Special Agent Dahle testified that the FBI wished to speak with defendant in April 2013 "[b]ecause he had information that may have been relevant to the investigation." (R.T. 272:23-273:4.)

(Gov't Opp'n 19:7-20:3.) The Court concludes that, viewing the evidence in the light most favorable to the Government, there was sufficient evidence presented to the jury from which a rational trier of fact could have found Defendant's misstatements "material." See Del Toro-Barboza, 673 F.3d at 1143; see also United States v. Rodriguez-Rodriguez, 840 F.2d 697, 701 (9th Cir. 1988) (concluding that defendant's "statement that all occupants of the motor vehicle were U.S. citizens obviously had the capacity to affect the Border Patrol's decision to conduct an inspection and to determine whether occupants were U.S. citizens"). Defendant's sufficiency of the evidence challenge to his conviction on Count 3 therefore fails to raise a substantial issue likely to result in reversal or a new trial.

### G. **Defendant has not Sustained his Burden to Establish that the Appeal is not for Purposes of Delay**

In enacting the 1984 Bail Act, "Congress shifted the burden of proof from the government to the defendant." Handy, 761 F.2d at 1283. It is therefore Defendant's burden to establish that his appeal is not for purposes of delay. Defendant has not even addressed this element, let alone met his burden to show that Defendant does not have "delay" as a purpose. Indeed, prior to sentencing, the Government expressed its concern that Defendant's Alzheimer's disease could worsen during any period of delay and complicate or prevent re-sentencing or further proceedings. The Court shares this concern. Because Defendant has not met his burden to prove by a preponderance of the evidence that his appeal is not for purposes of delay, this failure is, on its own, a sufficient and independent basis to deny Defendant's Motion for Bond Pending Appeal.

### **CONCLUSION**

For all of the foregoing reasons, the Court concludes that Defendant has failed to raise a substantial question likely to result in reversal or new trial. Both individually and collectively, the Court's evidentiary rulings were not error and did not deprive Defendant of his constitutional right to present a defense. Additionally, sufficient evidence exists to support Defendant's conviction on Count 3 and Defendant failed to satisfy his burden to establish that his appeal is not for purposes of delay. Even if Defendant has established the existence of a substantial question likely to result in reversal or a new trial on Count 3, either because of the exclusion of Dr. Spar's testimony or the insufficiency of the evidence to support that charge, reversal or a new trial on that count would not result in the reversal of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

his conviction or a new trial on Counts 1 and 2, and Defendant's conduct on those charges, as well as all of the other 18 U.S.C. § 3553 sentencing factors, would still warrant a sentence that includes a term of imprisonment in excess of the time necessary to resolve any appeal on Count 3.  The Court therefore denies Defendant's Motion for Bond Pending Appeal.

IT IS SO ORDERED.