UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

THE HONORABLE PERCY ANDERSON, DISTRICT JUDGE PRESIDING

| | | |
|---|---|---|
| USA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 16-0066-PA |
| | ) | |
| | ) | |
| LEROY BACA, | ) | |
| Defendant. | ) | |
| _____ | ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

WEDNESDAY, AUGUST 24, 2016

**STATUS CONFERENCE**

_____

DEBORAH K. GACKLE, CSR, RPR
United States Courthouse
350 W. First Street, 4th Floor
Los Angeles, California 90012
(213) 894-8913

**APPEARANCES OF COUNSEL:**

     **For the Plaintiff:**

         Brandon D. Fox
         AUSA – Office of the US Attorney
         312 North Spring Street 12th Floor
         Los Angeles, CA 90012

         Lizabeth A. Rhodes
         AUSA – Office of US Attorney
         Public Corruption and Civil Rights Section
         312 North Spring Street 13th Floor
         Los Angeles, CA 90012.

         Eddie A. Jauregui
         AUSA – Office of the US Attorney
         General Crimes Section
         312 North Spring Street 12th Floor
         Los Angeles, CA 90012

     **For the Defendant:**

         Nathan J. Hochman
         Morgan Lewis and Bockius LLP
         The Water Garden
         1601 Cloverfield Boulevard Suite 2050 North
         Santa Monica, CA 90404-4082
         310-255-9025
         Fax: 310-907-1001
         Email: nathan.hochman@morganlewis.com

                                      – – – – –

**LOS ANGELES, CALIFORNIA; WEDNESDAY, AUGUST 24, 2016;**

**11:00 A.M.**

**- - - - -**

THE CLERK:  Calling item 1, CR 16-66(A), USA v. Leroy D. Baca.

Counsel, please state your appearances, please.

MR. FOX:  Good morning, Your Honor.  Brandon Fox, Lizbeth Rhodes and Eddie Jauregui on behalf of the United states.

THE COURT:  Good morning.

MR. HOCHMAN:  Good morning, Your Honor.  Nathan Hochman on behalf of defendant, Leroy Baca, who is present, on bond.

THE COURT:  Good morning.

Well, I take it the reason that we're here this morning is that the parties were unable to agree on a trial date in this case.

MR. FOX:  That's correct, Your Honor.  The government suggests a December 6th date, which is consistent with what we told you last time in court.  That is approximately five months after Mr. Baca withdrew his guilty plea, and it's also more than five months after we disclosed discovery.

There are additional reasons that I can get into, but I think it gives him plenty of time in order to get ready for

trial, and anything after that, you know, I think that we're getting into the period of not knowing how Mr. Baca is going to be progressing; and I think we're better off pushing the trial date as quick as possible and having the trial date as quick as possible and giving Mr. Hochman, of course, enough time to be ready for the trial.

THE COURT:  What's the status of discovery?

MR. FOX:  We had turned it over.  As we acquire more -- I'm sorry.  I'm getting some feedback -- as we acquire more, Your Honor, we, of course, are turning it over.  We just yesterday received the transcripts from the Tanaka trial; we turned it over to Mr. Hochman today.  Of all of those, we've also provided Rule 3500 material already to Mr. Hochman for the witnesses that we anticipate calling at trial.  Of course, as those change, we will provide more 3500 material if we identify additional witnesses, and we provided all of the discovery even outside of Rule 3500 already, Your Honor.

THE COURT:  Well, what's the government's estimate as to how much time it's going to take to put on its case in chief?

MR. FOX:  Given our past history, I think that we could do it in about six or seven trial days.  I think that if we compare this to the Tanaka trial, we had a jury on the Tuesday, and we rested the following Friday, if I remember correctly; so that would be right there, eight trial days.  I

think that there are issues in our case in chief that were in Tanaka that aren't in this case. So a think a seven-day trial calendar for the case in chief is probably correct.

MR. HOCHMAN: Your Honor, I wanted a chance to better go over at least the discovery that has been provided at a general level, and as I mentioned before, it's on about a terabyte of data, which is a huge amount of data, that we are now going through, both electronic searches and whatnot, but ultimately you've got to read it, Your Honor. It's nice to search through it, but you got to go through every -- you know, four different trial transcripts. We've seen that the government has given us a witness list, and it turns out to be a relatively small subset of all the witnesses that have ever testified in these four trials. So we need go through all the other witnesses, see if they say anything that the defense can use, then go through all the discovery, which is enormously voluminous, to see if there's anything missing, Your Honor, that we can then separately request, but we won't know that until we've gone through all of that.

We have certain medical issues, as the court is aware, that we're in the process of determining whether or not we'll be able to present a 12.2 defense. At that point, Your Honor, if we do, the government would have the right to have its own expert examine Mr. Baca if we were to raise such a 12.2 defense.

So, Your Honor, in going through all this evidence and then doing our own investigation because this case is different in some respects. It has a different set of charges, the 2013 charges, to go with the 2011 charges, and it has a different type of defense that has not been presented in any of the prior four trials, and then we have to obviously address whether or not there --

THE COURT: What defense is that?

MR. HOCHMAN: Well, in the -- some of the defendants of the prior trials were blaming Sheriff Baca. Obviously, we don't have that defense, but it then creates a different type of defense as to what was going on below Sheriff Baca.

So to the extent that everyone else in the other trials were -- at least part of their defense, Your Honor, as I've interpreted reading through some of the transcripts, is to blame the person above them, that they were following lawful orders, et cetera. That is not going to be, as we anticipate, a defense that Sheriff Baca has. So I give that as just one example. There's a medical defense that won't -- that will not have played out in other defenses; there are trials that we believe will play out in this trial.

A part of it, Your Honor, is that we need to continue our investigation along those lines to -- if we're going to present it, have a report that we can then share with the government; then they're going to want -- they've already told

me they're going to want their own expert to evaluate Sheriff Baca to determine the -- what, if anything, that expert will either agree or disagree with the defense expert.

So the short answer, Your Honor, is that five months from the date that --

THE COURT: You keep talking like it's a medical defense.

MR. HOCHMAN: Yes, Your Honor.

THE COURT: What exactly is that?

MR. HOCHMAN: So, Your Honor, the Alzheimer's -- just a brief --

THE COURT: Is Alzheimer's -- you mean to say that people who suffer from Alzheimer's don't recognize right from wrong?

MR. HOCHMAN: No, Your Honor. People who suffer from Alzheimer's might have memory issues.

THE COURT: Okay. Is that a defense?

MR. HOCHMAN: Yes, Your Honor. If you recall the 2013 allegations, Your Honor, for false statement is whether --

THE COURT: You're not claiming an insanity defense.

MR. HOCHMAN: No, Your Honor.

THE COURT: Okay.

MR. HOCHMAN: It's a mental defect 12.2 defense.

THE COURT: As to what charge?

MR. HOCHMAN: Certainly the charge dealing with the

false statement charge, Your Honor, the 2013 interview.

THE COURT: Uh-huh.

MR. HOCHMAN: Which was an interview asking Mr. Baca a variety of questions of what happened back in 2011.

THE COURT: When was that interview?

MR. HOCHMAN: April of 2013, Your Honor, asking questions about what happened in, sort of, the July, August, September period of 2011, 18 months before, roughly.

So, yes, that would be potentially where you -- what we're calling a medical defense, the 12.2 mental defect defense, may play out, Your Honor.

THE COURT: Do you have a Ninth Circuit case that recognizes that as a 12.2 defense?

MR. HOCHMAN: I certainly can get you one, Your Honor.

THE COURT: Well, do you have one?

MR. HOCHMAN: I don't have one present in court; I didn't bring it, Your Honor, but we will get you that and brief it in whatever schedule the court wants me to brief it.

So the upshot, Your Honor, is that December 6th date compared to August 1st, when Sheriff -- defendant Baca withdrew his plea is roughly four -- little over four months from that date, Your Honor. If we used five months as the metric the government just said, that would take us into January. Your Honor, again, to have adequate time so I don't have to come

back to the court with any more requests for additional time, we've asked --

THE COURT:  You can always come back.

MR. HOCHMAN:  I can always come back.

THE COURT:  You can always ask.

MR. HOCHMAN:  We could always ask, and we could always come back, but I try to see if we can, you know, get it approximately correctly the first time; and that's why we've asked the court for a February-March trial date.  Whether it's February 27, March 7th or 14th, which are all Tuesdays, we'd ask the court to consider those dates because I believe that would give us, then, adequate time to conduct our investigation, review this terabyte of data, prepare any motions that need to be prepared so that we have all that out of the way before a trial gets going and then be ready for trial, Your Honor.

MR. FOX:  Your Honor, we produced discovery July 20th to July 28th.  That was the bulk of our discovery that we produced.  So, again, we believe that Mr. Baca will have plenty of time to be prepared for his December 6th trial.  The defense -- Mr. Hochman references that he didn't know what those under him were doing; that's not a difficult defense to prepare for.  That's largely cross-examination, and if Mr. Baca, of course, wants to testify, he can.  I'm not -- and if he has other witnesses that will say the same thing, they

can testify as well, but that's not a complicated defense.

