UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

HONORABLE PERCY ANDERSON

UNITED STATES DISTRICT JUDGE PRESIDING

- - -

United States of America,           )
                    PLAINTIFF,       )
                                     )
VS.                                  )   NO. CR 16-66 PA
                                     )
Leroy Baca,                          )
                    DEFENDANT,       )
_____)


REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL – DAY FIVE

VOLUME I OF II

LOS ANGELES, CALIFORNIA

TUESDAY, FEBRUARY 28, 2017


_____

KATIE E. THIBODEAUX, CSR 9858
U.S. Official Court Reporter
312 North Spring Street, #436
Los Angeles, California 90012


UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

APPEARANCES OF COUNSEL:


FOR THE GOVERNMENT:

BRANDON D. FOX
-and- EDDIE JAUREGUI
-and- LIZABETH RHODES
AUSA - Office of the US Attorney
312 North Spring Street 12th Floor
Los Angeles, CA 90012



FOR DEFENDANT:

      MORGAN LEWIS AND BOCKIUS LLP
      BY:  NATHAN J. HOCHMAN
      -and- BRIANNA ABRAMS
      1601 Cloverfield Boulevard
      Suite 2050 North
      Santa Monica, CA  90404

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

                              I N D E X


WITNESS NAME                                   PAGE

MICKEY MANZO

        Direct Examination by Mr. Fox         857

        Cross-Examination by Mr. Hochman      880


EXHIBIT                              I.D.       IN EVID.

133, select pages                    859          859
134                                  861          862
135, select pages                    863          864
86                                   866          867
155                                  868          870
61                                   873          874
523                                  902          903


UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES, CALIFORNIA; TUESDAY, FEBRUARY 28, 2017

8:00 A.M.

- - - - -

(The following proceedings were held outside the presence of the jury:)

THE CLERK:  Item 1, CR 16-66A PA, United States of America versus Leroy Baca.

Counsel, please state your appearances.

MR. FOX:  Good morning, your Honor.  Brandon Fox, Lizabeth Rhodes and Eddie Jauregui on behalf of the United States.  Also with us at counsel table is FBI Special Agent Lea Tanner.

THE COURT:  Good morning.

MR. HOCHMAN:  Good morning, your Honor.  Nathan Hochman and Brianna Abrams on behalf of defendant Leroy Baca who is present, your Honor.

THE COURT:  Good morning.

THE COURT:  All right.  I guess we have this issue about the demonstrative exhibit.  I think what I have concluded is not sure that it needs to be up for the entirety of the trial.  So if you want to put something up, place it up there, that is fine.  I don't see much prejudice, if any, with leaving the old ones up there,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

but I do think it ought to be -- put it up there.  You can put the placard up there, let the jury see it, and then I think it needs to go down.

MR. FOX:  If we are going to be with a single witness, if we are going to be adding multiple magnets on to the calendar, is it okay if we leave it up there for a bit while we add the layers, or do you want us to continue to take it down and put it back up?

THE COURT:  I think if there are going to be multiple placards up there, that is fine for that witness, but at some point it needs to go down.

MR. FOX:  Yes, your Honor.

THE COURT:  Okay.  Anything else we need to take up?

MR. FOX:  No, your Honor.

MR. HOCHMAN:  No, your Honor.

THE COURT:  All right.  Let's bring the jury in.

Is Mr. Manzo here?

MR. FOX:  Yes.

(The following proceedings were held in the presence of the jury:)

THE COURT:  Good morning, ladies and gentlemen. All right.  Let's start.

///

///

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

DIRECT EXAMINATION (Res'd)

BY MR. FOX:

Q    I am going to display for you, Mr. Manzo, Exhibit 28 again.  Can you please read for the jury.  This is the most important e-mail that says this is the most important operation.  Can you please read for the jury the last paragraph of this e-mail?

A    There are four 12-hour shifts each day, midnight to noon, 06:00 to 18:00, 12:00 to midnight, 18:00 to 06:00.  There will always be two deputies assigned.  However, they have offset start and end times.  Do not leave until properly relieved.  Once again, you all have my number, (909)815-8064 if do you not get relief.  All CARPs have been cancelled for you until we have accomplished our mission.  Overtime will only be paid once you have completed your 40.  We must still provide our service to custody division.  Starting next week, I will require a straight time 12-hour slot before you are eligible for an OT spot.

Q    There is a term CARPs.  What is CARPs?

A    It is an acronym.  I can't remember exactly what it stands for, but, basically, instead of working an OSJ shift, you would supplement the whatever custody facility by working a line position with the inmates instead of a investigator's spot.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

Q      Why was that?

A      To relieve overtime.

Q      And in this, it discusses overtime, that overtime will be paid.  Did deputies working these shifts receive over time if they worked over 40 hours?

A      Yes.

Q      What about you, during this time, were you receiving overtime?

A      Yes.

Q      Approximately how much?

A      I think we had a cap.  As a sheriff's department, a general rule was a cap.  I think it was 96 hours of overtime.

Q      Over what period of time?  96 hours over what period of time?

A      A month.  And we went well over that during this operation.

Q      You, specifically, how much did you receive in overtime your first month working this?

A      The check for two weeks for the month was probably around 12- to $13,000.

Q      In overtime?

A      Not just -- that is total.

Q      And how much would you ordinarily receive without overtime?

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

A      Maybe 7500, 8,000 around there.

Q      Mr. Manzo, you should have three original exhibits near you, 133, 134 and 135.  Do you have them there?

A      Yes.  134 and 135?

Q      133, 134 and 135?

A      I got them.

Q      Let's look at 133 first.  What is 133?

A      133 is the CYA log that was mentioned in the e-mail.

Q      Who created that?

A      Myself and Deputy Smith.

Q      Is Exhibit 133 in substantially the same condition as when you created it?

A      Yes.

        MR. FOX:  Your Honor, I move for the admission of Government Exhibit 133.  We are not going to be sending the originals back, just select pages.

        THE COURT:  All right.  Any objection?

        MR. HOCHMAN:  No as to the select pages, your Honor.

        THE COURT:  All right.  It will be received.

Q      BY MR. FOX:What do we see at the top of this page in the handwriting?

A      Rodriguez, John.

Q      And what are those numbers beneath the Rodriguez,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

John name?

A    The 2855633?

Q    Yes.

A    That would be a booking number.

Q    And then beneath that booking number, there is another number that starts 2856795, and we see printed King, Kevin.  What is that?

A    That is the sticker that we put on the wristbands for the inmates.

Q    Whose sticker was that?

A    Anthony Brown.

Q    And the name John Rodriguez, who was that?

A    Anthony Brown.

Q    What date is Special Agent Tanner highlighting now?

A    Tuesday the 23rd.

Q    If we can actually look at the full page first before highlighting that.  We don't see anything on August 22nd.  Why is that?

A    Nothing happened.

Q    So if we can highlight now the 23rd, according to this schedule, who guarded Anthony Brown on the 23rd?

A    Myself and Deputy Smith.

Q    And what shift did you work?

A    It looks like 2:00 to midnight.

Q    And we see right after that, it says Thompson,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

slash, Pearson.  What does that mean?

A    They relieved us at midnight.

Q    Is that Greg Thompson?

A    No.  That is his son, Matt.

Q    What shift did they work?

A    Midnight to 8:00 a.m.

MR. FOX:  Special Agent Tanner, if we can just briefly see the remainder of the calendar.

Q    Please now look at Exhibit 134.  Do you recognize it?

A    I do.

Q    What is it?

A    My task force notebook.

Q    Why did you create this?

A    Initially, it was for just OSJ duties, but once we get on the task force, I needed something to take notes in and I just use this one.

Q    Which task force are you referring to?

A    I can't remember the name of it, the ICIB task force that I was loaned to.

Q    Is that in substantially the same condition as when you created it?

A    Approximately, yes.

MR. FOX:  Your Honor, I move for the admission of Government Exhibit 134, again with agreement with counsel

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

about which pages we will send back.

MR. HOCHMAN:  No objection, your Honor.

THE COURT:  Will be received.

Q    BY MR. FOX: Mr. Manzo, if you can look at the screen, Special Agent Tanner will put up Exhibit 134.

And if we can look at the next page, please.

Q    Whose notes are these, Mr. Manzo?

A    Mine.

Q    And can you please read the top line?

A    8/31/11 meeting, slash, briefing, 10:30 hours.

Q    What are these notes of?

A    These are what was said during the meeting, slash, briefing.

Q    Can you please read the rest of it?

A    1000 man hours, federal grand jury investigation, subpoenas.  1, Inmates A through T all records including force, injury, complaints, et cetera.  24 inmates.  1, Deputies A through W reports use of force, alleges, criminal charges on inmates, disciplinary documentation, e-mails.  1, all jail personnel, i.e., CARPers, slash, transfers.  9/14/11 inmate info subpoena due.  9/21/11, deputy --

THE REPORTER:  I'm sorry. Slow down, please.

THE WITNESS:  9/14/11, inmate info subpoena due. 9/21/11, Deputy A through W info subpoena due.  9/28/11,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

jail personnel info subpoena due.

Q    BY MR. FOX:You mentioned these were your notes during a briefing.  What was the briefing about?

A    This might have been -- I don't -- I think this was the first big task force briefing we had.

Q    First ICIB task force briefing?

A    Yes.

Q    All right.  Now, if you can look at Exhibit 135.

Do you recognize that?

A    Yes.

Q    What is it?

A    This is Deputy Smith's task force notebook.

Q    How do you know that?

A    I have seen it before.  I have read and I know his handwriting.

Q    And you said that it is his notebook.  What is his notebook about?

A    This is the notes he took while we were on the ICIB task force.

MR. FOX:  Your Honor, I move for the admission of Government Exhibit 135 again with the same stipulation about what goes back?

MR. HOCHMAN:  No objection, your Honor.

THE COURT:  Will be received.

MR. FOX:  And Special Agent Tanner, if we can

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

publish the first page.

Q    Can you please read what we see at the very top of that page

A    G, AB, dash, 8/24, dash.

Q    Now, if we can go to the next page, just the first third of the page, please.

Can you please read what Mr. Smith wrote in this notebook?

A    AUSA investigation, police brutality.

Q    What did you understand an AUSA to be?

A    You.

Q    Is there -- do you know what the acronym stands for?

A    Assistant United States Attorney.

Q    So it says Assistant United States Attorney, and then what does it say after that?

A    Investigation, police brutality.

Q    What does it say below that line?

A    Use of force from 2009 to 2011, complaints, 69 PC, 243(b) PC, all use of force.

Q    Do you have an understanding as to what of 69 PC means?

A    I used to.  I don't remember anymore.

Q    Do you know what PC stands for?

A    Penal Code.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Q     Is that a federal or state penal code?

A     State.

Q     Let's take that down, please.

      Mr. Manzo, we talked about Mr. Brown being in San Dimas.  At some point, did he leave San Dimas and go somewhere else?

A     Yes.

Q     Where did he go?

A     Back to Men's Central Jail.

Q     Why is that?

A     He basically wore out his welcome at San Dimas station.

Q     What do you mean by that?

A     At one point toward the end of this, it was decided that we weren't going to continue to --

      MR. HOCHMAN:  Objection.  Foundation at this point.

      THE COURT:  Sustained.

Q     BY MR. FOX: Mr. Manzo, let me direct you to any behavior that Mr. Brown had at that time that you observed.

      Did you observe him do anything that made it happen so that he went back to Men's Central Jail?

A     I didn't observe it.  I was told about it.

Q     What were you told?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

MR. HOCHMAN:  Objection.  Foundation.

MR. FOX:  Happy to lay it, your Honor.

Q     Who told you this information?

A     Deputy Hayley.

Q     And where were you when he told you this information?

A     It was in an e-mail.

Q     Okay.  And was it just you on the e-mail?

A     I believe it was myself and Deputy Smith.  There might have been others, but we both got it.

Q     What did Mr. Hailey tell you in this e-mail?

MR. HOCHMAN:  Objection.  Foundation as to the timing of the e-mail.

MR. FOX:  Happy to lay that, your Honor.

Q     Do you remember when approximately this e-mail was?

A     End of August, early September.

Q     Do you remember what the e-mail said?

A     Not word for word, but it basically said that Brown was -- it was time to move him because he was, basically wore out his welcome there.

Q     Can you look at what should be in front of you, original Exhibit 86, please, and then take out the binder that has Exhibit 87 in it.

Do you see it?

A     I do.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Q      What is Exhibit 86?

A      This is a recording that Smitty did, Deputy Smith, excuse me, on 9/2 of an interview with Anthony Brown.

Q      How do you know that?

A      I listened to it.

Q      And on that recording, does Mr. Smith identify the date and who he is interviewing?

A      Yes.

Q      Does he identify himself by any number?

A      His employee number.

Q      And does Exhibit 86 reflect, accurately reflect the conversation that Mr. Smith had on that recording with Anthony Brown that day?

A      Yes.

Q      How do you know that?

A      I used that while I was listening to the interview.

        MR. FOX:  Your Honor, I move for the admission of Government Exhibit 86.

        MR. HOCHMAN:  Objection.  Hearsay, your Honor.

        THE COURT:  One moment.

            Overruled

Q    BY MR. FOX: And, Mr. Manzo, what is 87?

A      It is a transcript of the interview.

Q      Does it truly and accurately reflect the speakers and what was said on Government Exhibit 86?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

A      Yes.

MR. FOX:  And, your Honor, I would like to now play 86 for the jury.  They have the transcripts.  It would be behind Tab 87, Exhibit 87, in the transcript book.  It is not the one with Mr. Baca's interview.  It is the other transcript book.

(Audio played.)

Q     BY MR. FOX: Mr. Manzo, I have got a few questions about what was said there.  First of all, there was a reference Mr. Brown made to a Sergeant Long.

Do you know who he was referring to?

A      Yes.

Q      Who was that?

A      Sergeant Maricela Long.  She was ICIB.

Q      Was she one of the people that was assigned to this operation at some point?

A      Yes.

Q      When Mr. Brown moved back to Men's Central Jail, did anything change with respect to OSJ guarding him?

A      No.

Q      There was a discussion in the clip that we listened to about legal pads.  I would like you to look now at -- you can probably look in your binder at 155, the binder that contains 155.

While you do that, Mr. Manzo, I am going to

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

add the magnet Brown to MCJ to September 2nd.

Do you recognize it?

A     Yes.

Q     What is it?

A     It is a copy of a letter that Brown wrote.

Q     Do you know the term redactions.  Do you know what redactions mean?

A     Yes.

Q     Are there redactions in that note?

A     Yes.

Q     And that just means that there are things that are blocked out; is that right?

A     Correct.

Q     Other than the redactions, is that a true and accurate copy of a letter that Mr. Brown wrote?

A     Yes.

Q     How do you know that this is a letter that Mr. Brown wrote?

A     I read the original.

Q     How did you receive it?

A     Can't remember if Brown gave it to me or he gave it to one of the deputies and they gave it to me.

Q     What did you do with it after you received it?

A     We gave it to Lieutenant Levins.

MR. FOX:  Your Honor, I move for the admission of

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Government Exhibit 155.

MR. HOCHMAN:  No objection, your Honor.

THE COURT:  Will be received.

Q    BY MR. FOX: Mr. Manzo, if you could look at the last page of that exhibit, what is the date of that letter?

A    9/3/11.

MR. FOX:  We will put now on the calendar, Brown letter, September 3rd.  If you could just publish the first page.  This is 155.

Q    Mr. Manzo, I am not going to ask you to read the letter at this point.  Just, generally, what does this letter, what does Mr. Brown state in this letter?

A    He had some insight into the investigation.  He gave some examples and basically says that the FBI has left him for dead and he fully cooperates with the sheriff's department in any way he can.

Q    Mr. Manzo, you mentioned that you were loaned to ICIB, the task force at some point.  Where were the offices located when you were loaned to ICIB's task force?

A    Initially, they were in the City of Commerce in the ICIB headquarters.

