UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE PERCY ANDERSON

UNITED STATES DISTRICT JUDGE PRESIDING

- - -

| | | |
|---|---|---|
| United States of America, | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | NO. CR 16-66 PA |
| | ) | |
| Leroy Baca, | ) | |
| DEFENDANT, | ) | |
| _____ | ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL - DAY TWELVE

VOLUME II OF II

LOS ANGELES, CALIFORNIA

MONDAY, MARCH 13, 2017

_____

KATIE E. THIBODEAUX, CSR 9858
U.S. Official Court Reporter
312 North Spring Street, #436
Los Angeles, California 90012

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

APPEARANCES OF COUNSEL:

FOR THE GOVERNMENT:

BRANDON D. FOX
-and- EDDIE JAUREGUI
-and- LIZABETH RHODES
AUSA - Office of the US Attorney
312 North Spring Street 12th Floor
Los Angeles, CA 90012

FOR DEFENDANT:

     MORGAN LEWIS AND BOCKIUS LLP
     BY:  NATHAN J. HOCHMAN
     -and- BRIANNA ABRAMS
     1601 Cloverfield Boulevard
     Suite 2050 North
     Santa Monica, CA  90404

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

                              I N D E X


WITNESS NAME                                      PAGE

(None.)




EXHIBIT                              I.D.      IN EVID.

(None.)

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES, CALIFORNIA; MONDAY, MARCH 13, 2017

1:00 P.M.

- - - - -

(The following proceedings were held outside the presence of the jury:)

MR. HOCHMAN:  Your Honor, I had the chance to check the transcripts of the three instances that I had referred to that you sustained objections that I was misstating testimony.

I would like to very quickly because they are not very long parts of the transcript, refer you to what I was referring to.  So you can see that I was not misstating testimony.

THE COURT:  Do we need to do this now?

MR. HOCHMAN:  My concern, your Honor, is that you sustained objections that I was misstating testimony on three for three, your Honor.  The three times you sustained objections that I misstated testimony, the record backs me up that I was right each time.  And so I don't know how to cure that problem with the jury because you left it by sustaining an objection that I was misstating testimony, you were basically saying that I was misstating testimony, and I wasn't.  It was three for

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

three, your Honor.  I have looked up the transcripts.

THE COURT:  Sir, you may be four for four, but I am not sure that we need to do this right now.

MR. HOCHMAN:  How do we cure a problem where the jury is given the impression that I was misstating testimony three times when, in fact, I wasn't, your Honor.

THE COURT:  Because we will tell the jury that ultimately it is up to the jury to decide, that it is their memory of the testimony that controls, and if they find that what you said is different from what they remembered, their memory controls.

MR. HOCHMAN:  But your basis for sustaining the objection, your Honor, would be that it wasn't based on something that happened in the trial.  It would be the only basis for your sustaining an objection that it misstated the testimony, and it is not cured by your saying, well, your recollection controls.

I am asking the court how best to cure that situation, and I can go through the three instances and show you.

THE COURT:  Then, I guess we can do that after Mr. Fox finishes.

MR. HOCHMAN:  Yes, your Honor.

MR. FOX:  Your Honor, I do need to show

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Mr. Hochman my PowerPoint presentations.  I need two minutes to fix one of them, and then I would be happy to show them to Mr. Hochman.  And I think, like I said, I think it will be two minutes, and then I will be done.

(Counsel confer.)

THE COURT:  And how long are you going to be, Mr. Fox?

MR. FOX:  I will attempt to keep it to 45 minutes, your Honor.  Lots to clean up, though.

THE COURT:  All right.  Let's bring the jury in.

(The following proceedings were held in the presence of the jury:)

MR. FOX:  May I proceed, your Honor?

THE COURT:  Yes.  Please.

MR. FOX:  Just don't put cuffs on her.  Words that Mr. Baca uttered on September 26, 2011 before his sergeants went out to send a message to Special Agent Leah Marks.  Words that Mr. Hochman did not say at all in his two-and-a-half hour closing argument.

He admitted that Mr. Baca was there, had been briefed, was told what was going to happen.  But Mr. Hochman did not want you to focus on the words of his client.  Instead, Mr. Hochman did for two-and-a-half hours what he did for two-and-a-half weeks of this trial, tried to distort the facts, mislead you in the evidence

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

and just make up stuff that didn't happen.

Mr. Hochman said that he wanted you to look into Sheriff Baca's eyes, his eyes.  There is absolutely -- the only evidence before you about what was going on with Mr. Baca was the words that he spoke at the time in 2011 when he was telling people things like, just don't put cuffs on her, isolate the inmate, criminally investigate things.  And those are actually the I's that you should be focusing on.

These are Mr. Baca's I's:  Interfere and impede, investigate criminally, intimidate and improperly influence witnesses and the federal government. Mr. Baca's words do him in in this case.  His words do both through what he told people within his department at the time and what he said in the interview in April of 2013 when he lied over and over again.

Remember one thing that Mr. Baca said back in 2011 to Mr. Thompson is that this is a chess match.  This is a chess game.  And that is exactly what it was to Mr. Baca.  For those of you who are chess players on the jury, you will understand this very vividly.  The king controls the game.  The king is the one who all the pieces are there to protect.  The king is the one who stays in his little area where other people are in the line of fire while the pawns, bishops, rooks, knights go

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

out and they attack.  They do the dirty work for the king.

The king only comes out when absolutely necessary.  He will put himself in harm's way once or twice a game, but other than that, it is the pawns.  It is the Gerard Smiths, Mickey Manzos, James Sextons who are out there in the line of fire.  The only ones who could potentially get captured.  The knights, the bishops Scott Craig, Maricela Long, Steve Leavins.  The rook, Tom Carey.  And, of course, Mr. Baca's second most powerful piece in the department, Paul Tanaka.  Out there doing Mr. Baca's dirty work.

That is what was going on.  That was going through Mr. Baca's mind.  He was the king and everybody else was his piece, his pawn, his rook, his knight, his bishop.  No truer words could have been spoken than on August 23rd, 2011, when he was told the FBI had been there, and he was tactical and said this is a chess game.

Mr. Thompson has no reason to lie when he is on the stand.  Government is not providing him with any benefits whatsoever.  He has been convicted of his crimes.  He was testifying solely to his crimes.  The only way he could get in trouble is if he lied.  Could be prosecuted for perjury.  That is the only way he could get in trouble because he had court-ordered immunity.  He

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

was forced to testify, and his only risk was if he lied.

So, yes, the government knew in opening statement that he would say it was a chess game. You saw his memory get refreshed over and over again with his grand jury testimony when he was forced to testify in the grand jury previously. When he said the same things on the witness stand as he had in grand jury previously.

Mr. Thompson was consistent with that, and so were the other witnesses. Mr. Hochman called this all spaghetti. Called this all circumstantial evidence. Talked about all of the benefits that the government had given all of these witnesses. Mr. Thompson, as I mentioned before, provides direct evidence of Mr. Baca's guilt both on the false statements and the obstruction of justice. And his testimony alone can convict Mr. Baca of both counts, all three counts of the indictment: The conspiracy, the obstruction and the false statements.

Mr. Carey's testimony, yes, he is a perjurer. But who charged him with perjury? What did he lie about? He lied to a jury, and the federal government charged him with perjury. What he lied about was that they had an innocent motive, that the reasons for doing all the things that you heard about were innocent. He has later admitted that that wasn't the case. That they had the other nefarious purpose that he didn't talk about:

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

Trying to obstruct the grand jury investigation.

He, again, has only an incentive at this point to tell the truth. He is going to be sentenced by his honor, and if he lies, if he does anything else, you can be sure that that will be taken into account.

Mr. Sexton already received his benefits. As he sits there on the stand, no one sent him to lie. In fact, just the opposite. Mr. Sexton is no longer serving a prison sentence. One condition of his supervised release is that he tell the truth, that he testify truthfully. So you know what could get him yanked and put back in prison is to lie to you. To lie to you.

Mr. Hochman focused on a couple of potential inconsistencies that actually are not inconsistent with Mr. Sexton that were not inconsistent in his testimony. Mr. Hochman said that Mr. Sexton talked about the marshals calling around about a writ from August 22nd to August 24th. You remember that slide that Mr. Hochman showed you.

The evidence shows that the FBI asked the U.S. Attorney's office to try to obtain a writ on August 23rd. There is a stipulation the parties reached on two things. One is that the writ was served and the other one is that the U.S. Marshal service was calling around asking about Anthony Brown. It is entirely consistent with Mr. Sexton

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

that before that writ was issued, the U.S. Marshal service was calling around looking for Anthony Brown knowing that that writ was coming.  Entirely consistent.

Mr. Hochman also tries to nitpick at little things like where was Mr. Thompson on the morning of August 24th.  According to Mr. Sexton, he was wearing a suit, and Mr. Thompson told Mr. Sexton that he had been to executive's offices, had been at the EPC meeting, and if you look at those phone records that Ms. Rhodes talked about, Special Agent Tanner testified about, you will see that he was in Monterey Park that morning.  He actually was where Mr. Sexton said Mr. Thompson said he was.  Consistent with that.

And he said, yes, that he got his butt chewed or his ass chewed that morning.  Whether it happened the day before or not, Mr. Sexton's recollection is that Mr. Thompson told him he got his butt chewed the next time he saw him.  We are talking about, now, five-and-a-half years later.  Mr. Hochman wants you to think that 600 days -- and when you add it up by the way, it is not 600 days -- that 600 days is a big deal.  Well, hurt your recollection, you want to go back look at a calendar and figure out how many days it was between August and September of 2011 compared to April of 2013.  You will see it is fewer than 600 days.  Another way that

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Mr. Hochman was trying to mislead you by rounding up.

But now it has been five-and-a-half years. How do you know when somebody has lied to you?  How do you know?  You look at the evidence.  There was testimony that says best way of knowing that is you look at the evidence.  You also look at whether somebody has a motive to lie.

Now, Mr. Hochman talked about the materiality of the statements.  What was the materiality?  Why did it matter that Mr. Baca was not being truthful at that meeting?  Don't you think it mattered to all these people?  The federal government is conducting an investigation to see why people were hiding Anthony Brown, why sergeants had gone out to Special Agent Tanner's house to threaten her arrest.

And what does Mr. Baca lie about?  We are not talking about a date or two.  We are not talking about a conversation that doesn't matter.  We are talking about the big things, the reason why he was being interviewed.

He was being interviewed.  He is told at the beginning, want to know about all the internal discussions you have, want to know if you had any involvement in this and what knowledge you had of this. He is provided with the subject matter of the interview.

Think about the people that his department

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

would interview on the streets.  You think they got notice of the questions being asked, the subject matter that was being asked?  Mr. Baca got the latter.  He got the subject matter.  Do you think they had an opportunity to meet with their attorneys before the interview and go over documents?  Mr. Baca certainly had that opportunity. They were his department's documents, and he had two attorneys right there with him.

If he wanted to call that off, he could have at any point.  What Mr. Baca was trying to do was divert the government's attention just like Mr. Hochman was trying to divert your attention.  Nothing to see here. Don't look.  Nothing to see here.  I don't know anything about what was happening.  It was all their fault.

Despite the fact that Mr. Baca never disciplined them, never punished them.  Never gave them bad reviews.  Never even had them investigated.  His beloved OIR, Office of Independent Review, which is entirely irrelevant to this.  Didn't know about anything. Didn't know about the obstruction.  Didn't know about the threatened arrest.  Knew that there was no investigation of any of these people until there were federal charges. Until these people were publicly charged in December of 2013, nothing happened other than great reviews.

On one hand, Mr. Hochman is going to stand up

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

here and talk about Sheriff Baca, Sheriff Baca, Sheriff Baca --

MR. HOCHMAN:  Objection, your Honor.  Misstates the testimony.  Need to be heard.  Actually, misstates the testimony.

THE COURT:  Ladies and gentlemen, your memory of the evidence controls.  The objection is --

MR. FOX:  May I proceed, your Honor?

THE COURT:  Yes.  That is fine.  Go ahead.

MR. FOX:  In talking about Mr. Baca's intent, in talking about his intent, Mr. Hochman wants you to believe that Mr. Baca was solely interested in joining the federal investigation.  Right.  That is what the whole innocent motive here is that all he was looking to do was join the investigation.  Step back for a second and think about it.

If you believe, as Mr. Hochman wants you to, that Mr. Baca thought the FBI was conducting an incompetent investigation and he committed crimes along the way, now, he wants to link with that investigation and join with that investigation?  Makes no sense.  Make no, sense.  He should be distancing himself from that investigation if that is what he truly believed.  It didn't happen.

He wasn't looking to join.  What he was

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

looking to do and you can see it from the September 26 letter is take over the investigation, cause the federal government to back down, to stop the investigation. And Mr. Hochman can talk to you all he wants about how there was no effect on the grand jury, that Mr. Baca wasn't seeking to affect the grand jury at all by his actions. But when you threaten witnesses, when you send people out to Special Agent Tanner's house to send a message, when you then tell the U.S. Attorney and the FBI that you are willing to gun up and you hand over a letter that says stop the investigation, stop the grand jury investigation, withdraw all the subpoenas, there can be no greater effect on a grand jury investigation than stopping it, than completely ending it. And that was what Mr. Baca was looking to have happen.

Mr. Hochman has, you know, in his closing arguments, he talked about a lot of misleading things including Exhibit 31 focusing you on words and warping their meaning.

One moment, your Honor.

(Pause in proceedings.)

MR. FOX: You will see when you go back to the jury room, Exhibit 31. Right now my computer is not working, but you will see it when it goes back. This is the tidbits e-mail. And you will see in there that Steve

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

Leavins is providing a small update to Paul Tanaka:  Not much to report last night.  We had an undercover operation today, and I will provide you with details later.

And then Mr. Baca is referenced in Mr. Tanaka's e-mail saying, right after, right after Tom stopped by, meaning Carey, the sheriff popped in.  This case is consuming his entire thought process.  Providing him with updated tidbits helps ease his mind.  He is referring to the information that Mr. Leavins was giving him.  These are just tidbits, but I need those tidbits.  I need to provide everything to Mr. Baca.  Need to give him everything.

And Mr. Hochman said you had no evidence.  There was no evidence that he was being provided with anything but tidbits.  That completely ignores Mr. Thompson, Mr. Manzo, Mr. Carey.  Completely ignores them.

The other witnesses that I have highlighted here, Manzo, Mr. Manzo is looking to receive a benefit from the federal government.  He is looking to receive a benefit, but he has already testified in the same manner two other times including in the grand jury where he received no benefits.  Now, he is testifying consistently with that, and you have heard that his obligation, once

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

again, is to tell the truth.

The one person --

MR. HOCHMAN:  Objection, your Honor.  Misstates the testimony.  Improper argument.

THE COURT:  Ladies and gentlemen, your recollection of the testimony controls.  If what you remember differs from what the lawyers state, your recollection of the testimony controls.

MR. FOX:  May I proceed, your Honor?

THE COURT:  Yes.

MR. FOX:  Mr. Hochman also started redefining charges before you today as he is arguing about what the obstruction of justice is.  It is very clear from the beginning what this was.  And you will look at the indictment when you go back.  You will see that the conspiracy talks about tampering with witnesses, moving Anthony Brown, intimidating agents.  That is what the indictment is about.

Mr. Hochman wants you to believe that because evidence wasn't destroyed, Mr. Baca could not have obstructed justice.  In other words, because he didn't obstruct the obstruction of justice investigation, he is not guilty.  That is the argument that Mr. Hochman has made.  It is like someone who goes out and, say, commits murder with a gun and says I am not guilty because I

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

didn't destroy the gun.  It has nothing do with the charge of murder.

The fact that his records custodians and his lawyers that were working for the county and the department didn't later go back and destroy the evidence, it doesn't reflect on his guilt at all.  In fact, what it does is provide you with the evidence you need to show that he is guilty of the charge.

Mr. Hochman tries to cloak Mr. Baca in, you know, puts -- wraps the office of the sheriff's department around Mr. Baca by referring to him as Sheriff Baca over and over again.

And what he is trying to do is make you believe that there is a a higher standard for Mr. Baca, that Mr. Baca somehow is entitled to something greater than the average person when it comes to beyond a reasonable doubt, that everything Mr. Baca did must have been legitimate because he was sheriff.  As Ms. Rhodes told you, that only makes it more damning.

In terms of reasonable doubt, the standard is the same in every courtroom of this country.  The prosecution must prove the defendant guilty beyond a reasonable doubt.  That applied to James Sexton.  Applied to Mickey Manzo.  Applied to Greg Thompson.  Applies to anyone who is charged with crimes.  It applied to the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

inmates at Men's Central Jail most of whom are there without being convicted yet.  Sitting there awaiting charges while they were being punished by deputies in other ways before they were found guilty beyond a reasonable doubt.

Mr. Hochman calls this poisoning you. Poisoning you.  The fact that you heard evidence about the beatings that were going on in Men's Central Jail. Yet then he goes on and talks about Mr. Baca's age, number of years he was on the job, how he was an elected official.  Poor old man.  That is what he is trying to do.  He is trying to make you use your sympathy instead of use your reason, and what you need to do when you go back there is use reason.

Mr. Hochman talks about mountains and doors. The only door you are going to have to go through is the door to the jury room.  You are not going to have to climb any mountains.  You take the elevators up to 9. What you are going to do is review the jury instructions, use the words, follow the jury instructions.

And you will see what you need to find in order to convict Mr. Baca is that you are thoroughly convinced based on the evidence, based on your logic, based on your reasoning that he is guilty of the crime.

Mr. Hochman might be able to nitpick little

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

tiny pieces of evidence here and there, but if you look at the big picture, it is very clear what was happening here.  The standard is not prove beyond a reasonable doubt every single fact.  The standard is each element.  Each element of the crime can be proven beyond a reasonable doubt and is here.

You heard that there were people in their '20's, '30's, '50's convicted.  The fact that Mr. Baca was in his '60's when he committed obstruction of justice, 71 when he lied over and over to the federal government.  Irrelevant.  Absolutely irrelevant.

If the government's burden is to prove to Mr. Hochman beyond a reasonable doubt that Mr. Baca is guilty that is never going to happen.  It is his duty to stand up here and defend his client.  It is his duty.  It is his right.  Mr. Baca has that right.  And has been given that right.

Mr. Hochman's duty is to his client, and he is going to stand up here no matter what happens and tell you that we haven't proven our case.  But what you heard from is witnesses who were essential to the conspiracy talk about it.  And people who weren't even involved in the conspiracy, Assistant Sheriff Rhambo, given zero benefits, yet telling Mr. Baca if you do this, it is obstruction of justice.  And Mr. Baca does it anyway.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Mr. Hochman claims that Mr. Baca was asking lots of questions, asking lots of questions, why weren't the FBI and the U.S. Attorney's office asking questions. Why wasn't he asking questions?  Why wasn't he going to his people if he is really innocent of this crime?  If he had no idea what they were doing, go to his people. Assistant Sheriff Rhambo tells me that you guys are going to go out and confront an FBI agent and threaten her arrest.  What is going on here.

Apparently, Mr. Hochman wants you to believe that he asked questions externally but not of anybody internally.  The reason why he didn't ask those questions is because he already knew the answer.  He already knew that the sergeants were going out to Leah Marks' house. He was absolutely aware of that.  And him being aware of that shows that he is guilty of Counts 1, 2 and 3.

It is a conspiracy if you are the leader of the organization, you order someone to do something, and they go ahead and do it.  That is two people conspiring right there, the leader and the underling.  In this case, you have heard about all of the co-conspirators.

And when you review the indictment, you will see that each one of those people is listed as a co-conspirator.  The government has proven that they were all involved in the conspiracy.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

For Count 1, we just have to show you that he conspired with one person, but they are all listed in the indictment. You will see them all in there.

For Count 2, it is a little bit different. Even if you don't think that Mr. Baca conspired with anybody, so long as you believe and we convince you beyond a reasonable doubt that his intent with or without anyone else was to obstruct justice and he tried to obstruct justice, he is guilty of the crime.

With Count 3, I don't believe that Mr. Hochman mentioned this, but there are four false statements as he said. You only need to find one of them with all of the elements in order to find him guilty of Count 3. You will see the four false statements charged, and any single one of them will result in Mr. Baca being found guilty of Count 3 when you look at all of the elements.

Mr. Hochman talked about what was unprecedented in this case. A phone in the jail. There is nothing unprecedented about that. A phone being found in the jail. You heard testimony, phones -- and some of you may know this already -- phones are prevalent in jails and prisons. It happens. As Ms. Rhodes mentioned, a lot of times they are connected to bad people, bad things. Mexican Mafia, drug cartels, gang members.

It shouldn't become safer and less of a risk

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

when Mr. Baca found out this phone was connected to the FBI. That should have given him assurances. He wasn't getting involved until he found out it was connected to the FBI. He wasn't worried about the safety and security of the jails. And by the way, if you have questions about how much contraband is in the jails, go ahead and search the jails. Right? Search them. And you heard that they did that. And they found that nothing unordinary, outside of the ordinary was found in the jails. Nothing extraordinary.

So what was unprecedented about what OSJ was doing -- you heard from James Sexton -- it was the fact that they were moving inmates without involving the FBI. Mr. Sexton said that whenever they moved an inmate, they involved the FBI. Didn't happen here. And when I am talking about moving an inmate, I am talking about moving him for law enforcement purposes. Certainly, not moving someone from 1750 to 8200. Also, you heard from Gus Academia, a clerk who worked for the Los Angeles County Sheriffs Department, how intimidated and shaken he was still five-and-a-half years later with the experience that you had with deputies walking up to him forcing him to remove someone from the system.

He knew it was wrong then. He knew he needed a court order to do it, and yet he was forced to do it

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

anyway.  That was unprecedented having OSJ deputies do that.  ICIB, what was unprecedented about ICIB?  A whole lot.  First of all, you heard Tom Carey say that they weren't ordinarily involved in investigations of abuse.  That went to IAB.  That went to internal affairs.  They ordinarily were not involved in investigations of cell phones in the jails.  He only got one or two calls during his tenure when cell phones were found all the time.

What was unprecedented is an investigation of the FBI, a criminal investigation of the FBI.  Never happened before.  Not ICIB's job.  Not its jurisdiction.  Also, a criminal investigation of an undercover operation.  Something ICIB had never done before.  Going to Mr. Baca to say we are going to interview a witness.  Unusual.

And having Mr. Baca return with a response saying, just don't put cuffs on her.  There is no reason to have that conversation unless you want the agents or the sergeant to send a message to the agents.  Why have that conversation?  Why make that statement if all you are doing is going out and interviewing a witness, you don't need to tell somebody don't put cuffs on that witness.  The only people who get cuffs on them are those people who have been charged with a crime or arrested for committing a crime.  There is no reason to have that

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

conversation if Mr. Baca's motive was pure and it wasn't meant to intimidate the agents.

Mr. Hochman talked about a lot about this hand-shaking at the September 27th meeting. Hand-shaking. That is not the importance of that meeting. The importance was the bluster. The importance was Mr. Baca handing over a letter. At this point, he is sure that his sergeants threatened the arrest of an agent. Positive of it because he got a call the night before from Andre Birotte. Your sergeants threatened an agent, what is going on.

And does Mr. Baca, then, in the September 27th meeting say, sorry, you know, they went too far, that was not what I wanted them to do, I just wanted information? No. He hands a letter over to U.S. Attorney Birotte saying we are going to criminally investigate the FBI. That is reinforcing the message. That is what he was doing there. If the message didn't get through to the upper levels by trying to intimidate the lower level people, he is going to bring that message himself. The king is going to move out of his spot for that one period.

Want to talk to you about these lies. Oh. And Mr. Hochman also didn't address the fact that Mr. Baca left after he saw the video. You saw the video.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

You heard it.  There is nothing funny about the approach of Special Agent Marks, the confrontation they had. There is nothing funny about that.  Why is it that Mr. Baca had the best laugh he had in a while?  It is only because they did exactly what he wanted them to do. He got the message across he was looking for.  He got the reaction he was looking for.  That is what is important about that meeting.  And if the handshake really had the meaning that Mr. Hochman wanted it to have, Mr. Sexton would have never been charged and convicted.  Mr. Manzo would have never been charged and convicted.

