UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

HONORABLE PERCY ANDERSON, U.S. DISTRICT JUDGE

- - -

UNITED STATES OF AMERICA,          )
                                   )
                PLAINTIFF,         )
                                   )
        vs.                        ) No. CR16-66(A)-PA
                                   )
LEROY BACA,                        )
                                   )
                DEFENDANT.         )
_____)

REPORTER'S TRANSCRIPT OF JURY TRIAL

DAY 1, VOLUME II of II

PAGES 51-170

LOS ANGELES, CALIFORNIA

WEDNESDAY, FEBRUARY 22, 2017

2:01 P.M.

_____

CINDY L. NIRENBERG, CSR 5059, FCRR
U.S. Official Court Reporter
350 W. 1st Street, #4455
Los Angeles, CA 90012
*www.msfedreporter.com*

APPEARANCES OF COUNSEL:


FOR THE PLAINTIFF:
                    OFFICE OF THE UNITED STATES ATTORNEY
                    BY: BRANDON FOX,
                        ASSISTANT U.S. ATTORNEY
                        EDDIE A. JAUREGUI,
                        ASSISTANT U.S. ATTORNEY
                        LIZABETH A. RHODES,
                        ASSISTANT U.S. ATTORNEY
                    312 NORTH SPRING STREET
                    13TH FLOOR
                    LOS ANGELES, CA 90012
                    213-894-2434


FOR THE DEFENDANT:
                    MORGAN LEWIS & BOCKIUS
                    BY: NATHAN J. HOCHMAN, ATTORNEY AT LAW
                        BRIANNA L. ABRAMS, ATTORNEY AT LAW
                    THE WATER GARDEN
                    1601 CLOVERFIELD BOULEVARD
                    SUITE 2050 NORTH
                    SANTA MONICA, CA 90404
                    310-255-9025


ALSO PRESENT:
                    LEAH TANNER, FBI SPECIAL AGENT

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

I N D E X

|                                   | PAGE |
|-----------------------------------|------|
| JURY VOIR DIRE RESUMED            | 54   |
| DISCUSSION HELD AT SIDEBAR        | 72   |
| DISCUSSION HELD AT SIDEBAR        | 74   |
| DISCUSSION HELD AT SIDEBAR        | 88   |
| DISCUSSION HELD AT SIDEBAR        | 94   |
| DISCUSSION HELD AT SIDEBAR        | 120  |
| DISCUSSION HELD AT SIDEBAR        | 154  |
| DISCUSSION HELD AT SIDEBAR        | 163  |

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES, CALIFORNIA; WEDNESDAY, FEBRUARY 22, 2017

2:01 P.M.

- - - - -

THE COURT:  All right.  Let's call the case.

THE CLERK:  Item 1, CR16-66(A)-PA, United States of America versus Leroy Baca.

Counsel, please state your appearances.

MR. FOX:  Good afternoon, Your Honor.  Brandon Fox, Elizabeth Rhodes and Eddie Jauregui on behalf of the United States.

MR. HOCHMAN:  Good afternoon, Your Honor.  Nathan Hochman and Brianna Abrams on behalf of defendant Leroy Baca, who's present.

THE COURT:  Good afternoon, all.

What I intend to do now is to submit the Criminal Case Questionnaire to the proposed jurors and have them read it.  I've incorporated into that questionnaire the two questions that -- the two additional questions that were submitted by the parties.

Do you have a copy of the current questionnaire?

Okay.  We'll make sure you have a copy.

So I'll ask the clerk to provide counsel --

MR. FOX:  We do, Your Honor.

THE COURT:  Okay.  I suspect it's going to take them a few minutes to review that.

And anybody have any objections to providing those -- the prospective jurors with the questionnaire?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No objection, Your Honor.

THE COURT:  Okay.  We have the one juror who allegedly, I guess, was using her computer to do some research during jury selection.  If there's nothing else, I suppose we could have her brought up here and admonish her about that and excuse her or have the jury commissioner excuse her.

MR. FOX:  I don't have a preference, Your Honor.

MR. HOCHMAN:  No preference.  I mean, the only reason to bring her up here, Your Honor, is to see if she shared any of her findings -- assuming she actually did it -- with any other juror, and that might be useful to know.

THE COURT:  Okay.  Well, I'm -- I would do that, but I think the chances of that are quite unlikely because she was never a part of the group that was over here.

MR. HOCHMAN:  That's right.  She was in the hardship pool.

THE COURT:  Correct.

MR. HOCHMAN:  That's fine, Your Honor.  If you want to either dismiss her up here or down with the jury commissioner, either is fine.

THE COURT:  Yeah, I think we have other fish to fry, so I'm inclined to let the jury commissioner dismiss her, and

I'll ask the jury commissioner to admonish her about following the Court's instructions and the fact that she jeopardized these proceedings.

Okay. Now, is there anything else that we need to bring up before we start bringing in the jurors one by one?

MR. FOX: Nothing, Your Honor.

MR. HOCHMAN: No, Your Honor.

THE COURT: One other thought, which I'm not really wedded to at all. Either sometime today, or we can do it now, once they've had a chance to look at the questionnaire, we could go to the entire group and ask them if there's anyone who has no affirmative answers or yes responses to any of those questions, and assuming -- I just don't remember the last time how many of those people we ended up with, but that could give us some -- that could save some time, and then we can probably excuse those people and have them come back tomorrow.

MR. FOX: Can you remind us, Your Honor? The plan is to bring them in one by one.

THE COURT: Um-hum.

MR. FOX: And then we then send everybody back as they're done, and then you bring everybody in the courtroom and ask them additional questions as you seat them or --

THE COURT: Well, I think that the way that it worked the last time is we're going to bring them in one at a time and ask them if they've reviewed the questionnaire and if they have

any affirmative answers to any of those questions.

And then, depending on what their answer is, the Court will ask them some additional questions, and I'll ask you ultimately to pass on them for cause.

Once we have a number 36 -- somewhere between 36 and 40, we then bring in those 40 people or so, and we then will seat 12 of them. And then I will -- they will tell us a little bit about themselves, answer the background questionnaire, and then you will start your peremptory challenges.

MR. HOCHMAN: Your Honor, my recollection from last time is I think maybe we had one or two when we brought them out.

THE COURT: Yeah, I thought it was more than that, but I'm happy just to do it individually.

MR. FOX: I think that's fine, Your Honor. Individually, I think we get to see them twice, which will be fine.

THE COURT: Okay.

MR. HOCHMAN: Thank you, Your Honor.

THE COURT: That's fine. Okay. Anything else?

MR. FOX: No, Your Honor.

MR. HOCHMAN: No, Your Honor.

THE COURT: Okay. There are apparently two of those jurors who now have decided that for whatever reason they cannot be with us. I'd probably ask the clerk just to excuse

them at this point.

MR. FOX:  Any idea if they just saw everybody else getting excused and then decided it was a good idea or --

THE COURT:  No.  I think one looked at her calendar and said, "I really can't do this based on my personal calendar," and the other -- yeah, I think both of them just sort of looked at their calendars and said, "You know, I really can't do this."  And there's -- we've got over a hundred-and- -- almost 120 people, so I don't think these two are really going to --

MR. HOCHMAN:  That's fine with us, Your Honor, if you want to excuse them.

MR. FOX:  Yes, Your Honor.  Thank you.

THE COURT:  Okay.  So I'll let the clerk let those two return.

In fact, why don't you go find out what -- do you have the numbers of those two people?

THE CLERK:  I do.

THE COURT:  Why don't you have them come over here and I'll excuse them real quick.  Bring them in one at a time.

You should have a new numerical list that contains probably a hundred, 120 numbers, and that's the current list of the people who are next door.

MR. FOX:  Yes, Your Honor.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  That is a numerical list, but ultimately, that's not the order in which they're going to be called into the jury box.

(Brief pause in the proceedings.)

(Prospective juror enters the courtroom.)

THE COURT:  Good afternoon.  I understand that you reviewed your calendar and decided that you could not be with us --

PROSPECTIVE JUROR:  Yes.

THE COURT:  -- for the next couple of weeks?

PROSPECTIVE JUROR:  Unfortunately.

THE COURT:  I'm going to ask that you return to the jury assembly room on the 1st floor and just tell them that you've been excused.

PROSPECTIVE JUROR:  Okay.

THE COURT:  All right.  Thank you very much.

PROSPECTIVE JUROR:  Thank you.  Do I --

THE COURT:  Yeah, you can just go out right through the front door.

PROSPECTIVE JUROR:  Thank you.

(Prospective juror enters the courtroom.)

THE COURT:  Hi.

PROSPECTIVE JUROR:  Hi.

THE COURT:  I understand that you took a look at your calendar and decided that you could not be with us for the next

couple of weeks.

PROSPECTIVE JUROR:  It's not my calendar.  It's that I won't be paid for as many days as I thought I would.  I spoke to my HR director during recess, and it will be a long time of not getting paid.

THE COURT:  Okay.  Are you married?

PROSPECTIVE JUROR:  Yes.

THE COURT:  And does your husband work?

PROSPECTIVE JUROR:  He does.

THE COURT:  And how many members of your household?

PROSPECTIVE JUROR:  Two.

THE COURT:  And what does your husband do for a living?

PROSPECTIVE JUROR:  He is a teacher.

THE COURT:  Okay.  And what do you do?

PROSPECTIVE JUROR:  I am a communications director for a nonprofit.

THE COURT:  Okay.  And how many days a week do you work?

PROSPECTIVE JUROR:  Five.

THE COURT:  Okay.  And what are your hours?

PROSPECTIVE JUROR:  I'm full-time, so I generally work 8:30 to 5:00.

