UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

HONORABLE PERCY ANDERSON, U.S. DISTRICT JUDGE

- - -

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) No. CR16-66(A)-PA |
| | ) |
| LEROY BACA, | ) |
| | ) |
| DEFENDANT. | ) |

REPORTER'S TRANSCRIPT OF JURY TRIAL

DAY 14

PAGES 2584-2641

LOS ANGELES, CALIFORNIA

WEDNESDAY, MARCH 15, 2017

8:18 A.M.

_____

CINDY L. NIRENBERG, CSR 5059, FCRR
U.S. Official Court Reporter
350 W. 1st Street, #4455
Los Angeles, CA 90012
*www.msfedreporter.com*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

APPEARANCES OF COUNSEL:


FOR THE PLAINTIFF:
                    OFFICE OF THE UNITED STATES ATTORNEY
                    BY: BRANDON FOX,
                        ASSISTANT U.S. ATTORNEY
                        EDDIE A. JAUREGUI,
                        ASSISTANT U.S. ATTORNEY
                        LIZABETH A. RHODES,
                        ASSISTANT U.S. ATTORNEY
                    312 NORTH SPRING STREET
                    13TH FLOOR
                    LOS ANGELES, CA 90012
                    213-894-2434







FOR THE DEFENDANT:
                    MORGAN LEWIS & BOCKIUS
                    BY: NATHAN J. HOCHMAN, ATTORNEY AT LAW
                        BRIANNA L. ABRAMS, ATTORNEY AT LAW
                    THE WATER GARDEN
                    1601 CLOVERFIELD BOULEVARD
                    SUITE 2050 NORTH
                    SANTA MONICA, CA 90404
                    310-255-9025




ALSO PRESENT:
                    LEAH TANNER, FBI SPECIAL AGENT





UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

I N D E X

*PROCEEDINGS*                                       *PAGE*

DISCUSSION HELD OUTSIDE PRESENCE OF JURY 2587

DISCUSSION HELD AT SIDEBAR                    2587

DISCUSSION HELD OUTSIDE PRESENCE OF JURY 2591

DISCUSSION HELD AT SIDEBAR                    2592

DISCUSSION HELD OUTSIDE PRESENCE OF JURY 2593

DISCUSSION HELD OUTSIDE PRESENCE OF JURY 2604

DISCUSSION HELD OUTSIDE PRESENCE OF JURY 2615

DISCUSSION HELD OUTSIDE PRESENCE OF JURY 2616

DISCUSSION HELD AT SIDEBAR                    2616

VERDICT READ                                  2618

DISCUSSION HELD OUTSIDE PRESENCE OF JURY 2622

DISCUSSION HELD AT SIDEBAR                    2625

LOS ANGELES, CALIFORNIA; WEDNESDAY, MARCH 15, 2017

8:18 A.M.

- - - - -

*(The following was heard outside the presence of the jury.)*

THE COURT:  I have a couple of housekeeping matters I'd like to discuss with counsel at sidebar.

*(Proceedings held at sidebar under seal 8:18 A.M.)*

*(The following proceedings were held in open court.)*

THE COURT:  All right.  Anything else?

MR. HOCHMAN:  No, Your Honor.

MR. FOX:  No, Your Honor.

THE COURT:  Thank you.

*(Recess taken 8:26 to 8:49 A.M.)*

*(The following was heard outside the presence of the*

*jury.)*

THE CLERK:  Item 1, CR16-66(A)-PA, United States of America versus Leroy Baca.

Counsel, please state your appearances.

MR. FOX:  Good morning, Your Honor.  Brandon Fox, Lizabeth Rhodes and Eddie Jauregui on behalf of the United States.  Also with us at counsel table is Special Agent Leah Tanner of the FBI.

THE COURT:  Good morning.

MR. HOCHMAN:  Good morning, Your Honor.  Nathan Hochman and Brianna Abrams on behalf of the defendant, Leroy Baca, who is present, Your Honor.

THE COURT:  Good morning.

Let's go to sidebar.

*(Proceedings held at sidebar under seal 8:49 A.M.)*

*(The following proceedings were held in open court.)*

THE COURT:  Anything else?

MR. HOCHMAN:  Nothing else, Your Honor.

MR. FOX:  No, Your Honor.

THE COURT:  Thank you.

*(Recess taken 8:51 to 9:48 A.M.)*

*(The following was heard outside the presence of the jury.)*

THE CLERK:  Recalling Item 1, CR16-66(A)-PA, United States of American versus Leroy Baca.

Counsel, please state your appearances.

MR. FOX:  Good morning again, Your Honor.  Brandon Fox, Lizabeth Rhodes and Eddie Jauregui on behalf of the United States.

THE COURT:  Good morning.

MR. FOX:  Also with us at counsel table is FBI Special Agent Leah Tanner.

THE COURT:  Good morning.

MR. HOCHMAN:  Good morning, Your Honor.  Nathan Hochman and Brianna Abrams along with defendant Leroy Baca who

is present, Your Honor.

THE COURT:  Good morning.

