**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

**HONORABLE PERCY ANDERSON, U.S. DISTRICT JUDGE**

UNITED STATES OF AMERICA,         )
                                  )
          Plaintiff,              )   Case No.
                                  )
     vs.                          )   CR 16-00066(A)-PA
                                  )
LEROY D. BACA,                    )   PAGES 1 to 64
                                  )   VOLUME 1
          Defendant.              )
_____)

REPORTER'S TRANSCRIPT OF
TRIAL DAY 1
MONDAY, DECEMBER 5, 2016
9:26 A.M.
LOS ANGELES, CALIFORNIA

**MIRANDA ALGORRI, CSR 12743, CRR**
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 435
LOS ANGELES, CALIFORNIA 90012
MIRANDAALGORRI@GMAIL.COM

**UNITED STATES DISTRICT COURT**

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

SANDRA R. BROWN
Acting United States Attorney
BY:  BRANDON FOX
BY:  EDDIE A. JAUREGUI
Assistant United States Attorneys
United States Courthouse
312 North Spring Street
Los Angeles, California 90012

**FOR THE DEFENDANT:**

MORGAN LEWIS AND BOCKIUS LLP
BY:  NATHAN J. HOCHMAN
BY:  BRIANNA ABRAMS
The Water Garden
1601 Cloverfield Boulevard
Suite 2050 North
Santa Monica, California 90404

MORGAN LEWIS AND BOCKIUS LLP
BY:  TINOS DIAMANTATOS
77 West Wacker Drive
Chicago, Illinois 60601

**UNITED STATES DISTRICT COURT**

# I N D E X

**MONDAY, DECEMBER 5, 2016**

## Chronological Index of Witnesses

Witnesses:_____    Page_____

(None)

**UNITED STATES DISTRICT COURT**

**EXHIBITS**


**MONDAY, DECEMBER 5, 2016**


|  | For | In |
|---|---|---|
| Exhibits | ID | EVD |

(None)

**LOS ANGELES, CALIFORNIA; MONDAY, DECEMBER 5, 2016**

**9:26 A.M.**

**---**

(The following proceedings were held in open court out of the presence of the jury:)

THE CLERK:  Calling item No. 1, CR 16-66(A), USA versus Leroy Baca.

Counsel, state your appearances, please.

MR. FOX:  Brandon Fox, Eddie Jauregui on behalf of the United States.  Also sitting at counsel table will be Special Agent David Dahle of the FBI.

THE COURT:  Good morning.

MR. HOCHMAN:  Good morning, Your Honor.

Nathan Hochman on behalf of Defendant Leroy Baca. I'm joined at counsel table with counsel Tinos Diamantatos and Brianna Abrams, Your Honor.

MR. DIAMANTATOS:  Good morning, Your Honor.

THE COURT:  Good morning.  All right.  I'd like to make sure that we've got a prospective witness list from each side.

MR. HOCHMAN:  Yes, Your Honor.  I gave it to your clerk this morning.

MR. FOX:  Yes, Your Honor.  I did the same.

THE COURT:  All right.  Thank you.

We're also going to, as I mentioned earlier,

**UNITED STATES DISTRICT COURT**

we're going to use juror numbers rather than names during the trial.  I received from the Government last night a proposed order impaneling an anonymous jury.  The Court will make its own findings as to why I believe that using a unanimous jury is appropriate in this case.

Either side wish to be heard on that issue?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  Your Honor, I incorporate the arguments I made before on this issue.  I object for the record.

THE COURT:  All right.  Thank you.  All right.

We're going to shortly have the panel come down. We're going to have them -- I'm going to basically tell them a little bit about the case, how long we think it's going to last.  We prepared a hardship questionnaire for them to fill out.  I believe at some point in there we say it's two and a half, at some point we say two weeks.  I'm going to tell the jury we expect the case will conclude somewhere around December 19th or the 20th unless somebody has a different view.

MR. FOX:  I'm hopeful it's before then, but I think that makes sense.

MR. HOCHMAN:  That's approximately right, Your Honor.

THE COURT:  Okay.

MR. HOCHMAN:  Your Honor, you will indicate,

though, that obviously jury deliberations could take longer than that.

THE COURT:  Yes.  So we'll find out initially if there are jurors who believe they can be with us during that period of time.  We will take their -- make a record of who those are.  We'll send those back to the jury assembly room.  We'll then have the balance of those people who believe they may have hardships that would excuse them from jury service, fill out the questionnaires.  Once they have filled out those questionnaires, they will be sent back to the jury assembly room.  The lawyers will then take a look at those questionnaires.

To the extent you can agree that a person has a hardship, you can give me those numbers, and I'll take a look at it.  We'll probably excuse those people.  If there's a disagreement as to those people, we will have them reconvene on the 9th floor in Courtroom 9B.  We'll bring them in individually into 9A and go through their hardship, and the Court will make a final determination as to whether or not they should be excused.

Assuming -- well, at that point we'll put together the jurors who can be with us.  We'll put them back in 9B.  We'll call them in one at a time.  They will have received by that time a criminal case questionnaire, and we will individually voir dire each of those individuals to see if they

have any positions that they might find difficult to lay aside in serving as a juror in this case.

Assuming we can have a sufficient number of people qualified at that point, then we'll start the actual jury selection.  If not, we'll bring down an additional panel tomorrow morning and start the process again until we get a sufficient number to pick a jury.

At some point this morning, prior to giving the jury the criminal case questionnaire, I will distribute that to counsel so you can have a look at it.  You can make any suggestions, objections, what have you.  And then we'll distribute that.

Again, once we start exercising peremptory challenges, before you announce that challenge, meet and confer so that, if there's going to be a motion, we can take that up outside the presence of the jury.  If you pass, you lose.  If the defense passes on the first two challenges, they lose both.

You can make an -- if there's a juror that goes in the box who, as a result of your passing, you have not had an opportunity to challenge, you can make an application to the Court to have that challenge restored although I think it's unlikely when you have a single defendant if that's going to come about.

All right.  Anything else that we need to take up this morning?

UNITED STATES DISTRICT COURT

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  All right.  We are now going to shortly have the potential prospective jurors come in, and I'm going to ask that everybody in the audience vacate the courtroom so we can have the jurors take the available seats. Once we have all the jurors in place, we will reopen the courtroom and let the spectators back in.  If there are -- we're going to keep a row right behind the defense for family members, and we'll keep a row right behind the Government for anybody who is affiliated with that side.  Other than that, we want to keep the courtroom clear so that we can get all the prospective jurors in.

All right.  The panel ought to be down within the next 10, 15 minutes.  Anything else?

MR. FOX:  One moment, Your Honor.

(Counsel confer.)

MR. FOX:  Your Honor, as long as we have time, this is a housekeeping issue for much later, but as long as we have time.

Mr. Hochman and Mr. Baca and the Government have signed a couple stipulations.  Mr. Hochman has indicated that he wants the electronic version of the signature to go back to the jury with the exhibits.  We don't have an objection to that.  I think that he's concerned with the signature

potentially being evidence itself of something.  So we are going to prepare the stipulation.  We'll file it with the original signatures, and if it's okay with Your Honor, we will prepare electronic signatures for the stipulation so, when it goes back to the jury, it's just the electronic version of those signatures.

MR. HOCHMAN:  Yes, Your Honor.  That's correct.

THE COURT:  All right.  That's fine.

MR. FOX:  Thank you.

THE COURT:  Do you want this discrepancy in the questionnaire fixed so we're consistent at two-and-a-half weeks?

MR. HOCHMAN:  Ideally, Your Honor, just so it's consistent with the Paragraphs 1 and 2.  Thank you, Your Honor.

THE COURT:  Sure.  Just a couple other housekeeping matters.  There's no food, coffee, water bottles allowed in the courtroom.  Please don't address the jurors or the witnesses.  No need to say good morning.  I'll take care of that.  No introduction of family members.  Please, if you're going to have people here who are affiliated with your side, please instruct them all the appropriate conduct while in the courtroom.

