UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE PERCY ANDERSON, U.S. DISTRICT JUDGE


UNITED STATES OF AMERICA,           )
                                    )
                  Plaintiff,        )
                                    )
       vs.                          )   Case No. CR 16-00066(A) PA
                                    )
LEROY D. BACA,                      )    PAGES 65 to 160
                                    )    VOLUME 2
                  Defendant.        )
_____)


REPORTER'S TRANSCRIPT OF
TRIAL DAY 1
MONDAY, DECEMBER 5, 2016
2:19 P.M.
LOS ANGELES, CALIFORNIA


_____

MYRA L. PONCE, CSR 11544, CSR, RDR, CRR
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, ROOM 4455
LOS ANGELES, CALIFORNIA 90012
MYRAPONCE@SBCGLOBAL.NET


UNITED STATES DISTRICT COURT

66

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

SANDRA R. BROWN
United States Attorney
BY:  BRANDON FOX
BY:  EDDIE A. JAUREGUI
     Assistant United States Attorneys
United States Courthouse
312 North Spring Street
Los Angeles, California 90012

**FOR THE DEFENDANT:**

MORGAN, LEWIS & BOCKIUS, LLP
BY:  NATHAN J. HOCHMAN
BY:  BRIANNA ABRAMS
     Attorneys at Law
The Water Garden
1601 Cloverfield Boulevard
Suite 2050 North
Santa Monica, California 90404

MORGAN, LEWIS & BOCKIUS, LLP
BY:  TINOS DIAMANTATOS
     Attorney at Law
77 West Wacker Drive
Chicago, Illinois 60601

**UNITED STATES DISTRICT COURT**

67

# I N D E X

**MONDAY, DECEMBER 5, 2016; VOLUME 2**

## Chronological Index of Witnesses

Witnesses:                                                           Page

(None)

**UNITED STATES DISTRICT COURT**

68

**EXHIBITS**


**MONDAY, DECEMBER 5, 2016; VOLUME 2**


| Exhibit | For ID | In EVD |
|---|---|---|

(None)

**MONDAY, DECEMBER 5, 2016; 2:19 P.M.**

**LOS ANGELES, CALIFORNIA**

---

(Out of the presence of the prospective jurors:)

THE COURT:  The record should reflect that both counsel and the defendant are present.

I have a suggestion.  We now roughly have 55 to 57 people that are time-qualified.  And I have gone through the questionnaires and tried to pull out those that have vacation plans starting on about the 23rd.  And some of them run through the 28th, some of them run through to the 2nd of January.

My suggestion is that we maybe have these people come in, see who we want to accommodate, if any, and then start doing for cause -- excuse the other people that have hardships and let them go, start taking the for-cause questioning of time-qualified jurors.

Sometime around 4:00 o'clock, I think we'll have a pretty good sense of how many of those 54 or so are going to be eligible to serve.  If we need more jurors, then I would have the jury commissioner bring down a new panel, and we can bring down up to 100 people or 70 or whatever we think the number is. I assume we'll get a third of those people that can say "I can serve."

We add those to the for cause, and we can probably get a jury selected.  So that's -- that's sort of my

suggestion.

MR. HOCHMAN:  That sounds fine, Your Honor. Obviously until we get into the for-cause round, we don't know how many will be left.  But we certainly can assemble these additional -- how many, if I might ask, do you have a -- of the ones --

THE COURT:  Okay.  There's not that many. There's -- I think there's seven or eight --

MR. HOCHMAN:  That's fine, Your Honor.  And then we'll just see if it works out.

THE COURT:  All right.  Let me give you roughly -- I want to see what date we want to cut this off on.

MR. FOX:  And, Your Honor, I did notice one also that probably doesn't fit your date range but actually may work.  There was somebody who had a Big Bear vacation scheduled December 16th through the 19th.  I think that's coming -- or I'm sorry, next week Friday to Sunday.  So if we -- and the Court should still be able to make their vacation.

THE COURT:  Okay.  I -- if you can point that one out because I don't --

MR. FOX:  I will find it.

THE COURT:  Okay.  All right.  So I have one that -- I have one that's -- their dates are 12/23 to January 2nd.  And I have one from December 23rd to December 31st.  Most -- here's one for the 20th through the 30th.  They have the 20th, and

**UNITED STATES DISTRICT COURT**

then they have the 23rd through the 30th.  I guess the question is whether or not you want to go that -- that second week through the 30th.  In fact, all of these are pretty much --

MR. FOX:  Your Honor, the jury -- juror number for the Big Bear one is 98029.  And I can write it with that form if it's easier.

THE COURT:  They're looking for it so --

MR. FOX:  And my suggestion, Your Honor, on the dates that you were referring to is that we have a cutoff of anything that is December 22nd on.  That way, we can have that week up until Thursday of court time.

THE COURT:  Okay.  Now, do you want to take off that -- and do you want, also, to include that second week -- in other words, on December 27th through the 30th?

MR. FOX:  I think that we can have those jurors sit.  We could have them at least be questioned, follow-up questions for cause and peremptory challenges.

MR. HOCHMAN:  I would agree, Your Honor.

THE COURT:  Okay.  All right.  So why don't we just take these people -- I have the Big Bear person now.  Why don't we just throw all these people into the for cause, and we'll just start the for-cause challenges with these people.

In the meantime -- well, why don't we have these people in.  And I'll tell them that we're going to -- we're going to try to make some accommodation for their vacation

plans.  Okay?  And then I'm going to distribute to you the criminal case questionnaire.

MR. HOCHMAN:  Your Honor, may I briefly comment or ask you a question about the criminal case questionnaire?

THE COURT:  That's fine.

MR. HOCHMAN:  In paragraph 17, Your Honor, I was wondering if there was a chance that -- that could be a two-part question because you talk about Defendant Leroy Baca being charged with the crimes and pleading not guilty.  And then you ask:  Is there anything that you have seen, heard, or read about the charges or any member of the LASD that you would find difficult to put aside or that would affect your ability to be a fair and impartial juror?

The two-part would be -- ask the first question, which is:  Have you read anything -- was it read, seen -- seen, heard, or read about any of the charges or any member of the LASD?  That would be sort of Question 1.  If so, would you find it difficult to put aside, or would that affect your ability to be a fair and impartial juror?  Because, obviously, if they haven't read anything about it, then there's nothing to put aside.  If they have, then the question is -- sort of the second question is whether or not they can put it aside.

And I think the same sort of analysis would be for Question 19:  Is there anything you may have experienced, seen, heard, or read about Mr. Baca, the L.A. County jails, and then

we define them, or former members of the sheriff's department that you will find difficult to put aside or that would affect your ability to be fair or impartial?

I would just request that it be broken down into two questions. If they've ever experienced, seen, or read about that would be Question 1. And if so, are you able to put it, you know -- would you find it difficult to put aside, or would it affect your ability to be a fair and impartial juror? I think that would be my comment on this questionnaire, Your Honor.

THE COURT: What's the Government's view?

MR. FOX: Your Honor, we're fine with breaking apart Question 17.

I think Question 19, if you break it apart, it's just too general. Have they ever heard about the Los Angeles County jails? Have they ever heard about former members of the Los Angeles Sheriff's Department? Of course, anybody would have heard about these things.

So I think it is fine to tease out in No. 17 whether they've heard anything about the charges, even if they don't think that it would affect their ability to be fair. But if we're doing the same thing to 19, I don't think that it's going to lead us to any relevant facts or very few relevant facts.

And if the change instead is to say is there anything you may have experienced, heard, or read about

Mr. Baca and leave it at that, then I think that would give us the relevant information that we're looking for.

MR. HOCHMAN:  I think -- I think that's correct, Your Honor.  When you break it out, I think Mr. Baca -- and then we can actually, you know, sort of have that two-part question for Mr. Baca.  And then it can be a separate question that reads 19 the way it is now without Mr. Baca, just dealing with -- directly with the jails or former members of the L.A. County Sheriff's Department.

MR. FOX:  And I think that makes sense too, Your Honor.

THE COURT:  All right.  What do you want to say on 17?

MR. HOCHMAN:  Your Honor, what I would say in 17, first question would be -- the first two sentences -- three sentences, Your Honor, would stay the same, about Mr. Baca being the former Sheriff, the charges, and plead not guilty.

And then the -- it would be -- fourth sentence would say:  Is there anything that you have seen, heard, or read about the charges of any other member of the LASD -- I'm sorry.

Have you seen or read about the charges or any other member of the LASD?  If so, would you find it difficult -- you know, sort of be, I guess, Question 18 or 17A.  So we get an answer, yes or no, to 17.  Then 17A would be:  If so -- or just make it the new 18.  If so, would you find it difficult to

put -- put aside or that would affect your ability to be a fair and impartial -- put aside this information -- put aside this information, or would it affect your -- it's kind of a -- how do I put it?  Put aside this information -- or, I guess, would it affect your ability to be a fair and impartial juror?  Or/and.  Either -- I'm trying to deal with the English here, Your Honor.

MR. FOX:  Your Honor, when you've caught up to what Mr. Hochman has said, I have one suggestion as well, an edit of Mr. Hochman's edit.

The parts that he mentioned, the "heard or read about the charges or any other member" -- I think if we leave it as is, we risk the same issue that I was talking about in Question 19.  So I suggest that we use "heard or read about the charges against Mr. Baca or any" -- "or against any other member of the LASD."

They will hear in this case that, for example, Mickey Manzo, who we do expect to testify, would have been charged.  So I don't think that that's going to be prejudicial. I believe that Mr. Sexton is likely to testify as well --

THE COURT:  Okay.  Just a minute.

MR. FOX:  Thank you.

THE COURT:  Is there anything you have seen, read, or heard about the charges against Mr. Baca or --

MR. FOX:  Against -- excuse me.  Against any other

member of the LASD.

THE COURT: All right. We'll see -- I'll go ahead and play with these. Let's go ahead and bring in these seven or eight people.

MR. HOCHMAN: Your Honor, if you're bringing in the December 23rd to the 30th people, I don't know if you've identified for us the numbers of those people. So if we could sort of pull out their questionnaire.

THE COURT: Yeah. I'll do that as soon as I get the copies back.

MR. HOCHMAN: All right. Thank you.

THE COURT: All right. The number of the person who has a vacation at Big Bear for the 16th to the 19th, 98029. 38377 has a vacation from the 23rd through January 2nd. 52455, December 23rd through December 31st. 89697, December 20th and December 23rd through the 30th. And 24122 from December 25th through January 1st. And 2 -- 51614, December 23rd through December 29th.

MR. HOCHMAN: I'm sorry, Your Honor. That last one is 251614?

THE COURT: It is 51614.

MR. HOCHMAN: Thank you, Your Honor.

THE COURT: I have another person who is scheduled to leave from the 18th through the 27th but who may be able to delay their departure. And that is 07997.

MR. FOX:  Your Honor, we identified two others that we think -- well, one falls, I think, under the same category potentially, and the other one we didn't see a reason why the person filled out the forms claiming a hardship.  Do you want me to give you those numbers, or should we just ignore them for now?

THE COURT:  No.  Give me the numbers.

MR. FOX:  One is 73042.  They list a vacation around the same times we're talking about, December 22nd to January 2nd.  He says or she says that -- unsure about how many days does her employer pays for jury service.  So I think that's the only issue that we would have to tease out about that.

And the other one is 61694.  And it says not sure for how many days does your employer pay for jury service.  But the rest of the form, it shows no hardship.

THE COURT:  Okay.  Let's bring in 61694 and 73042.

Mr. Fox.

MR. FOX:  Yes.

THE COURT:  Do you have the questionnaire for 61694?

MR. FOX:  Yes.  It's --

THE COURT:  Can I see that?

MR. FOX:  Again, we have highlights on it.

THE COURT:  Okay.  Do you have 73042?

MR. FOX:  Yes.

**UNITED STATES DISTRICT COURT**

THE COURT:  Okay.  Let's bring in 07997.

(In open court in the presence of

Prospective Juror No. 07997:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR NO. 07997:  Good afternoon.

THE COURT:  I understand that you've had Christmas plans that may include going to Denver with your family.

PROSPECTIVE JUROR NO. 07997:  Yes.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 07997:  I missed Thanksgiving because I was on call for jury duty, so I couldn't meet everyone before.  So that's why I mentioned that.

