UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

HONORABLE PERCY ANDERSON, U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )    Case No.
                                )
       vs.                      )    CR 16-00066(A)-PA
                                )
LEROY D. BACA,                  )    PAGES 161 to 286
                                )    VOLUME 3
            Defendant.          )
_____)

REPORTER'S TRANSCRIPT OF
TRIAL DAY 2
TUESDAY, DECEMBER 6, 2016
8:34 A.M.
LOS ANGELES, CALIFORNIA

MIRANDA ALGORRI, CSR 12743, CRR
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 435
LOS ANGELES, CALIFORNIA 90012
MIRANDAALGORRI@GMAIL.COM

UNITED STATES DISTRICT COURT

**APPEARANCES OF COUNSEL:**


**FOR THE PLAINTIFF:**

    SANDRA R. BROWN
    Acting United States Attorney
    BY:  BRANDON FOX
    BY:  EDDIE A. JAUREGUI
    Assistant United States Attorneys
    United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012


**FOR THE DEFENDANT:**

    MORGAN LEWIS AND BOCKIUS LLP
    BY:  NATHAN J. HOCHMAN
    BY:  BRIANNA ABRAMS
    The Water Garden
    1601 Cloverfield Boulevard
    Suite 2050 North
    Santa Monica, California 90404


    MORGAN LEWIS AND BOCKIUS LLP
    BY:  TINOS DIAMANTATOS
    77 West Wacker Drive
    Chicago, Illinois 60601

**UNITED STATES DISTRICT COURT**

163

# I N D E X

**TUESDAY, DECEMBER 6, 2016**

## Chronological Index of Witnesses

Witnesses:_____    Page_____

(None)

**UNITED STATES DISTRICT COURT**

## **EXHIBITS**


**TUESDAY, DECEMBER 6, 2016**


|           | For ID | In EVD |
| --------- | ------ | ------ |
| Exhibits  |        |        |

(None)

**LOS ANGELES, CALIFORNIA; TUESDAY, DECEMBER 6, 2016**

**8:34 A.M.**

**---**

(The following proceedings were held in open court out of the presence of the jury:)

THE CLERK:  Calling item No. 1, CR 16-66(A), United States versus Leroy D. Baca.

Counsel, please state your appearances.

MR. FOX:  Good morning, Your Honor.

Brandon Fox and Eddie Jauregui on behalf of the United States.  Although he's not in the courtroom right now, Special Agent David Dahle from the FBI will be joining us.

MR. HOCHMAN:  Good morning, Your Honor.

Nathan Hochman, and I along with Tinos Diamantatos and Brianna Abrams represent the defendant Leroy Baca who is present in court.

THE COURT:  Good morning.

MR. DIAMANTATOS:  Good morning, Your Honor.

THE COURT:  We're going to resume with jury selection this morning.  I intend to, unless somebody has a good objection, I intend to open the courtroom at this point. I think part of the issues we were concerned about will be addressed by the fact that we will continue with an individual voir dire.  I'll remind the jurors, if there's any questions

**UNITED STATES DISTRICT COURT**

that they feel uncomfortable discussing from their seat, we can go to sidebar.  So that's what I intend to do this morning unless somebody has an objection.

MR. FOX:  No objection, Your Honor.

MR. HOCHMAN:  Again, Your Honor, because I don't know the volume of questions, just looking at yesterday's questions, when people are discussing personal family arrests, convictions, you know, their uncle is a murderer, stuff like that, I don't know how many of those -- it might be very few. It might be very voluminous.  We might have to play it by ear. If we're spending the entire time over at sidebar with the witness, it effectively won't accomplish what you're trying to accomplish.

The other aspect, Your Honor, is I would want Mr. Baca to hear the answer.  It's one thing if we're having a legal discussion.  But if a juror is providing that type of information, I want Mr. Baca there.  So where exactly would you do the sidebar with the juror?

THE COURT:  Do it --

MR. HOCHMAN:  The problem is just, logistically, Mr. Baca is very close to the juror.  I don't know if that's -- I don't know what the Court thinks about that.  It's unusual obviously, but it might be very frequent.  Or it's fine.  We can see how it plays out.  Here it's very easy because we're seated here, the juror is seated there, and you're there.  The

juror has a microphone and speaks very freely, and it's quick.

I throw those out as concerns.  I understand the public certainly has a right -- Mrs. Baca has been outside for hours now as well.  I thought it worked fairly well and quickly yesterday.  I defer to the Court on this.

MR. FOX:  Your Honor, two things on that.  One, I think you can remind the individual jurors that this is anonymous.  So even if they're talking about their uncle's murder, it's hard to figure out who that is.

Secondly, if there's a headset that Mr. Baca could wear, he could still participate in the sidebar from his seat by listening in to what the jurors say, and his attorneys can consult with him.  That might be the best way to make it so there's no inappropriate interaction.

THE COURT:  There is a -- I believe there is a headset.  So we can provide Mr. Baca one, or he can join us.

MR. HOCHMAN:  I'll talk to him in a moment, Your Honor, and find out what his preference is.

THE COURT:  We'll figure it out.

So why don't we -- I'm going to ask the clerk to go ahead and summon some jurors, get the first five or six lined up.  We'll also go ahead and open the courtroom.  We'll play it by ear.

MR. HOCHMAN:  Thank you, Your Honor.

THE COURT:  Okay.

**UNITED STATES DISTRICT COURT**

(The following proceedings were held in open court in the presence of the Prospective Juror 18015:)

THE COURT:  Good morning.  Could you give us the last five digits of your badge number, please.

PROSPECTIVE JUROR 18015:  18015.

THE COURT:  Have you had a chance to review each of the questions of the criminal case questionnaire?

PROSPECTIVE JUROR 18015:  Yes, Your Honor.

THE COURT:  Do you have any affirmative answers to any of the questionnaires?

PROSPECTIVE JUROR 18015:  Yes, Your Honor.

THE COURT:  Which ones?

PROSPECTIVE JUROR 18015:  I answered "yes" to No. 2.

THE COURT:  Okay.

PROSPECTIVE JUROR 18015:  And No. 12 and No. 28.

THE COURT:  Okay.  Why don't we take up question No. 2 first.

PROSPECTIVE JUROR 18015:  I was a victim of domestic violence.

THE COURT:  When was that?

PROSPECTIVE JUROR 18015:  That was in 2011.

THE COURT:  And were the police called?

PROSPECTIVE JUROR 18015:  Initially, no.

THE COURT:  Okay.  Subsequently did the police

become involved?

PROSPECTIVE JUROR 18015:  Yes.

THE COURT:  Which police department was that?

PROSPECTIVE JUROR 18015:  Santa Barbara County.

THE COURT:  Anything about that experience that causes you to have concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 18015:  No.

THE COURT:  I believe No. 12 is the next question you have an affirmative answer.  Can you tell us about that?

PROSPECTIVE JUROR 18015:  My husband did a ride-along.  I've been married for six years.  It was before my time.  I just remember him telling me about it.

THE COURT:  Okay.  Do you recall what police agency did that?

PROSPECTIVE JUROR 18015:  Santa Barbara.

THE COURT:  Okay.  What about 28?

PROSPECTIVE JUROR 18015:  Same thing.  My husband did -- got his POST cert -- finished his POST certification.  Never went into law enforcement.  I can't remember exactly why, but he did have some training and got his POST cert.

THE COURT:  Do you recall when that training was or who that training was with?

PROSPECTIVE JUROR 18015:  Again, it was Santa Barbara Sheriff's Department I believe, and it was well

**UNITED STATES DISTRICT COURT**

before me in his mid 20s.  I've just heard the stories.

THE COURT:  All right.  Any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR 18015:  No, sir.

THE COURT:  Thank you very much.  You can return to the courtroom next door.

(The following proceedings were held in open court in the presence of the Prospective Juror 24122:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 24122:  Good morning.

THE COURT:  Could you give us the last five digits of your badge number, please.

PROSPECTIVE JUROR 24122:  24122.

THE COURT:  Have you had a chance to review each of the questions contained in the criminal case questionnaire?

PROSPECTIVE JUROR 24122:  Sure.

THE COURT:  And do you have any "yes" or affirmative answers to any of those questions?

PROSPECTIVE JUROR 24122:  There are a few I have answered yes.

THE COURT:  Okay.  What's the first one that you gave a "yes" answer to?

PROSPECTIVE JUROR 24122:  The first would be No. 8.

THE COURT:  Okay.  And could you tell us a little

**UNITED STATES DISTRICT COURT**

bit about that response.

PROSPECTIVE JUROR 24122:  I think it's just a personal opinion that I have with law enforcements and what's been happening lately in America.  So I feel very strongly that it's a little bit of a crooked organization.

THE COURT:  Well, there's going to be law enforcement agents testifying on each side of this case.  One of the things that's important for prospective jurors is to approach this task without any built-in biases or prejudices.  And while everybody brings a different amount of baggage to this task, what we want to try to do is have jurors that can approach this task with an open mind --

PROSPECTIVE JUROR 24122:  Right.

THE COURT:  -- and put aside whatever feelings they may have and decide this case based just on the testimony that you hear and see here in court.

Do you think you'd be able to put aside any bias you feel about the credibility of law enforcement officers and judge this case based just on the evidence you hear here in court?

PROSPECTIVE JUROR 24122:  I think it would be really hard for me to honestly.

THE COURT:  Okay.  What do you do for a living?

PROSPECTIVE JUROR 24122:  Senior copywriter.

THE COURT:  Let me see counsel at sidebar.

**UNITED STATES DISTRICT COURT**

(The following proceedings were held at sidebar:)

THE COURT:  All right.  I'm going to excuse this juror.  Any objection?

MR. HOCHMAN:  No, Your Honor.

MR. FOX:  No, Your Honor.

(The following proceedings were held in open court in the presence of the Prospective Juror 24122:)

THE COURT:  All right.  We're going to excuse you.  You can return to the jury assembly room on the first floor and tell them that you've been excused.

PROSPECTIVE JUROR 24122:  Okay.  Thank you, sir.

THE COURT:  If you'd just leave your questionnaire on the chair.

PROSPECTIVE JUROR 24122:  Sure.

THE COURT:  Thank you.  Do you have any belongings?

PROSPECTIVE JUROR 24122:  No.

THE COURT:  Okay.  You can go this way.

PROSPECTIVE JUROR 24122:  Thank you.

(The following proceedings were held in open court in the presence of the Prospective Juror 18267:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 18267:  Good morning.

THE COURT:  Could you give us the last five digits of your juror badge number, please.

PROSPECTIVE JUROR 18267:  18267.

THE COURT:  Have you had a chance to look at each of the questions in the criminal case questionnaire?

PROSPECTIVE JUROR 18267:  Yes.

MR. HOCHMAN:  Your Honor, I'm sorry.  Was it 1267?

PROSPECTIVE JUROR 18267:  18267.

MR. HOCHMAN:  Thank you.

THE COURT:  That is correct?

PROSPECTIVE JUROR 18267:  Yes.

THE COURT:  Do you have any "yes" answers to any of these questions?

PROSPECTIVE JUROR 18267:  To the first question I have a "yes."

THE COURT:  Okay.  Any others?

PROSPECTIVE JUROR 18267:  No. 28.

THE COURT:  Okay.  Any others?

PROSPECTIVE JUROR 18267:  No.

THE COURT:  Let's try 28 first.

PROSPECTIVE JUROR 18267:  Sure.  I'm sorry?

THE COURT:  No. 28.  Can you tell us your response to 28?

PROSPECTIVE JUROR 18267:  I said yes.  County clerk.  I did not get hired.

THE COURT:  Okay.  So at one point you were

applying for a job with the County?

PROSPECTIVE JUROR 18267:  Yes.  I am employed with the County now.  But you go -- they call you from all over.

THE COURT:  Okay.  And what do you do for them?

PROSPECTIVE JUROR 18267:  Mental health clinic. I work at the county mental health clinic.

THE COURT:  What do you do?

PROSPECTIVE JUROR 18267:  I'm a clerk.

MR. HOCHMAN:  I apologize.  Can she put the microphone slightly closer to her mouth.

PROSPECTIVE JUROR 18267:  Okay.

MR. HOCHMAN:  Thank you.

THE COURT:  28 asks if you've had -- you or any members of your family have had any law enforcement training or experience or whether or not you've been employed by any military, federal, state, or local law enforcement agency.  Is your county employment -- that's what you were referring to?

PROSPECTIVE JUROR 18267:  No.  I was referring to, like, applying for the job.  I was given this in the morning; so I kind of --

THE COURT:  That's all right.

PROSPECTIVE JUROR 18267:  Yeah.

THE COURT:  So you had applied --

PROSPECTIVE JUROR 18267:  I applied.  Well, they

called me to interview for a county clerk position at the district attorney's office.

THE COURT:  I see.  Okay.  But you didn't get that position?

PROSPECTIVE JUROR 18267:  Correct.

THE COURT:  All right.  Now, question No. 1 you also had an affirmative answer to?

PROSPECTIVE JUROR 18267:  Yes.

THE COURT:  Okay.

PROSPECTIVE JUROR 18267:  My live-in boyfriend nine years ago was arrested for a DUI.

THE COURT:  Okay.  Do you know what police agency was involved?

PROSPECTIVE JUROR 18267:  It was in Iowa.

THE COURT:  Okay.  Anything about that experience that causes you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 18267:  No.

THE COURT:  All right.  Any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR 18267:  No.

THE COURT:  All right.  Thank you very much.

PROSPECTIVE JUROR 18267:  You're welcome.

THE COURT:  You can return to the courtroom next door.

(The following proceedings were held in open court in the presence of the Prospective Juror 27725:)

THE COURT:  Good morning.  If you could give us the last five digits of your juror badge number, please.

PROSPECTIVE JUROR 27725:  27725.

THE COURT:  Have you had a chance to review each of the questions in the criminal case questionnaire?

PROSPECTIVE JUROR 27725:  Yes, I have.

THE COURT:  Okay.  And do you have any "yes" or affirmative responses to any of those questions?

PROSPECTIVE JUROR 27725:  Yes, I do.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR 27725:  6, 8, 9 -- do you want me to list them all?

THE COURT:  For now, yes.  6, 8, 9 --

PROSPECTIVE JUROR 27725:  16, 17, 18, 19, 20, 24, and I don't remember the rest.  But that's the first two pages.

THE COURT:  Okay.  Why don't we start with 6.

PROSPECTIVE JUROR 27725:  Okay.  I have a close friend.  He works as a guard at the Twin Towers, and he's told me on multiple occasions about the corruption he's seen there and how he keeps his head down to stay outside of the corruption.

THE COURT:  Okay.  Do you think you could put aside what you and he have talked about about corruption that

UNITED STATES DISTRICT COURT

he's witnessed and decide this case based solely on the evidence you hear in the courtroom?

PROSPECTIVE JUROR 27725:  Honestly, I don't think I can.  Also, because it's related, I have a close cousin I grew up with.  He's also a sheriff.  He's told me some stories as well.  So I have the tendency to believe my cousin and friend regarding the corruption.

THE COURT:  All right.  I'm going to excuse you, and you can return to the jury assembly room on the first floor.

PROSPECTIVE JUROR 27725:  Thank you.

(The following proceedings were held in open court out of the presence of the jury:)

THE COURT:  All right.  Either side wish to be heard?

MR. HOCHMAN:  No, Your Honor.

MR. FOX:  No, Your Honor.

