UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE PERCY ANDERSON, U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
      vs.                      )   Case No. CR 16-00066(A) PA
                               )
LEROY D. BACA,                 )    PAGES 287 to 410
                               )    VOLUME 4
            Defendant.         )
_____)

REPORTER'S TRANSCRIPT OF
TRIAL DAY 2
TUESDAY, DECEMBER 6, 2016
1:30 P.M.
LOS ANGELES, CALIFORNIA

_____

MYRA L. PONCE, CSR 11544, CSR, RDR, CRR
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, ROOM 4455
LOS ANGELES, CALIFORNIA 90012
MYRAPONCE@SBCGLOBAL.NET

UNITED STATES DISTRICT COURT

288

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

SANDRA R. BROWN
United States Attorney
BY:  BRANDON FOX
BY:  EDDIE A. JAUREGUI
     Assistant United States Attorneys
United States Courthouse
312 North Spring Street
Los Angeles, California 90012

**FOR THE DEFENDANT:**

MORGAN, LEWIS & BOCKIUS, LLP
BY:  NATHAN J. HOCHMAN
BY:  BRIANNA ABRAMS
     Attorneys at Law
The Water Garden
1601 Cloverfield Boulevard
Suite 2050 North
Santa Monica, California 90404

MORGAN, LEWIS & BOCKIUS, LLP
BY:  TINOS DIAMANTATOS
     Attorney at Law
77 West Wacker Drive
Chicago, Illinois 60601

**UNITED STATES DISTRICT COURT**

289

## I N D E X

**TUESDAY, DECEMBER 6, 2016; VOLUME 4**

## Chronological Index of Witnesses

Witnesses:                                                              Page

(None)

**UNITED STATES DISTRICT COURT**

**EXHIBITS**


**TUESDAY, DECEMBER 6, 2016; VOLUME 4**


|                                  | For ID | In EVD |
| -------------------------------- | ------ | ------ |
| Exhibit                          |        |        |


(None)

**TUESDAY, DECEMBER 6, 2016; 1:30 P.M.**

**LOS ANGELES, CALIFORNIA**

**VOLUME 4**

**- - -**

(Out of the presence of the prospective jurors:)

THE COURT:  Okay.  I believe we're ready to resume jury selection.

Mr. Hochman, how much time are you going to need for your opening statement?

MR. HOCHMAN:  I estimate about an hour, Your Honor.

THE COURT:  And what about the Government?

MR. FOX:  Should be less than 45 minutes.

THE COURT:  All right.  Let's bring in the next prospective juror.

(In open court in the presence of Prospective Juror No. 59195:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR NO. 59195:  Hi.

THE COURT:  Could you tell us the last five digits of your badge number, please?

PROSPECTIVE JUROR NO. 59195:  I will look at it.  It is 59195 -- 5.  Did you get it?

THE COURT:  Again.

PROSPECTIVE JUROR NO. 59195:  I'll say it again. 59195.

**UNITED STATES DISTRICT COURT**

THE COURT:  Okay.  Have you had a chance to take a look at the criminal case questionnaire?

PROSPECTIVE JUROR NO. 59195:  I did, sir.

THE COURT:  And do you have any "yes" answers to any of those questions?

PROSPECTIVE JUROR NO. 59195:  I have a couple.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 59195:  Number 2, my house was burglarized a couple of years ago.

THE COURT:  Okay.  And were the police called?

PROSPECTIVE JUROR NO. 59195:  Yes.

THE COURT:  And what police agency responded?

PROSPECTIVE JUROR NO. 59195:  Arcadia.

THE COURT:  And was there anything about the way that that matter was handled that caused you to have any concerns?

PROSPECTIVE JUROR NO. 59195:  No.

And I think I'll say now what -- I have a neighbor who is an L.A. sheriff.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 59195:  So he came over first.

THE COURT:  Okay.  Do you know what station that --

PROSPECTIVE JUROR NO. 59195:  It was in the jails.

THE COURT:  Okay.  Do you know which jail?

PROSPECTIVE JUROR NO. 59195:  I want to say the

Towers, but I couldn't be sure.

THE COURT: Okay. Ever had any discussions with your neighbor about the work that he does?

PROSPECTIVE JUROR NO. 59195: I did because I was getting back into nursing at the time, and I was looking into the jail system maybe as a possible job. So we had many discussions.

THE COURT: Okay. Any -- would you have any difficulty putting aside any discussions you've had with him and deciding this case based just on the evidence you hear here in court?

PROSPECTIVE JUROR NO. 59195: I want to say no, but he did tell me a lot of things that went on in the jail.

THE COURT: Uh-huh.

PROSPECTIVE JUROR NO. 59195: And I was at a couple of barbecues with a bunch of his -- deputies.

THE COURT: Okay. When was that?

PROSPECTIVE JUROR NO. 59195: This was about seven to ten years ago.

THE COURT: Okay. Would you have difficulty putting aside anything that he may have told you about what went on at the jails?

PROSPECTIVE JUROR NO. 59195: I don't think I would.

THE COURT: Okay. Can you commit to both sides that you can be fair and impartial to both sides --

PROSPECTIVE JUROR NO. 59195:  Yes.

THE COURT:  -- in this case?

PROSPECTIVE JUROR NO. 59195:  Yes.

THE COURT:  And can you commit to deciding the issues in this case based just on the evidence that you hear here in court?

PROSPECTIVE JUROR NO. 59195:  Yes.

THE COURT:  Did you have other "yes" responses to any of the other questions?

PROSPECTIVE JUROR NO. 59195:  Um, the only one -- two others.  One is I know a lawyer, judge, good friend.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 59195:  So they're in the court system.  Let me --

THE COURT:  Is that a lawyer?

PROSPECTIVE JUROR NO. 59195:  He was a lawyer.  He's now retired.  He was a lawyer, and he became a judge and is retired now.

THE COURT:  Okay.  Do you know what type of law?

PROSPECTIVE JUROR NO. 59195:  He did injury, major injury.  Injury law.

THE COURT:  Okay.  And what's the other question you had a "yes" answer to?

PROSPECTIVE JUROR NO. 59195:  The only other thing, would hearing regarding -- I think that's what you meant by the

**UNITED STATES DISTRICT COURT**

question, was what I heard on the news about the case, about the Alzheimer's decision, the defendant.

THE COURT: Okay. Do you recall exactly what you heard?

PROSPECTIVE JUROR NO. 59195: I heard that it was nullified, that it's not going to count, that the defendant said that he's pre-Alzheimer's and that it was -- again, found not to be part of the case or that it would affect the case.

THE COURT: Okay. Would you have any difficulty putting aside anything that you may have read or heard about Alzheimer's or this decision in deciding this case based on the Court's instructions and based on the evidence that you hear here in court?

PROSPECTIVE JUROR NO. 59195: I don't think I'd have any problem.

THE COURT: Okay. Is there any doubt in your mind?

PROSPECTIVE JUROR NO. 59195: There's always doubt in my mind. It's just who I am. I would -- I'd -- I've been on juries before also when I -- it didn't seem to be a problem.

THE COURT: Okay. Is there anything else that you have read or heard about this case?

PROSPECTIVE JUROR NO. 59195: No. Except my husband came out this morning and said, "I hope you're not on that case."

And I said -- and I said, "If I told you, I'd have

to kill you."  So --

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 59195:  And that's it.  And we left it at that.

THE COURT:  All right.  Any other "yes" or affirmative responses to any of the other questions?

PROSPECTIVE JUROR NO. 59195:  No.  That's it.

THE COURT:  Any additional questions for this prospective juror?

MR. HOCHMAN:  Yes, Your Honor.  May I be heard at sidebar?

THE COURT:  All right.

(At sidebar:)

MR. HOCHMAN:  So the juror said that she had conversations with her neighbor, and they talked about things at the jail.  If you can inquire as to what that was.  And then she said they also had these barbecues with deputies.  And if you can inquire as to that.

Um, and that's it.

THE COURT:  Thank you.

(In open court in the presence of

Prospective Juror No. 59195:)

THE COURT:  I believe you'd indicated that you'd had some discussions with your neighbor who was a deputy.  Do you recall specifically what the two of you talked about?

UNITED STATES DISTRICT COURT

PROSPECTIVE JUROR NO. 59195:  I remember him telling me not to be a naysayer because of the kind of people that he dealt with.  We did discuss about abuse.  And I don't know how that came up, but -- but I might even have just asked him.  And he said that the one thing that -- again, it was seven to ten years ago.

So the one thing that stands out in my mind is he said, "I don't really need to touch anybody."  He says, "We can put" -- um, "We can put one prisoner with another prisoner, and they'll take care of it.  We don't have to put hands on anybody."  That's what he said.  So that disturbed me.

And I was, like, I don't want to hear any more.  Thank you.

THE COURT:  Okay.  Can you put aside those discussions you had with him and decide this case based on the evidence that you see and hear here in court?

PROSPECTIVE JUROR NO. 59195:  I think -- yes.

THE COURT:  And you had mentioned that you went to some barbecues --

PROSPECTIVE JUROR NO. 59195:  Uh-huh.

THE COURT:  -- with other deputies.  Do you recall, were there any discussions you had with any of those people?

PROSPECTIVE JUROR NO. 59195:  Nothing specific, no.  Nothing that I would like to call that one story to.  It's kind of like nurses that get together on traumas and kind of talk

their job.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 59195:  And if you heard what we talked about, you wouldn't -- you wouldn't want to come, nurses either.  So it's kind of that kind of occupational talk.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 59195:  But I didn't sit there for long.

THE COURT:  Okay.  And as you sit here today, you don't recall specifically what those discussions were about?

PROSPECTIVE JUROR NO. 59195:  No.

THE COURT:  Okay.  Anything additional?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  All right.  You can return next door.

PROSPECTIVE JUROR NO. 59195:  Okay.  Thank you.

THE COURT:  Thank you.

(In open court in the presence of
 Prospective Juror No. 66431:)

THE COURT:  Good afternoon.

Could you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR NO. 66431:  66431.

THE COURT:  Have you had a chance to take a look at the criminal case questionnaire?

PROSPECTIVE JUROR NO. 66431:  Yes, I did.

THE COURT:  And do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR NO. 66431:  Yes.  Number 1.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 66431:  Number 2, and No. 4.

THE COURT:  Okay.  Why don't we start with No. 1.

PROSPECTIVE JUROR NO. 66431:  Okay.  It's me and my son.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 66431:  I was, like, 18 years old.  And my son, like, two years ago, he got a drunk -- DUI.

THE COURT:  A DUI.

Do you recall what police agency was involved?

PROSPECTIVE JUROR NO. 66431:  Uh, that was in San Juan Capistrano, Orange County.  I think it was 1974.

THE COURT:  Okay.  Anything about the way his case was handled that causes you to have any concerns about your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR NO. 66431:  What was that, Your Honor?

THE COURT:  I'd like to know if you have any concerns about the way his case was handled.  Yes, whether you have any.

PROSPECTIVE JUROR NO. 66431:  No.

UNITED STATES DISTRICT COURT

THE COURT: Okay. And you said that you -- when you were 18 years old, you were arrested.

PROSPECTIVE JUROR NO. 66431: Yes.

THE COURT: Okay. Do you recall what that was for?

PROSPECTIVE JUROR NO. 66431: Uh, I -- drunk in public. I made a fool of myself.

THE COURT: Okay. Do you recall what police agency was involved?

PROSPECTIVE JUROR NO. 66431: Uh, Orange County Sheriff's Department.

THE COURT: Okay. Do you have any concerns about the way that case was handled?

PROSPECTIVE JUROR NO. 66431: Not at all. They did what was right.

THE COURT: Okay. And what about Question No. 2?

PROSPECTIVE JUROR NO. 66431: Yes. Me.

THE COURT: Okay. You were a victim of a crime?

PROSPECTIVE JUROR NO. 66431: Yes. I was rear-ended on the 22 Freeway in Orange County. And we pulled to the side, and we were exchanging -- we were to exchange information.

THE COURT: Uh-huh.

PROSPECTIVE JUROR NO. 66431: But he start taking off, so he dragged me for about 100 yards on the freeway in the No. 4 lane.

THE COURT: Okay. Did you end up calling the

police?

PROSPECTIVE JUROR NO. 66431:  My wife did.

THE COURT:  Okay.  And do you have any concerns about the way that matter was handled by the police?

PROSPECTIVE JUROR NO. 66431:  No.  It was accident -- excellent service.

THE COURT:  Okay.  And what about Question No. 4?

PROSPECTIVE JUROR NO. 66431:  Oh, my daughter works for the -- I think it's a federal judge in the state of Washington.

THE COURT:  Okay.  And do you know what she does for that judge?

PROSPECTIVE JUROR NO. 66431:  I think she's the one who does the -- her agenda.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 66431:  And then the lawyers come and talk to them about -- I think that's what she is.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 66431:  She's the assistant of the judge.

THE COURT:  Okay.  Do you have any other "yes" responses to any of the other questions?

PROSPECTIVE JUROR NO. 66431:  No, Your Honor.

THE COURT:  Okay.  Anything additional for this prospective juror?

UNITED STATES DISTRICT COURT

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  All right, sir.  You may return to the courtroom --

PROSPECTIVE JUROR NO. 66431:  Thank you.

THE COURT:  -- next door.  Thank you very much.

PROSPECTIVE JUROR NO. 66431:  Thank you.

(In open court in the presence of Prospective Juror No. 71285:)

PROSPECTIVE JUROR NO. 71285:  Good morning, Your Honor.

THE COURT:  Good morning -- or afternoon, actually.

PROSPECTIVE JUROR NO. 71285:  Afternoon.  Sorry.

THE COURT:  Could you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR NO. 71285:  Yes, Your Honor.  It is 71285.

THE COURT:  Okay.  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR NO. 71285:  Yes, Your Honor.

THE COURT:  And do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR NO. 71285:  Yes, Your Honor.

THE COURT:  And which ones?

PROSPECTIVE JUROR NO. 71285:  I have No. 1, No. 2,

No. 11, No. 12.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 71285:  Number 20, and No. 28.

THE COURT:  Now, why don't we start with No. 1.

PROSPECTIVE JUROR NO. 71285:  Speeding tickets.

THE COURT:  Okay.  And are those yours?

PROSPECTIVE JUROR NO. 71285:  Yes, Your Honor.

THE COURT:  Okay.  And do you recall what police agency was involved with any of those?

PROSPECTIVE JUROR NO. 71285:  Oh, there were four over my lifetime.

THE COURT:  Okay.  When was the most recent?

PROSPECTIVE JUROR NO. 71285:  Probably five years ago -- oh, it was in Ventura County.

THE COURT:  Okay.  Anything about the way that any of those cases were handled that causes you to have concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR NO. 71285:  No, Your Honor.

THE COURT:  And what about No. 2?

PROSPECTIVE JUROR NO. 71285:  I was a victim -- I was robbed at gunpoint.  I was a clerk at a Kentucky Fried Chicken.  And a robber came in and put a gun to my head and robbed me.  And then I testified against him in criminal court later afterwards, after he was found.

THE COURT:  Okay.  When was that?

PROSPECTIVE JUROR NO. 71285:  That would be 1983 to '84, somewhere in there.

THE COURT:  Okay.  Anything about that experience that causes you to have concerns about your ability to be fair and impartial in this case?

PROSPECTIVE JUROR NO. 71285:  No, Your Honor.

THE COURT:  Do you recall what police agency responded?

PROSPECTIVE JUROR NO. 71285:  Either Santa Barbara City or Santa Barbara County.  I'm not sure.

