UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

HONORABLE PERCY ANDERSON, U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA,                )
                                         )
                 Plaintiff,              )    Case No.
                                         )
       vs.                               )    CR 16-00066(A)-PA
                                         )
LEROY D. BACA,                           )    PAGES 2073 to 2114
                                         )    VOLUME 13
                 Defendant.              )
_____)

REPORTER'S TRANSCRIPT OF
TRIAL DAY 10
TUESDAY, DECEMBER 20, 2016
8:26 A.M.
LOS ANGELES, CALIFORNIA

MIRANDA ALGORRI, CSR 12743, CRR
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 435
LOS ANGELES, CALIFORNIA 90012
MIRANDAALGORRI@GMAIL.COM

UNITED STATES DISTRICT COURT

2074

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

        SANDRA R. BROWN
        Acting United States Attorney
        BY:   BRANDON FOX
        BY:   EDDIE A. JAUREGUI
        Assistant United States Attorneys
        United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012

**FOR THE DEFENDANT:**

        MORGAN LEWIS AND BOCKIUS LLP
        BY:   NATHAN J. HOCHMAN
        BY:   BRIANNA ABRAMS
        The Water Garden
        1601 Cloverfield Boulevard
        Suite 2050 North
        Santa Monica, California 90404

        MORGAN LEWIS AND BOCKIUS LLP
        BY:   TINOS DIAMANTATOS
        77 West Wacker Drive
        Chicago, Illinois 60601

**UNITED STATES DISTRICT COURT**

2075

**I N D E X**


**TUESDAY, DECEMBER 20, 2016; VOLUME 13**


**Chronological Index of Witnesses**


Witnesses:_____    Page


(None)


**UNITED STATES DISTRICT COURT**

2076

**EXHIBITS**

**TUESDAY, DECEMBER 20, 2016; VOLUME 13**

| Exhibits | For ID | In EVD |
|---|---|---|

(None)

**UNITED STATES DISTRICT COURT**

2077

**LOS ANGELES, CALIFORNIA; TUESDAY, DECEMBER 20, 2016**

**8:26 A.M.**

**---**

(The following proceedings were held in open court out of the presence of the jury:)

THE CLERK:  Calling item No. 1, CR 16-66(A), USA versus Leroy D. Baca.

Counsel, state your appearances, please.

MR. FOX:  Good morning, Your Honor.  Brandon Fox and Eddie Jauregui on behalf of the United States.  Also with us at counsel table is Special Agent David Dahle of the FBI.

THE COURT:  Good morning.

MR. HOCHMAN:  Good morning, Your Honor. Nathan Hochman, Tinos Diamantatos, and Brianna Abrams, and we're joined by Defendant Leroy Baca.

THE COURT:  Good morning.

MR. DIAMANTATOS:  Good morning.

THE COURT:  We have two notes.  The first one is, "May we please have 12 copies of this," and that's the redacted Indictment.  Unless somebody has an objection, I think they -- I'd give them 12 copies.

MR. HOCHMAN:  No objection, Your Honor.

MR. FOX:  Of course, Your Honor.  That's fine.

THE COURT:  All right.  Then we have a second

**UNITED STATES DISTRICT COURT**

2078

note.  "I would like to use my laptop in order to take notes more efficiently on my written notes.  These notes are for personal use only."

MR. HOCHMAN:  We would object, Your Honor.

THE COURT:  Well, let me just think through this a moment.  I really don't see much difference between written notes and notes that are recorded on a computer.  The problem with the computer is the potential to go outside and access outside information.  So my initial reaction would be to stress with them you can't use it to go out on the Internet to access anything.  You have to decide this case based only on the exhibits and the testimony.  I'll assume --

MR. FOX:  Your Honor, if we do that, I also suggest that we instruct them that the computer should be on -- with the wireless off so it does not have wireless capability.

MR. HOCHMAN:  Your Honor, the problem I had, if he had the laptop obviously in court and that's the device he was taking notes in court, then obviously disable the Wi-Fi in the jury room, so be it.  To the extent that he's going to verbatim put his notes -- and I mean verbatim put the same notes of when he actually heard live testimony, which is their only usefulness -- and the Court has also given an instruction saying that the notes are for your own situation.  They're not to be binding on any other juror.  They're not even binding on you.  It's your memory that serves.  It's not your notes --

**UNITED STATES DISTRICT COURT**

that somehow we're either going to have him transcribe his notes in a way that doesn't reflect what was happening in the court at the time, and we don't know then how he's going to use the laptop notes that he otherwise has handwritten notes vis-à-vis the other jurors.

THE COURT:  You don't know how he's going to use his handwritten notes.

MR. FOX:  If we can suggest you read the instruction to them about notes and how to use the notes and that recollection controls, I think then that would take care of the prejudice -- any potential prejudice Mr. Hochman is referring to.

MR. HOCHMAN:  As long as we're talking through possibilities, Your Honor, I'm trying to visualize why anyone needs to transcribe their handwritten notes onto a laptop in order to have --

THE COURT:  I can give you an idea.

MR. HOCHMAN:  Certainly.

THE COURT:  My handwriting is so bad that -- or I use shortcuts when I'm hand writing, and I want to have a more complete note -- I want to have more complete notes.

MR. FOX:  Your Honor, another example I can give is that sometimes I want to cut and paste a section to where it's more relevant.  They might want to put together August 23rd, what do we know about August 23rd?  And that's

easier to do if you have a computer than just handwritten notes.

