# Exhibit A

(Bail pending appeal motion filed in Ninth Circuit)

No. 17-50192

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LEROY BACA,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Central District of California
Honorable Percy Anderson, District Judge Presiding

MOTION FOR BAIL PENDING APPEAL

BENJAMIN L. COLEMAN
COLEMAN & BALOGH LLP
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0420

Attorneys for Appellant Leroy Baca

(2 of 93)

Case 2:16-cr-00066-PA, Document 478-1, Filed 08/28/17, Page 3 of 28, Page ID
Case: 17-50152, 07/24/2017, ID: 10519114, DktEntry: 2-1, Page 2 of 27
#:14336

# **TABLE OF CONTENTS**

Table of authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.  The district court erroneously empaneled an anonymous jury under
*United States v. Sanchez*, 74 F.3d 562 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . 3

II.  The district court excluded defense evidence in violation of the
evidentiary rules and Mr. Baca's constitutional right to present a defense. . . . . . . 6

      A.     *Rahm* error – exclusion of Alzheimer's evidence. . . . . . . . . . . . . . . . 6
      B.     *Whitman* error – exclusion of rebuttal motive evidence. . . . . . . . . . . 9

III.  The district court sua sponte gave a non-pattern instruction on
the "cooperating" witness process that was erroneously one-sided
and misleading. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.  The district court gave a non-pattern instruction on the relationship
between federal and state authorities lacking a legal basis, and the
instructions tainted the requisite mens rea and undermined the defense... . . . . . . 14

V.  There was insufficient evidence to sustain the § 1001 conviction.. . . . . . . . . 18

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Certificate of service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

(3 of 93)

Case 2:16-cr-00066-PA, Document 478-1 Filed 08/28/17 Page 4 of 28 Page ID
Case: 17-50192, 07/24/2017, ID: 10519114, DktEntry: 2-1, Page 3 of 27
#:14337

# TABLE OF AUTHORITIES

## CASES

*Bronston v. United States*,
409 U.S. 352 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Burrage v. United States*,
134 S. Ct. 881 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Crittenden v. Chappell*,
804 F.3d 998 (9th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Deck v. Jenkins*,
814 F.3d 954 (9th Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,18

*Levine v. United States*,
362 U.S. 610 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Northern Mariana Islands v. Bowie*,
243 F.3d 1109 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Quercia v. United States*,
289 U.S. 466 (1933). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Smith v. Curry*,
580 F.3d 1071 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Smith v. State of Illinois*,
390 U.S. 129 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Starr v. United States*,
153 U.S. 614 (1894). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Aguilar*,
515 U.S. 593 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

(4 of 93)

Case 2:16-cr-00066-PA, Document 478-1, Filed 08/28/17, Page 5 of 28 Page ID
Case: 17-50192, 07/24/2017, ID: 10519114, DktEntry: 2-1, Page 4 of 27
#:14338

*United States v. Barona*,
  56 F.3d 1087 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Bernard,*
  625 F.2d 854 (9th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Christian*,
  749 F.3d 806 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,10

*United States v. Cohen*,
  510 F.3d 1114 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Finn*,
  375 F.3d 1033 (10th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Gaudin*,
  515 U.S. 506 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Gergen*,
  172 F.3d 719 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Good*,
  326 F.3d 589 (4th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Handy*,
  761 F.2d 1279 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Miller*,
  767 F.3d 585 (6th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Morales*,
  108 F.3d 1031 (9th Cir. 1997) (*en banc*). . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Murphy*,
  768 F.2d 1518 (7th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,15

iii

*United States v. Paguio*,
   114 F.3d 928 (9ᵗʰ Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10,13,18

*United States v. Pazsint*,
   703 F.2d 420 (9ᵗʰ Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Rahm*,
   993 F.2d 1405 (9ᵗʰ Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8

*United States v. Ramirez*,
   714 F.3d 1134 (9ᵗʰ Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

*United States v. Rodriguez-Rodriguez*,
   840 F.2d 697 (9ᵗʰ Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Sanchez*,
   74 F.3d 562 (5ᵗʰ Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4,6

*United States v. Sandoval-Mendoza*,
   472 F.3d 645 (9ᵗʰ Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Schuler*,
   813 F.2d 978 (9ᵗʰ Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . 9,13,18

