# Exhibit B

(Government opposition filed in Ninth Circuit)

**IN THE**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) C.A. No. 17-50192 |
| Plaintiff-Appellee, | ) D.C. No. CR 16-66-PA<br>) (Central Dist. Cal.) |
| v. | )<br>) **GOVERNMENT'S** |
| LEROY BACA, | ) **OPPOSITION TO**<br>) **DEFENDANT'S MOTION FOR** |
| Defendant-Appellant. | ) **BAIL PENDING APPEAL** |
| | )<br>) |

Plaintiff-Appellee United States of America, by and through its counsel of record, hereby files its Opposition to Defendant-Appellant Leroy Baca's Motion for Bail Pending Appeal.  This Opposition is based on the attached Memorandum of Points and Authorities, the exhibits filed in support thereof, the exhibits previously filed by defendant, the files and records in this case, and such further argument or evidence as may be presented to the Court.

Defendant remains on bond pending the Court's resolution of his motion for bail pending appeal.  At the time of sentencing, defendant's

self-surrender date was set for July 25, 2017.  That date has been

automatically stayed by the filing of defendant's motion.

DATED: August 10, 2017                    Respectfully submitted,

                                          SANDRA R. BROWN
                                          Acting United States Attorney

                                          LAWRENCE S. MIDDLETON
                                          Assistant United States Attorney
                                          Chief, Criminal Division

                                            /s/ Bram M. Alden

                                          BRAM M. ALDEN
                                          EDDIE A. JAUREGUI
                                          Assistant United States Attorneys

                                          Attorneys for Plaintiff-Appellee
                                          UNITED STATES OF AMERICA

## BACKGROUND

In 2011, Defendant-Appellant Leroy Baca was the leader of the Los Angeles County Sheriff's Department ("LASD") when he led a conspiracy to thwart a federal grand jury investigation into allegations of corruption and inmate abuse in the Los Angeles County jails.[1]  With defendant's knowledge and approval, LASD officers hid an inmate informant from the FBI and attempted to intimidate an FBI agent by threatening to arrest her.  When interviewed by the government in 2013, defendant lied and attempted to blame his subordinates.  He was subsequently indicted for conspiracy, obstruction of justice, and making false statements.

At trial, former LASD officers and officials testified that defendant authorized, condoned, and even "laughed" at his co-conspirators' wrongdoing.  (GEX 74, 86, 114-122, 125-129.[2])  Defendant did so even

---

[1] In affirming the convictions of seven of defendant's co-conspirators, this Court recounted many of the salient facts. *United States v. Smith*, 831 F.3d 1207, 1211-14 (9th Cir. 2016).  The government incorporates herein the facts from the *Smith* opinion.

[2] "GEX" refers to the government's exhibits filed with this opposition, and "Mot." refers to defendant's brief filed in support of his motion; all such references are followed by applicable page numbers.

after one of his assistant sheriffs frankly warned him that if he interfered with the federal investigation, he would be obstructing justice. (GEX 90.) Nearly two years later, he lied to federal authorities, claiming that he did not know key details about the obstructive scheme he oversaw. (Exhibits 2.8, 2.11, 2.16, 2.18.[3])

The jury convicted defendant of all counts. The district court sentenced him to 36 months' imprisonment (GEX 10) and denied his request for bail pending appeal (GEX 1-9). This Court previously rejected the bail application of defendant's second-in-command, Undersheriff Paul Tanaka. *See United States v. Tanaka*, No. 16-50233, Dkt. No. 21 (Order). It should do so here, as well.

## LEGAL STANDARD

### A. Bail Pending Appeal

"Once a person has been convicted and sentenced to jail, there is absolutely no reason for the law to favor release pending appeal or even permit it in the absence of exceptional circumstances." H. Rep. No. 907,

---

[3] Exhibits 2.8, 2.11, 2.16, 2.18, and 100 are audio recordings admitted at trial that the government has moved to transmit to this Court.

(5 of 311)

Case 2:16-cr-00066-PA Document 478-2 Filed 08/28/17 Page 6 of 30 Page ID
Case: 17-50192, 08/10/2017, ID: 10540748, DktEntry: 9-1, Page 5 of 25
#:14367

91st Cong., 2d Sess. 186-87 (1970) (regarding model for 18 U.S.C.

