NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
Assistant United States Attorney
Acting Deputy Chief, General Crimes Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4849
     Facsimile: (213) 894-6269
     E-mail:    eddie.jauregui@usdoj.gov

Attorneys for Respondent
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| LEROY BACA, | Nos. CV 20-1167-PA |
| | CR 16-66(A)-PA |
| Petitioner, | |
| | GOVERNMENT'S OPPOSITION TO |
| v. | DEFENDANT'S EX PARTE APPLICATION |
| | FOR BAIL PENDING 2255 PROCEEDINGS; |
| UNITED STATES OF AMERICA, | DECLARATION OF EDDIE A. JAUREGUI |
| Respondent. | |

     Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Brandon D. Fox and

Eddie A. Jauregui, hereby files its opposition to defendant's Ex

Parte Application for Bail Pending Section 2255 Proceedings (Dkt.

499).

//

//

//

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 1, 2020                    Respectfully submitted,

                                        NICOLA T. HANNA
                                        United States Attorney

                                        BRANDON D. FOX
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                               /s/
                                        BRANDON D. FOX
                                        EDDIE A. JAUREGUI
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**I.    INTRODUCTION**

Defendant Leroy Baca began a three-year term of imprisonment just eight weeks ago, after being released on bond for nearly three years pending appeal of his convictions.  Not two months into his custodial term, defendant filed a motion seeking release from custody pending resolution of a habeas petition filed with this Court the day after his surrender.  (Dkt. Nos. 492, 496.)[1]  Defendant's motion for release should be denied.  First, no rule or statute authorizes release from custody while a defendant's habeas petition is pending before the district court, and the Ninth Circuit has not recognized such authority.  Second, even if such release is authorized, defendant fails to demonstrate that his is an "extraordinary" or "exceptional" case involving "special circumstances" and that he is likely to succeed on the merits of his habeas petition.  Indeed, the opposite is true – defendant has set forth no evidence indicating that his case is "extraordinary," or even "special," and, given the lack of any controlling case law supporting his habeas petition, his petition is extremely likely to fail.

**II.    STATEMENT OF FACTS**

This Court, having presided over five trials relating to the conspiracy with which defendant was charged and convicted, and having sentenced over 10 defendants in those trials, is deeply familiar with the facts of this case.  In sum and substance, defendant, the former Sheriff of Los Angeles County, obstructed a federal civil rights

---

[1] The motion was stricken for failure to meet the requirements of the Local Rules.  The motion was re-filed as an ex parte application on March 26, 2020. (Dkt. 499.)

investigation into the County jails and lied to FBI agents and prosecutors about his obstruction.  All along, defendant refused to accept responsibility for his conduct and his role in "shield[ing] dirty deputies from the consequences of their crimes."  (Tr. of Sentencing Hr'g, May 12, 2017, Dkt. 402, at 48.)  In May, 2017, this Court sentenced defendant to a term of 36 months' imprisonment.  (See Dkt. 402.)  In making its sentencing determination, the Court cited defendant's "gross abuse of the public trust," "blind obedience to a corrupt culture," and betrayal of the "core values" defendant espoused.  (Id. at 48, 50.)

Defendant appealed his convictions to the Ninth Circuit and sought bail pending appeal from this Court and the Court of Appeals. Defendant was granted release pending appeal.  (Dkt. 485.)  After affirming his convictions, the Ninth Circuit granted defendant's motion to remain on bond pending the filing and resolution of his petition for a writ of certiorari to the United States Supreme Court. (Dkt. 488.)  On January 13, 2020, the Supreme Court denied defendant's petition. (Dkt. 490-1.)

On January 15, 2020, defendant was ordered to surrender to the custody of the Bureau of Prisons within 21 days.  Defendant surrendered to FCI La Tuna in Anthony, Texas on February 4, 2020, where he has been in custody in a minimum security satellite camp. The very next day, defendant filed his petition for habeas corpus. (Dkt. 492.)

Defendant contemplated a motion for bail pending habeas review as early as February 19, 2020, when his counsel sought the government's position on such a motion, citing as bases defendant's Alzheimer's disease and that "his custodial status may terminate

2

before resolution of the petition."  (See Decl. of Eddie A. Jauregui, ¶ 2.)