The 12.2 issue we do -- we would like your court -- Your Honor to set a date for a deadline if they're going to file a Rule 12.2 notice because that might affect our motions as well. So we would like that deadline set before our motions deadline, and I should tell Your Honor -- I'm not sure if Ms. Rhodes told you the last time I was out of town -- we provided weeks ago our motions to the defense, and they've had several weeks already to look at our motions and prepare any responses to those motions.

We were doing that in an anticipation of at that time your September trial date that you set when Mr. Baca withdrew his guilty plea and the deadlines that were part of your order. So we will be prejudiced by the additional time that the defense has to spend more time with those motions while ours are sitting out there. We are prepared for trial. We will be ready for trial, and, again, I think the defense will be ready for trial by December the 6th.

MR. HOCHMAN:  Your Honor, may I just add briefly?

THE COURT:  Uh-huh.

MR. HOCHMAN:  Very briefly, Your Honor.  This team right here has tried this case four times; I haven't tried it once. So I'm getting up to speed as fast as I can, Your Honor, and I appreciate that they'll be ready. If they were in my position having tried it four times, to be able to try it a

fifth time by December 6th. Obviously, I want to make sure that I get it right, Your Honor, that I can represent to the court that I've reviewed everything myself because I will be the lead counsel, that whatever motions need to be filed are filed. Their motions, by the way, Your Honor, were pretty much motions in limine dealing with stuff they were trying keep out of the defense case.

So, again, I think that while I respect the fact that they think we can be ready by December 6th, after viewing the evidence now, I believe a February or March trial date would ensure that we actually are ready.

THE COURT: Uh-huh.

Well, I guess my impression is, is that delaying this trial for any appreciable time I don't think is anybody's interest at all. I don't think it's in the defendant's interest; I don't think it's in the public's interest. Quite frankly, this case is not as complicated as the seven defendants that were tried previously in the Thompson case. That case had a lot more moving parts, and, as I recall, we were in trial in that case within five months, and that case -- they didn't have the benefit of the trial transcripts, didn't have the benefit of basically all the government's exhibits, and while I recognize that there may be a lot of information that's out there, that you want to look at, you are a very experienced trial lawyer, and you have a -- employed by a large

law firm.  You've got resources to throw at this case, and I just think, given the potential issues that have been raised in this case, the court is inclined to try this case sooner rather than later.

I don't view it as complicated.  I think having the trial transcripts from the prior cases, which I suspect are going to encompass most, if not all, the witnesses are going to be called in this case, for a lawyer with your experience and skill, it's like T'ing it up; it's like T ball; it's like hitting it off a T.  So -- and quite frankly, I was thinking about a November 9th trial date -- November 29th trial date, which is roughly a week before what the government had asked for.

MR. FOX:  If I may add a couple things?  We, of course, agree with everything you just said.  I also think the Ninth Circuit's opinion in the Thompson and Sexton matters also shows that the issues are not as complex as they were there. The Ninth Circuit has now ruled on a lot of the legal matters that we were briefing during that time also.

Our preference for a December 6th trial date has -- rather than an earlier trial date, also has something to do with one of our key witnesses who has sat at counsel table during a couple of the trials.  You may have noticed that she is scheduled to give birth soon, and based on that, she is likely to give birth either at the end of October or the

beginning of November, and it's going to be twins; so we -- there could be some complications, which is why we are looking for a December 6th trial date.

THE COURT:  I'm going to set the trial for December 6th at 8:30 a.m.  We'll have a final status conference November 21st at 3:00 p.m.

The last time we were here we set some dates for motions.  Is there anyway if you're going to assert a medical defense that you couldn't notify the government of that by September 6th?

MR. HOCHMAN:  Yes, Your Honor.  The experts that we have consulted with are still -- the possible -- one's been retained; another one we are looking at is in the process of being retained.  They have to then review the medical records themselves, speak or not speak with Mr. Baca, depending on what they determine, and then issue, you know, a report that we would be sharing with the government.  One is right now on vacation until the end of August; the other one is just getting back.  So I won't have that whole process done, Your Honor -- I would imagine probably the third week of September to get it all done.

And then we'd ask for the motions to then be filed, if we could, Your Honor, on maybe either the 17th or the 24th of October, which would give us enough time in advance of the trial.

MR. FOX:  Your Honor, in looking at 12.2 and the notice requirement, I don't think that he needs to disclose the report at the time of notice, and he can always decide that he's not going to go through with a 12.2 defense as we get closer to trial.  The reason why the notice is very important to the government is it allows us to examine Mr. Baca as well to see if that is a valid defense or not, and we think an earlier notice date is better for everybody given all the issues involved in this case.

MR. HOCHMAN:  Your Honor, to the extent that what the court is looking for is just literally the notice and that we intend to introduce this defense without any of the backup for it -- and the government is right.  We can articulate an intent that we don't ultimately have to do, and to the extent the government is looking for this to then trigger their right to have Mr. Baca examined, we could certainly deal with that, Your Honor; we just won't have anything to produce to the government or the government's expert at the time we articulate the notice.

So if we could have potentially, Your Honor, until that following Monday, which is September 13 -- I believe September 6th is a holiday --

THE COURT:  I don't think so.

MR. HOCHMAN:  Memorial Day -- I'm sorry.

If we could have then until the following Monday,

Your Honor, which would be September 12th, Your Honor, to file the notice or not file the notice, and then we will work with the government, if we do file the notice, for to them to conduct their examination.  Hopefully that will give the government more than enough time prior to any motions deadline that the court sets to complete their examination.

THE COURT:  Have any objection to the defendant's suggestion to give notice by the 12th?

MR. FOX:  No, Your Honor.  The only thing that we request is a deadline then consistent with what Mr. Hochman was discussing of his Rule 16 (b)(1)(C) requirements so that we may review them and decide whether we need to have Mr. Baca examined and whether we need an expert to testify.

THE COURT:  So you'll give the notice by September 12th.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  Now, assuming you intend to go forward with your mental 12.2 defense, when do you anticipate being able to provide that -- the discovery they're entitled to?

MR. HOCHMAN:  Again, one of the experts, Your Honor, is not even back until the end of the month, which is coming up, and then one of the other experts I'll talk with today.  So I would hope to be the third week in September, but if it changes, Your Honor, it will only be because of the experts' schedule, not my own.  So I just need to find out how quickly

they can turn this around, and obviously we'll let them know the court's -- the priority that this should have in their schedules.

THE COURT:  You'd be able to provide them with that discovery by -- you're proposing September 19?

MR. HOCHMAN:  I would hope the end of that week, Your Honor, just so they would have September 23rd, Your Honor.

MR. FOX:  That's fine with us, Your Honor.

THE COURT:  Okay.  Then in connection with this 12.2 issue, are you contemplating bringing any other motions?

MR. HOCHMAN:  Yes, Your Honor.  A part of what we're doing is we're looking at all the other motions that have been filed with the court to see if some, any, or all of those motions are appropriate in this case knowing that the Ninth Circuit has ruled on several of the motions.  Again, the way the motions were brought up, there might be a way to stylize it in a way that is unique to Sheriff Baca that didn't apply to either any other defendant or, you know, hasn't been actually ruled on by the Ninth Circuit.  So we're looking into that, Your Honor.  That's an arduous task to go through all the motions, oppositions, pleadings, replies and then deal the court's ruling and the Ninth Circuit's ruling.

In addition to that, Your Honor, we're going through all the discovery, and whether or not we need to file a discovery motion, we won't know until we get through the

discovery, and going through the discovery might also trigger additional motions that I don't have in mind this second, Your Honor.  So I think -- we can certainly -- we're working with the government and meeting and conferring before we file any motions.  To the extent that they agree with our position, it might obviate the need to file a motion.  At this point, Your Honor, we anticipate additional motions, but what the nature of those would be remain to be seen.

THE COURT:  The last time you were here you indicated that you had some motions or drafted --

MR. HOCHMAN:  Again, Your Honor, one of the types of motions that we're looking into deals with a venue motion, for instance.  The reason I bring up a venue motion is what we're looking into is whether or not the publicity of this case is such that an L.A. County jury pool would be so tainted that one could not remove that taint just through normal jury selection. Before we bring a motion like that, Your Honor, we obviously want to research it and make sure it's a proper motion.

Here you have a unique fact that you have a defendant who pled guilty, and that guilty plea itself was widely broadcast all over Los Angeles County.  So it's not just merely someone who has been charged with a crime or even a department that he headed has been charged with a crime and had four trials and two-and-a-half years' worth of publicity dealing with those four trials, but you have an additional unique

factor of a defendant who pled guilty.  That was widely publicized, Your Honor, as Your Honor is I'm sure aware, and whether or not that tainted the jury pool remains to be seen, but it's something we're looking into, Your Honor.

THE COURT:  Something that doesn't help is holding press conferences out on the courthouse steps.  At least, you know, I would assume, given the talent and experience level here, I would hope that both sides would refrain from trying to try this case in the press, because I don't think it's in anybody's interest to do so; the case ought to be tried here.

MR. HOCHMAN:  I agree, Your Honor.