Q    What happened?

A    They were moved from there once the task force expanded to the basement of sheriff's headquarters

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

bureau.

Q    Is that the one in Monterey Park?

A    Yes, it is.

Q    Do you remember when this happened?

A    Maybe a week, week-and-a-half after the 20th.

Q    Did you ever see Mr. Baca in that office space?

A    Yes.

Q    Did you remember when?

A    The very first task force meeting we had.  They were on Tuesdays.  He came down.

Q    Who else was present at that task force meeting?

A    Undersheriff Tanaka, myself, Deputy Smith, Captain Carey, Lieutenant Peacock, Lieutenant Levins, Sergeant Long, Sergeant Craig, and most of what became the task force of the sergeants.

Q    Who led the briefing?

A    Initially, Captain Carey opened it, and then Lieutenant Levins.

Q    And do you recall what Mr. Levins said during this briefing?

A    He gave an overview of where we were at in the Brown investigation up to that point.  He introduced the sergeants that had just come on so that everybody kind of knew who they were.

Q    Who were those sergeants?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

A    Oh, man.

Q    You mentioned Sergeant Long earlier.  Was she someone new?

A    No.  She had already been there.  She came about two or three days after the 20th.

Q    All right.  With respect to -- you mentioned a Deputy Bravo who was related to Mr. Baca earlier.  Do you recall that?

A    Yes.

Q    And you mentioned that Mr. Brown was making allegations regarding a Deputy Bravo.  Did you put those allegations into any report?

A    I did, yes.

Q    What happened?

A    I wrote the report.  It is off one of the interviews that we did with Brown.  I turned it in to Sergeant Craig.  He read it over and said that it was good.  He was going to pass it up to Lieutenant Levins who had the final say in the report.  It got kicked back down to Sergeant Craig after Lieutenant Levins read it, and he asked me to take out the name Bravo, the name, any mention of Justin Bravo.

Q    Did Mr. Craig exlain to you why?

A    No.

Q    Did he provide any other instructions to you?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

A    Well, I kind of pushed back and said I wouldn't do it. And we came -- he came up with a --

Q    Wait one second. When you said you wouldn't do it, you wouldn't do what?

A    I wouldn't take his name out.

Q    Okay. And what happened then?

A    I kind of held my ground, and he held his for a while. And then we decided that, he decided that if I would turn in the original or keep the original that I wrote with Bravo's name in, I would have a copy, he would have a copy. And then I would take out Bravo's name, and he would have a copy and I would keep that copy.

Q    Did Mr. Craig indicate to you who these instructions were coming from?

A    The executives.

Q    If you could now look at your binder that contains 61, please. Do you see 61?

A    Yes.

Q    What is Government Exhibit 61?

A    It is an e-mail that I sent to Sergeants Craig and Sergeant Long and copied to Lieutenant Levins and Deputy Smith. It is a link to a story that was ran in the LA Times.

Q    Is that a true and accurate copy of the e-mail that you are referring to?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

A     Yes.

MR. FOX:  Your Honor, I move for the admission of Government's Exhibit 61.

MR. HOCHMAN:  No objection, your Honor.

THE COURT:  Will be received.

MR. FOX:  If we could show it to the jury, please.

Q     We see a from mmanzo7@yahoo.com.  What is that e-mail address?

A     That is my personal e-mail.

Q     And what is the subject of this?

A     FBI probing reports of beatings in LA County jails.

Q     Can you please please what is beneath, after it says the story was sent to you, and then it says FBI probing reports of beatings, what is stated beneath that?

A     (Reading:)  Federal agents sneaked a cell phone.

THE REPORTER:  Slow down, please.

THE WITNESS:  (Reading:)  Federal agents sneaked a cell phone into Men's Central Jail as part of their investigation of misconduct sources say, by Robert Faturechi, Los Angeles Times, September 25th, 2011, 6:54 p.m., PDT.  Federal authorities are investigating allegations of inmate beatings and other misconduct by deputies in Los Angeles County jails.  With FBI agents going so far as to sneak a cell phone to an inmate to get reports from inside according to law enforcement sources.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Q      And if we can show you the first part of that e-mail now.  Who did you forward that article to?

A      Sergeant Craig, Sergeant Long, Lieutenant Levins and Deputy Smith.

Q      And I don't have a magnet, but this is September 24th that we are talking about; is that right?

A      Yes.

Q      Oh.  Now, I do have magnets.

       MR. FOX:  Your Honor, I am putting on the board a magnet that says civil rights article.

       MR. HOCHMAN:  May I have a minute, your Honor?

       (Counsel confer.)

       MR. FOX:  We will meet and confer with counsel about what the magnet will say.

Q      So, Mr. Manzo, around the time of September 24th, after you saw this article, around that period of time, did you observe anything unusual with respect to Sergeant Scott Craig?

A      Yes.

Q      What did you observe?

A      We were in the task force room, and Sergeant Craig got up and was walking toward the door, and I sat next to, at the time, it was Sergeant Webber, he is a lieutenant now, but Sergeant Webber said, I don't think this is a good idea.  And Craig kind of turned around and

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

said I don't either, but I have been so ordered and kind of did this very dramatic bow and walked out of the room.

Q      Around this period, did you see any videos involving Scott Craig?

A      Yes.

Q      What did you see?

A      It turned out -- it didn't have sound, but it turned out to be the video of him confronting Special Agent, at the time, Special Agent Marks.

Q      Going to now take down these calendars.

Q      Mr. Manzo, you began your testimony yesterday by stating that you have been convicted of an obstruction of justice and regarding these details you testified about; is that correct?

A      That is correct.

Q      When was that?

A      It was July of -- 14, 2014.

Q      Do you currently have any agreements with the United States?

A      Nothing written.

Q      Are you hoping for anything?

A      For my cooperation and truthful testimony, I am hoping that you will decide to file what is called a Rule 35.

Q      Have you been sentenced already?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

A     Yes.

Q     Have you served any of that time yet?

A     No.

Q     Why not?

A     I have tried.  They keep pushing it back, or they are not ready for me.

Q     How much time were you sentenced to?

A     24 months.

Q     And you mentioned the Rule 35.  What is a Rule 35?

A     It is something that the government will file on my behalf for the judge to consider reducing my sentence.

Q     And what has the United States told you with respect to any Rule 35 motion?

A     That you would consider it.

Q     Ultimately, who is going to determine whether you get any time off your sentence if the United States files a Rule 35 motion?

A     It will be the judge.

Q     When are you scheduled to start serving your sentence?

A     March 27.

Q     Did you previously testify in the grand jury after your conviction?

A     I did, yes.

Q     Did you receive any benefits for testifying before

the grand jury?

A     No.

Q     And did you testify at a proceeding last April?

A     Yes.

Q     Did you receive any benefit for that?

A     No.

Q     Why did you testify at those proceedings?

A     I was subpoenaed to.

Q     Going back to the events of August and September of 2011, were you ever disciplined by the sheriff's department for your conduct?

A     No.

Q     Did Mr. Baca ever have you investigated for your conduct?

A     No.

Q     If you can now look at Government Exhibit 189 which is in evidence, and, actually, we are going to publish it.  These are reviews of a number of individuals.  Let's start out with this declaration at first so the jury is aware what is contained in this exhibit.

        Can you please read what is stated in Paragraphs 2 and 3?

A     (Reading:)  As custodian of the records, I was asked to provide all performance evaluations covering the time period of 2011 to 2012 for the following

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

individuals:  Paul Tanaka, 211265, Gregory Thompson,
196144, Maricela Long, 401048, Gerard Smith, 401549,
Mickey Manzo, 519066, Steven Levins, 235124.

The process I used to search for the above mentioned records was I searched for the personnel file using the employee number and verified that it matched the name.  The requested paperwork for Paul Tanaka and Gregory Thompson could not be located.

Q     Special Agent Tanner, if we could look at the second page of this exhibit, please.

Do you see the name at the top of this report on performance evaluation?

A     Yes.

Q     Who is this?

A     Gerard Smith.

Q     And what time period does this cover?

A     Looks March 29th of 2011 to March 28th of 2012.

Q     What ranking does, what rating, excuse me, does Mr. Smith receive for this time period?

A     Outstanding.

Q     Now, if we can go to Page 3, is that the same for every category that he is rated in, Mr. Manzo?

A     Yes.

Q     Can we look at Page 4, please.  Who is this an evaluation for on Page 4?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

A      Myself.

Q      What time period?

A      July 18th, 2011 to July 6, 2012.

Q      What rating do you receive for this time period?

A      Very good.

Q      And if we can look at the next page, is that the same for every category, Mr. Manzo?

A      Yes.

MR. FOX:  One moment, your Honor.

No further questions.

THE COURT:  Cross-examination?

MR. HOCHMAN:  Yes, your Honor.

May I proceed, your Honor?

THE COURT:  Yes, please.

MR. HOCHMAN:  Thank you, your Honor.

CROSS-EXAMINATION

BY MR. HOCHMAN:

Q      Mr. Manzo, in December, 2013, you were charged with two felony counts, a conspiracy to obstruct justice as one count and a separate count of obstruction of justice both related to the FBI's investigation in August and September of 2011; is that correct?

A      Yes.

Q      And you plead not guilty to both of those charges;

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

correct?

A      Correct.

Q      And to this day, you have not changed your plea of not guilty to both charges; correct?

        MR. FOX:  Objection.  Misleading.

        THE COURT:  Sustained.

Q      BY MR. HOCHMAN: Have you ever changed your plea of not guilty to either one of the charges?

        MR. FOX:  Objection.  Misleading, your Honor.

        THE COURT:  Sustained.

Q      BY MR. HOCHMAN: Well, you were convicted of both those charges; is that correct?

A      Yes.

Q      And that was in 2014?

A      Yes.

Q      And after you were convicted, did you change your plea to guilty?

        MR. FOX:  Objection, your Honor.

        THE COURT:  Sustained.

Q      BY MR. HOCHMAN: At your sentencing, you faced a maximum sentence of five years of imprisonment on the conspiracy charge; correct?

A      Correct.

Q      And you face a maximum sentence of 10 years of imprisonment on the obstruction of justice charge;

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

correct?

A    Correct.

Q    So for a total of 15 years imprisonment is what you were facing at your sentencing; is that correct?

A    Yes.

Q    And the government recommended that you be sentenced to a much lower sentence than 15 years; correct?

A    Correct.

Q    And the judge actually sentenced you to a 2-year sentence instead of the 15 year sentence; correct?

A    That's correct.

Q    And then you appealed your case?

A    Yes.

Q    And the appeal is still pending?

A    I thought they denied it.

Q    I'm sorry?

A    I thought they denied it.

Q    After you were -- after you were sentenced, the government wanted you to testify at a prior proceeding; is that correct?  And that is the one in April, 2016?

A    Yes.

Q    And you did not agree to do so voluntarily.  You had to be subpoenaed; correct?

A    Correct.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Q     And the government actually had to get you a court order to give you immunity in order for you to testify at that prior proceeding; correct?

A     Correct.

Q     And you understood that immunity made it so that any statement you gave during that prior proceeding could not be used against you; correct?

A     That's correct.

Q     And the same thing with your grand jury appearance that the government referenced, you were subpoenaed to testify before the grand jury?

A     Yes.

Q     You didn't do it voluntarily?

A     Correct.

Q     And, again, the government got a court order to give you immunity for your grand jury appearance; correct?

A     Correct.

Q     And without immunity, would you not have testified before the grand jury; correct?

A     That is correct.

Q     And without immunity, you would not have testified in the April, 2016, prior proceeding; correct?

A     Correct.

Q     Now, after the April, 2016, prior proceeding, you

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

also, at some point, testified at another proceeding in December of 2016; is that correct?

A     Yes.  Correct.

Q     Now, at that time, for that proceeding, that is when the government offered you this potential of this Rule 35 motion; is that right?

A     That is correct.

Q     And you understand this Rule 35 motion to be a motion that only the government can file; correct?

A     Yes.

Q     It is not a motion that you or your lawyer could file; is that right?

A     No.  We couldn't file that.

Q     And it is not a motion that defense, Mr. Baca's defense could file on your behalf; correct?

A     Correct.

Q     And you understand that what a Rule 35 motion does is it it allows the court the opportunity, if it so chooses to lower your sentence from the two year sentence to something lower than that; correct?

A     Correct.

Q     And without a Rule 35 motion, the court, even if it wanted to, couldn't lower your sentence; correct?

A     I assume.  I don't know.

Q     Now, with respect to -- your anticipation is that

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

you are hoping that, as a result of your cooperation with the government and testimony at a prior proceeding and your testimony today, that the government will consider that and file this motion with the court to lower your sentence; is that correct?

A    Yes.

Q    And you are set -- you were originally set to surrender to prison to serve your sentence, I believe, on January 9th, 2017; is that correct?

A    Initially, it was January 2nd of '15.

Q    January 2nd of '15.  But then it got continued all the way to January 9th of 2017; is that correct?

A    That's correct.

Q    And then you and the government agreed to move your surrender date to I believe you said March of 2017; correct?

A    I don't know if the government had anything to do with that.

Q    Well, by moving it to March of 2017, it would allow your cooperation today and yesterday to be considered by the government in deciding whether or not it wants to make a Rule 35 motion; correct?

A    I could have cooperated if I turned myself in.  It would have just been in a single man cell at MDC instead of where I am supposed to be or wherever they decide to

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

send me.

Q    Well, and that is part of my next question which is since you were convicted and sentenced in 2014, you haven't served a day of that 2-year sentence up until today; correct?

A    I have not.

Q    And if the government makes this Rule 35 motion and the court were to grant it, you would actually end up serving something less than the 2-year sentence; is that correct?

A    Yes.

Q    Now, how many meetings have you had with the government since November of 2016?

A    Two.

Q    And these were voluntary meetings; correct?

A    Yes.

Q    You didn't come in with any, the government having to give you court-ordered immunity; correct?

A    No.

Q    You just went in and met with Mr. Fox; is that correct?

A    Yes.

Q    Ms. Rhodes?

A    For one of them.

Q    And FBI agents as well?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

A    Yes.

Q    When were these meetings?

A    The most recent one was maybe two weeks ago, and, then, the other one was maybe the beginning of December. I can't give you an exact date.

Q    And where were those meetings located?

A    Here.

Q    And when you say here, what do you mean?

A    In this building.

Q    And it was at the U.S. Attorney's office here in this building?

A    Yes.

Q    And at each of those meetings, did you go over the testimony that you would be giving either in a prior proceeding or for this trial?

A    Yes.

Q    And the government asked you many of the same questions at those meetings that it asked you yesterday and today; correct?

A    Correct.

Q    And they asked you -- and they gave you these questions ahead of time so you could refresh your memory as to the events that they were asking you about in August and September of 2011; correct?

A    Correct.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Q    And they also showed you certain documents, did they not, to help refresh your memory during those interviews you had with the government before your testimony today?

A    Correct.

Q    And they also played you some audio tapes as well so that you could also refresh your memory about what was on the audio tapes; is that correct?

A    Yes.

Q    Now, I understand, if I understand you correctly, you said that in your testimony yesterday, you met with Sheriff Baca on two occasions, August 19th and 20th in connection with your investigation; is that correct?

A    Yes.

Q    And you never actually spoke to Sheriff Baca directly on the telephone during any time period between August and September of 2011; is that correct?

A    That's correct.

Q    And you never directly exchanged any e-mails with Sheriff Baca in the August, September, 2011 timeframe; is that correct?

A    That's correct.

Q    And, again, so the only two contacts you had with him in connection with this investigation where you directly were speaking with him was on August 19th and

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

August 20th; correct?

A     Yes, that's correct.

Q     Now, you originally found out about the cell phone, I believe you said when one of the deputies who originally discovered the cell phone brought it up to the OSJ office; is that correct?

A     I don't remember him bringing the cell phone, but he brought the story with him.

Q     Now, OSJ is Operation Safe Jails?