MR. HOCHMAN:  Objection.  Completely inappropriate argument.

THE COURT:  Sustained.

MR. FOX:  The evidence of their convictions are not something that you should be using in order to determine whether Mr. Baca is guilty or not.  That was not my intent.  What I am saying is at that point when they shook hands, Mr. Hochman wants you to believe that it is all over, that all is forgiven that nothing happened here, the entire six weeks didn't matter.  That is my point.

I want to now show you now lie number one.  I showed this to you in opening statements, and it is important to go over it again because Mr. Hochman has

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

tried to nitpick at it again.  These are not I don't recall questions.  These are not I don't recall answers.  This is Mr. Baca lying.

(Audio played.)

MR. FOX:  This is Mr. Baca going broader.  I had no clue this was a civil rights investigation.  This is not Mr. Baca saying I wasn't sure, I didn't know, I didn't suspect.  Possibly could have been.  This is him saying he had no idea.  He had no evidence to support this being a civil rights investigation.

And why does this lie matter?  Well, first of all, let me tell you why it is a lie.  Because Mickey Manzo, Tom Carey told you what was presented to Mr. Baca at the August 20th meeting was that Anthony Brown was an informant and had been in touch with the civil rights squad of the FBI, that he was reporting on abuses.

Now, maybe, if Mickey Manzo is going to read the transcript, he is going to find one instance where he said beatings.  They all knew what was happening.  We are talking about a low level person.  An inmate is in contact with the civil rights squad.  They are talking about him reporting on deputies, crimes of deputies.  Of course, it is going to involve civil rights.

Again, Mr. Baca doesn't say, well, maybe it was, I am not sure.  I had no clue it was a civil rights

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

investigation.  Why does that matter?  It matters because their actions from that point on make no sense.  It is clear that their actions are illegal once they know it is a civil rights investigation.  Once they keep the inmates' reporting on deputies, reporting on crimes of Mr. Baca's deputies away from the FBI, they have got a problem right there, a big problem.  How big of a problem?  That is why we are here today.  That is how big of a problem it was.

So that is a material, material lie.  Here is lie number two.

(Audio played.)

MR. FOX:  Again, Mr. Baca expands the answer whether Saturday or in the ensuing days which means he is including August 23rd in there, August 26th, days where he is taking meetings with all the co-conspirators.  On the 23rd, specifically, FBI has just been kicked out of Men's Central Jail, and he has no direct involvement in any conversation.

Mr. Hochman wants to you do mental gymnastics here.  I have a daughter who did gymnastics at one point.  She would probably be embarassed for my attempted reference here, but he is trying to have you do double back handsprings or something to try to figure out why this is not a false statement.  This is clear.  I had no

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

direct involvement in any conversation. He is sitting right there in meetings where they are talking about keeping the FBI away from Anthony Brown. There is no other way around it.

Lie number three, unaware, not informed, the FBI was not allowed to continue the interview. I don't even need to play this one for you because this one -- maybe I will just so you can hear it one more time.

(Audio played.)

MR. FOX: This is Mr. Baca continuing to put his bishops, knights, pawns in harm's way. I knew nothing about this. I cannot be responsible for their actions. Yes, I am going to give them good reviews and say they did everything I want them to do, but when the federal government comes knocking on the door asking me these questions, I am not going to tell them that I was the one ultimately responsible for it.

Now, you will recall that Mr. Hochman said that these were I don't recall questions for lie number three. That is clearly not the case. Here is lie number four.

(Audio played.)

MR. FOX: So what he is saying there, and Mr. Hochman didn't play the last line for you, that once Mr. Martinez made the call to him, he was aware something

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

occurred.  He is saying I didn't know anything had occurred or was going to occur until I received that phone call from the federal government.  And the whole investigative particulars we were trying to warp and manipulate the language here completely undermined later when Mr. Baca in Clips 40 and 41 -- I am going to play 41 for you now -- reinforces this message that he had no idea they were going to be interviewing or approaching or confronting the agents.

(Audio played.)

MR. FOX:  Again, I didn't know anything about this.

Mr. Hochman claimed in his argument that Mr. Baca was open, direct and transparent.  You just heard him lie four different times about his involvement.  There is nothing transparent about that.  There is nothing open and direct about that.  What was he open and direct about?  His anger.  Because he had to be.  He was trying to force the federal government to stop its investigation.

He had to come out from his protection behind the pawns, knights and bishops at that point.  Mr. Hochman talks about the four lies.  These are the most essential parts of the reason why the federal government was interviewing him, and Mr. Hochman also

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

wants you to ignore the other times that Mr. Baca lied in this interview. Cecil Rhambo. Asked about him. Did he ever tell you, don't F with the feds? Mr. Baca said in the interview, no.

MR. HOCHMAN: Objection. Misstates the testimony.

THE COURT: Sustained.

MR. FOX: In this -- excuse me. There is the other one where Mr. Baca claims in actually two different spots where he claims that he immediately went back and told people to stop. Once he found out that Special Agent Marks had been threatened to be arrested, he immediately went back and told them to stop. You saw the phone records. Wasn't the case. No cell phone calls after his call with Andre Birotte. No home calls you heard from Special Agent Tanner. Checked his home records. No phone calls during that time.

You saw from Ms. Rhodes' closing and the exhibits that you will have back with you, they continued to conduct surveillance. And you heard from Tom Carey that they actually presented this case to the district attorney's office to see if the district attorney's office would charge it, to see if the district attorney's office would charge the special agent. And just like the judge pushed it to the side and said we can't do that, the district attorney's office did the same thing.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

At that point, Mr. Baca had played one of his last pieces.  He had nowhere else to go.  So this whole thing about continued cooperation on October 13th has no relevance.  Mr. Birotte in the letter is being diplomatic saying we look forward to your continued cooperation.  What cooperation had they done from August 18th, September 26?  Hiding an inmate is not cooperation.  Threatening witnesses, telling them not to cooperate with the federal government is not cooperation.  Threatening to arrest a special agent.  Confronting or trying to intimidate her, certainly not cooperation.  Had done nothing.

Mr. Hochman had you focus on one part of the call between Mr. Narro and Ms. Long, that phone call where Ms. Long laughs at the end saying they are scared.  If you listen to it again, and you are welcome to come out here and listen to it at any point you want.  But if you listen to it again, you will see that right away when she is asked does the sheriff know about this, she doesn't hem or haw, doesn't deflect, what she says is confidently, assuredly, the sheriff knows about this, sir.  That is what she says.

And, yes, she refers the caller to the undersheriff, but that is because that is what Mr. Baca had ordered everybody to do.  You saw his aide's e-mail,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

forwarding an e-mail from Steve Martinez to Mr. Tanaka's aides because that is the system that Mr. Baca had set up.  Mr. Tanaka was supposed to be having contact with the FBI.  And they gave the caller, Carlos Narro, the 5000 number.  You will remember that Mr. Tanaka's office number, the general office number was 5118.  Could have easily given that number.  And if Ms. Long was using his name inappropriately, you could be sure that she could be disciplined for it.  She would be punished for using his name.  And she wasn't.

Mr. Hochman then focused on the number of things that Mr. Baca may not have known about.  The writ.  But one minute after Anthony Brown was released from the computer system, he places a call to the U.S. Attorney's office to set up the meeting.  The policy of keeping the FBI out, Mr. Hochman says that Mr. Baca had no knowledge of it.  But what you heard from Greg Thompson on the stand is that language came from Leroy Baca.  He handed a note to Mickey Manzo.  And Mickey Manzo wrote it up after he left Mr. Baca's office on August 23rd.  Mr. Baca had a connection to the policy.

The seeking the court order, the denied court order by Judge Torribio, Mr. Hochman says there was no evidence of that.  But, then, you saw the duplicate language between Mr. Baca's letter on September 26th and

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

the denied court order that they were seeking.

Telling deputies not to cooperate.  You heard from Mr. Baca's own words in the interview that he was told about the Gilbert Michel interview right after it happened, and the phone calls support that.

And the bugs, Mr. Hochman said that Mr. Baca had no connection to the bugs.  It was his own office that they were searching to see if there were any listening devices in his own office.  So he was, again, the one the pawns, the knights, the rooks, the bishops were protecting.  Mr. Baca was the one that was being protected.

And what is not included in Mr. Hochman's list of what Mr. Baca didn't know?  Well, overruling Greg Thompson and sending Anthony Brown to state from the very beginning on August 19th.  Ordering Anthony Brown to be isolated, words that Mr. Hochman didn't use at all in his closing argument.  Receiving the update on August 23rd about the FBI being in and getting kicked out.  Approving of Anthony Brown being sent to San Dimas with a name change.  And ordering a criminal investigation of the FBI telling them not to put handcuffs on Special Agent Marks.

And with all these conspirators and with Mr. Baca, it is conspiracy law that his honor will provide to you, he doesn't have to know about everything

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

that is happening.  He has just to have a common plan, purpose.  Have an agreement formed.  And there are going to be some conspirators that do things in their own way, in their own manner with their own knowledge, but this is overall conspiracy being run from the top, from the sheriff.

Mr. Hochman showed you the phone records but didn't show you the phone contact between Mr. Tanaka and Mr. Baca.  There was substantial phone contact during the period of time, August to September of 2011.  If you go through the records, you will see what we have presented to you that the calls to Mr. Tanaka from Mr. Baca then went to all these co-conspirators and then back up.  That is evidence about what they were talking about.  He wasn't calling Metro or the other jails.  Mr. Tanaka was calling the co-conspirators.

Mr. Hochman tries to move away from the policies that were violated in this instance, the policies about supervising people.  Mr. Baca had one person in the entire department to supervise, and that was Paul Tanaka, the same person who he mentored, same person who years later even after Mr. Tanaka ran for sheriff against Mr. Baca said he had the unique ability to do whatever it was that Mr. Baca wanted done.

After Mr. Baca was aware of everything

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

certainly that happened under him, Mr. Baca still said, this is my guy, Paul Tanaka is my guy. And all these policies are common sense. It doesn't matter word for word. They are supervise, don't obstruct, don't lie. They are his policies that Mr. Hochman wants to run away from, but they are common sense. You don't even need to read them to know that they shouldn't have done what they did.

Mr. Hochman talked about how Mr. Birotte viewed everything that was going on as kids playing in a sandbox. That is not what he said. You will recall that his testimony was that he viewed all law enforcement as kids playing in the sandbox. He didn't say he viewed what was happening here as kids playing in the sandbox, the things you were talking about. Things had gotten outrageous. I believe those were Mr. Rhambo's words. They had gotten outrageous. These were not kids playing in a sandbox. This was obstruction of justice.

I want to conclude by just comparing two of the leaders that you heard about. One leader, Andre Birotte, owned everything that was happening. Don't blame them, blame me. I was the one who made the decision. I was the one who decided not to tell you about the undercover investigation. I approved the undercover investigation. If you are going to be mad at

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

anyone, be mad at me.

But, then, here is the king, the king who now tries to disown everything that happened underneath him. That is not how a leader acts. That is how a criminal acts, person who committed a crime, person who, here, committed three crimes. Don't blame me, what he is saying, blame them.

You don't need to hear from every single conspirator to know what is happening. You have heard from those who were reporting straight to Mr. Baca. You have learned that Mr. Baca started this conspiracy on August 19th or August 20th isolating the inmate, criminally investigated. He ended it at the end of September.

Mr. Baca was playing the chess game, and, at this point, you have enough evidence. We have proven our case to you beyond a reasonable doubt. After his honor provides the instructions, you will be able to go back to the jury and deliberate.

We ask you to find Mr. Baca guilty consistent with the evidence. We have proven our case to you beyond a reasonable doubt. He is guilty of the conspiracy. He is guilty of the obstruction of justice. He is guilty of making false statements.

Thank you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

THE COURT:  All right.  Ladies and gentlemen, we are going to need about 10 minutes, maybe 15, to finalize some instructions to you.  The instructions will take about 30 minutes.  So we are going to take a break for about 10 to 15 minutes and then you will come back in.  I will give you your instructions and then the case will be submitted to you for your deliberations.

Again, I want to remind you until this case is over, you are not to discuss this case with anyone including your fellow jurors, members of your family, people involved in the trial or anyone else, nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk with you about this case, please let me know about it immediately.

Do not read or listen to any news reports or other accounts about the trial.  Finally, you are reminded to keep an open mind until all of the evidence has been received, you have heard the arguments of counsel, the instructions of the court and the views of your fellow jurors.

All right.  We will come back at 5 after the hour.

(The following proceedings were held outside the presence of the jury:)

MR. HOCHMAN:  Your Honor, can I raise the issue

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

that we put off in order to make sure Mr. Fox got his rebuttal in?

THE COURT:  I am going to address that, Mr. Hochman.  So as to these instructions, we had talked about 4.1.  4.1, as I understand it, is the instruction that the jury uses when there has been a statement by defendant to law enforcement and that it was, the jury is asked to make a determination as to the voluntariness of the statement.

I think everybody admits this was a voluntary statement so I am not sure that 4.1 needs to be given.

MR. HOCHMAN:  Your Honor, it is the second, the last sentence in 4.1 that I think is important, that in -- you can't have the last sentence without the one before it is the problem.  I think that the import is that you need to consider the circumstances under which the defendant made his statement.  Other parts of that instruction can be --

THE COURT:  Did you read the comment?

MR. HOCHMAN:  Yes, your Honor.

THE COURT:  To the instruction.

MR. HOCHMAN:  The comment appears to be dealing with the voluntariness if a defendant made a statement like after an arrest or something like that, your Honor.

THE COURT:  Yes.  That is not the case here.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

MR. HOCHMAN:  In that case, your Honor, yes.  To the extent that 4.1 is referring to that, I agree with your Honor.  To the extent that we would request an instruction that advises the jury to look at the circumstances under which the defendant made his statement, I would request that instruction.  I thought that was what we were putting 4.1 in for even though your Honor is correct that the Ninth Circuit references a different situation.

THE COURT:  All right.  What is the government's position?

MR. FOX:  We don't think that it is a necessary instruction, your Honor.

First of all, the second sentence could be misleading.  It is for you to decide how much weight to give the statement.  It is a false statement.  So it seems there are false statements in there.  So it is strange to be telling them you should decide how much weight to give the false statements, and, again, it is a voluntary statement.  So it is not something that is at issue.  I think that Mr. Hochman argued the points that he wants to make and we are not telling them not to consider his age or anything else about the statement.  So I don't think the jury is going to be at all confused by not having this instruction.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

MR. HOCHMAN:  And, your Honor, what I would request to modify this instruction is we keep the first sentence, get rid of the second sentence, get rid of the, in making this decision, and then just have, you should consider all the evidence about the testimony including the circumstances under which the defendant may have made it, and just have in essence the first sentence, and then the last part of the last sentence starting with you should consider.

THE COURT:  Okay.  Does the government have a different view than Mr. Hochman's?

MR. FOX:  I think I just have never seen it given in a false statement case, and so I am wondering why it is necessary here.

Again, he made his arguments.  He argued the age.  He argued the number of questions.  I don't know that that really goes to the truthfulness of the statement and whether he had the intent.  It doesn't go to whether he made the statement.

THE COURT:  Okay.  I don't think this instruction is appropriate in this case.  Take a look at Instruction No. 33.

MR. HOCHMAN:  Yes, your Honor.

MR. HOCHMAN:  Your Honor, I think at a minimum for Mr. Thompson this would apply to him as a court-ordered

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

immunity would be a form of impeachment for him.

MR. FOX:  That is obviously not what is going on here, your Honor.  This is supposed to be a prior inconsistent statement that is at issue in this instruction.  So I think that what we did the last time around was you have heard evidence that one or more witnesses may have given a prior inconsistent statement, and then the rest of the instruction.

MR. FOX:  We were trying to, at counsel table, figure out who might have been impeached with a prior inconsistent statement.  And I believe Mr. Gennaco was.

MR. HOCHMAN:  I think, trying to remember if Mr. Manzo was.

MR. FOX:  There are going to be at least arguable prior inconsistent statements.

THE COURT:  At this point, I think we will do it general, just say you have heard evidence that one or more witnesses may have given prior inconsistent statements.  You may consider this evidence in deciding whether or not to believe the witness and how much weight to give the testimony of the witness.

MR. HOCHMAN:  That is fine, your Honor.

THE COURT:  Okay.  34, going to take Greg Thompson out of this.

MR. HOCHMAN:  And, again, for the record, we noted

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

our objection, your Honor.

THE COURT:  That is fine.  And I am going to give, I believe, the revised Disputed Instruction No. 1.  Give the government's Supplemental Instruction No. 2.

Revised Disputed Instruction No. 2, after the word undercover operation, going to add law enforcement officials may use informants and undercover agents in order to investigate criminal activities.

And then I am going to put in 4.10, law enforcement officials may engage in stealth and deception such as the use of informants and undercover agents in order to investigate criminal activities, undercover agents and informants by using false names and assumes the role of members in criminal organizations.

In fact, I don't need that first, the first sentence that I stated, we don't need that.  We will just insert 410 after the word operation.  And then I intend to take out the sentence that starts on Line 22 as applied to this case.  Disputed Instruction No. 1, local officer's authority to investigate.

MR. HOCHMAN:  May I ask the court on that last instruction, we had asked for an additional line at the bottom of the instruction.  That is the undercover instruction.  So the last line would read:  However, you can consider evidence of the government's undercover

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

operation as it bears on the defendant's intent to commit the crimes charged in the indictment.

THE COURT:  I am not giving that.

Okay.  Now, okay, to cure this --

MR. HOCHMAN:  I'm sorry, your Honor.  The last instruction that you were talking about which was the lawful, the local officer's instruction.  Was that the one?

THE COURT:  Yes.

MR. HOCHMAN:  Our objection is not to the instruction.  It was to the giving examples other than as you lay out for the purpose of the investigation at the very end or for the purpose of obstruction.

I think that those examples are in some ways misleading, and I don't think -- I think the reason the government articulated to me why we needed examples was this issue in some form was raised by the last jury that they somehow didn't understand the general concept of, you know, of obstruction of investigation, and then the government thinks that you need some specific examples.

I don't believe that the Smith, the instruction from U.S. v. Smith of the Ninth Circuit proved, had this additional language in it, your Honor.  So we would ask the court not to have this additional language.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

THE COURT:  Okay.  What is the government's position?

MR. FOX:  It is a correct statement of the law. It further explains the issue to the jury so, hopefully, they will not be confused.  Not all juries come back with a jury note when they are confused about something.  So we believe it provides clarity to the jury, and there is no prejudice to the defense because it is a correct statement of the law.

THE COURT:  Okay.  I am going to give that as written.

Okay.  What I propose to do about Mr. Hochman's complaint about objections that were sustained during closing argument, first of all, closing arguments are not evidence.  However, I would tell the jury, I would add on to Instruction No. 26 what is not evidence.  If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

Closing arguments, I have already said that. Please do not read into anything I may have said or done or any rulings I made during closing arguments any suggestion as to what verdict you should return or what the facts are.  That is a matter entirely up to you.

MR. HOCHMAN:  Here is the reason, your Honor, I

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

don't think that cures the situation.  Mr. Fox, in his rebuttal, doubled down on this issue when he said Mr. Hochman distorted the facts, mislead you and made stuff up.

You are sustaining an objection that I misstated testimony backs up what Mr. Fox says, and the particular instances in which you sustained it, I have and I would like to put in the record the actual cites from the testimony that I was relying on that back up exactly what I said, your Honor.  And so the problem is that Mr. Fox has now doubled down on that, and the jury is thinking, well --

THE COURT:  It is argument, counsel.  And the jury knows it is not evidence.  And I am telling them it shouldn't -- even the rulings I made shouldn't affect what verdict they should return.

MR. HOCHMAN:  And can you make it very specific, your Honor, to the extent that you sustained any objections in Mr. Hochman's closing and make it very specific to that.

THE COURT:  I sustained objections during his rebuttal argument.

MR. HOCHMAN:  Because he misstated the testimony, your Honor.  He said the two instances that you did, the one or two that you sustained it, he actually misstated

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

the testimony.  And I can show that as well.

MR. FOX:  Your Honor, one was to the transcript, and I thought that I had that right.  But, you know, we can go back and forth about whether we are right or wrong in these transcripts.  I have got no problem with you adding the language that says either in the defense or the government's closing arguments, rather than making it specific to one side or the other.

MR. HOCHMAN:  And, your Honor, while we are on this topic, Mr. Fox said something that is borderline mistrial when he said that in December, 2013, all these people were charged.  And he was referring to his chart, your Honor.  And the evidence in this case is not that all these people were charged.  That chart had Mr. Leavins.  It had Craig and Long on it, and it had Smith.  And there is no evidence in this case that these people were charged with any crime.  And, your Honor, we have worked very hard, and there was an agreement amongst counsel on how to deal with any prior charges to not leave the jury with some suggestion that these other people have been charged.

MR. FOX:  Your Honor, I was pointing to the three people that they heard from when I was pointing at the chart.  It was the three people on the OSJ side that they heard from not, the ICIB side.  And Mr. Gennaco

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

himself said the one, he tried to fight me on something and said that others were disciplined.  I think he said the sergeants from ICIB were disciplined after they were charged.

That was not information I tried to solicit from Mr. Gennaco, but he raised that.  The other thing I will mention is that Mr. Hochman in his closing argument insinuated that Mr. Tanaka had not been charged by saying that Greg Thompson was trying to cover up for Mr. Tanaka and there would be no reason for him on the stand in this trial to be covering up for Mr. Tanaka when Mr. Tanaka has been convicted.

So, you know, to the extent that -- to the extent that I made a statement that could be read in a different way, Mr. Hochman certainly did as well.

MR. HOCHMAN:  And, your Honor, the more immediate issue is whether the court, how the court will suggest dealing with this issue of sustaining objections to misstating testimony I didn't misstate.

I would like to just briefly put into the record the transcript cites in the Mickey Manzo testimony, it is Volume --

THE COURT:  The problem with that is when we went up here to talk about this, you cited me to Carey.

MR. HOCHMAN:  And by the way, Carey is the answer,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

your Honor, and I have that cite as well.

MR. FOX:  Your Honor, my recollection is that at that point you did not sustain the objection.  What you told the jury at that point is that their memory controls on that issue.  So I don't think that whether Mr. Hochman is right or wrong matters.

MR. HOCHMAN:  There were three issues, your Honor, and at least two of them, you sustained the objection.  I can go through each one and show you the transcript, and I will start with the Carey transcript.

THE COURT:  I have already told you how I am going to deal with it.  So I am not sure whether you are right or wrong or I was right or wrong really matters because I am going to tell the jury to disregard any rulings I made in anybody's closing argument.

MR. HOCHMAN:  For the record, your Honor, I don't believe that is sufficient, and I would ask the court for something much more specific.  But I understand the court's ruling, but, for the record, I am asking the court for something much more specific to cure this problem.

THE COURT:  Okay.

(Pause in proceedings.)

THE COURT:  Okay.  Let's bring the jury in.

MR. HOCHMAN:  Your Honor, may I take a two minute

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

break just to run to the restroom.

THE COURT:  Yes.

MR. HOCHMAN:  I will be very quick.

(The following proceedings were held in the

presence of the jury:)

THE COURT:  Members of the jury, now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.  A copy of these instructions will be available in the jury room for you to consult.

It is your duty to weigh and to evaluate all the evidence received in the case and in that process to decide the facts.  It is also your duty to apply the law as I give it to you to the facts as you find them whether you agree with the law or not.

You must decide the case solely on the evidence and the law and must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all these instructions and not single out some and ignore others.  They are all important.

Please do not read into these instructions or into anything I may have said or done any suggestion as

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

to what verdict you should return.  That is a matter entirely up to you.

The indictment is not evidence.  The defendant has pleaded not guilty to the charges.  The defendant is presumed to be innocent unless and until you find at the end of the trial after deliberations that the government proved the defendant guilty beyond a reasonable doubt.