THE COURT:  Okay.  We're going to go ahead and excuse you, so you can return to the jury assembly room on the 1st

floor.

PROSPECTIVE JUROR:  Thank you.  Sorry.

THE COURT:  It's okay.  Thank you very much.

Okay.  That was Juror Number 25811 and the other one is 60199.

(Brief pause in the proceedings.)

THE COURT:  Okay.  I've been advised that three additional jurors who apparently agreed that they could be with us apparently went down to the jury assembly room and checked themselves out.

I'm inclined to have the jury commissioner contact them and have them come back tomorrow and we'll figure it out who got their wires crossed and whether or not we still want them.

MR. HOCHMAN:  That sounds like a good idea, Your Honor.

MR. FOX:  Thank you, Your Honor.

THE COURT:  All right.  Are we ready?

Let's bring in the first juror.

(Brief pause in the proceedings.)

THE COURT:  Good afternoon.  If you could give us your badge number, please.

PROSPECTIVE JUROR:  1342.

THE COURT:  And have you had a chance to look at the Criminal Case Questionnaire?

PROSPECTIVE JUROR:  No.

THE COURT:  This (indicating) --

PROSPECTIVE JUROR:  Oh, yes.

THE COURT:  Okay.  Do you have any yes responses to any of those questions?

PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  So you were able to read through the questionnaire and you don't have yes responses to any of the questions?

PROSPECTIVE JUROR:  No, not -- not any clear or strong yes, no.

THE COURT:  Okay.  All right.  Thank you very much.

If you could just step outside for just one second and we'll be right back with you.

PROSPECTIVE JUROR:  Okay.

*(Prospective jurors exits the courtroom.)*

THE COURT:  I'm inclined to excuse anybody who we've -- for the day who we agree that we don't have any challenges for cause or who don't have any affirmative responses to any of these questions and have them come back tomorrow, because I don't think we're going to finish today.

MR. HOCHMAN:  That's fine, Your Honor.

MR. FOX:  Yes, Your Honor.  Thank you.

THE COURT:  Okay.  Any additional questions for this prospective juror?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  Okay.

(Prospective juror enters the courtroom.)

THE COURT:  All right, sir.  We're going to excuse you for the day, but you need to come back tomorrow morning at 8:30.

PROSPECTIVE JUROR:  Um-hmm.

THE COURT:  And if you would just -- come back to Courtroom 9-B at 8:30 tomorrow morning.

PROSPECTIVE JUROR:  Okay.

THE COURT:  Thank you very much.  And we'll keep that questionnaire for you.

Thank you.

(Prospective juror enters the courtroom.)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  If you could give us your badge number, the last five digits of your badge number, please.

PROSPECTIVE JUROR:  03269.

THE COURT:  Have you had a chance to look at the Criminal Case Questionnaire?

PROSPECTIVE JUROR:  I have.

THE COURT:  Do you have any yes answers to any of those questions.

PROSPECTIVE JUROR:  I have.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR:  The question where I'm asked whether I've heard, read, seen anything about the FBI, et cetera.

THE COURT:  Could you give me the number.

PROSPECTIVE JUROR:  Oh, sorry, yes.  Number 6.

THE COURT:  Okay.  And can you tell us what it is that you've seen, heard or read about the FBI or the sheriff's department or the US Attorney's Office.

PROSPECTIVE JUROR:  Well, somewhat recently, decisions made by the director of the FBI before the election showed me -- sort of left an impression upon me that certain agencies are arguably not unable to be swayed or maybe -- may be swayed in certain directions where politics are concerned.

THE COURT:  Can you -- obviously, what -- those news reports don't have anything to do with this case.  Can you put aside what you may have read or heard about the FBI and be a fair and impartial juror in this case?

PROSPECTIVE JUROR:  I can.

THE COURT:  And there may be FBI agents who may testify as witnesses in this case.  Can you put aside anything that you may have read or heard and judge their testimony and their credibility the same way you would that of any other witness?

PROSPECTIVE JUROR:  I could judge their testimony.

THE COURT:  Okay.  Do you think you could judge it fairly, that you could judge them the same way you would that of any other witness?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Any doubt in your mind?

PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Do you have any yes responses to any of the other questions?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR:  13 and 14.

THE COURT:  Okay.  Let's try 13 first.  Could you tell us about that.

PROSPECTIVE JUROR:  Experiences with the Los Angeles Police Department somewhat in my youth with my family that left lasting impressions.

THE COURT:  Okay.  And what kind of experiences were those?

PROSPECTIVE JUROR:  Pulling over with -- a pulling-over situation when I was gathered with my family on a somewhat recreational weekend.  You know, memories of my mom being handcuffed on the ground, et cetera, et cetera.

THE COURT:  Okay.

PROSPECTIVE JUROR:  Long-time memories.

THE COURT:  And that was with the Los Angeles Police Department?

PROSPECTIVE JUROR:  To be honest, I know that it happened in the Los Angeles -- in the Angeles Forest, so I don't know what agency that is.  I can't remember.  It might be the sheriffs.

THE COURT:  Okay.  Can you put aside that experience and be fair and impartial to both sides in this case?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Any doubt in your mind?

PROSPECTIVE JUROR:  No.

THE COURT:  Can you tell us a little bit -- this was a situation where you and your family were stopped?

PROSPECTIVE JUROR:  Yeah.  It was like, myself, uncles, aunts, mother, grandparents, young children.  We were in a large van.  I mean, this was like, late '90s, and there was absolutely no incident.  We had been pulled over because I suppose some incident had been reported, but it was not related to us.

So it was a memory where we were pulled over and there was the whole -- you know, the whole sort of evacuation of the van, which was somewhat traumatizing to witness as a youngster, but in the end there were -- there were no findings or no one was found guilty of anything.

THE COURT:  There may be sheriff's employees, deputy

sheriffs, former deputy sheriffs that may be witnesses in this case.  Are you going to be able to put aside that incident and judge this case based on the evidence that you see and hear here in court?

PROSPECTIVE JUROR:  I believe I can do that.

THE COURT:  Okay.  Is there any doubt in your mind?

PROSPECTIVE JUROR:  No.

THE COURT:  And Question 14, can you tell me what that's about?

PROSPECTIVE JUROR:  A general -- a general feeling of disappointment in certain agencies in our country, but to follow up, that I don't feel I would be unable to put aside for purposes of judging.

THE COURT:  Okay.  What agencies?  Do you have any agencies in mind?

PROSPECTIVE JUROR:  In general, our country's general policing -- various policing agencies.

THE COURT:  Is that confined to the federal government?  The local government?

PROSPECTIVE JUROR:  It used to be it was confined mostly to local government, you know, in light of a lot of publicized events over the last couple years, but I mentioned the director of the FBI and what came to light during -- before the election.

THE COURT:  Right.

PROSPECTIVE JUROR:  That sort of included that group along to my general feelings.

THE COURT:  Okay.  And you feel certain that you can put aside those feelings and judge this case based just on the evidence?

PROSPECTIVE JUROR:  I believe those feelings are personal to me, so I believe I would be able to put those aside for purposes of judging whatever is discussed in this room.

THE COURT:  Okay.  Any other yes or affirmative answers to any of the other questions?

PROSPECTIVE JUROR:  17.

THE COURT:  Okay.  Is there anything that you've seen or heard or read about the charges?

PROSPECTIVE JUROR:  I didn't follow the events of this case last year closely, but I was aware of it, and I do just know off the top of my head that it seems that the sheriff should have been acquitted.  That's all I know.

THE COURT:  When you say that "the sheriff should have been acquitted," is that -- is that statement based on what you read or heard?

PROSPECTIVE JUROR:  That's based off of my, I believe, recollection that almost all of the jurors were headed in that direction with the exception of one or two I think.

THE COURT:  Okay.  Are you going to be able to put aside that -- what you've heard -- or what you read or heard

about that case and judge this case based on the evidence that you actually see and hear here in court?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Any other yes or affirmative answers to any of the other questions?

PROSPECTIVE JUROR:  No, Your Honor.

THE COURT:  All right.  Could you step outside for just one second, please.

(Prospective juror exits the courtroom.)

THE COURT:  I can either take this up now -- we can take this up in open court or we can go to sidebar.

MR. FOX:  I think that we'd actually like a follow-up question.  Just tell him -- and I think we're probably going to get this a lot, at least someone will have heard about the prior trial, and just explain to him that that was a different trial with different charges, and there may be different witnesses and different evidence, and can he put aside everything that he read about, everything that he heard and judge this case without thinking about what he read about before?  I think that something like that would be good to tease out of him.

MR. HOCHMAN:  And other than the fact that -- I agree with it's certainly a different trial.  Obviously, two of the three charges are the same, so I don't think we can say it's different charges.  We can say there's an additional charge

here, but I don't think we need to mention charges.

I think it's just -- if you emphasize it's a different trial, you know, we're going to start over, and you know, he's got to fairly judge the evidence that's presented in this court and not what happened before.  Something along those lines if we need to make an admonition -- or was the government trying to ask a follow-up question of him to see if -- and I didn't understand what the question would be of him, if the government has a particular question in mind.

MR. FOX:  Your Honor, I do think that it is important to let him know that there is an additional charge that was not before that jury.  That's what we suggested before.

And the last question -- the question that I said was, "Can you put aside what you read, what you heard, and can you consider this case basically without respect to what you read or heard -- independent of what you read and heard."

And I think that we'd also like to find out whether this prospective juror's belief that Mr. Baca should have been acquitted, in his words, was that based on the number of jurors, their numerical division, or was it based on facts that he read -- things that he read, rather than facts that he read, in news reports.

THE COURT:  Okay.  Let's have the juror back in, please.