MR. HOCHMAN:  Good morning.

THE COURT:  We have two notes from the jury.

The first note is, "We would like to hear the testimony of Cecil Rhambo again.  If a video of the testimony is available, we would prefer to see that as opposed to a read of the testimony."

I believe there is a final transcript of Mr. Rhambo's testimony, and what I intend to tell the jury is that:

"The lawyers and I will have to review Mr. Rhambo's testimony to take out objections or perhaps other matters, sidebars, but we'll start doing that.  It will take some time to finalize it, but it will be available shortly.  And you should continue to deliberate while we're preparing Mr. Rhambo's testimony, and there is no video available of Mr. Rhambo's testimony."

Any objections?  Comments?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  Do each you have a copy of his testimony?

MR. HOCHMAN:  Yes, Your Honor.  I believe it's in one of these boxes behind me.

MR. FOX:  We have it, but it's downstairs, but we can

get it.

THE COURT:  Okay.  All right.  The second question reads as follows:  "Being the first time the FBI inserted contraband into a jail, did the federal government have the constitutional authority in the action taken?"

MR. FOX:  Your Honor, I think the answer is yes, so the -- but I think that in order to -- I think that maybe we need to come up with something more than just yes, which is, something like the federal government has the constitutional ability to conduct undercover operations, including smuggling contraband in a jail.

MR. HOCHMAN:  Your Honor, may I -- what I'd like to do is briefly review the instruction that you gave along these lines and see what it says.

THE COURT:  That's fine.  Go ahead.

MR. HOCHMAN:  If I might have a moment.

THE COURT:  I think I took a look at it.  I don't think it addresses the issue that they're asking, but go ahead.

MR. FOX:  Your Honor, I do want to point out that it appears the jury is confused.  This was not the first time, of course, that the FBI has smuggled contraband.

THE COURT:  Yeah, I was going to tell them, "I may not understand the first part of your question, but the federal government did not violate the constitution by inserting a cell phone into the Los Angeles County Jail."

MR. HOCHMAN:  Just a moment, Your Honor.

THE COURT:  All right.  Val, go have two copies of that made.

MR. FOX:  Is that Mr. Rhambo's testimony?

THE COURT:  Yes.

MR. FOX:  Can you read back the question one more time, please, Your Honor.

THE COURT:  Sure.  "Being" -- and then there's a word that' crossed out.  "Being the first time the FBI inserted contraband into a jail, did the federal government have the constitutional authority in the action taken?"

MR. HOCHMAN:  So just so I'm clear is the Court's proposed response to be, yes, the federal government had the constitutional authority in the action taken?

THE COURT:  Either something like that or I was going to say, "I'm not quite sure I understand the first part of your question, but to the second part of your question the federal government did not -- or the FBI or the federal government did not violate the constitution by inserting a telephone or contraband into the Los Angeles County Jail."

MR. HOCHMAN:  And the only slight confusion, Your Honor, is the word "contraband" because, if you recall, there is some testimony -- and I don't know if this is where they're going with the first part of the question, that at least Anthony Brown was saying that the FBI had him smuggle

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

drugs into the Men's County Jail actually before -- and this is what Anthony Brown is saying -- you know, before or contemporaneously with when he got one or more cell phones.

So I don't know if when they're referring to contraband -- I see the Court's answer for the second part.  I just don't --

THE COURT:  They refer to contraband.  The first part of this question is, "Being the first time the FBI inserted contraband into a jail, did the federal government have the constitutional authority in the action taken?"

MR. HOCHMAN:  So I think the answer, then, without trying to figure out what contraband they're referring to is, "Yes, the federal government has" -- sort of repeat back to them the question.  "Yes, the federal government has the constitutional authority in the action taken," and then if you want to reference that, you know, the first part of the question is unclear, but for the second part of the question here's the answer.

THE COURT:  Well, I don't think I'm going to -- well, okay.  Well, thank you.

What's the government's suggestion?

MR. FOX:  I'm trying to now formulate maybe a response to the first part of the question, which is something to the effect of the evidence was that this was the first time -- I just hate to emphasize that, but the evidence was

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

that the FBI -- let me strike that.  I think you're probably right.  I think we get into dangerous territory as we talk about the first portion of that question.  And I think that we should just tell the jury, "Yes, the federal government had the constitutional authority to insert contraband in the jail as part of an undercover operation."

MR. HOCHMAN:  Let me just write that down real quick.

MR. FOX:  Your Honor, "undercover operation" might be a little bit too restrictive because they also had the authority, of course, to leave the cell phone in Anthony Brown's hands, so maybe "as part of the federal investigation."

MR. HOCHMAN:  May I have a moment, Your Honor, to confer?

THE COURT:  That's fine.

MR. HOCHMAN:  All right.  My understanding, Your Honor, is that -- at least the proposal from the government is, "Yes, the federal government had constitutional authority to insert contraband into the jail as part of a federal investigation."

MR. FOX:  "As part of the federal investigation."

MR. HOCHMAN:  "As part of the federal investigation."

I think that's an accurate statement, Your Honor.