Don't thank witnesses following an answer.  Don't thank the Court following a ruling.  No speaking objections.  Just give me the evidentiary basis for any objection, and I'll

rule on it.  If there's some discussion, you can ask for a sidebar.  I may not grant it.  What we'll do is usually take those up at a recess.

If you're going to impeach someone with grand jury testimony, give us the page and line number and simply read the question.  We'll give the other side a chance to take a look at it.  Then give me the page and line number, and simply read the question and the answer.  There is no follow-up.  That's it.  There is no introduction, *You were in front of the grand jury on XYZ date.  I asked the following question.  You gave me the following answer.*  Just read the question, read the answer, and you can argue it during your closing.

MR. HOCHMAN:  And, Your Honor, just so I'm clear on that, so the witness gives an answer -- I'll just make something up -- the house is green and in the grand jury testimony they said the house is blue.  At that point in time, Your Honor, I'd like to read the following question and answer.  I just read the question, read the answer.  Do I tell the jury that it was under penalty of perjury when they gave that answer?

THE COURT:  No.  You just read the question and answer.  I will explain to the jury -- if it was grand jury testimony or a deposition, I will explain to the jury what that means.

MR. HOCHMAN:  Okay.  Very good.  Thank you, Your Honor.

THE COURT:  When we get into the courtroom, Juror No. 1 will be in the front row seat closest to me.  We'll use four alternates.

MR. HOCHMAN:  Actually, Your Honor, since we do have a moment, I know in prior trials the Government has introduced the testimony of the deputy beatings and things like that.  You've given a limiting instruction to the jury on how to consider that testimony.  We've submitted limiting instructions as part of the jury packet.

Was it the Court's intent -- you gave it in different trials at different points in testimony.  Was it the -- is there a standard way, when the Government -- and there's certain witnesses that will only be testifying about that, the Court would give that limiting instruction before their testimony?  At some point in their testimony?  How does the Court usually or intend to do that in this trial?

THE COURT:  There was a limiting instruction given in the prior trial when they discussed a use of force?

MR. HOCHMAN:  The example I gave you last week was with Gilbert Michel, Your Honor.  Gilbert Michel had two parts of his testimony, one dealing with the bribe and one dealing with his beating of -- his participation in various beatings of inmates.  In the middle of his testimony, I believe

**UNITED STATES DISTRICT COURT**

right before cross-examination, you gave the standard limiting instruction that certain testimony is coming in.  He's not been charged with these actions.  You are to consider this for the legitimate purposes you can consider it for.  I guess bearing on intent, et cetera, et cetera.

So you did it in that particular case with Gilbert Michel, and there's obviously other parts of testimony that's going to be coming in for which I assume, since he's not on trial for any civil rights violations, it comes in for the limited purpose of dealing with his motivation or dealing with his intent.

So usually -- again, that's one example.  You gave a limiting instruction.  Rather than wait to hear the testimony and ask at that time, I figured I would ask right now what the Court's intent would be on that issue.

THE COURT:  Well, does the Government have an opinion?

MR. FOX:  Only that I think we should probably meet and confer about this and come up with a proposed instruction.  I think a limiting instruction would be fine with the Government.

I remember generally what you said.  It had to do with the fact this defendant is not on trial for those beatings and they can consider it for whatever reasons they can consider it for.  We'll come up with some language I think we can agree

on.

THE COURT:  That's fine.  If you give me a heads-up, I'd be happy to do that during or before the testimony.

MR. HOCHMAN:  Thank you, Your Honor.

MR. FOX:  Thank you, Your Honor.

THE COURT:  I believe the panel is here.  I'm going to step out, and we'll bring the panel in.

(The following proceedings were held in open court in the presence of the jury:)

THE CLERK:  Calling item No. 1, CR 16-66(A), United States versus Leroy Baca.

Counsel, state your appearances, please.

MR. FOX:  Good morning, Your Honor.

Brandon Fox and Eddie Jauregui on behalf of the United States.  Also with us at counsel table is Special Agent David Dahle with the Federal Bureau of Investigation.

THE COURT:  Good morning.

MR. HOCHMAN:  Good morning, Your Honor.

Nathan Hochman on behalf of Leroy Baca.  With me at counsel table is Tinos Diamantatos and Brianna Abrams.

MR. DIAMANTATOS:  Good morning, Your Honor.

MS. ABRAMS:  Good morning.

THE COURT:  Good morning.

Members of the panel, good morning.  I'm

Judge Percy Anderson, and I would like to welcome you to this courtroom.  We're here this morning for the important task of selecting a jury to try a criminal case.  We rely on jurors in this country to decide cases tried in our courts.  So jury service is an important duty of citizenship.

Jurors must conduct themselves with honesty, integrity, and fairness.  Under our system of justice, the role of the jury is to find the facts of the case based on the evidence presented in the trial.  That is, from the evidence seen and heard in court, the jury decides what the facts are and then applies to those facts the law that I have given in my instructions to the jury.  My role as the trial judge is to make whatever legal decisions must be made during the trial and to explain to the jury the legal principles that will guide its decisions.

As you probably know, at the beginning of any court case, the first step involves the selection of jurors who are going to hear the case.  Now, in this case, rather than using your names during jury selection, we'll be using the last five digits of your jury badge numbers to identify you.  The parties have not been informed of your names and other personal identifying information.  Your names and personal information will be known only to the court personnel and will not be disclosed.

In this day and age of social media, using jury

badge numbers is my preferred and standard practice and is not an unusual practice in federal courts when it's anticipated that the case may draw a large amount of media attention.  It's not uncommon for criminal trials to attract the attention of the media and the public, and the level of interest is unpredictable and not within the Court's control.

The use of jury badge numbers is used to protect your privacy from curiosity seekers, to avoid any possible contact you might otherwise face from the media or the public, and to ensure that the trial is fair and unbiased.  I want to make it absolutely clear that the reasons for adopting an anonymous jury have nothing to do with the guilt or innocence of the defendant.  That's a question for you as jurors to decide solely on the basis of the evidence that will be presented during the course of the trial.

During this process, we're going to be distributing questionnaires, and I will be asking you questions.  It provides the Court and the lawyers with an opportunity to inquire into your background, experience, and state of mind to determine whether you're qualified to be a juror in this case.

Now, qualified simply means that you can be fair and impartial, that you can decide this case based on the evidence presented in this courtroom and on nothing else. Please keep in mind that during this process there is no such

**UNITED STATES DISTRICT COURT**

thing as a right or wrong answer, only answers that are complete or incomplete.

Err on the side of giving too much information. In this case you'll be sitting as judges of the facts. All parties have a right to expect that you will perform your role fairly and impartially and not because of any biased or prejudiced you bring into this courtroom. If there's any reason why any of you might be bias or prejudice in any way, you must disclose such reasons when you're asked to do so. It's your duty to make this disclosure.

Now, in giving you these admonitions, I want to make it clear I have no intention of trying to embarrass anyone or try to invade your privacy or the privacy of any of your family members or close personal friends. If you have something that you think the lawyers or I should know but you do not wish to discuss it in the presence of the entire panel in open court, please let me know, and we can take that matter up at sidebar outside the presence of the other jurors.

This is a criminal case entitled the United States of America versus Leroy D. Baca. To begin this process, I'd like to introduce you to the parties and counsel in this matter. I'm going to ask Government counsel to stand and introduce themselves and anyone seated at counsel table to the prospective jurors.

MR. FOX: Good morning. As I said before, my

name is Brandon Fox.  I'm a federal prosecutor also known as an Assistant United States Attorney.  To my right is another Assistant United States Attorney Eddie Jauregui, and to his right is Special Agent David Dahle with the Federal Bureau of Investigation.

THE COURT:  Thank you.  Is there any member of the jury panel who knows or has any kind of relations with counsel or the agent?  Please raise your hand.  All right.

Will counsel stipulate that I do not have to note for the record that there were no hands raised in response to my future questions?

MR. FOX:  Yes, Your Honor.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  All right.  I'm going to ask defense counsel to stand and introduce themselves, the defendant, as well as anyone else seated at counsel table to the prospective jurors.

MR. HOCHMAN:  Thank you, Your Honor.

Good morning.  My name is Nathan Hochman, and I, along with Tinos Diamantatos and Brianna Abrams, represent Leroy Baca who is next to me right here.