THE COURT:  Okay.  Have you arrived at a date you're going to be traveling?

PROSPECTIVE JUROR NO. 07997:  I haven't booked my flight yet, but I usually book it around the 18th or 19th.  So that's why I wrote that I could be flexible for a little bit later if I need to be.

THE COURT:  Okay.  Is it possible that you could book your flight going out either on the 21st, 22nd, 23rd?

PROSPECTIVE JUROR NO. 07997:  I think my nephew's birthday is on the 23rd.  So if possible, the 21st or 22nd would be ideal.

THE COURT:  Okay.  All right.  That's great.

And when would you be coming back?

PROSPECTIVE JUROR NO. 07997:  Before New Year's Eve.

THE COURT:  Okay.  Okay.  That's great.  If you can go back to Courtroom 9B.

PROSPECTIVE JUROR NO. 07997:  Okay.

THE COURT:  And then we're going to probably have some additional questions for you.

PROSPECTIVE JUROR NO. 07997:  Okay.

THE COURT:  Hold on one second.

PROSPECTIVE JUROR NO. 07997:  Okay.

THE COURT:  Yeah.  If you can go back to 9B.

PROSPECTIVE JUROR NO. 07997:  Okay.

THE COURT:  Thank you.

PROSPECTIVE JUROR NO. 07997:  Sure.

(Out of the presence of the prospective jurors:)

THE COURT:  All right.  Let's bring in 98029.

(In open court in the presence of

 Prospective Juror No. 98029:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR NO. 98029:  Good afternoon.

THE COURT:  I understand your badge number is 98029.

PROSPECTIVE JUROR NO. 98029:  That's correct.

THE COURT:  Okay.  And I understand you have a prepaid vacation until December 16th through the 19th at Big Bear.

PROSPECTIVE JUROR NO. 98029:  Correct.

**UNITED STATES DISTRICT COURT**

THE COURT:  Do you know what time you're leaving on the 16th?

PROSPECTIVE JUROR NO. 98029:  I believe at 9:00 a.m. or 10:00 a.m.

THE COURT:  Okay.  Is it possible to leave a little later, say, at 1:30 --

PROSPECTIVE JUROR NO. 98029:  No.

THE COURT:  -- on the 16th?

PROSPECTIVE JUROR NO. 98029:  I'm going with friends who already pre-booked it.

THE COURT:  Okay.  And you're returning on the 19th?

PROSPECTIVE JUROR NO. 98029:  Correct.

THE COURT:  Okay.  I'm going to ask if you would return to Courtroom 9B.

PROSPECTIVE JUROR NO. 98029:  Okay.

THE COURT:  Thank you.

(Out of the presence of the prospective jurors:)

THE COURT:  Okay.  Do you want to hang on to her?

MR. HOCHMAN:  No, Your Honor.  I just as soon not have to revise the Court's schedule to make sure that she can get on her -- on her trip out and not come back on time.

MR. FOX:  It's fine with the Government.  We're not really sure what the pre-booked shuttle service is.  But I do note that she has other issues that she did raise that I didn't notice when I was just looking at the dates.  She says her

**UNITED STATES DISTRICT COURT**

employer does not compensate.  So she seems to have a few issues that --

THE COURT:  Okay.  So --

MR. HOCHMAN:  We agree to strike, Your Honor.

THE COURT:  I'm sorry?

MR. HOCHMAN:  We would agree to strike.

THE COURT:  Okay.  So she can be excused.

And let's bring in the next person, which is 38377.

(In open court in the presence of

 Prospective Juror No. 38377:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR NO. 38377:  Good afternoon.

THE COURT:  Is your juror number 38377?

PROSPECTIVE JUROR NO. 38377:  Yes.

THE COURT:  I understand you have a paid vacation starting on December 23rd and running through January 2nd.

PROSPECTIVE JUROR NO. 38377:  That is correct.

THE COURT:  Okay.  Assuming we can accommodate your vacation schedule, can you be with us?

PROSPECTIVE JUROR NO. 38377:  Well, I do have a job interview the week of the 12th as well.

THE COURT:  Do you know when?

PROSPECTIVE JUROR NO. 38377:  I'm not sure yet.

THE COURT:  Okay.  Do you know what time the interview is?

PROSPECTIVE JUROR NO. 38377:  No.

THE COURT:  Okay.  Is it possible to schedule that interview sometime in the afternoon?

PROSPECTIVE JUROR NO. 38377:  I could try.

THE COURT:  Okay.  Because we'll be done by 1:30.

PROSPECTIVE JUROR NO. 38377:  Okay.

THE COURT:  Okay.  All right.  If you could go back to 9B.

PROSPECTIVE JUROR NO. 38377:  9B, okay.

THE COURT:  Uh-huh.  Thank you.

(Out of the presence of the prospective jurors:)

THE COURT:  All right.  Let's bring in 52455.

(In open court in the presence of
 Prospective Juror No. 52455:)

THE COURT:  Your badge number is 52455?

PROSPECTIVE JUROR NO. 52455:  Yes, sir.

THE COURT:  I understand that you have a vacation planned from December 23rd through December 31st.

PROSPECTIVE JUROR NO. 52455:  Yes, sir.

THE COURT:  Other than that period, if we can accommodate that period, can you be with us for the next couple of weeks?

PROSPECTIVE JUROR NO. 52455:  Yes, sir.

THE COURT:  Okay.  If you could return to the jury assembly -- if you could return to the Courtroom 9B.

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR NO. 52455:  Okay.

THE COURT:  Thank you.

(Out of the presence of the prospective jurors:)

THE COURT:  89697.

(In open court in the presence of

Prospective Juror No. 89697:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR NO. 89697:  Afternoon.

THE COURT:  Your badge number is 89697?

PROSPECTIVE JUROR NO. 89697:  Correct.

THE COURT:  And I understand you have a vacation that starts on the 20th of December.  It runs -- well, starting on December 20th.  And then you're going to be out from the -- December 23rd through December 30th?

PROSPECTIVE JUROR NO. 89697:  Oh, yeah.  I've got to work the holiday vacation, so we're off until the end of the year.

THE COURT:  What time are you -- do you start your vacation on the 20th?

PROSPECTIVE JUROR NO. 89697:  On the 20th, it's all day.  That's my anniversary.  So I'll be off that whole day.

THE COURT:  Okay.  Other than that time frame, can you be with us?

PROSPECTIVE JUROR NO. 89697:  Um, yes.  And then after that, I have, like, a -- like, the 23rd, I'm off from

**UNITED STATES DISTRICT COURT**

work until the end of the year.  So that's when I have that vacation planned so --

THE COURT:  Okay.  Thank you very much.  If you could return to Courtroom 9B.

PROSPECTIVE JUROR NO. 89697:  Okay.

(Out of the presence of the prospective jurors:)

MR. HOCHMAN:  Your Honor, do we address that one or --

THE COURT:  That's fine.  Go ahead.

MR. HOCHMAN:  Since I think that they -- at least, if the case isn't concluded by the 20th, presumably they'll deliberate for some period of time.  I just as soon not lose a juror and lose the entire day on the 20th, if the Court would recognize that vacation and allow her to have that day off.

So we would move to strike her, then, on that basis, Your Honor.

MR. FOX:  Your Honor, I'm very hopeful that we are done with this trial by the end of next week.  And if that's the case, they should have a few days to deliberate.  If they have to skip a day, so be it.

It will also put us in a position, if we keep her on this jury right now, we can always decide, if we have sufficient jurors, just not -- to just strike her at that point.  But I think it's prudent right now to keep her.

THE COURT:  Yeah, I'm inclined just to keep her for

now.

24122.

(In open court in the presence of
Prospective Juror No. 24122:)

THE COURT:  I understand you have a prepaid vacation from December 25th through January 1st?

PROSPECTIVE JUROR NO. 24122:  Yes.

THE COURT:  Okay.  And what do you do for a living?

PROSPECTIVE JUROR NO. 24122:  Senior copyrighter and freelance editor.

THE COURT:  Okay.  And are you working for an employer now?

PROSPECTIVE JUROR NO. 24122:  Yes.

THE COURT:  Okay.  And do you know how much jury service they pay for?

PROSPECTIVE JUROR NO. 24122:  Um, they said -- I just checked with them right now.  It's up to ten days.  But I do have to work at some point within my time being served, whether it's from home or, um -- anytime throughout the day if I can go into the office.

THE COURT:  Okay.  Are you married?

PROSPECTIVE JUROR NO. 24122:  Yes.

THE COURT:  And what does your husband do for a living?

PROSPECTIVE JUROR NO. 24122:  He's a graphic

designer, professor for college.

THE COURT:  Okay.  And any other members of your household?

PROSPECTIVE JUROR NO. 24122:  I have a son.

THE COURT:  How old is your son?

PROSPECTIVE JUROR NO. 24122:  9.

THE COURT:  If we can accommodate your vacation period, can you be with us for the next couple of weeks?

PROSPECTIVE JUROR NO. 24122:  I think so.  Yeah.

THE COURT:  All right.  I'm going to ask that you return to Courtroom 9B next door.

PROSPECTIVE JUROR NO. 24122:  Okay.

THE COURT:  Thank you.

PROSPECTIVE JUROR NO. 24122:  Thank you.

(Out of the presence of the prospective jurors:)

THE COURT:  51614.

(In open court in the presence of
 Prospective Juror No. 51614:)

THE COURT:  Hi.  I understand you have a prepaid vacation from December 23rd through December 29th?

PROSPECTIVE JUROR NO. 51614:  Yes.  Correct.

THE COURT:  And your badge number is 51614?

PROSPECTIVE JUROR NO. 51614:  Yes.

THE COURT:  Okay.  By whom are you employed?

PROSPECTIVE JUROR NO. 51614:  Wells Fargo.

**UNITED STATES DISTRICT COURT**

THE COURT: And what do you do for them?

PROSPECTIVE JUROR NO. 51614: I'm a lead teller.

THE COURT: And do you know how many days they pay for vacation?

PROSPECTIVE JUROR NO. 51614: No. Not sure.

THE COURT: Are you married?

PROSPECTIVE JUROR NO. 51614: No.

THE COURT: Is there anybody else residing in your household?

PROSPECTIVE JUROR NO. 51614: Yes.

THE COURT: How many people?

PROSPECTIVE JUROR NO. 51614: Uh, six.

THE COURT: Okay. Is there anyone else that's contributing to your household expenses?

PROSPECTIVE JUROR NO. 51614: Yes.

THE COURT: And what percentage do you provide?

PROSPECTIVE JUROR NO. 51614: Um, well, basically, just, like, the groceries and stuff.

MR. HOCHMAN: Your Honor, I can't hear.

PROSPECTIVE JUROR NO. 51614: Oh. Just, like, the groceries.

THE COURT: Okay. If we can accommodate your vacation plans, can you be with us for the next couple of weeks?

PROSPECTIVE JUROR NO. 51614: Uh, I don't think so.

THE COURT: Okay. What I'd like you to do is to check with your employer and find out how many days they pay for jury service.

PROSPECTIVE JUROR NO. 51614: Okay.

THE COURT: Can you do that this afternoon?

PROSPECTIVE JUROR NO. 51614: Um, yes.

THE COURT: Okay. Is there a -- which branch do you work out of?

PROSPECTIVE JUROR NO. 51614: The one in, um, La Habra, Orange County.

THE COURT: Is there an HR person at the branch that you work at?

PROSPECTIVE JUROR NO. 51614: Um, not at the branch, but we have our HR department.

THE COURT: Okay. Do you happen to have their phone number?

PROSPECTIVE JUROR NO. 51614: Yeah. I have HR's number.

THE COURT: Okay. What is that number?

PROSPECTIVE JUROR NO. 51614: Let me get it. Okay. Are you ready?

THE COURT: Uh-huh.

PROSPECTIVE JUROR NO. 51614: It's 1 (877) 479-3557.

THE COURT: (877) --

PROSPECTIVE JUROR NO. 51614: 479 --

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 51614:  -- 3557.

THE COURT:  Okay.  All right.  We'll give them a call and see how much time they reimburse you for jury service, if any.  And we will let you know.

PROSPECTIVE JUROR NO. 51614:  Okay.  Thank you.

THE COURT:  And if you could just return to the Courtroom 9B for now.

PROSPECTIVE JUROR NO. 51614:  Okay.  Thank you.