(The following proceedings were held in open court in the presence of the Prospective Juror 27890:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 27890:  Good morning.

THE COURT:  Could you give us the last five digits of your juror badge number?

PROSPECTIVE JUROR 27890:  Yes.  27890.

THE COURT:  Have you had a chance to review the

criminal case questionnaire?

PROSPECTIVE JUROR 27890:  Yes, I did.

THE COURT:  Okay.  Do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 27890:  The only one that I saw was No. 2.

THE COURT:  Okay.

PROSPECTIVE JUROR 27890:  And by "crime," I mean our house was broken into once.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR 27890:  And then another time the neighborhood I used to live in, we had a neighborhood stalker like a peeping Tom kind of thing.  So that was an entire summer that we were constantly in, you know, conversation with the police, like, he's here.  Come back, you know.  So that's really it.

THE COURT:  Okay.  When was that?

PROSPECTIVE JUROR 27890:  I want to say six years ago.

THE COURT:  Okay.  Anything about that experience or the way the police responded that have caused you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 27890:  Nothing that I can think of.  I mean, it was sort of a frustrating experience

because the -- his name was Diego, we found out later.  But every time we'd call the police station, they're like, well, did you tell him he's trespassing?  Well, we yelled it at him, but I don't know if he heard it.  That was just frustrating, but I don't think -- every person is different.

THE COURT:  Right.  What police agency was it?

PROSPECTIVE JUROR 27890:  South Pasadena Police.

THE COURT:  Okay.  So you can put that experience aside and judge this case based solely on the evidence you hear?

PROSPECTIVE JUROR 27890:  Yeah.  I mean, every district is different.  Every person is different.

THE COURT:  Do you have any other "yes" or affirmative responses to any of the other questions?

PROSPECTIVE JUROR 27890:  Not necessarily -- I think the only thing -- I can't remember which question it was, but it said somebody close to you -- I don't know.  I've had a couple friends get DUIs, and that's really -- they're close friends, but that's their own fault.

THE COURT:  Okay.  So you can put aside what happened to them.

PROSPECTIVE JUROR 27890:  It was their own fault, yeah.

THE COURT:  And be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 27890:  Yes.

THE COURT:  Any other "yes" or affirmative responses to any of the questions?

PROSPECTIVE JUROR 27890:  No.  I went over it a few times, and there's nothing.

THE COURT:  Okay.  Thank you very much.  You can return to the courtroom next door.

PROSPECTIVE JUROR 27890:  Okay.

(The following proceedings were held in open court in the presence of the Prospective Juror 25280:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 25280:  Good morning.

THE COURT:  Could you give us the last five digits of your juror badge number, please.

PROSPECTIVE JUROR 25280:  25280.

THE COURT:  Okay.  Have you had a chance to review each of the questions contained in the criminal case questionnaire?

PROSPECTIVE JUROR 25280:  I have.

THE COURT:  And do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 25280:  I do.

THE COURT:  Okay.  Which questions?

MR. HOCHMAN:  Your Honor, again, I apologize.  I got 2520 or 2530.

**UNITED STATES DISTRICT COURT**

THE COURT: 25280.

MR. HOCHMAN: Thank you.

PROSPECTIVE JUROR 25280: Let's see. So for No. 3 it says, is there anything in your personal or professional experience that has caused you to develop strong feelings about the criminal justice system, et cetera, et cetera, that would make it difficult for you to be a fair and impartial juror in this case? I answered yes.

THE COURT: Okay. Can you explain that to us?

PROSPECTIVE JUROR 25280: In light of the police brutality that's gone on in the past -- forever but also in the past year, it's more -- I think I have a little bit of a bias against police officers at the moment.

THE COURT: Okay. You know, each one of us brings a different set of life experiences to this task, and one of the things that's important for the jury in this case is to sort of, while we don't want you to put aside your life experiences, we do -- we do want everybody to approach this task with an open mind and be able to judge this case and make decisions about this case based solely on the evidence that they hear here in court.

Do you believe you'd have difficulty doing that?

PROSPECTIVE JUROR 25280: I do believe I would have difficulty doing that only because, I mean, I have heard stuff on the radio and I've heard stuff in the media recently

as well.  Things that I've read as well.

THE COURT:  Okay.  Do you have any other affirmative responses to any of the other questions?

PROSPECTIVE JUROR 25280:  I think I did -- I had it all filled out yesterday.  Let me just have two seconds to run through.  Sorry.

THE COURT:  It's okay.

PROSPECTIVE JUROR 25280:  For No. 15, I think I answered affirmatively.  It says, do you have any feelings or opinions about allegations of police misconduct, the use of excessive force, or civil rights violations that you would find difficult to put aside or that would affect your ability to be a fair and impartial juror in this case?  I said yes.  It stems from the same question I answered previously.  Yeah.

THE COURT:  Well, you know, the things that you've read about or heard about, they are different from the issues that the jurors are going to have to decide in this case.  One has nothing to do with the other.  What we'd like to be able to have jurors be able to do is to sort of leave what they've heard at the courthouse steps and, once they come in here, decide this case based just on the evidence that they hear and see here in this courtroom.

Could you do that?

PROSPECTIVE JUROR 25280:  I think I might have a little bit of difficulty doing that, to be honest.  If I'm

answering honestly anyway.

THE COURT: Okay. All right. We're going to excuse you. I'm going to ask that you return to the jury assembly room on the first floor and tell them you've been excused.

PROSPECTIVE JUROR 25280: Okay. Great. Thank you.

(The following proceedings were held in open court out of the presence of the jury:)

THE COURT: Does anybody wish to be heard?

MR. HOCHMAN: No objection, Your Honor.

MR. FOX: No, Your Honor.

(The following proceedings were held in open court in the presence of the Prospective Juror 29410:)

THE COURT: Good morning.

PROSPECTIVE JUROR 29410: Good morning.

THE COURT: Could you tell us the last five digits of your juror badge number, please?

PROSPECTIVE JUROR 29410: 29410.

THE COURT: Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 29410: Yes.

THE COURT: Do you have any "yes" or affirmative answers to any of those questions?

PROSPECTIVE JUROR 29410: Yes.

184

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR 29410:  4, 17, 19, 20.

THE COURT:  Why don't we start with No. 4.

PROSPECTIVE JUROR 29410:  I'm a lawyer.  I've appeared in federal court including before Your Honor.

THE COURT:  Okay.  You work for a firm, or do you work by yourself?

PROSPECTIVE JUROR 29410:  I work with one other attorney.

THE COURT:  Okay.  And what type of law do you practice?

PROSPECTIVE JUROR 29410:  Plaintiff's employee -- wage and hour class action, individual cases, plaintiff employee side.

THE COURT:  Okay.  Do you have any concerns about your ability to follow the Court's instructions on the law that applies in this case?

PROSPECTIVE JUROR 29410:  No.

THE COURT:  Let's talk about question 17.

PROSPECTIVE JUROR 29410:  I heard about the charges on NPR.

THE COURT:  Okay.  Would you have any difficulty putting aside what you heard on NPR and deciding this case based solely on the evidence you hear here in the courtroom?

PROSPECTIVE JUROR 29410:  No.

**UNITED STATES DISTRICT COURT**

THE COURT:  Do you think you could be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 29410:  Yes.

THE COURT:  What about 19?

PROSPECTIVE JUROR 29410:  I've heard about the allegations on NPR.

THE COURT:  Again, you could put that aside and judge this case based solely on the evidence you hear here in court?

PROSPECTIVE JUROR 29410:  Yes.

THE COURT:  And question 20.

PROSPECTIVE JUROR 29410:  I took criminal law in law school.

THE COURT:  Okay.  Any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR 29410:  No.

THE COURT:  And when you say that you heard about the case on NPR, was that just a description of the allegations?

PROSPECTIVE JUROR 29410:  Yes.  And some of the procedural history.

THE COURT:  Anything about the procedural history that you'd have any difficulty putting aside in judging this case solely on the evidence you hear here in court?

PROSPECTIVE JUROR 29410:  No.

THE COURT:  Any additional questions?

MR. HOCHMAN:  Yes, Your Honor.  May I approach sidebar?

THE COURT:  Yes.

(The following proceedings were held at sidebar:)

MR. HOCHMAN:  So, Your Honor, the problem with the procedural history on NPR, having a bunch of NPR reports on this, is that it was reported very many times of Sheriff Baca pleading guilty.  It's been probably mentioned at least a half a dozen times.  Obviously I'd want to know if that's -- when he refers to procedural history, if he heard that Sheriff Baca pled guilty.  The problem, of course, in asking it is, if he hasn't heard, we're now informing him of it.  If he had heard, it's a very important thing to know that he starts out with having heard on NPR that Sheriff Baca pled guilty.

THE COURT:  I think, at least in my mind, the most important thing is, whatever he's heard, he's willing to set aside and judge the case based on the evidence.

MR. HOCHMAN:  What the courts have said on this in dealing, as we mentioned in the venue motion, is it's one thing to set aside general procedural history where defendant pleads not guilty and there's allegations of an Indictment and something like that.  It's a completely different thing when a defendant, in essence, has confessed to a crime and pled guilty in open court and it was repeatedly stated on NPR that that's

what happened for months starting back in February of 2016 all the way to the point in which he withdrew his plea.

So that's the concern. He's an attorney. He will know the difference between if someone pled guilty. He might even know, if he knows the procedural history, that he withdrew his plea. And he would be sharper about beating the system than the typical person who doesn't have that legal training to understand, if someone pled guilty, they confessed to the crime. They'd have to.

Again, also on NPR, they broadcast the U.S. Attorney giving a press conference on the guilty plea. You know, Mr. Faturechi has been interviewed on NPR talking about the very acts as evidence, not just allegations at this point. And that's the concern is his level of knowledge of this case coming into it the moment he serves as a juror.

MR. FOX: I think his sophistication works in his favor. I do think, if Mr. Hochman has some follow-up questions about what exactly is that procedural history, that might go to peremptory issues, and I think it's appropriate to ask him those now because we don't want to ask him those in front of the jury.

THE COURT: Okay. What do you want me to ask him?

MR. HOCHMAN: Maybe just the more general question. Can you be more specific as to when you say

procedural history, what exactly of procedural history you've heard about. That might elicit hopefully if he's heard about a plea or withdrawal of a plea or potential --

THE COURT: I'm happy to ask him that. If he says, yeah, I heard that the guy may have entered a plea, but it seems to me, once he says, I heard that, but I can still be fair --

MR. HOCHMAN: At that point, Your Honor, we can have that discussion whether or not he should be excused for cause or not.

THE COURT: That will not be a long discussion.

MR. FOX: Your Honor, I think, if you do send him back to the other room, even though he's an attorney a further admonishment not to discuss that procedural history with anyone.

(The following proceedings were held in open court
in the presence of the Prospective Juror 29410:)

THE COURT: Do you have any memory of any of the specifics you heard about the procedural history on NPR?

PROSPECTIVE JUROR 29410: Yes.

THE COURT: What did you hear?

PROSPECTIVE JUROR 29410: I heard about the sentencing that was -- or the -- the sentence associated with the plea bargain that was rejected.

THE COURT: Okay. Anything else?

PROSPECTIVE JUROR 29410:  No.

THE COURT:  Okay.  The fact that there may have been a plea bargain in the case, the fact that the plea bargain was rejected, are you going to have any difficulty at all putting that aside and judging this case based solely on the evidence you hear here in court?

PROSPECTIVE JUROR 29410:  No.

THE COURT:  Do you recall hearing anything else?

PROSPECTIVE JUROR 29410:  No.

THE COURT:  All right.  Let me see counsel at sidebar.

(The following proceedings were held at sidebar:)

THE COURT:  Okay.

MR. HOCHMAN:  All right.  Thank you for listening to the procedural history, Your Honor.  Again, this was a concern that I had in the venue motion.  Even though he's an attorney and has certain legal training, the -- the courts have said that you can't rely basically on a juror's answer when they say they can be fair and impartial because it's just -- it's too powerful a piece of evidence sort of like when the Court was referring to the Alzheimer's evidence.  Even though you would instruct the jury, you can't believe they're going to follow your instruction.

Here, this is no -- in our mind, certainly this is no different.  The courts have focused on situations where

there is a plea which is effectively a confession, and he even knew there was a sentencing that didn't occur as part of it. So we would ask the Court to excuse this juror based on that.

THE COURT: Okay.

MR. FOX: Your Honor, I think it's different because he's an attorney and he understands what evidence is. He's obviously a litigator because he's been before this Court. He has explicitly said on numerous occasions -- explicitly said that he would have no problem setting that aside. I also think you could admonish him this is a different charge. He's going to be considering different charges than what Mr. Baca pled to. So you could give that as well.

MR. HOCHMAN: And that even, Your Honor, we would say emphasizes that there are certain crimes that Mr. Baca then committed, pled guilty to that aren't even part of the discussion here, part of a second trial, in fact. And then there's the ones he will have before me.

MR. FOX: If Mr. Hochman wants to pose different language.

THE COURT: Okay. Motion to excuse this juror for cause is denied. The juror has said he can be fair and impartial despite what he's heard and seen. So if you don't want him -- assuming you can get him on the panel, you're going to have to use a peremptory.

MR. HOCHMAN: Thank you, Your Honor.

MR. FOX:  Thank you, Your Honor.

(The following proceedings were held in open court in the presence of the Prospective Juror 29410:)

THE COURT:  All right.  Sir, we're going to ask you to return to the courtroom next door.  I'm going to ask that you not share the questions that -- well, anything that you told me and the lawyers here today.  And I would also ask that you not share what you've heard on NPR with any of the other prospective jurors.

PROSPECTIVE JUROR 29410:  Yes.

THE COURT:  Thank you very much.

(The following proceedings were held in open court in the presence of the Prospective Juror 30451:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 30451:  Hi.

THE COURT:  Could you tell us the last five digits of your juror badge number, please.

PROSPECTIVE JUROR 30451:  30451.

THE COURT:  Have you had a chance to look at each of the questions contained in the criminal case questionnaire?

PROSPECTIVE JUROR 30451:  Yes.

THE COURT:  And do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 30451:  12 and 28.

THE COURT:  Let's start with No. 12.  Could you

tell us a little bit about your response to question 12?

PROSPECTIVE JUROR 30451:  My husband used to work as a dispatcher.

THE COURT:  Okay.  And what agency did he work for?

PROSPECTIVE JUROR 30451:  For National Parks.

THE COURT:  And that was in what city?

PROSPECTIVE JUROR 30451:  For the Grand Canyon and for Valley Forge.

THE COURT:  Okay.  And what about 28?

PROSPECTIVE JUROR 30451:  The same.

THE COURT:  Was he a -- did he only work as a dispatcher?

PROSPECTIVE JUROR 30451:  Sometimes he did back-country ranging with the rangers.

THE COURT:  Did he ever engage in any sort of investigative work?

PROSPECTIVE JUROR 30451:  No.

THE COURT:  Okay.  Any other "yes" or affirmative responses to any of the other questions?

PROSPECTIVE JUROR 30451:  No.

THE COURT:  Okay.  What does your husband do for a living now?

PROSPECTIVE JUROR 30451:  Right now he is an administrator for a church in Oak Park.

THE COURT:  Okay.  Thank you very much.  You can return to the jury assembly room next door.  I'm sorry.  You can return to the courtroom next door.

PROSPECTIVE JUROR 30451:  All right.