THE COURT:  And Question 11.

PROSPECTIVE JUROR NO. 71285:  Your Honor, I -- my job, I work for State Farm Insurance.  And I managed a couple of years ago a program where we donate bait cars to law enforcement.  So I managed that program for -- when we provided cars to them.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 71285:  And then another reason I put "yes" down to that is I -- the California Department of Insurance has an advisory board, and I participated -- I volunteered my time to help their criminal investigations in how to -- we can work better together from the insurance industry standpoint to the work that they do to fight insurance fraud.

THE COURT:  Okay.  Anything about that experience

that causes you to have concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR NO. 71285:  No, Your Honor.

THE COURT:  There may be law enforcement agents or officers who may be witnesses in this case.  Are you going to be able to judge their credibility the same way that you would that of any other witness?

PROSPECTIVE JUROR NO. 71285:  I believe so, sir. I -- I do have a lot of exposure in my current career and former career with law enforcement.

THE COURT:  Uh-huh.  Do you think you can put that aside and fairly and honestly judge their credibility?

PROSPECTIVE JUROR NO. 71285:  I believe I can, Your Honor.

THE COURT:  Okay.  Any doubt in your mind?

PROSPECTIVE JUROR NO. 71285:  Um, I -- I -- I don't doubt that I could do that sitting here, but I do have years and years of experience in that -- in that area.

THE COURT:  Okay.  Let's talk about Question 12.

PROSPECTIVE JUROR NO. 71285:  I did a ride-along several years ago with Irvine PD.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 71285:  This is after I worked for UCPD.  So I thought that I might apply and work for that agency.  And I -- but I did not pursue it because of my current

job's travel requirements.

THE COURT:  Okay.  And what about Question 20?

PROSPECTIVE JUROR NO. 71285:  Um, I'm a certified fire and explosion investigator, and I do that on the private side.  So most of the training for that designation is geared for law enforcement and for fire department.  So most of the meetings and conferences that I attend are -- are driven to criminal training.

THE COURT:  Okay.  And what about 28?

PROSPECTIVE JUROR NO. 71285:  28 is -- I was a bicycle safety enforcement officer for UCPD and then a community service officer and then a communications officer.

THE COURT:  Okay.  One of the things that we want to ensure is that each juror come to this task with an open mind and judge the evidence fairly and impartially.  Are you going to have any difficulty judging the testimony of law enforcement officers -- and there may be law enforcement officers who testify on each side of this case.  Are you going to have any difficulty assessing their testimony --

PROSPECTIVE JUROR NO. 71285:  No, Your Honor.

THE COURT:  -- fairly and impartially?

PROSPECTIVE JUROR NO. 71285:  I'm sorry to interrupt you.  No, Your Honor.

THE COURT:  Okay.  Any additional "yes" answers to any of these questions?

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR NO. 71285:  No, Your Honor.

THE COURT:  Okay.  I'll see counsel at sidebar.

(At sidebar:)

MR. FOX:  Your Honor, his experience may comport with something that's in his background.  And since I suspect Mr. Hochman's going to bring that out about his background, I think it would be best to question him if he can be fair and impartial, knowing about the Government's use of informants, especially someone who has committed robbery and he's using that informant to inform law enforcement officers as well.

THE COURT:  I'm sorry?  To what?

MR. FOX:  To inform law enforcement officers.

THE COURT:  Okay.

MR. FOX:  It may be okay to use it in criminal, not about the officers.

MR. HOCHMAN:  Your Honor, when he -- when he was kind of putting the question, he referenced the fact that he has years of experience in law enforcement.  If you can -- a couple of those things.  But if you could possibly get some more information on that, that would be very useful.

THE COURT:  Okay.

(In open court in the presence of
 Prospective Juror No. 71285:)

THE COURT:  You had mentioned that you had experience in law enforcement before.

UNITED STATES DISTRICT COURT

PROSPECTIVE JUROR NO. 71285:  Yes, Your Honor.

THE COURT:  Can you give me a little more detail about your law enforcement experience?

PROSPECTIVE JUROR NO. 71285:  I started as a bicycle safety enforcement officer when I was in college.  And that involved routine patrols of the University of California Santa Barbara campus.  And then after maybe a year or so of that, I was promoted to a community service officer where we did building checks, responded to accidents, and wrote stolen bike reports and police reports, things like that of various kinds.

I did security work for the campus when -- whenever they would need it.  And then as a communications officer, I was a 911 operator dispatcher.  I worked -- I worked with the fire department, police department, and ran all the business lines during my shifts.  I worked numerous graveyard -- I checked equipment out to the officers before their shifts.  I handled all their calls --

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 71285:  -- that type of work.

THE COURT:  Okay.  You also mentioned at some point that you had been robbed?

PROSPECTIVE JUROR NO. 71285:  Yes, Your Honor.

THE COURT:  Okay.  There may be a witness in this case who was being used as an informant that had a robbery

conviction in his background.  Are you going to have any difficulty assessing that witness's credibility the same way you would that of any other witness?

PROSPECTIVE JUROR NO. 71285:  I'd like to think not, Your Honor.  But my current job, I -- for the last nine -- or no -- 13 years or so, I have managed fraud investigators.  So one of the things about that position is I manage investigations.  So when somebody has a -- a criminal record, I have to say I look at it differently --

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 71285:  -- than innocent victims that may get caught up in insurance fraud scheme.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 71285:  So someone's history does play a part of how I may think of their behaviors.

THE COURT:  Uh-huh.  Well, for example, the Court will give you instructions as to how a witness who's receiving some benefit, how their credibility is to be judged.  Would you have any concerns about following the Court's instructions in that situation?

PROSPECTIVE JUROR NO. 71285:  Sorry, Your Honor.  I would not have concerns about following the Court's instructions.

THE COURT:  Okay.  And there may be an informant in this case who has a prior conviction for robbery who at some

UNITED STATES DISTRICT COURT

point was being used as an informant to make a case against a law enforcement officer.  Would you have -- would that cause you any difficulty or any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR NO. 71285:  I would hate to be thinking about my own victimization, as having a gun to my head, and thinking about the credibility of someone else who has done that to another individual.  That may be too close for me, Your Honor.

THE COURT:  Okay.  In other words, that may be -- present some difficulty for you.

PROSPECTIVE JUROR NO. 71285:  In that scenario, it could.

THE COURT:  Okay.  All right.  Let me see counsel at sidebar.

(At sidebar:)

THE COURT:  Okay.  I think I'm inclined to excuse him based on the last answer.

MR. HOCHMAN:  May I ask if the Court would just ask two potential follow-ups?  First, Anthony Brown is not testifying in the case, Your Honor.  People will talk about Anthony Brown, but he won't be called as a witness.  So his credibility won't be put on the line, at least as a witness.  That's the first part.

So I think to the extent that you use the word

"witness," he might be thinking he's going to see Anthony Brown live in the courtroom.  He'll never see Anthony Brown live in the courtroom.  And if he's concerned about seeing someone like that live in the courtroom, that might have influenced his answer.

Secondly is that you'll also give him an instruction on the legitimacy of the Government using undercover operatives.  And I think it's important to find out whether or not he could follow that instruction because I don't think he knows --

THE COURT:  I've already basically sort of covered that with him, that there are going to be instructions as to how he can assess a witness who is receiving some sort of Government benefit.

MR. HOCHMAN:  Anthony Brown received no Government benefit, nor is the Government going to argue he received a benefit.  He -- the instruction, Your Honor, would be undercover -- that it's completely legitimate to use informants undercover and if he could follow that instruction.

THE COURT:  Well, whether he can or not, he's already indicated that he -- the situation of having somebody who has a background in armed robbery, which Mr. Brown has, that he might have -- that might be too close a call for him concerning that person may be making a case against a law enforcement agent.  So I'm inclined to let him go.

MR. HOCHMAN:  Would the Court ask one or two more follow-up questions along these lines just to get his full answers out?

THE COURT:  No.  I think I've got enough of his answers at this point.

MR. FOX:  Thank you, Your Honor.

MR. HOCHMAN:  Thank you, Your Honor.

(In open court in the presence of
 Prospective Juror No. 71285:)

THE COURT:  All right, sir.  We're going to excuse you.

You may return to the jury assembly room on the first floor and just let them know that you've been excused.

PROSPECTIVE JUROR NO. 71285:  Thank you, Your Honor.

THE COURT:  Thank you.

(In open court in the presence of
 Prospective Juror No. 75324:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR NO. 75324:  Hi.

THE COURT:  Can you give me the last five digits of your badge number, please?

PROSPECTIVE JUROR NO. 75324:  75 -- 75324.

THE COURT:  Okay.  Have you had a chance to look at the criminal case questionnaire?  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR NO. 75324:  Oh, this?  I did.

THE COURT:  Do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR NO. 75324:  Yes.

THE COURT:  Okay.  What numbers?

PROSPECTIVE JUROR NO. 75324:  No. 1, 3, 6, 7.  And some, I'm not sure.  I put not sure.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 75324:  Some of them --

THE COURT:  Well, let's try No. 1 first.

PROSPECTIVE JUROR NO. 75324:  Okay.

THE COURT:  Can you tell me what --

PROSPECTIVE JUROR NO. 75324:  My son, when he was 18, he was arrested, drugs.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 75324:  And so he was convicted.

THE COURT:  Okay.  Do you recall what police agency was involved?

PROSPECTIVE JUROR NO. 75324:  No.

THE COURT:  Okay.  Do you have any concerns about the way that your son's case was handled?

PROSPECTIVE JUROR NO. 75324:  Well, he followed the instructions that the judge gave him, and then he went to the classes and whatever the judge is asking.  So he -- you know,

turning out the paperwork.  And they said they would expunge his file.  And it turned out that -- this year, he just finished his veterinary tech.  He applied to do the -- to get the license and the -- his file, you know, had this issue there.  So apparently nothing was done in spite that he was promised that it would be expunged and would be clear.

THE COURT:  Uh-huh.  Can you put aside what happened with your son and judge this case based just on the evidence you hear here in court?

PROSPECTIVE JUROR NO. 75324:  I cannot guarantee that because this is very personal.  This affect my son's life.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 75324:  I can try, but I don't know.

THE COURT:  Okay.  When was your son's conviction?

PROSPECTIVE JUROR NO. 75324:  He was 18 at the time. And now he's 31.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 75324:  So for more than ten years.  And we wouldn't know if he did not apply for this -- to get the license for the vet tech.  So they came back and said he has this in his background.  He couldn't do it.

THE COURT:  Okay.  Do you recall what police agency was involved with your son?

PROSPECTIVE JUROR NO. 75324:  No.

**UNITED STATES DISTRICT COURT**

THE COURT:  Okay.  What about Question 3?

PROSPECTIVE JUROR NO. 75324:  Well, that was related to what happened because the judge told him that if he fulfill all the classes and all this stuff, he will be able to -- he will be clear to move on with his life.  So apparently, you know, didn't happen.

THE COURT:  Okay.  And what about Question 6?  Same thing?

PROSPECTIVE JUROR NO. 75324:  Well, this is -- it's more general that, you know, we seen the news and now this -- that -- you know, it's -- it's not very clear.

THE COURT:  Have you heard anything specific about either the sheriff's department or the FBI that causes you to have any concerns?

PROSPECTIVE JUROR NO. 75324:  Well, because it's in the news, so you always think about it, um, you know, if it's -- but nothing specific.

THE COURT:  And what is it that you understand is always in the news?

PROSPECTIVE JUROR NO. 75324:  Oh, the bribes, there is, um -- that they abuse the force, you know, the power.

THE COURT:  Okay.  And you'd have difficulty putting that aside?

PROSPECTIVE JUROR NO. 75324:  I don't know if -- if the -- if the evidence is placed in front of me, I don't know.

316

I -- it's hard to be sure.

THE COURT:  All right.  Do you want to excuse the juror?  Anybody wish to be heard?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No objection, Your Honor.

MR. FOX:  No, Your Honor.

THE COURT:  All right.  You may return to the jury assembly room on the first floor and let them know that you've been excused.

PROSPECTIVE JUROR NO. 75324:  Thank you.

(In open court in the presence of
 Prospective Juror No. 75471:)

THE COURT:  Could you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR NO. 75471:  75471.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR NO. 75471:  Yes.

THE COURT:  Do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR NO. 75471:  No.

THE COURT:  Okay.  Thank you very much.  You can return to the courtroom next door.

PROSPECTIVE JUROR NO. 75471:  Okay.

THE COURT:  Let me see counsel at sidebar.

**UNITED STATES DISTRICT COURT**

(At sidebar:)

THE COURT:  Okay.  Do you have any for-cause challenges for anybody that we've seen thus far?

MR. HOCHMAN:  Yes, Your Honor.  I'd have to go get my pad.

THE COURT:  Okay.  And --

MR. HOCHMAN:  May I?  I'll be right back.

MR. JAUREGUI:  May I?

THE COURT:  Uh-huh.

(Pause in the proceedings.)

MR. HOCHMAN:  There are two, Your Honor.  Juror 29410, that was the juror -- I apologize, Your Honor.  I think this is the one I've already made a motion to strike.

THE COURT:  Okay.

MR. HOCHMAN:  The male juror who was the lawyer in the suit.

THE COURT:  Okay.

MR. HOCHMAN:  I think I made it, and you denied it.

THE COURT:  Correct.

MR. HOCHMAN:  And then Juror 06394, this was from, I think, yesterday.  Yes.  This one was from yesterday.  This is the Screen Actors Guild claims adjuster.

THE COURT:  Uh-huh.

MR. HOCHMAN:  And this is the gentleman who knew that there was corruption in the jails.  He knew what was going

UNITED STATES DISTRICT COURT

on inside the jails.  He said he didn't think it was right or legal.  He said that he heard that people that -- what they were saying about it is that nobody would find out.  His wife is a clerk at the jail.  This is a gentleman who heard the gossip and things -- about things going on inside the jail.

So we would move to strike this particular juror.

MR. JAUREGUI:  And, Your Honor, ultimately he said he had no doubt that he could be fair and impartial and he could put all of that aside and judge the case on its merits.

THE COURT:  That is my recollection.  So that motion is denied.

Now, we're at -- according to my math, we have 36 people now.  And that should -- barring some further problem, that should exhaust everybody's potential peremptory challenges and leave us with 12 jurors and four alternates.

Now, if you want, I'll see if we can do two or three more just as a precaution in case something comes up.

MR. HOCHMAN:  All right.  I think that makes sense, Your Honor, because you never know what happens when you actually do the individual questioning.

Also, let me ask now.  My understanding is that we'll get some additional peremptories for the -- for the alternates?

THE COURT:  That's correct.  You're going to get -- there are going to be four alternates, and each side will get

two peremptories.

MR. HOCHMAN:  So then if we have 16 total jurors and then we have originally 16 peremptories, that makes 32.  And then we would have 36 exactly.  So --

THE COURT:  That's right.

MR. HOCHMAN:  Doesn't give us much -- if we could do a couple more just to get some -- maybe get three or four more, that would be great.

THE COURT:  I'll do a couple more.  We'll see how it goes.  Okay.

MR. HOCHMAN:  Thank you, Your Honor.

MR. JAUREGUI:  Thank you, Your Honor.

(In open court in the presence of
 Prospective Juror No. 78697:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR NO. 78697:  Hello.

THE COURT:  Could you give us the last five digits of your badge number, please.

PROSPECTIVE JUROR NO. 78697:  78697.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR NO. 78697:  Yes.

THE COURT:  And do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR NO. 78697:  Yes.