MR. HOCHMAN:  Again, my -- obviously we don't know how this is going to cut, Your Honor.  I'm trying to visualize it because I've never seen a situation in 25 years where the Court has allowed a laptop computer to actually go into a jury room ever.  So this would be the first time.  I'm always worried about the first time of anything.  Maybe Your Honor has had experience with a juror bringing his laptop and using it.  I'm always slightly in fear of being the first one to do anything, Your Honor.

THE COURT:  Well, I can tell you, Mr. Hochman, we are fairly close to providing jurors with laptops because we're going to -- just like years ago exhibits were all paper and now lawyers, like you've done in this trial, you've reduced all the exhibits in electronic format.  And we're probably within a month going to convert the same exhibits that you put up electronically so the jurors can bring those up.  And there will be -- there's going to be a laptop in the jury room for them to use to review exhibits.

MR. HOCHMAN:  And that's my point, Your Honor.  If we had told each one of the jurors that they could bring a laptop into the jury room to reduce all their notes to a laptop and all 12 were going to get the chance to do it, whether or not they did it or not, I think that's fine.  I think what will

happen is this apparently -- it sounds like one juror who has one laptop is going to type his notes or her notes in, and whether or not that has then greater authority of those notes because now they're the only ones that are typed into a computer and they can refer to their computer notes that they're now cutting and pasting.

Again, I don't know if this is going to favor the Government.  I don't know if this is going to favor the defense.  Always my fear is the first in allowing essentially one juror as opposed to all 12 have access to a laptop and be able to do this.

THE COURT:  I'm sure the Wright Brothers had the same concern.

MR. HOCHMAN:  They didn't have to rely on 12 people -- they could fly that plane, crash it, and they're the ones that are dead, Your Honor.  We're allowing an experiment to go on in a jury room and --

THE COURT:  Take a breath, Mr. Hochman.

MR. FOX:  A couple things, Your Honor.  One is Mr. Diamantatos and I have both tried cases in the Northern District of Illinois, and there are times when laptops do go back to the jurors there.  So this would not be the first time in history in federal court that this happens.  Secondly, I think that, if you have an instruction to them that, if any juror wants to bring in a laptop, then we reduce the risk that

any one juror's -- any one juror, then their notes are relied upon any more than another.

I think you could probably frame it in a way that doesn't invite them necessarily to come back and ask questions about the laptop but says to all jurors, if you bring in a laptop, let us know.  But it must be on a setting so that wireless access is not allowed.

MR. HOCHMAN:  And, Your Honor, Mr. Diamantatos also informs me that the computers that have gone back in Chicago are not ones that are the individual's personal computers.  It's a court computer because then it's something that the Court can then screen all the software that is on the computer before it goes back to the jury room to make sure they don't have any additional software they can access.

Virtually every computer has a dictionary program on it.  Computers can access -- built into your computer -- can access a lot of information.  If the Court had a clean computer stripped of everything and all it was was literally just a typing --

THE COURT:  Watch yourself now.

MR. HOCHMAN:  I'm sorry?

THE COURT:  Watch yourself now because that's exactly what we do have.

MR. HOCHMAN:  Again, Your Honor, if you have that situation where it's a stripped down computer and you offered

2083

it to every juror and every juror who wanted to type out their notes could go type out their notes now and they could pause their deliberation while everyone is typing, again, that would be a completely different situation.  It wouldn't highlight one juror with one computer.

MR. FOX:  Your Honor, if you made this laptop you're referring to available to all, I think that's fine.  I think we're not telling the jurors that any one person's notes are more important.  Here's a laptop the jury can have to use. If they care to put their notes in it, fine.  If they care to do other things during their deliberations that are obviously in line with the instructions, fine.

THE COURT:  I'm going to take a two-minute recess.  We'll come back and resolve this issue.

MR. DIAMANTATOS:  Thank you, Your Honor.

MR. HOCHMAN:  Thank you, Your Honor.

(A recess was taken at 8:37 a.m.)

THE COURT:  I guess my own view at this point is we're sort of guessing at why he wants to make further use or why he wants to use this laptop, whether it's to redo his notes or use it to keep track of what's going on.  I am inclined at this point to write a note back to them that basically says that the Court's -- it's the digital age, and unfortunately we're not in a position to authorize the use of a laptop over which the Court has no control as to what software is on it

**UNITED STATES DISTRICT COURT**

2084

or -- and just leave it at that, that the Court is unable to authorize the use of a personal laptop during deliberations.

MR. HOCHMAN:  That would be fine, Your Honor. Thank you.

THE COURT:  And if he wants some further explanation, then we'll take it up.

MR. HOCHMAN:  That would be fine, Your Honor. Thank you.

THE COURT:  Okay.  Let's see if we can come up with some note.  As a matter of fact, it won't be long before people are electronically recording their notes when they sit in here.

All right.  We've received a juror's note requesting to use a personal laptop computer.  Unfortunately the Court is unable to authorize the use of a personal laptop computer.  I guess we could throw something in there because all --

MR. FOX:  Your Honor, if you want to offer an explanation, I can suggest just adding, because the Court has no control over the software or data on any personal laptop or personal computer, the Court cannot allow the use of a personal computer at this time.

MR. HOCHMAN:  Then, Your Honor, I'd join the Government that, if the Court would be willing to repeat the notes instruction to the jurors so they understand how notes

**UNITED STATES DISTRICT COURT**

need to be used in general if the Court is thinking that there's some issue with that.