*United States v. Shryock*,
   342 F.3d 948 (9ᵗʰ Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Smith*,
   831 F.3d 1207 (9ᵗʰ Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Stever*,
   603 F.3d 747 (9ᵗʰ Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Thompson*,
   37 F.3d 450 (9ᵗʰ Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,13,18

*United States v. Vallejo*,
   237 F.3d 1008 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Whitman*,
   771 F.2d 1348 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10

*Warger v. Shauers*,
   135 S. Ct. 521 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Williams v. United States*,
   93 F.2d 685 (9th Cir. 1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATUTES

18 U.S.C. § 201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. § 371. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1503. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3143. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 994. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## RULES

Fed. R. App. P. 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Evid. 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Evid. 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

9th Cir. R. 9-1.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

U.S.S.G. § 5K1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## INTRODUCTION

Appellant Leroy Baca moves for bail pending appeal under Fed. R. App. P. 9 and 9th Cir. R. 9-1.2.  It is undisputed that Mr. Baca is not a flight risk or danger. The only question is whether he will present "substantial" or "debatable" claims that will result in reversal.  18 U.S.C. § 3143(b); *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985).  He will present several; this Court should grant bail.

## BACKGROUND

Mr. Baca is 75-years old and has Alzheimer's disease. Ex. D.  He worked for the Los Angeles Sheriff's Department ("LASD") for almost 50 years and served as the Sheriff for the last 15 years of his career before retiring in 2014.

In February 2016, the government filed an information alleging that Mr. Baca made a false statement in a 2013 interview conducted by federal agents in violation of 18 U.S.C. § 1001.  Mr. Baca was released and remains on a $10,000 appearance bond.  He agreed to plead guilty with a government recommendation of 0-6 months in custody; the district court rejected the agreement.  CR 1,5,8,62.

A grand jury then returned a superseding indictment charging the § 1001 offense as Count 3 and adding conspiratorial and substantive obstruction of justice charges, 18 U.S.C. §§ 371, 1503(a), as Counts 1 and 2.  The indictment alleged that, in 2011, the FBI used an inmate at a Los Angeles jail as an informant about potential civil rights violations.  The inmate bribed a deputy to smuggle a cell

phone into the jail, which the inmate then secretly used.  In August 2011, Mr. Baca

learned that the phone had been seized by deputies, who discovered that it

belonged to the FBI.  Over the next month, Mr. Baca allegedly obstructed the

federal investigation by isolating the inmate from the FBI and threatening to arrest

the federal agents who had initiated the ruse to smuggle the phone into the jail.

Two years later, in April 2013, Mr. Baca allegedly made false statements during a

lengthy interview that he agreed to give to federal agents about the events.  CR 70.

The district court *sua sponte* suggested that the obstruction counts be

severed from the false statements count because Mr. Baca's Alzheimer's was

relevant to the latter and would unfairly prejudice the government as to the former.

The government obtained the severance, CR 190, and trial on the obstruction

counts commenced in December 2016 but ended in a mistrial, over Mr. Baca's

objection, when the jury deadlocked 11-1 in favor of *acquittal*.  CR 210, 270.

The district court then granted the government's request to rejoin all three

counts, and, before the second trial, completely excluded evidence of Mr. Baca's

Alzheimer's and committed a series of other errors that unfairly undermined his

defense.  The second jury deliberated over three days before returning guilty

verdicts.  The district court imposed a sentence of 36 months, a year more than the

government's recommendation, and denied bail pending appeal.  Ex. B; CR 376.

## **ARGUMENT**

**I. The district court erroneously empaneled an anonymous jury under *United States v. Sanchez*, 74 F.3d 562 (5th Cir. 1996).**

The district court held several prior trials where LASD deputies were defendants in related cases and did not use an anonymous jury, but, over Mr. Baca's objection, it *sua sponte* suggested and then used an anonymous jury in his case. CR 180. The district court stated that the case involved a conspiracy of law enforcement officers, Mr. Baca likely had connections to officers with ability to access jurors' privation information, and jurors (the court previously stated a mere two) had expressed apprehension about access to private information in two prior trials. The district court also reasoned that Mr. Baca was alleged to have interfered with the judicial process, the charges carried potential 5-10 years of imprisonment, and the case had attracted media coverage. Ex. C.