§ 3143 ("the Bail Act")); *see United States v. Miller*, 753 F.2d 19, 22 (3d

Cir. 1985) (the Bail Act was intended "to reverse the presumption in

favor of bail"); *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir.

1985) (adopting *Miller*'s interpretation of the Bail Act). Congress

enacted the Bail Act to "toughen the law with respect to bail pending

appeal" and to "make[] it considerably more difficult for a defendant to

be released on bail pending appeal." *Handy*, 761 F.2d at 1283. As a

result, obtaining bail pending appeal should be "no easy matter," *United

States v. Gerald N.*, 900 F.2d 189, 191 (9th Cir. 1990) (per curiam);

indeed, the Act "establishes a presumption against the grant of such

bail," *United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987).

## B. Standard of Review

The denial of bail pending appeal is reviewed "under an abuse of

discretion standard." *United States v. Chilingirian*, 280 F.3d 704, 709

(6th Cir. 2002); *see, e.g., United States v. McTiernan*, 695 F.3d 882, 892

(9th Cir. 2012) (district court "exercised her discretion to allow [the

defendant] to remain free on bail pending appeal"). The district court's

decision is entitled to "great deference." *United States v. Maull*, 773

3

(6 of 311)

Case 2:16-cr-00066-PA   Document 478-2   Filed 08/28/17   Page 7 of 30   Page ID
Case: 17-50192, 08/10/2017, ID: 10540718, DktEntry: 9-1, Page 6 of 25   #:14368

F.2d 1479, 1486-87 (8th Cir. 1985) (en banc); *see also Carbo v. United States*, 302 F.2d 456, 457 (9th Cir. 1962) (district court's denial of bail "is entitled to great respect").

Factual findings underlying the denial of bail are reviewed for clear error, *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990), and may not be reversed absent a "definite and firm conviction" that they were "illogical, implausible, or without support" in the record, *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc). Questions of law are reviewed de novo, *id.* at 1261-62, but legal claims not raised below are waived, *United States v. Gila Valley Irrigation Dist.*, 859 F.3d 789, 800 (9th Cir. 2017); *United States v. Brugnara*, 856 F.3d 1198, 1211 (9th Cir. 2017), or, at most, subject only to plain error review, *United States v. Liew*, 856 F.3d 585, 596 (9th Cir. 2017).

## ARGUMENT

### A. Defendant Fails to Establish That His Appeal Is Not for Purposes of Delay

Defendant's motion for bail pending appeal fails at inception because he makes no argument whatsoever to establish that his appeal is not for purposes of delay.  Bail pending appeal requires proof that,

4

(7 of 311)

Case 2:16-cr-00066-PA, Document 478-2, Filed 08/28/17, Page 8 of 30 Page ID
Case: 17-50192, 08/10/2017, ID: 10540718, DktEntry: 9-1, Page 7 of 25
#:14369

*inter alia,* "the appeal is not for the purpose of delay and raises a substantial question" warranting relief. 18 U.S.C. § 3143(b)(1)(B). As the district court explained, those two requirements are separate, and defendant bears the burden of proving both. (GEX 2, 8 (citing *Handy*, 761 F.2d at 1283).)

The district court found that defendant had "not met his burden to prove by a preponderance of the evidence that his appeal is not for purposes of delay." (GEX 8.) In fact, defendant had "not even addressed this element." (*Id.*) Sharing the government's concern that "[d]efendant's Alzheimer's disease could worsen during any period of delay and complicate or prevent re-sentencing or further proceedings," the district court concluded that defendant's failure to demonstrate the absence of a dilatory purpose was, "on its own, a sufficient and independent basis to deny" his motion. (*Id.*)

On appeal, defendant has again ignored the requirement that he establish that his appeal is not for purposes of delay. He therefore does not qualify for bail pending appeal, and his motion must be denied on that basis alone. *See Handy*, 761 F.2d at 1283. Moreover, even if the

5

failure to demonstrate the absence of a dilatory purpose might ever be
excused, defendant's decision not to contest a finding that the district
court expressly articulated as a "sufficient and independent basis" for
its decision (GEX 8) waives any challenge to that ruling. *See United
States v. Perez-Silvan*, 861 F.3d 935, 938 (9th Cir. 2017).