On March 23, 2020, defendant filed the instant motion for bail. In that motion, defendant argued, in a cursory and perfunctory fashion, that although he had not yet served two months of his prison sentence, he should be released from custody pending resolution of his § 2255 petition because (1) his age and Alzheimer's diagnosis make him "particularly vulnerable" to COVID-19, the respiratory illness caused by the corona virus, and (2) he is likely to succeed on the merits of his habeas petition.  (See Dkt. 499 at 2.) Defendant also claimed, without any explanation or support, that it was possible he could complete the custodial portion of his three-year sentence before resolution of his habeas petition.  (Id.)

**III. ARGUMENT**

**A.    Defendant's Motion Should Be Denied Because No Statute or Rule Permits a Defendant to Be Released on Bail Pending Habeas Review by a District Court**

No statute or rule permits the release of a habeas petitioner while his habeas petition is pending before the district court. Although defendant contends that there is "abundant" authority recognizing an "inherent power" of district courts to grant bail pending the resolution of habeas proceedings, he fails to note that no Ninth Circuit decision has ever recognized such authority.  See United States v. McCandless, 841 F.3d 819, 822 (9th Cir. 2016)("We have not yet decided whether district courts have the authority to grant bail pending resolution of a habeas petition, and we need not resolve that question today.").  Whether such authority exists is therefore unsettled.  See In re Roe, 257 F.3d 1077, 1080 (9th Cir. 2001) (per curiam) ("[W]hether the federal courts have inherent power

to grant bail in any case where they may properly assert jurisdiction . . . . has divided the federal courts for over a century." (quoting Mapp v. Reno, 241 F.3d 221, 224-25 (2d Cir. 2001))).

This Court should reject defendant's contention that an inherent bail power exists on habeas review. The Supreme Court has recognized that habeas procedures are ordinarily controlled by statute, see Miller-El v. Cockrell, 537 U.S. 322, 326 (2003), and that the United States Code governs habeas applications, Brown v. Allen, 344 U.S. 443, 460-61 (1953). Congress has unambiguously and narrowly restricted the scope of habeas relief by setting strict standards for judicial review of habeas petitions. See Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214. Thus, not only does a purported inherent authority to award bail pending habeas review lack the necessary statutory underpinning, but appears to be inconsistent with Congressional intent.[2] Under the circumstances, no such "inherent power" should be recognized or invoked. Cf. Carlisle v. United States, 517 U.S. 416, 425-26 (1996) (cautioning courts not to invoke "inherent power" "to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure").

**B.    Defendant's Motion Should Be Denied Because He Has Failed to Demonstrate Extraordinary Circumstances and a High Probability of Success on the Merits of His Habeas Petition**

Assuming any inherent authority to grant bail pending habeas

---

[2] The Federal Rules of Appellate Procedure expressly authorize courts to award bail pending appellate review of habeas petitions. Fed. R. App. 23(b); see also In re Roe, 257 F.3d at 1080 n.2 ("Rule 23 . . . does not appear to contemplate release on bail pending an initial decision in district court."). When, as here, a statute or rule reveals that Congress "well knows how to" accomplish a certain objective, it should ordinarily be assumed not to have accomplished that objective silently. See Mathis v. United States, 136 S. Ct. 2243, 2252 (2016).

4

review exists, such a power should "be exercised very sparingly." Cherek v. United States, 767 F.2d 335, 337 (7th Cir. 1985) (emphasis added). "The reasons for parsimonious exercise of the power should be obvious." Id. By the time direct appellate procedures have been exhausted and a defendant is still in custody, he "is unlikely to have been convicted unjustly." Id. Accordingly, any authority to release a habeas petitioner prior to resolution of his petition should be utilized only in cases involving both (1) "extraordinary or exceptional circumstances" and (2) "a high probability of success" on the merits of the petition. See Landano v. Rafferty, 970 F.2d 1230, 1239 (3d Cir. 1992); but see Land v. Deeds, 878 F.2d 318, 318 (9th Cir. 1989) (per curiam) ("Bail pending a decision in a habeas case is reserved for extraordinary cases involving special circumstances or a high probability of success."); see also Hall v. Superior Court, No. C 09-5299 PJH, 2010 WL 890044, at *2-3 (N.D. Cal. Mar. 8, 2010) (reasoning, based on Supreme Court and Ninth Circuit cases, and decisions of "majority of circuit courts," that test should be framed in the conjunctive); Williams v. United States, CIV. NO. 16-00158 SOM-RLP, 2016 WL 8731777, at *4 (D. Hawaii, Sept. 30, 2016) (analyzing standard and noting that "[t]he dual requirements have a clear basis in logic").