You asked me as me as example, Your Honor.  That is an example.  If we have the legal basis to file such a motion, we will file it.  If we don't, we won't.

THE COURT:  What motions in limine has the government brought or provided to the defense?

MR. FOX:  Your Honor, I haven't looked at them in a few weeks, but Ms. Rhodes and Mr. Jauregui will probably remind me of some.  One is related to this mental deficiency defense.  It may change based on the documents that we received, but basically we don't believe that any diagnosis post April of 2013, or anybody's opinion of Mr. Baca's mental state after April of 2013, is relevant; and we think that anything related to that should be excluded.

One of the issues is also -- Ms. Rhodes has handed me

her email on this -- that Mr. Hochman has said in the press that he's going to be using the government's' statements in the Tanaka trial and in our filings in this case against us as party admissions, and we have a motion in limine on that.  And the procedural history of the case, I think both parties want to have that excluded, which makes sense, obviously, and then anything related to remedial measures done after September 26th of 2011 in the jails or in cooperating with the federal government after the obstruction-of-justice conspiracy ended we think should be excluded.  So those are the motions that we have presented to the defense.

THE COURT:  They haven't been filed though?

MR. FOX:  Correct, because we've been in discussions with them and waiting for a response; I know they're supposed to be joint.

THE COURT:  September 26, file the motions in this case.

MR. HOCHMAN:  Your Honor, the only reason I'm asking for that mid-October deadline is with -- particularly with the medical issue, if the government does have its expert examined, it might be that we come to an agreement as to whether or not this evidence is going to be presented or not presented, which it might obviate either the government's motion or our motion. We don't know what the experts are going to say just yet.

THE COURT:  But you'll know that by the 29th of

September, won't you?

MR. HOCHMAN:  Well, again, we'll have the report by the 23rd of September, Your Honor.  Again, we're also looking to going through this terabyte of data to see -- and all the motions that have been filed beforehand.  So we'd ask for just a little bit more time in light of the trial date, Your Honor.  If we could look at maybe -- I think it was October 10th -- is a Monday?  October 10th, Your Honor.  That would still give us adequate time to have those motions prepared and then have a decision rendered well in advance of trial.

MR. FOX:  If I may suggest the September 26th motions date for everything but anything related to the experts?  And then a second date, because we also will be examining Mr. Baca if he is going to have his 12.2 defense, and that may cause an exchange of documents that might be around the time or after the motions date that you're setting.

So I think if we do a September 26th motions deadline and a separate expert motions deadline, that might make sense.

THE COURT:  Okay.  Here's what we're going to do:  All the motions, except with respect to the medical defense, should be filed by September 26th, including motions in limine.  Any oppositions should be filed by October the 10th; any replies by the 17th; and then I'll hear those motions on the 31st of October at three o'clock; and I'm going to ask the parties to meet and confer concerning a briefing schedule

concerning any medical issues in this case.

Why don't you meet by a week from today.  Let me know by September 1st if you cannot agree, and if you can't, then I'll set the briefing schedule and the dates.

MR. FOX:  Your Honor, I also have a few housekeeping matters to raise that I don't think will take much time, but one is that the parties have agreed to a protective order that we will file today; second, Mr. Baca and Mr. Hochman have signed a Speedy Trial Act stipulation for excludable time for the period that his plea agreement was being considered by this court.  We will prepare a second stipulation based on this trial date of December the 6th and hopefully file that within a week.  There is -- also want to know when Your Honor's moving to the new courthouse just so we know whether this trial is going to be here or there, and I assume this is a moving piece as well.

THE COURT:  It is.  I expect it will be over at the new courthouse, but there are no guarantees.  I might be here trying to box out a superior court judge, but maybe we'll be over at the new courthouse.

MR. FOX:  Okay.  And there is one issue that we'd like to raise at the sidebar just to let you know that something is coming, something is likely to be filed.

THE COURT:  You know, the problem with those sidebars is -- I don't know why I should have any sidebars in this case

because then somebody wants to go out and hold a press conference about what we talked about at sidebar. I have a real hard time with that. And, again, you know, you're both very experienced trial lawyers. You know that these cases are not going to be tried out on the courthouse steps, and I'm going to, you know --

MR. HOCHMAN: Understood, Your Honor.

THE COURT: Okay. I'll grant this request, but I guarantee you it may be the last one if I end up reading about it somewhere.

MR. FOX: Thank you, Your Honor.

(Proceedings held at sidebar:)

MR. FOX: Based on statements that Mr. Baca made at his arraignment and also statements made in the media on one of those courthouse steps press conferences and Dr. Chui's diagnosis that was filed under seal that he has -- supposedly has dementia at this point, we feel like we have an obligation to file a motion for competency hearing and have him be evaluated; otherwise, we risk that issue, if there is a conviction on appeal, even though the government believes that he is competent to stand trial. So our plan today is to file a motion for competency hearing. We are going to -- the way that we've drafted it now -- I don't know if you have a public filing and an under-seal filing, discussing the details of a medical diagnosis in more detail in the under-seal filing, but

I just wanted to let you know that that is coming since we are filing it today.  I didn't want to walk out of the court and then put something on PACER.

THE COURT:  What's your position?

MR. HOCHMAN:  So we don't oppose having the court go through a normal competency provision as provided by the Federal Rules of Criminal Procedure.  As part of that, the court would appoint an independent expert to evaluate the competency of Mr. Baca.  As far as who the court appointed, if the court wants us to met and confer to see if we can get the court one or two or three names, or if the court has someone in mind, his or herself, whatever the court's pleasure on this is.

MR. FOX:  And resource-wise, Your Honor, I think it may make sense to wait on an expert until we know whether he's going to be filing his notice under Rule 12.2 because if there's going to be opportunity for the government to have an expert examine him on a 12.2 issues, we'd like to also have him evaluated on competency issues as well at the same time; and I see that that is what Mr. Hochman is going to do as well.

So if we can file the motion and have the court grant it, we will consider what to do with respect to the 12.2 notice and an expert.  I would appreciate that.

MR. HOCHMAN:  The only distinction -- we've had this discussion -- is that with competency, the government doesn't get a separate expert to examine.  That's the court's

independent expert.  We can recommend someone for the court. The court ultimately appoints either, at their motion or our motion, an independent expert.  12.2, since that will be a trial issue, we have our expert, and they would have the right to have their expert.  That is the only distinction between what counsel said and the government, but I believe the rules provide --

MR. FOX:  Our motion covers this.  We don't agree with Mr. Hochman's statements.  We believe our motion will cover that.

THE COURT:  Okay.

MR. FOX:  Okay.  Thank you.

MR. HOCHMAN:  Thank you, Your Honor.

(Proceedings resumed in open court)

MR. FOX:  With the Speedy Trial Act, you want Mr. Baca to just sign, or do you want to get his oral waiver?

MR. HOCHMAN:  He's actually signed the stipulation.

MR. FOX:  Next one.  This is the one for the December the 6th trial.

MR. HOCHMAN:  I'm sorry.

THE COURT:  Why don't we have him sign it.

MR. FOX:  We will do that, Your Honor.  Thank you.

MR. HOCHMAN:  Thank you, Your Honor.

THE COURT:  Anything else?

MR. FOX:  Nothing from the government.

MR. HOCHMAN:  Nothing from the defense, Your Honor.

THE COURT:  Thank you very much.

MR. FOX:  Thank you, Your Honor.

MR. HOCHMAN:  Thank you, Your Honor.

(Proceedings concluded at 11:55 a.m.)

- - - - -

                            C E R T I F I C A T E


          I hereby certify that pursuant to Section 753,

Title 18, United States Code, the foregoing is a true and

correct transcript of the stenographically reported proceedings

held in the above-entitled matter and that the transcript page

format is in conformance with the regulations of the Judicial

Conference of the United States.


  Date:  August 8, 2017


                    /S/_____

                         Deborah K. Gackle
                          CSR No. 7106

**MR. FOX: [24]**  3/7 3/18 4/7 4/20 9/16 12/13 13/25 15/8 16/7 18/16 19/12 20/10 21/4 21/20 22/10 22/12 23/12 24/7 24/11 24/14 24/17 24/21 24/24 25/2
**MR. HOCHMAN: [38]**
**THE CLERK: [1]**  3/3
**THE COURT: [42]**

**/**

**/S [1]**  26/12

**1**

**1001 [1]**  2/23
**10th [3]**  20/7 20/8 20/22
**11:00 A.M [1]**  3/2
**11:55 [1]**  25/5
**12.2 [16]**  5/22 5/24 7/23 8/10 8/13 10/2 10/4 14/1 14/4 15/18 16/9 20/14 23/15 23/17 23/21 24/3
**12th [5]**  2/7 2/14 15/1 15/8 15/15
**13 [1]**  14/21
**13th [1]**  2/11
**14th [1]**  9/10
**16 [1]**  15/11
**16-0066-PA [1]**  1/8
**16-66 [1]**  3/5
**1601 [1]**  2/21
**17th [2]**  13/23 20/23
**18 [2]**  8/8 26/4
**19 [1]**  16/5
**1st [2]**  8/21 21/3