A     It is, yes.

Q     And what exactly were your job duties in Operation Safe Jails?

A     They expanded and ranged, but, in a nutshell, it was the safety and security of the inmates and the employees at the facility.

Q     And you performed your duties in obeyance with the law; correct?

A     Yes.

Q     And you performed your duties with the respect and the dignity for the inmates; correct?

A     Absolutely.

Q     And you performed your duties as part of the core values that you were taught in the sheriff's department; is that correct?

A     Yes.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Q     And these were the core values that Sheriff Baca himself promoted; is that right?

MR. FOX:  Objection.  Relevance.

THE COURT:  Sustained.

Q     BY MR. HOCHMAN: Were the core value statements posted throughout the Men's Central Jail during August and September of 2011?

MR. FOX:  Objection.  Relevance, motion in limine.

THE COURT:  Sustained.

Q     BY MR. HOCHMAN: Now, you knew your job duties and what you needed to perform -- correct -- in August and September of 2011; is that right?

A     Yes.

Q     Did you violate your job duties during this time period?

A     No.

Q     Now, Sheriff -- the sheriff's department was responsible in general for keeping the jails safe and secure; correct?

A     Correct.

Q     And Sheriff Baca was responsible for keeping the jail safe and secure; is that right?

A     That's correct.

Q     And there were about 3,000 or so inmates and a thousand or so sheriff department deputies and civilians

that worked in the Men's Central Jail and Twin Towers in this August and September, 2011, period; is that right?

A     Yes.

Q     Now, you learned that Anthony Brown was the inmate from whom the cell phone had been recovered; correct?

A     Yes.

Q     And Anthony Brown, you learned, was a dangerous and violent career criminal, wasn't he?

A     He was.

Q     And he had committed numerous bank robberies back in the 2005 period; is that correct?

A     I thought they were armored car robberies, but robberies nonetheless.

Q     Where he used a gun to commit the robberies?

A     Yes.

Q     And then he was also in jail at that point for a series of armed bank robberies that he committed in 2009; is that correct?

A     I don't remember the date, but the crime is correct.

Q     Again, these are armed bank robberies where Anthony Brown used a gun; is that correct?

A     That is correct.

Q     And the gun was actually discharged.  It went off and narrowly missed someone during one of the armed bank

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

robberies; correct?

A       I know it went off.  That is all I know.

Q       And you knew that Anthony Brown got sentenced to 423 years of imprisonment; is that correct?

A       Yes.

Q       Now, you knew that the cell phone that he had been caught with was strictly prohibited in the jails; correct?

A       Yes.

Q       And that is because it is against the law for an inmate to have a cell phone in the jail; correct?

A       Yes.

Q       And you understood that a cell phone could actually be a weapon in the jail; correct?

A       Yes.

Q       And that is because a cell phone bypasses the jail's recorded telephone system; is that right?

A       Yes.

Q       And that recorded telephone system is called the Inmate -- Inmate Telephone Monitoring System, ITMS; correct?

A       Correct.

Q       And the ITMS or the recorded system records the calls that an inmate makes from their public phones that are located inside their cells; correct?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

A     Correct.

Q     And it allows the sheriff's department to access those recordings, if it wants, to determine what the inmate was saying on that particular phone call; correct?

A     Correct.

Q     But a cell phone is able to bypass that because a cell phone's call would not be recorded; correct?

A     Correct.

Q     And the ITMS, that Inmate Telephone Monitoring System, will also record the number that the inmate has called; correct?

A     Yes.

Q     And you can actually -- and the reason that a cell phone can be used as a weapon is that a cell phone can be used to plot an escape; is that correct?

A     Yes.

Q     It could be used to put a hit on on witnesses; is that right?

A     Yes.

Q     It could be used to bring contraband like drugs or guns into the prison; is that correct?

A     Yes.

Q     Now, with respect to an escape, did you believe that Anthony Brown -- well, Anthony Brown, you know, was being transported for a health appointment at the point

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

they found the cell phone on him; correct?

A    Correct.

Q    And was one of your early beliefs that Anthony Brown was using the cell phone to plot an escape?

A    Yes.

Q    Now, as part of your investigation, you needed to do certain things in order to find out what the source of the cell phone was -- correct -- in other words, who gave it to Anthony Brown; is that right?

A    Yes.

Q    Because you are assuming that Anthony Brown had to get it from someone; correct?

A    Correct.

Q    And so one of the first things you would do is actually look at the contents of the cell phone; is that right?

A    Yes.

Q    And in looking at the contents of the cell phone, you looked and found it had certain photographs that were actually still on the cell phone; is that correct?

A    Yes.

Q    And those were photographs of cocaine, heroin, methamphetamine, marijuana and ecstasy; is that correct?

A    I don't remember the exact drugs, but there were drugs in the pictures, I remember.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Q    Do you remember that there were drugs pictured of methamphetamine or meth?

A    I remember that there were drugs.  I couldn't tell you if it was meth or not.

Q    Do you remember marijuana was one of the drugs?

A    Yes.  I do believe marijuana was one of them.

Q    Do you remember if there were baggies of cocaine that were pictured?

A    They were baggies, but I don't remember if there was cocaine on it.

Q    Do you remember there were balloons of heroin?

A    There were balloons, yes.

Q    And balloons of some drug; is that correct?

A    Some drug, yes.

Q    And baggies with some drug in it; is that correct?

A    Yes.

Q    So you had the information that the cell phone, that Anthony Brown's cell phone had these pictures, did you also then look at the information as to whether or not the cell phone had made certain phone calls or text messages from it?

A    Yes.

Q    And when you looked at that information --

        THE COURT:  Let me see counsel at sidebar, please.

        (From 8:58 to 9:00, the proceedings, Pages 897 to

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

898, were conducted under seal.)

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

(The following proceedings were resumed in the presence of the jury:)

Q     BY MR. HOCHMAN: So, Mr. Manzo, you have looked at the photos on the phone, and then your next step is to actually look at the text messages or phone numbers dialed from the phone; is that correct?

A     Correct.

Q     And on those text messages and the phone numbers, you saw that there was a preset for a gentleman named CJ; is that correct?  In other words, CJ's name was on a speed dial reference as part of the phone; is that correct?

A     Yes.

Q     And there was also a phone number associated with CJ; is that correct?

A     Yes.

Q     And when you tracked down that phone number, you found out it went back to a prepaid cell phone; is that correct?

A     Correct.

Q     And then you also saw that there were messages, text messages to CJ on the phone; is that correct?

A     Correct.

Q     And so, then, in order to then figure out either who CJ is or -- and you assumed at that point that CJ may

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

be someone that was involved in getting Anthony Brown the phone; is that right?

A       Yes.  He was in our only lead at that point.

Q       So to then go to the next lead, did you then go to the public cell, the public phone that Anthony Brown had in his cell in order to determine who Anthony Brown had talked to within, you know, 60 to 90 days of the time that the phone was found on August 8th?

A       I don't remember if I did that, but somebody did. It was done.

Q       And then that information was conveyed to you?

A       Yes.

Q       And did that information lead you to a phone number that you eventually tried to track down whose phone number it was?

A       Yes.

Q       And that was a phone number that had been called about a hundred times, but didn't have any -- but no one answered it and then actually had three recorded phone calls associated with it; is that correct?

A       Yes.

Q       And when you make a call from a public jail cell phone, or, excuse me, public phone in the cell, and it shows that the call was made but it wasn't answered, how do you know that when you do the ITMS search?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

A      It comes out in a huge list, and there is different boxes it will check.  If it wasn't answered, it was just attempted, there will be no -- it will just show the cell, the number it called and that is it.  And then over here, it will say zero for time.  If it is recorded, it will be highlighted blue.  And, then, if I remember correctly, it will be a red circle that you can tap on and listen to the call, and it will bring up the player to listen to the call.

Q      I see.  So, at that point, so the first hundred calls to that phone number, and that was the phone number you eventually found to be the FBI phone number; is that correct?

A      Yes.

Q      So the first hundred calls nobody actually answered the call made, but then three calls in July of 2011, there was someone who answered the call; is that correct?

A      Correct.  There was recordings.

Q      And Exhibit 195, I believe was the three audio calls that happened on July 18th, 19th and 21st between Anthony Brown and what you thought at the time was an unknown female person; correct?

A      Correct.

Q      And, again, you didn't learn at least in the initial stage of your investigation who that unknown

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

female person was; is that correct?

A      That is correct.

Q      You learned it later that the unknown female person was Special Agent Marks; is that correct?

A      Yes.

Q      Now, at some point, do you prepare a transcript of those phone calls in order to give that transcript to Agent Thompson?

A      I don't know if I did it, but it was done.

Q      And then you gave the transcript to Agent Thompson once it was done?

A      I don't -- I don't remember if I gave it to Lieutenant Thompson or not.

        MR. HOCHMAN:  Your Honor, I would like to present to the witness for identification Defense Exhibit 523.

        May I approach the clerk, your Honor?

        THE COURT:  Yes.

        MR. HOCHMAN:  If you could take a look at Defense Exhibit 523.

        THE COURT:  Excuse me.  Do you have a copy for the court?

        MR. HOCHMAN:  I'm sorry.  Yes.  Yes, your Honor. May I approach the clerk again?

        THE COURT:  Yes.

Q      BY MR. HOCHMAN: Does Defense Exhibit 523 contain the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

e-mails that also contain the transcription of the three calls on July 18th, 19th in 2011 that we have been talking about?

A     Yes.

MR. HOCHMAN:  I move into evidence Defense Exhibit 523, your Honor.

THE COURT:  Any objection?

MR. FOX:  No objection, your Honor.

THE COURT:  Will be received.

Q     BY MR. HOCHMAN: Now, at some point, did you actually get the cell phone records from the Anthony Brown's cell phone?

A     Yes.

Q     And did those cell phone records reveal that Anthony Brown had actually made a call to that same FBI number that had been part of the July 18th, 19th and 21st phone calls?

A     I don't remember.

Q     Did you also, when you reviewed those cell records, did you see whether or not it revealed that there were any additional people who might have been affiliated with Anthony Brown's cell mate at the time?

A     Yes.  There was a number.  I can't remember the woman's name, but we ended up tracking her down in I want to say it was South LA and talking to her.  Her number

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

had been called from the cell phone.

Q    And, at some point, some point later, not immediately, but it took you what, days or weeks before you ended up tracking her down?

A    It took a little bit of time to find the number and identify it as hers, yes.

Q    But you eventually were able to track her down and speak to her and determine whether or not she had spoken to Anthony Brown's cell mate; correct?

A    That is correct.

Q    And determine whether or not she was the girlfriend of Anthony Brown's cell mate; is that correct?

A    That's correct.

Q    Now, at some point, you gave the phone number that you were investigating, this phone number that was eventually going to come back to the FBI's office to a gentleman named Noah Kirk; is that right?

A    That's correct.

Q    And Noah Kirk was a deputy at the time?

A    He was.

Q    But he was also working on a federal joint task force with the FBI; is that right?

A    Yes.

Q    And what is a federal joint task force?

A    It is where whatever federal agency, in this case,

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

it was the FBI, works with a local law enforcement to stop a specific problem.

Q    And this is where the sheriffs department is partnering with the FBI to stop a specific problem; is that correct?

A    Yes, that would be correct.

Q    And the sheriff department actually pays, if you know, the salary for in this case Noah Kirk to work on a federal task force; is that correct?

A    I don't know how he was getting paid.

Q    Now, with respect to the fact that he worked on the federal task force, he was able to ask an FBI analyst who also worked on his task force to help track down this phone number; is that correct?

A    That's correct.

Q    And then he was eventually -- then you eventually heard back from Mr. Kirk that the FBI analyst had tracked it down to a number of a civil rights investigator who was in Westwood, California; is that correct?

A    That's correct.

Q    But, at that point, you still didn't know who the civil rights investigator was; is that right?

A    That is correct.

Q    And you, yourself, never made a call to that number to determine who that person was; is that correct?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

A       I never made a call.  No.

        MR. HOCHMAN:  Now, if we may put Exhibit 17 before the witness.  Actually, Exhibit 17 is in evidence, if we can publish Exhibit 17.

        MR. FOX:  Are you asking Special Agent Tanner to do that?

        MR. HOCHMAN:  Yes, please.

        And if you could focus you on the middle paragraph, if we could focus that, Special Agent Tanner, on that middle paragraph, the August 18th, 9:02 p.m. paragraph.

Q       Okay.  So as the sequence goes, you then report your findings up to Lieutenant Thompson; is that correct?

A       That's correct.

Q       And Lieutenant Greg Thompson is your supervisor at that point; correct?

A       Correct.

Q       He is the unit commander of Operation Safe jails; is that right?

A       He is the unit commander of custody investigative services unit which OSC falls under.

Q       So he actually has even more responsibility than Operation Safe Jails; is that right?

A       Yes.

Q       And with respect to this particular e-mail, the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

idea was initially that they were going to send Anthony Brown to state prison on the Saturday night bus.

Do you recall that?

A    Yes.

Q    And you actually took steps to arrange for Anthony Brown to be on that Saturday night bus; correct?

A    Correct.

Q    And right now, this e-mail is dated Thursday night at 9:02 p.m. on August 18th, 2011; is that correct?

A    Yes.

Q    And, at this point, you know that Anthony Brown's cell phone has an FBI connection; correct?

A    Yes.  Correct.

Q    And you also know that Anthony Brown is looking at more than 400 plus years; is that right?

A    Yes.

Q    And if you can read the second line from the bottom that starts with "besides."

A    (Reading:)  Besides, if he doesn't want to cooperate, there is nothing we can offer him with 400 plus years hanging over his head.

Q    So at that point, on August 18th at 9:02 p.m., you didn't know whether or not Anthony Brown would speak with you; is that correct?

A    That's correct.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Q    But you found out -- thank you very much.

But you found out the next morning on August 19th at about 8:00 a.m. that Anthony Brown was willing to speak you; is that correct?

A    Yes.

Q    And that is where you had a two hour interview with Anthony Brown on August 19th, 2011 from about 8:00 a.m. to about 10:00 a.m.; is that correct?

A    Yes.

Q    And during that interview, Anthony Brown actually does start cooperating with you; is that right?

A    Yes.

Q    And he tells you that there are two versions of the story, one involving a nurse that may have brought him a cell phone or narcotics and one involving a deputy that may have brought him a cell phone or narcotics; correct?

A    Correct.

Q    And with the nurse, he eventually, in the August 19th meeting that you had with him, said that the nurse hadn't brought him the phone but she had brought him narcotics on one occasion; is that correct?

A    Yes.  That sounds right.

Q    And the nurse was actually in contact with CJ in order to bring Anthony Brown the narcotics; is that correct?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

A       That sounds right.  Yes.

Q       But he also now is saying that a deputy is the one who brought him that particular cell phone that had been seized; correct?

A       Correct.

Q       And he also claims that that deputy brought narcotics including cocaine, methamphetamine, marijuana, and heroin on seven different occasions, and he paid him $2,000 for each delivery; is that correct?

A       I don't remember the details, but he did make those claims.

Q       And he said that with respect to the cell phone that he actually paid the deputy $4,000 to bring in that cell phone; correct?

A       I don't remember the monetary amount, but he said he did pay this deputy money, yes.

Q       Thousand of dollars for the cell phone?

A       That sounds right.

Q       And, then, I think we heard in the audio tape that there is a discussion about the drugs that had been brought in involving meth and weed; correct?

A       Yes.

Q       And then, at some point, though, Anthony Brown is not going to -- didn't give you the information of the identity of the deputy; correct?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

A    That's correct.

Q    And he talks about actually even more than one deputy, he talks about deputies, plural; isn't that right?

A    Yes.

Q    And he didn't give you the identity of those additional deputies; is that correct?

A    No.  He didn't name any names.

Q    And, in fact, he talks about even other inmates being involved with bringing in either cell phones or narcotics; correct?

A    Yes.

Q    And, at that time, he says he will make a deal with you; isn't that right?