In addition, the defendant does not have to testify or present any evidence to prove innocence.  The government has the burden of proving every element of the charges beyond a reasonable doubt.

A defendant in a criminal case has a constitutional right not to testify.  You may not draw any inference of any kind from the fact that the defendant did not testify.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced that a defendant is guilty. It is not required that the government prove guilt beyond all possible doubt.  A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation.  It may arise from a careful and impartial consideration of all the evidence or from lack of evidence.  If, after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is guilty,

it is your duty to find the defendant not guilty.

On the other hand, if, after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant guilty.

The evidence you are to consider in deciding what the facts are consists of the sworn testimony of any witness, the exhibits received in evidence and any facts to which the parties have agreed.

In reaching your verdict, you may consider only the testimony and exhibits received in evidence. The following things are not evidence, and you may not consider them in deciding what the facts are.

Questions, statements, objections and arguments by the lawyers are not evidence. The lawyers are not witnesses. Although you must consider a lawyer's question to understand the answers of a witness, the lawyer's questions are not evidence.

Similarly, what the lawyers have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

Please do not read into anything I may have

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

said or done or any rulings I have made during either the defense or government's closing arguments any suggestion as to what verdict you should return or what the facts are.  That is a matter entirely up to you.

Any testimony that I have excluded, stricken or instructed you to disregard is not evidence.  In addition, some evidence was received only for a limited purpose.  When I have instructed you to consider certain evidence in a limited way, you must do so.

Anything you may have seen or heard when court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is indirect evidence.  That is, it is proof of one or more facts from which you can find another fact.  You are to consider both direct and circumstantial evidence.  Either can be used to prove any fact.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give any evidence.

In deciding the facts in this case, you may have to decide which testimony to believe and which

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

testimony not to believe.  You may believe everything a witness says or part of it or none of it.

In considering the testimony of any witness, you may take into account, the witness' opportunity and ability to see or hear or know the things testified to, the witness' memory, the witness' manner while testifying, the witness' interest in the outcome of the case, if any, the witness' bias or prejudice, if any, whether other evidence contradicted the witness' testimony, the reasonableness of the witness' testimony in light of all the evidence and any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were and how much weight you think their testimony deserves.

You are here only to determine whether the defendant is guilty or not guilty of the charges in the indictment.  The defendant is not on trial for any conduct or offense not charged in the indictment.

A separate crime is charged against the defendant in each count.  You must decide each count separately.  Your verdict on one count should not control your verdict on any other count.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

The indictment charges that the offenses were committed on or about certain dates.  Although it is necessary for the government to prove beyond a reasonable doubt that the offenses were committed on a date reasonably near the date alleged in the indictment, it is not necessary for the government to prove that the offenses were committed precisely on the date charged.

You have heard evidence that one or more witnesses may have given a prior inconsistent statement. You may consider this evidence in deciding whether or not to believe a witness and how much weight to give to the testimony of the witness.

You have heard testimony from William Tom Carey, a witness who pleaded guilty to a crime arising out of the same events for which the defendant is on trial in hopes to receive a recommendation of leniency at sentencing by the United States, Mickey Manzo, a witness who was convicted of crimes arising out of the same events for which the defendant is on trial in hopes to have a resentencing hearing in which he would seek to receive favorable treatment from the United States, James Sexton, a witness who was convicted of crimes arising out of the same offense for which the defendant is on trial and receive favorable treatment at a resentencing hearing from the United States.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

For these reasons, in evaluating the testimony of these witnesses, you should consider the extent to which or whether their testimony may have been influenced by any of these factors.  In addition, you should examine the testimony of these witnesses with greater caution than that of other witnesses.

You have heard evidence that Mr. Manzo, Mr. Carey, Mr. Sexton and Mr. Thompson were convicted of crimes arising out of the same events for which the defendant is on trial.  The convictions of these witnesses are not evidence against the defendant, and you may consider their convictions only in determining the witness' believability.

You have heard evidence and argument regarding the maximum possible sentences for crimes that certain witnesses were charged with committing and certain sentences that the government has recommended or may recommend.  Although you should consider that evidence and argument in evaluating the testimony of such witnesses, the punishment to be imposed for any crime is exclusively for the court to decide.

No witness who testified in this case was charged with or convicted of a crime for which any term of imprisonment or fine must be imposed, and the court is in no way required to impose any sentence that the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

government recommends.  The court considers many factors including the seriousness of the offense and whether the defendant has a criminal history in imposing the sentence.

You have heard evidence and argument regarding the federal government's investigation of allegations of abuse and corruption by the Los Angeles County Sheriff's Department including its use of an informant and an undercover operation.  Law enforcement officials may engage in stealth and deception such as the use of informants and undercover agents in order to investigate criminal activities.  Undercover agents and informants may use false names and appearances and assume the roles of members in criminal organizations.

Local law enforcement departments including Los Angeles County Sheriff's Department do not have authority to direct or control federal investigations including those by the FBI, the United States Attorney's Office or a federal grand jury.

In order to investigate crime, federal law enforcement agencies are entitled to choose their own tactics and strategies, conduct their own evaluations of risk, assign their own personnel and make their own decisions regarding whether to inform others including targets that an investigation is underway.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

When an undercover investigation involves a use of informants and undercover agents, neither the law enforcement officers conducting the operation nor the informants assisting in the investigation become co-conspirators with the target of the undercover activity.

It is not for me to decide whether or how the federal government should have conducted its investigation.  Your duty is to decide whether the government has proved beyond a reasonable doubt that the defendant committed the crimes charged in the indictment.

A local officer has the authority to investigate potential violations of state law.  This includes the authority to investigate potential violations of state law by federal agents.  A local officer, however, may not use this authority to engage in what ordinarily might be normal law enforcement practices such as interviewing witnesses, attempting to interview witnesses or moving inmates for the purpose of obstructing justice.

During the trial, certain charts and summaries were shown to you in order to help you explain the evidence in the case.  These charts and summaries were not admitted into evidence and will not go into the jury room with you.  They are not themselves evidence or proof

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

Certain charts and summaries have been admitted into evidence.  Charts and summaries are only good as the underlying supporting material.  You should therefore give them only such weight as you think the underlying material deserves.

The defendant is charged in Count 1 of the indictment with conspiring to obstruct justice in violation of Section 371 of Title 18 of the United States Code.  In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about August 18th, 2011, and ending on or about September 26, 2011, there was an agreement between two or more persons to commit the crime of obstruction of justice.

Second, the defendant became a member of the conspiracy knowing its objects and intending to help accomplish it.

And, third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

A conspiracy is a kind of criminal partnership, an agreement of two or more persons to commit one or more crimes.  The crime of conspiracy is the agreement to do something unlawful.  It does not matter whether the crime agreed upon was committed.  For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy.

It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways or perhaps helped one another.  You must find that there was a plan to commit the crime of obstruction of justice as alleged in the indictment.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy even though the person does not have full knowledge of all the details of the conspiracy.

Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators.  On the other hand, one who has no knowledge of a conspiracy but happens to act in a way which furthers the object or purpose of the conspiracy does not thereby become a conspirator.  Similarly, a person does not become a conspirator merely by associating with

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

one or more persons who are conspirators nor merely by knowing that a conspiracy exists.

An overt act does not itself have to be unlawful.  A lawful act may be an element of the conspiracy if it was done for the purpose of carrying out the conspiracy.  The government is not required to prove that the defendant personally did one of the overt acts.

The defendant is charged in Count 2 of the indictment with obstruction of justice in violation of Section 1503 of Title 18 of the United States Code.  In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant influenced, obstructed or impeded or tried to influence, obstruct or impede a federal grand jury investigation.

And, second, the defendant acted corruptly, meaning that the defendant had knowledge of the federal grand jury investigation and intended to obstruct justice.

The government does not need to prove that the actual obstruction of the pending grand jury investigation occurred so long as you find that the defendant acted with the purpose of obstructing the pending federal grand jury investigation and he knew that

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

his actions had the natural and probable effect of interfering with the pending grand jury investigation and that the government proves the elements of the offense beyond a reasonable doubt.

For the conspiracy charge in Count 1 and the obstruction of justice charge in Count 2, the government need not prove that the defendant's sole or even primary intention was to obstruct justice so long as the government proves beyond a reasonable doubt that one of the defendant's intentions was to obstruct justice.  The defendant's intention to obstruct justice must be substantial.

The government may establish the FBI was acting as an arm of the grand jury by showing the FBI agents undertook the investigation to supply information to the grand jury in the direct support of a grand jury investigation were integrally involved in the investigation and undertook the investigation with the intention of presenting evidence before the grand jury.

The defendant is charged in Count 3 of the indictment with knowingly and willfully making false statements in a matter within the jurisdiction of a governmental agency or department in violation of Section 1001 of Title 18 of the United States Code.

In order for the defendant to be found guilty

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

of that charge, the government must prove each of the following elements beyond a reasonable doubt with regard to at least one of the statements charged as false in Count 3 with all of you agreeing as to which particular statement meets all of these elements.

First, the defendant made a false statement in a matter within the jurisdiction of the Federal Bureau of Investigation or the United States Attorney's Office.

Second, the defendant acted willfully.  That is the defendant acted deliberately and with knowledge both that the statement was untrue and that his conduct was unlawful.

And, third, the statement was material to the activities or decisions of the Federal Bureau of Investigation or the United States Attorney's Office. That is it had the natural tendency to influence or was capable of influencing the agency's decisions or activities.

When you begin your deliberations, elect one member of the jury as your foreperson who will preside over the deliberations and speak for you here in court.  You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict whether guilty or not guilty must be unanimous.

Each of you must decide the case for yourself,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

but you should do so only after you have considered all the evidence, discussed it fully with the other jurors and listened to the views of your fellow jurors.  Do not be afraid to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations, do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything do with it.

This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging or any Internet chat room, blog, website, social media or other feature.  This applies to communicating with your family members, your employer,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

the media or press and the people involved in the trial.
If you are asked or approached in any way about your jury
service or anything about this case, you must respond
that you have been ordered not to discuss the matter and
to report the contact to the court.

Do not read, watch or listen to any news or
media accounts or commentary about the case or anything
to do with it.  Do not do any research such as consulting
dictionaries, searching the Internet or using other
reference materials.  And do not make any investigation
or in any other way try to learn about the case on your
own.

The law requires these restrictions to ensure
the parties of a fair trial based on the same evidence
that each party has had an opportunity to address.  A
juror who violates these restrictions jeopardizes the
fairness of these proceedings.  If any juror is exposed
to any outside information, please notify the court
immediately.

Some of you have taken notes during the trial.
Whether or not you took notes, you should rely on your
own memory of what was said.  Notes are only to assist
your memory.  You should not be overly influenced by your
notes or those of your fellow jurors.

The punishment provided by law for these

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

crimes is for the court to decide.  You may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt.

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it and advise the Court Security Officer that you are ready to return to the courtroom.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Court Security Officer signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by signed writing.  And I will respond to the jury concerning the case only in writing or here in open court.

If you send out a question, I will consult with the lawyers before answering it which may take some time.  You may continue your deliberations while waiting for the answer to any question.

Remember, that you are not to tell anyone, including me, how the jury stands numerically or otherwise on any question submitted to you including the question of the guilt of the defendant until after you have reached a unanimous verdict or have been discharged.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

All right.  May I see counsel at sidebar, please.

(From 2:45 to 2:46 p.m., the proceedings, Page 2514, were conducted under seal.)

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

(The following proceedings were held in the presence of the jury:)

THE COURT:  All right.  I am going to ask the Court Security Officer to come forward, please.

All right.

I am going to ask the clerk to swear the Court Security Officers.

(The Court Security Officers were sworn.)

THE COURT:  All right.  Ladies and gentlemen, deliberating jurors will deliberate from 8:00 a.m. to at least 3:30.  If you want to stay longer, you can stay as long as you like, but you have to stay at least until 3:30.

Lunch is going to be brought in each day.  You may take breaks as you see fit, but do not discuss the case with anyone including each other until all of you are back in the jury room.  If you leave the jury room, you must be accompanied by the Court Security Officer.

Again, please do not start your deliberation until all of you are present in the morning or when all of you return from a break.  You must all be present before you start your deliberations.

Now, I am going to ask the alternate jurors, have any of the alternate jurors left any belongings in the jury room?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

All right.  I am going to ask that the alternate jurors return to the jury room and retrieve your belongings, and leave your notebooks here on your chairs.  And once you receive your -- once you retrieve your belongings, come back here into the courtroom.

(Pause in proceedings.)

(The alternate jurors returned to the courtroom.)

THE COURT:  Why don't you return to your seats.  That is fine.

All right.  For the four alternates, until the jury reaches a verdict or until the jury is discharged, you are to go to the jury assembly room every day while the jury is deliberating.  Lunch will be brought into you each day.  You will be notified when the jury reaches a verdict or when the jury has been discharged.

While you are waiting in the jury room, you are not to discuss this case with anyone including your fellow alternates, people involved in the trial, your family members or anyone else, nor are you permitted to allow others to approach you and try to talk to you about this case.  This includes discussing the case on the Internet, in chat rooms, through blogs, bulletin boards, by e-mails or text messages.

If anyone approaches you, and tries to talk with you about this case, please let me know about it

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

immediately.  Do not read, watch or listen to any news reports or other accounts about the trial or anyone associated with it.  Do not do any research such as consulting dictionaries, searching the Internet or using other reference materials and do not make any investigation about the case on your own.

If you need to speak with me, simply give a note to one of the officials in the jury assembly room, and they will see that it is given to the clerk.

As alternate jurors, you are bound by the same rules that govern the conduct of jurors who were sitting on the panel.  You should not form or express any opinion about the case until after you have been substituted in for one of the deliberating jurors on the panel or until the jury has been discharged.

All right.  I am going to ask the four alternates to return to the jury assembly room on the first floor.  We will notify you when the jury has left for the day.  And please leave your notebooks on your chairs.

I am going ask one of the Court Security Officers to accompany the alternates down to the jury assembly room on the first floor.

(The alternate jurors exited the courtroom.)

THE COURT:  All right.  Ladies and gentlemen, you

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

may now retire to the jury room to begin your

deliberations, and you can take your notebooks with you.

(The following proceedings were held outside the

presence of the jury:)

THE COURT:  All right.  There will be a clean set

of instructions available probably in about 10 minutes if

you want to look at those before they go back into the

jury room.

I assume the parties have conferred with the

clerk about what exhibits are to go back?

MR. FOX:  Yes, your Honor.  There are just a

couple of issues that I am aware of.  One is with the

stipulations.  We didn't officially move them into

evidence.  I don't remember if that is your Honor's

practice that we were supposed to move them into evidence

in order for them to go back or if they automatically go

back once we have read them.

MR. HOCHMAN:  Your Honor, I can't remember if --

they certainly were read into the record, your Honor, and

the jury had them as they would have any testimony.  At

least one or two of them I think were testimonial

stipulations if I am not mistaken, but whatever your

Honor's practice is, if you want to actually have a

written stipulation go back or just accept the

stipulation as read to the jury as the evidence.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

THE COURT:  I think normally the stipulations would go back, but I really don't have a strong feeling one way or the other.

MR. FOX:  Your Honor, that is our preference is that they go back.

THE COURT:  All right.

MR. HOCHMAN:  I would just need to see the stipulation again.

MR. FOX:  And then the only other thing, your Honor, the jury is not obviously getting disks back there, but we thought it might be beneficial if they have a cover sheet that shows them that the exhibit exists with a copy of the disk.  If that is okay with you, we will share with the defense and send it back.

THE COURT:  That is fine.  And, then, if they request the playing of an exhibit or a tape, it will be done here in open court.

MR. FOX:  Yes, your Honor.  And is it your practice to send back an exhibit list as well?

THE COURT:  I have done it on cases.  I think it might be helpful in this case.  So why don't you both take a look at any potential exhibit list, and if there is a dispute, let me know, and we will resolve it.

MR. FOX:  Yes, your Honor.

MR. HOCHMAN:  Okay.  Yes, your Honor.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

THE COURT: Okay. The verdict form, jury instructions will be ready in a few minutes.

Have you both now reviewed with the clerk which exhibits are to go back?

MR. JAUREGUI: Yes, your Honor. With the exception of I think there are 15 folders that have photocopies of the disks in them and there are four that we discussed the other day. And I think there is no issue with them. We just need to place them in the box.

MR. HOCHMAN: We will confer, your Honor.

THE COURT: That is fine.

MR. JAUREGUI: All the others we have gone together with counsel last week.

THE COURT: Okay. And do you want to be present in the morning when the jury starts the day?

MR. HOCHMAN: In other words, would you bring them all in here as opposed to -- If we weren't present, I will talk to my client in one moment, your Honor. If we weren't present, would your clerk notify us the jury has started deliberations in case there is some juror that hasn't shown up.

THE COURT: We will notify you if there is a problem with a juror.

MR. HOCHMAN: Very good.

THE COURT: Otherwise, the jury will start

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

deliberating at 8:00 o'clock.

MR. HOCHMAN:  May I have one moment, your Honor?

THE COURT:  That is fine.

(Counsel and defendant confer.)

MR. HOCHMAN:  It is fine with us, your Honor, if we are not here when the jury starts the day.

THE COURT:  Okay.

THE COURT:  Anything else?

MR. FOX:  No, your Honor.

MR. HOCHMAN:  No, your Honor.

THE COURT:  All right.  If you want to see the instructions or the verdict form, should be ready in about 15 minutes at the most.

(Proceedings concluded.)

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28,

United States Code, the foregoing is a true and correct

transcript of the stenographically reported proceedings held

in the above-entitled matter and that the transcript page

format is in conformance with the regulations of the

Judicial Conference of the United States.

Date:  April 18, 2017


 /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

MR. FOX: [31]   2451/24
2452/7 2452/12 2452/14
2460/7 2460/9 2461/21 2463/8
2463/10 2472/14 2473/4
2474/12 2475/9 2475/22
2476/10 2477/6 2486/11
2487/11 2488/1 2488/8
2488/13 2491/2 2493/1
2493/21 2495/1 2518/10
2519/3 2519/8 2519/17
2519/23 2521/8
MR. HOCHMAN: [42]
MR. JAUREGUI: [2]   2520/4
2520/11
THE COURT: [54]

**'**

'20's [1]   2466/8
'30's [1]   2466/8
'50's [1]   2466/8
'60's [1]   2466/9

**—**

-and [3]   2448/4 2448/5
2448/11

**/**

/s [1]   2522/12

**1**

10 [3]   2484/2 2484/5 2518/6
1001 [1]   2508/24
12th [1]   2448/6
13 [2]   2447/17 2450/1
13th [1]   2478/3
15 [4]   2484/2 2484/5 2520/6
2521/13
1503 [1]   2507/10
16-66 [1]   2447/8
1601 [1]   2448/11
1750 [1]   2469/18
18 [4]   2505/12 2507/10
2508/24 2522/10
18th [2]   2478/6 2505/16
19th [2]   2480/16 2483/12
1:00 [1]   2450/2

**2**

2011 [8]   2452/16 2453/6
2453/18 2454/17 2457/24
2481/10 2505/17 2505/17
2013 [4]   2453/16 2457/24
2459/24 2493/11
2017 [3]   2447/17 2450/1
2522/10
2050 [1]   2448/12
20th [2]   2473/14 2483/12
22 [1]   2489/18
22nd [1]   2456/17
23rd [6]   2454/17 2456/21
2474/15 2474/17 2479/20
2480/18
24th [2]   2456/18 2457/6
2514 [1]   2513/4
26 [5]   2452/16 2461/1 2478/7
2491/16 2505/17
26th [2]   2474/15 2479/25
27th [2]   2471/4 2471/12
28 [1]   2522/4
2:45 [1]   2513/3
2:46 [1]   2513/3

**3**

30 [1]   2484/4
31 [2]   2461/18 2461/23
312 [2]   2447/22 2448/6
33 [1]   2487/22

34 [1]   2488/23
371 [1]   2505/12
3:30 [2]   2515/11 2515/13

**4**

4.1 [6]   2485/5 2485/5
2485/11 2485/13 2486/2
2486/7
4.10 [1]   2489/9
40 [1]   2476/6
41 [2]   2476/6 2476/6
410 [1]   2489/17
436 [1]   2447/22
45 [1]   2452/8

**5**

5000 [1]   2479/5
5118 [1]   2479/6

**6**

600 [4]   2457/20 2457/21
2457/21 2457/25
66 [1]   2447/8

**7**

71 [1]   2466/10
753 [1]   2522/4

**8**

8200 [1]   2469/18
8:00 a.m [1]   2515/10
8:00 o'clock [1]   2521/1

**9**

90012 [2]   2447/22 2448/6
90404 [1]   2448/12
9858 [2]   2447/21 2522/12

**A**

a.m [1]   2515/10
ability [2]   2481/23 2500/5
able [2]   2465/25 2483/18
about [111]
above [1]   2522/7
above-entitled [1]   2522/7
ABRAMS [1]   2448/11
absolutely [4]   2453/4 2454/3
2466/11 2467/15
abuse [2]   2470/4 2503/7
abuses [1]   2473/16
Academia [1]   2469/19
accept [1]   2518/24
accompanied [1]   2515/18
accompany [1]   2517/22
accomplish [1]   2505/22
according [2]   2457/6 2512/7
account [2]   2456/5 2500/4
accounts [3]   2484/16 2511/7
2517/2
across [1]   2472/6
act [4]   2505/24 2506/22
2507/3 2507/4
acted [5]   2506/10 2507/17
2507/24 2509/9 2509/10
acting [1]   2508/14
actions [5]   2461/6 2474/2
2474/3 2475/12 2508/1
activities [5]   2489/8
2489/12 2503/12 2509/14
2509/18
activity [1]   2504/6
acts [3]   2483/4 2483/5
2507/7
actual [2]   2492/8 2507/22
actually [8]   2453/8 2456/14
2457/11 2460/4 2477/8
2477/20 2492/25 2518/23
add [3]   2457/20 2489/6

2491/16
adding [1]   2493/9
addition [3]   2497/8 2499/7
2502/4
additional [3]   2489/22
2490/23 2490/24
address [3]   2471/24 2485/3
2511/15
admits [1]   2485/10
admitted [4]   2452/20 2455/24
2504/24 2505/6
advance [1]   2506/16
advise [1]   2512/8
advises [1]   2486/4
affairs [1]   2470/5
affect [2]   2461/6 2492/15
afraid [1]   2510/4
after [24]   2451/22 2462/6
2462/6 2471/25 2477/14
2479/13 2479/19 2480/4
2481/22 2481/25 2483/17
2484/21 2485/24 2489/5
2489/17 2494/3 2497/6
2497/23 2498/2 2510/1 2510/9
2512/5 2512/24 2517/13
again [19]   2453/16 2455/4
2456/2 2463/1 2464/12
2472/25 2473/1 2473/24
2474/13 2476/11 2478/16
2478/18 2480/9 2484/8
2486/19 2487/15 2488/25
2515/19 2519/8
against [4]   2481/23 2500/22
2502/11 2512/3
age [3]   2465/9 2486/23
2487/16
agencies [1]   2503/21
agency [1]   2508/23
agency's [1]   2509/17
agent [13]   2452/17 2457/10
2458/14 2461/8 2467/8 2471/9
2471/11 2472/2 2477/11
2477/15 2477/23 2478/10
2480/22
agents [13]   2463/17 2470/18
2470/19 2471/2 2476/9 2489/7
2489/11 2489/13 2503/11
2503/12 2504/2 2504/15
2508/15
agree [2]   2486/2 2496/15
agreed [3]   2498/9 2506/5
2506/8
agreeing [1]   2509/4
agreement [8]   2481/2 2493/18
2505/18 2506/2 2506/4 2506/7
2509/23 2512/5
ahead [3]   2460/9 2467/19
2469/6
aide's [1]   2478/25
aides [1]   2479/2
all [77]
allegations [1]   2503/6
alleged [2]   2501/5 2506/13
allow [1]   2516/20
allowed [2]   2475/6 2484/12
alone [1]   2455/15
along [1]   2460/19
already [7]   2456/6 2462/22
2467/13 2467/13 2468/21
2491/20 2495/11
also [8]   2457/4 2458/6
2463/11 2469/18 2470/12
2471/24 2476/25 2496/13
alternate [6]   2515/23
2515/24 2516/2 2516/7
2517/10 2517/24
alternates [4]   2516/10
2516/18 2517/17 2517/22
Although [3]   2498/16 2501/2