(Prospective juror enters the courtroom.)

THE COURT: When you said that you believe that the sheriff should have been acquitted, was that based on the number of jurors -- or their numerical division or based on things that you had read?

PROSPECTIVE JUROR: Right. So that was based solely on the fact -- again, I didn't -- I wasn't aware of the details of the case probably at all. Just at the end when there was a mistrial, I remember hearing that most of the jurors were in favor of acquittal and so that's what I meant by saying what I said.

THE COURT: Okay. So it was based on the number -- the division of the jurors?

PROSPECTIVE JUROR: Right.

THE COURT: It wasn't based on any facts --

PROSPECTIVE JUROR: That's correct.

THE COURT: -- or anything that you read?

PROSPECTIVE JUROR: That's correct.

THE COURT: Now, this is going to be a new case. And, in fact, there's going to be some charges that weren't brought in the first case.

Can you put aside what you read in the paper and judge this case anew based on the evidence that is brought forth in this case and make your own decision?

PROSPECTIVE JUROR: I believe I can.

THE COURT: Okay. Is there any doubt in your mind?

PROSPECTIVE JUROR:  No.

THE COURT:  So you can consider the evidence in this case irrespective of anything that you might have read in the paper?

PROSPECTIVE JUROR:  I can.

THE COURT:  Okay.  Any other yes or affirmative answers to any of the other questions?

PROSPECTIVE JUROR:  No, sir.

THE COURT:  All right.  Let me see counsel at sidebar.

*(Proceedings held at sidebar under seal 2:43 to 2:44 P.M.)*

*(The following proceedings were held in open court.)*

THE COURT:  Okay.  We're going to excuse you until tomorrow morning.  You are to return at 8:30 tomorrow morning

here in Courtroom 9-B, and in the interim, again, we want to make sure that you don't read, watch or listen to any news or media accounts or commentary about the case or anything to do with it.

Don't do any research, such as consulting dictionaries, searching the internet or using other reference materials and do not make any investigation about the case on your own.  Don't talk to anybody about the case.  Don't talk to your fellow jurors, members of your family, people involved in the trial.

PROSPECTIVE JUROR:  Understood, Your Honor.

THE COURT:  All right.  Thank you very much.  We'll see you tomorrow morning at 8:30.  And we will take your questionnaire.  Did you leave anything in that courtroom?

PROSPECTIVE JUROR:  No.  Here in the hallway I do.

THE COURT:  Okay.

(Prospective juror enters the courtroom.)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Hi.  Good afternoon.

THE COURT:  Could you give us your juror badge number, please, the last five digits.

PROSPECTIVE JUROR:  Sure.  03951.

THE COURT:  And have you had an opportunity to read the Criminal Case Questionnaire?

PROSPECTIVE JUROR:  Yes.

THE COURT:  And do you have any yes or affirmative responses to any of those questions?

PROSPECTIVE JUROR:  1, 2, 4, 10, 11, 12, 13 I put as not sure, 15, 17, 19.

Flip the page.  20, 21, 25 I put as not sure, 26, 33, 34 as not sure, 36.

That's it.

THE COURT:  Okay.  Why don't we start with Question 1.  Can you tell us about that, please.

PROSPECTIVE JUROR:  Okay.  Well, I had been arrested previously.  My brothers and some friends of mine have been arrested.

THE COURT:  Okay.  Are you comfortable talking about it from there or do you want to come over to the sidebar?

PROSPECTIVE JUROR:  I think the sidebar.

THE COURT:  Okay.

  *(Proceedings held at sidebar under seal 2:47 to 3:06 P.M.)*

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

*(The following proceedings were held in open court.)*

THE COURT:  In this case there may be evidence of a recording of a conversation with an undercover officer.  Do you have any concerns about the use of recordings to record undercover operations?

PROSPECTIVE JUROR:  I don't because I think that --

THE COURT:  If you could use that microphone.

PROSPECTIVE JUROR:  I don't because -- that's what we spoke about before.  I think in my case it would have helped me.

THE COURT:  Okay.  And I know you had recalled

hearing something about this case.  You understand that this is a different case?

PROSPECTIVE JUROR:  Um-hmm.

THE COURT:  There is going to be at least one different charge.  There's going to be different evidence.

Do you think you can judge this case without regard to what you may have heard about the results of the last case?

PROSPECTIVE JUROR:  I do because, like I said, I heard very minimal.

THE COURT:  Okay.  Any additional questions?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  All right.  Sir --

Pass for cause?

MR. FOX:  Yes, Your Honor.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  All right, sir.  We're going to excuse you.  You can -- if you can return tomorrow morning at 8:30 and if you just return to Courtroom 9-B.

PROSPECTIVE JUROR:  Okay.

THE COURT:  And again, I want to caution you that you're not to read, watch or listen to any news accounts or the commentary about the case.  Don't do any research such as consulting dictionary, searching the internet.  Do not talk to anybody about the case.  Don't let anybody else talk to you

about the case.

PROSPECTIVE JUROR:  Okay.

THE COURT:  If you need to speak with me about anything, simply give a signed note to the clerk.

PROSPECTIVE JUROR:  Okay.

THE COURT:  Okay?

PROSPECTIVE JUROR:  Can I talk to you for one thing?

THE COURT:  Sure.  If you'd came back over here, please.  And if you could just walk all the way around, please.

*(Proceedings held at sidebar under seal 3:08 to 3:15 P.M.)*

*(The following proceedings were held in open court.)*

THE COURT:  Does anybody see a need to keep this juror with us?

MR. HOCHMAN:  If you remember what your second plan that we discussed if the first one didn't work, it would potentially involve this juror, Your Honor.

THE COURT:  I don't think we're going to have much of a problem.

MR. HOCHMAN:  Okay.

THE COURT:  All right, sir.  We're going to excuse you.  See you tomorrow morning at 8:30.  Again, please don't discuss this case or anything that we've talked about with anyone else.

PROSPECTIVE JUROR:  Yes, sir.

THE COURT:  If anybody approaches you and tries to

talk to you about your jury service, please let me know about it.

PROSPECTIVE JUROR:  Yes, sir.

THE COURT:  Okay.  Thank you very much.  We'll see you tomorrow morning.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  Did you leave anything over --

PROSPECTIVE JUROR:  No, sir.

THE COURT:  Okay.  You can go out right through the front.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  And we will take that questionnaire. Thank you.

PROSPECTIVE JUROR:  Thank you.

*(Prospective juror enters the courtroom.)*

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Hi.

THE COURT:  Can we get your last five digits of your badge.

PROSPECTIVE JUROR:  48111.

THE COURT:  Okay.  And if you could join us over here.

PROSPECTIVE JUROR:  Do I bring everything or just me?

THE COURT:  No, just yourself is fine.

*(Proceedings held at sidebar under seal 3:19 to 3:53 P.M.)*



*(The following proceedings were held in open court.)*

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Hi.

THE COURT:  Would you give us your last five digits of your badge number.

PROSPECTIVE JUROR:  It is 04505.

THE COURT:  Have you had a chance to review the Criminal Case Questionnaire?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Before we get to that, have you had occasion today to discuss this case with anyone?

PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  And if you could -- do you have any yes or affirmative responses to any of these questions on the questionnaire?

PROSPECTIVE JUROR:  I have three.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR:  Number 11.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR:  I made a donation -- not necessarily every year, but for, like, the police families, you know, which are not, like I said -- not every year, but I have occasionally.

THE COURT:  And is there a particular police organization you've made that donation to?

PROSPECTIVE JUROR:  Not that I remember.

THE COURT:  Okay.  And what's the next question?

PROSPECTIVE JUROR:  17.

THE COURT:  Just tap the microphone.  Go ahead.

PROSPECTIVE JUROR:  So Number 17, I've heard reports about the allegations on the radio, KNX.

THE COURT:  Okay.

PROSPECTIVE JUROR:  And that's all I've listened to. I don't watch the news or read the paper.

THE COURT:  Do you remember anything specifically that you've heard on the radio?

PROSPECTIVE JUROR:  Just that it was what the -- that

it was going to trial or that he was charged, but that's all.

THE COURT:  Okay.  Would you have any difficulty putting that aside and deciding this case based just on the evidence that you hear here in court?

PROSPECTIVE JUROR:  I wouldn't have any problem, no.

THE COURT:  Okay.  And the next question.

PROSPECTIVE JUROR:  Number 36.

I have a stepson that's in the Air Force, and he's also applied to different law enforcement agencies but hasn't been accepted, but he's currently in the Air Force.

THE COURT:  Okay.  Do you know what he does in the Air Force?

PROSPECTIVE JUROR:  He works with the K-9, so --

THE COURT:  Okay.  Is he with the military police? Do you know?

PROSPECTIVE JUROR:  I don't -- no, I don't think he -- I don't think he is.

THE COURT:  Any other yes or affirmative answers to any of the other questions?

PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Any additional questions?

MR. FOX:  One moment, Your Honor.

(Counsel confer off the record.)

MR. FOX:  Yes, Your Honor.

We have one follow-up question with respect to if

this prospective juror is aware of which law enforcement agencies her stepson has applied to.

PROSPECTIVE JUROR:  I know he applied to the LAPD and then the Tucson PD and Ventura County Sheriffs.  That's all.

THE COURT:  Do you know when he made those applications?

PROSPECTIVE JUROR:  The last one was within the past six months and that was to Tucson.

THE COURT:  Okay.

PROSPECTIVE JUROR:  And the others were before he went into the military, and he's been in the military for about three-and-half years.

THE COURT:  Okay.

MR. HOCHMAN:  No questions, Your Honor.

THE COURT:  All right.  Pass for cause?