THE COURT:  Okay.  Just one second.  Let me make sure I've got it.

"Yes, the federal government had the constitutional

authority to insert contraband in the jail as part of" -- as part of the federal investigation?

MR. HOCHMAN:  Yes.  I believe that's what Mr. Fox said, and I think that's an accurate statement of the law. Yeah, I think that would be responsive to the question.

MR. FOX:  Your Honor, did you say "the federal investigation" or "a federal investigation."

THE COURT:  I said "as part of the federal investigation."

MR. FOX:  I think that's the best way to respond.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  Okay.

MR. HOCHMAN:  May I approach the clerk to get the Rhambo transcript, Your Honor?

THE COURT:  Let me just make sure that it's correct.

So let me see those copies.

Okay.  If you would give one of these to each of the parties.

There's also an instruction we need to give at the conclusion of the reading of this testimony.  Let me see if I can find that.

MR. HOCHMAN:  Your Honor, may I consult with counsel real quick?

THE COURT:  Yes, that's fine.

MR. FOX:  Your Honor, there's one portion where on

page 461 you asked Mr. Hochman if he has any objections to admitting 38, and he says, "The objections have been stated for the record, Your Honor.  Beyond those, none.

Do you want those comments in?  It says "Mr. Fox," by the way, on that, but it was obviously Mr. Hochman that did that.

THE COURT:  No.  I think all of the colloquy.  Well, let me think -- well, they have the exhibits.

MR. FOX:  They have the exhibits.  So Ms. Rhodes is just referring to -- she said, "I'd like to move to admit Clip 38 of Exhibit 2," but I guess we could even get out the -- we could redact the portion that she said, "I'd like to admit Clip 38."  That's not important for the jury to hear.

THE COURT:  Well, why don't --

MR. HOCHMAN:  I think Mr. Fox is right.  I think she's referring to Exhibit 38, and the last move is to admit it.  The admission or the objections to that at this point are probably irrelevant.

THE COURT:  Okay.

MR. FOX:  And the question I have for you, Your Honor, is should we play the clip for the jury also?  When it's saying to the witness, "We'd like you to hear Clip 38," and then he responds to what that clip is, is it important to play that clip for them?

MR. HOCHMAN:  I think 38 was an e-mail.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

MR. FOX:  I'm sorry.  This is Clip 32 from Exhibit 2 -- Clip 38 from Exhibit 2.

THE COURT:  He's asked questions about the clip?

MR. FOX:  I believe so, yes.

THE COURT:  I think it probably should be played.

MR. HOCHMAN:  May I think about that for a moment?

THE COURT:  That's fine.

Why don't we do this.  Why don't we get them in here and at least get their -- that question answered.

MR. HOCHMAN:  And does the Court have the -- what the Court's going to say about how we're working on the Rhambo testimony?

THE COURT:  Yeah.  "Rereading of testimony is possible, but I and the lawyers must review all of what is to be reread due to objections, sidebars and other proceedings outside of the jury's presence.  Moreover, if I or the lawyers might feel that other matters should be included in that readback, preparing for readback testimony takes time but you should -- the jury should keep deliberating until we are able to make sure that everything is ready."

MR. HOCHMAN:  And, Your Honor, my initial thought -- and I just want to think about it.  Since we -- Ms. Rhodes and myself actually referred to various exhibits, and each time we refer to an exhibit that was in evidence, it was published for the jury, so they would actually see it.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

In some ways, that's no different than them hearing a particular exhibit.  The questions -- and Ms. Rhodes obviously asked about it -- would be relevant.

Obviously, if the jury wants to hear the exhibit themselves, they can make that request, but since we're not having -- my anticipation is we're not going to be putting the actual documents as they were being shown to the jury.

Similarly, if the government -- if the jury wants to heart the tape itself, they can do that.  It's just I don't think it's necessarily part of the readback, unless we do all the exhibits and publish them.  And, again --

THE COURT:  Well, let's -- well, let's get -- why don't we get to the page where that testimony is, and then we can make a determination as to whether or not that clip needs to be replayed based on the questions.

MR. FOX:  It's page 461 and the follow-up questions are on page 462, and we'll see if it's further along than that.

MR. HOCHMAN:  But in the meantime, you're bringing in the jury, Your Honor?

THE COURT:  That's what I am hoping to do, yes.

MR. FOX:  Your Honor, may I have a moment with counsel?

THE COURT:  That's fine.

Let's have the jury brought in, and we'll at least get --

*(Jury in at 10:12 A.M.)*

THE COURT:  Ladies and gentlemen, we've received two notes from you.

The first note is, "we would like to hear the testimony of Cecil Rhambo again.  If a video of the testimony is available, we would prefer to see that as opposed to a read of the testimony."

There is no video available of Mr. Rhambo's testimony.  Rereading of the testimony is possible, but I and the lawyers must review all of what is to be reread due to objections, sidebars and other proceedings outside of the jury's presence.  Moreover, I or the lawyers might feel that other matters should be included in that same readback.