THE COURT:  All right.  Good morning.

Is there any member of the jury panel who knows or has any kind of relations with counsel or the defendant? Raise your hands.

All right.  Sir, just keep your -- we'll note that, and we will contact you shortly in response to those questions.

Do any of you or any of your family members know or have any kind of relations with me?

During the trial of this case, the following persons may be called as witnesses.  I'm going to ask the clerk to read the names of the prospective witnesses.

THE CLERK:  Gus Academia, Tara Adams, Peter Angelini, Yolanda Baines, Robert Bayes, Andre Birotte, Mike Bornman, William Tom Carey, Chaplain Paulino Juarez-Ramirez, William David Courson, David Dahle, Jason Dalton, Peter Eliasberg, Linda Farrar, Robert Faturechi, Judy Gerhardt, Mike Hannemann, Mickey Manzo, Ruben Martinez, Gilbert Michel, Michele Miller, Robert Olmsted, John Powell, Cecil Rhambo, Mark Rosenbaum, James Sexton, Leah Tanner, John Torribio, Brian Yanagi, Leroy Baca, Carol Baca, Richard Barrantes, David Bates, Takashi Cheng, Carl Covitz, Henry DeNero, Steve Cooley, Kay Coulson, Michael Ellison-Lewis, Dave Fernandez, Michael Gennaco, Alice Harris, James Hellmold, George Horan, Tommy Lasorda, James Lopez, John March, Steve Martinez, Rose Ochi, Paul Pietrantoni, Ira Reiner, Mike Roos, Cameron Saul, Dr. James Spar, Neal Tyler, Eli Vera, and Richard Weintraub.

THE COURT:  Have any of you heard of or otherwise

**UNITED STATES DISTRICT COURT**

been acquainted with any of the witnesses just named that you believe would affect your ability to be a fair and impartial juror in this case or make it difficult for you to be a fair and impartial juror in this case?

You should know that the parties are not required and might not wish to call all of these witnesses and may find it necessary later to call other witnesses.

All right.  Sir, I'm going to ask if -- just keep that question in mind, and we'll let you know.  All right. Thank you.

This is a case in which the defendant is charged with conspiring to obstruct justice and endeavoring to obstruct a grand jury investigation into civil rights violations in the Los Angeles County jails.  The Government alleges that the defendant was the Sheriff of Los Angeles County at a time when the Federal Government was conducting a grand jury investigation into whether certain deputies were using excessive force and accepting bribes in the Los Angeles County Sheriff's Department jails.

The Government alleges that it was utilizing an inmate, Anthony Brown, as an informant in that investigation. The charges alleged that, after the defendant and other members of the Los Angeles County Sheriff's Department became aware that Inmate Brown was a federal informant, they conspired to hide the inmate from the Federal Grand Jury by changing the

inmate's name, by altering the sheriff's department's computer records, moving the inmate to other facilities operated by the Los Angeles County Sheriff's Department, that they tampered with witnesses, and allegedly threatened the arrest of an FBI agent that was heading the investigation.

The charges against the defendant are contained in an Indictment.  The Indictment is simply the description of the charges made by the Government against the defendant.  It is not evidence of anything.  To these charges the defendant has pled not guilty, and it will be the question of his guilt or innocence to the charges that you'll be asked to decide if you're selected as a trial juror in this case.

Now, I want to caution you that, as we proceed through this process this morning, that, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.

Thus and until the end of the case or unless I tell you otherwise, do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means via e-mail, text messaging, or any Internet chat room, blog, website, or other feature.  This applies to

communicating with your fellow jurors until the case is given to you for your deliberations.

And it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial although you may notify your family and employer that you have been seated as a juror in this case.  But if you're asked or approached in any way about your jury service or anything about this case, you must respond that you've been ordered not to discuss the matter and report the contact to the Court.

At some point you're going to receive questionnaires that you're to fill out.  Please do not discuss your answers to the questions with other jurors.  Do not blurt out any answers to questions.

Because you will receive all the evidence and legal instruction you may properly consider to return a verdict, do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it.  Do not do any research such as consulting dictionaries, searching the Internet, or using other reference materials, and do not make any investigation or in any other way try to learn about the case on your own.  The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes

the fairness of these proceedings.

And most importantly, do not make up your mind about what your verdict should be until after you've gone into the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Keep an open mind above all.

Now, ladies and gentlemen, I recognize that jury service is an inconvenience taking you away from your jobs, families, and disrupting your daily routine.  It is, however, one of the most important duties that citizens of this country are called upon to perform, and for this reason, I know you will not take this duty lightly.

We expect that the presentation of all phases of this case including the opening statements, the presentation of evidence, arguments of counsel, and the instructions of the Court will last approximately two weeks or two and a half weeks, plus your deliberations.

Now, once we've got a jury selected, our daily schedule will usually be from 8:00 a.m. to 1:30 with two short breaks.  Now, today we're going to meet until noon, and we'll resume after lunch at 1:30 but continue until 5:00 o'clock.  So we would expect that all aspects of the case will conclude either December 19 or the 20th with the case then being submitted to the jury for its deliberations.  During deliberations your hours will change.  You'll deliberate from 8:00 to 3:30, and lunch will be brought in.

Now, I want to advise you that a juror may be excused from jury service only upon a showing of specific facts which constitute an undue hardship for the juror and not for the juror's employer.

An undue hardship includes the following: The prospective juror has a personal obligation to care for the sick, aged or infirmed dependents, or to care for children where no comparable substitute care is either available or practical without imposing an undue financial hardship on the prospective juror or the person cared for;

The prospective juror has a physical or mental disability or impairment not affecting the person's ability to serve on a jury but that would expose the juror to an undue risk of mental or physical harm;

Participation in the trial would expose a prospective juror to an extreme financial burden taking into account the following factors: The length of the trial, whether the prospective juror is the sole support of his or her family, and the availability of employer reimbursement.

Please keep in mind that jury service is not only a duty and a responsibility, but it's a right that our forefathers fought to secure because of its importance in the governing of a democratic society.  As a society, we've given to the people the power to decide disputes between their fellow citizens in civil cases and the power to make the ultimate

**UNITED STATES DISTRICT COURT**

determination of whether or not to deprive a fellow citizen of life, liberty, or property in criminal cases.  Jury service is a duty that is not to be shirked and a right that should not be likely relinquished.

Now, bearing in mind the importance of trial by jury, how many of you think you can be with us for the next two or two-and-a-half weeks?  Raise your hands.  All right.

Now I'm going to ask each of you that can be with us for the next two or two-and-a-half weeks to come forward and give the last five digits of your badge number to the clerk.  I think I've got two other people with the Clerk's Office.  If you'll come forward, please.  Okay.  I've got two people with the Clerk's Office here if you'll just come forward and give them the last five digits of your badge number.

Once you've done that, I'm going to ask that you return to the jury assembly room on the first floor.  Once we have your badge number, please return to the jury assembly room on the first floor.

All right.  Now I'm going to ask the rest of you to fill out a questionnaire that's designed to elicit whether any of you have any reasons why you feel that jury service for this period of time and during the hours that I've indicated would pose an undue hardship for you and require that you be excused for consideration as a juror.

Once you've finished filling out that

**UNITED STATES DISTRICT COURT**

questionnaire, please pass it along to the clerk.  At that point I and the lawyers are going to sit down and review the questionnaires, and we may have some additional questions for you.  Once you've finished filling out the questionnaire, please raise your hand, and then I'm going to ask that all of you who fill out a questionnaire return to the jury assembly room on the first floor.

All right.  We're going to change.  Once you've filled out that hardship questionnaire, we're going to ask that you go up to the 9th floor and enter Courtroom 9B.  It's on the 9th floor of this building.  So if you're filling out a hardship questionnaire, once you fill that out and give it to the clerk, go up to the 9th floor to Courtroom 9B and just have a seat.  We'll let you know if we have some additional questions for you.

(The following proceedings were held in open court out of the presence of the jury:)

THE COURT:  All right.  Do we have all prospective jurors out of the courtroom now?  All right.