(Out of the presence of the prospective jurors:)

THE COURT:  All right.  We'll call Wells Fargo and see how many days they reimburse for jury service.

All right.  I'm going to take about, hopefully, five or ten minutes to make changes to the jury questionnaire.  And then we'll start having people come in to see if they have any responses to any of these questions.

You know, other than this interplay between 17 and 19, any other questions, comments?

MR. FOX:  Not from the Government.

MR. HOCHMAN:  Nothing additional, Your Honor.

THE COURT:  Okay.  All right.  So we'll go make some changes to 17 and 19, and then we'll come back, discuss them with you, and we will pass them out.

MR. HOCHMAN:  Thank you, Your Honor.

MR. DIAMANTATOS:  Thanks, Your Honor.

(Break taken.)

(Out of the presence of the prospective jurors:)

THE COURT:  Okay.  I've made a change to 17 and 19.  And the relevant portion of 17, is there anything that you have seen, heard, or read about the charges against Mr. Baca or against any other member of LASD?  And if they say "yes," then I'll ask them:  What have you heard?  And is there -- despite what you've heard, can you put that aside and be fair and impartial to both sides?

And we've done the same thing with 19.  Is there anything that you may have experienced, seen or heard or read about the allegations of abuse at the Los Angeles County jails committed by current or former members of LASD?

MR. HOCHMAN:  That's acceptable, Your Honor.  Thank you.

MR. FOX:  That's fine, Your Honor.  Thank you.

THE COURT:  Okay.  I'm going to have these questionnaires circulated to the prospective jurors.  I believe now we've got about 63 or so.  Let them read through this, and then we'll start bringing them in one at a time.

MR. FOX:  And, Your Honor, is it your plan that we will strike -- move to strike for cause as soon as we hear from the jurors?  Or you want to do that all at the end?

THE COURT:  I think maybe we'll do it at the end and see what they have.

Juror No. 73042 and 61694, I believe those people have been excused.

MR. HOCHMAN:  I'm sorry.  You believe --

THE COURT:  That they were excused earlier.

MR. HOCHMAN:  I see.

THE COURT:  Before, somebody had mentioned it.

MR. HOCHMAN:  I see.  Okay.

MR. FOX:  And, Your Honor, if I could make a suggestion.  If we find that one individual prospective juror that we questioned knows about the litigation history of the case, maybe it would be best to excuse them at that point because we don't want them to be interacting with --

THE COURT:  That's fine.  We can just ask for a sidebar, and we'll take it up.

We're probably going to have another 15 or 20 minutes before we're ready to bring people in.  And then at some point around 4:00 o'clock or 4:15, we need to make a decision as to how many people we want to have -- new jurors we want to have brought in tomorrow.  So you might be thinking about that.

I think this morning we had 150, and we got about a third of those people who were time-qualified.  And we can bring back another -- up to another 100 if need be.  I don't think we need quite that many.  Okay.

MR. FOX:  And, Your Honor, I was doing the math in

my head.  If we get to about 40 jurors that we questioned that have not been stricken for cause, that should be plenty.  And at that point, I think we can probably cut off and we don't have to question any remaining jurors.  Is that what you believe as well?

THE COURT:  Yeah.  I think the number -- my math is a little different.  I think the numbers -- if we can get -- we get 44, 45, I think we're -- we're in good shape.  Yeah, we could cut it off at that point.

(Pause in the proceedings.)

THE COURT:  Okay.  Pay attention to these jurors, juror numbers because ultimately this is not going to be the order in which they're going to be called.

(Pause in the proceedings.)

(In open court in the presence of

 Prospective Juror No. 06270:)

THE COURT:  Sir, if you could tell us the last five digits of your badge number, please.

PROSPECTIVE JUROR NO. 06270:  06270.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR NO. 06270:  Yes, sir.  Yes, sir.

THE COURT:  Do you have any "yes" or affirmative responses to any of those questions?

PROSPECTIVE JUROR NO. 06270:  Yes.

UNITED STATES DISTRICT COURT

93

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR NO. 06270:  Number 1, Number 3, 34, and that's it, Your Honor.

THE COURT:  Okay.  Why don't we start with No. 1.

PROSPECTIVE JUROR NO. 06270:  I got arrested.  And I had a felony, and I had it expunged from my record.  And it was for felony dissuading a witness.

THE COURT:  I'm sorry.  It was for what?

PROSPECTIVE JUROR NO. 06270:  Dissuading a witness.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 06270:  And I've had that since expunged from my record.

THE COURT:  When was that?

PROSPECTIVE JUROR NO. 06270:  '90 -- when did I get it expunged, or when was the offense?

THE COURT:  When was the offense?

PROSPECTIVE JUROR NO. 06270:  Like, '93.

THE COURT:  And was there an agency involved --

PROSPECTIVE JUROR NO. 06270:  Um --

THE COURT:  -- in investigating it?

PROSPECTIVE JUROR NO. 06270:  I did -- I did one year in L.A. County.

THE COURT:  Do you recall what police agency investigated that offense?

PROSPECTIVE JUROR NO. 06270:  Torrance.

UNITED STATES DISTRICT COURT

THE COURT:  I'm sorry?

PROSPECTIVE JUROR NO. 06270:  Torrance police station.

THE COURT:  Okay.  And when did you have that expunged?

PROSPECTIVE JUROR NO. 06270:  Maybe five years ago.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 06270:  I don't remember the exact date.

THE COURT:  Can you tell me generally what that offense involved?

PROSPECTIVE JUROR NO. 06270:  It was a -- it was kind of a domestic dispute, and I beat up my girlfriend -- or my girlfriend's ex-boyfriend.  And there was a Court Order for me to stay away.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 06270:  And she invited me over to the house, and I went ahead and went over there.  And then I got into it with the other guy.

THE COURT:  Okay.  Anything about the way that the case was handled that causes you to have concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR NO. 06270:  Yes.

THE COURT:  And what is that?

PROSPECTIVE JUROR NO. 06270:  That I broke the

UNITED STATES DISTRICT COURT

restraining order as well as she did, and the Court didn't take that into -- didn't take that into consideration.  And they sided with the woman.  And yeah, that just didn't work for me. But, you know, I did what I was supposed to do and took care of the things I was supposed to take care of and all that.

So -- but yeah, I don't think I can be -- and I did some time in the county jail.  I got beat up there.  I got this scar above my left eye from there.  And I'm going to carry this around with me for the rest of my life.  And -- yeah, so --

THE COURT:  Okay.  Which -- do you recall which jail facility you were --

PROSPECTIVE JUROR NO. 06270:  Twin Towers.  And this happened -- the injury happened on my way from Torrance to the county jail.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 06270:  And I don't even -- I don't know what happened with that either, so -- all I know is I'm gonna have this scar for the rest of my life.

THE COURT:  Okay.  Was that altercation with --

PROSPECTIVE JUROR NO. 06270:  Another inmate.

THE COURT:  Another inmate.

PROSPECTIVE JUROR NO. 06270:  I was sitting on the bench, and the guy walked by and just socked me up.

THE COURT:  So as a result of that experience you had back in '93, you think you'd have difficulty putting that

**UNITED STATES DISTRICT COURT**

aside, judging this case based solely on the evidence you hear here in court?

PROSPECTIVE JUROR NO. 06270:  Yes, sir.

THE COURT:  How about No. 3?

PROSPECTIVE JUROR NO. 06270:  Just pretty much the same that I explained to you on No. 1.

THE COURT:  Okay.  And I take it No. 34 relates to the same incident?

PROSPECTIVE JUROR NO. 06270:  Yes, sir.

THE COURT:  You understand that what happened to you back in '93 doesn't have a lot to do with the allegations in this case?

PROSPECTIVE JUROR NO. 06270:  It's a -- I just don't think I can make a fair judgment.

THE COURT:  Okay.  Have you ever served as a juror before?

PROSPECTIVE JUROR NO. 06270:  No, sir.

THE COURT:  All right.  Let me see counsel at sidebar.

(At sidebar:)

THE COURT:  All right.  I'm inclined to excuse him unless somebody wants some additional questions asked.

MR. HOCHMAN:  We would agree, Your Honor.

MR. FOX:  We agree.

THE COURT:  All right.

**UNITED STATES DISTRICT COURT**

(In open court in the presence of

Prospective Juror No. 06270:)

THE COURT:  All right.  Sir, we're going to excuse you, and I'm going to ask that you return to the jury assembly room on the first floor.

PROSPECTIVE JUROR NO. 06270:  Yes, sir.

THE COURT:  And let them know that you've been excused.

PROSPECTIVE JUROR NO. 06270:  Okay.  Do I keep this paper?

THE COURT:  No.  We'll keep it.  That's fine.

PROSPECTIVE JUROR NO. 06270:  Just leave it here.

THE COURT:  And I'd appreciate it if you don't discuss what we've talked about here.

PROSPECTIVE JUROR NO. 06270:  Yes, sir.

THE COURT:  Okay.  Thank you so much.

PROSPECTIVE JUROR NO. 06270:  Can I say one thing, Your Honor?

THE COURT:  Sure.

PROSPECTIVE JUROR NO. 06270:  I did get everything off my record, and I got the felony expunged.  And I can vote, and it's -- thank you for having me come to your court.

THE COURT:  Well, thank you very much.

PROSPECTIVE JUROR NO. 06270:  Have a good day, sir.

(In open court in the presence of

UNITED STATES DISTRICT COURT

Prospective Juror No. 01265:)

THE COURT:  The man from AAA.

PROSPECTIVE JUROR NO. 01265:  (No audible response.)

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR NO. 01265:  Yes.

MR. HOCHMAN:  Your Honor, could we identify the juror by number, please?

THE COURT:  Sir, could you read --

PROSPECTIVE JUROR NO. 01265:  Oh, sure.

THE COURT:  Read the juror number, please.

PROSPECTIVE JUROR NO. 01265:  01265.

THE COURT:  Do you have any "yes" responses to any of the questions on the criminal case questionnaire?

PROSPECTIVE JUROR NO. 01265:  Yes.

THE COURT:  Okay.  Could you tell me which ones?

PROSPECTIVE JUROR NO. 01265:  Number 1.  And that I've had a cousin that's been convicted of a crime and that he's in prison for the rest of his life.

THE COURT:  Okay.  What was the offense?

PROSPECTIVE JUROR NO. 01265:  It was rape.

THE COURT:  And when was that?

PROSPECTIVE JUROR NO. 01265:  Oh, this was about 15 years ago.

THE COURT:  And what jurisdiction was he in when he

committed that offense?

PROSPECTIVE JUROR NO. 01265:  It was not here.  It was in another state.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 01265:  In Idaho.

THE COURT:  Have you visited him or corresponded with him since he's been in prison?

PROSPECTIVE JUROR NO. 01265:  I have but not -- not recently.

THE COURT:  Anything about the way that his case was handled or that experience that causes you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR NO. 01265:  No.

THE COURT:  Do you have any other "yes" or affirmative responses to any of the other questions?

PROSPECTIVE JUROR NO. 01265:  Number 2.  And I've been the victim of a crime.  I've been held up.

THE COURT:  Okay.  When was that?

PROSPECTIVE JUROR NO. 01265:  That's been several years ago.  About 20 years.

THE COURT:  And was that here?

PROSPECTIVE JUROR NO. 01265:  Yes.  In Los Angeles.

THE COURT:  Was there a police agency involved?

PROSPECTIVE JUROR NO. 01265:  Uh, gosh.  Um, it's

been so long ago, I've even forgot.  Well, there was because my car was taken and I went to the police impound where they found it, and they never did find the person that did it.

THE COURT:  Okay.  Anything about that experience that causes you to have concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR NO. 01265:  No.

THE COURT:  Any other "yes" or affirmative responses to any of the other questions?

PROSPECTIVE JUROR NO. 01265:  Kind of 6 and 7 in that I think -- on the FBI portion and that -- what's been going on with the election.  And with Comey and different things, it's been kind of -- a lot of questions in my mind what goes on.

THE COURT:  Okay.  You understand, though, that what's going on with that election really has nothing to do with this case?

PROSPECTIVE JUROR NO. 01265:  Right.  Yes.

THE COURT:  And can you put aside concerns you've had about the head of the FBI and what he's done and decide this case based solely on the evidence you hear here in court?

PROSPECTIVE JUROR NO. 01265:  Yes.