(The following proceedings were held in open court in the presence of the Prospective Juror 31726:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 31726:  Good morning.

THE COURT:  Could you give us the last five digits of your juror badge number, please?

PROSPECTIVE JUROR 31726:  Sure.  31726.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 31726:  I have.

THE COURT:  And do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 31726:  I do.

THE COURT:  Which ones?

PROSPECTIVE JUROR 31726:  No. 1 and No. 2.

THE COURT:  Okay.  Let's try No. 1.

PROSPECTIVE JUROR 31726:  Okay.  I was a little unsure how to answer that because it happened to me but almost 30 years ago and it's been expunged.  But since it's the Court and FBI and all that, I feel obligated to disclose it.  It really wasn't me.  It was the people in my car.  But the judge

UNITED STATES DISTRICT COURT

194

ruled I should know the people well enough in my car to know what they have on their person.

THE COURT:  Were you charged with an offense?

PROSPECTIVE JUROR 31726:  I was.

THE COURT:  And what was that?

PROSPECTIVE JUROR 31726:  It was possession of a controlled substance.

THE COURT:  Okay.  When was that?

PROSPECTIVE JUROR 31726:  1991.

THE COURT:  Okay.  And was it a police agency involved?

PROSPECTIVE JUROR 31726:  Orange County.  It was Newport Beach.

THE COURT:  Is there anything about the way that that incident was handled or that experience that causes you to have any concerns about your ability to be fair and impartial to both sides of this case?

PROSPECTIVE JUROR 31726:  I don't think so.  It made me like -- to me I learned a lesson from it.  I really made better choices of who I have in my car and my associations with friends.

THE COURT:  Okay.  There may be police officers or law enforcement agents who may be witnesses in this case. Are you going to be able to put aside what happened to you back in 1991 and judge their credibility and their testimony the

**UNITED STATES DISTRICT COURT**

same way you would that of any other witness?

PROSPECTIVE JUROR 31726:  Yes.

THE COURT:  What about No. 2?

PROSPECTIVE JUROR 31726:  No. 2, I had a friend of mine who had her car stolen.

THE COURT:  Okay.  Anything about the way that case was handled that causes you to have any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR 31726:  No.

THE COURT:  Any other "yes" or affirmative responses to any of the other questions?

PROSPECTIVE JUROR 31726:  No.  Those are the only two.

THE COURT:  All right.  Thank you very much.  You can return to the courtroom next door.

PROSPECTIVE JUROR 31726:  Okay.

(The following proceedings were held in open court in the presence of the Prospective Juror 31984:)

THE COURT:  Good morning.  Could you give us the last five digits of your juror badge number, please.

PROSPECTIVE JUROR 31984:  31984.

THE COURT:  31984?

PROSPECTIVE JUROR 31984:  Yes.

THE COURT:  Okay.  Have you had a chance to look at the criminal case questionnaire?

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR 31984:  Yes, I have.

THE COURT:  Do you have any "yes" answers to any of those questions?

PROSPECTIVE JUROR 31984:  There are a few yeses. A yes on -- for some reason -- okay.  Anyway, so I had a yes on No. 11.  I think maybe ten years ago I gave $10 to some sort of police charity.  I can't remember the name of it.

THE COURT:  Okay.

PROSPECTIVE JUROR 31984:  19 is a yes.  No. 30 is a no, but I do know one of the witnesses.

THE COURT:  Okay.

PROSPECTIVE JUROR 31984:  As a colleague. Jim Spar at UCLA.  That's it.

THE COURT:  Let's talk about I believe you said 19.

PROSPECTIVE JUROR 31984:  Yeah.

THE COURT:  Okay.  Could you tell me what you've experienced, heard, or read about?

PROSPECTIVE JUROR 31984:  I've read the newspapers, and I think it's been in the *L.A. Times*, I'm sure, and NPR.  I also am a researcher, and so I'm a psychiatrist at UCLA, and I do a lot of work with the Department of Mental Health.  So one of our -- we have a contract with the Department of Mental Health now to look at the impact of Assisted Outpatient Treatment which is involuntary outpatient

treatment for individuals of psychiatric illness that are not holdable or eligible for 5150. So as part of that project, I've been -- we've been going to the jail a few times, and I've also worked with people in the Department of Mental Health -- jail mental health services. That was a number of years ago.

But our new project with the Assisted Outpatient Treatment Program is involving mentally -- individuals who are mentally ill -- incompetent to stand trial or that population so that we're kind of peripherally looking at that as part of the evaluation. So that is the extent of my knowledge.

THE COURT: Okay. The things that you've read about concerning abuse in the Los Angeles County jails, would you have any difficulty putting that aside and judging this case based solely on the evidence that you hear here in the courtroom?

PROSPECTIVE JUROR 31984: I don't believe I would. I mean, I've been -- I mean, I've taken a number of tours of Twin Towers as well as Men's Central Jail. As a psychiatrist -- you know I've seen, especially at Twin Towers where they've now sequestered all of those with severe mental illness, I think it's a structural problem. I mean, it's not -- but nevertheless, I have to be honest. It's not where I would want to send someone with severe mental illness. But it's not -- I think it's a failure of mental health policy and not of any individuals.

THE COURT:  Okay.  Can you be a little bit more specific as to what you've heard or -- what you've heard on NPR or what you've read?

PROSPECTIVE JUROR 31984:  I mean, I have read -- well, I'm trying to separate it from what I heard on the allegations from yesterday.  I know that -- and this is kind of vague because I haven't closely followed it.  Just the awareness that, especially around Lee Baca, both -- I think both the -- the -- supposedly the withhold -- trying to, um, I think cover up potential abuse within the jail, and then the other side of it is the possibility of a diagnosis of Alzheimer's.

THE COURT:  Okay.

PROSPECTIVE JUROR 31984:  Which is why, I assume, James Spar is a witness.

THE COURT:  Okay.  Can you put aside what you've read, what you may have heard, and decide this case based solely on the evidence that you see and hear here in court?

PROSPECTIVE JUROR 31984:  I mean, I believe so.

THE COURT:  Is there any doubt in your mind?

PROSPECTIVE JUROR 31984:  No.

THE COURT:  Now, you've indicated that you know Dr. Spar.

PROSPECTIVE JUROR 31984:  Uh-huh.

THE COURT:  Have you worked with Dr. Spar before

UNITED STATES DISTRICT COURT

or just know of him?

PROSPECTIVE JUROR 31984:  I mean, we chat.  I've been at UCLA since -- since 1984 as a resident.  So -- and Dr. Spar is the residency training director.  So I know him, and I teach residents, and I'm a faculty member.  So I see him in that context, and we chat.  I give lectures to residents, and Spar is the one who usually asks me to do that.

THE COURT:  Okay.  Would you have any difficulty in making a decision that might be inconsistent with a position taken by Dr. Spar?

PROSPECTIVE JUROR 31984:  Absolutely not.  I mean, you know, if he's wrong based on -- if he -- I mean, it's -- I mean, I wouldn't make a decision against Dr. Spar just for the reason to take a position against Dr. Spar.  Just whatever the evidence was and if it contradicted Dr. Spar's assertions, I would have no trouble whatsoever.

THE COURT:  It may be that in this trial the issues of mental health or some sort of mental impairment may not be an issue in this trial despite what you've heard.  Would you have any difficulty putting aside anything that you may have heard about impairment in deciding this case based just on the evidence?

PROSPECTIVE JUROR 31984:  I believe I wouldn't.

THE COURT:  I'm sorry?

PROSPECTIVE JUROR 31984:  No.

THE COURT:  Let me see counsel at sidebar.

(The following proceedings were held at sidebar:)

MR. FOX:  Your Honor, we would like you to ask him a question similar to the one we posed in the voir dire related to Alzheimer's disease.  Can he put aside the fact that -- not the fact that but the possibility that, if he learns that Mr. Baca has Alzheimer's, if there's any evidence presented that Mr. Baca has Alzheimer's disease, would he be able to set that aside and consider the evidence or, if the Government proves the case beyond a reasonable doubt, would he be able to convict somebody that would have Alzheimer's disease.

MR. HOCHMAN:  Since I don't believe, unless something happens that the Alzheimer's testimony would come in, this discussion we're having with the statements, Your Honor, the question emphasizes that Mr. Baca has a diagnosis.  I mean, again, it's sort of a two-sided issue.  It would emphasize that he has a diagnosis and then say put it aside if the Government proves its case.  I mean, if the Government wants to emphasize the diagnosis more than the Court's questions have already done, I would -- I would not object to that question, Your Honor.

MR. DIAMANTATOS:  If Your Honor asks the question, if we can be heard after that point.  Once we've heard the witness's answer, that makes sense.

MR. FOX:  Your Honor, also, I do note that he remembered, after he answered that last question from you and I'm not sure -- it sounded like it was a qualification, but he never fully answered that question.

(The following proceedings were held in open court in the presence of the Prospective Juror 31984:)

THE COURT:  Sir, did you indicate that at some point you may have heard that there had been a diagnosis of Mr. Baca in this case?

PROSPECTIVE JUROR 31984:  I think it was on NPR.

THE COURT:  Excuse me.  I'm going to take two minutes.

(A pause in the proceedings.)

THE COURT:  Let me ask, given the fact that you've heard at some point that the defendant may have been diagnosed with Alzheimer's on NPR, would you have any difficulty returning a verdict against that individual who had been diagnosed with Alzheimer's if the Government proves its case beyond a reasonable doubt?

PROSPECTIVE JUROR 31984:  I mean, I'm only thinking about if that's not part of the -- I suppose just thinking logically that, if you knew the difference between right -- not to over think it, but assuming that the -- that the illness was not kind of impairing one's ability to tell the difference between right and wrong, then I would not have

UNITED STATES DISTRICT COURT

trouble with that. I mean, clearly if -- I mean, if there was -- not often, but sometimes people with Alzheimer's can become psychotic, and that psychosis can -- if it clearly wasn't -- if the ability to distinguish, you know, what he was doing was wrong or right, then I would not have a problem with -- giving a verdict of guilty. And if that wasn't part of the -- I guess the argument of the defense that he was impaired by the Alzheimer's. I mean, I'm -- I don't know the law, but I would be able to put that in abeyance with --

THE COURT: I'm sorry?

PROSPECTIVE JUROR 31984: I would be able to put the -- whatever the cognitive difficulties are, I would be able to bracket that off from the actual facts of the case if he was guilty or not guilty.

THE COURT: Okay. Do I understand it correctly that Dr. Spar -- well, let me see if I -- maybe you can explain this to me. Is he a supervisor? Are you guys at the same level?

PROSPECTIVE JUROR 31984: I mean, we're both -- since we're at -- we're both faculty members at UCLA. I'm a full professor. He's a full professor. He doesn't have any supervisory role over me. We're completely independent. I only interact with him in regards to the residency training, and that's entirely kind of voluntary on my part.

THE COURT: Okay. So when he makes assignments

for the residency program -- well, maybe I misunderstood you.
I thought at some point he makes assignments in the residency
program.

PROSPECTIVE JUROR 31984:  I mean, he'll
sometimes -- I mean, he's asked me to give a lecture every once
in a while, not for years.  I -- I mean, my -- most of my time
at UCLA is spent doing research and supervising graduate
students and post-ops, and I run a schizophrenia clinic a half
day a week.  It's really a resident-run clinic.  But I'm not
supervised by Spar or -- yeah.

THE COURT:  It doesn't put you in an awkward --
or does it put you in any type of awkward position if Mr. Spar
was going to be a witness and you're on the jury and you had to
make a decision that might favor him or --

PROSPECTIVE JUROR 31984:  Absolutely not.

THE COURT:  Okay.  All right.  Let me see counsel
at sidebar.

(The following proceedings were held at sidebar:)

MR. FOX:  We have no motion for cause,
Your Honor.  We do ask you to admonish him just like you did
the latter.

MR. HOCHMAN:  Agreed, Your Honor.

THE COURT:  Okay.

(The following proceedings were held in open court
in the presence of the Prospective Juror 31984:)

**UNITED STATES DISTRICT COURT**

THE COURT:  All right.  Sir, we're going to ask that you return to the courtroom next door.  I would ask that you not discuss with any other prospective jurors what we talked about here, nor that you discuss things with the prospective jurors, things you may have read or heard about the case.

PROSPECTIVE JUROR 31984:  Thank you.

THE COURT:  Thank you.

(The following proceedings were held in open court in the presence of the Prospective Juror 33089:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 33089:  Hi.  There you are.

THE COURT:  Here I am.  Could you give us the last five digits of your juror badge number, please.

PROSPECTIVE JUROR 33089:  33089.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 33089:  I did.

THE COURT:  And do you have any "yes" responses to any of those?

PROSPECTIVE JUROR 33089:  A couple of them.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR 33089:  All right.  So No. 2.

THE COURT:  Okay.

PROSPECTIVE JUROR 33089:  My house was

burglarized.

THE COURT:  When was that?

PROSPECTIVE JUROR 33089:  It was about four years ago.

THE COURT:  And were the police called?

PROSPECTIVE JUROR 33089:  The police were called.

THE COURT:  What agency responded?

PROSPECTIVE JUROR 33089:  Devonshire, LAPD.

THE COURT:  Anything about the way that was handled that caused you to have any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR 33089:  No.  They were great, and it was fine.

THE COURT:  And any other "yes" or affirmative responses to any of the other questions?

PROSPECTIVE JUROR 33089:  Yes.  And it was No. 19.

THE COURT:  Okay.

PROSPECTIVE JUROR 33089:  I've heard it mentioned.  There's a mom at school who's a lawyer.

THE COURT:  Okay.

PROSPECTIVE JUROR 33089:  But to be honest, we didn't go into depth about it, and I didn't --

THE COURT:  Okay.  Would you have any difficulty putting aside whatever you two talked about or whatever --

PROSPECTIVE JUROR 33089:  No.  Because I barely remember our conversation.  But I did want to mention I do know someone who was knowledgeable about it.

THE COURT:  Okay.  And you can be fair and impartial to both sides?

PROSPECTIVE JUROR 33089:  Absolutely.

THE COURT:  And you can judge this case based solely on the evidence you hear in the courtroom?

PROSPECTIVE JUROR 33089:  Yes.

THE COURT:  Any other "yes" or affirmative responses to any of the other --

PROSPECTIVE JUROR 33089:  No. 28.  My nephew -- I just tried to contact him to ask if he still does because I don't know if he does.  He worked at the state mental hospital in Atascadero as a guard, and I believe he was technically a police officer.

THE COURT:  Okay.  Anything about that relationship that would cause you to have any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR 33089:  No.

THE COURT:  Okay.  Any other "yes" or affirmative responses to --

PROSPECTIVE JUROR 33089:  No.  That was it.

THE COURT:  Okay.  Thank you very much.

PROSPECTIVE JUROR 33089:  Thank you.

MR. HOCHMAN:  Just a very brief follow-up.

PROSPECTIVE JUROR 33089:  Sure.

MR. HOCHMAN:  If we may approach.

THE COURT:  Yes.

(The following proceedings were held at sidebar:)

MR. HOCHMAN:  She said she heard a mention of it, and then she talked about it not being something they went to -- I just don't know what the "it" is.

THE COURT:  I have a pretty good idea, but I'll ask her.

MR. HOCHMAN:  Thank you, Your Honor.

THE COURT:  Okay.