THE COURT:  Okay.  Which ones?  What are the numbers?

PROSPECTIVE JUROR NO. 78697:  Number 2.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 78697:  Read them all? Number 3.

THE COURT:  So there's 2, 3 --

PROSPECTIVE JUROR NO. 78697:  4.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 78697:  10, I guess kind of 15.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 78697:  And 28.  I think that's it.

THE COURT:  Why don't we start with No. 2.

PROSPECTIVE JUROR NO. 78697:  Okay.

THE COURT:  Can you explain your response to No. 2?

PROSPECTIVE JUROR NO. 78697:  My uncle.  He was murdered.

THE COURT:  Okay.  When was that?

PROSPECTIVE JUROR NO. 78697:  About -- now -- it was probably, like, 20 years ago now.  His body was found stuffed in a trunk.

THE COURT:  There was a -- was there a police agency that investigated that?

321

PROSPECTIVE JUROR NO. 78697:  Yes.

THE COURT:  And what was that police agency?

PROSPECTIVE JUROR NO. 78697:  It was all the way up in Rio Vista.  Actually, they think a police officer was -- someone was killed, and they think a police officer was involved in it.

THE COURT:  Uh-huh.  And I'm sorry, when was this?

PROSPECTIVE JUROR NO. 78697:  It's about like -- how old was I?  We're December now.  I'm going to be 47.  So about -- I would say -- sorry.  I'm trying to remember my exact age.

THE COURT:  That's okay.  But it was about 20 years ago?

PROSPECTIVE JUROR NO. 78697:  Yes.

THE COURT:  Okay.  Does that -- the way that that case was handled, does it cause you any concerns about your ability to be fair and impartial in this case?

Let me ask you this.  Can you put aside what happened 20 years ago and decide this case based solely on the evidence that you see and hear here in court?

PROSPECTIVE JUROR NO. 78697:  I -- I can.  It bothers me, but I -- I can.

THE COURT:  Okay.  Is there any doubt in your mind that you can be fair and impartial to both sides of this case?

PROSPECTIVE JUROR NO. 78697:  Yeah.

**UNITED STATES DISTRICT COURT**

322

THE COURT:  So there is some doubt in your mind about how well you can compartmentalize and put that case aside?

PROSPECTIVE JUROR NO. 78697:  How do I explain? Parts of me says yes, that I can because I know I should.  But part of me still -- because it's my uncle and I know it's so many years ago, it's how -- the whole details and everything. And I'm still close with my aunt and --

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 78697:  Does it make sense?

THE COURT:  Well, I -- I understand what you're saying.

PROSPECTIVE JUROR NO. 78697:  Okay.

THE COURT:  But you understand that --

PROSPECTIVE JUROR NO. 78697:  Yes.

THE COURT:  -- what's happened in this case --

PROSPECTIVE JUROR NO. 78697:  Yes, I understand. Yeah.

THE COURT:  -- has nothing to do with what happened there.

PROSPECTIVE JUROR NO. 78697:  Yes.  I know it's totally different issues, yes.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 78697:  Okay.

THE COURT:  And witnesses are going to be --

PROSPECTIVE JUROR NO. 78697:  Yes.

THE COURT:  -- different.

PROSPECTIVE JUROR NO. 78697:  I understand.  Yes.

THE COURT:  Okay.  So would you have difficulty putting that aside and judging this case based just on the evidence that you hear here in court?

PROSPECTIVE JUROR NO. 78697:  Probably.

THE COURT:  Okay.  I'm going to excuse you, and you can return to the jury assembly room on the first floor.  And thank you very much.

Does either side wish to be heard?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

(In open court in the presence of

 Prospective Juror No. 81825:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR NO. 81825:  Hi.

THE COURT:  Could you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR NO. 81825:  81825.

THE COURT:  Have you had a chance to review the criminal case questionnaire?

PROSPECTIVE JUROR NO. 81825:  Yes.

THE COURT:  Do you have any "yes" responses to any of those questions?

UNITED STATES DISTRICT COURT

324

PROSPECTIVE JUROR NO. 81825:  Just one.

THE COURT:  Okay.  Which one is that?

PROSPECTIVE JUROR NO. 81825:  Do you want the number or just the question?

THE COURT:  Just the number.

PROSPECTIVE JUROR NO. 81825:  Number 5.

THE COURT:  You're the stepmom.

PROSPECTIVE JUROR NO. 81825:  I am the stepmom.

THE COURT:  The fact that you and your stepdaughter conceivably can be on the same jury, does that pose any issues for you?

PROSPECTIVE JUROR NO. 81825:  No.

THE COURT:  Okay.  And does it pose a problem if she adopts one position and you adopt the other position?

PROSPECTIVE JUROR NO. 81825:  No.

THE COURT:  Okay.  You think that even if she believes differently, that you're going to be able to fully engage yourself in the process and participate fully with the other jurors in deciding the issues in this case?

PROSPECTIVE JUROR NO. 81825:  I think I can have my own opinion, yes.

THE COURT:  Any doubt in your mind?

PROSPECTIVE JUROR NO. 81825:  No.

THE COURT:  Okay.  Is it going to put you in an awkward position at all if you believe one way and your

**UNITED STATES DISTRICT COURT**

stepdaughter believes another way?

PROSPECTIVE JUROR NO. 81825:  No.

THE COURT:  Any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR NO. 81825:  That is the only one.

THE COURT:  Okay.  So should you both be picked to serve on this jury, you could still exercise your independent judgment in considering the evidence and deciding this case?

PROSPECTIVE JUROR NO. 81825:  Yes.

THE COURT:  Any additional questions?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  All right.  You can return to the courtroom next door.

PROSPECTIVE JUROR NO. 81825:  Thank you.

THE COURT:  Thank you very much.

(In open court in the presence of
 Prospective Juror No. 82050:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR NO. 82050:  Hi.

THE COURT:  Can you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR NO. 82050:  82 -- oops.  82050.

THE COURT:  Okay.  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR NO. 82050:  I have.

THE COURT:  Do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR NO. 82050:  I do.

THE COURT:  Which ones?

PROSPECTIVE JUROR NO. 82050:  There's quite a few.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 82050:  Do you just want me to name them off?

THE COURT:  You can just give me the numbers.

PROSPECTIVE JUROR NO. 82050:  Let's see.  2, 3, 4, 10, 11, 12, and then didn't really -- 27, 28.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 82050:  I kind of just glanced over the rest.

THE COURT:  I'm sorry?

PROSPECTIVE JUROR NO. 82050:  I think I just glanced over the rest.

THE COURT:  Okay.  Well, I want to make sure you've had sufficient chance to look it over so --

PROSPECTIVE JUROR NO. 82050:  Let me see.  Uh, 31, 34.

THE COURT:  Okay.  Why don't we start with No. 2.

PROSPECTIVE JUROR NO. 82050:  Um, I've had burglars come to my house and my car broken into.

THE COURT: Okay. When was that?

PROSPECTIVE JUROR NO. 82050: Car was probably last year.

THE COURT: Uh-huh.

PROSPECTIVE JUROR NO. 82050: And the home burglary, maybe two years ago.

THE COURT: Were the police called in both those instances?

PROSPECTIVE JUROR NO. 82050: Yes.

THE COURT: And what police agency responded?

PROSPECTIVE JUROR NO. 82050: It was La Habra PD.

THE COURT: Okay. Anything about the way that those incidents were handled that causes you to have any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR NO. 82050: No.

THE COURT: Okay. And what about Question 3?

PROSPECTIVE JUROR NO. 82050: Um, well, my husband's a -- a deputy. So --

THE COURT: Okay. And he's a deputy with?

PROSPECTIVE JUROR NO. 82050: Orange County.

THE COURT: Orange County Sheriff's Department?

PROSPECTIVE JUROR NO. 82050: Yes. Correct.

THE COURT: And does he work patrol?

PROSPECTIVE JUROR NO. 82050: Yes.

THE COURT: Okay. And how long has he been with the

Orange County Sheriff's Department?

PROSPECTIVE JUROR NO. 82050:  Um, five, six years.

THE COURT:  Okay.  There may be witnesses in this case who are law enforcement officers.

PROSPECTIVE JUROR NO. 82050:  Okay.

THE COURT:  Are you going to be able to judge their credibility the same way you would that of any other witness?

PROSPECTIVE JUROR NO. 82050:  Um, I would probably side with them.

THE COURT:  Okay.  One other thing that's important for jurors is to judge everybody's credibility the same.  In other words, everybody starts out equally.  And we'd hope the jurors would be able to put aside any bias against or in favor of a particular witness and judge their credibility the same way they would that of any other witness.

Would it be difficult for you to perform that task --

PROSPECTIVE JUROR NO. 82050:  I think so.

THE COURT:  -- considering your husband's with law enforcement?

PROSPECTIVE JUROR NO. 82050:  Yes.

THE COURT:  Okay.  All right.  I'm going to excuse you.

PROSPECTIVE JUROR NO. 82050:  Okay.

THE COURT:  And you can return to the jury assembly

room on the first floor.

PROSPECTIVE JUROR NO. 82050:  Okay.

THE COURT:  Okay.  Thank you.

PROSPECTIVE JUROR NO. 82050:  Thank you.

THE COURT:  Either side wish to be heard?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

(In open court in the presence of
 Prospective Juror No. 85493:)

THE COURT:  Could you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR NO. 85493:  Yes.  85493.

THE COURT:  Okay.  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR NO. 85493:  Yes.

THE COURT:  And do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR NO. 85493:  Yes, I do.

THE COURT:  Okay.  What are the numbers?

PROSPECTIVE JUROR NO. 85493:  Number -- well, some of them I was kind of questionable about.  Number 4 was one.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 85493:  And No. -- No. 17 and 19.

THE COURT:  Okay.

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR NO. 85493:  And No. 28 and that's it.

THE COURT:  Okay.  Why don't we start with No. 4.

PROSPECTIVE JUROR NO. 85493:  Okay.  So I work for probation.  So I didn't know if that counted as working for, like, the court system.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 85493:  Okay.

THE COURT:  And what do you do for the probation department?

PROSPECTIVE JUROR NO. 85493:  I'm in clerical, intermediary typist clerk.

THE COURT:  And which department do you work for?

PROSPECTIVE JUROR NO. 85493:  At the Long Beach courthouse.

THE COURT:  And let's go to Question 17.

PROSPECTIVE JUROR NO. 85493:  Okay.

Oh.  So I've seen it on the news.  That's just about the extent.

THE COURT:  Do you recall specifically what you saw on the news?

PROSPECTIVE JUROR NO. 85493:  Just that the trial was coming up.  And I remember them talking about the charges, but I wasn't really paying attention.

THE COURT:  Okay.  Think you can put all of that

aside and judge this case based just on the evidence you hear here in court?

PROSPECTIVE JUROR NO. 85493:  Yes, I can.

THE COURT:  Okay.  And what about Question 19?

PROSPECTIVE JUROR NO. 85493:  Same thing.  Just saw --

THE COURT:  Same.

PROSPECTIVE JUROR NO. 85493:  Yeah.

THE COURT:  And you don't have any specific recollection of anything that you saw or heard?

PROSPECTIVE JUROR NO. 85493:  No.

THE COURT:  Okay.  And what about Question 28?

PROSPECTIVE JUROR NO. 85493:  Okay.  So same thing. I wasn't sure if me working in probation qualified.  But other than that, it would be a no.

THE COURT:  Okay.  And I'm sorry.  What is it that you do for probation?

PROSPECTIVE JUROR NO. 85493:  I'm an intermediary typist clerk, so clerical staff.

THE COURT:  Okay.  Any other "yes" or affirmative answers to any of the other questions?

PROSPECTIVE JUROR NO. 85493:  No.  That was all.

THE COURT:  Okay.  Any additional follow-up?

MR. HOCHMAN:  Yes, Your Honor.  Briefly at sidebar, please.

UNITED STATES DISTRICT COURT

332

THE COURT:  All right.

(At sidebar:)

MR. HOCHMAN:  Her role as probation, I just want to know if she had contact with law enforcement, particularly the sheriff's department.  If you could inquire into that.

THE COURT:  Okay.

(In open court in the presence of

Prospective Juror No. 85493:)

THE COURT:  In your position with the probation department, do you have any contact with law enforcement officers?

PROSPECTIVE JUROR NO. 85493:  I don't directly. They do come into the office, but they usually see the juvenile clerical staff.  They don't usually --

THE COURT:  Okay.  So you don't have any real contact with --

PROSPECTIVE JUROR NO. 85493:  Other than hi and bye and talking about the weather.

THE COURT:  All right.  Anything additional?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  All right.  Thank you very much.

You can return to the courtroom next door.

(Out of the presence of the prospective jurors:)

MR. FOX:  Your Honor, we have a couple of minutes

before anybody else comes in.  If you're thinking about cutting this off at some point, the only thing that I ask is that perhaps you call in the prospective jurors that are still left on the table and inquire of them to make sure that nothing's happened over the last day, that they've not been exposed to any media coverage, because I would hate to excuse everybody else and then we find out during the process --

THE COURT:  I don't intend to excuse those people who we have not seen --

MR. FOX:  Great.  Thank you.

THE COURT:  -- until we have a jury.

MR. FOX:  That makes sense.  Thank you, Your Honor.

THE COURT:  Okay.

(In open court in the presence of
 Prospective Juror No. 86564:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR NO. 86564:  Good afternoon.

THE COURT:  Could you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR NO. 86564:  86564.

THE COURT:  And have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR NO. 86564:  I did.

THE COURT:  And do you have any "yes" responses to any of those questions?

**UNITED STATES DISTRICT COURT**

334

PROSPECTIVE JUROR NO. 86564:  I do not.

THE COURT:  All right.  Thank you very much.

You can return to the courtroom next door.

PROSPECTIVE JUROR NO. 86564:  Thank you.

(In open court in the presence of

 Prospective Juror No. 87089:)

THE COURT:  Good afternoon.

PROSPECTIVE JUROR NO. 87089:  Good afternoon, Your Honor.

THE COURT:  Could you give us the last five digits of your badge number?

PROSPECTIVE JUROR NO. 87089:  Yes.  It's 87089.

THE COURT:  Have you had a chance to look at the criminal case questionnaire?

PROSPECTIVE JUROR NO. 87089:  I have.

THE COURT:  And do you have any "yes" responses to any of those questions?

PROSPECTIVE JUROR NO. 87089:  I do.

THE COURT:  Okay.  What are the numbers?

PROSPECTIVE JUROR NO. 87089:  1, 3, 6, 10, 12, 14, 15, 16, 17, 18, 19, 21, 24, 25, 27, 28, 30, 34.

THE COURT:  Okay.  Why don't we start with No. 1.

PROSPECTIVE JUROR NO. 87089:  So I do have a nephew who is currently incarcerated.

THE COURT:  Okay.  And what is that person

**UNITED STATES DISTRICT COURT**

incarcerated for?

PROSPECTIVE JUROR NO. 87089:  He's incarcerated for -- I believe it was assault, and then they added a gang enhancement.

THE COURT:  Okay.  And where's he incarcerated at?

PROSPECTIVE JUROR NO. 87089:  Um, he's currently been transported to -- I think it's called Norco, Norco Correctional.

THE COURT:  And was that prosecution, was it here in L.A. County?

PROSPECTIVE JUROR NO. 87089:  Yes.  LAX.

THE COURT:  Okay.  And do you know if he spent any time in any local jail?

PROSPECTIVE JUROR NO. 87089:  Yes.  He was in the county jail.