THE COURT:  I don't really believe there is. They've got the jury instructions.

MR. HOCHMAN:  That's fine then, Your Honor.

MR. FOX:  And, Your Honor, I was only suggesting it if we were to give them a laptop.  Since we're not, I don't think it's necessary.

MR. HOCHMAN:  And, Your Honor, looking at the Court's initial note, sometimes less is more.  When you say, "Unfortunately the Court cannot authorize a personal laptop computer," period, I don't think the jury needs an explanation as to why it's unfortunate at this point.  It's just what the Court says.  If they want to know why it's unfortunate and the Court can't do it, they can certainly follow up.  But I always believe, the least amount you can tell the jury that answers their question, the better.

MR. FOX:  As you can tell by both of our closing statements yesterday.  It's a joke.

THE COURT:  Believe me.

MR. HOCHMAN:  I mean for the Court obviously, Your Honor.  Not for counsel.

THE COURT:  Of course not.

Okay.  We've received a juror's note requesting to use a personal laptop computer.  Unfortunately, because the

**UNITED STATES DISTRICT COURT**

2086

Court has no control over software data on any personal laptop or personal -- over any personal laptop or personal computer, the Court cannot allow the use of a personal computer.

MR. FOX:  That's fine, Your Honor.  Thank you.

MR. HOCHMAN:  That's fine, Your Honor.  Thank you.

THE COURT:  I've just dated that and propose to send it back.

MR. HOCHMAN:  That's fine, Your Honor.

MR. FOX:  Yes, Your Honor.

THE COURT:  Okay.  We'll let you know if we hear anything else.

One additional thought is I guess we could add a line that the Court is happy to provide additional paper notebooks or notepads for any personal notes you wish to take during your deliberations.

MR. FOX:  I think that's fine, Your Honor.

MR. HOCHMAN:  I don't see any -- yes, Your Honor. That would be fine.

THE COURT:  Okay.

MR. HOCHMAN:  If you think it's necessary.

THE COURT:  I think, to keep the jurors happy, the Court will provide additional paper notebooks for any personal notes you may take during deliberations.

MR. HOCHMAN:  That's fine, Your Honor.

**UNITED STATES DISTRICT COURT**

MR. FOX:  That's fine, Your Honor.

THE COURT:  All right.  Thank you.

(A recess was taken at 9:01 a.m.)

THE COURT:  Would you take appearances, please.

THE CLERK:  Calling item No. 1, CR 16-66(A), United States versus Leroy D. Back.

State your appearances.

MR. FOX:  Good morning, Your Honor.

Brandon Fox and Eddie Jauregui on behalf of the United States.  Also with us is Special Agent David Dahle with the FBI.

THE COURT:  Good morning.

MR. HOCHMAN:  Good morning, Your Honor.

Nathan Hochman.  I am joined with Tinos Diamantatos and Brianna Abrams and Leroy Baca who is present, Your Honor.

THE COURT:  Good morning.

We have two notes.  "The jury requests the following: Would like to see the video of Craig and," it looks like it says, "Lopez of Agent Marx."  I assume they meant Long.  So that's one note.  The next note is "We would like the testimony of Robert Faturechi, Rhambo, Manzo."

MR. FOX:  The first one is easy to deal with, Your Honor.  If you want, we can send our paralegal downstairs to get our laptop so we can be in a position to play that for

them whenever you wish.  Would you like me to go talk to her about that?

THE COURT:  Sure.  That's fine.

MR. FOX:  She just left.

THE COURT:  I think she beat you to the punch.

MR. HOCHMAN:  That's fine, Your Honor.  I think the entire video encounter lasted about a minute, minute and a half.  So I think that's easy to do.

THE COURT:  Okay.  My recollection is, when it was played in court, the sound was kind of -- I think it was a little too loud because it was muffled although, when it was played in the closing argument, the volume was lower.

Now, as to these witnesses, what I intend to tell them is -- and this is basically the agreed-upon instruction -- is that rereading of testimony is possible but I must review all of it -- of what is to be reread.  There is no transcript made up that's available to give you.  And even if it were, I would have to have it reread due to objections, sidebars, and other proceedings outside the jury's presence.

Moreover, I or the attorneys might feel that other matters should be included in the same readback.  Preparing for a readback of testimony takes time.  Please understand so, if the request is made, we'll gladly arrange to do so.  But the jury should keep deliberating until we make sure that we have everything ready.

**UNITED STATES DISTRICT COURT**

2089

Now, Manzo and Faturechi, I don't think there's any issue there.  With respect to Mr. Rhambo, if they want it all, that's fine.  If they want the defense portion, that's fine.  If they want the Government's portion, that's fine.  That's the only thing I might ask them.

MR. FOX:  Your Honor, I think that -- obviously we should hear from the defense on this.  I think, if we're going to read one portion of his testimony, we should read both portions of his testimony.

THE COURT:  Okay.  That's the only part of that that I would comment on.  If they wanted Mr. Rhambo when he was called in the defense case, we would read the whole entire thing.  If they want the Government's when he was called in the Government's case, we'd read the whole thing.  If you want to do everything, that's fine.

MR. HOCHMAN:  I just as soon do everything, Your Honor.

THE COURT:  Okay.  The reporter, as I understand it, doesn't have a portion of his testimony in the defense case done.  So that's going to add some time.

MR. HOCHMAN:  I understand, Your Honor.