The district court erred under *Sanchez*, 74 F.3d at 564-65, where an anonymous jury was used for the trial of an officer who threatened to arrest prostitutes to coerce them to engage in sex acts. The district court relied on "the potential fears of jurors adjudicating the guilt or innocence of a police officer" and stated there was nothing "more frightening to the populous than having a rogue cop on their hands." *Id.* at 564-65. The Fifth Circuit reversed, as nothing showed

3

that the defendant would attempt to harm the jurors, and the "decision erroneously rested on the 'mere allegations or inferences of potential risk.'" *Id.* at 565. Reversal was required because the "defendant has a right to a jury of known individuals not just because information such as was redacted here yields valuable clues for purposes of jury selection, but also because the verdict is both personalized and personified when rendered by 12 known fellow citizens." *Id.*

The showing here was more deficient than *Sanchez* because there was no allegation that Mr. Baca had engaged in any violence against members of the public. Although Mr. Baca had been retired for three years, the district court speculated that he was "likely" to have connections to deputies with the ability to access private information. The district court did not explain what information could be accessed that private investigators or the government could not access in any case. The fact that perhaps two out of hundreds of potential jurors expressed unspecified concerns at other trials is not cause for an anonymous jury. If that were the standard, every trial in the land would be by an anonymous jury.

The district court reasoned that Mr. Baca was charged in a conspiracy to obstruct justice that included hiding an informant and intimidating a FBI agent. The informant was in the custody of the LASD, serving over 400 years for violent crimes, and was isolated for a short time in 2011 after it was determined that a cell

4

phone, with pictures of drugs, had been smuggled into him. The informant was later produced to the FBI, as were hundreds of thousands of documents in response to the federal investigation, and the indictment itself alleged that the brief conspiracy terminated by at least September 2011, six years before the trial. The asserted intimidation of the FBI agent also occurred six years earlier and did not involve any violence; deputies approached the FBI agent and stated that they would seek an arrest warrant for her violation of state law. Sheriff Baca immediately informed the U.S. Attorney that no such arrest would be sought.

The district court stated that there was the potential for a lengthy sentence, but the charges were lower level felonies, and the government had offered Mr. Baca a deal for 0-6 months in custody. This exposure did not come close to the sentences that have supported use of an anonymous jury. *See United States v. Shryock*, 342 F.3d 948, 972 (9th Cir. 2003) (sentences of 25 years to life).

The district court mentioned that the case had attracted publicity, which could lead to harassment of jurors. Despite several earlier publicized trials in related cases *without* anonymous juries, the district court did not cite a single incident where a juror was harassed by anyone -- the defendants, other LASD personnel, or the press. If an anonymous jury can be employed for the trial of a retired Sheriff on charges that he briefly engaged in non-violent conduct several

5

years earlier, then it can be employed in virtually any case.

The district court at least erred by failing to disclose the identities of the jurors to counsel, hampering the ability to select a jury. *Sanchez*, 74 F.3d at 565. A "name and address open countless avenues of . . . out-of-court investigation." *Smith v. State of Illinois*, 390 U.S. 129, 131 (1968).  With the internet, a name can reveal much more than the limited information disclosed during voir dire, which is not always accurate. *See Warger v. Shauers*, 135 S. Ct. 521 (2014).  Disclosing the jurors' identities to counsel could not have resulted in juror intimidation.

Mr. Baca maintains that the error was structural, as errors related to jury selection are not typically amenable to harmless error analysis. *See Crittenden v. Chappell*, 804 F.3d 998, 1002-03 (9th Cir. 2015).  Even if not structural, *Sanchez* supports reversal in this close case.  The first jury deadlocked 11-1 for *acquittal*, and the second jury deliberated over the course of three days.

## II.  The district court excluded defense evidence in violation of the evidentiary rules and Mr. Baca's constitutional right to present a defense.

### A.  *Rahm* error – exclusion of Alzheimer's evidence

Mr. Baca sought to introduce expert testimony from a leading expert on Alzheimer's disease, who would have testified that during the 2013 interview, Mr. Baca was either in the pre-clinical or mild cognitive impairment stage of

(13 of 93)

Case 2:16-cr-00066-PA   Document 478-1   Filed 03/28/17   Page 14 of 28   Page ID
Case: 17-50192, 07/24/2017, ID: 10519124, DktEntry: 2-1, Page 13 of 27
#:14347

Alzheimer's.  In either stage, Alzheimer's increased the probability that memory

impairment affected his answers to the questions about events occurring 20

months earlier.  Ex. D.  Although the district court believed that the evidence was

admissible as to the § 1001 charge when it severed the counts for the first trial, it

excluded the evidence altogether at the second trial.  The district court reasoned

that the doctor could only say that there was an "increased probability" that Mr.