## B. Defendant Fails to Establish a Substantial Question Likely to Result in Reversal

Defendant's motion should also be rejected on the independent
basis that he has not identified a substantial question on the merits. 18
U.S.C. § 3143(b)(1)(B). "[A] 'substantial question' is one that is 'fairly
debatable' or 'fairly doubtful.'" *Handy*, 761 F.2d at 1283 (citations
omitted). It is not enough for defendant to show merely an "absence of
frivolity." *Id.* at 1281-82.

A defendant must raise purported substantial questions before the
district court in the first instance. The appellate rules authorize
"*review* of a district-court order regarding release after a judgment of
conviction," Fed. R. App. P. 9(b) (emphasis added), and the advisory
committee notes confirm "that the initial determination of whether a
convicted defendant is to be released pending the appeal is to be made

6

by the district court," Fed. R. App. P. 9(b), comm. note (1967); *see also United States v. Wheeler*, 795 F.2d 839, 841 (9th Cir. 1986) (a defendant may "*renew* a bail motion in the court of appeals" (emphasis added)).

A defendant who attempts to raise substantial questions before this Court without presenting them below deprives the district court of the opportunity to "undertake a task specifically designated to [it]," *United States v. Swanquist*, 125 F.3d 573, 575 (7th Cir. 1997), and undermines this Court's ability to "effectively and efficiently review a bail motion decision," *Wheeler*, 795 F.2d at 840-41. Accordingly, this Court should adhere to its ordinary rule prohibiting review of issues raised for the first time on appeal. *Gila Valley*, 859 F.3d at 800; *Brugnara*, 856 F.3d at 1211. At most, alleged substantial questions not raised below are reviewable for plain error only. *Liew*, 856 F.3d at 596.

Three of the five purported substantial questions defendant sets forth in his brief were not even mentioned in his motion to the district court. Specifically, defendant did not make any argument below regarding (1) the use of an anonymous jury, (2) the jury instruction that sentencing decisions are made by the court, or (3) the jury instruction

that local law enforcement officers have no authority to direct federal

investigations.  (*See* Mot. 3-20.)  Those issues should therefore be

deemed waived, or, if reviewable, subject to plain error analysis.

     1.    <u>The District Court Did Not Plainly Err By Empaneling An
Anonymous Jury</u>

The district court did not err, let alone plainly, by empaneling an

anonymous jury.  "[A] lower court's decision to empanel an anonymous

jury is entitled to deference" and permissible so long as "(1) there is a

strong reason for concluding that it is necessary to enable the jury to

perform its factfinding function, or to ensure juror protection; and

(2) reasonable safeguards are adopted by the trial court to minimize any

risk of infringement upon the fundamental rights of the accused."

*United States v. Shyrock*, 342 F.3d 948, 971 (9th Cir. 2003).  "The fact

that the district court sua sponte empaneled an anonymous jury does

not change the analysis."  *Id.*

In determining that jury protection warrants an anonymous jury,

"the district court should make its decision based on the totality of the

circumstances."  *Id.*  Factors that courts may consider include:

8

(11 of 311)

Case 2:16-cr-00066-PA   Document 478-2   Filed 03/28/17   Page 12 of 30   Page ID
Case: 17-50192, 08/10/2017, ID: 10540748, DktEntry: 9-1, Page 11 of 25
#:14373

> (1) the defendants' involvement with organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that the defendants will suffer a lengthy incarceration if convicted; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment.