Here, defendant cannot demonstrate extraordinary circumstances or a high probability of success, let alone both. In attempting to show extraordinary circumstances, defendant relies chiefly on his age, Alzheimer's diagnosis, and status as a non-violent and first-time felon to argue that he should be released from custody because the nation is "in the midst of the COVID-19 pandemic." (Def. Br. at 2.) He asserts that given his age and medical condition, he is

5

"particularly vulnerable" to the virus, but makes no showing (or even attempt to show) that he is more vulnerable in custody in his remote, minimum security, low-population camp than in the general population. Indeed, defendant makes no reference at all to FCI La Tuna or claim that any inmate or staff member there has been exposed or diagnosed with coronavirus.  According to the Bureau of Prisons, none has.[3]

Moreover, as other courts in this district have recognized, the Federal Bureau of Prisons ("BOP") has moved aggressively to contain the spread of the virus within its facilities.  (See Order Denying Defendant's Ex Parte Motion for Early Release Due to COVID-19, Dkt. No. 329, United States v. Shah, SA CR No. 10-00070-CJC (noting BOP's swift and comprehensive response to the pandemic based on guidance from CDC and the World Health Organization)).  On March 31, 2020, the Director of the Bureau of Prisons ordered the implementation of Phase 5 of its COVID-19 Action Plan, effective today, April 1, 2020.[4] Among other measures, the BOP announced that it would begin taking the following actions immediately to further mitigate the exposure and spread of COVID-19:

- For a 14-day period, inmates in every institution will be secured in their assigned cells/quarters to decrease the spread

---

[3] See Federal Bureau of Prisons COVID-19 webpage located at https://www.bop.gov/coronavirus/index.jsp (last visited April 1, 2020, at 12:45 p.m.).  The webpage shows that, as of the date of this filing, there are 57 inmates and 37 BOP staff members nationwide who have tested positive for COVID-19.  None are located at FCI La Tuna.

[4] BOP's efforts as part of Phases 1-4 are described on BOP's COVID-19 Action Plan webpage, located at https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last visited April 1, 2020, at 10:50 a.m.).  These efforts are not specific to FCI La Tuna but rather reflect BOP's efforts nationally.

of the virus.[5]

- During the 14-day period, to the extent practicable, inmates should still have access to programs and services that are offered under normal operating procedures, such as mental health treatment and education.

- BOP will work with the United States Marshals Service to significantly decrease incoming movement during this time.

- Limited group gathering will be afforded to the extent practical to facilitate commissary, laundry, showers, telephone, and Trust Fund Limited Inmate Computer System (TRULINCS) access.

See BOP COVID-19 Action Plan Phase V, available at https://www.bop. gov/ resources/news/20200331_covid19_action_plan_5.jsp.  Defendant fails to show that he would be safer returning to Los Angeles County, which has more than 3,500 confirmed cases of coronavirus and 65 deaths resulting from COVID-19 as of March 31, 2020.  See Novel Coronavirus in Los Angeles County, County of Los Angeles Public Health (available at http://publichealth.lacounty.gov/media/Coronavirus) (last visited April 1, 2020 at 4:33 pm).