**2**

**2011 [4]**  6/4 8/4 8/8 19/8
**2013 [6]**  6/4 7/19 8/1 8/6 18/22 18/23
**2016 [2]**  1/16 3/1
**2017 [1]**  26/10
**2050 [1]**  2/21
**20th [1]**  9/17
**213 [1]**  1/25
**21st [1]**  13/6
**23rd [2]**  16/7 20/3
**24 [2]**  1/16 3/1
**24th [1]**  13/23
**26 [1]**  19/16
**26th [4]**  19/7 20/11 20/17 20/21
**27 [1]**  9/10
**28th [1]**  9/18
**29th [2]**  12/11 19/25

**3**

**310-255-9025 [1]**  2/22
**310-907-1001 [1]**  2/23
**312 [3]**  2/7 2/11 2/14
**31st [1]**  20/24
**350 [1]**  1/24
**3500 [3]**  4/13 4/15 4/17
**3:00 [1]**  13/6

**4**

**4082 [1]**  2/22
**4th [1]**  1/24

**6**

**66 [1]**  3/5
**6th [13]**  3/20 8/20 9/20 10/18 11/1 11/9 12/20 13/3 13/5 13/10 14/22 21/12 24/19

**7**

**7106 [1]**  26/13
**753 [1]**  26/3
**7th [1]**  9/10

**8**

**8913 [1]**  1/25
**894-8913 [1]**  1/25
**8:30 [1]**  13/5

**9**

**90012 [4]**  1/24 2/7 2/11 2/15
**9025 [1]**  2/22
**90404-4082 [1]**  2/22
**9th [1]**  12/11

**A**

**a.m [3]**  3/2 13/5 25/5
**able [4]**  5/22 10/25 15/19 16/4
**above [2]**  6/16 26/6
**above-entitled [1]**  26/6
**acquire [2]**  4/8 4/9
**Act [2]**  21/9 24/15
**actually [3]**  11/11 16/18 24/17
**add [2]**  10/19 12/14
**addition [1]**  16/23
**additional [7]**  3/24 4/16 9/1 10/14 17/2 17/7 17/25
**address [1]**  6/6
**adequate [3]**  8/25 9/12 20/9
**admissions [1]**  19/4
**advance [2]**  13/24 20/10
**affect [1]**  10/4
**after [8]**  3/22 3/23 4/1

11/9 18/22 19/7 19/9 20/15
**again [10]**  8/25 9/19 10/17 11/8 15/20 16/15 17/11 20/2 20/3 22/3
**against [1]**  19/3
**ago [1]**  10/8
**agree [7]**  3/17 7/3 12/15 17/5 18/11 21/3 24/8
**agreed [1]**  21/7
**agreement [2]**  19/21 21/10
**all [21]**  4/12 4/16 5/13 5/14 5/16 5/19 6/1 9/10 9/14 11/15 11/22 12/7 13/21 14/8 16/12 16/13 16/20 16/24 17/21 20/4 20/20
**allegations [1]**  7/19
**allows [1]**  14/6
**along [1]**  6/23
**already [4]**  4/13 4/17 6/25 10/9
**also [14]**  3/22 4/13 12/15 12/16 12/19 12/21 17/1 18/25 20/3 20/13 21/5 21/13 22/14 23/17
**always [6]**  9/3 9/4 9/5 9/6 9/7 14/3
**Alzheimer's [4]**  7/10 7/12 7/13 7/16
**amount [1]**  5/7
**ANDERSON [1]**  1/5
**ANGELES [7]**  1/15 1/24 2/7 2/11 2/15 3/1 17/21
**answer [1]**  7/4
**anticipate [4]**  4/14 6/17 15/18 17/7
**anticipation [1]**  10/11
**any [17]**  6/5 9/1 9/13 10/9 11/14 14/12 15/5 15/7 16/10 16/13 16/18 17/4 18/21 20/22 20/22 21/1 21/25
**anybody's [3]**  11/14 18/10 18/22
**anything [9]**  4/1 5/15 5/17 7/2 14/17 18/23 19/7 20/12 24/24
**anyway [1]**  13/8
**appeal [1]**  22/20
**appearances [2]**  2/1 3/7
**apply [1]**  16/17
**appoint [1]**  23/8
**appointed [1]**  23/9
**appoints [1]**  24/2

**appreciable [1]**  11/14
**appreciate [2]**  10/24 23/22
**appropriate [1]**  16/14
**approximately [2]**  3/21 9/8
**April [3]**  8/6 18/21 18/23
**arduous [1]**  16/20
**are [25]**  3/24 4/10 5/1 5/7 6/20 9/10 10/16 10/16 11/4 11/11 11/24 12/6 12/7 12/17 13/2 13/12 13/13 16/10 16/14 19/10 19/24 21/18 22/4 22/22 23/1
**aren't [1]**  5/2
**around [2]**  16/1 20/15
**arraignment [1]**  22/14
**articulate [2]**  14/13 14/18
**as [41]**
**ask [6]**  9/5 9/6 9/11 13/22 20/5 20/24
**asked [4]**  9/2 9/9 12/12 18/12
**asking [3]**  8/3 8/6 19/18
**assert [1]**  13/8
**assume [2]**  18/7 21/15
**assuming [1]**  15/17
**at [34]**
**Attorney [3]**  2/6 2/10 2/13
**AUGUST [6]**  1/16 3/1 8/7 8/21 13/18 26/10
**AUSA [3]**  2/6 2/10 2/13
**aware [2]**  5/21 18/2

**B**

**BACA [25]**  1/10 3/6 3/13 3/22 4/2 5/24 6/10 6/12 6/18 7/2 8/3 8/21 9/19 9/24 10/12 13/15 14/6 14/16 15/12 16/17 20/13 21/8 22/13 23/9 24/16
**Baca's [1]**  18/22
**back [7]**  8/4 9/1 9/3 9/4 9/7 13/19 15/21
**backup [1]**  14/12
**ball [1]**  12/9
**based [4]**  12/24 18/20 21/11 22/13
**basically [2]**  11/22 18/21
**basis [1]**  18/13
**because [10]**  6/2 9/11 10/4 11/3 15/24 18/9 19/13 20/13 22/1

23/15
**beforehand [1]**  20/5
**beginning [1]**  13/1
**behalf [2]**  3/9 3/13
**believe [8]**  6/21 9/11 9/19 11/10 14/21 18/21 24/6 24/9
**believes [1]**  22/20
**below [1]**  6/12
**benefit [2]**  11/21 11/22
**better [3]**  4/3 5/4 14/8
**between [1]**  24/5
**birth [2]**  12/24 12/25
**bit [1]**  20/6
**blame [1]**  6/16
**blaming [1]**  6/10
**Bockius [1]**  2/20
**bond [1]**  3/14
**both [4]**  5/8 18/8 19/5 22/3
**Boulevard [1]**  2/21
**box [1]**  21/19
**Brandon [2]**  2/6 3/8
**brief [3]**  7/11 8/18 8/19
**briefing [3]**  12/19 20/25 21/4
**briefly [2]**  10/19 10/21
**bring [3]**  8/18 17/13 17/17
**bringing [1]**  16/10
**broadcast [1]**  17/21
**brought [2]**  16/16 18/16
**bulk [1]**  9/18

**C**

**CA [4]**  2/7 2/11 2/15 2/22
**calendar [1]**  5/3
**CALIFORNIA [4]**  1/2 1/15 1/24 3/1
**called [1]**  12/8
**calling [3]**  3/5 4/14 8/10
**can [21]**  3/24 5/15 5/18 6/24 8/14 9/3 9/4 9/5 9/7 9/24 10/1 10/23 11/2 11/9 14/3 14/13 16/1 17/3 23/10 23/20 24/1
**can't [1]**  21/3
**cannot [1]**  21/3
**case [28]**
**cases [2]**  12/6 22/4
**cause [1]**  20/14
**CENTRAL [1]**  1/2
**certain [1]**  5/20
**certainly [4]**  7/25 8/14 14/16 17/3
**certify [1]**  26/3