A    Yes.

Q    And the deal is that he wants a couple of things. He wants a cheeseburger.  He wants fries.  He wants a soda, and he wants a cigarette.  And in exchange for that, he will provide you with additional information; is that correct?

A    That is correct.

Q    At the time, he didn't confirm that he was working with what he called the feds in that particular interview.  That is the August 19th interview; correct?

A    I don't remember.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Q    And he didn't confirm that CJ was an FBI undercover agent; isn't that right?

A    That is correct.  He did not.

Q    In fact, the belief that you had after that interview is that CJ was working was working with Anthony Brown, but you didn't know if he was an FBI undercover agent or just someone the FBI was looking at as well; correct?

A    That is fair.  That's correct.  Yes.

Q    So at the end of that interview, you didn't know how many deputies were involved with Anthony Brown; correct?

A    Correct.

Q    You didn't know how many inmates were involved as well?

A    Correct.

Q    You didn't know how much contraband had been brought in, how many cell phones, how much narcotics, stuff like that; is that correct?

A    That's correct.

Q    You didn't know how long the contraband had been brought in, whether it was a month or going back years; is that correct?

A    Correct.

Q    And you didn't know, generally, how big a problem

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

you were facing in connection with the Anthony Brown situation; correct?

A    Correct.

Q    Now, Anthony Brown doesn't say at this particular interview, and I am focusing you on this first interview on August 19th, 20011.  He doesn't doesn't make any allegations about excessive force by the deputies in this particular interview; is that correct?

A    I don't remember.

Q    Would it help refresh your recollection to see the transcript of the August 19th, 2011 interview to see if he made any allegations about excessive force by deputies?

A    Yes.

MR. HOCHMAN:  May Exhibit 72, if the witness may look at Exhibit 72 to refresh his recollection, your Honor?

MR. FOX:  Objection, your Honor.  May we have a brief sidebar on this, please?

THE COURT:  Yes.

(From 9:16 to 9:18, the proceedings, Page 913, were conducted under seal.)

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

(The following proceedings were resumed in open court in the presence of the jury:)

Q   BY MR. HOCHMAN: Mr. Manzo, would it refresh your recollection to review the transcript of the entire August 19th, 2011 interview?

A    Yes.

MR. HOCHMAN:  I am going to present Defense Exhibit 535 to the witness, your Honor.

May I approach?

THE COURT:  Yes.

MR. HOCHMAN:  Thank you.

(Pause in proceedings.)

THE COURT:  Ladies and gentlemen, we are going to take our first break of the morning.  Again, I want to remind you until this trial is over, you are not to discuss this case with anyone including your fellow jurors, members of your family, people involved in the trial or anyone else.  Nor are you allowed to permit others to discuss the case with you.

If anyone approaches you and tries to talk with you about this case, please let me know about it immediately.  Do not read or listen to any news reports or other accounts about the trial.

Finally, you are reminded to keep an open mind until all of the evidence has been received, you have

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

heard the arguments of counsel, the instructions of the court and the views of your fellow jurors.

If you need to speak with me, simply give a note to the clerk.  We are going to come back at 35 past the hour.

(The following proceedings were held outside the presence of the jury:)

THE COURT:  Does anybody have an objection to during the break the witness being allowed to review this transcript?

MR. FOX:  No, your Honor.

MR. HOCHMAN:  No, your Honor.

THE COURT:  All right.  You can step down.  You can take that with you.

(Witness exits the courtroom.)

THE COURT:  So, Mr. Hochman, for this procedure where somebody has exercised their constitutional right to go to trial then found guilty by a jury and you say that you have heard of people subsequently coming in and then changing their plea to guilty, do you have a rule that allows that procedure?

MR. HOCHMAN:  A rule that would allow it, your Honor?  I think that at any point a defendant can come in and say I am guilty.

THE COURT:  Do you have a case in which wherever

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

that has transpired?

MR. HOCHMAN:  I can tell you I would recommend it to a client.

THE COURT:  No.  Mr. Hockman, let me tell you, Mr. Hochman, this is not the first time that you have -- I have found that you are trying to mislead this jury.  And I intend to instruct this jury with regard to this last one.

So I am proposing something like there is no rule or procedure for a defendant who has exercised his constitutional right to a trial by jury and is then found guilty to change his -- to then change his plea to guilty.  And no inference -- you are not to consider that, and there is to be no inference drawn from a witness not changing his plea to guilty after having been found guilty by a jury.

So if you want to suggest something, that is fine.  If the government wants to suggest something, that is fine.  But we are going to start cleaning up these problems.

THE COURT:  All right.  See everybody at 35 after.

(Recess from 9:25 a.m. to 9:35 a.m.)

CERTIFICATE


I hereby certify that pursuant to Section 753, Title 28,

United States Code, the foregoing is a true and correct

transcript of the stenographically reported proceedings held

in the above-entitled matter and that the transcript page

format is in conformance with the regulations of the

Judicial Conference of the United States.

Date:  February 28, 2017


 /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**MR. FOX: [30]**   855/10 856/3 856/11 856/14 856/18 859/14 861/6 861/23 863/19 863/24 866/1 866/13 867/16 868/1 869/24 870/6 874/1 874/5 875/8 875/12 880/8 881/4 881/8 881/17 890/2 890/7 903/7 906/4 912/17 915/10
**MR. HOCHMAN: [26]**   855/15 856/15 859/18 862/1 863/22 865/15 865/25 866/11 867/18 870/1 874/3 875/10 880/11 880/14 902/13 902/17 902/21 903/4 906/1 906/6 912/14 914/6 914/10 915/11 915/21 916/1
**THE CLERK: [1]**   855/7
**THE COURT: [37]**
**THE REPORTER: [2]**   862/22 874/15
**THE WITNESS: [2]**   862/23 874/16

**$**

**$13,000 [1]**   858/21
**$2,000 [1]**   909/9
**$4,000 [1]**   909/13

**'**

**'15 [2]**   885/10 885/11

**-**

**-and [3]**   853/4 853/5 853/11

**/**

**/s [1]**   917/12

**0**

**06:00 [2]**   857/9 857/9

**1**

**10 [1]**   881/24
**1000 [1]**   862/15
**10:00 a.m [1]**   908/8
**10:30 [1]**   862/10
**11 [7]**   862/10 862/21 862/21 862/24 862/25 862/25 870/6
**12 [1]**   858/21
**12-hour [2]**   857/8 857/18
**12:00 [1]**   857/9
**12th [1]**   853/6
**133 [8]**   854/9 859/3 859/5 859/7 859/7 859/8 859/12 859/16
**134 [7]**   854/9 859/3 859/4 859/5 861/9 861/25 862/5
**135 [6]**   854/10 859/3 859/4 859/5 863/8 863/21
**14 [1]**   876/17
**15 [3]**   882/3 882/7 882/11
**155 [5]**   854/11 868/23 868/24 870/1 870/9
**16-66 [1]**   852/8
**16-66A [1]**   855/8
**1601 [1]**   853/11
**17 [3]**   906/2 906/3 906/4
**189 [1]**   878/16
**18:00 [2]**   857/9 857/9
**18th [7]**   880/3 901/20 903/2 903/16 906/10 907/9 907/22
**195 [1]**   901/19
**196144 [1]**   879/2
**19th [12]**   888/12 888/25 901/20 903/2 903/16 908/3 908/7 908/19 910/24 912/6 912/11 914/5

**2**

**2-year [3]**   882/10 886/4 886/9
**20011 [1]**   912/6
**2005 [1]**   891/11
**2009 [2]**   864/19 891/17
**2011 [19]**   864/19 874/20 878/10 878/25 879/17 880/3 880/23 887/24 888/17 888/20 890/7 890/12 891/2 901/16 903/2 907/9 908/7 912/11 914/5
**2012 [3]**   878/25 879/17 880/3
**2013 [1]**   880/19
**2014 [3]**   876/17 881/14 886/3
**2016 [5]**   882/21 883/23 883/25 884/2 886/13
**2017 [7]**   852/17 855/1 885/9 885/12 885/15 885/19 917/10
**2050 [1]**   853/12
**20th [4]**   871/5 872/5 888/12 889/1
**211265 [1]**   879/1
**21st [2]**   901/20 903/16
**22nd [1]**   860/18
**235124 [1]**   879/3
**23rd [3]**   860/15 860/20 860/21
**24 [3]**   862/17 864/4 877/8
**243 [1]**   864/20
**24th [2]**   875/6 875/15
**25th [1]**   874/20
**27 [1]**   877/21
**28 [5]**   852/17 855/1 857/4 917/4 917/10
**2855633 [1]**   860/2
**2856795 [1]**   860/6
**28th [1]**   879/17
**29th [1]**   879/17
**2:00 [1]**   860/24
**2nd [3]**   869/1 885/10 885/11

**3**

**3,000 [1]**   890/24
**312 [2]**   852/22 853/6
**35 [13]**   876/24 877/9 877/9 877/13 877/17 884/6 884/8 884/17 884/22 885/22 886/7 915/4 916/21
**3rd [1]**   870/8

**4**

**40 [2]**   857/16 858/5
**400 [2]**   907/15 907/20
**401048 [1]**   879/2
**401549 [1]**   879/2
**423 [1]**   892/4
**436 [1]**   852/22

**5**

**519066 [1]**   879/3
**523 [5]**   854/12 902/15 902/19 902/25 903/6
**535 [1]**   914/8

**6**

**60 [1]**   900/7
**61 [5]**   854/11 873/17 873/17 873/19 874/3
**66 [1]**   852/8
**66A [1]**   855/8
**69 [2]**   864/19 864/21
**6:54 [1]**   874/20

**7**

**72 [2]**   912/15 912/16
**7500 [1]**   859/1
**753 [1]**   917/4

**8**

**8,000 [1]**   859/1
**8/24 [1]**   864/4
**8/31/11 [1]**   862/10
**8064 [1]**   857/13
**815-8064 [1]**   857/13
**857 [1]**   854/5
**859 [2]**   854/9 854/9
**86 [7]**   854/10 866/22 867/1 867/11 867/18 867/25 868/3
**861 [1]**   854/9
**862 [1]**   854/9
**863 [1]**   854/10
**864 [1]**   854/10
**866 [1]**   854/10
**867 [1]**   854/10
**868 [1]**   854/11
**87 [4]**   866/23 867/22 868/4 868/4
**870 [1]**   854/11
**873 [1]**   854/11
**874 [1]**   854/11
**880 [1]**   854/6
**897 [1]**   895/25
**898 [1]**   896/1
**8:00 [1]**   855/2
**8:00 a.m [3]**   861/6 908/3 908/7
**8:58 [1]**   895/25
**8th [1]**   900/8

**9**

**9/14/11 [2]**   862/21 862/24
**9/2 [1]**   867/3
**9/21/11 [2]**   862/21 862/25
**9/28/11 [1]**   862/25
**9/3/11 [1]**   870/6
**90 [1]**   900/7
**90012 [2]**   852/22 853/6
**902 [1]**   854/12
**903 [1]**   854/12
**90404 [1]**   853/12
**909 [1]**   857/13
**913 [1]**   912/21
**96 [2]**   858/12 858/14
**9858 [2]**   852/21 917/12
**9:00 [1]**   895/25
**9:02 p.m [3]**   906/10 907/9 907/22
**9:16 [1]**   912/21
**9:18 [1]**   912/21
**9:25 [1]**   916/22
**9:35 [1]**   916/22
**9th [2]**   885/9 885/12

**A**

**a.m [7]**   855/2 861/6 908/3 908/7 908/8 916/22 916/22
**AB [1]**   864/4
**able [3]**   893/6 904/7 905/12
**about [32]**
**above [2]**   879/4 917/7
**above-entitled [1]**   917/7
**ABRAMS [2]**   853/11 855/17
**Absolutely [1]**   889/21
**access [1]**   893/2
**accomplished [1]**   857/14
**according [2]**   860/20 874/25
**accounts [1]**   914/23
**accurate [2]**   869/15 873/24
**accurately [2]**   867/11 867/24
**acronym [2]**   857/21 864/12
**actually [24]**   860/16 878/17 882/10 883/1 886/8 888/15 891/24 892/13 893/13 894/15 894/20 899/5 900/19 901/15 903/10 903/15 905/7 906/3 906/22 907/5 908/10 908/23

**A**

actually... [2]  909/13 910/2
add [2]  856/7 869/1
adding [1]  856/5
additional [3]  903/21 910/7 910/19
address [1]  874/8
admission [6]  859/15 861/24 863/20 867/17 869/25 874/2
affiliated [1]  903/21
after [16]  860/25 864/16 869/23 871/5 872/5 872/20 874/12 875/16 877/22 881/16 882/19 882/19 883/25 911/4 916/15 916/21
again [10]  857/4 857/12 861/25 863/21 883/15 888/23 891/21 901/24 902/23 914/14
against [2]  883/7 892/10
agency [1]  904/25
agent [15]  855/14 860/14 861/7 862/5 863/25 876/9 876/9 879/9 902/4 902/8 902/10 906/5 906/9 911/2 911/7
agents [4]  874/15 874/17 874/23 886/25
ago [1]  887/3
agree [1]  882/23
agreed [1]  885/14
agreement [1]  861/25
agreements [1]  876/18
ahead [1]  887/22
all [19]  855/20 856/17 856/23 857/12 857/13 859/18 859/21 862/16 862/20 863/8 864/20 868/9 872/6 878/24 885/11 892/2 914/25 915/13 916/21
allegations [5]  872/11 872/12 874/22 912/7 912/12
alleges [1]  862/18
allow [2]  885/19 915/22
allowed [2]  914/18 915/9
allows [3]  884/18 893/2 915/21
already [2]  872/4 876/25
also [17]  855/13 884/1 888/1 888/6 888/7 891/16 893/10 895/19 899/14 899/21 903/1 903/19 904/21 905/13 907/14 909/2 909/6
always [1]  857/10
am [10]  857/3 868/25 870/10 875/9 876/22 885/25 912/5 914/7 915/24 916/9
America [2]  852/6 855/9
amount [1]  909/15
analyst [2]  905/12 905/17
ANDERSON [1]  852/3
ANGELES [6]  852/16 852/22 853/6 855/1 874/20 874/23
another [2]  860/6 884/1
answered [5]  900/19 900/24 901/2 901/15 901/17
Anthony [38]
anticipation [1]  884/25
any [27]  855/25 859/18 865/19 867/9 870/16 872/12 872/21 872/25 876/3 876/18 877/2 877/13 877/16 877/25 878/5 883/6 886/17 888/16 888/19 900/18 903/7 903/21 910/8 912/6 912/12 914/22 915/23
anybody [1]  915/8
anymore [1]  864/23
anyone [3]  914/16 914/18
anything [7]  856/23 860/17 865/22 874/17 875/17 876/21 885/17
appeal [1]  882/15
appealed [1]  882/13
appearance [2]  883/9 883/16
appearances [2]  853/1 855/10
appointment [1]  893/25
approach [3]  902/16 902/23 914/9
approaches [1]  914/20
approximately [3]  858/10 861/23 866/15
April [4]  878/3 882/21 883/23 883/25
are [37]
arguments [1]  915/1
armed [3]  891/17 891/21 891/25
armored [1]  891/12
around [6]  858/21 859/1 875/15 875/16 875/25 876/3
arrange [1]  907/5
article [3]  875/2 875/10 875/16
as [23]  858/11 859/13 859/19 861/21 864/21 866/12 874/18 874/24 878/23 880/20 885/1 886/25 887/23 888/6 889/22 893/14 894/6 895/19 899/11 904/6 906/12 911/7 911/14
ask [2]  870/10 905/12
asked [5]  872/21 878/24 887/17 887/18 887/21
asking [2]  887/23 906/5
assigned [2]  857/10 868/15
Assistant [2]  864/14 864/15
associated [2]  899/14 900/20
assume [1]  884/24
assumed [1]  899/25
assuming [1]  894/11
attempted [1]  901/3
Attorney [3]  853/5 864/14 864/15
Attorney's [1]  887/10
audio [5]  868/7 888/6 888/8 901/19 909/19
August [24]  860/18 866/16 878/9 880/22 887/24 888/12 888/17 888/20 888/25 889/1 890/6 890/11 891/2 900/8 906/10 907/9 907/22 908/3 908/7 908/19 910/24 912/6 912/11 914/5
August 18th [3]  906/10 907/9 907/22
August 19th [9]  888/12 888/25 908/3 908/7 908/19 910/24 912/6 912/11 914/5
August 20th [1]  889/1
August 22nd [1]  860/18
AUSA [3]  853/5 864/9 864/10
authorities [1]  874/21
aware [1]  878/20