**A**

Although... **[1]**  2502/18
**am [30]**  2451/3 2451/19
 2463/25 2469/15 2469/16
 2472/18 2473/25 2475/13
 2475/16 2476/6 2485/3
 2485/11 2487/13 2489/2
 2489/9 2490/3 2491/10
 2492/14 2495/11 2495/12
 2495/14 2495/19 2515/3
 2515/6 2515/23 2516/1
 2517/16 2517/21 2518/12
 2518/22
**America [1]**  2447/6
**amongst [1]**  2493/18
**ANDERSON [1]**  2447/3
**Andre [3]**  2471/10 2477/14
 2482/20
**ANGELES [7]**  2447/16 2447/22
 2448/6 2450/1 2469/19 2503/7
 2503/16
**anger [1]**  2476/18
**another [3]**  2457/25 2499/18
 2506/11
**answer [4]**  2467/13 2474/13
 2494/25 2512/20
**answering [1]**  2512/18
**answers [2]**  2473/2 2498/17
**Anthony [10]**  2456/25 2457/2
 2458/13 2463/17 2473/14
 2475/3 2479/13 2480/15
 2480/16 2480/20
**any [62]**
**anybody [2]**  2467/11 2468/6
**anybody's [1]**  2495/15
**anyone [14]**  2464/25 2468/8
 2483/1 2484/9 2484/11
 2484/13 2510/17 2510/18
 2512/21 2515/16 2516/17
 2516/19 2516/24 2517/2
**anything [15]**  2456/4 2459/13
 2459/19 2462/16 2476/1
 2476/11 2486/23 2491/21
 2496/25 2498/25 2499/10
 2510/19 2511/3 2511/7 2521/8
**anyway [2]**  2466/25 2470/1
**Apparently [1]**  2467/10
**appearances [2]**  2448/1
 2503/13
**appears [1]**  2485/22
**applied [5]**  2464/23 2464/23
 2464/24 2464/25 2489/19
**applies [3]**  2464/24 2496/8
 2510/24
**apply [2]**  2487/25 2496/13
**approach [2]**  2472/1 2516/20
**approached [1]**  2511/2
**approaches [2]**  2484/13
 2516/24
**approaching [1]**  2476/8
**appropriate [1]**  2487/21
**approved [1]**  2482/24
**Approving [1]**  2480/19
**April [3]**  2453/15 2457/24
 2522/10
**are [99]**
**area [1]**  2453/24
**arguable [1]**  2488/14
**argued [3]**  2486/21 2487/15
 2487/16
**arguing [1]**  2463/12
**argument [14]**  2452/19 2463/4
 2463/23 2472/13 2476/13
 2480/18 2491/14 2492/13
 2492/22 2494/7 2495/15
 2502/14 2502/19 2503/5
**arguments [10]**  2461/17
 2484/18 2487/15 2491/15

2491/20 2491/22 2493/7
 2498/10 2498/20 2499/2
**arise [1]**  2490/21
**arising [4]**  2501/14 2501/18
 2501/22 2502/9
**arm [1]**  2508/14
**around [6]**  2456/17 2456/24
 2457/2 2464/11 2475/4 2488/6
**arrest [6]**  2458/15 2459/21
 2467/9 2471/8 2478/10
 2485/24
**arrested [2]**  2470/24 2477/11
**articulated [1]**  2490/16
**as [59]**
**ask [11]**  2467/12 2483/20
 2489/21 2490/24 2495/17
 2515/3 2515/6 2515/23 2516/1
 2517/16 2517/21
**asked [9]**  2456/20 2459/2
 2459/3 2467/11 2477/2
 2478/19 2485/8 2489/22
 2511/2
**asking [8]**  2451/19 2456/24
 2467/1 2467/2 2467/3 2467/4
 2475/15 2495/19
**ass [1]**  2457/15
**assembly [4]**  2516/12 2517/8
 2517/17 2517/23
**assign [1]**  2503/23
**assist [1]**  2511/22
**Assistant [2]**  2466/23 2467/7
**assisting [1]**  2504/4
**associated [1]**  2517/3
**associating [1]**  2506/25
**assume [2]**  2503/13 2518/9
**assumes [1]**  2489/13
**assurances [1]**  2469/2
**assuredly [1]**  2478/21
**attack [1]**  2454/1
**attempt [3]**  2452/8 2510/7
 2512/13
**attempted [1]**  2474/22
**attempting [1]**  2504/18
**attention [2]**  2459/11
 2459/12
**Attorney [3]**  2448/5 2461/9
 2471/15
**attorney's [10]**  2456/21
 2467/3 2477/21 2477/21
 2477/22 2477/25 2479/14
 2503/18 2509/8 2509/15
**attorneys [2]**  2459/5 2459/8
**Audio [5]**  2473/4 2474/12
 2475/9 2475/22 2476/10
**August [17]**  2454/17 2456/17
 2456/18 2456/21 2457/6
 2457/24 2473/14 2474/15
 2474/15 2478/6 2479/20
 2480/16 2480/18 2481/10
 2483/12 2483/12 2505/16
**August 18th [2]**  2478/6
 2505/16
**August 19th [2]**  2480/16
 2483/12
**August 20th [2]**  2473/14
 2483/12
**August 22nd [1]**  2456/17
**August 23rd [3]**  2454/17
 2474/15 2480/18
**August 24th [2]**  2456/18
 2457/6
**August 26th [1]**  2474/15
**AUSA [1]**  2448/5
**authority [5]**  2489/20
 2503/17 2504/12 2504/14
 2504/16
**automatically [1]**  2518/16
**available [2]**  2496/9 2518/6
**average [1]**  2464/16

**awaiting [1]**  2465/2
**aware [5]**  2467/18 2467/15
 2475/25 2481/25 2518/12
**away [5]**  2474/6 2475/3
 2478/18 2481/17 2482/5

**B**

**Baca [80]**
**Baca's [14]**  2453/3 2453/10
 2453/13 2454/10 2454/12
 2454/14 2455/13 2460/10
 2465/9 2471/1 2474/6 2479/20
 2479/25 2480/3
**back [34]**  2453/17 2456/12
 2457/22 2460/15 2461/3
 2461/22 2461/24 2463/15
 2464/5 2465/14 2474/24
 2477/9 2477/12 2477/18
 2481/13 2483/18 2484/5
 2484/21 2491/5 2492/9 2493/4
 2515/17 2516/5 2518/7
 2518/10 2518/16 2518/17
 2518/24 2519/2 2519/5
 2519/10 2519/14 2519/19
 2520/4
**backs [2]**  2450/21 2492/6
**bad [3]**  2459/17 2468/23
 2468/23
**base [1]**  2510/12
**based [7]**  2451/14 2465/23
 2465/23 2465/24 2497/19
 2497/20 2511/14
**basically [1]**  2450/24
**basis [2]**  2451/13 2451/16
**be [78]**
**bear [1]**  2500/12
**bears [1]**  2490/1
**beatings [2]**  2465/8 2473/19
**became [1]**  2505/20
**because [23]**  2450/12 2450/22
 2451/8 2454/25 2463/19
 2463/21 2463/25 2464/18
 2467/13 2471/9 2472/5
 2472/25 2473/12 2474/1
 2475/7 2476/18 2478/24
 2479/2 2491/8 2492/23
 2495/13 2510/6 2510/12
**become [4]**  2468/25 2504/4
 2506/24 2506/25
**becomes [2]**  2506/14 2512/10
**been [30]**  2452/20 2454/16
 2454/17 2454/21 2457/7
 2457/8 2458/2 2464/18
 2466/16 2470/24 2472/10
 2472/11 2473/8 2473/15
 2474/17 2477/11 2484/18
 2485/6 2488/10 2493/21
 2494/8 2494/12 2502/3 2505/5
 2511/4 2512/4 2512/25
 2516/15 2517/13 2517/15
**before [16]**  2452/16 2453/4
 2455/13 2457/1 2457/16
 2459/5 2463/12 2465/4
 2470/11 2470/13 2471/10
 2485/15 2508/19 2512/18
 2515/22 2518/7
**begin [2]**  2509/19 2518/1
**beginning [5]**  2458/21
 2463/14 2480/16 2496/20
 2505/16
**behind [1]**  2476/21
**being [17]**  2458/10 2458/19
 2458/20 2459/2 2459/3
 2462/15 2465/2 2465/3
 2467/15 2468/15 2468/19
 2473/10 2478/4 2480/11
 2480/19 2480/20 2481/5
**belief [1]**  2510/10
**believability [2]**  2500/12

**B**

**believability... [1]**  2502/13
**believable [1]**  2500/15
**believe [19]**  2460/12 2460/17
 2463/19 2464/14 2467/10
 2468/6 2464/10 2472/19
 2482/16 2488/11 2488/20
 2489/3 2490/21 2491/7
 2495/17 2499/25 2500/1
 2500/1 2501/11
**believed [1]**  2460/23
**belongings [3]**  2515/24
 2516/3 2516/5
**beloved [1]**  2459/18
**beneficial [1]**  2519/11
**benefit [2]**  2462/20 2462/22
**benefits [5]**  2454/21 2455/11
 2456/6 2462/24 2466/24
**best [3]**  2451/19 2458/5
 2472/4
**between [6]**  2457/23 2478/14
 2479/25 2481/8 2499/21
 2505/18
**beyond [23]**  2464/16 2464/22
 2465/4 2466/3 2466/5 2466/13
 2468/7 2483/17 2483/21
 2497/7 2497/11 2497/16
 2497/18 2497/25 2498/4
 2501/3 2504/10 2505/15
 2507/13 2508/4 2508/9 2509/2
 2512/3
**bias [1]**  2500/8
**big [6]**  2457/21 2458/19
 2466/2 2474/7 2474/7 2474/8
**Birotte [6]**  2471/10 2471/15
 2477/14 2478/4 2482/9
 2482/21
**bishop [1]**  2454/16
**bishops [5]**  2453/25 2454/8
 2475/11 2476/22 2480/10
**bit [1]**  2468/4
**blame [4]**  2482/22 2482/22
 2483/6 2483/7
**blog [1]**  2510/23
**blogs [1]**  2516/22
**bluster [1]**  2471/6
**boards [1]**  2516/22
**BOCKIUS [1]**  2448/10
**borderline [1]**  2493/10
**both [7]**  2453/14 2455/14
 2455/16 2499/19 2509/11
 2519/21 2520/3
**bottom [1]**  2489/23
**Boulevard [1]**  2448/11
**bound [1]**  2517/10
**box [1]**  2520/9
**BRANDON [1]**  2448/4
**break [3]**  2484/4 2496/1
 2515/21
**breaks [1]**  2515/15
**BRIANNA [1]**  2448/11
**briefed [1]**  2452/21
**briefly [1]**  2494/20
**bring [4]**  2452/10 2471/20
 2495/24 2520/16
**broader [1]**  2473/5
**brought [2]**  2515/14 2516/13
**Brown [10]**  2456/25 2457/2
 2458/14 2463/17 2473/14
 2475/3 2479/13 2480/15
 2480/16 2480/20
**bugs [2]**  2480/6 2480/7
**bulletin [1]**  2516/22
**burden [2]**  2466/12 2497/10
**Bureau [2]**  2509/7 2509/14
**butt [2]**  2457/14 2457/17

**C**

**CA [2]**  2448/6 2448/12
**calendar [1]**  2457/23
**CALIFORNIA [4]**  2447/2
 2447/16 2447/22 2450/1
**call [8]**  2459/9 2471/9
 2475/25 2476/3 2477/14
 2478/14 2478/14 2479/14
**called [2]**  2455/9 2455/10
**caller [2]**  2478/23 2479/4
**calling [5]**  2456/17 2456/24
 2457/2 2481/15 2481/16
**calls [7]**  2465/6 2470/7
 2477/13 2477/14 2477/16
 2480/5 2481/12
**came [1]**  2479/18
**can [23]**  2450/14 2451/20
 2451/22 2455/15 2456/4
 2461/1 2461/4 2461/12 2466/5
 2475/8 2484/25 2485/18
 2489/25 2492/17 2493/1
 2493/4 2495/9 2499/18
 2499/19 2509/23 2510/8
 2515/11 2518/2
**can't [3]**  2477/24 2485/14
 2518/18
**cannot [1]**  2475/12
**capable [1]**  2509/17
**captured [1]**  2454/8
**careful [3]**  2497/21 2497/23
 2498/2
**Carey [11]**  2454/10 2462/7
 2462/17 2470/3 2473/13
 2477/19 2494/24 2494/25
 2495/10 2501/14 2502/8
**Carey's [1]**  2455/18
**Carlos [1]**  2479/4
**carrying [2]**  2505/25 2507/5
**cartels [1]**  2468/24
**case [55]**
**cases [1]**  2519/20
**cause [1]**  2461/2
**caution [1]**  2502/5
**Cecil [1]**  2477/2
**cell [3]**  2470/6 2470/8
 2477/13
**CENTRAL [4]**  2447/2 2465/1
 2465/8 2474/18
**certain [6]**  2499/8 2501/2
 2502/15 2502/16 2504/21
 2505/5
**certainly [6]**  2459/6 2469/17
 2478/11 2482/1 2494/15
 2518/19
**CERTIFICATE [1]**  2522/1
**certify [1]**  2522/4
**chairs [2]**  2516/4 2517/20
**chance [1]**  2450/8
**change [3]**  2480/21 2510/4
 2510/10
**charge [9]**  2464/2 2464/8
 2477/22 2477/23 2505/14
 2507/12 2508/5 2508/6 2509/1
**charged [25]**  2455/19 2455/20
 2459/23 2464/25 2468/14
 2470/24 2472/10 2472/11
 2490/2 2493/12 2493/14
 2493/17 2493/21 2494/4
 2494/4 2500/21 2500/22
 2501/7 2502/16 2502/23
 2504/11 2505/10 2507/8
 2508/20 2509/3
**charges [8]**  2459/22 2463/12
 2465/3 2493/19 2497/4
 2497/11 2500/19 2501/1
**chart [3]**  2493/12 2493/14
 2493/24
**charts [5]**  2504/21 2504/23

2505/3 2505/5 2505/6
2507/2 2510/23 2510/22
**chat [2]**  2510/23 2510/22
**check [1]**  2450/9
**Checked [1]**  2477/15
**chess [6]**  2453/18 2453/19
 2453/20 2454/18 2455/3
 2483/15
**chewed [3]**  2457/14 2457/15
 2457/17
**choose [1]**  2503/21
**Circuit [2]**  2486/8 2490/22
**circumstances [3]**  2485/16
 2486/5 2487/6
**circumstantial [5]**  2455/10
 2499/13 2499/16 2499/19
 2499/22
**cite [1]**  2495/1
**cited [1]**  2494/24
**cites [2]**  2492/8 2494/21
**civil [7]**  2473/6 2473/10
 2473/15 2473/21 2473/23
 2473/25 2474/4
**claimed [1]**  2476/13
**claims [3]**  2467/1 2477/8
 2477/9
**clarity [1]**  2491/7
**clean [2]**  2452/9 2518/5
**clear [4]**  2463/13 2466/2
 2474/3 2474/25
**clearly [1]**  2475/20
**clerk [6]**  2469/19 2515/6
 2517/9 2518/10 2520/3
 2520/19
**client [4]**  2452/23 2466/15
 2466/18 2520/18
**climb [1]**  2465/18
**Clips [1]**  2476/6
**cloak [1]**  2464/9
**closing [14]**  2452/19 2461/16
 2477/17 2480/18 2491/14
 2491/14 2491/20 2491/22
 2492/19 2493/7 2494/7
 2495/15 2498/20 2499/2
**Cloverfield [1]**  2448/11
**clue [2]**  2473/6 2473/25
**co [6]**  2467/21 2467/24
 2474/16 2481/13 2481/16
 2504/5
**co-conspirator [1]**  2467/24
**co-conspirators [5]**  2467/21
 2474/16 2481/13 2481/16
 2504/5
**Code [4]**  2505/13 2507/10
 2508/24 2522/5
**come [8]**  2476/21 2478/16
 2484/5 2484/21 2491/5 2510/5
 2515/4 2516/5
**comes [3]**  2454/3 2464/16
 2475/15
**coming [1]**  2457/3
**comment [2]**  2485/19 2485/22
**commentary [1]**  2511/7
**commit [4]**  2490/1 2505/18
 2506/3 2506/12
**commits [1]**  2463/24
**committed [9]**  2460/19 2466/9
 2483/5 2483/6 2501/2 2501/4
 2501/7 2504/11 2506/5
**committing [2]**  2470/25
 2502/16
**common [5]**  2481/1 2482/3
 2482/6 2497/20 2506/10
**communicate [4]**  2510/17
 2510/18 2512/11 2512/14
**communicating [1]**  2510/25
**compared [1]**  2457/24
**comparing [1]**  2482/19
**complaint [1]**  2491/13
**complete [1]**  2512/6

**C**

completely [5]  2461/14
 2462/16 2462/17 2472/12
 2476/5
computer [2]  2461/23 2479/14
concept [1]  2490/18
concern [1]  2450/17
concerning [1]  2512/15
conclude [1]  2482/19
concluded [1]  2521/14
condition [1]  2456/9
conduct [5]  2477/19 2500/21
 2503/22 2509/11 2517/11
conducted [2]  2504/8 2513/4
conducting [3]  2458/12
 2460/18 2504/3
confer [3]  2452/5 2520/10
 2521/4
Conference [1]  2522/9
conferred [1]  2518/9
confidently [1]  2478/21
conformance [1]  2522/8
confront [1]  2467/8
confrontation [1]  2472/2
confronting [2]  2476/9
 2478/10
confused [3]  2486/24 2491/5
 2491/6
connected [3]  2468/23 2469/1
 2469/3
connection [2]  2479/21
 2480/7
conscientious [1]  2510/9
consider [17]  2485/16
 2486/23 2487/5 2487/9
 2488/19 2489/25 2498/6
 2498/10 2498/13 2498/16
 2499/8 2499/18 2501/10
 2502/2 2502/12 2502/18
 2512/1
consideration [3]  2497/22
 2497/24 2498/3
considered [1]  2510/1
considering [1]  2500/3
considers [1]  2503/1
consistent [5]  2455/8
 2456/25 2457/3 2457/13
 2483/20
consistently [1]  2462/24
consists [1]  2498/7
conspiracy [27]  2455/17
 2463/16 2466/21 2466/23
 2467/17 2467/25 2480/24
 2481/5 2483/11 2483/22
 2505/21 2505/24 2505/25
 2506/1 2506/3 2506/6 2506/8
 2506/14 2506/17 2506/18
 2506/20 2506/22 2506/23
 2507/2 2507/5 2507/6 2508/5
conspirator [4]  2467/24
 2483/9 2506/24 2506/25
conspirators [9]  2467/21
 2474/16 2480/23 2481/3
 2481/13 2481/16 2504/5
 2506/7 2507/1
conspired [2]  2468/2 2468/5
conspiring [2]  2467/19
 2505/11
constitutional [1]  2497/13
consult [2]  2496/10 2512/17
consulting [2]  2511/8 2517/4
consuming [1]  2462/8
contact [5]  2473/21 2479/3
 2481/8 2481/9 2511/5
continue [2]  2475/6 2512/19
continued [3]  2477/18 2478/3
 2478/5
continuing [1]  2475/10

contraband [1]  2469/6
contradicted [1]  2504/9
control [1]  2500/24 2503/17
controls [10]  2451/10
 2451/12 2451/18 2453/22
 2460/7 2463/6 2463/8 2491/19
 2495/4 2498/24
conversation [6]  2458/18
 2470/18 2470/20 2471/1
 2474/19 2475/1
convict [2]  2455/15 2465/22
convicted [10]  2454/21
 2465/2 2466/8 2472/10
 2472/11 2494/12 2501/18
 2501/22 2502/8 2502/23
convictions [3]  2472/15
 2502/10 2502/12
convince [1]  2468/6
convinced [4]  2465/23
 2497/17 2497/24 2498/4
cooperate [2]  2478/8 2480/2
cooperation [6]  2478/3
 2478/5 2478/6 2478/7 2478/9
 2478/11
copy [2]  2496/8 2519/13
correct [4]  2486/8 2491/3
 2491/8 2522/5
correctly [1]  2505/1
corruption [1]  2503/7
corruptly [1]  2507/17
could [14]  2454/8 2454/16
 2454/23 2454/23 2454/24
 2456/11 2459/9 2463/20
 2473/8 2479/6 2479/8 2479/8
 2486/14 2494/14
counsel [9]  2448/1 2452/5
 2484/19 2488/9 2492/13
 2493/19 2513/1 2520/13
 2521/4
count [15]  2468/1 2468/4
 2468/10 2468/13 2468/16
 2500/23 2500/23 2500/24
 2500/25 2505/10 2507/8
 2508/5 2508/6 2508/20 2509/4
country [1]  2464/21
counts [3]  2455/16 2455/16
 2467/16
county [4]  2464/4 2469/19
 2503/7 2503/16
couple [2]  2456/13 2518/12
course [3]  2454/10 2473/23
 2510/8
court [33]  2447/1 2447/21
 2451/19 2454/25 2469/25
 2479/22 2479/22 2480/1
 2484/19 2487/25 2489/21
 2490/24 2494/17 2494/17
 2495/17 2495/20 2499/10
 2502/21 2502/24 2503/1
 2509/22 2511/5 2511/18
 2512/1 2512/8 2512/12
 2512/16 2515/4 2515/6 2515/8
 2515/18 2517/21 2519/17
court's [1]  2495/19
court-ordered [2]  2454/25
 2487/25
courtroom [5]  2464/21 2512/9
 2516/5 2516/7 2517/24
cover [2]  2494/9 2519/12
covering [1]  2494/11
CR [1]  2447/8
Craig [2]  2454/9 2493/15
crime [17]  2465/24 2466/5
 2467/5 2468/9 2470/24
 2470/25 2483/5 2493/17
 2500/22 2501/14 2502/20
 2502/23 2503/20 2505/19
 2506/3 2506/5 2506/12
crimes [15]  2454/22 2454/22

 2460/19 2464/25 2473/22
 2474/9 2483/16 2490/6 2501/18
 2501/22 2502/9 2502/15
 2504/11 2506/3 2512/1
criminal [12]  2470/10
 2470/12 2480/21 2483/4
 2489/8 2489/12 2489/14
 2497/12 2503/3 2503/12
 2503/14 2506/1
criminally [4]  2453/7
 2453/11 2471/16 2483/13
CRR [1]  2522/12
CSR [2]  2447/21 2522/12
cuffs [5]  2452/15 2453/7
 2470/17 2470/22 2470/23
cure [5]  2450/22 2451/4
 2451/19 2490/4 2495/20
cured [1]  2451/17
cures [1]  2492/1
custodians [1]  2464/3