MR. FOX:  Yes, Your Honor.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  All right.  You're excused.

You're ordered to return tomorrow morning at 8:30.

PROSPECTIVE JUROR:  Okay.

THE COURT:  Again, you're not to discuss this case with anyone, including your fellow jurors, members of your family, people involved.  If anyone approaches you and tries to talk with you about this case, please let me know about it immediately.

Don't read or listen to any news reports or other accounts about the trial.  Don't do any research, such as consulting dictionaries, searching the internet or using other reference materials.  Okay?

PROSPECTIVE JUROR:  Okay.

THE COURT:  All right.  Thank you very much.

Do you have some other belongings next door?

PROSPECTIVE JUROR:  No.

THE COURT:  You can go right out the front door.

PROSPECTIVE JUROR:  Okay.  Thank you.

THE COURT:  Thank you.

*(Prospective juror enters the courtroom.)*

THE COURT:  Could you give us your -- the last five digits of your badge number, please.

PROSPECTIVE JUROR:  05630.

THE COURT:  Did you have a chance to review the Criminal Case Questionnaire?

PROSPECTIVE JUROR:  Yes, I did.

THE COURT:  Do you have any yes or affirmative responses to any of those questions?

PROSPECTIVE JUROR:  Yes, I do.

THE COURT:  Okay.  And which numbers?

PROSPECTIVE JUROR:  Number 1 to start with.

THE COURT:  Okay.  Are you comfortable discussing that there or would you like to come over to sidebar?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

PROSPECTIVE JUROR:  No, I'm okay here.

THE COURT:  Okay.

PROSPECTIVE JUROR:  I've had cousins investigated for drug trafficking and use, arrested, convicted.

My ex-mother-in-law, she was arrested for drunk driving.  I arrested her for drunk driving.

THE COURT:  I'm sorry.  The last part of that was --

PROSPECTIVE JUROR:  I arrested her for drunk driving.

THE COURT:  Okay.

PROSPECTIVE JUROR:  That's about it on that one.

THE COURT:  Okay.  The relatives that you've had that have been investigated or arrested or convicted of drug offenses, are you particularly close to those individuals?

PROSPECTIVE JUROR:  Oh, they're my cousins.

THE COURT:  Okay.

PROSPECTIVE JUROR:  And not really that close, but they're cousins.  Same town, a small town.

THE COURT:  Okay.  Was that here or -- in Southern California or was it somewhere else?

PROSPECTIVE JUROR:  Ventura County.

THE COURT:  Okay.  Anything about the way that their cases were handled that caused you to have concerns about your ability to be a fair and impartial juror to both sides in this case?

PROSPECTIVE JUROR:  No.  No.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

THE COURT:  Do you recall what police agency was involved in their investigations and arrests?

PROSPECTIVE JUROR:  I think it was the sheriff's department, Ventura -- Ventura County Sheriff's, and it may have been our department also, the Santa Paula Police Department.

THE COURT:  Okay.  And you're a member of the Santa Paula Police Department?

PROSPECTIVE JUROR:  Not anymore.  I'm retired.

THE COURT:  When did you serve in that department?

PROSPECTIVE JUROR:  From 1974 to '05, both as a reserve and full time.

THE COURT:  Okay.  Would you have any difficulty putting aside the incidents involving your cousins in deciding this case based solely on the evidence that's presented here during the trial?

PROSPECTIVE JUROR:  No.

THE COURT:  Any other yes or affirmative answers to any of the other questions?

PROSPECTIVE JUROR:  On Number 2, I was a victim.

THE COURT:  When was that?

PROSPECTIVE JUROR:  I believe it was '78, '79 New Year's.

THE COURT:  Tell us what happened.

PROSPECTIVE JUROR:  Yeah.  We were going to break up

a party that was loud and getting out of hand.  Anyway, some person from behind came and hit me in the back of the head with some nunchakus, and that's how I became a victim.

THE COURT:  Okay.  When was that?

PROSPECTIVE JUROR:  In New Year's of '79, I think.

THE COURT:  Okay.  Any other yes or affirmative answers to any of the other questions?

PROSPECTIVE JUROR:  On Number 10.

THE COURT:  Um-hmm.  You were in law enforcement.

Any other members of your family?

PROSPECTIVE JUROR:  Yes.  I have a brother-in-law that's a commander at the same police department.

THE COURT:  Okay.  Anyone else?  Any other members of your family?

PROSPECTIVE JUROR:  No.

THE COURT:  Do you still maintain contact with the officers in the department in which you worked?

PROSPECTIVE JUROR:  Yes, I do.

THE COURT:  There may be police officers, FBI agents who may be witnesses in this case.  Are you going to be able to judge their credibility the same way you would that of any other witness?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Any other yes or affirmative answers to any of the other questions?

PROSPECTIVE JUROR:  Number 11.

THE COURT:  And is that yourself that made those donations?

PROSPECTIVE JUROR:  Yes, donations to our local police department.

THE COURT:  Okay.  Any other yes or affirmative answers to any of the other questions?

PROSPECTIVE JUROR:  On 12, I've had family members on ride-alongs.

THE COURT:  Okay.

PROSPECTIVE JUROR:  But that was when I was active, so it's been a while.

THE COURT:  Okay.  And any other yes or affirmative answers?

PROSPECTIVE JUROR:  I have a -- on 17, there's something I would rather talk to you in private on that if possible.

THE COURT:  Sure.  Now, what private means is that we're going to be joined by the lawyers.

PROSPECTIVE JUROR:  Okay.  That's fine.

THE COURT:  Okay.  If you could just step down and walk all the way around.

*(Proceedings held at sidebar under seal 4:04 to 4:10 P.M.)*

*(The following proceedings were held in open court.)*

THE COURT:  All right, sir.  We're going to excuse you for the day.  You're ordered to return tomorrow morning at 8:30.

Again, I want to remind you you're not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial or anyone else.

Don't do any research, such as consulting dictionaries, searching the internet or using other reference materials, and do not make any investigation about the case on your own.  And we'll see you tomorrow morning at 8:30.

PROSPECTIVE JUROR:  Okay.  Is that to the jury assembly or --

THE COURT:  9-B.

PROSPECTIVE JUROR:  9-B?

THE COURT:  Um-hmm.  All right.  Thank you very much.

PROSPECTIVE JUROR:  Thank you.

*(Prospective juror enters the courtroom.)*

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  Can you give us your badge number.

PROSPECTIVE JUROR:  07261.

THE COURT:  Okay.

MR. HOCHMAN:  Your Honor, is the microphone working?

THE COURT:  If you would just tap it on the top there.

Have you heard anyone today express an opinion or say anything about this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Have you had a chance to look at the Criminal Case Questionnaire?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Do you have any yes or affirmative responses to any of those questions?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR:  Number 1.

THE COURT:  Okay.  Are you comfortable talking about that from there or would you like to come to sidebar?

PROSPECTIVE JUROR:  I'm comfortable.

THE COURT:  Okay.

PROSPECTIVE JUROR:  The arrest of my father, a DUI.

THE COURT:  Okay.  When was that?

PROSPECTIVE JUROR:  When I was 21.  I'm 31 now, so ten years ago.

THE COURT: Okay. Do you recall what police agency was involved?

PROSPECTIVE JUROR: He was arrested in Lancaster, so it would have been the sheriffs up in Lancaster.

THE COURT: Okay. Anything about the way that his case was handled that causes you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR: No.

THE COURT: Any other yes or affirmative responses to any of the other questions?

PROSPECTIVE JUROR: Yes. Question 2.

THE COURT: All right. If you could tell us about that.

PROSPECTIVE JUROR: When I was 13, my father and my brother were attacked by gang members.

THE COURT: When was that? Oh, that's when you were 13?

PROSPECTIVE JUROR: Yeah.

THE COURT: And you're about 17 now.

(Laughter.)

THE COURT: Anything about -- were the police called?

PROSPECTIVE JUROR: Yes.

THE COURT: Is there anything about the way that the case was handled that caused you to have any concerns about

your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Do you recall what police agency responded?

PROSPECTIVE JUROR:  It would have been the Los Angeles Police Department -- Los Angeles County Police Department.

THE COURT:  Okay.  Any other yes or affirmative answers to any of the other questions?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR:  Question Number 10.

THE COURT:  Okay.  And other than question -- can you give me all the numbers.

PROSPECTIVE JUROR:  It's 10, 12, 20, 26, 36.

THE COURT:  Okay.

PROSPECTIVE JUROR:  And that's it.

THE COURT:  Okay.  Let's go to Number 10.

Are you or your family members in law enforcement?

PROSPECTIVE JUROR:  I put yes only because my husband works for the probation department, so I don't know if that's law enforcement.

THE COURT:  Close enough.  And does he work for -- which probation department?

PROSPECTIVE JUROR:  He works in Los Angeles County Probation Department in Lancaster at the juvenile hall.

THE COURT:  Okay.  Anything about his work that causes you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  There may be law enforcement agents or employees who may be witnesses in this case.

Are you going to be able to judge their credibility the same way that you would that of any other witness?

PROSPECTIVE JUROR:  Yes.

THE COURT:  I'm sorry?

PROSPECTIVE JUROR:  I don't think it's working again.

THE COURT:  Okay.  If you could just keep your voice up and we'll try to get it straightened out.

What about Number 12?

PROSPECTIVE JUROR:  Number 12, I put yes because I went on a tour of the prison in Lancaster when I was in college.

THE COURT:  Okay.  Was that the state prison?

PROSPECTIVE JUROR:  Yes, the state prison.

THE COURT:  Okay.  Anything about that experience that caused you to have any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR:  No.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

THE COURT:  And what about 20?