Preparing for readback of testimony takes time, but you should keep deliberating until we're able to make sure that we have everything ready.

So as soon as we have that testimony ready, we'll call you back in to have it reread, and you should continue your deliberations until that testimony is ready to be reread.

There was another note and it reads, "Being the first time the FBI inserted contraband into a jail, did the federal government have the constitutional authority in the action taken?"

Yes, the federal government had the constitutional authority to insert contraband in the jail as part of the

federal investigation.

Okay.  Ladies and gentlemen, you may retire back to the jury room to resume your deliberations, and as soon as we have Mr. Rhambo's testimony prepared, we'll notify you.

THE CLERK:  All rise.

*(Jury out at 10:15 A.M.)*

*(The following was heard outside the presence of the jury.)*

MR. FOX:  Your Honor, if I may raise one thing with a clip that's different than all the other exhibits.

If we refer to an exhibit, for example, Clip -- or Exhibit 31 that's an e-mail they have back in the jury room, they can always listen to the testimony and go back and look at the exhibit.  With a clip, they can't do that.  So we think that it is better to play the clip for the jury since there are follow-up questions, and they can't go back and look at the clip to understand the testimony.

MR. HOCHMAN:  Your Honor, again, we're not -- I mean, the jury -- I think what the jury has asked for is the testimony.  They didn't ask to hear particular evidence that was being shown to the or -- that the particular witness was dealing with.  It's the questions being asked of the witness and the answers he gave.

If they to wanted to actually hear a particular tape -- for instance, Mr. Rhambo for part of his testimony has

the whole, big blow-up of the organizational chart.  And the questions, when you look at it, he is referring to parts of a chart that without the chart present, you wouldn't be able to -- you can remember -- and that's the whole point.  You can remember what he was doing and the jury's memory of what, you know, happened during Mr. Rhambo's testimony as to whether he's listening to a particular clip or not will control as will their memory of what was actually said on that particular clip.

So, again, they've asked for the testimony.  I think we read back the questions and the answers, and if they think, you know, that we'll be referencing exhibits along the way, if they want to see a particular exhibit that Mr. Rhambo either heard or was actually referring to, they will most likely send us a supplemental note and we'll produce it for them.

THE COURT:  On page 462 --

MR. FOX:  Yes, Your Honor.

THE COURT:  -- question by Ms. Rhodes.

MR. HOCHMAN:  Which line, Your Honor?

THE COURT:  Starting at line 2.  "Mr. Rhambo, Mr. Baca stated in a portion of this transcript" --

MR. HOCHMAN:  And that's obviously inappropriate because the transcript's not in evidence, but the question is and the answer is, Your Honor, and I didn't object, so --

THE COURT:  Excuse me.

MR. HOCHMAN:  I'm sorry.

THE COURT: Okay. Isn't she referring to the clip that was just played?

MR. FOX: Yes, Your Honor. And same with lines 11 through 13 followed up by her questions in 14 through 16.

MR. HOCHMAN: But we can't assume, Your Honor, that the jury doesn't have that clip in mind and their memory is crystal clear on the clip when it's being referenced.

They've asked for Mr. Rhambo's answers and questions dealing with the clip. They haven't asked to hear the clip itself for any of the exhibits he's referencing.

THE COURT: Well, but they asked for the testimony. And I think given the nature of those questions, I think the clip ought to be played. If there are other exhibits that you want played or shown that are referenced in this testimony, point them out to me, and I'll see if they're essential to the jury's understanding of the reading of the testimony.

MR. HOCHMAN: All right, Your Honor.

THE COURT: So --

MR. HOCHMAN: For the record, I disagree with that, but I will endeavor to find other ones that we might think are useful.

THE COURT: That's fine. Okay.

So now both sides are going to go through this and take out what they feel -- the objections, the side bars?

MR. FOX: Yes, Your Honor. We're almost done on our

side.

THE COURT:  If you'll excuse me.  I'm going to see if I can -- just let the clerk know when you're ready.

MR. HOCHMAN:  Thank you, Your Honor.

THE CLERK:  All rise.

*(Recess taken 10:20 a to 10:24 A.M.)*

MR. FOX:  Your Honor, there is only one unique issue in this transcript.  Counsel and I agreed on everything.  If you may recall, which I didn't until reading the transcript, you asked some questions of Mr. Rhambo at the very end, and I think it would be our preference from both counsel if we just instead of showing that the Court asked those questions, just have a question and an answer at that point.

THE COURT:  That's fine.

MR. HOCHMAN:  And then, Your Honor, just taking one moment to see if there's any additional exhibits.

THE COURT:  Okay.

MR. HOCHMAN:  May I approach the court clerk, Your Honor?

THE COURT:  Yes.

MR. HOCHMAN:  There's I think two instances, Your Honor, where we indicate that -- you'll see a cross-out, but counsel and I have gone over that and I wrote stet to indicate it shouldn't have been crossed out.

So in the transcript I've just handed the court

clerk, I think there's two instances where I had crossed out a line or a question, but we've -- in going through it, we agreed that it shouldn't be crossed out.