So we have the questionnaires.  I'm going to ask the clerk to make some copies.  We'll keep the originals.  Then I will give each side a copy of these questionnaires.  I'd like you to meet and confer and see if you can agree on people that ought to be excused, present those to me in a group, and we'll dispose of those first.

**UNITED STATES DISTRICT COURT**

Anybody who you can't agree on, make a stack of those. We will reassemble in Courtroom 9A and then bring those people in one at a time and see if we can resolve the hardship issue with those. Once we've done that, we'll combine that group with the group of people who have already indicated they can serve, and we'll start individually voir diring those people in Courtroom 9A.

MR. FOX: Your Honor, can we know how many jurors said they have no problem with the two-and-a-half weeks?

THE COURT: I believe the number is somewhere between -- I think the number is 54.

MR. FOX: Thank you.

THE COURT: Give or take.

Any questions?

MR. FOX: No, Your Honor.

MR. HOCHMAN: No, Your Honor.

THE COURT: Okay. So the clerk will make some copies. If you want to wait in here, as soon as those copies are ready, they'll give them to you.

It is now about ten minutes to 11:00. Why don't we try to get together no later than 11:30. We'll see where we're at.

MR. FOX: Yes, Your Honor.

THE COURT: Okay. So I'll see you again in Courtroom 9A.

MR. HOCHMAN:  I'm sorry, Your Honor.  Do you want us to meet in Courtroom 9A next at 11:30?

THE COURT:  Yes.

MR. HOCHMAN:  Very good.  Thank you, Your Honor.

(A recess was taken at 10:47 a.m.)

(The following proceedings were held in open court out of the presence of the jury:)

THE CLERK:  Recalling item No. 1, CR 16-66(A), USA versus Leroy D. Baca.

Counsel, state your appearances, please.

MR. FOX:  Good morning, Your Honor.

Brandon Fox and Eddie Jauregui on behalf of the United States.  Special Agent David Dahle is with us at counsel table.

THE COURT:  Good morning.

MR. HOCHMAN:  Good morning, Your Honor.

Nathan Hochman on behalf of Defendant Leroy Baca who is present and joined with Tinos Diamantatos and Brianna Adams.

MR. DIAMANTATOS:  Good morning, Judge.

THE COURT:  Good morning.  My name is not judge. I know that's an East Coast deal.

MR. DIAMANTATOS:  Sorry, Your Honor.

THE COURT:  It's all right.

I understand you need some additional time to go

through these questionnaires.

MR. HOCHMAN:  Yes, Your Honor.

MR. FOX:  Yes, Your Honor.

THE COURT:  How much time are you anticipating?

MR. FOX:  I'm hoping that we can be done going through them in 10 to 15 minutes, and then we will need to meet and confer with counsel at that point.

MR. HOCHMAN:  We just worked about 20 minutes, Your Honor.  We're just shy of halfway through.  I would assume at least another 20 minutes to go through and then meet with counsel.

THE COURT:  Okay.  What I envision doing is, the people that have indicated that they can be with us for the next couple weeks that are down in the jury assembly room, I would let the jury commissioner tell them to excuse them for lunch and have them back at 1:30.

As to the people that are now waiting over in Courtroom 9B, I would suggest that maybe we reconvene at 12:15 which should give you time to go through these questionnaires and meet.  Then I would suggest that we bring the jurors in at that time who made requests.  Those that you can agree upon, we'll see if we can excuse those people and work through until around 1:15 or so, see if we can work our way through some of those people.

Then I'll excuse you, give you 20 or 30 minutes

to do whatever it is you need to do, then resume at probably 1:45 and see if we can find some people among those that are claiming hardship.  If we can get hopefully an excess of 10 to 20 additional people from that grouping, then we can start the individual voir dire this afternoon, for cause voir dire.

MR. HOCHMAN:  Sounds like a good plan, Your Honor.

MR. FOX:  Yes, Your Honor.

THE COURT:  Okay.  So we will see you about 12:15 or so.

MR. HOCHMAN:  Thank you, Your Honor.

MR. DIAMANTATOS:  Thank you, Your Honor.

THE COURT:  Thank you.

(A recess was taken at 11:38 a.m.)

THE CLERK:  Recalling item No. 1, CR 16-66(A), USA versus Leroy D. Baca.

Counsel, state your appearances please.

MR. FOX:  Good afternoon, Your Honor.

Brandon Fox and Eddie Jauregui on behalf of the United States.  David Dahle, special agent with the FBI, is also at counsel table.

THE COURT:  Good afternoon.

MR. HOCHMAN:  Good afternoon, Your Honor.

Nathan Hochman along with Tinos Diamantatos and Brianna Adams on behalf of Leroy Baca who is present.

MR. DIAMANTATOS:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

Okay.  What I'd like to do is take up at least initially those people who you agree have a legitimate hardship, and if we can identify those people, we can go ahead and excuse them.  Then I'd like to focus on maybe the next 10 or 20 people that you believe may say they have a hardship but we think they probably should be asked to serve.  I'll start bringing those people in and see if we can make some progress and then excuse them for lunch and see how many other people we have left.

So is there a group of people that both sides agree that ought to be excused?

MR. HOCHMAN:  Yes, Your Honor.  There's 25.  I can read the numbers into the record if you'd like or read the numbers to yourself.  Or if you want me to -- I wrote it down by handwriting, Your Honor.  However is easiest to get you the information.

THE COURT:  Okay.  Do you guys want to see the list, or do you want to have it read?  Why don't you just read them off.

MR. HOCHMAN:  Sure.  All right.  I'll try to read them as slowly as possible.  61597, 94787, 00429, 48215, 87777, 03457, 53126, 11723, 96384, 64235, 25491, 05585, 91505, 87850, 46308, 83576, 98076, 17153, 30113, 27030, 10931, 44763, 24090,

06034, 65714.  That's 25, Your Honor.

THE COURT:  Okay.

THE CLERK:  Can you read the second one again?

MR. HOCHMAN:  From the bottom?

THE CLERK:  From the top.

MR. HOCHMAN:  94787.

THE CLERK:  Thank you.

THE COURT:  All right.  Any objection to those people being excused?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No objection, Your Honor.

THE COURT:  All right.  Now, according to my rough math, that leaves us roughly 75 or so.  Now, are there 10 or 20 of those people who both sides may feel probably should be asked to serve?

MR. FOX:  Your Honor, we came up with a list of six that, by their forms alone, show that they don't have a hardship.  We did not have a chance to go over those names with Mr. Hochman.  I can read them to you, and we can write down their numbers if you'd like.

THE COURT:  Okay.  If you can give me the numbers of those individuals.

MR. FOX:  08202, 47209, 27725.

THE COURT:  27725?

MR. FOX:  Yes, Your Honor.

THE COURT:  Okay.

MR. FOX:  31320, 90443, and 87089.

THE COURT:  Okay.

MR. HOCHMAN:  They would be on our list, Your Honor.  We just did two piles, out and then everybody else.  We can start with those.  That would be fine.

THE COURT:  Okay.  Then why don't we start with those people -- why don't -- we'll start with those, and why don't we keep another 20 people here.  Then tell the other 50 or so they're free to go to lunch and to be back here at 1:30.

MR. FOX:  That's fine, Your Honor.

MR. HOCHMAN:  That's fine, Your Honor.

THE COURT:  Okay.

MR. FOX:  Your Honor, may I confer with counsel?

THE COURT:  Yes.  Now, I'm going to ask that anybody who is not employed by the court or affiliated, an agent, I'm going to have you step outside during this part of the process.  Normally what we'd be doing is we'd have each of these jurors here at sidebar.  What we're going to do is turn the entire courtroom into a sidebar.  So unless you're a party or employed by the court, I'm going to ask that you step outside.  Once we start the formal jury selection, we'll open the courtroom back up.

MR. DIAMANTATOS:  Your Honor, with the Court's permission, the gentleman in the front seat is Nick Frontera.

**UNITED STATES DISTRICT COURT**

He's an associate at our law firm.

THE COURT:  That's fine.

I need a copy of the hardship questionnaire for these first six.

MR. FOX:  Your Honor, are you saying you want the ones that are filled out?