THE COURT:  There may be FBI agents who may be witnesses in this case.  Can you put aside what you've heard or read about what went on in the elections and judge their

testimony in the same way that you would that of any other witness?

PROSPECTIVE JUROR NO. 01265:  Yes.

THE COURT:  Other than what you've read about, what went on with the elections, is there anything else that you've heard or read about -- Los Angeles County Sheriff's Department, the FBI, or any other law enforcement agency -- that concerns you?

PROSPECTIVE JUROR NO. 01265:  The only -- the only thing that concerns me, you know, is with everything that goes on with the crimes, you know, where people are being killed.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 01265:  And, you know, especially with the civil rights and -- and, you know, what's going on, it puts a big question in your mind, you know, because you're not there to know what goes on.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 01265:  But I've seen a lot of it lately.  That's kind of disturbing.

THE COURT:  Okay.  Do you think you can put that aside and be a fair and impartial juror, both as to the defense and the Government in this case?

PROSPECTIVE JUROR NO. 01265:  I should -- hopefully I can, yes.

THE COURT:  Okay.  Well, one of the things that we

need to make sure that jurors can do is that we need jurors who can leave whatever biases they have or whatever baggage they have, if they can leave that outside and judge this case based solely on the evidence that they hear and see here in court. That's extremely important, both as to the Government and as to the defense.

And we basically need a commitment from each juror that they're going to judge this case based solely on the evidence that they hear and see here in court. Can you do that?

PROSPECTIVE JUROR NO. 01265: Yes.

THE COURT: Any doubt in your mind?

PROSPECTIVE JUROR NO. 01265: At this time, no.

THE COURT: Okay. So you can look each of these lawyers in the eye and tell them that you're going to be fair and impartial and that you're going to judge this case based solely on the evidence that you hear here in the courtroom?

PROSPECTIVE JUROR NO. 01265: I hope that I can.

THE COURT: Okay. Well, if there's a doubt in your mind, we need to know that. If you can commit to doing that to both sides, we need to know that.

So can you commit to both sides that you're going to be fair and impartial and judge this case based solely on the evidence that you hear here in court?

PROSPECTIVE JUROR NO. 01265: I hope that I can.

And it's a little difficult, you know, with what you hear and not knowing all the facts, you know, of what I have heard.  But hopefully I can do that.

THE COURT:  Okay.  Well, the jury's going to decide what the facts are in this case --

PROSPECTIVE JUROR NO. 01265:  Right.

THE COURT:  -- from listening, from all of the evidence.  And, you know, we need a commitment from each juror that beyond -- that goes beyond what they hope they can do; that they are committed to being fair, impartial, that they are committed to relying solely on the evidence that they hear here in court in deciding the facts in this case.

So, you know, if you need to think about it a little bit, that's fine.  And if you can commit, that's what we need.  And if you can't, if there's too many doubts in your mind, we just simply need to know that.

So can you commit to deciding this case based solely on the evidence that you hear in court?

PROSPECTIVE JUROR NO. 01265:  Yes.  With the evidence that's presented, yes.

THE COURT:  Okay.  And you're going to put aside these other things that you heard and read about and decide this case based solely on the evidence that is presented here in this courtroom?

PROSPECTIVE JUROR NO. 01265:  Yes.

**UNITED STATES DISTRICT COURT**

THE COURT:  Now, do you have any "yes" or affirmative responses to any of the other questions?

PROSPECTIVE JUROR NO. 01265:  I think I'm okay with the rest of it.

THE COURT:  Okay.  So you've looked through the entire questionnaire?

PROSPECTIVE JUROR NO. 01265:  Yes.

THE COURT:  And you have no additional affirmative "yes" responses to any of those questions?

PROSPECTIVE JUROR NO. 01265:  No.  Just the ones that I had.

THE COURT:  Let me see counsel at sidebar.

(At sidebar:)

THE COURT:  Okay.  Any additional questions for this juror?

MR. FOX:  Your Honor, I think it might be prudent to ask every juror, independently of whether they pull it out of their questions, Question No. 17 just to make sure that there's nothing that might bleed in this case or anything they know about outside.

THE COURT:  I'm sorry.  You want me to ask each juror have they read 17?

MR. FOX:  Well, I would ask them this question even if they don't respond to it.  I know they've read it.  I think this is the most important one for ensuring that there's no

UNITED STATES DISTRICT COURT

prejudicial information.

THE COURT:  Okay.

MR. DIAMANTATOS:  It just highlights that.

MR. FOX:  I'm saying -- if the defendant doesn't want this, then the defendant doesn't want it.

MR. HOCHMAN:  If they have -- the dilemma, Your Honor, is they haven't heard anything.  I don't want to highlight the fact that there's stuff out there that they -- they're not supposed to read.  But especially, it highlights the fact that there's stuff out there that they may surreptitiously read.  So I'm -- it's --

MR. DIAMANTATOS:  It's sufficient, Your Honor, to ask them if they have read each and every question.  If they have an affirmative "yes," they indicate that.  I don't think that -- putting emphasis on one particular question might start to create an issue in their mind.

MR. HOCHMAN:  And this is the dilemma.  I just assume that it highlights the fact that there's media out there.  And hopefully these folks are reading these questions and see the import.  Obviously, we don't think we should go through each and every question.

MR. FOX:  If the defense doesn't want it to be read, then the defense doesn't want it to be read.  That's fine with us.

THE COURT:  Any additional questions?

UNITED STATES DISTRICT COURT

MR. FOX:  No.

THE COURT:  Okay.

(In open court in the presence of

Prospective Juror No. 01265:)

THE COURT:  All right.  Sir, thank you very much. You're going to return to the courtroom next door.

PROSPECTIVE JUROR NO. 01265:  Okay.  That way?  That way?

THE COURT:  Go back through this way.

(In open court in the presence of

Prospective Juror No. 01367:)

THE COURT:  Good afternoon.  Could you give us your badge number, please?

PROSPECTIVE JUROR NO. 01367:  The whole thing?

THE COURT:  Last five would be fine.

PROSPECTIVE JUROR NO. 01367:  Last five is 01367.

THE COURT:  Have you had a chance to review each and every question in the criminal case questionnaire?

PROSPECTIVE JUROR NO. 01367:  Yes.  Yes.

THE COURT:  Do you have any "yes" or affirmative answers to any of those questions?

PROSPECTIVE JUROR NO. 01367:  Yes.

THE COURT:  Which ones?

PROSPECTIVE JUROR NO. 01367:  Um, first and second one.  Second one, I've been burglarized before.  And first one,

my son was arrested; although, charges were eventually dropped for breaking into his girlfriend's house.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 01367:  And questions about -- I think I've given money to Fraternity Order of Police but not in several years.

THE COURT:  Which question is that?

PROSPECTIVE JUROR NO. 01367:  That was Question No. 11.

And I have -- I think I would be in favor of some prison reform, rehabilitation in particular.

THE COURT:  Okay.  And which question are you --

PROSPECTIVE JUROR NO. 01367:  That's No. -- No. 21.

And is there more?  More pages.

That's it.

THE COURT:  Okay.  Why don't we start with No. 1.

PROSPECTIVE JUROR NO. 01367:  Uh-huh.

THE COURT:  When was your son arrested?

PROSPECTIVE JUROR NO. 01367:  Um, it was 2013, I think, or 2014.

THE COURT:  Okay.  Do you recall what police agency was involved?

PROSPECTIVE JUROR NO. 01367:  It was L.A. Police.

THE COURT:  Okay.  LAPD?

PROSPECTIVE JUROR NO. 01367:  Yeah.

**UNITED STATES DISTRICT COURT**

108

THE COURT:  Was there anything about the way that his case was handled that causes you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR NO. 01367:  I don't think so. There were things about it that came up because he's not quite normal.  But, um, it ended up being handled fine.

THE COURT:  Okay.  And what about No. 2?

PROSPECTIVE JUROR NO. 01367:  Uh, I've been burglarized before and had my car broken into.

THE COURT:  Okay.  Any of that occur recently?

PROSPECTIVE JUROR NO. 01367:  Couple of years ago. Someone broke into my truck when I was at work in Orange County, and they stole a bunch of equipment belonging to my -- probably $15,000 worth of equipment belonging to my employer.  That's about it.

THE COURT:  Was -- what -- did you call the police?

PROSPECTIVE JUROR NO. 01367:  I went to the security, and we called the police.  They came out and investigated.  They -- and they took statements on what the equipment was, all of that.  And then -- but it was never to be recovered.

THE COURT:  Okay.  Do you have any concerns about the way that case was handled by the police?

PROSPECTIVE JUROR NO. 01367:  No.  I just tried to

look on eBay to see if I can find them.

THE COURT:  You said that -- and I think, in passing, that your son was -- did you say disabled or --

PROSPECTIVE JUROR NO. 01367:  He's on the autistic spectrum.  He was in a really bad state of mind.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 01367:  So he was held here in the holding area, and he ended up -- they had some hearings.  And they were postponed, postponed, postponed.  And finally what they really felt that he had was trespassing and didn't want to prosecute him on that.  So it was dismissed.  And he went to a facility in Colorado where he could get some treatment.

THE COURT:  Okay.  Take a look at No. 11.  Do you recall the last time you made a donation?

PROSPECTIVE JUROR NO. 01367:  I think it was in 2008 or '9 in Pasadena, when I lived in Pasadena still.

THE COURT:  There may be police officers or law enforcement agents that may be witnesses in this case.  Can you judge their testimony the same way you -- with that of any other witness?

PROSPECTIVE JUROR NO. 01367:  I think so.  Yes.

THE COURT:  Okay.  Any doubt in your mind?

PROSPECTIVE JUROR NO. 01367:  No.

THE COURT:  Okay.  And you said you might be in

favor of some sort of prison reform?

PROSPECTIVE JUROR NO. 01367:  Yeah.  There's an awful lot of people in prison for minor crimes and maybe nonviolent crimes.  I mean -- I don't know.  I don't follow it enough to know the details, but I think it would be good for a bit more prison, I guess, rehabilitation.  But like I said, I'm not an expert on that.

THE COURT:  Do you have any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR NO. 01367:  I did not see any.  No.  No.

THE COURT:  All right.  Thank you very much.

You can return to the courtroom next door.

PROSPECTIVE JUROR NO. 01367:  Okay.  Thank you.

THE COURT:  Thank you.

We'll take about a two-minute recess.

(Break taken.)

(In open court in the presence of

 Prospective Juror No. 01533:)

THE COURT:  All right.  Could you give us the last five digits to your badge number, please?

PROSPECTIVE JUROR NO. 01533:  01533.

THE COURT:  Have you had a chance to look at the criminal case questionnaire, answer each of the questions?

PROSPECTIVE JUROR NO. 01533:  Yes, I have.

**UNITED STATES DISTRICT COURT**

THE COURT: Do you have any "yes" or affirmative responses to any of those questions?

PROSPECTIVE JUROR NO. 01533: Yes.

THE COURT: Okay. Which ones?

PROSPECTIVE JUROR NO. 01533: Um, the one -- if there's anybody who has had any military or law enforcement. My husband's side in Florida, they -- all of them have served for decades and decades.

THE COURT: They've served in the military?

PROSPECTIVE JUROR NO. 01533: Yes.

THE COURT: Okay.

PROSPECTIVE JUROR NO. 01533: And my husband as well.

THE COURT: Okay. And --

PROSPECTIVE JUROR NO. 01533: And also one's in law enforcement.

THE COURT: I'm sorry?

PROSPECTIVE JUROR NO. 01533: One's in law enforcement in Florida as well.

THE COURT: Okay. And what is that person's job?

PROSPECTIVE JUROR NO. 01533: SWAT.

THE COURT: Okay. Anything about that -- those relationships that cause you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR NO. 01533: No.

THE COURT:  There may be law enforcement agents that may be witnesses in this case.  Are you going to be able to judge their testimony the same way that you would that of any other witness?

PROSPECTIVE JUROR NO. 01533:  Yes.

THE COURT:  Do you have any "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR NO. 01533:  Yes.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR NO. 01533:  The one that asked if I've heard anything -- have seen any information or news items on Lee Baca.  And -- is it Lee?  I hear -- Mr. Baca.  And yes, I just saw a flash of something in the South Pasadena *Patch*.  That's all.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 01533:  I didn't read it.  I don't know details or anything like that.