(The following proceedings were held in open court in the presence of the Prospective Juror 33089:)

THE COURT:  You had indicated -- you had indicated that you had talked to somebody about it.

PROSPECTIVE JUROR 33089:  Uh-huh.

THE COURT:  What's "it"?

PROSPECTIVE JUROR 33089:  Say that again a little louder.

THE COURT:  I believe that you had indicated at some point that you and another lady who was a lawyer talked about it.

PROSPECTIVE JUROR 33089:  It, yes.

THE COURT:  What's "it"?

PROSPECTIVE JUROR 33089:  Good question.  She said that -- she mentioned Twin Towers, and she's a defense attorney.  She didn't like what was going on there.

THE COURT:  Okay.

PROSPECTIVE JUROR 33089:  Uh-huh.

THE COURT:  Again, you can put that discussion that you had with her aside?

PROSPECTIVE JUROR 33089:  Yes.

THE COURT:  Just decide this case based solely on the --

PROSPECTIVE JUROR 33089:  Absolutely.  I never have conversations with her about this.  I don't even know how it came up.

THE COURT:  Okay.

PROSPECTIVE JUROR 33089:  Okay.

THE COURT:  All right.  Thank you.

PROSPECTIVE JUROR 33089:  Uh-huh.

THE COURT:  You can return to the courtroom next door.

(The following proceedings were held in open court in the presence of the Prospective Juror 33134:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 33134:  Good morning.

THE COURT:  Can you give us the last five digits of your badge number, please.

PROSPECTIVE JUROR 33134:  33134.

MR. HOCHMAN:  I'm sorry, Your Honor.  I didn't catch that.

THE COURT:  Could you repeat that, please?

PROSPECTIVE JUROR 33134:  33134.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 33134:  Yes, sir.

THE COURT:  Do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 33134:  Yes, sir.

THE COURT:  Okay.  Which questions?

PROSPECTIVE JUROR 33134:  No. 2.

THE COURT:  Okay.  Could you tell us a little bit about it?

PROSPECTIVE JUROR 33134:  We used to own a fast-food restaurant, and I got robbed at gunpoint.

THE COURT:  Okay.  When was that?

PROSPECTIVE JUROR 33134:  '93.

THE COURT:  And were the police called?

PROSPECTIVE JUROR 33134:  No.  I called.

THE COURT:  You called the police?

PROSPECTIVE JUROR 33134:  Yes.

THE COURT:  Okay.  And what police agency responded?

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR 33134:  Arleta.

THE COURT:  Anything about the way that case was handled that caused you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 33134:  No, sir.

THE COURT:  Okay.  Any other "yes" or affirmative responses to any of the other questions?

PROSPECTIVE JUROR 33134:  No, sir.

THE COURT:  All right.  Thank you very much.  You can return to the courtroom next door.

PROSPECTIVE JUROR 33134:  Thank you.

(The following proceedings were held in open court out of the presence of the jury:)

THE COURT:  I think we have two more.  Once we finish those, we'll take a break.

(The following proceedings were held in open court in the presence of the Prospective Juror 33191:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 33191:  Good morning.

THE COURT:  Can you give us the last five digits of your juror badge number, please.

PROSPECTIVE JUROR 33191:  Do I speak into this?

THE COURT:  Yes.

PROSPECTIVE JUROR 33191:  33191.

THE COURT:  One more time.  33 --

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR 33191:  191.

THE COURT:  Okay.  If you could just hold that microphone up.

Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 33191:  Yes.  Yes.

THE COURT:  Okay.  Do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 33191:  Yes.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR 33191:  No. 1 and No. 2.

THE COURT:  Okay.  Let's start with No. 1.

PROSPECTIVE JUROR 33191:  My uncle, he was in jail and prison for fraud and robbery.

THE COURT:  Okay.  Is he still incarcerated?

PROSPECTIVE JUROR 33191:  No.

THE COURT:  When was that?

PROSPECTIVE JUROR 33191:  Early 2000.

THE COURT:  Okay.  Were you and your uncle close?

PROSPECTIVE JUROR 33191:  Yes.  Yeah.  We were living together.

THE COURT:  Okay.  Anything about the way his case was handled that causes you to have any concerns about your ability to be fair and impartial to both sides of this case?

PROSPECTIVE JUROR 33191:  No.

THE COURT:  I'm sorry?

PROSPECTIVE JUROR 33191:  I'm sorry.  What was that?

THE COURT:  Okay.  I'd like to know if you have any concerns about the way that his case was handled.

PROSPECTIVE JUROR 33191:  If I have any concerns?

THE COURT:  Uh-huh.

PROSPECTIVE JUROR 33191:  No.

THE COURT:  Okay.  Do you think you can put aside the fact that he may have been prosecuted for some offense and judge this case based solely on the evidence that you hear here in court?

PROSPECTIVE JUROR 33191:  I'm not sure.

THE COURT:  Okay.  Was there a police agency that investigated your uncle?

PROSPECTIVE JUROR 33191:  I believe so.

THE COURT:  Okay.  Do you know?

PROSPECTIVE JUROR 33191:  Not for sure.

THE COURT:  Okay.

MR. HOCHMAN:  Your Honor, I apologize.  If she can put the microphone closer to her mouth.

PROSPECTIVE JUROR 33191:  I'm not sure.

MR. HOCHMAN:  Thank you.

THE COURT:  Have you had occasions to talk with

him about his case?

PROSPECTIVE JUROR 33191:  No.

THE COURT:  Okay.  Do you think you can put aside his case -- let me ask you this.

Are you going to hold it against either side in this case about what happened to your uncle?  I take it your uncle was prosecuted by a law enforcement agency.

PROSPECTIVE JUROR 33191:  Uh-huh.  Yes.

THE COURT:  Correct?

PROSPECTIVE JUROR 33191:  Correct.

THE COURT:  Okay.  There's going to be law enforcement agents that are going to be testifying in this case.  So can you separate what happened to your uncle and decide this case based solely on the evidence you hear here in court?

PROSPECTIVE JUROR 33191:  Yes.

THE COURT:  Is there any doubt in your mind?

PROSPECTIVE JUROR 33191:  No.

THE COURT:  Do you have any other "yes" or affirmative responses to any of the other questions?

PROSPECTIVE JUROR 33191:  No. 2.

THE COURT:  Okay.  Can you tell us about that?

PROSPECTIVE JUROR 33191:  I was the victim of -- it's not sure yet because I dropped everything.  In Orange County somebody either -- they were impersonating an

officer and sexually assaulted me.

THE COURT:  Okay.  When was that?

PROSPECTIVE JUROR 33191:  That was also in the early 2000, like 2003 or so.

THE COURT:  Okay.  Can you put that aside and be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 33191:  I don't know. Honestly, I don't know.

THE COURT:  What do you do for a living?

PROSPECTIVE JUROR 33191:  I work at Children's Hospital as a financial counselor.

THE COURT:  What is it that concerns you about your ability to put aside what happened to you in trying to be a juror in this case?  Is there anything that bothers you about that?

PROSPECTIVE JUROR 33191:  I'm not sure.  Sorry.

THE COURT:  That's okay.  Would you be more comfortable talking about it over at sidebar rather than from there?

PROSPECTIVE JUROR 33191:  Sure.

THE COURT:  Okay.

(The following proceedings were held at sidebar:)

THE COURT:  Okay.  So is there anything that bothers you about being a juror in this case?

PROSPECTIVE JUROR 33191:  No.

215

THE COURT:  Okay.  So you'd be able to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 33191:  I can try.

THE COURT:  Huh?

PROSPECTIVE JUROR 33191:  I can try.

THE COURT:  Okay.  Is there any doubt in your mind about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 33191:  No.

THE COURT:  Okay.  Is there any reason why you shouldn't be a juror in this case?

PROSPECTIVE JUROR 33191:  No.

THE COURT:  Okay.  Now, I thought what you said was somebody was masquerading as a law enforcement officer when you were victimized.

PROSPECTIVE JUROR 33191:  It seemed so, yeah.

THE COURT:  Okay.  Are you able -- have you been able to put that aside, or are you having any residual effects of that episode?

PROSPECTIVE JUROR 33191:  It lingers still.

THE COURT:  Do you have any issues with law enforcement officers as a result of what happened to you back in 2000?

PROSPECTIVE JUROR 33191:  No.

THE COURT:  Okay.  Any reason why you shouldn't

UNITED STATES DISTRICT COURT

be seated as a juror in this case?

PROSPECTIVE JUROR 33191:  No.

THE COURT:  Okay.  Anything else you'd like to tell us?

PROSPECTIVE JUROR 33191:  No.  That's all.

THE COURT:  Okay.  I'm going to ask you if you just have a seat back there for a second.  We'll be with you in just a minute.  Thank you.

(The following proceedings were held at sidebar:)

THE COURT:  Okay.

MR. HOCHMAN:  She had mentioned that her uncle was in a jail, in prison.  If you could inquire if that's the jails that we're dealing with.

THE COURT:  Okay.

(The following proceedings were held in open court in the presence of the Prospective Juror 33191:)

THE COURT:  You had indicated at some point that your uncle was in a prison or jail.  Do you recall what jail he was in?

PROSPECTIVE JUROR 33191:  Jail right here in L.A.

THE COURT:  Okay.

PROSPECTIVE JUROR 33191:  The one that's here close by.

THE COURT:  Do you have that microphone?

PROSPECTIVE JUROR 33191:  Yes.  In L.A.

**UNITED STATES DISTRICT COURT**

THE COURT:  So it was a jail here locally?

PROSPECTIVE JUROR 33191:  Yes.

THE COURT:  Do you recall what the name of the jail was?

PROSPECTIVE JUROR 33191:  L.A. County jail.

THE COURT:  Did you ever visit him in the jails?

PROSPECTIVE JUROR 33191:  Yes.

THE COURT:  Okay.  Anything about what you saw when you visited him that caused you to have any concerns about your ability to be fair and impartial in this case?

PROSPECTIVE JUROR 33191:  No.

THE COURT:  Okay.  How many times did you go over to the jails?

PROSPECTIVE JUROR 33191:  Many times.

THE COURT:  Okay.  Can you put that aside, whatever you may have seen or heard over there when you were visiting, and decide this case based solely on the evidence?

PROSPECTIVE JUROR 33191:  Yes.

THE COURT:  Okay.  Do you know how much time your uncle spent in the jail?

PROSPECTIVE JUROR 33191:  Sometimes half a year to a year, I believe.

THE COURT:  Okay.  Have you and he ever had conversations about the time he spent over in the jails?

PROSPECTIVE JUROR 33191:  No.  No.  He would just

say how it was in there and, you know --

THE COURT:  Okay.  Has anything that you and he have talked about about how things were in there caused you to have any concerns about your ability to be fair and impartial in this case?

PROSPECTIVE JUROR 33191:  No.

THE COURT:  All right.  Thank you very much.  You can return to the courtroom next door.

(The following proceedings were held in open court in the presence of the Prospective Juror 33591:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 33591:  Good morning.

THE COURT:  Can you give us the last five digits of your juror badge number.

PROSPECTIVE JUROR 33591:  33591.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 33591:  I did.

THE COURT:  And do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 33591:  Question No. 2.

THE COURT:  Okay.  Could you tell us a little bit about that.

PROSPECTIVE JUROR 33591:  Victim of a crime, home vehicle break-ins, and a purse theft.

THE COURT:  Okay.  Anything about any of those experiences that causes you to have any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR 33591:  No.

THE COURT:  Any other "yes" or affirmative responses to any of the other questions?

PROSPECTIVE JUROR 33591:  Questions No. 3 and 4, whether I have acquaintances in the court system, I have an acquaintance who is a superior court judge in Ventura County and a friend who is a deputy district attorney in Los Angeles.

THE COURT:  Okay.  The judge that you're acquainted with, is that a personal acquaintance?

PROSPECTIVE JUROR 33591:  It is a -- the husband of a friend and not very close.

THE COURT:  Okay.  Have you ever had any discussions with your friend or the judge about the work that he does?

PROSPECTIVE JUROR 33591:  Very limited but on a few social occasions.

THE COURT:  Okay.  Do you have any problem putting any discussion you've had -- do you have any problem putting those aside?

PROSPECTIVE JUROR 33591:  No problem.

THE COURT:  And the deputy district attorney --

PROSPECTIVE JUROR 33591:  Correct.

UNITED STATES DISTRICT COURT

THE COURT:  -- is that a friend?

PROSPECTIVE JUROR 33591:  That is a friend.  I see him on a weekly basis, once or twice a week.

THE COURT:  Do you ever talk to him about the work that he does?

PROSPECTIVE JUROR 33591:  I have.

THE COURT:  Okay.  Anything about that relationship and the things that you've talked about cause you any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR 33591:  No.

THE COURT:  Do you have any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR 33591:  Question No. 11, my husband on a one-time basis donated to the Police Activities League.  That was not a regular donation for him.  He did it on -- one year.

THE COURT:  Okay.

PROSPECTIVE JUROR 33591:  My husband is a U.S. Navy veteran, 26 years of service.  He now works for the Department of Defense.  He has had friends in law enforcement and has on occasion gone on ride-alongs with law enforcement officers.

THE COURT:  Would you be able to judge the credibility of a law enforcement officer the same way you would

that of any other witness in this case?

PROSPECTIVE JUROR 33591:  Yes.

THE COURT:  Any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR 33591:  Question 28, again, my husband has military service.  So he has had some sort of interest in law enforcement and training.  But personally, no.

THE COURT:  Okay.  Anything else?

PROSPECTIVE JUROR 33591:  That's all I had.

THE COURT:  The friend that you have -- well, your friend that's a deputy district attorney, you had discussions with that person about the type of work they did?

PROSPECTIVE JUROR 33591:  He is a prosecutor for the mental health court.  I have spoken to him about his work there.

THE COURT:  Okay.  Do you have any difficulty putting aside the things you and he may have talked about and decide this case based solely on the evidence?

PROSPECTIVE JUROR 33591:  No, Your Honor.

THE COURT:  Okay.  Thank you very much.  You can return to the courtroom next door.

(The following proceedings were held in open court out of the presence of the jury:)

THE COURT:  Okay.  We're going to take about a 15-minute break, and then we'll resume.

Anything you need to take up?

MR. HOCHMAN:  No, Your Honor.

MR. FOX:  No, Your Honor.

THE COURT:  All right.  There may be jurors out in the hallway; so please be careful in not addressing them.

MR. FOX:  Yes, Your Honor.

MR. HOCHMAN:  Thank you, Your Honor.

(A recess was taken at 10:11 a.m.)

(The following proceedings were held in open court in the presence of the Prospective Juror 35728:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 35728:  Hello.

THE COURT:  Could you give us the last five digits of your juror badge number, please?

PROSPECTIVE JUROR 35728:  35728.

THE COURT:  Have you had a chance to review the criminal case questionnaire?

PROSPECTIVE JUROR 35728:  Yes.

THE COURT:  And do you have any "yes" or affirmative --

MR. HOCHMAN:  I'm sorry, Your Honor.  I don't mean to interrupt.  I heard 3573, and I'm looking at the list --

THE COURT:  35728.

MR. HOCHMAN:  Thank you.

UNITED STATES DISTRICT COURT

PROSPECTIVE JUROR 35728:  What was your question?

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 35728:  Yes.

THE COURT:  Do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 35728:  Yes.

THE COURT:  Which ones?

PROSPECTIVE JUROR 35728:  The first one, second one, No. 10.