THE COURT:  Okay.  Do you know specifically which one?

PROSPECTIVE JUROR NO. 87089:  The Los Angeles -- the Twin Towers.

THE COURT:  Twin Towers.  Okay.

Did you happen to visit the inmate -- Twin Towers?

PROSPECTIVE JUROR NO. 87089:  I did.

THE COURT:  Okay.  Is there anything that you saw or heard when you visited Twin Towers that caused you to have concerns about your ability to be fair and impartial to both

**UNITED STATES DISTRICT COURT**

sides in this case?

PROSPECTIVE JUROR NO. 87089:  Well, my visit, no, Your Honor.

THE COURT:  I'm sorry?

PROSPECTIVE JUROR NO. 87089:  Well, my visit, no.

THE COURT:  Okay.  Let's go to Question 17.

PROSPECTIVE JUROR NO. 87089:  Oh.  I answered "yes" because I've heard and read through TV news and social media.

THE COURT:  Okay.  Do you recall exactly what you've heard and read?

PROSPECTIVE JUROR NO. 87089:  Vaguely.  Just -- I remember them talking about perhaps some corruption or some kind of scandal in the county jails.

THE COURT:  Okay.  Can you put aside what you've heard or seen and decide this case based solely on the evidence you hear here in court?

PROSPECTIVE JUROR NO. 87089:  I suppose.

THE COURT:  Is there any doubt in your mind?

PROSPECTIVE JUROR NO. 87089:  To be honest, yes.

THE COURT:  Okay.  Is there some reason you believe you could not give both sides a fair trial in this case because of the nature of the charges?

PROSPECTIVE JUROR NO. 87089:  It's a hard question to ask, but I -- um, it's just that my nephew's been in that system.  And even though I haven't personally witnessed, I have

heard things that go on in there.

THE COURT: Uh-huh.

PROSPECTIVE JUROR NO. 87089: And I mean, I'm not sure if it's true or not. And I can't -- I don't know. That's why I told you in the beginning that I just felt that to be fair to the defendant, I think -- I wasn't sure if I could be -- you know.

THE COURT: Uh-huh.

PROSPECTIVE JUROR NO. 87089: I guess.

THE COURT: So you would have difficulty putting aside things that you've heard and seen in resolving the issues in this case?

PROSPECTIVE JUROR NO. 87089: Yes, sir.

THE COURT: Okay. All right. I'm going to excuse you. You can return to the jury assembly room on the first floor.

PROSPECTIVE JUROR NO. 87089: Thank you.

THE COURT: Thank you.

(In open court in the presence of
 Prospective Juror No. 89046:)

THE COURT: Good afternoon.

Could you give us the last five digits of your badge number, please?

PROSPECTIVE JUROR NO. 89046: 89046.

THE COURT: Okay. And have you had a chance to look

at the criminal case questionnaire?

PROSPECTIVE JUROR NO. 89046:  Yes.  I have five yeses.

THE COURT:  Okay.  Could you give us the numbers, please?

PROSPECTIVE JUROR NO. 89046:  1, 2, 4, 20, 31.

THE COURT:  Okay.  Let's start with No. 1.

PROSPECTIVE JUROR NO. 89046:  Okay.  One friend had a DUI about five years ago.

THE COURT:  Do you recall what police agency was involved in that?  Or do you know?

PROSPECTIVE JUROR NO. 89046:  I don't know any details.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 89046:  Ten years ago a friend was arrested and convicted in a rape crime that had occurred prior to me knowing him.

THE COURT:  Okay.  Anything about the way that that case was handled that would cause you to have any concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR NO. 89046:  No, sir.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 89046:  I think my brother-in-law was arrested once before I knew him.

THE COURT:  Okay.  Can you put that incident aside

and be fair and impartial to both sides in this case?

PROSPECTIVE JUROR NO. 89046:  Yes, sir.

THE COURT:  Okay.  What about No. 2?

PROSPECTIVE JUROR NO. 89046:  My car was vandalized four times.  I was in a hit and run accident.

THE COURT:  Okay.  Anything about those incidents that caused you to have concerns about your ability to be fair and impartial to both sides?

PROSPECTIVE JUROR NO. 89046:  No worries.

THE COURT:  And No. 4.

PROSPECTIVE JUROR NO. 89046:  I think my mother worked in some secretarial capacity 40 years ago for L.A. County, possibly the courts, but it was before I was born. I don't know.

THE COURT:  Okay.  And Question 20.

PROSPECTIVE JUROR NO. 89046:  Okay.  Regarding the prisoner rehabilitation portion of the question, my father was a drill instructor at a prison boot camp out of state.  It was a rehabilitation facility where the people could come from the state prison.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 89046:  And go there and get their GED and go through a boot camp style wilderness program and then be released early.  And there was some problems at the facility.

**UNITED STATES DISTRICT COURT**

And I don't know how much detail you want to go into it, but eventually one of the inmates who was in a trusted capacity, receiving certain type of staff privileges, that had been abused ended up almost murdering one of the women in the office and it was shut down. And my father was part of reporting some of the problems that he observed --

THE COURT: Okay.

PROSPECTIVE JUROR NO. 89046: -- while there.

THE COURT: Do you recall when that was?

PROSPECTIVE JUROR NO. 89046: Yes. It was 20 years ago, which was a while.

THE COURT: Anything about that incident or the way it was handled cause you to have any concerns about your ability to be fair and impartial in this case?

PROSPECTIVE JUROR NO. 89046: No, sir.

THE COURT: Okay. And what about Question 31?

PROSPECTIVE JUROR NO. 89046: Question 31. Yes. I usually get approximately two to three migraines per month. I wanted you to know because I do live two-and-a-half hours away, and I will be staying in a hotel with some subsistence. And without being able to kind of cope for myself or have my normal routine, it's possible I might get more. Not guaranteed. And I don't have medications. I regulate it with my diet. So just something to keep in mind.

THE COURT: Okay. Any other "yes" responses to any

UNITED STATES DISTRICT COURT

of the other questions?

PROSPECTIVE JUROR NO. 89046:  No.  That's all.

THE COURT:  Okay.  How often do you get these migraines?

PROSPECTIVE JUROR NO. 89046:  Two to three times per month.  It can happen if I'm traveling for long periods of time or if I'm flying or not sleeping multiple nights, things like that.

THE COURT:  Okay.  Thank you.

PROSPECTIVE JUROR NO. 89046:  Thank you.

(Out of the presence of the prospective jurors:)

THE COURT:  We're going to take about a two-minute break.

(Break taken.)

(Out of the presence of the prospective jurors:)

THE COURT:  All right.  Pass for cause as to the jurors that have been examined thus far?

MR. FOX:  Your Honor, with the last one that we just spoke to, given her migraine issue and our trial schedule, I think it would be a good idea to excuse her for cause because she said that it gets worse when she's traveling.  She said that she's going to be staying here two-and-a-half hours away from where she lives.  And I think that we will have fewer problems with the jury overall if she's not on the jury.

MR. DIAMANTATOS:  No objection.

342

MR. HOCHMAN:  No objection, Your Honor.

THE COURT:  All right.  I believe we have a sufficient number of jurors now.  So what I intend to do is to have the jury come in, and we'll seat them on the -- to the right.  And then I'm going to ask all the spectators to take the seats over on the -- my left.  We will then call 12 names into the box, and then I will have each of the jurors briefly go through the background questionnaire, which I believe you now have a copy of.

MR. HOCHMAN:  Your Honor, may Mr. Baca run really quickly to the restroom? -- he didn't think to do it at the last break -- while the jury's coming in?

THE COURT:  That's fine.

MR. HOCHMAN:  Thank you, Your Honor.

(Pause in the proceedings.)

THE COURT:  Okay.  I'm going to bring back in the last juror who the parties agree can be excused, excuse her, and then we'll bring in all of the jurors who we've talked to.  There's about eight or -- about eight to ten, perhaps, that we haven't talked to.  They'll remain over in 9B.  And we'll use them if we have to.  I don't suspect that we'll need to do that.

We'll bring them in, we'll have them go through the background questionnaire, and then we'll start exercising peremptories.

If you'd like, I will ask them before we start whether there's been anybody who's been exposed to any media coverage or reports about the case.

MR. DIAMANTATOS:  Just a suggestion, Judge, perhaps -- or, Your Honor, perhaps we can ask them if anything changed in their answers from yesterday to today.

THE COURT:  I'm not going to ask them that.

MR. FOX:  Your Honor, we do think that it's a good idea to ask them about media coverage, whether they've been exposed to any media coverage.  Thank you.

THE COURT:  Let's bring her in.

(In open court in the presence of
 Prospective Juror No. 89046:)

THE COURT:  Good afternoon.

Because of the migraine issue that you have and because sometimes that tends to happen when you're traveling, and you live in --

PROSPECTIVE JUROR NO. 89046:  I live 20 miles north of Santa Barbara.

THE COURT:  Okay.  I'm going to excuse you.  And I appreciate you participating in the process of being willing to serve, but I think we're going to excuse you out of an abundance of caution.

PROSPECTIVE JUROR NO. 89046:  Sure.

THE COURT:  So you can return to the jury assembly

room on the first floor.

PROSPECTIVE JUROR NO. 89046:  All right.  Thank you.

THE COURT:  Thank you.

(Out of the presence of the prospective jurors:)

THE COURT:  Anybody have any objections to the background questionnaire?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  Can I have just one moment, Your Honor?

THE COURT:  Yes.

(Pause in the proceedings.)

MR. HOCHMAN:  No objection, Your Honor.

THE COURT:  All right.

MR. FOX:  And, Your Honor, these jurors will be called randomly, they're not going to go in numerical order?

THE COURT:  No.  They're going to be called randomly.

MR. FOX:  Thank you.

(Pause in the proceedings.)

(In the presence of the prospective jurors:)

THE COURT:  Ladies and gentlemen, good afternoon.  I want to make sure that none of you have been exposed to any media coverage about this case.  If any of you have been exposed to any media coverage about this case, would you please raise your hand?

UNIDENTIFIED PROSPECTIVE JUROR:  Before or after today?

UNIDENTIFIED PROSPECTIVE JUROR:  That's a good question.

THE COURT:  Since you've been seated -- since you've been participating in this process, have any of you been exposed to any media coverage since Monday?

UNIDENTIFIED PROSPECTIVE JUROR:  Well --

THE COURT:  That's all right.  Don't -- it's okay.

So you think you may have been exposed to media coverage since Monday about this case?

UNIDENTIFIED PROSPECTIVE JUROR:  Not myself.

THE COURT:  Okay.  All right.  I'm going to ask if you would --

MR. FOX:  Your Honor, I think she went over this earlier.

THE COURT:  Is what you're referring to, are things that we've talked about earlier?

UNIDENTIFIED PROSPECTIVE JUROR:  (No audible response.)

THE COURT:  Okay.

THE COURT SECURITY OFFICER:  We're running out of seats over here, Your Honor.

THE COURT:  Okay.  We'll get a couple more seats. They're going to move -- there we go.

**UNITED STATES DISTRICT COURT**

Okay.  Now, again, is there anybody -- any prospective juror that's been exposed to any media coverage since Monday?

Okay.  The record should reflect that no hands were raised in response to that question.

All right.  We're going to call the numbers of 12 prospective jurors.  As your number is called, please come forward and take your seat in the jury box as the clerk directs.  Prospective Juror No. 1 should take the seat on the first row closest to me.  And Prospective Juror No. 2 takes the next seat on the first row until six seats are filled on the first row.

Prospective Juror No. 7 takes the first seat on the second row closest to me.

All right.  I'm going to ask the clerk to go ahead and call the numbers of the prospective jurors.  So it's going to be the last five digits on your badge.

THE COURTROOM DEPUTY:  All right.  01533, 39558, 44020.

THE COURT:  Slow down.

THE COURTROOM DEPUTY:  07617, 57870, 27725.  Wait.  Yeah.  Oh.  That one's wrong.  Never mind.

18267, 9 -- 49568.

THE COURT:  Okay.  You're going to take the first seat on the second row.

THE COURTROOM DEPUTY:  30451, 31726, 29410, 18015, 01265.

THE COURT:  All right.  Ladies and gentlemen, we're going to now ask you a few questions about yourselves.

We're going to begin with Prospective Juror No. 1. There should be a background questionnaire on your chair.  And if you would start off by giving us the last five digits of your badge number, please.

PROSPECTIVE JUROR NO. 01533:  01533.

THE COURT:  Okay.  And if you would just go down this list of questions and answers.

PROSPECTIVE JUROR NO. 01533:  I live in South Pasadena, California.  I've lived there since 199- -- yeah, 1999.  Prior to that, I lived in Pasadena.  I'm married.  I have three kids.  One's 27, one's 23, and one's 20.  Goes boy, girl, boy.

THE COURT:  And what do they do for a living?

PROSPECTIVE JUROR NO. 01533:  The two are students and -- preschool teacher and a caterer.  Works for a caterer. Civil engineering.  I don't know, that was the first born. Second one is a preschool teacher.  Third born is the -- works for a caterer.

Education, um, I have an AA, liberal arts degree.

MR. HOCHMAN:  I'm sorry, Your Honor.  I didn't catch that.

UNITED STATES DISTRICT COURT

PROSPECTIVE JUROR NO. 01533:  Liberal arts, AA degree.  No military service for me.

THE COURT:  What do you do for a living?

PROSPECTIVE JUROR NO. 01533:  I'm currently employed by myself and my husband.  We manage two businesses, one manufacturing and the other is -- is the manufacturing one and the other one is memberships.  We sell those.

THE COURT:  You sell memberships in --

PROSPECTIVE JUROR NO. 01533:  Tactical training.

Um, my husband, um, was an electrician prior to us beginning our businesses.

THE COURT:  Have you ever served on a jury before?

PROSPECTIVE JUROR NO. 01533:  Never.

THE COURT:  Have you ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 01533:  No.

THE COURT:  When you say that you and your husband sell memberships and tactical training --

PROSPECTIVE JUROR NO. 01533:  Uh-huh.

THE COURT:  -- what does that involve?

PROSPECTIVE JUROR NO. 01533:  It's a membership to a, um, training, um, for firearms and defensive driving, repelling up in -- well, they've got several -- couple places now, but the main one is just 48 miles outside of Vegas.

THE COURT:  Okay.  Thank you.

**UNITED STATES DISTRICT COURT**

If you could pass the microphone to the next prospective juror.

And if you could start off by giving us the last five digits of your badge, please.

PROSPECTIVE JUROR NO. 39558:  Badge number is 39558.

I live in Maywood, California.  I've lived there for 27 years.  No other residence.  I haven't lived anywhere else.  I'm married.  No children.  I have some college experience.  No military service.  I work airport security.  Before that, I -- I was the manager at a food industry company.  Past occupation -- my husband is a warehouse clerk for Ralphs, and before then he was in high school.

THE COURT:  Okay.  Ever served on a jury before?

PROSPECTIVE JUROR NO. 39558:  No, sir.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 39558:  No.

THE COURT:  All right.  Thank you.

If you could pass the microphone to the next prospective juror.  And, sir, if you could tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 44020:  I'm 44020.  I currently live in Fontana, since 2011.  Before that, lived in a couple of places but a majority of that time in Covina.  Currently married.  I have one son.  He's 1 years old and does

not have an occupation, unfortunately.  Education, bachelor's in business administration.  No military service.  Occupation, I'm an operations manager at Target Distribution Center.  Past experience was marketing and promotion for the National Hotrod Association.  Let's see.  Spouse, my wife she's a claims processor.  She's done that her whole career.