THE COURT:  Okay.

MR. FOX:  Your Honor, is there a way that we can get them the Faturechi and Manzo readbacks while we're waiting for the Rhambo portion to be prepared?

**UNITED STATES DISTRICT COURT**

THE COURT:  Sure.  Because I understand that that's been done.  So that's done.  If you want, I can -- I guess what I would suggest is that, if we're going to do that, have the reporter continue preparing Rhambo, and I could have a law clerk read question and answer of Faturechi and Manzo.

MR. FOX:  That's fine, Your Honor.  Do you want us to go over the transcripts first to eliminate objections and the rulings, or do you want those left in there?

THE COURT:  Well, I don't -- I don't believe that we should read objections and the rulings on the objections.  Nor should we read the sidebar.

The reporter indicates that she thinks she can prepare one of these in about 15 or 20 minutes.  In any event, whether she reads it or we get somebody else to read it, my initial thought was that somebody could read it, just leave out any objections, leave out the rulings, and if there's a question in their minds, they can just stop, and I'll look at it.

MR. FOX:  If I recall, Mr. Faturechi at one point asked to speak to his attorney.  I'm not sure what you want to do about that.  It's fine to me if that's left in, but it may make it a little bit awkward at that point because, if I recall, we had a sidebar.

THE COURT:  Do either of you have that testimony?

MR. FOX:  We do downstairs.  We can print it up

very quickly.  We did not bring it up here.

THE COURT:  Okay.  Why don't we print out the testimony.  Why don't we have the jury come back in and let's -- do you have the video?

MR. FOX:  Yeah.  Do you mind if I test the audio and do everything to make sure it's working?

THE COURT:  That's fine.

MR. HOCHMAN:  Your Honor, with respect to this testimony, I would certainly like to have the opportunity to go over what will be read back to the jury before it's read back.

THE COURT:  That's fine.

MR. FOX:  I think the audio is fine right now unless you want it to be higher or lower.  This is Exhibit 99 that we will be playing back.

THE COURT:  Okay.  Just so everybody is clear, we'll have the jury come back.  I'll go over these two notes. They'd like to see the video of Craig and Long and Agent Marx. Play the video, then go to this note, and then read them the agreed-upon instruction, then send them back.  That should get us hopefully close to noon.  Their lunch is being brought in. And then we'll get the transcripts brought up here and look at them.

MR. FOX:  And, Your Honor, if you can just give me two minutes, I can forward the e-mail of the transcripts to our paralegal who just went downstairs so she can begin the

process of printing out copies of it.

MR. HOCHMAN:  Your Honor, if for some reason we ever had to bring an alternate in, is the Court's instruction at that point you have to start from scratch because obviously the alternate won't be part of this?

THE COURT:  That's the way it works.

MR. HOCHMAN:  Thank you, Your Honor.

THE COURT:  I have Manzo on December 8 and December 9.

MR. FOX:  Yes, Your Honor.

THE COURT:  Why don't you go get them.

(The following proceedings were held in open court in the presence of the jury:)

THE COURT:  Ladies and gentlemen, we've received your two notes, and we'll take them one at a time.  The first note, it says, *We'd like to see the video of Craig and* -- it looks like Lopez, but I think it's supposed to be Long *and Agent Marx*.  So we'll play that video for you now.

MR. FOX:  Can I go ahead, Your Honor?

THE COURT:  Yes, please.

(The video commenced playing before the jury.)

THE COURT:  All right.  That concludes the video.

The second note, "We would like the testimony of Robert Faturechi, Rhambo, Manzo."

Rereading of testimony is possible, but I must

**UNITED STATES DISTRICT COURT**

2093

review all of what is to be read back.  There is no transcript made that can be given to you.  And even if there were, I would have to have it reread due to objections, sidebars, and other proceedings outside of the jury's presence.

Moreover, I or the attorneys might feel that other matters should be included in the same readback. Preparing for the readback of testimony takes time.  Please understand that so that, if a request is made -- and it has been -- we'll gladly arrange to have that done.  But the jury should keep deliberating until we've made sure that we have everything ready.

So I'm going to ask that you return to the jury room to resume your deliberations, and in the meantime, we'll make arrangements to have this testimony read back.  Thank you.

(The following proceedings were held in open court out of the presence of the jury:)

THE COURT:  All right.  Mr. Faturechi's testimony is 30 pages.  Here's a copy.  Here's a copy of Manzo day one.

MR. FOX:  When you're directing the jury that we're going to take a recess or break, do you want that to be included in what's read back to the jury and your instruction to them?  I assume you don't.

THE COURT:  I don't.

MR. HOCHMAN:  Your Honor, counsel for the Government and myself have gotten together on Mr. Faturechi's

**UNITED STATES DISTRICT COURT**

2094

testimony.  What we did is we took the transcript that you provided us and X'd out -- hopefully it's clear to the Court what we X'd out -- parts of the transcript that didn't involve a question and an answer by the witness.  We hope we have covered that.  That is what I am presenting to Your Honor.

THE COURT:  All right.  All right.  Do you have the Rhambo testimony from the -- here's Rhambo from the 16th.

MR. HOCHMAN:  Your Honor, just so we know what to edit as we're going along, so when the Government, for instance, would move for admission of an exhibit and you would admit it or not admit it and we'd say, "No objection," since it's not witness testimony, my thought was to take all that out.

THE COURT:  I would agree.

MR. HOCHMAN:  Thank you.