Baca's Alzheimer's impaired his memory, which was "speculative" and did not

quantify the increase.  The court concluded that the evidence was therefore

inadmissible under Fed. R. Evid. 403 and 702.  Ex. B; CR 267.

Putting aside that the district court understated the doctor's declaration, Ex.

D, its conclusion was error under *United States v. Rahm*, 993 F.2d 1405, 1412 (9th

Cir. 1993), where this Court reversed a district court that excluded similar

testimony under Rules 403 and 702 based on the same rationale, explaining that

"[c]ertainty is an unreasonable expectation in the realm of expert opinion."

"[P]articularly in matters of the mind . . . [e]xperts ordinarily deal in probabilities,

in 'coulds' and 'mights.'"  *Id*.  Experts using "probability terminology" can

provide admissible testimony.  *Id*.  *See United States v. Sandoval-Mendoza*, 472

F.3d 645, 655-56 (9th Cir. 2006).  The district court erred by focusing on the

conclusiveness of the opinion rather than on the diagnosis and testimony about

7

(14 of 93)

Case 2:16-cr-00066-PA   Document 478-1   Filed 03/28/17   Page 15 of 28   Page ID
Case: 17-50192, 07/24/2017, ID: 10519124, DktEntry: 2-1, Page 14 of 27
#:14348

Mr. Baca's Alzheimer's disease, *Rahm*, 993 F.2d at 1412; *see United States v. Christian*, 749 F.3d 806, 811-12 (9th Cir. 2014), and Rule 403 could not support exclusion. *Rahm*, 993 F.2d at 1415; *see United States v. Cohen*, 510 F.3d 1114, 1126-27 (9th Cir. 2007). The district court ignored this authority, and because such important testimony was entirely excluded in violation of the evidentiary rules, the district court violated Mr. Baca's constitutional right to present a defense. *See United States v. Stever*, 603 F.3d 747, 755-57 (9th Cir. 2010).

The error was not harmless. *Cohen*, 510 F.3d at 1127; *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997) (*en banc*); *Rahm*, 993 F.2d at 1415. The district court stated that any error could have only harmed the § 1001 count. Putting aside that the doctor stated that Mr. Baca suffered from Alzheimer's during the 2011 period of the obstruction counts, the district court ignored that the government argued and the jury could have concluded that the false statements showed consciousness of guilt as to the obstruction conduct. Without the alleged false statements, the first jury deadlocked 11-1 for acquittal, demonstrating that they were important and Mr. Baca's need to explain them. *See United States v. Vallejo*, 237 F.3d 1008, 1018-22 (9th Cir. 2001) (exclusion of expert who would have provided explanation for defendant's alleged false statements not harmless); *see also United States v. Paguio*, 114 F.3d 928, 935 (9th Cir. 1997) ("the hung jury

8

at the first trial persuades us that the case was close and might have turned on this [issue]"); *United States v. Thompson*, 37 F.3d 450, 454 (9th Cir. 1994); *United States v. Schuler*, 813 F.2d 978, 982 (9th Cir. 1987). The error tainted all counts.

### B. *Whitman* error – exclusion of rebuttal motive evidence

The government's theory of motive was that Mr. Baca obstructed the federal investigation because he did not want inmate abuse at his jails to be exposed. As but one example, the prosecutor began summations with: "The problem [for Mr. Baca] went to his department and his legacy. The problem was that the FBI was investigating him, his department, his jails for civil rights violations." Mr. Baca sought to counter that he had taken substantial steps to expose and correct inmate abuse and civil rights violations throughout his career, including at the time of the charges, thereby undermining the government's theory of motive. The district court excluded the evidence, including Mr. Baca's cooperation with another federal civil rights investigation in August 2011, his establishment and continued support of an Office of Independent Review to critique the operations of the LASD, including on allegations of inmate abuse, and his responses to excessive force issues, such as the adoption of anti-retaliation measures in 2011. Ex. B.