*Id.* The list is "neither exclusive nor dispositive." *Id.*

The district court found that all of the *Shyrock* factors, and others, supported empaneling an anonymous jury. (GEX 22-23.) Defendant was "alleged to have engaged in an organized criminal conspiracy in which defendant had the ultimate power and decision-making authority"; "defendant [was] extremely likely to have present connections to law-enforcement officers with the ability to access jurors' private information"; in two prior, related trials, jurors had articulated safety concerns based on co-conspirators' ability to access private juror information[4]; defendant was "alleged to have interfered with the judicial process and witnesses by hiding a federal informant, disobeying

---

[4] Defendant suggests that only two prior *jurors* expressed fear (Mot. 4), but the finding was that fears were expressed at two prior *trials* (GEX 22). The court did not specify how many jurors raised concerns at each trial.

a federal writ for testimony, tampering with witnesses, and intimidating federal officers"; if convicted, defendant would be exposed to "a lengthy period of incarceration"; and defendant's case had "already attracted publicity" and was likely to be closely followed by the media, which enhanced the risk of juror "intimidation and harassment." (*Id.*) The court also found that the anonymous jury would protect the defendant and the integrity of the judicial process and "ensure that the jurors [were] not exposed to the litigation history of the case." (*Id.*)

Defendant does not argue that the court's findings were clearly erroneous, nor could he. Defendant oversaw the entire LASD when he was sheriff, and the district court's finding that he likely maintained connections to officers with access to jurors' private information was eminently reasonable. The district court also correctly found that the case had already drawn significant media attention and would continue to be widely covered. Defendant's claim that there were no incidents of juror harassment in the trials of his subordinates (Mot. 5) does not undermine the court's determination that the increased attention to the trial of the man at the very top would enhance "the *possibility*" of juror

10

harassment and intimidation. *Shyrock*, 342 F.3d at 971 (emphasis added). The fact that a "name and address open countless avenues of . . . investigation," *Smith v. Illinois*, 390 U.S. 129, 131 (1968), exacerbated the risk that jurors could be tracked down and harassed. In *Smith*, the Sixth Amendment right to confrontation entitled the defendant to the name and address of a *government witness* for cross-examination purposes. 390 U.S. at 130-31. No such concern applies to *jurors*; an anonymous jury was used to safeguard *against* jurors being investigated like adverse witnesses.

Although defendant claims that the felonies for which he was prosecuted were six years old and non-violent, those assertions do not contradict the district court's determinations that defendant was charged with (and ultimately convicted of) abusing his power to obstruct a federal investigation and intimidate an FBI agent. Those were not, as defendant asserts, "lower level felonies." (Mot. 5.) Rather, as the district court explained at sentencing, defendant acted as if he were above the law, and his crimes were "a gross abuse of public trust" that "undermined public confidences in law enforcement generally." (GEX

11

(14 of 311)

Case 2:16-cr-00066-PA    Document 478-2    Filed 08/28/17    Page 15 of 30    Page ID
Case: 17-50192, 08/10/2017, ID: 10540746, DktEntry: 9-1, Page 14 of 25
#:14376

19, 21); *see also Foley v. Connelie*, 435 U.S. 291, 299 (1978) ("Clearly the exercise of police authority calls for a very high degree of judgment and discretion, the abuse or misuse of which can have serious impact on individuals."); *United States v. Castro-Ponce*, 770 F.3d 819, 823 (9th Cir. 2014) ("Obstruction of justice is a serious charge . . . ."). In short, because the district court's factual findings were not illogical, implausible, or unsupported by the record, *see Hinkson*, 585 F.3d at 1251, the anonymous jury was justified, *see Shyrock*, 342 F.3d at 971.

Moreover, because his anonymous jury argument is premised on a Fifth Circuit case, *United States v. Sanchez*, 74 F.3d 562 (5th Cir. 1996), defendant cannot establish plain error. *See Liew*, 856 F.3d at 599 (no plain error absent "clear or controlling authority"). And, in any event, *Sanchez* is distinguishable. In that case, the defendant was a "renegade policeman" who acted alone; there was no organized conspiracy. 74 F.3d at 563, 565. There was also "no evidence that [the defendant] had attempted to interfere with the judicial process or witnesses," and "there was no indication that jurors in th[e] case would be subjected to the type of extensive publicity that might bring about intimidation and

12

(15 of 311)