Likewise, defendant has failed to show how his age or medical condition constitute extraordinary circumstances meriting release from custody post-conviction and post-appeal.  Defendant was sentenced less than three years ago, when he was already advanced in age and, according to his sentencing papers, experiencing "mild dementia."  (See Def.'s Sentencing Br. at 1, 19.)  Indeed, these were mitigating factors the Court considered in sentencing defendant to

---

[5] FCI La Tuna suspended all visitation at the facility on or about March 14, 2020.  (Jauregui Decl. ¶ 3.)

less time in prison than some lower-ranking defendants involved in the crime. Defendant has presented no new information indicating that his health condition has worsened or that his Alzheimer's diagnosis increases the risk for COVID-19, a respiratory illness. It does not. The Court previously noted that an Alzheimer's diagnosis should not be a "get out of jail" free card and that should remain true today. Cf. Salerno v. United States, 878 F.2d 317, 317 (9th Cir. 1989) (noting that special circumstances may include "a serious deterioration of health while incarcerated, and unusual delay in the appeal process.").

Finally, there is no basis supporting defendant's claim that he could be released from custody before the resolution of his single-issue § 2255 motion. Defendant is only eight weeks into a three-year sentence and, even with good-time credits, he likely will be in custody for a significant period of time. There is no reason to believe this Court would take an unusually long time to resolve defendant's straight-forward 2255 motion, which raises only one issue within a span of eight pages. (Id.)

Defendant has also failed to demonstrate a high probability of success on the merits of his habeas petition. As noted in the government's brief opposing his 2255 petition, defendant fails to cite a single case holding that a district court's decision to withhold juror names from attorneys, after making the necessary findings required under the law, violates a defendant's Sixth Amendment right to a public trial, because it does not. (See Dkt. 495 at 10-11.)[6] As this Court has previously noted, empanelment of

---

[6] The government incorporates by reference here its arguments in the government's brief opposing defendant's § 2255 petition.

8

anonymous juries in this District is not uncommon—indeed, they may be necessary to protect the jury and the integrity of justice system—and the Ninth Circuit has set forth factors that courts should consider in deciding in making that determination, factors that are different from those wished for by defendant. See United States v. Shryock, 342 F.3d 948, 971 (9th Cir. 2003). In Shryock itself, the district court withheld juror names, addresses, and places of employment from attorneys (and made that decision sua sponte) and the Ninth Circuit found no abuse of discretion in that case. Id., 342 F.3d at 972-73. The same was true here. United States v. Baca, 761 F. App'x 724, 727 (9th Cir. 2019).

Given the dearth of case law supporting defendant's position, the case law supporting the district court's decision to empanel an anonymous jury, and the procedural default questions raised in the government's papers, it cannot be said that defendant has a "high probability of success" on his § 2255 motion.

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's ex parte application for release pending resolution of his § 2255 petition.

9

**DECLARATION OF EDDIE A. JAUREGUI**

I, Eddie A. Jauregui, declare as follows:

1.    I am an Assistant United States Attorney ("AUSA") with the U.S. Attorney's Office in the Central District of California and am one of the prosecutors assigned to the matter of United States v. Leroy Baca, 16-66(A)-PA.

2.    On February 19, 2020, counsel for defendant Baca wrote to AUSA Brandon Fox and me seeking the government's position on a forthcoming motion for bail.  When we inquired about the basis for such a motion, counsel replied that the grounds were (1) defendant's Alzheimer's diagnosis, "which is already proving tough for him in prison," (2) defendant's custodial status may terminate before resolution of the petition, and (3) the ground for relief raised in the petition is strong.

3.    On March 24, 2020, I spoke separately with two attorneys from the Federal Bureau of Prisons regarding defendant and FCI La Tuna.  One attorney with the South Central Regional Office ("SCRO") in Grand Prairie, Texas, informed me that, as of March 14, 2020, FCI La Tuna had canceled visitations for 30 days.  As of today, BOP's webpage for FCI La Tuna indicates that "[a]ll visiting at this facility has been suspended until further notice."  A second attorney in the SCRO advised me that defendant Baca is housed in the camp portion of FCI La Tuna, which, according to BOP's website, is a "minimum security satellite camp" adjacent to FCI La Tuna.  This

//

//

attorney explained that FCI La Tuna not a "pretrial facility" and that inmates there do not have frequent interactions with or travel to a local federal courthouse.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration is executed at Los Angeles, California, on April 1, 2020.

EDDIE A. JAUREGUI
Assistant United States Attorney

2