**C**

cetera [1]  6/17
chance [1]  5/4
change [2]  4/15 18/20
changes [1]  15/24
charge [3]  7/24 7/25
8/1
charged [2]  17/22
17/23
charges [3]  6/3 6/4
6/4
chief [3]  4/20 5/1 5/3
Chui's [1]  22/15
Circuit [4]  8/12 12/18
16/15 16/19
Circuit's [2]  12/16
16/22
Civil [1]  2/10
claiming [1]  7/20
closer [1]  14/5
Cloverfield [1]  2/21
Code [1]  26/4
come [5]  8/25 9/3 9/4
9/7 19/21
coming [3]  15/21
21/23 23/1
compare [1]  4/23
compared [1]  8/21
competency [6]  22/18
22/22 23/6 23/9 23/18
23/24
competent [1]  22/21
complete [1]  15/6
complex [1]  12/17
complicated [3]  10/1
11/17 12/5
complications [1]
13/2
concerning [2]  20/25
21/1
concluded [1]  25/5
conduct [2]  9/12 15/4
confer [2]  20/25 23/10
conference [4]  1/19
13/5 22/2 26/8
conferences [2]  18/6
22/15
conferring [1]  17/4
conformance [1]  26/7
connection [1]  16/9
consider [2]  9/11
23/21
considered [1]  21/10
consistent [2]  3/20
15/10
conspiracy [1]  19/9
consulted [1]  13/12
contemplating [1]
16/10
continue [1]  6/22
conviction [1]  22/20

cooperating [1]  19/8
correct [4]  3/19 5/3
19/13 26/5
correctly [2]  4/25 9/8
Corruption [1]  2/10
could [10]  4/22 9/6
9/6 13/2 13/23 14/16
14/20 14/25 17/16
20/7
couldn't [1]  13/9
counsel [5]  2/1 3/7
11/4 12/22 24/6
County [2]  17/15
17/21
couple [2]  12/14
12/23
course [5]  4/5 4/10
4/14 9/24 12/15
court [27]
court's [4]  16/2 16/22
23/12 23/25
courthouse [7]  1/23
18/6 21/14 21/18
21/20 22/5 22/15
cover [1]  24/10
covers [1]  24/8
CR [1]  3/5
creates [1]  6/11
crime [2]  17/22 17/23
Crimes [1]  2/14
Criminal [1]  23/7
cross [1]  9/23
cross-examination [1]
9/23
CSR [2]  1/23 26/13

**D**

data [4]  5/7 5/7 9/13
20/4
date [23]  3/18 3/20 4/4
4/4 7/5 8/20 8/23 9/9
10/3 10/12 11/10
12/11 12/11 12/20
12/21 13/3 14/8 20/6
20/12 20/13 20/16
21/12 26/10
dates [3]  9/11 13/7
21/4
day [2]  5/2 14/24
days [2]  4/22 4/25
deadline [8]  10/3 10/5
10/6 15/5 15/10 19/19
20/17 20/18
deadlines [1]  10/13
deal [2]  14/16 16/21
dealing [3]  7/25 11/6
17/24
deals [1]  17/12
DEBORAH [2]  1/23
26/13
December [11]  3/20
8/20 9/20 10/18 11/1

11/9 12/20 13/3 13/5
21/12 24/18
December 6th [1]
13/5
decide [2]  14/3 15/12
decision [1]  20/10
defect [2]  7/23 8/10
defendants [2]  6/9
11/18
defense [36]
defenses [1]  6/20
deficiency [1]  18/19
delaying [1]  11/13
dementia [1]  22/17
department [1]  17/22
depending [1]  13/15
detail [1]  22/25
details [1]  22/24
determine [2]  7/2
13/16
determining [1]  5/21
diagnosis [3]  18/21
22/16 22/25
didn't [6]  8/18 9/21
11/21 11/21 16/17
23/2
different [5]  5/11 6/3
6/3 6/5 6/11
difficult [1]  9/22
disagree [1]  7/3
disclose [1]  14/2
disclosed [1]  3/23
discovery [13]  3/23
4/7 4/16 5/5 5/16 9/17
9/18 15/19 16/5 16/24
16/25 17/1 17/1
discussing [2]  15/11
22/24
discussion [1]  23/24
discussions [1]  19/13
distinction [2]  23/23
24/5
DISTRICT [3]  1/1 1/2
1/5
DIVISION [1]  1/3
do [16]  4/22 5/23 8/12
8/16 10/2 12/21 14/14
15/3 15/18 18/10
20/17 20/19 23/19
23/21 24/16 24/22
documents [2]  18/20
20/15
does [1]  19/20
doesn't [2]  18/5 23/24
doing [4]  6/2 9/22
10/11 16/12
don't [23]  6/11 7/13
8/17 8/25 11/14 11/15
11/16 12/5 14/2 14/14
14/23 17/2 18/9 18/14
18/21 19/24 21/2 21/6
21/25 22/23 23/5 24/8

24/21
done [3]  13/19 13/21
19/7
Dr. [1]  22/15
Dr. Chui's [1]  22/15
drafted [2]  17/10
22/23
during [2]  12/19 12/23

**E**

earlier [2]  12/21 14/8
Eddie [2]  2/13 3/9
eight [1]  4/25
either [6]  7/3 12/25
13/23 16/18 19/23
24/2
electronic [1]  5/8
else [2]  6/13 24/24
email [2]  2/23 19/1
employed [1]  11/25
encompass [1]  12/7
end [5]  12/25 13/18
15/21 16/6 22/9
ended [1]  19/9
enormously [1]  5/16
enough [3]  4/5 13/24
15/5
ensure [1]  11/11
entitled [2]  15/19 26/6
estimate [1]  4/18
et [1]  6/17
et cetera [1]  6/17
evaluate [2]  7/1 23/8
evaluated [2]  22/19
23/18
even [4]  4/16 15/21
17/22 22/20
ever [1]  5/13
every [1]  5/10
everybody [1]  14/8
everyone [1]  6/13
everything [3]  11/3
12/15 20/12
evidence [3]  6/1 11/10
19/22
exactly [1]  7/9
examination [3]  9/23
15/4 15/6
examine [4]  5/24 14/6
23/17 23/25
examined [3]  14/16
15/13 19/20
examining [1]  20/13
example [3]  6/19
18/12 18/13
except [1]  20/20
exchange [1]  20/15
excludable [1]  21/9
excluded [3]  18/24
19/6 19/10
exhibits [1]  11/22
expect [1]  21/17

experience [2]  12/8
18/7
experienced [2]  11/25
22/4
expert [17]  5/24 7/1
7/2 7/3 14/18 15/13
19/20 20/18 23/8
23/14 23/17 23/22
23/25 24/1 24/3 24/4
24/5
experts [5]  13/11
15/20 15/22 19/24
20/12
experts' [1]  15/24
extent [4]  6/13 14/10
14/14 17/5

**F**

fact [2]  11/8 17/19
factor [1]  18/1
false [2]  7/19 8/1
far [1]  23/9
fast [1]  10/23
Fax [1]  2/23
February [3]  9/9 9/10
11/10
February-March [1]
9/9
federal [2]  19/8 23/7
feedback [1]  4/9
feel [1]  22/17
few [2]  18/18 21/5
fifth [1]  11/1
file [15]  10/4 15/1 15/2
15/3 16/24 17/4 17/6
18/13 18/14 19/16
21/8 21/12 22/18
22/21 23/20
filed [10]  11/4 11/5
13/22 16/13 19/12
20/5 20/21 20/22
21/23 22/16
filing [5]  22/24 22/24
22/25 23/2 23/15
filings [1]  19/3
final [1]  13/5
find [1]  15/25
fine [1]  16/8
firm [1]  12/1
first [2]  1/24 9/8
five [5]  3/21 3/23 7/4
8/23 11/20
Floor [4]  1/24 2/7 2/11
2/14
following [4]  4/24
6/16 14/21 14/25
foregoing [1]  26/4
format [1]  26/7
forward [1]  15/17
four [9]  5/11 5/14 6/6
8/22 8/22 10/22 10/25
17/23 17/25

**F**

**Fox [2]** 2/6 3/8
**frankly [2]** 11/17 12/10
**Friday [1]** 4/24

**G**

**GACKLE [2]** 1/23 26/13
**Garden [1]** 2/21
**general [2]** 2/14 5/6
**get [12]** 3/24 3/25 8/14 8/18 9/7 11/2 13/20 14/4 16/25 23/10 23/25 24/16
**gets [1]** 9/15
**getting [4]** 4/2 4/9 10/23 13/18
**give [9]** 6/18 9/12 12/24 12/25 13/24 15/4 15/8 15/14 20/8
**given [5]** 4/21 5/12 12/2 14/8 18/7
**gives [1]** 3/25
**giving [1]** 4/5
**gone [1]** 5/19
**Good [4]** 3/8 3/11 3/12 3/15
**government [23]** 3/19 5/12 5/23 6/25 8/24 12/12 13/9 13/17 14/6 14/13 14/15 14/17 15/3 15/5 17/4 18/15 19/9 19/20 22/20 23/16 23/24 24/6 24/25
**government's' [1]** 19/2
**grant [2]** 22/8 23/20
**guarantee [1]** 22/9
**guarantees [1]** 21/18
**guess [1]** 11/13
**guilty [5]** 3/22 10/13 17/20 17/20 18/1

**H**

**had [8]** 4/8 4/23 10/8 11/19 12/12 17/10 17/23 23/23
**half [1]** 17/24
**handed [1]** 18/25
**happened [2]** 8/4 8/7
**hard [1]** 22/3
**has [22]** 5/5 5/12 6/3 6/4 6/5 6/18 9/25 10/15 10/22 12/18 12/20 12/21 12/22 16/15 17/22 17/23 18/15 18/25 19/1 22/16 22/17 23/11
**hasn't [1]** 16/18