**B**

Baca [11]  852/9 855/9 855/18 871/6 872/7 878/13 888/12 888/15 888/20 890/1 890/21
Baca's [2]  868/5 884/14
back [17]  856/8 859/17 862/1 863/22 865/9 865/23 868/18 872/19 873/1 877/5 878/9 891/10 899/18 904/16 905/17 911/22 915/4
baggies [3]  895/7 895/9 895/15
balloons [3]  895/11 895/12
back [2]  891/21 891/25
basement [1]  870/25
basically [5]  857/22 865/11 866/18 866/19 870/14
be [43]
beatings [3]  874/11 874/14 874/22
became [1]  871/14
because [5]  866/19 892/10 892/16 893/6 894/11
been [21]  857/14 863/4 866/10 872/4 876/1 876/12 876/25 885/24 891/5 892/6 900/17 903/2 903/16 903/21 904/1 909/4 909/20 911/17 911/21 914/25 916/15
before [9]  857/18 860/17 863/14 877/25 883/11 883/20 888/3 904/3 906/2
began [1]  876/11
beginning [1]  887/4
behalf [4]  855/12 855/17 877/11 884/15
behavior [1]  865/20
behind [1]  868/4
being [4]  865/4 893/25 910/10 915/9
belief [1]  911/4
beliefs [1]  894/3
believe [7]  866/9 885/8 885/15 889/4 893/23 895/6 901/19
below [1]  864/18
beneath [4]  859/25 860/5 874/12 874/14
benefit [1]  878/5
benefits [1]  877/25
besides [2]  907/18 907/19
between [2]  888/16 901/20
big [2]  863/5 911/25
binder [4]  866/22 868/23 868/23 873/16
bit [2]  856/7 904/5
blocked [1]  869/12
blue [1]  901/6
board [1]  875/9
BOCKIUS [1]  853/10
book [2]  868/5 868/6
booking [2]  860/4 860/5
both [5]  866/10 880/22 880/25 881/4 881/11
bottom [1]  907/17
Boulevard [1]  853/11
bow [1]  876/2
boxes [1]  901/2
BRANDON [2]  853/4 855/11
Bravo [4]  872/7 872/11 872/21 872/22
Bravo's [2]  873/10 873/11
break [2]  914/14 915/9
BRIANNA [2]  853/11 855/17
brief [1]  912/19
briefing [8]  862/10 862/13 863/3 863/3 863/5 863/6 871/16 871/20
briefly [1]  861/8
bring [5]  856/17 893/20 901/8 908/24 909/13
bringing [2]  889/7 910/10
brought [11]  889/5 889/8 908/14 908/16 908/20 908/20 909/3 909/6 909/21 911/18 911/22
Brown [47]
Brown's [6]  895/18 903/11 903/22 904/9 904/12 907/11
brutality [2]  864/9 864/17

Case 2:16-cr-00066-PA   Document 414   Filed 08/11/17   Page 66 of 74   Page ID #:9544

**B**

**building [2]**  887/9 887/11
**bureau [1]**  871/1
**bus [2]**  907/2 907/6
**bypass [1]**  893/6
**bypasses [1]**  892/16

**C**

**CA [2]**  853/6 853/12
**calendar [3]**  856/6 861/8 870/7
**calendars [1]**  876/10
**CALIFORNIA [5]**  852/2 852/16 852/22 855/1 905/19
**call [11]**  893/4 893/7 900/22 900/24 901/8 901/9 901/16 901/17 903/15 905/24 906/1
**called [7]**  876/23 892/19 893/11 900/17 901/4 904/1 910/23
**calls [10]**  892/24 895/20 900/20 901/11 901/15 901/16 901/20 902/7 903/2 903/17
**came [4]**  871/10 872/4 873/2 873/2
**can [37]**
**can't [5]**  857/21 861/19 869/21 887/5 903/23
**cancelled [1]**  857/14
**cap [2]**  858/11 858/12
**Captain [2]**  871/12 871/17
**car [1]**  891/12
**career [1]**  891/8
**Carey [2]**  871/13 871/17
**CARPers [1]**  862/20
**CARPs [3]**  857/13 857/20 857/20
**case [7]**  882/13 904/25 905/8 914/16 914/19 914/21 915/25
**category [2]**  879/22 880/7
**caught [1]**  892/7
**cell [48]**
**cells [1]**  892/25
**CENTRAL [7]**  852/2 865/9 865/23 868/18 874/18 890/6 891/1
**certain [4]**  888/1 894/7 894/19 895/20
**CERTIFICATE [1]**  917/1
**certify [1]**  917/4
**cetera [1]**  862/17
**change [4]**  868/19 881/16 916/12 916/12
**changed [2]**  881/3 881/7
**changing [2]**  915/20 916/15
**charge [2]**  881/22 881/25
**charged [1]**  880/19
**charges [5]**  862/19 880/25 881/4 881/8 881/12
**check [2]**  858/20 901/2
**cheeseburger [1]**  910/17
**chooses [1]**  884/19
**cigarette [1]**  910/18
**circle [1]**  901/7
**City [1]**  870/21
**civil [3]**  875/10 905/18 905/22
**civilians [1]**  890/25
**CJ [8]**  899/9 899/15 899/22 899/25 899/25 908/23 911/1 911/5
**CJ's [1]**  899/10
**claims [2]**  909/6 909/11
**cleaning [1]**  916/19
**clerk [3]**  902/16 902/23 915/4
**client [1]**  916/3
**clip [1]**  868/21

**Cloverfield [1]**  853/11
**cocaine [4]**  894/22 895/7 895/10
**code [3]**  864/25 865/1 917/5
**come [5]**  871/23 886/17 904/16 915/4 915/23
**comes [1]**  901/1
**coming [2]**  873/14 915/19
**commander [2]**  906/18 906/20
**Commerce [1]**  870/21
**commit [1]**  891/14
**committed [2]**  891/10 891/17
**complaints [2]**  862/17 864/19
**completed [1]**  857/16
**concluded [1]**  855/22
**condition [2]**  859/12 861/21
**conduct [2]**  878/11 878/14
**conducted [2]**  896/1 912/22
**confer [2]**  875/12 875/13
**Conference [1]**  917/9
**confirm [2]**  910/22 911/1
**conformance [1]**  917/8
**confronting [1]**  876/8
**connection [4]**  888/13 888/24 907/12 912/1
**consider [4]**  877/11 877/14 885/3 916/13
**considered [1]**  885/20
**conspiracy [2]**  880/20 881/22
**constitutional [2]**  915/17 916/11
**contact [1]**  908/23
**contacts [1]**  888/23
**contain [2]**  902/25 903/1
**contained [1]**  878/20
**contains [2]**  868/24 873/16
**contents [2]**  894/15 894/18
**continue [2]**  856/8 865/15
**continued [1]**  885/11
**contraband [3]**  893/20 911/17 911/21
**conversation [1]**  867/12
**conveyed [1]**  900/11
**convicted [4]**  876/12 881/11 881/16 886/3
**conviction [1]**  877/23
**cooperate [1]**  907/20
**cooperated [1]**  885/23
**cooperates [1]**  870/15
**cooperating [1]**  908/11
**cooperation [3]**  876/22 885/1 885/20
**copied [1]**  873/21
**copy [8]**  869/5 869/15 873/10 873/11 873/12 873/12 873/24 902/20
**core [3]**  889/22 890/1 890/5
**correct [178]**
**correctly [2]**  888/10 901/7
**could [18]**  870/4 870/8 873/16 874/6 879/8 879/9 883/6 884/11 884/15 885/23 887/22 888/7 892/13 893/17 893/20 902/18 906/8 906/9
**couldn't [3]**  884/13 884/23 895/3
**counsel [8]**  853/1 855/10 855/13 861/25 875/12 875/13 895/24 915/1
**count [2]**  880/21 880/21
**counts [1]**  880/20
**County [2]**  874/11 874/23
**couple [1]**  910/16
**court [12]**  852/1 852/21 883/1 883/15 884/18 884/22 885/4 886/8 886/18 902/21 914/2 915/2
**court-ordered [1]**  886/18
**courtroom [1]**  915/15

**cover [1]**  879/16
**covering [1]**  879/24
**CR [2]**  852/8 855/8
**Craig [11]**  871/14 872/17 872/20 872/23 873/13 873/20 875/3 875/18 875/21 875/25 876/4
**create [1]**  861/14
**created [3]**  859/10 859/13 861/22
**crime [1]**  891/19
**criminal [2]**  862/19 891/8
**Cross [3]**  854/6 880/11 880/17
**Cross-Examination [3]**  854/6 880/11 880/17
**CRR [1]**  917/12
**CSR [2]**  852/21 917/12
**currently [1]**  876/18
**custodian [1]**  878/23
**custody [3]**  857/17 857/23 906/20
**CYA [1]**  859/8

**D**

**dangerous [1]**  891/7
**dash [2]**  864/4 864/4
**date [7]**  860/14 867/7 870/5 885/15 887/5 891/19 917/10
**dated [1]**  907/8
**day [5]**  852/14 857/8 867/13 881/3 886/4
**days [3]**  872/5 900/7 904/3
**dead [1]**  870/15
**deal [2]**  910/13 910/16
**December [3]**  880/19 884/2 887/4
**decide [2]**  876/23 885/25
**decided [3]**  865/14 873/8 873/8
**deciding [1]**  885/21
**declaration [1]**  878/19
**defendant [5]**  852/9 853/9 855/17 915/23 916/10
**defense [7]**  884/14 884/15 902/15 902/18 902/25 903/5 914/7
**delivery [1]**  909/9
**demonstrative [1]**  855/21
**denied [2]**  882/16 882/18
**department [9]**  858/11 870/16 878/11 889/23 890/17 890/25 893/2 905/3 905/7
**deputies [12]**  857/10 858/4 862/18 869/22 874/23 889/4 890/25 910/3 910/7 911/11 912/7 912/13
**deputy [21]**  859/11 860/22 862/22 862/25 863/12 866/4 866/9 867/2 871/12 872/7 872/11 873/21 875/4 904/19 908/15 909/2 909/6 909/13 909/16 909/25 910/3
**details [2]**  876/13 909/10
**determine [6]**  877/15 893/3 900/6 904/8 904/11 905/25
**dial [1]**  899/11
**dialed [1]**  899/6
**did [54]**
**didn't [19]**  865/24 876/7 883/13 886/17 900/18 901/24 905/21 907/23 909/24 910/6 910/8 910/22 911/1 911/6 911/10 911/14 911/17 911/21 911/25
**different [2]**  901/1 909/8
**dignity [1]**  889/20
**Dimas [3]**  865/5 865/5 865/11
**direct [3]**  854/5 857/1

## D

direct... [1]   865/19
directly [3]   888/16 888/19
  888/25
discharged [1]   891/24
disciplinary [1]   862/19
disciplined [1]   878/10
discovered [1]   889/5
discuss [2]   914/16 914/19
discusses [1]   858/3
discussion [2]   868/21 909/20
display [1]   857/3
DISTRICT [3]   852/1 852/2
  852/4
division [2]   852/2 857/17
do [59]
documentation [1]   862/19
documents [1]   888/1
does [16]   861/1 864/16
  864/18 867/6 867/9 867/11
  867/24 870/11 870/12 879/16
  879/18 879/18 884/17 902/25
  908/11 915/8
doesn't [4]   907/19 912/4
  912/6 912/6
dollars [1]   909/17
don't [23]   855/24 860/17
  863/4 864/23 875/5 875/24
  876/1 884/24 885/17 889/7
  891/19 894/24 895/9 900/9
  902/9 902/12 902/12 903/18
  905/10 909/10 909/15 910/25
  912/9
done [3]   900/10 902/9 902/11
door [1]   875/22
down [17]   856/3 856/8 856/11
  862/23 865/3 871/10 872/20
  874/16 876/10 899/17 900/14
  903/24 904/4 904/7 905/13
  905/18 915/13
dramatic [1]   876/2
drawn [1]   916/14
drug [3]   895/13 895/14
  895/15
drugs [7]   893/20 894/24
  894/25 895/1 895/3 895/5
  909/20
due [4]   862/21 862/24 862/25
  863/1
during [13]   858/7 858/16
  862/12 863/3 871/19 883/6
  888/2 888/16 890/6 890/14
  891/25 908/10 915/9
duties [7]   861/15 889/11
  889/16 889/19 889/22 890/10
  890/14

## E

e-mail [16]   857/5 857/7
  859/9 866/7 866/8 866/11
  866/13 866/15 866/17 873/20
  873/24 874/8 874/9 875/2
  906/25 907/8
e-mails [3]   862/20 888/19
  903/1
each [3]   857/8 887/13 909/9
earlier [2]   872/2 872/7
early [2]   866/16 894/3
ecstasy [1]   894/23
EDDIE [2]   853/4 855/12
either [5]   876/1 881/8
  887/14 899/24 910/10
eligible [1]   857/18
else [4]   856/13 865/6 871/11
  914/18
employee [2]   867/10 879/6
employees [1]   889/15
end [5]   857/11 865/14 866/16

886/8 911/10
ended [2]   903/24 904/1
enforcement [3]   874/25 905/1
entire [1]   914/4
entirety [1]   855/23
entitled [1]   917/7
escape [3]   893/15 893/23
  894/4
et [1]   862/17
evaluation [2]   879/12 879/25
evaluations [1]   878/24
even [4]   884/22 906/22 910/2
  910/9
events [2]   878/9 887/23
eventually [7]   900/14 901/12
  904/7 904/16 905/16 905/16
  908/18
ever [4]   871/6 878/10 878/13
  881/7
every [2]   879/22 880/7
everybody [2]   871/23 916/21
EVID [1]   854/8
evidence [4]   878/17 903/5
  906/3 914/25
exact [2]   887/5 894/24
exactly [2]   857/21 889/11
examination [5]   854/5 854/6
  857/1 880/11 880/17
examples [1]   870/14
excessive [2]   912/7 912/12
exchange [1]   910/18
exchanged [1]   888/19
excuse [4]   867/3 879/18
  900/23 902/20
executives [1]   873/15
exercised [2]   915/17 916/10
exhibit [35]
exhibits [1]   859/2
exits [1]   915/15
exlain [1]   872/23
expanded [2]   870/25 889/13