---

**D**

damning [1]  2464/19
date [6]  2458/17 2501/4
 2501/5 2501/7 2512/7 2522/10
dates [1]  2501/2
daughter [1]  2474/21
day [9]  2447/14 2457/16
 2515/14 2516/12 2516/14
 2517/19 2520/8 2520/15
 2521/6
days [7]  2457/20 2457/21
 2457/21 2457/23 2457/25
 2474/14 2474/15
deal [3]  2457/21 2493/19
 2495/12
dealing [2]  2485/22 2494/18
December [2]  2459/23 2493/11
deception [2]  2489/10
 2503/10
decide [14]  2451/9 2486/15
 2486/18 2496/13 2496/16
 2499/11 2499/22 2499/25
 2500/23 2502/21 2504/7
 2504/9 2509/25 2512/1
decided [1]  2482/23
deciding [6]  2488/19 2498/6
 2498/13 2499/24 2501/10
 2512/2
decision [4]  2482/23 2487/4
 2510/6 2510/9
decisions [3]  2503/24
 2509/14 2509/17
defend [1]  2466/15
defendant [47]
defendant's [4]  2490/1
 2508/7 2508/10 2508/11
defense [4]  2491/8 2493/6
 2499/2 2519/14
deflect [1]  2478/20
deliberate [2]  2483/19
 2515/10
deliberately [1]  2509/10
deliberating [4]  2515/10
 2516/13 2517/14 2521/1
deliberation [1]  2515/19
deliberations [11]  2484/7
 2497/6 2509/19 2509/21
 2510/17 2512/7 2512/11
 2512/19 2515/22 2518/2
 2520/20
denied [2]  2479/22 2480/1
department [10]  2453/14
 2454/11 2458/25 2464/5
 2464/11 2469/20 2481/20
 2503/8 2503/16 2508/23
department's [1]  2459/7
departments [1]  2503/15
depend [1]  2500/14

**D**

**deputies [8]**   2465/3 2469/22 2470/1 2473/22 2473/22 2474/5 2474/6 2480/2
**deserves [2]**   2500/17 2505/9
**Despite [1]**   2459/15
**destroy [2]**   2464/1 2464/5
**destroyed [1]**   2463/20
**detail [1]**   2506/8
**details [2]**   2462/3 2506/18
**determination [1]**   2485/8
**determine [3]**   2472/17 2500/18 2505/3
**determining [1]**   2502/12
**devices [1]**   2480/9
**dictionaries [2]**   2511/9 2517/4
**did [22]**   2452/18 2452/22 2452/23 2452/24 2455/19 2458/9 2464/17 2469/8 2472/5 2474/21 2475/14 2477/2 2477/25 2482/8 2485/19 2488/5 2492/24 2494/15 2495/3 2497/15 2499/16 2507/7
**didn't [26]**   2453/1 2455/25 2459/19 2459/20 2459/20 2460/24 2463/21 2464/1 2464/5 2467/12 2469/15 2471/18 2471/24 2472/21 2473/7 2473/8 2475/24 2476/1 2476/11 2480/14 2480/17 2481/8 2482/13 2490/18 2494/19 2518/13
**differ [2]**   2491/17 2498/22
**different [7]**   2451/11 2468/4 2476/15 2477/8 2486/9 2487/11 2494/15
**differs [1]**   2463/7
**Dimas [1]**   2480/20
**diplomatic [1]**   2478/4
**direct [13]**   2455/13 2474/18 2475/1 2476/14 2476/17 2476/18 2499/13 2499/14 2499/14 2499/19 2499/21 2503/17 2508/16
**dirty [2]**   2454/1 2454/12
**discharged [4]**   2512/25 2516/11 2516/15 2517/15
**disciplined [4]**   2459/16 2479/9 2494/2 2494/3
**discuss [6]**   2484/9 2484/12 2509/22 2511/4 2515/15 2516/17
**discussed [3]**   2506/10 2510/2 2520/8
**discussing [3]**   2510/16 2510/21 2516/21
**discussion [1]**   2510/4
**discussions [1]**   2458/22
**disk [1]**   2519/13
**disks [2]**   2519/10 2520/7
**dislikes [1]**   2496/18
**disown [1]**   2483/3
**dispute [1]**   2519/23
**Disputed [3]**   2489/3 2489/5 2489/19
**disregard [3]**   2495/14 2499/6 2505/3
**distancing [1]**   2460/22
**distinction [1]**   2499/20
**distort [1]**   2452/25
**distorted [1]**   2492/3
**district [7]**   2447/1 2447/2 2447/4 2477/20 2477/21 2477/22 2477/25
**divert [2]**   2459/10 2459/12
**DIVISION [1]**   2447/2

**do [67]**
**documents [2]**   2459/6 2459/7
**does [17]**   2457/4 2458/16 2464/7 2466/25 2471/12 2473/11 2474/1 2478/19 2487/10 2497/8 2500/13 2506/4 2506/17 2506/23 2506/24 2507/3 2507/21
**doesn't [8]**   2458/18 2464/6 2473/24 2478/20 2478/20 2480/25 2482/3 2487/18
**doing [6]**   2454/11 2455/22 2467/6 2469/12 2470/21 2471/18
**don't [37]**   2450/22 2452/15 2453/7 2458/11 2459/13 2459/13 2468/5 2468/10 2470/17 2470/22 2470/22 2473/1 2473/2 2475/6 2475/19 2477/3 2482/4 2482/4 2482/6 2482/21 2483/6 2483/8 2486/12 2486/24 2487/16 2487/20 2489/15 2489/16 2490/15 2490/21 2492/1 2495/5 2495/16 2516/8 2518/14 2519/2 2519/21
**done [12]**   2452/4 2470/13 2478/6 2478/11 2481/24 2482/7 2491/2 2496/25 2499/1 2507/5 2519/17 2519/20
**door [3]**   2465/16 2465/17 2475/15
**doors [1]**   2465/15
**double [1]**   2474/23
**doubled [2]**   2492/2 2492/11
**doubt [26]**   2464/17 2464/20 2464/23 2465/5 2466/4 2466/6 2466/13 2468/7 2483/17 2483/22 2497/7 2497/11 2497/16 2497/19 2497/19 2497/19 2497/25 2498/4 2501/4 2504/10 2505/15 2507/13 2508/4 2508/9 2509/2 2512/3
**down [4]**   2461/3 2492/2 2492/11 2517/22
**draw [1]**   2497/13
**drug [1]**   2468/24
**duplicate [1]**   2479/24
**during [11]**   2470/7 2477/16 2481/9 2491/14 2491/22 2492/21 2499/1 2504/21 2510/17 2511/20 2512/10
**duty [9]**   2466/14 2466/15 2466/18 2496/7 2496/11 2496/13 2498/1 2498/5 2504/9

**E**

**e-mail [5]**   2461/25 2462/6 2478/25 2479/1 2510/22
**e-mails [1]**   2516/23
**each [16]**   2450/21 2466/4 2466/5 2467/23 2495/9 2500/23 2500/23 2505/14 2507/12 2509/25 2510/8 2511/15 2515/14 2515/16 2516/14
**ease [1]**   2462/9
**easily [1]**   2479/7
**EDDIE [1]**   2448/4
**effect [4]**   2461/5 2461/13 2508/1 2510/11
**either [4]**   2493/6 2499/1 2499/19 2499/21
**elect [1]**   2509/19
**elected [1]**   2465/10
**electronic [1]**   2510/22
**element [4]**   2466/4 2466/5

**elements [7]**   2466/19 2468/16 2505/15 2507/13 2508/3 2509/2 2509/5
**elevators [1]**   2465/18
**else [9]**   2454/15 2456/4 2468/8 2478/2 2484/11 2486/23 2510/18 2516/19 2521/8
**embarassed [1]**   2474/22
**employer [1]**   2510/25
**end [4]**   2478/15 2483/13 2490/13 2497/6
**ended [1]**   2483/13
**ending [2]**   2461/14 2505/17
**enforcement [10]**   2469/17 2482/12 2485/7 2489/6 2489/10 2503/9 2503/15 2503/21 2504/3 2504/17
**engage [3]**   2489/10 2503/10 2504/16
**enough [2]**   2483/16 2506/9
**ensuing [1]**   2474/14
**ensure [1]**   2511/13
**entire [3]**   2462/8 2472/21 2481/20
**entirely [6]**   2456/25 2457/3 2459/19 2491/24 2497/2 2499/4
**entitled [3]**   2464/15 2503/21 2522/7
**EPC [1]**   2457/8
**essence [1]**   2487/7
**essential [2]**   2466/21 2476/24
**establish [1]**   2508/13
**evaluate [1]**   2496/11
**evaluating [2]**   2502/1 2502/19
**evaluations [1]**   2503/22
**even [10]**   2459/17 2466/22 2468/5 2475/7 2481/22 2482/6 2486/7 2492/15 2506/17 2508/7
**events [3]**   2501/15 2501/19 2502/9
**ever [2]**   2477/3 2512/13
**every [6]**   2464/21 2466/4 2483/8 2497/10 2506/8 2516/12
**everybody [3]**   2454/14 2478/25 2485/10
**everything [10]**   2462/12 2462/13 2464/17 2475/14 2480/25 2481/25 2482/10 2482/21 2483/3 2500/1
**EVID [1]**   2449/7
**evidence [86]**
**exactly [3]**   2453/19 2472/5 2492/10
**examine [1]**   2502/4
**examples [4]**   2490/11 2490/14 2490/16 2490/20
**except [2]**   2510/16 2512/14
**exception [1]**   2520/6
**excluded [1]**   2499/5
**exclusively [1]**   2502/21
**excuse [1]**   2477/7
**executive's [1]**   2457/8
**exhibit [7]**   2449/7 2461/18 2461/23 2519/12 2519/16 2519/19 2519/22
**exhibits [5]**   2477/18 2498/8 2498/11 2518/10 2520/4
**existed [1]**   2506/6
**existing [1]**   2506/20
**exists [2]**   2507/2 2519/12
**exited [1]**   2517/24
**expands [1]**   2474/13

**E**

**experience [1]**   2469/21
**explain [1]**   2504/22
**explains [1]**   2491/4
**exposed [2]**   2510/14 2511/17
**express [1]**   2517/12
**extent [6]**   2486/2 2486/3
 2492/18 2494/13 2494/14
 2502/2
**externally [1]**   2467/11
**extraordinary [1]**   2469/10
**eyes [2]**   2453/3 2453/3

**F**

**fact [16]**   2451/6 2456/8
 2459/15 2464/3 2464/6 2465/7
 2466/4 2466/8 2469/12
 2471/24 2489/15 2497/14
 2499/14 2499/18 2499/20
 2500/13
**factors [3]**   2500/11 2502/4
 2503/1
**facts [16]**   2452/25 2491/17
 2491/24 2492/3 2496/13
 2496/14 2498/7 2498/8
 2498/13 2498/22 2499/3
 2499/17 2499/24 2505/1
 2505/1 2505/4
**fair [1]**   2511/14
**fairness [1]**   2511/17
**false [15]**   2455/14 2455/17
 2468/11 2468/14 2474/25
 2483/24 2486/16 2486/17
 2486/19 2487/13 2489/13
 2503/13 2508/21 2509/3
 2509/6
**family [3]**   2484/10 2510/25
 2516/19
**far [1]**   2471/13
**fault [1]**   2459/14
**favorable [2]**   2501/21
 2501/24
**FBI [25]**   2454/17 2456/20
 2460/18 2461/9 2467/3 2467/8
 2469/2 2469/4 2469/13
 2469/15 2470/10 2470/10
 2471/16 2473/16 2474/6
 2474/17 2475/3 2475/6 2479/4
 2479/16 2480/19 2480/21
 2503/18 2508/13 2508/14
**feature [1]**   2510/24
**federal [24]**   2453/12 2455/20
 2458/12 2459/22 2460/13
 2461/2 2462/21 2466/10
 2475/14 2476/3 2476/19
 2476/24 2478/9 2503/6
 2503/17 2503/19 2503/20
 2504/8 2504/15 2507/16
 2507/18 2507/25 2509/7
 2509/14
**feds [1]**   2477/3
**feeling [1]**   2519/2
**fellow [7]**   2484/10 2484/20
 2509/22 2510/3 2510/16
 2511/24 2516/18
**few [1]**   2520/2
**fewer [1]**   2457/25
**fight [1]**   2494/1
**figure [3]**   2457/23 2474/24
 2488/10
**figures [1]**   2505/2
**finalize [1]**   2484/2
**Finally [1]**   2484/16
**find [13]**   2451/11 2465/21
 2468/12 2468/13 2473/18
 2483/20 2496/14 2497/5
 2498/1 2498/5 2499/18
 2506/12 2507/23

**fine [9]**   2460/9 2488/22
 2499/22 2502/21 2509/4
 2519/17 2520/21 2521/3
 2521/5
**finishes [1]**   2451/23
**fire [2]**   2453/25 2454/7
**firmly [1]**   2497/17
**first [13]**   2470/3 2473/11
 2486/14 2487/2 2487/7
 2489/15 2489/15 2491/14
 2505/16 2507/14 2509/6
 2517/18 2517/23
**fit [1]**   2515/15
**five [3]**   2457/19 2458/2
 2469/21
**five-and-a-half [3]**   2457/19
 2458/2 2469/21
**fix [1]**   2452/2
**floor [3]**   2448/6 2517/18
 2517/23
**focus [2]**   2452/22 2478/13
**focused [2]**   2456/13 2479/11
**focusing [2]**   2453/9 2461/18
**folders [1]**   2520/6
**follow [2]**   2465/20 2496/21
**following [10]**   2450/6
 2452/11 2484/23 2496/4
 2498/12 2505/15 2507/12
 2509/2 2515/1 2518/3
**force [1]**   2476/19
**forced [3]**   2455/1 2455/5
 2469/25
**forcing [1]**   2469/22
**foregoing [1]**   2522/5
**foreperson [2]**   2509/20
 2512/6
**forgiven [1]**   2472/20
**form [7]**   2488/1 2490/17
 2512/4 2512/6 2517/12 2520/1
 2521/12
**formal [1]**   2506/7
**format [1]**   2522/8
**formed [1]**   2481/2
**forth [1]**   2493/4
**forward [2]**   2478/5 2515/4
**forwarding [1]**   2479/1
**found [12]**   2465/4 2468/15
 2468/19 2469/1 2469/3 2469/8
 2469/9 2470/8 2477/10
 2505/13 2507/11 2508/25
**four [10]**   2451/2 2451/2
 2468/11 2468/14 2475/21
 2476/15 2476/23 2516/10
 2517/17 2520/7
**four alternates [2]**   2516/10
 2517/17
**four different [1]**   2476/15
**four false [2]**   2468/11
 2468/14
**four for [1]**   2451/2
**four lies [1]**   2476/23
**four that [1]**   2520/7
**FOX [8]**   2448/4 2451/23
 2452/7 2485/1 2492/1 2492/6
 2492/11 2493/10
**full [1]**   2506/17
**fully [1]**   2510/2
**funny [2]**   2472/1 2472/3
**further [2]**   2491/4 2506/16
**Furthermore [1]**   2506/19
**furthers [1]**   2506/23

**G**

**game [6]**   2453/19 2453/22
 2454/5 2454/18 2455/3
 2483/15
**gang [1]**   2468/24
**gave [2]**   2459/16 2479/4
**general [3]**   2479/6 2488/17

 2490/18
**Gemaco [3]**   2488/11 2493/25
 2494/6
**gentlemen [5]**   2460/6 2463/5
 2484/1 2515/9 2517/25
**Gerard [1]**   2454/6
**get [9]**   2454/8 2454/23
 2454/25 2455/4 2456/11
 2470/23 2471/18 2487/3
 2487/3
**getting [3]**   2469/3 2480/19
 2519/10
**Gilbert [1]**   2480/4
**give [14]**   2462/12 2475/13
 2484/6 2486/16 2486/19
 2488/21 2489/2 2489/3
 2491/10 2496/14 2499/23
 2501/11 2505/8 2517/7
**given [13]**   2451/5 2455/12
 2466/17 2466/23 2469/2
 2479/7 2485/11 2487/12
 2488/7 2488/18 2499/21
 2501/9 2517/9
**giving [3]**   2462/10 2490/3
 2490/11
**go [31]**   2451/20 2453/25
 2457/22 2459/5 2460/9
 2461/22 2463/15 2464/5
 2465/13 2465/16 2467/6
 2467/8 2467/19 2469/6
 2472/25 2478/2 2481/10
 2483/18 2487/18 2493/4
 2495/9 2504/24 2516/12
 2518/7 2518/10 2518/16
 2518/16 2518/24 2519/2
 2519/5 2520/4
**goes [4]**   2461/24 2463/24
 2465/9 2487/17
**going [56]**
**gone [2]**   2458/14 2520/12
**good [3]**   2475/13 2505/7
 2520/24
**got [12]**   2457/14 2457/17
 2459/1 2459/3 2459/3 2470/7
 2471/9 2472/6 2472/6 2474/6
 2485/1 2493/5
**gotten [2]**   2482/15 2482/17
**govern [1]**   2517/11
**government [38]**
**government's [9]**   2459/11
 2466/12 2486/10 2489/4
 2489/25 2491/1 2493/7 2499/2
 2503/6
**governmental [1]**   2508/23
**grand [19]**   2455/5 2455/6
 2455/7 2456/1 2461/5 2461/6
 2461/11 2461/13 2462/23
 2503/19 2507/16 2507/19
 2507/22 2507/25 2508/2
 2508/14 2508/16 2508/16
 2508/19
**great [1]**   2459/24
**greater [3]**   2461/13 2464/15
 2502/5
**Greg [5]**   2464/24 2479/17
 2480/14 2488/23 2494/9
**guess [1]**   2451/22
**guilt [4]**   2455/14 2464/6
 2497/18 2512/24
**guilty [31]**   2463/23 2463/25
 2464/8 2464/22 2465/4
 2465/24 2466/14 2467/16
 2468/9 2468/13 2468/16
 2472/17 2483/20 2483/22
 2483/23 2483/23 2497/4
 2497/7 2497/17 2497/25
 2498/1 2498/5 2498/5 2500/19
 2500/19 2501/14 2505/13
 2507/11 2508/25 2509/24

**G**

**guilty... [1]** 2509/24
**gun [3]** 2461/10 2463/25 2464/1
**Gus [1]** 2469/18
**guy [2]** 2482/2 2482/2
**guys [1]** 2467/7
**gymnastics [2]** 2474/20 2474/21

**H**

**had [66]**
**half [6]** 2452/19 2452/23 2452/24 2457/19 2458/2 2469/21
**hand [6]** 2459/25 2461/10 2471/4 2471/5 2498/2 2506/21
**hand-shaking [2]** 2471/4 2471/5
**handcuffs [1]** 2480/22
**handed [1]** 2479/18
**handing [1]** 2471/7
**hands [2]** 2471/15 2472/19
**handshake [1]** 2472/8
**handsprings [1]** 2474/24
**happen [6]** 2452/21 2453/1 2460/24 2461/15 2466/14 2469/15
**happened [8]** 2451/15 2457/15 2459/24 2470/11 2472/21 2480/5 2482/1 2483/3
**happening [7]** 2459/14 2466/2 2473/19 2481/1 2482/14 2482/21 2483/9
**happens [3]** 2466/19 2468/22 2506/22
**happy [1]** 2452/2
**hard [1]** 2493/18
**harm's [2]** 2454/4 2475/11
**has [38]**
**hasn't [1]** 2520/21
**have [105]**
**haven't [1]** 2466/20
**having [5]** 2470/1 2470/16 2479/3 2486/25 2510/9
**haw [1]** 2478/20
**he [180]**
**hear [3]** 2475/8 2483/8 2500/5
**heard [33]** 2455/23 2460/4 2462/25 2465/7 2466/7 2466/20 2467/21 2468/20 2469/7 2469/12 2469/18 2470/3 2472/1 2476/15 2477/15 2477/19 2479/17 2480/2 2482/20 2483/9 2484/18 2488/6 2488/17 2493/23 2493/25 2496/7 2499/10 2499/16 2501/8 2501/13 2502/7 2502/14 2503/5
**hearing [2]** 2501/20 2501/24
**held [7]** 2450/6 2452/11 2484/23 2496/4 2515/1 2518/3 2522/6
**help [3]** 2498/21 2504/22 2505/21
**helped [1]** 2506/11
**helpful [1]** 2519/21
**helps [1]** 2462/9
**hem [1]** 2478/20
**her [6]** 2452/15 2453/7 2458/15 2467/8 2470/17 2478/11
**here [36]** 2459/12 2459/13 2460/1 2460/14 2462/20 2466/1 2466/3 2466/6 2466/15 2466/19 2467/9 2469/15

2472/21 2474/8 2474/10 2474/20 2474/25 2475/20 2476/5 2481/6 2482/14 2483/2 2483/5 2485/25 2487/14 2488/3 2491/25 2494/24 2500/18 2509/21 2512/16 2516/3 2516/5 2519/17 2520/17 2521/6
**hereby [1]** 2522/4
**hiding [2]** 2458/13 2478/7
**higher [1]** 2464/14
**highlighted [1]** 2462/19
**him [30]** 2453/13 2454/20 2455/19 2455/20 2456/7 2456/11 2457/17 2457/18 2459/8 2462/9 2462/11 2462/13 2464/11 2467/15 2468/13 2469/2 2469/17 2469/22 2469/22 2473/8 2473/22 2475/25 2476/15 2476/25 2477/2 2482/1 2483/3 2487/25 2488/1 2494/10
**himself [4]** 2454/4 2460/22 2471/20 2494/1
**his [78]**
**history [1]** 2503/3
**HOCHMAN [61]**
**Hochman's [5]** 2466/18 2480/13 2487/11 2491/13 2492/19
**home [2]** 2477/14 2477/15
**honest [1]** 2510/10
**honor [64]**
**Honor's [2]** 2518/14 2518/23
**HONORABLE [1]** 2447/3
**hopefully [1]** 2491/4
**hopes [2]** 2501/16 2501/19
**hour [2]** 2452/19 2484/22
**hours [1]** 2452/24
**house [3]** 2458/15 2461/8 2467/14
**how [28]** 2450/22 2451/4 2451/19 2452/6 2457/23 2458/3 2458/3 2461/4 2465/10 2469/6 2469/20 2474/7 2474/8 2482/9 2483/4 2483/4 2486/15 2486/18 2488/20 2493/19 2494/17 2495/11 2499/22 2500/15 2500/16 2501/11 2504/7 2512/22
**however [4]** 2489/24 2491/15 2504/16 2506/9
**hurt [1]** 2457/22

**I**

**I'm [1]** 2490/5
**I's [2]** 2453/8 2453/10
**I.D [1]** 2449/7
**IAB [1]** 2470/5
**ICIB [5]** 2470/2 2470/2 2470/13 2493/25 2494/3
**ICIB's [1]** 2470/11
**idea [3]** 2467/6 2473/9 2476/8
**ignore [2]** 2477/1 2496/22
**ignores [2]** 2462/16 2462/17
**II [2]** 2447/15 2447/15
**illegal [1]** 2474/3
**immediate [1]** 2494/16
**immediately [5]** 2477/9 2477/12 2484/14 2511/19 2517/1
**immunity [2]** 2454/25 2488/1
**impartial [3]** 2497/21 2497/23 2498/3
**impeached [1]** 2488/10
**impeachment [1]** 2488/1
**impede [2]** 2453/11 2507/15
**impeded [1]** 2507/15