PROSPECTIVE JUROR:  Yeah, criminal justice.  My husband is a criminal justice major and so am I.

THE COURT:  Okay.  Have any concerns about your ability to follow the Court's instructions on the law that applies to this case?

PROSPECTIVE JUROR:  No.

THE COURT:  And 26?

PROSPECTIVE JUROR:  Yes.  That would have been my father.  He was at Twin Towers for the DUI, detained and --

THE COURT:  Did you ever visit him at Twin Towers?

PROSPECTIVE JUROR:  No.  He was there overnight.

THE COURT:  Okay.  Did you and he ever discuss the time that he spent at Twin Towers?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  What did he tell you?

PROSPECTIVE JUROR:  He just said he would never go back there.

THE COURT:  Anything about that discussion that you would have any difficulty putting aside?

PROSPECTIVE JUROR:  No.

THE COURT:  And what about 36?

PROSPECTIVE JUROR:  Seeking employment.  I was offered a job with the courts, and my husband applied for a correctional officer.

THE COURT:  And what job you were applying for with the courts?

PROSPECTIVE JUROR:  The judicial assistant trainee.

THE COURT:  Any other yes or affirmative answers to any of the other questions?

PROSPECTIVE JUROR:  No.

THE COURT:  When did you apply for that position?

PROSPECTIVE JUROR:  Six months ago.

THE COURT:  Okay.  And anything about the way that that process took place that caused you to have any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR:  No.

THE COURT:  And when you made that application, was that with Los Angeles County?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Any additional follow-up questions?

MR. HOCHMAN:  Yes, Your Honor.

Briefly, on the statement that the father made to this juror about he said he'd never go back there, did he expound upon why he actually felt that way?

PROSPECTIVE JUROR:  No.  That's all he said.  He didn't want to elaborate on anything.

THE COURT:  Okay.

MR. FOX:  Yes, Your Honor.  Just to follow up, if you would, on her husband's experience in juvenile hall and whether

he's discussed that with her.

THE COURT:  Okay.

PROSPECTIVE JUROR:  Yes, he has.

THE COURT:  Okay.  And which juvenile hall facility?

PROSPECTIVE JUROR:  Challenger Memorial Youth Center.

THE COURT:  And where is that?

PROSPECTIVE JUROR:  It's in Lancaster.

THE COURT:  Okay.  And can you describe for us what he said about his experience with the juvenile hall facilities?

PROSPECTIVE JUROR:  Well, he says he likes working there, but he's in the SHU unit, so secure housing unit, so he says it's pretty tough and stressful dealing with the minors and, you know, the violence that he encounters there sometimes.

THE COURT:  Anything -- would you have any difficulty setting aside anything that you and he had talked about with regard to that facility and judge this case based solely on the evidence that you hear here in court?

PROSPECTIVE JUROR:  Yes.

THE COURT:  So you would have difficulty putting that aside?

PROSPECTIVE JUROR:  No.  I wouldn't have difficulty putting that aside, no.

THE COURT:  Anything additional?

MR. FOX:  Nothing else, Your Honor.

THE COURT:  Pass for cause?

MR. FOX:  Yes, Your Honor.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  All right.  You're excused.  You're ordered back tomorrow morning at 8:30.

In the meantime, please don't discuss this case with anyone.  Don't allow anybody else to discuss the case with you.  Don't do any research, such as consulting dictionaries, searching the internet or using other reference materials, and do not make any investigation about the case on your own.

If you need to speak with me, simply give a note to the clerk.

And tomorrow, you're going to report back to Courtroom 9-B.

PROSPECTIVE JUROR:  Okay.

THE COURT:  All right.  Thank you very much.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  As a matter of fact, tomorrow -- I don't think you need to be here at 8:30.  How's 10 o'clock?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Perfect.  Okay.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  Thank you.

MR. HOCHMAN:  Your Honor, may I take a three-minute break at this point?

THE COURT:  Yes.

MR. HOCHMAN:  Thank you, Your Honor.

THE COURT:  Anybody else that wants a break, you're welcome to take it.

*(Recess taken 4:23 to 4:29 P.M.)*

THE COURT:  Okay.  Let's bring in another prospective juror, please.

Hi.  Could you give us your badge number, please, the last five digits.

PROSPECTIVE JUROR:  07418.

THE COURT:  Have you had occasion to discuss this case or anyone associated with it today?

PROSPECTIVE JUROR:  No.

THE COURT:  Have you had a chance to look at the Criminal Case Questionnaire?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Do you have any yes answers to any of those questions?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  If you could just give me all the numbers to which you have yes answers.

PROSPECTIVE JUROR:  Well, I had a question mark on the first one, yes, and Number 13.  And I didn't mark the other one.  Oh, Number 35.

THE COURT:  Okay.  Want to try Number 1 first?  Are you comfortable discussing it from there?

PROSPECTIVE JUROR:  Sure.

THE COURT:  Okay.

PROSPECTIVE JUROR:  Well, I was in a criminal -- I was arrested.

THE COURT:  Um-hmm.

PROSPECTIVE JUROR:  And it was domestic -- I'm not sure how they stated it, and I thought I was unjustly -- that they told me -- I think it was the sheriff's department in Lomita that they had to arrest one of us and they chose me.

THE COURT:  Okay.  And was this in -- what city was this in?

PROSPECTIVE JUROR:  Lomita, California.

THE COURT:  Okay.  And which sheriff's department was that?

PROSPECTIVE JUROR:  I'm not sure -- I mean, I --

THE COURT:  That's okay.

PROSPECTIVE JUROR:  I'm not sure.

THE COURT:  When was this?

PROSPECTIVE JUROR:  Well, again, I'm not sure, but it was like 2013 or 2012.

THE COURT:  Okay.  Was there anything about the way that that case was handled that causes you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR:  Well, it's just that I felt

unjustly arrested, so, you know --

THE COURT:  Sure.

PROSPECTIVE JUROR:  And I haven't even thought about it for a long time.  So it wasn't until I was, like, reading this and realized, "Oh, yeah, I was arrested."

So it's just -- it's still very emotional, raw, so I don't -- I wouldn't want to think that it would necessarily, you know, have me go one way or the other.  It's just I -- I had a concern about it.

THE COURT:  Okay.  Well, I appreciate you sharing that with us.

One of the things that we want to make sure is that we have jurors who can decide the evidence in this case based solely on the testimony and the evidence that's adduced here in the courtroom.

PROSPECTIVE JUROR:  Um-hmm.

THE COURT:  And so we had -- you know, everybody brings --

PROSPECTIVE JUROR:  Something.

THE COURT:  -- their own experiences and their own background into this process.  And what we hope people can do is to sort of compartment- --

PROSPECTIVE JUROR:  Compartmentalize?

THE COURT:  That's what I was --

(Laughter.)

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

THE COURT:  If they can do that and decide this case just based on what they hear here in court.

Do you think you can do that?

PROSPECTIVE JUROR:  I want to believe that that's how I would be.

THE COURT:  Is there a doubt in your mind?

PROSPECTIVE JUROR:  Well, just that I felt, you know, that it was -- my dealings -- because the Question Number 13 "Have you -- any member of your immediate family or anyone close to you had any unpleasant experience with FBI, LASD," so you know, when it's sheriff, I just think of them as Los Angeles Sheriff's Department, but I don't know.  But it just seemed -- because I was slugged, and they took pictures and stuff, and you know, it just --

THE COURT:  Well, this case --

PROSPECTIVE JUROR:  I know it's not anything about that.

THE COURT:  Right.

PROSPECTIVE JUROR:  So, you know, so -- and once I am listening to the witnesses, whatever is brought up, you know, I would think that that wouldn't be there.

THE COURT:  Um-hmm.  What was the outcome?

PROSPECTIVE JUROR:  Well, actually, it was dismissed. It cost me $4,000 because I, you know, had a bail bondsman, but --

THE COURT:  Right.

PROSPECTIVE JUROR:  -- the following Monday, it had been dismissed.

THE COURT:  Okay.  And that was -- that was your response to 13 as well?

PROSPECTIVE JUROR:  Yes.  That was -- that's when it came up.

THE COURT:  Okay.  And what about 35?

PROSPECTIVE JUROR:  Well, it's just, you know, the age bit.  That was --

THE COURT:  Would you have -- would it be fair to say that you'd have difficulty putting aside this incident that happened to you -- this domestic violence incident, you'd have difficulty putting that aside?

PROSPECTIVE JUROR:  No, I don't think so.  It's just that -- I mean, I haven't thought about it for a long time until I was reading, you know, the questions.

THE COURT:  Sure.  Well, if you can put that aside and judge this case based solely on the evidence and you're not going to think about that incident and hold it against any of the sides in this case --

PROSPECTIVE JUROR:  Right.

THE COURT:  -- then we'd love to have you.  But if you're going to have difficulty putting that aside, we just need to know that.

PROSPECTIVE JUROR:  I understand.

THE COURT:  Okay.  So do you think you'd have difficulty putting aside the arrest that happened to you?

PROSPECTIVE JUROR:  No, I -- actually, I think that, you know, having spoken it and -- that I -- you know, I was afraid that it would be something that I would be withholding if I didn't share it.

THE COURT:  Sure.

PROSPECTIVE JUROR:  Because, you know, I didn't know what would, you know, cause that, and I didn't want to cause any problems, so --

THE COURT:  So you can commit to both sides in this case, that you're going to put that aside and judge this case based just on the evidence that you hear here in the court?

PROSPECTIVE JUROR:  Right.  I don't really know anything about the case, so I am -- I'm pretty -- I'm willing to be --

THE COURT:  Okay.  Well, one of the things is is I have to be able to assure both sides that you're going to be fair and impartial --

PROSPECTIVE JUROR:  Um-hmm.