In those instances I wrote the word s-t-e-t, stet, in order to make it so the cross-out should not -- it should be left as it was and should not have been crossed out.

MR. FOX: Your Honor, I believe that both counsel, again, agree that no other exhibits should be shown to the jury other than the one that we're going to play for them. And I think you're going to make this part of your instruction that they should not draw any special emphasis on the fact -- maybe on the fact that we've played that one clip.

MR. HOCHMAN: Again, Your Honor, I would object for the record of playing that one clip because I think -- having read the questions that Ms. Rhodes asked about the clip, I think she actually goes into a decent amount of detail of what was being said in the clip, as I do with respect to certain e-mails where I actually read certain portions of those e-mails and ask the witness a question about them.

I think it's not a situation where, you know, Ms. Rhodes -- where you actually have to have listened to the clip in order to understand Ms. Rhodes' question, just like you don't have to have actually -- you don't have to necessarily see the e-mail in front of you in order to understand what questions I'm asking about the e-mails.

So I think Ms. Rhodes put in enough of the content of the clip.

And, again, the clip -- the portions that Ms. Rhodes focused on of the clip are portions that -- or she didn't focus on every word in the clip, Your Honor.  Like, for instance -- if the Court wants to play the clip, I'll just note my objections for the record, Your Honor.

THE COURT:  Okay.  What I intend to tell the jury after the reading is as follows:

"Now that you've had the transcript of the witness read to you, the transcript is merely to be used as an aid.  Now that you've listened to the reading of the transcript, you should rely on your own memory of what was said.  The transcript is not a substitute for your memory or your assessment of the credibility of the witness.  You are to weigh all of the evidence presented at the trial, and you're not to use the transcript to focus on any single portion of the trial.  Your memory should prevail."

MR. HOCHMAN:  Your Honor, I'm sorry.  I apologize.  I thought that the Court indicated you were going to play the clip.  I don't see any particular need -- it's a relatively short clip and the words are fairly clear -- to also have the transcript to go along with it at this point, especially since the transcript is not evidence.  I'm sorry.

THE COURT:  That's okay.

MR. HOCHMAN:  That's the point I would make.  My understanding was that you were going to play the clip.

THE COURT:  Um-hmm.

MR. HOCHMAN:  They can certainly hear the words.  Again, it's not like it's in a --

MR. FOX:  Your Honor, you're talking about the Rhambo transcripts, not the clips transcript.

THE COURT:  Correct.

MR. HOCHMAN:  Oh, I'm sorry, Your Honor.  I thought you were talking of the transcript of the clip.  I apologize.

THE COURT:  No.  No.  I'm talking about the --

MR. HOCHMAN:  Yes, Your Honor.  My mistake.

THE COURT:  Okay.

MR. HOCHMAN:  And your instruction is acceptable to the defense, Your Honor.

THE COURT:  Government have any objection to the reading of that instruction at the conclusion of the playing of the testimony of Mr. Rhambo?

MR. FOX:  No, Your Honor.

THE COURT:  Okay.  And as I understand it, at the end where the court attempted to relive its days of long ago, we're just going to refer to that as question and answer.

MR. FOX:  Yes, Your Honor.  And I don't recall if Mr. Hochman and I marked the place where the recording should

be played.  Obviously, at that point we'd ask the court reporter to stop reading and we will play the clip at that portion.

MR. HOCHMAN:  I think it says "audio played" there, Your Honor, if I am not mistaken.

THE COURT:  Right.  I think it does as well.

Let me just -- okay.  On page 461, you've marked out lines 4 through 7.  She picks it up -- okay.  That's the same thing, because I -- that's fine.

MR. HOCHMAN:  Yeah, and then I think the top of 462 is where presumably you play the clip.

THE COURT:  Right.  Right.

Okay.  On page 466, are you intending to have the reporter read lines 5 through 11?

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  Okay.  On page 471, on line 25, that's just you telling him to stand down.

MR. HOCHMAN:  Yes.  We could delete that, Your Honor.  And then it continues on to page 472, first line 1, Your Honor.

THE COURT:  Right.  We don't need that as well, do we?

MR. HOCHMAN:  That's correct, Your Honor.

THE COURT:  And then go back to 471 for a moment, please.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT: You've left in lines 22 through 24 on 471.

MR. HOCHMAN: Yes, I see. Since I refer to it again, Your Honor --

THE COURT: You refer to it again on the next page.

MR. HOCHMAN: We can probably take that 22 to 24, Your Honor.

THE COURT: Okay.

MR. FOX: Well, I wonder if we want to take 21 out as well.

THE COURT: Yeah, 21 is out. It should be out as well.

MR. HOCHMAN: Correct, Your Honor.

THE COURT: Okay. On page 486, line 4 --

MR. HOCHMAN: Yes, Your Honor.

THE COURT: -- through line 9.

MR. HOCHMAN: Yes. I thought we took that out, Your Honor.

THE COURT: Okay. It's not --

MR. HOCHMAN: Yeah, that -- that should be out, Your Honor.