THE COURT:  Yes.

MR. FOX:  It might be easier, instead of your clerk sorting through them, we give you our copy and somebody can make a copy of that.

THE COURT:  That would be fine.

MR. DIAMANTATOS:  Your Honor, so we can start pulling the additional forms, is the Court aware of the additional 20 that will be brought up?

THE COURT:  We will be in just a moment.

MR. DIAMANTATOS:  Thank you.

MR. FOX:  Your Honor, our paralegal left the courtroom.  Would it be okay if we bring her back here if we need something additional during this process?

THE COURT:  That would be fine.

MR. FOX:  Thank you.

THE COURT:  We'll give you the numbers of the jurors that will be called in addition to the six or so that you named.  163, 841 --

MR. HOCHMAN:  I'm sorry, Your Honor.  Are you

doing all five last numbers?

THE COURT: No. 00163, 00841, 01265, 02998, 06394, 07997, 09462, 09613, 11274, 12101, 12367, 12542, 12965, 14220, 16388, 16570, 17179, 18060, 21280.

Before I forget, which I'm likely to do, I'm going to go ahead and put on the record the findings for why I'm using juror numbers in this case.

The criminal conspiracy in which the defendant is alleged to have participated involve multiple high ranking law enforcement officers. Based on his former position as the Sheriff of Los Angeles County, jurors may believe that the defendant is likely to have present connections to law enforcement officers with the unique capacity to access private information -- their private information.

Jurors have expressed safety concerns in two related co-conspirator cases that involve substantially the same facts. The defendant is alleged to have interfered with the judicial process and witnesses by overseeing Los Angeles County Sheriff's Department's decisions to hide a federal informant, disobey a federal writ for testimony, tamper with witnesses, and intimidate federal officers so as to obstruct a Federal Grand Jury investigation.

While Mr. Baca is presumed innocent of these charges, the facts that others associated with Mr. Baca committed this obstruction have been found beyond a reasonable

**UNITED STATES DISTRICT COURT**

doubt by three separate juries.  This case has already attracted publicity, and the Court expects that it will be followed by the media, thereby enhancing the possibility that juror names will become public.

Such exposure could lead to potential intimidation and harassment as well as interference with the judicial process.  Using an anonymous jury will protect the defendant and allow him to receive a fair trial.  An anonymous jury will ensure that the jurors are not exposed to the litigation history of this case or other inadmissible evidence and will alleviate any juror concerns that their private information may be accessed.

Instructing the jury that an anonymous jury procedure is being utilized in order to protect jury privacy and to ensure a fair trial and that the reasons for jury unanimity had nothing to do with the guilt or innocence of the defendant will safeguard against potential prejudice that might otherwise result in the use of an anonymous jury procedure. Therefore, the Court finds there are adequate grounds to use an anonymous jury in this case.

One thing for your information, the two witness rooms, if you're going to have witnesses waiting in that witness room, the door to the witness room must be closed at all times because, when the door is open, they can hear everything that's going on here in the courtroom.  My

**UNITED STATES DISTRICT COURT**

preference would be to have witnesses either wait outside along the bench while they're waiting to testify or, if they're going to use the witness -- those witness rooms, we have to make sure that those doors are closed.

(The following proceedings were held in open court in the presence of the Prospective Juror 27725:)

THE COURT:  Sir, if you could take that first seat.

PROSPECTIVE JUROR 27725:  Should I sit down?

THE COURT:  Sure.  Thank you.

Could I have your juror number, please.

PROSPECTIVE JUROR 27725:  27725.

THE COURT:  All right.  Is there any reason why you believe you couldn't be with us for the next two weeks?

PROSPECTIVE JUROR 27725:  It's more an issue of being impartial.  I don't believe I can.

THE COURT:  Okay.  Well, we'll take that up a little later.  Okay.  But in terms of actually having time, you think you could be here for the next two weeks?

PROSPECTIVE JUROR 27725:  Yes.  I believe so.

THE COURT:  Okay.  Thank you very much.  I'm going to have you -- the clerk will just escort you out.  You can go to lunch.  Why don't you come back to Courtroom 9B at 1:30.

///

(The following proceedings were held in open court in the presence of the Prospective Juror 08202:)

THE COURT:  Good afternoon.  Could I have the last five digits of your jury number, please.

PROSPECTIVE JUROR 08202:  08202.

THE COURT:  Is there any reason why you think you couldn't be with us for the next two weeks or so?

PROSPECTIVE JUROR 08202:  Well, I don't have a plane ticket purchased, but I have a planned family Christmas in Michigan that's supposed to leave on the 20th.

THE COURT:  How long is your trip going to be?

PROSPECTIVE JUROR 08202:  From the 20th through the 27th.

THE COURT:  I'm going to excuse you right now to go to lunch.  If you could come back at 1:30, and we'll let you know.

PROSPECTIVE JUROR 08202:  Okay.

THE COURT:  Have you purchased your tickets yet?

PROSPECTIVE JUROR 08202:  Not yet.

THE COURT:  Okay.  We'll let you know.

(The following proceedings were held in open court in the presence of the Prospective Juror 87089:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR 87089:  Good afternoon, Your Honor.

THE COURT: Could I have the last five digits of your juror number?

PROSPECTIVE JUROR 87089: The last five. It's 87089.

THE COURT: Okay. Is there any reason why you couldn't be with us for the next two weeks?

PROSPECTIVE JUROR 87089: Yes, Your Honor. With all due respect and to be fair to the defendant, I wouldn't -- I'm biased against him. I personally have a nephew who is incarcerated, and I think that would affect my decision.

THE COURT: Okay. But in terms of the time availability --

PROSPECTIVE JUROR 87089: Time availability, I'm available.

THE COURT: Okay. We'll take that up this afternoon.

PROSPECTIVE JUROR 87089: Sure.

THE COURT: Okay. So thank you very much. I'm going to excuse you now to go to lunch. If you could be back in Courtroom 9B at 1:30.

PROSPECTIVE JUROR 87089: Okay. Thank you, Your Honor.

THE COURT: Thank you. Please don't discuss anything that we've talked about with your fellow jurors.

PROSPECTIVE JUROR 87089: No, sir.

**UNITED STATES DISTRICT COURT**

THE COURT:  All right.  Thank you.

(The following proceedings were held in open court in the presence of the Prospective Juror 31320:)

THE COURT:  Good afternoon.  Could you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR 31320:  31320.

THE COURT:  Is there any reason why you couldn't be with us for the next couple weeks?

PROSPECTIVE JUROR 31320:  Yes.  I am the --

THE COURT:  The only thing -- go ahead.  Let me let you go ahead.

PROSPECTIVE JUROR 31320:  I'm the accounting officer for a small independent agency of the State.  I'm the only accounting officer.  I'm responsible for payroll, payroll taxes, and we're in the middle of the budget process.

THE COURT:  Okay.  What's the name of the agency?

PROSPECTIVE JUROR 31320:  It's the 31st District Agricultural Association.

THE COURT:  And you work for the State of California?

PROSPECTIVE JUROR 31320:  Yes.  It is a State agency.

THE COURT:  Okay.  And how many employees do you have?

PROSPECTIVE JUROR 31320:  We have roughly 30

UNITED STATES DISTRICT COURT

full-time civil service.

THE COURT:  What are your normal hours?

PROSPECTIVE JUROR 31320:  8:00 to 5:00.

THE COURT:  Monday through Friday?

PROSPECTIVE JUROR 31320:  Yes.

THE COURT:  You work in the accounting department?

PROSPECTIVE JUROR 31320:  I am the accounting department.

THE COURT:  You are the accounting department. Are you the only person that works in accounting?

PROSPECTIVE JUROR 31320:  Yes.

THE COURT:  Where is the office located?

PROSPECTIVE JUROR 31320:  Do you want the city?

THE COURT:  Yes.

PROSPECTIVE JUROR 31320:  It's in Ventura.

THE COURT:  When you're not there, do they have somebody that can come in?

PROSPECTIVE JUROR 31320:  And perform my duties?

THE COURT:  Uh-huh.

PROSPECTIVE JUROR 31320:  No.