THE COURT:  Okay.  So you don't remember actually what you saw.

PROSPECTIVE JUROR NO. 01533:  No.

THE COURT:  Okay.  So I take it you could put that aside and judge this case based solely on the evidence that you hear --

PROSPECTIVE JUROR NO. 01533:  Yes.

THE COURT:  -- here in the courtroom?

PROSPECTIVE JUROR NO. 01533:  Uh-huh.

THE COURT:  Any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR NO. 01533:  No.

THE COURT:  Have you ever heard any discussions relating to that article that you saw in the newspaper?

PROSPECTIVE JUROR NO. 01533:  No.

THE COURT:  Okay.  All right.  Thank you very much.

You can return to the courtroom next door.

(In open court in the presence of
 Prospective Juror No. 04364:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR NO. 04364:  Hi.

THE COURT:  Could you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR NO. 04364:  04364.

THE COURT:  Have you had a chance to take a look at the criminal case questionnaire and read each and every question?

PROSPECTIVE JUROR NO. 04364:  Yes.

THE COURT:  Do you have any "yes" or affirmative responses to any of those questions?

PROSPECTIVE JUROR NO. 04364:  Yes.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR NO. 04364:  Um, 10, kind of 20,

and kind of -- those ones.

THE COURT:  If you could talk right into the microphone.

Now, you have No. 10.  Are there any others?

PROSPECTIVE JUROR NO. 04364:  20.

THE COURT:  20.  Okay.  Any others?

PROSPECTIVE JUROR NO. 04364:  No.

THE COURT:  Okay.  Let's take 10 first.

PROSPECTIVE JUROR NO. 04364:  To just, like, who?

THE COURT:  Yeah.  If there are any -- any family members.

PROSPECTIVE JUROR NO. 04364:  I'm married to, um, a federal officer.

THE COURT:  Okay.  And what does your husband do for a living?

PROSPECTIVE JUROR NO. 04364:  He works for the Customs and Border Protection.

THE COURT:  Okay.  And what does he do for them?

PROSPECTIVE JUROR NO. 04364:  Um, different jobs, like, paperwork.  And then he scans the containers at the harbor.  And then he, um -- he's worked at the border and the airport.

THE COURT:  Okay.  There may be other federal agents or law enforcement agents who may be witnesses in this case. Are you going to be able to put aside that your husband works

UNITED STATES DISTRICT COURT

for the Federal Government and decide their testimony and judge their credibility the same way that you would that of any other witness?

PROSPECTIVE JUROR NO. 04364:  Yes.

THE COURT:  Okay.  Anybody else in your family ever work for law enforcement?

PROSPECTIVE JUROR NO. 04364:  No.

THE COURT:  Okay.  And let's go to Question 20.

PROSPECTIVE JUROR NO. 04364:  So it's kind of the same.

THE COURT:  Same thing, you're talking about your husband?

PROSPECTIVE JUROR NO. 04364:  Yeah.

THE COURT:  Okay.  Any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR NO. 04364:  No.

THE COURT:  All right.  Thank you very much.

You can return to --

MR. HOCHMAN:  Your Honor, may I ask for one supplemental question?

THE COURT:  No.

MR. HOCHMAN:  Thank you.

THE COURT:  You can come to sidebar if you'd like.

MR. HOCHMAN:  I'm sorry.  May I ask -- request to approach sidebar?

THE COURT:  All right.  Just one second, please.

(At sidebar:)

THE COURT:  Okay.

MR. HOCHMAN:  By the way, I didn't mean I would ask the question.

THE COURT:  It's okay.

MR. HOCHMAN:  Can we find out if her husband's role is an investigative role of Customs as opposed to one of the people just at the airport?

THE COURT:  Okay.

MR. HOCHMAN:  Maybe I missed the -- on 20, prison reform question.  I didn't really understand what her answer was because it really isn't the same as 10.

THE COURT:  I suspect she was talking about criminal justice or criminal law, but I'll ask her.

MR. HOCHMAN:  Thank you very much.

Okay.  Thank you.

(In open court in the presence of Prospective Juror No. 04364:)

THE COURT:  Does your husband have any investigative responsibilities?  Do you know?

PROSPECTIVE JUROR NO. 04364:  I'm not sure.

THE COURT:  Okay.  Do you know if he's ever testified as a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 04364:  What?

THE COURT: Do you know if your husband has ever testified as a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 04364: I don't know.

THE COURT: Okay. When you answered "yes" to Question 20, what were you referring to?

PROSPECTIVE JUROR NO. 04364: Um, just, like, criminal justice --

THE COURT: Uh-huh.

PROSPECTIVE JUROR NO. 04364: -- knowledge.

THE COURT: Uh-huh. And were you thinking about your husband had training in criminal justice?

PROSPECTIVE JUROR NO. 04364: Yes.

THE COURT: Okay. And do you know if he received that training in connection with his current job, or was that prior to working for Customs Enforcement?

PROSPECTIVE JUROR NO. 04364: Um, both.

THE COURT: Okay. Do you have any specifics about the kind of training that he received?

PROSPECTIVE JUROR NO. 04364: I don't know.

THE COURT: Okay. Anything additional for this prospective juror?

MR. HOCHMAN: Not on the for-cause issues we're dealing with, Your Honor.

MR. FOX: No, Your Honor.

THE COURT: All right. You may return to the

courtroom next door.

(In open court in the presence of

Prospective Juror No. 07617:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR NO. 07617:  Good afternoon.

THE COURT:  Could you tell us the last five digits of your badge number, please?

PROSPECTIVE JUROR NO. 07617:  I haven't memorized it yet.  Last five is 07617.

THE COURT:  Have you had a chance to look at each and every question in the criminal case questionnaire?

PROSPECTIVE JUROR NO. 07617:  Yes, I have.

THE COURT:  And do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR NO. 07617:  Yes, I do.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR NO. 07617:  Number 2 -- do you want me to list all of them?

THE COURT:  I'm sorry?

PROSPECTIVE JUROR NO. 07617:  List all of them at once?

THE COURT:  We can -- why don't we just start with No. 2, and then we'll go on to the next one.

PROSPECTIVE JUROR NO. 07617:  Okay.

THE COURT:  Why don't you tell us about No. 2.

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR NO. 07617:  My father-in-law, he was killed, murdered in South America about six years ago by the Marxist rebels, FARC.

THE COURT:  Okay.  Anything about that experience that causes you to have concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR NO. 07617:  No.

THE COURT:  That was about --

PROSPECTIVE JUROR NO. 07617:  Going on six years now.

THE COURT:  Six years.

Any other "yes" or affirmative responses to any of the other questions?

PROSPECTIVE JUROR NO. 07617:  Yes.  Number 10.

THE COURT:  Can you tell us about that, please?

PROSPECTIVE JUROR NO. 07617:  Yes.  My former boss and close friend, now neighbor, Glen Lacota, he's a Lomita sheriff.  My brother-in-law, Al Otero, he's training with the L.A. Sheriff's Department currently.  And my uncle Lou, he's a -- just recently retired as an ICE director, director of ICE, former DEA.

THE COURT:  Okay.  The individual who worked as a Lomita sheriff, I think, what's the nature of your relationship?

PROSPECTIVE JUROR NO. 07617:  He was my former boss

when I worked for a company called Pioneer Entertainment.  He was the director, I was a manager, and we moved on to separate companies.  But he was a Reservist, I believe.  He's still a Reserve sheriff.

THE COURT:  Okay.  So he's a deputy, Reserve officer?

PROSPECTIVE JUROR NO. 07617:  Yes.

THE COURT:  Okay.  Anything about that relationship that causes you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR NO. 07617:  No, Your Honor.

THE COURT:  And I believe that you indicated that your brother-in-law is training in the sheriff's department; correct?

PROSPECTIVE JUROR NO. 07617:  Yes.  He's doing the drive-alongs, and he's training with the academy.

THE COURT:  And how long has he been in training?

PROSPECTIVE JUROR NO. 07617:  I believe for the last 12 months now.

THE COURT:  Have you talked to him about his training in LSD?

PROSPECTIVE JUROR NO. 07617:  Not recently, no.  I said, "How's it going?"

He said, "Tough."

THE COURT:  Anything about that relationship that

would cause you to have any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR NO. 07617:  No, Your Honor.

THE COURT:  And I believe there was another individual.

PROSPECTIVE JUROR NO. 07617:  Yes.  That would be my uncle Luis Alvarez.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 07617:  He was the director for ICE out of Chicago.

THE COURT:  Anything about that relationship that would cause you to have any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR NO. 07617:  No, Your Honor.

THE COURT:  There may be law enforcement agents who may be witnesses in this case.  Are you going to be able to judge their credibility the same way you would that of any other witness?

PROSPECTIVE JUROR NO. 07617:  Yes, I would.

THE COURT:  Any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR NO. 07617:  Yes, Your Honor. Number 12.  I believe that would coincide with 10, my brother-in-law, the ride-along.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 07617:  And Number 11, I believe we've contributed to Policeman's Ball a few times.

THE COURT:  Okay.  Anything else?

PROSPECTIVE JUROR NO. 07617:  Number 23, I belong to the Knights of Columbus, which is a Catholic gentleman's fraternity, fraternal organization for men.

THE COURT:  How long have you belonged with them?

PROSPECTIVE JUROR NO. 07617:  About 19 years now.

THE COURT:  Any other affirmative answers to any of the other questions?

PROSPECTIVE JUROR NO. 07617:  And the last one, No. 28.  I come from a family of federal employees.  My brother, my stepmother, my aunt, and myself worked for the Department of Defense agency called Contract Management Agency.

THE COURT:  Anything about your employment or their employment that causes you to have concerns about being fair and impartial to both sides?

PROSPECTIVE JUROR NO. 07617:  No, sir.

THE COURT:  Have we discussed now all the questions in which you've had an affirmative answer to?

PROSPECTIVE JUROR NO. 07617:  Yes.

THE COURT:  Anything additional?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  All right.  Sir, thank you very much.

**UNITED STATES DISTRICT COURT**

You can return to the courtroom next door.

(Out of the presence of the prospective jurors:)

MR. FOX:  Your Honor, I just noticed the time.

THE COURT:  Yes, I was going to mention that.  Okay. We can either go with the group we have, or I can have some additional jurors come in tomorrow morning.

MR. HOCHMAN:  Your Honor, can we have them come in, I guess keep them around, see what we get through here and, if we need them, you know, bring them through the whole process?

MR. FOX:  If I can suggest, Your Honor, if that's the plan, let's just have them come in the afternoon so they don't have to sit around all day.  Can we order them up for the afternoon?  Is that possible?

THE COURT:  I don't know.  We'll find out.

MR. FOX:  Okay.  Right now it appears that not a whole lot of the jurors have been exposed.  So I'm hopeful that this process, we won't need anybody else.

THE COURT:  That's my hope.  Why don't we find out if we can get them to come in.  I guess the other -- the other way to do it possibly is to -- we've probably got enough to keep us busy for the most -- a good portion of the day tomorrow.  If we can't bring them in in the afternoon, is to bring them in the following morning.

But why don't I make some calls, have somebody make some calls and see if we can have them come in tomorrow

afternoon.

MR. FOX:  Thank you, Your Honor.

MR. HOCHMAN:  Thank you, Your Honor.

THE COURT:  And there's a juror who, I believe, worked for the Screenwriters Guild.  And I made a call to them. And what they told me is that he gets five days for jury selection and then gets ten days for jury service, which probably will work.  And then they're going to call me if they can tack on some additional time.

But that may actually work out.  So I'm going to have him come back in.  Okay.

(In open court in the presence of
Prospective Juror No. 07997:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR NO. 07997:  Afternoon.

THE COURT:  Have you had a chance to look at and review and answer each of the questions in the criminal case questionnaire?

PROSPECTIVE JUROR NO. 07997:  Yes.  I answered the ones that I could answer "yes" to.

MR. HOCHMAN:  I apologize, Your Honor.  I didn't catch the --

THE COURT:  We need your badge number.

PROSPECTIVE JUROR NO. 07997:  Yes.  It is 203107997.

THE COURT:  Do you have any "yes" responses to any

UNITED STATES DISTRICT COURT

of those questions?

PROSPECTIVE JUROR NO. 07997:  I do.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR NO. 07997:  Number 4, have any -- you or any members of your immediate family or anyone close to you ever worked for the court system?