THE COURT:  Okay.

PROSPECTIVE JUROR 35728:  No. 19, 25, 28.  I think that was about it.

THE COURT:  Okay.  Let's start with No. 1.

PROSPECTIVE JUROR 35728:  Yeah.  I have had people -- some of my family members actually convicted.

THE COURT:  Okay.  Do you recall when those convictions were?

PROSPECTIVE JUROR 35728:  It was a while back on some of them, and then I've known some of my friends as well.

THE COURT:  Okay.  Have any of those people actually been incarcerated?

PROSPECTIVE JUROR 35728:  Yes.

THE COURT:  Okay.  Have those been family members?

PROSPECTIVE JUROR 35728:  Yes.  Some of them.

THE COURT:  And do you know what facility they were incarcerated at?

PROSPECTIVE JUROR 35728:  Well, they started off in the county jail here in L.A.  The last place they were transferred to was San Luis Obispo, the facility.

THE COURT:  Okay.  Did you ever visit any family members while they were incarcerated at the county jail?

PROSPECTIVE JUROR 35728:  Yes.

THE COURT:  Okay.  Is there anything, as a result of your visiting the county jail, that caused you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 35728:  Nothing I saw, but it's mostly like what you hear.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR 35728:  So --

THE COURT:  Tell me what it is that you've heard.

PROSPECTIVE JUROR 35728:  I just hear like a lot of stories like in county jail like how they're treated and stuff like that.  I don't know if I should say this too, but also part of my major, we -- my education, we saw a lot of cases like stuff like bringing some -- you know.

THE COURT:  Okay.  What's your major?

PROSPECTIVE JUROR 35728:  Political science with

an emphasis of prelaw.

THE COURT:  Are you able to put aside things that you've heard about the county jail and decide this case based solely on the evidence you hear here in court?

PROSPECTIVE JUROR 35728:  I hope so.

THE COURT:  Okay.  We need a commitment from each juror that they're going to be able to put aside things they've heard or even things they've seen and judge this case based solely on the evidence that you hear and see here in court.

Can you do that?

PROSPECTIVE JUROR 35728:  I'm not sure.  Like, I don't want to -- yeah.  I don't want to say yes or no because I'm not really -- like, I've heard a lot and, like I said, part of my major was looking into cases.  Sometimes it's really hard, you know.

THE COURT:  Sure.  Tell me about question 19.

PROSPECTIVE JUROR 35728:  Well, I mean, like I said, I have a lot of friends that have -- for reasons they have been in the jail, and they have told me of situations inside where they're just like what is going on, you know, that they shouldn't be treated a certain way.  But you know --

THE COURT:  Tell me -- can you be a little more specific as to what you've heard?

PROSPECTIVE JUROR 35728:  Well, I had actually a family member where they said that they actually had grabbed a

guy and they were beating him bad.

THE COURT:  It was a family member that was being beaten?

PROSPECTIVE JUROR 35728:  No.  No.  He went inside, and he was just -- well, he was in there for a couple days.

THE COURT:  Right.

PROSPECTIVE JUROR 35728:  And he just saw some stuff that he's, like, this is not right.

THE COURT:  So he saw somebody being abused?

PROSPECTIVE JUROR 35728:  Yes.

THE COURT:  Okay.  Can you put aside what you've heard and seen about abuse in the jails and decide this case based solely on what you hear and see here in court?

PROSPECTIVE JUROR 35728:  I can try.

THE COURT:  Would that be difficult for you?

PROSPECTIVE JUROR 35728:  Yeah.  I believe so.

THE COURT:  Okay.  What do you do for a living?

PROSPECTIVE JUROR 35728:  I work for a cell phone company.

THE COURT:  All right.  I'm going to excuse you. You can return to the jury assembly room on the first floor.

PROSPECTIVE JUROR 35728:  Okay.

THE COURT:  Okay.  Does either side wish to be heard?

**UNITED STATES DISTRICT COURT**

MR. HOCHMAN:  No, Your Honor.

MR. FOX:  No, Your Honor.

THE COURT:  I'm sorry.  Is that your questionnaire?

PROSPECTIVE JUROR 35728:  Yes.

THE COURT:  Can we have that, please.

(The following proceedings were held in open court in the presence of the Prospective Juror 35892:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 35892:  Good morning.

THE COURT:  Could you give us the last five digits of your juror badge number?

PROSPECTIVE JUROR 35892:  35892.

THE COURT:  Have you had a chance to look over the criminal case questionnaire?

PROSPECTIVE JUROR 35892:  Yes, I did.

THE COURT:  And do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 35892:  I think question 29.

THE COURT:  Okay.  Question 29, would you have difficulty -- why don't you explain to me your answer to question 29.

PROSPECTIVE JUROR 35892:  I think many of the court -- you know, they instruct us what to do.  I don't understand what the question --

THE COURT:  Okay.  The question basically says the Court has a duty to instruct the jury on the law that applies.  We want to make sure that you're going to be able to set aside anything -- any feelings about what the law is or ought to be and be able to follow the Court's instructions.  So would you have any difficulty following the Court's instructions in this case?

PROSPECTIVE JUROR 35892:  No.

THE COURT:  Okay.  Do you have any other "yes" responses to any of the other questions?

PROSPECTIVE JUROR 35892:  No.

THE COURT:  All right.  Thank you very much.  You can return to the courtroom next door.

PROSPECTIVE JUROR 35892:  Okay.

(The following proceedings were held in open court in the presence of the Prospective Juror 38377:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 38377:  Good morning.

THE COURT:  If you could tell us the last five digits of your juror badge number, please.

PROSPECTIVE JUROR 38377:  38377.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 38377:  Yes.

THE COURT:  Do you have any "yes" responses to

any of those questions?

PROSPECTIVE JUROR 38377:  Yes.

THE COURT:  Which ones?

PROSPECTIVE JUROR 38377:  No. 1, No. -- do I keep going?

THE COURT:  Sure.  Why don't we just listen.  No. 1.

PROSPECTIVE JUROR 38377:  1, No. 3, No. 7, 17, 25, and 38.

THE COURT:  Why don't we start with No. 1.

PROSPECTIVE JUROR 38377:  Okay.

THE COURT:  Can you tell us a little bit about that.

PROSPECTIVE JUROR 38377:  My father was arrested and detained for about a year.

THE COURT:  Okay.  Who was he arrested by?

PROSPECTIVE JUROR 38377:  LAPD.

THE COURT:  Okay.  And do you know what that was for?

PROSPECTIVE JUROR 38377:  Yes.

THE COURT:  And what was it for?

PROSPECTIVE JUROR 38377:  For the murder of my mother.

THE COURT:  And was he at some point housed locally here?

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR 38377:  For a while he was.

THE COURT:  Do you recall what jail he was --

PROSPECTIVE JUROR 38377:  I think he was at Twin Towers.

THE COURT:  Okay.  Did you ever visit him at Twin Towers?

PROSPECTIVE JUROR 38377:  Yes.

THE COURT:  Anything that you saw or heard during those visits that caused you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 38377:  No.

THE COURT:  Anything about the way your father's case was handled that caused you to have any concerns about your ability to be fair to both the Government and the defendant?

PROSPECTIVE JUROR 38377:  Yes.

THE COURT:  Okay.  Can you tell me what that is?

PROSPECTIVE JUROR 38377:  I just felt that there was a lot of things that happened during the trial, things that were missed, things that were kind of thrown in there and weren't proven a hundred percent.  Just didn't lay well with me.

THE COURT:  Okay.  Can you put those concerns that you had about your father's case and decide this case based solely on the evidence that you hear here in court?

PROSPECTIVE JUROR 38377:  I think so.

THE COURT:  Is there any doubt in your mind?

PROSPECTIVE JUROR 38377:  No.

THE COURT:  How about question 3?

PROSPECTIVE JUROR 38377:  I would say that, since my father was released and they never reopened the case, that just didn't sit well with me.

THE COURT:  And again, you can put that aside and decide this case based solely on the evidence you hear here in court?

PROSPECTIVE JUROR 38377:  I think so.

THE COURT:  Any doubt in your mind?

PROSPECTIVE JUROR 38377:  A little.

THE COURT:  Can you commit to both sides that you're going to look at the evidence in this case to make a decision and put aside what happened with your father?

PROSPECTIVE JUROR 38377:  I will definitely try.

THE COURT:  Okay.  Well, at some point what we're trying to do is get jurors who will judge this case with an open mind and leave any baggage on the courthouse steps.

PROSPECTIVE JUROR 38377:  Right.

THE COURT:  We want the jurors to be able to commit to both sides that they're going to look at the evidence and come to a decision and not base that decision on something that may have happened to them at some point.  So can you

commit to both sides that you can do that?

PROSPECTIVE JUROR 38377:  I think so.

THE COURT:  Any doubts?

PROSPECTIVE JUROR 38377:  It's hard to say.

THE COURT:  Okay.  What about question 17?

PROSPECTIVE JUROR 38377:  Just that I've heard a lot.  My brother, who lives with me, is constantly watching the news, and he's constantly making his opinions, and he's very strong at making opinions.  So I know he knows or has followed this case, and it's just, you know, having to listen to him all the time and having the news on all the time.

THE COURT:  Can you put aside things that he's talked about and decide this case based solely on the evidence?

PROSPECTIVE JUROR 38377:  I think so.

THE COURT:  Would you have difficulty?

PROSPECTIVE JUROR 38377:  A little because he's very persistent.

THE COURT:  Let me see counsel at sidebar.

(The following proceedings were held at sidebar:)

THE COURT:  All right.  If somebody wants me to ask additional questions, I will.  But I'm inclined to let her go at this point.

MR. HOCHMAN:  I agree, Your Honor.

MR. FOX:  I agree.

THE COURT:  All right.

(The following proceedings were held in open court in the presence of the Prospective Juror 38377:)

THE COURT:  All right.  We're going to excuse you.  You can return to the jury assembly room on the first floor.

PROSPECTIVE JUROR 38377:  Okay.

THE COURT:  And if you can just leave that questionnaire on the chair.

PROSPECTIVE JUROR 38377:  Sure.

(The following proceedings were held in open court in the presence of the Prospective Juror 38687:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 38687:  Good morning.

THE COURT:  I'm going to need a break for about two minutes, and we'll be right back.

PROSPECTIVE JUROR 38687:  No problem.

(A pause in the proceedings.)

THE COURT:  Okay.  Could you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR 38687:  38687.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 38687:  Yes.

THE COURT:  Do you have any "yes" answers to any of those questions?

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR 38687:  I do.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR 38687:  No. 2 and No. 35.

THE COURT:  Okay.  Let's try No. 2 first.

PROSPECTIVE JUROR 38687:  Okay.  My sister and I, when we were very young, were illegally detained from our parents and put into foster care.  It has since been proven that it was guilty -- my mom took the county to court.

THE COURT:  Okay.  Can you put that experience aside and judge this case based solely on the evidence?

PROSPECTIVE JUROR 38687:  Yes.

THE COURT:  Okay.  And you're not going to hold it against one side or the other as a result of what happened years ago?

PROSPECTIVE JUROR 38687:  No.

THE COURT:  Okay.  And what about question 35?

PROSPECTIVE JUROR 38687:  My stepmom is actually a juror as well.

THE COURT:  In this case?

PROSPECTIVE JUROR 38687:  In this case.

THE COURT:  If you were both seated on the same -- in the same jury, would that pose any problem for you?

PROSPECTIVE JUROR 38687:  No.

THE COURT:  Any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR 38687:  The only one that I was questionable was 13 just because of the -- what I mentioned earlier with my sister and I being taken away.  But my question was what agency if that mattered because it was social workers.  But I don't believe it applies in this case just because I have nothing against law enforcement.

THE COURT:  Okay.  Any other "yes" responses?

PROSPECTIVE JUROR 38687:  No.

THE COURT:  Okay.  Yes?

MR. HOCHMAN:  Your Honor, just a very quick follow-up at sidebar, please.

THE COURT:  All right.

(The following proceedings were held at sidebar:)

MR. HOCHMAN:  Your Honor, with the issue of the stepmother, if you could inquire, if they ended up both on the jury, would she have difficulty, if she took one position and her stepmother took a different position, being able to deliberate because of the nature of their relationship?

THE COURT:  Okay.

MR. HOCHMAN:  Thank you.

(The following proceedings were held in open court in the presence of the Prospective Juror 38687:)

THE COURT:  If you and your stepmother were both seated on this jury and you felt one way and she felt another way, would that pose any difficulty for you?

UNITED STATES DISTRICT COURT

PROSPECTIVE JUROR 38687:  No.

THE COURT:  So I take it that you'd be able to fully express your views even if they differed from those of your stepmother?

PROSPECTIVE JUROR 38687:  Correct.

THE COURT:  All right.  Thank you very much.

PROSPECTIVE JUROR 38687:  Thank you.

(The following proceedings were held in open court in the presence of the Prospective Juror 38895:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 38895:  Good morning.

THE COURT:  Could you tell us the last five digits of your juror badge number?

PROSPECTIVE JUROR 38895:  38895.

THE COURT:  Have you had a chance to look over the criminal case questionnaire?

PROSPECTIVE JUROR 38895:  Yes.

THE COURT:  And do you have any "yes" answers to any of those questions?

PROSPECTIVE JUROR 38895:  Yes.

THE COURT:  Which ones?

PROSPECTIVE JUROR 38895:  Have any of your immediate family or anyone else ever been a member of or made a charitable donation or otherwise provided support to the --

THE COURT:  Which number is that?

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR 38895:  It's No. 11.

THE COURT:  Okay.

PROSPECTIVE JUROR 38895:  For the police, yes. My father and I think -- you know, he was a cop in Philly, and I think that he also made me a member.

THE COURT:  And so you -- at that time you were providing a donation?

PROSPECTIVE JUROR 38895:  I don't think I was, and I'm not sure if he was.  But I know that he would like -- I don't know if it was a place to go and hang out, but he would go there.  And we were also -- there was a bank or -- I was pretty young; so I don't really remember.

THE COURT:  Okay.  Does that experience cause you any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 38895:  No.

THE COURT:  Okay.  Any other "yes" responses to any of the other questions?

PROSPECTIVE JUROR 38895:  No. 28.

THE COURT:  Okay.  If you could tell us a little bit about that.  Is that your father again?

PROSPECTIVE JUROR 38895:  Yeah.  He was a cop and a detective, and then I was married to an Army captain.

THE COURT:  Okay.  What did your husband do in the military?  What was his job?

PROSPECTIVE JUROR 38895:  He served in Iraq for two deployments, and he was a captain.

THE COURT:  Okay.  Any other "yes" or affirmative responses?

PROSPECTIVE JUROR 38895:  No. 31.

THE COURT:  Okay.

PROSPECTIVE JUROR 38895:  I wrote you a letter, a little letter.

THE COURT:  Okay.  That's not going to be a problem.  Just let us know if you need a break.

PROSPECTIVE JUROR 38895:  Okay.

THE COURT:  We'll be happy to accommodate you.

PROSPECTIVE JUROR 38895:  Thank you.

THE COURT:  Okay.  Any other "yes" or affirmative responses?

PROSPECTIVE JUROR 38895:  No.

THE COURT:  Thank you very much.

PROSPECTIVE JUROR 38895:  Thank you.

THE COURT:  Let me see counsel at sidebar.