THE COURT:  And who does she work for?

PROSPECTIVE JUROR NO. 44020:  North American Medical Management company, known as NAMM.

THE COURT:  Have you ever served on a jury before?

PROSPECTIVE JUROR NO. 44020:  No, sir.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 44020:  No.

THE COURT:  All right.  Thank you very much.

And, sir, if you could give us the last five digits of your badge number, please.

PROSPECTIVE JUROR NO. 07617:  07617.  I currently live in Rancho Palos Verdes.  We've lived there for the last four years.  Prior to that, we owned our house in Torrance.  I'm married.  I have one child.  She's 10 years old.  No occupation yet other than student.  I have a bachelor of science in business finance.  I served in the California Army National Guard, '96 to 2000, staff sergeant.  I currently am a manufacturing engineering supervisor for a federal DOD agency

by the name of DCMA, Defense Contract Management Agency.  Let's see.  Prior to that, I worked in the entertainment industry, Warner Brothers, a few others in manufacturing logistic supply chain.  And my wife is an attorney, an ERISA attorney.  She works in employee benefits.  That's her specialty.  And that's it.

THE COURT:  Does she work for a firm?

PROSPECTIVE JUROR NO. 07617:  Yeah.  She works for a firm called Hub.  She recently joined Hub.  Prior to that, she worked for Wells Fargo, employee benefits practice.  They -- her company was purchased by Wells Fargo about five years ago.

THE COURT:  Ever served on a jury before?

PROSPECTIVE JUROR NO. 07617:  No.  I was an alternate, but I was never selected.

THE COURT:  Okay.  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 07617:  No, I have not.

THE COURT:  All right.  Thank you.

If you could pass the microphone to the next prospective juror.

PROSPECTIVE JUROR NO. 57870:  My number is 57870.  I live in Thousand Oaks, California.  I've been there for 51 years.  Change is a big deal for me.  Before that, I lived in Reseda, California.  Before that, in Iowa.  Um, I'm married.  I have no children.  I have a bachelor's degree in fine arts.

Um, I have not been in the military.  My occupation now is retired.  I usually say kept woman but -- um, and I do volunteer work for a small historical museum.  Before that, I worked with my husband in his small business.  And before that, I was a travel agent.  Um --

THE COURT:  What does your husband do for a living?

PROSPECTIVE JUROR NO. 57870:  My husband works for Canal Recreation and Park District as a groundsman.

THE COURT:  Have you served on a jury before?

PROSPECTIVE JUROR NO. 57870:  Yes.  Four juries.

THE COURT:  Okay.  Were they civil or --

PROSPECTIVE JUROR NO. 57870:  Two civil.  One was medical malpractice, and the other one -- I can never remember the title.  She was fired and thought it was wrongly -- I forget what's that called.  There were two criminal DUIs.

THE COURT:  Okay.  Was the jury able to reach a verdict in the civil cases?

PROSPECTIVE JUROR NO. 57870:  On the civil cases, yes.

THE COURT:  And criminal cases?

PROSPECTIVE JUROR NO. 57870:  One, yes; one, no.

THE COURT:  Okay.  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 57870:  No.

THE COURT:  All right.  Thank you very much.

**UNITED STATES DISTRICT COURT**

PROSPECTIVE JUROR NO. 18267:  I'm Juror No. 18267. Last four.  I live in Long Beach now.  I've lived there six years.  Prior to that, I lived in Iowa three years.  And then prior to that, I lived in Long Beach since I was 1.  I'm single, but I live with my boyfriend of 20 years.  We have three children together, ages 21, 17, and 5.  Some college, not graduate.  No military.  Los Angeles County clerk.  I work for the Mental Health Department.  Okay.  Always been doing clerical.  And my, um, boyfriend is a forklift driver.  No prior jury service.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 18267:  No.

THE COURT:  Okay.  And if you could pass the microphone all the way back down.

And if you could give us your badge number.

PROSPECTIVE JUROR NO. 49568:  I am 49568.  And I live in Mid-City now.  I lived there for three years.  And before that, Koreatown.  Um, I'm single.  I don't have any children.  Um, I have a B.A. from the University of Santa Cruz in film and digital media production.  I have had no military service.  Currently I'm a supervising producer at a production company that specializes in educational content.  And in the past, I've done entertainment news and documentary production and editorial.  The name of my present employer is Fulcrum

354

Labs.  And I do not have a spouse, so --

THE COURT:  Ever served on a jury before?

PROSPECTIVE JUROR NO. 49568:  I was picked as an alternate once.

THE COURT:  Okay.  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 49568:  No.

THE COURT:  Okay.  If you could pass the microphone to the next prospective juror.

PROSPECTIVE JUROR NO. 30451:  30451.  I live in Thousand Oaks.  I've been there since 2005.  I previously lived in Ojai, in Santa Cruz, and Gardena.  I am married.  I have no children.  I have a B.A. in -- from U.C. Santa Cruz in economics.  I have no military service.  I work for the City of Thousand Oaks as a housing coordinator.  My husband works for the Church of Epiphany as an administrator.  Before that, he worked for TrueCar and the National Park Service.

THE COURT:  Ever served on a jury before?

PROSPECTIVE JUROR NO. 30451:  Yes.

THE COURT:  And was that a civil or criminal case?

PROSPECTIVE JUROR NO. 30451:  Both.

THE COURT:  And do you recall what the civil case was about?

PROSPECTIVE JUROR NO. 30451:  A discrimination case.

THE COURT:  Was the jury able to reach a verdict?

PROSPECTIVE JUROR NO. 30451:  Yes.

THE COURT:  Do you recall what the criminal case was about?

PROSPECTIVE JUROR NO. 30451:  It was a murder case.

THE COURT:  And was the jury able to reach a verdict?

PROSPECTIVE JUROR NO. 30451:  Yes.

THE COURT:  And when was the criminal case?

PROSPECTIVE JUROR NO. 30451:  Um, like in the early '90s.

THE COURT:  Okay.  And when was the civil case?

PROSPECTIVE JUROR NO. 30451:  In the early 2000s.

THE COURT:  Okay.  Any other jury service?

PROSPECTIVE JUROR NO. 30451:  Um, there was another civil, but I don't really remember what the case was about.

THE COURT:  Okay.  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 30451:  No.

THE COURT:  All right.  Thank you very much.

PROSPECTIVE JUROR NO. 31726:  I'm badge 31726.  I currently live in North Hollywood.  I've lived there close to four years now.  Before that, I lived in Huntington Beach for 20-plus years.  Divorced.  I have two children.  My son just turned 28.  He is a youth pastor.  And my daughter is 21, and she still lives with me.  And she's a full-time student.  I

have some college level education.  I've never served in the military.  Currently, I am an assistant to the operations manager in an office building downtown.  In the past, I've had lots of clerical jobs.  I used to work -- run the office for L.A. Choppers.  I used to be a booking agent for Libertalia Entertainment.  We booked tours for them all over the United States.  And before that, I had my own advertising business.  So kind of all over the board with that.  Um --

THE COURT:  What does your husband do?

PROSPECTIVE JUROR NO. 31726:  Actually, he can do whatever he wants to do.  We're not married anymore.

THE COURT:  Before you were divorced, what did you --

PROSPECTIVE JUROR NO. 31726:  Pardon me?

THE COURT:  Before the divorce, what did he do for a living?

PROSPECTIVE JUROR NO. 31726:  He is an engineering director for a real estate company.

THE COURT:  Ever served on a jury before?

PROSPECTIVE JUROR NO. 31726:  Never.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 31726:  You know what?  I'm not sure how to answer that question.  I'm not sure if you remember me, but I had a little trouble in 1991.  So I had to

go to court for that.  But I wasn't sure if that's --

THE COURT:  That's okay.  We talked about that.

PROSPECTIVE JUROR NO. 31726:  Okay.

THE COURT:  Thank you.

PROSPECTIVE JUROR NO. 31726:  Thank you.

THE COURT:  And, sir, if you could give us your badge number, please.

PROSPECTIVE JUROR NO. 29410:  29410.  I lived in Encino for the last two years and, before that, downtown L.A. I'm married with a 1 -- 1-year-old.  I have a law degree.  I haven't served in the military.  I have been a lawyer for the last 14 years at the "Law Office of" followed by my name.  My wife is a pharmacist at UCLA.

THE COURT:  Ever served on a jury before?

PROSPECTIVE JUROR NO. 29410:  No.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 29410:  No.

THE COURT:  All right.  Thank you.

PROSPECTIVE JUROR NO. 18015:  I'm Juror No. 18015. I live in Santa Barbara.  I've lived there for eight years. And before that, I lived in Alabama.  I'm married.  I have no children of my own, but I have a stepdaughter who's 10.  I have no military service.  I have a bachelor's degree in nursing. I've been a nurse for 16 years and currently work at Cottage

Hospital.  My husband is a computer analyst and works at Yardi Systems.  And I've never done any jury service before.

THE COURT:  Okay.  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 18015:  No, sir.

THE COURT:  Okay.  If you could pass the microphone.

And, sir, if you'd give us your badge number.

PROSPECTIVE JUROR NO. 01265:  Badge number 01265.  I live in the Los Angeles-Hollywood area.  I've lived there since about 40 years.  And before that, in Idaho.  Single.  No children.  Part college.  Not graduated.  No military.  And occupation, in the call center.  And present employer, with the Auto Club of Southern California.  And as far as jury service, I have been on a civil service trial.

THE COURT:  Okay.  Was the jury able to reach a verdict?

PROSPECTIVE JUROR NO. 01265:  Yes.

THE COURT:  And when was that service?

PROSPECTIVE JUROR NO. 01265:  Several years ago.

THE COURT:  Okay.  Is that all your jury service?

PROSPECTIVE JUROR NO. 01265:  Yes.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 01265:  No.

THE COURT:  All right.  Thank you.

All right.  May I see counsel at sidebar, please.

(At sidebar:)

THE COURT:  All right.  Any follow-up questions for any of the members seated in the jury box?

MR. HOCHMAN:  Yes, Your Honor.  Juror No. 5, which is Juror No. 57870, she said she served on four different juries.  And you got the topics generally but not the timing, whether they were recent or long ago.

THE COURT:  Okay.

MR. HOCHMAN:  I don't know, Mr. -- I'm looking through my notes.  If Mr. Fox has any --

MR. FOX:  We don't have follow-ups, Your Honor.

THE COURT:  Okay.

(Pause in the proceedings.)

MR. HOCHMAN:  I think that's it, Judge.

THE COURT:  Okay.

MR. HOCHMAN:  Thank you.

THE COURT:  Oh.  Excuse me.  As soon as we hear from her -- in fact, we'll do that now while you're here, then we're going to start exercising peremptories.  The first peremptory rests with the Government.  Please meet and confer before you announce your peremptory.  And then -- all right.

MR. FOX:  And, Your Honor, I think it won't take us a ton of time, but I would like to -- because this will be a quick process, I think we need a little bit more time on our

**UNITED STATES DISTRICT COURT**

360

side to make our decisions than we usually --

THE COURT:  That's fine.

MR. FOX:  Thank you, Your Honor.

THE COURT:  Okay.

MR. HOCHMAN:  And I assume the reason for the meet
and confer is whether or not the other side has a motion to
raise before they -- very good, Your Honor.

MR. FOX:  Thank you, Your Honor.

THE COURT:  Okay.

(In the presence of the prospective jurors:)

THE COURT:  All right.  Prospective Juror No. 5, I
believe you indicated that you had some prior jury service.

PROSPECTIVE JUROR NO. 57870:  Yes.

THE COURT:  Do you recall when your jury service
was?

PROSPECTIVE JUROR NO. 57870:  No.

THE COURT:  Is that sometime --

PROSPECTIVE JUROR NO. 57870:  It was over a space of
30 years.  And I -- if I had known there was a pop quiz, I
would have studied.

THE COURT:  Okay.  But needless to say, your service
was some time ago?

PROSPECTIVE JUROR NO. 57870:  I'm sorry?

THE COURT:  Your jury service was some time ago?

PROSPECTIVE JUROR NO. 57870:  Oh.  Um, the last jury

**UNITED STATES DISTRICT COURT**

service was probably about five or six years ago.  And that was the medical malpractice suit.

THE COURT:  Okay.  And prior to that, do you recall when your service was?

PROSPECTIVE JUROR NO. 57870:  I'm sorry.  I'm sorry. I can't.

THE COURT:  Okay.  That's fine.

All right.  Ladies and gentlemen, counsel will now exercise what are called peremptory challenges.  Each side is entitled to a certain number of peremptory challenges to prospective jurors seated in the jury box.  A peremptory challenge allows counsel to remove prospective jurors that he or she believes may be unsympathetic to his or her case.  A peremptory challenge is one for which no cause or reason need be given.

It's something that lawyers do, so don't hold it against them if they exercise a peremptory challenge.

All right.  The first peremptory, I believe, rests with the Government.

(Pause in the proceedings.)

MR. FOX:  Your Honor, the Government asks the Court to thank and excuse Prospective Juror No. 11.

THE COURT:  All right.  Miss, you're excused.  You may return to the jury assembly room on the first floor.  Thank you very much for your service.

362

All right.  Let's call the number of another prospective juror, please.

THE COURTROOM DEPUTY:  75471.

PROSPECTIVE JUROR NO. 75471:  75471.

THE COURT:  And if you can take the background questionnaire, and tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 75471:  I currently live in Santa Barbara.  I've lived in Pasadena for -- since '90 -- prior to '91.  I am married with two daughters, 16 and 10, both students.  I have an A.A. degree in liberal studies.  No military service.  I currently am a material supervisor for Seymour Duncan.  Present employer, I was a production supervisor for a company called Tate Western.

THE COURT:  And what does your spouse do?

PROSPECTIVE JUROR NO. 75471:  My spouse is a director of children's services at our local church.

THE COURT:  Ever served on a jury before?

PROSPECTIVE JUROR NO. 75471:  I have not.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 75471:  No.

THE COURT:  Okay.  Any additional questions for the newly seated juror?

MR. HOCHMAN:  Just briefly, Your Honor, to get clarification what a material supervisor, production supervisor

UNITED STATES DISTRICT COURT

is.

PROSPECTIVE JUROR NO. 75471:  I currently oversee the warehouse and purchasing departments of our company.

THE COURT:  Okay.

MR. HOCHMAN:  No other questions, Your Honor.

THE COURT:  All right.  The next peremptory rests with the defense.

MR. HOCHMAN:  May I have a moment, Your Honor?

THE COURT:  Yes.

(Pause in the proceedings.)

MR. HOCHMAN:  Your Honor, the defense would ask the Court to thank and excuse Juror No. 10, No. 29410.

THE COURT:  All right, sir.  You're excused.  You may return to the jury assembly room on the first floor.  Thank you very much for your service.

All right.  I'm going to ask the clerk to call the number of another prospective juror.

THE COURTROOM DEPUTY:  46328.

THE COURT:  Okay.  If you could start off by giving us your badge number, please.

PROSPECTIVE JUROR NO. 46328:  46328.

THE COURT:  And if you could tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 46328:  I currently live in Glassell Park.  I've been there for about six years.  Before

**UNITED STATES DISTRICT COURT**

that, I was in Glendale. Before that, I lived in the Philippines. Currently married. I have two kids. One's going to be 4 in two weeks, and that's a girl. And I have a boy who's 15 months. They don't have any occupations at this point. I --

THE COURT: Your educational background?

PROSPECTIVE JUROR NO. 46328: I finished with a master's degree for occupational therapy. No military service. I'm an occupational therapist.