THE COURT:  There's quite a bit of testimony from Mr. -- that's all right.  We'll read it all.

All right.  Mr. Hochman, you gave me Mr. Faturechi's testimony?

MR. HOCHMAN:  I did, Your Honor.

THE COURT:  On page 7 marked for identification would not be read.

MR. HOCHMAN:  Your Honor, unfortunately you have my only copy.

MR. FOX:  I'll show my copy to Mr. Hochman.

**UNITED STATES DISTRICT COURT**

MR. HOCHMAN:  I see what you're saying, Your Honor.  We're okay with that as well.

THE COURT:  On page 9, line 25, this question that goes over to the next page on line 2 --

MR. FOX:  Yes.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  Ultimately -- see on page 10 on line 23?

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  "And with respect to the question I just asked you --"

MR. FOX:  Good point, Your Honor.

THE COURT:  That's that question.

MR. HOCHMAN:  So leave in page 9, line 25, through page 10, line 2?

THE COURT:  That would be my suggestion because I thought that corresponds to this.

MR. HOCHMAN:  That's fine, Your Honor.

MR. FOX:  Yes, Your Honor.  Thanks.

THE COURT:  On page 12 starting at line 13 and going down to line 23, I'm not sure that's -- because he's directed -- starting at line 24, he's directed at what he should look at.

MR. HOCHMAN:  That's fine, Your Honor, to delete line 13 to line 23 on that.

**UNITED STATES DISTRICT COURT**

THE COURT:  That's what I would suggest.

MR. FOX:  That's fine, Your Honor.

MR. HOCHMAN:  I would agree, Your Honor.

Your Honor, may -- may Sheriff Baca go to the men's room, if that's possible, while we do this work, and then we won't put anything on the record until he gets back?

(Defendant exits the courtroom.)

THE COURT:  That's fine.  On page 19 -- do you want to wait until Mr. Baca is back?

MR. HOCHMAN:  Yes, Your Honor.  And we're working on the Manzo transcript as we speak.

THE COURT:  Okay.

(Defendant re-enters the courtroom.)

MR. HOCHMAN:  Your Honor, Sheriff Baca is back in the courtroom.

THE COURT:  All right.  On page 20 -- it actually starts on page 19, line 25.

MR. HOCHMAN:  Yes, Your Honor.

THE COURT:  Take out line 25 through line 3 of the next page.

MR. HOCHMAN:  Yes, Your Honor.

MR. FOX:  Yes, Your Honor.

MR. HOCHMAN:  We agree with that.  I think that's it.

Your Honor, is there any way the Court may make a

copy of what I have so I can read along?

THE COURT:  You can have it back.

MR. HOCHMAN:  Thank you very much, Your Honor.

THE COURT:  What's the next one that you're doing or that you've finished?

MR. HOCHMAN:  Mickey Manzo.  And it's taking us a while to go through it.

THE COURT:  And you haven't looked at any of the others?

MR. HOCHMAN:  It would just be Rhambo -- Faturechi, Rhambo, and Manzo.

MR. FOX:  The Government has reviewed all of them, and we're ready to discuss.

THE COURT:  Okay.  You still have Manzo.

MR. HOCHMAN:  Still have Manzo and Rhambo, and I'm reading as fast as I can, Your Honor.

THE COURT:  That's fine.  You're sure you don't want to ask them is there a particular portion of Mr. Manzo's testimony that they're interested in hearing?

MR. HOCHMAN:  Yes, Your Honor.  I don't want to ask because it occurred over several days and because of cross-examination, it went over many -- virtually all of the aspects of what went on in direct.  Then we'd have to figure out and divine their intent.  So I would just prefer to have all of Manzo's read.

2098

THE COURT:  Okay.  Now, during Manzo's testimony, there were recordings of interviews with Brown which won't be reflected in these transcripts.

MR. FOX:  Yes, Your Honor.

MR. HOCHMAN:  That's correct, Your Honor.

THE COURT:  We might want to ask them or just tell them there were certain portions of interviews -- recordings of interviews with Brown that were played during Mr. Manzo's testimony.  Those won't be reflected in the transcripts.  If you wish to have -- if you wish to hear those recordings, you need to ask for them, and they'll have to be played.

MR. FOX:  Yes, Your Honor.

MR. HOCHMAN:  That makes sense, Your Honor.

THE COURT:  Do you have the clips of Manzo?

MR. FOX:  I do, Your Honor.

MR. HOCHMAN:  Actually, we finished the first half of Manzo.  We're finishing the second half, and I'm just about done with Rhambo, Your Honor.

THE COURT:  Okay.  When the jury comes out, I'm going to ask them or tell them that there were recordings or interviews with Brown played during the Manzo testimony that won't be reflected in the transcripts.  If you need to --

MR. HOCHMAN:  If we could have about five to seven more minutes, Your Honor, I think we'll be done with all

**UNITED STATES DISTRICT COURT**

of them.

THE COURT:  That's fine.  Take your time.

MR. FOX:  Your Honor, do you want me to be in a position to be able to play it in case they indicate out here that they want to listen to them?

THE COURT:  Yes.

MR. FOX:  Okay.

MR. HOCHMAN:  How are they going to indicate out here?  Would it be one juror just raising their hand and doing it, or usually they work through a foreperson is my understanding.  That would be the preference, if they want to have a tape played, that they communicate that rather than each juror think they have the right to just raise their hand and tell Your Honor.