Mr. Baca relied on *United States v. Whitman*, 771 F.2d 1348, 1351 (9th Cir. 1985), which held that, once the government opens the door regarding a motive, a

(16 of 93)

Case 2:16-cr-00066-PA   Document 478-1   Filed 03/28/17   Page 17 of 28   Page ID
Case: 17-50192, 07/24/2017, ID: 10519124, DktEntry: 2-1, Page 16 of 27
#:14350

defendant has a Fifth and Sixth Amendment "right to rebut this evidence."

Neither the government below nor the district court acknowledged *Whitman* and

only asserted that the evidence was not sufficiently relevant or was otherwise

inadmissible under Rule 403. Under *Whitman*, however, once the government

opened the door with its motive theory, Mr. Baca had a constitutional right to

introduce rebuttal motive evidence, even if that evidence would otherwise have

been inadmissible under the Rules. The arguments against the rebuttal motive

evidence went to its weight, not its admissibility. Finally, in the context of the bail

pending appeal motion, the government also belatedly complained that some of

the offers of proof were vague or general, but the district court granted the

*government's* motion to exclude the evidence without finding any need to develop

the record, eliminating the validity of this objection. *Christian*, 749 F.3d at 810.

## III. The district court *sua sponte* gave a non-pattern instruction on the "cooperating" witness process that was erroneously one-sided and misleading.

Several "cooperating" witnesses testified with the hope of receiving

sentencing reductions. Although the district court gave the model instruction that

the jury should examine their testimony with greater caution, it also *sua sponte*

gave an instruction, over Mr. Baca's objection, stating: "[T]he punishment to be

imposed for any crime is exclusively for the Court to decide . . . and the Court is in

10

(17 of 93)

Case 2:16-cr-00066-PA, Document 478-1, Filed 03/28/17, Page 18 of 28 Page ID
Case: 17-50192, 07/24/2017, ID: 10515124, DktEntry: 2-1, Page 17 of 27
#:14351

no way required to impose any sentence that the government recommends.  The

Court considers many factors, including the seriousness of the offense and

whether the defendant has a criminal history, in imposing the sentence."  Ex. E.

The district court did not give this instruction at the first trial.  CR 212.

While not illegal, *but see* 18 U.S.C. § 201, the dangers of the "cooperation"

process and its potential to generate false testimony have been well documented.

*See, e.g.*, *Northern Mariana Islands v. Bowie*, 243 F.3d 1109, 1124 (9th Cir. 2001).

Thus, Model Instruction 4.9 directs jurors to consider "cooperator" testimony with

"greater caution," and the failure to give such an instruction is error.  *United States

v. Bernard*, 625 F.2d 854, 857-58 (9th Cir. 1980).  The *sua sponte* instruction given

here undermined these principles, was error under *United States v. Ramirez*, 714

F.3d 1134 (9th Cir. 2013), and was one-sided and misleading.

In *Ramirez*, the government did not call a cooperator, and, in response to a

defense argument that the witness was not called because he would have testified

favorably to the defense, the district court *sua sponte* instructed the jurors that

there was no evidence and they should not speculate as to why he was not called.

*Id.* at 1137.  This Court reversed because the judge "effectively instructed the jury

not to fall for defense counsel's argument that the government didn't put [the

cooperator] on the stand because he would have testified in a manner favorable to

11

the defense." *Id.* This Court explained that "it is the government's job, not the court's, to make sure the jury doesn't draw incorrect inferences." *Id.* at 1139.

Here, as is often the case, the defense argued that the "cooperation" system is corrupt, and the witnesses (certainly former deputies familiar with the system) knew that if they said the things the government wanted to convict Mr. Baca, they would be rewarded with reduced sentences. As in *Ramirez*, the district court's *sua sponte* instruction effectively told the jurors not to fall for the defense's argument, even though it was the government's job to make sure that the jurors did not draw the incorrect inference about the "cooperation" process, not the court's.