Case 2:16-cr-00066-PA   Document 478-2   Filed 03/28/17   Page 16 of 30   Page ID
Case: 17-50192, 08/10/2017, ID: 10540768, DktEntry: 9-1, Page 15 of 25
#:14377

harassment." *Id.* Defendant here was the sheriff at the top of an

organized conspiracy that interfered with the judicial process by

disregarding a federal writ and obstructing a grand jury investigation,

and this case attracted substantial publicity. The use of an anonymous

jury was permissible.[5]

    2. <u>The District Court Did Not Abuse Its Discretion By Excluding Irrelevant, Misleading Evidence</u>

       a. *Defendant's Expert Was Properly Excluded*

The district court did not abuse its discretion by excluding

defendant's proposed medical expert. Although that expert was

proffered to testify that defendant *might* have had "mild cognitive

impairment" associated with Alzheimer's disease that *might* have

"affected his answers" when he lied to the government in April 2013,

---

[5] Even if there were any error, it was harmless in light of the substantial evidence of guilt. The law does not support defendant's claim that an error in empaneling an anonymous jury is structural (Mot. 5). *See United States v. White*, 698 F.3d 1005, 1017 (7th Cir. 2012) ("[E]ven if the district court erred in empanelling an anonymous jury, such error was harmless."); *Shyrock*, 342 F.3d at 971 (citing case in which empaneling an anonymous jury was deemed harmless error). Defendant claims that the purported error was harmful because the first jury deadlocked 11-1 in favor of acquittal (Mot. 6), but that jury was also anonymous, confirming that the anonymous jury did not affect the outcome.

13

nothing in defendant's medical records indicated that he was suffering any memory loss in 2013, and no such symptoms were diagnosed until May 2014. (GEX 193, 305, 309.) Moreover, the expert never examined defendant, nor did he interview persons closest to defendant, who reported no issues with defendant's cognitive function during the relevant time period. (GEX 289, 309, 315, 321, 322.)

The district court rightly rejected the expert's proposed testimony not because he could not "state conclusively that defendant lacked the requisite mens rea"—the problem in *United States v. Rahm*, 993 F.2d 1405, 1410, 1412 (1993)—but because the expert's testimony failed to meet *any* of the requirements for admission under Federal Rule of Evidence 702. (GEX 6, 136.) Here, unlike in *Rahm*, the district court assessed the proffered expert testimony, including the expert's opinions and the foundation for his testimony, and determined that the expert's methodology was unreliable, his conclusions would be unhelpful, and his opinions were vague and undefined. (*Id.*)

The district court also correctly excluded the testimony under Rule 403, finding that its low probative value was "substantially

14

(17 of 311)

Case 2:16-cr-00066-PA, Document 478-2, Filed 03/28/17, Page 18 of 30 Page ID
Case: 17-50192, 08/10/2017, ID: 10540746, DktEntry: 9-1, Page 17 of 25
#:14379

outweighed by the dangers of unfair prejudice, including the sympathy
the evidence might create for the defendant, confusion of the issues,
misleading the jury, and waste of time." (*Id.*) Defendant was
prosecuted not for failing to recall the answers to certain government
questions but for giving affirmative answers that were materially false.
As this Court held in *United States v. Scholl*, 166 F.3d 964 (9th Cir.
1999), a defendant's proposed expert testimony is irrelevant and
properly excluded absent a "fit" between the testimony and an element
of the crime charged. *Id.* at 971. Because testimony that defendant
might have suffered from memory *loss* would not in any way negate the
charge that his explicit *recollections* were untrue, the requisite fit could
not be established.

   b. *Defendant's Other Acts Were Properly Excluded*

The district court did not abuse its discretion in excluding
defendant's so-called "rebuttal" evidence regarding his purported good
acts as irrelevant under Rule 401, inadmissible under Rule 404, and
unfairly prejudicial and misleading under Rule 403. Although
defendant contends that the evidence rebutted the government's motive
theory, he cites only to the prosecutor's closing argument (Mot. 9),

15

which, of course, could not have "opened the door" to evidence defendant had already introduced.