**have [64]**
**haven't [3]** 10/22 18/17 19/12
**having [4]** 4/4 10/25 12/5 23/5
**headed [1]** 17/23
**hear [1]** 20/23
**hearing [2]** 22/18 22/22
**held [2]** 22/12 26/6
**help [1]** 18/5
**here [9]** 3/16 10/22 13/7 17/9 17/19 18/8 18/10 21/15 21/18
**Here's [1]** 20/19
**hereby [1]** 26/3
**herself [1]** 23/12
**his [11]** 3/22 8/22 9/20 10/13 15/11 20/14 21/10 22/14 23/12 23/15 24/16
**history [2]** 4/21 19/5
**hitting [1]** 12/10
**Hochman [10]** 2/20 3/13 4/5 4/12 4/13 9/21 15/10 19/1 21/8 23/19
**Hochman's [1]** 24/9
**hold [1]** 22/1
**holding [1]** 18/5
**holiday [1]** 14/22
**Honor [79]**
**Honor's [1]** 21/13
**HONORABLE [1]** 1/5
**hope [3]** 15/23 16/6 18/8
**hopefully [2]** 15/4 21/12
**housekeeping [1]** 21/5
**how [3]** 4/2 4/19 15/25
**huge [1]** 5/7
**huh [3]** 8/2 10/20 11/12

**I**

**I'll [4]** 15/22 20/23 21/4 22/8
**I'm [12]** 4/9 4/9 9/24 10/6 10/23 13/4 14/24 18/2 19/18 20/24 22/5 24/20
**I've [2]** 6/15 11/3
**identify [1]** 4/15
**if [44]**
**imagine [1]** 13/20
**important [1]** 14/5
**impression [1]** 11/13
**in [70]**
**inclined [1]** 12/3
**including [1]** 20/21
**independent [3]** 23/8

24/1 24/3
**indicated [1]** 17/9
**information [1]** 11/23
**insanity [1]** 7/20
**instance [1]** 17/13
**intend [2]** 14/12 15/17
**intent [1]** 14/13
**interest [4]** 11/15 11/16 11/16 18/10
**interpreted [1]** 6/15
**interview [3]** 8/1 8/3 8/5
**into [7]** 3/24 4/2 8/24 16/19 17/12 17/14 18/4
**introduce [1]** 14/12
**investigation [3]** 6/2 6/23 9/13
**involved [1]** 14/9
**issue [7]** 10/2 13/16 16/10 19/20 21/21 22/19 24/4
**issues [10]** 5/1 5/20 7/16 12/2 12/17 14/9 18/25 21/1 23/17 23/18
**it [47]**
**it's [17]** 3/22 4/19 5/6 5/9 7/6 7/23 9/9 11/15 11/16 12/9 12/9 12/9 13/1 17/18 17/21 18/4 18/9
**item [1]** 3/5
**its [3]** 4/19 5/24 19/20
**itself [1]** 17/20

**J**

**jails [1]** 19/8
**January [1]** 8/24
**Jauregui [3]** 2/13 3/9 18/18
**joint [1]** 19/15
**judge [2]** 1/5 21/19
**Judicial [1]** 26/7
**July [3]** 8/7 9/17 9/18
**jury [4]** 4/23 17/15 17/16 18/3
**just [20]** 4/10 6/18 7/10 8/24 10/19 12/2 12/15 13/18 14/11 14/17 15/25 16/7 17/16 17/21 19/24 20/5 21/14 21/22 23/1 24/16
**justice [1]** 19/9

**K**

**keep [2]** 7/6 11/6
**key [1]** 12/22
**know [25]** 4/1 5/10 5/18 9/7 9/21 13/16 16/1 16/18 16/25 18/7

19/14 19/24 19/25 21/2 21/13 21/14 21/22 21/24 21/25 22/3 22/4 22/6 22/23 23/1 23/14
**knowing [2]** 4/2 16/14

**L**

**L.A [1]** 17/15
**large [1]** 11/25
**largely [1]** 9/23
**last [5]** 3/21 10/7 13/7 17/9 22/9
**later [1]** 12/4
**law [1]** 12/1
**lawful [1]** 6/16
**lawyer [2]** 11/25 12/8
**lawyers [1]** 22/4
**lead [1]** 11/4
**least [3]** 5/5 6/14 18/6
**legal [2]** 12/18 18/13
**LEROY [3]** 1/10 3/5 3/13
**let [4]** 16/1 21/2 21/22 23/1
**level [2]** 5/6 18/7
**Lewis [1]** 2/20
**light [1]** 20/6
**like [10]** 7/6 10/2 10/5 12/9 12/9 12/9 17/17 21/22 22/17 23/17
**likely [2]** 12/25 21/23
**limine [4]** 11/6 18/15 19/4 20/21
**lines [1]** 6/23
**list [1]** 5/12
**literally [1]** 14/11
**little [2]** 8/22 20/6
**Lizabeth [1]** 2/9
**Lizbeth [1]** 3/9
**LLP [1]** 2/20
**look [3]** 10/9 11/24 20/7
**looked [1]** 18/17
**looking [11]** 13/2 13/13 14/1 14/11 14/15 16/12 16/19 17/12 17/14 18/4 20/3
**LOS [7]** 1/15 1/24 2/7 2/11 2/15 3/1 17/21
**Los Angeles [1]** 17/21
**lot [3]** 11/19 11/23 12/18

**M**

**made [2]** 22/13 22/14
**make [4]** 11/1 17/18 20/18 23/14
**makes [1]** 19/6
**March [3]** 9/9 9/10 11/10
**March 7th [1]** 9/10

**material [2]** 4/13 4/15
**matter [1]** 26/6
**matters [3]** 12/16 12/18 21/6
**may [11]** 8/11 10/19 11/23 12/14 12/23 15/11 18/20 20/11 20/14 22/9 23/14
**maybe [3]** 13/23 20/7 21/19
**me [7]** 7/1 8/19 18/12 18/12 18/19 18/25 21/2
**mean [1]** 7/12
**measures [1]** 19/7
**media [1]** 22/14
**medical [10]** 5/20 6/19 7/6 8/10 13/8 13/14 19/20 20/20 21/1 22/25
**meet [2]** 20/25 21/2
**meeting [1]** 17/4
**Memorial [1]** 14/24
**memory [1]** 7/16
**mental [5]** 7/23 8/10 15/18 18/19 18/22
**mentioned [1]** 5/6
**merely [1]** 17/21
**met [1]** 23/10
**metric [1]** 8/23
**mid [1]** 19/19
**mid-October [1]** 19/19
**might [10]** 7/16 10/4 16/16 17/1 17/6 19/21 19/23 20/15 20/18 21/18
**mind [2]** 17/2 23/12
**missing [1]** 5/17
**Monday [3]** 14/21 14/25 20/8
**Monica [1]** 2/22
**month [1]** 15/21
**months [7]** 3/21 3/23 7/4 8/8 8/22 8/23 11/20
**Morgan [1]** 2/20
**morganlewis.com [1]** 2/23
**morning [5]** 3/8 3/11 3/12 3/15 3/17
**most [1]** 12/7
**motion [17]** 16/25 17/6 17/12 17/13 17/17 17/18 18/13 19/4 19/23 19/23 22/18 22/22 23/20 24/2 24/3 24/8 24/9
**motions [36]**
**moving [3]** 11/19 21/13 21/15
**Mr [5]** 10/12 18/18 21/8 22/13 24/9

Case 2:16-cr-00066-PA    Document 412    Filed 08/11/17    Page 30 of 32    Page ID
#:9476
{PLAINTIFF} v.
{DEFENDANT}
{WITNESSNAME}
{DATE}

**M**

**Mr. [22]** 3/22 4/2 4/5 4/12 4/13 5/24 8/3 9/19 9/21 9/24 13/15 14/6 14/16 15/10 15/12 18/22 19/1 20/13 21/8 23/9 23/19 24/16
**Mr. Baca [14]** 3/22 4/2 5/24 8/3 9/19 9/24 13/15 14/6 14/16 15/12 20/13 21/8 23/9 24/16
**Mr. Baca's [1]** 18/22
**Mr. Hochman [7]** 4/5 4/12 4/13 9/21 15/10 19/1 23/19
**Ms [2]** 18/18 18/25
**Ms. [1]** 10/7
**Ms. Rhodes [1]** 10/7
**much [4]** 4/19 11/5 21/6 25/2
**myself [1]** 11/3

**N**

**names [1]** 23/11
**Nathan [2]** 2/20 3/12
**nathan.hochman [1]** 2/23
**nature [1]** 17/7
**need [9]** 5/14 6/22 9/14 11/4 15/12 15/13 15/25 16/24 17/6
**needs [1]** 14/2
**new [3]** 21/14 21/18 21/20
**Next [1]** 24/18
**nice [1]** 5/9
**Ninth [6]** 8/12 12/16 12/18 16/14 16/19 16/22
**normal [2]** 17/16 23/6
**North [4]** 2/7 2/11 2/14 2/21
**not [28]**
**Nothing [2]** 24/25 25/1
**notice [14]** 10/4 14/2 14/3 14/5 14/8 14/11 14/19 15/2 15/2 15/3 15/8 15/14 23/15 23/21
**noticed [1]** 12/23
**notify [1]** 13/9
**November [4]** 12/11 12/11 13/1 13/6
**November 21st [1]** 13/6