## F

face [1]   881/24
faced [1]   881/20
facility [2]   857/23 889/15
facing [2]   882/4 912/1
fact [3]   905/11 910/9 911/4
fair [1]   911/9
falls [1]   906/21
family [1]   914/17
far [1]   874/24
Faturechi [1]   874/20
FBI [17]   855/13 870/14
  874/11 874/13 874/23 886/25
  901/12 903/15 904/22 905/1
  905/4 905/12 905/17 907/12
  911/1 911/6 911/7
FBI's [2]   880/22 904/16
FEBRUARY [3]   852/17 855/1
  917/10
federal [10]   862/15 865/1
  874/15 874/17 874/21 904/21
  904/24 904/25 905/9 905/12
feds [1]   910/23
fellow [2]   914/16 915/2
felony [1]   880/20
female [3]   901/22 902/1
  902/3
few [1]   868/8
figure [1]   899/24
file [8]   876/23 877/10 879/5
  884/9 884/12 884/13 884/15
  885/4
files [1]   877/16
final [1]   872/19
Finally [1]   914/24
find [2]   894/7 904/5
findings [1]   906/13

fine [4]   855/24 856/10
  906/03 916/19
first [18]   858/19 859/7
  860/16 863/5 863/6 864/1
  864/5 868/9 870/9 871/9
  875/1 878/19 894/14 901/10
  901/15 912/5 914/14 916/5
five [2]   852/14 881/21
five years [1]   881/21
Floor [1]   853/6
focus [2]   906/9 906/9
focusing [1]   912/5
following [6]   855/6 856/20
  878/25 899/1 914/1 915/6
force [26]   861/13 861/16
  861/18 861/20 862/17 862/18
  863/5 863/6 863/12 863/19
  864/19 864/20 870/18 870/20
  870/24 871/9 871/11 871/15
  875/21 904/22 904/24 905/9
  905/12 905/13 912/7 912/12
foregoing [1]   917/5
format [1]   917/8
forward [1]   875/2
found [12]   889/3 894/1
  894/19 899/18 900/8 901/12
  908/1 908/2 915/18 916/6
  916/11 916/16
Foundation [3]   865/16 866/1
  866/12
four [1]   857/8
FOX [5]   853/4 854/5 855/11
  857/2 886/20
fries [1]   910/17
front [1]   866/21
full [1]   860/16
fully [1]   870/15
further [1]   880/10

## G

gave [12]   869/21 869/21
  869/22 869/24 870/14 871/21
  883/6 887/21 894/8 902/10
  902/12 904/14
general [2]   858/12 890/18
generally [2]   870/11 911/25
gentleman [2]   899/9 904/17
gentlemen [2]   856/22 914/13
Gerard [2]   879/2 879/15
get [7]   857/13 861/16 874/24
  877/16 883/1 894/12 903/11
getting [2]   900/1 905/10
girlfriend [1]   904/11
give [8]   883/2 883/16 886/18
  887/5 902/7 909/24 910/6
  915/3
giving [1]   887/14
go [10]   856/3 856/11 864/5
  865/5 865/8 879/21 887/13
  900/4 900/4 915/18
goes [2]   863/22 906/12
going [22]   856/4 856/5 856/9
  857/3 859/16 865/15 868/25
  870/10 872/18 874/24 876/10
  877/15 878/9 878/17 904/16
  907/1 909/24 911/22 914/7
  914/13 915/4 916/19
good [8]   855/11 855/15
  855/16 855/19 856/22 872/18
  875/25 880/5
got [8]   859/6 866/10 868/8
  872/19 875/22 883/15 885/11
  892/3
government [28]   853/3 859/16
  861/25 863/21 867/18 867/25
  870/1 873/19 877/10 878/16
  882/6 882/20 883/1 883/10
  883/15 884/5 884/9 885/2
  885/3 885/14 885/17 885/21

## G

**government... [6]** 886/7 886/13 886/17 887/17 888/3 916/18
**Government's [1]** 874/3
**grand [7]** 862/15 877/22 878/1 883/9 883/11 883/16 883/20
**grant [1]** 886/8
**Greg [2]** 861/3 906/15
**Gregory [2]** 879/1 879/8
**ground [1]** 873/7
**guarded [1]** 860/21
**guarding [1]** 868/19
**guess [1]** 855/20
**guilty [11]** 880/25 881/4 881/8 881/17 915/18 915/20 915/24 916/12 916/13 916/15 916/16
**gun [3]** 891/14 891/22 891/24
**guns [1]** 893/21

## H

**had [40]**
**hadn't [1]** 908/20
**Hailey [1]** 866/11
**half [1]** 871/5
**handwriting [2]** 859/23 863/15
**hanging [1]** 907/21
**happen [1]** 865/23
**happened [6]** 860/19 870/23 871/4 872/14 873/6 901/20
**Happy [2]** 866/2 866/14
**has [10]** 866/23 870/14 877/12 893/10 906/22 907/12 914/25 915/17 916/1 916/10
**have [54]**
**haven't [1]** 886/4
**having [2]** 886/17 916/15
**Hayley [1]** 866/4
**he [79]**
**head [1]** 907/21
**headquarters [2]** 870/22 870/25
**health [1]** 893/25
**heard [4]** 905/17 909/19 915/1 915/19
**Hearsay [1]** 867/19
**held [6]** 855/6 856/20 873/7 873/7 915/6 917/6
**help [3]** 888/2 905/13 912/10
**her [6]** 903/24 903/25 903/25 904/4 904/7 904/8
**here [5]** 856/18 887/7 887/8 887/10 901/5
**hereby [1]** 917/4
**heroin [3]** 894/22 895/11 909/8
**hers [1]** 904/6
**highlight [1]** 860/20
**highlighted [1]** 901/6
**highlighting [2]** 860/14 860/17
**him [18]** 865/22 866/19 868/19 870/15 876/8 888/24 888/25 889/7 889/8 894/1 907/20 908/14 908/16 908/19 908/20 908/21 909/3 909/8
**himself [2]** 867/9 890/2
**his [17]** 861/4 863/14 863/16 863/16 865/11 866/20 867/10 873/5 873/7 900/6 905/13 907/21 912/16 916/10 916/12 916/12 916/15
**hit [1]** 893/17
**HOCHMAN [6]** 853/10 854/6 855/17 880/18 915/16 916/5

## I

**Hockman [1]** 916/4
**Honor [40]**
**HONORABLE [1]** 852/3
**hoping [3]** 876/21 876/23 885/1
**hour [4]** 857/8 857/18 908/6 915/5
**hours [5]** 858/5 858/12 858/14 862/10 862/15
**how [19]** 858/10 858/18 858/24 863/13 867/4 867/15 869/17 869/20 877/7 886/12 900/24 905/10 911/11 911/14 911/17 911/18 911/18 911/21 911/25
**However [1]** 857/10
**huge [1]** 901/1
**hundred [3]** 900/18 901/10 901/15

**I'm [3]** 862/23 882/17 902/22
**I.D [1]** 854/8
**i.e [1]** 862/20
**ICIB [6]** 861/19 863/6 863/18 868/14 870/18 870/22
**ICIB's [1]** 870/19
**idea [2]** 875/25 907/1
**identification [1]** 902/15
**identify [3]** 867/6 867/9 904/6
**identity [2]** 909/25 910/6
**II [1]** 852/15
**immediately [2]** 904/3 914/22
**immunity [6]** 883/2 883/5 883/16 883/19 883/22 886/18
**important [2]** 857/5 857/6
**imprisonment [4]** 881/21 881/25 882/3 892/4
**including [3]** 862/16 909/7 914/16
**indicate [1]** 873/13
**individuals [2]** 878/18 879/1
**inference [2]** 916/13 916/14
**info [4]** 862/21 862/24 862/25 863/1
**information [9]** 866/3 866/6 895/17 895/19 895/23 900/11 900/13 909/24 910/19
**initial [1]** 901/25
**initially [5]** 861/15 870/21 871/17 885/10 907/1
**injury [1]** 862/17
**inmate [12]** 862/21 862/24 874/22 874/24 891/4 892/11 892/20 892/20 892/24 893/4 893/9 893/10
**inmates [10]** 857/24 860/9 862/16 862/17 862/19 889/14 889/20 890/24 910/9 911/14
**inside [2]** 874/25 892/25
**insight [1]** 870/13
**instead [4]** 857/22 857/24 882/11 885/24
**instruct [1]** 916/7
**instructions [3]** 872/25 873/14 915/1
**intend [1]** 916/7
**interview [15]** 867/3 867/16 867/23 868/5 908/6 908/10 910/24 910/24 911/5 911/10 912/5 912/5 912/8 912/11 914/5
**interviewing [1]** 867/7
**interviews [2]** 872/16 888/3
**introduced [1]** 871/22
**investigated [1]** 878/13
**investigating [2]** 874/21 904/15

## J

**investigation [11]** 862/15 894/7 904/17 870/23 871/22 874/19 880/22 888/13 888/24 894/6 901/25
**investigative [1]** 906/20
**investigator [2]** 905/18 905/22
**investigator's [1]** 857/25
**involved [5]** 900/1 910/10 911/11 911/14 914/17
**involving [4]** 876/4 908/14 908/15 909/21
**is [215]**
**isn't [3]** 910/3 910/14 911/2
**issue [1]** 855/20
**it [161]**
**Item [1]** 855/8
**ITMS [4]** 892/20 892/23 893/9 900/25

**jail [13]** 862/20 863/1 865/9 865/23 868/18 874/18 890/6 890/22 891/1 891/16 892/11 892/14 900/22
**jail's [1]** 892/17
**jails [8]** 874/11 874/23 889/9 889/12 890/18 892/7 906/16 906/23
**January [4]** 885/9 885/10 885/11 885/12
**January 2nd [2]** 885/10 885/11
**January 9th [2]** 885/9 885/12
**JAUREGUI [2]** 853/4 855/12
**job [3]** 889/11 890/10 890/14
**John [3]** 859/24 860/1 860/12
**joint [2]** 904/21 904/24
**judge [4]** 852/4 877/11 877/18 882/10
**Judicial [1]** 917/9
**July [7]** 876/17 880/3 880/3 901/16 901/20 903/2 903/16
**July 18th [4]** 880/3 901/20 903/2 903/16
**July 6 [1]** 880/3
**jurors [2]** 914/17 915/2
**jury [25]** 852/14 855/7 856/2 856/17 856/21 857/4 857/6 862/15 868/3 874/6 877/22 878/1 878/19 883/9 883/11 883/16 883/20 899/2 914/2 915/7 915/18 916/6 916/7 916/11 916/16
**just [16]** 858/23 859/17 861/7 861/15 861/17 864/5 866/8 869/11 870/8 870/11 871/23 885/24 886/20 901/2 901/3 911/7
**justice [4]** 876/13 880/20 880/21 881/25
**Justin [1]** 872/22

## K

**KATIE [2]** 852/21 917/12
**keep [4]** 873/9 873/12 877/5 914/24
**keeping [2]** 890/18 890/21
**Kevin [1]** 860/7
**kicked [1]** 872/19
**kind [5]** 871/23 873/1 873/7 875/25 876/1
**King [1]** 860/7
**Kirk [4]** 904/17 904/19 905/8 905/17
**knew [4]** 871/24 890/10 892/3 892/6
**know [31]** 863/13 863/14

**K**

know... [29]  864/12 864/24 867/4 867/15 868/11 869/6 869/6 869/17 884/24 885/17 892/2 892/2 893/24 900/7 900/25 902/9 905/8 905/11 905/21 907/11 907/14 907/23 911/6 911/10 911/14 911/17 911/21 911/25 914/21

**L**

LA [3]  873/22 874/11 903/25
ladies [2]  856/22 914/13
last [4]  857/7 870/4 878/3 916/7
later [2]  902/3 904/2
law [4]  874/25 889/17 892/10 905/1
lawyer [1]  884/11
lay [2]  866/2 866/14
layers [1]  856/7
Lea [1]  855/14
lead [3]  900/3 900/4 900/13
learn [1]  901/24
learned [3]  891/4 891/7 902/3
least [1]  901/24
leave [3]  856/6 857/11 865/5
leaving [1]  855/25
led [1]  871/16
left [1]  870/15
legal [1]  868/22
Leroy [3]  852/9 855/9 855/17
less [1]  886/9
let [5]  856/2 865/19 895/24 914/21 916/4
Let's [5]  856/17 856/23 859/7 865/3 878/18
letter [8]  869/5 869/15 869/17 870/5 870/8 870/11 870/12 870/12
Levins [9]  869/24 871/13 871/18 871/19 872/18 872/20 873/21 875/3 879/3
LEWIS [1]  853/10
lieutenant [12]  869/24 871/13 871/13 871/18 872/18 872/20 873/21 875/3 875/24 902/13 906/13 906/15
like [7]  860/24 868/2 868/22 893/20 902/14 911/19 916/9
limine [1]  890/8
line [4]  857/24 862/9 864/18 907/17
link [1]  873/22
list [1]  901/1
listen [3]  901/8 901/9 914/22
listened [2]  867/5 868/21
listening [1]  867/16
little [1]  904/5
LIZABETH [2]  853/5 855/12
LLP [1]  853/10
loaned [3]  861/20 870/17 870/19
local [1]  905/1
located [4]  870/19 879/8 887/6 892/25
log [1]  859/8
long [8]  868/10 868/14 871/14 872/2 873/21 875/3 879/2 911/21
look [20]  859/7 860/16 861/9 862/4 862/6 863/8 866/21 868/22 868/23 870/4 873/16 878/16 879/9 879/24 880/6 894/15 895/19 899/5 902/18 912/16

**M**

looked [3]  894/19 895/23 899/5
looking [2]  894/18 907/14 911/7
looks [2]  860/24 879/17
LOS [6]  852/16 852/22 853/6 855/1 874/20 874/23
lower [5]  882/7 884/19 884/20 884/23 885/4

made [10]  865/22 868/10 883/5 895/20 900/24 901/16 903/15 905/24 906/1 912/12
magnet [4]  869/1 875/5 875/10 875/14
magnets [2]  856/5 875/8
mail [16]  857/5 857/7 859/9 866/7 866/8 866/11 866/13 866/15 866/17 873/20 873/24 874/8 874/9 875/2 906/25 907/8
mails [3]  862/20 888/19 903/1
make [5]  885/22 900/22 909/10 910/13 912/6
makes [2]  886/7 892/24
making [1]  872/10
man [3]  862/15 872/1 885/24
many [5]  886/12 887/17 911/11 911/14 911/18
MANZO [22]  854/4 856/18 857/3 859/2 862/4 862/7 865/4 865/19 867/22 868/8 868/25 870/4 870/10 870/17 875/15 876/11 879/3 879/22 880/7 880/19 899/3 914/3
March [5]  877/21 879/17 879/17 885/15 885/19
March 27 [1]  877/21
March 28th [1]  879/17
March 29th [1]  879/17
Maricela [2]  868/14 879/2
marijuana [4]  894/23 895/5 895/6 909/7
Marks [2]  876/9 902/4
matched [1]  879/6
mate [3]  903/22 904/9 904/12
Matt [1]  861/4
matter [1]  917/7
maximum [2]  881/21 881/24
may [12]  875/11 880/13 899/25 902/16 902/23 906/2 908/14 908/16 912/15 912/15 912/18 914/9
maybe [4]  859/1 871/5 887/3 887/4
MCJ [1]  869/1
MDC [1]  885/24
me [14]  865/19 867/3 869/21 869/22 872/21 877/6 879/18 886/1 895/24 900/23 902/20 914/21 915/3 916/4
mean [4]  861/1 865/13 869/7 887/8
means [2]  864/22 869/11
meet [1]  875/13
meeting [5]  862/10 862/12 871/9 871/11 908/19
meetings [6]  886/12 886/15 887/2 887/6 887/13 887/18
members [1]  914/17
memory [3]  887/22 888/2 888/7
Men's [6]  865/9 865/23 868/18 874/18 890/6 891/1
mention [1]  872/22
mentioned [8]  859/8 863/2 870/17 872/2 872/6 872/10

messages [5]  899/21 899/5 899/8 899/21 899/22
met [2]  886/20 888/11
meth [3]  895/2 895/4 909/21
methamphetamine [3]  894/23 895/2 909/7
MICKEY [2]  854/4 879/3
middle [2]  906/8 906/10
midnight [5]  857/8 857/9 860/24 861/2 861/6
might [3]  863/4 866/10 903/21
mind [1]  914/24
Mine [1]  862/8
minute [1]  875/11
misconduct [2]  874/19 874/22
mislead [1]  916/6
Misleading [2]  881/5 881/9
missed [1]  891/25
mission [1]  857/15
mmanzo7 [1]  874/7
moment [2]  867/20 880/9
monetary [1]  909/15
money [1]  909/16
Monica [1]  853/12
Monitoring [2]  892/20 893/9
Monterey [1]  871/2
month [4]  858/16 858/19 858/20 911/22
months [1]  877/8
more [3]  906/22 907/15 910/2
MORGAN [1]  853/10
morning [7]  855/11 855/15 855/16 855/19 856/22 908/2 914/14
most [4]  857/5 857/5 871/14 887/3
motion [13]  877/13 877/17 884/6 884/8 884/9 884/11 884/14 884/17 884/22 885/4 885/22 886/7 890/8
move [9]  859/15 861/24 863/20 866/19 867/17 869/25 874/2 885/14 903/5
moved [2]  868/18 870/24
moving [1]  885/19
Mr [6]  854/5 854/6 857/2 872/23 880/18 916/4
Mr. [44]
Mr. Baca [3]  871/6 872/7 878/13
Mr. Baca's [2]  868/5 884/14
Mr. Brown [8]  865/4 865/20 868/10 868/18 869/15 869/18 870/12 872/10
Mr. Craig [1]  873/13
Mr. Fox [1]  886/20
Mr. Hailey [1]  866/11
Mr. Hochman [1]  915/16
Mr. Hockman [1]  916/4
Mr. Kirk [1]  905/17
Mr. Levins [1]  871/19
Mr. Manzo [20]  856/18 857/3 859/2 862/4 862/7 865/4 865/19 867/22 868/8 868/25 870/4 870/10 870/17 875/15 876/11 879/22 880/7 880/19 899/3 914/3
Mr. Smith [4]  864/7 867/6 867/12 879/19
Ms. [1]  886/23
Ms. Rhodes [1]  886/23
much [9]  855/24 858/10 858/18 858/24 877/7 882/7 908/1 911/17 911/18
multiple [2]  856/5 856/10
must [1]  857/16
my [8]  857/12 861/13 873/7