**import [1]** 2485/15
**importance [3]** 2471/5 2471/6 2471/6
**important [6]** 2472/7 2472/25 2485/13 2496/23 2500/15 2510/7
**impose [1]** 2502/25
**imposed [2]** 2502/20 2502/24
**imposing [1]** 2503/3
**impression [1]** 2451/5
**imprisonment [1]** 2502/24
**Improper [1]** 2463/4
**improperly [1]** 2453/11
**inappropriate [1]** 2472/12
**inappropriately [1]** 2479/8
**incentive [1]** 2456/2
**included [1]** 2480/13
**includes [3]** 2504/14 2510/21 2516/21
**including [14]** 2461/18 2462/23 2474/15 2484/10 2487/5 2503/2 2503/8 2503/15 2503/18 2503/24 2512/22 2512/23 2515/16 2516/17
**incompetent [1]** 2460/19
**inconsistencies [1]** 2456/14
**inconsistent [8]** 2456/14 2456/15 2488/4 2488/7 2488/11 2488/15 2488/18 2501/9
**Independent [1]** 2459/18
**indictment [16]** 2455/16 2463/15 2463/18 2467/22 2468/3 2490/2 2497/3 2500/20 2500/21 2501/1 2501/5 2504/11 2505/11 2506/13 2507/9 2508/21
**indirect [1]** 2499/16
**inference [1]** 2497/14
**influence [3]** 2453/12 2507/15 2509/16
**influenced [4]** 2496/17 2502/3 2507/14 2511/23
**influencing [1]** 2509/17
**inform [1]** 2503/24
**informant [2]** 2473/15 2503/8
**informants [7]** 2489/7 2489/11 2489/13 2503/11 2503/12 2504/2 2504/4
**information [6]** 2462/10 2471/14 2494/5 2508/15 2510/15 2511/18
**informed [1]** 2475/5
**inmate [6]** 2453/7 2469/14 2469/16 2473/20 2478/7 2483/12
**inmates [3]** 2465/1 2469/13 2504/19
**inmates' [1]** 2474/5
**innocence [1]** 2497/9
**innocent [5]** 2455/22 2455/23 2460/14 2467/5 2497/5
**insert [1]** 2489/17
**insinuated [1]** 2494/8
**instance [2]** 2473/18 2481/18
**instances [4]** 2450/9 2451/20 2492/7 2492/24
**instead [2]** 2452/23 2465/12
**instruct [1]** 2496/7
**instructed [2]** 2499/6 2499/8
**instruction [24]** 2485/5 2485/18 2485/21 2486/4 2486/6 2486/13 2486/25 2487/2 2487/20 2487/21 2488/5 2488/8 2489/3 2489/4 2489/5 2489/19 2489/22 2489/23 2489/24 2490/6 2490/7 2490/11 2490/22 2491/16

**I**

**instructions [15]**  2465/19 2465/20 2483/18 2484/3 2484/3 2484/6 2484/19 2485/4 2496/9 2496/21 2496/24 2510/13 2518/6 2520/2 2521/12
**integrally [1]**  2508/17
**intend [1]**  2489/17
**intended [2]**  2498/21 2507/19
**intending [1]**  2505/21
**intent [7]**  2460/10 2460/11 2468/7 2472/18 2487/18 2490/1 2506/16
**intention [3]**  2508/8 2508/11 2508/19
**intentions [1]**  2508/10
**interest [2]**  2500/7 2506/10
**interested [1]**  2460/12
**Interfere [1]**  2453/10
**interfering [1]**  2508/2
**internal [2]**  2458/21 2470/5
**internally [1]**  2467/12
**Internet [4]**  2510/23 2511/9 2516/22 2517/4
**interpret [1]**  2498/21
**interview [11]**  2453/15 2458/24 2459/1 2459/5 2470/14 2475/6 2477/2 2477/4 2480/3 2480/4 2504/18
**interviewed [2]**  2458/19 2458/20
**interviewing [4]**  2470/21 2476/8 2476/25 2504/18
**intimidate [4]**  2453/11 2471/2 2471/19 2478/11
**intimidated [1]**  2469/20
**intimidating [1]**  2463/17
**investigate [10]**  2453/8 2453/11 2471/16 2489/8 2489/12 2489/20 2503/11 2503/20 2504/13 2504/14
**investigated [2]**  2459/17 2483/13
**investigation [46]**
**investigations [3]**  2470/4 2470/6 2503/17
**investigative [1]**  2476/4
**involve [1]**  2473/23
**involved [10]**  2466/22 2467/25 2469/3 2469/15 2470/4 2470/6 2484/11 2508/17 2511/1 2516/18
**involvement [4]**  2458/23 2474/18 2475/1 2476/15
**involves [2]**  2504/1 2510/15
**involving [1]**  2469/13
**irrelevant [3]**  2459/19 2466/11 2466/11
**is [316]**
**isolate [1]**  2453/7
**isolated [1]**  2480/17
**isolating [1]**  2483/12
**issue [10]**  2484/25 2486/21 2488/4 2490/17 2491/4 2492/2 2494/17 2494/18 2495/5 2520/9
**issued [1]**  2457/1
**issues [3]**  2495/7 2510/15 2518/12
**it [172]**
**its [6]**  2470/11 2476/19 2503/8 2504/8 2505/21 2512/3
**itself [1]**  2507/3

**J**

**jail [5]**  2465/1 2465/8 2468/18 2468/20 2474/18

**jails [7]**  2468/22 2469/5 2469/6 2469/7 2469/9 2470/7 2481/19
**James [4]**  2454/6 2464/23 2469/12 2501/21
**JAUREGUI [1]**  2448/4
**jeopardizes [1]**  2511/16
**job [2]**  2465/10 2470/11
**join [3]**  2460/15 2460/21 2460/25
**joining [1]**  2460/12
**joins [1]**  2506/19
**judge [3]**  2447/4 2477/24 2479/23
**Judicial [1]**  2522/9
**juries [1]**  2491/5
**jurisdiction [3]**  2470/11 2508/22 2509/7
**juror [4]**  2511/16 2511/17 2520/20 2520/23
**jurors [17]**  2484/10 2484/20 2509/23 2510/2 2510/3 2510/6 2510/16 2511/24 2515/10 2515/23 2515/24 2516/2 2516/7 2517/10 2517/11 2517/14 2517/24
**jury [87]**
**just [26]**  2452/15 2453/1 2453/6 2456/8 2459/11 2462/11 2468/1 2470/17 2471/14 2474/17 2475/8 2476/14 2477/23 2481/1 2482/19 2487/4 2487/7 2487/12 2488/17 2489/16 2494/20 2496/1 2518/11 2518/24 2519/7 2520/9
**justice [20]**  2455/15 2463/13 2463/21 2463/22 2466/10 2466/25 2468/8 2468/9 2482/18 2483/23 2504/20 2505/11 2505/19 2506/13 2507/9 2507/20 2508/6 2508/8 2508/10 2508/11

**K**

**KATIE [2]**  2447/21 2522/12
**keep [4]**  2452/8 2474/4 2484/17 2487/2
**keeping [2]**  2475/3 2479/15
**kicked [2]**  2474/17 2480/19
**kids [4]**  2482/10 2482/13 2482/14 2482/17
**kind [2]**  2497/14 2506/1
**king [9]**  2453/21 2453/22 2453/23 2454/2 2454/3 2454/14 2471/21 2483/2 2483/2
**knew [9]**  2455/2 2459/21 2467/13 2467/13 2469/24 2469/24 2473/19 2475/11 2507/25
**knight [1]**  2454/15
**knights [5]**  2453/25 2454/8 2475/11 2476/22 2480/10
**knocking [1]**  2475/15
**know [31]**  2450/22 2456/11 2458/3 2458/4 2458/21 2458/22 2459/13 2459/19 2459/20 2459/20 2461/16 2464/10 2468/21 2471/13 2473/7 2474/3 2476/1 2476/11 2478/19 2480/14 2480/25 2482/7 2483/9 2484/14 2487/16 2490/19 2493/3 2494/13 2500/5 2516/25 2519/23
**knowing [4]**  2457/3 2458/5 2505/21 2507/2
**knowingly [1]**  2508/21

**knowledge [7]**  2458/23 2459/3 2481/4 2496/18 2506/21 2507/18 2509/10
**known [1]**  2479/12
**knows [2]**  2478/21 2492/14

**L**

**lack [1]**  2497/22
**Ladies [5]**  2460/6 2463/5 2484/1 2515/9 2517/25
**language [6]**  2476/5 2479/18 2479/25 2490/23 2490/25 2493/6
**last [13]**  2462/2 2475/24 2478/2 2485/13 2485/14 2487/8 2487/8 2488/5 2489/21 2489/24 2490/5 2490/17 2520/13
**later [7]**  2455/23 2457/19 2462/4 2464/5 2469/21 2476/5 2481/22
**latter [1]**  2459/3
**laugh [1]**  2472/4
**laughs [1]**  2478/15
**law [22]**  2469/17 2480/24 2482/12 2485/7 2489/6 2489/9 2491/3 2491/9 2496/8 2496/13 2496/15 2496/17 2499/20 2503/9 2503/15 2503/20 2504/2 2504/13 2504/15 2504/17 2511/13 2511/25
**lawful [2]**  2490/7 2507/4
**lawyer's [2]**  2498/16 2498/18
**lawyers [8]**  2463/7 2464/4 2491/18 2498/15 2498/15 2498/19 2498/23 2512/18
**lay [1]**  2490/12
**leader [4]**  2467/17 2467/20 2482/20 2483/4
**leaders [1]**  2482/20
**Leah [2]**  2452/18 2467/14
**learn [1]**  2511/11
**learned [1]**  2483/11
**least [7]**  2488/14 2495/8 2505/24 2509/3 2515/11 2515/12 2518/21
**leave [4]**  2493/20 2515/17 2516/3 2517/19
**leaves [1]**  2497/17
**Leavins [4]**  2454/9 2462/1 2462/10 2493/15
**left [5]**  2450/23 2471/25 2479/20 2515/24 2517/19
**legitimate [1]**  2464/18
**leniency [1]**  2501/16
**Leroy [2]**  2447/9 2479/18
**less [1]**  2468/25
**let [5]**  2473/12 2484/14 2510/18 2516/25 2519/23
**Let's [2]**  2452/10 2495/24
**letter [6]**  2461/2 2461/10 2471/7 2471/15 2478/4 2479/25
**level [2]**  2471/19 2473/20
**levels [1]**  2471/19
**LEWIS [1]**  2448/10
**lie [17]**  2454/19 2455/19 2456/7 2456/12 2456/12 2458/7 2458/16 2472/23 2473/11 2473/12 2474/10 2474/11 2475/5 2475/19 2475/20 2476/15 2482/4
**lied [8]**  2453/16 2454/23 2455/1 2455/20 2455/21 2458/3 2466/10 2477/1
**lies [3]**  2456/4 2471/23 2476/23
**light [1]**  2500/11
**like [12]**  2450/12 2452/3

like... **[10]** 2453/6 2457/5
2459/11 2463/24 2477/23
2485/24 2485/24 2492/8
2494/20 2515/12
**likes [1]** 2496/18
**limited [2]** 2499/7 2499/9
**line [6]** 2453/25 2454/7
2475/24 2489/18 2489/22
2489/24
**link [1]** 2460/20
**list [3]** 2480/13 2519/19
2519/22
**listed [2]** 2467/23 2468/2
**listen [6]** 2478/16 2478/17
2478/18 2484/15 2511/6
2517/1
**listened [1]** 2510/3
**listening [1]** 2480/9
**little [4]** 2453/24 2457/4
2465/25 2468/4
**LIZABETH [1]** 2448/5
**LLP [1]** 2448/10
**local [5]** 2489/19 2490/7
2503/15 2504/12 2504/15
**logic [1]** 2465/23
**long [11]** 2450/13 2452/6
2454/9 2468/6 2478/14
2478/15 2479/7 2493/15
2507/23 2508/8 2515/12
**longer [2]** 2456/8 2515/11
**look [15]** 2453/2 2457/9
2457/22 2458/4 2458/5 2458/6
2459/13 2463/14 2466/1
2468/16 2478/5 2486/4
2487/21 2518/7 2519/22
**looked [1]** 2451/1
**looking [9]** 2457/2 2460/14
2460/25 2461/1 2461/15
2462/20 2462/21 2472/6
2472/7
**LOS [7]** 2447/16 2447/22
2448/6 2450/1 2469/19 2503/7
2503/16
**lot [4]** 2461/17 2468/23
2470/3 2471/3
**lots [3]** 2452/9 2467/2
2467/2
**low [1]** 2473/20
**lower [1]** 2471/19
**Lunch [2]** 2515/14 2516/13
**lying [1]** 2473/3

**M**

**mad [2]** 2482/25 2483/1
**made [18]** 2463/24 2475/25
2482/22 2485/17 2485/23
2486/5 2487/6 2487/15
2487/19 2491/22 2492/3
2492/15 2494/14 2495/14
2499/1 2506/7 2509/6 2510/9
**Mafia [1]** 2468/24
**mail [5]** 2461/25 2462/6
2478/25 2479/1 2510/22
**mails [1]** 2516/23
**make [14]** 2453/1 2460/21
2464/13 2465/12 2470/20
2474/2 2485/1 2485/8 2486/22
2492/17 2492/19 2503/23
2511/10 2517/5
**makes [3]** 2460/21 2464/19
2499/20
**making [4]** 2483/24 2487/4
2493/7 2508/21
**man [1]** 2465/11
**manipulate [1]** 2476/5
**manner [3]** 2462/22 2481/4
2500/6

**many [2]** 2457/23 2503/1
**Manzo [13]** 2462/10 2462/10
2462/20 2469/24 2472/10
2473/13 2473/17 2479/19
2479/19 2488/13 2494/21
2501/17 2502/7
**Manzos [1]** 2454/6
**MARCH [2]** 2447/17 2450/1
**Maricela [1]** 2454/9
**Marks [4]** 2452/18 2472/2
2477/11 2480/22
**Marks' [1]** 2467/14
**Marshal [2]** 2456/24 2457/1
**marshals [1]** 2456/17
**Martinez [2]** 2475/25 2479/1
**match [1]** 2453/18
**material [5]** 2474/10 2474/10
2505/7 2505/9 2509/13
**materiality [2]** 2458/8
2458/9
**materials [2]** 2511/10 2517/5
**matter [18]** 2458/10 2458/18
2458/24 2459/2 2459/4
2466/19 2472/21 2473/11
2474/1 2482/3 2491/24 2497/1
2499/4 2506/5 2508/22 2509/7
2511/4 2522/7
**mattered [1]** 2458/11
**matters [4]** 2474/1 2495/6
2495/13 2506/10
**maximum [1]** 2502/15
**may [44]**
**maybe [4]** 2473/17 2473/24
2475/8 2484/2
**me [19]** 2450/21 2467/7
2473/12 2475/15 2477/7
2482/22 2483/1 2483/6
2484/14 2490/16 2494/1
2494/24 2504/7 2512/11
2512/14 2512/22 2516/25
2517/7 2519/23
**meaning [4]** 2461/19 2462/7
2472/9 2507/18
**means [2]** 2474/14 2510/22
**meant [1]** 2471/2
**media [3]** 2510/24 2511/1
2511/7
**meet [1]** 2459/5
**meeting [8]** 2457/8 2458/11
2471/4 2471/6 2471/13 2472/8
2473/14 2479/15
**meetings [2]** 2474/16 2475/2
**meets [1]** 2509/5
**member [4]** 2505/20 2506/14
2509/20 2512/13
**members [8]** 2468/24 2484/10
2489/14 2496/6 2503/14
2505/23 2510/25 2516/19
**memory [10]** 2451/10 2451/12
2455/4 2460/6 2491/18 2495/4
2498/23 2500/6 2511/22
2511/23
**Men's [3]** 2465/1 2465/8
2474/18
**mental [1]** 2474/20
**mention [1]** 2494/7
**mentioned [3]** 2455/13
2468/11 2468/22
**mentored [1]** 2481/21
**merely [2]** 2506/25 2507/1
**merits [1]** 2510/19
**message [8]** 2452/17 2461/8
2470/19 2471/17 2471/18
2471/20 2472/6 2476/7
**messages [1]** 2516/23
**messaging [1]** 2510/23
**met [1]** 2506/10
**Metro [1]** 2481/15
**Mexican [1]** 2468/24

**Michel [1]** 2480/4
**Mickey [8]** 2454/9 2454/24
2473/12 2473/17 2479/19
2479/19 2494/21 2501/17
**might [5]** 2465/25 2488/10
2504/17 2519/11 2519/21
**mind [3]** 2454/14 2462/9
2484/17
**minimum [1]** 2487/24
**minute [2]** 2479/13 2495/25
**minutes [9]** 2452/2 2452/4
2452/8 2484/2 2484/4 2484/5
2518/6 2520/2 2521/13
**mislead [3]** 2452/25 2458/1
2492/3
**misleading [3]** 2461/17
2486/15 2490/15
**misstate [1]** 2494/19
**misstated [5]** 2450/20
2451/17 2492/6 2492/23
2492/25
**misstates [4]** 2460/3 2460/4
2463/3 2477/5
**misstating [7]** 2450/11
2450/15 2450/18 2450/24
2450/25 2451/5 2494/19
**mistaken [1]** 2518/22
**mistrial [1]** 2493/11
**modify [1]** 2487/2
**moment [3]** 2461/20 2520/18
2521/2
**MONDAY [2]** 2447/17 2450/1
**Monica [1]** 2448/12
**Monterey [1]** 2457/11
**more [14]** 2464/19 2475/8
2488/6 2488/18 2494/16
2495/18 2495/20 2499/17
2501/8 2505/18 2506/2 2506/3
2507/1 2512/13
**MORGAN [1]** 2448/10
**morning [5]** 2457/5 2457/11
2457/15 2515/20 2520/15
**most [4]** 2454/10 2465/1
2476/24 2521/13
**motive [4]** 2455/22 2458/6
2460/14 2471/1
**mountains [2]** 2465/15
2465/18
**move [4]** 2471/21 2481/17
2518/13 2518/15
**moved [1]** 2469/14
**moving [6]** 2463/16 2469/13
2469/16 2469/16 2469/17
2504/19
**Mr [5]** 2464/11 2464/17
2474/6 2479/11 2485/1
**Mr. [207]**
**Mr. Baca [72]**
**Mr. Baca's [12]** 2453/10
2453/13 2454/10 2454/12
2454/14 2455/13 2460/10
2465/9 2471/1 2479/20
2479/25 2480/3
**Mr. Birotte [2]** 2478/4
2482/9
**Mr. Carey [2]** 2462/17 2502/8
**Mr. Carey's [1]** 2455/18
**Mr. Fox [6]** 2451/23 2452/7
2492/1 2492/6 2492/11
2493/10
**Mr. Gennaco [3]** 2488/11
2493/25 2494/6
**Mr. Hochman [59]**
**Mr. Hochman's [5]** 2466/18
2480/13 2487/11 2491/13
2492/19
**Mr. Leavins [2]** 2462/10
2493/15
**Mr. Manzo [5]** 2462/17

## M

**Mr. Manzo... [4]**  2462/20 2472/10 2488/13 2502/7
**Mr. Martinez [1]**  2475/25
**Mr. Narro [1]**  2478/14
**Mr. Rhambo's [1]**  2482/16
**Mr. Sexton [11]**  2456/6 2456/8 2456/15 2456/16 2456/25 2457/6 2457/7 2457/12 2469/14 2472/9 2502/8
**Mr. Sexton's [1]**  2457/16
**Mr. Tanaka [9]**  2479/3 2481/8 2481/12 2481/15 2481/22 2494/8 2494/9 2494/11 2494/11
**Mr. Tanaka's [3]**  2462/6 2479/1 2479/5
**Mr. Thompson [11]**  2453/18 2454/19 2455/8 2455/12 2457/5 2457/7 2457/12 2457/17 2462/17 2487/25 2502/8
**Ms [1]**  2477/17
**Ms. [6]**  2457/9 2464/18 2468/22 2478/14 2478/15 2479/7
**Ms. Long [3]**  2478/14 2478/15 2479/7
**Ms. Rhodes [3]**  2457/9 2464/18 2468/22
**much [10]**  2462/2 2469/6 2486/15 2486/18 2488/20 2495/18 2495/20 2499/23 2500/16 2501/11
**murder [2]**  2463/25 2464/2
**must [21]**  2464/17 2464/22 2496/16 2496/17 2496/21 2498/16 2499/9 2500/23 2502/24 2505/14 2506/11 2507/12 2508/11 2509/1 2509/24 2509/25 2510/12 2510/14 2511/3 2515/18 2515/21
**my [11]**  2450/17 2452/1 2461/23 2472/18 2472/22 2474/22 2482/2 2482/2 2495/2 2496/7 2520/18

## N

**name [4]**  2449/3 2479/8 2479/10 2480/20
**names [2]**  2489/13 2503/13
**Narro [2]**  2478/14 2479/4
**NATHAN [1]**  2448/10
**natural [2]**  2508/1 2509/16
**near [1]**  2501/5
**necessarily [1]**  2500/14
**necessary [7]**  2454/4 2486/12 2487/14 2501/3 2501/6 2506/6 2512/10
**need [26]**  2450/16 2451/3 2451/25 2452/1 2460/4 2462/11 2462/12 2462/12 2464/7 2465/13 2465/21 2468/12 2470/22 2475/7 2482/6 2483/8 2484/2 2485/16 2489/15 2489/16 2490/20 2507/21 2508/7 2517/7 2519/7 2520/9
**needed [2]**  2469/24 2490/16
**needs [1]**  2485/11
**nefarious [1]**  2455/25
**neither [1]**  2504/2
**never [10]**  2459/15 2459/16 2459/16 2459/17 2466/14 2470/10 2470/13 2472/10 2472/11 2487/12

**news [3]**  2484/15 2511/6 2511/7
**next [1]**  2514/17
**night [2]**  2462/2 2471/9
**Ninth [2]**  2486/8 2490/22
**nitpick [3]**  2457/4 2465/25 2473/1
**no [54]**
**none [3]**  2449/4 2449/8 2500/2
**normal [1]**  2504/17
**normally [1]**  2519/1
**North [3]**  2447/22 2448/6 2448/12
**not [153]**
**note [4]**  2479/19 2491/6 2512/11 2517/8
**notebooks [3]**  2516/3 2517/19 2518/2
**noted [1]**  2488/25
**notes [4]**  2511/20 2511/21 2511/22 2511/24
**nothing [14]**  2459/12 2459/13 2459/24 2464/1 2468/19 2469/8 2469/10 2472/1 2472/3 2472/20 2475/11 2476/16 2476/17 2478/12
**notice [1]**  2459/2
**notified [1]**  2516/14
**notify [4]**  2511/18 2517/18 2520/19 2520/22
**now [20]**  2450/16 2451/3 2457/18 2458/2 2458/8 2460/20 2461/23 2462/24 2472/23 2472/23 2473/17 2475/18 2476/7 2483/2 2490/4 2492/11 2496/6 2515/23 2518/1 2520/3
**nowhere [1]**  2478/2
**number [13]**  2465/10 2472/23 2474/11 2475/5 2475/19 2475/20 2479/5 2479/6 2479/6 2479/7 2479/11 2487/16 2500/14
**numerically [1]**  2512/22

## O

**o'clock [1]**  2521/1
**oath [1]**  2496/19
**object [2]**  2506/16 2506/23
**objection [13]**  2450/23 2451/14 2451/16 2460/3 2460/7 2463/3 2472/12 2477/5 2489/1 2490/10 2492/5 2495/3 2495/8
**objections [8]**  2450/10 2450/18 2450/20 2491/13 2492/19 2492/21 2494/18 2498/14
**objects [1]**  2505/21
**obligation [1]**  2462/25
**obstruct [11]**  2456/1 2463/22 2468/8 2468/9 2482/4 2505/11 2507/15 2507/19 2508/8 2508/10 2508/11
**obstructed [2]**  2463/21 2507/14
**obstructing [2]**  2504/20 2507/24
**obstruction [16]**  2455/14 2455/17 2459/20 2463/13 2463/22 2466/9 2466/25 2482/18 2483/23 2490/13 2490/19 2505/19 2506/13 2507/9 2507/22 2508/6
**obtain [1]**  2456/21
**obviously [2]**  2488/2 2519/10
**occur [1]**  2476/2
**occurred [3]**  2476/1 2476/2