THE COURT:  -- and that you're going to be able to put that baggage aside --

PROSPECTIVE JUROR:  Sure.

THE COURT:  -- and judge this case based solely on

the testimony of the witnesses and the exhibits that are received into evidence.

PROSPECTIVE JUROR:  Um-hmm.

THE COURT:  So can you commit to both sides that you're going to be able to do that?

PROSPECTIVE JUROR:  Yep, I can.

THE COURT:  Now, you had also mentioned something about Question 35.

PROSPECTIVE JUROR:  Um-hmm.

THE COURT:  What is it about the defendant's age that causes you to respond to that question?

PROSPECTIVE JUROR:  Just, you know, I don't know if it's authority or, you know, just respecting my elders, you know, the conversation that I was brought up in.

THE COURT:  Is there something about the defendant's age that causes you to have concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR:  No.

THE COURT:  Do you think you can put that aside and be fair and impartial to both sides?

PROSPECTIVE JUROR:  Um-hmm.

THE COURT:  So the fact that the defendant may be 74 years old isn't going to weigh --

PROSPECTIVE JUROR:  Influence me?

THE COURT:  -- one way or the other?

PROSPECTIVE JUROR:  Right.  No, the facts of the case.

THE COURT:  Okay.  Any additional questions?

MR. FOX:  Not from the government, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  All right.  Pass for cause?

MR. FOX:  Yes, Your Honor.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  All right.  You're excused until 10:00 a.m. tomorrow morning.

PROSPECTIVE JUROR:  Great.

THE COURT:  You can just come to Courtroom 9-B tomorrow morning at 10:00.

PROSPECTIVE JUROR:  Perfect.

THE COURT:  Thank you very much.

PROSPECTIVE JUROR:  Thank you very much.

THE COURT:  And if you could just leave that questionnaire.

Do you have any belongings in the next room?

PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  You can just go out the front door.

PROSPECTIVE JUROR:  Okay.  Thank you.

THE COURT:  Thank you.

*(Prospective juror enters the courtroom.)*

PROSPECTIVE JUROR: I'm going to need those.

LAW CLERK: We'll get you another one.

PROSPECTIVE JUROR: Oh.

LAW CLERK: I think the battery is dead on this.

PROSPECTIVE JUROR: Oh, it is?

THE COURT: Okay. Are you able to hear me?

Okay. Can you hear me?

PROSPECTIVE JUROR: Yes.

THE COURT: Did you get a chance to review the Criminal Case Questionnaire?

PROSPECTIVE JUROR: Yes.

THE COURT: Do you have any yes responses to any of those questions?

PROSPECTIVE JUROR: Two.

THE COURT: Okay. First, could you give me your badge number, the last five digits of your badge number.

PROSPECTIVE JUROR: 07611.

THE COURT: Okay. And have you had occasion today to talk to anybody about this case?

PROSPECTIVE JUROR: No.

THE COURT: And which two questions did you have yes answers to on the questionnaire?

PROSPECTIVE JUROR: Well, the first one, I put no because I thought it didn't pertain, but my son had a couple of 502s within six months and he had to spend four days in -- you

know, in Ventura for that.  He was arrested and everything.

THE COURT:  When was that?

PROSPECTIVE JUROR:  Been a couple years ago.

THE COURT:  Okay.  And do you recall what police agency?

PROSPECTIVE JUROR:  Yeah.  He was in Santa Barbara, and he was in Ventura jail.

THE COURT:  Okay.  Anything about the way that his case was handled that causes you to have any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR:  No.

THE COURT:  And what was the other question?

PROSPECTIVE JUROR:  Let me go there.  Didn't quite finish.  They called me right as I was going to --

Forty-two.  It's just my hearing is not very good.  And you know, these will save me here (indicating), but I don't know what it's like -- what it would be if they have these in the jury room.

THE COURT:  We can --

PROSPECTIVE JUROR:  I don't want people getting upset and --

THE COURT:  No, nobody will be upset.  We'll get you -- I think we can make those work in the jury room.

PROSPECTIVE JUROR:  Oh, okay.

That's it.

THE COURT:  Any other yes or affirmative answers to any of the other questions?

PROSPECTIVE JUROR:  No.

THE COURT:  Anything additional?

MR. HOCHMAN:  No, Your Honor.

MR. FOX:  No, Your Honor.

THE COURT:  Pass for cause?

MR. FOX:  Yes, Your Honor.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  All right, sir.  You're excused.

You can return here tomorrow morning at 10:00 a.m.

PROSPECTIVE JUROR:  10:00 a.m.?

THE COURT:  10:00 a.m., Courtroom 9-B next door.

PROSPECTIVE JUROR:  Okay.  Thank you.

THE COURT:  Thank you very much.

And, again, I want to caution you, you're not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial or anyone else, and do not allow anyone else to approach you and try to talk to you about the case.

Don't do any research, such as consulting dictionaries, searching the internet or using other reference materials, and do not try to learn about the case on your own.

PROSPECTIVE JUROR:  Yes, Your Honor.

THE COURT:  All right.  We'll see you tomorrow

morning.

PROSPECTIVE JUROR:  All right.  Thank you.

THE COURT:  Thank you.

PROSPECTIVE JUROR:  Should I give these back?  Do I go back to the jury room?

THE COURT:  No, you can -- you're free to go home.

PROSPECTIVE JUROR:  Oh, okay.  All right.  Take care.

THE COURT:  And unless you left some things over there, you can just go right out that center door.

PROSPECTIVE JUROR:  Okay.  Thank you.

(Prospective juror enters the courtroom.)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Hello.

THE COURT:  Could you give us the last five digits of your badge number, please.

PROSPECTIVE JUROR:  10084.

THE COURT:  Have you had occasion to talk to anyone today about this case or about anyone who has anything to do with it?

PROSPECTIVE JUROR:  No.

THE COURT:  Have you had a chance to look at the Criminal Case Questionnaire?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Do you have any yes responses to any of those questions?

PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  I'm going to excuse you until tomorrow morning at 10 o'clock and you can just return to the Courtroom 9-B tomorrow morning at 10 o'clock.

PROSPECTIVE JUROR:  Okay.

THE COURT:  Okay?

PROSPECTIVE JUROR:  Thank you.

THE COURT:  All right.  And in the interim, please remember you're not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else.  And do not allow others to approach you and try to talk to you about this case.  If anybody approaches you and tries to talk with you about this case, please let me know about it immediately.  Do not do any research.  Don't read or listen to any news accounts or commentary about the case.  Don't look on the internet.  And if you have any questions, just give a note to the clerk.

PROSPECTIVE JUROR:  Okay.

THE COURT:  All right.  Thank you.

PROSPECTIVE JUROR:  Thank you.

(Prospective juror enters the courtroom.)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Hi, Judge.

THE COURT:  Could you give us the last five digits of your badge number, please.

PROSPECTIVE JUROR:  Oh, sure.  08289.

THE COURT:  Have you had occasion to discuss this case with anyone today?

PROSPECTIVE JUROR:  No.

THE COURT:  Have you heard anybody express an opinion about the case?

PROSPECTIVE JUROR:  No.

THE COURT:  Have you had a chance to look at the Criminal Case Questionnaire?

PROSPECTIVE JUROR:  Oh, yes.

THE COURT:  Do you have any yes responses to any of those questions?

PROSPECTIVE JUROR:  I do not.

THE COURT:  Okay.  I'm going to excuse you for the day.  You can return tomorrow to Courtroom 9-B at 10:00 a.m.

Again, I want you to remember that you're not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial or anyone else, and do not allow others to approach you and try to talk to you about this case.  If anybody approaches you and tries to talk with you about this case, please let me know about it immediately.

Do not read or listen to any news report or other accounts about the trial.  Don't do any research, such as consulting dictionaries, searching the internet or using other

reference materials.

We'll see you tomorrow morning at 10:00 a.m.

PROSPECTIVE JUROR:  Okie-doke.  Guess I didn't need to take my coat off after all.  Thank you.

*(Prospective juror enters the courtroom.)*

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  Could you give us the last five digits of your badge number, please.

PROSPECTIVE JUROR:  All right.  Yes.  Give me a second.  12270.

THE COURT:  Okay.  Have you had occasion to discuss this case with anybody today?

PROSPECTIVE JUROR:  No, I have not.

THE COURT:  Have you heard anyone express an opinion about the case today?

PROSPECTIVE JUROR:  No, I have not.

THE COURT:  Have you had a chance to look at the Criminal Case Questionnaire?

PROSPECTIVE JUROR:  Yes, I did.

THE COURT:  Do you have any yes or affirmative answers to any of those questions?

PROSPECTIVE JUROR:  The first one I put yes just because it was a -- a juvenile.  I was a young kid.  I got caught at Walmart stealing, but I worked it -- I didn't get any

charges pressed against me.  It was just -- I just worked it out, and it got cleared, like, that way.

THE COURT:  Okay.  Anything about that experience that causes you to have any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR:  No.  If anything -- if anything, it strengthened my case against justice and wanting to repair each other.  Like, it starts with ourselves, so that -- just changes within myself, nothing biased or anything like that.

THE COURT:  Okay.  Were the police called?

PROSPECTIVE JUROR:  No.  The store security dealt with it themselves.

THE COURT:  Okay.  Any other yes or affirmative answers to any of the other questions?

PROSPECTIVE JUROR:  On Number 2, I just put yes, but it was to minor theft.  There was no cops or anything involved.

THE COURT:  Okay.  Any other yes or --

PROSPECTIVE JUROR:  No.  After that, there's no yeses.