THE COURT: Okay. Okay. And then on page 487, lines 1, 2 and 3.

MR. HOCHMAN: Again, Your Honor, it's just directing -- making it clear where in that particular exhibit.

THE COURT:  If you want it, it's fine.  I just --

MR. HOCHMAN:  Yeah, that was the reason to leave it in at that point, Your Honor, because to the extent that -- you know, that that -- that particular exhibit had a number of e-mails in it, I was directing it to a particular one.

THE COURT:  And then -- yeah, I was saying about the same thing on line 17.

MR. HOCHMAN:  Same idea, Your Honor.  We'd ask the Court to include it.

THE COURT:  Okay.

MR. HOCHMAN:  And you have my only copy.  If there's a chance you might be able to make -- Xerox a copy so that I could read along.

THE COURT:  That's fine.

MR. HOCHMAN:  Thank you, Your Honor.

THE COURT:  Why don't I -- okay.  I'll have a copy made of yours so the reporter can use the one that you guys did to read from.

So can you run a copy of this, please.

MR. FOX:  Your Honor, when we get to the point where we should be playing the audio, are you going to then direct us to play it or do you just want us to go ahead and play it when we get to that area?

THE COURT:  Well, I guess the next question I have, was there a transcript with that audio?

MR. FOX:  There is.  We can get it.  It's downstairs, but it won't take us long to do.

MR. HOCHMAN:  And that's the part I was objecting to earlier when I heard you use the word "transcript," Your Honor.

Again, it's a relatively short -- I think it's maybe a page of transcript, and the words are very clear, Your Honor.  Obviously, the transcript's not evidence, so I don't think in -- I don't think in this particular case we need the transcript.

MR. FOX:  Your Honor, we don't need to give them the transcript.

THE COURT:  That's fine.

And when I used the word "transcript," I was just reading a question.

MR. HOCHMAN:  Yes, Your Honor.  That was my confusion earlier.

THE COURT:  Okay.  Did you finish that copy?

   *(The Court and clerk confer off the record.)*

THE COURT:  And I assume we are going to have the reporter read this?

MR. FOX:  Yes, Your Honor.

MR. HOCHMAN:  Yes, unless the reporter for some reason doesn't want to.  I assume that she's the one we were going to choose like we did last time, Your Honor.

THE COURT:  I'm sure she's anxious to take a staring

role, give us her best Mariah Carey lip sync.

If you would give this to the reporter.

Let's get the jury.

*(Jury in at 11:06 A.M.)*

THE COURT:  All right.  Ladies and gentlemen, we're now going to have the testimony of Cecil Rhambo reread to you.

I believe the court reporter is going to do the honors.

*(Record read from 11:06 to 11:49 A.M.)*

THE COURT:  All right.  Ladies and gentlemen, that concludes the testimony of Cecil Rhambo.

Now that you've heard the -- now that you've had the transcript of the witness read to you, the transcript is merely to be used as an aid.

Now that you've listened to the reading of the transcript, you should rely on your own memory of what was said.  The transcript is not a substitute for your memory or your assessment of the credibility of the witness.

You are to weigh all of the evidence presented at the trial, and you're not to use a transcript to focus on any single portion of the trial.  Your memory should prevail.

All right.  Ladies and gentlemen, you may return to the jury room to resume your deliberations.

THE CLERK:  All rise.

*(The following was heard outside the presence of the*

*jury.)*

THE COURT:  All right.  Anything else?

MR. HOCHMAN:  No, Your Honor.

MR. FOX:  No, Your Honor.

THE COURT:  Thank you.

*(Recess taken 11:51 to 1:53 P.M.)*

*(The following was heard outside the presence of the jury.)*

THE COURT:  I'd like to see counsel at sidebar.

*(Proceedings held at sidebar under seal 1:53 P.M.)*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

*(The following proceedings were held in open court.)*

THE COURT:  All right.  We have received a note from the jury that the jury has reached a unanimous verdict.

I'm going to ask the clerk to bring in the jury.

*(Jury in at 1:57 P.M.)*

THE COURT:  All right.  Would you please take the appearances, please.

THE CLERK:  Item 1, CR16-66(A)-PA, United States of America versus Leroy Baca.

Counsel, please state your appearances.

MR. FOX:  Good afternoon, Your Honor.  Brandon Fox, Lizabeth Rhodes and Eddie Jauregui on behalf of the United States.  Also with us at counsel table is FBI Special Agent Leah Tanner.

THE COURT:  Good afternoon.

MR. HOCHMAN:  Good afternoon, Your Honor.  Nathan Hochman and Brianna Abrams.  Present with us is Leroy Baca.

THE COURT:  Good afternoon.

Please be seated.

Members of the jury, I understand you've reached a unanimous verdict.  Who is your foreperson?

FOREPERSON:  I am, Your Honor.

THE COURT:  All right.  Sir, would you please hand the verdict to the clerk.

All right.  I'm going to ask the clerk to publish the verdict.

THE CLERK:  United States District Court, Central District of California, Number CR16-66-PA.  United States of America, plaintiff, versus Leroy Baca, defendant.