THE COURT:  What happens when you go on vacation? They do give you a vacation.

PROSPECTIVE JUROR 31320:  I go between payrolls.

THE COURT:  You're in the midst of budgeting?

42

PROSPECTIVE JUROR 31320:  Yes.

THE COURT:  Okay.  And how long is that period?

PROSPECTIVE JUROR 31320:  It's supposed to be done hopefully in the next couple weeks.

THE COURT:  All right.  Thank you very much. We'll let you know this afternoon.  I'm going to excuse you to go to lunch.  If you could be back in Courtroom 9B at 1:30.

MR. FOX:  Your Honor, may I have a moment with counsel?

THE COURT:  Yes.  Sir, if you could step out for one second.  Thank you.

MR. FOX:  Your Honor, the parties have agreed, with your permission, to strike that last juror, 31320, for hardship based on her answers.

THE COURT:  Okay.  So everybody is in agreement that she can be excused?

MR. HOCHMAN:  That's correct, Your Honor.

MR. FOX:  Yes, Your Honor.

(The following proceedings were held in open court in the presence of the Prospective Juror 90443:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR 90443:  Good afternoon.

THE COURT:  Would you give us the last five digits of your juror badge number, please.

PROSPECTIVE JUROR 90443:  90443.

UNITED STATES DISTRICT COURT

THE COURT:  Okay.  I understand that you work for a small medical group.

PROSPECTIVE JUROR 90443:  Yes.

THE COURT:  What do you do for them?

PROSPECTIVE JUROR 90443:  I'm a physician's assistant.

THE COURT:  Are you working full time?

PROSPECTIVE JUROR 90443:  Yeah.

THE COURT:  What are your normal hours?

PROSPECTIVE JUROR 90443:  I work 5:30 p.m. to about 3:00 or 4:00 a.m., and I do that anywhere from 12 to 15 times a month.  And then I also work as a -- I work in an internal medicine doctor's office every Tuesday, Thursday from about 12:00 to 5:00 p.m.

THE COURT:  Okay.  The first job --

PROSPECTIVE JUROR 90443:  Yes.

THE COURT:  -- starts at 5:30 in the evening and goes until when?

PROSPECTIVE JUROR 90443:  I'm scheduled until 3:00 a.m.

THE COURT:  Okay.

PROSPECTIVE JUROR 90443:  However, sometimes being in the emergency room can be until 4:00.

THE COURT:  Okay.  And then what days of the week do you work from 5:30 in the morning until --

UNITED STATES DISTRICT COURT

PROSPECTIVE JUROR 90443:  I'm sorry.  5:30 p.m.

THE COURT:  5:30 p.m. until 2:00 or 3:00 in the morning?

PROSPECTIVE JUROR 90443:  It's all variable depending on the schedule.  Our schedule is usually out a month and a half in advance where we put off requests to get time off if there are any.  Generally I'll work three to four times a week scattered about; so it's hard to say.

THE COURT:  Okay.

PROSPECTIVE JUROR 90443:  But I always work Tuesday and Thursday from 12:00 to 5:00 with my other job as an internal medicine physician's assistant.  Sorry.  It's a little confusing.

THE COURT:  I'm sorry.  What are the hours when you do that?

PROSPECTIVE JUROR 90443:  12:00 p.m. until 5:00 p.m.

THE COURT:  And you're working in a particular office at that time?

PROSPECTIVE JUROR 90443:  Yeah.  I work for a doctor in Simi Valley, Ventura County.

THE COURT:  And that's Thursdays --

PROSPECTIVE JUROR 90443:  And Tuesdays.

THE COURT:  Okay.  Are you married?

PROSPECTIVE JUROR 90443:  I am.

THE COURT:  Any children?

PROSPECTIVE JUROR 90443:  One.

THE COURT:  What does your wife do?

PROSPECTIVE JUROR 90443:  Stay-at-home mom.
Accountant by trade.

THE COURT:  How old is your child?

PROSPECTIVE JUROR 90443:  Year and a half.

THE COURT:  Do you know what your schedule is
now?

PROSPECTIVE JUROR 90443:  I do.

THE COURT:  Okay.  What is that?

PROSPECTIVE JUROR 90443:  I work tonight, but I
also -- I can look at my phone.  I believe I have the next
three days off, and then I work Friday and -- should I just
pull it out?

THE COURT:  Sure.

PROSPECTIVE JUROR 90443:  So I work Tuesday at
Dr. Dean's, Thursday also.  Then I work Friday at Allied
Emergency Physicians that I wrote on the paper, Saturday,
Sunday.  And I work the 13th and the 15th and then the 18th and
the 20th.

THE COURT:  13th, 15th, 18th, and 20th?

PROSPECTIVE JUROR 90443:  Yes.

THE COURT:  Where is that -- is that the office
located in Simi Valley?

PROSPECTIVE JUROR 90443:  I work for the emergency department, Sycamore Drive off the 118 Freeway.

THE COURT:  Okay.  I'm sorry.  Where do you live?

PROSPECTIVE JUROR 90443:  Yes.  I live in Camarillo in Santa Rosa Valley.  It's about 16 miles from work.

THE COURT:  Does your employer that you work for on Tuesdays and Thursdays, do they reimburse you for jury service?

PROSPECTIVE JUROR 90443:  I looked through the handbook that they gave me, and I didn't see anything indicating that.

THE COURT:  Okay.  Can you -- over the lunch hour, can you check with them and see if they reimburse you?

PROSPECTIVE JUROR 90443:  I had in October a jury summons to Ventura County Court, and they asked me to check, and I checked.  I checked with my physician's assistant supervisor who said that they don't.  I don't know if that's like -- I didn't see a picture or anything like that.  I just kind of took her word for it.

THE COURT:  Okay.  How many employees does the doctor have?

PROSPECTIVE JUROR 90443:  There's only three full-time employees, and the rest are part-time which makes up -- every part-time worker has another full-time job.  So it's a little bit difficult to arrange, especially nightshift.

UNITED STATES DISTRICT COURT

It's like pulling teeth.  There's three full-time PA's, and I think we roughly make up like maybe 60 percent of all of the shifts.  I'm the full-time night physician's assistant.

THE COURT:  It's the Allied Emergency Physicians who you work for on Tuesdays and Thursdays; correct?

PROSPECTIVE JUROR 90443:  I work for a Dr. Royal Dean on Tuesdays and Thursdays, and it's just an independent practice, private practice.  And then the Allied Emergency Physician Group I work for full time, and the dates that I gave you were on the Allied Emergency Physicians.

THE COURT:  Okay.  We're going to excuse you for lunch.  If you could come back to court in 9B at 1:30, we'll let you know.

Dr. Royal Dean:  Thank you, Your Honor.

THE COURT:  All right.  Thank you.

(The following proceedings were held in open court in the presence of the Prospective Juror 47209:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR 47209:  Hello.

THE COURT:  If you could give us the last five digits of your juror badge number, please.

PROSPECTIVE JUROR 47209:  47209.

THE COURT:  What do you do for a living?

PROSPECTIVE JUROR 47209:  I work for a litigation support company, and I'm in the sales department.

THE COURT:  Do you know if your employer reimburses you for jury service?

PROSPECTIVE JUROR 47209:  They don't.

THE COURT:  I'm sorry.  Are you married?

PROSPECTIVE JUROR 47209:  No.

THE COURT:  Do you live by yourself or --

PROSPECTIVE JUROR 47209:  I do.

THE COURT:  Is there any reason why you couldn't be with us for the next two weeks?

PROSPECTIVE JUROR 47209:  Well, this is a busy time of year for our business just in client appreciation because it's the holidays.  That's when I get out and see a lot of my clients.  You know, could I make other arrangements?  Probably.  But if I had a choice, I would say I'd like to work.

THE COURT:  Okay.  Okay.  Well, every day we're going to start at 8:00, and we'll be done at 1:30 in the afternoon.

PROSPECTIVE JUROR 47209:  That's not bad.

THE COURT:  So come hell or high water, 1:30 we're done.

PROSPECTIVE JUROR 47209:  Yeah.

THE COURT:  I'm going to excuse you for lunch.  If you could come back to Courtroom 9B at 1:30.