Um, one of my best friends in L.A., Maria Hall, works for Maria E. Hall Law in Beverly Hills.  And I also am friends with Amy Stork with Troy Slaten.  He's a criminal defense attorney who is on CNN Fox a lot talking about different trials.

THE COURT:  Okay.  So he's a commentator?

PROSPECTIVE JUROR NO. 07997:  Yes.  Like, shows like *Nancy Grace* or, you know, Bill O'Reilly, one of those shows giving his analysis.

THE COURT:  Okay.  One of the things that we've noticed is that this case has generated some media attention.  Are you going to be able to not listen to his program and other media coverage about this case if you're selected as a juror in this case?

PROSPECTIVE JUROR NO. 07997:  Yeah.

THE COURT:  And if you're instructed not to have any conversations with anyone about this case, are you going to be able to do that?

PROSPECTIVE JUROR NO. 07997:  Yeah.

**UNITED STATES DISTRICT COURT**

THE COURT:  Any other "yes" or affirmative responses to any of the questions?

PROSPECTIVE JUROR NO. 07997:  Yes.  Would you have any difficulty in applying the same credibility test to the testimony of a law enforcement officer that you would apply to any other witness?  I think just in reading the news sometimes, there's a lot of cover-ups, when colleagues cover up for other officers.  So I probably would be suspicious.

Um, and -- I mean, even recently there was a case where an African-American man went to visit his son and got locked up for 36 hours.  And I think he got a $600,000 settlement.  But then he wasn't allowed to ever go back to see his son.  While he was in the cell for 36 hours, he had to set off a fire alarm and hurt his hand so he could somehow get someone to pull him out.  But just, like, things that -- I mean, it's easy to answer, oh, it was a perfect storm.  It just happened.

THE COURT:  Okay.  Well, first of all, which question were you --

PROSPECTIVE JUROR NO. 07997:  Um, whether I would have difficulty in applying the same credibility.

THE COURT:  What's the number?

PROSPECTIVE JUROR NO. 07997:  Eight.

THE COURT:  Okay.  There are going to be law enforcement officers who are going to be witnesses in this

case.  They're going to be called by both sides.  And it's important that the jurors decide the credibility of various witnesses.  And what we want to have is jurors who have a clean slate.

PROSPECTIVE JUROR NO. 07997:  Uh-huh.

THE COURT:  And who can put aside feelings that they've accumulated over time or baggage that they may bring with them and decide this case based on the testimony of witnesses and on the -- based on the exhibits that are actually received into evidence and that everybody starts out with a clean slate.

So can you put aside whatever feelings you might have accumulated up until now and decide the credibility of these witnesses based on just what you hear here in this courtroom and on nothing else?

PROSPECTIVE JUROR NO. 07997:  I think I could.

THE COURT:  Okay.  Well, we need a commitment from each potential juror that they can decide this case based solely on the evidence that they hear here in this courtroom.

PROSPECTIVE JUROR NO. 07997:  Yes.

THE COURT:  And if there's a doubt in your mind, I need to know that.  If you think you can put aside any bias you might have either for or against a law enforcement officer and just decide this, make your own credibility determination based on the testimony that you hear here in court, that's fine.  If

**UNITED STATES DISTRICT COURT**

there's a doubt in your mind, we need to know that.

PROSPECTIVE JUROR NO. 07997:  I think I would go in suspicious.  But if I listen to the evidence and it convinced me otherwise, I think I can be objective.

I'm actually a researcher, so I write papers and publish and all that.  So I have to look at the evidence from both sides.  So I think that I would definitely have an open mind and be able to listen to what I heard.

THE COURT:  Okay.  Can you commit to both sides that you're going to put aside this suspicion you have about witnesses and the way they testify or law enforcement agents and the way that they testify and judge their credibility based on just what you hear here in the courtroom?

PROSPECTIVE JUROR NO. 07997:  Yes.  But I want to answer Questions 18 and 19 because I think there may be something else.

THE COURT:  Okay.  We'll get there.

PROSPECTIVE JUROR NO. 07997:  Okay.  Um, yes.  I think I could.

THE COURT:  Okay.  Well, my question is:  Can you commit to doing that?  And if you can, that's fine.  If you can't, we understand, but we just need an honest answer.

PROSPECTIVE JUROR NO. 07997:  So the other factor is that, um, I work in entertainment on health story lines on TV shows.  So I've been to the Twin Towers Correctional Facility.

**UNITED STATES DISTRICT COURT**

I went with Jared Leto on a tour to prepare for his role as the Joker on *Suicide Squad*.  So I spent time there.

The second time I went there was for *Grey's Anatomy*. You may have seen the story line where a woman gets pregnant and ends up in jail, and they have to treat her.

So I've actually heard a lot of this and how there used to be excessive force in that jail, how things have changed.  Now when there's gassing and all of that, they can't really crack down on the inmates because of the charges or the things that have happened in the past.

So I actually have been there twice and kind of heard from the officers or the commanders and things about some of the past.  So some of that I do know because I've spent time at that jail.  And I think that would be more worrisome to me than the suspicions about law enforcement because I think I could take testimony at face value and give it a fair shot.

THE COURT:  Can you commit to doing that?

PROSPECTIVE JUROR NO. 07997:  I think I can do that, but I definitely have some concern over the things that I heard when I visited the Twin Towers.

THE COURT:  Okay.  Well, right now I just want to focus on whether or not you can put aside any suspicions you might have of testimony that's given by a law enforcement officer and commit to judging that testimony without any suspicions.

PROSPECTIVE JUROR NO. 07997:  I think the law enforcement part I could.

THE COURT:  Okay.  Let's go to Question 18.

PROSPECTIVE JUROR NO. 07997:  Yeah.

THE COURT:  Do you have concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR NO. 07997:  So I'm a researcher. So, I mean, I studied the 1971 Stanford Prison Experiment on, like, psychological effects of perceived power.

So all of that kind of made me a little bit skeptical when I heard the case.  And then going to the prison and hearing the stories and some of the changes that have been made as a result of their removal of the previous person, um, it's -- the jail is such a despondent and, like, sad place. And to think that their situations could have been made even worse just kind of broke my heart.

THE COURT:  Okay.  So do I take it from that that you have doubts about your ability to be fair and impartial to both sides of this case?

PROSPECTIVE JUROR NO. 07997:  Probably.  Had I not been there and, like, heard it firsthand from the staff at the jail, I don't think I would feel like that.

THE COURT:  Okay.  May I see both sides at sidebar, please.

(At sidebar:)

THE COURT:  Unless someone has a different view, I'm inclined to excuse her.

MR. HOCHMAN:  Agreed, Your Honor.

MR. FOX:  Yes, Your Honor.

THE COURT:  Okay.

(In open court in the presence of

Prospective Juror No. 07997:)

THE COURT:  Okay.  We're going to excuse you.  And you can return to the jury assembly room on the first floor and tell them that you've been excused.

PROSPECTIVE JUROR NO. 07997:  Okay.

THE COURT:  Do you have all your belongings?

PROSPECTIVE JUROR NO. 07997:  I do.  Thank you for asking.

THE COURT:  So you can just go out this way and go down to the jury assembly room on the first floor.

PROSPECTIVE JUROR NO. 07997:  Okay.  Thank you.

(Out of the presence of the prospective jurors:)

THE COURT:  All right.  We cannot -- preferred practice is to bring jurors in in the morning.  So I think the question is, if we're going to have them in, how many do we want?  And we'll -- we can either have the magistrate judge do some time qualification if you want, have them take it over the lunch and then come back in the afternoon.

MR. HOCHMAN:  I think that makes sense, Your Honor.

I think as far as the number, 75 or 100, with the idea of getting about a third.  And I guess the magistrate can just sort of do the initial talk that the Court did this morning.

THE COURT:  I don't think -- I don't think that's possible.

MR. HOCHMAN:  Oh.  I was just going to say, I think probably, since they'll be the jurors, they need to do the whole presentation and the introductions like we did this morning with Your Honor.

THE COURT:  Well, I guess my preference would be if -- if it looks like by noon that we're going to have enough jurors, then I would just let those people go.

MR. HOCHMAN:  That makes sense.

THE COURT:  And if it looks as though we're going to need them, then we'll probably break at noon and I would do -- we'd make a presentation to them at noon and let these people go to lunch and -- and then integrate them, to the extent we needed them, in the afternoon.

MR. HOCHMAN:  That's acceptable.  It's fine, Your Honor.  Thank you.

MR. FOX:  My only concern is with the individual questioning of each juror, it is taking -- I think we got through seven in about an hour.  So I don't know that we'd get to anybody tomorrow if we bring them in.

So, you know, obviously it's about inconvenience for

UNITED STATES DISTRICT COURT

anybody that we're bringing in.  They don't have as much skin in the game as we do.  But I think if we call them in Thursday, if need be, see how tomorrow goes -- I'm sorry, Wednesday if need be, see how tomorrow goes, that we'd probably have a sufficient amount of things to do tomorrow.

MR. HOCHMAN:  Either way, Your Honor.  If somehow we -- either way, Your Honor.

THE COURT:  All right.  Let me find out if we can get a panel in Wednesday.

And let's bring in the next one.

(In open court in the presence of Prospective Juror No. 06394:)

THE COURT:  If you could give us your badge number again, please.

PROSPECTIVE JUROR NO. 06394:  Sure.  It's 203206394.

THE COURT:  Okay.  And I believe you work for the Screen Actors Guild.

PROSPECTIVE JUROR NO. 06394:  Yes.

THE COURT:  I did make a call.  And what they tell me is you get five days for jury selection.  So the fee stays -- until we get a jury, they're not going to count.  And then you have another ten.  In the event that you were selected for the jury, you'd have ten days starting over.

PROSPECTIVE JUROR NO. 06394:  That's fine.

THE COURT:  Okay.  So you think you can be with us?

UNITED STATES DISTRICT COURT

PROSPECTIVE JUROR NO. 06394:  Sure.

THE COURT:  Okay.  Have you had a chance to review and answer each of the questions in the criminal case questionnaire?

PROSPECTIVE JUROR NO. 06394:  Yeah.  Let me put my glasses on.

THE COURT:  Sure.

PROSPECTIVE JUROR NO. 06394:  Yeah.  There was, I think, three of them.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 06394:  Um, No. 1, I was arrested about 25, 30 years ago.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 06394:  It was -- let me see.  And No. -- I guess it would be 7 and 10.  10 is my -- my wife retired from the sheriff's, and that relates to No. 7.

THE COURT:  Okay.  Well, let's start with No. 1.

PROSPECTIVE JUROR NO. 06394:  Uh-huh.

THE COURT:  When did that arrest occur?

PROSPECTIVE JUROR NO. 06394:  I think it was in the early '80s.  I was breaking up a fight with a drunk girlfriend and her drunk brother.  And anyway, there was --

THE COURT:  No good deed goes unpunished.

PROSPECTIVE JUROR NO. 06394:  Yeah.  I mean, no punches were thrown, but --

THE COURT:  Okay.  And do you recall what agency that was involved in that, what police agency?

PROSPECTIVE JUROR NO. 06394:  I believe that was San Fernando Police Department.

THE COURT:  Anything about that experience that causes you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR NO. 06394:  Well, the thing is in that situation, I had told her brother to leave and just to get out of here.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 06394:  So I went back inside the house.  That's when she kind of went crazy on me.  And what she was taking out on her brother, took it out on me for taking his side.  So she said she was going to call the cops.  So I go, you know what?  I'm the one.  So I grabbed the phone.

So long story short, I had restrained her, never laid a hand on her except restraining her.  And she said that, uh -- that, you know, I was forcibly holding her down, which I was.  But then she mentioned something about how, you know, I was choking her, which all I did was just pinned her so she could stop, you know.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 06394:  And I waited for the cops because I wasn't worried about it.  But it didn't dawn on

me she worked for that department.  So it kind of -- that kind of ticked me off; that I took that in a way, you know, I -- live and learn, I should have just walked.

THE COURT:  Okay.  Can you put aside what happened some 25, 30 years ago and decide this case based solely on the evidence that you hear here in this courtroom?

PROSPECTIVE JUROR NO. 06394:  Yeah.  I think I could.

THE COURT:  Okay.  Any doubt in your mind?

PROSPECTIVE JUROR NO. 06394:  Excuse me?