(The following proceedings were held at sidebar:)

THE COURT:  I think the last prospective juror was 38895.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  She wrote me a note that says, *Just to let you know, three weeks ago I had a miscarriage at four*

**UNITED STATES DISTRICT COURT**

239

*months of pregnancy that's caused me to have to use the ladies' room more often.  I wasn't sure if that would hinder my ability to be a good juror.  I felt you should know.*

MR. HOCHMAN:  Thank you.

MR. DIAMANTATOS:  Thank you, Judge -- Your Honor.

(The following proceedings were held in open court in the presence of the Prospective Juror 39558:)

THE COURT:  Good morning.  Could you give us the last five digits of your juror badge number.

PROSPECTIVE JUROR 39558:  39558.

THE COURT:  39558?

PROSPECTIVE JUROR 39558:  Yes.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 39558:  Yes, Your Honor.

THE COURT:  And do you have any "yes" answers to any of those questions?

PROSPECTIVE JUROR 39558:  No, sir.

THE COURT:  Okay.  Thank you very much.  You can return to the courtroom next door.

PROSPECTIVE JUROR 39558:  Okay.

(The following proceedings were held in open court in the presence of the Prospective Juror 41742:)

THE COURT:  Could you give us the last five digits of your juror badge number.

PROSPECTIVE JUROR 41742:  It is 41742.

THE COURT:  And have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 41742:  I have.

THE COURT:  Do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 41742:  I do not.

THE COURT:  Okay.  Thank you very much.  You can return to the courtroom next door.

PROSPECTIVE JUROR 41742:  Okay.

(The following proceedings were held in open court out of the presence of the jury:)

THE COURT:  All right.  I have a note from one of the jurors, No. 71483.  In essence, the note says that she was informed by her employer that they won't cover her jury service because she's still a probationary employee.  And therefore, she's requesting a hardship.  So I think I'll have her in before we leave for lunch today to see if we can resolve it.

(The following proceedings were held in open court in the presence of the Prospective Juror 43866:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 43866:  Good morning.

THE COURT:  Can you give us the last five digits of your juror badge number, please?

PROSPECTIVE JUROR 43866:  43866.

**UNITED STATES DISTRICT COURT**

THE COURT:  43866?

PROSPECTIVE JUROR 43866:  Yes.

THE COURT:  Okay.  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 43866:  Yes.

THE COURT:  Do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 43866:  No.

THE COURT:  Okay.  You can return to the courtroom next door.

(The following proceedings were held in open court in the presence of the Prospective Juror 44020:)

THE COURT:  Good morning.  Could you give us the last five digits of your juror badge number, please.

PROSPECTIVE JUROR 44020:  44020.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 44020:  Yes.

THE COURT:  And do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 44020:  I only had one question on No. 10.

THE COURT:  Okay.

PROSPECTIVE JUROR 44020:  Asking about anyone close.  How close are we talking?  I know it's an open-ended

UNITED STATES DISTRICT COURT

question.

THE COURT:  Good friend, I guess.

PROSPECTIVE JUROR 44020:  I'd say no then.

THE COURT:  Okay.  Do you know any people who serve as law enforcement officers?

PROSPECTIVE JUROR 44020:  Yes.  I know people.

THE COURT:  Okay.  Would you have any difficulty deciding the credibility of a law enforcement officer based on the people that you know?

PROSPECTIVE JUROR 44020:  No.

THE COURT:  Okay.  You can decide their testimony and decide their credibility the same way you would that of any other witness?

PROSPECTIVE JUROR 44020:  Yes.

THE COURT:  Any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR 44020:  No.

THE COURT:  All right.  Thank you very much.  You can return to the courtroom next door.

(The following proceedings were held in open court in the presence of the Prospective Juror 44083:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 44083:  Good morning.

THE COURT:  Can you give us the last five digits of your juror badge number?

PROSPECTIVE JUROR 44083:  44083.

THE COURT:  Did you have a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 44083:  I did.

THE COURT:  Did you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 44083:  Two.

THE COURT:  Two questions?

PROSPECTIVE JUROR 44083:  Two questions.

THE COURT:  Okay.  Which ones?  Do you recall?

PROSPECTIVE JUROR 44083:  So one, I think, was the have I ever been arrested.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR 44083:  So that was yes.

THE COURT:  Okay.  Can you explain that to us?

PROSPECTIVE JUROR 44083:  It was a driving under the influence.

THE COURT:  When was that?

PROSPECTIVE JUROR 44083:  Roughly 20 years ago.

THE COURT:  Okay.  Anything about the way that case was handled that caused you to have concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 44083:  No.

THE COURT:  Okay.  And what was the other question?

UNITED STATES DISTRICT COURT

244

PROSPECTIVE JUROR 44083:  Relative in the Armed Forces, I think.  So I have a brother in -- he serves as diplomatic protection for various federal agencies.  I don't know if that would count, per se, as law enforcement though.

THE COURT:  Okay.  Anything about your relationship with him that would cause you to have concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 44083:  No.

THE COURT:  Okay.  Thank you very much.  You can return to the courtroom next door.

(The following proceedings were held in open court in the presence of the Prospective Juror 46328:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 46328:  Good morning.

THE COURT:  Can you give us the last five digits of your juror badge number, please?

PROSPECTIVE JUROR 46328:  46328.

THE COURT:  Okay.  46328?

PROSPECTIVE JUROR 46328:  Yes.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 46328:  Yes, I did.

THE COURT:  Do you have any "yes" responses to any of those questions?

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR 46328:  I put an asterisk.

THE COURT:  Okay.

PROSPECTIVE JUROR 46328:  But not a yes.

THE COURT:  Okay.  Which question did you put an asterisk?

PROSPECTIVE JUROR 46328:  Just No. 2.

THE COURT:  Okay.

PROSPECTIVE JUROR 46328:  It's not -- I'm not necessarily a victim.  I was a witness for a crime.  I was subpoenaed and had to present what was my eyewitness on the case.  I wasn't a willing witness, but I did it, and it just went through and everything.

THE COURT:  Okay.  Anything about that experience that caused you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 46328:  Well, for that case, like I witnessed a crime and everything.  So someone was trying to steal the car.  It was my friend's car, and I was about to get in the car and the guy came out and impersonated a cop.  And so he flashed me some badge, and I said what?  What?  What is going on?  It was at night.  We got the license plate because he pulled up behind.  So we saw the plates and everything.  So we reported it, and he happens to live down the street where I live.  And so I'm like, oh, my God.  Like, I don't have a dog anymore, but I did have a dog, and I used to

walk down the street.  Like, I tried to avoid that house.
Like, I'd go around.  If I'd go down the street, I would try
not to, like, park around that area because he's still -- I
don't know, if he sees me down the street, walking down the
street.  So it wasn't necessarily to me.

THE COURT:  Okay.  So can you put aside that
experience and judge this case based solely on the evidence you
hear here in the courtroom?

PROSPECTIVE JUROR 46328:  Yeah.  This is
different than my personal witness.

THE COURT:  Okay.  Any other "yes" or affirmative
responses to any of the other questions?

PROSPECTIVE JUROR 46328:  No.

THE COURT:  Okay.  Thank you very much.

MR. FOX:  Your Honor, may we have a sidebar?

THE COURT:  Yes.

MR. FOX:  Thank you.

THE COURT:  Did you end up testifying as a
witness in that case?

PROSPECTIVE JUROR 46328:  I'm sorry.  What?

THE COURT:  Did you end up testifying as a
witness in that case?

PROSPECTIVE JUROR 46328:  Yes.

THE COURT:  Do you recall what police agency was
involved?

PROSPECTIVE JUROR 46328:  Glendale P.D.

THE COURT:  When was that?

PROSPECTIVE JUROR 46328:  2008, I think.  So a while.

THE COURT:  Okay.

(The following proceedings were held at sidebar:)

MR. FOX:  The only issue I'd like to follow her up, she said she was not a willing witness.  I don't know how she felt about the fact she was compelled to testify in that case, and there would be at least one witness here who doesn't want to be here.  I just want to hear her answer on that issue.

THE COURT:  Only one?

MR. FOX:  And two attorneys who don't want to be here and a judge.

(The following proceedings were held in open court in the presence of the Prospective Juror 46328:)

THE COURT:  At one point you said you were not a willing witness.  What did you mean by that?

PROSPECTIVE JUROR 46328:  Well, I just felt like I didn't want -- you know, when we -- it was at night.  I know he kind of saw me, but I didn't know that he was my neighbor until we had to go -- basically like half an hour later the cop had told us, we found the car.  I'm like, oh, okay.  So we get in the car on the corner where we live, and we drive down the street and stop in front of the house, the house of the person.

248

I said, oh, my.  He's my neighbor.

So I wasn't really happy of the idea -- I just didn't want to be like anywhere -- cautious because he's my neighbor.  Like, my friend doesn't live there.  He doesn't have to see my friend ever really.  But I, on the other hand, live on that street.  So I just didn't want to be like, when he sees me in the court and on the stand telling him -- I mean, I'm just stating the facts what had happened that day.  But it was just like I didn't want him to be like, oh.  I don't know this person.  I don't know if he's crazy, you know.  I just lived literally down the street from him.

THE COURT:  So it was really more or less as a result of finding out that this person lived --

PROSPECTIVE JUROR 46328:  So close to where I was.  Yeah.

THE COURT:  But you ended up actually testifying in that case?

PROSPECTIVE JUROR 46328:  Yeah.  They said I had to.

THE COURT:  Okay.  There may be witnesses in this case who may be compelled to give testimony in this case.  Are you going to be able to judge their testimony the same way you would that of any other witness?

PROSPECTIVE JUROR 46328:  Well, I think I would be able to because, if -- when I came in as a witness, I just

had to say all the facts.  This is who I am, and this is my story.  This is what I saw.  This is my experience.  There's nothing I can -- you know, there's nothing else to add or anything.  So if anyone else, any other witnesses are saying their facts, you know, that's -- this is just their experiences.

THE COURT:  Okay.  Anything additional?

MR. FOX:  No, Your Honor.  Thank you.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  All right.  Thank you very much.

PROSPECTIVE JUROR 46328:  Thank you.

(The following proceedings were held in open court in the presence of the Prospective Juror 41959:)

PROSPECTIVE JUROR 41959:  Good afternoon.

THE COURT:  Good afternoon.  Can you give us the last five digits of your juror badge number?

PROSPECTIVE JUROR 41959:  54 -- 41959.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 41959:  Yes.

THE COURT:  Do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 41959:  I can't hear that, Judge.

THE COURT:  Okay.  Do you have any "yes"

**UNITED STATES DISTRICT COURT**

responses to any of the --

PROSPECTIVE JUROR 41959:  Yes.  Yes, I do.

THE COURT:  Which questions do you have "yes" responses to?

PROSPECTIVE JUROR 41959:  The first question.

THE COURT:  Okay.

PROSPECTIVE JUROR 41959:  Second question.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR 41959:  10th question, 13th question, 25th, 28th, and 37th.

THE COURT:  Okay.  Why don't we start with No. 1.  Can you tell us a little bit about that.

PROSPECTIVE JUROR 41959:  That would be me.  I had a DUI.

THE COURT:  Okay.  When was that?

PROSPECTIVE JUROR 41959:  I believe four years ago, five years ago.  Five years.

THE COURT:  Do you recall what police agency was involved?

PROSPECTIVE JUROR 41959:  Pico Rivera.

THE COURT:  Anything about the way that case was handled that caused you to have any concerns about your ability to be fair and impartial?

PROSPECTIVE JUROR 41959:  No concerns at all.

THE COURT:  Okay.

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR 41959:  It was all my fault, and they treated me fine.

THE COURT:  Okay.  What about No. 2?

PROSPECTIVE JUROR 41959:  That would be my mother.  Her house was robbed.

THE COURT:  Okay.  When was that?

PROSPECTIVE JUROR 41959:  Maybe ten years ago.

THE COURT:  Were the police called?

PROSPECTIVE JUROR 41959:  Pardon?

THE COURT:  Were the police called?

PROSPECTIVE JUROR 41959:  Yes.  Yes.

THE COURT:  What agency responded?

PROSPECTIVE JUROR 41959:  They investigated, and nothing happened.

THE COURT:  Do you recall what agency it was?

PROSPECTIVE JUROR 41959:  Pico Rivera also.

THE COURT:  Anything about your mother's case that causes you to have any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR 41959:  No.  Everything was fair.

THE COURT:  Okay.  And what about question 10?

PROSPECTIVE JUROR 41959:  In Pico Rivera on that one, that would be me again.  I was in my garage, and the helicopter was circling.  I came outside, and there was an

officer down with a suspect on top of her.  She was choking out the officer.  And there was like 20 people just watching.  So I couldn't just watch.  So I stepped in and took her off.  And then plus -- when it got unpleasant, when I held the lady up against the fence and the police came, and they thought I was the wrong person.

THE COURT:  Right.

PROSPECTIVE JUROR 41959:  So they came at me with guns drawn, but I told her to get up, the officer.  She finally got up and told them that I wasn't the person.

THE COURT:  Okay.

PROSPECTIVE JUROR 41959:  And then I -- they also gave me an award, first civilian to ever receive a humanitarian award.  So it turned unpleasant into something good.

THE COURT:  Okay.  Can you put aside that experience and decide this case based solely on the evidence you hear here in this courtroom?

PROSPECTIVE JUROR 41959:  Yes.

THE COURT:  And what about question -- well, let's go back to question 10.  Have you or any of your family members or anybody close to you ever been a law enforcement officer?

PROSPECTIVE JUROR 41959:  That would be my sister-in-law.

THE COURT:  Okay.  What agency did she work for?

PROSPECTIVE JUROR 41959:  LAPD.

THE COURT:  And do you know what she did for LAPD?

PROSPECTIVE JUROR 41959:  I think she's a lieutenant.

THE COURT:  Do you know what portion of the city she works in?

PROSPECTIVE JUROR 41959:  No, I don't.  It might be connected with the school district maybe.

THE COURT:  Okay.  And the experience you had in helping that officer, was that in response to question 13?

PROSPECTIVE JUROR 41959:  Yes.

THE COURT:  And what about question 25?

PROSPECTIVE JUROR 41959:  That would be me.

THE COURT:  Okay.  Were you detained in the Los Angeles County Jail?

PROSPECTIVE JUROR 41959:  I was actually in Bisglue 20 years ago.

THE COURT:  Where is that?

PROSPECTIVE JUROR 41959:  That was county jail up near Sybil Brand, I believe.

THE COURT:  Okay.  Anything about that experience that causes you to have any concerns about your ability to be fair and impartial?

PROSPECTIVE JUROR 41959:  Not at all.  Treated

fairly.

THE COURT:  And you can put that aside and be fair and impartial to both sides?

PROSPECTIVE JUROR 41959:  Yes.

THE COURT:  Okay.  What about question 28?

PROSPECTIVE JUROR 41959:  That would be my sister-in-law.

THE COURT:  Okay.  When you were incarcerated, when was that?

PROSPECTIVE JUROR 41959:  I want to say 20 years ago.

THE COURT:  What were you incarcerated for?

PROSPECTIVE JUROR 41959:  Possession of methamphetamine, warrants.

THE COURT:  Any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR 41959:  No.

THE COURT:  Do you know who ran that facility where you were incarcerated?

PROSPECTIVE JUROR 41959:  No.

THE COURT:  Any additional follow-up questions?

MR. FOX:  Yes, Your Honor.