THE COURT: And who do you work for?

PROSPECTIVE JUROR NO. 46328: County of Los Angeles.

THE COURT: And is your husband employed?

PROSPECTIVE JUROR NO. 46328: Yes. He works in a small company. I'm not quite sure what the name is because they just had a name change, but it's an Internet company, advertising. Before that, he was -- his background is financial analyst.

THE COURT: Okay. Ever served on a jury before?

PROSPECTIVE JUROR NO. 46328: No.

THE COURT: Ever been a party or a witness in a civil case?

PROSPECTIVE JUROR NO. 46328: No. Wait. Civil?

THE COURT: Uh-huh.

PROSPECTIVE JUROR NO. 46328: I've been -- actually, no. Sorry.

THE COURT:  Okay.  Any additional follow-up questions for the newly seated juror?

MR. HOCHMAN:  I have no questions, Your Honor.

MR. FOX:  Not from the Government, Your Honor.

THE COURT:  All right.  Next peremptory, I believe, rests with the defense.

MR. FOX:  Your Honor, may we approach on one issue, please?

THE COURT:  Yes.

(At sidebar:)

MR. FOX:  Your Honor, I think we're up under the chart.

THE COURT:  This chart is wrong.

MR. FOX:  Oh.  Okay.

THE COURT:  It's going to go -- let me get you a correct chart.

MR. FOX:  Okay.

(Pause in the proceedings.)

(In the presence of the prospective jurors:)

THE COURT:  Ladies and gentlemen, we're going to take a short break.

Again, I want to remind you until this trial is over, you're not to discuss this case with anyone, and do not permit others to try and discuss the case with you.  If anybody approaches you and tries to talk with you about this case,

UNITED STATES DISTRICT COURT

please let me know about it immediately.

Do not read or listen to any news reports or other accounts about the trial. Do not make any investigation about the case on your own. Don't consult any dictionaries or any other reference materials. Don't look on the Internet.

We're going to come back -- oh, let's make it -- let's make it about ten minutes. All right?

(Break taken.)

(In the presence of the prospective jurors:)

THE COURT: I'd like to see counsel at sidebar, please.

(At sidebar:)

THE COURT: All right. I trust everybody's got a correct chart. So the Government gets the first, defense gets two, Government goes, defense gets two.

MR. FOX: Okay, Your Honor.

MR. HOCHMAN: Yes.

THE COURT: So I believe the next peremptory rests with the defense.

MR. HOCHMAN: Thank you.

(In the presence of the prospective jurors:)

MR. HOCHMAN: Your Honor, the defense would ask the Court to thank and excuse Juror No. 7, Badge No. 49568.

THE COURT: All right. You're excused. You may return to the jury assembly room on the first floor. Thank you

**UNITED STATES DISTRICT COURT**

very much for your service.

I'm going to ask the clerk to call the number of the new juror.

THE COURTROOM DEPUTY:  51346.

THE COURT:  And if you could give us your badge number, please.

PROSPECTIVE JUROR NO. 51346:  51346.

THE COURT:  And if you could tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 51346:  I live in Arleta, California.  I've lived there for 15 years.

THE COURT:  And prior to living there, where did you live?

PROSPECTIVE JUROR NO. 51346:  I lived in Downey.

THE COURT:  Okay.  And your marital status?

PROSPECTIVE JUROR NO. 51346:  Single.

THE COURT:  Do you have any children?

PROSPECTIVE JUROR NO. 51346:  Yes.

THE COURT:  How many children do you have?

PROSPECTIVE JUROR NO. 51346:  Just one.  He's 5.

THE COURT:  Okay.  And your educational background.

PROSPECTIVE JUROR NO. 51346:  Medical assistant.

THE COURT:  And have you ever served in the military?

PROSPECTIVE JUROR NO. 51346:  No.

**UNITED STATES DISTRICT COURT**

THE COURT: And by whom are you employed?

PROSPECTIVE JUROR NO. 51346: I work for a psychiatrist.

THE COURT: Okay. And ever served on a jury before?

PROSPECTIVE JUROR NO. 51346: No.

THE COURT: Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 51346: No.

THE COURT: I'm sorry. What's your occupation?

PROSPECTIVE JUROR NO. 51346: I'm a medical assistant.

THE COURT: Okay. All right. Any additional questions for the newly seated juror?

MR. FOX: Yes, Your Honor. May I briefly be heard?

THE COURT: Yes.

(At sidebar:)

MR. FOX: Your Honor, I'd just like to find out, without getting the name of her employer, at least where she's employed just in case she's familiar with somebody who's seen Mr. Baca.

THE COURT: Okay.

(In the presence of the prospective jurors:)

THE COURT: What's the name of the doctor that you work for?

PROSPECTIVE JUROR NO. 51346: Dr. Garma.

THE COURT:  Uh-huh.  And is he affiliated with a medical group or hospital?

PROSPECTIVE JUROR NO. 51346:  Um, yeah.  She -- not affiliated, but she works in a hospital.  She has her own office.

THE COURT:  Okay.  Is there any particular hospital that she's associated with that she practices out of?

PROSPECTIVE JUROR NO. 51346:  Simi Valley Hospital.

THE COURT:  Okay.  And do you recall her first name?

PROSPECTIVE JUROR NO. 51346:  Feliza.

THE COURT:  Okay.  Anything else?

MR. FOX:  No, Your Honor.  Thank you.

MR. HOCHMAN:  Nothing more, Your Honor.  Thank you.

THE COURT:  All right.  The next peremptory rests with the Government.

MR. FOX:  Your Honor, the Government asks you to thank and excuse Prospective Juror No. 12.

THE COURT:  All right, sir.  You're excused.  You may return to the jury assembly room on the first floor.  Thank you very much for your service.

All right.  I'm going to ask the clerk to call the number of another juror, please.

THE COURTROOM DEPUTY:  38687.

THE COURT:  And if you could give us your badge number, please.

PROSPECTIVE JUROR NO. 38687:  38687.

THE COURT:  And if you could tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 38687:  I currently live in Seal Beach, born and raised.  I'm single.  I have no children. I'm a full-time student at Chapman University.  No military service.  Um, occupation, I've worked for my dad.  He owns a restaurant in Seal Beach.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 38687:  That's Spaghettini.

THE COURT:  How's the food?

PROSPECTIVE JUROR NO. 38687:  It's delicious.

THE COURT:  Ever served on a jury before?

PROSPECTIVE JUROR NO. 38687:  I have not.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 38687:  I have.

THE COURT:  Was that a criminal or civil case?

PROSPECTIVE JUROR NO. 38687:  Civil.

THE COURT:  Okay.  Have we talked about that before?

PROSPECTIVE JUROR NO. 38687:  I briefly mentioned it earlier.

THE COURT:  Okay.  Any additional questions for the newly seated juror?

MR. FOX:  Not from the Government, Your Honor.

UNITED STATES DISTRICT COURT

MR. HOCHMAN:  Just very briefly, Your Honor.  It would be one question.  Should we go to sidebar?

THE COURT:  That's fine.

(At sidebar:)

MR. HOCHMAN:  The only follow-up is what she's studying.  I don't know if she's studying -- she's a student at Chapman College.  I don't know if she majors in law or something like that.

(In the presence of the prospective jurors:)

THE COURT:  What are you studying in Chapman?

PROSPECTIVE JUROR NO. 38687:  Communications studies.

THE COURT:  Okay.  All right.  The next peremptory, I believe, rests with the defense.

MR. HOCHMAN:  Can I have a moment, Your Honor?

(Off-the-record discussion among counsel.)

MR. HOCHMAN:  Your Honor, the defense would ask the Court to thank and excuse Juror No. 5, Badge No. 57870.

THE COURT:  All right.  You're excused.  You may return to the jury assembly room on the first floor.  Thank you very much for your service.

PROSPECTIVE JUROR NO. 57870:  Thank you.

THE COURT:  I'm going to ask the clerk to call the number of another prospective juror, please.

THE COURTROOM DEPUTY:  38895.

**UNITED STATES DISTRICT COURT**

372

THE COURT:  And if you could give us your badge number.

PROSPECTIVE JUROR NO. 38895:  38895.

THE COURT:  Okay.  And if you could tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 38895:  I live in Echo Park.  I've lived there for four-and-a-half years.  Before moving, I lived in Philadelphia.  I'm married.  Was divorced.  No children.  I have a bachelor of education -- bachelor's degree, sorry, in elementary special education.  No military service.  I'm a wardrobe stylist.

THE COURT:  And by whom are you employed?

PROSPECTIVE JUROR NO. 38895:  Forever 21.

THE COURT:  And I'm sorry.  Are you -- are you married?

PROSPECTIVE JUROR NO. 38895:  Yes.

THE COURT:  And what does your husband do?

PROSPECTIVE JUROR NO. 38895:  He does international sales for Baker Skateboards.

THE COURT:  Ever served on a jury before?

PROSPECTIVE JUROR NO. 38895:  No.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 38895:  No.

THE COURT:  All right.  Thank you very much.

**UNITED STATES DISTRICT COURT**

Any additional follow-up questions?

MR. FOX:  Not from the Government, Your Honor.

MR. HOCHMAN:  No further follow-up, Your Honor.

THE COURT:  All right.  The next peremptory, I believe, rests with the defense.

(Off-the-record discussion among counsel.)

MR. HOCHMAN:  I'm sorry, Your Honor.  May I have one more moment?

THE COURT:  Yes.

(Off-the-record discussion among counsel.)

MR. HOCHMAN:  Your Honor, the defense would ask the Court to thank and excuse Juror No. 8, Badge No. 30451.

THE COURT:  All right.  You're excused.  You may return to the jury assembly room on the first floor.  Thank you very much for your service.

I'm going to ask the clerk to call the number of a new prospective juror.

THE COURTROOM DEPUTY:  31984.

THE COURT:  And if you could give us your badge number, please.

PROSPECTIVE JUROR NO. 31984:  31984.  I live in West Los Angeles.  I've lived there since 1984.  And prior to that, I lived in Riverside, California.  I, um, am currently married.  I have two children, biological children, and two stepchildren, ages 28, 24, 20 -- and 23 and 22.

**UNITED STATES DISTRICT COURT**

374

THE COURT:  What do your children do for a living?

PROSPECTIVE JUROR NO. 31984:  The oldest is a graduate student in Beijing in international study.  The next one's a graduate student at UCSF in biological chemistry.  And then two -- two children are living at home.  One is a -- working for a magazine in Los Angeles.  And another one is working in a lab and taking classes for -- pre-med classes.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 31984:  Um, I have an M.D. and a Ph.D.  And I have no military record.  I'm currently a professor at UCLA in the Department of Psychiatry and History.

THE COURT:  And what does your wife do for a living?

PROSPECTIVE JUROR NO. 31984:  She is the Dean of the medical school.  And --

THE COURT:  Is that at UCLA?

PROSPECTIVE JUROR NO. 31984:  Yeah, at UCLA.  Um --

THE COURT:  Have you ever served on a jury before?

PROSPECTIVE JUROR NO. 31984:  No, I haven't.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 31984:  No, I haven't.

THE COURT:  All right.  Thank you.

Any additional questions for the newly seated juror?

MR. FOX:  Not from the Government, Your Honor.

MR. HOCHMAN:  No further questions, Your Honor.

**UNITED STATES DISTRICT COURT**

THE COURT:  I believe the next peremptory rests with the Government.

MR. FOX:  May we have one moment, Your Honor?

THE COURT:  Yes.

(Off-the-record discussion among counsel.)

MR. FOX:  Your Honor, the Government asks you to thank and excuse Prospective Juror No. 5.

THE COURT:  All right.  You're excused.  You may return to the jury assembly room on the first floor.  Thank you very much for your service.

I'm going to ask the clerk to call a number.

THE COURTROOM DEPUTY:  86564.

THE COURT:  And if you could give us your badge number, please.

PROSPECTIVE JUROR NO. 86564:  Sure.  86564.

THE COURT:  And if you could tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 86564:  Sure.  I live in north San Gabriel, been there since '98.  Prior to that, I lived in downtown L.A.  I'm married right now.  I have two children, 16 and 13.  Education, three years at Southern Cal.  Military, no, not yet.  Occupation, I'm a program manager for an insurance company.

THE COURT:  I'm sorry.  You're married?

PROSPECTIVE JUROR NO. 86564:  Yes, I'm married.

THE COURT:  And what does your wife do for a living?

PROSPECTIVE JUROR NO. 86564:  She's a director in finance.

THE COURT:  And by whom is she employed?

PROSPECTIVE JUROR NO. 86564:  Same company, Farmers Insurance.

THE COURT:  Any prior jury service?

PROSPECTIVE JUROR NO. 86564:  No.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 86564:  I have not.

THE COURT:  Okay.  Thank you.

Any additional questions for the newly seated juror?

MR. FOX:  None from the Government.

MR. HOCHMAN:  Just briefly at sidebar, Your Honor.

THE COURT:  All right.

MR. HOCHMAN:  Actually, Your Honor, I'm sorry.  I wrote it down incorrectly.  We have no further questions on this one.

THE COURT:  All right.  The next peremptory rests with the defense.

MR. DIAMANTATOS:  One moment, Your Honor.

(Off-the-record discussion among counsel.)

MR. HOCHMAN:  Your Honor, the defense would ask the Court to thank and excuse Juror No. 10.  I believe it's 46328.

THE COURT:  All right.  You're excused.  You may return to the jury assembly room on the first floor.

PROSPECTIVE JUROR NO. 46328:  Thank you.

THE COURT:  Thank you very much for your service.

I'm going to ask the clerk to call the number of another juror.

THE COURTROOM DEPUTY:  81825.

THE COURT:  And if you could tell us the last five digits of your badge number.

PROSPECTIVE JUROR NO. 81825:  81825.

THE COURT:  And if you could tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 81825:  I live in Long Beach. I've lived there for 13 years.  Before that, I lived in Los Alamitos my whole life.  I'm married.  I have three stepchildren -- 27, 26, 23 -- and a 14-year-old son.

THE COURT:  And what do your stepchildren do for a living?

PROSPECTIVE JUROR NO. 81825:  My oldest son is a bartender at the family restaurant.  My second daughter works in a pet store.  And the other daughter works -- she's a student.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 81825:  And my 14-year-old is in school still.

THE COURT:  Your educational background?

PROSPECTIVE JUROR NO. 81825:  I have a degree in interior architecture.  And I have not been in the military. I'm a Web site designer.  I also work at the restaurant occasionally.  Um --

THE COURT:  And your husband also works at the restaurant?

PROSPECTIVE JUROR NO. 81825:  Yes.  He -- he does. The food is good.  It's delicious.

THE COURT:  I have a suspicion that I've heard that before.

Any prior jury service?

PROSPECTIVE JUROR NO. 81825:  No.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 81825:  No.

THE COURT:  Okay.  Any additional questions for the newly seated juror?

MR. FOX:  Not from the Government, Your Honor.

MR. HOCHMAN:  Just a brief one on a follow-up on the Web site designer, if she works for herself or a company, Your Honor.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 81825:  My husband and I own a company called C.J. Studios, and we -- I do the Web site design

for the restaurant.

THE COURT:  All right.  I believe the next peremptory rests with the defense.

(Off-the-record discussion among counsel.)

MR. HOCHMAN:  Your Honor, the defense would ask the Court to thank and excuse Juror No. 6, Badge No. 18267.

THE COURT:  All right.  You're excused.  You may return to the jury assembly room on the first floor.  Thank you very much.

I'm going to ask the clerk to call the number of another juror, please.