THE COURT:  I'll be back.

(A pause in the proceedings.)

THE COURT:  All right.  We have another note. The note reads as follows: "Was it illegal for the sheriffs to approach Leah Marx on 9/26 in terms of the charges of conspiracy or obstruction?  We are confused by jury instruction page 16, lines 1 through 3."

MR. HOCHMAN:  Your Honor, would you mind reading that one more time?

THE COURT:  "Was it illegal for the sheriffs to approach Leah Marx on 9/26 in terms of the charges of

UNITED STATES DISTRICT COURT

conspiracy or obstruction?  We are confused by jury instruction page 16, lines 1 through 3."

That instruction reads as follows: "A local officer has the authority to investigate potential violations of state law.  This includes the authority to investigate potential violations of state law by federal agents.  A local officer may not use this authority to investigate for the purpose of obstructing justice."

MR. HOCHMAN:  May I have a moment to think about this, Your Honor?

THE COURT:  Sure.

MR. HOCHMAN:  Your Honor, my initial impression of their question, now looking at the instruction, I mean, the instruction is that it sets forth the law, and it's the ultimate question the jury has to find is whether or not the purpose of investigating the local law officer was for obstruction of justice.  That's the ultimate question that they're deciding.  And there's a whole definition section that goes along with obstruction of justice that is other sections.

So when they say is it illegal, I would -- I would think that the instruction answers the question and then references obviously the other parts of the instructions on what it means to obstruct justice.  If the Government meets the burden of proof beyond a reasonable doubt on those other aspects of it, then it answers the question.  So it's slightly

a confusing question for the jury.

THE COURT:  That's very helpful.

Mr. Fox.

MR. HOCHMAN:  Ultimately I would say to reread the instruction which is on page 16 starting with "The local officer."

THE COURT:  Read a question that they've already said they're confused about.  I don't think that's going to be very helpful to them.

MR. HOCHMAN:  Maybe reference, Your Honor, the instructions that deal with the definition of obstruction of justice.

THE COURT:  Okay.

MR. HOCHMAN:  Perhaps.

MR. FOX:  Your Honor, I think that Mr. Hochman had part of what we should do with this jury in his response to you, and that's that they're having trouble with what the purpose is.  And nothing in this jury instruction says that, if the purpose was to investigate potential violations of the law, then there's nothing necessarily illegal about it.  But if it's done for the purpose of obstructing justice, then there's a problem with it.  I'm not saying that should be the jury instruction, but we should give them further clarification on that issue.

THE COURT:  How about something like this.  You

**UNITED STATES DISTRICT COURT**

must determine whether the approach of Leah Marx on September 26th was a lawful investigation or undertaken for the purpose -- or undertaken in furtherance of a conspiracy to obstruct justice or for the purpose of obstruction of justice. The Government need not prove that the defendant's sole or even primary intention was to obstruct justice so long as the Government proves beyond a reasonable doubt that one of the defendant's intentions was to obstruct justice.  The defendant's intention to obstruct justice must be substantial.

MR. HOCHMAN:  Is there a chance the Court could just print that out?  I was trying to write it down as fast as I could.  Is there a chance we can get a copy of that just to review it before we give you our opinion on it?

MR. FOX:  And, Your Honor, I think the other thing we can clarify for the jury is, perhaps added to that instruction, the last overt act instruction with respect to the conspiracy charge.  An overt act itself does not have to be unlawful.  I don't want to mislead the jury into thinking, if they find that was a lawful action, then -- if they find -- that it can't be an overt act.

MR. HOCHMAN:  If that's the case, I wouldn't want to highlight just the overt act conspiracy part of the instruction.  I'd want to go back into the parts of the conspiracy obstruction to deal with all the elements of conspiracy to obstruct justice.

**UNITED STATES DISTRICT COURT**

THE COURT:  Okay.  I'll read it again.  You must determine whether the approach of Leah Marx on September 26 was a lawful investigation or undertaken in furtherance of a conspiracy to obstruct justice or for the purpose of obstructing justice.

The Government need not prove that the defendant's sole or even primary intention was to obstruct justice so long as the Government proves beyond a reasonable doubt that one of the defendant's intentions was to obstruct justice.  The defendant's intention to obstruct justice must be substantial.

I think at that point we could read the elements of the conspiracy and read the elements of obstruction.

MR. HOCHMAN:  May I have a moment to think about that, Your Honor?

THE COURT:  Yes.

MR. HOCHMAN:  I think that would work, Your Honor, the way you proposed it.

THE COURT:  Or we could say the instruction on page 16 must be read in conjunction with all of the other instructions.  You must follow all of the instructions and not single out some and ignore others.  They're all important.

MR. FOX:  You're saying at the tail end of it?

THE COURT:  Yes.

MR. FOX:  Yes, Your Honor.  I think that would be

fine because then it directs them back to the jury instructions even though you haven't read the instructions on the elements at that point.

THE COURT:  So I would say you must determine whether the approach of Leah Marx on September 26 was a lawful investigation or undertaken in furtherance of a conspiracy to obstruct justice or for the purpose of obstructing justice. The Government need not prove that the defendant's sole or even primary intention was to obstruct justice so long as the Government proves beyond a reasonable doubt that one of the defendant's intentions was to obstruct justice.  The defendant's intention to obstruct justice must be substantial.

The instruction on page 16 must be read in conjunction with all the instructions.  You must follow all the instructions, not single out some and ignore others.  They are all important.