While *Ramirez* alone demonstrates that the instruction was erroneous, other precedent demonstrates that it was impermissibly one-sided. "The influence of the trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received with deference and may prove controlling." *Quercia v. United States*, 289 U.S. 466, 470 (1933). Thus, the judge must take "great care" that an instruction "not be one-sided." *Id.* at 470; *see Smith v. Curry*, 580 F.3d 1071, 1083 (9th Cir. 2009) (reversing because instruction "was not neutral by any reasonable standard"). A jury instruction "should be stated accurately, as well that which makes in favor of a party as that which makes against him." *Starr v. United States*, 153 U.S. 614, 626 (1894).

Here, the instruction stated that the court was "in no way" required to follow the government's recommendation and that a sentencing determination considered "many factors, including the seriousness of the offense and whether the defendant has a criminal history," without mentioning cooperation at all. Jurors were much more likely to know that a judge would take into account the seriousness of the offense and a defendant's prior record when imposing a sentence than how "cooperation" fits into the analysis. By omitting "cooperation" as a factor, the instruction was drastically one-sided. The one-sidedness was even worse because the judge was instructing on his own judicial functions, adding greater weight to the description. *Williams v. United States*, 93 F.2d 685, 694 (9th Cir. 1937). Furthermore, Congress has mandated consideration of a defendant's "cooperation" at sentencing, 28 U.S.C. § 994(n), including placing "substantial weight" on the prosecutor's recommendation. U.S.S.G. § 5K1.1. Thus, the instruction was not only one-sided but it was defectively misleading.

The erroneous instruction was harmful. The instruction was not given at the first trial, where the jury deadlocked 11-1 for acquittal. *Paguio*, 114 F.3d at 935; *Thompson*, 37 F.3d at 454; *Schuler*, 813 F.2d at 982. Furthermore, the district court stated that it believed that the testimony of one of the cooperating witnesses, William Tom Carey, was a significant factor in the different results. Ex. B.

13

**IV.  The district court gave a non-pattern instruction on the relationship between federal and state authorities lacking a legal basis, and the instructions tainted the requisite mens rea and undermined the defense.**

Over Mr. Baca's objection, the district court instructed:

Local law enforcement departments, including the LASD, do not have the authority to direct or control federal investigations, including those by the FBI, the U.S. Attorney's Office, or a federal grand jury.  In order to investigate crime, federal law enforcement agencies are entitled to choose their own tactics and strategies, conduct their own evaluations of risks, assign their own personnel, and make their own decisions regarding whether to inform others, including targets, that an investigation is underway. . . .

It is not for you to decide whether or how the federal government should have conducted its investigation. . . .

A local officer has the authority to investigate potential violations of state law.  This includes the authority to investigate potential violations of state law by federal agents.  A local officer, however, may not use this authority to engage in what ordinarily might be normal law enforcement practices, such as interviewing witnesses, attempting to interview witnesses or moving inmates, for the purpose of obstructing justice.

Ex. E.  The district court did not give this instruction at the first trial.  CR 212.

This instruction and all of the instructions viewed as a whole were erroneous.

The instruction's assertion that the federal agents had no obligation to give notice to state authorities is far from clear in this context.  Perhaps the only published case to address the issue is *United States v. Murphy*, 768 F.2d 1518 (7th Cir. 1985), involving an undercover FBI investigation into a county court system.  In *Murphy*, the FBI notified the presiding judge of the court's criminal division,

14

(21 of 93)

Case 2:16-cr-00066-PA, Document 478-1, Filed 03/28/17, Page 22 of 28 Page ID
Case: 17-50152, 07/24/2017, ID: 10515124, DktEntry: 2-1, Page 21 of 27
#:14355

the State Attorney for the county, the state Attorney General, and the Governor.

The Seventh Circuit did not decide whether such notice was "necessary" but

explained that "the notice dispell[ed] any argument that the federal Government

has offended some principle requiring respect of the internal operations of the

state courts." *Id.* at 1529. Even if the FBI was concerned that providing notice to

the LASD would have compromised the operation, there were other authorities,

such as the California Attorney General and Los Angeles District Attorney, who

could have been notified to eliminate the problems that then ensued.

Given that the law is not settled, the decision to instruct as if the law was

clear erroneously undermined Mr. Baca's defense that he intended to conduct a

legitimate investigation into whether the FBI operation violated state law. The

jury sent a note asking: "Being the first time the FBI inserted contraband into a

jail, did the federal government have the constitutional authority in the action

taken?" CR 340. This was a crucial issue, and the instruction incorrectly told the

jury that Mr. Baca's belief was clearly wrong, although the law was not clear.