Moreover, defendant mischaracterizes the government's motive theory. The government did not argue that he obstructed the federal investigation to prevent exposure of inmate abuse; rather, as defendant recognized before trial, the government's "theory of intent and motivation" was that defendant believed "the 'police should police themselves'" (GEX 149) and federal authorities should stay out of "*his* department, *his* jails" (Mot. 9 (emphasis added)). As the district court reasoned, defendant's cooperation with a prior federal civil investigation in which he was invited to participate had "little, if any relevance to rebut the government's theory that defendant viewed an undercover federal investigation as a personal affront and threat to his authority and his control of the sheriff's department." (GEX 142.) Likewise, defendant's assistance in establishing an Office of Independent Review within LASD—which was not "in fact 'independent'" at all—actually supported the government's theory that LASD wanted to police itself. (GEX 4.) Evidence of LASD's alleged responses to excessive force in the

16

(19 of 311)

Case 2:16-cr-00066-PA   Document 478-2   Filed 03/28/17   Page 20 of 30   Page ID
Case: 17-50192, 08/10/2017, ID: 10540743, DktEntry: 9-1, Page 19 of 25
#:14381

jails, including measures taken after the conspiracy, also did not rebut

the proposition that LASD wanted to police itself. (*See* GEX 4, 141-43.)

Because evidence of defendant's other acts was not actually offered in

rebuttal, as in *United States v. Whitman*, 771 F.2d 1348, 1351 (9th Cir.

1985), but was instead intended to paint defendant as a reformer and a

man of good character, and "was marginally relevant, at best," the

district court rightly excluded it. *See United States v. Rubio-Topete*, 999

F.2d 1334, 1339-40 (9th Cir. 1993).

3.     The District Court Did Not Plainly Err By Instructing That
       Sentencing Decisions Are Made By the Court

The district court did not err, let alone plainly, by instructing the

jury that "the punishment to be imposed for any crime is exclusively for

the Court to decide." (GEX 39.) That instruction correctly stated the

law, as its basic premise was derived from Ninth Circuit Model

Instruction 7.4, which admonishes the jury not to consider punishment

because "[t]he punishment provided by law for this crime is for the

court to decide." *See also United States v. Steel*, 759 F.2d 706, 711 (9th

Cir. 1985) (jury instructed that "[t]he punishment provided by law . . . is

a matter exclusively within the province of the court"). The instruction

17

also correctly advised that the court evaluates multiple factors in sentencing and is not required to impose a sentence the government recommends. *See* 18 U.S.C. § 3553(a) (factors to be considered at sentencing); *United States v. Brown*, 771 F.3d 1149, 1156 (9th Cir. 2014) (affirming sentence where court considered § 3553(a) factors and rejected government's sentencing recommendation).

Defendant's claim that the instruction was impermissible disregards the rule that "[a] trial court has substantial discretion in formulating jury instructions," *United States v. Padilla*, 639 F.3d 892, 898 (9th Cir. 2011)—discretion that includes determining "[t]he necessity, extent and character of additional jury instructions," *United States v. Hayes*, 794 F.2d 1348, 1353 (9th Cir. 1986). A district court does not abuse its discretion by giving a jury instruction to correct a misleading impression that might result from a defendant's arguments at trial. *United States v. Muse*, 83 F.3d 672, 676-77 (4th Cir. 1996) (after defense counsel argued that witnesses who might have been criminally charged had been given a "free ride," district court

18

appropriately instructed jury not to consider the "lack of punishment as to others" in determining guilt).

Here, the instruction defendant disputes was given to correct the misleading impression that defendant created when he cross-examined government witnesses about their maximum possible sentences and insinuated that by entering into plea agreements that dismissed multiple counts of the same offenses, the government had given witnesses windfall benefits. (*See, e.g.*, GEX 75-82, 91-102.) The contested instruction was appropriate to correct the misconception that witnesses had avoided decades of imprisonment and millions of dollars in fines. *See Muse*, 83 F.3d at 676-77.