**O**

**o'clock [1]** 20/24

**objection [1]** 15/7
**obligation [1]** 22/17
**obstruction [1]** 19/9
**obstruction-of-justice [1]** 19/9
**obviate [2]** 17/6 19/23
**obviously [6]** 6/6 6/10 11/1 16/1 17/17 19/6
**October [7]** 12/25 13/24 19/19 20/7 20/8 20/22 20/24
**off [2]** 4/3 12/10
**Office [3]** 2/6 2/10 2/13
**Okay [8]** 7/17 7/22 16/9 20/19 21/21 22/8 24/11 24/12
**once [1]** 10/23
**one [21]** 6/18 8/14 8/16 8/17 12/22 13/13 13/17 13/18 15/20 15/22 17/11 17/15 18/19 18/25 21/7 21/21 22/9 22/14 23/11 24/18 24/18
**one's [1]** 13/12
**only [5]** 15/9 15/24 19/18 23/23 24/5
**open [1]** 24/14
**opinion [2]** 12/16 18/22
**opportunity [1]** 23/16
**oppose [1]** 23/5
**oppositions [2]** 16/21 20/22
**oral [1]** 24/16
**order [3]** 3/25 10/13 21/7
**orders [1]** 6/17
**other [9]** 5/15 6/13 6/20 9/25 13/18 15/22 16/10 16/12 16/18
**otherwise [1]** 22/19
**ought [1]** 18/10
**our [20]** 4/21 5/1 6/2 6/23 9/12 9/18 10/4 10/5 10/8 10/9 12/20 12/22 17/5 19/3 19/23 22/21 24/2 24/4 24/8 24/9
**ours [1]** 10/15
**out [15]** 5/12 6/20 6/21 8/11 9/14 10/7 10/16 11/6 11/24 15/25 18/6 21/19 22/1 22/5 23/2
**outside [1]** 4/17
**over [8]** 4/8 4/10 4/12 5/5 8/22 17/21 21/17 21/20
**own [4]** 5/24 6/2 7/1 15/25

**P**

**p.m [1]** 13/6
**PA [1]** 1/8
**PACER [1]** 23/3
**page [1]** 26/6
**part [5]** 6/14 6/22 10/13 16/11 23/7
**particularly [1]** 19/19
**parties [4]** 3/17 19/5 20/25 21/7
**parts [1]** 11/19
**party [1]** 19/4
**past [1]** 4/21
**people [2]** 7/13 7/15
**PERCY [1]** 1/5
**period [3]** 4/2 8/8 21/10
**person [1]** 6/16
**piece [1]** 21/15
**plan [1]** 22/21
**play [2]** 6/21 8/11
**played [1]** 6/20
**plea [5]** 3/22 8/22 10/13 17/20 21/10
**pleadings [1]** 16/21
**please [2]** 3/7 3/7
**pleasure [1]** 23/12
**pled [2]** 17/20 18/1
**plenty [2]** 3/25 9/19
**point [3]** 5/22 17/6 22/17
**pool [2]** 17/15 18/3
**position [3]** 10/25 17/5 23/4
**possible [3]** 4/4 4/5 13/12
**possible and [1]** 4/4
**post [1]** 18/21
**potential [1]** 12/2
**potentially [2]** 8/9 14/20
**preference [1]** 12/20
**prejudiced [1]** 10/14
**prepare [4]** 9/13 9/23 10/9 21/11
**prepared [4]** 9/14 9/20 10/16 20/9
**present [4]** 3/13 5/22 6/24 8/17
**presented [4]** 6/5 19/11 19/22 19/22
**PRESIDING [1]** 1/5
**press [5]** 18/6 18/9 19/1 22/1 22/15
**pretty [1]** 11/5
**previously [1]** 11/18
**prior [4]** 6/6 6/10 12/6 15/5
**priority [1]** 16/2
**probably [3]** 5/3 13/20 18/18

**problem [1]** 21/24
**procedural [1]** 19/5
**Procedure [1]** 23/7
**proceedings [5]** 1/14 22/12 24/14 25/5 26/5
**process [3]** 5/21 13/13 13/19
**produce [1]** 14/17
**produced [2]** 9/17 9/19
**progressing [1]** 4/3
**proper [1]** 17/18
**proposing [1]** 16/5
**protective [1]** 21/7
**provide [4]** 4/15 15/19 16/4 24/7
**provided [6]** 4/13 4/16 5/5 10/8 18/16 23/6
**provision [1]** 23/6
**public [2]** 2/10 22/23
**public's [1]** 11/16
**publicity [2]** 17/14 17/24
**publicized [1]** 18/2
**pursuant [1]** 26/3
**pushing [1]** 4/3
**put [2]** 4/19 23/3

**Q**

**questions [2]** 8/4 8/7
**quick [2]** 4/4 4/4
**quickly [1]** 15/25
**quite [2]** 11/16 12/10

**R**

**raise [3]** 5/24 21/6 21/22
**raised [1]** 12/2
**rather [2]** 12/3 12/21
**read [1]** 5/9
**reading [2]** 6/15 22/9
**ready [8]** 3/25 4/6 9/15 10/17 10/17 10/24 11/9 11/11
**real [1]** 22/3
**reason [4]** 3/16 14/5 17/13 19/18
**reasons [1]** 3/24
**recall [2]** 7/18 11/19
**received [2]** 4/11 18/20
**recognize [2]** 7/13 11/23
**recognizes [1]** 8/13
**recommend [1]** 24/1
**records [1]** 13/14
**references [1]** 9/21
**refrain [1]** 18/8
**regulations [1]** 26/7
**related [4]** 18/19 18/23 19/7 20/12
**relatively [1]** 5/13

**relevant [1]** 18/23
**remain [1]** 17/8
**remains [1]** 18/3
**remedial [1]** 19/7
**remember [1]** 4/24
**remind [1]** 18/18
**remove [1]** 17/16
**rendered [1]** 20/10
**replies [2]** 16/21 20/23
**report [4]** 6/24 13/16 14/3 20/2
**reported [1]** 26/5
**REPORTER'S [1]** 1/14
**represent [1]** 11/2
**request [3]** 5/18 15/10 22/8
**requests [1]** 9/1
**requirement [1]** 14/2
**requirements [1]** 15/11
**research [1]** 17/18
**resource [1]** 23/13
**resource-wise [1]** 23/13
**resources [1]** 12/1
**respect [3]** 11/8 20/20 23/21
**respects [1]** 6/3
**response [1]** 19/14
**responses [1]** 10/10
**rested [1]** 4/24
**resumed [1]** 24/14
**retained [2]** 13/13 13/14
**review [3]** 9/13 13/14 15/12
**reviewed [1]** 11/3
**Rhodes [5]** 2/9 3/9 10/7 18/18 18/25
**right [9]** 4/25 5/23 7/13 10/22 11/2 13/17 14/13 14/15 24/4
**Rights [1]** 2/10
**risk [1]** 22/19
**roughly [3]** 8/8 8/22 12/12
**RPR [1]** 1/23
**Rule [5]** 4/13 4/17 10/4 15/11 23/15
**Rule 12.2 [2]** 10/4 23/15
**Rule 16 [1]** 15/11
**Rule 3500 [2]** 4/13 4/17
**ruled [3]** 12/18 16/15 16/19
**rules [2]** 23/7 24/6
**ruling [2]** 16/22 16/22

**S**

**said [4]** 8/24 12/15

## S

**said... [2]** 19/1 24/6
**said and [1]** 24/6
**same [2]** 9/25 23/18
**Santa [1]** 2/22
**sat [1]** 12/22
**say [4]** 5/15 7/12 9/25 19/24
**schedule [4]** 8/19 15/25 20/25 21/4
**scheduled [1]** 12/24
**schedules [1]** 16/3
**seal [3]** 22/16 22/24 22/25
**search [1]** 5/10
**searches [1]** 5/8
**second [4]** 17/2 20/13 21/8 21/11
**Section [3]** 2/10 2/14 26/3
**see [8]** 5/15 5/17 9/7 14/7 16/13 20/4 23/10 23/19
**seen [3]** 5/11 17/8 18/3
**selection [1]** 17/16
**sense [3]** 19/6 20/18 23/14
**separate [2]** 20/18 23/25
**separately [1]** 5/18
**September [19]** 8/8 10/12 13/10 13/20 14/21 14/22 15/1 15/15 15/23 16/5 16/7 19/7 19/16 20/1 20/3 20/11 20/17 20/21 21/3
**September 12th [1]** 15/15
**September 26th [1]** 19/7
**set [7]** 6/3 10/3 10/5 10/12 13/4 13/7 21/4
**sets [1]** 15/6
**setting [1]** 20/16
**seven [3]** 4/22 5/2 11/17
**seven-day [1]** 5/2
**several [2]** 10/9 16/15
**Sexton [1]** 12/16
**share [1]** 6/24
**sharing [1]** 13/17
**Sheriff [6]** 6/10 6/12 6/18 7/1 8/21 16/17
**short [1]** 7/4
**should [7]** 10/6 16/2 18/24 19/10 20/21 20/22 21/25
**shows [1]** 12/17
**sidebar [3]** 21/22 22/2