**M**

**my... [5]**   874/9 876/22 877/10 877/11 886/2
**myself [6]**   859/11 860/22 866/9 871/12 880/1 885/23

**N**

**name [14]**   854/3 860/1 860/12 861/19 872/21 872/21 873/5 873/10 873/11 879/7 879/11 899/10 903/24 910/8
**named [2]**   899/9 904/17
**names [1]**   910/8
**narcotics [7]**   908/15 908/16 908/21 908/24 909/7 910/11 911/18
**narrowly [1]**   891/25
**NATHAN [2]**   853/10 855/16
**near [1]**   859/3
**need [2]**   856/13 915/3
**needed [3]**   861/16 890/11 894/6
**needs [3]**   855/22 856/3 856/11
**never [4]**   888/15 888/19 905/24 906/1
**new [1]**   872/3
**news [1]**   914/22
**next [9]**   857/17 862/6 864/5 875/22 880/6 886/2 899/4 900/4 908/2
**night [3]**   907/2 907/6 907/8
**no [33]**
**Noah [3]**   904/17 904/19 905/8
**nobody [1]**   901/15
**nonetheless [1]**   891/13
**noon [1]**   857/9
**North [3]**   852/22 853/6 853/12
**not [40]**
**note [2]**   869/9 915/4
**notebook [5]**   861/13 863/12 863/16 863/17 864/8
**notes [5]**   861/16 862/7 862/11 863/2 863/18
**nothing [3]**   860/19 876/20 907/20
**November [1]**   886/13
**now [36]**
**number [27]**   857/12 860/4 860/5 860/6 867/9 867/10 878/18 879/6 893/10 899/14 899/17 900/13 900/15 900/17 901/4 901/11 901/11 901/12 903/16 903/23 903/25 904/5 904/14 904/15 905/14 905/18 905/24
**numbers [3]**   859/25 899/5 899/8
**numerous [1]**   891/10
**nurse [4]**   908/14 908/18 908/20 908/23
**nutshell [1]**   889/13

**O**

**obeyance [1]**   889/16
**objection [18]**   859/18 862/2 863/23 865/16 866/1 866/12 867/19 870/2 874/4 881/5 881/9 881/18 890/3 890/8 903/7 903/8 912/14 915/8
**observe [4]**   865/22 865/24 875/17 875/20
**observed [1]**   865/21
**obstruct [1]**   880/20
**obstruction [3]**   876/12 880/21 881/25
**occasion [1]**   908/21

**occasions [2]**   888/12 909/8
**off [4]**   872/15 887/8 891/24 892/2
**offer [1]**   907/20
**offered [1]**   884/5
**office [5]**   853/5 871/6 887/10 889/6 904/16
**offices [1]**   870/19
**Official [1]**   852/21
**offset [1]**   857/11
**Oh [2]**   872/1 875/8
**okay [5]**   856/6 856/13 866/8 873/6 906/12
**old [1]**   855/25
**once [5]**   857/12 857/15 861/15 870/24 902/11
**one [29]**   861/17 865/14 867/20 868/5 868/15 869/22 871/2 872/15 873/3 880/9 880/21 881/8 882/21 886/24 887/3 887/4 889/4 891/25 894/3 894/14 895/5 895/6 900/19 908/14 908/15 908/21 909/3 910/3 916/8
**one answered [1]**   900/19
**one count [1]**   880/21
**one deputy [1]**   910/3
**one in [2]**   871/2 882/21
**one involving [1]**   908/14
**One moment [2]**   867/20 880/9
**one occasion [1]**   908/21
**one of [10]**   868/15 869/22 872/15 881/8 886/24 891/25 894/3 894/14 895/5 895/6
**one was [2]**   887/3 887/4
**one who [1]**   909/3
**one with [1]**   868/5
**ones [1]**   855/25
**only [4]**   857/15 884/9 888/23 900/3
**open [2]**   914/1 914/24
**opened [1]**   871/17
**operation [7]**   857/6 858/17 868/16 889/9 889/11 906/18 906/23
**opportunity [1]**   884/18
**order [8]**   883/2 883/2 883/15 894/7 899/24 900/6 902/7 908/24
**ordered [2]**   876/1 886/18
**ordinarily [1]**   858/24
**original [5]**   859/2 866/22 869/19 873/9 873/9
**originally [3]**   885/7 889/3 889/5
**originals [1]**   859/17
**OSC [1]**   906/21
**OSJ [5]**   857/22 861/15 868/19 889/6 889/9
**OT [1]**   857/19
**other [9]**   868/6 869/14 872/25 874/22 887/4 894/8 899/10 910/9 914/23
**others [2]**   866/10 914/19
**ought [1]**   856/1
**our [4]**   857/14 857/16 900/3 914/14
**out [18]**   865/11 866/20 866/22 869/12 872/21 873/5 873/11 876/2 876/7 876/8 878/19 889/3 894/7 899/18 899/24 901/1 908/1 908/2
**outside [2]**   855/6 915/6
**Outstanding [1]**   879/20
**over [10]**   858/5 858/5 858/14 858/14 858/16 872/17 887/13 901/4 907/21 914/15
**Overruled [1]**   867/21
**overtime [9]**   857/15 858/2

858/3 858/3 858/8 858/13 858/19 858/22 890/25
**overview [1]**   871/21

**P**

**p.m [4]**   874/21 906/10 907/9 907/22
**PA [2]**   852/8 855/8
**pads [1]**   868/22
**page [17]**   854/3 859/22 860/16 862/6 864/1 864/3 864/5 864/6 870/5 870/9 879/10 879/21 879/24 879/25 880/6 912/21 917/7
**pages [6]**   854/9 854/10 859/17 859/19 862/1 895/25
**paid [5]**   857/15 858/4 905/10 909/8 909/13
**paperwork [1]**   879/7
**paragraph [4]**   857/7 906/9 906/10 906/11
**Paragraphs [1]**   878/22
**Park [1]**   871/2
**part [7]**   874/18 875/1 886/2 889/22 894/6 899/11 903/16
**particular [6]**   893/4 906/25 909/3 910/23 912/4 912/8
**partnering [1]**   905/4
**pass [1]**   872/18
**past [1]**   915/4
**Paul [2]**   879/1 879/7
**Pause [1]**   914/12
**pay [1]**   909/16
**pays [1]**   905/7
**PC [4]**   864/19 864/20 864/21 864/24
**PDT [1]**   874/21
**Peacock [1]**   871/13
**Pearson [1]**   861/1
**penal [2]**   864/25 865/1
**pending [1]**   882/15
**people [4]**   868/15 903/21 914/17 915/19
**PERCY [1]**   852/3
**perform [1]**   890/11
**performance [2]**   878/24 879/12
**performed [3]**   889/16 889/19 889/22
**period [13]**   858/14 858/15 875/16 876/3 878/25 879/16 879/19 880/2 880/4 888/16 890/15 891/2 891/11
**permit [1]**   914/18
**person [4]**   901/22 902/1 902/3 905/25
**personal [1]**   874/9
**personnel [3]**   862/20 863/1 879/5
**phone [63]**
**phone's [1]**   893/7
**phones [3]**   892/24 910/10 911/18
**photographs [2]**   894/19 894/22
**photos [1]**   899/4
**pictured [2]**   895/1 895/8
**pictures [2]**   894/25 895/18
**placard [1]**   856/2
**placards [1]**   856/10
**place [1]**   855/24
**PLAINTIFF [1]**   852/7
**play [1]**   868/3
**played [2]**   868/7 888/6
**player [1]**   901/8
**plea [6]**   881/3 881/7 881/17 915/20 916/12 916/15
**plead [1]**   880/25
**please [26]**   855/10 857/4

**P**

**please... [24]** 857/6 861/9 862/6 862/9 862/14 862/23 864/2 864/6 864/7 865/3 866/22 873/17 874/6 874/12 874/12 874/16 878/21 879/10 879/24 880/14 895/24 906/7 912/19 914/21
**plot [2]** 893/15 894/4
**plural [1]** 910/3
**plus [2]** 907/15 907/21
**point [25]** 856/11 865/5 865/14 865/17 868/16 870/11 870/18 871/22 884/1 891/16 893/25 899/25 900/3 901/10 902/6 903/10 904/2 904/2 904/14 905/21 906/16 907/11 907/22 909/23 915/23
**police [2]** 864/9 864/17
**position [1]** 857/24
**posted [1]** 890/6
**potential [1]** 884/5
**prejudice [1]** 855/25
**prepaid [1]** 899/18
**prepare [1]** 902/6
**presence [5]** 855/7 856/21 899/2 914/2 915/7
**present [4]** 855/18 871/11 902/14 914/7
**preset [1]** 899/9
**PRESIDING [1]** 852/4
**previously [1]** 877/22
**printed [1]** 860/6
**prior [7]** 882/20 883/3 883/6 883/23 883/25 885/2 887/14
**prison [3]** 885/8 893/21 907/2
**probably [2]** 858/20 868/23
**probing [2]** 874/11 874/14
**problem [3]** 905/2 905/4 911/25
**problems [1]** 916/20
**procedure [3]** 915/16 915/21 916/10
**proceed [1]** 880/13
**proceeding [10]** 878/3 882/20 883/3 883/6 883/23 883/25 884/1 884/4 885/2 887/15
**proceedings [11]** 852/13 855/6 856/20 878/7 895/25 899/1 912/21 914/1 914/12 915/6 917/6
**process [1]** 879/4
**prohibited [1]** 892/7
**promoted [1]** 890/2
**properly [1]** 857/12
**proposing [1]** 916/9
**provide [4]** 857/16 872/25 878/24 910/19
**public [5]** 892/24 900/5 900/5 900/22 900/23
**publish [4]** 864/1 870/8 878/17 906/4
**pursuant [1]** 917/4
**pushed [1]** 873/1
**pushing [1]** 877/5
**put [10]** 855/23 856/1 856/2 856/8 860/8 862/5 870/7 872/11 893/17 906/2
**putting [1]** 875/9

**Q**

**question [1]** 886/2
**questions [4]** 868/8 880/10 887/18 887/22

**R**

**ran [1]** 873/22
**ranged [1]** 889/13
**ranking [1]** 879/10
**rated [1]** 872/22
**rating [2]** 879/18 880/4
**read [14]** 857/4 857/6 862/9 862/14 863/14 864/2 864/7 869/19 870/10 872/17 872/20 878/21 907/17 914/22
**Reading [4]** 874/15 874/17 878/23 907/19
**ready [1]** 877/6
**reason [1]** 893/13
**recall [3]** 871/19 872/8 907/3
**receive [8]** 858/4 858/18 858/24 869/20 877/25 878/5 879/19 880/4
**received [8]** 859/21 862/3 863/24 869/23 870/3 874/5 903/9 914/25
**receiving [1]** 858/8
**recent [1]** 887/3
**Recess [1]** 916/22
**recognize [3]** 861/9 863/9 869/2
**recollection [3]** 912/10 912/16 914/4
**recommend [1]** 916/2
**recommended [1]** 882/6
**record [1]** 893/10
**recorded [6]** 892/17 892/19 892/23 893/7 900/19 901/5
**recording [3]** 867/2 867/6 867/12
**recordings [2]** 893/3 901/18
**records [7]** 862/16 878/23 879/5 892/23 903/11 903/14 903/19
**recovered [1]** 891/5
**red [1]** 901/7
**redactions [4]** 869/6 869/7 869/9 869/14
**reducing [1]** 877/11
**reference [2]** 868/10 899/11
**referenced [1]** 883/10
**referring [3]** 861/18 868/11 873/25
**reflect [3]** 867/11 867/11 867/24
**refresh [6]** 887/22 888/2 888/7 912/10 912/16 914/3
**regard [1]** 916/7
**regarding [2]** 872/11 876/13
**regulations [1]** 917/8
**related [2]** 872/7 880/22
**Relevance [2]** 890/3 890/8
**relief [1]** 857/13
**relieve [1]** 858/2
**relieved [2]** 857/12 861/2
**remainder [1]** 861/8
**remember [27]** 857/21 861/19 864/23 866/15 866/17 869/21 871/4 871/8 889/7 891/19 894/24 894/25 895/1 895/3 895/5 895/7 895/9 895/11 900/9 901/6 902/12 903/18 903/23 909/10 909/15 910/25 912/9
**remind [1]** 914/15
**reminded [1]** 914/24
**report [5]** 872/12 872/15 872/19 879/11 906/12
**reported [1]** 917/6
**Reporter [1]** 852/21
**REPORTER'S [1]** 852/13
**reports [5]** 862/18 874/11 874/14 874/25 914/22
**requested [1]** 879/7
**require [1]** 857/17

**Res'd [1]** 857/1
**respect [10]** 868/9 872/6 875/17 877/13 884/25 889/19 893/23 905/11 906/25 909/12
**responsibility [1]** 906/22
**responsible [2]** 890/18 890/21
**rest [1]** 862/14
**result [1]** 885/1
**resumed [2]** 899/1 914/1
**reveal [1]** 903/14
**revealed [1]** 903/20
**review [2]** 914/4 915/9
**reviewed [1]** 903/19
**reviews [1]** 878/18
**RHODES [3]** 853/5 855/12 886/23
**right [39]**
**rights [3]** 875/10 905/18 905/22
**robberies [7]** 891/10 891/12 891/13 891/14 891/17 891/21 892/1
**Robert [1]** 874/19
**Rodriguez [3]** 859/24 859/25 860/12
**room [2]** 875/21 876/2
**RPR [1]** 917/12
**rule [15]** 858/12 876/23 877/9 877/9 877/13 877/17 884/6 884/8 884/17 884/22 885/22 886/7 915/20 915/22 916/10