2507/23
**October [1]**  2478/9
**October 13th [1]**  2478/3
**off [2]**  2459/9 2485/1
**offense [4]**  2500/21 2501/23 2503/2 2508/3
**offenses [3]**  2501/1 2501/4 2501/7
**office [18]**  2448/5 2456/21 2459/18 2464/10 2467/3 2477/21 2477/22 2477/23 2477/25 2479/5 2479/6 2479/15 2479/20 2480/7 2480/9 2503/19 2509/8 2509/15
**officer [6]**  2504/12 2504/16 2512/8 2512/12 2515/4 2515/18
**officer's [2]**  2489/20 2490/7
**officers [4]**  2504/3 2515/7 2515/8 2517/22
**offices [1]**  2457/8
**official [2]**  2447/21 2465/11
**officially [1]**  2518/13
**officials [4]**  2489/7 2489/10 2503/9 2517/8
**Oh [1]**  2471/23
**OIR [1]**  2459/18
**okay [15]**  2487/10 2487/20 2488/23 2490/4 2490/4 2491/1 2491/10 2491/12 2495/22 2495/24 2519/13 2519/25 2520/1 2520/14 2521/7
**old [1]**  2465/11
**once [9]**  2454/4 2462/25 2474/3 2474/4 2475/24 2477/10 2516/4 2516/4 2518/17
**one [67]**
**one and [1]**  2495/9
**one another [1]**  2506/11
**One becomes [1]**  2506/14
**One condition [1]**  2456/9
**one count [1]**  2500/24
**one for [1]**  2475/7
**one hand [1]**  2459/25
**one instance [1]**  2473/18
**One is [2]**  2456/23 2518/12
**One leader [1]**  2482/20
**one member [1]**  2509/20
**one minute [1]**  2479/13
**one moment [3]**  2461/20 2520/18 2521/2
**one more [1]**  2475/8
**one of [12]**  2452/2 2467/23 2468/12 2468/15 2478/1 2505/23 2507/7 2508/9 2509/3 2517/8 2517/14 2517/21
**one or [9]**  2470/7 2488/6 2488/17 2499/17 2501/8 2506/3 2507/1 2512/12 2518/21
**one overt [1]**  2505/24
**one part [1]**  2478/13
**one period [1]**  2471/22
**one person [3]**  2463/2 2468/2 2481/20
**one sent [1]**  2456/7
**one side [1]**  2493/8
**one the [1]**  2480/10
**one thing [1]**  2453/17
**one ultimately [1]**  2475/17
**one was [1]**  2493/2
**one way [1]**  2519/3
**one where [1]**  2477/8
**one who [5]**  2453/22 2453/23 2482/22 2482/23 2506/21
**ones [1]**  2454/7
**only [26]**  2451/16 2453/4

**only... [24]** 2454/3 2454/7 2454/23 2454/24 2455/1 2456/2 2464/19 2465/16 2468/12 2470/7 2470/23 2472/5 2498/11 2499/7 2500/18 2502/12 2505/6 2505/8 2510/1 2510/8 2510/12 2511/22 2512/15 2519/9
**open [6]** 2476/14 2476/17 2476/17 2484/17 2512/16 2519/17
**opening [3]** 2455/2 2472/24 2498/20
**operation [7]** 2462/3 2470/13 2489/6 2489/17 2490/1 2503/9 2504/3
**opinion [2]** 2510/4 2517/12
**opinions [1]** 2496/18
**opportunity [4]** 2459/4 2459/6 2500/4 2511/15
**opposed [1]** 2520/17
**opposite [1]** 2456/8
**order [18]** 2465/22 2467/18 2468/13 2469/25 2472/16 2479/22 2479/23 2480/1 2485/1 2489/8 2489/12 2503/11 2503/20 2504/22 2505/13 2507/11 2508/25 2518/16
**ordered [4]** 2454/25 2478/25 2487/25 2511/4
**ordering [2]** 2480/16 2480/21
**ordinarily [3]** 2470/4 2470/6 2504/17
**ordinary [1]** 2469/9
**organization [1]** 2467/18
**organizations [2]** 2489/14 2503/14
**originators [1]** 2506/21
**OSJ [3]** 2469/11 2470/1 2493/24
**other [40]**
**others [6]** 2484/12 2494/2 2496/22 2503/24 2516/20 2520/12
**otherwise [2]** 2512/23 2520/25
**our [6]** 2466/20 2483/16 2483/21 2489/1 2490/10 2519/4
**out [34]** 2452/17 2454/1 2454/3 2454/7 2454/11 2457/23 2458/14 2461/7 2463/24 2467/8 2467/14 2469/1 2469/3 2470/21 2471/21 2474/17 2474/24 2476/21 2477/10 2478/17 2479/16 2480/19 2488/10 2488/24 2489/18 2490/12 2496/22 2501/15 2501/18 2501/22 2502/9 2505/25 2507/5 2512/17
**outcome [1]** 2500/7
**outrageous [2]** 2482/16 2482/17
**outside [5]** 2450/6 2469/9 2484/23 2511/18 2518/3
**over [17]** 2453/16 2453/16 2455/4 2455/4 2459/6 2461/2 2461/10 2464/12 2464/12 2466/10 2466/10 2471/7 2471/15 2472/20 2472/25 2484/9 2509/21
**overall [1]** 2481/5
**overly [1]** 2511/23
**overruling [1]** 2480/14
**overt [3]** 2505/24 2507/3

2507/7
**own [14]** 2480/3 2480/7 2480/9 2480/21 2481/4 2481/4 2503/21 2503/22 2503/23 2503/23 2510/9 2511/12 2511/22 2517/6
**owned [1]** 2482/21

**P**

**p.m [2]** 2450/2 2513/3
**PA [1]** 2447/8
**page [3]** 2449/3 2513/3 2522/7
**panel [2]** 2517/12 2517/14
**Park [1]** 2457/11
**part [3]** 2478/13 2487/8 2500/2
**participating [1]** 2506/15
**particular [2]** 2492/7 2509/4
**particulars [1]** 2476/4
**parties [4]** 2456/22 2498/9 2511/14 2518/9
**partnership [1]** 2506/2
**parts [3]** 2450/13 2476/24 2485/17
**party [1]** 2511/15
**Paul [4]** 2454/11 2462/1 2481/21 2482/2
**Pause [3]** 2461/21 2495/23 2516/6
**pawn [1]** 2454/15
**pawns [5]** 2453/25 2454/5 2475/11 2476/22 2480/10
**pending [3]** 2507/22 2507/25 2508/2
**people [30]** 2453/6 2453/14 2453/24 2458/12 2458/13 2458/25 2459/22 2459/23 2461/7 2466/7 2466/22 2467/5 2467/6 2467/19 2467/23 2468/23 2470/23 2470/24 2471/20 2477/10 2481/19 2484/11 2493/12 2493/14 2493/17 2493/21 2493/23 2493/24 2511/1 2516/18
**PERCY [1]** 2447/3
**performed [1]** 2505/24
**perhaps [1]** 2506/11
**period [2]** 2471/22 2481/10
**perjurer [1]** 2455/18
**perjury [3]** 2454/24 2455/19 2455/21
**permit [1]** 2484/12
**permitted [1]** 2516/19
**person [12]** 2463/2 2464/16 2468/2 2473/20 2481/20 2481/21 2481/22 2483/5 2483/5 2506/17 2506/24 2510/21
**personal [1]** 2496/18
**personally [2]** 2499/15 2507/7
**personnel [1]** 2503/23
**persons [3]** 2505/18 2506/2 2507/1
**persuades [1]** 2510/5
**phone [14]** 2457/9 2468/18 2468/19 2469/1 2476/3 2477/13 2477/13 2477/16 2478/14 2480/5 2481/7 2481/8 2481/9 2510/22
**phones [4]** 2468/20 2468/21 2470/7 2470/8
**photocopies [1]** 2520/7
**picture [1]** 2466/2
**piece [2]** 2454/11 2454/15
**pieces [3]** 2453/23 2466/1 2478/2
**place [1]** 2520/9

**places [1]** 2479/14
**PLAINTIFF [1]** 2447/6
**plan [3]** 2481/1 2506/12 2506/15
**play [3]** 2475/7 2475/24 2476/6
**played [6]** 2473/4 2474/12 2475/9 2475/22 2476/10 2478/1
**players [1]** 2453/20
**playing [6]** 2482/10 2482/13 2482/14 2482/17 2483/15 2519/16
**pleaded [2]** 2497/4 2501/14
**please [11]** 2452/14 2484/14 2491/21 2496/24 2498/25 2511/18 2513/2 2515/4 2515/19 2516/25 2517/19
**point [14]** 2456/2 2459/10 2471/7 2472/18 2472/22 2474/2 2474/21 2476/22 2478/1 2478/17 2483/16 2488/16 2495/3 2495/4
**pointing [2]** 2493/22 2493/23
**points [1]** 2486/21
**poisoning [2]** 2465/6 2465/7
**policies [4]** 2481/18 2481/19 2482/3 2482/5
**policy [2]** 2479/15 2479/21
**Poor [1]** 2465/11
**popped [1]** 2462/7
**position [2]** 2486/11 2491/2
**Positive [1]** 2471/9
**possible [2]** 2497/19 2502/15
**Possibly [1]** 2473/8
**potential [4]** 2456/13 2504/13 2504/14 2519/22
**potentially [1]** 2454/8
**powerful [1]** 2454/10
**PowerPoint [1]** 2452/1
**practice [3]** 2518/15 2518/23 2519/19
**practices [1]** 2504/17
**precisely [1]** 2501/7
**preference [1]** 2519/4
**prejudice [2]** 2491/8 2500/8
**prejudices [1]** 2496/18
**prepared [1]** 2512/4
**presence [6]** 2450/7 2452/12 2484/24 2496/5 2515/2 2518/4
**present [6]** 2497/9 2515/20 2515/21 2520/14 2520/17 2520/19
**presentations [1]** 2452/1
**presented [3]** 2473/13 2477/20 2481/11
**presenting [1]** 2508/19
**preside [1]** 2509/21
**PRESIDING [1]** 2447/4
**press [1]** 2511/1
**presumed [1]** 2497/5
**prevalent [1]** 2468/21
**previously [2]** 2455/6 2455/7
**primary [1]** 2508/7
**prior [7]** 2488/3 2488/7 2488/10 2488/15 2488/18 2493/19 2501/9
**prison [2]** 2456/9 2456/12
**prisons [1]** 2468/22
**probable [1]** 2508/1
**probably [2]** 2474/22 2518/6
**problem [12]** 2450/22 2451/4 2474/7 2474/7 2474/8 2474/9 2485/15 2492/10 2493/5 2494/23 2495/21 2520/23
**proceed [3]** 2452/13 2460/8 2463/9
**proceedings [14]** 2447/13 2450/6 2452/11 2461/21

**P**

**proceedings... [10]**   2484/23
2495/23 2496/4 2511/17
2513/3 2515/1 2516/6 2518/3
2521/14 2522/6
**process [2]**   2462/8 2496/12
**promising [1]**   2496/20
**proof [5]**   2497/16 2497/16
2499/14 2499/17 2504/25
**propose [1]**   2491/12
**prosecuted [1]**   2454/24
**prosecution [1]**   2464/22
**protect [1]**   2453/23
**protected [1]**   2480/12
**protecting [1]**   2480/11
**protection [1]**   2476/21
**prove [14]**   2464/22 2466/3
2466/12 2497/9 2497/18
2499/20 2501/3 2501/6
2505/14 2507/6 2507/12
2507/21 2508/7 2509/1
**proved [4]**   2490/23 2497/7
2504/10 2512/2
**proven [5]**   2466/5 2466/20
2467/24 2483/16 2483/21
**proves [2]**   2508/3 2508/9
**provide [4]**   2462/3 2462/12
2464/7 2480/25
**provided [3]**   2458/24 2462/15
2511/25
**provides [3]**   2455/13 2483/18
2491/7
**providing [3]**   2454/20 2462/1
2462/8
**proving [1]**   2497/10
**publicly [1]**   2459/23
**punished [3]**   2459/16 2465/3
2479/9
**punishment [3]**   2502/20
2511/25 2512/2
**pure [1]**   2471/1
**purely [1]**   2497/20
**purpose [11]**   2455/25 2481/2
2490/12 2490/13 2499/8
2504/19 2505/25 2506/16
2506/23 2507/5 2507/24
**purposes [1]**   2469/17
**pursuant [1]**   2522/4
**pushed [1]**   2477/24
**put [12]**   2452/15 2453/7
2454/4 2456/12 2470/17
2470/22 2475/10 2480/22
2485/1 2489/9 2492/8 2494/20
**puts [1]**   2464/10
**putting [1]**   2486/7

**Q**

**question [5]**   2498/17 2512/17
2512/20 2512/23 2512/24
**questions [14]**   2459/2 2467/2
2467/2 2467/3 2467/4 2467/11
2467/12 2469/5 2473/2
2475/16 2475/19 2487/16
2498/14 2498/18
**quick [1]**   2496/3
**quickly [1]**   2450/12

**R**

**raise [1]**   2484/25
**raised [2]**   2490/17 2494/6
**ran [1]**   2481/22
**rather [1]**   2493/7
**reach [3]**   2509/23 2510/7
2510/11
**reached [3]**   2456/22 2512/5
2512/25
**reaches [2]**   2516/11 2516/14
**reaching [1]**   2498/10

**reaction [1]**   2472/7
**read [4]**   2475/21 2482/1
2484/15 2488/9 2489/24
2491/21 2494/14 2496/24
2498/25 2511/6 2517/1
2518/17 2518/19 2518/25
**ready [3]**   2512/8 2520/2
2521/12
**really [5]**   2467/5 2472/8
2487/17 2495/13 2519/2
**reason [12]**   2454/19 2458/19
2465/13 2465/14 2467/12
2470/17 2470/25 2476/24
2490/15 2491/25 2494/10
2497/20
**reasonable [24]**   2464/17
2464/20 2464/23 2465/5
2466/3 2466/6 2466/13 2468/7
2483/17 2483/22 2497/7
2497/11 2497/16 2497/19
2497/25 2498/4 2501/3
2504/10 2505/15 2507/13
2508/4 2508/9 2509/2 2512/3
**reasonableness [1]**   2500/10
**reasonably [1]**   2501/5
**reasoning [1]**   2465/24
**reasons [2]**   2455/22 2502/1
**rebuttal [3]**   2485/2 2492/2
2492/22
**recall [6]**   2473/2 2473/2
2475/18 2475/19 2482/11
2496/19
**receive [6]**   2462/20 2462/21
2501/16 2501/21 2501/24
2516/4
**received [10]**   2456/6 2462/24
2476/2 2484/18 2496/12
2498/8 2498/11 2499/7
2499/12 2510/13
**Receiving [1]**   2480/18
**recollection [6]**   2451/18
2457/16 2457/22 2463/6
2463/8 2495/2
**recommend [1]**   2502/18
**recommendation [1]**   2501/16
**recommended [1]**   2502/1
**recommends [1]**   2503/1
**record [7]**   2450/21 2488/25
2492/8 2494/21 2495/16
2495/19 2518/19
**records [6]**   2457/9 2464/3
2477/13 2477/16 2481/7
2481/11
**redefining [1]**   2463/11
**refer [1]**   2450/13
**reference [3]**   2474/23
2511/10 2517/5
**referenced [1]**   2462/5
**references [1]**   2486/8
**referred [1]**   2450/10
**referring [5]**   2450/14
2462/10 2464/11 2486/2
2493/12
**refers [1]**   2478/23
**reflect [2]**   2464/6 2505/1
**refreshed [1]**   2455/4
**regard [1]**   2509/2
**regarding [3]**   2502/14 2503/5
2503/24
**regulations [1]**   2522/8
**reinforces [1]**   2476/7
**reinforcing [1]**   2471/17
**release [1]**   2456/10
**released [1]**   2479/13
**relevance [1]**   2478/4
**rely [1]**   2511/21
**relying [1]**   2492/9
**remember [10]**   2453/17
2456/18 2463/7 2479/5

2488/12 2491/17 2498/22
2502/21 2513/14 2516/18
**remembered [1]**   2451/12
**remind [2]**   2484/8 2510/14
**reminded [1]**   2484/17
**remove [1]**   2469/23
**report [2]**   2462/2 2511/5
**reported [1]**   2522/6
**Reporter [1]**   2447/21
**REPORTER'S [1]**   2447/13
**reporting [5]**   2473/16
2473/22 2474/5 2474/5
2483/10
**reports [2]**   2484/15 2517/2
**request [4]**   2486/3 2486/6
2487/2 2519/16
**required [3]**   2497/18 2502/25
2507/6
**requires [1]**   2511/13
**research [2]**   2511/8 2517/3
**resentencing [2]**   2501/20
2501/24
**resolve [1]**   2519/23
**respond [2]**   2511/3 2512/15
**response [1]**   2470/16
**responsible [3]**   2475/12
2475/17 2506/20
**rest [1]**   2488/8
**restrictions [2]**   2511/13
2511/16
**restroom [1]**   2496/1
**result [1]**   2468/15
**retire [1]**   2518/1
**retrieve [2]**   2516/2 2516/4
**return [10]**   2470/16 2491/23
2492/16 2497/1 2499/3 2512/9
2515/21 2516/2 2516/8
2517/17
**returned [1]**   2516/7
**review [3]**   2459/18 2465/19
2467/22
**reviewed [1]**   2520/3
**reviews [3]**   2459/17 2459/24
2475/13
**revised [2]**   2489/3 2489/5
**Rhambo [3]**   2466/23 2467/7
2477/2
**Rhambo's [1]**   2482/16
**RHODES [4]**   2448/5 2457/9
2464/18 2468/22
**Rhodes' [1]**   2477/17
**rid [2]**   2487/3 2487/3
**right [38]**
**rights [7]**   2473/6 2473/10
2473/15 2473/21 2473/23
2473/25 2474/4
**risk [3]**   2455/1 2468/25
2503/23
**role [1]**   2489/14
**roles [1]**   2503/13
**rook [2]**   2454/9 2454/15
**rooks [2]**   2453/25 2480/10
**room [16]**   2461/23 2465/17
2496/9 2504/25 2510/23
2515/17 2515/17 2515/25
2516/2 2516/12 2516/16
2517/8 2517/17 2517/23
2518/1 2518/8
**rooms [1]**   2516/22
**rounding [1]**   2458/1
**RPR [1]**   2522/12
**rules [1]**   2517/11
**ruling [1]**   2495/19
**rulings [4]**   2491/22 2492/15
2495/14 2499/1
**run [3]**   2481/5 2482/5 2496/1

**S**

**safer [1]**   2468/25

**S**

safety [1] 2469/4
said [36] 2451/11 2452/3
 2453/2 2453/15 2453/17
 2454/18 2455/6 2456/16
 2457/12 2457/12 2457/14
 2462/14 2468/12 2469/14
 2473/19 2475/18 2477/3
 2477/24 2480/6 2481/23
 2482/1 2482/11 2491/20
 2491/21 2492/2 2492/10
 2492/24 2493/10 2493/11
 2494/1 2494/2 2494/2 2496/25
 2498/19 2499/1 2511/22
same [12] 2455/6 2462/22
 2464/21 2477/25 2481/21
 2481/22 2501/15 2501/18
 2501/23 2502/9 2511/14
 2517/10
San [1] 2480/20
sandbox [4] 2482/11 2482/13
 2482/14 2482/18
Santa [1] 2448/12
Saturday [1] 2474/14
saw [9] 2455/3 2457/18
 2471/25 2471/25 2477/12
 2477/17 2478/25 2479/24
 2499/16
say [10] 2452/18 2455/3
 2463/24 2470/3 2470/14
 2471/13 2473/24 2475/13
 2482/13 2488/17
saying [14] 2450/24 2451/18
 2462/6 2470/17 2471/16
 2472/18 2473/7 2473/9
 2475/23 2476/1 2478/5
 2478/15 2483/7 2494/8
says [10] 2458/5 2461/10
 2463/25 2478/20 2478/22
 2479/16 2479/23 2492/6
 2493/6 2500/2
scared [1] 2478/15
Scott [1] 2454/9
seal [1] 2513/4
search [2] 2469/7 2469/7
searching [3] 2480/8 2511/9
 2517/4
seats [1] 2516/8
second [8] 2454/10 2460/15
 2485/12 2486/14 2487/3
 2505/20 2507/17 2509/9
Section [4] 2505/12 2507/10
 2508/23 2522/4
security [8] 2469/4 2512/8
 2512/12 2515/4 2515/7 2515/8
 2515/18 2517/21
see [26] 2450/14 2457/10
 2457/25 2458/13 2459/12
 2459/13 2461/1 2461/22
 2461/24 2461/25 2463/15
 2465/21 2467/23 2468/3
 2468/14 2477/21 2477/22
 2478/18 2480/8 2481/11
 2500/5 2513/1 2515/15 2517/9
 2519/7 2521/11
seek [1] 2501/20
seeking [3] 2461/6 2479/22
 2480/1
seems [1] 2486/17
seen [2] 2487/12 2499/10
send [8] 2452/17 2461/7
 2461/8 2470/19 2512/11
 2512/17 2519/14 2519/19
sending [1] 2480/15
sense [6] 2460/21 2460/22
 2474/2 2482/3 2482/6 2497/20
sent [2] 2456/7 2480/20
sentence [12] 2456/9 2485/13

2485/14 2486/14 2487/3
2487/3 2487/7 2488/8 2489/16
2489/18 2503/5 2503/4
sentenced [1] 2456/3
sentences [2] 2502/15
 2502/17
sentencing [1] 2501/17
separate [1] 2500/22
separately [1] 2500/24
September [10] 2452/16
 2457/24 2461/1 2471/4
 2471/12 2478/7 2479/25
 2481/10 2483/14 2505/17
September 26 [4] 2452/16
 2461/1 2478/7 2505/17
September 27th [2] 2471/4
 2471/12
sergeant [1] 2470/19
sergeants [6] 2452/17
 2458/14 2467/14 2471/8
 2471/10 2494/3
seriousness [1] 2503/2
served [1] 2456/23
service [3] 2456/24 2457/2
 2511/3
serving [1] 2456/8
session [1] 2499/11
set [3] 2479/2 2479/15
 2518/5
Sexton [14] 2456/6 2456/8
 2456/15 2456/16 2456/25
 2457/6 2457/7 2457/12
 2464/23 2469/12 2469/14
 2472/9 2501/22 2502/8
Sexton's [1] 2457/16
Sextons [1] 2454/6
shaken [1] 2469/20
shaking [2] 2471/4 2471/5
share [1] 2519/14
she [9] 2474/22 2478/19
 2478/19 2478/20 2478/22
 2478/23 2479/8 2479/9
 2479/10
sheet [1] 2519/12
sheriff [13] 2453/3 2460/1
 2460/1 2460/1 2462/7 2464/11
 2464/18 2466/23 2467/7
 2478/19 2478/21 2481/6
 2481/23
sheriff's [3] 2464/10 2503/7
 2503/16
Sheriffs [1] 2469/20
shook [1] 2472/19
should [26] 2453/9 2460/22
 2469/2 2472/16 2486/18
 2487/4 2487/9 2491/23
 2492/16 2497/1 2499/3
 2500/24 2502/2 2502/4
 2502/18 2504/8 2505/2 2505/7
 2510/1 2510/5 2511/21
 2511/23 2512/6 2512/13
 2517/12 2521/12
shouldn't [4] 2468/25 2482/7
 2492/15 2492/15
show [9] 2451/21 2451/25
 2452/3 2464/7 2468/1 2472/23
 2481/8 2493/1 2495/9
showed [3] 2456/19 2472/24
 2481/7
showing [1] 2508/14
shown [3] 2504/22 2505/2
 2520/21
shows [3] 2456/20 2467/16
 2519/12
side [4] 2477/24 2493/8
 2493/24 2493/25
sidebar [1] 2513/1
sign [1] 2512/7
signed [2] 2512/12 2512/14

similar [1] 2506/11
similarly [2] 2506/11
 2506/24
simply [4] 2506/9 2510/6
 2510/11 2517/7
single [4] 2466/4 2468/15
 2483/8 2496/22
sir [2] 2451/2 2478/22
sits [1] 2456/7
sitting [3] 2465/2 2475/1
 2517/11
situation [3] 2451/20 2486/9
 2492/1
six [1] 2472/21
six weeks [1] 2472/21
slide [1] 2456/18
small [1] 2462/1
Smith [3] 2490/21 2490/22
 2493/16
Smiths [1] 2454/6
so [37] 2450/14 2450/21
 2455/2 2455/8 2456/11 2468/6
 2469/11 2474/10 2475/8
 2475/23 2478/2 2480/9 2484/4
 2485/4 2485/11 2486/16
 2486/17 2486/20 2486/24
 2487/13 2488/5 2489/24
 2490/24 2491/4 2491/6
 2492/10 2494/13 2495/5
 2495/12 2496/20 2499/9
 2507/23 2508/8 2509/23
 2510/1 2510/9 2519/21
social [1] 2510/24
sole [1] 2508/7
solely [4] 2454/22 2460/12
 2496/16 2499/12
solicit [1] 2494/5
some [13] 2468/20 2481/3
 2484/3 2490/14 2490/17
 2490/20 2493/20 2496/22
 2499/7 2506/16 2511/20
 2512/18 2520/20
somebody [3] 2458/3 2458/6
 2470/22
somehow [2] 2464/15 2490/18
someone [4] 2463/24 2467/18
 2469/18 2469/23
something [15] 2451/15
 2464/15 2467/18 2470/13
 2472/16 2474/24 2475/25
 2485/24 2486/20 2491/6
 2493/10 2494/1 2495/18
 2495/20 2506/4
sorry [2] 2471/13 2490/5
spaghetti [1] 2455/10
speak [2] 2509/21 2517/7
special [10] 2452/17 2457/10
 2458/14 2461/8 2472/2
 2477/10 2477/15 2477/23
 2478/10 2480/22
specific [6] 2490/20 2492/17
 2492/20 2493/8 2495/18
 2495/20
specifically [1] 2474/17
speculation [1] 2497/21
spoke [1] 2453/5
spoken [1] 2454/16
spot [1] 2471/21
spots [1] 2477/9
Spring [2] 2447/22 2448/6
squad [2] 2473/16 2473/21
stand [8] 2454/20 2455/7
 2456/7 2459/25 2466/15
 2466/19 2479/18 2494/10
standard [4] 2464/14 2464/20
 2466/3 2466/4
stands [1] 2512/22
start [4] 2495/10 2515/19
 2515/22 2520/25