THE COURT:  Okay.  Any additional questions for this prospective juror?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  Just approximately how long ago was the Walmart incident, Your Honor.

PROSPECTIVE JUROR:  I was around 16.  So that's

around nine years ago -- eight years ago.

MR. HOCHMAN:  Thank you.

THE COURT:  All right.  We're going to order you to appear tomorrow in Courtroom 9-B at 10:00 a.m.

PROSPECTIVE JUROR:  10:00 a.m.

THE COURT:  Okay?

PROSPECTIVE JUROR:  All right.

THE COURT:  And, again, I want to caution you not to discuss this case with anyone, including members of your family, your fellow jurors, or anyone else associated with the trial.  By the same token, don't let anybody else approach you and try to talk with you about this case.  If anybody approaches you or tries to talk with you about this case, please let me know about it immediately.

Do not read, watch or listen to any news accounts or other reports about the trial.  Don't do any research, such as consulting dictionaries, searching the internet or using other reference materials, and don't try and learn about the case on your own.  If you need to speak with me, simply give a note to the clerk.

We'll see you tomorrow morning at 10:00 a.m.

PROSPECTIVE JUROR:  Okay.  That's fine.  Thanks.

THE COURT:  I think we have five other people that are seated in the hallway.  I propose that we take one or two others, and then I think we reconvene next door.

What I would suggest we do is to let half of those -- order half of those people to come back tomorrow morning at 8:30 and the other half to come back at 10 o'clock.  I don't know why they should just sit around.  And I'll -- again I'll admonish them about trying to avoid discussing this case.

I have -- I also have the numbers of the other jurors that we might have some concerns about.  If you want, we can either let them come up in the natural course or we can talk about -- we can talk to them later today.

MR. HOCHMAN:  I'd probably like to talk to them later today, Your Honor, because it's fresh right now.

MR. FOX:  That's fine, Your Honor.

THE COURT:  Okay.

MR. FOX:  Fine, Your Honor.

And when you admonish the entire pool, can you also admonish them that the attorneys and the defendants -- cannot talk to them?  Because we saw as we were coming back from lunch -- it could have been someone who was stricken for a hardship, but he wished us a good lunch.  We didn't talk to him, and I know that somebody said already that they encountered the defendant at lunch.

THE COURT:  Okay.

MR. FOX:  Thank you.

*(Prospective juror enters the courtroom.)*

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  Could you give me the last five digits of your badge number.

PROSPECTIVE JUROR:  12430.

THE COURT:  Have you had occasion to discuss this case with anyone today?

PROSPECTIVE JUROR:  No.

THE COURT:  Have you had occasion to hear anyone express an opinion about the case today?

PROSPECTIVE JUROR:  No.

THE COURT:  Have you had a chance to look at the Criminal Case Questionnaire?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Do you have any yes responses to any of those questions?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Which ones?  Which questions?

PROSPECTIVE JUROR:  Number 3.

THE COURT:  And could you give me all of the numbers?

PROSPECTIVE JUROR:  Yes.  Number 6, number 7, number 9, number 13, number 16, 17, 18, 19, also 15 and 22.

THE COURT:  Okay.  All right.  Why don't we start with Number 3.  Can you tell me why you answered yes to Question Number 3?

PROSPECTIVE JUROR:  Okay.  I have heard and read, and

I think I've seen on the news different cases.

THE COURT:  Um-hmm.  And based on what you've heard in the news, what is it about what you've heard that causes you to have developed strong feelings about the justice system?

PROSPECTIVE JUROR:  Well, the discredit of the LA police.

THE COURT:  Okay.  So based on what you've heard, you have concerns about the Los Angeles police?

PROSPECTIVE JUROR:  Yes, I do.

THE COURT:  Okay.  And exactly what are those concerns that you have?

PROSPECTIVE JUROR:  About the veracity, about the truth of --

THE COURT:  Is there a particular -- are you talking about Los Angeles Police Department or are you talking about the Los Angeles County Sheriff's Department?  Any other police agencies?

PROSPECTIVE JUROR:  No.  No.

THE COURT:  Okay.  Is the concern that you have with one of those two police agencies, the Los Angeles Police Department or the county sheriff's department?

PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  But you do have concerns about the police department based on what you've heard on the news?

PROSPECTIVE JUROR:  Well, yes.

THE COURT:  Okay.  And do you have concerns about their ability to tell the truth?

PROSPECTIVE JUROR:  Yes, I do.

THE COURT:  And exactly what is it that you've heard that caused you to have those concerns?

PROSPECTIVE JUROR:  Well, I hear when -- when they are reporting incidents and they -- later on, they're not truth.

THE COURT:  Okay.  Is there a particular incident that you have in mind when that's happened?

PROSPECTIVE JUROR:  Well, just -- well, actually a few -- a few reports like Ferguson, like -- and other incidents where their report is not accurate.

THE COURT:  Okay.  What about Question 6?  Is there something that you've heard about the FBI or the sheriff's department or law enforcement agencies that is going to affect your ability to be a fair and impartial juror in this case?

PROSPECTIVE JUROR:  Yes, also in the news.

THE COURT:  And you'd have difficulty judging the testimony of a law enforcement officer if one testified in this case?

PROSPECTIVE JUROR:  Yes, I do.

THE COURT:  Can I see counsel at sidebar.

    *(Proceedings held at sidebar under seal 5:01 to 5:01 P.M.)*

*(The following proceedings were held in open court.)*

THE COURT:  All right, sir.  We're going to excuse you.

You can go down to the 1st floor, and if there's somebody down there, you can tell them that you've been excused from jury service.  If nobody is there, if you'd just call in the morning and give them your badge number and let them know that you've been excused from jury service.

Thank you very much for your time.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  Okay.  I think what I'd like to do is go -- since Mr. Hochman wants to talk with these people today and it's near 5 o'clock, why don't we reconvene next door.

I will excuse the jury.  I'll split half of them and tell them to be here tomorrow morning at 8:30, I'll tell the other half to come in around 10 o'clock, and then I'll make some inquiries of the individuals that were seated -- we will excuse everybody except the jurors that were seated next to or in the area of the jurors that were excused earlier today.

MR. HOCHMAN:  Your Honor, before I forget, is the Court going to go on Mondays?  Is that your anticipated schedule?

THE COURT:  I'll let you know tomorrow.

MR. HOCHMAN:  Thank you, Your Honor.

THE COURT:  At the rate we're going, probably.

Okay.  Why don't we convene next door.

MR. HOCHMAN:  Are we going to leave this courtroom open so we can leave our stuff and come back and get it, Your Honor?

THE COURT:  That's fine.

MR. HOCHMAN:  All right.  Thank you.

THE COURT:  There may not be room at counsel table for you.

MR. HOCHMAN:  We'll figure out where to go, Your Honor.

*(Proceedings paused and moved to another courtroom.)*

*(Admonishment of jurors in progress.)*

THE COURT:  If you do something like that, you seriously jeopardize these proceedings.  And we have had some people earlier today that were having some conversations about people involved in this case, so please don't do that.

I know it's painful to be here all day.  We really appreciate your efforts.  If you need to talk about something, talk about the Dodgers, the Lakers or your new president of basketball operations.  I mean, if you had to talk, I think you can talk about those Trojans.

PROSPECTIVE JURORS:  Bruins.

(Laughter.)

THE COURT:  All right.  So we're going to see everybody tomorrow.

Listen for your badge number, and -- oh, and one other thing.  By the way, you may have run into these lawyers in the hallway or something and you might want to say, "Hi," or, "How are you," or, "How's your day?"  They're under strict instructions not to talk to you and I will have their heads if they do.  So please don't hold it against them if they keep silent and don't say good morning to you because that's on me.

All right.  Let's --

PROSPECTIVE JUROR:  Your Honor, do we hold on to these or turn these in (indicating)?

THE COURT:  Why don't you turn those in.  We want you to keep your badges and your badges numbers.

PROSPECTIVE JUROR:  Put our numbers on it?

THE COURT:  Yeah, put your badge numbers on your questionnaires and then we can get them back to you tomorrow.

Now, there are four people that I need to talk to after you the rest of you leave, and it's badges Numbers 29436, 96426, 90012 and 98524.  Okay?  So, again, that's 29436, 96426, 90012 and 98524.

Okay.  I'm going to ask those people just to stay here for a couple of minutes because I need to talk to them individually.

Could I have those people whose numbers I just gave out, 29436, 96426, 90012 and 98524, if you could follow this gentleman just outside here for a moment.

Okay.  Do we have everybody's questionnaire?

We'll get them, everybody's questionaries.  Okay.

THE CLERK:  Juror 12869, Juror 12971, 13461 --

THE COURT:  Once that number is called, you can go.

We'll see you tomorrow morning at 8:30.

THE CLERK:  -- 14778, 16526, 20269, 25793, 26101, 28983, 29436, 30528, 31070, 31591, 32391, 32647, 34612, 37215, 37490, 38095, 38589, 39167, 39719, 41194, 41326, 43236, 43541, 44673, 44861, 45161, 47161, 48037, 49829, 50493, 51194, 51592, 51614, 51813, 53504, 53575, 54663, 55367, 56785, 57649, 57849, 59832, 60556.

Your Honor, that is the first half.

THE COURT:  Okay.  Yes, ma'am.

THE WITNESS:  My number is 48037.  Can I come at 10:30?

THE COURT:  Fine.

PROSPECTIVE JUROR:  Okay.  Thank you.

THE COURT:  Yes, sir.

PROSPECTIVE JUROR:  My number is 67898.  I'd like to come at 8:30.

THE COURT:  That's fine.

PROSPECTIVE JUROR:  My number is 20269.  I'd like to

come at 10:30.