Verdict form.

Count One, conspiracy to obstruct justice.  We, the jury, unanimously find defendant Leroy Baca guilty of conspiracy to obstruct justice as charged in Count One of the indictment.

Count Two, obstruction of justice.  We, the jury, unanimously find defendant Leroy Baca guilty of obstruction of justice as charged in Count Two of the indictment.

Count Three, making false statements.  We, the jury, unanimously find defendant Leroy Baca guilty of making false statements as charged in Count Three of the indictment.

Dated this 15th day of March, 2017, at Los Angeles, California, signed by the foreperson.

THE COURT:  Members of the jury, is that the verdict of each of you, so say you all?

THE JURY:  Yes.

THE COURT:  Does the defense wish to have the jury polled?

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  All right.  I'm going to ask the clerk to poll the jury.

THE CLERK:  Juror Number 1, is this the verdict as presented and read your verdict?

JUROR NO. 1:  Yes.

THE CLERK:  Juror Number 2, is this the verdict as presented and read your verdict?

JUROR NO. 2:  Yes.

THE CLERK:  Juror Number 3, is this the verdict as presented and read your verdict?

JUROR NO. 3:  (No audible response.)

THE CLERK:  Juror Number 4 -- Juror Number 3, is this the verdict as presented and read your verdict?

JUROR NO. 3:  Yes.

THE CLERK:  Juror Number 4, is this the verdict as presented and read your verdict?

JUROR NO. 4:  Yes.

THE CLERK:  Juror Number 5, is this the verdict as presented and read your verdict?

JUROR NO. 5:  Yes.

THE CLERK:  Juror Number 6, is this the verdict as presented and read your verdict?

JUROR NO. 6:  Yes.

THE CLERK:  Juror Number 7, is this the verdict as presented and read your verdict?

JUROR NO. 7:  Yes.

THE CLERK:  Juror Number 8, is this the verdict as presented and read your verdict?

JUROR NO. 8:  Yes.

THE CLERK:  Juror Number 9, is this the verdict as presented and read your verdict?

JUROR NO. 9:  Yes.

THE CLERK:  Juror Number 10, is this the verdict as presented and read your verdict?

JUROR NO. 10:  Yes.

THE CLERK:  Juror Number 11, is this the verdict as presented and read your verdict?

JUROR NO. 11:  Yes.

THE CLERK:  Juror Number 12, is this the verdict as presented and read your verdict?

JUROR NO. 12:  Yes.

THE COURT:  Any reason why the verdict should not now be recorded?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  The clerk is directed to file and record the verdict.

Any reason why the jury should not now be discharged?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  Ladies and gentlemen, I want to thank you for your service in this case.  Our constitution's framers recognized that trial by jury is the essence of a free government and jury service is a right that our forefathers fought for, and men and women are fighting for today, because of its importance in the governing of a democratic society.

For the jury to perform its historic and beneficial role in our democracy, it must be constituted with people like yourselves who are willing to serve.

As a society, we've given to the people the power to make the ultimate determination of whether or not to deprive a fellow citizen of life, liberty or property in criminal cases.

I am proud of the fact that citizens like you are willing to serve on our juries.

I'm going to ask that you return to the jury room, and if you'd wait there, I'd like to just come in and personally thank each of you for your service in this case.

And now that the case has been concluded, some of you may have questions about the confidentiality of these

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

proceedings.  Many times jurors ask if they're now at liberty to discuss the case with anyone.  And now that the case is over, you are, of course, free to discuss it with any person you choose.

By the same token, however, I would advise you that you're under no obligation whatsoever to discuss this case with any person.  If you do decide to discuss the case with anyone, I would suggest that you treat it with the same degree of seriousness, and that whatever you do decide to say, you'd be willing to say in the presence of the other jurors who are under oath here in open court in the presence of all of the parties.

Also, always bear in mind that the other jurors fully and freely stated their opinions with the understanding that they were being expressed in confidence.  Please respect the privacy of the views of the other jurors.

All right.  Ladies and gentlemen, if you'd just return to the jury room, and I'll be in there in about two minutes.

THE CLERK:  All rise.

*(Jury out at 2:05 P.M.)*

*(The following was heard outside the presence of the jury.)*

THE COURT:  All right.  I am going to ask the parties to remain here and we'll take about a five-minute recess.

THE CLERK:  This court is now in recess.

*(Recess taken 2:06 to 2:24 P.M.)*

THE CLERK:  Recalling Item 1 CR16-66(A)-PA, United States of America versus Leroy Baca.

Counsel, please state your appearances.

MR. FOX:  Good afternoon again, Your Honor.  Brandon Fox, Lizabeth Rhodes and Eddie Jauregui on behalf of the United States.  Also with us at counsel table is FBI Special Agent Leah Tanner.

THE COURT:  Good afternoon.

MR. HOCHMAN:  Good afternoon, Your Honor.  Nathan Hochman on behalf of Leroy Baca, who is present, Your Honor.

THE COURT:  Good afternoon.

Everybody can please be seated.