PROSPECTIVE JUROR 47209:  1:30.  Okay.

THE COURT:  Thank you very much.

(The following proceedings were held in open court out of the presence of the jury:)

THE COURT:  I'm inclined to leave her in the pool.

MR. HOCHMAN:  Yes, Your Honor.  We agree.

MR. FOX:  Yes, Your Honor.  We do have follow-up questions, but we can wait until later to ask her those questions.

And we didn't discuss 90443 based on his schedule.  I think we would like that juror stricken for hardship.  It seems like that is an incredibly difficult schedule.  Given where it's located, overnights, it would be hard for him to pay attention during the day.

MR. HOCHMAN:  We would agree with that as well, Your Honor.

THE COURT:  All right.  Juror No. 8202 has a plan for the 20th through the 27th which I guess he's going back to Michigan.

MR. FOX:  Your Honor, as we were going through the questionnaires, there were a number of jurors who have tickets either on the 22nd or the 23rd.  It's my understanding the Court may be -- the Court might be on holiday on the 23rd possibly.

THE COURT:  Anybody who has the 23rd through 26th or 27th I think we can probably accommodate because, if they

**UNITED STATES DISTRICT COURT**

got the case, we could excuse the jury and just have them come back after the holiday.

MR. FOX:  That's great.  If we end on the 22nd at 1:30, we don't know when their planes are.  We'll find that out for all of these other people.  My only issue with 82 -- 08202 is, if he hasn't bought his plane ticket yet, I wonder if he can wait until the 22nd to leave.

THE COURT:  We can certainly ask him when he comes back.  I think the others, certainly I'll have some questions to ask.  But it looks as though they can serve at least from the time standpoint.

Now, I guess what I'd like -- maybe it will save us some time, maybe it won't.  Of this next 20, if there are people who are saying they have a plane ticket from, say, the 22nd or 23rd, I'd like to have them in because I think we can probably accommodate those people, and that may speed the process up a little bit.  So if you want to look through those next 20 for any of those people, maybe we can prioritize those.

MR. HOCHMAN:  Your Honor, all 20 of them answered "no" for their reason being a prepaid vacation.

THE COURT:  Okay.  We've got another five here; so let's bring them in.  Actually, I have a student who wants to study for exams.

(The following proceedings were held in open court in the presence of the Prospective Juror 00163:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR 00163:  Hi.

THE COURT:  Can I get the last five digits of your badge number?

PROSPECTIVE JUROR 00163:  00163.

THE COURT:  If you'll just give me a minute.

MR. FOX:  Your Honor, would it be helpful if we provided you with this?

THE COURT:  I guess so.  Why don't we make a copy of this, and then we'll be right back with you.

PROSPECTIVE JUROR 00163:  Okay.

(A pause in the proceedings.)

THE COURT:  Are you married?

PROSPECTIVE JUROR 00163:  I'm a widow.

THE COURT:  Okay.  What do you do for a living?

PROSPECTIVE JUROR 00163:  I'm an insurance collector at OBM Medical Center.

THE COURT:  How many people reside in your household?

PROSPECTIVE JUROR 00163:  Three.

THE COURT:  Okay.  And that's you --

PROSPECTIVE JUROR 00163:  That's myself, my daughter, and my son.

THE COURT:  How old are your children?

PROSPECTIVE JUROR 00163:  My daughter is 23; my

**UNITED STATES DISTRICT COURT**

52

son is 34.  But he has MS; so he lives with me.  But I'm not supporting him.  He's on his own, but he lives with me.

THE COURT:  Okay.  Does your daughter work?

PROSPECTIVE JUROR 00163:  Yes.  She works.

THE COURT:  Is she working full-time?

PROSPECTIVE JUROR 00163:  Part-time.

THE COURT:  Do the children contribute to your household expenses?

PROSPECTIVE JUROR 00163:  Well, my son doesn't, but my daughter, she buys her own clothes and her own -- helping her out.

THE COURT:  Okay.  What are your normal hours?

PROSPECTIVE JUROR 00163:  8:00 to 4:30.

THE COURT:  Is that Monday through Friday?

PROSPECTIVE JUROR 00163:  Yes.  Monday through Friday.

THE COURT:  Does your employer reimburse you for jury service?

PROSPECTIVE JUROR 00163:  For five days.

THE COURT:  Okay.  If I can see counsel at sidebar for a moment.

(The following proceedings were held at sidebar:)

THE COURT:  I'm inclined to excuse her unless somebody wants to keep her.

MR. HOCHMAN:  No.  We'll agree to excuse her.

MR. FOX:  That's fine, Your Honor.

THE COURT:  Okay.

(The following proceedings were held in open court in the presence of the Prospective Juror 00163:)

THE COURT:  We will excuse you.  You can return to the jury room on the first floor.  You can tell them you have been excused.

PROSPECTIVE JUROR 00163:  Okay.  Thank you.

THE COURT:  Thank you.

(The following proceedings were held in open court in the presence of the Prospective Juror 00841:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR 00841:  Good afternoon.

THE COURT:  Could you give us the last five digits of your badge number, please.

PROSPECTIVE JUROR 00841:  00841.

THE COURT:  Okay.  Are you married?

PROSPECTIVE JUROR 00841:  No.

THE COURT:  Are there any additional people you're supporting in your household?

PROSPECTIVE JUROR 00841:  My mother.

THE COURT:  What do you do for a living?

PROSPECTIVE JUROR 00841:  I just started a job working as an executive assistant.

THE COURT:  Who do you work for?

UNITED STATES DISTRICT COURT

PROSPECTIVE JUROR 00841:  Ultraviolet Devices, Inc.

THE COURT:  Do you know what they do?

PROSPECTIVE JUROR 00841:  They make ultraviolet devices.

THE COURT:  How many employees do they have?

PROSPECTIVE JUROR 00841:  45.

THE COURT:  I'm sorry?

PROSPECTIVE JUROR 00841:  45.

THE COURT:  Okay.  Do you know if they pay for jury service?

PROSPECTIVE JUROR 00841:  They do not.

THE COURT:  Prior to working for them, what did you do?

PROSPECTIVE JUROR 00841:  I was unemployed for a year.

THE COURT:  All right.  If I could see counsel at sidebar, please.

(The following proceedings were held at sidebar:)

THE COURT:  All right.  I'm inclined to excuse her unless you have a different view.

MR. HOCHMAN:  We would agree with that, Your Honor.

THE COURT:  All right.  If Mr. Baca wants to join us up here, that's fine.  It's up to you.

**UNITED STATES DISTRICT COURT**

MR. HOCHMAN:  On this one I can approve it, Your Honor.

(The following proceedings were held in open court in the presence of the Prospective Juror 00841:)

THE COURT:  All right.  You can return to the jury assembly room on the first floor and tell them you've been excused.

PROSPECTIVE JUROR 00841:  Okay.

(The following proceedings were held in open court in the presence of the Prospective Juror 01265:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR 01265:  Hi.

THE COURT:  What do you do for a living?

PROSPECTIVE JUROR 01265:  I work for the Auto Club in the Emergency Road Service.

THE COURT:  You're that guy I always call when my battery won't turn over?

PROSPECTIVE JUROR 01265:  Yes.  One of them.

THE COURT:  Are you married?

PROSPECTIVE JUROR 01265:  No.

THE COURT:  Okay.  Anybody else residing in your household?

PROSPECTIVE JUROR 01265:  No.  Just myself.

THE COURT:  Does your employer reimburse you for jury service?

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR 01265:  Just for five days.

THE COURT:  Do you work full time?

PROSPECTIVE JUROR 01265:  Yes.

THE COURT:  What are your hours?

PROSPECTIVE JUROR 01265:  I work 6:15 in the morning until 3:00 in the afternoon.

THE COURT:  Okay.  And do you work during the week?  Weekends?

PROSPECTIVE JUROR 01265:  I work during the week, Monday through Friday.

THE COURT:  Okay.  And it would be a hardship for you to be with us for about a week if you weren't being paid?

PROSPECTIVE JUROR 01265:  It wouldn't be the end of the world, no.  But if I'm not working, I have no income.

THE COURT:  How long have you worked for the auto vehicle --

PROSPECTIVE JUROR 01265:  12 years.

THE COURT:  Is that your only source of income?

PROSPECTIVE JUROR 01265:  Yes.

THE COURT:  If I could see counsel at sidebar.

(The following proceedings were held at sidebar:)

THE COURT:  Okay.  I'm inclined to excuse him unless --

MR. HOCHMAN:  On this one, Your Honor, because he's not supporting anybody else and it would be basically --

while we understand it's definitely a hardship, I think we would respectfully object to this one.

THE COURT:  Okay.  What's the Government's feeling?

MR. FOX:  I think, based on this record, that he should be kept until the afternoon, Your Honor, and ask further questions.

(The following proceedings were held in open court in the presence of Prospective Juror 01265:)

THE COURT:  Okay.  All right, sir.  I'm going to excuse you to go to lunch.  If you could come back at 1:30 into Courtroom 9B.

PROSPECTIVE JUROR 01265:  Which courtroom?

THE COURT:  The one right next door, 9B.

PROSPECTIVE JUROR 01265:  Back to 9B?

THE COURT:  Uh-huh.

THE CLERK:  It's already 1:30.

THE COURT:  How about 2:30?

PROSPECTIVE JUROR 01265:  Okay.

THE COURT:  Okay.  Thank you.

(The following proceedings were held in open court in the presence of the Prospective Juror 02998:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR 02998:  Good afternoon.

THE COURT:  Are you working?

UNITED STATES DISTRICT COURT

PROSPECTIVE JUROR 02998:  I work two hours a day. I do lunch at a school.

THE COURT:  Okay.  And what's the name of the school?

PROSPECTIVE JUROR 02998:  Leapwood Elementary in Carson, California.

THE COURT:  Okay.  And how many days a week do you work?

PROSPECTIVE JUROR 02998:  I work five days.

THE COURT:  Okay.

PROSPECTIVE JUROR 02998:  Two hours a day.

THE COURT:  Okay.  And it's during the lunch hour?

PROSPECTIVE JUROR 02998:  It's during the lunch hour only.  It's two hours.

THE COURT:  Do you have any other people residing in your household?

PROSPECTIVE JUROR 02998:  No.

THE COURT:  Okay.  Do you have any other sources of income other than --

PROSPECTIVE JUROR 02998:  My Social Security. That's not much.  So that right there subsidizes for that.

THE COURT:  Okay.  How long have you been working at the school?

PROSPECTIVE JUROR 02998:  Since 2003.

**UNITED STATES DISTRICT COURT**

THE COURT:  Okay.  Does the school pay for your jury service?

PROSPECTIVE JUROR 02998:  You know, there's a lot of stuff that the school does not pay for by you being only a couple hours.  So that I really don't know.  I don't think so because I get no vacation.  They just started giving us three hours for sick time -- I mean 24 hours of sick time.  Other than that, I don't get paid for nothing, holidays or nothing.

THE COURT:  Okay.  Gentlemen and ladies.

(The following proceedings were held at sidebar:)

THE COURT:  Okay.  So who wants to be the grinch?

MR. FOX:  I'm not coldhearted, Your Honor.  We can agree to excuse her for cause.

MR. HOCHMAN:  May I have one more second?

THE COURT:  Sure.

MR. HOCHMAN:  May I consult?

We will agree to excuse, Your Honor.

THE COURT:  Okay.

MR. FOX:  We didn't put on the record either of the last three juror numbers.  This one is 02998.  I don't have on me right now what the last juror number was.

THE COURT:  I'll get it for you.

MR. HOCHMAN:  Your Honor, I haven't eaten since --

THE COURT:  We'll break shortly.

**UNITED STATES DISTRICT COURT**

MR. HOCHMAN:  Thank you.

(The following proceedings were held in open court in the presence of the Prospective Juror 02998:)

THE COURT:  Can you give me the last five digits of your badge number.

PROSPECTIVE JUROR 02998:  02998.

THE COURT:  Okay.  All right.  You can return to the jury assembly room on the first floor and tell them you've been excused.  Okay.

PROSPECTIVE JUROR 02998:  Thank you.

THE COURT:  Thank you.

(The following proceedings were held in open court out of the presence of the prospective jurors:)

THE COURT:  And the number of the juror previous to this who you dragged -- that you're going to drag back here was 01265.

MR. DIAMANTATOS:  Thank you, Your Honor.

THE COURT:  The guy that helps start my car.

(The following proceedings were held in open court in the presence of the Prospective Juror 06394:)

THE COURT:  Sir, if you'd give us the last five digits of your badge number, please.

PROSPECTIVE JUROR 06394:  06394.

THE COURT:  What do you do for a living?

PROSPECTIVE JUROR 06394:  I'm a claims adjuster

UNITED STATES DISTRICT COURT

for the Screen Actors Guild.

THE COURT:  What are your normal hours?

PROSPECTIVE JUROR 06394:  6:00 o'clock to -- 6:00 to 2:00.  7.5 hours I work with a half hour lunch.

THE COURT:  Okay.  Is that starting in the morning?

PROSPECTIVE JUROR 06394:  Yes.

THE COURT:  6:00 a.m. to 2:00 p.m.

PROSPECTIVE JUROR 06394:  Uh-huh.

THE COURT:  Do you work Monday through Friday?

PROSPECTIVE JUROR 06394:  Yes.

THE COURT:  And how many people are in your household?

PROSPECTIVE JUROR 06394:  Three.

THE COURT:  You, your wife --

PROSPECTIVE JUROR 06394:  My wife and my mother-in-law.  My wife retired from the sheriff's department.

THE COURT:  Okay.  Is she receiving retirement from the sheriff's department?

PROSPECTIVE JUROR 06394:  Yeah.  She doesn't get Social Security, but she gets a small pension from -- I guess it's a pension.

THE COURT:  Okay.  And does your mother-in-law contribute to the household?

PROSPECTIVE JUROR 06394:  No.

THE COURT:  How long have you worked for the Screen Actors Guild?

PROSPECTIVE JUROR 06394:  Over 16 years.

THE COURT:  Do you know what percentage you're contributing to the household income?

PROSPECTIVE JUROR 06394:  Off the top of my head, about 70.

THE COURT:  Does your employer reimburse you for jury service?

PROSPECTIVE JUROR 06394:  Yes.  Up to ten days.

THE COURT:  Okay.  We expect that this case is going to last about ten days.

PROSPECTIVE JUROR 06394:  Including this one?

THE COURT:  Yeah.  Would you have any objection if I called your employer and asked them if they would extend that ten days for another week or so?

PROSPECTIVE JUROR 06394:  If they would pay me for it?

THE COURT:  Uh-huh.

PROSPECTIVE JUROR 06394:  I guess that would be all right if I would get paid for it.

THE COURT:  Okay.  I'm going to ask you to go ahead and go to lunch and come back here at 2:30.  If you could provide the clerk with the phone number of somebody in H.R. we could call the Screen Actors Guild.  We'll call them and see if

they can pay you for a few extra days of jury service.

PROSPECTIVE JUROR 06394:  Okay.  So who do I give that number to?

THE COURT:  You're going to give it to this gentleman right here if you have a name of somebody we can talk to.

PROSPECTIVE JUROR 06394:  Sure.

THE COURT:  Okay.  We've got about 14 people that have not been to lunch.  I'll send them to lunch, have them back at 2:30.  We've got another 50 or so that have had their lunch and came back at 1:30.  So why don't I give you guys a break, and why don't we resume at 2:15.

MR. HOCHMAN:  Thank you, Your Honor.

MR. FOX:  Thank you, Your Honor.

MR. DIAMANTATOS:  Thank you, Judge -- Your Honor.

(A lunch recess was taken until

2:15 p.m. of the same day.)

CERTIFICATE OF OFFICIAL REPORTER

I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED THIS  14TH  DAY OF AUGUST, 2017.


/S/ MIRANDA ALGORRI

MIRANDA ALGORRI, CSR NO. 12743, CRR
FEDERAL OFFICIAL COURT REPORTER

**UNITED STATES DISTRICT COURT**