THE COURT:  Any doubt in your mind?

PROSPECTIVE JUROR NO. 06394:  Any doubt in your mind --

THE COURT:  Yeah, that you can put that aside and judge this case based solely on what you hear here in the courtroom.

PROSPECTIVE JUROR NO. 06394:  That was -- I think so.  I think I can put that out.

THE COURT:  Okay.  Do you have any doubts about your ability just to put that aside and --

PROSPECTIVE JUROR NO. 06394:  No.

THE COURT:  Okay.  Let's talk about No. 7.

PROSPECTIVE JUROR NO. 06394:  Okay.

THE COURT:  Is there anything that you experienced or seen or heard or read about the FBI or Los Angeles County

Sheriff's Department or other law enforcement agencies that would prevent you from assessing the credibility of any employees of the FBI or sheriff's department or deputies who may testify in this case?

PROSPECTIVE JUROR NO. 06394:  Um, I would say not. But at the same time, like I said, um, when my wife worked at -- at the jail and she worked as a clerk, um, I would go pick her up.  And a lot of times I would wait for her, and you could hear -- you know, her friends would come by and say hi to me and stuff, and you could hear gossip and talk --

THE COURT:  Sure.

PROSPECTIVE JUROR NO. 06394:  -- you know, about things that were going on, which I made no mind because, you know, I had -- I don't know these people that well and who they're talking about and stuff.

THE COURT:  Right.

PROSPECTIVE JUROR NO. 06394:  But yeah, I heard stuff --

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 06394:  -- you know.

THE COURT:  You think you'd have difficulty putting aside anything that you may have heard?

PROSPECTIVE JUROR NO. 06394:  Yeah.  It depends on what it is.  I mean, on what I heard and --

THE COURT:  Okay.  Well, only you know what you've

**UNITED STATES DISTRICT COURT**

heard.

PROSPECTIVE JUROR NO. 06394:  Right.

THE COURT:  And what we're trying to do is to find jurors who can put aside any outside things that they've heard and decide this case based solely on the testimony of the witnesses who appeared here in this courtroom.

PROSPECTIVE JUROR NO. 06394:  I think so, Your Honor.  I could.

THE COURT:  Any doubt in your mind that you could do that?

PROSPECTIVE JUROR NO. 06394:  No.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 06394:  And I think the other one was Number --

THE COURT:  Number 10.

PROSPECTIVE JUROR NO. 06394:  Number 10.  And that would be my wife working at the sheriff's department.

THE COURT:  Okay.  What did she do at the sheriff's department?

PROSPECTIVE JUROR NO. 06394:  She worked clerical.

THE COURT:  Okay.  There may be other employees who work for the sheriff's department and may be witnesses --

PROSPECTIVE JUROR NO. 06394:  Uh-huh.

THE COURT:  -- in this case.  Are you going to be able to judge their credibility the same way you would that of

any other witness who testifies in this case?

PROSPECTIVE JUROR NO. 06394:  It would depend on the facts.

THE COURT:  Okay.  But you have an open mind? You're going to keep an open mind?

PROSPECTIVE JUROR NO. 06394:  Yeah.

THE COURT:  Okay.  You're going to be able to judge their credibility depending on how they testify here in court?

PROSPECTIVE JUROR NO. 06394:  Yes.

THE COURT:  Okay.  And you can put aside anything that you may have heard or seen while your wife was working at the sheriff's department and base your decision in this case based solely on the evidence that you hear here in the courtroom?

PROSPECTIVE JUROR NO. 06394:  Yeah.  I mean, I've never seen anything or -- like I say, you're just sitting there waiting and you hear people talking, walking by or sitting -- you know, but yeah.

THE COURT:  So you can put that aside and just judge this case based on the testimony of the witnesses?

PROSPECTIVE JUROR NO. 06394:  Sure.

THE COURT:  Any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR NO. 06394:  I don't think so.  I'm pretty sure I think -- those are the three that I wanted to

bring up.

THE COURT: Okay.

PROSPECTIVE JUROR NO. 06394: I think that's -- that should do it.

THE COURT: Okay. Any additional follow-up questions for this witness -- or this juror?

MR. HOCHMAN: Yes, Your Honor.

THE COURT: Okay. Let's go to sidebar.

(At sidebar:)

MR. HOCHMAN: We don't know a thing about what he heard. Was it the type of beatings or abuse or that sort of stuff? And then I'd like to know what -- he mentioned his wife worked at a jail. It would be useful to know which one.

THE COURT: Okay.

(In open court in the presence of Prospective Juror No. 06394:)

THE COURT: Do you know which jail your wife worked at?

PROSPECTIVE JUROR NO. 06394: My wife?

THE COURT: Uh-huh.

PROSPECTIVE JUROR NO. 06394: Yes. Right here at Twin Towers.

THE COURT: Okay. And she was a clerk?

PROSPECTIVE JUROR NO. 06394: Uh-huh.

THE COURT: Okay. So she was a -- she wasn't

sworn -- she wasn't sworn personnel?

PROSPECTIVE JUROR NO. 06394:  No.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 06394:  You'd have to be an officer for that; right?

THE COURT:  Right.

PROSPECTIVE JUROR NO. 06394:  Right.  No, she wasn't.

THE COURT:  Okay.  And do you recall any of the things that you heard when you were sitting and waiting for your wife?

PROSPECTIVE JUROR NO. 06394:  Yeah.

THE COURT:  What are some of the things that you may have heard?

PROSPECTIVE JUROR NO. 06394:  Like I say, this is just what I heard.  I don't -- I don't know how much truth -- just that there was some corruption in the jails and what was going on inside the jails, um, wasn't right and was illegal, but it's like nobody would find out.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 06394:  But like I said, Your Honor, that's just me hearing them.

THE COURT:  Right.  And can you put aside anything you may have heard and decide this case based solely on the evidence that you hear here in court?

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR NO. 06394:  Yeah.

THE COURT:  Okay.  Any doubt in your mind that you'd be able to do that?

PROSPECTIVE JUROR NO. 06394:  No.  I mean, you've got to go by the evidence.

THE COURT:  Yeah.  That's right.

Okay.  Anything else?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  Okay.  Thank you very much.

You can return to the courtroom next door.

PROSPECTIVE JUROR NO. 06394:  Okay.  Thanks, Your Honor, for straightening that out at work so in case I do get called.

THE COURT:  Okay.  Thank you.

(Out of the presence of the prospective jurors:)

THE COURT:  Okay.  We will be able to call jurors down on Wednesday, so I suggest that's what we do.

MR. HOCHMAN:  That's fine, Your Honor.

MR. FOX:  Yes, Your Honor.  Thank you.

THE COURT:  I think we have one more juror who's out here.  I want to call -- two.  We'll call them in, and then I think maybe it's easier -- we'll go over next door, assuming there's some room on the bench, and I'll just excuse those people and ask them to return tomorrow morning at 8:30.

MR. HOCHMAN:  That's fine, Your Honor.  Thank you.

MR. FOX:  Yes, Your Honor.  And could you please admonish them as well not to listen --

THE COURT:  Yes.

MR. FOX:  Thank you.

THE COURT:  Okay.

(In open court in the presence of Prospective Juror No. 08202:)

THE COURT:  Give us the last five digits of your badge number, please.

PROSPECTIVE JUROR NO. 08202:  08202.

THE COURT:  Now, I think you had a possible vacation --

PROSPECTIVE JUROR NO. 08202:  Yes.

THE COURT:  -- correct?

And when was that going to start?

PROSPECTIVE JUROR NO. 08202:  The 20th through the 27th.

THE COURT:  Okay.  And you haven't booked your flight yet.

PROSPECTIVE JUROR NO. 08202:  Not yet.

THE COURT:  Okay.  And you're going to Michigan?

PROSPECTIVE JUROR NO. 08202:  Yes.

THE COURT:  I have some words of wisdom for Mr. Harbaugh.

144

Do you have any flexibility on the date that you leave?

PROSPECTIVE JUROR NO. 08202:  For those dates, I would.  But my mother's buying my ticket, so I just have to confer with her.

THE COURT:  Okay.  So I think we can accommodate you -- if you got a day or -- you got a day maybe or two flexibility when you leave, I think we can accommodate you.

Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR NO. 08202:  Yes.

THE COURT:  Have you had an opportunity to read and review each of those questions?

PROSPECTIVE JUROR NO. 08202:  Yes.

THE COURT:  Do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR NO. 08202:  I do.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR NO. 08202:  The first one, actually.  Have you or any member of your immediate family or anyone close to you ever been investigated or arrested, charged with, or convicted of any criminal offense?

THE COURT:  Okay.  Can you tell us a little bit about that?

PROSPECTIVE JUROR NO. 08202:  First, I'll start with

my uncle.  He's been convicted of -- I don't know how many different criminal offenses, but he's perpetual.  He's still locked up.  And his son is also locked up for murder. Nephews -- a nephew was just recently convicted of a felony and just went through the system.

THE COURT:  Okay.  Anything about the way those cases were handled that causes you to have any concerns about your ability to be fair and impartial to both the Government and the defense in this case?

PROSPECTIVE JUROR NO. 08202:  Their cases, not really.  No.

THE COURT:  Okay.  So you don't have any complaints about how their cases were handled?

PROSPECTIVE JUROR NO. 08202:  For my youngest cousin, he did it.  There's no question about it.  But there was a question of should his sentence have been life, being that he was a minor -- I think he was 15 or 14 at the time.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 08202:  So it was a question of the handling in that case.  As for his father, there's no real question about him.

THE COURT:  Okay.  For the -- is it your nephew?

PROSPECTIVE JUROR NO. 08202:  Yes.  The one who went there recently?

THE COURT:  Yeah.

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR NO. 08202:  Yeah.

THE COURT:  Can you put aside the concerns you have about the sentence he received and judge this case based solely on the evidence you hear here in this courtroom?

PROSPECTIVE JUROR NO. 08202:  Uh, I could, yeah. Uh, if -- his case, I don't think, would really have much bearing on this particular case.

THE COURT:  Okay.  What was his case about?

PROSPECTIVE JUROR NO. 08202:  Felony robbery, I believe.

THE COURT:  Okay.  So can you commit to both sides that you'll be able to set aside your concerns about his sentence and judge this case based solely on the evidence you hear here in court?

PROSPECTIVE JUROR NO. 08202:  Yes.

THE COURT:  Okay.  Any doubt in your mind that you'll be able to do that?

PROSPECTIVE JUROR NO. 08202:  Uh, coming from a different starting point when it comes to law enforcement, based on my own history.  That was another "yes" question, I believe.  Number 11.  Have you or any member of your immediate family or anyone close to you ever been a member of -- sorry, not 11.  Oh, I do work with a company that donates to libraries, to charities.  And they've donated to a few police organizations.

Where was it?  Oh.  Number 13.  Sorry.  Have you or any member of your immediate family or anyone close to you have any unpleasant experience with the FBI -- not with the FBI or the sheriff's department but law enforcement?  Yes.

THE COURT:  Okay.  And is that you that has had these --

PROSPECTIVE JUROR NO. 08202:  Yes.

THE COURT:  Okay.  And what's -- what's that about?  What are some of the unpleasant experiences that you've had?

PROSPECTIVE JUROR NO. 08202:  Being pulled over at 18 and being told literally that the cop, officer said, "The only reason I'm pulling you over is because you are black."  And then going to court for that, there's no way to -- at that time, no way to record that.  So --

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 08202:  Ended up not fighting that one.  Although, in hindsight, I should have.  So -- and other times as being pulled over for no other reason than being in the wrong area at the wrong time or driving while black, essentially.

THE COURT:  Okay.  Can you put aside those experiences and judge the evidence in this case without regard to what happened to you in those -- on those occasions?

PROSPECTIVE JUROR NO. 08202:  I can try.  It's a difficult hurdle to jump over.

UNITED STATES DISTRICT COURT

THE COURT:  Okay.  What police agencies were involved in your experiences?

PROSPECTIVE JUROR NO. 08202:  The first one was the Detroit PD, Metropolitan PD.  I'm not sure of their exact destination.  The other one was -- actually, both in Detroit.  Although, might have been Detroit or Dearborn -- or Dearborn Heights.

THE COURT:  Okay.  And when was that?

PROSPECTIVE JUROR NO. 08202:  This was back in probably about 1998.

THE COURT:  Okay.  And you understand that what happened to you back in '98 with the Detroit police force has nothing to do with --

PROSPECTIVE JUROR NO. 08202:  Well, I understand that.  It's just that's my starting point for --

THE COURT:  Sure.

PROSPECTIVE JUROR NO. 08202:  You know, I don't put any other higher regard on officers of the law than I would anybody else.

THE COURT:  Okay.  I think what's important in this case is that we want jurors who can decide the credibility of law enforcement agents the same way they would as any other witness, that we want -- we want an unbiased view because there are going to be law enforcement officers that are going to testify in this case on both sides.  And we want a jury who's

committed to being fair and impartial and judging the credibility of witnesses no matter who they are, whether they're related to law enforcement or not, and they're going to view the witnesses in the same way.

What we are trying to avoid is somebody bringing some baggage in from something that's happened in the past and using that to weigh the scale one way or the other.  They want everybody to come at this with a clean slate.  And if you can do that, we'd love to have you.  And if you can't, we just need to know that.

PROSPECTIVE JUROR NO. 08202:  I guess right now I don't know if I could.

THE COURT:  Okay.  Do you have any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR NO. 08202:  Actually, I do have a couple more.

So 11 was yes.  Self-employed and do business with an organization that donates libraries.  And they've donated libraries to a few, like I said, police organizations as well.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 08202:  Number 17, being older and not listening to most music, listening to mostly NPR, I have heard about the case before.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 08202:  Number 19, again, my

**UNITED STATES DISTRICT COURT**

nephew going through the system recently.  So I've heard about different things going on down at Twin Towers and --

THE COURT:  Well, as I understand it, what you're telling me is that you'd have some difficulty putting aside some of the feelings you have about what's happened to you in the past in deciding the merits of this case?

PROSPECTIVE JUROR NO. 08202:  It would be -- I think I could, but I think it would also be difficult is the best way I can say it.

THE COURT:  Okay.  Well, what we need is we need jurors who can commit that they're going to -- you know, we all come at this task with different baggage.  And we need somebody who can commit that, yes, I will set aside whatever baggage I have and judge this case anew without the benefit of that baggage.  And if you can do that, that's fine.  If you think it's -- you just can't do it, we just need to know that.

PROSPECTIVE JUROR NO. 08202:  I guess I would like to think that I could.  But, again, I guess I just would not know until I'm sitting there and listening to the evidence as it's coming in.

THE COURT:  Okay.  Let me see counsel at sidebar.

(At sidebar:)

THE COURT:  I can either bring him back in the morning, ask some additional questions, or excuse him now.

MR. HOCHMAN:  I think excuse him now, Your Honor.

You tried a couple of times, and he is still --

MR. FOX:  I think he's very sincere, but I think he's having trouble.  So I think you should let him go.

THE COURT:  Okay.

(In open court in the presence of

Prospective Juror No. 08202:)

THE COURT:  All right, sir.  We're going to excuse you.  There may still be somebody down on the first floor in the jury assembly room.  And you can return there and let them know that you've been excused from jury service.

PROSPECTIVE JUROR NO. 08202:  Okay.

THE COURT:  Thank you very much.

PROSPECTIVE JUROR NO. 08202:  Thank you.

(Out of the presence of the prospective jurors:)

THE COURT:  Just have them go back to the other courtroom.

There are two additional ones.  I'm just going to have them go back over.  I'm going to go over there and caution -- excuse the jurors.

And why don't you -- are there seats at counsel table over there?

THE COURTROOM DEPUTY:  There are chairs in there, there are monitors.

THE COURT:  Let's -- let's put the jurors back in the audience, and then we'll have the parties go over there.

**UNITED STATES DISTRICT COURT**

152

I'll excuse the jurors for the day, have them come back at 8:30, which is -- probably by 9:00 they'll be here, and caution them about being exposed to any media coverage.

(In the presence of the prospective jurors:)

THE COURT:  I'd be seated, but apparently the judge in this courtroom doesn't use a chair.

All right.  Ladies and gentlemen, we will -- we're not able to conclude jury selection today.  So we're going to have you all come back tomorrow.  We're going to start at 8:30, and we'll resume with jury selection at that time.  Please remember we can't start unless all of you are here.

So tomorrow morning, if you would, just -- at 8:30, if you would just come back to this courtroom.  And then we'll get started, and hopefully we'll be able to wrap this up tomorrow.

Again, I want to remind you and caution you that because you must decide this case based solely on the evidence received actually in the courtroom and on my instruction as to the law that applies, you must not be exposed to any other information about the case or to the issues that it involves during the course of your service as a juror.

That is, until this case is over, unless I instruct you otherwise, do not communicate with anyone and do not let anyone else communicate with you in any way about the merits of the case or about anything to do with it.  This includes

153

discussing the case in person, in writing, by phone or electronic means, via e-mail, text messages, any Internet chat rooms, blogs, Web sites, or other features.  This applies to communicating with your fellow jurors and applies to communicating with anyone else, including your family members, your employer, the media or press, and the people involved in the trial; although, you may notify your family and your employer that you are under consideration to be seated as a juror in this case.  But if you are asked or approached in any way about your jury service or anything about the case, you must respond that you've been ordered not to discuss the matter and report that contact to me.

At some point, you're going to receive more questionnaires.  Don't discuss your answers to questions with any other potential jurors.  Don't blurt out any answers.  We don't want you to read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it.  There is going to be media coverage about the case. Please do not read any newspapers about the case.  If you're getting a newspaper delivered to your home, you might want to have your family just set it aside.

Do not do any research, such as consulting dictionaries, searching the Internet, or other reference materials, and do not make any investigation about the case or in any other way try to learn about the case on your own.  We

require these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings.

And most importantly, do not make up your mind about what your verdict should be until after you've gone into the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Please keep an open mind until then.

All right.  So tomorrow morning, 8:30.  If you're not used to coming to downtown, please give yourself enough time so that you're here by 8:30.  Come into this courtroom, and then we'll resume with jury selection.

If you want to bring a book, that's okay, as long as it's not in any way anything legal.

All right.  If any of you need to speak with me, simply give a note to the clerk, and we'll take up any questions or any concerns anyone may have.

All right.  Thank you very much.  We'll see everybody tomorrow morning.

Excuse me.  I'm sorry.  If you would leave your questionnaires, just leave those on your chairs.

UNIDENTIFIED PROSPECTIVE JUROR:  And one last question.  Do we put our name on it or tag number?

THE COURT:  Put your number on it, you can put the

155

number on the questionnaire.  Just leave them on your seats.

(Out of the presence of the prospective jurors:)

THE COURT:  Okay.  I have a juror who has a final tomorrow.  I'm going to have them come in and, if it's tomorrow morning, just excuse them in the morning.  Or if it's all day tomorrow --

(In open court in the presence of the Unidentified Prospective Juror:)

THE COURT:  Okay.  Are you the individual who has a final tomorrow?

UNIDENTIFIED PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  If you could just step out for a moment, we'll have you back in in just a moment.

UNIDENTIFIED PROSPECTIVE JUROR:  Okay.

(Out of the presence of the prospective jurors:)

THE COURT:  This person is sick and has a fever.  I feel the pain, believe me.

Okay.  Okay.  The gentleman -- all right.  This gentleman says he's sick.  He's got a 100 degree fever for two days now.  Also, he has ADD, a processing disorder, which makes it difficult to pay attention.  Long speeches, definitely trouble in this courtroom.  "And to process everything correctly, I do not think I" can -- "I am capable of being a juror in this case."

Unless somebody has a different view or wants to

**UNITED STATES DISTRICT COURT**

hear something different, I would excuse that juror.

MR. FOX:  No.

MR. HOCHMAN:  No objection, Your Honor.

MR. FOX:  We agree.

(In open court in the presence of

Prospective Juror No. 57532:)

THE COURT:  All right, sir.  I hear you're not feeling well.

PROSPECTIVE JUROR NO. 57532:  No.

THE COURT:  We're going to excuse you.  So you can go back to the jury assembly room on the first floor, tell them you've been excused.

PROSPECTIVE JUROR NO. 57532:  Okay.  So I've been excused.

THE COURT:  You've been excused.

Okay.  Thank you.

PROSPECTIVE JUROR NO. 57532:  Thank you.

Will they still be there?

THE COURT:  They may not.  If not, you can call in the morning and tell them you've been excused.

PROSPECTIVE JUROR NO. 57532:  Okay.  What number do I call?

THE COURT:  That's a good question.  I'll find a number for you, if you can hold on a second.

PROSPECTIVE JUROR NO. 57532:  Okay.  Do you want me

to wait outside or --

THE COURT:  No.  I think we'll see if we can -- tell you what.  We'll let them know you've been excused.  And if they need to reach you, they'll call you.

PROSPECTIVE JUROR NO. 57532:  Okay.  Thank you.

THE COURT:  Thank you.

PROSPECTIVE JUROR NO. 57532:  Do you need the badge?

THE COURT:  I'm sorry?

PROSPECTIVE JUROR NO. 57532:  Do you need the juror I.D. badge?

THE COURT:  And your number is 57532?

PROSPECTIVE JUROR NO. 57532:  It's 57532, yeah.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 57532:  Thank you.

THE COURT:  Okay.  We're waiting for the other juror to come back.

(Pause in the proceedings.)

(In open court in the presence of

 Prospective Juror No. 51614:)

THE COURT:  Come forward.

I understand you have a final tomorrow?

PROSPECTIVE JUROR NO. 51614:  Yes.

THE COURT:  What time is your final?

PROSPECTIVE JUROR NO. 51614:  6:00 o'clock.

THE COURT:  6:00 o'clock p.m.?

UNITED STATES DISTRICT COURT

PROSPECTIVE JUROR NO. 51614:  Yes.

THE COURT:  Okay.  Have you studied?

PROSPECTIVE JUROR NO. 51614:  I've been trying.

THE COURT:  Okay.  Why don't we do this.  Why don't you take tomorrow off.  If you -- if you need to study, why don't you take tomorrow off and then come back on Wednesday.

PROSPECTIVE JUROR NO. 51614:  Okay.

THE COURT:  And if you'll call -- call the clerk tomorrow at around 4:00, we'll let you know if you need to come back on Wednesday.

PROSPECTIVE JUROR NO. 51614:  Okay.

THE COURT:  Okay?  If you've studied enough, you can join us in the morning and then leave at some point.  Which would you prefer?

PROSPECTIVE JUROR NO. 51614:  I can call back tomorrow at 4:00.

THE COURT:  Okay.  So you're going to take the day off, and then you're going to call us in the afternoon.

PROSPECTIVE JUROR NO. 51614:  Yes.

THE COURT:  Okay.  And so unless you hear otherwise, you need to be here Wednesday at 8:30.

PROSPECTIVE JUROR NO. 51614:  Okay.

THE COURT:  Okay?

PROSPECTIVE JUROR NO. 51614:  So I call the number on the letter?

THE COURT:  No.  We'll give you a -- we'll give you a number to call.

PROSPECTIVE JUROR NO. 51614:  Okay.

THE COURT:  And let's make sure we have your number.

THE COURTROOM DEPUTY:  If she'd just state her badge number for the record.

THE COURT:  Okay.  And your badge number is 51614?

PROSPECTIVE JUROR NO. 51614:  Yes.

THE COURT:  Okay.  We're going to call your cell phone and leave a message as to a number you can call to reach us.

PROSPECTIVE JUROR NO. 51614:  Okay.  Okay.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 51614:  Thank you.

THE COURT:  All right.  Thank you.  Good luck.

PROSPECTIVE JUROR NO. 51614:  Okay.  Thank you.  Have a good night.

(Out of the presence of the prospective jurors:)

THE COURT:  Okay.  Anything else?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

MR. DIAMANTATOS:  No, Your Honor.

THE COURT:  Okay.  We'll see everybody tomorrow morning.

(Proceedings concluded at 5:37 p.m.)

160

## CERTIFICATE OF OFFICIAL REPORTER

COUNTY OF LOS ANGELES   )
                        )
STATE OF CALIFORNIA     )

I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED THIS 13TH DAY OF AUGUST, 2017.

/S/ MYRA L. PONCE
_____
MYRA L. PONCE, CSR NO. 11544, CRR, RDR
FEDERAL OFFICIAL COURT REPORTER

**UNITED STATES DISTRICT COURT**