(The following proceedings were held at sidebar:)

MR. FOX:  You may have preferred that I just said that, but he answered earlier that he said yes to question

No. 37, but then as you were going through it, we did not discuss No. 37.  That's what my notes say.

Since we're here, a follow-up question that I have, I think he said he was incarcerated for possession of meth and warrants, and if I heard him correctly, I just want to find out what those warrants were about.

THE COURT:  Okay.  Anything else?

MR. HOCHMAN:  No, Your Honor.  Thank you.

THE COURT:  Okay.

(The following proceedings were held in open court in the presence of the Prospective Juror 41959:)

THE COURT:  Did you have a "yes" response to question No. 37?

PROSPECTIVE JUROR 41959:  It should be no.

THE COURT:  Okay.  And I believe, when you said you were incarcerated, you referred to warrants.

PROSPECTIVE JUROR 41959:  Did I what?

THE COURT:  You at some point said you were incarcerated as a result of methamphetamine and warrants.  What were the warrants about?

PROSPECTIVE JUROR 41959:  False tags on a vehicle.  I took one tag off one of my vehicles and put it on the other vehicle to get somewhere, and that was it.

THE COURT:  Okay.  Okay.  All right.  Thank you very much.

UNITED STATES DISTRICT COURT

PROSPECTIVE JUROR 41959:  Thank you.

THE COURT:  Anything else?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  Okay.  You can return to the courtroom.

(The following proceedings were held in open court in the presence of the Prospective Juror 49568:)

THE COURT:  Hi.  Can you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR 49568:  Sure.  It's 49568.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 49568:  Yes.

THE COURT:  Do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 49568:  Yes.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR 49568:  1, 2, 4, 17, 19, 22.  That's all.

THE COURT:  Okay.  Why don't we start with No. 1.

PROSPECTIVE JUROR 49568:  Can I sidebar with you?

THE COURT:  Sure.

(The following proceedings were held at sidebar:)

THE COURT:  Hi.  Just one second.  Okay.

PROSPECTIVE JUROR 49568:  So my dad went through a federal court case for fraud and was convicted and went to jail when I was 11.

THE COURT:  Okay.

PROSPECTIVE JUROR 49568:  For 18 months.

THE COURT:  Okay.  Was that here in Los Angeles?

PROSPECTIVE JUROR 49568:  The case, I think, was -- it might have been in Orange County, but it was rooted in Anchorage, Alaska.

THE COURT:  Okay.

PROSPECTIVE JUROR 49568:  So he must have gone back up actually.

THE COURT:  Okay.  Was there anything about the way that his case was handled that caused you to have any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR 49568:  No.

THE COURT:  Okay.  Was he ever incarcerated?

PROSPECTIVE JUROR 49568:  Yes.

THE COURT:  Prior to the trial?

PROSPECTIVE JUROR 49568:  No.

THE COURT:  Okay.  And after the trial, he was incarcerated?

PROSPECTIVE JUROR 49568:  Uh-huh.

THE COURT:  Do you recall where he was

incarcerated at?

PROSPECTIVE JUROR 49568:  Lompoc.  Not the penitentiary but the --

THE COURT:  Camp?

PROSPECTIVE JUROR 49568:  Yes.

THE COURT:  I believe you also had a response to question 2.

PROSPECTIVE JUROR 49568:  Just the robbery.

THE COURT:  Was that a robbery that occurred that you were a victim of?

PROSPECTIVE JUROR 49568:  Yes.

THE COURT:  When was that?

PROSPECTIVE JUROR 49568:  In 2005.

THE COURT:  And were the police called?

PROSPECTIVE JUROR 49568:  Yes.

THE COURT:  And what police agency responded?

PROSPECTIVE JUROR 49568:  Santa Cruz.

THE COURT:  Anything about the way that case was handled that caused you to have any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR 49568:  No.

THE COURT:  Okay.  I believe you had a "yes" response to question 4.

PROSPECTIVE JUROR 49568:  My best friend is a lawyer.

THE COURT:  Okay.  What type of law does that person practice?  Do you know?

PROSPECTIVE JUROR 49568:  Civil.

THE COURT:  Do you ever talk to that person about the work they do?

PROSPECTIVE JUROR 49568:  Uh-huh.

THE COURT:  Do you think you can put aside anything that you two have talked about and decide this case based solely on the evidence?

PROSPECTIVE JUROR 49568:  Yes.

THE COURT:  Okay.  You also had a response to question 17.

PROSPECTIVE JUROR 49568:  I have to look at it.

I'll take that one back.  I read about it, but I can be fair and impartial.

THE COURT:  Okay.  What have you read?

PROSPECTIVE JUROR 49568:  Just news articles and heard stories on NPR.

THE COURT:  Okay.  Do you recall specifically what you heard on NPR?

PROSPECTIVE JUROR 49568:  Just some specifics of charges.

THE COURT:  Okay.  Do you recall specifically what you read?

PROSPECTIVE JUROR 49568:  Just more details about

the case and then the Tanaka aspect I guess.

THE COURT:  Okay.  Can you put aside what you've read and what you've heard and decide the case based on the evidence that you hear here in court?

PROSPECTIVE JUROR 49568:  Uh-huh.

THE COURT:  Any doubt in your mind?

PROSPECTIVE JUROR 49568:  No.

THE COURT:  Okay.  And question 19.

PROSPECTIVE JUROR 49568:  Just more reading, but I can put it aside.

THE COURT:  Okay.  Can you commit to being fair and impartial to both sides in this case?

PROSPECTIVE JUROR 49568:  Uh-huh.

THE COURT:  You also had a "yes" response to question 22.

PROSPECTIVE JUROR 49568:  The ACLU?

THE COURT:  Let's take a look.

PROSPECTIVE JUROR 49568:  Yeah.

THE COURT:  So --

PROSPECTIVE JUROR 49568:  It's just asking if I'm --

THE COURT:  If you've ever been a member.  Is there an organization?

PROSPECTIVE JUROR 49568:  The ACLU.

THE COURT:  How long have you been a member of

ACLU?

PROSPECTIVE JUROR 49568:  A couple years.

THE COURT:  Okay.  Any other affirmative answers to any of the other questions?

PROSPECTIVE JUROR 49568:  No.

THE COURT:  Okay.  Could you resume your seat over there?

PROSPECTIVE JUROR 49568:  Sure.

(The following proceedings were held at sidebar:)

THE COURT:  Any additional follow-up questions?

MR. FOX:  Your Honor, just to put this on the record, I think she said "uh-huh" a couple times, and she was answering affirmatively that she could be fair.  I just wanted to note that.

We do have one witness who is currently affiliated with the ACLU, another witness who used to be.  I don't know if Mr. Hochman wants any follow-up questions on that.

MR. HOCHMAN:  If they would be called as a witness, if she would be able to judge their testimony as anybody else.

And also, she read news articles and she knew the specifics, and then she used words like *I heard more details about this and the Tanaka aspect*.  And then you asked her about the Twin Towers question, and she said she did more reading.

Again, part of the concern is whether she knows that procedural history which maybe is a question about did you hear about any court proceedings or anything that went on in court about this case, something along those lines.

THE COURT:  Okay.

(The following proceedings were held in open court in the presence of the Prospective Juror 49568:)

THE COURT:  There may be witnesses in this case who are affiliated with the ACLU or formerly affiliated with the ACLU.  Can you decide their credibility the same way you would that of any other witness?

PROSPECTIVE JUROR 49568:  Yes, sir.

THE COURT:  And the things that you've read, did you ever read anything about the procedural history in this case or anything about the court proceedings in this case?

PROSPECTIVE JUROR 49568:  Not that I can recall in detail.

THE COURT:  Okay.  Do you recall anything at all about anything that went on in court about this case?

PROSPECTIVE JUROR 49568:  No.

(The following proceedings were held at sidebar:)

THE COURT:  Okay.  Anything additional?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  Your Honor, can you ask the same follow-up for question 19?

(The following proceedings were held in open court in the presence of the Prospective Juror 49568:)

THE COURT:  Do you have a copy of the questionnaire?  Can you take a look at question 19.  Do you recall any of the specifics as to what you may have seen or heard about the L.A. County jails or Mr. Baca?

PROSPECTIVE JUROR 49568:  Just the general details of the article.

THE COURT:  Can you describe just generally what those articles -- what you read?

PROSPECTIVE JUROR 49568:  Just cover-up of abuse within the jails, rape.

THE COURT:  Okay.  Can you put aside what you've read and decide this case based solely on the evidence?

PROSPECTIVE JUROR 49568:  Yes.

THE COURT:  And you can commit to being fair and impartial to both sides of this case?

PROSPECTIVE JUROR 49568:  Yes.

THE COURT:  Okay.  You can return to the courtroom next door.

PROSPECTIVE JUROR 49568:  Thank you.

THE COURT:  Thank you.

(The following proceedings were held in open court in the presence of the Prospective Juror 51346:)

THE COURT:  Hi.

PROSPECTIVE JUROR 51346:  Hello.

THE COURT:  Can you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR 51346:  51346.

THE COURT:  Have you had a chance to review the criminal case questionnaire?

PROSPECTIVE JUROR 51346:  Yes.

THE COURT:  Do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 51346:  Just one.

THE COURT:  Okay.

PROSPECTIVE JUROR 51346:  That's question No. 28.

THE COURT:  Can you tell me about that?

PROSPECTIVE JUROR 51346:  My brother is in the military.

THE COURT:  Okay.  Do you know what his job is in the military?

PROSPECTIVE JUROR 51346:  U.S. Marine.

THE COURT:  Okay.  Do you know what he does specifically?

PROSPECTIVE JUROR 51346:  Not really.

THE COURT:  Okay.  How long has he been in the Marines?

PROSPECTIVE JUROR 51346:  Three years.

THE COURT:  Okay.  Any other "yes" or affirmative

responses to any of the other questions?

PROSPECTIVE JUROR 51346:  No, Your Honor.

THE COURT:  All right.  Thank you very much.  You can return to the courtroom next door.

(The following proceedings were held in open court in the presence of the Prospective Juror 51884:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 51884:  Good morning.

THE COURT:  Can you give us the last five digits of your badge number?

PROSPECTIVE JUROR:  It's 51884.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 51884:  Yes.

THE COURT:  And do you have any "yes" or affirmative responses to any of those questions?

PROSPECTIVE JUROR 51884:  Yes.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR 51884:  No. 2.

THE COURT:  Any others?

PROSPECTIVE JUROR 51884:  That's it.

THE COURT:  Can you tell us about No. 2?

PROSPECTIVE JUROR 51884:  I believe it's an incident that happened with my mom.  She was walking down the street by her house.  She got her necklace and her purse

stolen.  That was it.

THE COURT:  Okay.  Were the police called?

PROSPECTIVE JUROR 51884:  She decided not to do it -- to do the whole entire incident report.

THE COURT:  Okay.  When was that?

PROSPECTIVE JUROR 51884:  That was about ten years ago.

THE COURT:  Okay.  Anything about that incident that causes you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 51884:  No.

THE COURT:  Okay.  Thank you very much.

Any other "yes" responses to any of the other questions?

PROSPECTIVE JUROR 51884:  No.

THE COURT:  Okay.  You can return to the courtroom next door.

(The following proceedings were held in open court in the presence of the Prospective Juror 52455:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 52455:  Good morning.

THE COURT:  Can you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR 52455:  Sure.  It is 52455.

THE COURT:  Have you had a chance to look at the

criminal case questionnaire?

PROSPECTIVE JUROR 52455:  Yes.

THE COURT:  Do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 52455:  Yes.

THE COURT:  Okay.  Which ones?

PROSPECTIVE JUROR 52455:  No. 1.

THE COURT:  Okay.

PROSPECTIVE JUROR 52455:  Do you want me to just go or do an explanation for --

THE COURT:  Why don't we start with No. 1, and we'll go through each one.

PROSPECTIVE JUROR 52455:  Okay.  Yes.  My -- one of my really good friends was investigated and participated with the FBI with -- he was the assistant sheriff of Orange County, and he was involved with the -- Mike Corona in that -- he was a key witness in his prosecution.

THE COURT:  Okay.  Anything about that case that causes you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 52455:  I'm not sure.  I'm a pretty objective person, but having first I guess -- personal experiences with my friend and his experience throughout that trial, I got to see a lot of, I would say, corruption -- sorry, no offense -- on both sides, and it was really interesting.

THE COURT:  Okay.  Can you put aside what you may have seen in that case and decide this case based solely on the evidence that you hear here in court?

PROSPECTIVE JUROR 52455:  Yep.

THE COURT:  Any doubt in your mind?

PROSPECTIVE JUROR 52455:  Some.  Some doubts, yes.  But if it's just presenting evidence and we have to just follow the law, then --

THE COURT:  Okay.  One of the things that's important to both parties and the Court is for the jurors to commit that they can be fair and impartial and that they can consider the evidence only in this case in deciding the guilt or innocence of the defendant.  So can you commit to the parties that you're able to do that?

PROSPECTIVE JUROR 52455:  I want to say a hundred percent yes or hundred percent no.  I'm literally not a hundred percent sure.

THE COURT:  Okay.

PROSPECTIVE JUROR 52455:  Sorry.

THE COURT:  What are some of the other "yes" responses you have to the questions?

PROSPECTIVE JUROR 52455:  No. 3 was yes or questionable.

THE COURT:  Okay.  3 and what else?

PROSPECTIVE JUROR 52455:  No. 6 was questionable

for me.

THE COURT:  Okay.

PROSPECTIVE JUROR 52455:  And No. 7, No. 11, yes.  No. 13 -- actually, No. 12, yes; No. 13, yes; 14, questionable; 15, 16, both questionable.  27 -- 28 is a yes.  31 is a yes.  I have a condition -- it's not a condition, but I just have to eat every couple hours.

THE COURT:  Let's talk about No. 14.

PROSPECTIVE JUROR 52455:  Okay.

THE COURT:  Can you explain to me your response to that question?

PROSPECTIVE JUROR 52455:  I'm just unsure.  It's not a yes or no.  I'm just unsure of myself.

THE COURT:  Okay.

PROSPECTIVE JUROR 52455:  Depending on what's presented.

THE COURT:  And what about 15?

PROSPECTIVE JUROR 52455:  I never experienced it myself, but I've just seen it, I guess, in the media which I haven't been watching lately.  I know it exists.  I just haven't had firsthand experience.

THE COURT:  Okay.  Either side wish to be heard concerning this potential juror?

MR. FOX:  The Government does not.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  Okay.

(The following proceedings were held at sidebar:)

MR. HOCHMAN:  Your Honor, we would seek to move her for cause.

THE COURT:  I was going to excuse her.

MR. FOX:  That was my understanding.

MR. HOCHMAN:  I just wanted to make sure that's where you were going.  Thank you.

(The following proceedings were held in open court in the presence of the Prospective Juror 52455:)

THE COURT:  All right.  We're going to excuse you.  You can return to the jury assembly room on the first floor.  If you could just leave your questionnaire on the chair.

(The following proceedings were held in open court in the presence of the Prospective Juror 52769:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 52769:  Good morning.

THE COURT:  Can you give us the last five digits of your badge number?

PROSPECTIVE JUROR 52769:  52769.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 52769:  Yes, sir.

THE COURT:  Do you have any "yes" responses to

any of those questions?

PROSPECTIVE JUROR 52769:  No. 2, my brother about 20 years ago was mugged in New York.  No. 7, I couldn't say a clear no.  I would say the news about the FBI and the election did influence me somewhat.

THE COURT:  Okay.  Do you think you could put that aside, whatever you read or heard about the FBI's involvement in the most recent election, and decide this case based solely on the evidence that you hear?

PROSPECTIVE JUROR 52769:  Yes.  Yes, Your Honor.

THE COURT:  Okay.  Any other "yes" or affirmative responses to any of the other questions?

PROSPECTIVE JUROR 52769:  No. 10, I have a niece who's married to an FBI agent in the San Francisco area.  I don't know him well.

THE COURT:  Do you ever talk to her about the work he does?

PROSPECTIVE JUROR 52769:  No.

THE COURT:  Okay.

PROSPECTIVE JUROR 52769:  It's clear that we're not supposed to talk about it.

THE COURT:  Okay.

PROSPECTIVE JUROR 52769:  No. 19 about this case, I had only just read headlines.  I know nothing detailed about this case.

272

THE COURT:  Okay.  Can you put aside whatever you've read in the headlines and just decide this case based on the evidence that you hear in court?

PROSPECTIVE JUROR 52769:  Yes, sir.

THE COURT:  Do you have any specific recollections of what you read in the headlines?

PROSPECTIVE JUROR 52769:  Just that there was something about the jail.

THE COURT:  Okay.

PROSPECTIVE JUROR 52769:  And No. 21, I have some interest in the Equal Justice Initiative, but I haven't joined it or sent money to them.

THE COURT:  Okay.  And you can put that aside and decide this case based solely on the evidence?

PROSPECTIVE JUROR 52769:  I believe so, yes, sir.

THE COURT:  Any doubt in your mind?

PROSPECTIVE JUROR 52769:  No.

THE COURT:  Okay.

PROSPECTIVE JUROR 52769:  And that's all.

THE COURT:  Okay.  Any additional follow-up questions?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  All right.  You may return to the courtroom next door.

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR 52769:  Thank you.

(The following proceedings were held in open court in the presence of the Prospective Juror 54424:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 54424:  Good morning.

THE COURT:  Can you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR 54424:  54424.

THE COURT:  Have you had a chance to review the criminal case questionnaire?

PROSPECTIVE JUROR 54424:  Yes.

THE COURT:  Do you have any "yes" or affirmative responses to any of those questions?

PROSPECTIVE JUROR 54424:  I'm not sure how applicable this is, but I have yes to being a victim of a crime just for, like, having identity theft and having my car broken into.

THE COURT:  Okay.  Can you put those experiences aside and judge this case based solely on the evidence you hear in court?

PROSPECTIVE JUROR 54424:  Absolutely.

THE COURT:  Any other yes responses to any of the other questions?

PROSPECTIVE JUROR 54424:  No.

THE COURT:  Okay.  Thank you very much.

274

MR. HOCHMAN:  Your Honor, can you ask the same types of questions you did before about item No. 2, the identity theft and car broken into, what law enforcement was involved?

THE COURT:  Do you remember -- let's talk about the identity theft.  When was that?

PROSPECTIVE JUROR 54424:  Identity theft, I had my credit card information stolen maybe a couple years ago.

THE COURT:  Did you call the police?

PROSPECTIVE JUROR 54424:  No.  I just went through my credit card company.

THE COURT:  Okay.  What about the -- your car broken into?

PROSPECTIVE JUROR 54424:  The car was broken into maybe six months ago, and I actually didn't call the police because it's kind of like my backup old beater truck, and the damage was minimal.

THE COURT:  Okay.  Thank you very much.

(The following proceedings were held in open court in the presence of the Prospective Juror 57870:)

THE COURT:  Good morning.

PROSPECTIVE JUROR 57870:  Morning.

THE COURT:  Can you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR 57870:  57870.  57870.

**UNITED STATES DISTRICT COURT**

THE COURT:  Okay.  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR 57870:  Yes.

THE COURT:  And do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR 57870:  I got a couple yeses and a couple maybes.

THE COURT:  Okay.  Let's talk about which questions those are.

PROSPECTIVE JUROR 57870:  You know, when you talk about crime, it's been pretty minor.  I did have my purse stolen at church of all places.

No. 10, the number of family members that are in enforcement, not in my Newgiller family because there's only three of us, but I have a bunch of cousins who are in -- who are in one kind of enforcement or other.  But one family that are corrections officers in Susanville and a U.S. Marshal and a cousin who is on the Phoenix P.D.  And I have a good friend who is LAPD retired.  I like some of them, don't like some of them.

THE COURT:  Okay.  Anything about any of those relationships that causes you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 57870:  Well, not really.  I find it hard to relate to them because they tend -- even the ones I like tend to have us versus everybody else point of

view.  So it's really very hard to get close to them because I think that policemen are people, and some of them -- most of them are good people who are trying to do the right thing, and some of them are not.  But if I say that to my cousins, it means that I'm against them.  So that makes it kind of difficult to deal with.

THE COURT:  There are going to be law enforcement agents who are going to be witnesses in this case.  Can you put aside the feelings you have about your cousins or the experiences you've had with them and judge the witnesses' testimony the same way you would that of any other witness?

PROSPECTIVE JUROR 57870:  Yeah.  I mean, as much -- as best I can.  I mean, people are human.  So I'll do the best I can.

THE COURT:  Okay.  Any doubt in your mind that you're going to be able to view their credibility the same way you would that of any other witness?

PROSPECTIVE JUROR 57870:  Oh, no problem with that.

THE COURT:  Okay.  Do you have any other "yes" responses to any of the --

PROSPECTIVE JUROR 57870:  Well, some of them are -- you know, it's kind of broad.  15, you have feelings or opinions about the allegations.  You know, there's been a lot of stuff out there to hear.  I don't know to what extent seeing

what I've already seen will affect my opinion because I've seen coverage.

THE COURT:  Sure.  Well, everybody has different life experiences and uses those experiences in reaching decisions.  What we want to make sure, though, is that you're able to make your decision about the issues in this case based on the testimony and the exhibits that you actually see and the testimony that you actually hear here in this courtroom and that you don't, for example, base a decision based on something that happened on TV or something that you heard about in the newspaper, that you make your decision based on the evidence.

PROSPECTIVE JUROR 57870:  Yes.

THE COURT:  Can you do that?

PROSPECTIVE JUROR 57870:  I think so, yeah.

THE COURT:  Any doubt in your mind?

PROSPECTIVE JUROR 57870:  About what?

THE COURT:  Being able to base your decision on the evidence that you hear here in this courtroom?

PROSPECTIVE JUROR 57870:  I'm fairly logical as a person.  So I probably can, yeah.

THE COURT:  Can you commit to both sides that you'll be fair and impartial?

PROSPECTIVE JUROR 57870:  As well as any human being can be, yes.

THE COURT:  Let's talk a little bit about 15.

PROSPECTIVE JUROR 57870:  About what?

THE COURT:  Question 15.  Is that --

PROSPECTIVE JUROR 57870:  Okay.

THE COURT:  Is that one of the maybes that you had?

PROSPECTIVE JUROR 57870:  Yeah.  To what extent that I've seen previous stuff, I can't undo that.

THE COURT:  What is it that you've seen?

PROSPECTIVE JUROR 57870:  Well, just basic coverage of what's coming up.  It's been over a long period of time, and I don't know how much of it has affected me one way or another.  I don't really have an opinion.

THE COURT:  When you say you've seen things that have come up, are you talking generally --

PROSPECTIVE JUROR 57870:  Just general television coverage and reading it.  I do take a couple newspapers.  I do read every morning.

THE COURT:  Okay.

PROSPECTIVE JUROR 57870:  Being old school.

THE COURT:  Would you have difficulty putting aside what you've read in trying to make a decision in this case?

PROSPECTIVE JUROR 57870:  I would try very hard to just listen to what was said in the court and deal with just that.  That's all I can promise.

UNITED STATES DISTRICT COURT

THE COURT:  Let me see counsel at sidebar.

(The following proceedings were held at sidebar:)

THE COURT:  All right.  Any additional follow-up questions?

MR. HOCHMAN:  So she reads the newspapers a lot, and we know that this case has been covered and all the procedural history of the court proceedings have been covered extensively in the newspapers.  If we could have a follow-up question along those lines to see if she's actually found out if -- the proceedings that have been in this court involving Mr. Baca because I still -- you asked a follow-up question about what the stuff was, the coverage.  And she didn't really give you much of an answer.  But now that we find out she's a fairly big reader of newspapers old school style, there's something she's got to remember.

THE COURT:  I don't know if she's got to remember.

MR. HOCHMAN:  Or she might remember.

MR. FOX:  Did she answer the universal questions or just going along?  Did she have answers to --

THE COURT:  I'll ask her.

MR. FOX:  Okay.

(The following proceedings were held in open court in the presence of the Prospective Juror 57870:)

THE COURT:  Have you read anything specifically

UNITED STATES DISTRICT COURT

about this case?

PROSPECTIVE JUROR 57870:  No.  Not really.

THE COURT:  Have you read anything about Mr. Baca?

PROSPECTIVE JUROR 57870:  You know, it's hard to tell you exactly what I've read because it's been a while.  It was whatever was in the *L.A. Times* about the case.  It's been over a period of months.  I haven't seen anything recently that I've read.

THE COURT:  Do you recall if you've read anything about the procedural goings on or court proceedings?

PROSPECTIVE JUROR 57870:  No.

THE COURT:  I just want to make sure I've covered all the questions that you had "yes" answers to.  Which questions did you have "yes" answers to?

PROSPECTIVE JUROR 57870:  Well, No. 10, No. 15. I made notes in here, but I don't think they were -- you know, as I read along.  But most of it was who knows kind of thing. Those were the two.

THE COURT:  Okay.  You had indicated at some point, when we started off, you had some maybes.

PROSPECTIVE JUROR 57870:  You know, you read a question and you -- I just made notes because I'm a note taker. I'm trying to look down to see what they were.  I think I already said that.  You know, I just made notes as I went

UNITED STATES DISTRICT COURT

281

along.  They aren't really -- they don't really pertain.  It's just for me.

THE COURT:  Okay.  Do you know anybody else on the jury panel?

PROSPECTIVE JUROR 57870:  No.  Except for chitchatting since we were here.

THE COURT:  Okay.  All right.  Anything else?

MR. HOCHMAN:  Yes, Your Honor.  I believe the juror talked about having a relative at the U.S. Marshals, and there might be U.S. Marshals that testify in this case.  If you could ask that type of follow-up question, Your Honor.

THE COURT:  Okay.  Do you have a relative that works --

PROSPECTIVE JUROR 57870:  I have a cousin.

THE COURT:  Okay.  Do you know what office that person works at?

PROSPECTIVE JUROR 57870:  No, I don't.  He lives in Northern California.

THE COURT:  There may be employees with the United States Marshal's Office that may testify in this case.  Are you going to be able to judge their testimony in the same way that you would that of any other witness?

PROSPECTIVE JUROR 57870:  Yes.

THE COURT:  Okay.  You can return to the courtroom next door.

**UNITED STATES DISTRICT COURT**

(The following proceedings were held in
open court out of the presence of the jury:)

THE COURT:  I'm going to let the jurors next door go to lunch.  Does anybody want me to admonish them?

MR. HOCHMAN:  I hope it's not necessary, Your Honor.  It certainly couldn't hurt.  So I'll go with Your Honor's feel on this, Your Honor.

MR. FOX:  Your Honor, we have no opinion one way or the other.

THE COURT:  Okay.  If you'd like me to, I'll be happy to do it.  Otherwise, I'll send them to lunch and tell them to be back here at 1:15.

MR. FOX:  Your Honor, I mean, one thing that Mr. Jauregui mentioned was during the break he was in line with some of the jurors.  It may be appropriate to tell them we cannot speak to them and if you want to admonish them and say that as well.  In this new building there's more interaction with the jurors than in the last building.

THE COURT:  Okay.

(The following proceedings were held in open court in the presence of the Prospective Juror 71483:)

THE COURT:  Hi.

PROSPECTIVE JUROR 71483:  Hello.

THE COURT:  Okay.  I believe I received a note from you.  You're Juror No. 71483?

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR 71483:  Yes.

THE COURT:  Okay.  I understand at one point you thought that Cedars was going to reimburse you for your jury service.

PROSPECTIVE JUROR 71483:  Correct.

THE COURT:  And they have now said they're not going to do that?

PROSPECTIVE JUROR 71483:  Uh-huh.

THE COURT:  Are you married?

PROSPECTIVE JUROR 71483:  No.

THE COURT:  Okay.  How many people reside in your household?

PROSPECTIVE JUROR 71483:  Just me.

THE COURT:  Are you working full time?

PROSPECTIVE JUROR 71483:  I will be.  As of yesterday I should have been hired.

THE COURT:  Okay.  It's your understanding they will not reimburse you for your jury service?

PROSPECTIVE JUROR 71483:  Yes.

THE COURT:  I'm going to excuse you.  You can go down to the first floor, the jury assembly room, and tell them you've been excused.

PROSPECTIVE JUROR 71483:  Thank you.

THE COURT:  Thank you.

(The following proceedings were held in

UNITED STATES DISTRICT COURT

284

open court out of the presence of the jury:)

THE COURT:  If you want to join me next door, I'm going to excuse them for lunch.  I think we're probably going to -- we'll take a lunch break until 20 after 1:00 and then resume with jury selection.  We'll probably go until 5:00 o'clock today.

MR. DIAMANTATOS:  Thank you, Your Honor.

(The following proceedings were held in open court in the presence of the jury:)

THE COURT:  All right.  Ladies and gentlemen, we're going to break for the day -- excuse me.  We're going to break for lunch.  Freudian slip.

Again, I want to remind you do not communicate in any way.  Do not let anyone else communicate with you in any way about the merits of this case or anything to do with it.  This includes discussing the case in person, in writing, on the phone, by electronic means, via e-mail, text messages, Internet chat room, blogs, website, or any other features.

This applies to communicating with your fellow jurors until I give you the case for your deliberation, and it applies to communicating with anyone else including your family members, your employer, the media or press, and people involved in the trial.

Now, from time to time, because we're all sort of in close proximity in this building, you may see lawyers in

**UNITED STATES DISTRICT COURT**

this case.  They've been instructed not to talk to you.  So please don't hold it against them if they don't say hi because I'll have their heads if they do.

Again, ladies and gentlemen, because all the evidence that you'll receive in this case as well as the legal instructions that you may consider in this case you'll receive from the Court, you're not to read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it.  Don't read any newspapers.  Do not do any research such as consulting dictionaries, searching the Internet, or using other reference materials, and do not make any investigation about the case or in any other way try to learn about the case on your own.

And most importantly, do not make up your mind about what your verdict should be until after you've gone in the jury room to decide the case and you and your fellow jurors have discussed the evidence.

Okay.  We're going to come back at 1:15.  There's a cafeteria on the ground floor, and there is sort of a food court just down the street I think to the -- sort of the left of the courthouse.  So enjoy your lunch, and we'll see you all back here around 1:15.

(A lunch recess was taken until

1:15 p.m. of the same day.)

CERTIFICATE OF OFFICIAL REPORTER

I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED THIS  14TH  DAY OF AUGUST, 2017.


/S/ MIRANDA ALGORRI

MIRANDA ALGORRI, CSR NO. 12743, CRR
FEDERAL OFFICIAL COURT REPORTER

**UNITED STATES DISTRICT COURT**