THE COURTROOM DEPUTY:  41742.

THE COURT:  If you could give us the last five digits of your badge number, please.

PROSPECTIVE JUROR NO. 41742:  41742.

THE COURT:  And if you could tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 41742:  I live in West Covina. I've lived there for the past 14 years.  Prior to that, I lived in Hawthorne.  I am married.  I have three children.  Three -- two girls, one boy.  Their ages are 19, 13, and 3.  The 19-year-old is a student, as is my 13-year-old.

I have a bachelor's degree in mathematics, applied science.  I'm also currently an executive MBA student.  I have not served in the military.  I am a compliance director for a

payroll company, ADP.  I oversee product changes and initiatives.  My husband is in sales for Longo Toyota.  It's a dealership.  And I have been part of a civil jury.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 41742:  And we did not come to a conclusion on all counts.

THE COURT:  Okay.  Do you recall what the case was about, generally?

PROSPECTIVE JUROR NO. 41742:  Domestic violence.

THE COURT:  Okay.  And when was that?

PROSPECTIVE JUROR NO. 41742:  Roughly over five years ago.

THE COURT:  Okay.  Is that all for your jury service?

PROSPECTIVE JUROR NO. 41742:  Yes.

THE COURT:  Have you ever been a party or witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 41742:  No.

THE COURT:  And you're currently an MBA student?

PROSPECTIVE JUROR NO. 41742:  Yes.

THE COURT:  And what school are you attending?

PROSPECTIVE JUROR NO. 41742:  Loyola Marymount.

THE COURT:  Any additional questions for the newly seated juror?

MR. HOCHMAN:  No further questions.

MR. FOX:  None from the Government, Your Honor.

THE COURT:  I believe the next peremptory rests with the Government.

MR. FOX:  Your Honor, the Government accepts this jury as presently constituted.

THE COURT:  All right.

All right.  The next peremptory rests with the defense.

MR. HOCHMAN:  Can I have one moment, Your Honor?

THE COURT:  Yes.

(Off-the-record discussion among counsel.)

MR. HOCHMAN:  Your Honor, the defense would ask the Court to thank and excuse Juror No. 6, Badge No. 41742.

THE COURT:  All right.  You're excused.  You may return to the jury assembly room on the first floor.

I'll ask the clerk to call another number of a juror, please.

THE COURTROOM DEPUTY:  33089.

MR. HOCHMAN:  I'm sorry.  What's that number again, please?

THE COURTROOM DEPUTY:  33089.

THE COURT:  I think we all heard it, but could you give us the last five digits?

PROSPECTIVE JUROR NO. 33089:  33089.

THE COURT:  And if you could tell us a little bit

UNITED STATES DISTRICT COURT

about yourself?

PROSPECTIVE JUROR NO. 33089:  I now live in Sherwood Forest, which is in the Valley.  It used to be called Northridge.  I've lived there since 2007.  Before that, I lived in Lake Balboa, also in the Valley.  I'm married.  I have two children.  I have two sons.  One is 13.  He's a student.  The other is 19.  He goes to college, and he also delivers pizzas. I have a bachelor's in English.  No military service.  I'm an actress.  The name of my present employer is whoever will hire me to be an actress.  Present -- my husband is a producer, production manager for a TV show.  And he works for Warner Brothers.  And --

THE COURT:  Ever served on a jury before?

PROSPECTIVE JUROR NO. 33089:  No.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 33089:  No.

THE COURT:  Okay.  Any additional questions for the newly seated juror?

MR. HOCHMAN:  No, Your Honor.

MR. FOX:  No, Your Honor.

THE COURT:  All right.  The next peremptory rests with the defense.

MR. HOCHMAN:  Your Honor, the defense would ask that the Court thank and excuse Juror No. 6, 33089.

THE COURT:  All right.  Thank you.  You're excused.  Thank you very much for your service.  You may return to the jury assembly room on the first floor.

I'm going to ask the clerk to call the number of another juror.

THE COURTROOM DEPUTY:  33134.

THE COURT:  And your badge number is 33134?

PROSPECTIVE JUROR NO. 33134:  That's correct, sir.

THE COURT:  And if you could tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 33134:  Right now I live in the San Fernando Valley since 27 years.  Before that, I used to live in Florida.

THE COURT:  And --

PROSPECTIVE JUROR NO. 33134:  I'm married.  I have two children.  My older is 27 years old.  She's a microbiologist and works for the Steiger Company.  My son just graduated from college, and he's helping my husband for his business.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 33134:  No military service.

THE COURT:  And what do you do for a living?

PROSPECTIVE JUROR NO. 33134:  I'm a microbiologist too, and I'm working in a company as a microbiologist.

THE COURT:  And what's the name of the company?

384

PROSPECTIVE JUROR NO. 33134:  Cepheid International.

THE COURT:  Okay.  And your husband also has a company?

PROSPECTIVE JUROR NO. 33134:  He has his own business.  Small manufacturing company.

THE COURT:  Okay.  Ever served on a jury before?

PROSPECTIVE JUROR NO. 33134:  No.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 33134:  I was witness in criminal case in 1993.

THE COURT:  Okay.  And did we discuss that earlier?

PROSPECTIVE JUROR NO. 33134:  Yes, sir.

THE COURT:  Okay.  Any additional questions for the newly seated juror?

MR. HOCHMAN:  No, Your Honor.

MR. FOX:  Yes, Your Honor.  May we approach?

THE COURT:  Yes.

(At sidebar:)

MR. FOX:  I should have done this earlier.  I just -- looking back at my notes, she was the victim in a robbery.  And I -- if Your Honor would like to reopen that questioning and ask her the same questions to ask whether or not that will affect her.  I know we've waived that issue, then that's all.  But I just looked back in the notes and realized

**UNITED STATES DISTRICT COURT**

that.

THE COURT:  Okay.  That's fine.  Now, the question is -- we'll bring her over to the sidebar.

MR. FOX:  Thank you.

(In the presence of the prospective jurors:)

THE COURT:  Could you join us over here for a moment, please?

(At sidebar in the presence of

Prospective Juror No. 33134:)

THE COURT:  Okay.  I understand that you at one point had been a victim of a robbery.

PROSPECTIVE JUROR NO. 33134:  Yes.

THE COURT:  You've been held up?

PROSPECTIVE JUROR NO. 33134:  Yes.

THE COURT:  Okay.  There may be testimony about an individual in this case who had been convicted of an armed robbery.

PROSPECTIVE JUROR NO. 33134:  Yes.

THE COURT:  Okay.  And the first thing I'd like to know is whether or not you're going to be able to assess that individual's credibility if you had to, despite the fact that you had been a victim of a robbery.  Because he has been convicted of robbery as well.

So are you going to be able to consider the testimony about him with an open mind, even though you've been

386

yourself a victim of a robbery?

PROSPECTIVE JUROR NO. 33134:  I might because it has been a long time ago.  I almost forget about it.  So yesterday I answered everything no, no, no, no.  And when you asked again, because the people were remembering or something, and all of a sudden I remembered that this thing happened.

THE COURT:  Uh-huh.

PROSPECTIVE JUROR NO. 33134:  So --

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 33134:  I might.  But, you know, I just think about the incident again, and all the fear and frustration and anger just come out of me.

THE COURT:  Uh-huh.  Uh-huh.  There may be testimony in this case that this individual who has a prior conviction for a robbery was used by a Government agency as an informant.

PROSPECTIVE JUROR NO. 33134:  Okay.

THE COURT:  And you may have to assess testimony and conduct that was engaged in by that individual.

PROSPECTIVE JUROR NO. 33134:  Okay.

THE COURT:  Are you going to be able to assess testimony about him and the statements attributed to him in the same way you would any other witness and not hold it against him, that he has a prior conviction for robbery?

PROSPECTIVE JUROR NO. 33134:  Probably.

THE COURT:  Okay.  Is there any doubt in your mind?

PROSPECTIVE JUROR NO. 33134:  No.  Because what happened at the time was already -- the detective showed me everything.  I was so scared because I didn't want to punish somebody that really didn't commit it.  So I just looked and looked.  And I was just concerned about my doubt, about the detective also.  But when I saw the person in the courtroom, I -- it just started to --

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 33134:  I don't want somebody that would really commit that crime, but --

THE COURT:  Okay.  So can you put aside the fact that you were a victim of a robbery in assessing this individual's role in this case?

PROSPECTIVE JUROR NO. 33134:  Yes, I can.

THE COURT:  Okay.  This informant, there may be evidence that the Government was using him to make a case against a law enforcement officer.  The fact that he has a prior conviction, can you put that aside and assess the testimony about the role he played in this case, free of any feelings that you may have had as a -- being a victim of a robbery?

PROSPECTIVE JUROR NO. 33134:  I'm not sure, sir.

THE COURT:  I'm sorry?

PROSPECTIVE JUROR NO. 33134:  I'm not sure.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 33134:  If I see the same person, if I see the same person, like, who did this to me before -- 21 years ago, but if I see the same person, my feeling is going to start coming out.

THE COURT:  Okay.  Let's assume for the moment that it's not the same person who robbed you.

PROSPECTIVE JUROR NO. 33134:  Okay.

THE COURT:  Okay.  Assuming that it's not the same person who robbed you --

PROSPECTIVE JUROR NO. 33134:  Okay.

THE COURT:  -- okay, can you put aside the feelings that you had as a victim of a robbery and not hold it against this individual, that he's got a prior conviction and that he's attempting to make a case against a law enforcement officer?

PROSPECTIVE JUROR NO. 33134:  Yes, I can.

THE COURT:  Okay.  Okay.  Could you -- could you just grab a seat on that far chair on that row right there?  At the end of that table right there.

(At sidebar:)

MR. FOX:  We don't have a challenge for cause.

MR. HOCHMAN:  No challenge.

THE COURT:  Okay.  Okay.

All right.  Miss, you can resume your seat.

(In the presence of the prospective jurors:)

MR. FOX:  Your Honor, the Government asks that you

**UNITED STATES DISTRICT COURT**

thank and excuse Prospective Juror No. 6.

THE COURT:  All right.  You're excused.  You may return to the jury assembly room on the first floor.  Thank you very much.

All right.  I'm going to ask the clerk to call the number of another prospective juror, please.

THE COURTROOM DEPUTY:  44083.

THE COURT:  And your badge number is 44083?

PROSPECTIVE JUROR NO. 44083:  That's right.

THE COURT:  And if you could tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 44083:  I live in Long Beach, California.  I've been there 14 years.  Before that, I was in Culver City.  I'm married.  My wife is head of marketing for a trade association.

THE COURT:  Do you -- what's the name of the trade association?

PROSPECTIVE JUROR NO. 44083:  National Association of Television Production Executives.

THE COURT:  Okay.  Do you have any children?

PROSPECTIVE JUROR NO. 44083:  Yes.  Three children. 12 and two 6s.

THE COURT:  Okay.  Your educational background?

PROSPECTIVE JUROR NO. 44083:  Bachelor's degree in accounting.  And no military service.  I work for -- um,

internal audit for a bank and trust company.

THE COURT:  Okay.  And what's the name of the company?

PROSPECTIVE JUROR NO. 44083:  It's Capital Bank & Trust, part of the Capital Group companies.

THE COURT:  Okay.  And by whom is your wife employed?

PROSPECTIVE JUROR NO. 44083:  The trade association.

THE COURT:  I'm sorry.

PROSPECTIVE JUROR NO. 44083:  That's okay.

THE COURT:  Any prior jury service?

PROSPECTIVE JUROR NO. 44083:  Served on a jury -- I believe it was a criminal case -- about ten years ago.

THE COURT:  Okay.  Was the jury able to reach a verdict?

PROSPECTIVE JUROR NO. 44083:  It was not.

THE COURT:  And do you recall generally what the case was about?

PROSPECTIVE JUROR NO. 44083:  It was a -- basically a bar fight situation.

THE COURT:  Okay.  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 44083:  No.

THE COURT:  Any other jury service?

PROSPECTIVE JUROR NO. 44083:  No.

THE COURT:  All right.  Any additional questions for the newly seated juror?

MR. HOCHMAN:  No, Your Honor.

MR. FOX:  No, Your Honor.

THE COURT:  All right.  The next peremptory rests with the defense.

(Off-the-record discussion among counsel.)

MR. HOCHMAN:  Your Honor, the defense would ask the Court to thank and excuse Juror No. 9, 31726.

THE COURT:  All right.  You're excused.  Thank you very much for your service.  You can return to the jury assembly room on the first floor.

PROSPECTIVE JUROR NO. 31726:  Thank you.

THE COURT:  All right.  I'm going to ask the clerk to call another prospective juror.

THE COURTROOM DEPUTY:  33591.

THE COURT:  Your badge number is 33591?

PROSPECTIVE JUROR NO. 33591:  That is correct.

THE COURT:  And if you could take the background questionnaire and tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 33591:  I live in Ventura County, have lived there since 1992.  Prior to that, I lived in Northern California, Missouri, New Jersey, and outside the U.S.

THE COURT:  And your marital status?

UNITED STATES DISTRICT COURT

PROSPECTIVE JUROR NO. 33591:  I am married.

THE COURT:  When --

PROSPECTIVE JUROR NO. 33591:  With one son, 21, who lives in Florida, works in I.T. and computer repair.  I have a stepdaughter who has two children of her own.  She's 39 and works in healthcare administration in Washington state.

THE COURT:  And your educational background?

PROSPECTIVE JUROR NO. 33591:  Bachelor of arts in English.  And no military service.

THE COURT:  And what do you do for a living?

PROSPECTIVE JUROR NO. 33591:  I work for a large financial services technology company.  They sell software to banks and credit unions.  And I'm a marketing analyst.

THE COURT:  And what's the name of the company?

PROSPECTIVE JUROR NO. 33591:  Fiserv.  It is -- not the pharmaceutical company.  Fiserv.

THE COURT:  And what does your spouse do for a living?

PROSPECTIVE JUROR NO. 33591:  My husband works for the Department of Defense.  He's a branch manager in amphibious combat systems.

THE COURT:  Have you ever served on a jury before?

PROSPECTIVE JUROR NO. 33591:  I have not.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 33591:  I have not.

THE COURT:  And -- okay.  Any additional questions for the newly seated juror?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  None, Your Honor.

THE COURT:  All right.  The next peremptory, I believe, rests with the Government.

MR. FOX:  May we have a moment, Your Honor?

THE COURT:  Yes.

(Off-the-record discussion among counsel.)

MR. FOX:  Your Honor, the Government accepts this jury as presently constituted.

THE COURT:  The next peremptory rests with the defense.

MR. HOCHMAN:  Your Honor, the defense accepts the panel as presently constituted.

THE COURT:  All right.  Any reason why the panel shouldn't be sworn?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  All right.  I'm going to ask the clerk to swear the panel.

THE COURTROOM DEPUTY:  Will each of you stand and raise your right hand.

Do you and each of you solemnly swear or affirm that

you will well and truly try the cause now before the Court and a true verdict therein render according to the evidence and the instructions of this Court, so help you God?

THE JURORS:  (Collectively) I do.

THE COURTROOM DEPUTY:  Thank you.  Please be seated.

THE COURT:  All right.  We're going to select four alternates.  Alternate No. 1 is going to be in that next empty seat on the first row.  Alternate No. 2 will take the last seat on the first row.  Alternate No. 3 will take the next-to-the-last seat on the second row.  And Alternate No. 4 will take the last seat on the last row.

All right.  I'm going to ask the clerk to call the number of Alternate No. 1.

THE COURTROOM DEPUTY:  33191.

THE COURT:  And let's call Alternate No. 2.

THE COURTROOM DEPUTY:  66431.

THE COURT:  And Alternate No. 3.

THE COURTROOM DEPUTY:  41959.

THE COURT:  And Alternate No. 4.

THE COURTROOM DEPUTY:  27890.

THE COURT:  All right.  Alternate No. 1, if you could give us your badge number, please.

PROSPECTIVE JUROR NO. 33191:  33191.

THE COURT:  All right.  If you could tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 33191:  I live in Hollywood. I've lived there for 11 years.  I lived -- before that, I lived in the city of Bell for another ten years.  I'm single.  I have one child of 20.  Um, I have some college education.  Um, never been in the military, never served.  My occupation now is financial counselor at Children's Hospital Los Angeles.  Um, in the past, I was a phlebotomist for the American Red Cross. Um --

THE COURT:  Ever served on a jury?

PROSPECTIVE JUROR NO. 33191:  No.

THE COURT:  Ever been a party or witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 33191:  No.

THE COURT:  Okay.  Any additional questions for Alternate No. 1?

MR. FOX:  Not from the Government.

MR. HOCHMAN:  None, Your Honor.

THE COURT:  All right.  And, sir, if you could give us your badge number.

PROSPECTIVE JUROR NO. 66431:  I am 66431.

THE COURT:  And if you could tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 66431:  I've lived in Pomona since 19 -- no, 18 -- 1980.  Before that, I was in -- I grew up in Capistrano Beach.

THE COURT:  Okay.  Your marital status?

PROSPECTIVE JUROR NO. 66431:  I'm -- I am married.

THE COURT:  Do you have any children?

PROSPECTIVE JUROR NO. 66431:  I have five kids.  I got three grandkids.  I went to Cal Poly Pomona.  And I retired at my senior year as a civil engineer.  I didn't move out of -- I don't have any military service.  I've been working for UPS for 40 years.  I'm a truck driver.

THE COURT:  And what does your spouse do?

PROSPECTIVE JUROR NO. 66431:  My wife work -- my wife works for Claremont School District.  She's an assistant -- teacher's assistant.

THE COURT:  Okay.  Ever served on a jury before?

PROSPECTIVE JUROR NO. 66431:  No, sir.  No, Your Honor.

THE COURT:  Ever been a party or witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 66431:  No, Your Honor.

THE COURT:  And what do your children do for a living?

PROSPECTIVE JUROR NO. 66431:  My oldest one, she is an assistant of a federal judge in Washington state.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 66431:  She works at Olympia.  My second child, she's a registered nurse.  My third child,

she -- he works for a hospital, Mercy Hospital in Bakersfield. My fourth child, he works at Acton School District as teacher assistant and he's going to college. And my baby is 21 years old, and he also works for Claremont School District as a teacher assistant. And he also is going to college.

THE COURT: Okay. Any additional questions for the newly seated alternate?

MR. HOCHMAN: None, Your Honor.

MR. FOX: No, Your Honor.

THE COURT: All right. And if you could pass the microphone back to Alternate No. 3.

And if you'd give us your badge number, please.

PROSPECTIVE JUROR NO. 41959: Badge number is 41959.

THE COURT: And if you could tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 41959: I live in Pico Rivera. I've lived there all my life. My -- I still live there. I'm married. Four children, three are stepchildren. High school education. No military background. Occupation, I'm a maintenance worker for L.A. County.

THE COURT: And --

PROSPECTIVE JUROR NO. 41959: My wife stays home. She don't work.

THE COURT: Okay. No, she's working.

Any prior jury service?

PROSPECTIVE JUROR NO. 41959:  Never.

THE COURT:  Okay.  How old are your children?

PROSPECTIVE JUROR NO. 41959:  40, 39, 36, 29.

THE COURT:  And what do they do for a living?

PROSPECTIVE JUROR NO. 41959:  The two sons are warehouse workers, and my daughter is buying a hardware door company right now.  And my smallest daughter works for Chino School District, teacher's aide.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 41959:  Never.

THE COURT:  And any additional questions for Alternate No. 3?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  All right.  And if you'd give us your badge number, please.

PROSPECTIVE JUROR NO. 27890:  27890.

THE COURT:  If you could tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 27890:  I currently live in Pasadena.  I lived in South Pasadena prior to that.  And before that was, um, East -- East L.A.  Um, I'm not married.  No kids. I have a bachelor's in business administration.  No military service.  I currently work for Outfront Media.  We're in

billboard sales.  Um, before that, was college.  Um --

THE COURT:  Ever served on a jury before?

PROSPECTIVE JUROR NO. 27890:  Yes.

THE COURT:  And how many times?

PROSPECTIVE JUROR NO. 27890:  Once.

THE COURT:  And was that a civil or criminal case?

PROSPECTIVE JUROR NO. 27890:  I don't remember, but it was over possession of a shank by an inmate.

THE COURT:  Okay.  Was the jury able to reach a verdict?

PROSPECTIVE JUROR NO. 27890:  Yes.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 27890:  No.

THE COURT:  Any additional questions for the Alternate No. 4?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  All right.  We're going to exercise peremptories now.  The first peremptory rests with the Government.

MR. FOX:  Your Honor, the Government asks you to thank and excuse Alternate Juror No. 3.

THE COURT:  All right.  Sir, you're excused.  You may return to the jury assembly room on the first floor.

**UNITED STATES DISTRICT COURT**

All right.  I'm going to ask the clerk to call the number of another prospective juror.

THE COURTROOM DEPUTY:  52769.

THE COURT:  All right.  If you'd take that empty chair on the second row, please.

And your badge number is 5 --

PROSPECTIVE JUROR NO. 52769:  52769.

THE COURT:  And if you could tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 52769:  I live in Claremont. I've been there two years.  Before that, I lived in New York and New Jersey.  I'm married.  Um, I have no children, but my husband has a son that lives in Australia.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 52769:  And he's in I.T.  Um, I have a Ph.D. in philosophy from Fordham and one in clinical psychology from Yeshiva University.  I've never been in the military.  I retired two years ago as a psychologist, psychoanalyst.  And I now work in consulting with younger therapists and teaching some.

THE COURT:  Okay.  Prior to your retirement, did you work for a particular employer?

PROSPECTIVE JUROR NO. 52769:  I worked in private practice mostly and teaching in psychoanalytic institutes.

THE COURT:  Okay.  When you were in private

practice, were you working with a particular group or were you affiliated with a particular hospital?

PROSPECTIVE JUROR NO. 52769:  No -- no particular hospitals.  I worked with very traumatized people.

THE COURT:  Okay.

PROSPECTIVE JUROR NO. 52769:  I have never served on a jury or been involved with a case of this nature.

THE COURT:  Okay.  Have you ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 52769:  No, Your Honor.

THE COURT:  Okay.  Any additional questions?

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  All right.  The next peremptory rests with the defense.

(Off-the-record discussion among counsel.)

MR. HOCHMAN:  Your Honor, we'd ask the Court to thank and excuse -- I'm sorry.  Let me --

(Pause in the proceedings.)

MR. HOCHMAN:  We'd ask the Court to thank and excuse Alternate No. 1, 33191.

THE COURT:  All right.  You're excused.  You may return to the jury assembly room on the first floor.

All right.  I'm going to ask the clerk to call the name of another prospective juror.

UNITED STATES DISTRICT COURT

THE COURTROOM DEPUTY:  54424.

THE COURT:  Your badge number is 54424?

PROSPECTIVE JUROR NO. 54424:  Yes, sir.

THE COURT:  And if you could take the background questionnaire and tell us a little bit about yourself.

PROSPECTIVE JUROR NO. 54424:  I currently live in San Bernardino, California.  I've been there for 30 years.  Before that, lived in Santa Barbara as an infant.  Married with one daughter who is four months old.  Just one daughter.  No military experience.  Work as a paramedic in San Luis Obispo.  Work for a company called San Luis Ambulance Service.

THE COURT:  Your educational background?

PROSPECTIVE JUROR NO. 54424:  Liberal arts.

THE COURT:  And does your wife work?

PROSPECTIVE JUROR NO. 54424:  My wife works at a business software company in San Luis Obispo.

THE COURT:  Any prior jury service?

PROSPECTIVE JUROR NO. 54424:  No.

THE COURT:  Ever been a party or a witness in a civil or criminal case?

PROSPECTIVE JUROR NO. 54424:  No, sir.

THE COURT:  Okay.  Thank you.

Any additional questions?

MR. HOCHMAN:  No, Your Honor.

MR. FOX:  No, Your Honor.

THE COURT:  All right.  The next peremptory rests with the Government.

MR. FOX:  One moment, Your Honor, please.

(Off-the-record discussion among counsel.)

MR. FOX:  Your Honor, the Government accepts this alternates panel as presently constituted.

THE COURT:  All right.  Next peremptory rests with the defense.

MR. HOCHMAN:  Your Honor, the defense also accepts the alternates presently constituted.

THE COURT:  All right.  Any reason why the alternates shouldn't be sworn?

MR. HOCHMAN:  None, Your Honor.

MR. FOX:  No, Your Honor.

THE COURT:  All right.  I'm going to ask the clerk to swear the alternates.

THE COURTROOM DEPUTY:  Please stand and raise your right hand.

Do you and each of you solemnly swear or affirm that you will well and truly try the cause now before the Court and that a true verdict therein render according to the evidence and the instructions of this Court, so help you God?

THE ALTERNATE JURORS:  (Collectively) I do.

THE COURTROOM DEPUTY:  Thank you.  Have a seat.

THE COURT:  All right.  For those of you who weren't

selected, thank you very much for your service.  We really appreciate it.  You may return to the jury assembly room on the first floor.  Thank you again for your service.

I'm just going to bring the people over from 9B and excuse them.

Ladies and gentlemen, you're now the jury in this case.  What we're going to do is I'm going to excuse you for a moment to have the clerk go over some ground rules with you about how you're going to get into the courtroom in the morning, who to call if you're running late and hopefully you won't be running late.

We're going to start tomorrow at 8:00 a.m., and we're going to go until 1:30.  We can't start unless all of you are here.  So if you're not used to coming downtown, be sure and leave enough time to get here because we can't start unless all of you are present.

So I'm going to ask the clerk to take you out, go over some fundamentals with you, then he's going to bring you back in here.  I'm just going to have a very short statement for you.  And then tomorrow we're going to get started with some instructions by the Court, and then we'll have the opening statements of counsel.

THE COURTROOM DEPUTY:  All rise.

(Out of the presence of the jury:)

(Pause in the proceedings.)

**UNITED STATES DISTRICT COURT**

(In the presence of the prospective jurors:)

THE COURT:  All right.  I just wanted to thank you for your service and being so patient with us.  We've been able to select a jury.  You have the thanks of the Court.

And you can return to the jury assembly room on the first floor.  If there's nobody there, you can call tomorrow to see if there are any additional instructions they have for you. You can probably leave your badges down there if you'd like.

Thank you very much.

(Out of the presence of the prospective jurors:)

(Pause in the proceedings.)

MR. FOX:  Your Honor, as long as we have time, do you mind if we meet with counsel on the issue that has to do with tomorrow?

THE COURT:  That's fine.

(Off-the-record discussion among counsel.)

(In the presence of the jury:)

THE COURT:  All right.  Ladies and gentlemen, thank you very much for your patience.

We're going to meet tomorrow morning at 8:00 o'clock.  We'll take two short breaks during the day.  And we're going to end promptly at 1:30.

Again, I want to remind you until this trial is over, do not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the

trial, or anyone else.  And do not allow others to discuss the case with you.  This includes discussing the case on the Internet, through bulletin boards, by e-mails or text messages. If anyone tries to communicate with you about this case, please let me know about it immediately.

Do not read, watch, or listen to any news reports or other accounts about the trial or anyone associated with it. Don't look at anything online.  Do not do any research such as consulting dictionaries, searching the Internet, or using other reference materials.  And do not make any investigation about the case on your own.

There is -- there has been a lot of media coverage associated with this case.  If any of you receive a daily newspaper at home, I think most of the companies will hold those papers for you for a while until this case is over.  Or you might ask a family member to set those aside.

But please don't look at anything in the newspaper about this case.  Don't listen to any -- if you traditionally watch the 11:00 o'clock news, try to avoid it.  There is -- there are going to be media coverage about the case.  So please try to avoid any media coverage at all about this case.

Finally, please keep an open mind until all the evidence has been received, you've heard the arguments of counsel, the instructions of the Court, and the views of your fellow jurors.  If you need to speak with me, simply give a

note to the clerk.

Okay.  We'll see everybody tomorrow morning at 8:00 o'clock.  Thank you very much.

THE COURTROOM DEPUTY:  All rise.

(Out of the presence of the jury:)

THE COURT:  All right.  Is there anything we need to take up --

MR. HOCHMAN:  Just very briefly, Your Honor.  As you recall, the Government filed a motion in limine regarding Mr. Baca's interview statements and deposition statements.  I believe they filed it Sunday night.

While the Court's been going on, I've been trying to reach our expert to see what response there would be on that.  I'm hoping to have that conversation tonight, Your Honor.  I was unable to do it because we were in court yesterday.  I think I can meet and confer with the Government tonight, and there might be a way that I see us potentially resolving this.  I can report first thing tomorrow to the Court before we start if there's still an issue that we haven't resolved.

THE COURT:  Sir, I've already set a briefing schedule for that motion.  You're certainly welcome to meet with the Government and see if there is a possible resolution of that issue.  But I'll expect to -- if you're going to have some written opposition, I will expect to receive that.

MR. HOCHMAN:  Yes, Your Honor.

UNITED STATES DISTRICT COURT

THE COURT:  Okay.  Anything else?

MR. FOX:  Your Honor, we're going to be going over our slides for the opening tomorrow morning I think at 7:30. So I think that we will be prepared if there are any issues to discuss those with you before 8:00 o'clock, if you're available before 8:00 o'clock.  I assume that you're going to want us to be ready to go right at 8:00.

THE COURT:  Good assumption.

Okay.  Are you going to have -- have the two sides -- two sides exchanged any demonstrative exhibits that are going to be used during the openings?

MR. HOCHMAN:  I think that's what Mr. Fox had just talked about, PowerPoint slides, Your Honor.  I think they're going to use them; we're going to use them.  And we're going to exchange them -- or show them to each other tomorrow morning.

MR. FOX:  At 7:30, Your Honor.  And mine have very few exhibits in them, and they're all exhibits -- and then it has some of my bullet points.  So I don't think mine is going to be anything that is controversial.

MR. HOCHMAN:  And I don't think mine will be either, Your Honor.

THE COURT:  Okay.  That's fine.  If they are, be prepared to go without them because this train has got to keep moving.

Okay.  Anything else?

409

MR. FOX:  No, Your Honor.

MR. HOCHMAN:  No, Your Honor.

THE COURT:  Okay.  We'll see everybody tomorrow morning.

MR. HOCHMAN:  Thank you, Your Honor.

MR. DIAMANTATOS:  Thank you, Your Honor.

(Proceedings concluded at 5:19 p.m.)

**UNITED STATES DISTRICT COURT**

410

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES     )
                          )
STATE OF CALIFORNIA       )


        I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.


                      DATED THIS 13TH DAY OF AUGUST, 2017.



                      /S/ MYRA L. PONCE
    _____
        MYRA L. PONCE, CSR NO. 11544, CRR, RDR
           FEDERAL OFFICIAL COURT REPORTER


**UNITED STATES DISTRICT COURT**