MR. FOX:  Yes, Your Honor.  I think that's fine.

MR. HOCHMAN:  That's fine, Your Honor.

MR. FOX:  The only other thing I would suggest is, given that we've got Mr. Faturechi's testimony down, if we do a readback now with that testimony, when they come back and hear that instruction, that will allow them to continue to go back and do work as we continue to do our work.

MR. HOCHMAN:  I think Mr. Rhambo is done as well, Your Honor.  It was shorter, and the parties have been going

UNITED STATES DISTRICT COURT

through it.  I think it might take the Court -- it's relatively short, especially compared to Mr. Manzo.

THE COURT:  Aren't there two volumes?

MR. FOX:  There's three.

MR. HOCHMAN:  There's actually three, but they were quite narrow because he was called back the next morning on one which created an intervening volume.

MR. FOX:  I think the Court is going to want to go through it to make sure it's accurate.

THE COURT:  I am.  Let's go ahead and get them in, answer this question.  We can go ahead and read Faturechi, and then we'll -- as soon as we get done with that, then we'll -- we can get through this, and we'll call them.

MR. HOCHMAN:  That's fine.  You can even tell them we're working on Mr. Rhambo and Mr. Manzo's testimony.

THE COURT:  Okay.

MR. FOX:  Will your answer to the jury not only be read but sent back with them as well in case they have further questions?  And rather than having to repeat yourself, it might be nice if they have that in writing.

THE COURT:  That's fine.

MR. HOCHMAN:  Did the Court send the other notes back as well?

THE COURT:  I don't send notes back.  I think what he's asking is if I will write out what I'm going to tell

them so they can have that as well.

MR. FOX:  In essence, Your Honor, it's a further jury instruction, and I think it would be good to be there in conjunction with the others.

THE COURT:  Any objection?

MR. HOCHMAN:  No, Your Honor.  Obviously I want to see it before it goes back.

THE COURT:  That's fine.  Who's going to read Faturechi?  Do you want to have the court reporter do that?

MR. HOCHMAN:  Yes, Your Honor.

MR. FOX:  That's fine.  Both parts?

THE COURT:  Yeah.

MR. FOX:  That's fine.

THE COURT:  We're going to start Mr. Faturechi's testimony on page 6.

MR. HOCHMAN:  Your Honor, just to advise for the other transcripts, when Mr. Faturechi swears himself in, you're not including that part of it?  Because that's on page 5.

THE COURT:  I'm going to start with, "Mr. Faturechi, what do you do for a living?"  Direct examination by Mr. Fox.

MR. HOCHMAN:  Very good.

THE COURT:  "Mr. Faturechi, what do you do for a living?"

MR. HOCHMAN:  Very good.  Thank you.

**UNITED STATES DISTRICT COURT**

THE COURT:  I'm also going to let them know that there were recordings of interviews with Brown that were played during Mr. Manzo's testimony.  If you want those recordings, that won't be reflected in the readback of the transcript.  If you want those recordings played, please let us know.  You can send us a note and let us know.

MR. HOCHMAN:  Thank you, Your Honor.

THE COURT:  Okay.  Let's bring the jury in.

So I think we'll do the rereading of Mr. Faturechi's testimony first.

(The following proceedings were held in open court in the presence of the jury:)

THE COURT:  All right.  Ladies and gentlemen, we have Mr. Faturechi's testimony available; so we'll begin with a readback of Mr. Faturechi's testimony.

I also received your note, and then as soon as we finish the readback of Mr. Faturechi's testimony, then I'll address your note as well.  We're continuing to work on readback of the other witnesses that you wanted to have readbacks of.

All right.  We can begin the readback of Mr. Faturechi's testimony, please.

(The record was read.)

THE COURT:  All right.  Ladies and gentlemen, now that you've had the transcript of the witness read to you, the

transcript is merely to be used as an aid.  Now that you've listened to the reading of the transcript, you should rely on your own memory of what was said.  The transcript is not a substitute for your memory or your assessment of the credibility of the witness.  You are to weigh all of the evidence presented at the trial, and you're not to use the transcript to unduly focus on any single portion of the trial. Your memory should prevail.

Now, we also received a note from you, and the note reads as follows: "Was it illegal for the sheriffs to approach Leah Marx on 9/26 in terms of the charges of conspiracy or obstruction?  We're confused by jury instruction, page 16, lines 1 through 3."

You must determine whether the approach of Leah Marx on September 26 was a lawful investigation or undertaken in furtherance of a conspiracy to obstruct justice or for the purpose of obstructing justice.  The Government need not prove that the defendant's sole or even primary intention was to obstruct justice so long as the Government proves beyond a reasonable doubt that one of the defendant's intentions was to obstruct justice.  The defendant's intention to obstruct justice must be substantial.

The instruction on page 16 must be read in conjunction with all of the instructions.  You must follow all of the instructions and not single out some and ignore others.

**UNITED STATES DISTRICT COURT**

They are all important.

Now, one of the things that happened during Mr. Manzo's testimony was the introduction of recordings of interviews with Mr. Brown.  If the jury wants the testimony of Mr. Brown or wants that testimony for those recordings of Mr. Brown, the reread will not reflect those recordings because the reporter wasn't transcribing the actual recording.  If you want those recordings that were played during Mr. Manzo's testimony, please give us a note, and we'll have those recordings replayed for you here in open court.

All right.  Thank you very much.

(The following proceedings were held in open court out of the presence of the jury:)

MR. HOCHMAN:  Your Honor, may I work with Mr. Fox on the Manzo testimony at this point?  Unless the Court wants to do the Rhambo one right away.

THE COURT:  That's fine.

MR. HOCHMAN:  Thank you.

THE COURT:  Okay.  Here's the instruction that was given to the jury that I propose to send back.

MR. HOCHMAN:  That's fine, Your Honor.

MR. FOX:  Yes, Your Honor.  Thank you.

THE COURT:  Is there any objection to the Court's instruction as to the reading -- after the reading of the testimony?

MR. FOX:  No, Your Honor.

MR. DIAMANTATOS:  No, Your Honor.

MR. HOCHMAN:  So, Your Honor, in going through Mr. Manzo's testimony dealing with the tape-recordings, the statements that are in the transcript or Mr. Fox asked to play a tape-recording and the Court allows it and then there's questions that usually follow many of them, what I had done is take out everything other than the questions that follow them. I don't know if the Court wanted to reference the exhibit number that then references the audiotape that was then played or not because it's not a question and answer back and forth for Mr. Manzo.

MR. FOX:  Your Honor, there's some that are question and answer with Mr. Manzo.  For example, if I introduced Exhibit 71, I might ask him follow-up questions based on what they just heard.  With that I think we need the context.  Now there are some where there are a series of clips that we play without asking questions.  With those I'm fine with us not referencing the exhibit.  With some, for context, we need it.

MR. HOCHMAN:  Again, I just didn't know the way the Court was doing it because you had taken out before anything where it wasn't a question/answer asked of a --

THE COURT:  Do you have any objection to his proposal?

MR. HOCHMAN:  No, Your Honor.  If that's the way the Court wants to proceed, then we'll leave in the reference to the exhibit that references the recording.

THE COURT:  Okay.

(A pause in the proceedings.)

THE COURT:  We have a new note.  The note reads as follows:  "At this time we no longer need the testimony for Manzo and Rhambo."

So I think we're now caught up.  All right.  We'll let you know if we hear something.

MR. DIAMANTATOS:  Thank you, Your Honor.

MR. FOX:  Thank you, Your Honor.

(A recess was taken at 1:59 p.m.)

(The following proceedings were held in open court out of the presence of the jury:)

THE CLERK:  Recalling item No. 1, CR 16-66(A), USA versus Leroy D. Baca.

Counsel, state your appearances, please.

MR. FOX:  Good afternoon, Your Honor.

Brandon Fox and Eddie Jauregui on behalf of the United States.  Also with us at counsel table is Special Agent David Dahle with the FBI.

THE COURT:  Good afternoon.

MR. HOCHMAN:  Good afternoon, Your Honor.

Nathan Hochman, Tinos Diamantatos, and

**UNITED STATES DISTRICT COURT**

Brianna Abrams along with Leroy Baca present, Your Honor.

THE COURT:  Good afternoon.

MR. DIAMANTATOS:  Good afternoon.

THE COURT:  We don't have another note.  However, I think there's a little ambiguity in this idea that deliberations go from 8:00 to 3:30.  So I'd like to bring the jury in and tell them that you're certainly free to leave every day at 3:30, but we are available for as long as you wish to stay and leave it at that.

MR. FOX:  That's fine, Your Honor.

MR. HOCHMAN:  Did you want to put an outside limit on it, Your Honor, or just --

THE COURT:  I don't have to go anywhere.  I have no life.

MR. HOCHMAN:  I don't know if your court reporter doesn't have a life like we all do.

THE COURT:  She doesn't have a life either.

MR. HOCHMAN:  Okay.  All right.

THE COURT:  If I don't have a life, you don't either.  So I'm going to tell them we'll stay as long as you want.

MR. HOCHMAN:  Does that mean -- I'm sorry, Your Honor.  Does that mean they should send us if they're going to leave at 3:30 --

THE COURT:  They'll let us -- I'll figure out

**UNITED STATES DISTRICT COURT**

when they leave and let you know.

MR. HOCHMAN:  Thank you, Your Honor.

THE COURT:  I can do it now or do it at 3:15.

MR. HOCHMAN:  Since we're here, Your Honor --

THE COURT:  Fine.  Bring them in.

MR. HOCHMAN:  Actually, I'll defer to the Court as to the exact words of what you're going to say in this along the lines of what you just said, Your Honor.

THE COURT:  Okay.

(The following proceedings were held in open court in the presence of the jury:)

THE COURT:  Ladies and gentlemen, I just wanted to clarify sort of ambiguity about this 3:30 time.  You, of course, are free to leave at 3:30 if you want.  However, if you want to stay later, that's a matter entirely up to you, and we'll be available for as long as you want to stay each day.

All right.  Thank you very much.  You can resume your deliberations.

(The following proceedings were held in open court out of the presence of the jury:)

THE COURT:  We'll let you know.

MR. HOCHMAN:  Thank you, Your Honor.

MR. FOX:  Thank you, Your Honor.

(A recess was taken at 3:10 p.m.)

**UNITED STATES DISTRICT COURT**

2114

CERTIFICATE OF OFFICIAL REPORTER

I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED THIS  14TH  DAY OF AUGUST, 2017.


/S/ MIRANDA ALGORRI

MIRANDA ALGORRI, CSR NO. 12743, CRR
FEDERAL OFFICIAL COURT REPORTER

**UNITED STATES DISTRICT COURT**