The instruction also tainted the requisite mens rea. The instruction told the

jurors that they were not to decide how the federal government should have

conducted its investigation, but this question was intertwined with Mr. Baca's

defense that he believed the FBI investigation potentially violated state law and

15

(22 of 93)

Case 2:16-cr-00066-PA   Document 478-1   Filed 03/28/17   Page 23 of 28   Page ID
Case: 17-50182, 07/24/2017, ID: 10515124, DktEntry: 2-1, Page 22 of 27
#:14356

was acting accordingly.  The instruction informed the jurors that officials could not conduct normal practices, such as moving an inmate, for the purpose of obstructing justice.  But if Mr. Baca believed that the federal investigation was illegal, then implementing practices, such as moving the inmate, to obstruct the federal investigation would not have been undertaken with the requisite corrupt intent.  Throughout, the instructions defined obstructing justice with merely obstructing the federal investigation, undermining Mr. Baca's defense.

The "mixed motive" instruction given by the district court did not eliminate the taint flowing from this instruction and was error itself.  That instruction stated: "[T]he government need not prove that the defendant's sole or even primary intention was to obstruct justice so long as [it] proves . . . that one of the defendant's intentions was to obstruct justice.  The defendant's intention to obstruct justice must be substantial."  Ex. E.  This instruction did not amplify an "intent to obstruct justice," which was previously defined as an intent to obstruct the federal investigation, and did not specify that it was not a violation if Mr. Baca intended to obstruct a federal investigation that he believed was illegal.

The "mixed motive" instruction was also erroneous in its own right because it did not set forth a but-for standard, and the "substantial" language used by the district court was defective because it did "not specify how important or how

16

(23 of 93)

Case 2:16-cr-00066-RA, Document 478-1, Filed 03/28/17, Page 24 of 28 Page ID
Case: 17-30192, 07/24/2017, ID: 10519124, DktEntry: 2-1, Page 25 of 27
#:14357

substantial a cause must be to qualify. . . . Uncertainty of that kind cannot be
squared with the beyond-a-reasonable-doubt standard applicable in criminal trials
or with the need to express criminal laws in terms ordinary persons can
comprehend." *Burrage v. United States*, 134 S. Ct. 881, 888-89, 892 (2014).
Judge Sutton's opinion in *United States v. Miller*, 767 F.3d 585, 591-92 (6th Cir.
2014) confirms that a but-for standard applies regardless of whether the critical
element is "an easier-to-show prohibited act or a harder-to-prove prohibited
motive." "That conclusion makes good sense in the context of a criminal case
implicating the motives of the defendants. The alternative proposed definition of
the phrase ('significant motivating factor') does not sufficiently define the
prohibited conduct. How should a jury measure whether a specific motive was
significant in inspiring a defendant to act? Is a motive significant if its one of
three reasons he acted? One of ten?" *Id.* at 592.[1]

Finally, the errors were prejudicial. *Id.* at 600. The jury asked a question on
the legitimacy of the federal investigation, demonstrating harmful error, *see Deck*

---

[1] In *United States v. Smith*, 831 F.3d 1207, 1217-19 (9th Cir. 2016), this
Court did not find error with the "dual purpose" instruction given by the district
court in a related case. This Court, however, did not consider *Burrage* and *Miller*.
Furthermore, in *Smith*, the district court gave a "good faith" instruction, which this
Court heavily relied upon in determining that the intent instructions were
sufficient. *Id.* at 1220-21 and n.18. Here, no "good faith" instruction was given.

(24 of 93)

Case 2:16-cr-00066-RA, Document 478-1, Filed 03/28/17, Page 25 of 28 Page ID
Case: 17-50192, 07/24/2017, ID: 10515124, DktEntry: 21-9, Page 24 of 27
#:14358

*v. Jenkins*, 814 F.3d 954, 985-86 (9th Cir. 2016); *United States v. Gergen*, 172 F.3d 719, 724 (9th Cir. 1999), and the defective instruction was not given at the first trial, where the jury deadlocked 11-1 for acquittal.  *See Paguio*, 114 F.3d at 935; *Thompson*, 37 F.3d at 454; *Schuler*, 813 F.2d at 982.

## V.  There was insufficient evidence to sustain the § 1001 conviction.

The government presented insufficient evidence of a § 1001 violation in three respects.  First, in order to get around *United States v. Aguilar*, 515 U.S. 593, 600 (1995) as to the § 1503(a) counts, the government had the FBI agent who interviewed Mr. Baca testify that his interviews and investigation was as "an arm of the grand jury."  Given the government's theory, the interview of Mr. Baca was within the jurisdiction of the judicial branch.  *See Levine v. United States*, 362 U.S. 610, 617 (1960).  Count 3, however, alleged a false statement within the jurisdiction of the executive branch.  Thus, the evidence was insufficient to sustain the charge as pled.  *United States v. Pazsint*, 703 F.2d 420, 423-24 (9th Cir. 1983).

Second, in *Bronston v. United States*, 409 U.S. 352, 358-59 (1973), the Court held that a literally true but non-responsive and misleading answer cannot sustain a perjury conviction; it is the responsibility of the questioner to pin the witness down with precision.  The *Bronston* rule applies to § 1001.  *United States v. Good*, 326 F.3d 589, 591-92 (4th Cir. 2003).  The government proceeded on four

18

(25 of 93)

Case 2:16-cr-00066-PA, Document 478-1, Filed 03/28/17, Page 26 of 28 Page ID
Case: 17-50192, 07/24/2017, ID: 10515124, DktEntry: 2-1, Page 25 of 27
#:14359

false statements, but at least one was legally inadequate under *Bronston*, tainting

the verdict on Count 3.

Perhaps the clearest example is Mr. Baca's statements regarding the

intimidation of the FBI agent.  Although the indictment misleadingly alleged the

false statement in the disjunctive, the prosecutor asked whether Mr. Baca had prior

knowledge that deputies were going "to threaten to charge *and* arrest her."  Mr.

Baca indicated that he did not, and the prosecutor also asked whether he knew that

deputies were going to "approach" the agent; Mr. Baca stated that he was not

aware "of the investigative particulars" but received a call about the contact with

the agent and was aware something occurred.  The evidence presented by the

government was that Mr. Baca told deputies *not* to arrest the agent.  Given the

conjunctive phrasing of the question, his responses were literally true, even if

misleading.  Likewise, his vague statement that he did not know "the investigative

particulars" and was aware something occurred after the call, even if non-

responsive and misleading, could not sustain a conviction under *Bronston*.  The

jury was never given a *Bronston* instruction and thus could not have determined

such "legal" adequacy.  Because there was a general verdict on Count 3, and at

least one underlying theory was "legally" inadequate, reversal is required.  *United

States v. Barona*, 56 F.3d 1087, 1097-98 (9th Cir. 1995).

19

Third, there was insufficient evidence of materiality. No agent or other witness testified that the alleged misstatements were capable of influencing the relevant decision-making body. *See United States v. Finn*, 375 F.3d 1033, 1038-40 (10th Cir. 2004) (government witnesses did not provide sufficient testimony to establish materiality where federal agent made false statement to receive reimbursement). The district court emphasized an FBI agent's testimony that Mr. Baca was interviewed because he had information "that may have been relevant to the investigation," Ex. B, but that did not establish that the *false statements* alleged were capable of influencing the decision-making body. The district court also relied on *United States v. Rodriguez-Rodriguez*, 840 F.2d 697, 701 (9th Cir. 1988), but that case, involving false claims of citizenship at an immigration checkpoint, is distinguishable and was decided before *United States v. Gaudin*, 515 U.S. 506 (1995) clarified that materiality was a factual matter for the jury.

## CONCLUSION

Mr. Baca will present debatable claims that will result in reversal; thus, this appeal is not for delay. This Court should grant bail pending appeal.

Respectfully submitted,

*s/Benjamin L. Coleman*

Dated: July 24, 2017          BENJAMIN L. COLEMAN
                              Attorney for Appellant Leroy Baca

20

## CERTIFICATE OF SERVICE

I, hereby certify that on July 24, 2017, I electronically filed the

foregoing Motion with the Clerk of the Court for the United States Court of

Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users

and that service will be accomplished by the appellate CM/ECF system.


Dated: July 24, 2017                    *s/Benjamin L. Coleman*
                                        BENJAMIN L. COLEMAN