Although defendant contends that the instruction undermined the principle that cooperating witness testimony should ordinarily be viewed "with greater caution," (Mot. 11), the cooperating witness instruction defendant cites was given in its entirety (GEX 37), and the instruction defendant disputes reiterated that the jury "*should consider*" sentencing exposure and recommendations in evaluating the testimony of cooperating witnesses (GEX 39 (emphasis added)). In

19

*United States v. Ramirez,* 714 F.3d 1134 (9th Cir. 2013), this Court held

that it was error to give an instruction that "put off-limits" an "entirely

reasonable and permissible" inference that the jury could have inferred

from the government's failure to call a key cooperator to the stand. *Id.*

at 1138-39. No inferences were precluded here; on the contrary, the

instructions exhorted the jury to draw inferences based on the

sentencing exposure and possible benefits that cooperating witnesses

might have received. Furthermore, although defendant states that the

instructional error in *Ramirez* resulted in reversal (Mot. 11), this Court

actually held that the error there was harmless given the "substantial

evidence" of the defendant's guilt. 714 F.3d at 1139. Here, by the same

token, even if there were any error, it was neither plain nor prejudicial

in light of the record as a whole.

4.  The District Court Did Not Plainly Err By Instructing That State Officers Do Not Direct Federal Agents

The district court also did not err, plainly or otherwise, by

instructing that local law enforcement departments have no "authority

to direct or control federal investigations" and federal investigators are

"entitled to choose their own tactics and strategies" and "make their

20

own decisions regarding whether to inform others, including targets, that an investigation is underway." (GEX 40.)  Contrary to defendant's suggestion, the power of federal agents to conduct undercover investigations of local law enforcement agencies suspected of violating federal law is deeply rooted.  *See* U.S. Const. art. VI, cl. 2 (Supremacy Clause); *Jacobson v. United States*, 503 U.S. 540, 548 (1992) ("[T]here can be no dispute that the Government may use undercover agents to enforce the law.").

Defendant's claim that the FBI, operating as an arm of the grand jury, might be required to inform local law enforcement officers that they are under investigation would offend the bedrock principles of federalism and undermine the federal government's ability to enforce federal law.  *United States v. Murphy*, 768 F.2d 1518 (7th Cir. 1985), which defendant cites, firmly supports the government's position.  In that case, FBI agents took the stand in state court and lied about made-up cases to root out corruption by state judges.  *Id.* at 1528.  The Seventh Circuit explained that the FBI's undercover operation, like "any 'sting' operation," was not itself a crime.  *Id.*  Moreover, the

21

(24 of 311)

Case 2:16-cr-00066-PA   Document 478-2   Filed 08/28/17   Page 25 of 30   Page ID
Case: 17-50192, 08/10/2017, ID: 10540748, DktEntry: 9-1, Page 24 of 25 Page ID
#:14386

Seventh Circuit reasoned, although the FBI notified certain state officials who were not suspected of complicity in the corruption scheme, "[s]uch notice may not be necessary, and *certainly a criminal defendant is in no position to complain of the absence of such notice.*" *Id.* at 1529 (emphasis added). Defendant had no right to receive notice that he and his department were under investigation, and, even if defendant were right that the law is not firmly settled on that score, that would mean that the alleged error was not plain, *see Liew*, 856 F.3d at 599.[6]

Any alleged error in the instruction was also harmless. *Smith* held that defendant's co-conspirators "were not prejudiced by any error" in an instruction that "if [the inmate informant] possessed any contraband including a cellular phone at the direction of the FBI, such

---

[6] Defendant also argues that the instruction undermined his "defense that he intended to conduct a legitimate investigation into whether the FBI operation violated state law" (Mot. 15), but the instruction expressly endorsed that defense, confirming that local officers have "the authority to investigate potential violations of state law by federal agents" (GEX 41). The instruction advised only that such authority may not be misused "for the purpose of obstructing justice." (*Id.*) Defendant's related argument regarding the mixed motive instruction (Mot. 16-17) is squarely foreclosed by *Smith*, 831 F.3d at 1217-19.

possession or introduction of contraband would be authorized and no
violation of [state law] would have occurred." 831 F.3d at 1221. This
Court reasoned that because the jury was also instructed regarding the
co-conspirators' "authority to investigate, any error in the instruction
regarding whether or not federal agents actually violated California law
was undoubtedly harmless." *Id.* The same is true here.

5. The Evidence Was Sufficient to Support Defendant's
   Conviction For Lying to the Government

"There is sufficient evidence to support a conviction if, viewing the
evidence in the light most favorable to the prosecution, any rational
trier of fact could have found the essential elements of the crime beyond
a reasonable doubt." *United States v. Ubaldo*, 859 F.3d 690, 699 (9th
Cir. 2017). The evidence here was amply sufficient to support
defendant's conviction for making material false statements to the
executive branch in violation of 18 U.S.C. § 1001. The evidence
established that, in a 2013 interview with the FBI and United States
Attorney's Office ("USAO"), defendant made four materially false
statements, claiming untruthfully that (1) he was unaware of the
federal investigation on the very day he held a meeting to discuss it,

23

(26 of 311)

Case 2:16-cr-00066-PA   Document 478-2   Filed 03/28/17   Page 27 of 30   Page ID
Case: 17-50192, 08/10/2017, ID: 10540718, DktEntry: 9-1, Page 26 of 25
#:14388

(2) he was not involved in a conversation about hiding an inmate

informant from the FBI, (3) he did not know on the day he was told that

an FBI interview of the informant was terminated by LASD, and (4) he

did not know in advance that LASD officers were planning to approach

an FBI agent and threaten to arrest her.  (Exhibits 2.8, 2.11, 2.16, 2.18.)

Defendant makes three sufficiency arguments.  Because the first

two were not raised in defendant's bail motion below, they are reviewed

for plain error.  *See United States v. Yijun Zhou*, 838 F.3d 1007, 1010

(9th Cir. 2016).

First, the fact that the FBI "acted as an arm of the grand jury,"

*United States v. Aguilar*, 515 U.S. 593, 600 (1995) by issuing subpoenas

and procuring witnesses to testify as part of a grand jury investigation

does not alter the fact that the FBI is part of the executive branch.

Section 1001 "clearly encompasses criminal investigations conducted by

the FBI," *United States v. Rodgers*, 466 U.S. 475, 477 (1984), and

nothing precludes the FBI from occupying dual roles, functioning both

as an arm of the grand jury and as an executive branch entity when

investigating federal crimes. In addition, defendant's false statements were also directed to the USAO—another executive branch department.

Second, defendant's statement to the FBI and USAO that he was unaware that anyone within LASD was going to threaten to charge and arrest an FBI agent until after the threat occurred was not, as he now claims, "literally true." (Mot. 18-19 (citing *Bronston v. United States*, 409 U.S. 352, 358-59 (1973)).) Defendant knew in advance that officers were planning to approach the agent; he was "okay with" the plan and advised his subordinates only that they "not put handcuffs on her." (GEX 86; Exhibit 100.) In any event, even if that evidence were factually insufficient to establish defendant's advance knowledge of the threat, it would not invalidate the jury's false statements verdict, because where only one possible basis of conviction is "unsupported by sufficient evidence," a general verdict must be upheld. *Griffin v. United States*, 502 U.S. 46, 56-60 (1991).[7]

---

[7] The error defendant alleges is also not plain because this Court has not held that the *Bronston* literal truth standard applies under § 1001.

25

Third, defendant's false statements to the FBI were "material." *See United States v. King*, 735 F.3d 1098, 1107-08 (9th Cir. 2013). Although defendant argues that no witness testified that the misstatements were "capable of influencing the relevant decision-making body" (Mot. at 20), the law does not require witnesses to mechanically recite the legal standard. One FBI agent testified that defendant's 2013 interview was part of the FBI's obstruction investigation and that, although defendant was not a target of the investigation at the time, that was subject to change if new information came to light. (GEX 7-8, 135.) Another agent testified that the FBI wanted to speak with defendant because he had information potentially relevant to the FBI's investigation. (GEX 8, 107, 109-10.) Given that defendant's lies were intended to minimize or deny his involvement in LASD's obstruction, a rational trier of fact could have found that the lies were capable of influencing the FBI's decision-making, including whether to further investigate or to recommend charges against defendant.

## CONCLUSION

For the foregoing reasons, this Court should affirm the denial of defendant's motion for bail pending appeal.