22/12
**sidebars [2]** 21/24 21/25
**sides [1]** 18/8
**sign [2]** 24/16 24/21
**signed [2]** 21/9 24/17
**since [2]** 23/1 24/3
**sitting [1]** 10/16
**six [1]** 4/22
**skill [1]** 12/9
**small [1]** 5/13
**some [9]** 4/9 6/3 6/9 6/15 13/2 13/7 16/13 17/10 18/19
**somebody [1]** 22/1
**someone [3]** 17/22 23/11 24/1
**something [6]** 12/21 18/4 18/5 21/23 21/23 23/3
**somewhere [1]** 22/10
**soon [1]** 12/24
**sooner [1]** 12/3
**sorry [3]** 4/9 14/24 24/20
**sort [1]** 8/7
**speak [2]** 13/15 13/15
**speed [1]** 10/23
**Speedy [2]** 21/9 24/15
**spend [1]** 10/15
**Spring [3]** 2/7 2/11 2/14
**stand [1]** 22/21
**state [2]** 3/7 18/22
**statement [2]** 7/19 8/1
**statements [4]** 19/2 22/13 22/14 24/9
**states [5]** 1/1 1/23 3/10 26/4 26/8
**status [3]** 1/19 4/7 13/5
**stenographically [1]** 26/5
**steps [3]** 18/6 22/5 22/15
**still [2]** 13/12 20/8
**stipulation [3]** 21/9 21/11 24/17
**Street [4]** 1/24 2/7 2/11 2/14
**stuff [1]** 11/6
**stylize [1]** 16/16
**subset [1]** 5/13
**such [3]** 5/24 17/15 18/13
**suffer [2]** 7/13 7/15
**suggest [1]** 20/11
**suggestion [1]** 15/8
**suggests [1]** 3/20
**Suite [1]** 2/21
**superior [1]** 21/19
**supposed [1]** 19/14

**supposedly [1]** 22/16
**sure [4]** 10/6 11/1 17/18 18/2
**suspect [1]** 12/6

## T

**T'ing [1]** 12/9
**table [1]** 12/22
**taint [1]** 17/16
**tainted [2]** 17/15 18/3
**talent [1]** 18/7
**talk [1]** 15/22
**talked [1]** 22/2
**talking [1]** 7/6
**Tanaka [4]** 4/11 4/23 5/2 19/3
**task [1]** 16/20
**team [1]** 10/21
**tell [1]** 10/6
**terabyte [3]** 5/7 9/13 20/4
**testified [1]** 5/14
**testify [3]** 9/24 10/1 15/13
**Thank [8]** 22/11 24/12 24/13 24/22 24/23 25/2 25/3 25/4
**that's [9]** 3/19 9/8 9/22 9/23 10/1 11/24 16/8 16/20 23/25
**their [9]** 6/14 7/1 11/5 14/15 15/4 15/6 16/2 24/2 24/5
**them [7]** 6/16 15/3 15/12 16/1 16/4 18/17 19/14
**themselves [1]** 13/15
**these [2]** 5/14 22/4
**they'll [1]** 10/24
**they've [2]** 6/25 10/8
**thing [2]** 9/25 15/9
**things [1]** 12/14
**think [28]**
**thinking [1]** 12/10
**third [2]** 13/20 15/23
**this [45]**
**Thompson [2]** 11/18 12/16
**those [15]** 4/12 4/15 6/23 9/11 9/22 10/10 10/15 16/13 17/8 17/25 19/10 20/9 20/23 21/24 22/15
**though [2]** 19/12 22/20
**three [2]** 20/24 23/11
**through [16]** 5/8 5/10 5/10 5/14 5/16 5/19 6/1 6/15 14/4 16/20 16/23 16/25 17/1 17/16 20/4 23/6
**throw [1]** 12/1

**time [29]**
**times [2]** 10/22 10/25
**Title [1]** 26/4
**Title 18 [1]** 26/4
**today [6]** 4/12 15/22 21/2 21/8 22/21 23/2
**told [3]** 3/21 6/25 10/7
**town [1]** 10/7
**transcript [3]** 1/14 26/5 26/6
**transcripts [5]** 4/11 5/11 6/15 11/21 12/6
**trial [46]**
**trials [8]** 5/14 6/6 6/10 6/14 6/20 12/23 17/24 17/25
**tried [6]** 10/22 10/22 10/25 11/18 18/10 22/5
**trigger [2]** 14/15 17/1
**try [4]** 9/7 10/25 12/3 18/9
**trying [3]** 11/6 18/8 21/19
**Tuesday [1]** 4/24
**Tuesdays [1]** 9/10
**turn [1]** 16/1
**turned [2]** 4/8 4/12
**turning [1]** 4/10
**turns [1]** 5/12
**twins [1]** 13/1
**two [2]** 17/24 23/11
**two-and-a-half [1]** 17/24
**type [2]** 6/5 6/11
**types [1]** 17/11

## U

**Uh [3]** 8/2 10/20 11/12
**Uh-huh [3]** 8/2 10/20 11/12
**ultimately [3]** 5/9 14/14 24/2
**unable [1]** 3/17
**under [5]** 9/22 22/16 22/24 22/25 23/15
**under-seal [2]** 22/24 22/25
**Understood [1]** 22/7
**unique [3]** 16/17 17/19 17/25
**UNITED [5]** 1/1 1/23 3/9 26/4 26/8
**until [7]** 5/19 13/18 14/20 14/25 15/21 16/25 23/14
**upshot [1]** 8/20
**us [12]** 2/6 2/10 2/13 5/12 8/24 9/12 13/24 14/6 16/8 19/3 20/8 23/10
**USA [2]** 1/6 3/5

**use [1]** 5/16
**used [1]** 8/23
**using [1]** 19/2

## V

**vacation [1]** 13/18
**valid [1]** 14/7
**variety [1]** 8/4
**venue [2]** 17/12 17/13
**very [5]** 10/21 11/24 14/5 22/4 25/2
**view [1]** 12/5
**viewing [1]** 11/9
**voluminous [1]** 5/17

## W

**wait [1]** 23/14
**waiting [1]** 19/14
**waiver [1]** 24/16
**walk [1]** 23/2
**want [10]** 6/25 7/1 11/1 11/24 17/18 19/5 21/13 23/2 24/15 24/16
**wanted [2]** 5/4 23/1
**wants [4]** 8/19 9/24 22/1 23/10
**was [12]** 6/12 8/3 8/5 9/18 10/7 12/10 15/10 17/20 18/1 20/7 21/10 22/16
**Water [1]** 2/21
**way [6]** 9/15 11/5 16/15 16/16 16/17 22/22
**we [118]**
**we'd [5]** 9/10 13/22 20/5 21/21 23/17
**we'll [5]** 5/22 13/5 16/1 20/2 21/19
**we're [16]** 3/16 4/1 4/3 5/21 6/23 8/10 16/11 16/12 16/19 16/23 17/3 17/12 17/13 18/4 20/3 20/19
**we've [8]** 4/12 5/11 5/19 9/2 9/8 19/13 22/23 23/23
**WEDNESDAY [2]** 1/16 3/1
**week [6]** 12/12 13/20 15/23 16/6 21/2 21/13
**weeks [3]** 10/8 10/9 18/18
**well [13]** 3/16 4/18 6/9 8/16 10/1 10/5 11/13 14/6 20/2 20/10 21/16 23/18 23/19
**WESTERN [1]** 1/3
**what [24]** 3/20 6/8 6/12 7/2 7/9 7/24 8/4 8/7 8/9 9/21 12/12

**W**

**what... [13]** 13/15
14/10 15/10 16/11
17/7 17/13 18/15
19/24 20/19 22/2
23/19 23/21 24/6
**what's [3]** 4/7 4/18
23/4
**whatnot [1]** 5/8
**where [1]** 8/9
**whether [12]** 5/21 6/7
7/19 9/9 15/12 15/13
16/24 17/14 18/3
19/21 21/14 23/14
**which [14]** 3/20 5/7
5/16 8/3 9/10 12/6
12/12 13/2 13/24
14/21 15/1 15/21 19/6
19/22
**while [3]** 10/15 11/8
11/23
**who [8]** 3/13 7/13 7/15
12/22 17/20 17/22
18/1 23/9
**whole [1]** 13/19
**why [6]** 9/8 13/2 14/5
21/2 21/25 24/21
**widely [2]** 17/20 18/1
**wise [1]** 23/13
**withdrew [3]** 3/22
8/21 10/12
**within [2]** 11/20 21/12
**without [1]** 14/12
**witness [1]** 5/12
**witnesses [7]** 4/14
4/16 5/13 5/15 9/25
12/7 12/22
**won't [7]** 5/18 6/19
13/19 14/17 16/25
18/14 20/1
**work [1]** 15/2
**working [1]** 17/3
**worth [1]** 17/24
**would [24]** 4/25 5/23
8/9 8/24 9/12 10/2
10/5 11/10 13/17
13/20 13/24 15/1
15/23 16/6 16/7 17/8
17/15 18/7 18/8 18/8
20/8 23/8 23/22 24/4
**wrong [1]** 7/14

**Y**

**years' [1]** 17/24
**yesterday [1]** 4/11
**yet [1]** 19/24
**You'd [1]** 16/4
**you'll [2]** 15/14 19/25
**you've [2]** 5/9 12/1