**S**

**safe [6]** 889/9 889/12 890/18 890/22 906/18 906/23
**safety [1]** 889/14
**said [18]** 862/12 863/16 866/17 866/18 867/25 868/9 871/19 872/17 873/1 873/3 875/24 876/1 885/15 888/11 889/4 908/19 909/12 909/15
**salary [1]** 905/8
**same [8]** 859/12 861/21 863/21 879/21 880/7 883/9 887/17 903/15
**San [3]** 865/5 865/5 865/11
**Santa [1]** 853/12
**sat [1]** 875/22
**Saturday [2]** 907/2 907/6
**saw [3]** 875/16 899/9 899/21
**say [11]** 864/16 864/18 872/19 874/19 875/14 887/8 901/5 903/25 912/4 915/18 915/24
**saying [2]** 893/4 909/2
**says [8]** 857/5 860/25 864/15 870/14 874/13 874/13 875/10 910/13
**schedule [1]** 860/21
**scheduled [1]** 877/19
**Scott [2]** 875/18 876/4
**screen [1]** 862/5
**seal [2]** 896/1 912/22
**search [2]** 879/4 900/25
**searched [1]** 879/5
**second [3]** 873/3 879/10 907/17
**Section [1]** 917/4
**secure [2]** 890/19 890/22
**security [1]** 889/14
**see [21]** 855/24 856/2 859/22 860/6 860/17 860/25 861/8 864/2 866/24 871/6 873/17 874/7 876/3 876/6 879/11 895/24 901/10 903/20 912/10 912/11 916/21
**seen [1]** 863/14

**S**

seized [1]   909/4
select [4]   854/9 854/10 859/17 859/19
send [3]   862/1 886/1 907/1
sending [1]   859/16
sent [2]   873/20 874/13
sentence [15]   877/11 877/16 877/20 881/21 881/24 882/7 882/11 882/11 884/19 884/19 884/23 885/5 885/8 886/4 886/9
sentenced [7]   876/25 877/7 882/7 882/10 882/19 886/3 892/3
sentencing [2]   881/20 882/4
separate [1]   880/21
September [14]   866/16 869/1 870/8 874/20 875/6 875/15 878/9 880/23 887/24 888/17 888/20 890/7 890/12 891/2
September 24th [2]   875/6 875/15
September 2nd [1]   869/1
September 3rd [1]   870/8
sequence [1]   906/12
Sergeant [14]   868/10 868/14 871/13 871/14 872/2 872/17 872/20 873/21 875/3 875/3 875/17 875/21 875/23 875/24
sergeants [4]   871/15 871/23 871/25 873/20
series [1]   891/17
serve [1]   885/8
served [2]   877/2 886/4
service [1]   857/16
services [1]   906/21
serving [2]   877/19 886/9
set [2]   885/7 885/7
seven [1]   909/8
seven different [1]   909/8
she [8]   868/14 868/15 872/2 872/4 872/4 904/8 904/11 908/20
sheriff [8]   888/12 888/15 888/20 890/1 890/17 890/21 890/25 905/7
sheriff's [7]   858/11 870/16 870/25 878/10 889/23 890/17 893/2
sheriffs [1]   905/3
shift [3]   857/23 860/23 861/5
shifts [2]   857/8 858/4
should [2]   859/2 866/21
show [3]   874/6 875/1 901/3
showed [1]   888/1
shows [1]   900/24
sidebar [2]   895/24 912/19
simply [1]   915/3
since [2]   886/3 886/13
single [2]   856/4 885/24
situation [1]   912/2
slash [4]   861/1 862/10 862/12 862/20
slot [1]   857/18
Slow [2]   862/23 874/16
Smith [13]   859/11 860/22 864/7 866/9 867/2 867/6 867/12 871/12 873/22 875/4 879/2 879/15 879/19
Smith's [1]   863/12
Smitty [1]   867/2
sneak [1]   874/24
sneaked [2]   874/15 874/17
so [33]
soda [1]   910/18
some [17]   856/11 865/5

868/16 870/13 870/14 870/18 884/1 888/6 895/10 895/14 895/15 895/16 903/10 904/2 904/2 904/14 909/23
somebody [2]   900/9 915/17
someone [6]   872/3 891/25 894/12 900/1 901/17 911/7
something [8]   855/23 861/16 877/10 884/20 886/9 916/9 916/17 916/18
somewhere [1]   865/6
son [1]   861/4
sorry [3]   862/23 882/17 902/22
sound [1]   876/7
sounds [3]   908/22 909/1 909/18
source [1]   894/7
sources [2]   874/19 874/25
South [1]   903/25
space [1]   871/6
speak [4]   904/8 907/23 908/4 915/3
speakers [1]   867/24
speaking [1]   888/25
Special [11]   855/14 860/14 861/7 862/5 863/25 876/8 876/9 879/9 902/4 906/5 906/9
specific [2]   905/2 905/4
specifically [1]   858/18
speed [1]   899/11
spoke [1]   888/15
spoken [1]   904/8
spot [2]   857/19 857/25
Spring [2]   852/22 853/6
stage [1]   901/25
stands [3]   857/22 864/12 864/24
start [6]   856/23 857/11 877/19 878/19 908/11 916/19
Starting [1]   857/17
starts [2]   860/6 907/18
state [5]   855/10 865/1 865/2 870/12 907/2
stated [2]   874/14 878/21
statement [1]   883/6
statements [1]   890/5
STATES [12]   852/1 852/4 852/6 855/8 855/13 864/14 864/15 876/19 877/12 877/16 917/5 917/9
stating [1]   876/12
station [1]   865/12
stenographically [1]   917/6
step [2]   899/4 915/13
steps [1]   907/5
Steven [1]   879/3
sticker [2]   860/8 860/10
still [4]   857/16 882/15 894/20 905/21
stipulation [1]   863/21
stop [2]   905/2 905/4
story [4]   873/22 874/13 889/8 908/14
straight [1]   857/18
Street [2]   852/22 853/6
strictly [1]   892/7
stuff [1]   911/19
subject [1]   874/10
subpoena [4]   862/21 862/24 862/25 863/1
subpoenaed [3]   878/8 882/24 883/10
subpoenas [1]   862/16
subsequently [1]   915/19
substantially [2]   859/12 861/21
suggest [2]   916/17 916/18

Suite [1]   853/12
supervisor [1]   906/15
supplement [1]   857/23
supposed [1]   885/25
sure [1]   855/22
surrender [2]   885/8 885/15
Sustained [6]   865/18 881/6 881/10 881/19 890/4 890/9
system [5]   892/17 892/19 892/20 892/23 893/10

**T**

Tab [1]   868/4
table [1]   855/13
take [12]   856/8 856/13 861/16 865/3 866/22 872/21 873/5 873/11 876/10 902/18 914/14 915/14
talk [1]   914/20
talked [2]   865/4 900/7
talking [3]   875/6 903/3 903/25
talks [3]   910/2 910/3 910/9
Tanaka [3]   871/12 879/1 879/7
Tanner [8]   855/14 860/14 861/7 862/5 863/25 879/9 906/5 906/9
tap [1]   901/7
tape [1]   909/19
tapes [2]   888/6 888/8
task [20]   861/13 861/16 861/18 861/19 863/5 863/6 863/12 863/19 870/18 870/19 870/24 871/9 871/11 871/14 875/21 904/21 904/24 905/9 905/12 905/13
taught [1]   889/23
telephone [5]   888/16 892/17 892/19 892/20 893/9
tell [4]   866/11 895/3 916/2 916/4
tells [1]   908/13
term [2]   857/20 869/6
testified [4]   876/13 883/19 883/22 884/1
testify [6]   877/22 878/3 878/7 882/20 883/2 883/11
testifying [1]   877/25
testimony [7]   876/11 876/22 885/2 885/3 887/14 888/4 888/11
text [4]   895/20 899/5 899/8 899/22
than [7]   869/14 882/7 884/20 886/9 906/22 907/15 910/2
thank [3]   880/15 908/1 914/11
that [359]
that's [16]   882/12 883/8 885/13 888/18 888/22 889/2 890/23 904/13 904/18 905/15 905/20 906/14 907/25 910/1 911/9 911/20
their [5]   874/18 892/24 892/25 915/17 915/20
them [4]   859/3 859/6 886/24 895/6
then [36]
there [45]
these [16]   858/4 862/7 862/11 862/12 863/2 873/13 876/10 876/13 878/18 886/15 887/2 887/21 890/1 891/21 895/18 916/19
they [26]   857/11 858/5 861/2 861/5 868/3 869/22 870/21 870/24 871/9 871/24 877/5 877/5 882/16 882/18 885/25

**T**

they... [11]  887/21 887/21 887/23 888/1 888/2 888/6 889/13 891/12 894/1 895/9 907/1
THIBODEAUX [2]  852/21 917/12
thing [1]  883/9
things [4]  869/11 894/7 894/14 910/16
think [10]  855/21 856/1 856/3 856/9 858/11 858/12 863/4 875/24 909/19 915/23
third [1]  864/6
this [81]
Thompson [9]  860/25 861/3 879/1 879/8 902/8 902/10 902/13 906/13 906/15
those [18]  859/25 871/25 872/11 878/7 880/25 881/12 887/6 887/13 887/18 888/2 893/3 894/22 899/8 902/7 903/14 903/19 909/10 910/6
though [1]  909/23
thought [4]  882/16 882/18 891/12 901/21
thousand [2]  890/25 909/17
three [6]  859/2 872/5 900/19 901/16 901/19 903/2
three audio [1]  901/19
three calls [2]  901/16 903/2
three days [1]  872/5
three original [1]  859/2
three recorded [1]  900/19
through [3]  862/16 862/18 862/25
throughout [1]  890/6
Thursday [1]  907/8
time [32]
timeframe [1]  888/20
times [4]  857/11 873/23 874/20 900/18
timing [1]  866/13
Title [1]  917/4
today [5]  885/3 885/20 886/5 887/19 888/4
told [5]  865/24 865/25 866/3 866/5 877/12
took [4]  863/18 904/3 904/5 907/5
top [4]  859/22 862/9 864/2 879/11
total [2]  858/23 882/3
toward [2]  865/14 875/22
Towers [1]  891/1
track [3]  900/14 904/7 905/13
tracked [2]  899/17 905/17
tracking [2]  903/24 904/4
transcript [12]  852/13 867/23 868/4 868/6 902/6 902/7 902/10 912/11 914/4 915/10 917/6 917/7
transcription [1]  903/1
transcripts [1]  868/3
transfers [1]  862/21
transpired [1]  916/1
transported [1]  893/25
trial [8]  852/14 855/23 887/15 914/15 914/18 914/23 915/18 916/11
tried [2]  877/5 900/14
tries [1]  914/20
true [3]  869/14 873/24 917/5
truly [1]  867/24
truthful [1]  876/22
trying [1]  916/6
TUESDAY [3]  852/17 855/1 860/15

Tuesdays [1]  871/10
turn [1]  873/7
turned [1]  862/16 875/25 876/7 876/8 885/23
Twin [1]  891/1
two [11]  857/10 858/20 872/5 880/20 884/19 886/14 887/3 888/12 888/23 908/6 908/13
two contacts [1]  888/23
two deputies [1]  857/10
two felony [1]  880/20
two hour [1]  908/6
two occasions [1]  888/12
two or [1]  872/5
two versions [1]  908/13
two weeks [2]  858/20 887/3
two year [1]  884/19

**U**

U.S [2]  852/21 887/10
Ultimately [1]  877/15
under [3]  896/1 906/21 912/22
undercover [2]  911/1 911/6
Undersheriff [1]  871/12
understand [5]  864/10 884/8 884/17 888/10 888/10
understanding [1]  864/21
understood [2]  883/5 892/13
unit [3]  906/18 906/20 906/21
UNITED [12]  852/1 852/4 852/6 855/8 855/13 864/14 864/15 876/19 877/12 877/16 917/5 917/9
unknown [3]  901/22 901/25 902/3
until [5]  857/11 857/14 886/4 914/15 914/25
unusual [1]  875/17
up [23]  855/22 855/24 855/24 855/25 856/1 856/2 856/6 856/8 856/10 856/14 862/5 871/22 872/18 873/2 875/22 886/4 886/8 889/5 901/8 903/24 904/4 906/13 916/19
us [4]  853/5 855/13 856/7 861/2
use [4]  861/17 862/18 864/19 864/20
used [10]  864/23 867/16 879/4 883/7 891/14 891/22 893/14 893/15 893/17 893/20
using [2]  879/6 894/4

**V**

value [1]  890/5
values [2]  889/23 890/1
verified [1]  879/6
versions [1]  908/13
versus [1]  855/9
very [5]  864/2 871/9 876/2 880/5 908/1
video [1]  876/8
videos [1]  876/3
views [1]  915/2
violate [1]  890/14
violent [1]  891/8
VOLUME [1]  852/15
voluntarily [2]  882/23 883/13
voluntary [1]  886/15

**W**

Wait [1]  873/3
walked [1]  876/2
walking [1]  875/22
want [6]  855/23 856/7 903/24

907/19 914/14 916/17
wanted [2]  887/20 904/23
wants [8]  885/21 893/3 910/16 910/17 910/17 910/17 910/18 916/18
was [116]
wasn't [3]  891/8 900/24 901/2
way [2]  870/16 885/12
we [61]
weapon [2]  892/14 893/14
Webber [2]  875/23 875/24
weed [1]  909/21
week [3]  857/17 871/5 871/5
week-and-a-half [1]  871/5
weeks [3]  858/20 887/3 904/3
welcome [2]  865/11 866/20
well [10]  858/16 873/1 881/11 885/19 886/2 886/25 888/6 893/24 911/7 911/15
went [6]  858/16 865/23 886/20 891/24 892/2 899/18
were [64]
weren't [1]  865/15
WESTERN [1]  852/2
Westwood [1]  905/19
what [80]
whatever [2]  857/23 904/25
when [20]  859/13 861/21 866/5 866/15 868/18 870/19 871/4 871/8 873/3 876/16 877/19 884/5 887/2 887/8 889/4 895/23 899/17 900/22 900/25 903/19
where [13]  865/8 866/5 870/18 871/21 885/25 887/6 888/24 891/14 891/21 904/25 905/3 908/6 915/17
wherever [2]  885/25 915/25
whether [8]  877/15 885/21 895/19 903/20 904/8 904/11 907/23 911/22
which [6]  861/18 862/1 878/16 886/2 906/21 915/25
while [5]  856/7 863/18 867/16 868/25 873/8
who [32]
whom [1]  891/5
whose [3]  860/10 862/7 900/14
why [7]  858/1 860/18 861/14 865/10 872/23 877/4 878/7
will [29]  857/10 857/15 857/17 858/4 859/21 862/1 862/3 862/5 863/24 870/3 870/7 874/5 875/13 875/14 876/23 877/10 877/18 885/3 893/10 901/2 901/3 901/3 901/5 901/6 901/7 901/8 903/9 910/13 910/19
willing [1]  908/4
within [1]  900/7
without [4]  858/24 883/19 883/22 884/22
witness [10]  854/3 856/5 856/11 902/15 906/3 912/15 914/8 915/9 915/15 916/15
witnesses [1]  893/17
woman's [1]  903/24
word [2]  866/18 866/18
words [2]  894/8 899/10
wore [2]  865/11 866/20
work [3]  860/23 861/5 905/8
worked [4]  858/5 891/1 905/11 905/13
working [8]  857/22 857/24 858/4 858/19 904/21 910/22 911/5 911/5
works [1]  905/1

**W**

**would [28]**   857/23 858/24
860/4 868/2 868/4 868/22
873/9 873/10 873/10 873/11
873/12 873/12 877/14 883/19
883/22 885/19 885/24 886/8
887/14 893/7 894/14 902/14
905/6 907/23 912/10 914/3
915/22 916/2
**wouldn't [4]**   873/1 873/3
873/4 873/5
**wristbands [1]**   860/8
**written [1]**   876/20
**wrote [6]**   864/7 869/5 869/15
869/18 872/15 873/10

**Y**

**yahoo.com [1]**   874/7
**year [5]**   882/10 882/11
884/19 886/4 886/9
**years [8]**   881/21 881/24
882/3 882/7 892/4 907/15
907/21 911/22
**yes [120]**
**yesterday [4]**   876/11 885/20
887/18 888/11
**yet [1]**   877/2
**you [316]**
**your [94]**
**yourself [1]**   905/24

**Z**

**zero [1]**   901/5
**zero for [1]**   901/5