**S**

**started [3]**   2463/11 2483/11 2520/20
**starting [1]**   2487/8
**starts [3]**   2489/18 2520/15 2521/6
**state [6]**   2463/7 2480/15 2491/18 2498/23 2504/13 2504/15
**stated [1]**   2489/16
**statement [27]**   2455/3 2470/20 2474/25 2485/6 2485/9 2485/11 2485/17 2485/23 2486/6 2486/16 2486/16 2486/20 2486/23 2487/13 2487/18 2487/19 2488/4 2488/7 2488/11 2491/3 2491/9 2494/14 2501/9 2509/5 2509/6 2509/11 2509/13
**statements [15]**   2455/14 2455/17 2458/9 2468/11 2468/14 2472/24 2483/24 2486/17 2486/19 2488/15 2488/19 2498/14 2498/20 2508/22 2509/3
**STATES [14]**   2447/1 2447/4 2447/6 2501/17 2501/21 2501/25 2503/18 2505/12 2507/10 2508/24 2509/8 2509/15 2522/5 2522/9
**stay [3]**   2515/11 2515/11 2515/12
**stays [1]**   2453/24
**stealth [2]**   2489/10 2503/10
**stenographically [1]**   2522/6
**Step [1]**   2460/15
**Steve [3]**   2454/9 2461/25 2479/1
**still [2]**   2469/21 2482/1
**stipulation [4]**   2456/22 2518/24 2518/25 2519/8
**stipulations [3]**   2518/13 2518/22 2519/1
**stop [6]**   2461/3 2461/11 2461/11 2476/19 2477/10 2477/12
**stopped [1]**   2462/7
**stopping [1]**   2461/14
**straight [1]**   2483/10
**strange [1]**   2486/18
**strategies [1]**   2503/22
**Street [2]**   2447/22 2448/6
**streets [1]**   2459/1
**stricken [1]**   2499/5
**strong [1]**   2519/2
**stuff [2]**   2453/1 2492/4
**subject [3]**   2458/24 2459/2 2459/4
**submitted [2]**   2484/7 2512/23
**subpoenas [1]**   2461/12
**substantial [2]**   2481/9 2508/12
**substituted [1]**   2517/13
**such [8]**   2489/11 2499/14 2502/19 2503/10 2504/18 2505/8 2511/8 2517/3
**sufficient [1]**   2495/17
**suggest [1]**   2494/17
**suggestion [4]**   2491/23 2493/20 2496/25 2499/2
**suit [1]**   2457/7
**Suite [1]**   2448/12
**summaries [5]**   2504/21 2504/23 2505/3 2505/5 2505/6
**supervise [2]**   2481/20 2482/4
**supervised [1]**   2456/9
**supervising [1]**   2481/19
**Supplemental [1]**   2489/4

**supply [1]**   2508/15
**support [3]**   2479/20 2500/5 2508/16
**supporting [1]**   2505/7
**supposed [3]**   2479/3 2488/3 2518/15
**sure [9]**   2451/3 2456/5 2471/8 2473/7 2473/25 2479/8 2485/1 2485/11 2495/12
**surveillance [1]**   2477/19
**suspect [1]**   2473/8
**sustain [1]**   2495/3
**sustained [11]**   2450/10 2450/18 2450/20 2472/14 2477/6 2491/14 2492/7 2492/18 2492/21 2492/25 2495/8
**sustaining [5]**   2450/23 2451/13 2451/16 2492/5 2494/18
**swear [1]**   2515/6
**sworn [2]**   2498/7 2515/8
**sympathy [2]**   2465/12 2496/19
**system [3]**   2469/23 2479/2 2479/14

**T**

**table [1]**   2488/9
**tactical [1]**   2454/18
**tactics [1]**   2503/22
**take [13]**   2461/2 2465/18 2484/3 2484/4 2487/21 2488/23 2489/18 2495/25 2500/4 2512/18 2515/15 2518/2 2519/22
**taken [2]**   2456/5 2511/20
**taking [1]**   2474/16
**talk [10]**   2455/25 2460/1 2461/4 2466/22 2471/23 2484/13 2494/24 2516/20 2516/24 2520/18
**talked [9]**   2455/11 2456/16 2457/9 2458/8 2461/17 2468/17 2471/3 2482/9 2485/4
**talking [14]**   2457/18 2458/17 2458/17 2458/18 2460/10 2460/11 2469/16 2469/16 2473/20 2473/21 2475/2 2481/14 2482/15 2490/6
**talks [4]**   2463/16 2465/9 2465/15 2476/23
**tampering [1]**   2463/16
**Tanaka [13]**   2454/11 2462/1 2479/3 2481/8 2481/12 2481/15 2481/21 2481/22 2482/2 2494/8 2494/9 2494/11 2494/11
**Tanaka's [3]**   2462/6 2479/1 2479/5
**Tanner [2]**   2457/10 2477/15
**Tanner's [2]**   2458/15 2461/8
**tape [1]**   2519/16
**target [1]**   2504/5
**targets [1]**   2503/25
**tell [14]**   2451/8 2456/3 2456/10 2461/9 2463/1 2466/19 2470/22 2473/12 2475/16 2477/3 2482/23 2491/15 2495/14 2512/21
**telling [8]**   2453/6 2466/24 2478/8 2480/2 2480/22 2486/18 2486/22 2492/14
**tells [1]**   2467/7
**tendency [1]**   2509/16
**tenure [1]**   2470/8
**term [1]**   2502/23
**terms [1]**   2464/20
**testified [4]**   2457/10 2462/22 2500/5 2502/22

**testify [7]**   2455/1 2455/5 2456/3 2497/9 2497/13 2497/15 2500/15
**testifying [3]**   2454/22 2462/24 2500/7
**testimonial [1]**   2518/21
**testimony [47]**
**text [2]**   2510/23 2516/23
**than [11]**   2454/5 2454/16 2457/25 2459/24 2461/13 2461/14 2464/16 2487/11 2490/11 2493/7 2502/6
**Thank [1]**   2483/25
**that [417]**
**their [22]**   2451/10 2451/12 2459/5 2459/14 2461/19 2466/7 2472/15 2474/2 2474/3 2475/12 2481/3 2481/4 2481/4 2495/4 2498/19 2500/16 2502/3 2502/12 2503/21 2503/22 2503/23 2503/23
**them [47]**
**themselves [1]**   2504/25
**then [24]**   2451/22 2452/2 2452/4 2461/9 2462/5 2465/9 2469/24 2471/12 2479/11 2479/24 2481/12 2481/13 2483/2 2484/5 2484/6 2487/4 2487/7 2488/8 2489/9 2489/17 2490/19 2509/22 2519/9 2519/15
**there [63]**
**thereby [1]**   2506/24
**therefore [1]**   2505/8
**these [38]**
**they [70]**
**THIBODEAUX [2]**   2447/21 2522/12
**thing [5]**   2453/17 2477/25 2478/3 2494/6 2519/9
**things [15]**   2453/6 2453/8 2455/6 2455/23 2456/22 2457/5 2458/19 2461/17 2468/24 2479/12 2481/3 2482/15 2482/15 2498/12 2500/5
**think [35]**   2452/3 2452/4 2457/20 2458/11 2458/25 2459/1 2459/4 2460/16 2468/5 2485/10 2485/13 2485/15 2486/12 2486/21 2486/24 2487/12 2487/20 2487/24 2488/5 2488/12 2488/16 2490/14 2490/15 2490/15 2492/1 2494/2 2495/5 2500/16 2505/8 2510/6 2518/21 2519/1 2519/20 2520/6 2520/8
**thinking [1]**   2492/12
**thinks [1]**   2490/20
**third [2]**   2505/23 2509/13
**this [98]**
**Thompson [16]**   2453/18 2454/19 2455/8 2455/12 2457/5 2457/7 2457/12 2457/17 2462/17 2464/24 2479/17 2480/15 2487/25 2488/23 2494/9 2502/8
**thoroughly [1]**   2465/22
**those [13]**   2453/8 2453/20 2457/9 2462/11 2467/12 2467/23 2470/23 2482/16 2483/10 2490/14 2503/18 2511/24 2518/7
**though [3]**   2452/9 2486/7 2506/17
**thought [5]**   2460/18 2462/8 2486/6 2493/3 2519/11
**threaten [3]**   2458/15 2461/7 2467/8

**T**

**threatened [4]**    2459/21 2471/8 2471/10 2477/11
**Threatening [2]**    2478/8 2478/9
**three [15]**    2450/9 2450/19 2450/19 2450/19 2450/25 2451/1 2451/6 2451/20 2455/16 2475/5 2475/20 2483/6 2493/23 2493/24 2495/7
**three counts [1]**    2455/16
**three for [2]**    2450/19 2450/25
**three instances [1]**    2451/20
**three issues [1]**    2495/7
**three people [1]**    2493/23
**three times [2]**    2450/19 2451/6
**through [9]**    2451/20 2453/14 2454/14 2465/16 2471/18 2481/11 2495/9 2512/12 2516/22
**tidbits [5]**    2461/25 2462/9 2462/11 2462/11 2462/16
**time [10]**    2450/21 2453/6 2453/15 2457/18 2470/8 2475/8 2477/16 2481/10 2488/5 2512/19
**times [7]**    2450/19 2451/6 2462/23 2468/23 2476/15 2477/1 2498/20
**tiny [1]**    2466/1
**Title [4]**    2505/12 2507/10 2508/24 2522/4
**today [3]**    2462/3 2463/12 2474/8
**together [1]**    2520/13
**told [13]**    2452/21 2453/14 2454/17 2457/7 2457/17 2458/20 2464/19 2473/13 2477/10 2477/12 2480/4 2495/4 2495/11
**Tom [6]**    2454/9 2462/6 2470/3 2473/13 2477/19 2501/13
**too [1]**    2471/13
**took [2]**    2496/19 2511/21
**top [1]**    2481/5
**topic [1]**    2493/10
**Torribio [1]**    2479/23
**touch [1]**    2473/15
**transcript [9]**    2447/13 2450/13 2473/18 2493/2 2494/21 2495/9 2495/10 2522/6 2522/7
**transcripts [3]**    2450/9 2451/1 2493/5
**transparent [2]**    2476/14 2476/16
**treatment [2]**    2501/21 2501/24
**trial [19]**    2447/14 2451/15 2452/24 2484/11 2484/16 2494/11 2497/6 2499/12 2500/20 2501/16 2501/19 2501/23 2502/10 2504/21 2511/1 2511/14 2511/20 2516/18 2517/2
**tried [6]**    2452/25 2468/8 2473/1 2494/1 2494/5 2507/15
**tries [6]**    2457/4 2464/9 2481/17 2483/3 2484/13 2516/24
**trouble [2]**    2454/23 2454/25
**true [1]**    2522/5
**truer [1]**    2454/16
**truly [1]**    2460/23
**truth [3]**    2456/3 2456/10

2463/1
**truthful [1]**    2456/10
**truthfully [1]**    2456/11
**truthfulness [1]**    2487/17
**try [4]**    2456/21 2474/24 2511/11 2516/20
**trying [15]**    2456/1 2458/1 2459/10 2459/12 2464/13 2465/11 2465/12 2471/19 2474/23 2476/4 2476/19 2478/10 2488/9 2488/12 2494/9
**TWELVE [1]**    2447/14
**twice [1]**    2454/5
**two [21]**    2452/2 2452/4 2452/19 2452/23 2452/24 2456/22 2458/17 2459/8 2462/23 2467/19 2470/7 2474/11 2477/8 2482/19 2492/24 2492/25 2495/8 2495/25 2505/18 2506/2 2518/21
**two attorneys [1]**    2459/8
**two calls [1]**    2470/7
**two different [1]**    2477/8
**two instances [1]**    2492/24
**two minute [1]**    2495/25
**two minutes [2]**    2452/2 2452/4
**two of [2]**    2482/19 2518/21
**two or [2]**    2505/18 2506/2
**two other [1]**    2462/23
**two things [1]**    2456/22
**two-and-a-half [3]**    2452/19 2452/23 2452/24

**U**

**U.S [9]**    2447/21 2456/20 2456/24 2457/1 2461/9 2467/3 2471/15 2479/14 2490/22
**ultimately [2]**    2451/9 2475/17
**unanimous [4]**    2509/24 2510/8 2512/5 2512/25
**unaware [1]**    2475/5
**under [5]**    2482/1 2485/16 2486/5 2487/6 2513/4
**undercover [16]**    2462/2 2470/12 2482/24 2482/25 2489/6 2489/7 2489/11 2489/12 2489/23 2489/25 2503/9 2503/11 2503/12 2504/1 2504/2 2504/5
**underling [1]**    2467/20
**underlying [3]**    2505/4 2505/7 2505/9
**undermined [1]**    2476/5
**underneath [1]**    2483/3
**undersheriff [1]**    2478/24
**understand [5]**    2453/21 2485/5 2490/18 2495/18 2498/17
**undertook [2]**    2508/15 2508/18
**underway [1]**    2503/25
**unique [1]**    2481/23
**UNITED [14]**    2447/1 2447/4 2447/6 2501/17 2501/21 2501/25 2503/18 2505/12 2507/10 2508/24 2509/8 2509/15 2522/5 2522/9
**unlawful [4]**    2506/4 2506/15 2507/4 2509/12
**unless [2]**    2470/18 2497/5
**unordinary [1]**    2469/9
**unprecedented [6]**    2468/18 2468/19 2469/11 2470/1 2470/2 2470/9
**until [15]**    2459/22 2459/23

2469/3 2476/2 2484/8 2484/17 2495/24 2495/25 2515/12 2515/16 2515/20 2516/10 2516/11 2517/13 2517/14
**untrue [1]**    2509/11
**Unusual [1]**    2470/15
**up [27]**    2450/21 2451/1 2451/9 2452/9 2453/1 2457/20 2458/1 2459/25 2461/10 2465/18 2466/15 2466/19 2469/22 2479/3 2479/15 2479/19 2481/13 2491/24 2492/4 2492/6 2492/9 2494/9 2494/11 2494/24 2497/2 2499/4 2520/21
**update [2]**    2462/1 2480/18
**updated [1]**    2462/9
**upon [2]**    2497/20 2506/5
**upper [1]**    2471/19
**us [3]**    2448/5 2520/19 2521/5
**use [12]**    2465/12 2465/13 2465/14 2465/20 2480/17 2489/7 2489/11 2503/8 2503/10 2503/13 2504/2 2504/16
**used [1]**    2499/20
**uses [1]**    2485/6
**using [6]**    2472/16 2479/7 2479/9 2489/13 2511/9 2517/4
**uttered [1]**    2452/16

**V**

**verdict [19]**    2491/23 2492/16 2497/1 2498/10 2499/3 2500/24 2500/25 2509/23 2510/8 2510/11 2510/12 2512/4 2512/5 2512/6 2512/25 2516/11 2516/15 2520/1 2521/12
**very [12]**    2450/12 2450/13 2453/21 2463/13 2466/2 2480/15 2490/13 2492/17 2492/19 2493/18 2496/3 2520/24
**via [1]**    2510/22
**video [2]**    2471/25 2471/25
**view [1]**    2487/11
**viewed [3]**    2482/10 2482/12 2482/13
**views [2]**    2484/19 2510/3
**violated [1]**    2481/18
**violates [1]**    2511/16
**violation [3]**    2505/12 2507/9 2508/23
**violations [2]**    2504/13 2504/15
**vividly [1]**    2453/21
**VOLUME [2]**    2447/15 2494/22
**voluntariness [2]**    2485/8 2485/23
**voluntary [2]**    2485/10 2486/20

**W**

**waiting [2]**    2512/19 2516/16
**walking [1]**    2469/22
**want [16]**    2452/22 2457/22 2458/21 2458/22 2470/18 2471/23 2472/23 2475/14 2478/17 2482/19 2484/8 2515/11 2518/7 2518/23 2520/14 2521/11
**wanted [7]**    2453/2 2459/9 2471/14 2471/14 2472/5 2472/9 2481/24
**wants [12]**    2457/19 2460/11 2460/17 2460/20 2461/4 2463/19 2467/10 2472/19

**W**

**wants... [4]**   2474/20 2477/1
 2482/5 2486/22
**warp [1]**   2476/4
**warping [1]**   2461/18
**was [172]**
**wasn't [16]**   2450/25 2451/6
 2451/14 2455/24 2460/25
 2461/5 2463/20 2467/4 2467/4
 2469/2 2469/4 2471/1 2473/7
 2477/13 2479/10 2481/15
**watch [2]**   2511/6 2517/1
**way [23]**   2454/4 2454/23
 2454/24 2457/20 2457/25
 2458/5 2460/20 2469/5 2475/4
 2475/11 2481/3 2491/18
 2494/15 2494/25 2498/23
 2499/9 2502/25 2506/22
 2510/18 2510/19 2511/2
 2511/11 2519/3
**ways [3]**   2465/4 2490/14
 2506/11
**we [64]**
**wearing [1]**   2457/6
**website [1]**   2510/23
**week [1]**   2520/13
**weeks [2]**   2452/24 2472/21
**weigh [1]**   2496/11
**weight [10]**   2486/15 2486/19
 2488/20 2499/21 2499/23
 2500/13 2500/16 2501/11
 2505/8 2510/10
**welcome [1]**   2478/16
**well [10]**   2451/18 2457/21
 2473/11 2473/24 2480/14
 2492/12 2493/1 2494/15
 2495/1 2519/19
**went [8]**   2452/17 2470/5
 2470/5 2471/13 2477/9
 2477/12 2481/13 2494/23
**were [65]**
**weren't [5]**   2466/22 2467/2
 2470/4 2520/17 2520/19
**WESTERN [1]**   2447/2
**what [92]**
**whatever [2]**   2481/24 2518/22
**whatsoever [1]**   2454/21
**when [46]**
**whenever [1]**   2469/14
**where [11]**   2451/4 2453/24
 2457/5 2457/12 2462/23
 2473/18 2474/15 2475/2
 2477/8 2477/9 2478/15
**whether [24]**   2457/15 2458/6
 2472/17 2474/14 2487/18
 2487/19 2488/20 2493/4
 2494/17 2495/5 2495/12
 2496/14 2500/9 2500/18
 2501/10 2502/3 2503/2
 2503/24 2504/7 2504/9 2506/5
 2509/24 2511/21 2512/2
**which [22]**   2459/18 2474/14
 2485/16 2486/5 2487/6 2490/6
 2492/7 2498/9 2499/18
 2499/25 2499/25 2501/15
 2501/19 2501/20 2501/23
 2502/3 2502/9 2502/23
 2506/22 2509/4 2512/18
 2520/4
**while [8]**   2453/25 2465/3
 2472/4 2493/9 2500/6 2512/19
 2516/12 2516/16
**who [34]**   2453/20 2453/22
 2453/23 2454/6 2454/7
 2455/19 2463/24 2464/25
 2466/21 2466/22 2469/19
 2470/23 2470/24 2474/21
 2481/21 2481/22 2482/22

2482/23 2483/2 2483/5 2483/5
2485/12 2488/16 2490/14
2501/14 2501/18 2501/22
2502/22 2506/19 2506/21
2507/1 2509/20 2511/16
2517/11
**whole [4]**   2460/14 2470/2
 2476/3 2478/2
**whom [1]**   2465/1
**why [21]**   2458/9 2458/13
 2458/14 2458/19 2467/2
 2467/4 2467/4 2467/12
 2470/19 2470/20 2472/3
 2473/11 2473/12 2474/1
 2474/8 2474/24 2476/24
 2487/13 2490/16 2516/8
 2519/21
**will [62]**
**willfully [4]**   2506/15
 2506/19 2508/21 2509/9
**William [1]**   2501/13
**willing [1]**   2461/10
**withdraw [1]**   2461/12
**within [3]**   2453/14 2508/22
 2509/7
**without [4]**   2465/2 2468/7
 2469/13 2485/14
**witness [19]**   2449/3 2455/7
 2470/14 2470/21 2470/23
 2488/20 2488/21 2498/8
 2498/17 2499/15 2499/15
 2500/2 2500/3 2501/11
 2501/12 2501/14 2501/17
 2501/22 2502/22
**witness' [8]**   2500/4 2500/6
 2500/6 2500/7 2500/8 2500/9
 2500/10 2502/13
**witnesses [22]**   2453/12
 2455/9 2455/12 2461/7
 2462/19 2463/16 2466/21
 2478/8 2488/7 2488/18
 2498/16 2500/14 2500/16
 2501/9 2502/2 2502/5 2502/6
 2502/11 2502/16 2502/20
 2504/18 2504/19
**wondering [1]**   2487/13
**word [4]**   2482/3 2482/4
 2489/6 2489/17
**words [14]**   2452/15 2452/18
 2452/22 2453/5 2453/13
 2453/13 2454/16 2461/18
 2463/21 2465/20 2480/3
 2480/17 2482/16 2520/16
**work [2]**   2454/1 2454/12
**worked [2]**   2469/19 2493/18
**working [2]**   2461/24 2464/4
**worried [1]**   2469/4
**would [31]**   2450/12 2451/14
 2451/15 2452/2 2455/3 2459/1
 2472/10 2472/11 2474/22
 2477/22 2477/23 2479/9
 2486/3 2486/6 2487/1 2487/25
 2488/1 2489/24 2490/24
 2491/15 2491/16 2492/8
 2494/10 2494/20 2495/17
 2501/20 2518/20 2519/2
 2519/7 2520/16 2520/19
**wraps [1]**   2464/10
**writ [6]**   2456/17 2456/21
 2456/23 2457/1 2457/3
 2479/12
**writing [3]**   2510/22 2512/14
 2512/16
**written [2]**   2491/11 2518/24
**wrong [5]**   2469/24 2493/4
 2495/6 2495/13 2495/13
**wrote [1]**   2479/19

**Y**

**yanked [1]**   2456/11
**years [5]**   2457/19 2458/2
 2465/10 2469/21 2481/22
**yes [20]**   2451/24 2452/14
 2455/2 2455/18 2457/14
 2460/9 2463/10 2475/13
 2478/23 2485/20 2485/25
 2486/1 2487/23 2490/9 2496/2
 2518/11 2519/18 2519/24
 2519/25 2520/5
**yet [4]**   2465/2 2465/9
 2466/24 2469/25
**you [359]**
**your [132]**
**yourself [1]**   2509/25

**Z**

**zero [1]**   2466/24
**zero benefits [1]**   2466/24