THE COURT:  Okay.

PROSPECTIVE JUROR:  Mine is 64802.  I'd like to come at 8:30.

THE COURT:  That's fine.

PROSPECTIVE JUROR:  I'm 63115.  Can I also come at 8:30?

THE COURT:  That's fine.

PROSPECTIVE JUROR:  Thank you.

PROSPECTIVE JUROR:  75759.  I'd like to come at 8:30.

THE COURT:  That's fine.

PROSPECTIVE JUROR:  Thank you, Your Honor.

PROSPECTIVE JUROR:  96504.  I'd like to come at 8:30.

THE COURT:  That's fine.

PROSPECTIVE JUROR:  93551.  I'd like to come at 8:30.

THE COURT:  Okay.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  Anybody who wants to come at 8:30, be my guest.

(Laughter.)

THE COURT:  The rest of you, we'll see you at 10:30.

I wish I could come at 10:30.

(Proceedings paused and moved to another courtroom.)

THE COURT:  Let's have Juror 29436 come in, please.

Okay.  Madam Reporter, are you ready?

THE REPORTER:  Yes.

THE COURT:  Good afternoon.  Could you give us your badge number, please, the last five digits.

PROSPECTIVE JUROR:  29436.

THE COURT:  Okay.  Did you have occasion today to talk about this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Did you have occasion to hear anyone talking about the case?

PROSPECTIVE JUROR:  I heard, like, a couple of -- like, ladies on my right.

THE COURT:  Okay.

PROSPECTIVE JUROR:  But it was -- I wasn't really like understanding.  I'm just hearing some words.

THE COURT:  Okay.  Do you recall anything that you heard them say?

PROSPECTIVE JUROR:  Nothing really, like, you know -- as I said, I wasn't really understanding.  I was hearing some, like, names.  I'm assuming it's like a name.

THE COURT:  Do you recall any of the names that you heard?

PROSPECTIVE JUROR:  Yes.  I -- I can't -- would you like me to say what I am assuming is a name?

THE COURT:  Sure.

PROSPECTIVE JUROR:  It's Tanaka.

THE COURT:  Um-hmm.  Did you hear them say anything about that particular name or that individual?

PROSPECTIVE JUROR:  They said -- I hear words, but I'm not really tuning in.

THE COURT:  So you didn't hear any complete sentences or you don't recall anything that was exactly said about Tanaka?

PROSPECTIVE JUROR:  Not, like, understanding.  I am just hearing but not really.

THE COURT:  Okay.  So you don't recall or didn't hear any particular sentences or any particular thoughts about Tanaka, just the name Tanaka?

PROSPECTIVE JUROR:  Yeah, I heard like, you know -- they were kind of, like, discussing that, you know -- and I heard some comments, Judge, like, you know -- would you like me to --

THE COURT:  Yes.  What comments did you hear?

PROSPECTIVE JUROR:  Something like, "Oh, like, he was really guilty.  Oh" -- something -- something like that.  But in reference to, like, who was guilty or -- I have no idea.

THE COURT:  So you didn't hear them attribute that to anyone in particular?

PROSPECTIVE JUROR:  They did, but as I said, I wasn't really tuning in, so --

THE COURT:  Okay.  Are you able to put aside what you

heard and decide this case based just on the evidence that you hear here in court?

PROSPECTIVE JUROR:  You mean, sir, in reference to what I heard?

THE COURT:  Yeah.  In reference to what you heard, can you just put that aside and decide this case based on the evidence you hear here in court?

PROSPECTIVE JUROR:  I think so, yes, because I don't have a clear understanding of what --

THE COURT:  Of what was said?

PROSPECTIVE JUROR:  Yes.

THE COURT:  So if you were seated as a juror, can you commit to being fair and impartial and disregarding anything that you may have heard?

PROSPECTIVE JUROR:  In that regard, yes.  In reference in particular to what I heard, yes.  Because I -- as I said, it didn't really -- there was no understanding on my part.  It was like referencing this and that, and it's not -- I think it's not fair.  It's like -- it's not fair to judge anybody that way.

THE COURT:  Okay.  Were you saying it's not fair to judge anybody based on something you may have heard?

PROSPECTIVE JUROR:  Based on something that I don't really, like, understand.  As you said, sir, I should, you know, read the -- the facts.

THE COURT:  Okay.  All right.  Does either counsel wish to have any further inquiries made?

MR. HOCHMAN:  Yes, Your Honor.  Just to ask the juror, if you would, whether or not she heard any discussion about Mr. Baca in addition to Mr. Tanaka.

THE COURT:  Did you hear any discussions about Mr. Baca?

PROSPECTIVE JUROR:  Nothing in particular, sir.  I heard that name mentioned, but no.

THE COURT:  Okay.  But other than the name, did you hear anything?

PROSPECTIVE JUROR:  No.

THE COURT:  Anything associated with that name?

PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Anything else?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  Your Honor, is there a chance to be heard at sidebar briefly.

THE COURT:  Yes.

     *(Proceedings held at sidebar under seal 5:27 to 5:29 P.M.)*

*(The following proceedings were held in open court.)*

THE COURT:  We're going to ask that you come back tomorrow at -- what's convenient for you?  8:30 or 10:30?

PROSPECTIVE JUROR:  8:30.

THE COURT: Okay. Come back tomorrow at 10:30 --

PROSPECTIVE JUROR: 8:30, sir.

THE COURT: 8:30. Again, please do not discuss this case with anyone.

PROSPECTIVE JUROR: Okay.

THE COURT: All right. Thank you.

PROSPECTIVE JUROR: Thank you, sir.

THE COURT: Could we have 96426.

*(Prospective juror enters the courtroom.)*

THE COURT: Would you give us your badge number, the last five digits.

PROSPECTIVE JUROR: The whole thing or just the last five?

THE COURT: Just the last five digits.

PROSPECTIVE JUROR: 96426.

THE COURT: Okay. Did you have occasion to discuss this case with anyone today?

PROSPECTIVE JUROR: Not that I remember.

THE COURT: Did you have occasion to hear anybody express an opinion about the case today?

PROSPECTIVE JUROR: Not that I remember.

THE COURT: Okay. If anything comes to mind, would you please let me know?

PROSPECTIVE JUROR: Yes.

THE COURT: And if something comes to mind, let me

know and don't discuss it with anyone else.

PROSPECTIVE JUROR:  Yes.

THE COURT:  All right.  Thank you.  We'll see you tomorrow morning.  Do you prefer 8:30 or 10:30?

PROSPECTIVE JUROR:  Probably 10:30.

THE COURT:  10:30 it is.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  All right.  Thank you.

And 98524.

(Prospective juror enters the courtroom.)

THE COURT:  Good evening.

PROSPECTIVE JUROR:  Hi.

THE COURT:  Could you give us the last five digits of your badge, please.

PROSPECTIVE JUROR:  98524.

THE COURT:  Did you have occasion to talk about this case or anybody associated with it today?

PROSPECTIVE JUROR:  No, because I don't really know anything about it.  I'm from out of the area.

THE COURT:  Okay.  Did you have occasion to hear anyone -- anybody discuss this case or anybody who has anything to do with it today?

PROSPECTIVE JUROR:  I heard two ladies talking behind me, and they were animatedly talking.  I had no idea who they were talking about, but in my mind I thought, "I wonder if

they're talking about this case."

As to what they said and who they were referring to, I don't know because I don't -- I'm not familiar with the case or anything about it.

THE COURT:  So do you recall anything that they may have said?

PROSPECTIVE JUROR:  I think they were talking about someone's wife.

THE COURT:  Okay.  Other than that, anything else?

PROSPECTIVE JUROR:  Not really.

THE COURT:  Okay.  Did you hear them mention any particular names?

PROSPECTIVE JUROR:  No, not that I could recall.

THE COURT:  Okay.  If anything comes to mind, would you please let me know, and please do not discuss -- if anything comes to mind, please don't discuss it with any other jurors and just let me know.

Any additional questions?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  All right.  Thank you.  You're excused. We will see you tomorrow -- 8:30?  10:00 o'clock?  Which is better for you?

PROSPECTIVE JUROR:  8:30 is good.

THE COURT:  Okay.  We'll see you tomorrow at 8:30.

Thank you.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  And 90012.

*(Prospective juror enters the courtroom.)*

THE COURT:  Good evening.

Could you give us the last five digits of your badge number, please.

PROSPECTIVE JUROR:  90012.

THE COURT:  Did you have occasion today to discuss this case with anyone?

PROSPECTIVE JUROR:  No.

THE COURT:  Did you have occasion to hear anyone express an opinion about the case or hear them talking about the case?

PROSPECTIVE JUROR:  No, I didn't hear anything like that.

THE COURT:  Okay.  Thank you very much.  We're going to see you tomorrow.  Which is better for you, 8:30 or 10:30?

PROSPECTIVE JUROR:  8:30 probably.

THE COURT:  Okay.  See you tomorrow at 8:30.

PROSPECTIVE JUROR:  Okay.

THE COURT:  Thank you very much.

PROSPECTIVE JUROR:  You're welcome.

THE COURT:  Okay.  Anything else?

MR. FOX:  Not from the government, Your Honor.

MR. HOCHMAN:  Not from the defense, Your Honor.

THE COURT:  All right.  Thank you very much.  We'll see everybody tomorrow morning at 8:30.

MR. HOCHMAN:  Very good, Your Honor.  Thank you.

THE COURT:  Thank you.

*(Evening recess taken 5:35 P.M.)*

--oOo--

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

CERTIFICATE


    I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date: AUGUST 8, 2017




                    /s/  Cindy L. Nirenberg, CSR No. 5059

                            Official Court Reporter