All right.  I'm going to ask the clerk to give us a date for sentencing.

MR. FOX:  Your Honor, this might affect the date that you're thinking about.  Under Federal Rule of Criminal Procedure 32(c)(1)(2), we don't believe that there is a need for a PSR because there already has been one.  And under that rule, it says that there is no need for a PSR if the Court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 USC 3553 and the Court explains its finding on the record.

At this point, he's had a PSR, he's had 200-plus

letters submitted, he's filed a sentencing position, he's gotten up to the sentencing hearing, and Your Honor has known these facts for years, knows how the guidelines applies.

He can object to -- we can figure out what the guidelines should be, and the parties can object if they have any objections to what the guidelines should be, and we think that a short date is appropriate here.

MR. HOCHMAN:  We disagree, Your Honor.

We think that the normal date is applicable because if Your Honor recalls, the first sentencing involved just the false statement account, Your Honor.  This one obviously will involve two additional counts.

We would want to get updated medical information, financial information.  It will take additional time to do that.  We want to obviously present to the Court a sentencing position that encompasses the guideline calculations for all three counts rather than what was previously done for one count, requiring additional research, Your Honor, beyond what was previously submitted to the Court.

I believe that the normal ten weeks or so is appropriate here.  Obviously, the gravity of the situation demands that we, you know, provide the Court with as much information as we possibly can before the Court makes a sentencing decision on all different -- both legal and factual issues, Your Honor.

MR. FOX:  And, Your Honor, given the defendant's condition that he's provided information on to the Court, I think that the earlier the better for a sentencing hearing, because if he is going to serve time in prison, it makes more sense to serve time earlier rather than later in his cognitive impairment, if that's the diagnosis.

MR. HOCHMAN:  And that's -- I don't even understand that one, Your Honor.  If he's going to serve time in prison, he's going to serve time in prison whether he has a cognitive impairment or not.

So, again, we ask the Court for the normal amount of time to make sure that we can get the Court our best sentencing position product that has all the necessary information that we want the Court to consider prior to the Court making a final decision in this case on sentencing.

I don't think there's a particular need, as the government seems to suggest, to rush.

THE COURT:  Let me see counsel at sidebar for a moment.

*(Proceedings held at sidebar under seal 2:29 P.M.)*

*(The following proceedings were held in open court.)*

THE COURT:  All right.  So the parties are going to submit something to me a week from today.

MR. HOCHMAN:  Are we supposed to come back on Monday, Your Honor, so that maybe we can present it actually to you --

THE COURT:  Well, I think when we -- I am now looking at the calendar.  I think when we had mentioned Monday, I believe we were talking -- I think that Monday would have equaled the 27th.

MR. HOCHMAN:  And I mentioned to the Court I'm not scheduled to be here, Your Honor, in this state.

MR. FOX:  Your Honor, I thought you were referring to this coming Monday for us to have a status.

THE COURT:  Okay.  And what can you get me before Monday?

MR. HOCHMAN:  We certainly can try to get you as much as possible, Your Honor.  I don't know if I'll be able to accomplish everything I was hoping to accomplish by Monday.  I probably would be able to tell the Court what I have accomplished between now and let's say we submit something Friday.  I don't know if I'll have answered all the questions I

need to get answered, though.

MR. FOX:  If I can suggest, Your Honor, Monday the 20th in the afternoon at some point.  That would give the parties enough time to try to get answers to your questions, and then maybe even we do not submit something until the status hearing or maybe an hour before the status hearing that would give Mr. Hochman additional time on Monday to compile his information.

MR. HOCHMAN:  I'd also want to submit it under seal, Your Honor.

THE COURT:  That's fine.

Just a second.  Okay.  So the plan would be that you would submit something on Monday, say, by either 11:00 or noon, and then we'd have a status conference that afternoon.  We can do 3 o'clock, 4 o'clock.

MR. HOCHMAN:  We could do 4 o'clock, Your Honor.  Actually, if we could do 3 o'clock and then submit it by noon, I'd appreciate that, Your Honor.

MR. FOX:  That's fine, Your Honor.

Do you want it to be joint or do you want to do --

MR. HOCHMAN:  I don't think it needs to be, Your Honor.  I mean, I will confer with counsel, but --

MR. FOX:  I don't expect our portion to be very lengthy so we could always provide our information to Mr. Hochman.  If he could get a draft of something to us before

then, we may have a response in there or just a very short paragraph of what we think is appropriate given the information he provides to us.

THE COURT:  Okay.  Well, why don't I let you two try and work that out.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  All right.  And then on Monday, hopefully we'll be able to set a date for sentencing.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  All right.  Is there anything else?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  Okay.  And, Mr. Baca, you need to return here on Monday the 20th at 3 o'clock.

THE DEFENDANT:  I will, Your Honor.

THE COURT:  All right.  Thank you.

THE CLERK:  All rise.

*(Proceedings concluded 2:53 P.M.)*

--oOo--

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date: AUGUST 11, 2017

/s/  Cindy L. Nirenberg, CSR No. 5059

Official Court Reporter

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA